1  David A. Hahn, SBN 125784
   HAHN & ADEMA
2  501 West Broadway, Suite 1600
   San Diego, California 92101-3595
3  Telephone:   (619) 235-2100
4  Facsimile:    (619) 235-2101

5  Attorneys for *Lucent Technologies Inc.*
   *and Multimedia Patent Trust*
6
7  *Additional counsel listed on the last page*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.,<br><br>    Plaintiff,<br>v.<br><br>GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants,<br>    and<br><br>MICROSOFT CORPORATION,<br><br>    Intervener. | Case No. 02-CV-2060 B (CAB)<br>        consolidated with<br>Case No. 03-CV-0699 B (CAB)<br>Case No. 03-CV-1108 B (CAB)<br><br>**LUCENT AND MULTIMEDIA PATENT TRUST'S OPPOSITION TO DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NOS. 4,958,226 (HASKELL); 4,383,272 (NETRAVALI); AND 4,763,356 (DAY)**<br><br>Date:         October 19, 2007<br>Time:         1:30 P.M.<br>Courtroom:  13<br>Judge:        Hon. Marylyn L. Huff |
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Defendant. | **REDACTED** |
| LUCENT TECHNOLOGIES INC.,<br><br>    Plaintiff,<br>v.<br><br>DELL INC.,<br><br>    Defendant. | |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. SUMMARY OF APPLICABLE LAW .........................................................................1

III. ARGUMENT ..................................................................................................................3

    A. Lucent's Efforts To Seek And Obtain Summary Judgment Have No Bearing On Willfulness. ...........................................................................................3

    B. Ample Evidence Exists To Present A Genuine Dispute As To Whether Defendants' Actions Posed An Objectively High Likelihood Of Infringement. ............4

    C. Ample Evidence Exists To Present A Genuine Dispute As To Whether Defendants' Knew Or Should Have Known Of Their Objectively High Likelihood Of Infringement. ...........................................................................................6

        1. Ample Evidence Establishes That The Defendants Were Aware Of Their Objectively High Risk Of Infringement Of The Haskell '226 And Netravali '272 Patents. ........................................................................6

        2. Ample Evidence Establishes That The Defendants Were Aware Of their Objectively High Risk Of Infringement Of The Day '356 Patent...........10

IV. CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
 __ F.3d __, 2007 WL 2609976 (Fed. Cir. Sept. 12, 2007) ........................................................ 2

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................................. 2

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................................................. 1

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus Inc.*,
 145 F.3d 1303 (Fed. Cir. 1998) ................................................................................................ 2

*Computer Assoc. Int'l, Inc. v. Simple.com, Inc.*,
 No. 02 Civ. 2748(DRH)(MLO), 2007 WL 2815812 (E.D.N.Y. Sept. 25, 2007) ..................... 2

*In re Seagate Technology*, LLC,
 __ F.3d __, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007) ............................................... 2, 4, 6

## I.     INTRODUCTION

Defendants Dell, Gateway and Microsoft are not entitled to summary judgment on the factual issue of their willful infringement of U.S. Patent Nos. 4,958,226 ("the Haskell '226 patent"), 4,383,272 ("the Netravali '272 patent"), and 4,763,356 ("the Day '356 patent"). In seeking summary judgment, the defendants rely on legally and logically unsound procedural arguments, while ignoring overwhelming evidence by which a reasonable jury could find that the defendants' infringement was willful. *First*, the defendants premise their motion on the meritless assertion that a willful infringement claim fails unless the patentee seeks and obtains summary judgment of infringement. *Second*, the defendants disregard ample evidence — such as expert testimony offered by Lucent — which at a minimum raises a genuine dispute as to whether the defendants' actions posed an objectively high likelihood of infringement. *Third*, the defendants ignore abundant proof demonstrating the defendants knew or should have known of their objectively high likelihood of infringement.

Considering the evidence in the light most favorable to Lucent and MPT in accordance with the appropriate legal standard, the defendants fall far short of sustaining their heavy summary judgment burden on the factual issue of willful infringement. Because, at a minimum, genuine disputes of material fact remain regarding whether the defendants' infringement was willful, the defendants' motions for summary judgment should be denied.[1]

## II.     SUMMARY OF APPLICABLE LAW

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Lucent does not intend to pursue allegations of willful infringement with respect to U.S. Patent Nos. 4,439,759 (Fleming) and 5,347,295 (Agulnick).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of establishing the absence of genuine disputes of material fact and entitlement to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there are genuine issues of material fact, "the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998).

The Federal Circuit recently reviewed the law of willful infringement in *In re Seagate Technology*, LLC, __ F.3d __, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007). In *Seagate*, the Court of Appeals overruled the previous duty of care standard — which it characterized as a negligence standard — and held that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Id*. at *5. While recognizing that "the term [reckless] is not self-defining," *id.*, the Court held that to establish willful infringement, a patentee must show (1) "an objectively high likelihood that [the accused infringer's] actions constituted infringement of a valid patent" and (2) "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

*Seagate* did not, however, reverse the long-standing rule that "[w]hether infringement is willful is a question of fact" for the jury. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, __ F.3d __, 2007 WL 2609976, at *3 (Fed. Cir. Sept. 12, 2007) (post-dating *Seagate*); *accord Computer Assoc. Int'l, Inc. v. Simple.com, Inc.*, No. 02 Civ. 2748(DRH)(MLO), 2007 WL 2815812, *3 (E.D.N.Y. Sept. 25, 2007) (post-dating *Seagate*) ("[a] willfulness determination . . . is a finding of fact inextricably bound to the facts underlying the alleged infringement."). To the contrary,

*Seagate*'s "objective recklessness" standard expressly depends on a non-exclusive host of factual-based considerations, such as "standards of commerce" in the relevant industry. *Seagate*, __ F.3d __, 2007 WL 2358677, at *5 n. 5; *see also* at *18 (Newman, J., concurring). Indeed, the *Seagate* court emphasized that "objectively-defined risk" must be "determined by the record developed in the infringement proceeding." *Id*. at *5.

## III.     ARGUMENT

### A.     Lucent's Efforts To Seek And Obtain Summary Judgment Have No Bearing On Willfulness.

The defendants premise their summary judgment motions almost exclusively on the faulty assertion that if a plaintiff does not move for and obtain summary judgment of infringement, there can be no finding that their conduct was "objectively reckless" for purposes of willful infringement. (D.I. 2049-2 at 2-3 (Dell); D.I 2053-2 at 3 (Microsoft); D.I. 2056-2 at 3-4 (Gateway))  That assertion has no basis in law or logic.

First, many practical reasons exist why a litigant may choose not to move for summary judgment, including expense, prioritization of litigation objectives, or whether the technical dispute is amenable to presentation in that setting.  As such, a litigant's election not to seek summary judgment on a particular issue in no way concedes the reasonableness of its opponent's noninfringement position.

Second, the defendants' sweeping proposition ignores critical differences between the standard for obtaining summary judgment of infringement and the standard for obtaining a finding of willful infringement at trial.  On summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party, all inferences must be resolved in its favor, credibility cannot be considered, and the nonmoving party need only show that a genuine issue of material fact remains for trial.  *See Chiuminatta Concrete Concepts*, 145 F.3d at 1307.  By contrast, in weighing the evidence of infringement and willfulness at trial, the jury may resolve issues of fact, make credibility

determinations, and need not view the evidence in the light most favorable to the nonmoving party. Thus, even if a factual dispute precluded summary judgment of infringement before trial, a reasonable jury — having assessed credibility, credited certain evidence, and rejected other evidence — could readily conclude that the accused infringer's conduct posed an objectively high likelihood of infringement all along. For example, a defendant might secure denial of an infringement summary judgment motion by relying on factual assertions of its experts and fact witnesses, which a court must accept as true. At trial, however, the jury is free to find these same factual assertions to be not credible, to find that the infringement question was not close, and to also find that the defendant "acted despite an objectively high likelihood that its actions constituted infringement." *Seagate*, ___ F.3d ___, 2007 WL 2358677, at *5.

Finally, the defendants' view that willful infringement can exist only where the patentee obtained a summary judgment ruling of infringement would lead to absurd results. If the defendants' view were correct, there could ***never*** be a trial in which a jury considers both infringement and willfulness, because failure to obtain summary judgment of infringement would automatically foreclose a finding willful infringement. Nothing in *Seagate* suggests such a result, and no case since *Seagate* has so held.

**B.     Ample Evidence Exists To Present A Genuine Dispute As To Whether Defendants' Actions Posed An Objectively High Likelihood Of Infringement.**

In this case, the defendants have presented various non-infringement arguments with respect to the Haskell '226, Netravali '272, and Day '356 patents. In response, Lucent has offered the testimony of well-qualified experts that have concluded that the defendants in fact infringe these patents and that each and every one of their non-infringement theories is meritless. (Ex. 3, Girod Decl. ISO Multimedia Patent Trust's Opposition To Defendants Motions For Summary Judgment

Concerning The Video Coding Patents; Ex. 5, Tognazzini Decl. ISO Lucent's Opposition To Microsoft's Motion For Summary Judgment Of Non-Infringement Of U.S. Patent No. 4,763,356).[2] Moreover, over a decade ago an independent licensing association concluded that the Haskell '226 and Netravali '272 patents were *essential* to the MPEG-2 video coding standard, *which each of the defendants admittedly practice* (Ex. 25, Rubenstein Opinion).  Indeed, in its October 1, 2007 summary judgment Order, the Court in this action recognized that "*[t]he parties do not dispute that the two patents are essential to the MPEG-2 standard*."  (Ex. 1, Order Granting In Part And Denying In Part Parties' Motions For Summary Judgment Regarding Defendants' Affirmative Defenses And Counterclaims Pertaining To The Transfer Of the Group 1 Patents To The Multimedia Patent Trust at 7) (D.I. 2109).

After hearing the evidence in this case, the jury would be entitled to agree with Lucent's experts and reject the opinions offered by the defendants' experts.  The jury will weigh the credibility of each side's evidence and may well conclude — unbound by the summary judgment mandate to view the evidence in the light most favorable to the defendants — that the defendants' underlying non-infringement defenses, and alleged reliance thereon, were objectively unreasonable. That determination, in turn, would support a finding that the defendants' actions posed an objectively high likelihood of infringement for purposes of assessing willful infringement.  Indeed, the Federal Circuit recognized in *Seagate* that the "objectively-defined risk" must be "determined by the record developed in the infringement proceeding."  *Seagate Technology*, LLC, __ F.3d __, 2007 WL 2358677, at *5 (Fed. Cir. Aug. 20, 2007).

---

[2]  All citations to exhibits refer to the Exhibits to the Declaration of Jordan N. Malz In Support Of Lucent and Multimedia Patent Trust's Opposition to Defendants' Motions for Partial Summary Judgment Of No Willful Infringement Of U.S. Patent Nos. 4,958,226 (Haskell), 4,383,272 (Netravali), and 4,763,356 (Day).

### C. Ample Evidence Exists To Present A Genuine Dispute As To Whether Defendants' Knew Or Should Have Known Of Their Objectively High Likelihood Of Infringement.

As set forth below, ample evidence exists to establish that the defendants knew or should have known of their objectively high likelihood of infringement. Accordingly, no grounds exists for entering summary judgment in the defendants' favor under the second prong of the *Seagate* test for willfulness.

#### 1. Ample Evidence Establishes That The Defendants Were Aware Of Their Objectively High Risk Of Infringement Of The Haskell '226 And Netravali '272 Patents.

There can be no dispute that the defendants knew of the Haskell '226 and Netravali '272 patents, and Lucent's infringement allegations, long before the filing of this action. Lucent provided Dell with notice of infringement of the Haskell '226 and Netravali '272 patents at an October 20, 1998 meeting between Lucent representatives James Tierney and Joseph Braski and Dell representatives Henry Garrana and Diana Roberts. (Ex. 9, Tierney Dep. at 89:13-22; *see also* at 14:12-14.) Lucent also identified precise activity within those computers that infringe the Haskell '226 and Netravali '272 patents — namely, their use of the MPEG video coding standards. (*Id.* at 90:10-17; *see also* 20:24-21:1, 91:12-21) At a follow-up meeting on December 16, 1998, Lucent provided not only ***notice*** of infringement but also ***proof*** of infringement, including claim charts that mapped Lucent's patent claims against the infringing MPEG functionality used by Dell PCs. (Ex. 9, Tierney Dep. at 31:2-11, 16:19-17:11, 86:12-87:5, 88:22-89:12; Ex. 16, 12/8/98 E-Mail from Tierney to Greene at LUC 1048967; Ex. 17, 12/9/98 E-Mail from Greene to Dickson at LUC 1049240.)

Lucent similarly provided Gateway with notice of infringement of the Haskell '226 and Netravali '272 patents well before the filing of this suit at an April 2, 1998 meeting between Lucent representatives (including James Tierney, Joseph Braski, David Padnes and David Rosenblatt) and Gateway representatives (including George Clark) at Gateway's corporate headquarters in North

Sioux City, South Dakota. (Ex. 10, Tierney Dep. at 15:14-22, 17:4-13) (Ex. 10, Tierney Dep. at 17:4-13; *see also* 24:12-17, 59:18-60:2) Lucent identified not only Gateway PCs but also the specific MPEG functionality within them that infringed the Haskell '226 and Netravali '272 patents. (*Id.* at 30:5-11; *see also* 33:15-34:13; 50:20-21; 64:9-65:11) Indeed, Mr. Tierney further testified that Lucent's representatives even presented claim charts that detailed Lucent's infringement assertions. (*Id.* at 31:14-19, 62:3-10, 64:21-24).

Likewise, Lucent notified Microsoft of the Haskell '226 patent before the filing of this suit through a January 13, 2003 letter from Donald Boreman, of Lucent's licensing agent Thinkfire, to Dan Crouse, Microsoft's Deputy General Counsel. (Ex. 19, 1/13/03 Letter from Boreman to Crouse at LUC 1300153-55) The letter identified the Haskell '226 patent as among the "Lucent Technologies Patents utilized by Microsoft Products." (*Id.*) Even Microsoft admits that it knew of the Haskell '226 patent by January 13, 2003 by virtue of that letter. (Ex. 2, Microsoft Responses to Lucent's Second Set of Interrogatories No. 21) As such, Lucent provided the defendants with pre-suit notice of infringement of the Haskell '226 and Netravali '272 patents, but the defendants disregarded that notice and continued to infringe. After considering this evidence, and the record of the infringement proceeding, a reasonable jury could reasonably find that the defendants acted in disregard of a known or obvious risk.

Yet the record contains additional evidence demonstrating the defendants knowingly acted in the face of an objectively high risk of infringement. Long ago, the Haskell '226 and Netravali '272 patents were publicly determined — by an independent technical expert — to be essential to the MPEG-2 standard practiced by the defendants. On October 31, 1996, in connection with Lucent's exploration of whether to join the MPEG-LA licensing consortium, independent expert Kenneth Rubenstein issued an opinion that the Haskell '226 and Netravali '272 patents were essential to the practice of the MPEG-2 standard (Ex. 25, at LUC 1141388 (essentiality of Netravali '272 patent), LUC 1141393 (essentiality of Haskell '226 patent); *see also* Ex. 6, Futa Dep. at 40:14-21) Indeed,

as recognized by Judge Brewster in a recent Order, the defendants themselves *admit* that the Haskell '226 and Netravali '272 patents are essential to the practice of the MPEG-2 standard. (Ex. 1, Order Granting In Part And Denying In Part Parties' Motions For Summary Judgment Regarding Defendants' Affirmative Defenses And Counterclaims Pertaining To The Transfer Of the Group 1 Patents To The Multimedia Patent Trust at 7) (D.I. 2109) ("The parties do not dispute that the two patents are essential to the MPEG-2 standard."). The defendants nevertheless chose to practice the MPEG-2 standard without taking a license to those patents.

In addition, the record leaves no doubt the defendants knew that their products required a license to patents — such as the Haskell '226 and Netravali '272 patents — essential to the practice of the MPEG-2 standard. Indeed, after Lucent first asserted these patents against the defendants,

Because Lucent was not a member of MPEG LA, each defendant knew that it was *not* receiving a license to any Lucent patent.

Thus, the defendants' own conduct demonstrates that they knew they needed a license to practice patents essential to the MPEG-2 standard. Nevertheless, the defendants chose to infringe the Lucent patents they *admit* are essential to the practice of the MPEG-2 standard — the Haskell '226 and Netravali '272 patents. In view of that evidence, a reasonable jury could readily conclude that the defendants' infringement was in disregard of a known or obvious risk.

---

3    Each of these MPEG LA licenses provided a release for activities back to 1994.

Furthermore, Dell itself *admitted* that it was infringing the Haskell '226 and Netravali '272 patents. Contemporaneous notes reflect that at the October 20, 1998 meeting between Lucent and Dell, Dell's counsel Henry Garrana acknowledged that Dell was infringing but that Dell would try to pass such liability to its suppliers:

(Ex. 23, 10/20/98 Meeting Notes at LUC 019229 (emphasis added); *see also* Ex. 9, Tierney Dep. at 93:4-23) Instead of obtaining a license from Lucent, Dell then attempted to pass on the responsibility for Dell's infringement to its suppliers,

(Ex. 14, 1/12/99 Letter from Roberts to Mason at DELL 326403 (Microsoft); *accord* Ex. 15, 1/12/99 Letter from Roberts to Silverman at DELL 326405 (Intel).) Dell neither attempted to design around these patents nor requested that its suppliers alter their products, instead relying on its suppliers to (Ex. 7, Garrana Dep. at 228:12-229:10)

Like Dell, Gateway also attempted to pass on the responsibility for its infringement to its suppliers. Blindly relying on unspecified communications with its suppliers (Ex. 11, Walker Dep. at 53:14-21, 54:14-17, 58:1-23), Gateway 30(b)(6) witness Mark Walker admitted that Gateway likely did not undertake any analysis regarding the Haskell '226 and

Netravali '272 patents. (Ex. 11, Walker Dep. at 87:3-6) Nor is there evidence in the record to show that Gateway to its products. (Ex. 11, Walker Dep. at 116:9-117:8)

Microsoft similarly knew of the seriousness of Lucent's charges of infringement with respect to the Haskell '226 (and Netravali '272) patents,

(Ex. 14, 1/12/99 Letter from Roberts to Mason at DELL 326403; *accord* Ex. 12, Weresh 39:13-41:19; 45:13-18) Microsoft, however, took no action in response to Dell's January 12, 1999 letter beyond providing Dell with technical information. (Ex. 12, Weresh at 47:9-13) Microsoft's 30(b)(6) witness, associate general counsel John Weresh, could identify no correspondence or dialogue with Dell regarding Lucent's patents nor even any attempt by Microsoft to order the patents and file histories. (*Id*. at 47:14-48:11)

Taken as a whole, the defendants' conduct in response to Lucent's infringement assertions — pressing forward despite knowledge that they were infringing and/or ignoring the manifest risk of infringement — permit a reasonable jury to find that the defendants acted in disregard of a known or obvious risk. Viewed in conjunction with the other evidence of willfulness — the objectively-defined risk, Lucent's pre-suit notice of infringement, and the defendants' acknowledged need for a license to MPEG-essential patents as demonstrated by their license with MPEG-LA — at a minimum, factual disputes exist warranting denial of the defendants' summary judgment motions on willful infringement.

### 2. Ample Evidence Establishes That The Defendants Were Aware Of Their Objectively High Risk Of Infringement Of The Day '356 Patent.

The defendants became aware of the Day '356 patent and Lucent's infringement allegations long before Lucent commenced this action. Thus, the defendants infringed the Day '356 patent with knowledge of the patent and their likely infringement.

Lucent placed Dell on notice of the Day '356 patent before the filing of this suit at a July 31, 2001 meeting at Dell's corporate headquarters in Austin, Texas. During that meeting, Lucent specifically charged Dell with infringement of the '356 Day patent with respect to Outlook and other referenced products. (Ex. 8, Samuels Dep. at 159:6-8, 159:18-160:16, 211:3-23, 212:6-213:24, 217:3-22, 218:6-12, 249:16-23) Lucent's assertions of the Day '356 patent at the July 31, 2001 meeting are corroborated by documents and Dell's own witnesses. (Ex. 18, Dell Negotiation History at LUC 1012274-75; Ex. 22, 7/31/01 Meeting Notes at LUC 011301-07; Ex. 7, Garrana Dep. at 144:17-20, 155:10-156:3)

Lucent similarly placed Gateway on notice with respect to the Day '356 patent before the filing of this suit at an August 7, 2001 conference and in subsequent communications. For example, Lucent charged Gateway with infringement of the '356 patent with respect to Outlook and other referenced products at the August 7, 2001 conference. (Ex. 8, Samuels Dep. at 63:19-67:13; 72:1-5; 73:3-15; 99:5-101:2; 105:23-106:5) And Lucent again notified Gateway of its infringement of the Day '356 patent in correspondence on March 20, 2002. (Ex. 20, 3/20/02 Correspondence from Samuels to Walker at LUC 031544-46)

Likewise, Lucent notified Microsoft of the Day '356 patent before the filing of this suit through a January 13, 2003 letter from Donald Boreman, of Lucent's licensing agent Thinkfire, to Dan Crouse, Microsoft's Deputy General Counsel. (Ex. 19, 1/13/03 Letter from Boreman to Crouse at LUC 1300153-55) The letter identified the Day '356 patent as among the "Lucent Technologies Patents utilized by Microsoft Products." (*Id*.) In addition, the letter expressly identified the Microsoft "Products Impacted" by Lucent's infringement assertions. (*Id*.) Even Microsoft admits that it knew of the Day '356 patent by January 13, 2003 by virtue of that letter. (Ex. 2, Microsoft Responses to Lucent's Second Set of Interrogatories No. 21)

1   As with the other patents, Lucent's pre-suit notice with respect to the Day '356 patent, the
2   defendants pressed forward with their infringing conduct.  In view of that evidence, a reasonable
3   jury could find that the defendants' infringement was in disregard of a known or obvious risk.
4   In addition, the defendants ignore other conduct supporting a finding of willful infringement.
5   For example, instead of obtaining a license from Lucent, Dell attempted to pass on the responsibility
6   for Dell's infringement to its suppliers,

15  (Ex. 21, 4/15/02 Correspondence from Garrana to Sako at DELL 326561) (emphasis added)  And at
16  no point did Dell even attempt to design around these patents or request that its suppliers alter their
17  products, instead relying on its suppliers to                                   (Ex. 7, Garrana Dep. at 228:12-
18  229:10)
19
20  Like Dell, Gateway also attempted to pass on the responsibility for its infringement to its
21  third-party suppliers.  (Ex. 11, Walker Dep. at 53:14-21, 54:14-17, 58:1-23).  Nor is there evidence
22  in the record to show that Gateway made any design changes to its products. (Ex. 11, Walker Dep. at
23  116:9-117:8)  Moreover, counsel for Gateway repeatedly instructed its 30(b)(6) witness Mark
24  Walker not to answer questions from Lucent's counsel regarding Gateway's responses to Lucent's
25  infringement assertions.  (*Id*. at 114:15-115:13)  Having prevented Lucent from obtaining discovery
26  on this issue, Gateway should be precluded from referring to that "lack" of evidence as a basis for its
27  motion.
28

Microsoft similarly knew of the seriousness of Lucent's charges of infringement with respect to the Day '356 patent,

(Ex. 21, 4/15/02 Correspondence from Garrana to Sako at DELL 326561; *accord* Ex. 12, Weresh 39:13-41:19; 45:13-18; Ex. 13, Weresh Ex. 12)  Microsoft's 30(b)(6) witness, however, associate general counsel John Weresh, could identify no response taken by Microsoft in response to Dell's indemnification notice. (Ex. 12, Weresh at 48:4-18, 52:7-21)

In sum, the defendants' conduct in response to Lucent's infringement assertions — continuing to infringe despite knowledge that they were infringing and/or efforts to ignore the infringement — permit a reasonable jury to find that the defendants acted in disregard of a known or obvious risk.  Viewed in conjunction with the others evidence of willfulness, such as Lucent's pre-suit notice of infringement, a factual dispute exists warranting denial of the defendants' summary judgment motions on willful infringement.

## IV.    CONCLUSION

For all of the foregoing reasons, the defendants' motions for summary judgment of no willful infringement with respect to these patents should be denied.

DATED:  October 5, 2007                                    BY:          s/David A. Hahn
                                                                                David A. Hahn

                                                                            John M. Desmarais (admitted *pro hac vice*)
                                                                            Robert A. Appleby (admitted *pro hac vice*)
                                                                            KIRKLAND & ELLIS LLP
                                                                            153 East 53rd Street
                                                                            New York, New York 10022
                                                                            Telephone:  (212) 446-4800
                                                                            Facsimile:  (212) 446-4900

                                                                            Attorneys for *Lucent Technologies Inc.
                                                                            and Multimedia Patent Trust*