Bryan W. Farney *(pro hac vice)*
Steven R. Daniels (SBN 235398)
Jeffrey B. Plies *(pro hac vice)*
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, Texas 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001

David J. Zubkoff (SBN 149488)
SELTZER CAPLAN McMAHON VITEK
750 "B" Street, Suite 2100
San Diego, CA 92101
Telephone: (619) 685-3003
Facsimile: (619) 685-3100

Attorneys for Defendants and Counterclaimants,
GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
LLC, AND COWABUNGA ENTERPRISES, INC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.<br><br>Defendants and Counter-Claimants,<br><br>and<br><br>MICROSOFT CORPORATION<br><br>Intervenor and Counter-Claimant. | Case No. 02-CV-2060 B (CAB)<br>consolidated with<br>Case No. 03-CV-699 B (CAB)<br>Case No. 03-CV-1108 B (CAB)<br><br>**GATEWAY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF THE ASSERTED CLAIMS OF U.S. PATENT NOS. 4,439,759 (FLEMING); 4,958,226 (HASKELL); 4,383,272 (NETRAVALI) AND 4,763,356 (DAY)**<br><br>Date: October 19, 2007<br>Time: 1:30 p.m.<br>Courtroom: 13, 5th Floor<br>Judge: Judge Marilyn L. Huff |
| AND CONSOLIDATED CASES | |

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. THE NEW *SEAGATE* DECISION ..... 1

III. GATEWAY IS ENTITLED TO SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF THE ASSERTED PATENTS ..... 3

A. Lucent Has Not And Cannot Come Forth With Clear And Convincing Evidence Of Willfulness Under The New *Seagate* Standard With Respect To Any Of The Patents-In-Suit ..... 3

B. The Fleming '759 Patent ..... 4

C. The Day '356 Patent ..... 7

D. The Netravali '272 And Haskell '226 Video Patents ..... 8

IV. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES


Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ....................................................... 3

C.R. Bard, Inc. v. Advanced Cardiovascular System, Inc., 911 F.2d 670 (Fed. Cir. 1990) ....................................................... 3

In re Seagate Technology, LLC, Misc. No. 830 ....................................................... 1

Safeco Insurance Co. of America v. Burr, 551 U.S. __ (June 4, 2007, "It is [a] high risk of harm, objectively assessed, that is the essence of recklessness at common law.") ....................................................... 2

Underwater Devices, Inc. v. Morrison-Knudson Co., 717 F.2d 1380 (Fed. Cir. 1983) ....................................................... 1,2


## FEDERAL RULES & STATUTES


Fed. R. Civ. P. 56(c) ....................................................... 2

35 U.S.C. § 102(g) ....................................................... 9

## I. INTRODUCTION

Defendants Gateway Inc., Gateway Country Stores LLC, Gateway Companies, Inc., Gateway Manufacturing LLC and Cowabunga Enterprises, Inc. (collectively "Gateway") respectfully move for partial summary judgment of no willful infringement of U.S. Patent Nos. 4,439,759 (Fleming); 4,958,226 (Haskell); 4,383,272 (Netravali) and 4,763,356 (Day).[1]

The Federal Circuit very recently issued an *en banc* decision that expressly overruled the 24-year old standard for proving willful infringement and set forth a new, more onerous standard that requires a patentee to prove by clear and convincing evidence that an accused infringer acted with "objective recklessness." *In re Seagate Technology, LLC*, Misc. No. 830, slip opinion at 12 (Fed. Cir. Aug. 20, 2007) (*en banc*). Under this new standard, Plaintiffs Lucent Technologies, Inc. and Multimedia Patent Trust ("Lucent") cannot establish willful infringement of the asserted patents. Therefore, summary judgment of no willfulness is appropriate.[2]

## II. THE NEW *SEAGATE* DECISION

In *Seagate*, the Federal Circuit overruled *Underwater Devices, Inc. v. Morrison-Knudson Co.*, 717 F.2d 1380 (Fed. Cir. 1983), a case that had imposed an affirmative duty upon potential infringers to exercise due care to ensure that patents were not infringed. *See Underwater Devices*, 171 F.2d at 1389-90. The *en banc* court in *Seagate* recognized that the *Underwater Devices* burden of due care did not "comport with the general understanding of willfulness in the civil context,"-- i.e., "willful" is generally understood to be akin to recklessness. *See Seagate*, slip op. at 11-12. The court announced that the correct standard for determining willful infringement requires "at least a showing of objective recklessness" and clear and convincing

---

[1] Lucent has also asserted U.S. Patent No. 5,347,295 (Agulnick) against Gateway. However, Lucent did not plead that Gateway's alleged infringement has been willful and thus the court has already granted Gateway's motion in limine to prevent Lucent from arguing willfulness. Doc. 1737.

[2] Gateway also joins the motions for partial summary judgment of no willful infringement filed by Dell, Inc., and Microsoft Corporation.

evidence that an accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." In addition, the patentee must also show that the defendant knew or should have known of this high likelihood of infringing a valid patent. Specifically, the Federal Circuit stated:

> Accordingly, we overrule the standard set out in Underwater Devices and hold that proof of willful infringement permitting enhanced damages requires at least a showing of **objective recklessness**. Because we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel.
>
> . . . Accordingly, to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an **objectively high likelihood that its actions constituted infringement of a valid patent**. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must **also** demonstrate that **this objectively-defined risk** (determined by the record developed in the infringement proceeding) **was either known or so obvious that it should have been known** to the accused infringer.

*Id.*, slip op. at 12 (emphases added) (*citing Safeco Ins. Co. of Am. v. Burr*, 551 U.S. __, Nos. 06-84, -100, slip op. at 19 (June 4, 2007), "It is [a] high risk of harm, objectively assessed, that is the essence of recklessness at common law.").

Thus, the *Seagate* decision created a much higher and onerous standard for proving willfulness. Indeed, the Federal Circuit explained that "the duty of care announced in *Underwater Devices* sets a lower threshold for willful infringement that is more akin to negligence. This standard fails to comport with the general understanding of willfulness in the civil context . . . and it allows for punitive damages in a manner inconsistent with Supreme Court precedent." *Seagate*., slip op. at 11. In other words, the Federal Circuit acknowledged that willfulness and the associated enhanced damages requires a higher threshold of proof – showing objectively reckless behavior on behalf of an accused infringer. *Id.*, slip op. at 11-12.

## III. GATEWAY IS ENTITLED TO SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF THE ASSERTED PATENTS

### A. Lucent Has Not And Cannot Come Forth With Clear And Convincing Evidence Of Willfulness Under The New *Seagate* Standard With Respect To Any Of The Patents-In-Suit

Summary judgment should be granted whenever "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The federal rules mandate summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where, as here, the non-moving party has the burden of proof at trial, the moving party need only point to a lack of evidence and has no burden to disprove the non-moving party's claim. *See Celotex*, 477 U.S. at 325. The non-moving party must then come forward with evidence demonstrating a genuine issue as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to any element of its case on which it bears the burden of proof at trial, the "plain language of Rule 56(c) mandates the entry of summary judgment." *Id.* at 322. "Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

Despite the voluminous factual record developed in this case over more than four years, Lucent cannot point to *any* evidence of objective recklessness on the part of Gateway, much less *clear and convincing* evidence of the same. Under *Seagate*, Lucent must show that Gateway engaged in the accused activity "despite an objectively high likelihood that its actions constituted infringement" of a valid Lucent patent. *See Seagate*, slip op. at 12. The record shows otherwise. On the patents remaining for trial, Lucent has either not moved for summary judgment on

Gateway's invalidity and non-infringement defenses, or has so moved and had its motion was denied. This fact alone, on its face, prevents Lucent from proving that Gateway's conduct was objectively reckless, especially when viewed through the lens of the clear and convincing standard.

Not only does the factual record lack evidence to show that Gateway acted recklessly, the record is replete with affirmative evidence to the contrary – that Gateway acted reasonably and that there was not a high probability of infringing a valid patent. Below, Gateway presents this affirmative evidence of non-willfulness for the remaining patents-in-suit.

**B. The Fleming '759 Patent**

It is undisputed that Lucent's U.S. Patent No. 4,439,759 ("the Fleming '759 patent") expired on May 19, 2001 – more than one year *before* Lucent brought suit against Gateway in June 2002. Prior to the expiration of that patent, Lucent never put Gateway on notice of Lucent's current infringement contentions regarding that patent. Under such circumstances, the Court should find that, as a matter of law, Gateway could not be guilty of having "objectively reckless behavior." Thus, at a minimum, summary judgment of no willful infringement of the Fleming '759 patent should be granted.

Specifically, Lucent's present infringement allegations center around Gateway's sale of the Windows GDI component of Microsoft Windows. Doc. 1423-1, Exh. A, Richter Infringement Report, p. 83, ¶ 58. ***Prior to the expiration of the Fleming '759 patent, Lucent never put Gateway on notice that the sale or use of Windows GDI would constitute infringement of any of the asserted claims of the Fleming '759 patent***.

Instead, from the time Lucent first met with Gateway in 1998 to the time the Fleming '759 patent expired in 2001, Lucent's sole allegation of infringement was based on Gateway's

use of BIOS code[3] necessary to implement VGA and the Video Bios Extensions (VBE) in its systems. For example, in documentation sent by Lucent to Gateway, Lucent identified the Fleming '759 patent as covering VGA. *See* Gilly Depo Ex. 9 (LUC 031544), which is Exh. 25 to Declaration of Jordan N. Malz, filed under seal on December 27, 2006. *See also* Doc. 600-3, Exh. 10, E-mail from Samuels to Walker (LUC 018688) . Similarly, Mr. Tierney, Lucent's Director of Intellectual Property and its representative in the negotiations with Gateway, referred to the Fleming '759 patent as "the Fleming patent on VGA." *See* Tierney Jan. 11, 2006 Depo at 17:4-13, which is Exh. 23 to Declaration of Michael Stadnick, filed under seal on April 20, 2007. During the pre-suit negotiations, Lucent's sole assertion was that VGA and VBE infringed, and Lucent provided a video of a demonstration in an effort to support its allegations. Doc. 396, Exh. 15, Transcript of Mark Walker Depo at 67:21-68:9. *See also* Plies Exh. 1, Excerpts from the Transcript of Stephen Samuels Deposition, dated March 3, 2006, at 143:2-150:17. Gateway responded in a reasonable (rather than reckless) manner by requesting the source code used to create the demonstration; however, Lucent refused to comply with that request. Doc. 396, Exh. 15, Transcript of Mark Walker Depo at 67:21-68:6, 89:22-90:3. Moreover, Gateway provided Lucent with a chart explaining why VGA/VBE did not meet the claims of the Fleming '759 patent. *See* Plies Exh. 2, Walker Depo Exh. 10 (LUC 016484-85). Lucent never responded to Gateway's non-infringement chart. Doc. 396, Exh. 15, Transcript of Mark Walker Depo at 87:24-89:2.

In fact, even after the expiration of the Fleming '759 patent, when Lucent filed its complaint in June of 2002, Lucent did not mention infringement based on Windows GDI. Doc. 1, Lucent Complaint, June 6, 2002. When Lucent provided its first infringement

---

[3] BIOS refers to the Basic Input/Output System program that is located in the ROM of a PC. Doc. No. 1423-1, Richter Infringement Report at 35-36, ¶ 43.

contentions to Gateway, Lucent again did not mention Windows GDI. Doc. 1512-3, Exh. 22, Lucent Resp. to Gateway's First Set of Interrogatories, September 30, 2002. Similarly, in May of 2004, more than 3 years after the Fleming '759 patent expired, Lucent's supplemental infringement contentions were still based on VGA and VBE, and only made a passing reference to Windows GDI with respect to one claim element. Doc. 1512-3, Exh. 23, Lucent First Supp. Resp. to Gateway Interrogs. 1,2,7, and 8, May 27, 2004. By 2006, however, Lucent's infringement contentions changed drastically. At that time, Lucent contended for the first time that Microsoft's Windows GDI met all of the limitations of the asserted claims of the Fleming '759 patent. Doc. 1512-3, Exh. 14, Lucent's Second Suppl. Resp. to Gateway Interrog. 2, Jan. 27, 2006. Indeed, by March of 2006, Lucent and its expert conceded that the BIOS used to implement VGA and VBE could not meet all of the limitations of any asserted claims: ***"Lucent does not allege***, however, ***that the first mode of access can be found in BIOS."*** Doc. 1423-1, Exh. A, Richter Report (Mar. 31, 2006) at 47, ¶ 83 (emphasis added).

In sum, because during the life of the Fleming '759 patent Lucent never alleged that Gateway's sale of Windows GDI constituted infringement, Lucent cannot establish "objective recklessness" on the part of Gateway and cannot "show by clear and convincing evidence that [Gateway] acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, slip op. at 12. Indeed, if Lucent did not know that Windows GDI allegedly infringed during the parties' licensing negotiations how was Gateway expected to know?

Moreover, the fact that Lucent's own infringement contentions changed drastically – to the point where Lucent now admits that the VGA/Video Bios Extensions raised in its pre-patent-expiration allegations do not meet all of the claim elements of any asserted claim – shows that

Gateway's pre-patent-expiration behavior cannot be deemed objectively reckless. Therefore, summary judgment of no willfulness is appropriate.

**C. The Day '356 Patent**

In the case of the Day '356 patent, the record is clear that there has not been a high probability of infringing a valid patent. This Court has rejected Lucent's motions for summary judgment of no anticipation and has explicitly found genuine issues of material fact regarding at least three prior art references. More particularly, on January 26, 2007, Lucent filed a motion for summary judgment arguing that The Home Accountant, the Apple Lisa, and the Xerox Star references did not anticipate the '356 patent. Doc. 908. On May 15, 2007, the Court denied Lucent's motion. Doc. 1795. The Court, after examining the opinions offered by both Lucent's and Defendant's experts, determined that there were "sufficient issues of material fact on claim elements" such that summary judgment was inappropriate and therefore denied Lucent's motion as to each of the three prior art references. *Id.* at 6-8.

Similarly, the Court has also previously rejected Lucent's motion for summary judgment on infringement. On April 2, 2007, Lucent filed a motion for summary judgment arguing that all of the accused products infringed the '356 patent. Doc. 1367. On May 16, 2007, the Court rejected Lucent's summary judgment motion regarding infringement. Doc. 1813. The Court found that whether any of the "accused devices satisfy [the indicating and concurrently displaying] limitation raises an issue of material fact." *Id.* at 7. Just as was true regarding invalidity, the Court necessarily determined that a reasonable jury could find non-infringement of the accused products.

Finally, Gateway has already proven that it has not infringed, willfully or otherwise, nine out of the eleven claims of the Day '356 patent that Lucent originally asserted against Gateway in this case. On January 26, 2007, Gateway filed a motion for summary judgment of non-

infringement on all but two of the asserted claims. Doc. 921. The Court found that Lucent had "no evidence that even suggests that the accused devices perform the steps of the algorithms as disclosed in the '356 patent." Doc. 1240 at 7. The court granted Gateway's motion and found that there was "an essential element of Lucent's infringement case on which Lucent has failed to raise an issue of fact" and therefore granted Gateway's motion.

In view of the foregoing, Lucent cannot establish the first prong of the *Seagate* inquiry – namely that there was an "objectively high likelihood" that Gateway allegedly infringed a valid patent. By denying Lucent's motions regarding anticipation and infringement, the Court necessarily determined that a reasonable jury, and similarly Gateway, could find the Day '356 patent invalid and not infringed. This is reinforced by the fact that Gateway was able to dispose of all but two of the asserted claims on summary judgment. Finally, Lucent also has no facts to support the second prong of the *Seagate* inquiry – that Gateway knew or should have known that there was a high likelihood of infringement of a valid patent. Thus, the Court should grant Gateway's motion for non-willfulness with respect to the Day '356 patent.

**D. The Netravali '272 And Haskell '226 Video Patents**

Lucent has also asserted U.S. Patent Nos. 4,383,272 and 4,958,226 against Gateway in this litigation. These patents relate to video compression and have been referred to as the "video patents." Lucent has accused Gateway computers that include the capability of decoding MPEG video files. In view of the new en banc *Seagate* decision and the existing factual record, Lucent simply has no evidence that Gateway either "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that Gateway knew or should have known that there was a high risk of infringement. *In re Seagate*, slip op. at 12.

After Lucent identified the video patents to Gateway, Gateway met face-to-face with Lucent's licensing personnel numerous times in order to discuss Lucent's contentions. Doc. 396,

Exh. 15, (Walker Tr.) at 31:4-15, 42:17-43:24. Thus, far from being cavalier about Lucent's assertions, Gateway sought to engage in a dialog with Lucent in order to fully understand Lucent's position. However, Gateway's efforts to analyze Lucent's patents and to evaluate Lucent's infringement contentions were frustrated by Lucent's failure to "present a precise reading of the patent on particular products." *Id*. at 65:24-66:8. *See also* Plies Exh. 2, Walker Depo Exh. 10 at LUC 016484. ("Lack of claim charts applying patents to Gateway products delays supplier/Gateway analysis.").

In spite of Lucent's failure to provide Gateway with particularized infringement analyses, Gateway enlisted internal engineers to evaluate Lucent's infringement contentions as best it could. *Id*. at 31:16-22, 51:16-52:19, 67:3-8. Gateway also contacted its suppliers in order to have them also assess Lucent's infringement contentions with respect to MPEG. *Id*. at 53:14-54:17, 81:1-13. In addition, Gateway retained outside counsel to evaluate Lucent's infringement contentions. *Id*. at 50:14-22.

After having its engineers, outside counsel, and suppliers evaluate Lucent's video patents, Gateway presented to Lucent its analyses as to why it did not infringe Lucent's patents. *Id*. at 62:1-63:2. More particularly, Gateway presented to Lucent an analysis of the Haskell '226 patent that showed that the claimed features "were not done in any product that Gateway sold." *Id*. at 73:7-74:20. *See also* Plies Exh. 3, Walker Depo Exh. 8 at GW-LT 122017. Similarly, in the case of the Netravali '272 product, Gateway explained to Lucent that there was no infringement because Gateway products did not perform "object tracking." Doc. 396, Exh. 15 (Walker Tr.) at 74:25-75:4. *See also* Plies Exh. 3, Walker Depo Exh. 8 at GW-LT 122017.

After Gateway presented its non-infringement analyses to Lucent, Lucent failed to rebut or even address Gateway's analysis. *Id*. at 111:14-15 ("we never had any rebuttal that reestablished Lucent's case that there was infringement."); 111:18-20 ("we made the

presentations and explained our reasoning and didn't receive a response back."). In view of Lucent's failure to respond or address Gateway's non-infringement position, Gateway thought that its arguments had been persuasive and had convinced Lucent of the merits of Gateway's position. *Id*. at 111:10-11 ("I think we convinced Lucent that Gateway was not infringing.").

The fact that Gateway analyzed the patents, developed non-infringement arguments with its engineers, suppliers, and outside counsel, and was able to articulate these non-infringement arguments to Lucent shows that there was not an "objectively high likelihood" of infringement. This is further reinforced by the fact that Lucent could not and did not rebut Gateway's non-infringement arguments. At a minimum, Lucent's failure to rebut Gateway's non-infringement arguments shows that Gateway could not have known or should have known that there was a high likelihood of infringement. Thus, Lucent cannot demonstrate either the objective or subjective prong of the new *Seagate* standard.

Indeed, even though the Federal Circuit has now "abandon[ed] the duty of due care," Gateway plainly exercised due care with respect to the video patents and could not have been willful even under the old legal standard. *In re Seagate*, slip op. at 12. In particular, Gateway acted as a responsible corporate citizen by thoroughly evaluating and analyzing Lucent's contentions as opposed to acting in a cavalier manner with respect to Lucent's allegations. The reasonableness and non-recklessness of Gateway's course of action is demonstrated by the fact that Lucent itself undertakes similar actions when it is accused of infringing another company's patents. In particular, Lucent witnesses have testified that upon receiving infringement allegations from other companies, a analysis would be created and presented to the accuser as to why Lucent was not using the asserted patents. Plies Exh. 1, Excerpts from the Transcript of Stephen Samuels Deposition, dated March 3, 2006, at 42:15-24. Furthermore, during Lucent's negotiations with the patentee, Lucent would <u>not</u> stop making the accused products. *Id*. at 44:25-

45:7. Thus, Lucent can hardly be heard to assert that Gateway's conduct has been reckless when it undertakes the same course of action.

Summary judgment of non-willfulness is further justified with respect to the Netravali '272 patent in view of the patent's almost certain invalidity. As the court is aware the '272 invention was actually first developed by Dr. Jaswant Jain at SUNY Buffalo. Indeed, the court granted partial summary judgment in Gateway's favor on several predicate issues relating to the '272 patent being invalid under 35 U.S.C. § 102(g). Doc. 1923. The only issue to be decided is whether Dr. Jain reduced his invention to practice prior to the filing of the patent application for the '272 patent. The evidence in the record on this point is overwhelming and includes his published doctoral thesis, and the testimony of two witnesses. *See* Docket Doc. 480. (Gateway Summary Judgment brief for invalidity of the '272 patent). Thus, there can be no reasonable dispute that there was not an objectively high likelihood that Gateway was infringing a <u>valid</u> patent.

In view of the foregoing, the court should grant Gateway's motion for summary judgment that there has been no willful infringement of the video patents.

## IV. <u>CONCLUSION</u>

In view of the foregoing, Gateway respectfully requests that the Court grant Gateway's instant motion for partial summary judgment of no willful infringement of the asserted claims of the asserted patents.

Dated: September 11, 2007

DECHERT LLP

By: __/s/ Jeffrey B. Plies______
Jeffrey B. Plies

Attorneys For Defendants And Counterclaimants GATEWAY, INC. *et. al.*

12902236.2