Bryan W. Farney *(pro hac vice)*
Steven R. Daniels (SBN 235398)
Jeffrey B. Plies *(pro hac vice)*
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, Texas 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001

David J. Zubkoff (SBN 149488)
SELTZER CAPLAN McMAHON VITEK
750 "B" Street, Suite 2100
San Diego, CA 92101
Telephone: (619) 685-3003
Facsimile: (619) 685-3100

Attorneys for Defendants and Counterclaimants,
GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
LLC, AND COWABUNGA ENTERPRISES, INC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. | Case No. 02-CV-2060 B (CAB) |
| Plaintiff and Counter-Defendant, | consolidated with Case No. 03-CV-699 B (CAB) |
| v. | Case No. 03-CV-1108 B (CAB) |
| GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC. | **GATEWAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF THE ASSERTED CLAIMS OF U.S. PATENT NOS. 4,439,759 (FLEMING); 4,958,226 (HASKELL); 4,383,272 (NETRAVALI) AND 4,763,356 (DAY)** |
| Defendants and Counter-Claimants, and | |
| MICROSOFT CORPORATION | Date: October 19, 2007 |
| Intervenor and Counter-Claimant. | Time: 1:30 p.m. Courtroom: 13, 5th Floor Judge: Judge Marilyn L. Huff |
| AND CONSOLIDATED CASES | |

## I. INTRODUCTION

Lucent has dropped its allegations of willful infringement with respect to the Fleming '759 and Agulnick '295 patents. Lucent. Opp. Brf. at 1, n.1. Thus, the Court should enter partial summary judgment in Gateway's favor with respect to at least these two patents. With respect to the Day '356 patent and the two video patents (Haskell '226 and Netravali '272), Lucent fails to present evidence upon which a reasonable jury could conclude, let alone by <u>clear and convincing evidence</u>, that there was, as mandated by *Seagate*: (1) an objectively high likelihood of infringement of a valid patent; <u>and</u> (2) Gateway knew or should have known of such an objectively high risk.[1]

## II. LUCENT CANNOT PROVE THAT GATEWAY'S ACTIONS WITH RESPECT TO THE VIDEO PATENTS HAVE BEEN "OBJECTIVELY RECKLESS"

Far from being reckless, Gateway's actions with respect to Lucent's infringement charges were reasonable and responsible. First, Gateway met with Lucent several times to discuss the asserted video patents. D.I. 396, Exh. 15, (Walker Tr.) at 31:4-15, 42:17-43:24. Second, in spite of Lucent's "failure to provide a precise reading of the patent on particular products," Gateway used internal engineers to assess Lucent's infringement contentions. *Id.* at 65:24-66:8, 31:16-22, 51:16-52:19, 67:3-8. Third, Gateway contacted its suppliers in order to have them perform an infringement assessment as well. *Id.* at 53:14-54:17, 81:1-13. Fourth, Gateway obtained outside counsel to evaluate the alleged infringement. *Id.* at 50:14-22. Fifth, after having its internal engineers, outside counsel and suppliers evaluate these patents, Gateway presented to Lucent an analysis of why it did not infringe. *Id.* at 62:1-63:2; 73:7-74:20; 74:25-75:4.[2] In response to

---

[1] Gateway joins the motions and briefing submitted by co-defendants Dell and Microsoft on the issue of non-willfulness.

[2] Lucent asserts that Gateway's former in-house counsel Mark Walker has allegedly admitted that Gateway "likely did not undertake any independent non-infringement analysis." Luc. Opp. Brf. at 8:28-9:2. However, Mr. Walker was simply indicating that he personally did not perform the analysis. *See* D.I. 396, Exh. 15, (Walker Tr.) at 50:14-22. As set forth above, there is no dispute that Gateway did retain outside counsel, consult with its suppliers, and consult with its own engineers to evaluate Lucent's patent claims. Consulting its suppliers and outside counsel was entirely reasonable in view of the fact that the accused components were not developed by Gateway. In any event, Lucent does not dispute the central points that Gateway did in fact have a non-infringement analysis prepared and that this analysis was presented to Lucent.

Gateway's presentation of this non-infringement analysis, it is undisputed that Lucent offered <u>no counter argument</u> or rebuttal to Gateway's non-infringement points. *Id.* at 111:5-20. As a result, Gateway reasonably believed that its arguments had persuaded Lucent that Gateway did not infringe the video patents. *Id.*

The foregoing facts clearly demonstrate that instead of being reckless, cavalier, and dismissive of Lucent's allegations, Gateway undertook a serious and careful assessment of Lucent's charges and engaged Lucent in a substantive dialog with respect to the two video patents (among other patents). Further, Gateway developed and presented particular non-infringement arguments to Lucent, which Lucent <u>failed to rebut</u>. Under these circumstances, it cannot be said that Gateway clearly and convincingly acted with reckless disregard for Lucent's rights, and no reasonable jury could find otherwise. The few points raised by Lucent's opposition brief are addressed below with respect to the two prongs of the *Seagate* willfulness inquiry.

### A. Lucent Does Not Provide Any Evidence That There Was An Objectively High Likelihood Of Infringement

Under the first prong of the *Seagate* analysis, Lucent makes several arguments claiming that Gateway's actions posed an objectively high likelihood of infringement. However, Lucent's arguments simply fail to raise a genuine issue of material fact for the reasons set forth below.

Lucent first cites a declaration from its technical expert Bernd Girod, which Lucent characterizes as demonstrating that "each and every one of [Defendants'] non-infringement theories is meritless." Luc. Opp. Br. at 4:12-16. Contrary to Lucent, however, the Girod Declaration merely sets forth his basic infringement opinions and fails to opine, conclude, or explain how the Defendant's non-infringement arguments are "meritless" or why there is no close question on the issues of infringement and validity. Indeed, Lucent fails to provide a pinpoint cite to any such testimony within the 77 page declaration**.** *Id.* To avoid summary judgment on the present motion, Lucent must come forward with evidence that the infringement question is <u>not close</u>, not simply provide some evidence of infringement. Both Lucent and its expert also fail to address patent validity and provide no response to Gateway's argument in its opening brief that the Court has already found that Dr. Jaswant Jain's prior work invalidates the

1  Netravali '272 patent subject only to Gateway prevailing at trial on the narrow issue of when
2  prior art inventor Dr. Jaswant Jain first ran his prior art software program. D.I. 1948 at 4-5.[3]
3        Lucent's second argument is that in 1996 an individual by the name of Kenneth
4  Rubenstein conducted an analysis of the two video patents and rendered his opinion that they
5  were "essential" to the MPEG-2 standard. Luc. Opp. Brf. at 4:18-20. This eleven year old
6  opinion from a third-party individual is both irrelevant and inadmissible as to whether MPEG-2
7  products infringe the two video patents. In order to make a finding of infringement, judicially
8  construed claims must be compared to the accused product. *Texas Instruments, Inc. v. United*
9  *States International Trade Commission*, 805 F.2d 1558, 1562 (Fed. Cir. 1986) ("Analysis of
10 patent infringement entails two inquiries: determination of the scope of the claim, <u>as a matter of</u>
11 <u>law</u>; and the factual finding of whether properly construed claims encompass the accused
12 structure."). Here, Mr. Rubenstein did not have the benefit of the Court's specific and detailed
13 claim construction orders for the two video patents, and thus his personal opinions on the
14 question of essentiality and/or infringement are simply irrelevant. D.I. 217 (Netravali '272); D.I.
15 311 (Haskell '226) (claim construction orders). Moreover, like the declaration of Lucent's
16 technical expert, Mr. Rubenstein's letter fails to opine that the issue is not close. Luc. Exh. 25
17 (Rubenstein Opinion). Also, like the Girod Declaration, Mr. Rubenstein's letter fails to address
18 the question of validity at all. Finally, Lucent has failed to prove that Mr. Rubenstein knows the
19 first thing about video coding let alone that he is a qualified expert in the field.
20       Lucent's third and final argument is that Gateway has somehow admitted that the two
21 video patents are "essential" to the MPEG-2 standard and thus, by inference, that products
22 implementing MPEG-2 necessarily infringe these patents. Luc. Opp. Brf. at 4:20-22. However,
23 Gateway has never made any such admission and emphatically denies that MPEG-2 infringes
24 either of the video patents. Indeed, Gateway has served upon Lucent detailed non-infringement
25
26 ----
[3] Please note that Gateway, in its opening brief, intended to refer to D.I. 1948 for the proposition that "the court granted partial summary judgment in Gateway's favor on several predicate issues relating to the '272 patent being invalid." Gateway's Mot. for Partial Summary Judgment at 11.
27 However, Gateway inadvertently cited D.I. 1923, rather than D.I. 1948 in its initial briefing.
28 Gateway takes this opportunity to clarify this citation.

| Gateway's Reply Brief in Support of Its Motion for Summary Judgment of No Willful Infringement | 3 | Case Nos. 02-CV-2060 B (CAB) 03-CV-0699-B (CAB, and 03-CV-41108-B CAB) |
|---|---|---|

contentions as well as a report by Gateway's expert Edward Delp setting forth his non-infringement opinions with respect to the video patents. Plies Decl.[4] Exh. 1 (Gateway's First Supplemental Response to Lucent's Interrogatory No. 21, December 29, 2005) at 15-17; Exh. 13 to Stadnick Decl. Opposing Summary Judgment Motions Concerning Video Coding Patents, filed under seal on 04/20/07 (cover page and exemplary excerpts from Professor' Delp's non-infringement report).

Lucent relies upon the Court's recent order relating to the parties' claims and defenses concerning the formation of MPT, in which the order states that "the parties do not dispute the two patents are essential to the MPEG-2 standard," as somehow demonstrating that Gateway has admitted that these patents are essential. Luc. Opp. Brf. at 4:21-22.  The Court, however, was merely acknowledging that for purposes of the defenses and counterclaims that were the subject of the parties' motions, the parties all assumed that the video patents were essential to MPEG-2. Gateway, however, has never admitted that the patents are, in fact, essential to MPEG-2 only that they are essential under Lucent's theory of infringement.  Indeed, in its Answer Gateway made this point expressly clear when it pled that "the Haskell Patent and Netravali Patent are ***allegedly*** MPEG-2 essential patents" *See* D.I. 2085 (Gateway's Second Amended Answer and Counterclaims to Plaintiffs' Second Amended Complaint at ¶177 (emphasis added)). In short, Lucent disingenuously tries to confuse the Court by falsely portraying Gateway's defenses and counterclaims pled in the alternative as being admissions.

**B.    Lucent Has No Evidence That Gateway Knew Or Should Have Known Of An Objectively High Risk Of Infringement**

In its opposition brief Lucent makes several arguments that Gateway was subjectively aware of a high risk of infringement, which is the second prong of the *Seagate* analysis. However, as detailed below, each of these arguments fails to show, much less by clear and

---

[4] *See* attached Declaration of Jeffrey Plies In Support of Gateway's Reply Brief in Support of its Motion for Partial Summary Judgment of No Willful Infringement of the Asserted Claims of U.S. Patent Nos. 4,439,759 (Fleming); 4,958,226 (Haskell); 4,383,272 (Netravali) and 4,763,356 (Day) [hereinafter "Plies Decl."].

1  convincing evidence, that Gateway had a subjective appreciation of an objectively high risk of
2  infringing valid video patents.

3  First, Lucent asserts that before this suit was filed, it provided notice of the patents to
4  Gateway, as well as an analysis of the alleged infringement. Luc. Opp. Brf. at 6:6-13. As a
5  result, Lucent claims that Gateway knew or should have known of an objectively high likelihood
6  of infringement. *Id.* However, simply identifying patents to Gateway is insufficient to show
7  subjective recklessness on the part of Gateway because in *Seagate* the Federal Circuit expressly
8  held that defendants no longer have an affirmative duty of due care. For Lucent to suggest that
9  the mere identification of patents to Gateway may trigger a finding of willfulness in effect
10 imposes upon Gateway a duty of due care, which is no longer the appropriate standard. *In re*
11 *Seagate Technology*, LLC, 2007 U.S. App. LEXIS 19768 * 22 (Fed. Cir. Aug. 20, 2007).

12 Lucent also alleges that it presented claim charts to Gateway concerning its infringement
13 assertions. Luc. Opp. Br. at 6:13-15. However, as explained previously, Gateway subsequently
14 prepared and presented to Lucent a non-infringement analysis. In turn, Lucent did not respond to
15 or rebut this analysis. D.I. 396, Exh. 15, (Walker Tr.) at 111:5-20. As a result, it appeared to
16 Gateway that it had convinced Lucent that it did not infringe the Netravali '272 and Haskell '226
17 patents. *Id.* Notably, in its opposition brief Lucent does not dispute that Gateway presented
18 these rebuttal non-infringement arguments to Lucent and that Lucent failed to respond to them.
19 Consequently, Lucent simply has no evidence to show that Gateway was actually aware of a high
20 risk of infringement and indeed the evidence clearly shows the opposite – that Gateway did not
21 believe there was a high risk of infringement in view of Lucent's failure to respond to Gateway's
22 non-infringement presentation. *Id.* at 111:5-20.

23 Second, Lucent argues that Gateway was aware of a high risk of infringement because of
24 the 1996 opinion by Kenneth Rubenstein that stated that the Haskell '226 and Netravali '272
25 were "essential" to the MPEG-2 standard. Lucent's Opp. Brf. at 7. As noted above, the opinion
26 of an individual who did not have the benefit of this Court's claim construction and who has not
27 even been shown to be an expert in the field is simply irrelevant and inadmissible with respect to
28

Gateway's Reply Brief in Support of Its Motion for                          Case Nos. 02-CV-2060 B (CAB)
Summary Judgment of No Willful Infringement     5     03-CV-0699-B (CAB, and 03-CV-41108-B CAB)

1  the issues of essentiality and infringement. In any event, Lucent fails to cite any evidence that
2  Gateway was ever even aware of this opinion <u>prior to litigation</u> and thus it is irrelevant on this
3  basis as well. *See Seagate*, 2007 U.S. App. LEXIS 19768 at *28 ("[I]n ordinary circumstance,
4  willfulness will depend on an infringer's prelitigation conduct.").[5]

5  Third, Lucent claims that Gateway failed to design around the patents. Luc. Opp. Brf. at
6  9. This point is irrelevant because Lucent erroneously puts the cart before the horse. Logically,
7  Lucent must first establish that Gateway was aware of a high risk of infringement, which it
8  cannot, before the issue of design-arounds and other remedial efforts might become relevant to
9  the willfulness inquiry. Plainly, a party does not undertake remedial measures until after it
10 believes that there is a substantial risk of infringement. Here, as indicated above, Gateway
11 presented a non-infringement analysis to Lucent and in the wake of Lucent's failure to respond
12 to Gateway's points, Gateway understood that Lucent was no longer asserting infringement of
13 these particular patents. D.I. 396, Exh. 15, (Walker Tr.) at 111:5-20. Thus, there was no need to
14 design around these patents and any failure to do so does not show that Gateway knew that there
15 was a high risk of infringement of a valid patent. Stated differently, Gateway's alleged failure to
16 pursue design-arounds is entirely consistent with Gateway's position that it was <u>not</u> aware of a
17 high risk of infringing a valid patent.

## III. LUCENT HAS NO EVIDENCE THAT GATEWAY WILLFULLY INFRINGED THE DAY '356 PATENT

### A. There Is No Evidence Of An Objectively High Risk Of Infringement

20 Lucent's motions for summary judgment of infringement and non-invalidity of the Day
21 '356 patent were denied by the Court. *See* D.I. 908 and 1367 (Lucent's motions) and D.I. 1795
22 and 1813 (Court's orders). In determining a motion for summary judgment, a court decides
23 whether "a reasonable jury could find for the non-movant." *Hutchins v. Zoll Med. Corp.*, 492
24 F.3d 1377, 1380 (Fed. Cir. 2007). Thus, the Court's previous denials of Lucent's motions for

---

[5] To the extent that Lucent attempts to rely on Gateway's post-suit conduct to establish willfulness, Lucent is now precluded from doing so because it never moved for a preliminary injunction. *Seagate,* 2007 U.S. App. LEXIS 19768 at *30 ("A patentee who does not attempt to stop an accused infringer's activities [by preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.").

summary judgment establish that a reasonable jury could find in favor of Gateway on the issues of non-infringement and validity.[6] In other words, the Court found that Gateway's non-infringement and invalidity arguments are reasonable. Furthermore, Gateway has already secured partial summary judgment in its favor that all but two of the asserted claims are not infringed. D.I. 1240 at 7. In view of the foregoing, it cannot be said that Gateway's defenses are "meritless" or that the questions of infringement and validity are not at least close.[7] Consequently, Lucent cannot show that there was an objectively "*high* risk" of infringement and the first prong of the *Seagate* inquiry cannot be met.

### B. There Is No Evidence That Gateway Knew Or Should Have Known Of A High Risk Of Infringement

Nor can Lucent prove the second prong of the *Seagate* analysis – that Gateway was subjectively aware of a high risk of infringement. First, Lucent has accused several products in this litigation that it could have identified to Gateway prior to suit but never did. Second, Lucent did not even end up accusing in this litigation certain products that it previously identified to Gateway as infringing. Third, in the case of the single product that Lucent both identified to Gateway before suit and presently accuses in this litigation, Lucent radically altered its infringement theories after it filed suit. In view of Lucent's own indecisiveness and lack of clarity concerning what infringes the Day '356 patent, there is simply no basis upon which Gateway knew or should have known that there was a high risk of infringement.

---

[6] Lucent's argument about whether or not a patentee must file for summary judgment to obtain a finding of willfulness is irrelevant to the analysis of the Day '356 patent because Lucent actually **did file** for summary judgment of infringement and non-invalidity for the Day patent.

[7] Lucent contends that Defendants' view of the law would mean that willfulness would never be tried to a jury. Luc. Opp. Brf. at 4:3-8. Lucent, however, fails to appreciate that the Federal Circuit's decision in *Seagate* was expressly intended to set a substantially higher bar to the recovery of enhanced damages and Lucent fails to explain why this is an unreasonable outcome in view of the Federal Circuit's intent. *See Seagate*, 2007 U.S. App. LEXIS 19768 at *21-22 (noting that the Court is abandoning the earlier standard of due care and adopting the higher threshold showing of recklessness). Moreover, *Seagate* has expressly predicated willfulness findings on procedural requirements. *Id*. at *30-31 (requiring that a preliminary injunction be sought in order to seek willfulness based on post-suit conduct). Accordingly, requiring a party to seek or obtain summary judgment would be consistent with the *Seagate* decision.

In this litigation, Lucent has accused products that it never identified to Gateway before suit and at the same time failed to accuse products that it did identify to Gateway as infringing prior to suit. In particular, the only two products allegedly accused of infringement prior to suit were Microsoft Outlook and Microsoft Explorer. Plies Decl. Exh. 3 (Indyk Dep.) at 37:3-21; 93:9-22; Plies Decl. Exh. 4 (Samuels Dep.) at 65:19-66:9; 100:15 – 101:2. However, Lucent is presently accusing the following list of products of infringing the Day '356 patent: (1) Microsoft Outlook, (2) Microsoft Money, (3) Microsoft Windows Mobile; and (4) Inuit Quicken. Exh. 2 (Lucent's 7th Supp. Resp. to Interrog. No. 2, Attach. B) at 120. Thus, Microsoft Outlook is the only product identified by Lucent prior to suit that is also now charged with infringement. Notably, despite identifying Microsoft Explorer as an infringing product prior to suit, Lucent is not presently accusing that product. *Id*.

Lucent has also radically altered its infringement theory with respect to Microsoft Outlook, the only product that Lucent identified to Gateway before suit and that is also presently accused of infringement. With respect to this product, Lucent's own witness testified that before suit Lucent identified the "email" and "address book" features of Outlook as allegedly infringing. Plies Decl. Exh. 4 (Samuels Dep.) at 65:19-67:13; 100:15 – 101:2. In contrast, Lucent's current contentions make no mention of the "email" or "address book" features of Microsoft Outlook. Instead, Lucent now accuses the "Appointment Creation form" feature of the Microsoft Outlook product. Plies Decl. Exh. 2 (Lucent's 7th Supp. Resp. to Interrog. No. 2, Attach. B) at 140-142.

There is simply no basis for finding that Gateway knew or should have known prior to suit that there was a high probability of infringement when Lucent itself failed to identify most of the accused products prior to litigation, failed to accuse products during litigation that it had earlier identified, and changed its infringement theory with respect to the only product that was both identified prior to suit and accused during litigation. If Lucent could not determine which products infringed and why they infringed prior to suit, then it is unreasonable to expect that Gateway knew or should have known that the presently accused products posed a "high risk" of infringement.

This is particularly true in view of the fact that Lucent's infringement allegations with respect to the Day '356 patent are directed to <u>specific features</u> of particular products. *See* Plies Decl. Exh. 2 at (Lucent's 7th Supp. Resp. to Interrog. No. 2, Attach. B) at 127-129 (accusing Money's "transaction form"); 133 (accusing Quicken's "account register"); 140-142 (accusing Outlook's "Appointment Creation form"); and 144-145 (accusing Windows Mobile's Calendar appointment entry form). Thus, without an identification of both the particular product and the specific accused feature by Lucent, there is no reason to believe that Gateway would or should have known that there was a high risk of infringement. Plainly, Gateway could not have been reckless simply for failing to be a "mind reader." Further, Lucent cannot now rely on Gateway's post-suit conduct to establish willfulness because Lucent never filed for a preliminary injunction. *See Seagate,* 2007 U.S. App. LEXIS 19768 at *30. In view of the foregoing, it is clear that no reasonable jury could conclude by clear and convincing evidence that Gateway acted recklessly in the face of a known high risk of infringement.[8]

To the extent that the Court determines that a fact issue exists with respect to whether Lucent's pre-suit identification of Microsoft Outlook might support a finding that Gateway's conduct was reckless, the Court should nevertheless grant partial summary judgment of no willful infringement with respect to the accused Microsoft Money, Microsoft Windows Mobile, and Intuit Quicken products. It is undisputed that Lucent never identified these three products to Gateway prior to suit.[9] Thus, there is no basis for the notion that Gateway acted recklessly prior to suit with respect to these products which were neither identified nor accused by Lucent until

---

[8] Lucent effectively concedes that it has no evidence that Gateway acted recklessly and instead implores the court to deny Gateway's motion under some sort of ill-defined estoppel-like theory. Luc. Opp. Brf. at 11:15-19. In particular, Lucent complains about a couple of instructions not to answer <u>based on privilege grounds</u> given by Gateway's counsel to Gateway's former in-house counsel during his deposition. *Id.* Lucent fails to explain why these objections were improper and has never moved to compel answers to these questions. Lucent cannot be heard now, a year and a half after the deposition, to complain about answers it allegedly did not receive. In any event, to avoid summary judgment, Lucent must come forward with credible evidence from which a reasonable jury could find that Gateway willfully infringed under a clear and convincing standard. Carping about discovery is not such affirmative evidence.

[9] Lucent's own witness confirms that Quicken and Money were <u>not</u> identified to Gateway before this lawsuit was filed. Plies Decl. Exh. 4 (Samuels Dep.) at 25:9-14; 68:8-24.

after this lawsuit was commenced.  Further, Lucent's failure to move for a preliminary injunction on these products prevents Lucent from asserting that Gateway's post-suit conduct has been willful. *Seagate,* 2007 U.S. App. LEXIS 19768 at *30. As a result, it would be inappropriate for Lucent to recover enhanced damages for these three products assuming they are found to infringe.

## IV.   CONCLUSION

In view of the foregoing, Gateway respectfully requests that the Court grant Gateway's instant motion for partial summary judgment of no willful infringement with respect to the Netravali '272, Haskell '226, Day '356, Fleming '759, and Agulnick '295 patents.

Dated: October 12, 2007            DECHERT LLP


By:     /s/ Jeffrey B. Plies_____
        Jeffrey B. Plies

Attorneys For Defendants And Counterclaimants
GATEWAY, INC. *et. al*.