# EXHIBIT 1

1  Bryan W. Farney (SBN: 06826600 (TX)(*pro hac vice*)
   Jeffrey B. Plies (SBN: 24027621)(*pro hac vice*)
2  DEWEY BALLANTINE LLP
   401 Congress Avenue, Suite 3200
3  Austin, Texas 78701
   Telephone: (512) 226-0300
4  Facsimile: (512) 226-0333

5  *Additional counsel listed on signature page*

6  Attorneys for Defendants and Counter-Claimants,
   GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
7  GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
   LLC, AND COWABUNGA ENTERPRISES, INC.

8

9              **UNITED STATES DISTRICT COURT**

10             **SOUTHERN DISTRICT OF CALIFORNIA**

11  LUCENT TECHNOLOGIES, INC.              )  Case No. 02-CV-2060 B (WMc)
                                           )        consolidated with
12        Plaintiff and Counter-Defendant, )  Case No. 03-CV-699 B (WMc)
                                           )  Case No. 03-CV-1108 B (WMc)
13        vs.                              )
                                           )  **GATEWAY'S FIRST SUPPLEMENTAL**
14  GATEWAY, INC., GATEWAY COUNTRY        )  **RESPONSE TO LUCENT'S**
    STORES LLC, GATEWAY COMPANIES,        )  **INTERROGATORY NO. 21**
15  INC., GATEWAY MANUFACTURING LLC       )
    and COWABUNGA ENTERPRISES, INC.       )
16                                         )
          Defendants and Counter-Claimants, )
17                                         )
          and                              )
18                                         )
    MICROSOFT CORPORATION                  )
19                                         )
          Intervenor and Counter-Claimant. )
20                                         )
                                           )
21  AND CONSOLIDATED CASES                 )
                                           )
22  _____

23  PROPOUNDING PARTY:    Plaintiff Lucent Technologies, Inc.

24  RESPONDING PARTIES:   Defendants Gateway, Inc., Gateway Country Stores LLC, Gateway
                          Companies, Inc., Gateway Manufacturing LLC, and Cowabunga
25                        Enterprises, Inc.

26  SET NUMBER:           Two (No. 21) (Supplemental)

27          Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants Gateway,

28  Inc., Gateway Country Stores LLC, Gateway Companies, Inc., Gateway Manufacturing LLC,

           **EXHIBIT 1**                    **PAGE 4**
                              -1-

1   and Cowabunga Enterprises, Inc. (collectively "Gateway") hereby object and respond to the

2   Second Set of Interrogatories propounded by Plaintiff Lucent Technologies, Inc. ("Lucent").

3   ## GENERAL STATEMENTS

4       1.      Gateway incorporates by reference each and every general objection set forth

5   below into each specific response.  The specific response may repeat a general objection for

6   emphasis or some other reason.  The failure to include any general objection in any specific

7   response shall not be interpreted as a waiver of any general objection to that response.

8       2.      By responding to Lucent's Second Set of Interrogatories, Gateway does not waive

9   any objection that may be applicable to:  (a) the use, for any purpose, by Lucent of any

10  information or documents given in response to Lucent's Second Set of Interrogatories; or (b) the

11  admissibility, relevancy, or materiality of any of the information or documents to any issue in

12  this case.

13      3.      No incidental or implied admissions are intended by the responses herein.  The

14  fact that Gateway has answered or objected to any interrogatory should not be taken as an

15  admission that Gateway accepts or admits the existence of any "fact" set forth or assumed by

16  such interrogatory.

17      4.      Gateway's supplemental responses to Lucent's Second Set of Interrogatories are

18  made to the best of Gateway's present knowledge, information, and belief.  Gateway reserves the

19  right to supplement and amend these supplemental responses should future investigation indicate

20  that such supplementation or amendment is necessary.  Gateway reserves the right to make any

21  use of, or to introduce at any hearing and at trial, information or documents that are responsive to

22  Lucent's interrogatories, but discovered subsequent to Gateway's service of these supplemental

23  responses, including, but not limited to, any information or documents obtained in discovery

24  herein.

25      5.      By stating that it will produce documents or provide information in response to

26  any particular interrogatory, Gateway makes no representation that any such documents or

27  information exist.

28

**EXHIBIT 1**                    **PAGE 5**
-2-

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES
(NO. 21) Case No.: 02-CV-2060 B (WMc)

1

**GENERAL OBJECTIONS**

2   Gateway hereby incorporates by reference the General Objections listed in Gateway's

3   June 30, 2004 response to Lucent's Second Set of Interrogatories.

4

**SPECIFIC OBJECTIONS AND RESPONSES**

5   **INTERROGATORY NO. 21:**

6   For each Asserted Claim of each Asserted Patent, identify all factual and legal bases for

7   Gateway's contention that each Gateway Accused Product does not infringe such claim directly

8   (either literally or under the doctrine of equivalents) or indirectly (either by inducement or

9   contributory infringement).

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:**

11  Gateway incorporates by reference each and every one of its General Statements and

12  General Objections in its June 30, 2004 response to Lucent's Second Set of Interrogatories as

13  well as its Specific Objections to Interrogatory No 21.

14  Subject to and without waiver of its general and specific objections, and to the extent that

15  Gateway understands this interrogatory, Gateway responds as follows:

16  **U.S. Patent Nos. 4,317,956 (Torok); 4,617,676 (Jayant); 4,701,954 (Atal); and 4,910,781**
    **(Ketchum)**

17

18  Lucent has only accused products provided to Gateway by Microsoft of infringing these

19  patents. Therefore, Gateway expressly incorporates by reference any and all non-infringement

20  contentions, facts, testimony, and evidence provided to Lucent by Microsoft through Microsoft's

21  interrogatory responses, expert reports, documents, witness testimony, or otherwise.  Lucent has

22  also accused Dell of infringing these patents based upon its acts concerning the same products.

23  Thus, Gateway also expressly incorporates by reference any and all non-infringement

24  contentions, facts, testimony, and evidence provided to Lucent by Dell through Dell's

25  interrogatory responses, expert reports, documents, witness testimony, or otherwise.

26  **U.S. Patent No. 4,763,356 (Day)**

27  Regarding the software and operating systems made by Microsoft and supplied to

28  Gateway by Microsoft (Microsoft Money, Microsoft Outlook, Microsoft Outlook with Business

**EXHIBIT 1**                    **PAGE 6**
-3-

1 | Manager, Microsoft Pocket PC 2002, and Windows Mobile 2003 for Pocket PC), Gateway

2 | expressly incorporates by reference any and all applicable non-infringement contentions, facts,

3 | testimony, and evidence provided to Lucent by Microsoft through Microsoft's interrogatory

4 | responses (including, but not limited to, those served on June 30, 2004), expert reports,

5 | documents, witness testimony, or otherwise.

6 |       Lucent has also accused Dell of infringing the '356 patent based upon its acts concerning

7 | the same products on which Lucent bases its allegations against Gateway (the Microsoft products

8 | listed above and Intuit Quicken software). Gateway therefore also expressly incorporates by

9 | reference any and all applicable non-infringement contentions, facts, testimony, and evidence

10 | provided to Lucent by Dell through Dell's interrogatory responses, expert reports, documents,

11 | witness testimony, or otherwise.

12 |       The Quicken software that Lucent has accused of infringement is purchased from and

13 | provided to Gateway by Intuit and Intuit is solely responsible for the design of the Quicken

14 | product. Gateway does not have, nor did it ever have, control over the version of the Quicken

15 | software that is available from Intuit nor the features of the software Gateway purchased from

16 | Quicken, and Lucent has provided no information regarding which version of the Quicken

17 | software it alleges infringes the '356 patent. Gateway's positions are based on the information it

18 | currently has available to it, subject to the foregoing limitations as a result of Lucent's failure to

19 | provide information sufficient to support or allow evaluation of its infringement allegations.

20 | Gateway's investigation is ongoing as is discovery, and Gateway therefore expressly reserves the

21 | right to supplement or amend this response and/or to adopt any additional non-infringement

22 | contentions, including those advocated by Microsoft and/or Dell.

23 |       Based on its investigation and the information available to date, including Lucent's

24 | infringement contentions, Gateway contends as follows:

25 | **Claim 1**

26 |       Claim 1 contains means-plus-function limitations that are governed by 35 U.S.C.

27 | § 112(6). As a result, Lucent bears the burden of proving that the accused products incorporate

28 | the disclosed structure or equivalents thereof. However, Lucent has failed to provide any

**EXHIBIT 1**          -4-          **PAGE 7**

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES
(NO. 21) Case No.: 02-CV-2060 B (WMc)

1  evidence regarding the structure, function and operation of any version of Quicken software, and

2  has failed to pursue discovery from Intuit necessary to establish the structure, function and

3  operation of that software.

4    Subject to the foregoing, the Quicken software does not meet the "means for indicating a

5  particular one of said information fields into which information is to be inserted and for

6  concurrently displaying a predefined tool associated with said one of said fields, said predefined

7  tool being operable to supply information of the kind identified for said one field, said tool being

8  selected from a group of predefined tools including at least a tool adapted to supply an individual

9  entry from a menu of alternatives and at least a tool adapted to allow said user to compose said

10  information" limitation of Claim 1. As construed by the court, this limitation requires structure

11  that is the same as or equivalent to that disclosed in the '356 patent specification at Col. 13; 31-

12  51, 57-58 and 64-68, and Col. 14; 1-20 and 25-29 and the accompanying Figures 15 and 16, and

13  a graphical keyboard tool or a graphical number keypad tool, which allows the user to compose

14  information by pointing to the display keys of that tool. Based on the information currently

15  available, the Quicken software does not have the requisite same or equivalent structure. There

16  is no evidence that the Quicken software utilizes a graphical keyboard tool or graphical number

17  keypad tool, nor that it is otherwise programmed with algorithms that are the same as or

18  equivalent to those disclosed in the '356 patent specification.

19    The Quicken software also does not meet the "means for inserting in said one field

20  information that is derived as a result of said user operating said displayed tool" limitation. As

21  construed by the court, this limitation requires structure that is the same as or equivalent to that

22  disclosed in the '356 patent specification at Col. 13: 68 - Col. 14:4 and Col. 14:50 - Col. 15:19.

23  Based on the information currently available, the Quicken software does not have the requisite

24  same or equivalent structure. There is no evidence that the Quicken software is programmed

25  with algorithms that are the same as or equivalent to those disclosed in the '356 patent

26  specification.

27  **Claim 2**

28    The Quicken software does not meet the limitations of Claim 2 for the same reasons as

**EXHIBIT 1**                    **PAGE 8**
-5-

1  those described above regarding Claim 1, from which Claim 2 depends.

2  **Claim 4**

3       The Quicken software does not meet the limitations of Claim 4 for the same reasons as

4  those described above regarding Claim 1, from which Claim 4 depends.

5  **Claim 6**

6       The Quicken software does not meet the limitations of Claim 6 for the same reasons as

7  those described above regarding Claim 1, from which Claim 6 depends.  Moreover, as conceded

8  by Lucent, Claim 6 is by its terms inapplicable to computer systems that do not use a touch

9  sensitive screen.

10  **Claim 7**

11       The Quicken software does not meet the limitations of Claim 7 for the same reasons as

12  those described above regarding Claim 1, from which Claim 7 depends.  Moreover, as conceded

13  by Lucent, Claim 7 is by its terms inapplicable to computer systems that do not use a touch

14  sensitive screen.

15  **Claim 10**

16       Claim 10 contains means-plus-function limitations that are governed by 35 U.S.C.

17  § 112(6).  As a result, Lucent bears the burden of proving that the accused products incorporate

18  the disclosed structure or equivalents thereof.  However, Lucent has failed to provide any

19  evidence regarding the structure, function and operation of either the Quicken software, and has

20  failed to pursue discovery from Intuit necessary to establish the structure, function and operation

21  of those products.

22       Subject to the foregoing, the Quicken software does not meet the "means for displaying a

23  plurality of information fields and for identifying for each field a kind of information to be

24  inserted therein" limitation of Claim 10.  As construed by the court, this limitation requires

25  structure that is the same as or equivalent to that disclosed in the '356 patent specification at Col.

26  11:57058, Col. 13:24-31, Col. 11:62-64, and Col. 12:8-11 and accompanying Figures 13 and 15.

27  Based on the information currently available, the Quicken software does not have the requisite

28  same or equivalent structure.  There is no evidence that the Quicken software is programmed

**EXHIBIT 1** ———————————— **PAGE 9**
-6-

1  with algorithms that are the same as or equivalent to those disclosed in the '356 patent

2  specification.

3      The Quicken software does not meet the "means for storing a plurality of predefined tools

4  associated with respective ones of said fields, each of said tools being adapted to supply

5  information of the kind identified for its associated field" limitation. As construed by the court,

6  this limitation requires structure that is the same as or equivalent to that disclosed in the '356

7  patent specification at Col. 11:57-61 and Col. 15:39-45. Based on the information currently

8  available, the Quicken software does not have the requisite same or equivalent structure. There

9  is no evidence that the Quicken software has predefined tools that are the same as or equivalent

10  of those disclosed in the '356 patent.

11      The Quicken software does not meet the "means responsive to information being inserted

12  in at least one of said fields for indicating another of said fields to be filled in and for

13  concurrently displaying the respective one of said tools to be used by the user to supply the kind

14  of information identified for said other field" limitation. As construed by the court, this

15  limitation requires structure that is the same as or equivalent to that disclosed in the '356 patent

16  specification at Col. 15:3-13, Col. 13:31-68, and Col. 14:1-20 and the accompanying Figures 15

17  and 16. Based on the information currently available, the Quicken software does not have the

18  requisite same or equivalent structure. There is no evidence that the Quicken software is

19  programmed with algorithms that are the same as or equivalent to those disclosed in the '356

20  patent specification.

21  **Claim 11**

22      The Quicken software does not meet the limitations of Claim 11 for the same reasons as

23  those described above regarding Claim 10, from which Claim 11 depends.

24  **Claim 12**

25      The Quicken software does not meet the limitations of Claim 12 for the same reasons as

26  those described above regarding Claims 10 and 11, from which Claim 12 depends.

27  **Claim 13**

28      The Quicken software does not meet the limitations of Claim 13 for the same reasons as

**EXHIBIT 1**                                    **PAGE 10**

-7-

1  those described above regarding Claim 10, from which Claim 13 depends.  Moreover, there is no

2  evidence that the Quicken software has a plurality of predefined tools that include at least a

3  number pad, a keyboard and a calculator.

4  **Claim 15**

5          The Quicken software does not meet the limitations of Claim 15 for the same reasons as

6  those described above regarding Claim 10, from which Claim 15 depends.  Moreover, as

7  conceded by Lucent, Claim 15 is by its terms inapplicable to computer systems that do not use a

8  touch screen.

9  **Claim 16**

10         The Quicken software does not meet the limitations of Claim 16 for the same reasons as

11  those described above regarding Claim 10, from which Claim 16 depends.  Moreover, as

12  conceded by Lucent, Claim 16 is inapplicable to computer systems that do not use a touch

13  screen.

14  **Claim 19**

15         Lucent has failed to put forth any evidence of the structure, function and operation of any

16  version of the Quicken software.  Based on the information currently available, the Quicken

17  software does not meet the "predefined tools associated with said one of said fields" or "tool

18  adapted to allow said user to compose said information" limitations of Claim 19 as construed by

19  the court.  There is no evidence that the Quicken software has either a tool specified by the

20  system as an appropriate tool for filling in the information called for by that field, or a graphical

21  keyboard tool or a graphical number keypad tool which allows the user to compose information

22  by pointing to the display keys of that tool.  Furthermore, there is no evidence that the Quicken

23  software utilizes any tools that are concurrently displayed with an information field within the

24  meaning of the '356 patent.

25  **Claim 21**

26         The Quicken software does not meet the limitations of Claim 21 for the same reasons as

27  those described above regarding Claim 19, from which Claim 21 depends.  Moreover, as

28  conceded by Lucent, Claim 21 is by its terms inapplicable to computer systems that do not use a

**EXHIBIT 1**                                    -8-                                    **PAGE 11**

1  touch screen.

2  **U.S. Patent No. 5,347,295 (Agulnick)**

3      Regarding the software and operating systems made by Microsoft and supplied to

4  Gateway directly or indirectly by Microsoft (Microsoft Windows Pocket PC, Microsoft

5  Windows Mobile, and Microsoft Windows XP Tablet PC Edition), Gateway expressly

6  incorporates by reference any and all non-infringement contentions, facts, testimony, and

7  evidence provided to Lucent by Microsoft through Microsoft's interrogatory responses

8  (including, but not limited to, those served on June 30, 2004), expert reports, documents, witness

9  testimony, or otherwise.

10      Lucent has also accused Dell of infringing the '295 patent based upon its acts concerning

11  the same products on which Lucent bases its allegations against Gateway (the Microsoft products

12  listed above and Palm OS based products).  Thus, Gateway also expressly incorporates by

13  reference any and all non-infringement contentions, facts, testimony, and evidence provided to

14  Lucent by Dell through Dell's interrogatory responses, expert reports, documents, witness

15  testimony, or otherwise.

16      The Palm OS software that Lucent has accused of infringement is purchased from and

17  provided to Gateway by PalmSource, Palm, Inc. and/or PalmOne, Inc. ("Palm") and is installed

18  on a Palm stylus-based handheld products manufactured primarily by Palm.  Gateway does not

19  have, nor did it ever have, control over the version of the Palm OS software that was installed on

20  a given Palm product sold by Gateway, and Lucent has provided no information regarding what

21  version of the Palm OS software it alleges infringes the '295 patent.  Gateway's positions are

22  based on the information it currently has available to it, subject to the foregoing limitations as a

23  result of Lucent's failure to provide information sufficient to support or allow evaluation of its

24  infringement allegations.  Gateway's investigation is ongoing as is discovery, and Gateway

25  therefore expressly reserves the right to supplement or amend this response.

26      Based on its investigation and the information available to date, including Lucent's

27  infringement contentions, Gateway contends as follows:

28

**EXHIBIT 1**                                              **PAGE 12**

-9-

**Claim 1**

Claim 1 contains means-plus-function limitations that are governed by 35 U.S.C. § 112(6). As a result, Lucent bears the burden of proving that the accused products incorporate the disclosed structure or equivalents thereof. However, Lucent has failed to provide any evidence regarding the structure, function and operation of either the Palm OS or the Palm handheld product, and has failed to pursue discovery from Palm necessary to establish the structure, function and operation of those products.

Subject to the foregoing, the Palm products do not meet either the "first detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen," "second detecting means coupled to said computer for detecting a departure of the stylus tip from the screen," "means coupled to said computer for defining termination of a gesture comprising at least one stroke in response to said departure of the stylus tip," or "means coupled to said computer for recognizing a plurality of said gestures, said recognizing means including means for comparing each said gesture to at least one predefined shape" limitations. As construed by the court, all of these limitations require a pen position digitizer and stylus that is the same or equivalent in structure to the pen position digitizer and stylus described at Col. 6: 53-68. Based on the information currently available, the Palm products do not have the requisite same or equivalent structure. There is no evidence that the Palm products have a pen position digitizer or stylus that is the same or equivalent in structure to the pen position digitizer or stylus disclosed in the specification.

Moreover, Lucent must establish that the Palm products are programmed with algorithms that are the same as or equivalent to the gesture recognition techniques disclosed in one of the following sources: "Automatic Recognition of Handprinted Characters - The State of the Art," Proceedings of the IEEE, pp. 469-487, Vol. 68, No. 4, April 1980; U.S. Patent No. 5,151,950, "Method for Pattern Recognition" (Hullender); or "The Handwriting Translation Subsystem," Appendix I, Architecture Reference Manual, Part Five, Input and Handwriting Translation, Chapter 1.2, pp. 7-10. There is no evidence, however, that the Palm products are programmed with algorithms that are the same as or equivalent to the disclosed algorithms.

**EXHIBIT 1** _____ -10- **PAGE 13**

1    In addition, the Palm products do not meet the "means coupled to said computer for

2    implementing each said recognized gesture, said implementing means including means for

3    performing a predetermined action associated with each said predefined shape, said

4    predetermined action being determined by the context in which said gesture was used, including

5    a first context in which said action is executed upon an operating system level object and a

6    second context in which said action is executed upon an application level object" limitation.  As

7    construed by the court, this limitation specifically claims a system design that allows "use of a

8    single set of gestures for identical executable commands at both the operating system level and

9    the application level."  Based on the information currently available, the Palm products do not

10    have the requisite same or equivalent operation.  There is no evidence that the Palm products

11    utilize a single set of gestures for identical executable commands at both the operating system

12    level and application level.  Lucent has to date provided only two examples of such operations

13    that it alleges meet this limitation.  In the first such example, the single tap in the operating

14    system context (to open an application) is not the same executable command as a single tap in an

15    application context (to relocate the cursor).  In the second example, the tap and hold gesture does

16    not function as described by Lucent in either the operating system context or the application

17    context in at least some versions of the Palm products.

18    **Claim 3**

19    Gateway incorporates by reference all non-infringement contentions provided to Lucent

20    by Microsoft regarding the alleged infringement by Microsoft Windows Tablet PC Edition.

21    **Claim 4**

22    The Palm products do not meet the limitations of Claim 4 for the same reasons as those

23    described above regarding Claim 1, from which Claim 4 depends.

24    **Claim 6**

25    The Palm products do not meet the limitations of Claim 6 for the same reasons as those

26    described above regarding Claim 1, from which Claim 6 depends.  The Palm products also do

27    not meet the "means coupled to said computer for displaying on said screen a shape representing

28    the actual gesture made by a user of the computer" limitation of Claim 6.  As construed by the

**EXHIBIT 1**                                    -11-                                    **PAGE 14**

1    court, this limitation requires structure that is the same as or equivalent to that disclosed in the

2    specification of the '295 patent at Col. 6:33-34, Col. 6:36-37, Col. 6:20-21 and Col. 6:48-52 and

3    accompanying Figures 2 and 3. Based on the information currently available, the Palm products

4    do not have the requisite same or equivalent structure. There is no evidence that the structure,

5    function and operation of the Palm products is the same as or equivalent to that disclosed in the

6    specification of the '295 patent.

7    **Claim 12**

8        Gateway incorporates by reference all non-infringement contentions provided to Lucent

9    by Microsoft regarding the alleged infringement by Microsoft Windows Tablet PC Edition.

10    **Claim 39**

11        Claim 39 contains means-plus-function limitations that are governed by 35 U.S.C.

12    § 112(6). As a result, Lucent bears the burden of proving that the accused products incorporate

13    the disclosed structure or equivalents thereof. However, Lucent has failed to provide any

14    evidence regarding the structure, function and operation of either the Palm OS or the Palm

15    handheld product, and has failed to pursue discovery from Palm necessary to establish the

16    structure, function and operation of those products.

17        Subject to the foregoing, the Palm products do not meet the "detecting means coupled to

18    said computer for detecting a stroke of the stylus tip in contact with the screen" limitation of

19    Claim 39. As construed by the court, this limitation requires a pen position digitizer and stylus

20    that is the same or equivalent in structure to the pen position digitizer and stylus described at Col.

21    6: 53-68. Based on the information currently available, the Palm products do not have the

22    requisite same or equivalent structure. There is no evidence that the Palm products have a pen

23    position digitizer or stylus that is the same or equivalent in structure to the pen position digitizer

24    or stylus disclosed in the specification of the '295 patent.

25        The Palm products also do not meet the "means coupled to said computer for recognizing

26    a gesture comprising at least one stroke and an event indicating termination of the gesture, said

27    recognizing means including means for comparing said gesture to at least one predefined shape

28    and being for recognizing at least a first gesture, a second gesture, and a third gesture comprising

**EXHIBIT 1**                                    **PAGE 15**

-12-

1    said first and second gestures" limitation. As construed by the court, this limitation requires

2    structure that is the same as or equivalent to that described in the specification of the '295 patent

3    at Col. 6:36-37, Col. 1:65-Col. 2:5 and Col. 17:1-14. Based on the information currently

4    available, the Palm products do not have the requisite same or equivalent structure. There is no

5    evidence that the structure, function and operation of the Palm products is the same as or

6    equivalent to that disclosed in the specification of the '295 patent. Lucent has to date identified

7    only one example of an operation of the Palm products that allegedly meets this limitation.

8    However, based on the currently available information, the Palm products do not utilize single

9    tap, double tap, and triple tap commands to select various portions within an application

10   program.

11          Moreover, Lucent must establish that the accused Palm products are programmed with

12   algorithms that are the same as or equivalent to the gesture recognition techniques disclosed in

13   one of the following sources: "Automatic Recognition of Handprinted Characters - The State of

14   the Art," Proceedings of the IEEE, pp. 469-487, Vol. 68, No. 4, April 1980; U.S. Patent No.

15   5,151,950, "Method for Pattern Recognition" (Hullender); or "The Handwriting Translation

16   Subsystem," Appendix I, Architecture Reference Manual, Part Five, Input and Handwriting

17   Translation, Chapter 1.2, pp. 7-10. There is no evidence, however, that any version of the Palm

18   products is programmed with algorithms that are the same as or equivalent to the disclosed

19   algorithms.

20   **Claim 40**

21          The Palm products do not meet the limitations of Claim 40 for the same reasons as those

22   described above regarding Claim 39, from which Claim 40 depends. Moreover, the Palm

23   products do not meet the limitation of Claim 40 which requires "first and second gestures" that

24   are of "substantially identical" shapes. Lucent has to date identified only one example of an

25   operation of the Palm products that allegedly meet this limitation. However, at least some of the

26   accused Palm products do not utilize single tap, double tap, and triple tap commands to select

27   various portions within an application program.

28

**EXHIBIT 1**                                                      **PAGE 16**

-13-

**Claim 41**

Claim 41 contains means-plus-function limitations that are governed by 35 U.S.C. § 112(6). As a result, Lucent bears the burden of proving that the accused products incorporate the disclosed structure or equivalents thereof. However, Lucent has failed to provide any evidence regarding the structure, function and operation of either the Palm OS or the Palm handheld product, and has failed to pursue discovery from Palm necessary to establish the structure, function and operation of those products.

Subject to the foregoing, the Palm products do not meet either the "first detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen" or "second detecting means for detecting a direction of motion of the creation of said gesture, wherein the predefined shape of said recognized gesture also represents said direction of motion" limitations. As construed by the court, these limitations require a pen position digitizer that is the same or equivalent in structure to the pen position digitizer described at Col. 6: 53-68. Based on the information currently available, the Palm products do not have the requisite same or equivalent structure. There is no evidence that the Palm products not have a pen position digitizer that is the same or equivalent in structure to the pen position digitizer disclosed in the specification of the '295 patent.

Moreover, Lucent must establish that the Palm products are programmed with algorithms that are the same as or equivalent to the gesture recognition techniques disclosed in one of the following sources: "Automatic Recognition of Handprinted Characters - The State of the Art," Proceedings of the IEEE, pp. 469-487, Vol. 68, No. 4, April 1980; U.S. Patent No. 5,151,950, "Method for Pattern Recognition" (Hullender); or "The Handwriting Translation Subsystem," Appendix I, Architecture Reference Manual, Part Five, Input and Handwriting Translation, Chapter 1.2, pp. 7-10. There is no evidence that any version of the Palm products is programmed with algorithms that are the same as or equivalent to the disclosed algorithms.

**Claim 43**

Gateway incorporates by reference all non-infringement contentions provided to Lucent by Microsoft regarding the alleged infringement by Microsoft Windows Tablet PC Edition.

**Claim 46**

The Palm products do not meet the limitations of Claim 46 for the same reasons as those described above regarding Claim 41, from which Claim 46 depends.

**U.S. Patent No. 4,383,272 (Netravali)**

Gateway expressly incorporates by reference any and all non-infringement contentions, facts, testimony, and evidence provided to Lucent by Microsoft and Dell's interrogatory responses, expert reports, documents, witness testimony, or otherwise. Even though Lucent separately accuses Microsoft Windows Media Player and Gateway's DVD decoder software of infringement, Lucent's infringement contentions appear to be based on these products' alleged practice of the MPEG standards (ISO/IEC 11172 and 13818). Thus, to the extent that Lucent is able to prove that Gateway's products practice these, or similar, standards, the standards-based non-infringement arguments articulated by Microsoft apply with equal force to all of Gateway's accused products. Gateway, however, adds or emphasizes the following non-infringement contentions.

**Claims 13 and 22**

The accused MPEG decoders also do not meet the "selecting [related/corresponding] locations as a function of displacement of objects in said picture" limitations because they do not choose or decide which locations in the preceding and succeeding pictures are going to be used for interpolation. Instead, MPEG decoders are directed by the MPEG encoder through the use of transmitted information to use particular locations in the preceding and succeeding pictures. Thus, to the extent that this method step is performed at all in the MPEG encode-decode process it is performed by the encoder. Similarly, MPEG decoders do not rely on the displacement of objects to identify or select the related locations. Instead, they rely on information provided by the encoder to direct them to which locations are to be used in the interpolation process. Indeed, the decoder itself possesses no knowledge about and no ability to compute the movement of objects in the pictures.

Nor do the accused MPEG decoders perform an equivalent to these claimed method steps. In particular, having the motion estimation and hence the choosing of the related locations

1    take place in the encoder (as in MPEG) is substantially different than having the choosing take

2    place in the decoder (as in claims 13 and 22). For one thing, the encoder can more precisely

3    carry out motion estimation because it has access to the actual uncompressed video pictures. In

4    contrast the decoder would have to choose related location (*i.e.*, by performing motion

5    estimation) using reconstructed pictures. In addition, the two approaches lead to substantially

6    different results. The more accurate motion estimation that can be obtained by an encoder results

7    in less residual errors in the reconstructed pictures resulting in superior image quality at a given

8    bit rate. In addition, by having the motion estimation carried out by the encoder, this

9    substantially reduces the cost and complexity of the decoder which is an important consideration

10   for market acceptance and dissemination of the technology. Moreover, it allows for system

11   improvements (e.g., improved motion estimation algorithms) to be employed even after decoders

12   have already been sold and are in the field.

13   **U.S. Patent No. 4,958,226 (Haskell)**

14          Gateway expressly incorporates by reference any and all non-infringement contentions,

15   facts, testimony, and evidence provided to Lucent by Microsoft and Dell's interrogatory

16   responses, expert reports, documents, witness testimony, or otherwise. Even though Lucent

17   separately accuses Microsoft Windows Media Player and Gateway's DVD decoder software of

18   infringement, Lucent's infringement contentions appear to be based on these products' alleged

19   practice of the MPEG standards (ISO/IEC 11172 and 13818). Thus, to the extent that Lucent is

20   able to prove that Gateway's products practice these, or similar, standards, the standards-based

21   non-infringement arguments articulated by Microsoft apply with equal force to all of Gateway's

22   accused products. Gateway, however, adds or emphasizes the following non-infringement

23   contentions.

24          The accused MPEG decoders do not meet the limitation "means ... to develop said

25   interpolated blocks" of claim 12. The Court has determined that this is a means-plus-function

26   limitation governed by 35 U.S.C. §112 ¶6 and has identified the corresponding structure as

27   including shift circuits 31 and 39. In addition, the Court has identified the description of these

28   shift circuits at Col 4 lines 38-50 as also being part of the corresponding structure. These shift

**EXHIBIT 1**                                                    **PAGE 19**

-16-

1    circuits use the same motion vector that was used by the decoder to forward predict the

2    succeeding frame of a three frame group.  To generate an estimate of the present (middle) frame,

3    the first shift circuit scales this vector by one-half in order to translate pels from the preceding

4    frame.  The second shift vector scales this same vector by one-half and rotates its direction by

5    180 degrees to translate pels from the succeeding frame.

6         The accused MPEG decoders, assuming that Lucent proves they are complaint with the

7    standards, do not possess the shift circuits identified by the Court nor equivalent structures. The

8    MPEG standards describe the transmission of two separately computed motion vectors so that a

9    decoder can translate pels from the preceding and succeeding frames. Therefore, to the extent

10   that Lucent can prove that the accused products possess shift circuits at all, these shift circuits do

11   not use the same vector and scale it by one-half.  Nor does one of the shift circuits rotate this

12   scaled vector by 180 degrees.

13        To the extent that Lucent is able to prove that the accused products possess structures that

14   translate pels from the preceding and succeeding frames, these structures would not be

15   equivalent to the shift circuits identified by the Court as corresponding structure.  At a minimum,

16   such structures would operate in a substantially different way and achieve a substantially

17   different result than the corresponding structure of the '226 patent.  As described above, unlike

18   the shift circuits in the '226 patent, any allegedly equivalent structures in the accused products

19   would not use the same motion vector that was used to forward predict the succeeding frame and

20   scale it by one-half.  Nor would they rotate this scaled vector by 180 degrees.  Thus, the shift

21   circuits of claim 12 and any allegedly equivalent structures in the accused products operate in

22   substantially different ways.  In addition, any such allegedly equivalent structures would achieve

23   a substantially different result.  Compared with the shift circuits of claim 12, the allegedly

24   equivalent structures possessed by the accused products would be better able to interpolate

25   frames when objects in the frames are moving in a non-linear fashion or are

26   accelerating/decelerating.

27   **U.S. Patent No. 4,582,956 (Doughty)**

28        All the asserted claims of the Doughty patent require the detection of an "unmodulated"

**EXHIBIT 1**                                                                          **PAGE 20**

-17-

1    [FSK] signal and/or a structure for performing the function of detecting an "unmodulated"

2    signal. In addition the asserted claims of the Doughty patent also possess limitations which

3    require the reception of a modulated signal in response to the detection of an "unmodulated"

4    signal. The Court has construed "unmodulated signal" to mean "a signal containing no

5    information (intelligence expressed digitally as countable zeros and ones)." Lucent's

6    infringement contentions appear to be based upon the assumption that Gateway's accused

7    products receive and process information in accordance with the Telcordia standards GR-30-

8    CORE and GR-31-CORE. Lucent further appears to contend that the "Channel Seizure" and/or

9    "Mark" signals described in these standards are "unmodulated" for purposes of the asserted

10   patent claims.

11          To the extent that Lucent relies upon and is able to prove that Gateway's accused

12   products receive and process information in accordance with these Telcordia standards,

13   Gateway's products do not infringe any of the asserted claims because they neither detect nor are

14   responsive to an "unmodulated" signal. In particular, the GR-30-CORE standard describes the

15   Channel Seizure signal as consisting of "300 continuous bits of alternating '0's and '1's." *See*

16   GR-30-Core at 2.4.2. Pursuant to the Court's claim construction, this is not an unmodulated

17   signal because it carries information in the form of 300 countable "0"s and "1"s. Similarly, the

18   Mark signal is not an unmodulated signal because it carries information in the form of 180

19   countable mark bits (*i.e.*, "1"s). *Id.* Neither the Channel Seizure nor the Mark signals are

20   unmodulated signals for the additional reason that they convey information and intelligence in

21   the form of providing the customer premises equipment with forewarning that the caller

22   identification information is about to be received. *Id.* at 2.4. *See also* '956 patent at 3:38-40.

23   Lucent is not entitled to any range of equivalents for "unmodulated" signal due to at least

24   prosecution history estoppel, the "all elements rule," and the "Sage Products Doctrine."

25          In addition to the foregoing, Lucent, who has the burden of proving infringement, has

26   failed to provide specific factual evidence as to how any of the accused products allegedly meet

27   certain claim limitation. For instance, claims 9 and 18 are apparatus claims possessing means-

28   plus-function limitations such as "memory means for storing" and "means for storing" for which

**EXHIBIT 1**                                                    **PAGE 21**

-18-

1  the Court has identified corresponding structure that includes the description at Col. 4, Lns. 58-
2  61, Col. 4, Ln. 67 - Col. 5, Ln. 10 of the specification. Lucent has not put forward any evidence
3  that the accused devices possess memories that are segmented in the fashion called for by this
4  corresponding structure. Similarly, the asserted claims include limitations which require the
5  accused products to receive a modulated signal in "respons[e]" to the detection of an
6  unmodulated signal. Lucent has cited no evidence that any of the accused products meet this
7  limitation. Likewise, all of the asserted claims require that the special service information be
8  displayed during the silent interval (*i.e.*, before the second ring). Lucent has cited no evidence
9  that any of the accused products meet this limitation. Finally, claims 16-19 require the detection
10  of the unmodulated FSK signal that is "independent" of its length and Lucent has put forth no
11  factual evidence that this limitation is met by the accused products. Gateway expressly reserves
12  the right to introduce expert opinion and evidence, including lab tests, to rebut any evidence or
13  expert opinion eventually provided by Lucent as to how these limitations are allegedly met by
14  the accused products.

15       Independent claims 1, 15, and 16 are method claims. Lucent has presented no evidence
16  that Gateway directly infringes these claims or that Gateway induces its customers to practice the
17  claimed methods. Indeed, very few, if any, user manuals provided by Gateway to its customers
18  explain how to use any Caller-ID features which are allegedly present in Gateway's computer
19  systems. Similarly, Gateway does not advertise the Caller-ID capabilities of its machines in an
20  effort to have customers purchase computers and use them for this purpose.

21       Gateway also expressly incorporates by reference all non-infringement arguments
22  articulated by Dell regarding the Doughty patent.

23  **U.S. Patent 4,439,759 ("Fleming")**

24       The accused products do not and have not been shown to infringe, either literally or
25  equivalently, any asserted claim of the Fleming patent.

26       For example, the accused products do not and have not been shown to meet a number of
27  the limitations of the asserted claims. As an initial matter, with one exception, Lucent cites no
28  support for its allegations. The sole exception is a single cite to the VESA BIOS extension

**EXHIBIT 1**                                    -19-                              **PAGE 22**

1  (VBE) Core Functions Standard, Version 3.0 as support for the allegations of but a single

2  limitation.  Additionally, Lucent fails, even with regard to this single source, to provide any

3  evidence that any or all of the allegedly infringing functions of this standard are incorporated

4  into Gateway products.

5      Gateway's rebuttals to accusations involving the VESA standard in no way are meant to

6  imply that Gateway agrees any particular aspect of the standard is implemented in the manner

7  described or implemented at all in Gateway products.  Nevertheless, to the extent that Lucent can

8  prove that each of Gateway's accused products implement or perform in accordance with the

9  relevant portions of the standards cited by Lucent, the following claim chart sets out, in a non-

10  exclusive manner, reasons why a number of particular limitations have not been shown to be

11  present.

| Claim 1 | |
|---|---|
| In a digital image display system: | |
| a memory for storing color data values; | Lucent fails to show that any memory within the Gateway accused products meets the limitation of the memory for storing color data values because Lucent has failed to show that any memory in the accused products is used in the specific manner claimed.  For example, no memory in the accused products has been shown to have the ability to be accessed in the various manners required by the claim limitations below.

Additionally, Lucent's allegation alludes to any memory in the "graphics subsystem" that stores data "describing the characteristics of a color."  To the extent this is meant to apply to the video memory (which the claim and the Court's construction specifically exclude) or any other memory that does not meet the claim limitation of a memory for storing color data values as construed, this limitation is not met.  Further, to the extent that Lucent's allegations rely on inconsistent applications of the color memory limitation as it is used in this claim to multiple memories alleged to be in the accused products, such application is incorrect and cannot be used as the basis of an infringement allegation. |
| processing means responsive to a predetermined command and data sequence comprising at least one command, the processing means decoding the predetermined command and data sequence, the predetermined command and data sequence selecting one of a plurality of modes of access to color data values, the modes | The accused products have not been shown to have a predetermined command and data sequence selecting one of a plurality of modes of access.  Video modes have not been shown to be modes of access to color data values because the mode has not been shown to dictate how color data values are retrieved.  For example, the "set video mode instruction" has not been shown to be a predetermined command and data sequence for selecting one of a plurality of modes of access, nor has a "call to 'setVBEMode.'"

Lucent accuses a number of "instructions" in which values are allegedly loaded into registers and BIOS subroutines are called.  This is not a predetermined command and data sequence as is called for by the claim. |

-20-

| Claim 1 | |
|---|---|
| comprising | Furthermore, Lucent's infringement allegations impermissibly rely on a combination of BIOS software, Microsoft operating system, and video device drive software to satisfy the predetermined command and data sequence limitation of the claims. Lucent's allegations thus fail to show any actual predetermined command and data sequence that is capable of selecting between "modes" accused by Lucent. |
| | Additionally, Lucent's infringement contention does not show or allege that any of the accused Gateway computers contain any processor programmed to perform the claimed algorithm or its equivalent (see discussion below, for example). Therefore, the structure required to support the processing means limitation has not been shown to exist in the accused products. |
| | Lucent has not shown that the alleged data processor of the accused products is instructed, as in box 301, to attempt to locate a next opcode of a command and data sequence. Lucent's infringement contentions allege unassociated instructions instead of a predetermined command and data sequence. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | At 302 of the supporting structure flow chart, the data processor structure of the patent determines if the opcode is one for selecting a mode of color memory access. The accused products have not been shown to make this determination, instead, the infringement contentions name an "instruction" that is not part of any sequence. The alleged "Set Extended Video Mode" or "BIOS 'Set Video Mode'" instructions, for example, have not been shown to select a manner of retrieving color data values. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | According to the patent, at box 303, transfer is effected to the algorithm for the mode selection process shown in figure 4. Lucent fails to allege any mode selection algorithm. Rather, Lucent simply lists "instruction(s)" in which a value of "mode" is allegedly somehow passed. The alleged mode has not been shown to be a mode of access, and Lucent has not shown that there exists an algorithm for determining the mode (based, for example, on the number of operands received) the accused data processor is programmed to perform. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | Lucent has not shown that there is any transfer of control to a mode selection algorithm as in 401 of the flow chart structure of claim 1 in the patent. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | Lucent has not shown that the accused products have an algorithm for getting the operand if possible or for getting one or two (or zero) operands and determining a mode based upon whether the operand is retrieved as in 402 through 404 and 407. The accused "setVBEMode" instruction, for example, is alleged to use one operand to describe a "mode." No mode determination algorithm has been shown. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | The modes that are alleged to be selected by the example predetermined command and data sequence do not correspond to the "modes" alleged to meet the next three limitations, even though the command and data sequence is required by the claim to select between those particular modes |

EXHIBIT 1                                                                                                    PAGE 24

| Claim 1 | |
|---|---|
| | at 405, 408, and 411 of the structural flow chart. Additionally, Lucent's infringement allegations impermissibly appear to rely on a combination of BIOS software, Microsoft operating system, and video device drive software even though, again, a particular command and data sequence is required by the claim to select between those particular modes at 405, 408, and 411 of the structural flow chart. Lucent has failed to show or allege any equivalent structure in the accused products. |
| a first mode of access wherein an in-use foreground color is directly specified as a color data value; | The accused products have not been shown to have a first mode of access wherein an in-use foreground color is directly specified as a color data value for a number of independent reasons.

As mentioned with regard to the previous limitation, Lucent has failed to show that the accused products have a predetermined command and data sequence to select the alleged first mode, nor has any such mode been shown to be selected by the required algorithm of the processing means or the equivalent.

Lucent has not shown that the accused products have a first mode of access wherein an in-use foreground color is specified because no accused BIOS instruction, for example, has been shown to be capable of specifying a color that will be used for subsequently received text and graphics drawing commands until changed, nor has it been shown that any BIOS instruction is capable of selecting a mode that would allow the accused products to do so.

Lucent has failed to show that any alleged direct mode is a mode of access to a color memory. To any extent, for example, that Lucent's contentions allege a mode of access to color data values in the video memory rather than an actual color memory, Lucent has per se failed to show that the accused products meet this limitation. Additionally, Lucent has failed to show that any alleged direct color mode determines the manner in which color data values are retrieved or specified as color data values as opposed to index values.

"Direct color" or "true color" modes have not been shown to be modes of access. One reason is that the "GDI" instructions (examples alleged by Lucent to be SetBrush Color and SetPenColor) used to try to show that "direct color" or "true color" are modes of access would not show or evidence any particular manner of accessing (retrieving) color data values and would not associated with any particular mode (whether one of the alleged first modes or otherwise). Additionally, they have not been shown to be related to "set video mode" instructions that are alleged to set the mode in which they access.

The alleged SetBrushColor and SetPenColor instructions (the "GDI instructions"), to the extent they exist, (1) have not been shown to select a mode of access, (2) have not been shown to be particular to, associated with, or evidence of any mode of access (alleged "video modes" or otherwise), (3) have not been shown to necessitate the existence of a mode of access, and (4) have not been shown to be related to or indicative of any supposed direct or true color display modes they are alleged to be associated with, nor would any such "modes," as alleged, constitute modes of access to a color map.

Lucent fails to identify any specific color memory which any of the alleged modes supposedly access, including the "direct" and "true color" modes |

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES
(NO. 21) Case No.: 02-CV-2060 B (WMc)

EXHIBIT 1

| Claim 1 | |
|---|---|
| | alleged to constitute the first mode. |
| a second mode of access wherein the in-use foreground color is specified as an index into the color memory; and | The accused products have not been shown to have a second mode of access wherein an in-use foreground color is specified as an index into the color memory for a number of independent reasons.

For example, Lucent does not accuse anything that can constitute a mode of access to a color memory. The accused 256 color and 16 color "graphics display modes" have not been shown to change or constitute the manner of retrieving color data values from any color memory. Also, they have not been shown to be distinguishable from the "modes" alleged to constitute the third mode of access (i.e. "16 color graphics display modes" and "alphanumeric display mode") in any manner required by the claim such as specifying foreground versus specifying foreground and background.

(To the extent that Lucent argues that the "16 color graphics mode" can constitute both the second and third modes, it is elementary that one mode cannot meet a claim limitation for two separate modes)

Furthermore, the accused products have not been shown to have a second mode of access in which an in-use foreground color is specified. No "in-use foreground color" has been shown to be specified by any instruction alleged by Lucent to demonstrate the existence of a second mode of access nor can an in-use foreground color be specified in the "display modes" accused of constituting this second mode. No BIOS call, including any alleged by Lucent to meet or show support for the mode required by this limitation, has been shown to specify a color that will be used as the foreground color for subsequently received text and graphics drawing commands until changed.

Lucent's contentions list "graphics display modes" that have not been shown to be part of any command and data sequence as claimed nor have they been shown to be selected by any mode selection algorithm or equivalent of the accused data processor.

Additionally, the "Write Character and Attribute" BIOS instruction alleged to specify an in-use color by an index (1) has not been shown to be particular to or evidence of any alleged mode of access (2) has not been shown to select a mode of access, (3) has not been shown to necessitate or evidence the existence of a mode of access, and (4) has not been shown to be indicative of any supposed "graphics display modes," nor have any such "modes" been shown to constitute modes of access to a color map in any event.

Lucent fails to identify any specific color memory which any of the alleged second modes supposedly access by way of index. |
| a third mode of access wherein the in-use foreground color and an in-use background color are specified as indexes into the color memory; and | The accused products have not been shown to have a third mode of access wherein an in-use foreground color and an in-use background color are specified as an indexes into the color memory.

Lucent does not accuse anything that has been shown to constitute a "mode of access" to a color memory. The accused 16 color "graphics display mode" and "alphanumeric display mode" have not been shown to constitute manners of retrieving color data values from a color memory.

Lucent fails to allege any "mode" distinct in the manner required by the |

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES
(NO. 21) Case No.: 02-CV-2060 B (WMc)

EXHIBIT 1                                                                                    PAGE 26

| Claim 1 | |
|---|---|
| | claim from either of the other "modes" alleged to be in the accused products. For example, in terms of specifying foreground versus specifying foreground and background colors. |
| | No "in-use foreground color" has been shown to be specified by any instruction alleged by Lucent to demonstrate the existence of a third mode of access. No "in-use background color" has been shown to be specified by any instruction alleged to demonstrate the existence of a third mode of access. No BIOS call, including any alleged by Lucent to meet or show support for the mode required by this limitation, has been shown to specify a color that will be used as the foreground color or background color for subsequently received text and graphics drawing commands until changed. |
| | Lucent's contentions list a "graphics display mode" and "alphanumeric display mode" that have not been shown to be not part of any command and data sequence for selecting between a plurality of modes of access as claimed. These supposed modes have not been shown to be selected by a mode selection algorithm of the accused data processor because no such algorithm or equivalent exists in the accused products. |
| | Additionally, the "Write Character and Attribute" BIOS instruction alleged to specify an in-use color by an index (1) has not been shown to be particular to, or able to be used to prove, any alleged mode of access  (2) has not been shown to select a mode of access, (3) has not been shown to be evidence of a manner of retrieving color data values wherein an in-use foreground color and an in-use background color are specified as indices into a color memory, and (4) has not been shown to be indicative of any supposed "graphics display mode" or "alphanumeric mode," nor have any such "modes" been shown to constitute modes of access to a color map in any event. |
| | Lucent fails to identify any specific color memory which any of the alleged modes supposedly access by way of index. |
| display means responsive to the processing means, the display means displaying the colors associated with the color data values accessed by the selected mode. | Many of the accused products have not been shown to include a display means. For example, Lucent has not shown that the accused products are sold with a monitor or other display means. Furthermore, Lucent has also not shown that Gateway's products are sold with a display means that is responsive to the process means as sold or that Gateway contributes to or induces the integration of such a responsive display means in to the accused products. |
| | Additionally, no accused product has been shown to include or to be intended to include a display means that performs the function of displaying the colors associated with the color data values accessed by the selected mode because, *inter alia*, the accused products have not been shown to retrieve color data values accessed by a selected mode, as demonstrated above. |

| Claim 2 | |
|---|---|
| A digital image display system comprising: | |
| a color memory for storing | No memory within the accused products has been shown to meet the |

| **Claim 2** | |
|---|---|
| color data values; | limitation of a color memory for storing color data values because no memory in the accused products has been shown to be used in the specific manner claimed. For example, no memory in the accused products has been shown to have the ability to be accessed or set in the various manners required by the claim limitations below. |
| | Lucent's allegation of the existence of a color memory alludes to any memory in the "graphics subsystem" that stores data "describing the characteristics of a color." To the extent this is meant to apply to the video memory (which the claim and the Court's construction specifically exclude) or any other memory that does not meet the claim limitation of a color memory for storing color data values as construed, this limitation cannot be met. |
| | Additionally, to the extent Lucent applies "color memory" inconsistently among various memories, such application to the accused products is incorrect. For example, the various inconsistent references to a "color register" as well as a "palette register" with respect to the set command reflect an incorrect application of the claim and demonstrate the lack of a color memory meeting the limitations of the claim. The mode of access must be to the same "color memory" as the color memory in which the data value is set; this has not been shown to be the case in the accused products as alleged. |
| processing means responsive to predetermined command and data sequences, the processing means, responsive to a first command, selecting a mode of access to the color memory; and responsive to a second command, setting a color data value in the color memory; and | The accused products have not been shown to have a predetermined command and data sequence meeting the limitations of the claim. The accused products have not been shown to comprise the pattern with a known encoded meaning required by the claims. Lucent lists various unrelated "instructions" and "modes" that do not constitute a predetermined sequence. These "instructions" and "modes" are not even necessarily a part of or associated with the same software (for example, Lucent attempts to impermissibly combine "Microsoft operating system software, BIOS software, and/or, video device driver software"). Additionally, Lucent cites no instance or software in the accused products in which the various commands and data are in the form of a predetermined sequence as required. Additionally, Lucent accuses a number of "instructions" in which values are allegedly loaded into registers and BIOS subroutines are called. This would also not be a predetermined command and data sequence as is called for by the claim. |
| | The accused "video modes" have not been shown to be modes of access or manners of retrieving color data values from a color memory, nor does Lucent supply any evidence or any detail in its allegations with respect to this claim to support such conclusory assertions. To the extent that Lucent's allegations with respect to these same "modes" (supposedly evidencing the proposition that they constitute modes of access) in reference to Claim 1 are meant to apply to Claim 2, so too do Gateway's rebuttals of these allegations in reference to claim 1 applying to claim 2. |
| | Additionally, Lucent's infringement contention does not show or allege that any of the accused Gateway computers contain any processor programmed to perform the claimed algorithm or its equivalent (see discussion below, for example). Therefore, the structure required to support the processing means limitation has not been shown to exist in the accused products. |
| | Lucent has not shown that the alleged data processor of the accused products |

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES
(NO. 21) Case No.: 02-CV-2060 B (WMc)

**EXHIBIT 1**                                                                                          **PAGE 28**

| Claim 2 | |
|---|---|
| | is instructed, as in box 301, to attempt to locate a next opcode of a command and data sequence. Lucent's infringement contentions allege unassociated instructions instead of a predetermined command and data sequence. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | At 302 of the supporting structure flow chart, the data processor structure of the patent determines if the opcode is one for selecting a mode of color memory access. The accused products have not been shown to make this determination, instead, the infringement contentions name an "instruction" that is not part of any sequence. The alleged "Set Extended Video Mode" or "BIOS 'Set Video Mode'" instructions, for example, have not been shown to select a manner of retrieving color data values. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | According to the patent, at box 303, transfer is effected to the algorithm for the mode selection process shown in figure 4. Lucent fails to allege any mode selection algorithm. Rather, Lucent simply lists "instruction(s)" in which a value of "mode" is allegedly somehow passed. The alleged mode has not been shown to be a mode of access, and Lucent has not shown that there exists an algorithm for determining the mode (based, for example, on the number of operands received) the accused data processor is programmed to perform. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | Lucent has not shown that there is any transfer of control to a mode selection algorithm as in 401 of the flow chart structure of claim 1 in the patent. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | Lucent has not shown that the accused products have an algorithm for getting the operand if possible or for getting one or two (or zero) operands and determining a mode based upon whether the operand is retrieved as in 402 through 404 and 407. The accused "setVBEMode" instruction, for example, is alleged to use one operand to describe a "mode." No mode determination algorithm has been shown. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | The modes that are alleged to be selected by the example predetermined command and data sequence do not correspond to the "modes" alleged to meet the next three limitations, even though the command and data sequence is required by the claim to select between those particular modes at 405, 408, and 411 of the structural flow chart. Additionally, Lucent's infringement allegations impermissibly appear to rely on a combination of BIOS software, Microsoft operating system, and video device drive software even though, again, a particular command and data sequence is required by the claim to select between those particular modes at 405, 408, and 411 of the structural flow chart. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | The accused products also have not been shown to have a second command as claimed that is part of a predetermined command and data sequence as addressed above with respect to that limitation. |
| | Lucent appears to inconsistently accuse various different memories of meeting the color memory limitation of a single claim, this is improper and demonstrates another reason why the accused products have not been shown to infringe this claim. Additionally, "Palette Registers" referred to by |

-26-

| Claim 2 | |
|---|---|
| | Lucent have not been shown to hold color data values, and thus, have not been shown to constitute a color memory or part of a color memory. Lucent remains altogether ambiguous as to what it is accusing as constituting the color memory of the claims, but to the extent that it accuses any memory inconsistently or any memory, such as a "Palette Register," that does not meet the Court's construction, the accused products cannot meet this limitation for at least that reason. |
| | Lucent's infringement contention does not show or allege that any of the accused Gateway computers contain any processor programmed to perform the remainder of the claimed algorithm or its equivalent (see discussion below, for example). Therefore, the structure required to support the processing means limitation has not been shown to exist in the accused products for this reason as well. |
| | At box 304 of the structural flow chart of the patent, the data processor determines whether the opcode entered is one for setting a color data value. At box 305, if there is a match, transfer is effected to the algorithm for the color setting process shown in FIG. 5. The accused products have not been shown to include any set color determination process as described in the specification. Lucent has not shown that there is any determination based, as in the patent on whether the opcode matches an expected opcode. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | In FIG. 5 of the corresponding structure of the claim, an algorithm is depicted (1) in color modes 1 or 2, for setting the color data values in color map memory 6a in a terminal independent manner. No values in the accused products have been shown to be set in a terminal independent manner, terminals having varying color capabilities have not been shown (or alleged with respect to this claim) to be able to receive common input information, each terminal providing a color display that within its capabilities most closely matches that input information. The modes accused have not been shown to be modes of access and have not been shown to correspond to color modes 1 and 2. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | The patent states at Col. 7 ll. 53-55, "If the color mode was not 0 at decision box 502 then the color map memory table 6a will be loaded with colors specified by subsequent operands." Contrary to this algorithm, the "instructions" that are alleged to set values in a color memory have not been shown to be specific to or based upon any mode of access nor to any [video] mode alleged by Lucent to be a mode of access (which is just one reason the accused "video modes" have not been shown to constitute modes of access). Lucent has failed to show or allege any equivalent structure in the accused products. |
| | According to the corresponding structure of the patent, the current in use foreground color index will indicate the first potential color map memory table entry to be changed. INDEX is set to the current in-use foreground color index at box 501. Contrary to this algorithm, Lucent has not shown any in use foreground color index as that claim term has been construed in light of the patent, nor has one been alleged by Lucent with respect to this claim. Lucent has failed to show or allege any equivalent structure in the accused products. |
| | In the corresponding structure of the patent, an attempt is made to get an RGB operand at box 504 if possible. If the operand is found at decision box |

-27-

| Claim 2 | |
|---|---|
| | 506, then the RGB operand is loaded into the color map memory table 6a at the location determined by INDEX. [At box 508, the operand is loaded into the color map entry called INDEX.] The INDEX is then incremented at box 510. This has not been shown by Lucent to be present in the accused products. The accused products have not been shown to have an algorithm for determining if an operand is to follow an operator as is performed in the Fleming patent. The operand has not been shown to be an RGB operand with respect to the alleged "Palette Register" because, as discussed above, a "Palette Register" has not been shown to be a color memory and has not been shown to store color data values. Lucent has failed to show or allege any equivalent structure in the accused products. |
| display means responsive to the processing means, the display means displaying a color associated with the color data value accessed by the selected mode. | No mode, including those alleged, has been shown to determine the manner in which color data values are retrieved or accessed, thus, no display has been shown to be able to display a color associated with the color data value accessed by the selected mode.<br><br>Additionally, many of the accused products have not been shown to include a display means. For example, Lucent has not shown that any or all of the accused products are sold with a monitor or other display means as construed by the Court. Furthermore, Lucent has also not shown that Gateway's products are sold with a display means that is responsive to the process means as sold or that Gateway contributes to or induces the integration of such a responsive display means into the accused products.<br><br>Further, no accused product has been shown to include or to be intended to include a display means that performs the function of displaying the colors associated with the color data values accessed by the selected mode because, *inter alia*, the accused products have not been shown to retrieve color data values accessed by a selected mode, as discussed above. |

| Claim 3 | |
|---|---|
| A display system as recited in claim 2, wherein the processing means responsive to a second command sets plural color data values in color memory. | Gateway incorporates each of its non-infringement positions with respect to claim 2 as non-infringement positions with respect to claim 3 as well. Gateway notes especially that each of non-infringement positions made with respect to the "processing means responsive to a second command setting a color data value in the color memory" in regard to claim 2 apply equally to the "processing means responsive to a second command sets plural color data values in color memory" limitation of claim 3.<br><br>Also, additional corresponding structural elements have also not been shown by Lucent to exist in the accused products with respect to claim 3.<br><br>In the corresponding structure of claim 3, a line exits box 510 signifying that the sequence of boxes 504, 506, 508, and 510 in repeated as long as operands are available. Lucent has failed to show that the accused products operate in this manner, loading a color data value entry by entry in a color memory as long as additional operands become available. Lucent has failed to show or allege any equivalent structure in the accused products. |

The accused products do not and have not been shown to meet a number of the limitations of claim 4 for a variety of reasons. As an initial matter, Lucent's contentions refer to

-28-

EXHIBIT 1

1   Gateway's accused products performing the below method "during operation." Lucent does not

2   allege or provide evidence that Gateway operated any product in the claimed manner. Lucent

3   also provides no evidence that any Gateway customer ever operated an accused product in the

4   claimed manner or that Gateway contributed to or induced such operation. Lucent's contentions

5   are insufficient on their face at least for this reason and fail to show any infringement.

6          Further, the accused products have not been shown to include any software that

7   implements the following method. Lucent's allegations refer to a number of unrelated

8   instructions that, even if they were what they are alleged to be have not been shown to conform

9   to the specific method and order of the claim as required.

| Claim 4 | |
|---|---|
| In a video image display system having a color memory, a method for displaying a color image in a terminal independent manner responsive to commands and data received from a command and data source, the method comprising the steps of: | The accused products have not been shown to display a color image in a terminal independent manner. Terminals having varying color capabilities have not been shown to be able to receive common input information and each terminal has not been shown to not provide a color display that within its capabilities most closely matches that input information. |
| | Lucent's "example" of "software processes" that may "take part" in displaying an image is irrelevant to the subject of terminal independence and cannot be used to prove the existence of this limitation in the accused Gateway products. |
| | The accused products have not been shown to contain a color memory set and accessed in the manner claimed. Lucent provides no evidence of a color memory nor does it point to any particular color memory as meeting the limitations of the claims. To the extent Lucent's allegations of a color memory are meant to apply to the video memory (which the claim and the Court's construction specifically exclude) or any other memory that does not meet the claim limitation of a color memory for storing color data values as construed, this limitation is not met. |
| | Additionally, to the extent Lucent applies "color memory" inconsistently among various memories and in reference to different commands, such application to the accused products is per se incorrect. For example, the various inconsistent references to a "color register" as well as a "palette register" with respect to the set command appear to reflect an innapropriate application of the claim and demonstrate another reason why Lucent has failed to show any color memory meeting the limitations of the claim. |
| Receiving commands and data from the command and data source; | To the extent that the commands and data alleged by Lucent are not from a single, particular source, this limitation has not been shown to be met as used here or in the remainder of the claim. For example, Lucent impermissibly attempts to combine "BIOS software, application software, Microsoft Windows GDI software, and display driver software." |
| reading a first command for selecting a mode of access to the color memory, and | The accused products have not been shown to read a first command for selecting a mode of access to a color memory. The accused products have not been shown to select a manner of retrieving color data values from a |

-29-

| **Claim 4** | |
|---|---|
| responsive to data following the first command, selecting the mode of access to the color memory; | color memory. Lucent has not shown that the accused products select a mode of access for the at least the same reasons set out above with regard to the same "mode of access" limitation in regard to claims 1 and 2. For example, the "Set Video mode" instruction and the "Set Extended Video Mode" "instructions" have neither been shown to change nor constitute any manner of accessing a color map or of retrieving color data values from a color map. Similarly, the "graphics or alphanumeric display modes" these instructions are alleged to select have not been shown to be modes of access to a color memory. |
| | These alleged commands for setting a mode have not been shown to determine the supposed manner in which the alleged second or third commands respectively set or access any alleged color memory. |
| | Additionally, Lucent accuses a number of alleged BIOS or software driver calls to subroutines where parameters, to the extent specified at all, are passed in registers. Therefore, Lucent has failed to show that selecting a mode of access is responsive to data following the first command (taking some action based on the data following the first command). |
| reading a second command for setting color data values in the color memory and, responsive to data following the second command, setting the color data values in the color memory, | The accused products have not been shown to read a second command for setting color data values in a color memory. Again, no second command is even alleged to follow any alleged first command as claimed. No application, code, or system has been shown to implement this method as claimed and Lucent's contentions are deficient on their face. Alleging a bare list of instructions is not sufficient for showing infringement. For example, the supposed GDI instructions have not been shown to be part of a sequence of commands and data as claimed and have not been shown to be received from a consistently-applied command and data source. |
| | Lucent refers to a color palette, a palette register, as well as GDI instructions. This limitation has not been shown to be met by the accused products at least because the alleged second command has not been shown to act on the same memory the other commands are alleged to act on as required by the claim. |
| reading a third command for accessing color data values in the color memory, and | The accused products have not been shown to read a third command for accessing color data values. Again, Lucent's infringement allegation with regard to this limitation is deficient on its face for the reasons described above, including the fact that no application, code, or system has been shown to implement any actual method as claimed. Alleging the existence of a list of instructions is not sufficient for showing infringement. For example, the supposed GDI instructions have not been shown to be part of a sequence of instructions as claimed. The alleged first, second, and third commands have not been shown to all come from the same command and data source. |
| | Lucent has not shown that the alleged third commands are commands for accessing color data values in the color memory. For example, Lucent has not shown that the alleged third commands retrieve color data values in the alleged color memory. A "Write pixel" command has not been shown to be a command for accessing (retrieving) color data values. Similarly, a "Write Character and Attribute" instruction has not been shown to be a command for accessing (retrieving) color data values, nor has a "Rectangle" or "textOut" instruction been so shown. |
| | Lucent again fails to point to any specific color memory. To the extent Lucent is inconsistent in its application of what it contends constitutes a |

| Claim 4 | |
|---|---|
| | color memory with respect to any limitation, the accused products have not been shown to infringe for at least this reason. |
| displaying a color image associated with the color data values accessed by the third command on a video display terminal. | Because a video display terminal cannot have been shown to display a color associated with color data values accessed by the third command if the third command itself has not be shown to exist in the accused products, this limitation has not been met for at least this reason.<br><br>Many of the accused products have not been shown to include a video display terminal. For example, Lucent has not shown that the accused products are sold with a monitor. Furthermore, as discussed above with respect to the rest of the limitations of Claim 4, Lucent has also not shown that Gateway's products are sold with a video display terminal that displays a color image (associated with color data values accessed by the third command) as sold or that Gateway contributes to or induces the integration and specifically claimed operation of such a terminal in the accused products. |

Gateway also expressly incorporates by reference any and all non-infringement arguments articulated by Dell.

Gateway reserves the right to supplement its response to this interrogatory as discovery progresses.

Dated:  December 29, 2005                    DEWEY BALLANTINE LLP


                                            By: _____
                                                    Jeffrey B. Plies

                                            ATTORNEYS FOR DEFENDANTS AND
                                            COUNTER-CLAIMANTS GATEWAY, INC.,
                                            GATEWAY COUNTRY STORES LLC,
                                            GATEWAY COMPANIES, INC., GATEWAY
                                            MANUFACTURING LLC AND
                                            COWABUNGA ENTERPRISES, INC.

Additional Counsel for Defendants and Counter-Claimants
GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC.,
GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.
Jonathan D. Baker (SBN 196062)
DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA  94303
Telephone:  (650) 845-7000
Facsimile:  (650) 845-7333

-31-

EXHIBIT 1                                                    PAGE 34

1   David G. Hetzel
    Ronald W. Zdrojeski
2   Mark A. Walsh
    LeBOEUF, LAMB, GREENE & MACRAE, LLP
3   Goodwin Square, 225 Asylum Street
    Hartford, CT 06103
4   Telephone: (860) 293-3500
    Facsimile: (860) 293-3555
5
    David J. Zubkoff (SBN 149488)
6   SELTZER CAPLAN McMAHON VITEK
    750 "B" Street, Suite 2100
7   San Diego, CA 92101
    Telephone: (619) 685-3003
8   Facsimile: (619) 685-3100

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-32-

1

## CERTIFICATE OF SERVICE

2      I am a resident of the State of Texas, over the age of eighteen years, and not a party to the
within action. My business address is DEWEY BALLANTINE LLP, 401 Congress Avenue,
3      Suite 3200, Austin, TX 78701. On December 29, 2005 I served the within documents:

4      1.

5      ☒  I sent such document(s) from facsimile machine on December 29, 2005. I certify that said
transmission was completed and that all pages were received and that a report was generated by
6          facsimile machine which confirms said transmission and receipt.

7          Counsel for Lucent
8          Jane Hahn
           Alison P. Adema
9          Hahn & Adema
           501 West Broadway, Suite 1730
10         San Diego, CA 92101-3595
           619/235-2100
11         619/235-2101 (Fax)

12

13         Counsel for Microsoft
           John E. Gartman
14         Christopher S. Marchese
           Juanita R. Brooks
15         Roger A. Denning
           Justin M. Barnes
16         Fish & Richardson P.C.
           12390 El Camino Real
17         San Diego, CA 92130
           858/678-5070
18         858/678-5099 (Fax)

19

           Counsel for Dell
20         James S. Blackburn
           Ronald L. Johnston
21         Arnold & Porter
           777 S. Figueroa Street, 44th Floor
22         Los Angeles, California 90017
           213/243-4000
23         213/243-4199 (Fax)

24

25         Counsel for Gateway
           David J. Zubkoff
26         Seltzer, Caplan, McMahon & Vitek
           2100 Symphony Towers
27         750B Street, Suite 2100
           San Diego, CA 92101
28         619/685-3003

**EXHIBIT 1**                                    **PAGE 36**

-33-

GATEWAY'S FIRST SUPPLEMENTAL RESPONSE TO LUCENT'S SECOND SET OF INTERROGATORIES

1    619/702-6827 (Fax)

2

3    ☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at East Palo Alto, addressed as set forth below.

4    ☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

5

6    ☐    I am readily familiar with Dewey Ballantine's business practices of collecting and processing items for pickup and next business day delivery by Federal Express. I placed such sealed

7    envelope(s) for delivery by Federal Express to the offices of the addressees indicated on the mailing list below on the date hereof following ordinary business practices.

8

☒    I served courtesy copies by electronic mail to the addressee(s) as indicated below.

9

10    Counsel for Lucent
              rappleby@kirkland.com

11            jhohenthaner@kirkland.com
              akellman@kirkland.com

12    Counsel for Microsoft
              marchese@fr.com

13            denning@fr.com
              brooks@fr.com

14            barnes@fr.com

15            srodriguez@fr.com

16    Counsel for Dell
              Joel.Freed@aporter.com

17            Sidney.Rosenzweig@aporter.com
              Ali.Sharifahmadian@aporter.com

18

19    Courtesy e-mails also to:

20    zubkoff@scmv.com; janehahn@hahnadema.com; aadema@hahnadema.com

21

22          I declare that I am employed in the office of a member of the bar of this court at whose

23    direction the service was made.

      Executed on December 29, 2005 at Austin, Texas.

24                                                                    _Abe [signature]_

25                                                                    Abe Hewgley

26

27

28

**EXHIBIT 1**                                                        **PAGE  37**

-34-