1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  LUCENT TECHNOLOGIES, INC. and
    MULTIMEDIA PATENT TRUST

12          Plaintiffs and Counter-
13          Defendants,

14      vs.

15  GATEWAY, INC., *et al.*

16          Defendants and Counterclaimants.

17  and

18  MICROSOFT CORPORATION,

19          Intervenor and Counterclaimant

20  _____

21  AND RELATED CLAIMS

CASE NO. 07-CV-2000-H (CAB)
consisting of matters severed from
the consolidated cases:
CASE NO. 02-CV-2060-B (CAB)
CASE NO. 03-CV-0699-B (CAB)
CASE NO. 03-CV-1108-B (CAB)

**ORDER GRANTING
MOTIONS FOR PARTIAL
SUMMARY JUDGMENT OF
NO WILLFUL
INFRINGEMENT OF U.S.
PATENT NOS. 4,383,272;
4,439,759; 4,763,356; 4,958,226;
AND 5,347,295**

22      In this case, Plaintiffs Lucent Technologies, Inc. ("Lucent") and Multimedia

23  Patent Trust ("MPT" and collectively "Plaintiffs") are pursuing claims for infringement

24  of United States patent numbers: 4,383,272 ("Netravali '272"); 4,439,759 ("Fleming

25  '759"); 4,763,356 ("Day '356"); 4,958,226 ("Haskell '226"); 5,347,295 ("Agulnick

26  '295" and collectively the "Patents").

27      On August 29, 2007, the Court granted leave for Dell Inc. ("Dell"), Gateway,

28  Inc. and its related entities ("Gateway"),  and Microsoft Corporation ("Microsoft" and

1  collectively "Defendants"), to bring motions for partial summary judgment of no

2  willful infringement in light of the Federal Circuit's recent case, In re Seagate

3  Technology, LLC ("Seagate"), 497 F.3d 1360 (Fed. Cir. 2007) (en banc).  (02-CV-

4  2060-B (CAB) ("02 Doc.") No. 2011.)  On September 10, 2007, Dell Inc. moved for

5  partial summary judgment of no willful infringement with respect to all five Patents.

6  (02 Doc. No. 2049.)   Microsoft and Gateway joined Dell's motion.  (02 Doc. Nos.

7  2050, 2052.)  Microsoft also brought its own motion with respect to the Haskell '226,

8  Netravali '272, Agulnick '295, and Day '356 patents.  (02 Doc. No. 2053.)  Gateway

9  and Dell joined Microsoft's motion.  (02 Doc. Nos. 2055, 2057.)  On September 11,

10  2007, Gateway brought its own motion with respect to the Fleming '759, Haskell '226,

11  Netravali '272, and Day '356 patents.  (02 Doc. No. 2056.)  Microsoft and Dell joined

12  Gateway's motion. (02 Doc. Nos. 2059-60.) On October 5, 2007, Plaintiffs filed their

13  opposition to the motions. (02 Doc. No. 2119.) On October 12, 2007, Defendants filed

14  replies for each of their motions (02 Doc. Nos. 2135, 2137-38.)  Dell and Gateway

15  joined Microsoft's reply.  (02 Doc. No. 2139, 2141.)  Microsoft and Gateway joined

16  Dell's reply. (02 Doc. No. 2140-41.)  Microsoft joined Gateway's reply.  (02 Doc. No.

17  2140.)

18       On October 16, 2007, the Court severed matters related to these five patents from

19  Case 02-CV-2060-B (CAB) and its consolidated cases (Doc. No. 1.)  On October 17,

20  2007, the case was reassigned to Judge Huff under Local Rule 40.1.  (Doc. No. 2.)

21  The motions considered here relate only to the severed patents and are therefore

22  properly considered part of this action.

23       On October 19, 2007, the Court held a hearing on these motions.  Attorneys

24  Robert Appleby, Paul Bondor, and Michael Stadnick appeared for Lucent and MPT,

25  Joseph Micallef appeared for Dell, Jeffrey Plies appeared for Gateway, and John

26  Gartman and Lara Garner appeared for Microsoft.

27  / / / /

28  / / / /

1    After considering the motions, the Court grants the motions for partial summary
2    judgment of no willful infringement of U.S. Patent Nos. 4,3838,272, 4,439,759,
3    4,763,356, 4,958,226, and 5,347,295.

4                                    **Background**

5    **I.     The Video Patents – Netravali '272 and Haskell '226**

6    The Netravali '272 and Haskell '226 patents (the "Video Patents") are both
7    allegedly essential to MPEG standards for video data compression and transport.
8    Plaintiffs allege that Defendants' products infringe the patents by implementing MPEG
9    standards.   Netravali '272 is entitled "Video Signal Interpolation Using Motion
10   Estimation."   The Patent and Trademark Office ("PTO") granted it on May 10, 1983,
11   to inventors Arun Netravali and John Robbins.   The invention "relates generally to
12   interpolation of video signals and, in particular, to interpolation of video signals using
13   motion estimation."   (Netravali '272 1:6-8.)   Haskell '226 is entitled "Conditional
14   Motion Compensated Interpolation of Digital Motion Video."   The PTO granted it on
15   September 18, 1990, to inventors Barin Haskell and Atul Puri.   It involves "a method
16   and apparatus for encoding and decoding video signals of moving images."   (Haskell
17   '226 1:6-7.)

18   The Court has previously rendered summary judgment on a number of issues
19   related to infringement and invalidity.   For both patents, the Court granted summary
20   judgment of no infringement under the doctrine of equivalents, but denied motions for
21   summary judgment of no literal infringement.   (See 02 Doc. Nos. 1921, 1938.)   With
22   respect to the Netravali '272 patent, the Court declined to grant Plaintiffs' motions for
23   summary judgment of no invalidity under 35 U.S.C. §§ 102(b) and 102(g). Instead, the
24   Court ruled in Defendants' favor on a number of predicate issues related to section
25   102(g) invalidity.   (See 02 Doc. No. 1948.)   The Court concluded that: (1) all method
26   steps of claim 13 are present in a dissertation by Dr. Janswat Jain, (2) there was an
27   absence of diligence reducing claim 13 to practice between Dr. Jain's alleged reduction
28   to practice and filing of the patent application, and (3) the inventors did not actually

1   reduce the invention to practice prior to filing the patent application.  (<u>Id.</u> at 5-6.)  This

2   leaves only a question regarding when, if at all, Dr. Jain reduced to practice the method

3   described in his dissertation.

4   **II.     Day '356**

5       The Day '356 patent is entitled "Touch Screen Form Entry System."  The PTO

6   granted it on August 9, 1988 to inventors Benjamin Day, et al.  The Court previously

7   granted summary adjudication of no literal infringement with respect to all claims but

8   19 and 21, on which questions of fact remain.  (<u>See</u> 02 Doc. Nos. 1240, 1813.)  The

9   Court also denied cross-motions for summary judgment regarding the alleged invalidity

10  of this patent.  (<u>See</u> 02 Doc. No. 1795.)

11  **III.    Fleming '759 and Agulnick '295**

12      Lucent stated that it does not intend pursue allegations of willful infringement

13  with respect to the Fleming '759 and Agulnick '295 patents.  (<u>See</u> Lucent and MPT's

14  Opp'n Def. Mot. Partial Summ. J. No Willful Infringement ("Opp'n Brief") at 1 n.1.).

15                              **<u>Discussion</u>**

16  **I.      Summary Judgment Standard**

17      Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant

18  summary judgment upon a claim "if the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the affidavits, if any, show that

20  there is no genuine issue as to any material fact and that the moving party is entitled

21  to a judgment as a matter of law."  A party moving for summary judgment bears the

22  initial burden of establishing the absence of a genuine issue of material fact for trial.

23  <u>See</u> <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing <u>Celotex Corp.</u>

24  <u>v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Where the nonmoving party bears the burden of

25  persuasion at trial, the moving party's burden "may be discharged by 'showing'—that

26  is, pointing out to the district court—that there is an absence of evidence to support the

27  nonmoving party's case."  <u>Celotex Corp.</u>, 477 U.S. at 325.  This requirement is not met

28  "simply by saying that the nonmoving party has no such evidence."  <u>Nissan Fire &</u>

1  Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).  The moving
2  party must have at least made reasonable efforts to obtain such evidence using the
3  normal tools of discovery.  See Id. at 1005-06.

4       "On a motion for summary judgment the court examines the evidence in the light
5  most favorable to the non-moving party."  Porter v. California Dept. of Corrections,
6  419 F.3d 885, 887 n.1 (9th Cir. 2005).  However, "[w]hen opposing parties tell two
7  different stories, one of which is blatantly contradicted by the record, so that no
8  reasonable jury could believe it, a court should not adopt that version of the facts" for
9  summary judgment purposes.  See Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

10      Once the moving party meets the requirements of Rule 56, the burden shifts to
11 the party resisting the motion, who must set forth specific facts showing that there is
12 a genuine issue of material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
13 248-56 (1986).  The opposing evidence must be sufficiently probative to permit a
14 reasonable trier of fact to find in favor of the opposing party.  See id. at 249-250.  Thus,
15 the non-moving party cannot oppose a properly supported summary judgment motion
16 by "rest[ing] upon mere allegation or denials of his pleadings."  Id. at 256.  If the non-
17 moving party fails to make a sufficient showing of an element of its case, the moving
18 party is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322-23.

19 **II.    Seagate and the New Willful Infringement Standard**

20      In re Seagate Technology, LLC set a new, higher standard for plaintiffs by
21 replacing the previous willful infringement inquiry with a requirement of objective
22 recklessness.  See Seagate, 497 F.3d at 1368-72 (overruling Underwater Devices Inc.
23 v. Morrison-Knudsen Co., 717 F.2d 1380 (1983)).  The Federal Circuit reasoned that
24 its old standard was "more akin to negligence" than the general understanding of
25 willfulness in the civil context.  Id. at 1371.  The court pointed to other situations
26 where courts have defined willfulness to encompass reckless behavior, including the
27 Copyright Act and the Supreme Court's recent consideration of willfulness liability for
28 / / / /

07cv2000

1    punitive damages in <u>Safeco Insurance Co. of America v. Burr</u>, 127 S.Ct. 2201 (2007).

2    <u>See</u> <u>id.</u> at 1370-71.

3        As a result, "proof of willful infringement permitting enhanced damages requires

4    at least a showing of objective recklessness." <u>Id.</u> at 1371.  This involves a two-step

5    analysis.  First, the patentee must meet a threshold inquiry by showing "by clear and

6    convincing evidence that the infringer acted despite an objectively high likelihood that

7    its actions constituted infringement of a valid patent,"[1] without considering the accused

8    infringer's state of mind.  <u>Id.</u>  Upon passing this threshold, "the patentee must also

9    demonstrate that this objectively-defined risk (determined by the record developed in

10   the infringement proceeding) was either known or so obvious that it should have been

11   known to the accused infringer."  <u>Id.</u>  The court also emphasized that there was no

12   longer an affirmative duty of care and "no affirmative obligation to obtain opinion of

13   counsel."  <u>Id.</u>

14       The Federal Circuit left open the details of applying this standard, though it

15   observed that "standards of commerce" are among factors likely to be considered.  <u>Id.</u>

16   at 1371 & n.5.  This Court is not left without other guidance in this area, however.

17   <u>Seagate</u> clearly intended to bring willful infringement more in line with general notions

18   of willfulness in the civil context, so cases like <u>Safeco</u> provide direction.  Also, while

19   <u>Seagate</u> abandoned the affirmative duty of care and obligation to obtain an opinion of

20   counsel, it did not expressly abandon other factors previously applied to the willfulness

21   inquiry.  The Court concludes that it may look to such factors and consider them to the

22   extent that they are consistent with the new <u>Seagate</u> standard.

23       In <u>Safeco</u>, the Supreme Court examined the meaning of a "reckless" violation of

24   the Fair Credit Reporting Act.  <u>See</u> <u>Safeco Ins. Co.</u>, 127 S.Ct. at 2215-16.  There, the

25

26   [1]Although <u>Seagate</u> raises the underlying standard for willfulness, the pre-<u>Seagate</u> burden of
     persuasion was also one of clear and convincing evidence.  <u>See, e.g.</u>, <u>Comark Communications, Inc.</u>
27   <u>v. Harris Corp.</u>, 156 F.3d 1182, 1190 (Fed. Cir. 1998).  The "clear and convincing" standard lies
     between "beyond a reasonable doubt" and "preponderance of the evidence."  <u>Pfizer, Inc. v. Apotex,</u>
28   <u>Inc.</u>, 480 F.3d 1348, 1360 n.5 (citing <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979)).  Though "an
     exact definition is elusive," it has been described as "evidence that 'place[s] in the ultimate factfinder
     an abiding conviction that the truth of its factual contentions are highly probable.'"  <u>Id.</u> (quoting
     <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1984)).

1    Court concluded that a company has not acted in reckless disregard of the Act unless

2    its action was "not only a violation under a reasonable reading of the statute's terms,

3    but shows that the company ran a risk of violating the law substantially greater than the

4    risk associated with a reading that was merely careless." <u>Id.</u> at 2215.  By analogy, an

5    objectively high likelihood of infringement may require a risk substantially greater than

6    that associated with a merely careless reading of the patent.

7        Before <u>Seagate</u>, the Federal Circuit evaluated willfulness "under the totality of

8    the circumstances."  <u>Seagate</u>, 497 F.3d at 1369.  Although the court abandoned the

9    affirmative obligation to seek counsel's opinion, <u>Seagate</u> does not suggest that the

10   Federal Circuit intended to jettison the general approach of viewing willfulness under

11   the totality of the circumstances.  Even advice of counsel may remain relevant, at least

12   as a defense to willfulness, though no longer an affirmative duty.  Retaining a totality

13   of the circumstances inquiry is also encouraged by the long tradition of giving trial

14   courts discretion to enhance infringement damages based on the specific circumstances

15   of a case.  <u>See id.</u> at 1369-70 (describing history of discretionary enhanced damages in

16   patent statutes and creation of willfulness standard to govern this inquiry); 35 U.S.C.

17   § 2254.  One obvious caveat to examining the totality of the circumstances is that the

18   accused infringer's state of mind is not relevant to the first threshold step in the <u>Seagate</u>

19   test.  <u>Seagate</u>, 497 F.3d at 1371.

20       One factor that is particularly relevant under the new analysis is the objective

21   likelihood of success on any contentions of invalidity or unenforceability.  The Federal

22   Circuit phrased the first threshold step in terms of "an objectively high likelihood . . .

23   [of] infringement of a valid patent."  <u>Id.</u>  Pre-<u>Seagate</u> decisions on willfulness also

24   considered contentions of invalidity and unenforceability, though in a more

25   subjectively light than now required by the first prong of the <u>Seagate</u> inquiry.  <u>See, e.g.</u>,

26   <u>Ortho Pharm. Corp. v Smith</u> 959 F.2d 936, 944 (observing that for counsel's opinion

27   to provide protection from willfulness allegations, it must be "thorough enough, as

28   combined with other factors, to instill a belief in the infringer that a court might

reasonably hold the patent is invalid, not infringed, or unenforceable"). Although Seagate's formulation of the first prong does not expressly mention enforceability, its inclusion is only logical since enforceability is a prerequisite for infringement.

**III.    Netravali '272 and Haskell '226 Patents**

       **A.    Objectively High Likelihood of Infringement**

              **1.    Considerations Common to Both Patents**

                     **a.    The MPEG-2 Standard**

       Plaintiffs argue that there must be an objectively high likelihood of infringement because Defendants have conceded both: (1) that the Video Patents are essential to the MPEG-2 standard and (2) that their products practice the MPEG-2 standard. The Court finds this argument unpersuasive for two reasons. First, for purposes of this motion Defendants have not conceded the that the patents are essential to the MPEG-2 standard. It is true that the Court recently observed that "[t]he parties do not dispute that the two patents are essential to the MPEG-2 standard." (Order Granting Part Denying Part Mots. Summ. J., 02 Doc. No. 2109, at 7.) There, the Court considered various affirmative defenses and counterclaims related to the transfer of patents to MPT. That order did not address the questions invalidity and infringement implicated here. Defendants argue that the concessions in that context were made for purposes of argument and should not defeat alternative pleadings that challenge these Video Patents. The Court agrees. Federal Rule of Civil Procedure 8(e) permits alternative and even inconsistent pleadings. Defendants' briefs adequately describe various ways that they have challenged the Video Patents' applicability to the MPEG-2 standard throughout this litigation. While there may come a point when the parties must be bound to a particular stance on inconsistent pleadings, the arguments made surrounding the trust-related summary judgment motions do not require this result.

       Second, even if Defendants had conceded that the patents are essential to the MPEG-2 standard, this is not equivalent to conceding that they have infringed a valid patent. Success on an invalidity defense could render the question of infringement

1  moot, so the likelihood of invalidity must be considered along with any other relevant

2  factors.  Furthermore, a legal determination of infringement requires both a judicial

3  construction of the claim and a "factual finding of whether properly construed claims

4  encompass the accused structure." Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,

5  805 F.2d 1558, 1562 (Fed. Cir. 1986).  A determination that a patent is essential to a

6  standard, though it may be similar to an infringement determination, is not identical and

7  therefore not binding on a court's infringement analysis.

8       After reviewing the motions and exhibits, the Court concludes that Defendants

9  have met their initial burden under the Celotex standard with respect to all the Patents.

10  See Celotex Corp., 477 U.S. at 325.  The parties have completed substantially all

11  discovery in this matter.  Significantly, Defendants point to specific documents

12  showing that there is a lack of evidence of willful infringement.  For example,

13  Microsoft points to an interrogatory response in which Lucent indicates that it bases

14  its contentions of willfulness on Microsoft having received notice of the patents

15  combined with a failure to discharge obligations established under the pre-Seagate

16  standard.  (See Decl. John Gartman Supp. Microsoft's Mot. Summ. J. No Willful

17  Infringement, Ex 1.)  These obligations are no longer present.  Seagate, 497 F.3d at

18  1371.  Accordingly, the burden shifts to Plaintiffs to present evidence that could permit

19  a reasonable trier of fact to find willful infringement by clear and convincing evidence

20  under the requirements set forth in Seagate.

21       In attempting to avoid summary judgment, Plaintiffs offer the opinion of

22  Kenneth Rubenstein of Meltzer, Lippe, Goldstein, Wolf, & Shlissel, P.C., that these

23  two patents are essential to various sections of the MPEG-2 standard.  (See Decl.

24  Jordan Malz Supp. Lucent MPT's Opp'n Defs.' Mots. Partial Summ J. No Willful

25  Infringement ("Malz Decl."), Ex. 25 at 451-61.)  His analysis maps various claims to

26  sections of the MPEG-2 standard, but it does not encompass all factors relevant to the

27  first step of the Seagate analysis, such as validity.  (See Decl. Lara Garner Supp.

28  Microsoft's Reply Supp. Mot. Partial Summ. J. No Willful Infringement ("Garner

1   Reply Decl.") Ex. 1 at 7 (excerpt from Rubenstein deposition stating that while some

2   prior art may have been examined, "we never looked at validity.")).  Defendants point

3   out that Rubenstein's analysis was made more than a decade ago without an

4   opportunity to apply the Court's claim construction orders for these patents. Also,

5   Rubenstein's opinion is limited to an analysis of the standard in the abstract, not to any

6   particular product or implementation of the standard.  The Court concludes that the

7   Rubenstein opinion does not defeat summary judgment on willful infringement by clear

8   and convincing evidence.

9                        **b.    PTO's Reexamination Orders**

10          Defendants' position is bolstered by PTO orders granting their ex parte requests

11  for reexamination of both patents due to substantial new questions of patentability.

12  (See Decl. Joseph Micallef Supp. Reply Supp. Dell's Mot. Summ J. Ex. 5-6 ("Micallef

13  Reply Decl.") (granting requests for reexamination of claim 12 of Haskell '226 and

14  claim 13 of Netravali '272).) The orders refer to prior art raised both in that proceeding

15  and here.  Although there is a presumption of validity for issued patents, 35 U.S.C.

16  § 282, the orders undoubtedly recognize a substantial question regarding patentability,

17  even viewed in a light favorable to Plaintiffs.  See 35 U.S.C. § 304 (requiring the

18  Director to issue an reexamination order upon finding  "a substantial new question of

19  patentability"). The Court concludes that the PTO's determination of a substantial

20  question of patentability supports Defendants' position, even though these orders are

21  preliminary and any reexamination may be subject to court review under 35 U.S.C. §

22  306 . The PTO's order is consistent with this Court's prior rulings that have recognized

23  factual questions remain regarding validity.  (See, e.g., 02 Doc. No. 1922, 1948.)

24          At oral argument, Plaintiffs raised two challenges to using the reexamination

25  orders in this context.  First, they argued that the orders should be given less weight

26  since they are based on ex parte applications.  This does not, however, change the fact

27  that the PTO must make an independent determination of whether there is a

28  "substantial new question of patentability."  35 U.S.C. § 304.  Second, they presented

1   statistics suggesting that the great majority of reexamination requests are granted and
2   argued that the orders should therefore be given less weight. Nevertheless, the statistics
3   do not persuade the Court that the PTO failed to fulfill its statutory duty of deciding
4   whether there is a substantial question of patentability.

5          The Court does not assume that a reexamination order will always prevent a
6   plaintiff from meeting their burden on summary judgment regarding willful
7   infringement, but it does consider this as one factor among the totality of the
8   circumstances.  It does appear that a reexamination order may be taken as dispositive
9   with respect to post-filing conduct.  The Seagate court observed that "[a] substantial
10  question about invalidity or infringement is likely sufficient not only to avoid a
11  preliminary injunction, but also a charge of willfulness based on post-filing conduct."
12  Seagate, 497 F.3d at 1374.  To the extent the Court accepts the PTO's determinations
13  that there are substantial questions of validity, the Court grants partial summary
14  judgment of no willful infringement with respect to post-filing conduct.

15                    c.    Expert Opinions on Infringement
16         In addition to alleged essentiality under the MPEG-2 standard, the only other
17  evidence Plaintiffs offer to overcome the first threshold of Seagate is the declaration
18  of their expert Bernd Girod.  (See Malz Decl. Ex. 3.)  Unlike the Rubenstein opinion,
19  this declaration analyzes the claims as they relate to Defendants' products and
20  addresses potential invalidity concerns.  Defendants have responded with their own set
21  of expert opinions to the contrary.  (See Decl. Jeffrey Plies Supp. Gateway's Reply
22  Brief Mot. Partial Summ. J. No Willful Infringement ("Plies Reply Decl.") Ex. 1; Decl.
23  Michael Stadnick Supp. MPT's Opp'n Defs.' Mots. Summ. J. Concerning Video
24  Patents, 02 Doc. No. 1662, Ex. 13; Micallef Reply Decl. Ex. 2; Garner Reply Decl. Ex.
25  3-4.)

26         The Court concludes that there is not a question close enough for a reasonable
27  trier of fact to find that there was an objectively high risk of infringement.  The Supreme
28  Court's Safeco opinion, which formed part of the foundation of Seagate, indicates that

1  this risk must be substantially more than that associated with a merely careless reading

2  of the patent.  See Safeco Ins. Co., 127 S.Ct. at 2215.  The expert opinions present

3  complex technical questions and highly disputed issues of infringement that are not in

4  Plaintiffs' favor by clear and convincing evidence.  Plaintiffs have not pointed to

5  anything in Girod's declaration suggesting that he considered the risk of infringement

6  to be usually high or the result of something more than a merely careless interpretation

7  of the patent.  In sum, the Court concludes that no reasonable trier of fact could

8  conclude, by clear and convincing evidence, that there is an objectively high likelihood

9  of infringement.

10              **2.      Specific Considerations for Netravali '272**

11         With regard to Netravali '272 claim 13, the court has already ruled in Defendants'

12  favor on several threshold issues required to establish an invalidity defense under 35

13  U.S.C. § 102(g).  (02 Doc. No. 1948.)  Plaintiffs have not asserted this patent against

14  Microsoft.  The Court notes that the only question remaining as to the other defendants

15  is the timing with which Dr. Janswat Jain reduced his dissertation to practice, if at all.

16  The Court concludes that this alone is enough to prevent Plaintiffs from meeting their

17  burden of showing that they could establish an objectively high likelihood of

18  infringement by clear and convincing evidence.  Whether or not this is ultimately

19  resolved in Plaintiffs' favor, it is undoubtedly a close question of invalidity.

20              **3.      Conclusion**

21         Given the issues on invalidity with Netravali '272 claim 13, the court concludes

22  that Plaintiffs have failed to meet their burden to offer evidence that would permit a

23  reasonable trier of fact to find, by clear and convincing evidence, an objectively high

24  likelihood of infringement of a valid patent.  The Court concludes that there are

25  substantial questions on the other Video Patent claims related to invalidity, and this in

26  combination with Plaintiffs' evidence of infringement is not enough to pass the

27  threshold for the first step of Seagate.

28  / / / /

**B.     Knowledge or Obviousness of Objectively Defined Risk**

Given that Plaintiffs failed to meet the first threshold test, the Court declines to decide whether Plaintiffs fulfill the second step of the Seagate test.  Plaintiffs have failed to make the requisite showing necessary to survive summary judgment. Accordingly, the Court **GRANTS** Defendants' motions for summary judgment of no willful infringement with respect to the Netravali '272 and Haskell '226 patents.

**IV.     The Day '356 Patent**

As with the Video Patents, the PTO has issued a reexamination order on Day '356, citing a substantial new question of patentability.  (See Micallef Reply Decl. Ex. 4.)  The order notes a substantial question with respect to claims 19 and 21, the only two claims still at issue in this litigation.  (See id. at 32.)  As with the Video Patents, this decision is not controlling, but it does weigh against Plaintiffs' position.  It is enough to overcome a finding of willfulness with respect to post-filing conduct.  Seagate, 497 F.3d at 1374.  The PTO's decision is consistent with this Court's prior summary judgment ruling that recognized there is a question of fact regarding invalidity.  (See 02 Doc. No. 1795.)

As with the Video Patents, both sides offer conflicting expert opinions regarding infringement and validity.  Lucent offers the opinions of Bruce Tognazzini.  (See Malz Decl. Ex. 5; Decl. Eric Hayes Supp. Lucent's Opp'n Microsoft's Mot. Non-Infringement, 02 Doc. No. 1490 Ex. 1.)  Defendants offer their own experts in reply. (See, e.g., Dell's Reply Supp. Mot. Partial Summ. J. No Willful Infringement at 4 n.5.) Much like the Video Patents, the Court concludes that viewing the various expert opinions in the light most favorable to Plaintiffs and in combination with other factors, they do not present a question close enough that a reasonable trier of fact could find that there was an objectively high risk of infringement.  The opinions are not  in Plaintiffs' favor by clear and convincing evidence, and they have not pointed to anything in Tognazzini's statements suggesting that he considered the risk of infringement to be / / / /

1  usually high or the result of something more than a merely careless interpretation of the
2  patent.

3        The Court concludes that no reasonable trier of fact could find, by clear and
4  convincing evidence, that defendants willfully infringed the Day '356 patent.
5  Therefore, the Court **GRANTS** Defendants' motions for partial summary judgment of
6  no willful infringement with respect to this patent.

7  **V.    Plaintiffs Alleged Failure to Move for Summary Judgment of Willful**
8  **Infringement**

9        Defendants have argued that their motions must be granted because Plaintiffs
10 have not moved for summary judgment on willful infringement and either not moved
11 for summary judgment or been denied summary judgment on other related issues,
12 including some of Defendants' invalidity defenses.  The Court disagrees.  Defendants
13 offer no legal authority for this proposition, and the Court sees no reason that a party's
14 decision not to bring a summary judgment motion requires that summary judgment be
15 granted to an opposing party.  To hold otherwise would prevent parties from exercising
16 judgment over litigation strategy and burden the courts with additional motions.

17       Similarly, a denial of summary judgment does not require the Court to grant an
18 opposing party's motion on that same issue, let alone a different one.  See, e.g., Starsky
19 v. Williams, 512 F.2d 109, 112 (9th Cir. 1975) ("[T]he mere fact that the parties make
20 cross-motions for summary judgment does not necessarily mean that there are no
21 disputed issues of material fact and does not necessarily permit the judge to render
22 judgment in favor of one side or the other.")  The Court recognizes, however, that
23 certain prior adjudications weigh against Plaintiffs' position, and it affords these rulings
24 consideration in its discussion of the individual patents.

25 **VI.   Fleming '759 and Agulnick '295 Patents**

26       Lucent indicated that it does not intend to pursue claims of willful infringement
27 with respect to the Fleming '759 and Agulnick '295 patents.  After reviewing the / / /
28 / / / /

1   moving papers, the Court **GRANTS** Defendants motions for partial summary judgment

2   of no willful infringement with respect to these patents.  (See Opp'n Brief at 1 n.1.)

3                                    <u>**Conclusion**</u>

4           For the reasons set forth above, the Court **GRANTS** the Defendants' motions

5   for partial summary judgment of no willful infringement with respect to U.S. Patent

6   Nos. 4,383,272, 4,439,759, 4,763,356, 4,958,226 and 5,347,295.

7           **IT IS SO ORDERED.**

8

9   DATED:  October 30, 2007

10                                   _____

11                                   MARILYN L. HUFF, District Judge
                                     UNITED STATES DISTRICT COURT

12

13

14  COPIES TO:
    All parties of record.
15

16

17

18

19

20

21

22

23

24

25

26

27

28