1  James S. Blackburn (State Bar No. 169134)
   ARNOLD & PORTER LLP
2  777 South Figueroa Street, 44th Floor
   Los Angeles, California  90017-5844
3  Telephone:  (213) 243-4000
   Facsimile:  (213) 243-4199
4
   Joseph A. Micallef (admitted *pro hac vice*)
5  ARNOLD & PORTER LLP
   555 Twelfth Street, N.W.
6  Washington, D.C.  20004-1206
   Telephone:  (202) 942-5000
7  Facsimile:  (202) 942-5999
8  Joel M. Freed (admitted *pro hac vice*)
   McDERMOTT WILL & EMERY LLP
9  600 13th Street, N.W.
   Washington, D.C.  20005-3096
10 Telephone:  (202) 756-8000
   Facsimile:  (202) 756-8087
11
   Attorneys for *Dell Inc.*
12

13            UNITED STATES DISTRICT COURT

14          SOUTHERN DISTRICT OF CALIFORNIA

15

16 LUCENT TECHNOLOGIES INC.  and          ) Case No. 07-CV-2000-H (CAB)
   MULTIMEDIA PATENT TRUST,               ) consisting of matters severed from
17                                        ) consolidated cases:
       Plaintiffs and Counterclaim-defendants, ) Case No. 02-CV-2060-B (CAB)
18                                        ) Case No. 03-CV-0699-B (CAB)
       v.                                 ) Case No. 03-CV-1108-B (CAB)
19                                        )
   GATEWAY, INC. AND GATEWAY              ) **DELL'S MEMORANDUM OF POINTS**
20 COUNTRY STORES LLC, GATEWAY            ) **AND AUTHORITIES IN SUPPORT OF**
   COMPANIES, INC., GATEWAY               ) **ITS MOTION FOR**
21 MANUFACTURING LLC and                  ) **RECONSIDERATION OF THE**
   COWABUNGA ENTERPRISES, INC.,           ) **COURT'S OCTOBER 1, 2007 ORDER**
22                                        )
       Defendants and Counter-claimants,  ) Judge Marilyn L. Huff
23                                        )
   and                                    ) Hearing Date: December 7, 2007
24                                        ) Hearing Time:  9:00 a.m.
   MICROSOFT CORPORATION,                 ) Location: Courtroom 13, 5th Floor
25                                        )
       Intervener and Counter-claimant,   ) **REDACTED VERSION FILED**
26                                        ) **PUBLICLY**
                                          )
27                                        ) **[CONFIDENTIAL VERSION FILED**
                                          ) **UNDER SEAL]**
28 _____ )

448088_1.DOC

1    MICROSOFT CORPORATION,                    )
                                               )
2              Plaintiff and Counter-defendant, )
                                               )
3    v.                                        )
                                               )
4    LUCENT TECHNOLOGIES INC. and              )
     MULTIMEDIA PATENT TRUST,                  )
5                                              )
               Defendants and Counter-claimants, )
6                                              )
_____)
7    LUCENT TECHNOLOGIES INC. and              )
     MULTIMEDIA PATENT TRUST,                  )
8                                              )
               Plaintiffs and Counterclaim-defendants, )
9                                              )
     v.                                        )
10                                             )
     DELL INC.,                                )
11                                             )
               Defendant and Counter-claimant. )
12   _____)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ...........................................................................................................1

II.   FACTUAL BACKGROUND ........................................................................................2

III.  ARGUMENT ...............................................................................................................7

    A.   Standards For Reconsideration ..........................................................................7

    B.   The Affirmative Defense Of License..................................................................7

        1.   *Morrow* Does Not Provide A Basis For Holding That The
            "Assignment" Was Effective ...........................................................7

        2.   Material Issues of Fact Exist Regarding Violation of the Lucent-
            Alcatel Merger Agreement...........................................................12

    C.   Interference With Contract................................................................................14

    D.   Application Of The Unclean Hands Defense Is Appropriate Here............................17

    E.   In the Alternative, Dell Requests that the Court's Orders With Respect to
        the License and Unclean Hands Defenses Be Certified For Interlocutory
        Appeal ...........................................................................................................19

IV.   CONCLUSION ...........................................................................................................20

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Abbott Laboratories v. Diamedix Corp.,
  47 F.3d 1128 (Fed. Cir. 1995).................................................................................. 9, 10

Aktiebolag v. Waukesha Cutting Tools, Inc.,
  640 F. Supp. 1139 (E.D. Wis.1986)............................................................................ 20

Amarel v. Connell,
  102 F.3d 1494 (9th Cir. 1996)....................................................................................... 7

Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litigation),
  673 F.2d 1020 (9th Cir. 1981)...................................................................................... 20

Art Metal Works v. Abraham & Straus,
  70 F.2d 641 (2d Cir. 1934), cert. denied 293 U.S. 596................................................ 18

Biagro Western Sales, Inc. v. Helena Chemical Co.,
  160 F. Supp. 2d 1136 (E.D. Cal. 2001)................................................................... 10, 11

Central Virginia Cmty. College v. Katz,
  546 U.S. 356 (2006)...................................................................................................... 9

Gaudiosi v. Mellon,
  269 F.2d 873 (3d Cir. 1959)......................................................................................... 18

Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.,
  117 F. Supp. 2d 508 (E.D. Va. 2000)....................................................................... 10, 12

In re Morente,
  2000 Del. Ch. LEXIS 32 (Ct. Chancery Del. Feb. 29, 2000) ..................................... 18

Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.,
  870 F. Supp. 1237 (D.N.J. 1994), aff'd, 85 F.3d 612 (3d Cir. 1996)........................... 15

Morrow v. Microsoft Corp.,
  2007 WL 2713248 (Fed. Cir. Sept. 19, 2007)............................................ 1, 4, 7, 8, 9, 12

Morton Salt Co. v. G. S. Suppiger Co.,
  314 U.S. 488 (1942)..................................................................................................... 19

Pfizer, Inc. v. Elan Pharm. Research Corp.,
  812 F. Supp. 1352 (D. Del. 1993).................................................................................. 8

Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,
  324 U.S. 806 (1945)..................................................................................................... 18

Prima Tek II, L.L.C. v. A-Roo Co.,
  222 F.3d 1372 (Fed. Cir. 2000)............................................................................... 8, 11

- ii -

*Propat Int'l. Corp. v. RPost, Inc.,*
    473 F.3d 1187 (Fed. Cir. 2007) ................................................................. 8, 11

*Refac Int'l., Ltd. v. Mastercard Int'l, F.W.,*
    758 F. Supp. 152 (S.D.N.Y. 1991) .................................................................. 12

*Sicom Sys., Ltd. V. Agilent Techs., Inc.,*
    427 F.3d 971 (Fed. Cir. 2005) ......................................................................... 8

*Speedplay, Inc. v. Bebop, Inc.,*
    211 F.3d 1245 (Fed. Cir. 2000) ................................................................. 9, 10

*United States Movidyn Corp. v. Hercules, Inc.,*
    388 F. Supp. 1146 (D. Minn. 1975) ......................................................... 18, 19

*United States v. Martin,*
    226 F.3d 1042 (9th Cir. 2000) ......................................................................... 7

*Velop, Inc. v . Kaplan,*
    301 N.J.Super. 32 (N.J. Super. App. Div. 1997) .......................................... 16

*Vaupel Textilmaschinen KG v. Meccanico Euro Italia S.P.A.,*
    944 F.2d 870 (Fed. Cir. 1990) ......................................................................... 8

*Voda v. Cordis Corp.,*
    476 F.3d 887 (Fed. Cir. 2007) ....................................................................... 20

**STATUTES AND RULES**

28 U.S.C. § 1292(b) .......................................................................................... 20

Federal Circuit Rule 35 ....................................................................................... 8

**OTHER AUTHORITIES**

6-19 Donald S. Chisum, *Chisum on Patents* §19.03[6][a][iii][b] ...................... 18

Restatement (2d) Torts § 744A ......................................................................... 16

Restatement (Second) of Torts § 766 (1979) ................................................... 15

## I.     INTRODUCTION

Defendant Dell Inc. ("Dell") hereby respectfully requests that the Court reconsider its October 1, 2007 summary judgment order[1] based on three clear errors.  First, the Court's grant of summary judgment to Multimedia Patent Trust ("MPT") on Dell's license defense hinges on errors of law as well as fact.  The Court premised its ruling on what is — at most — dicta in a recent Federal Circuit case, *Morrow v. Microsoft Corporation*.  The dicta of *Morrow*, however, does not (and cannot) overrule clear Federal Circuit precedent, which deems the veto by Lucent Technologies Inc. ("Lucent") over the sale or monetization of MPT's patents as a "fatal" reservation of rights antithetical to a true "assignment."  The Court also misapprehended the facts underlying Dell's license defense by finding that Alcatel had consented to Lucent's transfer of the Video Coding Patents to MPT.  Whatever awareness Alcatel may have had of the impending transfer certainly does not equal the express written consent to that transaction required by the Merger Agreement with Lucent.  At a minimum, disputed issues of fact thus preclude summary judgment on Dell's license defense.

Second, the Court's ruling on Dell's Counterclaim for Tortious Interference with Contract is inconsistent with its ruling on Gateway's claim for Tortious Interference with Prospective Economic Advantage.  The Court granted Lucent summary judgment on the former but denied Lucent's motion on the latter.  Both claims, however, are based on the same underlying facts and circumstances.  The Court's rulings rest on its characterization of the "advantage" interfered with as solely a "prospective economic advantage" rather than an existing contract.  Not so.  While the performance Lucent interfered with may have been "prospective," the right to that performance arose out of an existing contract between Alcatel and Defendants — the MPEG LA License Agreement.  The Court's dismissal of Dell's claim for interference with contract thus rests on clear error.

Finally, the Court misperceived the unclean hands inquiry by requiring Defendants to show that the conduct underlying the defense have "an effect on the issue in the instant litigation," rather than simply relate to the subject matter in litigation — the Video Coding Patents.  Defendants met the

---

[1] The Court's Order is entitled "Order Granting in Part and Denying In Part Parties' Motions for Summary Judgment Regarding Defendants' Affirmative Defenses and Counterclaims Pertaining To The Transfer Of The Group 1 Patents To The Multimedia Patent Trust," and is referred to herein as the "Oct. 1 Order."

- 1 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1   required showing with evidence that, in the course of transferring the Video Coding Patents to MPT,

2   Lucent made numerous misrepresentations regarding the disposition of those patents to (1) the SEC,

3   (2) Lucent shareholders, and (3) the public.  Lucent's inequitable actions directly relate to the subject

4   of MPT's claims — the Video Coding Patents — and give rise to an unclean hands defense.  The

5   Court erred in concluding otherwise.

## II.   FACTUAL BACKGROUND

7         Lucent initially asserted infringement of several patents, including U.S. Patent Nos. 4,958,226

8   ("Haskell") and 4,383,272 ("Netravali") (the "Video Coding Patents") against Defendants.[2]  On April

9   2, 2006, Lucent announced a pending merger with Alcatel S.A. ("Alcatel").



_____
[2] Both Haskell and Netravali were asserted against Dell and Gateway.  Only Haskell was asserted against Microsoft.

[3]



- 2 -

1

2

3

4

5    In recognition of the license defense, on August 15, 2006, the Court stayed all proceedings

6    related to those patents pending the merger. *Id.* Ex. 4 (August 15, 2006 Order Staying Certain

7    Proceedings, Vacating Certain Hearing Dates, And Setting Status Conference).

8

9

10

11

12

13    After the Court lifted the stay, plaintiffs (now Lucent and MPT) filed a Second Amended

14    Complaint, alleging that on November 28, 2006, Lucent assigned its entire right, title, and interest in

15    the Video Coding Patents to MPT, including the right to sue for past infringement.  (Second Amended

16    Complaint ¶ 23).  Dell answered on February 9, 2007, stating that MPT's claims for infringement of

17

18    _____

19    4

20

21

22

23

24

25

26

27

28

- 3 -

1   the Video Coding Patents are barred by Dell's MPEG-2 License with MPEG LA, L.L.C. (Answer and

2   Counterclaims of Dell, Inc. ¶ 110). Gateway and Microsoft filed similar pleadings.

3         Cross-motions for summary judgment were filed by the parties with respect to Defendants'

4   license defense and certain other counterclaims and defenses arising out of Lucent's purported transfer

5   of the Video Coding Patents to MPT. On September 26, 2007, the Court heard argument on a number

6   of these motions, including Lucent's motion for summary judgment on Dell's counterclaim of

7   Tortious Interference with Contract and the parties' cross-motions for summary judgment regarding

8   the defenses of license and unclean hands. The Court issued its order on the parties' cross-motions for

9   summary judgment on October 1, 2007.

10        The Court's Oct. 1 Order granted summary judgment against Defendants and in favor of MPT

11   on the defense of license. In ruling on the defense of license, the Court found that the Trust

12   Agreement and the Patent Assignment between Lucent and MPT were sufficient to transfer "all

13   substantial rights" from Lucent to MPT. The Court rejected Defendants' argument that there was no

14   true assignment because Lucent retained an unfettered right to veto any sale or monetization of the

15   patents by MPT. Although the Court acknowledged that "[t]he absence of complete control over the

16   transfer of property may be indicative of lack of true ownership," it concluded that each of the

17   numerous cases finding that such restraints defeated assignment "involved circumstances where the

18   party lack[ed] additional key rights[.]" Oct. 1 Order at 6:8-14. The Court's Order indicated that

19   "MPT lacks only the right to assign without Lucent's consent." *Id.* at 6:15. In so holding, the Court

20   overlooked many other critical rights of ownership reserved by Lucent and withheld from MPT.

21   Focusing solely on the requirement of Lucent's consent to sell the patents, and relying on a

22   misconstruction of certain dicta in *Morrow v. Microsoft Corp.*, 2007 WL 2713248 (Fed. Cir. Sept. 19,

23   2007), the Court found that "based on the parallels to *Morrow*," the consent requirement did not

24   defeat a finding of effective "assignment" of the patents. *See* Oct. 1 Order at 6:15-24.

25        The Court also rejected Defendants' argument that Alcatel-Lucent's obligation to license the

26   patents to Defendants still stands, because, any transfer of rights to MPT was subject to Lucent's

27   existing obligation not to transfer the patents prior to the merger. The Court noted that "according to

28   the Patent Assignment, the transfer of rights to MPT is subject to '(a) existing rights and licenses (and

- 4 -

1   associated obligations) of third parties, and Assignor's and its subsidiaries obligations to such third

2   parties . . . .'" Oct. 1 Order at 7:8-11 (*quoting* Patent Assignment § 1). The Merger Agreement

3   between Alcatel and Lucent, in which Lucent agreed not to sell or transfer any material assets would

4   constitute such an existing obligation to a third party. *See* Oct. 1 Order at 7:14-8:10. However, the

5   Court granted summary judgment in favor of Plaintiffs, finding as a matter of law that Lucent

6   complied with the Merger Agreement by obtaining Alcatel's permission to transfer the patents prior to

7   the merger.[5] Dell submits that material issues of fact exist as to whether Lucent obtained Alcatel's

8   consent under the Merger Agreement to its purported transfer of the patents.

9       The Court's Oct. 1 Order also addresses Defendants' two similar counterclaims for Tortious

10   Interference with Contract and Interference with Prospective Economic Advantage. Only the first of

---

[5] On April 2, 2006, Lucent and Alcatel entered into an Agreement and Plan of Merger ("Merger Agreement"), approved by their respective boards of directors, which defined the terms and conditions of the merger. In Section 5.01(j) of the Merger Agreement, Lucent agreed not to dispose of its "material assets" prior to completion of the merger:

> Lucent will not, and will not permit any of its Subsidiaries to, sell, transfer, lease, license, pledge, encumber or otherwise dispose of any material (as determined with respect to Lucent and its Subsidiaries taken as a whole) assets or stock . . .

Blackburn Decl., Ex. 8 at 224 (Merger Agreement, § 5.01(j)). Lucent also promised not to enter into any material agreements or "any partnership or other similar arrangements." *Id.* at 224-25 (Merger Agreement, §§ 5.01(p), (l)). And, Lucent agreed not to "settle, pay, discharge or compromise any material claim . . . or litigation" prior to the merger, unless in the ordinary course of Lucent's business. *Id.* at 224 (Merger Agreement, §§ 5.01(o)). Finally, in a catch-all provision, Lucent promised "not to . . . agree or commit to do any of the foregoing." *Id.* Ex. 8 at 225, § 5.01(r).

Lucent and Alcatel also filed a public Proxy Statement on Form DEFA 14A with the SEC on April 4, 2006, confirming that they would combine their patent portfolios in the merger. *Id.* Ex. 11 at 338 (Lucent Technologies Inc.'s Form DEFA 14A, filed April 4, 2006). In a separate Proxy Statement, also filed publicly with the SEC, Lucent further guaranteed that "the way the proposed merger is structured, all of the patents will continue to be owned by Lucent and its subsidiaries." *Id.* Ex. 12 at 355 (Lucent Technologies Inc.'s Form DEFA 14A, filed April 7, 2006).

On September 7, 2006, shareholders of Lucent and Alcatel voted to approve the Merger Agreement. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

When Lucent and Alcatel merged on November 30, 2006, Lucent became a wholly owned subsidiary of Alcatel-Lucent. *Id.* Ex. 13 (December 8, 2006 letter from Robert A. Appleby to John E. Gartman).

- 5 -

1   these two claims was initially asserted by Dell.[6]  As the Court recognized in its Oct. 1 Order, both of

2   these counterclaims arise from Plaintiffs' interference with Defendants' "expectation that [they]

3   would have received a sublicense to the video coding patents upon the merger of Lucent and Alcatel

4   pursuant to the existing obligations between Alcatel and MPEG LA and the sublicensing agreement

5   between [Defendants] and MPEG LA." Oct. 1 Order at 20:3-5.  The Court denied Plaintiffs' motion

6   for summary judgment on Interference with Prospective Economic Advantage, finding that material

7   issues of fact exist as to whether Plaintiffs acted with malice and whether Defendants had a reasonable

8   expectation that they would receive rights to the Video Coding Patents.  Oct. 1 Order at 21:15-22:15.

9   However, the Court granted Plaintiffs' summary judgment motion on the Interference with Contract

10  counterclaim based on its conclusion that the "alleged interfering conduct by Lucent" occurred at a

11  time when defendants did not yet have any right to a license under the Video Coding patents under the

12  MPEG LA agreements.  Oct. 1 Order at 20:18-21:4.  By this motion, Dell submits that it properly

13  grounded its claim of Interference with Contract on Lucent's interference with its rights to obtain

14  future benefits under the *existing* MPEG LA agreements.

15      Additionally, the Court concluded that none of Lucent's misconduct with respect to the

16  transfer of the patents to MPT can support the application of unclean hands.  After describing the

17  substantial and unrefuted evidence that Lucent made false and misleading statements to the

18  government, its shareholders and the public with respect to the disposition of its patents during the

19  merger, the Court found that it could not apply the unclean hands doctrine because Defendants had

20  failed to show that these acts directly impacted the fate of the patents or any other issue in this

21  litigation.  Oct. 1 Order at 13:13-14:25.  Dell submits that the Court erred in holding that it was barred

22  from applying unclean hands on the ground that there was no direct injury to Defendants.

---

[6] Given the various joinders in motions and the oral proceedings on the motions, the Oct. 1 Order states that the tort of Interference with Prospective Economic Advantage "has been pleaded as a separate counterclaim by Gateway (and now by *all defendants*)." Oct. 1 Order at 21:7-8 (emphasis added).  In the event that the Court denies Dell's motion for reconsideration of its dismissal of Dell's counterclaim for Interference with Contract, Dell confirms that Dell will, shortly thereafter, amend its pleadings specifically to include the claim for Interference with Prospective Economic Advantage which the Court has accepted as being asserted "by all defendants."

- 6 -

## III.    ARGUMENT

### A.    Standards For Reconsideration

"District court[s] have inherent jurisdiction to modify, alter, or revoke" any order that has not yet become final.  *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000); *see also Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("The interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge."). "The authority of district courts to reconsider their own orders before they become final . . . allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *Id.*  Because the October 1 Order is not a final order and judgment has not been granted in this case, the Court maintains inherent authority to reconsider it.  Local Rule 7.1(i)(2) permits motions for re consideration within "30 days of the entry of the ruling."

### B.    The Affirmative Defense Of License

Dell respectfully submits that, in granting summary judgment in favor of MPT on the defense of license, the Court erred in at least three ways.  First, it was error to read *Morrow* as holding that an assignment of a patent is effective, even where the purported transferor holds an *unfettered* right to prevent future transfer of that patent.  Second, the Court did not consider the impact of Lucent's retention of many other critical rights of ownership.  Third, with respect to whether the transfer from Lucent to MPT was proper under the Merger Agreement, there is, at a minimum, a triable issue of fact.

#### 1.    *Morrow* Does Not Provide A Basis For Holding That The "Assignment" Was Effective

In its eleventh hour attempt to assign its patents to MPT to avoid a contractual obligation to license them, Lucent reserved a great many substantial rights of ownership to itself.  In the aggregate, these reservations which are enumerated below, demonstrate a failure to transfer "all substantial rights" in the patents.  Defendants' briefing on the summary motion paid particular focus to one of these significant reservations -- Lucent's unfettered right to prevent MPT from sale or monetization of the patents-in-suit.  That is because the law is unequivocal that an unfettered restriction on alienation

- 7 -

1    of the purportedly assigned patents defeats assignment.  See *Sicom Sys., Ltd. V. Agilent Techs., Inc.*,

2    427 F.3d 971, 979 (Fed. Cir. 2005) (finding restriction that plaintiff could not assign the patent at

3    issue without the written consent of the prior patent owner was a "fatal reservation of rights" defeating

4    assignment); *Propat Int'l. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (holding that no

5    assignment had occurred where the "assignor" retained an unfettered right to veto any transfer of the

6    assignee's rights).  Because MPT did not obtain the right to freely transfer its interest in the patents,

7    the court "need look no further in determining that [the licensor] reserved substantial rights under the

8    Agreement."  *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1373 (D. Del. 1993).

9        Notwithstanding this clear law, the Court held that, based on certain dicta in *Morrow v.*

10   *Microsoft Corp.*, Nos. 2006-1512, -1518, -1537, 2007 WL 2713248 (Fed Cir. Sept 19, 2007), that

11   Lucent's ability to veto sale or monetization of the Video Coding Patents did not defeat an effective

12   assignment of the patents.  *See* Oct. 1 Order at 6:15-24.  *Morrow*, however, does not reverse the

13   settled law, cited above, that Lucent's reservation of rights is "fatal" to an effective assignment.[7]

14   Indeed, *Morrow* cites with approval, rather than overturns, the authority on which Dell relies to show

15   that Lucent's reservations of rights are "fatal" to the purported assignment to MPT.  *See Morrow*,

16   2007 WL 2713248 at \*14, n. 6 ("The substantial rights inquiry is a proxy for the statutory requirement

17   that a party bringing an infringement suit have the interests of a patentee, including the exclusionary

18   rights granted by the patent statutes and . . . the right to assign those rights . . .".) (emphasis added)

19   (citing *Sicom Sys., Ltd.*, 427 F.3d at 976; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378-79

20   (Fed. Cir. 2000); and *Vaupel Textilmaschinen KG v. Meccanico Euro Italia S.P.A.*, 944 F.2d 870, 875

21   (Fed. Cir. 1990)).

22       The dicta cited by the Court can not, and does not, overrule the authority cited by Defendants.

23   In addressing the peculiar split of the patent rights in that case,[8] the *Morrow* court states in dicta:

24   _____

25   [7] Under the Federal Circuit rules, only an *en banc* ruling by the entire Court may overrule prior
     precedent.  *See* Federal Circuit Rule 35.

26   [8] The facts presented in *Morrow* involved a split of rights related to the patent-in-suit.  2007 WL

27   2713248 at \*4.  One trust, AHLT, possessed the exclusive right to license the '647 patent and the right
     to transfer it (subject to a consent requirement), while another trust, GUCLT, had been assigned the
     right to sue for patent infringement.  *Id.*  The issue before the Federal Circuit was whether GUCLT

28   had standing to sue.  *Id.*  In the course of detailing the reasons that GUCLT lacked standing, the court

(Footnote Cont'd on Following Page)

- 8 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

> The only limitations on AHLT's ability to control and transfer its patent rights is GUCLT's and BHLT's consent. In *Speedplay*, we noted that this type of consent requirement was not significantly restrictive of Speedplay's exclusionary patent rights, which included an exclusive license and the right to sublicense a potential infringer.

*Morrow* at *8, citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed. Cir. 2000). In *Morrow*, however, the only issue before the Court was whether GUCLT — an entity possessing only a right to sue infringers and no other rights under the patents-in-suit — had constitutional standing to bring a patent infringement action. *Morrow* at *2. The *Morrow* case did not hold that a transfer of "all substantial rights" to a patent can occur where the transferor retains an unrestricted veto power over any subsequent transfers. Indeed, that issue was never presented for review. Accordingly, the Federal Circuit's statements regarding AHLT's potential standing to bring suit are mere dicta and have no impact on the authority consistently holding that the right to transfer the patents is a substantial right of ownership. *See Central Virginia Cmty. College v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated.").

Furthermore, the Court's statements regarding AHLT's potential rights are based on the Court's citation of its prior opinion in the *Speedplay* case. Even a cursory reading of *Speedplay* illustrates why MPT lacks standing to sue Dell. In *Speedplay*, the Federal Circuit held that the plaintiff had standing because the rights granted to *Speedplay* were not subject to restrictions determined to be fatal to an assignment in *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995):

> [u]nlike in *Abbott*, the license grant [in *Speedplay*] was not subject to any prior-granted licenses or to any retained rights by the licensor to practice the patent. . . . To be sure, the licensee's inability to assign its interest was a factor important to the holding in *Abbott*. . . . The licensor in *Abbott* had an absolute right to veto any assignment proposed by the licensee, other than to a successor in business."

*Speedplay*, 211 F.3d at 1251. The consent requirement in *Speedplay* was distinguishable from Abbott

---

(Footnote Cont'd From Previous Page)

described the ownership rights to the patent that AHLT possessed and GUCLT lacked. Importantly, the Court *did not* address whether AHLT would have had standing to sue as that was simply not at issue in the case.

- 9 -

1  because, in *Speedplay*, the licensor's consent could not be withheld unreasonably.  *Id.*  In the instant

2  case, however, Lucent's right to veto any assignment or sale of the patents-in-suit is absolute.

3       Moreover, Defendants' affirmative defense and its argument that the transfer of rights was

4  ineffective does not rest exclusively on the restraint on alienation.  In addition to this restraint, Lucent

5  has retained numerous other rights in the patents-in-suit, which were not considered by the Court in its

6  Oct. 1 Order:

7      • **Lucent Retained A Broad License For Itself And Its Affiliates**



16       As articulated in *Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508,

17  513 n. 4 (E.D. Va. 2000), one who takes its interest "subject to the rights of others to use the patented

18  technology" can never obtain the status of an assignee.  Where the assignor retains "significant rights

19  in using the invention, patent products, patent methods and associated technology," the assignee

20  cannot exclude all persons from practicing the technology, and therefore is without "all substantial

21  rights" in the patent.  *See Biagro Western Sales, Inc. v. Helena Chemical Co.*, 160 F. Supp. 2d 1136,

22  1145 (E.D. Cal. 2001).  In *Abbott*, the Federal Circuit found plaintiff was not an assignee with

23  standing to bring an independent suit where the assignor reserved several rights to itself including "the

24  right to make and use, for its own benefit, products embodying the inventions claimed in the patents,

25  as well as the right to sell such products to end users, to parties with whom [the assignor] had pre-

26  existing contracts, and to pre-existing licensees." *Abbott*, 47 F.3d at 1132.

27

28

- 10 -

- **Lucent Holds The Financial Interest In The Patents**



The limited transfer of rights and duties between Lucent and MPT was not an effective assignment, because Lucent retained the entire financial interest in all patent licenses and all litigation related to the patents. *See Propat*, 473 F.3d at 1191 (finding "the fact that Authentix retains a substantial share of the proceeds [of exploitation of the patent] is consistent with Authentix's retaining ownership rights in the patent, while allocating to Propat the duty to provide licensing and enforcement services").

- **Lucent Receives Reports Of All Licensing Revenues And Expenses**



*See Biagro Western Sales*, 160 F. Supp. 2d at 1145 (finding no assignment where, inter alia, "[p]laintiff must provide progress reports and royalty reports to the [assignor] to ensure [p]laintiff has met its due diligence requirement.").

- **MPT's "Assignment" Is Subject To Existing Rights And Licenses Granted By Lucent To Third Parties**

"In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, [courts] pay particular attention to whether the agreement conveys in full the right to exclude others from making, using and selling the patented invention in the exclusive territory." *Prima Tek II*, 222 F.3d at 1379 (emphasis original) (finding that the agreement in question did not convey all substantial rights to the patents in suit). Here, the "assignment" did not convey the full right to exclude others. Instead, any

- 11 -

1  third parties that have obtained licenses from Lucent cannot be excluded, and any royalties on those

2  licenses are to be paid to Lucent, not MPT.

3        Courts consistently hold that an effective assignment has not been made where the assignee

4  obtains less than a full right to exclude others.  In *Refac Int'l., Ltd. v. Mastercard Int'l, F.W.*, 758 F.

5  Supp. 152 (S.D.N.Y. 1991), the court held that because plaintiff received its patent rights subject to

6  the rights of existing licensees, plaintiff could not be an assignee.  *Id.* at 155-56.  Similarly, in *Hill*

7  *Phoenix*, 117 F. Supp. 2d at 513, n. 4, the court explained: "Clearly, one who takes a license subject

8  to the right of others to use the patented technology cannot have obtained all substantial rights under

9  the patent, which is what is required to obtain the status of assignee and be able to bring suit alone."

10        In the aggregate, the retention of all these rights demonstrate Lucent's continued ownership

11  interest in the transferred patents, and the absence of any true assignment to MPT.  These retained

12  rights were not considered by the Court in its Oct. 1 Order.  Dell respectfully submits that these

13  retained rights, together with Lucent's veto power over sale or monetization of the Video Coding

14  Patents, defeats assignment under controlling authority.  *Morrow* does not hold otherwise.

15          **2.**    **Material Issues of Fact Exist Regarding Violation of the Lucent-Alcatel**
16                    **Merger Agreement**

17        In dismissing the defense of license, the Court concluded that Lucent's efforts to transfer the

18  patents-in-suit to MPT did not violate Section 5.01(j) of the Merger Agreement.  As the Court noted,

19  the Patent Assignment between Lucent and MPT provides that it is subject to existing rights of third

20  parties.  *See* Oct. 1 Order at 7:8-11 (quoting Patent Assignment § 1).  Therefore, if it is determined

21  that Lucent violated its obligation under the Merger Agreement *not to* dispose of its material assets,

22  any attempted transfer under the Patent Assignment would be subject to that existing obligation to

23  Alcatel.  In granting summary judgment, the Court found as a matter of law that Lucent complied with

24  the Merger Agreement and obtained Alcatel's permission to transfer the patents prior to the merger.

25  Dell submits that material issues of fact exist as to whether Lucent's attempted transfer of the patents

26  violated the Merger Agreement, and these disputed questions of fact bar summary adjudication.

27        In the relevant portions of the Merger Agreement, Lucent relinquished any right to transfer

28  material assets, enter into material agreements, or form new entities before the merger without

- 12 -

1    Alcatel's written consent. Blackburn Decl. Ex. 8 at 224-25 (Merger Agreement, § 5.01(j), (l), (o), (r)).

2    It is undisputed that, per the express terms of the Merger Agreement, Lucent was required to obtain

3    written consent requirements to transfer the patents, to form MPT, and to enter into material

4    agreements with MPT. This Court has concluded that the patents-in-suit are "material assets" within

5    the meaning of these provisions. Oct. 1 Order at 7-8.

6

7

8

9

10    In its Order granting summary judgment in favor of Lucent, the Court recognized that Lucent

11    *failed* to obtain permissions related to the creation of MPT and transfer of the patents in signed

12    writings that conformed to the requirements of the Merger agreement. Oct. 1 Order at 8-9.

13    Nonetheless, the Court concluded, as a matter of law, that the parties "substantially performed" the

14    agreement, because emails and memoranda regarding the plans to form MPT and transfer the patents

15    to it were sent to certain heads of departments and other decision makers. Significantly, the written

16    communications with Alcatel *say nothing* about MPT, and simply refer generally to discussions

17    regarding strategic alternatives to address the "MPEG Problem." The Court found that this was

18    sufficient to comply with Section 10.01 of the Merger agreement which specifies the form of

19    communications between the parties, but also permits communications to other parties "as such party

20    may hereafter specify." *Id.* at 9. However, Lucent has pointed to *no communication* in which Alcatel

21    or Lucent "specif[ied]" that the requirement of a formal, signed permission for any transfer of assets

22    was waived. Critically, by its own terms, the Merger Agreement prohibits waivers of its provisions in

23    the absence of a signed writing. *See* Blackburn Decl. Ex. 8 at 247 (Merger Agreement, § 10.03).

24    Given the various terms of the Merger Agreement violated here, it is impossible to conclude that the

25    agreement was substantially performed so long as Alcatel gave its "apparent consent" to the creation

26    of MPT and transfer of patents. *See* Oct. 1 Order at 8. No evidence has been proffered to suggest that

27    the requirement of a signed writing was not a material term of the agreement.

28

- 13 -

1    Further, the evidence adduced by the parties creates material issues of fact as to whether

2    emails, memos and presentations between Lucent and Alcatel amounted, under the Merger

3    Agreement, to formal consent by Alcatel to Lucent's creation of MPT and transfer of these material

4    assets.

5

6

7

8

9

10    Although the Court has cited

11    evidence suggesting that at least some individuals within Alcatel supported Lucent's acts, at most,

12    these documents create a triable issue of fact. Accordingly, the Court erred in granting summary

13    judgment with respect to this issue.

14        **C.    Interference With Contract**

15        As the Court recognized, Defendants' counterclaims for Interference with Prospective

16    Economic Advantage and Interference with Contract arise from the exact same allegations of

17    improper conduct by Plaintiffs. *See* Oct. 1 Order at 20:3-17. Specifically, these claims arise from the

18    fraudulent and illegal transfer of patents from Lucent to MPT, which intentionally interfered with

19    Defendants' "expectation that [they] would have received a sublicense to the video coding patents

20    upon the merger of Lucent and Alcatel pursuant to the existing obligations between Alcatel and

21    MPEG LA and the sublicensing agreement between [Defendants] and MPEG LA." *See* Oct. 1 Order

22    at 20:3-5. Based on these allegations and the evidence adduced by Defendants, the Court found

23    triable issues of facts as to each of the elements of the counterclaim for Interference with Prospective

24    Economic Advantage. Oct. 1 Order at 21:5-22:15. However, the Court dismissed Dell's and

25    Gateway's counterclaims for Tortious Interference with Contract. *Id.* at 21:3-4.

26        The counterclaim for Interference with Contract arises from the fraudulent and illegal transfer

27    of patents from Lucent to MPT, a transaction which Lucent and MPT *admit* was done to prevent

28    Alcatel from fulfilling its contractual duty to tender these patents to the MPEG LA patent pool. In

- 14 -

1   dismissing this claim, the Court reasoned that (1) the allegedly interfering conduct occurred prior to

2   the merger of Lucent and Alcatel, (2) at that time Lucent was under no present obligation to tender the

3   patents-in-suit to MPEG LA, and (3) there was, therefore, no interference with an existing contractual

4   right. *Id.* at 20-21.

5          Dell respectfully submits that the Court erred in failing to recognize that interference with a

6   *future right* under an *existing contract* is a sufficient basis for a claim of Interference with Contract.

7   The fraudulent transfer occurred only two days prior to the agreed-upon merger between Lucent and

8   Alcatel.  At that time, Gateway and Dell had more than a prospective expectation that the patents

9   would be tendered.  On the contrary, Gateway and Dell had an existing contract with MPEG LA, as

10  did Alcatel, and pursuant to these contracts, Alcatel was obliged to tender any essential MPEG-2

11  patents it received in the upcoming merger to the MPEG LA patent pool and Defendants were entitled

12  to a license (under their agreements with MPEG LA) to all patents in the pool.  But for the fraudulent

13  transfer, the tender of these patents to the MPEG LA pool and the license to Dell was certain and

14  imminent.  Therefore, Lucent's improper transfer of the patents to MPT interfered with performance

15  under the existing MPEG LA agreements.

16         New Jersey has adopted the definition of tortious interference with an existing contract from

17  Section 766 of the Restatement (Second) of Torts.  *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*,

18  870 F. Supp. 1237, 1247 (D.N.J. 1994), *aff'd*, 85 F.3d 612 (3d Cir. 1996).  The Restatement provides

19  that:

20              One who intentionally and improperly interferes with the performance
                of a contract (except a contract to marry) between another and a third
21              person by inducing or otherwise causing the third person not to
                perform the contract, is subject to liability to the other for the
22              pecuniary loss resulting to the other from the failure of the third
                person to perform the contract.
23

24  Restatement (Second) of Torts § 766 (1979).  Clearly then, interference with future performance under

25  an existing contract is actionable.

26         Defendants' counterclaim arises from Lucent's improper interference with Alcatel's

27  performance of a **contract**, namely, the MPEG LA Agreement Among Licensors.

28

- 15 -

The Court cites *Velop, Inc. v . Kaplan*, 301 N.J.Super. 32 (N.J. Super. App. Div. 1997) for the elements of tortious interference under New Jersey law, the law applicable to this counterclaim. *See* Oct. 1 Order at 20:6-9.  The Court overlooked, however, that in *Velop* the New Jersey court upheld a judgment of interference with contract in favor of landowners, even though the "interference" occurred at a when time the duty to perform under the contract was entirely contingent. See *Velop*, 301 N.J.Super. at 46, 52.  There, defendants damaged a parcel of land by unauthorized overmining, and this damage interfered with plaintiff landowners' contract to sell the same parcel. *Id.* at 47.  The contract to sell the land was dependent on various unrelated contingencies, including the buyer's ability to obtain regulatory approvals to subdivide of the parcel. *Id.* at 42-44.  At the time the acts constituting interference with the contract occurred (the overmining), the landowners had no present right under the contract to sell the land. *See id.* at 46.  Indeed, the non-occurrence of various contingencies could have prevented the landowners rights under the contract from ever vesting. *See id.*  Nonetheless, the jury's finding of tortious interference with contract was affirmed, because there was adequate evidence to support the conclusion that "overmining was the crucial factor leading up to the termination of the land sale contracts." *Id.*

Under *Velop*, a contractual right to obtain a license in the future is sufficient to support a claim of interference with contract.  At the time of the acts constituting interference, the *Velop* plaintiffs had (1) no vested right to sell their property under the contract, and (2) no certainty that necessary contingencies would occur. *Id.* at 42-44.  By contrast, Dell and Gateway's right to receive a license to the Video Coding Patents pursuant to MPEG LA Agreement Among Licensors was imminent and certain, but for Lucent's unlawful and fraudulent effort to transfer the patents.[9]

---

[9] It makes no difference that these particular patents were not in the possession of Alcatel or its affiliates at the time that Alcatel executed the Agreement Among Licensors.  Indeed, in an action for interference with contract, "it is not required that the loss incurred be one within the contemplation of the parties to the contract itself at the time it was made.  The plaintiff can also recover for consequential harms, provided they were legally caused by the defendant's interference." Restatement (2d) Torts § 744A.

**D.     Application Of The Unclean Hands Defense Is Appropriate Here**

The Court granted summary judgment in favor of MPT on Defendants' unclean hands defense on the grounds that, unless Defendants could "show[] that Lucent's conduct towards other parties, the government, and/or its shareholders, had any effect on the issue of the instant litigation." Oct. 1. Order at 14:7-8. Dell respectfully submits that the Court erred in refusing to allow an unclean hands defense on this basis.

As described in the parties' motion papers, Defendants' unclean hands defense arises from Lucent's secret transfer of the patents-in-suit in order to avoid Alcatel's licensing obligations to Defendants.[10] Lucent deliberately misled the SEC, the public and shareholders regarding the ultimate disposition of the patents in suit. It did so as part of its plan to transfer the patents in violation of state and federal laws and in violation of the terms of the Merger Agreement with Alcatel. These acts, which give rise to the unclean hands defense, *directly impacted* Defendants as parties to this case and as members of the MPEG LA patent pool. First, had Lucent acted in accordance with its statements to the government, the public and shareholders, Defendants would have obtained a license to the patents in suit. Second, had Lucent made truthful statements regarding its intent to transfer the patents, Defendants (all of whom are licensees and/or licensors in the MPEG LA patent pool) could have notified MPEG LA of Lucent's plan to improperly circumvent Alcatel's duties as an MPEG LA licensor. MPEG LA could have sought to enjoin the creation of the Trust as a violation of the MPEG Licensor's Agreement.[11] Such an injunction would have had a direct impact on the fate of the patents.

---

[10] Dell did not originally assert an unclean hands defense. During the September 26, 2007 summary judgment hearing, the Court orally granted Dell's request for leave to assert that defense. Blackburn Decl., Ex. 15 at 373-76 (Hearing Transcript at 141:22-144:25). Dell filed an amended answer asserting that defense on September 28, 2007, prior to the Court's Oct. 1 Order. *See* Docket No. 2102.

[11] But for Lucent's fraudulent concealment and misleading public statements, it is highly likely that MPEG LA would have moved for a pre-transfer injunction. In fact, on October 26, 2007, MPEG LA filed a complaint against Alcatel, Lucent and MPT in the Delaware Chancery Court, seeking *inter alia* a declaration that the purportedly transferred patents are part of the MPEG LA patent pool and an injunction revoking the transfer of the patents to MPT. *See* Blackburn Decl., Ex. 16 at 398 (MPEG LA complaint in *MPEG LA, L.L.C. v. Alcatel Lucent, et al.*, (case number to be assigned), ¶¶ A, F). Presumably, MPEG LA would have acted sooner had the intended transfer of the patents not been kept secret.

1    Thus, action clearly could have been taken that would have impacted this litigation but for Lucent's

2    fraudulent conduct.

3            More importantly, it is simply not the law that a defendant asserting an unclean hands defense

4    must show that the alleged conduct would have had a dispositive impact on the issues in the litigation.

5    In the Oct. 1 Order, the Court cites *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,

6    324 U.S. 806 (1945) for the rule that the doctrine of unclean hands "closes the doors of a court of

7    equity to one tainted with inequitableness relative to the matter in which he seeks relief." *Id.* at 814.

8    While *Precision Instrument* establishes that Defendants must make a showing of inequitableness

9    *related* to the case at bar, it *does not* require that Defendants have been injured by the acts giving rise

10   to the unclean hands defense, or that those acts have "an effect on the issue of the instant litigation."

11   On the contrary, courts have "the latitude to apply the unclean hands doctrine to avoid becoming

12   complicit in a plaintiffs fraudulent act," even "when the party asserting the defense was not the victim

13   of the plaintiffs inequitable behavior." *In re Morente*, 2000 Del. Ch. LEXIS 32, *10 (Ct. Chancery

14   Del. Feb. 29, 2000) (applying the unclean hands doctrine where defendant was a participant in and a

15   *beneficiary* of the acts constituting unclean hands).

16           In *Gaudiosi v. Mellon*, 269 F.2d 873 (3d Cir. 1959), the court rejected plaintiffs' contention

17   that the unclean hands doctrine was inapplicable because defendants were not injured by the conduct

18   constituting "unclean hands." *Id.* at 882.  The Third Circuit quoted Judge Learned Hand's dissenting

19   opinion in *Art Metal Works v. Abraham & Straus*, 70 F.2d 641, 646 (2d Cir. 1934), *cert. denied* 293

20   U.S. 596, to explain that the doctrine of unclean hands "'has nothing to do with the rights or liabilities

21   of the parties; indeed the defendant who invokes it need not be damaged, and the court may even raise

22   it *sua sponte*.'" *Gaudiosi*, 269 F.2d at 882 (*quoting Art Metal Works*, 70 F.2d at 646 (J. Hand

23   dissenting)).

24           The principle that the unclean hands defense does not require an injury to the defendant has

25   been repeatedly illustrated by the rule that, where there is a breach of the applicant's duty of candor to

26   the PTO, unclean hands "may bar enforcement of a patent otherwise valid under the requirements for

27   patentability." 6-19 Donald S. Chisum, *Chisum on Patents* §19.03[6][a][iii][b].  In *United States

28   Movidyn Corp. v. Hercules, Inc.*, 388 F. Supp. 1146, 1151, 1154 (D. Minn. 1975), the court held a

- 18 -

1    patent valid yet unenforceable due to misstatements to the patent office. The misstatements did not

2    change the relationship of the parties on the question of infringement; the invention in dispute was

3    patentable and a valid patent issued. *See id.* 388 F. Supp. at 1151. However, the doctrine of unclean

4    hands still applied. *Id.* at 1154. By analogy, Lucent's multiple fraudulent statements and other

5    misconduct regarding the patents-in-suit supports a finding of unclean hands, even if the statements

6    themselves did not change the relationship of the parties here.[12]

7        In dismissing the affirmative defense of unclean hands, the Court reasoned that, if Lucent had

8    not made its fraudulent and misleading statements to the SEC, shareholders and general public,

9    Lucent might nonetheless have managed to transfer the patents away to MPT to avoid licensing them.

10   However, as seen in the numerous cited cases, the conduct giving rise to a defense of unclean hands

11   need not directly injure the party interposing the defense. Here, there is no real dispute that the

12   improper conduct is related to the subject matter of the litigation; indeed, the principal purpose of the

13   fraudulent transfer was to prevent Defendants from obtaining a license to the patents-in-suit. And, as

14   noted above, Lucent's fraudulent statements *did* have a potentially dispositive impact on this case.

15   Among other things, MPEG LA was prevented from bringing earlier the suit it has now filed seeking

16   to have the Video Coding Patents made part of the MPEG LA patent pool. Under these

17   circumstances, Dell respectfully contends that the Court erred in granting summary judgment against

18   Defendants on their unclean hands defenses.

19      **E.    In the Alternative, Dell Requests that the Court's Orders With Respect to the
20              License and Unclean Hands Defenses Be Certified For Interlocutory Appeal**

21       The district court may certify a decision for interlocutory review pursuant to § 1292(b), where

22   the issue "involve[s] a controlling question of law to which there is a substantial difference of opinion

23   and for which an immediate appeal may materially advance the ultimate termination of the litigation."

24

25   ───────────────
     [12] The patent misuse doctrine provides a further illustration of the true scope of the unclean hands
     doctrine. Use of a patent misuse defense is not limited to those who have been directly harmed or
26   targeted by plaintiff's misuse of the patent. *See Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488,
     494 (1942) ("It is the adverse effect upon the public interest of a successful infringement suit, in
27   conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit,
     *regardless of whether the particular defendant has suffered from the misuse of the patent*." (emphasis
28   added)).

- 19 -

1   *Voda v. Cordis Corp.*, 476 F.3d 887, 889-890 (Fed. Cir. 2007); *see* 28 U.S.C. § 1292(b).  A question

2   of law is considered controlling if "resolution of the issue on appeal could materially affect the

3   outcome of litigation in the district court." *Arizona v. Ideal Basic Indus. (In re Cement Antitrust*

4   *Litigation)*, 673 F.2d 1020, 1026 (9th Cir. 1981); *see also Aktiebolag v. Waukesha Cutting Tools, Inc.*,

5   640 F. Supp. 1139, 1141 (E.D. Wis.1986) (applying *In re Cement Litigation* definition of "controlling

6   question of law" in determining whether to certify a patent issue for interlocutory review by the

7   Federal Circuit).

8          Here, Defendants' license and unclean hands defenses concern a controlling issue of law to

9   which there is a substantial difference of opinion.  And, should Defendants prevail in their defenses,

10  these issues will be outcome-determinative for the Video Coding Patents.  Thus, there exists a

11  controlling question of law as to whether Defendants should be permitted to proceed with their license

12  and unclean hands defenses, and the prompt resolution of these issues will materially advance the

13  ultimate termination of the litigation.

14  **IV.    CONCLUSION**

15         For all the reasons stated above, the Court should reconsider its grant of summary judgment in

16  favor of Lucent on cross-plaintiffs claims' of tortious interference with contract and on the defenses of

17  license and unclean hands.  Should the Court decline to grant reconsideration of its grant of summary

18  judgment on the defenses of license and unclean hands, Dell requests that the Court certify these

19  issues for interlocutory appeal.

20

21  Dated:  October 31, 2007                ARNOLD & PORTER LLP
                                            James S. Blackburn
22                                          Joseph A. Micallef

23                                          McDERMOTT WILL & EMERY LLP
                                            Joel M. Freed
24

25
                                           By: *James Black*
26                                            James S. Blackburn
                                              Attorneys for Dell Inc.
27

28

- 20 -