Alison P. Adema, SBN 149285
HAHN & ADEMA
501 West Broadway, Suite 1600
San Diego, California 92101-3595
Telephone:   (619) 235-2100
*Facsimile:*   *(619) 235-2101*

Attorneys for Lucent Technologies Inc.

Additional counsel listed on the last page

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>Plaintiff,<br>v.<br><br>GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>Defendants,<br>and<br><br>MICROSOFT CORPORATION,<br><br>Intervener. | Case No. 02-CV-2060 B (CAB)<br>consolidated with<br>Case No. 03-CV-0699 B (CAB)<br>Case No. 03-CV-1108 B (CAB)<br><br>**LUCENT'S OPPOSITION TO GATEWAY'S GROUP 4 MOTION *IN LIMINE* NO. 1 TO PRECLUDE LUCENT FROM PROVIDING ANY TESTIMONY OR ARGUMENT AT TRIAL REGARDING DAMAGES BASED ON GATEWAY'S SALES OF QUICKEN AND MONEY**<br><br>Date:        April 27, 2007<br>Time:        9:00 A.M.<br>Courtroom:   2<br>Judge:       Hon. Rudi M. Brewster |
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant. | |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>Plaintiff,<br>v.<br><br>DELL INC.,<br><br>Defendant. | |

Lucent's Opposition To Gateway's Motion *In Limine* To Preclude
Testimony Of Quicken And Money Damages

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 12
Page 105

## I. INTRODUCTION

Gateway's motion seeks to reward Gateway for its own refusal to provide damages-related discovery under the court-ordered schedule. Gateway asks the Court to preclude Lucent from presenting any damages testimony for Gateway's infringement based on Microsoft Money and Intuit Quicken because Gateway claims that Mr. Hoeberlein's conclusions regarding those products is tardy. Gateway omits mention of the facts that: (1) the sole reason necessitating Mr. Hoeberlein's supplemental report is that Gateway waited until five months after the close of discovery to produce portions of the sales information related to the software incorporating Lucent's patented technology; and (2) Gateway's production remains incomplete even to this day. Mr. Hoeberlein's initial report was submitted on the court-ordered schedule based on the information available at the time. Only after Gateway's expert relied on information not previously produced by Gateway and Dell — Gateway's subsequent production of those incomplete materials was made to Lucent five months after the close of fact discovery — was Mr. Hoeberlein in a position meaningfully to address the magnitude of damages resulting from Gateway's infringement arising from Microsoft Money and Quicken. Mr. Hoeberlein's report accounting for defendants' discovery delays was not only filed more than four months before trial, but Gateway has had, and continues to have, the opportunity to depose Mr. Hoeberlein regarding his supplemental report. In short, there is no prejudice to Gateway resulting from Mr. Hoeberlein's supplementation. To the contrary, granting Gateway's motion would unfairly reward Gateway's flagrant disregard of its discovery obligations and the Court's schedule.

## II. ARGUMENT

### A. Mr. Hoeberlein's Supplementation Is Justified Given That Gateway Had Not Finished Production of Gateway Sales Information When Opening Expert Reports Were Due

During fact discovery and well after, Gateway consistently refused to produce financial documents reflecting sales of the accused products. Lucent first served its financial document requests on February 24, 2004. (Ex. 170, 2/24/04 Lucent First Doc. Req. to Gateway at Nos. 184-89, 198). In September 2005, when it became clear Gateway had yet to produce a single financial

Lucent's Opposition To Gateway's Motion *In Limine* To Preclude Quicken New User and Microsoft Money Evidences    1    Case Nos. 02-CV-2060-B (CAB)  03-CV-0699-B (CAB), and 03-CV-1108-B (CAB

Exhibit 12
Page 106

document, Lucent's counsel repeatedly requested that Gateway cure its failures. (Ex. 139, 9/6/05 Samay Letter to Campione; Ex. 140, 10/20/05 Bernard Letter to Campione; Ex. 141, 11/2/2005 Bernard Letter to Campione). By the end of November 2005, less than two months before the end of fact discovery, Gateway refused to produce any financial documents and instead insisted that Lucent come to South Dakota to inspect its financial databases. (Ex. 142, 11/21/05 Bernard Letter to Campione). In the hopes of receiving the relevant information, Lucent traveled to Gateway's facility to inspect its financial databases. (Ex. 143, 11/25/05 Bernard Letter to Campione; Ex. 89, 12/19/05 Samay Letter to Campione). Lucent also sought the Court's assistance, and Magistrate Judge Bencivengo ordered Gateway to collect and produce all hard-copy documents, including Microsoft royalty reports. (*Id.*). Despite those efforts and the Court's order, less than one month from the initial discovery deadline, Lucent still had not received a single financial document from Gateway. (Ex. 90, 12/22/05 Samay Letter to Campione).

After Lucent's inspection, Gateway produced limited financial information. However, on February 10, 2006, during Lucent's 30(b)(6) deposition of Gateway regarding its financial documents, it became apparent that Gateway had withheld significant amounts of available royalty information — indeed, Gateway's counsel conceded that fact. (Ex. 144, 2/13/06 Rudd email to Bernard; 2/13/06 Bernard email to Rudd). Only after the existence of those unproduced documents came to light, just days before the final close of fact discovery, did Gateway's counsel *begin* the search for Microsoft royalty reports that Lucent had been requesting for months. (Ex. 145, 2/17/06 Rudd Email to Bernard). As fact discovery drew to a close and expert reports were due, Lucent continued to request that Gateway produce Microsoft royalty information as soon as possible. (Ex. 146, 2/22/06 Bernard Letter to Rudd; Ex. 147, 2/28/06 Bernard Letter to Rudd). In fact, Lucent's counsel warned Gateway twenty-four days before expert reports were due that "*Lucent cannot be expected to prepare a report when it has not even received complete financial information from Gateway,*" and continued to request immediate production (Ex. 148, 3/7/06 Bernard Letter to Rudd;

Lucent's Opposition To Gateway's Motion In Limine To Preclude Quicken New User and Microsoft Money Evidence    2    Case Nos. 02-CV-2060-B (CAB) 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB

Exhibit 12
Page 107

Ex.149, 3/9/06 Bernard Letter to Plies).[1]

During March 2006, after the close of fact discovery and just days before expert reports were due, Gateway ambushed Lucent with a still-incomplete production of some 2300 pages of Microsoft royalty reports. (Ex.150, 4/3/06 Bernard Letter to Plies). No identification of those documents was made to Lucent prior to March 31, 2006, the deadline for opening expert reports. Because of Gateway's late and incomplete production, and faced with the looming court-ordered deadline for expert reports, Lucent's damages expert, Wayne Hoeberlein, performed his accounting analysis based on the best information available to him at the time. As a result, and given the paucity of Gateway's production, Mr. Hoeberlein's initial analysis of damages related to Gateway's infringement was based on information produced by *Microsoft* in this action. (Ex. 169, 3/31/06 Hoeberlein Rep. Re User Interface Patents).

It was not until May 11, 2006 — *six weeks* after opening expert reports were due and *over five months* after the Magistrate ordered Gateway to produce the royalty reports — that Gateway's counsel claimed that Gateway's royalty report production was complete. (Ex. 94, 5/11/06 Espinosa Letter to Bernard). That representation proved to be mistaken. Two months later, and only after Gateway's own expert chose to rely on those documents in his own July 21, 2007 supplemental expert report issued after the close of expert discovery, did Gateway decide to produce additional Microsoft royalty reports —*five months* following the close of fact discovery and *after* the close of expert discovery. (Ex. 95 Fluker 7/25/06 Email Re GW-LT 421770-788; Ex. 76, GW-LT 421770-788). (*See, e.g.* Ex. 8, 7/21/06 Supp. Kaplan Rep. at Ex. 7D.1 (referred to under source as "additional invoices" because were not yet produced)).

Gateway's damages-related production remains admittedly *incomplete to this day.* Gateway has not produced *any* sales data for Microsoft Money. Gateway still has also not produced any Quicken data after December 2004, despite the fact that the product is currently sold on its website. (Ex. 137, Gateway Website http://www.gateway.com/accessories/product/ 13062313.php?seg=hm;

---

[1] Contrary to Gateway's counsel's statement, only Gateway's royalty reports to Microsoft detail unit sales of Microsoft Office.

Lucent's Opposition To Gateway's Motion *In Limine* To Preclude Quicken New User and Microsoft Money Evidence — 3 — Case Nos. 02-CV-2060-B (CAB), 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 12
Page 108

*but see* Gateway's Motion in *Limine* No. 3 at 4 (contending that Gateway "phased out" Quicken)). Gateway should not be heard to complain about Mr. Hoeberlein's supplementation as a direct result of Gateway's failure to produce its financial information in a timely manner.

**B.    Microsoft Money and Intuit Quicken Have Always Been Asserted Against Gateway And A Part Of Mr. Hoeberlein's Damages Analysis**

As of the March 31, 2006 deadline for submission for expert reports, Gateway had not produced *any* sales regarding Microsoft Money, only *incomplete* Intuit Quicken sales, and *had just begun* its production of Microsoft Office sales. Accordingly, Mr. Hoeberlein performed his accounting analysis based on the best information available to him at that time. In order to avoid double-counting for computers that may contain two of the infringing programs — but in the absence of any data from Gateway at the time — he simply based his accounting on sales of Microsoft Office alone (thereby avoiding any double-counting but of course underestimating the actual damages to Lucent). Notwithstanding Gateway's and Dell's refusal to provide sales information that might have made possible calculation of damages based also on Microsoft Money and Intuit Quicken, there is no question that those programs have always been accused of infringement, as Mr. Hoeberlein's initial expert report states. (Ex. 105, 3/31/06 Tognazzini Rep; Ex. 169, 3/31/06 Hoeberlein Rep. Re User Interface Patents at 6).[2]

It was not until after Gateway's additional production after the close of fact discovery — when Gateway found it in its own interest to do so — was Mr. Hoeberlein able to revisit his damages conclusions. Utilizing the still incomplete data produced to date, Mr. Hoeberlein's supplemental report simply applies Mr. Smith's original and unchanged opinion of a 1% reasonable royalty and applies it using the newly available data. Thus, Mr. Hoeberlein does not present any new damages theories — he has simply updated his accounting analysis to reflect the additional data produced by Gateway after the close of expert discovery and after Gateway's expert had drawn his own

---

[2] Gateway's claim that Mr. Hoeberlein has already been deposed twice and failed to offer an opinion on Gateway's damages under Quicken or Money is disingenuous. Gateway deposed Mr. Hoeberlein on July 7, 2006 for a total of 8 minutes and did not even inquire into his opinion on the Day patent. (Ex. 156, 7/7/06 Hoeberlein Dep. Tr. at 315-321). The second deposition on November 2, 2006 was limited strictly to the reissue patent in the Group II Audio Trial.

| Lucent's Opposition To Gateway's Motion *In Limine* To Preclude Quicken New User and Microsoft Money Evidence | 4 | Case Nos. 02-CV-2060-B (CAB) 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB |

Exhibit 12
Page 109

1  conclusions based on that tardy and still incomplete data.[3]

2      C.    **Mr. Hoeberlein's Second Supplemental Report Causes No Prejudice to Gateway**

3  Gateway should not be heard to claim prejudice arising out of its own tardy and incomplete

4  document production. Contrary to Gateway's claim that it received the report only two months

5  before trial, Lucent in fact served the report on Gateway's counsel four months before trial, on

6  January 25, 2007. (Ex. 151, 1/25/07 Street Email to Counsel). On February 21, 2007 Lucent offered

7  Mr. Hoeberlein to all defendants — including Gateway's trial counsel — for a deposition regarding

8  his supplemental report. (Ex. 172, 2/21/07 Bernard email to Bernstein). On February 26, 2007,

9  defendants confirmed the date, time and place of that deposition. (Ex. 173, 2/26/07 Bernstein email

10 to Bernard). Throughout, neither Dell nor Gateway expressed any objection to either the report or

11 the deposition.[4]

12 In short, not only is Mr. Hoeberlein's supplemental report a direct result of Gateway's

13 untimely document production, but Lucent has offered Mr. Hoeberlein for deposition. There is

14 simply no prejudice to Gateway and granting Gateway's motion would only reward Gateway's

15 discovery misconduct.[5]

16 **III.   CONCLUSION**

17 Because Mr. Hoeberlein's supplemental report is justified by Gateway's tardy production of

18 financial information, and because Mr. Hoeberlein's later supplemental report poses no prejudice to

19 Gateway, this Court should deny Gateway's motion *in limine*.

20

21 _____

[3] Gateway simplistically asserts that Mr. Hoeberlein's supplemental report relies only on data concerning Microsoft Money and Quicken produced at the end of fact discovery. Gateway willfully disregards the fact that its tardy supplementation concerning Microsoft Office *directly affects* any conclusions that may be drawn regarding Microsoft Money and Quicken because of the need to account for the possibility that some computer systems may contain more than one accused software product.

[4] The deposition was subsequently postponed following the Court's summary judgment decision in the Group III Speech Trial; however, Lucent's counsel has since contacted all defendants to reschedule the deposition before the next trial. (Ex. 152, 4/12/07 Bernard Email to Counsel).

[5] Gateway's claim that it is somehow prejudiced because the report issued a day before opening summary judgment briefs is baseless. No defendant sought summary judgment on any issues related to Mr. Hoeberlein's report.

| Lucent's Opposition To Gateway's Motion *In Limine* To Preclude Quicken New User and Microsoft Money Evidence | 5 | Case Nos. 02-CV-2060-B (CAB) 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB |

Exhibit 12
Page 110

| | | |
|---|---|---|
| 1 | DATED: April 13, 2007 | BY: _____s/Alison P. Adema_____ |

                                                           John M. Desmarais (admitted *pro hac vice*)
                                                           Robert A. Appleby (admitted *pro hac vice*)
                                                           Paul A. Bondor (admitted *pro hac vice*)
                                                           Elizabeth T. Bernard (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
Telephone: (212)446-4800
Facsimile: (212)446-4900

Alison P. Adema, SBN 149285
HAHN & ADEMA
501 West Broadway, Suite 1730
San Diego, California 92101-3595
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Attorneys for *Lucent Technologies Inc.*

---

Lucent's Opposition To Gateway's Motion *In Limine* To Preclude Quicken New User and Microsoft Money Evidence     6     Case Nos. 02-CV-2060-B (CAB) 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 12
Page 111