

2440 El Camino Real
Suite 700
Mountain View, CA 94040-1499
+1 650 813 4800 Main
+1 650 813 4848 Fax
www.dechert.com

JONATHAN D. BAKER

jonathan.baker@dechert.com
+1 650 813 4843 Direct
+1 650 331 1669 Fax

October 24, 2007

**VIA EMAIL**

The Honorable Cathy Ann Bencivengo
United States District Court for the
Southern District of California
940 Front Street, Suite 1171
San Diego, CA 92101

Re: *Lucent Technologies Inc. v. Gateway, Inc., et al.*, Case No. 07-CV-2000 H (CAB).

Dear Judge Bencivengo:

Gateway submits this letter brief in response to Lucent's October 19, 2007 letter that requested an order compelling Gateway to supplement its production of documents regarding Gateway's sales of various accused products, including Quicken and Money.[1] As explained below, Judge Brewster has already issued an order precluding Lucent from presenting any damages claim at trial based on Gateway's sales of Quicken and Money due to Lucent's untimely disclosure of its damages theories regarding these products. As a result, Lucent has failed to show that supplementation of Gateway's sales information regarding Quicken and Money would produce any admissible evidence, and Lucent's request should therefore be denied.[2]

A. **Lucent Has Not Shown Good Cause To Modify This Court's Scheduling Order To Reopen Damages Discovery.**

As an initial matter, Lucent has failed to show that <u>any</u> damages supplementation on <u>any</u> products should be required in this case. This Court set a February 24, 2006 cutoff date of for fact discovery, including damages discovery. *See* Ex. 1 at 1, Order Following Discovery Conference, 1/9/06. Contrary to Lucent's assertions, FRCP 26(e) does not require supplementation of damages information for sales made after the fact discovery cutoff date specified in this Court's scheduling order. Furthermore, Lucent has failed to show good cause for modifying this Court's scheduling order to reopen damages discovery. As Lucent acknowledges, Gateway's allegedly infringing sales will continue up to and through trial. As a result, the

---

[1] Lucent has accused Gateway of infringing the Day '356 patent by selling various software programs including Quicken, Money, and Outlook.
[2] Gateway also joins in the letter brief submitted by Microsoft and Dell in opposition to Lucent's request for an order compelling the production of documents.

12977675.1

Austin  Boston  Charlotte  Hartford  New York  Newport Beach  Philadelphia  Princeton  San Francisco  Silicon Valley  Washington DC
Brussels  London  Luxembourg  Munich  Paris

Exhibit 15
Page 117



The Hon. Cathy Ann Bencivengo
October 24, 2007
Page 2

damages numbers to be presented at trial will never be fully up-to-date, and a post-trial accounting will be necessary to account for those sales between the close of fact discovery and trial if Lucent prevails. Since a post-trial accounting will be necessary in any event, Lucent has not shown good cause for reopening damages discovery.

**B.  Lucent Is Not Entitled To Further Discovery On Quicken And Money Because Judge Brewster Has Already Excluded Those Products From The Case Due To Lucent's Untimely Disclosure Of Its Damages Theories.**

Lucent's request for further discovery regarding Gateway's sales of Quicken and Money should be denied because Lucent has failed to show that this requested information would lead to evidence admissible at trial. *See* FRCP 26(b)(1) (discovery may be obtained when it "appears reasonably calculated to lead to the discovery of admissible evidence"). As explained below, Lucent failed to timely disclose its damages theories regarding Quicken and Money. As a result, Judge Brewster issued an order precluding Lucent from presenting a claim for damages based on Gateway's sales of Quicken and Money. Since the requested discovery regarding sales of Quicken and Money would not be admissible at trial, or lead to the discovery of admissible evidence, Lucent's request should be denied.

**1.  Judge Brewster Precluded Lucent From Presenting Any Damages Theories At Trial That Were Not Timely Disclosed.**

Lucent's damages expert, Mr. Hoberlein, did not provide any damages opinion based on Gateway's sales of Quicken or Money in his initial expert report. *See* Ex. 2, Excerpts from Expert Report of Wayne Hoberlein dated 3/31/06. The first time that Mr. Hoberlein provided any damages theory based on Quicken or Money was in his Second Supplemental Report issued on January 25, 2007—ten months after the deadline for expert reports. *See* Ex. 3, Excerpts from 2nd Supplemental Expert Report of Wayne Hoberlein dated 1/27/07. Similarly, Lucent failed to provide any damages theory based on Quicken and Money in its responses to Gateway's interrogatories.

As a result of Lucent's untimely disclosure of its damages theories regarding Quicken and Money, Gateway filed a *motion-in-limine* requesting that Lucent and its expert be precluded from arguing damages based on sales of Quicken and Money. Ex. 4, Gateway's Group 4 Motion in Limine No. 1. In ruling on this motion, Judge Brewster agreed that Lucent should be precluded from arguing damages at trial based on untimely expert reports, except to the extent that those late reports were justified by Gateway's late production of documents. *See* Ex. 5 at 6, Order on Motions in Limine For the Group 4 Trial, D.I. 1737. Specifically, Judge Brewster ruled that:

> [A]ny supplemental reports submitted after the close of expert discovery are admissible only for the portions that incorporate the tardy production of documents from Dell and Gateway.

12977675.1

Exhibit 15
Page 118



*Id.* at 6. Judge Brewster thus set out the standard to be used in determining whether any untimely damages theories could be presented at trial. However, Judge Brewster declined to delve into the particular facts of Hoberlein's untimely report. Instead, he denied the motion and instructed the parties to apply his articulated standard to the facts regarding Hoberlein's untimely report. *See* Ex. 6 at 134-140, Transcript of Motion Hearing, 4/27/07. If the parties were not able to work it out, Judge Brewster would revisit the issue at trial.

    2.    **Lucent's Untimely Disclosure Of Its Damages Theories For Quicken And Money Was Not The Result Of Any Late Production By Gateway.**

Despite Judge Brewster's clear ruling, Lucent continues to maintain that Quicken and Money were not excluded under Judge Brewster's order because Mr. Hoberlein's untimely supplemental report was allegedly the result of Gateway's tardy production of documents. However, Lucent has failed to show that its late disclosure of its damages theories for Quicken and Money was the result of any late production of documents by Gateway. For the convenience of the Court, a timeline of the relevant dates are shown in Exhibit 7. In its Scheduling Order, this Court set March 31, 2006 as the deadline for expert reports. *See* Ex. 1 at 1. Gateway produced documents regarding Quicken and Outlook before the expert report deadline. Specifically, on January 31, 2006, two months before the expert report deadline, Gateway produced reports showing Gateway's sales of Quicken for each month from January 2002 through December 2004. *See* Ex. 8, 1/31/06 Letter from Abe Hewgley to Elizabeth Bernard; Ex. 9, Intuit Royalty Reports. Then, on March 22, 2006, more than one week before the expert report deadline, Gateway produced Microsoft invoices showing Gateway's sales of Office on a monthly basis from January 2002 through February 2006.[3] *See* Ex. 10, 3/22/06 Letter from Lawrence Fluker to Jon Hohenthaner.

Despite Gateway's production of documents showing its sales of Quicken more than <u>two months</u> before the expert report deadline, Mr. Hoberlein chose not to present any damages theory for Quicken or Money in his initial expert report. *See* Ex. 2 at Exh. E-1 to E-3. Instead, Mr. Hoberlein's initial report presented damages based solely on Gateway's sales of Office. *See id.* It was not until ten months later, that Mr. Hoberlein presented his damages theory on Quicken and Money for the first time in his Second Supplemental Report issued on January 25, 2007. *See* Ex. 3 at Exh. E-1 to E-6.

In an attempt to justify its untimely disclosure of Hoberlein's damages theories for Quicken and Money, Lucent relies <u>solely</u> on Gateway's allegedly late production of the following document related to Gateway's sales of Office:

---

[3] Since the Outlook software is included in the Microsoft Office software suite, Lucent has used sales of Office as a proxy for sales of Outlook.

12977675.1

Exhibit 15
Page 119



The Hon. Cathy Ann Bencivengo
October 24, 2007
Page 4

- 19 pages of Microsoft invoices showing Gateway's sales of Microsoft Office for the months of August 2004 and July 2005.[4] *See* Ex. 11, Microsoft Licensing Invoices (GW-LT 421770-88).

*See also* Ex. 12 at 3, Lucent's Opp'n to Gateway's Group 4 Motion in Limine No. 1 (referring to GW-LT 421770-788).

Significantly, these Microsoft invoices relate solely to Gateway's sales of Office—not Quicken or Money. *See* Ex. 11. Therefore, these pages cannot justify Hoberlein's untimely report on Quicken and Money. Furthermore, these documents concern only two months worth of data, and therefore cannot explain Hoberlein's failure to address Quicken and Money in his initial report for all of the other months between January 2002 and December 2004. Additionally, these invoices were produced on July 25, 2006, yet Lucent waited an additional six months before issuing Hoberlein's Second Supplemental Report on January 25, 2007. As a result, Lucent cannot justify Hoberlein's untimely report, and those portions of Hoberlein's supplemental report dealing with Quicken and Money are thus excluded from trial pursuant to Judge Brewster's ruling on the motion-in-limine.

In its prior briefing, Lucent argues that Hoberlein could not have provided any opinion regarding damages for sales of Quicken (or Money) until he received the information regarding Gateway's sales of Office because he needed to include an adjustment factor in order to avoid double-counting of computers that contained both Office and Quicken (or Money). *See* Ex. 12 at 4-5 & n.3. This adjustment factor appears in the row labeled "Adjustment" in Hoberlein's damages calculation spreadsheets. Ex. 3 at E-1 to E-6.

However, Lucent's argument is simply absurd. First, even if Lucent's assertion were correct regarding the need for the Office sales data as a predicate for opining on Quicken and Money, this explanation would only apply to Hoberlein's calculations for the months of August 2004 and July 2005. Lucent has no explanation for Hoberlein's failure to provide his damages opinion regarding Quicken and Money in his initial report for all of the other months covered in his initial report.

Second, even with respect to Hoberlein's calculations for August 2004 and July 2005, Lucent had several reasonable options for handling the double-counting problem: (a) Mr. Hoberlein could have simply left out the double-counting adjustment for the months of August 2004 and July 2005 and dropped a footnote explaining that his calculations for these two months would need to be adjusted slightly downward once the missing information was obtained; (b) Mr. Hoberlein could have simply estimated Gateway's missing sales data for August 2004 and July 2005 by averaging the sales for the month before and the month after the missing months or by calculating 1/11 of the total sales for 2004 and for 2005; or (c) Mr. Hoberlein

---

[4] These 19 pages had been unintentionally omitted from the 1,500 pages of invoices previously produced by Gateway.

12977675.1

Exhibit 15
Page 120

could have estimated Gateway's missing sales data for August 2004 and July 2005 based on Microsoft's sales information. Indeed, all of Mr. Hoberlein's damages calculations for Gateway's sales of Office in his initial report are estimates of Gateway's sales based on Microsoft's sales information. *See* Ex. 12 at 3 ("Mr. Hoberlein's initial analysis of damages related to Gateway's infringement was based on information produced by Microsoft in this action.").) In other words, Hoberlein was already using an estimate for Gateway's sales for each month in 2004 and 2005 (including the months of August 2004 and July 2005) in his initial report. Hoberlein could have simply used this same estimate in calculating the double-counting adjustment factor. Any of these approaches would have provided Gateway with a timely disclosure of Mr. Hoberlein's damages opinion regarding Quicken and Money for all of the months between 2002 and 2004. Instead, Lucent chose the inexcusable approach of withholding the entirety of Hoberlein's opinions on Quicken and Money. See *id.* at 4 ("In order to avoid double-counting for computers that may contain two of the infringing programs . . . he simply based his accounting on sales of Microsoft Office alone (thereby avoiding any double-counting but of course underestimating the actual damages to Lucent).").

As a result, Lucent has failed to show that Hoberlein's untimely disclosure of his damages theories on Quicken and Money were the result of any late production by Gateway. Accordingly, Lucent is precluded from presenting any damages claim at trial based on Gateway's sales of Quicken and Money, and Lucent's request for further discovery on these products should be denied.[4]

Respectfully submitted,

Jonathan D. Baker

cc: Counsel for Microsoft, Dell, and Lucent

[4] In its brief, Lucent also requests that this Court order Gateway to produce documents regarding sales of Money for dates prior to the discovery cutoff. However, this Court should reject Lucent's untimely request. Gateway allowed Lucent to inspect Gateway's financial database systems prior to the discovery cutoff and obtain any sales information desired by Lucent. Lucent never brought a motion to compel production of such sales information during discovery, and it is highly improper for Lucent to request such relief now more than one-and-a-half years after the close of fact discovery.

12977675.1