1  James S. Blackburn (State Bar No. 169134)
   ARNOLD & PORTER LLP
2  777 South Figueroa Street, 44th Floor
   Los Angeles, California  90017-5844
3  Telephone:  (213) 243-4000
   Facsimile:  (213) 243-4199
4
5  Joseph A. Micallef (admitted *pro hac vice*)
   ARNOLD & PORTER LLP
   555 Twelfth Street, N.W.
6  Washington, D.C.  20004-1206
   Telephone:  (202) 942-5000
7  Facsimile:  (202) 942-5999
8  Joel M. Freed (admitted *pro hac vice*)
   McDERMOTT WILL & EMERY LLP
9  600 13th Street, N.W.
   Washington, D.C.  20005-3096
10 Telephone:  (202) 756-8000
   Facsimile:  (202) 756-8087
11
   Attorneys for *Dell Inc.*
12

13              UNITED STATES DISTRICT COURT

14             SOUTHERN DISTRICT OF CALIFORNIA

15 LUCENT TECHNOLOGIES INC.  and          )  Case No. 07-CV-2000-H (CAB)
   MULTIMEDIA PATENT TRUST,               )  consisting of matters severed from
16                                        )  consolidated cases:
           Plaintiffs and Counterclaim-defendants, )  Case No. 02-CV-2060-B (CAB)
17                                        )  Case No. 03-CV-0699-B (CAB)
        v.                                )  Case No. 03-CV-1108-B (CAB)
18                                        )
   GATEWAY, INC. AND GATEWAY              )
19 COUNTRY STORES LLC, GATEWAY            )  **DEFENDANTS' MEMORANDUM OF**
   COMPANIES, INC., GATEWAY               )  **POINTS AND AUTHORITIES IN**
20 MANUFACTURING LLC and                  )  **SUPPORT OF THEIR MOTION FOR**
   COWABUNGA ENTERPRISES, INC.,           )  **STAY OR, IN THE ALTERNATIVE, FOR**
21                                        )  **SEVERANCE OF THE HASKELL AND**
        Defendants and Counter-claimants, )  **NETRAVALI PATENTS FOR**
22                                        )  **CONSOLIDATION WITH CASE NO. 07-**
   and                                    )  **CV-0747**
23                                        )
   MICROSOFT CORPORATION,                 )  Judge Marilyn L. Huff
24                                        )
        Intervener and Counter-claimant,  )  Hearing Date:  January 7, 2008
25                                        )  Hearing Time:  10:30 a.m.
                                          )  Location:       Courtroom 13, 5th Floor
26                                        )
                                          )  **REDACTED VERSION FILED**
27                                        )  **PUBLICLY**
                                          )
28                                        )  **[CONFIDENTIAL VERSION FILED**
                                          )  **UNDER SEAL]**

1

MICROSOFT CORPORATION,

2

      Plaintiff and Counter-defendant,

3

v.

4

LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,

5

6

      Defendants and Counter-claimants,

7

LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,

8

      Plaintiffs and Counterclaim-defendants,

9

v.

10

DELL INC.,

11

      Defendant and Counter-claimant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 3

       A.    Procedural History of This Action. ............................................................ 3

       B.    The MPT Action ........................................................................................ 6

       C.    The MPEG LA Action. ............................................................................... 7

       D.    The Video Coding Patents Bear No Relationship to the Other Patents to be
             Tried in this Action. .................................................................................. 9

       E.    The Video Coding Patents Are Related to the MPT Patents. ..................... 11

III.   ARGUMENT ...................................................................................................... 12

       A.    This Court Should Stay Trial on the Video Coding Patents Pending the
             Outcome of the MPEG LA Action.............................................................. 12

             1.    Legal Standard For A Stay Pending The Resolution Of A Related
                   Action........................................................................................... 12

       B.    A Stay Of Trial On The Video Coding Patents Is Appropriate Here......... 13

       C.    In the Alternative, the Court Should Sever the Video Coding Patents from
             the Upcoming Trial and Consolidate Them for Trial With the MPT
             Action. ...................................................................................................... 15

             1.    Courts Routinely Sever Claims Involving Distinct Issues.............. 15

             2.    Consolidation Of Related Claims Serves The Interests Of Justice... 16

       D.    If The Court Declines To Grant A Stay, It Should Sever The Haskell And
             Netravali Patents From The Trial Of Unrelated Patents And Order A
             Consolidated Trial On All Video Coding Patents....................................... 17

IV.    CONCLUSION ................................................................................................... 20

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1

# TABLE OF AUTHORITIES

2

Page(s)

3    **CASES**

4    *American Telephone & Telegraph Co. v. Milgro Electronics Corp.,*
5        416 F. Supp. 951 (S.D.N.Y. 1976) ................................................................. 12

    *Bechtel Corp. v. Local 215, Laborers' Int'l Union of North America, AFL-CIO,*
6        544 F.2d 1207 (3d Cir. 1976) ......................................................................... 13

7    *Bowman v. Legato Sys., Inc.,*
8        195 F.R.D. 655 (N.D. Cal. 2000) ................................................................... 16

    *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.,*
9        896 F. Supp. 505 (D. Md. 1995) .................................................................... 15

10    *Cedars-Sinai Medical Center v. Revlon, Inc.,*
11        111 F.R.D. 24 (D. Del. 1986) ........................................................................ 17

12    *Ethicon, Inc. v. Quigg,*
        849 F.2d 1422 (Fed. Cir. 1988) ..................................................................... 19

13    *Gasoline Prods. v. Champlin Refining Co.,*
14        283 U.S. 494 (1931) ....................................................................................... 17

15    *German v. Federal Home Loan Mtg. Corp.,*
        896 F. Supp. 1385 (S.D.N.Y. 1995) ............................................................. 16

16    *Gould v. Control Laser Corp.,*
17        705 F.2d 1340 (Fed. Cir. 1983) ..................................................................... 19

    *Hanes Cos. v. Ronson,*
18        712 F. Supp. 1223 (M.D.N.C. 1988) ............................................................. 17

19    *Hendrix v. Raybestos-Manhattan, Inc.,*
20        776 F.2d 1492 (11th Cir. 1985) ..................................................................... 16

21    *Hohlbein v. Heritage Mut. Ins. Co.,*
        106 F.R.D. 73 (E.D. Wis. 1985) .................................................................... 15

22    *In re Equity Funding Corp. of Am. Sec. Litig.,*
23        416 F. Supp. 161 (C.D. Cal. 1976) ............................................................... 17

24    *International Paving Sys., Inc. v. Van Tulco, Inc.,*
        806 F. Supp. 17 (E.D.N.Y. 1992) .................................................................. 17

25    *Internet Law Library, Inc. v. Southridge Capital Mgmt.,*
26        208 F.R.D. 59 (S.D.N.Y. 2002) .................................................................... 16

27    *Investors Research Co. v. United States District Court,*
        877 F.2d 777 (9th Cir. 1989) ......................................................................... 16

28

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) .................................................................................... 16

*Landis v. North American Co.*,
    299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ................................................ 12, 13

*Malcolm v. National Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) .................................................................................... 17

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1988) .................................................................................. 15

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
    604 F. Supp. 1485 (D. Del. 1985) ........................................................................... 16

*Smith v. Alyeska Pipeline Service Co.*,
    538 F. Supp. 977 (D. Del. 1982) ............................................................................. 17

*Sorensen v. Black and Decker Corp.*,
    2007 WL 2696590 (S.D. Cal. 2007) ........................................................................ 19

*The Cherokee Nation of Oklahoma v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997) ........................................................................... 12, 15

*Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.*,
    390 F. Supp. 824 (S.D.N.Y. 1975) .......................................................................... 13

*Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*,
    775 F. Supp. 759 (D. Del. 1991) ............................................................................. 17

*Werner v. Satterlee, Stephens, Burke & Burke*,
    797 F.Supp. 1196 (S.D.N.Y. 1992) ......................................................................... 16

*Wyndham Assocs. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968) .................................................................................... 15

**FEDERAL AND LOCAL RULES**

Federal Rule of Civil Procedure 21 ................................................................................. 15

Local Rule 79-2 .............................................................................................................. 4

## I.    INTRODUCTION

Defendants Dell Inc. ("Dell"), Microsoft Corporation ("Microsoft") and Gateway[1] (collectively, "Defendants") hereby move the Court for a stay of the trial of this action with respect to U.S. Patent No. 4,958,226 (the "Haskell Patent") and U.S. Patent No. 4,383,272 (the "Netravali Patent") pending a ruling in a recent action brought by MPEG LA, LLC ("MPEG LA") in Delaware Chancery Court seeking, *inter alia*, a declaration that Defendants and all other MPEG LA licensees are licensed under the Haskell and Netravali Patents pursuant to their license agreements with MPEG LA. If successful, MPEG LA's action will eliminate the need for any trial on those patents because Defendants will be licensed under the Haskell and Netravali Patents for the entire period of alleged infringement in this case, extinguishing the claims by Lucent Technologies, Inc. ("Lucent") and its successor, Multimedia Patent Trust ("MPT"), under those patents. Absent a stay, trial on these patents will occur long before MPEG LA's claim is heard, and could potentially result in the imposition of billion dollar judgments[2] against Defendants on patents covered by the MPEG LA license.

The issues in the MPEG LA action are substantively different than the license defenses brought by Defendants that were the subject of recent summary judgment motions before Judge Brewster. Unlike Defendants, MPEG LA has a direct contractual relationship with Alcatel S.A., Lucent's parent company and the entity with the contractual obligation to place the Haskell and Netravali Patents into the MPEG LA patent pool. MPEG LA is suing for breach of its agreements with Alcatel, including obligations never addressed by Judge Brewster in connection with the parties' summary judgment motions. MPEG LA also is suing for breach of the implied covenant of good faith and fair dealing on the ground that Alcatel's secret participation in Lucent's scheme to assign Lucent's MPEG-2 essential patents to MPT was an attempt to deprive MPEG LA of the benefits of its contracts with Alcatel. *These are claims that may only be asserted by MPEG LA.* Further, MPEG LA

---

[1] The Gateway defendants include Gateway, Inc., Gateway Country Stores LLC, Gateway Companies, Inc., Gateway Manufacturing LLC and Cowabunga Enterprises, Inc.

[2] 

- 1 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1    is seeking a declaration under Delaware law that Alcatel controls MPT such that its patents must be

2    licensed to MPEG LA.  This claim arises under Delaware trust law, and a Delaware court is uniquely

3    suited to make such a determination.

4         In the alternative, in the event the Court declines to stay trial of the Haskell and Netravali

5    Patents, Defendants request that those patents be severed from the current action and consolidated

6    with the recent patent infringement action brought by MPT alleging infringement of three other video

7    coding patents, captioned *Multimedia Patent Trust v. Microsoft Corporation, et al.*, Case No. 07-CV-

8    0747 (the "MPT Action").  Trying the Haskell and Netravali Patents along with the three patents

9    asserted in the MPT Action will streamline and render more efficient the upcoming trial in this action

10   as well as the trial in the MPT Action.  First and foremost, consolidating the Haskell and Netravali

11   patents with the MPT Action would mean that trial on those patents would not take place until March

12   31, 2009, giving the Delaware court the opportunity to render a decision on MPEG LA's license

13   claims.  A determination that the Haskell and Netravali patents are subject to MPEG LA's licenses

14   with Alcatel will obviate the need for a trial on those patents.

15        In addition, the Haskell and Netravali patents are a natural fit with the patents in the MPT

16   Action.  All of these patents concern video coding technology.  And the MPT patents are asserted

17   against the same video standards as the Haskell and Netravali patents — MPEG and VC-1.  By

18   contrast, the other patents to be tried in this action -- the Day, Agulnick and Fleming patents --

19   concern technology unrelated to video coding.  Specifically, the Day, Agulnick, and Fleming patents

20   relate to (1) a form entry system, (2) algorithms for gesture recognition, and (3) commands to select

21   modes of color video display, respectively.  Consolidation also would be more convenient for trial

22   witnesses.  Two of the named inventors on the Haskell and Netravali patents -- Arun Netravali and

23   Atal Puri -- also are named inventors on the patents in the MPT Action.  Trying these patents together

24   would mean these witnesses need only appear for trial once.  Severance and consolidation likewise

25   would reduce the risk of juror confusion, by reducing the number of distinct, different technologies

26   the jury would need to learn in this case.

27        Most important, however, consolidation would eliminate the potential for a double recovery by

28   MPT on its video coding infringement claims. ██████████████████████████████

- 2 -

## II.    FACTUAL BACKGROUND

### A.    Procedural History of This Action.

Lucent initially asserted infringement of several patents, including the Haskell and Netravali Patents (the "Video Coding Patents") against Defendants in three separate actions.[3]  On January 11, 2006, the actions against Dell, Microsoft and Gateway were consolidated for trial and dates were set for consecutive trials on five patent groups.  *See* Farkas Decl., Ex. 2 (Second Modified Scheduling Order and Extension of Discovery (02-cv-2060), dated January 12, 2006).  The patents were divided into separate trials generally corresponding to the areas of technology addressed by the patents (*e.g.*, separate trials were set for video coding (the Haskell and Netravali Patents), audio patents, speech patents, etc.).[4]

On April 2, 2006, Lucent announced a pending merger with Alcatel S.A. ("Alcatel").  On August 2, 2006 Defendants notified the Court that, based on the contractual provisions governing Alcatel's membership in the MPEG LA patent pool and Defendants' rights as licensees of MPEG LA, Defendants would become licensed under the Video Coding Patents upon the completion of the Alcatel-Lucent Merger.  *See* Farkas Decl., Exs. 3 (Agreement Among Licensors (LUC1312617 - LUC1312647.1)) and 4 (MPEG-2 Patent Portfolio License (DELL312379 - DELL312411) - Confidential Filed Under Seal), (collectively "MPEG LA Agreements").[5]  Although Lucent itself had

---

[3] Both the Haskell and Netravali Patents were asserted against Dell and Gateway.  Only the Haskell Patent was asserted against Microsoft.

[4] Only one trial went forward on this schedule, the Audio Coding trial.  On October 16, 2007, the Court issued a new order taking all of the scheduled trials off-calendar in light of new developments in the case and Judge Brewster's upcoming inactive status.  Farkas Decl., Ex. 13 (Order Severing and Transferring Part of Case (02-cv-2060), dated October 16, 2007).

[5] The Moving Picture Experts Group ("MPEG") is a committee charged with the development of video and audio encoding standards. ▮

(Footnote Cont'd on Following Page)

- 3 -

privately acknowledged that Defendants would become licensees upon completion of the merger, Lucent's lawyers represented otherwise to this Court, arguing strenuously that the MPEG LA Agreements "do not give the Defendants any rights vis-á-vis these two patents . . . ." *Id.* Ex. 5 at 75 (Transcript of Telephonic Pretrial Conference Hearing Before the Honorable Rudi M. Brewster (02-cv-2060), dated August 14, 2006).

In recognition of the license defense, on August 15, 2006, the Court stayed all proceedings related to those patents pending the merger. *Id.* Ex. 6 (Order Staying Certain Proceedings, Vacating Certain Hearing Dates, and Setting Status Conference (02-cv-2060), dated August 14, 2006).

After the Court lifted the stay, plaintiffs (now Lucent and MPT) filed a Second

---

(Footnote Cont'd From Previous Page)

For purposes of this motion, it is undisputed that the Video Coding Patents are MPEG-2 Essential Patents.

[6]

(Footnote Cont'd on Following Page)

1  Amended Complaint, alleging that on November 28, 2006, Lucent assigned its entire right, title, and

2  interest in the Haskell and Netravali Patents to MPT, including the right to sue for past infringement.

3  (Second Amended Complaint ¶ 23). Dell answered on February 9, 2007, stating that MPT's claims

4  for infringement of the Haskell and Netravali patents are barred by Dell's MPEG-2 License with

5  MPEG LA, L.L.C. (Second Amended Answer and Counterclaims of Dell, Inc. at 7, ¶ 110). Dell also

6  asserted that Lucent's transfer of the MPT Patents to MPT was void as a fraudulent transfer under

7  Delaware's Fraudulent Transfer Act. (*Id.* at 22-23, ¶¶ 5-9). Gateway and Microsoft filed similar

8  pleadings.

9       Cross-motions for summary judgment were filed by the parties with respect to Defendants'

10  license defense and certain other counterclaims and defenses arising out of Lucent's purported transfer

11  of the Video Coding Patents to MPT. On September 26, 2007, the Court heard argument on a number

12  of these motions. The Court issued its order on the parties' cross-motions for summary judgment on

13  October 1, 2007. With the exception of Defendants' claim for tortious interference with prospective

14  economic advantage, the Court granted Lucent's summary judgment motions and denied

15  Defendants'.[7] The Court's October 1 Order did not include any finding regarding Defendants'

16  allegation that Lucent's transfer of patents to MPT violated the Delaware Uniform Fraudulent

17  Transfers Act. However, the Court held that evidence regarding this alleged violation of Delaware

18  law (as well as other evidence of misconduct) creates a triable issue of fact as to the malice element of

19  _____

(Footnote Cont'd From Previous Page)



[7] Dell has moved for reconsideration of portions of the Court's Oct. 1 Order, specifically the Court's rulings with respect to Defendants' license and unclean hands defenses, and counterclaim for tortious interference with contract. Dell also has sought, in the alternative, for certification of its license defense for interlocutory appeal. *See* Docket Entry No. 29. Dell's motion is set to be heard on December 7, 2007.

1  Defendants' tortious interference claim. *Id.*, Ex. 40. (Order Granting in Part and Denying in Part

2  Parties' Motions for Summary Judgment Regarding Defendants' Affirmative Defenses and

3  Counterclaims Pertaining to the Transfer of the Group 1 Patents to the Multimedia Patent Trust (02-

4  cv-2060); dated October 1, 2007 at 22:9-15).

5  On October 16, 2007, on the Court's own motion and due to the Honorable Rudi M.

6  Brewster's inactive status, the Court severed part of this action for transfer to another judge.[8]  The

7  patents severed by Judge Brewster were the Haskell and Netravali Patents, U.S. Patent No. 4,763,356

8  (the "Day Patent"), U.S. Patent No. 5,347,295 (the "Agulnick Patent"), and U.S. Patent No. 4,439,759

9  (the "Fleming Patent").  The action ultimately was transferred to the Honorable Marilyn L. Huff.

10  Trial currently is set to commence on February 20, 2008.  Farkas Decl., Exs. 12 (Pretrial Scheduling

11  Order (07-cv-2000-H), dated November 9, 2007), 37 (Case Management Order (07-cv-2000); dated

12  October 18, 2007), & 38 (Scheduling Order for Groups 1, 4, 5 and 6 Patents (02-cv-2060); dated June

13  7, 2007).

14  **B.    The MPT Action**

15  On April 24, 2007, MPT instituted another patent infringement action against Defendants,

16  *MPT v. Microsoft, et al.*, Case No. 07-CV-0747 (the "MPT Action").  The MPT Action alleges

17  infringement of three patents relating to video coding:  (1) U.S. Patent No. 5,136,377, entitled

18  "Adaptive Non-Linear Quantizer (the "Johnston '377 patent"); (2) U.S. Patent No. 5,500,678, entitled

19  "Optimized Scanning of Transform Coefficients in Video Coding" (the "Puri '678 patent"); and

20  (3) U.S. Patent No. 5,563,593, entitled "Video Coding With Optimized Low Complexity Variable

21  Length Codes" (the "Puri '593 patent") (collectively, the "MPT Patents").  Farkas Decl., Ex. 14

22  (Complaint by Multimedia Patent Trust, dated April 24, 2007).  MPT has accused Defendants'

23  computer software and/or hardware that allegedly is compliant with the MPEG-2, H.263, H.264,

24  MPEG-4 Part 2, or VC-1 standards of infringing one or more of the MPT Patents.  The accused

25  technologies include Microsoft Windows Media Encoder, Windows Media Player, the Windows

26  Media Video 9 codec, Windows Vista Movie Maker, Windows XP Media Center Edition, and

27
28

---

[8] Judge Brewster retained jurisdiction over patents for which summary judgment had been entered and an appeal filed.  Farkas Decl., Ex. 13.

1    Windows Vista Media Center. MPT also has accused computer systems with hardware and/or

2    software for *decoding* MPEG-2 and MPEG-4 video, such as Dazzle Video Creator Platinum, of

3    infringement. *Id.*, Ex. 15 (Multimedia's Disclosure of Asserted Claims and Preliminary Infringement

4    Contentions (07-cv-0747), dated September 10, 2007).

5        The Court issued a scheduling order in the MPT Action on November 1, 2007, setting, *inter*

6    *alia*, a final pretrial conference for March 30, 2009. *Id.*, Ex. 16 (Case Management Conference Order

7    Regulating Discovery and Other Pretrial Proceedings (07-cv-0747); dated November 1, 2007).

8        **C.    The MPEG LA Action.**

9        On October 26, 2007, MPEG LA commenced an action in the Delaware Court of Chancery

10   against Alcatel, Lucent and MPT seeking, *inter alia*, a declaration that "the essential MPEG-2 patents

11   purportedly transferred to the Trust in violation of Alcatel's agreement are governed by and subject to

12   the terms of the LAA and License[9] and form part of the MPEG-2 Pool." *See* Farkas Decl. Ex 17

13   (Verified Complaint by MPEG LA, LLC against Alcatel Lucent, Lucent Technologies, Inc., and

14   Multimedia Patent Trust (In the Court of Chancery of the State of Delaware in and for Newcastle

15   County), dated October 26, 2007, ¶ A). As set forth in MPEG LA's Verified Complaint, MPEG LA

16   has brought suit seeking declaratory, injunctive and other equitable relief due to Alcatel's unjust

17   enrichment and intentional breach of the contractual commitments made by Alcatel to MPEG LA,

18   other MPEG-2 licensors, and MPEG-2 licensees in the course of Alcatel's becoming a licensor and

19   licensee in the MPEG-2 patent portfolio licensing program. Alcatel promised to make available to all

20   MPEG-2 licensees through the MPEG-2 patent pool licensing program all MPEG-2 essential patents

21   for which Alcatel has the right, now or in the future, to license or sublicense, and *not* to take any steps

22   to subvert that commitment. According to MPEG LA, Alcatel actively took steps to subvert its

23   contractual commitments as a member of MPEG LA by conspiring with Lucent to create MPT. *Id.*

24   Ex. 17, ¶¶ 1-2). MPEG LA's Verified Complaint asserts claims for (i) Breach of the LAA against

25   Alcatel; (ii) Breach of the License against Alcatel; (iii) Breach of the Patent Portfolio License

26

27   [9] The "LAA" is the Licensing Administrator Agreement between MPEG LA and Alcatel. The "License" is the License from Licensors to the Licensing Administrator between MPEG LA and all of

28   the MPEG-2 licensors, including Alcatel. Ex. 17 ¶ 15).

- 7 -

1    MPEG LA and Alcatel;[10] (iv) Breach of the Covenant of Good Faith and Fair Dealing against Alcatel

2    under the LAA and License; (v) Declaratory Judgment and Injunctive Relief declaring that MPT's

3    MPEG-2 essential patents are subject to the control of, and therefore licensable or sublicensable by,

4    Alcatel; (vi) Equitable and Injunctive Relief requiring Alcatel, Lucent and MPT to cause MPT's

5    MPEG-2 essential patents to be licensed to MPEG LA; (vii) Unjust Enrichment; (viii) Tortious

6    Interference with Contract; and (ix) Tortious Interference with Prospective Economic Advantage. *Id.*

7         MPEG LA's claims, although seeking essentially the same relief sought by Defendants

8    through their license defense, are *not* the same as Defendants' license defense and are not foreclosed

9    by the Court's grant of summary judgment.  MPEG LA directly contracted with Alcatel and thus can

10   assert, and has asserted, contractual breach claims against *Alcatel*.  By contrast, Defendants' claims

11   were asserted only against Lucent and MPT.  MPEG LA's breach of contract claims go well beyond

12   the parties' dispute regarding the definition of "Affiliate" in the MPEG LA licensing agreements, and

13   include allegations that Alcatel breached numerous other obligations to MPEG LA, including:

14   • MPEG LA asserts that Alcatel breached the LAA by failing "to use commercially reasonable

15       best efforts to fully and in good faith cooperate with [MPEG LA] in connection with the

16       subject matter of [the LAA] and to allow [MPEG LA] to carry out its obligations. Ex. 17, ¶ 36

17       (citing LAA, § 4.1)).]  MPEG LA alleges that Alcatel failed to comply with this obligation by

18       "working to defeat the purposes for and circumvent its agreements by creating and agreeing to

19       a scheme to deprive MPEG LA of the full benefits of the contract. [*Id.* (MPEG LA Complaint,

20       ¶ 39.a)];

21   • MPEG LA asserts that Alcatel breached its agreement and warranty in the LAA that it would

22       not "make any outstanding agreements, assignments or encumbrances inconsistent with the

23       provisions of [the LAA]" by entering into "agreements, assignments and encumbrances with

24       Lucent and the Trust inconsistent with the provisions of the LAA." [*Id.* (MPEG LA

25       Complaint, ¶¶ 37 (citing LAA, §§ 7.1(a) and (b)) & 39.b)]; and

26

27   _____

[10] Alcatel is a licensee of MPEG LA and, like all of the Defendants herein, has executed the standard
28   MPEG LA Patent Portfolio License Agreement. Ex. 17, ¶ 15)]

- MPEG LA asserts that Alcatel breached its agreement and warranty in the LAA that it would "comply with all applicable laws, regulations and ordinances pertaining to its performance" by "failing to comply with the private law created by the other MPEG LA agreements, including the [Agreement Among Licensors] and the more than 1,300 executed PPLs." [*Id.* (MPEG LA Complaint, ¶¶ 37 (citing LAA, § 7.1(c) & 39.c)].

MPEG LA also has asserted that Alcatel breached the covenant of good faith and fair dealing implied in the LAA and License by conspiring with Lucent to place Lucent's MPEG-2 essential patents into MPT, thereby destroying or injuring MPEG LA's right to receive the benefits of its contracts with Alcatel. *Id.* (MPEG LA Complaint, ¶¶62-63).

In addition, MPEG LA is seeking equitable and declaratory relief under Delaware trust law that, *inter alia*, MPT was created as part of a sham transaction to deprive MPEG LA of its rights under its contracts with Alcatel. *Id.* (MPEG LA Complaint, ¶¶ 68-82). Defendants also have asserted counterclaims under Delaware trust law against Lucent and MPT. Farkas Decl., Ex. 18 (Second Amended Answer and Counterclaims of Dell Inc. In Reply to Second Amended Complaint in 03-cv-1108 B (CAB), dated September 28, 2007) Those counterclaims remain in the action will be part of a trial of the Haskell and Netravali Patents.

## D. The Video Coding Patents Bear No Relationship to the Other Patents to be Tried in this Action.

The trial in this action currently involves five patents (Haskell, Netravali, Day, Agulnick and Fleming). The Haskell and Netravali patents relate to video coding. Specifically, MPT asserts that computers with software for decoding MPEG-1 video (including computer systems with Microsoft DirectShow, ActiveMovie, MovieMaker and Media Player software) and/or software for decoding MPEG-2 video (including computer systems with a DVD player and/or recorder and associated hardware and/or software for decoding MPEG-2 video, such as the Cyberlink PowerDVD and InterVideo WinDVD software products), infringe the Haskell and Netravali Patents. In addition, MPT asserts that the Haskell Patent is infringed by the sale of computer systems with software for decoding video encoded based on Microsoft's Windows Media Video 9 ("WMV-9") compression protocol, which is also known as VC-1. Farkas Decl, Ex. 19 (Excerpts from Lucent's Eighth

- 9 -

1    Supplemental Response to Interrogatory No. 2 From Microsoft, Dell and Gateway (02-cv-2060),

2    dated March 24, 2006).

3            By contrast, the other patents to be tried relate to completely different technology areas and

4    accused products:

5            The Day Patent.  The Day Patent relates to a form entry system to input data into computerized

6    forms.  The disclosed system uses on-screen tools that are displayed concurrently on the form to allow

7    the user to input information into fields.  A tool can be a menu of alternative options or a composition

8    tool such as an onscreen keyboard or calculator.  Lucent has accused the sale of computer systems

9    running various Microsoft programs, including Microsoft Outlook, Microsoft Pocket PC or Windows

10   Mobile and Microsoft Word Mobile of infringing the Day Patent.  *Id.*, Ex. 20 (Excerpts from Lucent's

11   Seventh Supplemental Response to Interrogatory No. 2 From Microsoft, Dell and Gateway (02-cv-

12   2060), dated March 3, 2006).

13           The Agulnick Patent.  The Agulnick Patent relates to the use of very specific shape-matching

14   algorithms to perform gesture recognition.  Lucent has accused the sale of stylus-based computing

15   devices -- specifically tablet PCs running the Windows XP Tablet PC Edition operating system and

16   PDA's running the Palm operating system -- of infringing the Agulnick Patent.[11]  *Id.*, Ex. 20 (Excerpts

17   from Lucent's Seventh Supplemental Response to Interrogatory No. 2 From Microsoft, Dell and

18   Gateway (02-cv-2060), dated March 3, 2006).

19           The Fleming Patent.  The Fleming Patent purports to cover the use of certain commands and

20   data to select different modes of color video display.  Lucent contends that every Dell or Gateway

21   computer shipped with any version of Microsoft Windows beginning with Microsoft Windows 95,

22   from 1998 through the expiration of the Fleming Patent in 2001, infringes the Fleming Patent because

23   of the availability in those computers of certain commands and data which might be used when

24   displaying color.  Specifically, Lucent alleges that the availability of the Microsoft Windows Graphic

25   Device Interface, either alone or in conjunction with certain non-Microsoft hardware, infringes the

26   ───────────────────────

27   [11] Lucent's infringement claims also included Dell's sales of PDA's running the Windows Mobile
     Operating System.  However, on March 8, 2007, the Court entered summary judgment against Lucent
     on that claim.  *See* Farkas Decl. Ex. 39 (Order Granting Summary Adjudication of No Infringement of
28   U.S. Patent No. 5,347,295 (02-cv-2060); dated March 8, 2007).

1    Fleming Patent. *Id.*, Ex. 20 (Excerpts from Lucent's Seventh Supplemental Response to Interrogatory

2    No. 2 From Microsoft, Dell and Gateway (02-cv-2060), dated March 3, 2006).

3        Because the patents all relate to distinct and different technology areas, *none* of the technical

4    or expert witnesses identified by any party as having knowledge relevant to the Day, Agulnick and

5    Fleming Patents has been identified as having knowledge with respect to the Haskell and Netravali

6    Patents. *See id.*, Exs. 21 (Dell Inc.'s Supplemental Initial Disclosures Pursuant to Federal Rule of

7    Civil Procedure 26(a) (02-cv-2060), dated January 27, 2006), 22 (Gateway, Inc.'s Fifth Supplemental

8    Initial Disclosures (02-cv-2060), dated September 7, 2007), 23 (Microsoft Corporation's Eighth

9    Supplemental Initial Disclosures (02-cv-2060), dated September 20, 2006) & 24 (Lucent

10   Technologies Inc.'s Amended Initial Disclosures Statement (02-cv-2060), dated January 27, 2006).

11       **E.    The Video Coding Patents Are Related to the MPT Patents.**

12       There is a significant overlap between MPT's infringement accusations with respect to the

13   Video Coding Patents, and its assertions with respect to the MPT Patents. MPT accuses the same

14   standards of infringing both sets of patents, including MPEG-2, and VC-1. MPT also accuses the

15   *same* products of infringing both sets of patents, including, without limitation, Windows Media

16   Player, Windows Media Video 9 Codec, and Movie Maker. Farkas Decl., Exs. 15 & 20. MPT has

17   made infringement contentions with respect to video *decoding* in both the current action and the MPT

18   Action. *Id.* Both actions also will involve the same witnesses, including, at a minimum, inventors

19   Atal Puri and Arun Netravali, who are named inventors on both the Video Coding Patents and the

20   MPT Patents. *Id.*, Exs. 25 (First Page of United States Patent No. 5,563,593), 26 (First Page of United

21   States Patent No. 5,500,678) & 29 (First Page of United States Patent No. 4,383,272). Both actions

22   will also focus on the conduct of AT&T and Lucent during the MPEG meetings that resulted in the

23   creation of the MPEG standards.



- 11 -

1

2

3

4
                                                                            *Id.*,

5   Ex. 31. Accordingly, under a theory which was espoused by Lucent's and MPT's damages expert,

6   Roger Smith, Lucent should collect only a *single* license fee for *both* the Video Coding Patents and

7   the MPT Patents. *Id.*, Ex. 33 (Excerpts from the Expert Report of Roger S. Smith Regarding

8   Damages Issues Pertaining to Lucent Video Coding Patents, dated March 31 2006, at 18-19; 37).

9   **III.    ARGUMENT**

10      **A.    This Court Should Stay Trial on the Video Coding Patents Pending the Outcome of the MPEG LA Action.**

11

12          **1.    Legal Standard For A Stay Pending The Resolution Of A Related Action**

13        This Court has the power and discretion to stay this action pending the outcome of the MPEG

14  LA Action pending in the Delaware Court of Chancery. *See Landis v. North American Co.*, 299 U.S.

15  248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (district court has inherent power to stay proceeding

16  pending the outcome of related actions before a different tribunal); *The Cherokee Nation of Oklahoma*

17  *v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("The power of a federal trial court to stay its

18  proceedings, even for an indefinite period of time, is beyond question."). "[T]he power to stay

19  proceedings is incidental to the power inherent in every court to control the disposition of the causes

20  on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis*, 299

21  U.S. at 254. This Court may grant a stay, even if the MPEG LA Action will "not settle every question

22  of fact and law" in the instant matter, because it will settle many issues and simplify the trial. *See id.*

23  at 256. In deciding a motion for a stay, courts are directed to "weigh competing interests and maintain

24  an even balance." *Id.* at 255; *see also Cherokee Nation*, 124 F.3d at 1418 (holding that a court must

25  "balance the need for the stay against the countervailing interests").

26        The primary consideration for granting a stay is the efficient administration of justice. *See*

27  *American Telephone & Telegraph Co. v. Milgro Electronics Corp.*, 416 F. Supp. 951, 953 (S.D.N.Y.

28  1976) (concluding that "simultaneous maintenance of two proceedings [one in District Court and one

1   in the Patent and Trademark Office] is an unnecessary duplication of judicial and agency effort, not to

2   mention expensive and time-consuming for the litigants"). "In the exercise of its sound discretion, a

3   court may hold one lawsuit in abeyance to abide the outcome of another which may substantially

4   affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of North*

5   *America, AFL-CIO*, 544 F.2d 1207, 1214 (3d Cir. 1976). A District Court may stay a federal action

6   while potentially dispositive issues are decided in another tribunal. *See id.* Thus, where a plaintiff

7   sought contract damages in arbitration and tort damages in federal court, but was barred from

8   recovering damages more than once, the District Court was justified in staying the federal action

9   pending arbitration of the contract dispute. *Id.*

10          In weighing the competing interests, courts consider whether the party opposing a stay will be

11   deprived of an opportunity to litigate critical issues. Courts are reluctant to grant stays when the

12   litigant opposing the stay will "be required to stand aside while a litigant in another [action] settles the

13   rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. By contrast, where the same

14   litigant will have a full and fair opportunity to litigate in another forum, staying one of two parallel

15   actions does not create a hardship. *See Universal Gypsum of Georgia, Inc. v. American Cyanamid*

16   *Co.*, 390 F. Supp. 824, 828 (S.D.N.Y. 1975) ("We cannot perceive how Gypsum might be prejudiced

17   by the entry of the requested stay -- it will be afforded a full and fair opportunity to litigate all issues

18   before a highly competent tribunal whose expertise in New York law must be regarded as equal to, if

19   not greater than that of this Court.").

20          **B.      A Stay Of Trial On The Video Coding Patents Is Appropriate Here.**

21          The balance of interests in this case strongly favors a stay of proceedings with respect to the

22   Haskell and Netravali Patents pending adjudication of MPEG LA's claims against Alcatel, Lucent and

23   MPT. Lucent, Alcatel, and MPT will have a full and fair opportunity to litigate the scope of Alcatel's

24   licensing obligations in an action to which MPEG LA – the entity with whom Alcatel has a direct

25   contractual relationship – is a party. MPEG LA is the proper party to litigate issues related to its

26   license with Alcatel. Moreover, the Delaware Court of Chancery is an adequate forum to decide

27   whether Lucent validly formed MPT, the Delaware statutory trust which Lucent and MPT claim

28   destroyed Alcatel's contractual obligation to license the Haskell and Netravali patents. A stay will

- 13 -

1    promote the efficient administration of justice by affording the Delaware court an opportunity to rule

2    on these case-dispositive issues prior to a trial on these patents in this Court.  The balance of interests

3    favors a stay, because Lucent and MPT will suffer little or no prejudice from delay.

4         The Delaware Court of Chancery will decide numerous issues bearing on Lucent and MPT's

5    right to assert the Haskell and Netravali patents that were not and cannot be decided by this Court.  As

6    noted above, the MPEG LA action involves several claims that cannot be asserted in this action,

7    because no party to this action has standing to assert them.  These claims include MPEG LA's claims

8    for breach of the contract between MPEG LA and Alcatel and breach of the implied covenant of good

9    faith and fair dealing.  If MPEG LA obtains the relief it seeks on any of these claims, the Delaware

10   decision will be dispositive of MPT's claims related to the Haskell and Netravali Patents.

11        The stay requested here is narrowly tailored to promote the efficient administration of justice.

12   Defendants do not ask the Court to stay proceedings with respect to the Day, Agulnick or Fleming

13   patents, as these patents are not at issue in the MPEG LA action and relate to completely different

14   technologies and different accused products from the Haskell and Netravali patents.  Should MPEG

15   LA prevail in the Delaware Court of Chancery, the relief granted will likely obviate *any need* for trial

16   of the Haskell and Netravali patents by this Court.  Moreover, given the lack of common factual

17   allegations with respect to these two groups of patents, *even if* the MPEG LA action does not dispose

18   of all issues related to the Haskell and Netravali patents, trying these patents separately will not

19   impose significantly greater burden on the Court or Plaintiffs.  None of the technical or expert

20   witnesses identified by any party as having knowledge relevant to the Haskell and Netravali patents is

21   identified as having knowledge relevant to the remaining patents.  Farkas Decl., Exs. 21, 22, 23 & 24.

22   Indeed, Judge Brewster's initial scheduling order, entered well before the MPEG LA action was filed,

23   implicitly recognized that separating the trials of the Haskell and Netravali patents from the other

24   patents remaining in this action will actually *increase* efficiency.  *See id.*, Ex. 2.

25        In sum, the requested stay will promote the efficient administration of justice without unduly

26   burdening Plaintiffs.  The presence of potentially dispositive issues in the pending MPEG LA Action

27   strongly supports a stay.  Because Lucent and MPT will have a full and fair opportunity to litigate the

28   claims pending in the MPEG LA Action and because the claims to be stayed arise from distinct

                                              - 14 -

1  factual allegations, Lucent and MPT cannot claim that a stay will harm their ability to present their

2  case or that it will significantly increase their costs.  Although Lucent and MPT may attempt to claim

3  prejudice from the short delay of trial on these patents pending the outcome of the MPEG LA Action,

4  a modest delay does not pose a significant enough burden to outweigh the factors favoring a stay.

5  Accordingly, the Court should "balance the need for the stay against the countervailing interests,"

6  *Cherokee Nation*, 124 F.3d at 1418, and grant Defendants' motion for a limited stay.

7       **C.**    **In the Alternative, the Court Should Sever the Video Coding Patents from the
Upcoming Trial and Consolidate Them for Trial With the MPT Action.**

8

9          **1.**    **Courts Routinely Sever Claims Involving Distinct Issues**

10       Federal Rule of Civil Procedure 21 states, in pertinent part: "Any claim against a party may be

11  severed and proceeded with separately."[12]  Further, Federal Rule of Civil Procedure 42(b) provides

12  that District Courts may sever claims or issues pending in a single case "in furtherance of convenience

13  or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]"

14       District courts have broad discretion to order severance.  *New York v. Hendrickson Bros., Inc.*,

15  840 F.2d 1065, 1082 (2d Cir. 1988); *Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78 (E.D. Wis.

16  1985).  A court may sever any claim where it "will serve the ends of justice and further the prompt

17  and efficient disposition of the litigation."  *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,

18  896 F. Supp. 505, 506 (D. Md. 1995).  In exercising their discretion, courts may consider factors

19  including:

20         1.  Whether the issues sought to be tried separately are significantly different from one

21             another;

22         2.  Whether the separable issues require the testimony of different witnesses and different

23             documentary proof;

24         3.  Whether the party opposing the severance will be prejudiced if it is granted; and

25         4.  Whether the party requesting the severance will be prejudiced if it is not granted.

26

27  [12] Although Rule 21 deals primarily with misjoinder, this provision "authorizes the severance of any
claim, even without a finding of improper joinder, where there are sufficient other reasons for

28  ordering a severance."  *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

- 15 -

1   *German v. Federal Home Loan Mtg. Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995); *see also*

2   *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F. Supp. 1485, 1491 (D. Del. 1985) ("The Court

3   must weigh the potential for confusion, delay, prejudice or additional expense resulting from the grant

4   or denial of the motion.").

5              **2.     Consolidation Of Related Claims Serves The Interests Of Justice**

6        Federal Rule of Civil Procedure 42(a) provides that District Courts may consolidate "actions

7   involving a common question of law or fact." Trial courts exercise "broad discretion to determine

8   whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990);

9   *see also Investors Research Co. v. United States District Court*, 877 F.2d 777, 777 (9th Cir. 1989).

10  Considerations favoring consolidation include judicial economy, convenience, and avoidance of

11  inconsistent adjudications of common factual and legal issues. *Johnson*, 899 F.2d at 1281 *citing*

12  *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985). These considerations

13  must be weighed against any risk of prejudice or confusion of the issues arising from a joint trial. *Id.*

14       Consolidation is routinely ordered based on common issues of law and fact, even where the

15  two actions do not include identical parties. *See Internet Law Library, Inc. v. Southridge Capital*

16  *Mgmt.*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002) ("Even in multi-party litigation, courts have been quick to

17  emphasize that the danger of confusion from consolidation is largely overstated."). Even where one

18  of the two cases to be consolidated has been pending for some time, the benefits of consolidation may

19  outweigh any prejudice from delaying the first-filed action. *See id.* at 62 (consolidating an action in

20  which the parties had engaged in eight months of discovery with one in which discovery had not

21  begun, and explaining that "short of cases ready for trial, cases at different stages of litigation are

22  routinely consolidated").

23       The factors a court may consider in exercising its discretion to consolidate are similar to those

24  for severance. They include:

25           1.   The existence of joint issues in discovery, *see Werner v. Satterlee, Stephens, Burke &*

26                *Burke*, 797 F.Supp. 1196, 1212 (S.D.N.Y. 1992);

27           2.   Conservation of judicial resources, *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 657

28                (N.D. Cal. 2000);

- 16 -

3.  Eliminating potential for juror confusion, *see In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 175-76 (C.D. Cal. 1976);

4.  Avoiding inconsistent results, *International Paving Sys., Inc. v. Van Tulco, Inc.*, 806 F. Supp. 17, 22 (E.D.N.Y. 1992); *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991); and,

5.  The interests of justice and fairness, *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993).

Simplification of the litigation process by itself suffices to warrant consolidation. *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988). Patent cases are routinely consolidated to ensure that a single jury decides common factual questions. *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24, 31-34 (D. Del. 1986); *citing Gasoline Prods. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). *See also Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 984-86 (D. Del. 1982) ("Two juries cannot decide factual questions that are common to both trials and which are essential to a verdict or an award.").

**D.  If The Court Declines To Grant A Stay, It Should Sever The Haskell And Netravali Patents From The Trial Of Unrelated Patents And Order A Consolidated Trial On All Video Coding Patents.**

All of the factors that Courts consider in ruling on a motion for severance weigh strongly in favor of severing the Haskell and Netravali Patents from the remaining patents for trial. These same factors weigh strongly in favor of consolidating the claims related to Haskell and Netravali with the MPT Action.

There is no factual nexus between the Haskell and Netravali Patents and the other patents in this action. The Day, Agulnick and Fleming patents do not relate to video coding technology and are not alleged to be infringed by the same products. Farkas Decl., Exs. 19 & 20. By contrast, the Haskell and Netravali Patents *do address* the same technology and products at issue in the MPT Action. As a result, severing the Video Coding Patents and consolidating them with the MPT Action will permit a single jury to be educated on all relevant aspects of video coding and avoid unnecessarily multiplying the issues in the upcoming trial of the Day, Agulnick and Fleming patents.

- 17 -

1    At the same time, consolidation will permit one jury fairly to consider the issue of damages

2    with respect to the purported infringement of the Video Coding Patents.



11                                                                  The current trial schedule, with two

12    separate trials of the MPEG essential video coding patents, invites inconsistent verdicts and/or an

13    unwarranted double recovery.

14    As detailed above, the two groups of patents Defendants propose to sever do not share *any* of

15    the same technical or expert witnesses identified as having knowledge with respect to the patents.  By

16    contrast, the existence of shared witnesses and joint discovery issues supports Defendants' request to

17    consolidate all of the video coding patents into a single trial.  Two of the named inventors on the

18    Haskell and Netravali patents are also named inventors on the patents in the MPT action.  Farkas

19    Decl., Exs. 25, 26, 27 (First Page of United States Patent No. 4,958,226), 28 (First Page of United

20    States Patent No. 5,627,938), & 29.  Discovery taken regarding the Haskell and Netravali patents will

21    be applicable in the MPT Action, and consolidation would permit these inventors to appear for only

22    one trial.

23    The conservation of judicial resources strongly favors severance followed by consolidation.

24    Only through this procedure can the Court guarantee that it will not have to preside over two trials

25    concerning the *same* technology, the *same* inventors, the *same* defendants and the *same* accused

26    products.  These two trials would have substantial overlap of witnesses, evidence and argument.  In

27    addition to all of this duplication, if plaintiffs in the first-tried action were to prevail and receive an

28    award of damages, testimony regarding the evidence presented and outcome achieved in the first-tried

- 18 -

1    action would be relevant in the second-tried action, based on the damages theory of Lucent's expert.

2    Such time consuming duplication of efforts could be avoided by severance and consolidation.

3        The procedure proposed by Defendants is likely to avert juror confusion in this action as well

4    as in the MPT Action. First, in the pending action, jurors will have fewer different and unrelated

5    technologies to learn and understand in reaching judgment. Second, in the MPT Action, a single jury

6    could learn the necessary aspects of MPEG video coding technology, and would not be faced with the

7    possibility of having to reconcile its own calculation of damages with a damages award made in a

8    different action heard by a different jury.

9        Additionally, severance and consolidation will help prevent inconsistent results. In addition,

10   severance and consolidation may avoid the possibility of a liability determination in the instant case

11   that is irreconcilable with a subsequent decision in the MPEG LA Action. It is likely that the MPEG

12   LA action will be decided prior to the scheduled trial of the MPT Action. If so, consolidation of all of

13   the video coding patents in the MPT action would give the parties and the Court an opportunity to

14   address the *res judicata* effect of any decision in the MPEG LA Action prior to this Court's trial on

15   any of the video coding patents at issue in the MPEG LA Action.[13]

16       The remaining issues to consider relate to the interests of justice and fairness and the

17   possibility of prejudice to the respective parties. For all the reasons described above, the interests of

18   justice and fairness favor consolidating the infringement claims regarding the video coding patents in

19   a single trial, rather than hearing some of the claims in the upcoming trial and others in 2009.

20   Moreover, any prejudice to Lucent and MPT from delaying trial on the Haskell and Netravali Patents

21   is far outweighed by the prejudice to Defendants of having to defend two trials on video coding

22   patents, one before and one after the pending MPEG LA Action. On balance, the relevant factors,

23   including efficiency, fairness and justice all strongly support Defendants' motion.[14]

---

24   [13] The current separation of video coding patents into two trials could lead to a perverse result, where
25   Lucent and MPT could obtain a recovery against Defendants on Haskell and Netravali Patents in this
     Court, and later have the Delaware Court of Chancery invalidate the transfer of patents to MPT or
26   declare that the patents were retroactively licensed to Defendants. In that case, this Court might find
     itself in the position of having to apply *res judicata* to bar recovery in the MPT Action, although the
27   judgment giving rise to *res judicata* was inconsistent with a jury finding in this action.
     [14] The fact that both the Haskell and Netravali patents are presently undergoing reexamination
28   proceedings at the U.S. Patent and Trademark Office provides yet an additional basis for granting

(Footnote Cont'd on Following Page)

- 19 -

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court stay the trial on the Haskell and Netravali Patents pending a decision by the Delaware Chancery Court in the MPEG LA Action.  In the alternative, Defendants request that the Court sever the Haskell and Netravali patents from this action, and consolidate them for trial with the MPT Action.


Dated: November 21, 2007                    ARNOLD & PORTER LLP
                                            James S. Blackburn
                                            Joseph A. Micallef
                                            Katherine B. Farkas

                                            McDERMOTT WILL & EMERY LLP
                                            Joel M. Freed


                                            By: /s/ Katherine B. Farkas
                                                Katherine B. Farkas
                                                Attorneys for Dell Inc.

---

(Footnote Cont'd From Previous Page)

Defendants' request that the video patents should be either stayed or severed and tried later with Case No. 07-CV-0747. *See* Farkas Decl., Ex. 34 (United States Patent and Trademark Office Decision on Request for Reexamination of United States Patent No. 4,958,226, dated October 5, 2007) & 35 (United States Patent and Trademark Office Decision on Request for Reexamination of United States Patent No. 4,383,272, dated August 16, 2007).  More particularly, by granting the reexamination requests the USPTO has determined that there exists a substantial new question concerning the validity of the video patents, and an ultimate determination of invalidity would dispose of the need to try these patents at all.  As the Federal Circuit has noted, "[o]ne purpose of the reexamination procedure is to eliminate trial of that [validity] issue ... or to facilitate trial of that issue by providing the district court with the expert view of the PTO ..." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).  In addition, "[c]ourts have inherent power to manage their dockets and stay proceedings including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  In view of the purpose of the reexamination process and the discretion possessed by the courts, "[t]here is a 'liberal policy' in favor of granting motions to stay pending the outcome of PTO reexamination proceedings." *Sorensen v. Black and Decker Corp.*, 2007 WL 2696590, *3 (S.D. Cal. 2007).  Finally, any delay caused by staying or severing the video patents does not impose any undue prejudice on MPT because the Netravali '272 patent is expired, the Haskell '226 patent expires in less than two years, MPT is not a competitor of the Defendants, and AT&T, MPT's predecessor-in-interest, publicly committed to licensing the video patents "to any applicant upon reasonable terms."  Farkas Decl., Ex. 36 (Haskell Deposition No. 20).  Thus, MPT will not be entitled to a permanent injunction against the Defendants and can be fully compensated by monetary damages and interest regardless of any delay in bringing the video patents to trial.  *See id* at *4 (finding no undue prejudice caused by stay when patent was to expire in near future and patentee could be fully compensated by monetary damages).

- 20 -