James S. Blackburn (State Bar No. 169134)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

Joseph A. Micallef (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

Joel M. Freed (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C.  20005-3096
Telephone:  (202) 756-8000
Facsimile:  (202) 756-8087

Attorneys for *Dell Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br> Plaintiffs and Counterclaim-defendants, <br><br> v. <br><br> GATEWAY, INC. AND GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervener and Counter-claimant, | Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases: <br> Case No. 02-CV-2060-B (CAB) <br> Case No. 03-CV-0699-B (CAB) <br> Case No. 03-CV-1108-B (CAB) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT OF INVALIDITY ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,763,356 TO DAY, ET AL.** <br><br> Judge Marilyn L. Huff <br><br> Hearing Date:  January 7, 2008, 10:30 a.m. <br> Location:  Courtroom 13, 5th Floor |

| | |
|---|---|
| 1 | MICROSOFT CORPORATION, )
| 2 | )  Plaintiff and Counter-defendant, )
| 3 | v. )
| 4 | LUCENT TECHNOLOGIES INC. and )  MULTIMEDIA PATENT TRUST, )
| 5 | )
| 6 | Defendants and Counter-claimants, )
| 7 | LUCENT TECHNOLOGIES INC. and )  MULTIMEDIA PATENT TRUST, )
| 8 | )
| 9 | Plaintiffs and Counterclaim-defendants, )
| 10 | v. )
| 11 | DELL INC., )
| 12 | Defendant and Counter-claimant. )

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................................1

II. STATEMENT OF UNDISPUTED FACTS .............................................................................3

    A. The Day Patent................................................................................................................3

    B. Home Accountant ...........................................................................................................4

    C. The Tyler Article.............................................................................................................6

III. APPLICABLE LEGAL STANDARD.....................................................................................7

IV. THE ASSERTED CLAIMS OF THE DAY PATENT ARE OBVIOUS .................................8

    A. Claim 19 is Obvious Based on the Prior Art...................................................................9

        1. It Would Have Been Obvious to One With Ordinary Skill in the Art to Modify Home Accountant in View of the Tyler Article to Satisfy the "Predefined Tools" Limitation ..........................................................9

        2. It Would Have Been Obvious to One with Ordinary Skill in the Art to Modify Home Accountant in View of the Tyler Article to Satisfy the "Inserting" Limitation ................................................................10

    B. Claim 21 is Obvious in View of the Prior Art ..............................................................11

V. CONCLUSION........................................................................................................................12

- i -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Turbine Tech., Inc. v. Atlas Copco AB,*
    410 F.3d 701 (Fed. Cir. 2005) .......................................................................................... 7

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
    725 F.2d 1350 (Fed. Cir. 1984) ........................................................................................ 8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .......................................................................................................... 7

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989) .................................................................................................... 8, 11

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,*
    911 F.2d 670 (Fed. Cir. 1990) .......................................................................................... 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .......................................................................................................... 7

*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.,*
    340 U.S. 147 (1950) .......................................................................................................... 8

*KSR Int'l Co. v. Teleflex Inc.,*
    127 S. Ct. 1727 (2007) ........................................................................... 3, 7, 8, 10, 11, 12

*Sakraida v. AG Pro, Inc.,*
    425 U.S. 273 (1976) .......................................................................................................... 8

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,*
    225 F.3d 1349 (Fed. Cir. 2000) ........................................................................................ 7

**STATUTES**

35 U.S.C. § 103 ............................................................................................................................ 7

## I. INTRODUCTION

Asserted claims 19 and 21 of U.S. Patent No. 4,763,356 to Day et al. ("Day patent") are directed to a method of filling out computerized forms on a personal computer using various on-screen tools, such as drop-down menus and on-screen keypads. Each element of these claims was well-known in the prior art. This motion addresses why claims 19 and 21 of the Day patent are obvious as a matter of law in view of a prior art software program called The Home Accountant and Financial Planner ("Home Accountant") and an article in Datamation magazine which describes an automated form entry system designed for stock traders ("Tyler Article").[1]

Microsoft previously filed a summary judgment motion of invalidity with respect to the Day patent, arguing that the Day patent was anticipated by the Home Accountant software. The Court found that the Home Accountant software disclosed all the limitations of claim 19, except perhaps two. First, the Court found that there existed an issue of fact as to whether the Key Caps tool of Home Accountant running on an Apple Macintosh computer met the "predefined tool associated with" limitation of claim 19. Ex. 2 at 42-43 (Order Denying Plaintiff's and Defendants' Cross-Motions Regarding the Invalidity of U.S. Patent No. 4,763,356, dated May 15, 2007 ("SJ Order") at 4-5).[2] Second, the Court found that there existed an issue of fact as to whether the Key Caps tool of Home Accountant running on an Apple Macintosh computer met the "inserting in said one field information that is derived as a result of said user operating said displayed tool" limitation of claim 19. *Id.* at 43-44 (SJ Order). No other issue of fact was found as to claim 21, which depends from claim 19.

As to the first issue, even if one were to accept, *arguendo*, that the Key Caps tool is not a "predefined tool" because it is provided by the operating system instead of the Home Accountant

---

[1] Gateway also joins in this motion. In separate, concurrently filed summary judgment motions, Microsoft and Gateway argue that the Day patent is invalid in view of additional prior art references. Dell joins in both of those motions.

[2] Unless otherwise noted, "Ex. ___" refers to the corresponding exhibit attached to the Declaration of James S. Blackburn in Support of Dell's Motions for Summary Judgment of Invalidity on the Asserted Claims of U.S. Patent Nos. 4,958,226, 4,383,272, 4,763,356, and 4,439,759 filed concurrently herewith.

- 1 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

application program,[3] claim 19 is still invalid as obvious as a matter of law. Incorporating a composition tool (similar to the Key Caps tool) into the application program instead of having it be provided by the operating system was indisputably known in the prior art. An article published in January of 1984 in Datamation magazine describes an automated form entry system designed for stock traders. *See* Ex. 3 at 47-54 (*Touch Screens: Big Deal or No Deal?*, by Michael Tyler, dated January 23, 1984, ("Tyler Article")). The Tyler Article expressly describes an on-screen composition tool that is part of the application program running on the computer instead of provided by the operating system. *Id.* at 52.

Regarding the second issue, the Court previously found that an issue of fact existed as to whether the cutting and pasting of information into a field by Home Accountant satisfies the "inserting" claim language. Even assuming, *arguendo*, that it does not, claim 19 is still invalid as obvious as a matter of law. Having information from a composition tool entered into a field without cutting and pasting the information was also indisputably known in the prior art. Again, the Tyler article discloses that information composed in a composition tool could be entered into a field automatically, i.e., without having to cut and paste the information into the field. *See id.* at 52.

It was not unobvious to have the Key Caps tool be a part of the Home Accountant application program instead of the operating system, and to have the information from the Key Caps tool entered into the field without needing to cut and paste the information. There was ample reason to incorporate these features disclosed in the Tyler Article into Home Accountant. The Tyler Article itself explains that at that time, 1984, computers were beginning to be used for more than just clerical work and were moving into more managerial and executive functions, requiring new way to interact with them. Ex. 3 at 50 (Tyler Article). It also explains how the automatic-tool-providing-interface described in the article gave securities traders at Chemical Bank an efficient way to quickly enter trade information. *Id.* at 52. As the Supreme Court has stated:

> If a person of ordinary skill can implement a predictable variation,
> § 103 likely bars its patentability. For the same reason, if a technique
> has been used to improve one device, and a person of ordinary skill in

---

[3] Dell reserves its right to argue at trial that claims 19 and 21 of the Day patent are invalid as anticipated by the Home Accountant prior art software program.

- 2 -

> the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007). Accordingly, as a matter of law, claims 19 and 21 of the Day patent are invalid for obviousness, and Dell respectfully requests entry of summary judgment to that effect.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Day Patent

The Day patent is entitled "Form Entry System," and describes and claims a system for filling out data fields (e.g., name, address, etc.) of computerized forms on a personal computer using various on-screen tools. Such tools include an on-screen keyboard and a menu of alternatives. Each field is associated with a particular tool. Ex. 1 at 30 (Day pat. at 1:28-32). In the method described by the patent, a field into which data is to be entered is highlighted, or "indicated" in some manner and the tool associated with that field concurrently displayed on the screen. *Id.* (Day pat. at 1:31-35). The inventors assert that this system reduces the time required to fill out a form, particularly for users who lack proficiency using a real computer keyboard. *Id.* (Day pat. at 1:18-1:21).

Claims 19 and 21 of the Day patent are method claims and the only claims that remain in this case:

> 19. A method for use in a computer having a display comprising the steps of displaying on said display a plurality of information fields, identifying for each field a kind of information to be inserted therein, indicating a particular one of said information fields into which information is to be inserted and for concurrently displaying a predefined tool associated with said one of said fields, said predefined tool being operable to supply information of the kind identified for said one field, said tool being selected from a group of predefined tools including a tool adapted to supply an individual entry from a menu of alternatives and at least a tool adapted to allow said user to compose said information, and inserting in said one field information that is derived as a result of said user operating said displayed tool.
>
> 21. The method set forth in claim 19 wherein the step of displaying said pattern includes the step of displaying one or more of said information fields as a bit-mapped-graphics field.

*Id.* at 38 (Day pat. at 17:26-18:15, 18:19-23).

- 3 -

The use of computerized forms was well known in the art at the time of the filing of the Day patent. As the "Background of the Invention" section of the patent states: "One such [prior art] technique displays the fields of a form on the cathode ray tube or other display of a computer. A user 'fills in' the displayed fields by entering the information called for by each field using the computer keyboard." *Id.* at 30 (Day pat. at 1:14-19). Thus, the purported invention of the Day patent is the addition of the predefined tools described above that are displayed on the computer screen concurrently with the form to assist the user in inputting information. *Id.* (Day pat. at 1:31-37).

### B. Home Accountant

The Home Accountant software application was initially released in January of 1985 and was designed to run on the original Apple Macintosh computer. Ex. 4 at 58-59 (Deposition of Michael E. Farmer, dated February 23, 2006 ("Farmer Depo. Tr.") at 19:18-20:14). Like some of the software programs accused of infringing the Day patent, Home Accountant is an accounting program geared towards the management of personal finances. Home Accountant helps users administer such transactions as check writing, deposits, and credit card charges. It also has tools for providing personal budgeting and loan and retirement planning. Ex. 5 at 70-72 (The Home Accountant and Financial Planner for the Macintosh, dated 1984 ("Home Accountant") at MSLT_1060811-813). Further, Home Accountant running on an Apple Macintosh system permits the user to utilize various on-screen tools in order to enter information into the fields depicted on the screen. The user can, for example, select a desired "category" for a debit from a menu of options and that information is automatically inserted into the appropriate field in the program. S*ee* Ex. 4 at 62-65 (Farmer Depo. Tr. at 53:8-56:18). Similarly, Home Accountant running on the Macintosh provides the user with an on-screen keyboard that can be used to insert data into certain fields.

The similarities between the system described in the Day patent and the Home Accountant are striking. Below on the left, for example, is the computerized "form" depicted in Figure 2 of the Day patent. On the right is shown one form of Home Accountant. *See also* Ex. 49 (Video Deposition of Farmer).

- 4 -

**Day Patent: Order Form**          **Home Accountant:  Personal Checkbook Form**



The tools used by the two systems are also strikingly similar.  Here on the left, for example, is the "menu of alternatives" tool disclosed in the Day patent.  On the right is the menu of alternatives tool provided by Home Accountant:

**Day Patent: Menu Tool**          **Home Accountant:  Menu Tool**

   

Similarly, the Day patent discloses a "composition tool," also known as an on-screen keyboard.  Home Accountant running on the Macintosh does as well, as shown below:

- 5 -

| **Day Patent: On-Screen Keyboard** | **Home Accountant: Mac On-Screen Keyboard** |
|---|---|
|  |  |

### C. The Tyler Article

The Tyler Article was published in Datamation magazine in January of 1984. Ex. 3 (Tyler Article). Nearly three years before the filing date of the Day patent, it described a touch-screen system referred to as the Foreign Exchange Front End ("FXFE") that provided on-screen tools for entering information into fields of computerized forms. The FXFE system was intended by a number of Wall Street firms to make it easier and more accurate for their currency traders to fill out trading forms using on-screen tools:

> ***When the trader touches the screen*** in one of these areas [i.e., fields that list key information about the transaction], ***a list of potentially valid entries or a numeric keypad appears on the left half***, inviting the user to choose the information needed on the right. For instance, when the user hits the 'broker' cell on the right a list of brokers appears on the left; ***the trader then hits the name of the broker to be involved in the current trade, and that information is entered into the system.*** For exchange rates and other numerical data, the user hits the proper cell on the right and then types in the numeric data ***on the keypad that appears on the left.*** In this way, an entire transaction can be completed on the workstation. (A QWERTY layout can be called up on the left for entry of nonstandard or rare names -- an infrequently traded currency, for example.)

*Id.* at 52 (emphasis added). The FXFE system was in part comprised of a program developed by Interactive Image Corporation (referred to as "Easel") that had been modified to meet the form entry requirements of Chemical Bank and to provide the on-screen tools described above. *Id.* at 47-54 (Tyler Article); Ex. 6, at 76-77 (Deposition of Dale Edward Buscaino, dated November 7, 2007 ("Buscaino Depo. Tr.") at 174:18-175:22). Easel in turn ran on top of a Unix-based operating system. *Id.*

- 6 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

Thus, the Tyler Article discloses a composition tool that is incorporated into the application program instead of made available to the application program by the operating system. The Tyler Article also discloses that the information composed in the composition tool is automatically entered into the field without having to cut and paste the information. As such, the Tyler Article discloses the two features the Court previously found might not be disclosed in Home Accountant.

### III.     APPLICABLE LEGAL STANDARD

"Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). The Federal Rules mandate summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party shows a *prima facie* case for summary judgment, the burden of production shifts to the nonmoving party to present specific evidence of a genuine issue of fact for trial. *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 708 (Fed. Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

A claim is invalid as obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) (quoting 35 U.S.C. § 103(a) (1994)) (affirming jury verdict that patent was obvious in light of art that was before the examiner). A determination of obviousness requires an "expansive and flexible approach." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* Thus, the question is "whether the improvement is more than the predictable use of prior art elements according to their established functions," *id.* at 1740, because a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and

- 7 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1 diminishes the resources available to skillful men." *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152-53 (1950).

"Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 127 S. Ct. at 1745-46.

In *KSR*, the Supreme Court determined that the rigid application of the teaching-suggestion-motivation to combine test commonly applied by the Federal Circuit was inconsistent with the flexible approach to obviousness outlined in earlier Supreme Court cases such as *Graham v. John Deere. KSR*, 127 S. Ct. at 1739. Where the possible combinations and permutations are limited, obviousness may be established by "showing that the combination of elements was 'obvious to try.'" *Id*. at 1742. "[W]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)). "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *KSR*, 127 S. Ct. at 1741; *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) ("Both the novelty and the nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all.").

The Court further stated that "[r]igid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *KSR*, 127 S. Ct. at 1742-43. Moreover, the presumption of patent validity is diminished, and a defendant's burden of proof more easily carried, when the invalidating prior art was not before the examiner. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

**IV. THE ASSERTED CLAIMS OF THE DAY PATENT ARE OBVIOUS**

This Court has already ruled that Home Accountant satisfies every limitation of claim 19 of the Day patent save perhaps two – the "predefined tool associated with" limitation and the

- 8 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

"inserting" limitation. Ex. 2 at 42-44 (SJ Order ). Accepting for the sake of argument that Home Accountant does not explicitly disclose those limitations, it would have been obvious, as a matter of law, to modify the Home Accountant program in view of the teachings of the Tyler Article to meet each and every limitation of the asserted claims of the Day patent. As there are no disputes as to any underlying material facts, the question of obviousness is one of law and amenable to summary judgment by the Court.

### A.  Claim 19 is Obvious Based on the Prior Art

#### 1.  It Would Have Been Obvious to One With Ordinary Skill in the Art to Modify Home Accountant in View of the Tyler Article to Satisfy the "Predefined Tools" Limitation

The Tyler Article demonstrates that not only was the incorporation of a composition tool into a form entry application program (as opposed to the tool being available through the operating system) already known in the art, but it had already been developed and included into an operable system:

> ***When the trader touches the screen*** in one of these areas [*i.e.*, fields that list key information about the transaction], ***a list of potentially valid entries or a numeric keypad appears on the left half***, inviting the user to choose the information needed on the right. For instance, when the user hits the 'broker' cell on the right a list of brokers appears on the left; ***the trader then hits the name of the broker to be involved in the current trade, and that information is entered into the system.*** For exchange rates and other numerical data, the user hits the proper cell on the right and then types in the numeric data ***on the keypad that appears on the left.*** In this way, an entire transaction can be completed on the workstation. (A QWERTY layout can be called up on the left for entry of nonstandard or rare names -- an infrequently traded currency, for example.)

Ex. 3 at 52 (Tyler Article) (emphasis added). There are several predefined tools described in this passage – a list of potentially valid entries, a numeric keypad, and a QWERTY keypad. These are the same predefined tools disclosed in the Day patent, s*ee* Ex. 1 at 30 (Day pat. at 1:28-32), and undoubtedly meet the "predefined tools" limitation of the claims even under Lucent's gloss because they are tools that are specified by the Easel application program and not the underlying operating system.[4] Moreover, there can be no dispute that the numeric keypad and the QWERTY keypad are

---

[4] "I understand that the software developed by Interactive Images Corporation, the platform software is called Easel that runs on top of a variation of UNIX, and this -- this Easel software is
(Footnote Cont'd on Following Page)

- 9 -

each a "composition tool," because those are the same examples as in the Day patent specification of such a tool. *See id.* at 31-32 (Day pat. at 4:13-25, 5:5-15).

Home Accountant already disclosed that form entry tools (e.g., the menu of alternatives for entering information into the category or names fields) could be incorporated into the application program. The Tyler Article shows that incorporating a composition tool (e.g., a keypad) into a form entry application was already known. Under the proper obviousness analysis as explained in *KSR*, that is more than enough to confirm the obviousness of this combination:

> If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

*KSR*, 127 S. Ct. at 1740. But even if it were not, there are ample reasons to combine the teachings of the Tyler Article with those of Home Accountant. The Tyler Article explains that in the 1984 timeframe computers were beginning to be used for more than just clerical work and were moving into more managerial and executive functions, requiring new way to interact with them. Ex. 3 at 50-54 (Tyler Article). It also explains how the automatic-tool-providing-interface provided by FXFE gave securities traders at Chemical Bank an efficient way to quickly enter trade information. *Id.* at 52. A person of ordinary skill in the art would have recognized that Home Accountant could have benefited from the same advantages and efficiencies identified in the Tyler Article and, therefore, would have been motivated to combine the teachings of the two.

### 2. It Would Have Been Obvious to One with Ordinary Skill in the Art to Modify Home Accountant in View of the Tyler Article to Satisfy the "Inserting" Limitation

Similarly, even under the reading of the "inserting" limitation propounded by Lucent, claim 19 is invalid as obvious. The quote above demonstrates that the tools described in the Tyler Article

---

(Footnote Cont'd From Previous Page)

customizable to work in different environments and could be adapted in such a manner that Chemical Bank did to make their modifications in order to perform the capabilities that they were looking for in their product." Ex. 6 at 76-77 (Buscaino Depo. Tr. at 174:18-175:1).

- 10 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

automatically insert data in the fields without having to cut and paste, (e.g., "the trader then hits the name of the broker to be involved in the current trade, and that information is entered into the system"), and that includes the composition tool (e.g., "the user hits the proper cell on the right and then types in the numeric data on the keypad that appears on the left. In this way, an entire transaction can be completed on the workstation."). Ex. 3 at 52 (Tyler Article).

Home Accountant already disclosed that information composed in a composition tool could be entered into a field. And the Tyler Article shows that the information composed in a composition tool could be entered into a field without having to cut and past the information. Combining the two teachings is "the product not of innovation but of ordinary skill and common sense." *KSR*, 127 S. Ct. at 1742. "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *Id.* at 1741; *see also Bonito Boats*, 489 U.S. at 156 ("Both the novelty and the nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all.").

Under the proper obviousness analysis as explained in *KSR*, summary judgment is required. "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 127 S. Ct. at 1745-46. Even if this were not enough, for the reasons discussed in the preceding section, the Tyler Article itself provided ample motivation to one of ordinary skill to combine its teachings with Home Accountant. *See supra* Section IV.A.1.

**B.     Claim 21 is Obvious in View of the Prior Art**

Claim 21 depends from independent claim 19 and further recites "the step of displaying said pattern includes the step of displaying one or more of said information fields as a bit-mapped-graphics field." Ex. 1 at 38 (Day pat. at 18:19-23). The Court has construed "bit-mapped graphics field" to mean "a field into which a user is to enter information by writing on a touch sensitive screen using a stylus." Ex. 7 at 87 (Claim Construction Order Clarifying and Superceding the Order of March 1,

- 11 -

2004, Construing Claims for U.S. Patent No. 4,763,356, dated April 17, 2007 at 9). The Tyler Article, for example, states that a "key factor in choosing Easel was the touch sensitive screen." *See* Ex. 3 at 50. The Tyler Article further states that the disclosed system uses a resistance membrane touch screen that "offers significantly higher resolutions, to the point where they can replace digitizing tablets," and that "can accept [input from] a finger, a pen, or any other device." *Id.* at 52.

There was ample reason for one of ordinary skill to include the touch screen disclosed by the Tyler Article into a computer system running Home Accountant. The Tyler Article explains that more and more users "are turning to touch sensitive [screens] as 'ergonomic' user interfaces." *Id.* at 50. It would therefore have been obvious to incorporate the ergonomic user interface provided by the touch screen system as described in the Tyler Article into the Home Accountant system. Additionally, both Home Accountant and the Tyler Article are directed to entry of financial information into fields, and as the Tyler Article recognizes, "[m]anufacturers are realizing that computer devices are moving out of the clerical areas and into the managerial and executive areas, where keyboarding is not recognized as a high-status activity. The result is that manufacturers and user are turning to alternative methods of interacting with the computer." *Id.* at 50. A person of ordinary skill in the art would therefore recognize that the touch panel disclosed in the Tyler Article could be used to similarly improve a computer system running Home Accountant. *See KSR*, 127 S. Ct. at 1740. Accordingly, claim 21 of the Day patent is obvious in view of the combination of Home Accountant and the Tyler Article.

## V.   CONCLUSION

For the reasons stated above, Dell respectfully requests entry of summary judgment that the asserted claims of the Day patent are invalid.

November 30, 2007
ARNOLD & PORTER LLP
James S. Blackburn
Joseph A. Micallef

McDERMOTT WILL & EMERY LLP
Joel M. Freed

By: /s/James S. Blackburn
James S. Blackburn
james.blackburn@aporter.com
Attorney for Dell Inc.

- 12 -