| | |
|---|---|
| 1 | James S. Blackburn (State Bar No. 169134) |
| | ARNOLD & PORTER LLP |
| 2 | 777 South Figueroa Street, 44th Floor |
| | Los Angeles, California 90017-5844 |
| 3 | Telephone: (213) 243-4000 |
| | Facsimile: (213) 243-4199 |
| 4 | |
| | Joseph A. Micallef (admitted *pro hac vice*) |
| 5 | ARNOLD & PORTER LLP |
| | 555 Twelfth Street, N.W. |
| 6 | Washington, D.C. 20004-1206 |
| | Telephone: (202) 942-5000 |
| 7 | Facsimile: (202) 942-5999 |
| 8 | Joel M. Freed (admitted *pro hac vice*) |
| | McDERMOTT WILL & EMERY LLP |
| 9 | 600 Thirteenth Street, N.W. |
| | Washington, D.C. 20005-3096 |
| 10 | Telephone: (202) 756-8000 |
| | Facsimile: (202) 756-8087 |
| 11 | |
| | Attorneys for Dell Inc. |
| 12 | |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | ) ) ) | Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases: |
| Plaintiffs and Counterclaim-defendants, | ) ) ) | Case No. 02-CV-2060-B (CAB) Case No. 03-CV-0699-B (CAB) Case No. 03-CV-1108-B (CAB) |
| v. | ) ) | |
| GATEWAY, INC. AND GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., | ) ) ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT OF INVALIDITY ON THE ASSERTED CLAIM OF U.S. PATENT NO. 4,383,272 TO NETRAVALI, ET AL.** |
| Defendants and Counter-claimants, | ) ) | |
| and | ) ) | Judge Marilyn L. Huff |
| MICROSOFT CORPORATION, | ) ) | Hearing: January 7, 2008, 10:30 a.m. Location: Courtroom 13, 5th Floor |
| Intervener and Counter-claimant, | ) ) ) ) ) | |

| | |
|---|---|
| 1 | MICROSOFT CORPORATION, |
| 2 | Plaintiff and Counter-defendant, |
| 3 | v. |
| 4 | LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, |
| 5 | |
| 6 | Defendants and Counter-claimants, |
| 7 | LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, |
| 8 | |
| 9 | Plaintiffs and Counterclaim-defendants, |
| 10 | v. |
| 11 | DELL INC., |
| 12 | Defendant and Counter-claimant. |

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

    A. The Invalidating Art..................................................................................................1

    B. The Positions............................................................................................................2

II. STATEMENT OF UNDISPUTED FACTS ...........................................................................4

    A. The Netravali Patent.................................................................................................4

    B. Gabor & Hill ............................................................................................................6

    C. Picture Coding.........................................................................................................7

    D. The Jain Dissertation...............................................................................................8

III. APPLICABLE LEGAL STANDARD....................................................................................9

IV. ARGUMENT ........................................................................................................................10

    A. MPT's Argument that the Claim Is Limited to a Digital Implementation Does Not Save It from Invalidity ..................................................................................11

        1. The Claim Is Not Limited to Digital Implementations ................................11

        2. Even If the Claim Were Limited to Digital Implementations, It Would Not Be a Nonobvious Advance over Gabor & Hill ..........................11

    B. MPT's Argument that Gabor & Hill Does Not Teach How To Determine Where an Object Is Expected To Be Does Not Save It from Invalidity ....................13

        1. Gabor & Hill Teach How To Determine Where An Object Is Expected To Be ..................................................................................................13

        2. Even if Gabor & Hill Did Not Teach How To Determine Where an Object Is Expected To Be, Claim 13 Is Obvious ..........................................13

V. CONCLUSION.....................................................................................................................16

- i -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
    410 F.3d 701 (Fed. Cir. 2005) ................................................................................................ 9

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
    725 F.2d 1350 (Fed. Cir. 1984) ............................................................................................ 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 9

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ........................................................................................................ 10, 12

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    911 F.2d 670 (Fed. Cir. 1990) ................................................................................................ 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................ 9

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ............................................................................................................. 6, 10

*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*,
    340 U.S. 147 (1950) ................................................................................................................ 9

*In re Comiskey*,
    499 F.3d 1365 (Fed. Cir. 2007) .............................................................................................. 3

*KSR Int'l Co. v. Teleflex Inc.*,
    127 S. Ct. 1727 (2007) ........................................................................... 3, 4, 9, 10, 12, 15

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
    485 F.3d 1157 (Fed. Cir. 2007) ........................................................................................ 3, 12

*Nat'l Steel Car, Ltd v. Canadian Pac. Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004) ........................................................................................ 4, 15

*Sakraida v. AG Pro, Inc.*,
    425 U.S. 273 (1976) .............................................................................................................. 10

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
    225 F.3d 1349 (Fed. Cir. 2000) .............................................................................................. 9

**STATUTES**

35 U.S.C. § 103 ............................................................................................................................. 9

35 U.S.C. § 102(g) ........................................................................................................................ 4

- ii -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

## I. INTRODUCTION

### A. The Invalidating Art

U.S. Patent No. 4,383,272 to Netravali, et al. (the "Netravali patent") is directed to a video compression technique today called "motion compensated interpolation." Even before the filing of the Netravali patent, it was known that video information represented by a sequence of pictures could be compressed by dropping pictures at the transmitter and reconstructing them at the receiver. The reconstruction of dropped pictures could occur in many ways, but the one pertinent here is called "interpolation." Interpolation refers in this context to an averaging operation. The method of the Netravali patent entails interpolating between pictures that *precede* and *succeed* the dropped picture in the sequence of pictures. The method also entails motion compensation – selecting interpolation locations in those preceding and succeeding pictures based on the displacement (i.e., motion) of objects in the pictures.

There were, however, several prior art references, never provided to the Examiner, that disclosed the re-creation of dropped pictures by interpolation between preceding and succeeding pictures, and did so with motion compensation. For example, a paper by Nobel prize-winning physicist Denis Gabor and Professor Peter Hill of the University of London, entitled "Television Band Compression by Contour Interpolation" (the "Gabor & Hill paper"), Ex. 40,[1] describes a system that estimates the intensity information at different locations of a television picture by interpolating intensity information from locations in preceding and succeeding versions of the picture. *Id.* at 1447-48. The Gabor & Hill paper discloses that the interpolation locations are selected as a function of the movement of edges of objects in the picture. *Id.*

Another such prior art publication is entitled "Picture Coding: A Review" ("Picture Coding"), and was co-authored by Dr. Netravali himself. Picture Coding, which was not given to the Examiner, "present[s] a review of techniques used for digital encoding of picture material." Ex. 41 at 1459 (Picture Coding). One of the encoding techniques it describes is the very portion of the Gabor & Hill

---

[1] Unless otherwise noted, "Ex. ___" refers to the corresponding exhibit attached to the Declaration of James S. Blackburn in Support of Dell's Motions for Summary Judgment of Invalidity on the Asserted Claims of U.S. Patent Nos. 4,958,226, 4,383,272, 4,763,356, and 4,439,759, filed concurrently herewith.

- 1 -

1  paper referred to above. It describes the Gabor & Hill system as one that "drops alternate fields and
2  attempts to construct them by making movement of edges temporarily continuous, i.e., placing the
3  edges in the dropped field at places dictated by their uniform motion between the adjacent transmitted
4  field [sic]." *Id.* at 1490. Picture Coding also cites to and describes a number of other prior art
5  "motion estimation" techniques, which estimate the movement, or translation, of an object in order to
6  determine where that object is expected to be in a future picture (frame). *Id.* at 1471-96.

### B.  The Positions

Claim 13 is the only asserted claim of the Netravali patent. Dell previously filed a summary judgment motion of invalidity with respect to claim 13, arguing that it was anticipated by the Gabor & Hill paper. The Court found that disputed issues of fact existed to preclude summary judgment of invalidity for anticipation. Ex. 42 at 1505 (Order Denying-In-Part Dell's Motion for Summary Judgment on U.S. Patent No. 4,383,272 [Docket No. 1948]). Specifically, the Court found that there existed an issue of fact as to whether the Gabor & Hill paper disclosed "determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations" as required by claim 13. *Id.* at 1504-05.

While Dell disagrees with plaintiffs' positions regarding Gabor & Hill, even if one were to accept, *arguendo*, that plaintiffs' view of Gabor & Hill is correct, claim 13 is still invalid as obvious. First, according to plaintiffs the paper is pertinent only to an analog system, and, again according to plaintiffs, the claim's use of the term "pel" requires a digital system.[2] Second, plaintiffs maintain that the paper does not sufficiently teach how to determine where an object is "expected to be" in a future frame, as required by the claim.

The claim, however, says nothing about analog or digital. Indeed, the Netravali patent nowhere uses the word "digital." Moreover, plaintiffs' expert, Dr. Bernd Girod, has now conceded that the term "pel" was used by those of ordinary skill in the art at the relevant time to embrace an analog system:

---

[2] The Court has construed the claim term "pel" as "picture elements, also referred to as pixels." Ex. 43 at 1512 (Superceding Order Construing Claims for United States Patent Number 4,383,272 ("Netravali *Markman* Order")).

- 2 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1  Q.  Prior to 1980, did you ever see the term PEL used in the analog domain for video coding?

2  A.  I'm aware of the use of PEL in the context of analog video signals.

Ex. 20 at 1065 (Deposition of Bernd Girod, dated November 20, 2007 ("Girod Depo. Tr.") at 94:7-10).  Thus, the term "pel" does not itself invoke a digital requirement.

But even if the claim required a digital implementation, it would make no difference here.  Dr. Netravali himself has described the Gabor & Hill paper in his review of "digital encoding" techniques.  Furthermore, his paper makes clear that by 1980 the video encoding world had every motivation to operate in the digital domain:

> Complex manipulations of the signal are today much more easily done by first sampling and digitizing the signal and then processing the signal in the digital domain rather than using analog techniques. . . .  Almost all coding methods have been oriented toward digital transmission for a number of reasons: it offers greater flexibility, it may be regenerated, it is easily multiplexed and encrypted, and its ubiquity is increasing.

Ex. 41 at 1459-60 (Picture Coding).  The law is now clear that mere upgrading will not carry patentability, and the addition of modern electronics to an otherwise unpatentable device will not save a claim from a finding of obviousness.  *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1743-44 (2007) (the addition of an electronic sensor to a well-known mechanical pedal would have been obvious); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007); *In re Comiskey*, 499 F.3d 1365, 1380 (Fed. Cir. 2007).

As to plaintiffs' second argument – that Gabor & Hill does not sufficiently teach how to determine where an object is "expected to be" – Dell disagrees with that position for several reasons, but the claim is invalid in any event.  It is undisputed that the prior art included various "motion estimation" techniques for determining where an object is "expected to be" in a future frame.  The Netravali patent was not even close to the first to describe them.  Indeed, plaintiffs' expert admitted that such techniques were known in the prior art:

Q.  Are you aware of any motion estimation techniques that were known prior to the Netravali 272 patent?

A.  Yes.

Ex. 20 at 1080-81 (Girod Depo. Tr. at 151:23-152:1).  Moreover, Picture Coding's review of digital encoding techniques cites to and describes several of the prior art motion estimation techniques.

- 3 -

Ex. 41 at 1471-96. It is therefore undisputed that the ability to determine where an object is "expected to be" by motion estimation is found in the prior art.

It is also clear that one of ordinary skill in the art had both reason and ability to combine these prior art techniques in exactly the manner claimed: *someone else had already done so.* More specifically, this Court has already ruled as a matter of law that one other reference, "Interframe Adaptive Data Compression Techniques for Images" (the "Jain Dissertation"), discloses each and every element of asserted claim 13, a fact that neither MPT nor its expert do or can dispute. Ex. 44 at 1517 (Order Denying Gateway's Motions for Summary Judgment That U.S. Patent No. 4,383,272 is Invalid Under 35 U.S.C. § 102(g) and Granting Summary Adjudication on Certain Predicate Issues Pertaining to This Defense [Docket No. 1948] ("Summary Judgment Order")). It is true that the Court has also ruled that issues of fact remain as to whether Jain qualifies as prior art under Sections 102(g). *Id.* at 1516. However, Jain need not qualify as prior art to evidence a reason to combine. *See Nat'l Steel Car, Ltd v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1337-38 (Fed. Cir. 2004) (holding that the prior art status of a drawing depicting the combination was irrelevant to whether the drawing evidenced a motivation to combine). The Jain Dissertation thus refutes beyond dispute any possible argument by plaintiffs that one of ordinary skill in the art would be without reason to combine the known constituents of claim 13.

Accordingly, there is no genuine dispute that the Jain Dissertation demonstrates the ability and desirability of the prior art to combine all the parts of claim 13 exactly as claimed, so the obviousness of claim 13 is demonstrated as a matter of law. "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR,* 127 S. Ct. at 1745-46. Dell therefore respectfully requests entry of summary judgment that claim 13 is invalid as obvious.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Netravali Patent

Substantial bandwidth is required to transmit video. One method of reducing the required bandwidth is to transmit only every other picture (frame) in the video sequence and reconstruct the

- 4 -

dropped picture at a decoder using information from the received pictures. The Netravali patent discloses such a system, in which non-transmitted pictures are reconstructed at a decoder by interpolating intensity information in preceding and succeeding pictures. *See* Ex. 45 at 1524 (Netravali pat. at 1:55-63). The specific locations in the preceding and succeeding pictures that are used for the interpolation are selected based on displacement of objects in the picture. *Id*.

Only one claim of the Netravali patent is asserted here, claim 13. It reads as follows:

> 13. A method of estimating the intensities of elements (pels) in a picture in accordance with information defining intensities of pels in preceding and succeeding versions of the picture including the step of determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions,
>
> characterized in that
>
> said determining step includes selecting said related locations as a function of the displacement of objects in said picture.

*Id.* at 1529 (Netravali pat. at 11:17-27).

During prosecution the claim directed to motion compensated interpolation was initially rejected by the Examiner as obvious in view of three earlier Netravali patents that disclosed systems that employed motion compensated prediction along with interpolation within a picture. In response, the applicants successfully argued that claim 13 was patentable because it required interpolation *between preceding and succeeding pictures*, while the earlier patents used information only from preceding pictures:

> In summary, it is submitted that the cited Netravali et al references pertain to recursive estimation of displacement in a series of pictures and its use in predictive encoding of the present picture version. Such predictive encoding uses information only from <u>preceding</u> picture versions. No suggestion is made of recovering a non-transmitted picture from both previous and <u>succeeding</u> versions, as is necessarily performed during interpolation in accordance with the present invention.

Ex. 46 at 1532 (October 22, 1982 Response) (emphasis in original). Thus, in the Patent Office, the patentable distinction successfully argued to the Examiner was "recovering a non-transmitted picture from both previous and succeeding versions" of the picture. The obviousness inquiry must take into account the subject matter as a whole, but based on this kind of record, the Supreme Court

- 5 -

1  has held that "the subject matter as a whole reduces, then, to the distinguishing features clearly
2  incorporated into the claims." *Graham v. John Deere Co.*, 383 U.S. 1, 34 (1966).

### B.     Gabor & Hill

The allegedly distinguishing feature of reconstructing dropped pictures by interpolation between preceding and succeeding versions of the picture was not in fact new. In 1961, the Gabor & Hill paper disclosed a system in which non-transmitted frames are reconstructed at a decoder by interpolation of intensities in preceding and succeeding frames. Ex. 40 at 1447-48. Moreover, the specific locations in the preceding and succeeding pictures that are used for interpolation are selected as a function of movement of edges of objects in the picture. *Id.*

The Gabor & Hill paper explains that the receiver scans a line in the preceding frame and the same line in the succeeding frames, searching for differences in intensity suggesting that an object has moved. *Id.* Where no great difference in intensity is detected between the two frames, simple linear interpolation is used to recreate the corresponding line in the missing, in-between (i.e., dropped) frame. *Id.*

When the scan of one of the frames detects an edge of an object by a large difference in detected intensity, however, the scan of the other frame speeds up until it also detects the edge of the object. *Id.* Gabor & Hill states that this indicates movement of an object in the picture and that the movement can be approximated by linear displacement. *Id.* ("The upper and lower intensity profiles, $I_1(x)$ and $I_2(x)$, ***represent the positions of the outline of a moving object***, and the assumption is that the motion can be well enough approximated by linear displacement, i.e. constant speed of motion.") (emphasis added). The edge of the object on the corresponding line in the dropped frame is then recreated by interpolation. *Id.* And the interpolation uses intensities at the locations in the preceding and succeeding frames, respectively, where the edge of the moving object was detected. *Id.* This is not the precise motion compensated interpolation technique disclosed in the Netravali patent, but it is nonetheless motion compensated interpolation based on where objects are expected to be, which satisfies the claim construction of "related locations."

- 6 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

### C. Picture Coding

Picture Coding, Mr. Netravali's own prior art publication, cites to and describes the Gabor & Hill paper. Picture Coding is a survey document that describes various digital coding techniques known at the time. It states in its Abstract that the paper "presents a review of techniques used for *digital encoding of picture material.*" Ex. 41 at 1459 (emphasis added).

In the Introduction the paper states that

> Complex manipulations of the signal are today much more easily done by first sampling and digitizing the signal and then processing the signal in the digital domain rather than using analog techniques. . . . Almost all coding methods have been oriented toward digital transmission for a number of reasons: it offers greater flexibility, it may be regenerated, it is easily multiplexed and encrypted, and its ubiquity is increasing.

*Id.* at 1459-60. The paper then discusses many different video coding techniques, including interpolation and motion estimation. *Id.* at 1471-96.

Picture Coding's reference to the Gabor & Hill picture is in a section entitled "Interpolative Coding." In that section the paper describes various known interpolation techniques, including the ability to sample and interpolate in the "horizontal, vertical, temporal or other directions." Picture Coding describes and cites to the Gabor & Hill paper as follows:

> Another method of interpolation is due to Gabor & Hill [192], which, for example, drops alternate fields and attempts to construct them by making movement of edges temporarily continuous, i.e., placing the edges in the dropped field at places dictated by their uniform motion between the adjacent transmitted field.

*Id.* at 1490.

Picture Coding also discloses several prior art techniques for determining the translation of an object from one frame to another:

> However, more successful adaptive predictors for frame-to-frame coding are the ones that take into account motion of objects. . . . Its success obviously depends upon the amount of translational motion of objects in real television scenes and the ability of an algorithm to estimate translation with the accuracy that is desirable for good prediction. ***One set of techniques developed by Limb and Murphy [100], and Rocca [101] obtain an estimate of translation in a block of pels, whereas techniques developed by Netravali et al. [102], [103], [104], recursively adjust the translational estimate at every pel or at every small block of pels.***

- 7 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

*Id.* at 1475-76 (emphasis added). As noted below, MPT's expert Dr. Girod has testified that the determination of where an object in one frame is expected to be in a future frame can be accomplished by estimating the translation of the object from frame to frame, so-called "motion estimation." Indeed, Dr. Girod identified several of the same references cited in the Picture Coding quote above as prior art examples of this technique.[3] Ex. 20 at 1080-81 (Girod Depo. Tr. at 151:23-152:11).

It is therefore clear that Netravali, in his own prior art publication and outside of the context of litigation motivation, has confirmed that Gabor & Hill teaches reconstructing dropped pictures by motion compensated interpolation between preceding and succeeding versions of the picture. It is likewise clear that Netravali's own prior art publication recognizes the Gabor & Hill teaching as pertinent to ***digital encoding of picture material.***

### D.     The Jain Dissertation

Dr. Jaswant Jain was a graduate student at the State University of New York at Buffalo ("SUNY") who in the late 1970's conducted research in the field of video coding. Dr. Jain prepared a Ph.D. dissertation that detailed his research and experiments relating to the interpolation of video pictures. Ex. 47 at 1537 ("Interframe Adaptive Data Compression Techniques for Images," by Dr. Jaswant Jain ("Jain Dissertation")). The dissertation was submitted to SUNY no later than "September, 1979." *Id*. Shortly thereafter, a copy of his dissertation was sent to University Microfilms International ("UMI") in Ann Arbor, Michigan where it was copied onto microfilm. As of March 14, 1980, the public could order copies of Dr. Jain's dissertation from UMI. Ex. 48 at 1735, 1738-39 (Lewis Depo. Tr. at 74:1-15; 87:14-88:21).

The plaintiffs disputed whether the evidence of record demonstrates that the Jain Dissertation qualifies as prior art under Section 102, and this Court has ruled that this issue is for a jury. Ex. 44 at 1516 (Summary Judgment Order). The Court, however, has entered partial summary judgment that the Jain Dissertation teaches every limitation of the claim. More specifically, the Court held that it

---

[3] The bracketed numbers in the quote above are citations to papers in the bibliography of Picture Coding. The citation [101] is to a 1976 paper by C. Cafforio and F. Rocca, entitled "Methods for Measuring Small Displacements of Television Images." *Id.* at 41. The citations to [102] and [103] are to two separate 1979 papers co-authored by Netravali that involve motion compensation. *Id.*

- 8 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

1  was established that "[a] computer executing the algorithm in Dr. Jain's dissertation as equation 2-17
2  to process video would perform all the method steps of claim 13." *Id.*

## III.   APPLICABLE LEGAL STANDARD

"Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). The Federal Rules mandate summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party shows a *prima facie* case for summary judgment, the burden of production shifts to the nonmoving party to present specific evidence of a genuine issue of fact for trial. *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 708 (Fed. Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

A claim is invalid as obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) (quoting 35 U.S.C. § 103(a) (1994)) (affirming jury verdict that patent was obvious in light of art that was before the examiner). A determination of obviousness requires an "expansive and flexible approach." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* Thus, the question is "whether the improvement is more than the predictable use of prior art elements according to their established functions," *id.* at 1740, because a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152-153 (1950).

- 9 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

"Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR,* 127 S. Ct. at 1745-46.

In *KSR,* the Supreme Court determined that the rigid application of the teaching-suggestion-motivation to combine test commonly applied by the Federal Circuit was inconsistent with the flexible approach to obviousness outlined in earlier Supreme Court cases such as *Graham v. John Deere. KSR,* 127 S. Ct. at 1739. Where the possible combinations and permutations are limited, obviousness may be established by "showing that the combination of elements was 'obvious to try.'" *Id.* at 1742. "[W]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)). "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *KSR*, 127 S. Ct. at 1741; *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) ("Both the novelty and the nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all.").

The Court further stated that "[r]igid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *KSR*, 127 S. Ct. at 1742-43. Moreover, the presumption of patent validity is diminished, and a defendant's burden of proof more easily carried, when the invalidating prior art was not before the examiner. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

**IV.    ARGUMENT**

In his attached declaration, Dell's technical expert, Dr. Edward Delp, shows how the Gabor & Hill paper renders claim 13 of the Netravali patent invalid as obvious. Ex. 18 at 863-870 (Expert Report of Edward J. Delp III Regarding Obviousness, dated September 14, 2007 ("Delp Report") at ¶¶ 25-51). In response, MPT through its expert offers only two reasons why the claim is supposedly not obvious in view of the Gabor & Hill paper: (1) the claim is limited to a digital implementation,

- 10 -

and Gabor & Hill is solely analog, and (2) Gabor & Hill does not sufficiently teach how to determine where an object is "expected to be" in a future frame. *See* Ex. 19 at 1018-24 (Supplemental Rebuttal Expert Report of Professor Bernd Girod Regarding Validity of Lucent's 4,383,272 and 4,958,226 Patents ("Girod Supplemental Report")). Neither reason raises a genuine issue of material fact sufficient to avoid summary judgment that claim 13 is invalid as obvious in view of the Gabor & Hill paper.

### A. MPT's Argument that the Claim Is Limited to a Digital Implementation Does Not Save It from Invalidity

#### 1. The Claim Is Not Limited to Digital Implementations

First, MPT has argued that the word "pels" in claim 13 requires a digital video implementation and that the Gabor & Hill paper describes only an analog one. *See* Ex. 19 at 1019 ("[D]igital video has pixels (or pels), while analog video does not.") (Girod Supplemental Report). But neither the Netravali claim nor the Netravali patent specification ever mentions the word "digital."

Moreover, plaintiffs' expert has now acknowledged that the term "pel" was used in the art at the relevant time to embrace an analog system:

> Q. Prior to 1980, did you ever see the term PEL used in the analog domain for video coding?
> A. I'm aware of the use of PEL in the context of analog video signals.

Ex. 20 at 1065 (Girod Depo. Tr. at 94:7-10).[4] Thus, there can now be no genuine dispute that in this art the phrase "picture element" means just an area of a picture and does not require some type of digital implementation. Claim 13 is not limited to digital implementations.

#### 2. Even If the Claim Were Limited to Digital Implementations, It Would Not Be a Nonobvious Advance over Gabor & Hill

If the claim did require a digital implementation, and it does not, it would still not avoid summary judgment because such an implementation would not be a nonobvious advance over the

---

[4] The patent application underlying the Netravali patent was filed on April 13, 1981. Ex. 45 at 1519 (Netravali patent). Plaintiffs' expert, Dr. Girod, argues that one could not include the Gabor & Hill functionality in a modern digital video encoding system "in a meaningful way" or in a way that would make the modern system "work[] better." Ex. 20 at 1068 (Girod Depo. Tr. at 100:6-24). Even if that were accepted, that does not change the fact that the term "pel" was used in the art at the relevant time to embrace an analog system.

- 11 -

prior art. Mr. Netravali's inclusion of Gabor & Hill in his Picture Coding review of digital encoding techniques suggests, at the very least, that its teachings are pertinent to a digital implementation. Moreover, that paper demonstrates beyond any dispute the many powerful reasons that existed at least by 1980 for using a digital implementation:

> Complex manipulations of the signal are today much more easily done by first sampling and digitizing the signal and then processing the signal in the digital domain rather than using analog techniques. . . . Almost all coding methods have been oriented toward digital transmission for a number of reasons: it offers greater flexibility, it may be regenerated, it is easily multiplexed and encrypted, and its ubiquity is increasing.

Ex. 41 at 1059-60.

As the Supreme Court has recently instructed "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 127 S. Ct. at 1740. And there can be no dispute here that applying the teachings of the prior art in the digital domain in the manner recited in claim 13 was within the skill of a person of ordinary skill in the art. Jaswant Jain in fact did it, as is undisputed, and he qualifies as a person of ordinary skill in the art under the undisputed definition of that person.[5] *See also KSR*, 127 S. Ct. at 1743-44 (addition of an electronic sensor to a well-known mechanical pedal would have been obvious) (2007); *Bonito Boats*, 489 U.S. at 156 ("Both the novelty and the nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all."); *Leapfrog*, 485 F.3d at 1161 ("Accommodating a prior art mechanical device that accomplishes that goal to modern electronics would have been reasonably obvious to one of ordinary skill."); *In re Comiskey*, 499 F.3d at 1380 ("The routine addition of modern electronics to an otherwise unpatentable invention typically creates a prima facie case of obviousness.").

---

[5] *See* Ex. 18 at 861 (Delp Report at ¶ 11); Ex. 19 at 1017 (Girod Supplemental Report).

- 12 -

Thus, even if the claim were interpreted to be limited as plaintiffs have argued, it would still be invalid as obvious because applying the Gabor & Hill teachings to the digital domain would not represent a nonobvious step.

**B.  MPT's Argument that Gabor & Hill Does Not Teach How To Determine Where an Object Is Expected To Be Does Not Save It from Invalidity**

**1.  Gabor & Hill Teach How To Determine Where An Object Is Expected To Be**

MPT has also argued that the Gabor & Hill paper does not satisfy the "related locations" limitation of claim 13, which was interpreted by the Court to mean "locations at which the same object is expected to be." Ex. 43 at 1512 (Netravali *Markman* Order). In Dr. Girod's view, the Gabor & Hill paper does not teach how to determine where an object is expected to be because it only considers contours in the horizontal direction and, according to him, "[i]t is well known that the location where objects are expected to be cannot be represented by considering only the thresholded intensity gradient in the horizontal direction." Ex. 19 at 1020 (Girod Supplemental Report).

Nothing in the claim, however, requires consideration of displacement in both the horizontal *and* vertical directions. Claim 13 only requires "that said determining step includes **selecting said related locations as a function of the displacement of objects in said picture**." Displacement along a line – *i.e.*, in the horizontal direction – is still displacement. Indeed, some motion may have only horizontal displacement. Selecting related locations as a function of just horizontal displacement of objects therefore meets the claim as MPT drafted it, and the Gabor & Hill paper plainly describes that.

**2.  Even if Gabor & Hill Did Not Teach How To Determine Where an Object Is Expected To Be, Claim 13 Is Obvious**

Accepting plaintiffs' position for the sake of argument, the claim is still invalid. It was well known in the prior art how to determine where an object is expected to be in a future frame, and there was undisputed reason to employ that technique in a system such as Gabor & Hill's.

MPT's expert admitted that determining where an object in one frame is expected to be in a future frame can be accomplished by estimating the translation of the object from frame to frame:

> Q. Let me ask you this: Is it possible to determine where an object in one frame is expected to be in a future frame by estimating the translation of the object from frame to frame?

- 13 -

\* \* \*

1    THE WITNESS:  If I understand your question correctly, then ***the answer is
2    yes,*** it's possible to determine where an object in one frame is expected to be
     in a future frame by estimating translation of that object from frame to frame
3    in the right cord in that system and setting.  So we have this example of zoom
     of the camera previously, so obviously if that occurs in combination with the
4    motion of the object in a scene, one would have to consider the combination
     of these.

Ex. 20 at 1078-79 (Girod Depo. Tr. at 149:24-150:12) (emphasis added).  He then admitted that this technique "is generally referred to as motion estimation in the art," *id.* at 1079 (150:21-24), and that several such techniques were taught in the prior art by Cafforio and Rocca and by Netravali himself:

> Q.  Are you aware of any motion estimation techniques that were known prior to the Netravali 272 patent?
>
> A.  Yes.
>
> Q.  Can you name them for me?
>
> A.  Well, one technique that comes to mind was published by [Cafforio] and [Rocca] in the late '70s.
>
> Q.  Any others?
>
> A.  No other specific references come to mind.  But I'm sure there were others as well.
>
> Q.  Did Mr. Netravali ever publish motion estimation techniques prior to the Netravali 272 patent?
>
> A.  Yes, he did.

*Id.* at 1080-81 (151:23-152:11).

Not coincidentally, Picture Coding also states that there are algorithms known in the prior art to estimate the translation of objects between frames and cites to, among others, a 1976 paper by C. Cafforio and F. Rocca, entitled "Methods for Measuring Small Displacements of Television Images" and two different 1979 papers co-authored by Netravali and involving motion compensation. Ex. 41 at 1475-76.  Thus, it is undisputed that motion estimation techniques – that is, techniques to determine where an object is expected to be in a future frame – were known in the prior art to the Netravali patent.

Moreover, if, as plaintiffs contend, it is true that the techniques disclosed in the 1961 Gabor & Hill paper would not sufficiently determine where an object is expected to be because they consider only the horizontal direction, then it would have been an obvious modification, at least by 1980, to

- 14 -

employ the more modern motion estimation techniques that had been developed and used in several settings, as Picture Coding reports. For "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 127 S. Ct. at 1740. That recognition cannot be genuinely disputed here. Jaswant Jain's doctoral dissertation stands as undisputed evidence of that. "If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." *Id.*

Indeed, this case is strikingly similar to the fact of the *National Steel Car* case. In that pre-*KSR* case, the Court of Appeals for the Federal Circuit considered whether a reference demonstrated a motivation to combine that would render an asserted patent obvious. The parties disputed whether the reference constituted prior art to the patent. The court stated that "the prior-art status of [the reference] is not dispositive. . . . The motivation to combine can be located either in a prior art reference, *or* it can be implicit in the knowledge of one of ordinary skill in the art." *Nat'l Steel Car*, 357 F.3d at 1337 (emphasis in original). The court held that the prior art status of a reference depicting the combination was irrelevant to whether the reference evidenced a motivation to combine. "Whether or not the [reference] is a prior art reference, it is evidence that can be used to demonstrate a motivation to combine implicit in the knowledge of one of skill in the art. . . ." *Id.* at 1339.

So, even if the Gabor & Hill paper did not satisfy the "expected to be" requirement of claim 13, that would be only an obvious modification to Gabor & Hill, one which the Jain Dissertation demonstrates was motivated in the prior art and was within the ordinary skill of the prior art. Indeed, Jain concluded that his method of "[m]otion compensation and alternate frame skipping, with interpolation of skipped frames along motion trajectory, results in a further compression gain by a factor of two." *See* Ex. 47 at 1705 (Jain Dissertaion). Claim 13 is therefore invalid as obvious, and Dell respectfully asks that the Court so rule on summary judgment.

///

///

///

- 15 -


## V.  CONCLUSION

Accordingly, for the reasons stated above Defendant Dell Inc. respectfully requests entry of summary judgment that the asserted claim of the Netravali patent is invalid.

November 30, 2007

ARNOLD & PORTER LLP
James S. Blackburn
Joseph A. Micallef

McDERMOTT WILL & EMERY LLP
Joel M. Freed

By: /s/James S. Blackburn
James S. Blackburn
james.blackburn@aporter.com
Attorney for Dell Inc.

- 16 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)