UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., | CASE No. 02-CV-2060 B (WMc) |
| Plaintiff and Counter Defendant, | consolidated with |
| | CASE No. 03-CV-699 B (WMc) |
| vs. | CASE No. 03-CV-1108 B (WMc) |
| GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC. | **EXPERT REPORT OF DR. ROBERT G. WEDIG ON THE INVALIDITY OF U.S. PATENT NUMBER 4,439,759** |
| Defendants and Counter-Claimants | |
| and | |
| DELL, INC., | |
| Defendant and Counter-Claimant. | |
| And | |
| MICROSOFT CORPORATION | |
| Intervener and Counter-Claimant | |

-1-

Exhibit 21
Page 674

1         I, Dr. Robert G. Wedig, state as follows:

2  **I.    INTRODUCTION.**

3         1.      I am a citizen of the United States and reside at 1516 Cormorant Ct., Sunnyvale,

4  CA 94087. I am the owner of Wedig Consulting, in Sunnyvale, California. Wedig Consulting is

5  an independent consulting firm specializing in analysis of computer hardware and software design

6  issues. I received a Bachelors of Electrical Engineering degree from the University of Dayton in

7  1977. I received a Master of Science degree in electrical engineering from the University of

8  Southern California in 1979. I received a Ph.D. in electrical engineering from Stanford University

9  in 1982. From 1977 through 1979, I worked as a processor design engineer at Hughes Aircraft

10 Company in Fullerton, California. In this capacity, I designed computer systems that

11 communicated with digital image display systems. From 1979 through June 1982, I was a

12 Research Assistant, Instructor, and Teaching Assistant in the Computer Systems Laboratory at

13 Stanford University. During this time, I took classes and did research on computer systems which

14 connect to computer displays. From 1982 through December 1985, I was an Assistant Professor

15 of Electrical and Computer Engineering at Carnegie-Mellon University where I taught courses in

16 computer architecture and VLSI design. Since January 1986, I have worked as an independent

17 consultant, doing business as Wedig Consulting. My *curriculum vitae,* including a list of all my

18 publications and a listing of other cases in which I have testified as a neutral expert, in deposition

19 or at trial, is attached as Exhibit 1. I am being compensated at a rate of $350 per hour for my work

20 in this case. I write this report in support of my opinion that the asserted claims of United States

21 Patent No. 4,439,759 ("'759 patent) are invalid in light of prior art. I write this report of my own

22 personal knowledge, and if called as a witness, I could and would testify competently to the facts

23 thereto.

24        2.      In this report, I will first describe some aspects of digital image display systems that

25 will assist in understanding the patent in suit. Next, I will review computer technology pertinent to

26 the '759 patent. I will then provide a chart reiterating the court's claim construction which was

27 used for the proper interpretation of claims 1-4 of the '759 patent. I will then provide an

28 understanding of the qualifications of one of ordinary skill in the art as it relates to the '759 patent.

-2-

Exhibit 21
Page 675

1    Finally, I will discuss how the prior art invalidates the '759 patent both through anticipation and

2    obviousness.

3          3.    I would like to make clear that I will not offer opinions of the law as I am not an

4    attorney.  However, I am informed of several principles concerning patent validity and invalidity,

5    which I used in arriving at my conclusions.

6          4.    I understand that invalidity must be proven by clear and convincing evidence, and

7    that is the standard I have used throughout my report.  Further, I understand that each patent claim

8    is considered separately for purposes of invalidity.

9          5.    I am informed that a patent claim is invalid as "anticipated" if each and every

10    feature of the claim is found, expressly or inherently, in a single prior art reference or product.

11    Claim limitations that are not expressly found in a prior art reference are inherent if the prior art

12    necessarily functions in accordance with, or includes, the claim limitations.  It is acceptable to

13    examine evidence outside the prior art reference (extrinsic evidence) in determining whether a

14    feature, while not expressly discussed in the reference, is necessarily present in it.

15          6.    I understand that a patent claim is invalid as "obvious" if, in view of a prior art

16    reference or a combination of prior art references, it would have been obvious to a person of

17    ordinary skill in the art at the time of the invention, taking into account:

18              a.   the scope and content of the prior art;
          b.   the differences between the prior art and the claim under consideration;
19              c.   the level of ordinary skill in the art.

20          7.    I am informed that prior art references or products may be combined to show that a

21    claim as a whole would have been obvious to a person of ordinary skill in the art at the time of the

22    invention if there is a "motivation," "suggestion," or "teaching" in the prior art to combine the

23    references to produce the claimed invention.  I am informed that the suggestion or motivation may

24    be either explicit or implicit, may come from knowledge generally available to one of ordinary

25    skill in the art, and may come from the nature of the problem to be solved.  The test for an implicit

26    motivation, suggestion, or teaching is what the combined teachings, knowledge of one of ordinary

27    skill in the art, and the nature of the problem to be solved as a whole would have suggested to

28    those of ordinary skill in the art.  The problem examined is not the specific problem solved by the

-3-

Exhibit 21
Page 676

1    invention but the general problem that confronted the inventor before the invention was made.

2         8.    It is my understanding that, in order to rebut a showing of obviousness over the

3    prior art, Lucent may attempt to show "secondary considerations" of non-obviousness. I have not

4    included opinions on secondary considerations of non-obviousness in this report because I

5    understand that it is Lucent's burden to make a showing of secondary considerations. If Lucent or

6    Lucent's expert should assert the presence of secondary considerations of non-obviousness, I may

7    provide a report addressing Lucent's assertions.

8    **II.    TECHNICAL BACKGROUND PERTINENT TO THE '759 PATENT.**

9         9.    The display portion of a digital image display system is composed of a matrix of

10   individual picture display elements ("Pixels") arranged tightly next to each other on the display

11   screen so as to form a picture on the display. Each Pixel is a single dot on the screen and is able to

12   display a fixed number of colors depending on the particular image display system. For example,

13   a 640 x 480 image display screen is able to display a matrix of 640 by 480 Pixels. In such a

14   system, if a Pixel is represent by 8 digital bits where each bit holds a value of "1" or "0," a total of

15   $2^8$ or 256 unique colors can be displayed for each Pixel and therefore at most 256 predefined

16   colors may be shown.

17        10.    The individual numeric values of each Pixel indicate the color to display, and

18   therefore the picture to be drawn. These values are stored in a random access memory (RAM)

19   called the Video Memory. ("Video Memory"). The display system operates by continuously and

20   sequentially reading the Video Memory and putting its contents on the digital image display screen

21   one Pixel at a time. Computer software determines the particular image to display at any one time

22   by writing Pixel values in the Video Memory and changing the contents of the Video Memory to

23   change the image shown on the display screen. With 8 bits per Pixel, a total of 256 unique,

24   predefined colors can be displayed on the screen. These colors are predefined in that the colors are

25   chosen at the time the digital image display system is designed such that only predefined colors

26   chosen by the designer may be displayed by the image display system. This limitation can be

27   relaxed by employing a color map.

28        11.    As interpreted by the court, a color map is a table that "stores color data values

-4-

Exhibit 21
Page 677

1    currently indexed by numbers." ("Color Map")  Color data values are numeric values which

2    represent the "color components of a particular color (such as red, green and blue (RGB) color

3    components)".  ("Color Data Values").  A Color Map holds the colors currently being displayed

4    on the display screen of an image display system and in the '759 patent is also referred to as the

5    "Color Memory," "Color Map Memory," and "Color Look-up Table." ('759 Patent, Col. 1:29-30;

6    col. 1:54; col. 1:59).  I will use the term Color Memory in this report to refer to the memory which

7    contains Color Data Values insofar as this is the term used in claims 2-4 of the '759 patent.

8    However, all of these terms describe the same type of memory and are used interchangeably in the

9    technical literature to describe the same structure.  A Color Memory provides a way to display

10   more possible colors than would be possible with only the Video Memory.

11        12.    A Color Data Value typically is represented using more bits than a Pixel value in

12   the Video Memory so that Color Data Values are able to describe many more colors than can be

13   described by just the Pixel value.  Whereas a Pixel value may be 8 bits representing one of 256

14   different colors, a Color Data Value may be, for example, 24 bits representing one of 16,777,216

15   different colors.  In an image display system employing a Color Memory, the Pixel value is read

16   out of the Video Memory and used to select a particular Color Data Value from the Color

17   Memory.  This selected Color Data Value is then used to determine the particular color of the

18   Pixel displayed on the screen.  This process is illustrated in the Figure below taken from Figure 2

19   of the '759 patent.

20

21        **Indexing the Color Look-up Table to Access a Color Data Value**



27        13.    By designing the Color Data Value to have more bits than the Pixel value, there can

28

-5-

Exhibit 21
Page 678

1  be more choices of colors shown on the display screen. However, only the number of colors

2  determined by the number of Pixel values can be displayed at one time. For example, in a

3  particular image display system, if the Pixel value is 8 bits and the Color Memory holds 24 bit

4  Color Data Values, then at one time only 256 colors may appear on the screen, however these 256

5  colors may be chosen from a palette of 16,777,216 colors. The '759 patent recognizes that Color

6  Memories were previously known before the filing of the patent. Claims 1-4 of the '759 patent

7  discloses accessing the Color Memory in a way to achieve terminal independence. ('759 patent,

8  col. 1:28-65).

9      14.    In many image display systems, the idea of a foreground and background color is

10  used to help specify the image on the display. The application program issues a command to the

11  image display system and instructs the system that a foreground color is to be used for subsequent

12  drawing commands. The user can also issue a command that a particular background color is to be

13  used for all future drawing commands. Then, whenever a command to draw an object with

14  foreground and background characteristics is issued, the previously specified foreground and

15  background colors are used to determine the Pixel values in Video Memory to create the object on

16  the display. Claim 1 of the '759 patent relies on a predetermined command and data sequence to

17  select one of several modes of access to Color Data Values in a Color Memory wherein

18  foreground and background colors are specified in various ways. ('759 patent, col. 14:20 – 40).

19  **III.    THE '759 PATENT DISCLOSURE.**

20      15.    The '759 patent relates to a system for displaying a color image in a terminal

21  independent manner. At the time of the patent, it was well known how to provide color digital

22  image displays on video display screens. However, each manufacturer of color image displays had

23  its own technique for providing the display using its own design. This sometimes made it difficult

24  for software written for one proprietary display system to be used on another competing display

25  system. The '759 patent seeks to address this issue through a terminal independent system for

26  displaying a color image. ('759 patent, col. 1:11-65)

27      16.    At the time of the '759 patent, there had been proposed, under development and to

28  a limited extent available in the marketplace, consumer based video display terminals designed to

-6-

Exhibit 21
Page 679

1    be used in the home.  Systems that went by the name "videotext," "viewdata," and "teletext," were

2    intended to provide services wherein a customer could access a remote computer and an associated

3    data base using a digital image display terminal to provide information to the user.  ('759 patent,

4    col. 1:39-46).  The patent discusses that the problem of incompatible Color Memories across

5    various manufacturers of these graphic display systems provides the motivation for the

6    development of a terminal-independent Color Memory able to provide the functionality of

7    multiple, different digital display manufacturers so as to be able to receive and accept the

8    programming for these disparate display systems and still be able to provide an accurate visual

9    display for the given programming.  ('759 patent, col. 1:39-46).

10           17.    Claims 1-4 of the '759 patent focus on operating in different modes which affect

11   the way Color Memory is accessed.  The court has interpreted the phrase "mode of access" to

12   mean a "manner of retrieving."  For example, in one disclosed mode, indices into a Color Map for

13   the foreground and background colors are specified to determine which particular Color Data

14   Values are accessed for displaying the foreground and background portions of the displayed

15   object.

16           18.    Claim 1 of the '759 patent calls out a digital image display system with a Color

17   Memory that holds Color Data Values with three modes of access to the Color Data Values in the

18   Color Memory.  The first mode of access requires that the foreground color be directly specified as

19   a Color Data Value.  The specification makes clear that the specific color identified by the Color

20   Data Value or the closest color to it found in the Color Memory should be used for all display

21   commands involving objects with foreground characteristics.  ('759 patent, col. 1:55-65, 7:32-34).

22   For example, if the Color Data Value teal is directly specified as the foreground color but teal does

23   not exist in the Color Memory, then the closest color that is found in the Color Memory, for

24   example, cyan, should be used as the foreground color for all subsequent display commands.

25           19.    When operating in the second mode, the foreground color is specified by a

26   particular entry or index in the Color Memory.  Therefore, in such a system, when operating in the

27   second mode, if the system specifies the Color Data Value at index 3, for example, in the Color

28   Memory as the foreground color, all subsequent draw commands which require a foreground color

-7-

Exhibit 21
Page 680

1    will use whatever color is specified at index 3 in the Color Memory. When operating in the third

2    mode, both the foreground and background colors are specified by indices into the Color Memory.

3    These foreground and background colors would then be used by subsequent display commands

4    until changed.

5        20.    Claim 2 calls for a Color Memory for storing Color Data Values and selection of a

6    mode of access to the Color Memory. Furthermore, claim 2 calls for setting a Color Data Value in

7    the Color Memory. Claim 3 is dependent on claim 2 and adds the limitation of a command for

8    setting multiple Color Data Values in the Color Memory. Claim 4 is a method claim for

9    displaying a color image in a terminal independent manner through the use of a Color Memory and

10   three commands. The first command selects a mode of access to the Color Memory. The second

11   command sets Color Data Values in the Color Memory and the third command reads the Color

12   Data Values from the Color Memory to produce a display.

13   **IV.    JUDGE BREWSTER'S CLAIM CONSTRUCTION OF THE '759 PATENT.**

14       21.    In the preparation of this report, I adhered to the claim construction of the '759

15   patent as set forth in United States District Judge Rudi M. Brewster's Memorandum and Order

16   signed on November 11, 2005 ("Claim Construction"). Specifically, I adhered to the claim

17   construction shown in Table 1 below.

18                          **Table 1: Claim Construction.**

| CLAIM LANGUAGE | ADOPTED CONSTRUCTION |
|---|---|
| 1. In a digital image display system: | In a digital image display system [hardware and software, needed to achieve a visible representation of information in a data-processing system]: |
| a memory for storing color data values; | A memory [a color map that stores a table of color data values indexed by numbers] for storing color data values [color components of a particular color (such as red, green and blue (RGB) color components)]; |
| processing means responsive to a predetermined command and data sequence comprising at least one command, the processing means decoding the predetermined command and data sequence, the predetermined command and data | Processing means responsive to a predetermined command and data sequence [a command and data pattern having a known encoded meaning] comprising [including, but not limited to] at least one command, the processing means decoding [interpreting] the predetermined command and data sequence, the predetermined command and data sequence selecting one |

-8-

Exhibit 21
Page 681

| CLAIM LANGUAGE | · ADOPTED CONSTRUCTION |
|---|---|
| sequence selecting one of a plurality of modes of access to color data values, the modes comprising | of a plurality of modes of access to [manner of retrieving] color data values, the modes comprising<br><br>"Processing Means"<br>Function:<br>The function of this element is decoding the predetermined command and data sequence, the predetermined command and data sequence selecting one of a plurality of modes of access to color data values<br><br>Structure:<br>Data processor 1 programmed to perform the algorithm of boxes 301, 302, and 303 of Figure 3 and boxes 401, 402, 403, 404, 405, 407, 408 , and 411 of Figure 4 (See, Col. 5, line 60 – Col. 6, line 19, Col. 6, lines 20-23 (except for "and for setting foreground and background in-use colors for two of these modes"), lines 24-29, 29-32 (except for "and the background and foreground color"), lines 33-43). |
| a first mode of access wherein an in-use foreground color is directly specified as a color data value; | a first mode of access [manner of retrieving] wherein an in-use foreground color [a color that will be used as the foreground color for subsequently received text and graphics commands until changed] is directly specified as [called for by] a color data value [color component of a particular color (such as red, green and blue (RGB) color components]; |
| a second mode of access wherein the in-use foreground color is specified as an index into the color memory; and | a second mode of access [manner of retrieving] wherein the in-use foreground color [a color that will be used as the foreground color for subsequently received text and graphics commands until changed] is specified as [called for by] an index into the color memory [a color map that stores a table of color data values indexed by numbers]; and |
| a third mode of access wherein the in-use foreground color and an in-use background color are specified as indexes into the color memory; and | a third mode of access wherein the in-use foreground color and an in-use background color [a color that will be used as the background color for subsequently received text and graphics commands until changed] are specified as indexes into the color memory; and |
| display means responsive to the processing means the display means displaying the colors associated with the color data values accessed by the selected mode. | display means responsive to the processing means the display means displaying the colors associated with the color data values accessed by the selected mode.<br><br>"Display means"<br>Function:<br>The function of this element is displaying the colors associated with the color data values accessed by the selected mode.<br><br>Structures:<br>(1) monitor; |

-9-

Exhibit 21<br>Page 682

| CLAIM LANGUAGE | ADOPTED CONSTRUCTION |
|---|---|
|  | (2) television set;<br>(3) video projection system;<br>(4) a liquid crystal display; or<br>(5) an LED display (*See e.g.,* Col. 4, lines 50-55) |
| 2.  A digital image display system comprising: | A digital image display system [hardware and software needed to achieve a visible representation of information in a data-processing system] comprising: |
| a color memory for storing color data values; | a color memory for storing color data values; |
| processing means responsive to predetermined command and data sequences, the processing means, responsive to a first command, selecting a mode of access to the color memory; and responsive to a second command, setting a color data value in the color memory; and | processing means responsive to predetermined command and data sequences, the processing means, responsive to a first command, selecting a mode of access to the color memory; and responsive to a second command, setting [storing] a color data value in the color memory; and<br><br>"Processing Means"<br>Function<br>The function of this element is:<br>(a) selecting a mode of access to color memory; and<br>(b) setting a color data value.<br><br>Structure:<br>(a) structure for selecting a mode of access to color memory is:<br>Data processor 1 programmed to perform the algorithm shown in Fig. 3: boxes  301-303; Fig. 4: boxes 401-405, 407, 408, an 411 (See, Col.5, line 60 – Col.6, line 19, Col.6, lines 20-23 (except for "and for setting foreground and background in-use colors for two of these modes"), lines 24-29, 29-32 (except for "and the background and foreground"), and lines 33-43));<br><br>(b) structure for setting a color data value is:<br>Data processor 1 programmed to perform the algorithm shown in Fig. 3: boxes 304 and 305; and Fig. 5: boxes 501, 504, 506, 508, and 510 (See, Col. 5, lines 60-64; Col. 6., lines 12-17; Col. 7, lines 14-17 (except for "or (2) in color mode 0, for setting"], Col. 7, lines 53-64 (except for "The sequence of boxes 504, 506, 508, and 510 is")). |

-10-

Exhibit 21
Page 683

| CLAIM LANGUAGE | ADOPTED CONSTRUCTION |
|---|---|
| display means responsive to the processing means, the display means displaying a color associated with the color data value accessed by the selected mode. | display means responsive to the processing means, the display means displaying a color associated with the color data value accessed by the selected mode.<br><br>"Display means"<br><u>Function:</u><br>The function of this element is displaying the colors associated with the color data values accessed by the selected mode.<br><br><u>Structures:</u><br>(1) monitor;<br>(2) television set;<br>(3) video projection system;<br>(4) a liquid crystal display; or<br>(5) an LED display (*See e.g.,* Col. 4, lines 50-55) |
| 3.  A display system as recited in claim 2, wherein the processing means responsive to a second command sets plural color data values in color memory. | A display system as recited in claim 2, wherein the processing means responsive to a second command sets plural color data values in color memory.<br><br>"Processing Means"<br><u>Function:</u><br>The function of this element is sets plural color data values in color memory.<br><br><u>Structure:</u><br>Data processor 1 programmed to perform the algorithm of Fig. 5: Boxes 501, 504, 506, 508, and 510 and the line existing box 510 (*See* Col. 7, ln. 14-17 [except for "or (2) in color mode 0, for setting"], Col. 7, Lns. 53-65). |
| 4. In a video image display system having a color memory, a method for displaying a color image in a terminal independent manner responsive to commands and data received from a command and data source, the method comprising the steps of: | In a video image display system having a color memory, a method for displaying a color image in a terminal independent manner [meaning that terminals having varying color capabilities are able to receive common input information and each terminal provides a color display that within its capabilities most closely matches that input information] responsive to commands and data received from a command and data source, the method comprising the steps of: |
| receiving commands and data from the command and data source; | receiving commands and data from the command and data source; |
| reading a first command for selecting a mode of access to the color memory, and responsive to data following the first command, selecting the mode of access to the color memory; | reading a first command for selecting a mode of access to the color memory, and responsive to data following the first command [taking some action based on the data following the first command], selecting the mode of access to the color memory; |
| reading a second command for setting color data values in the color memory and, responsive to data | reading a second command for setting color data values in the color memory and, responsive to data following the second command [taking some action based on the data |

-11-

Exhibit 21<br>Page 684

| CLAIM LANGUAGE | ADOPTED CONSTRUCTION |
|---|---|
| following the second command, setting the color data values in the color memory, | following the second command], setting the color data values in the color memory, |
| reading a third command for accessing color data values in the color memory, and | reading a third command for accessing [retrieving] color data values in the color memory, and |
| displaying a color image associated with the color data values accessed by the third command on a video display terminal. | displaying a color image associated with the color data values accessed [retrieved] by the third command on a video display terminal. |

## V.    PERSON OF ORDINARY SKILL IN THE ART.

22.    For the purpose of this report, a person of ordinary skill in the art is an engineer holding a Bachelor of Science degree in electrical engineering or computer engineering with at least 2 years of experience in the field of computer graphics.  Alternatively, a person of ordinary skill in the art can be an engineer holding a Master of Science degree in electrical engineering or computer engineering who has pursued a course of study relating to computer graphics technology.

## VI.    PRIOR ART WHICH INVALIDATES CLAIMS 1 – 4 OF THE '759 PATENT.

23.    I have reviewed multiple pieces of prior art and it is my opinion that the '759 patent is invalid in light of this prior art through both anticipation and obviousness depending on the cited art.    I note, however, that in each instance where I have concluded anticipation, if the art on which I have based that conclusion did not put the claimed concepts precisely within the public grasp, then the art makes the claims so obvious that the claims readily could be within the public grasp.

### A.    Foley: "Raster Graphics Extensions to the Graphics Compatibility System (GCS)"

24.    I have reviewed the technical paper titled "Raster Graphics Extensions to the Graphics Compatibility System (GCS)" by D. Foley, James Templeman, and Dara Dastyar. ("Foley").  This is a paper, dated March 1979, written for the Chief of Engineers of the US Army, and approved for public release with an unlimited distribution.  The May 19, 1981 priority date of

-12-

Exhibit 21
Page 685

1    the '759 patent is more than a year later.

2        25.    In addition to this reference which alone anticipates claims 1-4 of the '759 patent,

3    there are two other related references: James D. Foley, et al., "Some Raster Graphics Extensions to

4    the Core System," <u>Computer Graphics</u>, Vol. 13, No. 2, p. 15, (1979) and "Status Report of the

5    Graphics Standards Planning Committee," <u>Computer Graphics</u>, Vol. 13, No. 3, (1979).  Each of

6    the references are written in reference to the CORE system and thus all together constitute one

7    anticipatory piece of prior art.  Further, the references render the claims obvious in combination

8    with one another as they refer to and cross reference each other in various manners and clearly

9    suggest combination with one another. (Foley, p. 4).  Finally, the references are instructive in

10   defining what one of ordinary skill in the art would understand the other references to disclose.

11       26.    Foley anticipates claims 1- 4 of the '759 patent.  A chart form analysis of that

12   anticipation is presented as Exhibit 2 to this report.  I will now review and elaborate on that

13   analysis.

14       27.    Foley discloses a digital image display system that is able to process lines, text,

15   points and areas specified in 2D.  (Foley, p. 20-22, Figure 1.).  Foley also discloses a memory for

16   storing Color Data Values. This memory is a Color Memory that contains Color Data Values used

17   to provide color information for the display screen.  (Foley, p. 10, 22, "An optional look-up table

18   in this system can dynamically assign intensities or colors to pixel values.", also p. 39).

19       28.    Foley also discloses a processing means responsive to predetermined commands

20   and data comprising at least one command, the processing means decoding the predetermined

21   commands and data, the predetermined commands and data selecting one of a plurality of modes

22   of access to Color Data Values.  In the CORE System as disclosed by Foley, an image creation

23   system is able to process lines, text, points, and areas specified in 2D using commands and data.

24   (Foley, p. 20-22, Figure 1, p. 10, 39-40, 64, 68, 72).  An image creation system is a processing

25   means responsive to commands and data.

26       29.    Foley also discloses the use of different modes for controlling access to the Color

27   Memory.  (Foley, p. 10, 14, 39-40, 68, 72).  Foley discloses that a user may select a display mode

28   to implement various hidden surface algorithms.  (Foley, p. 14).  Foley also describes the

-13-

Exhibit 21
Page 686

1    SELECT_VIEW_SURFACE(SURFACE_NAME, COLOR) command which determines if a color

2    or gray-scale display is to be produced by setting the COLOR parameter. (Foley, p. 64).

3    Furthermore, Foley discloses commands and data for setting the display mode using the

4    "SET_DISPLAY_MODE(MODE)" command and the

5    SET_VIEW_SURAFACE_OVERLAY_MODE(MODE) command.  (Foley, p. 68, 72).

6    Furthermore, Foley discloses commands and data for selecting modes of access to the Color

7    Memory associated with the foreground and background color selection as discussed below.

8    (Foley, p. 10).I have reviewed Lucent's infringement contentions as it relates to the required

9    "predetermined command and data sequence" for selecting modes of access of Color Data Values

10    in the Color Memory in claim 1.  Lucent's infringement contentions identify commands and data

11    which Lucent contends select indexed color, direct color, true color and alphanumeric displays.

12    Lucent provides examples such as "Set Video Mode" or "SetVBEMode."  These commands

13    specify display system attributes such as screen resolution, the number of Pixels to display on the

14    screen and the number of bits to associate with each Pixel.  These commands may change the

15    screen display seen by the user but they do not change how Color Data Values is accessed from

16    Color Memory as access to Color Memory is taught in the '759 specification and required by

17    Claim 1.  In any event, they do not constitute a command and data *sequence* to which the system

18    responds.  However, to the extent that the "Set Video Mode" BIOS command or the

19    "SetVBEMode" VESA command accused by Lucent constitute the required "predetermined

20    command and data sequence," then what Foley discloses also satisfies the required "predetermined

21    command and data sequence" in that what Foley discloses will affect the screen display to the

22    same extent as the commands for selecting display modes accused by Lucent in its infringement

23    contentions.

24            30.    Lucent also contends in its infringement contentions that GDI commands such as

25    "SetBKMode," SetBkColor," SetTextColor," "SetDCPenColor," or "SetDCBrushColor" define

26    different modes of access to Color Memory in the supposedly infringing devices.  To the extent

27    that these GDI commands taken separately or in any combination define a mode of access, Foley

28    discloses commands for setting modes of access related to specifying foreground and background

-14-

Exhibit 21
Page 687

1    colors that are as similar as or more similar to commands disclosed in the '759 patent. These

2    modes of access are discussed in relation to first, second and third mode below.

3        31.    Furthermore, the court's claim construction requires that the predetermined

4    command and data sequence be "a command and data pattern having a known encoded meaning."

5    To the extent that the commands identified by Lucent in their infringement contentions satisfy the

6    court's claim construction, the commands and data disclosed by Foley also satisfy it since the

7    commands and data disclosed by Foley are as similar as or more similar to the patented commands

8    and data disclosed in the '759 patent than those commands and data accused by Lucent.

9        32.    To the extent that Lucent has identified accused structure for satisfying the means

10    plus function claim element of "processing means responsive to a predetermined command and

11    data sequence comprising at least one command, the processing means decoding the

12    predetermined command and data sequence, the predetermined command and data sequence

13    selecting one of a plurality of modes of access to Color Data Values," Foley discloses

14    structure that also satisfies that element, in that Foley discloses a processor responsive to

15    commands and parameters selecting modes of access to Color Data Values which is the basis for

16    Lucent's identification of supposedly satisfying structure. In short, at least to the extent that

17    Lucent contends that the accused products contain structure which is the same as or equivalent to

18    the patent's structure corresponding to the disclosed means, Foley discloses structure that

19    similarly satisfies that element.

20        33.    Foley discloses a first mode of access to Color Data Values from the Color Memory

21    wherein an in-use foreground color is directly specified as a Color Data Value. Foley discloses

22    setting the current color (i.e. in-use foreground color) by directly specifying the Color Data Value.

23    Directly specifying the Color Data Value and finding a Color Memory entry which has the best

24    match is how the "mode 0" (the first mode of claim 1) is described to operate in the '759 patent.

25    ('759 patent, col. 7:32-34, "At box 512, the foreground color is set to the index of the closest

26    match of the first operand and a color value from the color map memory table 6a."). Likewise, in

27    Foley, if the exact Color Data Value is not available in the Color Memory, the closest approximate

28    Color Data Value is used. (Foley, p. 10, "In the Core system, the color attribute… is specified in

-15-

Exhibit 21
Page 688

1   two ways:  by value and by index.  In the first way, the color attribute is specified by Red, Green,

2   and Blue primaries, if the exact (R,G,B) triplet specified is not in the active color set (set of colors

3   the device is capable of displaying simultaneously) values are rounded to the nearest color

4   displayable on the view surface.").  (Foley, p. 39, "If the exact (R, G, B) triple is not included in

5   the active color set, then a best fit to an available triple is performed.)  The command

6   SET_CURRENT_COLOR(R,G,B) directly specifies a Color Data Value to be used as an in-use

7   foreground.  (Foley, p. 39)  This selects a first mode of access to the Color Memory.  Alternately,

8   the command SET_CURRENT_INTENSITY(INTENSITY) directly specifies the intensity value

9   of all subsequently drawn objects.  (Foley, p. 54)  This also selects a first mode of access to Color

10  Memory wherein an in-use foreground color is directly specified as a Color Data Value.

11          34.     Foley also discloses a mode of access wherein the in-use foreground color is

12  specified as an index into the Color Memory.  (Foley, p. 39, "Alternatively, the function

13  SET_CURRENT_COLOR_INDEX[I] specifies that the $I^{th}$ triple from the ordered color set is to be

14  used as the color attribute.").  The ordered color set is the set of Color Data Values held in the

15  Color Memory.  This selects a second mode of access wherein the current in-use foreground color

16  is set to the Color Data Value held at the specified index in the Color Memory.   Alternatively,

17  Foley discloses SET_CURRENT_INTENSITY_INDEX[I], which selects a second mode of access

18  wherein the intensity of the in-use foreground color is set to the intensity value at the $I^{th}$ element of

19  Color Memory. (Foley, p. 54).

20          35.     Foley also discloses a third mode of access wherein an in-use foreground color and

21  an in-use background color are specified as indices into the Color Memory.  Foley discloses a

22  mode of access wherein the in-use foreground color is specified as an index into the Color

23  Memory.  (See above).  Furthermore, Foley discloses a mode of access wherein the in-use

24  background color is specified as an index into the Color Memory.  (Foley, p. 65,

25  "SET_BACKGROUND_COLOR_INDEX (INDEX),

26  SET_BACKGROUND_INTENSITY_INDEX (INDEX)").  These set the current in-use

27  background color or intensity to the Color Data Value held at the specified index in the Color

28  Memory.  By issuing either SET_CURRENT_COLOR_INDEX (INDEX) or

-16-

Exhibit 21
Page 689

1   SET_CURRENT_INTENSITY_INDEX (INDEX) along with either

2   SET_BACKGROUND_COLOR_INDEX(INDEX) or

3   SET_BACKGROUND_INTENSITY_INDEX (INDEX), this combination selects a third mode of

4   access to the Color Memory. To the extent that the multiple commands and data disclosed by

5   Lucent satisfy the court's claim construction, the multiple commands and data disclosed by Foley

6   also satisfy the court's claim construction since the commands and data disclosed by Foley are as

7   similar as or more similar to the patented commands and data than those commands and data

8   accused by Lucent.  Furthermore, neither the patent nor Foley disclose nesting commands within

9   commands as do the commands accused by Lucent in Lucent's infringement contentions.

10          36.     Foley also discloses a display means responsive to the processing means, the

11   display means displaying the colors associated with the Color Data Values accessed by the

12   selected mode. The display means disclosed in Foley is the same or equivalent structure of a

13   computer monitor, TV, video projection system, LCD or an LED display disclosed in the '759

14   patent.  ('759 patent, Col. 4:50-55).  Foley states that "In all cases, the basic intent is to deal with

15   computer synthesized images, taking advantage of the raster display's ability to draw (possibly

16   colored) solid areas" (Foley, p. 18, also p. 21, Figure 1)  As such Foley's system includes a

17   computer display.  Based on the foregoing, Foley anticipates claim 1 of the '759 patent.

18          37.     Foley discloses a digital image display system, a Color Memory for storing Color

19   Data Values and a processing means responsive to predetermined commands and data, the

20   processing means, responsive to a first command, selecting a mode of access to the Color

21   Memory.  Each of these is disclosed by Foley as discussed above in relation to claim 1.  Claim 2

22   additionally calls for "a second command, setting a color data value in the color memory."  Foley

23   discloses two separate commands for setting or storing a Color Data Value in Color Memory.

24   (Foley, p. 62-63, "REDEFINE_COLOR_INDEX" and "REDEFINE_INTENSITY_INDEX").

25   These commands set Color Data Values in Color Memory as required.  As such, Foley also

26   anticipates claim 2 of the '759 patent.

27          38.     Claim 3 adds that the processing means is responsive to a command which sets

28   plural Color Data Values in Color Memory.  Foley discloses two such commands. (Foley, p. 54,

-17-

Exhibit 21
Page 690

1    "DEFINE_VERTEX COLORS_BY_INDEX(INDEX_ARRAY, N)" and "DEFINE_VERTEX

2    INTENSITIES_BY_INDEX(INDEX_ARRAY, N)"). These commands define multiple Color

3    Data Values or intensity values to be written in Color Memory. They set plural Color Data Values

4    in the Color Memory as required. Therefore, Foley anticipates Claim 3.

5          39.    Furthermore, the report "Status Report of the Graphic Standards Planning

6    Committee" to which Foley was a contributor discloses the command

7    "DEFINE_COLOR_INDICES (SURFACE_NAME, I1, I2, C1_ARRAY, C2_ARRAY,

8    C3_ARRAY)" on page 21. This command defines multiple Color Data Values to be written into

9    the Color Memory between indices I1 and I2 anticipating this claim element of claim 3 in that it

10   sets plural Color Data Values in Color Memory.

11         40.    Claim 4 includes the requirement that the commands be followed by data. To the

12   extent that the commands Lucent identifies have commands followed by data, Foley commands

13   are followed by their data operands because the commands disclosed by Foley have a format that

14   is as similar as or more similar to the format of the commands disclosed in the '759 patent as the

15   commands identified by Lucent in its infringement contentions.

16         41.    Claim 4 also requires that the display system must display the color image in a

17   terminal independent manner. Foley discloses displaying a color image in a terminal independent

18   manner. Foley discloses a display standard for producing display images on a variety of hardware

19   devices. (Foley, p. 16, "Two trends in computer graphics have motivated the work reported here.

20   The first trend is the development of portable, device independent graphics subroutine packages

21   for use with various line-drawing graphics devices, both passive and interactive"). The disclosed

22   standard is intended to be used on a variety of system having varying color capabilities. (Foley, p.

23   16). To the extent that what is accused by Lucent satisfies the terminal independence requirement

24   of claim 4, Foley likewise satisfies this limitation.

25         42.    Claim 4 also requires a third command for accessing Color Data Values in the

26   Color Memory. Foley discloses a third command for accessing Color Data Values in that Foley

27   discloses reading Color Data Values to produce an image display. (Foley, p. 20-22, "Its output is

28   placed in the refresh buffer as the pixel values needed to cause the appropriate entities to be

-18-

Exhibit 21
Page 691

1    displayed.  The size of the refresh buffer and the number of bits/pixel are variable.  The image

2    display system reads the refresh buffer in synchronism with a TV raster scan, using the pixel

3    values to control the color or intensity of points on the display screen.  An optional look-up table

4    in this system can dynamically assign intensities or colors to pixel values.").

5         43.    I note that Lucent's infringement contention as it relates to this third command

6    limitation identifies commands such as "DrawText" and "DrawTextEx" which modify the display.

7    Foley discloses the "SET_VERTEX_COLORS" and "SET_VERTEX_COLORS_BY_INDEX"

8    commands which determine the colors of a polygon to display on the display screen and thus

9    determine what Color Data Values are accessed from the Color Memory.  (Foley, p. 54-55).

10        **B.    GSPC: "Raster Extensions to the CORE System"**

11        44.    I have reviewed the technical journal article title "Some Raster Graphics Extensions

12   to the CORE System" by D. Foley, James Templeman, and Dara Dastyar.  This article appeared in

13   the August, 1979 issue of <u>Computer Graphics, A Quarterly Report of SIGGRAPH-ACM,</u> Volume

14   13, Number 2.  ("GSPC-1").  This issue of the <u>Computer Graphics</u> journal contained the

15   proceedings of the Sixth International Conference on Computer Graphics.  Published at the same

16   time was a companion report in a separate issue of the same journal titled "Status Report of the

17   Graphic Standards Planning Committee."  This report, published as a separate issue in three parts,

18   also appeared in the August, 1979 in <u>Computer Graphics, A Quarterly Report of SIGGRAPH-</u>

19   <u>ACM,</u> Volume 13, Number 3.  ("GSPC-2")  These two issues were published together and GSPC-

20   1 specifically references GSPC-2 while GSPC-2 cites GSPC-1 in its list of references.  (GSPC-1,

21   p. i, "The Status Report of the Graphics Standards Planning Committee of ACM/SIGGRAPH was

22   also presented at SIGGRAPH '79, and it is published in <u>Computer Graphics</u>, Volume 13, Number

23   3.").  (GSPC-2, p. III-39, "[Foley79a]").  Because both of these references were published together

24   and each references the other, I consider them to be one reference which I will refer to as GSPC.

25   However, if it is decided that they are two separate references, then their joint publication and their

26   mutual references to each other provides a motivation to combine these references.  Both of these

27   articles were published in August, 1979 predating the May 19, 1981 priority date of the '759

28   patent by more than a year.

-19-

Exhibit 21
Page 692

45.    GSPC-1 is a paper presented at the Sixth Annual Conference on Computer Graphics by Foley, James Templeman, and Dara Dastyar.  This paper provides an overview of the raster graphics extensions to the CORE standard.  GSPC-2 is a status report of the Graphics Standard Planning Committee and it includes a report of the Raster and Color Group of the CORE Extensions subcommittee based on the work of James D. Foley, James Templeman, and Dara Dastyar. (GSPC-2, p. III-1).  GSPC-2 is broken into three sections.  The first part is a review of the state of the art in graphics software packages.  The second part is the CORE Software graphics system first developed in 1977.  The CORE system was designed primarily for graphics systems which utilize vector graphics.  The third part of the special issue is the raster extensions to the CORE system.

46.    GSPC anticipates claims 1- 4 of the '759 patent.  A chart form analysis of how GSPC anticipates claims 1-4 of the '759 patent is presented in Exhibit 3 to this report.  I will now review and elaborate on this analysis.

47.    GSPC is designed to operate on the same type of digital image display system as is discussed in the '759 patent. GSPC is specified to be used on a variety of graphic display systems. However, one particular system called out is a raster display system which communicates with the host computer over a low-speed link such as a phone line.  (GSPC-2, p. III-3).  This is the same type of system disclosed in the '759 patent for which the patent is intended to be used. ('759 patent, col. 1:39-46).  GSPC discloses a memory for storing Color Data Values.  This memory is a Color Memory or Look-up Table and it contains Color Data Values used to provide color information for the display screen.  (GSPC-2, p. III-3, "The display may include one or more look-up tables, used to generate color and/or gray-scale images.", also p. III-8).

48.    GSPC also discloses a processing means responsive to predetermined commands and data comprising at least one command, the processing means decoding the predetermined commands and data, the predetermined commands and data selecting one of a plurality of modes of access to Color Data Values.  GSPC discloses the use of minicomputers and microprocessors to control the image display system. (GSPC-2, p. III-36).  Minicomputers and microprocessors are responsive to commands and data.  Furthermore, GSPC discloses the use of a host computer that

-20-

Exhibit 21
Page 693

1   generates commands and data to be received and processed by the display system. (GSPC-2, III-

2   3).

3        49.    GSPC also discloses the use of different modes of access to the Color Memory.

4   (GSPC-2, p. III-6, III-18, "7.2.6.1 SET_COLOR_MODEL."). GSPC commands and data can

5   determine if a color or gray-scale display is to be produced by setting the TYPE parameter of the

6   "INITIALIZE_VIEW_SURFACE" command. (GSPC-2, p. III-17). Furthermore, GSPC can set

7   the display mode using "SET_DISPLAY_MODE(MODE)". (GSPC-2, p. III-19). Furthermore,

8   GSPC discloses selecting modes of access to the Color Memory associated with the foreground

9   and background color selection as discussed below.

10       50.    I have reviewed Lucent's allegation of infringement as it relates to the required

11  "predetermined command and data sequence" for selecting modes of access of Color Data Values

12  in the Color Memory in claim 1. Lucent's infringement contentions identify commands and data

13  which Lucent contends select indexed color, direct color, true color and alphanumeric displays.

14  Lucent provides examples such as "Set Video Mode" or "SetVBEMode." These commands

15  specify display system attributes such as screen resolution, the number of Pixels to display on the

16  screen and the number of bits to associate with each Pixel. These commands may change the

17  screen display seen by the user but they do not change how Color Data Values are accessed from

18  Color Memory and are not, in any event, a command and data *sequence* to which the system

19  responds. However, to the extent that the "Set Video Mode" BIOS command or the

20  "SetVBEMode" VESA command accused by Lucent constitute the required "predetermined

21  command and data sequence," then what GSPC discloses also satisfies the required

22  "predetermined command and data sequence" in that what GSPC discloses will affect the screen

23  display to the same extent as the commands for selecting display modes accused by Lucent in its

24  infringement contentions.

25       51.    Lucent also contends in its infringement contentions that GDI commands such as

26  "setBKMode," SetBkColor," SetTextColor," "SetDCPenColor," or "SetDCBrushColor" define

27  different modes of access to Color Memory in the supposedly infringing devices. To the extent

28  that these GDI commands taken separately or in any combination define a mode of access, GSPC

-21-

Exhibit 21
Page 694

1    discloses commands for setting modes of access related to specifying foreground and background

2    colors that are as similar as or more similar to commands disclosed in the '759 patent. These

3    modes of access are discussed in relation to first, second and third mode below.

4         52.    Furthermore, the court's claim construction requires that the predetermined

5    command and data sequence be "a command and data pattern having a known encoded meaning."

6    To the extent that the commands identified by Lucent in their infringement contentions satisfy the

7    court's claim construction, the commands and data disclosed by GSPC also satisfy it since the

8    commands and data disclosed by GSPC are as similar as or more similar to the patented

9    commands and data disclosed in the '759 patent than those commands and data accused by Lucent.

10        53.    To the extent that Lucent has identified accused structure for satisfying the means

11   plus function claim element of "processing means responsive to a predetermined command and

12   data sequence comprising at least one command, the processing means decoding the

13   predetermined command and data sequence, the predetermined command and data sequence

14   selecting one of a plurality of modes of access to Color Data Values," GSPC discloses structure

15   that also satisfies that element, in that GSPC discloses a processor responsive to commands and

16   parameters selecting modes of access to Color Data Values which is the basis for Lucent's

17   identification of supposedly satisfying structure. In short, at least to the extent that Lucent

18   contends that the accused products contain structure which is the same as or equivalent to the

19   patent's structure corresponding to the disclosed means, GSPC discloses structure that similarly

20   satisfies that element.

21        54.    GSPC discloses a first mode of access to Color Data Values from the Color

22   Memory wherein an in-use foreground color is directly specified as a Color Data Value. GSPC

23   discloses setting the current color (i.e. in-use foreground color) by directly specifying the Color

24   Data Value. Directly specifying the Color Data Value and finding a Color Memory entry which

25   has the best match is how the "mode 0" is described to operate in the '759 patent. ('759 patent,

26   col. 7:32-34, "At box 512, the foreground color is set to the index of the closest match of the first

27   operand and a color value from the color map memory table 6a."). Likewise, if the exact Color

28   Data Value is not available in the Color Memory, the closest approximate Color Data Value is

-22-

Exhibit 21
Page 695

1    used. (GSPC-2, p. 3) (See also GSPC-1, p. 19, "The color attribute… is specified in two ways:

2    by value and by index. The function SET_CURRENT_COLOR [R,G,B] specifies the current

3    value of the color attribute. If the exact [R,G,B] triple specified in not included in the active color

4    set, then a best fit to an available triple is used.").

5         55.    GSPC also discloses a mode of access wherein the in-use foreground color is

6    specified as an index into the Color Memory. (GSPC-2, p. 3). (See also GSPC-1, p. 19,

7    "Alternatively, the function SET_CURRENT_COLOR_INDEX[I] specifies that the I[th] triple from

8    the (ordered) active color set is to be used as the color attribute."). The active color set is the set of

9    Color Data Values held in the Color Memory. This selects a second mode of access wherein the

10   current in-use foreground color is set to the Color Data Value held at the specified index in the

11   Color Memory. Alternatively, GSPC-2 discloses the in-use foreground color for objects can be set

12   using SET_FILL_INDEX (FILL_INDEX). This sets the in-use foreground color for filled objects

13   to be the Color data Value at the Color Memory index FILL_INDEX. (GSPC-2, III-15).

14        56.    GSPC also discloses a mode of access wherein an in-use foreground color and an

15   in-use background color are specified as indices into the Color Memory. GSPC discloses a mode

16   of access wherein the in-use foreground color is specified as an index into the Color Memory.

17   (See above). Furthermore, GSPC discloses a mode of access wherein the in-use background color

18   is specified as an index into the Color Memory. (GSPC-2, p. III-18, "7.2.7.1

19   SET_BACKGROUND_INDEX (INDEX)"). This sets the current in-use background color to the

20   Color Data Value held at the specified index in the Color Memory. To the extent that the

21   commands identified by Lucent in its infringement contentions satisfy the court's claim

22   construction, the commands disclosed by GSPC also satisfy it since the GSPC's commands and

23   data are as similar as or more similar to the patented commands and data than those commands

24   and data accused by Lucent. Furthermore, neither the patent nor GSPC disclose nesting

25   commands within commands as do the commands accused by Lucent in Lucent's infringement

26   contentions.

27        57.    GSPC discloses a display means responsive to the processing means, the display

28   means displaying the colors associated with the Color Data Values accessed by the selected mode.

-23-

Exhibit 21
Page 696

1    The display means disclosed in GSPC is the same or equivalent structure of a computer monitor,

2    TV, video projection system, LCD or an LED display disclosed in the '759 patent. ('759 patent,

3    Col. 4:50-55). GSPC states, for example, that "The display may include one or more look-up

4    tables, used to generate color and/or gray-scale images." (GSPC-2, p. III-3, III-35). GSPC

5    therefore discloses a computer display. Based on the foregoing, GSPC anticipates claim 1 of the

6    '759 patent.

7        58.    GSPC discloses a digital image display system, a Color Memory for storing Color

8    Data Values and a processing means responsive to predetermined commands and data, the

9    processing means, responsive to a first command, selecting a mode of access to the Color

10   Memory. Each of these claim limitations is disclosed by GSPC as discussed above in relation to

11   claim 1. Claim 2 additionally calls for "a second command, setting a color data value in the Color

12   Memory." GSPC discloses all the claim limitations of Claim 2 including a command for setting or

13   storing a Color Data Value in Color Memory. GSPC discloses several examples of such a

14   command. (GSPC-2, p. III-20, "DEFINE_COLOR_INDEX" and

15   "DEFINE_INTENSITY_INDEX"). (See also GSPC-2, p. III-21, "DEFINE_COLOR_INDICES"

16   and "DEFINE_INTENSITY_INDICES"). These commands set Color Data Values in Color

17   Memory as required by the claim. Because GSPC discloses this claim limitation and the other

18   claim limitations already discussed in relation to claim 1, GSPC anticipates claim 2 of the '759

19   patent.

20       59.    Claim 3 adds that the processing means must be responsive to a command for

21   setting plural Color Data Values in Color Memory. GSPC discloses several such commands.

22   (GSPC-2, p. III-21, "DEFINE_COLOR_INDICES" and "DEFINE_INTENSITY_INDICES").

23   These commands define all the Color Data Values or intensity values to use within a range of

24   Color Memory entries. This sets plural Color Data Values in the Color Memory as required by

25   Claim 3. Therefore, GSPC anticipates Claim 3.

26       60.    Claim 4 includes the requirement that the commands be followed by data. To the

27   extent that the commands Lucent identifies have commands followed by data, GSPC commands

28   are followed by their data operands because the commands disclosed by GSPC have a format that

-24-

**Exhibit 21**
**Page 697**

1   is as similar as or more similar to the format of.the commands disclosed in the '759 patent as the

2   commands identified by Lucent in its infringement contentions.

3       61.    Claim 4 also requires that the display system must display the color image in a

4   terminal independent manner.  GSPC discloses displaying a color image in a terminal independent

5   manner.  GSPC discloses a display standard for producing display images on a variety of hardware

6   devices. (GSPC-2, p. III-2, "The first trend is the development of portable, device-independent

7   graphics subroutine packages for use with various line drawing graphics devices, both passive and

8   interactive.").  The disclosed standard is intended to be used on a variety of system having varying

9   color capabilities.  (GSPC-2, p. III-8). ).  To the extent that what is accused by Lucent satisfies the

10  terminal independence requirement of claim 4, GSPC likewise satisfies this limitation.

11      62.    Claim 4 also requires a third command for accessing Color Data Values in the

12  Color Memory.  GSPC discloses a third command for accessing Color data Values in that the

13  GSPC discloses reading Color data Values to produce an image display. (GSPC-2, p. III-35, "A

14  pixel's value is not routed directly to the display monitor, but is used instead as an index into the

15  look-up table.  The table's entry value is used to drive the display.").

16      63.    I note that Lucent's infringement contentions as they relate to this third command

17  limitation identify commands such as "DrawText" and "DrawTextEx" which modify the display.

18  GSPC discloses the "POLYGON_ABS_2," "POLYGON_ABS_3," "POLYGON_REL_2" and

19  "POLYGON_REL_3" commands which create polygons in the Video Memory and thus

20  determines what Color Data Values are accessed for the Color Memory thereby modifying the

21  image on the display screen.  (GSPC-2, p. III-13).

22      64.    I note that GSPC-2 by itself meets all the requirements at least of claims 2-4, as

23  explained above.  GSPC-2 therefore anticipates those claims by itself and represents important

24  information beyond what was provided to the examiner of the '759 patent.  Specifically, no single

25  reference considered by the examiner satisfies each element of claims 2-4.  Moreover, GSPC-2 is

26  also important because, unlike any reference considered by the examiner, it discloses a two

27  command sequence for the selection of one of several modes of accessing a Color Memory and the

28  setting of Color Data Values into a Color Memory.

-25-

Exhibit 21
Page 698

65.    I also note that during the prosecution of the application underlying the '759 patent, the applicants continually argued that application claim 3 - which ultimately issued as patent claim 2 - was patentable over the prior art cited by the Examiner because the prior art did not "disclose or suggest a two command sequence for selecting a mode of Color Memory access and setting color data value or values in Color Memory as recited in amended claims 3, 5 and 6." (p. 10 of Amendment of January 31, 1983). Also, (pp.8-9 of Amendment of July 27, 1983) and (p. 3 of Amendment of September 2, 1983). These arguments are directly contradicted by GSPC-2 and therefore could not have been made had the Examiner been given GSPC-2.

**C.    The AED 512**

66.    I have reviewed the manual titled "AED 512 Color Graphics Terminal – Terminal Command Protocol." ("AED512"). Every page of AED512 has a date on "3/81" provided at the bottom of each page which I understand to be March, 1981 predating the priority date of the '759 patent of May 19, 1981. I have also reviewed the technical brochure title "AED512 Color Graphics & Imaging Terminal" which is undated. ("AED512-2"). I note that the "AED512 Color Graphics & Imaging Terminal" technical brochure specifically lists the table of contents of a User's Manual which contains the "AED 512 Color Graphics Terminal – Terminal Command Protocol" specifically as Appendix 1 and Appendix 2. Therefore, I understand that AED512-2 was produced at the same time as the AED512. However, if this is not the case, I am of the opinion that AED512 by itself supports my opinions regarding the invalidity of claims 1-4 of the '759 patent as it relates to the AED 512 Color Graphics Imaging Terminal documentation. A chart form analysis of how the AED512 anticipates the claims 1-4 of the '759 patent is presented in Exhibit 4 to this report. I will now review and elaborate on this analysis.

67.    AED512 anticipates claim 1 of the '759 patent. AED512 discloses a digital image display system. AED512 discloses the same type of system as is discussed in the '759 patent in that the AED512 can be used as a graphics telecommunications terminal. (AED512, TCP-1, "Terminal Control States …Upon receipt of the ESC code (27), the terminal enters graphic Interpreter Mode. Rather than being displayed, the next character received is interpreted as a 'function code'."). Furthermore, The AED512-2 brochure confirms that the AED 512 display

-26-

**Exhibit 21**
**Page 699**

1  system is meant to be used as a graphics telecommunications terminal. (AED512-2, Applications

2  and Features, "Another large class of applications uses the AED 512 as a telecommunications

3  terminal through an RS232-C interface.").

4      68.    AED512 discloses a Color Memory for storing Color Data Values. (AED512,

5  TCP-2, "Color Lookup Table, Initially the color lookup table is set up for three primary colors

6  (red-green-blue), three secondary colors (yellow-cyan-magenta), black and white as follows

7  (definitions in hex):"). Furthermore, the AED512-2 brochure supports this understanding that the

8  AED 512 has a Color Memory. (AED512, System Architecture – Video Storage, "The video

9  screen is refreshed through the contents of the video memory planes through the read masks and

10 the color lookup table (red, green, and blue maps)."). The Color Memory of the AED512 contains

11 256 Color Data Values with each Color Data Value made up of 8 bits of Red, 8 bits of Green and 8

12 bits of Blue color description. (AED512, TCP-2, "Color Lookup Table").

13     69.    AED512 also discloses a processing means responsive to a predetermined

14 commands and data comprising at least one command, the processing means decoding the

15 predetermined commands and data, the predetermined commands and data selecting one of a

16 plurality of modes of access to Color Data Values. AED512 discloses a set of commands and data

17 that are interpreted by the processing means to produce a graphics display. (AED512, TCP-1,

18 "Upon receipt of the ESC code (27), the terminal enters graphic Interpreter Mode."). Furthermore,

19 the AED512-2 brochure discloses that the display system is controlled by a 6502A

20 microprocessor. (AED512, Systems Architecture – Communications, "All data transfers and

21 functions of the AED512 are controlled by a 6502A microprocessor with the associated microcode

22 memory (RAM and ROM)."). A 6502A is a microprocessor which acts as a processing means

23 responsive to commands and data.

24     70.    AED512 also discloses that the display system can be operated in a variety of

25 modes. AED512 discloses that the display system can operate in Alphanumeric or Interpreter

26 Mode. (AED512, TCP-1, "Terminal Control States"). Also, the display system of the AED512

27 can operate in normal mode where the Video Memory is 512 x 512 and the Color Memory is

28 accessed using an eight bit Color Data Value or the display system can operate in Superoam mode

-27-

Exhibit 21
Page 700

1  whereby the Video Memory is 1024 x 1024 and the Color Memory is accessed as a one or two bit

2  Color Data Value. (AED512, TCP-9, "Superoam Support"). Furthermore, AED512 discloses

3  commands and data for selecting modes of access to the Color Memory associated with the

4  foreground and background color selection as discussed below.

5      71.    To the extent that the commands and data accused by Lucent constitute the required

6  selection of modes of access, then what AED512 discloses also satisfies the required selection of

7  modes of access in that what AED512 discloses also will change the screen display seen by the

8  user through the decoding of commands and data.

9      72.    Lucent also contends in its infringement contentions that GDI commands such as

10  "setBKMode," SetBkColor," SetTextColor," "SetDCPenColor," or "SetDCBrushColor" define

11  different modes of access to Color Memory in the supposedly infringing devices. To the extent

12  that these GDI commands taken separately or in any combination define a mode of access,

13  AED512 discloses commands for setting modes of access related to specifying foreground and

14  background colors that are as similar as or more similar to commands disclosed in the '759 patent.

15  These modes of access are discussed in relation to first, second and third mode below.

16      73.    Furthermore, the court's claim construction requires that the predetermined

17  command and data sequence be "a command and data pattern having a known encoded meaning."

18  To the extent that the commands identified by Lucent in their infringement contentions satisfy the

19  court's claim construction, the commands and data disclosed by AED512 also satisfy it since the

20  commands and data disclosed by Foley are as similar as or more similar to the patented commands

21  and data disclosed in the '759 patent than those commands and data accused by Lucent.

22      74.    To the extent that Lucent has identified accused structure for satisfying the means

23  plus function claim element of "processing means responsive to a predetermined command and

24  data sequence comprising at least one command, the processing means decoding the

25  predetermined command and data sequence, the predetermined command and data sequence

26  selecting one of a plurality of modes of access to Color Data Values," AED512 discloses

27  structure that also satisfies that element, in that AED512 discloses a processor responsive to

28  commands and parameters selecting modes of access to Color Data Values which is the basis for

-28-

Exhibit 21
Page 701

1    Lucent's identification of supposedly satisfying structure.  In short, at least to the extent that

2    Lucent contends that the accused products contain structure which is the same as or equivalent to

3    the patent's structure corresponding to the disclosed means, AED512 discloses structure that

4    similarly satisfies that element.

5        75.    AED512 discloses a first mode of access to Color Data Values from the Color

6    Memory wherein an in-use foreground color is directly specified as a Color Data Value, at least to

7    the same extent that what Lucent accuses satisfies that requirement of the claim.  AED512

8    discloses a SCT command which loads the Color Memory including the in-use foreground color

9    with Color Data Values.  (AED512, TCP-2, "Color Lookup Table").  AED512 also discloses

10   specifying the in-use foreground color as an index into the Color Memory using the SEC

11   command.  (AED512, TCP-2, "Color Selection").  By first issuing the "SCT addr n (ri gi bi)"

12   command for directly setting a Color Data Value into Color Memory and then issuing the "SEC

13   color" command to select the Color Data Value just loaded as the in-use foreground color, the

14   display system will select a mode of access whereby the in-use foreground color is directly

15   specified as a Color Data Value.  To the extent that two GDI commands specified by Lucent can

16   satisfy the first mode requirement of the claim, then the SCT command followed by the SEC

17   command of the AED512 do so at least to the same extent.

18       76.    AED512 also discloses a mode of access wherein the in-use foreground color is

19   specified as an index into the Color Memory.  AED512 discloses the "SEC color" command to

20   specify an in-use foreground color as an index into the Color Memory.  (AED512, TCP-2, "Color

21   Selection – SEC color").  The SEC command sets the current color to use for all subsequent

22   commands to draw vectors, characters, multiple pixels, circles and filled areas.  At reset, the in-use

23   foreground color is set to use the Color Data Value at index 1 in the Color Memory.

24       77.    AED512 also discloses a third mode of access wherein an in-use foreground color

25   and an in-use background color are specified as indices into the Color Memory, at least to the

26   same extent that what Lucent accuses satisfies that requirement of the claim.  In addition to the

27   "SEC color" command previously discussed, AED512 discloses the "SBC color" command

28   wherein the in-use background color is specified as an index into the Color Memory.  (AED512,

-29-

Exhibit 21
Page 702

1    TCP-2, "Color Selection – SBC color"). To the extent that the GDI commands identified by

2    Lucent in their infringement contentions ("SetBkMode," "PaletteIndex," "SetTextColor,"

3    "PaletteIndex," and "SetBkColor.") satisfy the court's claim construction, the commands disclosed

4    by AED512 also satisfy it since AED512's commands and data are in a format much closer to the

5    patented commands and data than are those accused by Lucent. Furthermore, neither the patent

6    nor AED512 disclose nesting commands within commands as do the commands accused by

7    Lucent in Lucent's infringement contentions.

8        78.    AED512 is a display means responsive to the processing means, the display means

9    displaying the colors associated with the Color Data Values accessed by the selected mode. The

10   display means disclosed in AED512 is the same or equivalent structure of a computer monitor,

11   TV, video projection system, LCD or an LED display disclosed in the '759 patent. ('759 patent,

12   Col. 4:50-55). The AED 512 has a Color Memory called a "Color Lookup Table" in the AED 512

13   documentation. The AED 512 also has a Video Memory which indexes the Color Memory to

14   produce the display. (AED512, TCP-2, "Color Lookup Table, …., Video Memory Plane Masking

15   Registers"). Furthermore, the AED512-2 brochure discloses that the analog display is created by

16   mapping of the Video Memory contents through the color map setting, or in other words, the Color

17   Memory which contains the Color Data Values. (AED512-2, "System Architecture – Video

18   Storage"). Based on the foregoing, AED512 anticipates claim 1 of the '759 patent.

19       79.    AED512 discloses a digital image display system, a Color Memory for storing

20   Color Data Values and a processing means responsive to predetermined commands and data, the

21   processing means, responsive to a first command, selecting a mode of access to the Color

22   Memory. Each of these claim limitations is disclosed by AED512 as discussed above in relation

23   to claim 1. Claim 2 additionally calls for "a second command, setting a color data value in the

24   color memory." AED512 discloses all the claim limitations of Claim 2 including a command for

25   setting or storing a Color Data Value in Color Memory. AED512 discloses the "SCT addr n (ri gi

26   bi)" command which is used to write Color Data Values into the Color Memory. (AED512, TCP-

27   2, "Color Lookup Table – SCT addr n (ri gi bi)"). Because AED512 discloses this claim limitation

28   and the other claim limitations already discussed in relation to claim 1, AED512 anticipates claim

-30-

Exhibit 21
Page 703

1    2 of the '759 patent.

2        80.    Claim 3 requires a command which sets plural Color Data Values in Color

3    Memory. The AED512 "SCT addr n (ri gi bi)" command is used to write multiple Color Data

4    Values into the Color Memory. (AED512, TCP-2, "Color Lookup Table – SCT addr n (ri gi bi)").

5    The parameter "addr" specifies the first index to write in the Color Memory and the parameter "n"

6    specifies the number of Color Data Values to write. Claim 3 is therefore anticipated by AED512.

7        81.    Claim 4 includes the requirement that the commands be followed by the data. To

8    the extent that the commands Lucent identifies have commands followed by data, AED512

9    commands are followed by their data operands because the commands disclosed by AED512 have

10   a format that is as similar as or more similar to the format of the commands disclosed in the '759

11   patent as the commands identified by Lucent in its infringement contentions.

12       82.    Claim 4 also requires that the display system must display the color image in a

13   terminal independent manner. AED512 discloses displaying a color image in a terminal

14   independent manner. AED512 discloses that the display system can be used in the AED512 mode

15   whereby the commands issued to the AED512 are interpreted and performed as described in the

16   reference. In addition, it is also possible to execute commands in "Tektronix Emulation" mode.

17   (AED512, TCP-7, "Tektronix Emulation"). This allows the AED512 to act as either an AED512

18   terminal or a Tektronix terminal. By having the ability to emulate multiple different display

19   systems having varying color capabilities, this achieves terminal independence as this concept is

20   taught in the '759 patent. ('759 patent, col. 1:39-46)

21       83.    Claim 4 also requires a third command for accessing Color Data Values in the

22   Color Memory. To the extent that Lucent's identification of commands which affect the image

23   shown on the display satisfy the claim limitation of a third command for accessing Color Data

24   Values in the Color Memory, AED512 discloses a third command for accessing Color Data Values

25   in the Color Memory. AED512 discloses the "WRD - Write Raster Direct" command which

26   writes images directly to the Video Memory and thus determines what Color Data Values are

27   accessed for the Color Memory thereby modifying the image on the display screen. (AED512,

28   TCP-9, "WRD - Write Raster Direct"). Furthermore, the AED512-2 brochure discloses reading

-31-

Exhibit 21
Page 704

1  Color Data Values to produce an image on the display. (AED512, System Architecture – Video

2  Storage, "The resultant analog video display signal is created by mapping of the video memory

3  contents through the color map settings.").

4          D.      Sloan: "Color Map Techniques"

5          84.     I have reviewed the professional technical journal article title "Color Map

6  Techniques" by Kenneth R. Sloan, Jr. and Christopher M. Brown. ("Sloan"). This article

7  appeared in the October, 1979 issue of <u>Computer Graphics and Image Processing</u> predating the

8  priority date of the '759 patent of May 19, 1981.  . The Sloan article makes obvious claims 2-3 of

9  the '759 patent thereby invalidating these claims of the patent. A chart form analysis of how the

10  Sloan article makes obvious the claims of the '759 patent is presented in Exhibit 5 to this report.

11          E.      Ramtek: "9000 Series Graphic Display System Programming Manual"

12          85.     I have reviewed the technical manual title "Ramtek Programming Manual 9000

13  Series (RM 9100, 9200, 9300) Graphic Display System". ("Ramtek Manual"). This manual has a

14  date on the inside cover of March, 1977 predating the priority date of the '759 patent of May 19,

15  1981 by more than a year. (GW-LT 264951). The Ramtek Manual describes the instruction

16  programming of a digital image display system developed by Ramtek in 1977.  The Ramtek

17  Manual anticipates claims 2 - 4 of the '759 patent thereby invalidating these claims of the patent.

18  A chart form analysis of how this manual anticipates the claims 2 – 4 of the '759 patent is

19  presented in Exhibit 6 to this report. I will now review and elaborate on this analysis.

20          86.     The Ramtek Manual anticipates claim 2 of the '759 patent. The Ramtek Manual

21  discloses a digital image display system as is discussed in the '759 patent. The Ramtek system is a

22  display system which can interpret data and compose an image in refresh memory. (Ramtek

23  Manual, p. 1-1). The Ramtek manual also discloses a memory for storing Color Data Values. The

24  Ramtek system discloses that the RM-V2 video generator has a 1024 x 12 bit Color Look-up Table

25  or Color Memory which contains Color Data Values. (Ramtek Manual, p. 2-11). The Color

26  Memory is accessed by the Video Memory to provide Color Data Values to the graphics display.

27  (Ramtek Manual, p. 1-1, p. A-1)

28          87.     The Ramtek Manual also discloses a processing means responsive to predetermined

-32-

Exhibit 21
Page 705

1    commands and data, the processing means responsive to a first command, selecting a mode of

2    access to the Color Memory.  The Ramtek Manual discloses an Intel 8080 microprocessor which is

3    responsible to control the generation of display data to the refresh memory. (Ramtek Manual, p. 2-

4    10).  Furthermore, the Ramtek Manual discloses the use of different modes of operation.

5    Specifically, the Ramtek Manual discloses Data Modes.  (Ramtek Manual, p. 3-17 to 3-19, Table

6    3-1 and 3-2 at p. 3-18 to 3-19).  To the extent that the commands and data accused by Lucent

7    constitute the required selection of modes of access, then what the Ramtek Manual discloses also

8    satisfies the required "predetermined command and data sequence" in that what the Ramtek

9    Manual discloses will affect the screen display to the same extent as the commands for selecting

10   display modes accused by Lucent in its infringement contentions.

11           88.     To the extent that Lucent has identified accused structure for satisfying the means

12   plus function claim element of "processing means responsive to predetermined command and

13   data sequences, the processing means, responsive to a first command, selecting a mode of access

14   to the color memory," the Ramtek Manual discloses structure that also satisfies that element, in

15   that the Ramtek Manual discloses a processor responsive to commands and parameters selecting

16   modes of access to Color Data Values which is the basis for Lucent's identification of supposedly

17   satisfying structure.  In short, at least to the extent that Lucent contends that the accused products

18   contain structure which is the same as or equivalent to the patent's structure corresponding to the

19   disclosed means, the Ramtek Manual discloses structure that similarly satisfies that element.

20           89.     The Ramtek Manual discloses a second command for setting or storing a Color

21   Data Value in Color Memory.  The Ramtek Manual discloses the LAM instruction for loading the

22   Color or Look-up Memory of the Ramtek System.  (Ramtek Manual, p. 3-75, "3-42 Load

23   Auxiliary Memory Instruction (LAM)").  (See also Ramtek Manual, A-2).

24           90.     The Ramtek Manual discloses a display means responsive to the processing means,

25   the display means displaying the colors associated with the Color Data Values accessed by the

26   selected mode. The display means disclosed in the Ramtek Manual is the same or equivalent

27   structure of a computer monitor, TV, video projection system, LCD or an LED display disclosed

28   in the '759 patent.  ('759 patent, Col. 4:50-55). The Ramtek Manual discloses that the Intel 8080

-33-

Exhibit 21
Page 706

1    microprocessor is responsible for generating the display data for the refresh memory.  (Ramtek

2    Manual, p. 2-10).  Furthermore, the Ramtek Manual discloses that the refresh memories supply

3    the color information to the display means. (Ramtek Manual, p. 2-11, "It is these [Refresh]

4    memories which supply color or intensity information for each pixel to the various video

5    generator modules."). Also (Ramtek Manual, p. 1-1 – 1-2, "The responsibility of the display

6    monitor is to accept analog information from the video generator and excite the phosphor on the

7    screen face, thereby producing an image which visually present information to an observer.")

8    The Ramtek Manual therefore discloses a computer and thus the Ramtek Manual anticipates

9    claim 2 of the '759 patent.

10          91.    The Ramtek Manual also anticipates Claim 3 of the '759 patent.  The Ramtek

11   Manual discloses a display system with a processing means responsive a second command which

12   sets plural Color Data Values in Color Memory. The LAM command is able to write multiple

13   Color Data Values to the Color Memory in one command execution.  (Ramtek Manual, p. 3-76 –

14   3-77, "…the LAM instruction is used to write data to the video look-up tables on Type II video

15   boards if one of these devices exists in a given system.  …  LENGTH  Defines the number of

16   bytes of data to be written to the auxiliary memory device.").  (See also Ramtek Manual, A-1 – A-

17   2).  Therefore, the Ramtek Manual anticipates Claim 3 of the '759 patent.

18          92.    Claim 4 includes the requirement that the commands be followed by the data.  To

19   the extent that the commands Lucent identifies have commands followed by data, the Ramtek

20   Manual commands are followed by their data operands because the commands disclosed by the

21   Ramtek Manual have a format that is as similar as or more similar to the format of the commands

22   disclosed in the '759 patent as the commands identified by Lucent in its infringement contentions.

23          93.    Claim 4 also requires that the display system must display the color image in a

24   terminal independent manner.  The Ramtek Manual discloses displaying a color image in a

25   terminal independent manner.  The Ramtek Manual discloses that the same display system and set

26   of instructions can be used for the Ramtek display system model RM-9100, 9200 and 9300.

27   (Ramtek Manual, p. 2-8).  To the extent that Lucent infringement contentions applied to different

28   models of the IBM PC compatibles satisfies the claimed terminal independence, the Ramtek

-34-

Exhibit 21
Page 707

1    Manual discloses the same terminal independence.

2        94.    The Ramtek Manual also discloses a command for accessing Color data Values in

3    that the references discloses reading Color data Values to produce an image display. (Ramtek

4    Manual, p. 1-1, "Pseudo color is achieved by way of a random access table which is indexed by

5    the binary weighted value of each element as described within the refresh memory."). Also

6    (Ramtek Manual, p. 3-65). Therefore, the Ramtek Manual anticipates Claim 4 of the '759 patent.

7        **F.    ADI: "LIGHT 50 User's Manual"**

8        95.    I have reviewed the technical manual title "ADI User's Guide – LIGHT 50".

9    ("ADI"). This manual has a copyright date on the inside cover of 1980 predating the priority date

10    of the '759 patent of May 19, 1981. (DELL 313226) ADI is the user's programming manual of

11    the LIGHT 50 digital image display system developed by Applied Dynamics International in 1980.

12    ADI anticipates claims 2 - 4 of the '759 patent thereby invalidating these claims of the patent. A

13    chart form analysis of how this manual anticipates the claims 2 – 4 of the '759 patent is presented

14    in Exhibit 7 to this report. I will now review and elaborate on this analysis.

15        96.    ADI discloses a digital image display system as is discussed in the '759 patent. The

16    ADI LIGHT 50 discloses a display system which can attach directly to a minicomputer via a

17    parallel interface serving a frame buffer, graphics processor, and/or image processor. (ADI, p. 1).

18    ADI also discloses a memory for storing Color Data Values. ADI discloses a video look-up table

19    loaded under control of the LIGHT firmware is used to map or encode data values [Pixel Values]

20    into colors [Color Data Values]. (ADI, p. 7). The Color Memory is accessed by the Video

21    Memory to provide Color Data Values to the graphics display. (ADI, p. 7)

22        97.    ADI also discloses a processing means responsive to predetermined commands and

23    data, the processing means responsive to a first command, and selecting a mode of access to the

24    Color Memory. (ADI, p.1). ADI discloses that commands are followed by a string of operands.

25    (ADI, p.2). ADI discloses a TMS9900 microprocessor which is responsive to commands and data.

26    (ADI, p. 2). Furthermore, ADI discloses different modes of operation. Specifically, ADI discloses

27    the "$F" command which sets various modes such as trace mode, display enable, clipping or

28    various overlay modes. (ADI, p. 22). Also, the XY command selects a particular Color Memory

-35-

Exhibit 21
Page 708

1  which selects a display mode using a selected Color Memory. (ADI, p. 36-37). To the extent that

2  the commands and data accused by Lucent constitute the required selection of modes of access,

3  then what ADI discloses also satisfies the required selection of modes of access in that what ADI

4  discloses will also change the screen display seen by the user through the decoding of commands

5  and data.

6      98.    Also, to the extent that Lucent has identified accused structure for satisfying the

7  means plus function claim element of "processing means responsive to predetermined command

8  and data sequences, the processing means, responsive to a first command, selecting a mode of

9  access to the color memory," ADI discloses structure that also satisfies that element, in that ADI

10  discloses a processor responsive to commands and parameters selecting modes of access to Color

11  Data Values which is the basis for Lucent's identification of supposedly satisfying structure. In

12  short, at least to the extent that Lucent contends that the accused products contain structure which

13  is the same as or equivalent to the patent's structure corresponding to the disclosed means, ADI

14  discloses structure that similarly satisfies that element.

15      99.    ADI discloses a second command for setting or storing a Color Data Value in Color

16  Memory. ADI discloses the "E" and the "XE" commands for loading the Color or Look-up

17  Memory of the LIGHT 50 System. (ADI, p.43, 49).

18      100.    ADI discloses a display means responsive to the processing means, the display

19  means displaying the colors associated with the Color Data Values accessed by the selected mode.

20  The display means disclosed in ADI is the same or equivalent structure of a computer monitor,

21  TV, video projection system, LCD or an LED display disclosed in the '759 patent. ('759 patent,

22  Col. 4:50-55). ADI discloses that "the data value [Pixel value] from the image being displayed is

23  used to address a location in the video look-up table [Color Memory]. The data obtained in the

24  video look-up table is used to generate color in the corresponding pixel or pixels on the display

25  screen". (ADI, p. 7). Based on the foregoing, ADI anticipates claim 2 of the '759 patent.

26      101.    ADI anticipates Claim 3 of the '759 patent. ADI discloses a display system with a

27  processing means responsive a second command which sets plural Color Data Values in Color

28  Memory. The "E" command is able to write multiple Color Data Values to the Color Memory in

-36-

Exhibit 21
Page 709

1   one command execution when it takes select negative numeric parameters. (ADI, p. 47).

2        102.    Claim 4 includes the requirements of claims 2-3 for a Color Memory, receiving and

3   responding to commands and data, reading and responding to commands and data for selecting a

4   mode of access, reading and responding to commands and data for setting Color Data Values and

5   displaying a color image associated with the Color Data Values. Each of these requirements has

6   been discussed above. As to the additional requirement of claim 4 that commands be followed by

7   data, to the extent that the commands identified by Lucent in their infringement contentions satisfy

8   this requirement so does ADI, since each disclosed ADI command is an alphanumeric command

9   followed by data operands.

10       103.    Claim 4 also requires that the display system must display the color image in a

11  terminal independent manner. ADI discloses that the same display system and set of commands

12  can be used for all the display systems developed by ADI.    (ADI, p. 2, "The LIGHT command set

13  is homogeneous (uniform) not only for all of the display generators in the product line but, also for

14  all input ports of each device."). To the extent that Lucent infringement contentions applied to

15  different models of the IBM PC compatibles meets the claimed terminal independence, ADI

16  discloses the same terminal independence.

17       104.    Claim 4 also requires a third command for accessing Color Data Values in the

18  Color Memory. To the extent that Lucent's identification of commands which affect the image

19  shown on the display satisfy the claim limitation of a third command for accessing Color Data

20  Values in the Color Memory, ADI discloses a third command for accessing Color Data Values in

21  the Color Memory. ADI discloses the "XY" command which selects which Color Memory to use

22  for accessing Color Data Values. (ADI, p. 36). Based on the foregoing, ADI anticipates claim 4

23  of the '759 patent.

24       **G.      Mueller: "Mueller Patent"**

25       105.    I have reviewed U.S. patent Number 4,213,189 ("'189 patent") title "Reactive

26  Computer System Adaptive to a Plurality of Program Inputs." With David J. Mueller, Daniel G.

27  Prysby, John V. Moravec and George A. Watson listed as inventors. ("Mueller"). The '189 patent

28  was filed on June 13, 1977 and was issued as a United States Patent on July 15, 1980. This issue

-37-

Exhibit 21
Page 710

1    date predates the priority date of the '759 patent of May 19, 1981.  The Mueller patent anticipates

2    claims 2-3 of the '759 patent.  Furthermore, the Mueller patent in combination with Foley makes

3    obvious claim 1 and 4 of the '759 patent.  A chart form analysis of how the Mueller anticipates

4    claims 2 and 3 of the '759 patent and in combination with Foley makes obvious claims 1 and 4 is

5    presented in Exhibit 8 to this report.  I will now review and elaborate on this analysis.

6        106.    Mueller anticipates claim 2 of the '759 patent.  Mueller discloses the same type of

7    display system as is discussed in the '759 patent and discloses a computer system with a random

8    access memory which holds an image of a graphic display which the computer can change to alter

9    the displayed image. (Mueller, abstract, col. 4:1-28, 7:28-36).  An image can be formed by a

10   textual display in one mode and a graphic or "paint" mode of display in another mode.  (Mueller,

11   col. 4:29-60).  Mueller also discloses a Color Memory for storing Color Data Values.  (Mueller,

12   col. 7:49-52, 17:14-23).  The Color Memory described in Mueller has the capacity to store eight

13   Color Data Values and each Color Data value has the ability to display any of 64 different colors.

14   (Mueller, col. 7:49-59).

15       107.    Mueller discloses a processing means responsive to predetermined commands and

16   data. (Mueller, Figure 5A, col. 6:68 – 7:5).  Mueller discloses that the processing means is

17   comprised of a microprocessor that decodes the predetermined commands and data retrieved from

18   random access memory.  (Mueller, Figure 5A, col. 8:36-45, col. 8:59-63).  The predetermined

19   commands and data can select a mode of access to Color Data Values including selecting a mode

20   whereby an in-use foreground color is specified as an index into the Color memory and/or an in-

21   use background color is also specified as described below.  Mueller further describes the display

22   system operating in text mode or in graphics or "paint" mode.  (Mueller, col. 4:29-60). To the

23   extent that the "Set Video Mode" BIOS command or the "SetVBEMode" VESA command

24   accused by Lucent constitute the required "predetermined command and data sequence," then

25   what Mueller discloses also satisfies the required "predetermined command and data sequence" in

26   that what Mueller discloses will affect the screen display to the same extent as the commands for

27   selecting display modes accused by Lucent in its infringement contentions.

28       108.    To the extent that Lucent has identified accused structure for satisfying the means

-38-

Exhibit 21
Page 711

1  plus function claim element of "processing means responsive to predetermined command and

2  data sequences, the processing means, responsive to a first command, selecting a mode of access

3  to the color memory," Mueller discloses structure that also satisfies that element, in that Mueller

4  discloses a processor responsive to commands and parameters selecting modes of access to Color

5  Data Values which is the basis for Lucent's identification of supposedly satisfying structure.  In

6  short, at least to the extent that Lucent contends that the accused products contain structure which

7  is the same as or equivalent to the patent's structure corresponding to the disclosed means,

8  Mueller discloses structure that similarly satisfies that element.

9       109.    Mueller discloses a second command, setting a Color Data Value in the Color

10  Memory.  Mueller discloses that the Color Memory may be changed from time to time.  (Mueller,

11  col. 7:32-62)  Mueller also discloses that the Color Memory may be changed during the display

12  vertical refresh. (Mueller, col. 19:34-47).  Mueller also discloses that the Color Memory may be

13  changed from information read from a magnetic tape.  (Mueller, col. 28:51 – 29:18).

14       110.    Mueller discloses a display means responsive to the processing means, the display

15  means displaying the colors associated with the Color Data Values accessed by the selected mode.

16  (Mueller, Figure 1, Figure 5a, abstract, col. 4:29-47, col. 6:50-54, col. 10:50-64).  The display

17  means disclosed in Mueller is the same or equivalent structure of a computer monitor, TV, video

18  projection system, LCD or an LED display disclosed in the '759 patent.  ('759 patent, Col. 4:50-

19  55).  Mueller discloses that the described system has a Color Memory capable of storing a finite

20  number of colors from which the colors for a given frame or colored image may be chosen.

21  (Mueller, col. 7:49-52).  Therefore, Mueller anticipates claim 2 of the '759 patent.

22       111.    Mueller also anticipates Claim 3 of the '759 patent.  Mueller discloses a display

23  system with a processing means responsive to commands which sets plural Color Data Values in

24  Color Memory as required by claim 3. Mueller discloses that a block of Color Data Values may be

25  transferred to the RAM and then on to the Color Memory to cause the display of a colored image.

26  (Mueller, col. 4:17-28).  Furthermore, Mueller discloses that a magnetic tape may hold a "palette

27  of colors" which may be written into the Color Memory to cause the display of a digital image.

28  (Mueller, col. 28:51 – 29:18).  As Claim 3 is dependent on Claim 2 and Mueller discloses the

-39-

Exhibit 21
Page 712

1    additional claim requirements of claim 3, Mueller anticipates Claim 3 of the '759 patent.

2        112.    Mueller makes obvious Claim 4 of the '759 patent. Claim 4 includes the

3    requirements of claims 2-3 of a Color Memory, receiving and responding to commands and data,

4    reading and responding to commands and data for selecting a mode of access, reading and

5    responding to commands and data for setting Color Data Values and displaying a color image

6    associated with the Color Data Values. Each of these requirements has been discussed above.

7        113.    As to the additional requirement of claim 4 that commands be followed by data, the

8    microprocessor disclosed by Mueller has commands that are followed by data operands because

9    the microprocessor disclosed by Mueller executes instructions from a ROM. These instructions

10    perform mathematical and logical operations would therefore have a format that is as similar as or

11    more similar to the format of the commands disclosed in the '759 patent as the commands

12    identified by Lucent in its infringement contentions. (Mueller, Abstract, col. 8: 36-63).

13        114.    Claim 4 also requires that the display system must display the color image in a

14    terminal independent manner. Mueller along with Foley discloses terminal independence as

15    discussed below. To the extent that Lucent infringement contentions applied to different models

16    of the IBM PC compatibles meets the claimed terminal independence, Mueller along with Foley

17    discloses the same terminal independence.

18        115.    Claim 4 also requires a third command for accessing Color Data Values in the

19    Color Memory. To the extent that Lucent's identification of commands which affect the image

20    shown on the display satisfy the claim limitation of a third command for accessing Color Data

21    Values in the Color Memory, Mueller discloses a third command for accessing Color Data Values

22    in the Color Memory. Mueller discloses commands for reading a tape storage unit to loading a

23    memory to display images on a display screen. (Mueller, col. 15:46-66). Furthermore, Mueller

24    discloses that both the PAINT DOT command and the LOAD NEW COLOR POINTERS

25    command apply a display strobe to an address circuit to enable indexing into the Color Memory

26    to access Color Data Values. (Mueller, col. 19:29-33). Based on the foregoing, Mueller makes

27    obvious claim 4 of the '759 patent.

28        116.    To the extent that claim 1 includes the same requirements as claims 2-4, these

-40-

Exhibit 21
Page 713

1  requirements are satisfied as explained above and in Exhibit 8 to this report.  Mueller discloses

2  selecting among multiple modes of access to a Color Memory, including a mode wherein an in-use

3  foreground color is specified as an index into the Color Memory and an in-use foreground and an

4  in-use background color are also so specified.  Mueller discloses using previously loaded

5  foreground and background registers to determine the particular color pointer, (Color Memory

6  index), to select for display on the display screen.  (Col. 20:34-54)  Furthermore, Mueller

7  discloses loading the foreground and background color registers using the "LOAD NEW COLOR

8  POINTERS" command.  (Mueller, col. 21:38 – col. 22:31).  The second mode of the patent is

9  disclosed by Mueller when the LOAD NEW COLOR POINTERS command is executed to load

10 the foreground color pointer register with an index into the Color Memory.  The third mode of the

11 patent is disclosed by Mueller when the LOAD NEW COLOR POINTERS command is executed

12 to load the foreground color pointer and the background color pointer registers with indices into

13 the Color Memory.

14         117.    Mueller does not expressly disclose a first mode of access wherein an in-use

15 foreground color is directly specified as a Color Data Value.  However, Mueller itself suggests

16 such a mode by its discussion of the "PAINTBOX" application which permits a user to directly

17 specify what color should be used for subsequent foreground drawing commands.  (Mueller, col.

18 14:3-41).  Moreover, such a modification of Mueller would have been obvious because of the

19 Foley paper discussed above.  Specifically, Foley's technique by which the system searches the

20 Color Memory for the best match to a RGB value discloses a first mode of access to the Color

21 Memory.  Also, as previously discussed in relation to the claim 4 anticipation as it relates to Foley,

22 Foley also discloses terminal independence because it permits the software to be used with

23 systems having varying color capabilities. (Foley, p. 16).

24         118.    Motivation to combine Mueller with the Foley paper can be found expressly in the

25 treatise "Principles of Interactive Computer Graphics" by Newman & Sproull (2d ed. 1979) (at

26 441), which expressly suggests the reference to the "Core system" design project of the Graphics

27 Standards Planning Committee of SIGGRAPH with regard to development of device-independent

28 graphics systems. ("To achieve absolute portability of applications on a wide scale, a *standard*

-41-

Exhibit 21
Page 714

1    graphics package is needed.  The argument to design and implement such a standard is persuasive,

2    since a high degree of portability would result, greatly decreasing application programming costs.

3     The most successful interactive application programs are often written without any expectation of

4    wide usage, and would be much more widely useful if based on a standard graphics package.  This

5    argument has led to various standardization efforts, including the 'Core System' design project of

6    SIGGRAPH, the ACM Special Interest Group on Computer Graphics.").  (Conclusion to chapter

7    entitled "Device Independent Graphics Systems").  Quite apart from the knowledge of one of

8    ordinary skill in the art, and the nature of the problem to be solved as a whole, which in my

9    opinion would have suggested to one of ordinary skill in the art to implement a terminal

10    independent system, given that Newman and Sproull suggest that a graphics standard such as

11    CORE should be implemented on graphics systems, it would have been obvious to one of ordinary

12    skill in the art to implement a terminal independent system such as the CORE standard as discloses

13    by Foley on the display system disclosed by Mueller.  Along with the disclosure of the

14    PAINTBOX system in Mueller, this would have made obvious the first mode of Claim 1.

15    **H.    Kanade: "Image I/O Device for Image Processing: Color TV Display and TV**

16    **Camera Input"**

17    119.    I have reviewed the technical paper title "Image I/O Device for Image Processing:

18    Color TV Display and TV Camera Input".  ("Kanade").  I understand that this paper was published

19    in Interface on August 1, 1976 which predates the priority date of the '759 patent of May 19, 1981

20    by more than a year.   Kanade anticipates claims 2 - 3 of the '759 patent and thereby invalidating

21    these claims of the patent.  A chart form analysis of how this paper anticipates the claims 2 – 3 of

22    the '759 patent is presented in Exhibit 9 to this report.  I will now review and elaborate on this

23    analysis.

24    120.    Kanade anticipates claim 2 of the '759 patent.  Kanade discloses a digital image

25    display system as is discussed in the '759 patent made up of a Color TV Display Unit, 3 display

26    modes, a Color specification joystick and a Cursor Control joystick.  (Kanade, Figures 1, 2, DELL

27    345403-345404).  Kanade also discloses a memory for storing Color Data Values. Kanade

28    discloses a Video Memory which uses a 32 bits x 8K word MOS/RAM Toko TM350 memory

-42-

**Exhibit 21**
**Page 715**

system and a Color Memory made up of 15 bits x 256 small capacity Schottky bipolar RAM (defined by Kanade as the "submemory"). (Kanade, DELL 345405). The Color Memory is accessed by the Video Memory to provide Color Data Values to the graphics display. (Kanade, DELL 345406, Figure 4)

121. Kanade discloses a processing means responsive to predetermined commands and data, the processing means responsive to a first command, selecting a mode of access to the Color Memory. (Kanade, DELL 345403). Kanade discloses the use of a MACC7/F minicomputer which is responsive to commands and data (Kanade, DELL 345403, DELL 345425). Furthermore, Kanade discloses different modes of operation. Specifically, Kanade discloses the operating the display system in indirect mode A and indirect mode B. (Kanade, DELL 345403-345404, DELL 345406-345407, DELL 345427, Figure 20). To the extent that the commands and data accused by Lucent constitute the required selection of modes of access, then what Kanade discloses also satisfies the required selection of modes of access in that what Kanade discloses will affect the screen display to the same extent as the commands for selecting display modes accused by Lucent in its infringement contentions.

122. To the extent that Lucent has identified accused structure for satisfying the means plus function claim element of "processing means responsive to predetermined command and data sequences, the processing means, responsive to a first command, selecting a mode of access to the color memory," Kanade discloses structure that also satisfies that element, in that Kanade discloses a processor responsive to commands and parameters selecting modes of access to Color Data Values which is the basis for Lucent's identification of supposedly satisfying structure. In short, at least to the extent that Lucent contends that the accused products contain structure which is the same as or equivalent to the patent's structure corresponding to the disclosed means, Kanade discloses structure that similarly satisfies that element.

123. Kanade also discloses writing Color Data Value to the Color Memory, which necessarily is implemented by some type of command and data. (Kanade, DELL 345427, DELL 345417- DELL 345418, Figure 13, "The submemory R/W select is normally in the read state (except when the MACC is writing to the submemory).").

-43-

Exhibit 21
Page 716

124.    Kanade discloses a display means responsive to the processing means, the display means displaying the colors associated with the Color Data Values accessed by the selected mode. The display means disclosed in Kanade is the same or equivalent structure of a computer monitor, TV, video projection system, LCD or an LED display disclosed in the '759 patent. ('759 patent, Col. 4:50-55). Kanade discloses a color TV display composed of a Sony KV1611 television with a refresh rate of 60 frames/sec that operates in three display modes of which indirect display mode A and indirect display mode B display Color Data Values from the Color memory. (Kanade, DELL 345403-345404).

125.    Kanade discloses a display system with a processing means responsive a second command which sets plural Color Data Values in Color Memory as required by Claim 3. Kanade discloses an algorithm for setting values in the Color Memory to display a multi-band photograph. Kanade also discloses how to perform pseudo color enhancement by rewriting the Color Memory. (Kanade, p. DELL 345427-345428).

126.    The algorithms Kanade discloses can be written into computer routines. In its infringement contentions, Lucent has identified the computer routine "SetPaletteEntries" as satisfying this claim limitation of Claim 3. To the extent that this routine which is made up of many computer instructions can satisfy this claim limitation of a second command which sets plural Color Data Values in Color Memory, the routine described by Kanade also satisfies this claim limitation.

**VII.    ADDITIONAL INFORMATION AND EXHIBITS**

127.    The opinions in this Report are based upon my consideration of the materials I have reviewed to date. Should additional information become available, the information and opinions presented herein may be supplemented or amended. At trial, I may use graphics, animations, pictures, demonstrations, and/or other audio/visual aids to explain the technical issues relevant of this case.

-44-

Exhibit 21
Page 717

1        I declare under penalty of perjury that the foregoing is true and correct. Executed this 31 st

2    day of March 2006 at Sunnyvale, California.

3

4

5

6    DR. ROBERT G. WEDIG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-45-

**Exhibit 21**
**Page 718**

## PROOF OF SERVICE

I am employed in the County of San Diego. My business address is Fish & Richardson P.C., 12390 El Camino Real, San Diego, California 92130. I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with U.S. Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On March 31, 2006, I caused a copy of the following document(s):

**EXPERT REPORT OF DR. ROBERT G. WEDIG ON THE INVALIDITY OF U.S. PATENT NUMBER 4,439,759**

to be served on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

| | |
|---|---|
| Jane Hahn<br>Alison P. Adema<br>Hahn & Adema<br>501 West Broadway, Suite 1730<br>San Diego, CA 92101<br>Telephone: (619) 235-2100<br>Facsimile: (619) 235-2101<br>*VIA FACSIMILE & ELECTRONIC MAIL* | Attorneys for Plaintiffs<br>LUCENT TECHNOLOGIES INC.<br><br>Email: janehahn@hahnadema.com<br>aadema@hahnadema.com |
| David J. Zubkoff<br>Seltzer, Caplan, McMahon & Vitek<br>2100 Symphony Towers<br>750 B Street, Suite 2100<br>San Diego, CA 92101<br>Telephone: (619) 685-3003<br>Facsimile: (619) 702-6827<br>*VIA FACSIMILE & ELECTRONIC MAIL* | Attorneys for Defendants<br>GATEWAY, INC. and GATEWAY<br>COUNTRY STORES LLC<br><br>Email: zubkoff@scmv.com |
| James S. Blackburn<br>Arnold & Porter LLP - (L.A.)<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 243-4000<br>Facsimile: (213) 243-4199<br>*VIA FACSIMILE & ELECTRONIC MAIL* | Attorneys for Defendant<br>DELL INC.<br><br>Email: james_blackburn@aporter.com |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on March 31, 2006, at San Diego, California.

Susan Rodriguez

**Exhibit 21**
**Page 719**

1

### COURTESY COPIES BY ELECTRONIC MAIL TO:

2

Trial Counsel For Lucent:
Jon T. Hohenthaner/Alan Kellman/James Bailey

3

Kirkland & Ellis LLP
Citicorp Center

4

153 East 53rd Street

5

New York, NY 10022-4675
E-mail:        jhohenthaner@kirkland.com; akellman@kirkland.com; jbailey@kirkland.com

6

7

Trial Counsel for Gateway:
Bryan Farney / Jeffrey B. Plies / Lawrence Fluker
DECHERT LLP

8

106 East 6th Street, Ste. 800
Austin, TX 78701

9

Email:        bryan.farney@dechert.com; jeff.plies@dechert.com; lawrence.fluker@decher.com

10

Trial Counsel for Dell:
Sidney A. Rosenzweig

11

Arnold & Porter LLP
555 Twelfth Street, N.W.

12

Washington, D.C. 20004-1206
E-mail:        sidney_rosenzweig@aporter.com

13

14

Trial Counsel for Dell:
Joel Freed, Esq.

15

McDermott Will & Emery LLP
600 13th Street, N.W.

16

Washington, DC 20005-3096

17

Email:        jfreed@mwe.com

18

19

Courtesy Emails include:

20

| XX | **All documents filed/served** | All Pleadings filed or served were included in the email along with any exhibits |

21

22

| | **Main Pleading documents (without exhibits)** | All Main Pleading documents were included in the email, except for exhibits.  Exhibits were over 50 pages long.  As per our service agreement, a hard copy will follow via overnight mail |

23

24

25

26

27

28

Case No. 02-CV-2060 B (CAB)

2

**Exhibit 21**
**Page 720**