**EXHIBITS TABLE OF CONTENTS**

| Exhibit | Document | Page No. |
|---|---|---|
| 1 | U.S. Patent No. 4,763,356 to Day, et al., marked with Bates range LUC 1004455-81 | 12 |
| 2 | Order Denying Plaintiff's and Defendants' Cross-Motions Regarding the Invalidity of U.S. Patent No. 4,763,356, dated May 15, 2007 [Docket No. 1795] | 39 |
| 3 | "Touch Screens: Big Deal or No Deal?," Michael Tyler, DATAMATION, dated January 1984, marked with Bates range GW-LT422215-22 | 47 |
| 4 | Excerpts of the deposition Michael E. Farmer, taken February 23, 2006 | 55 |
| 5 | Excerpts of The Home Accountant and Financial Planner for the Macintosh, dated 1984, marked with Bates range MSLT_1060811-813 | 67 |
| 6 | Excerpts of the deposition of Dale Buscaino, taken November 7, 2007 | 73 |
| 7 | Claim Construction Order Clarifying and Superceding the Order of March 1, 2004, Construing Claims for U.S. Patent No. 4,763,356 [Docket No. 1552], dated April 17, 2007 | 79 |
| 8 | U.S. Patent No. 4,439,759 to Fleming et al., marked with Bates range LUC1114390-409 | 88 |
| 9 | "Final Report – NASA Grant NSG 1508, Extension of the Core Graphics System for Raster Graphics Display," James D. Foley, marked with Bates range DELL366644-799 | 108 |
| 10 | Supplemental Rebuttal Expert Report of Jake Richter, dated October 12, 2007 | 264 |
| 11 | Excerpts of the deposition of Jake Richter, taken November 14, 2007 | 286 |
| 12 | Order Construing Claims for United States Patent Number 4,439,759, dated November 15, 2005 | 311 |
| 13 | Supplemental Expert Report of Dr. Robert G. Wedig on the Invalidity of U.S. Patent Number 4,439,759, dated September 14, 2007 | 321 |
| 14 | Affidavit of Jean A. Pec, with Exhibits A-B, dated September 14, 2007 | 409 |
| 15 | Status Report of the Graphics Standards Planning Committee, Computer Graphics, Vol. 11, No. 3, Fall 1977, marked with Bates range GW-LT253851-997 | 574 |
| 16 | Excerpts of the deposition of James D. Foley, taken November 7, 2007 | 721 |
| 17 | Home Information Systems - Provisional Standard, Bell Laboratories, dated April 14, 1981, marked with Bates range LUC 003905-4026. **FILED UNDER SEAL** | 732 |

1

18    Expert Report of Edward J. Delp III Regarding Obviousness,
      dated September 14, 2007 ...............................................................854

2

19    Supplemental Rebuttal Expert Report of Professor Bernd Girod Regarding
      Validity of Lucent's 4,383,272 and 4,958,226 Patents,

3     dated October 12, 2007 ................................................................1011

4

20    Excerpts of the deposition of Bernd Girod, taken on November 20, 2007 ......1045

5

21    Excerpts of "Digital Pictures: Representation and Compression," Arun N.
      Netravali and Barry G. Haskell, 1988, marked with Bates range

6     MSLT_0004995-99, 5408, and 5481 ...............................................1084

7

22    Excerpts of the deposition of Barry Haskell, taken December 15, 2005.
      **FILED UNDER SEAL**...............................................................1103

8

9

23    Translation of the Master's Thesis of Thomas Micke, entitled
      "Comparison of a Predictive and an Interpolative Motion Compensating
      Coding Method for Television Signals, April 1986, marked with Bates

10    range GW-LT255053-131 ...............................................................1094

11

24    U.S. Patent No. 4,958,226 to Haskell, et al., marked with Bates range
      LUC1112272-77 ..........................................................................1182

12

25    Order Construing Claims for United States Patent Number 4,958,226,

13    dated July 14, 2005 ......................................................................1188

14

26    Copyright Information for Digital Pictures, marked with Bates range
      DELL318997-99 ...........................................................................1194

15

27    Affidavit of Michael A. Davis, Jr., dated March 12, 1999, with

16    Exhibits A-F, marked with Bates range DELL320793-800 ...........................1197

17

28    "A Hybrid Interpolative and Predictive Code for the Embedded
      Transmission of Broadcast Quality Television Picture," N.K. Lodge,

18    marked with Bates range DELL318140-47 ..........................................1205

19

29    A Hybrid Scheme of Subsampled DPCM and Interpolative DPCM for
      the HDTV Coding," Masayuki Tanimoto, July 1987, marked with Bates

20    range DELL318251-54 ..................................................................1213

21

30    CITT SG XV Working Party Document #81: Comments on Conditional
      Motion Compensated Frame Interpolation," March 1986, marked with

22    Bates range MSLT0625891-94 ........................................................1217

23

31    U.S. Patent No. 4,849,810 to Ericsson, marked with Bates range
      DELL319258-315 ........................................................................1221

24

32    U.S. Patent No. 4,816,914 to Ericsson, marked with Bates range

25    DELL320565-607 ........................................................................1280

26

33    U.S. Patent No. 4,794,455 to Ericsson, marked with Bates range
      DELL319147-73 ..........................................................................1323

27

34    U.S. Patent No. 4,703,350 to Hinman, marked with Bates range

28    DELL320519-37 ..........................................................................1350

- 8 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

35      U.S. Patent No. 4,727,422 to Hinman, marked with Bates range
        MSLT_0001034-51 .................................................................................. 1369

36      U.S. Patent No. 4,661,849 to Hinman, marked with Bates range
        DELL318173-90 ..................................................................................... 1387

37      U.S. Patent No. 4,754492 to Malvar, marked with Bates range
        DELL319037-59 ..................................................................................... 1405

38      Declaration of Thomas Wehberg .......................................................... 1428

39      "The Efficiency of Motion-Compensating Prediction for Hybrid Coding of
        Video Sequences," Bernd Girod, August 1987, marked with Bates range
        MSLT_0233488-502 .............................................................................. 1430

40      "Television Band Compression by Contour Interpolation," Professor D.
        Gabor, et al., May 1961, marked with Bates range MLST0001228-40 .......... 1445

41      "Picture Coding: A Review," Arun N. Netravali and John O. Limb, March
        1980, marked with Bates range MSLT_0001623-63 ....................................... 1459

42      Order Denying-in-Part Dell's Motion for Summary Judgment on U.S.
        Patent No. 4,383,272 [Docket No. 1948], dated July 27, 2007 ...................... 1500

43      Superceding Order Construing Claims for United States Patent Number
        4,383,272, dated August 16, 2005 ................................................................ 1507

44      Order Denying Gateway's Motions for Summary Judgment that U.S.
        Patent No. 4,383,272 is Invalid Under 35 U.S.C. §102(g) and Granting
        Summary Adjudication on Certain Predicate Issues Pertaining to This
        Defense [Docket No. 1948], dated July 12, 2007 ............................................ 1513

45      United States Patent 4,383,272 to Netravali, et al., marked with Bates
        range LUC0001363-73 ...................................................................................... 1519

46      Response to the Examiner dated October 22, 1982, marked with Bates
        range LUC0001428-31 ...................................................................................... 1530

47      Doctorate thesis of Jaswant Raj Jain, entitled "Interframe Adaptive Data
        Compression Techniques for Images," September 1979, marked with
        Bates range MSLT_0001425-622 ..................................................................... 1534

48      Excerpts of the deposition of Delphine Lewis, taken June 30, 2005 .............. 1732

49      Physical exhibit of video excerpts from the videotaped deposition of
        Michael Farmer, taken on February 23, 2006.
        This exhibit a compact disk ("CD").

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIS PAGE INTENTIONALLY LEFT BLANK**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

**THIS PAGE INTENTIONALLY LEFT BLANK**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 42

1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8          **SOUTHERN DISTRICT OF CALIFORNIA**
9
10   LUCENT TECHNOLOGIES, INC.,
     MULTIMEDIA PATENT TRUST
11   TECHNOLOGIES INC., and
     MULTIMEDIA PATENT TRUST INC.
12
         Plaintiffs and Counterclaim-defendants,        **Civil No:** 02CV2060-B(CAB)
13   v.                                                  consolidated with
                                                         **Civil No:** 03CV0699-B (CAB) and
14   GATEWAY, INC. and GATEWAY                            **Civil No:** 03CV1108-B (CAB)
     COUNTRY STORES LLC, GATEWAY
15   COMPANIES, INC., GATEWAY
     MANUFACTURING LLC and                               **ORDER DENYING-IN-PART DELL'S
16   COWABUNGA ENTERPRISES, INC.,                         MOTION FOR SUMMARY JUDGMENT
                                                          ON U.S. PATENT NO. 4,383,272
17          Defendants and Counter-claimants,            [Docket 03CV1108, No. 47]**
18   and
19   MICROSOFT CORPORATION,
20          Intervenor and Counter-claimant,
21   _____
22   AND CONSOLIDATED CASES
23   _____
24
25          Dell moved for summary judgment regarding U.S. Patent No. 4,383,272 ("the 272
26   patent") on four issues: (1) invalidity for lack of written description; (2) invalidity for
27
28                                    1

**Exhibit 42   Page 1500**

1   anticipation; (3) no infringement of Dell's Sonic products; (4) no pre-suit damages.[1]

2   Multimedia Patent Trust Technologies, Inc. and Multimedia Patent Trust (collectively

3   "MPT") opposed the motion.[2]  On July 5, 2007, the Court ruled on the latter two issues and

4   deferred issues (1) and (2) to a later hearing date [02cv2060 Docket No. 1939].  Having

5   now fully heard these remaining two issues, the Court herein **DENIES** Dell's motions as to

6   anticipation and lack of written description of the '272 patent.

7   **I.    BACKGROUND**

8       The '272 patent pertains to video compression technology.  The '272 patent was

9   applied for on April 13, 1981, and issued on May 10, 1983.  Only claim 13 is at issue.  This

10  claim is directed to a method of estimating the intensities of picture elements (pixels) in a

11  picture. Claim 13 was construed by the Court as follows:

12      A method of **estimating** [*determining roughly the size, extent, or nature of*] the
        intensities of elements **(pels)** [*picture elements, also referred to as pixels*] in a
13      **picture** [*an image that occupies a frame*] in accordance with information defining
        **intensities** [*values describing the different color components of a composite signal*
14      *or combinations thereof*] of pels in preceding and succeeding versions of the picture
        including the step of

15      **determining by interpolation intensities of pels in said picture in accordance**
16      **with intensities of pels in related locations in said preceding and succeeding**
        **versions,** [*determining by intensity of pels in the picture by averaging the intensities*
17      *of pels in locations at which the same object is expected to be in the preceding and*
        *succeeding versions*],

18      characterized in that said determining step includes selecting said related locations
19      as a function of the **displacement of objects in said picture** [*the change of position*
        *of objects between said versions of the picture*].

20

21  **II.   STANDARD OF LAW**

22      Federal Rule of Civil Procedure 56(c) provides that summary judgment is

23  appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on

24  _____

25      [1] Microsoft joined these motions as to the invalidity issues; Gateway joined these motions on
    the issue of no infringement by the Sonic Products.

26      [2] MPT is the current asserted owner of the ''272 patent.  The Court recognizes that Defendants
27  have reserved their right to challenge this ownership and to pursue any defenses that relate to MPT
    in this regard; the instant motions and oppositions in no way waive those rights.

28                                                   2

**Exhibit 42   Page 1501**

1   file, together with the affidavits, if any, show that there is no genuine issue as to any

2   material fact and that the moving party is entitled to judgment as a matter of law." In

3   considering the motion, the court must examine all the evidence in the light most favorable

4   to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). If

5   the Court is unable to render summary judgment upon an entire case and finds that a trial is

6   necessary, it shall if practicable grant summary adjudication for any issues as to which,

7   standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

8   **III.    ISSUES FOR SUMMARY ADJUDICATION**

9       **A.    Lack of Written Description**

10          **1.    Procedural Issue**

11       As a first procedural matter, MPT contends that Dell failed to raise this contention

12   before the cut-off date imposed by Magistrate Bencivengo's March 7, 2006 deadline and

13   thus, this defense and Dell's motion thereon should be barred. Dell, however, argues that

14   its first set of interrogatory responses gave adequate notice of this defense. Having

15   reviewed these interrogatory responses, the Court finds that it was sufficient to at least put

16   MPT on inquiry notice of the defense. To the extent MPT required further clarification, it

17   could have pursued inquiries in further interrogatories or by other discovery means. The

18   Court therefore **FINDS** that Dell's defense and motion thereon is **NOT BARRED** fby

19   reason of procedural default by Dell.

20       **2.    The Merits of Dell's Written Description Defense**

21       Dell contends that the breadth of claim 13 is impermissibly broader than the

22   supporting disclosure in the specification. This claim covers a method of estimating the

23   intensities of elements (pels) that includes determining intensities of pels by interpolation.

24   The determining step includes selecting related locations as a function of the displacement

25   of objects in said picture. The latter limitation is the focus of Dell's attack on written

26   description. According to Dell, the '272 patent teaches only one way of estimating the

27   displacement on which the selection of locations is based, the recursive technique. Claim

28                                    3

**Exhibit 42   Page 1502**

13, on the other hand, is not limited to using recursive technique for selecting related locations. Dell therefore argues, based on the Federal Circuit's recent discussion of written description in cases such as <u>LizardTech, Inc. v. Earth Resource Mapping, Inc.</u>, 424 F.3d 1336, 1343-46 (Fed. Cir. 2005), that the patentee did not teach one of skill in the art to make and use the full scope of the claim 13.

To satisfy the written description requirement, the specification must contain a description of all the limitations of the claim. <u>Lockwood v. American Airlines, Inc.</u>, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The '272 patent does not suffer from this problem. The specification describes selecting related locations. It also describes a preferred embodiment in detail which uses a recursive technique for such calculations.

The question, however, turns on whether the patentee was required to disclose more than one technique for selecting related locations to satisfy the written description requirement. "A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." <u>LizardTech</u>, 424 F.3d at 1345. A patentee need not describe every possible embodiment of an invention. <u>Cordis Corp. v. Medtronic AVE, Inc.</u>, 339 F.3d 1352, 1365 (Fed. Cir. 2003). "A specification may . . . contain a written description of a broadly claimed invention without describing all species that the claim encompasses." <u>Id.</u> Written description also considers what one of skill in the art would understand, coming to the patent with the knowledge available in the art. <u>LizardTech</u>, 424 F.3d at 1345.

Thus, the question moves to whether one of skill in the art would have understood that the inventors had conceived of their method using only the recursive technique to select related locations or whether the recursive technique was simply a preferred embodiment. According to MPT, techniques, other than recursive, for assessing the displacement of objects were known in the art and could be used with the claimed methods. MPT's expert also opined that one of skill in the art with such knowledge would appreciate that claim 13 was not limited to only the motion estimation technique embodiment in the

4

Exhibit 42   Page 1503

1    patent.[3]

2          Moreover, the circumstances here differ from those of <u>Lizard Tech</u> and <u>Tronzo</u>,

3    cited by Dell, where it was established that one of skill in the art recognized that the patent

4    taught away from the prior art and thus would have no reason to assume that such prior art

5    was encompassed in the scope of the claimed invention.  <u>LizardTech</u>, 424 F.3d at 1345;

6    <u>Tronzo v. Biomet, Inc.</u>, 156 F.3d 1154, 1159 (Fed. Cir.1998).   Here, Dell has not pointed

7    to anything in the '272 specification that would teach away from using other techniques

8    available in the art to select related locations.  In sum, MPT has raised issues of material

9    fact as to how one of ordinary skill in the art would understand the '272 specification as it

10   relates to the invention of claim 13.  Therefore, Dell's motion regarding lack of written

11   description is **DENIED**.

12        **B.       Anticipation of Claim 13**

13        Dell contends that a 1961 paper entitled "Television Band Compression by Contour

14   Interpolation" by Gabor and Hill (hereinafter "the Gabor & Hill Paper") anticipates claim

15   13 of the '272 patent.  According to Dell's expert, each of the elements of claim 13 is

16   disclosed by this prior art.

17        The Gabor & Hill Paper describes a system of reconstructing frames by contour

18   interpolation.  In this technique, a video picture is sampled by scan lines; these lines run

19   horizontally across the picture.  The Gabor & Hill scans two horizontal lines, sampling

20   intensity information. When a large difference in intensity is detected on one line (which

21   may denote the edge of an object), the scan of the other line doubles in speed until it also

22   detects the edge of the object.  The motion of the object is then estimated based on the

23   velocities of the two scans and their intensities - *i.e.*, halfway between them.

24        The parties dispute whether the Gabor & Hill Paper discloses "determining by

25   interpolation intensities of pels in said picture in accordance with intensities of pels in

26   ─────────────────────

27        [3] Notably, Dell has not offered any expert opinion on how a person of ordinary skill in the art
     would have viewed the '272 patent disclosure.

28                                              5

**Exhibit 42   Page 1504**

1  related locations." According to MPT, because the '272 specification uses the term pel to

2  include temporal, horizontal and vertical dimensions, the '272 patent requires "determining

3  by interpolation" to be performed on a video signal that has been sampled both vertically

4  and horizontally. MPT argues that because the Gabor & Hill Paper does not disclose

5  horizontal sampling (the scans along each horizontal line in the Gabor & Hill Paper are

6  referred to as vertical sampling), it fails to disclose interpolation of pels; it only discloses

7  interpolation in a single dimension. MPT also argues that the Gabor & Hill Paper does not

8  disclose "selecting related locations" as required by claim 13, because selecting where an

9  object is expected to be cannot be accomplished solely by sampling as set forth in Gabor &

10  Hill Paper, which cannot detect purely vertical movement of objects at all.

11      The '272 patent does not explicitly define the word "pels" which it uses

12  interchangeably with "elements in a picture."[4] However, it refers to pels and the sampling

13  of pels with reference to both the horizontal and vertical directions. (See e.g., '272 patent

14  col. 3:41-45, 4:48-52, 9:5-9.) MPT's expert contends that one of skill in the art would

15  understand from this context that pels that *must* include both horizontal and vertical

16  dimensions. Moreover, MPT's expert opines that a person of ordinary skill in the art would

17  find that Gabor & Hill did not disclose a system that uses pels in this same context, but

18  instead discloses a system that uses only scan line signals (sampled in only one dimension).

19  While Dell disagrees with this position, MPT has raised issues of fact that preclude

20  summary judgment. Dell's motion as to anticipation by the Gabor & Hill Paper is therefore

21  **DENIED**.

22  //

23  //

24  //

25  _____

26      [4] Both parties point to various extrinsic evidence for definitions of the term "pels." This
    evidence is far from helpful as it generally attempts to determine the meaning of pels independent

27  from the context of the claim limitation in dispute and independent of the context of the '272
    specification.

28                                         6

Exhibit 42   Page 1505

1    **IV.    CONCLUSION**

2           For the reasons herein, Dell's motions regarding invalidity of the '272 patent for

3    lack of written description and anticipation are **DENIED**.

4

5

6    **IT IS SO ORDERED.**

7

8    DATED:  July 27, 2007

9

10                                        Hon. Rudi M. Brewster
                                          United States Senior District Court Judge
11

12

13

14     cc:  Hon. Cathy Ann Bencivengo
              United States Magistrate Judge
15
              All Counsel of Record
16

17

18

19

20

21

22

23

24

25

26

27

28                                          7

**Exhibit 42    Page 1506**

Exhibit 43

FILED

05 AUG 16 AM 8: 58

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LUCENT TECHNOLOGIES, INC.,

           Plaintiff,

vs.

GATEWAY, INC AND GATEWAY
COUNTRY STORES LLC; MICROSOFT
CORP.; and DELL, INC.,

           Defendants.

Case Nos.: 02CV2060-B(WMc);
03CV0699-B(WMc);
03CV1108-B(WMc)

**SUPERCEDING ORDER
CONSTRUING CLAIMS FOR
UNITED STATES PATENT
NUMBER 4,383,272**

On December 6, 2004, the Court issued an order construing Claims 13 and 22 of U.S. Patent Number 4,383,272 ("the '272 Patent") in the above titled cases for patent infringement.[1]  On March 7, 2005, the parties in the cases notified the Court of slight discrepancies between the Court's ruling during the claim construction hearing and the

---

[1]Lucent originally filed two separate patent infringement actions, one against Defendant Gateway (02CV2060), and a second against Defendant Dell (03CV1108).  Microsoft intervened in the action filed by Lucent against Gateway.  Microsoft also filed a declaratory judgment action against Lucent (03CV0699) and Lucent filed counterclaims for patent infringement against Microsoft in that action.  On July 7, 2003, the Court entered an order consolidating these three cases.  There are a total of 15 different patents involved in these three cases collectively.

329

**Exhibit 43   Page 1507**

1   order issued on December 6.  After reviewing the parties' filing and the claim construction

2   order the Court **HEREBY ISSUES** this SUPERCEDING claim construction order and

3   **ISSUES** the relevant jury instructions as written in exhibit A, attached hereto.  Further, the

4   Court **HEREBY DEFINES** all pertinent technical terms as written in exhibit B, attached

5   hereto.

6

7        **IT IS SO ORDERED**

8

9

10   Dated: 8-15-05                          _____
                                            UNITED STATES SENIOR DISTRICT JUDGE

11

12   cc:   All Parties
           The Honorable William McCurine, Jr., United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    2              02CV2060; 03CV0699; 03CV1108

**Exhibit 43   Page 1508**

**EXHIBIT A**

**UNITED STATES PATENT NUMBER 4,383,272**

| VERBATIM CLAIM LANGUAGE | COURT'S CLAIM CONSTRUCTION |
|---|---|
| **CLAIM 13** | **CLAIM 13** |
| A method of estimating the intensities of elements (pels) in a picture in accordance with information defining intensities of pels in preceding and succeeding versions of the picture including the step of | A method of **estimating [determining roughly the size, extent, or nature of]** the intensities of elements (pels) **[picture elements, also referred to as pixels]** in a picture **[an image that occupies a frame]** in accordance with information defining **intensities [values describing the different color components of a composite signal or combinations thereof]** of pels in preceding and succeeding versions of the picture including the step of |
| determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions, | determining by interpolation intensities of pels in said picture in accordance with intensities of pels **in related locations [locations at which the same object is expected to be]** in said preceding and succeeding versions, *Construing the whole clause*: **[determining by intensity of pels in the picture by averaging the intensities of pels in related locations (locations at which the same object is expected to be) in the preceding and succeeding versions],** |
| characterized in that said determining step includes selecting said related locations as a function of the displacement of objects in said picture. | characterized in that said determining step includes selecting said related locations as a function of **the displacement of objects in said picture [the change of position of objects between said versions of the picture].** |

3

02CV2060; 03CV0699; 03CV1108

**Exhibit 43   Page 1509**

| Claim 22 | Claim 22 |
|---|---|
| A method of reducing the bandwith needed to transmit a video signal representing a sequence of pictures by encoding the intensity values of pels in ones of said pictures in said sequence and reconstructing missing pictures using information from encoded pictures, including: | A method of reducing the **bandwith [the amount of data that can be passed along a communications channel in a given period of time]** needed to transmit a video signal representing a sequence of **pictures [each picture is an image that occupies a frame]** by encoding the **intensity values [values describing the different color components of a composite signal or combinations thereof]** of **pels [picture elements, also referred to as pixels]** in ones of said pictures in said sequence and reconstructing **missing pictures [non-transmitted pictures]** using information from **encoded pictures [pictures that have been changed to another form of representation]**, including:<br>*Construing the whole clause:*<br>**[A method of reducing the bandwith needed to transmit a video signal that represents a sequence of pictures (each picture is an image that occupies a frame) by: (1) encoding the intensity values of pels in ones of the pictures in the sequence; and (2) reconstructing missing pictures (non-transmitted pictures) using information from encoded pictures], including:** |
| computing the intensity of pels in a missing picture by interpolating the intensity of pels in corresponding locations in the encoded ones of said pictures which precede and follow said missing picture, and | computing the intensity of pels in a missing picture by interpolating the intensity of pels in **corresponding locations [locations at which the same object is expected to be]** in the encoded ones of said pictures which precede and follow said missing picture, and |

4

**Exhibit 43   Page 1510**

| | |
|---|---|
| selecting said corresponding locations as a function of the displacement of objects in said picture between said preceding and following pictures. | selecting said corresponding locations as a function of the displacement of objects in said picture between said preceding and following pictures.<br><br>*Construing the whole clause:*<br><br>**[determining the intensity of pels in the missing picture by averaging the intensities of pels in corresponding locations in the encoded preceding and following pictures].** |

5

02CV2060; 03CV0699; 03CV1108

**Exhibit 43   Page 1511**

## EXHIBIT B

## GLOSSARY FOR UNITED STATES PATENT NUMBER 4,383,272

| TERM | DEFINITION |
|---|---|
| Bandwidth | The amount of data that can be passed along a communications channel in a given period of time |
| Corresponding locations | Locations at which the same object is expected to be |
| Displacement | Change of position |
| Encoded pictures | Pictures that have been changed to another form of representation |
| Estimating | Determining roughly the size, extent, or nature of |
| Intensities | Values describing the different color components of a composite signal or combinations thereof |
| Intensity values | Values describing the different color components of a composite signal or combinations thereof |
| Missing pictures | Non-transmitted pictures |
| Pels | Picture elements, also referred to as pixels |
| Picture | An image that occupies a frame |
| Related locations | Locations at which the same object is expected to be |

6

02CV2060; 03CV0699; 03CV1108

Exhibit 43   Page 1512

Exhibit 44

1

2

3

4

5

6

7             **UNITED STATES DISTRICT COURT**

8           **SOUTHERN DISTRICT OF CALIFORNIA**

9

10   LUCENT TECHNOLOGIES, INC.,
     MULTIMEDIA PATENT TRUST
11   TECHNOLOGIES INC., and
     MULTIMEDIA PATENT TRUST INC.
12
          Plaintiffs and Counterclaim-defendants,        **Civil No:** 02CV2060-B(CAB)
13   v.                                                  consolidated with
                                                         **Civil No:** 03CV0699-B (CAB) and
14   GATEWAY, INC. and GATEWAY                           **Civil No:** 03CV1108-B (CAB)
     COUNTRY STORES LLC, GATEWAY
15   COMPANIES, INC., GATEWAY
     MANUFACTURING LLC and                               **ORDER DENYING GATEWAY'S**
16   COWABUNGA ENTERPRISES, INC.,                        **MOTIONS FOR SUMMARY**
                                                         **JUDGMENT THAT U.S. PATENT NO.**
17          Defendants and Counter-claimants,            **4,383,272 IS INVALID UNDER 35 U.S.C §**
                                                         **102(g) AND GRANTING SUMMARY**
18   and                                                 **ADJUDICATION ON CERTAIN**
                                                         **PREDICATE ISSUES PERTAINING TO**
19   MICROSOFT CORPORATION,                              **THIS DEFENSE**

20          Intervenor and Counter-claimant,

21   _____

22   AND CONSOLIDATED CASES

23   _____

24

25   **I.      INTRODUCTION**

26          Gateway moves the Court for summary judgment that U.S. Patent No. 4,383,272

27                                    1

28
                                                         02CV2060-B (CAB)

**Exhibit 44   Page 1513**

("the '272 patent") is invalid under 35 U.S.C. §102(g).  Multimedia Patent Trust

Technologies, Inc. and Multimedia Patent Trust (collectively "MPT") oppose this motion.

MPT also filed a cross-motion for summary judgment of no invalidity; the Court denied

MPT's cross-motion on June 27, 2007.  The Court now **DENIES** Gateway's motion as to

invalidity but **GRANTS** summary adjudication on certain predicate issues related to this

defense.

## II.    APPLICABLE LAW

### A.    Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is

appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  In

considering the motion, the court must examine all the evidence in the light most favorable

to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  If

the Court is unable to render summary judgment upon an entire case and finds that a trial is

necessary, it shall if practicable grant summary adjudication for any issues as to which,

standing alone, summary judgment would be appropriate.  Fed. R. Civ. P. 56(d).

### B.    Invalidity under 35 U.S.C. § 102(g)

Under 35 U.S.C. §102(g)(2), "a person is entitled to a patent . . . unless before such

person's invention thereof, the invention was made in this country by another inventor who

had not abandoned, suppressed, or concealed it."  The determination of first to invent

compares the dates of conception and reduction to practice between the patent's inventors

and the alleged prior inventor.  35 U.S.C. §102(g)(2).  The inquiry also considers "the

reasonable diligence of one who was first to conceive and last to reduce to practice, from a

time prior to conception by the other."  Id.  To succeed on an affirmative defense under

§102(g), defendant must show prior reduction to practice or prior conception and

2

Exhibit 44   Page 1514

1    reasonable diligence in reducing the invention to practice.  See <u>Mycogen Plant Science v.</u>

2    <u>Monsanto Co.</u>, 243 F.3d 1316, 1332 (Fed. Cir. 2001).  In proving invalidity " an inventor's

3    testimony respecting the facts surrounding a claim of derivation or priority of invention

4    cannot, standing alone, rise to the level of clear and convincing proof."   <u>Price v. Symsek</u>,

5    988 F.2d 1187, 1194 (Fed. Cir.1993).  Corroboration is assessed under a rule of reason, and

6    may be accomplished by documentary and/or oral testimony.  <u>Id.</u> at 1195.

7    **III.    GATEWAY'S MOTION FOR INVALIDITY UNDER 35 U.S.C. § 102(g)[1]**

8             The '272 patent is directed to techniques for video compression.  The patent was

9    applied for on April 13, 1981, and issued on May 10, 1983.  Claim 13, the only claim at

10   issue between the parties, is directed to a method of estimating the intensities of picture

11   elements (pixels) in a picture.  Gateway's §102(g) defense is based upon the assertion that

12   Dr. Jaswant Jain was the first to conceive and diligently reduce to practice the invention set

13   forth in claim 13 of the '272 patent.

14            The instant summary judgment motion is predicated on two assertions by Gateway:

15   (1) there is no dispute of material fact that Jain had reduced claim 13 to practice by

16   September 1979; and (2) MPT cannot demonstrate reasonable diligence by the '272

17   inventors between September 30, 1979 (the latest date by which Jain is alleged to have

18   reduced the invention to practice) and April 13, 1981 (the date when the '272 patent was

19   filed).

20            With respect to the first assertion, questions of fact remain to preclude summary

21   judgment.  As the Court discussed with respect to MPT's cross-motion on this defense,

22   because claim 13 is a method claim, Gateway must demonstrate that the method was

23   actually performed to show reduction to practice by Jain.  Gateway contends that the

24

25            [1] MPT raised a procedural objection to Gateway's motion and moved to strike the motion and
26   Gateway's §102(g) defense.  The Court addressed this issue in its Order of June 27, 2007 and denied
     MPT's motion to strike Gateway's motion for summary judgment and bar the invalidity defense.

27                                              3

28                                                           02CV2060-B (CAB)

**Exhibit 44   Page 1515**

1   performance of the method is evidenced by Jain's Ph.D. thesis and testimony and

2   corroborated by two witnesses, Wang and Kazakos.  As for the thesis, although MPT does

3   not dispute that a computer executing the algorithm identified in Dr. Jain's dissertation as

4   equation 2-17 to process video would perform all the method steps of claim 13, the thesis

5   alone cannot show that the method was ever performed.   Regarding Jain's testimony, MPT

6   challenges whether the corroboration is sufficient to establish reduction to practice for each

7   of the steps of the claimed method.  Wang testified that he was with Jain when the video

8   processing software was running on the university computers.  Kazakos testified that he

9   had seen parts of Jain's code for the video processing.  Having considered this evidence,

10  the Court finds that on this issue questions of fact remain and therefore summary judgment

11  of Gateway's motion on invalidity of the '272 patent is **DENIED**.

12      Although summary judgment is not warranted, the Court finds that certain predicate

13  issues to the § 102(g) defense are suitable for summary adjudication under Fed. R. Civ. P.

14  56(d).  First, the parties agree that a computer executing the algorithm identified in Dr.

15  Jain's dissertation as equation 2-17 to process video would perform all the method steps of

16  claim 13.

17      Second, regarding diligence of the '272 patent inventors, Gateway asserted in its

18  moving papers that MPT had no evidence that the inventors exercised reasonable diligence

19  in reducing claim 13 to practice between September 30, 1979 and April 13, 1981.  It argued

20  that one inventor, John Robbins, did not testify as to any activities related to the invention

21  during this period and his notebook was devoid of entries related to the invention during

22  this period.  MPT did not dispute these contentions.  Gateway also pointed out that Barry

23  Freedman, the attorney who prepared and prosecuted the '272 patent, could not offer any

24  evidence as to activities that occurred in this period or as to any reasons for a delay in filing

25  the application because he testified at deposition to no recollection of events pertaining to

26  this patent application.  MPT did not dispute this assertion.

27                                         4

28
                                                        02CV2060-B (CAB)

Exhibit 44   Page 1516

1       Gateway also argued that there was a lack of evidence as to any invention-related

2 activities by the other inventor of the '272 patent, Arun Netravali.  In response, MPT

3 contended that Netravali had demonstrated actual reduction of practice of the invention as

4 of April 1979. In support, MPT offered the testimony of Netravali that a simulation model

5 was constructed and a "Preliminary Report of Invention" which states the computer

6 software and printouts provide evidence of his invention.  This evidence is insufficient to

7 demonstrate actual reduction to practice because Netravali's testimony is uncorroborated.

8 See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1169 (Fed. Cir. 2006) ("sufficient

9 evidence to corroborate an inventor's testimony" is necessary to establish actual reduction

10 to practice); Hahn v. Wong, 892 F.2d 1028, 1032 (Fed. Cir. 1989) ("The inventor . . . must

11 provide independent corroborating evidence in addition to his own statements and

12 documents.").  The Preliminary Report of Invention cannot act as corroboration because it

13 is signed only by Netravali himself.  See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157,

14 1170 (Fed. Cir. 2006) ("an unwitnessed notebook is insufficient on its own to support a

15 claim of reduction to practice).  Aside from MPT's argument that it established actual

16 reduction to practice as of April 1979, MPT did not offer any evidence to refute Gateway's

17 contention that there was no evidence of reasonable diligence in the period between when

18 Jain allegedly reduced his method to practice and when the inventors filed the application

19 for the '272 patent.

20       Having considered Gateway's contentions and the evidence presented by the parties,

21 the Court finds that on certain predicate issues underlying Gateway's § 102(g) defense

22 MPT failed to raise an issue of fact.

23       The Court therefore **GRANTS** summary adjudication on the following predicate

24 issues:

25 (1) A computer executing the algorithm identified in Dr. Jain's dissertation as equation 2-17

26 to process video would perform all the method steps of claim 13;

27                       5

28                                           02CV2060-B (CAB)

Exhibit 44   Page 1517

1  (2) Because MPT failed to raise an issue of fact, it is established that there was an absence

2  of reasonable diligence in reducing claim 13 to practice by the inventors of the '272 patent

3  or by the attorney who prepared and prosecuted the '272 patent application in the period

4  after Dr. Jain allegedly reduced his method to practice (after September 30, 1979) and

5  before the inventors filed the application for the '272 patent on April 13, 2007.

6  (3) Because MPT failed to raise an issue of fact with respect to corroboration of the

7  inventors' actual reduction to practice, it is established that the inventors of the '272 patent

8  did not actually reduce the invention of claim 13 to practice prior to the filing of the

9  application for the patent on April 13, 1981.

10

11  **IT IS SO ORDERED.**

12

13  DATED:  July 12, 2007

14

15                                    Hon. Rudi M. Brewster
16                                    United States Senior District Court Judge

17

18   cc:  Hon. Cathy Ann Bencivengo
              United States Magistrate Judge
19
              All Counsel of Record
20

21

22

23

24

25

26

27                                    6

28

                                                        02CV2060-B (CAB)

**Exhibit 44   Page 1518**

Exhibit 45

# United States Patent [19]

## Netravali et al.

[11]    **4,383,272**

[45]    **May 10, 1983**

[54]    **VIDEO SIGNAL INTERPOLATION USING MOTION ESTIMATION**

[75]    Inventors:    **Arun N. Netravali,** Westfield; **John D. Robbins,** Aberdeen, both of N.J.

[73]    Assignee:    **Bell Telephone Laboratories, Incorporated,** Murray Hill, N.J.

[21]    Appl. No.:    **253,698**

[22]    Filed:    **Apr. 13, 1981**

[51]    Int. Cl.³ ............................................... H04N 7/12
[52]    U.S. Cl. ..................................... 358/136; 358/138; 358/105
[58]    Field of Search ............... 358/136, 133, 105, 138; 375/28; 364/518, 521

[56]    **References Cited**

### U.S. PATENT DOCUMENTS

4,218,703    8/1980    Netravali et al. ..................... 358/136
4,218,704    8/1980    Netravali et al. ..................... 358/136
4,232,338    11/1980    Netravali et al. ..................... 358/136
4,307,420    12/1981    Ninomiya et al. ..................... 358/136

*Primary Examiner*—Benedict V. Safourek
*Assistant Examiner*—Edward L. Coles
*Attorney, Agent, or Firm*—Barry H. Freedman

[57]    **ABSTRACT**

Information defining elements of a picture is estimated by interpolation using information from related locations in preceding and succeeding versions of the picture. The related locations are determined by forming an estimate of the displacement of objects in the picture. Displacement estimates are advantageously formed recursively, with updates being formed only in moving areas of the picture. If desired, an adaptive technique can be used to permit motion compensated interpolation or fixed position interpolation, depending upon which produces better results.

**24 Claims, 4 Drawing Figures**



DISPLACEMENT-BASED INTERPOLATION

LUC 0001363

Exhibit 45   Page 1519

U.S. Patent    May 10, 1983    Sheet 1 of 4    4,383,272



*FIG. I*

PRIOR ART INTERPOLATION



LUC 0001365

Exhibit 45   Page 1521



FIG. 3

U.S. Patent    May 10, 1983    Sheet 4 of 4    4,383,272

*FIG. 4*



LUC 0001367

Exhibit 45   Page 1523

4,383,272

1

# VIDEO SIGNAL INTERPOLATION USING MOTION ESTIMATION

## TECHNICAL FIELD

This invention relates generally to interpolation of video signals and, in particular, to interpolation of video signals using motion estimation.

## BACKGROUND OF THE INVENTION

In various schemes for interframe coding of television pictures, it is advantageous to drop or discard information from some fields or frames by subsampling the video signal at a fraction of the normal rate. This is done in order to prevent overflow of the data rate equalization buffers disposed in the transmission path, or simply to increase the efficiency of the encoder by removing redundant information. At the receiver, a reconstructed version of the information contained in the nontransmitted fields or frames is obtained by interpolation, using information derived from the transmitted fields. Simple linear interpolation may be performed by averaging the intensity information defining picture elements (pels) in the preceding and succeeding transmitted fields at fixed locations which are most closely related to the location of the picture element that is presently being processed. In certain instances, the interpolation may be performed adaptively, such that the pels used to form certain reconstructed or estimated intensity values are selected from two or more groups having different spatial patterns or such that the information obtained from pels in the same relative spatial positions in the prior and succeeding frames are combined in two or more different ways.

Both the aforementioned fixed and adaptive interpolative techniques are adequate to estimate and thus recover the nontransmitted picture information when little motion occurs in the picture. However, where objects, particularly those with a high degree of detail, are moving quickly in the field of view of the television camera, dropping fields or frames in the encoder and subsequent reconstruction using interpolation often causes blurring and other objectionable visual distortion. Accordingly, the broad object of the present invention is to enable improved estimation of intensity information defining elements in a picture using interpolative techniques on information derived from preceding and succeeding versions of the picture. A specific object is to improve the reconstruction of a nontransmitted field of a video signal using information from previous and succeeding fields, so as to eliminate annoying distortion and flicker.

## SUMMARY OF THE INVENTION

The foregoing and additional objects are achieved in accordance with the instant invention by estimating the intensity information defining elements in a picture (which may be a nontransmitted field or other portion of a video signal) based on information defining pels in related locations in preceding and succeeding versions of the same picture, using an interpolative technique which takes account of the motion of objects in the picture to identify the related locations. More specifically, apparatus for estimating the desired intensity information includes a recursive motion estimator for providing an indication of the displacement of objects between the two available versions of the picture which precede and follow the picture being processed and an

2

interpolator arranged to utilize information defining pels at the appropriate displaced locations within the preceding and succeeding versions to form an estimate of the desired information. In a preferred embodiment, an adaptive technique is used to switch between displacement compensated interpolation and fixed position interpolation, depending upon which produces the best results in the local picture area.

## BRIEF DESCRIPTION OF THE DRAWING

The features and advantages of the present invention will be more readily understood from the following detailed description when read in light of the accompanying drawing in which:

FIG. 1 is a representation of a series of video fields indicating the locations of picture elements used to form estimates of nontransmitted information in accordance with prior art fixed position interpolative techniques;

FIG. 2 is a similar representation of a series of video fields indicating the displaced pel locations in the preceding and succeeding frames used to estimate the information defining the presently processed picture element in accordance with the present invention;

FIG. 3 is a block diagram of apparatus arranged in accordance with the present invention for reconstructing information defining pels in a nontransmitted field of a video signal by processing information derived from preceding and succeeding versions of the picture using motion compensated interpolation; and

FIG. 4 illustrates spatial interpolation performed in interpolators 305 and 306 of FIG. 3.

## DETAILED DESCRIPTION

One embodiment of the present invention, which permits reconstruction of a nontransmitted field of a video signal using information derived from transmitted preceding and succeeding fields, will be better appreciated by consideration of FIG. 1, which illustrates the time-space relationship of a sequence of television fields 101-105, each of which can be thought of as a "snapshot" or version of a moving picture which is electrically represented by the video signal being processed. Vector 106 indicates the direction of time progression, such that field 101 occurs first and is followed in succession by fields 102 . . . 105. The time interval between successive fields is given by τ, and is generally 1/60th of a second for conventional video encoding. Each field is obtained by scanning the picture being processed along a plurality of generally parallel scan lines, such as lines 110-115 in field 104. In order to conserve bandwidth, a conventional video signal generator is arranged to interlace the scan lines in each pair of successive fields. Thus, each line in an odd numbered field is offset from the corresponding line in the previous (and next) field by half the distance between adjacent lines. The NTSC standard requires a total of 525 scan lines for each pair of fields, which together constitute a frame.

Assuming that even numbered fields 102 and 104 shown in FIG. 1 were encoded for transmission using conventional subsampling and/or other compression techniques, and that these fields have been reconstructed at the receiver, it is known to reconstruct information defining pels in the nontransmitted odd fields 101, 103 and 105 by interpolation. As used herein, "information" can include intensity information describing the different color components (red, green and blue) of a composite signal or combinations thereof, such as

LUC 0001368

Exhibit 45    Page 1524

3

4,383,272

4

luminance and chrominance information. Using "intensity" generally in the foregoing sense, to reconstruct or estimate the intensity value $I_E$ for a pel E on line 120 in field 103, it is typical to use intensity information from spatially corresponding locations in the transmitted preceding field 102 and the succeeding field 104. Since the scan lines in the even and odd fields are offset from one another, the intensity values in fields 102 and 104 at the precisely corresponding spatial location of pel E are not available. However, intensity values for pels on the scan lines just above and just below line 120 may be used. Thus, the intensity of pel E can be estimated as the average $(I_A+I_B+I_C+I_D)/4$ of the intensities of pels A and B in field 104 and pels C and D in field 102. As stated previously, this fixed position interpolation procedure for reconstructing the nontransmitted fields is generally satisfactory, as long as objects in the picture are relatively still. However, in areas of the picture which are changing quickly, the reconstructed version generally appears noticeably blurred and distorted. This significantly reduces the utility of the subsampling, and limits the number of fields which may be dropped at the transmitter and successfully recovered at the receiver.

The motion compensated interpolation strategy of the present invention, again considered in the context of reconstruction of a nontransmitted field using information from preceding and succeeding fields which are available at the receiver, can be explained by reference to FIG. 2, which again depicts the time-space relationship of a series of fields 201 . . . 205. For the sake of generality, it is assumed that $K_1$ field intervals $\tau$ including field 202 intervene between the previous transmitted field 201 and the present (nontransmitted) field 203, and that $K_2$ field intervals including field 204 intervene between field 203 and the succeeding transmitted field 205. $K_1$ and $K_2$ are, of course, positive integers. In order to obtain an estimate of the intensity value of each pel in nontransmitted field 203, it is first necessary to form an estimate D of the displacement per field interval of moving objects in the picture between the transmitted fields 201 and 205 which bracket field 203. The underscore used for the variable D and hereinbelow indicates a vector having components in the horizontal (picture element to element) and vertical (scan line to line) directions. It is assumed here that objects in the pictures being processed are in simple uniform translation during this period. Second, the intensity values at the displaced locations in the previous and succeeding transmitted fields which "correspond" to the location in the field being processed are determined. As used here, the "correspondence" indicates locations at which the same object is expected to be in different versions of the picture. Finally, the desired intensity value is derived using interpolation or averaging.

To illustrate, if the position of a presently processed pel 250 in field 203 is denoted by vector x, then the location of the "corresponding" displaced pel 260 in field 201 is given by $x-K_1D$ and the intensity at that location is written $I(x-K_1D,t-K_1\tau)$. Similarly, the location in field 205 of pel 270 which contains the object depicted in pel 250 is given by $x+K_2D$, and the intensity at this location is $I(x+K_2D,t+K_2\tau)$. In this example, the desired intensity value $I(x,t)$ for pel 250 is determined by interpolation, such that:

$$I(x,t) = \frac{1}{K_1+K_2}\{K_1I(x+K_3D,t+K_2\tau)+ \qquad (1)$$

$$K_2I(x-K_1D,t-K_1\tau)\}.$$

From Equation (1) it is seen that interpolation produces a weighted average of intensity values from fields displaced timewise from the present field 203. If $K_1>K_2$, field 203 is closer in time to field 205, and more weight is given to the intensity value information derived from the latter. On the other hand, if $K_2>K_1$, more weight is given to the intensity value $I(x-K_1D,t-K_1\tau)$ from field 201. When alternate field subsampling is used, $K_1=K_2=1$ and the interpolated intensity value $I(x,t)$ is a simple average of $I(x+D,t+\tau)$ and $I(x-D,t-\tau)$.

With respect to formation of the displacement estimate D, it must be understood that the magnitude and direction of this vector varies, in a real television scene, as a function of both time and space. Accordingly, the intensity values at pels 250, 260 and 270 are not likely to be exactly equal. For convenience, a displaced frame difference DFD(x,D) which is a function both of location x and displacement estimate D, is defined such that:

$$DFD(x,D)=I(x+K_2D,t+\tau)-I(x-K_1D,t-\tau) \qquad (2)$$

To estimate the value of D, it is advantageous to minimize $|DFD(x,D)|^2$ recursively for every pel position x within the moving area of the picture. This is analogous to minimizing mean square error (since DFD is an error indicator) and can be done using a steepest descent technique. Thus:

$$D^{i+1} = D^i - \frac{\epsilon}{2}\nabla_D[DFD(x,D)]^2 \mid D=D^i \qquad (3)$$

$$= D^i - \epsilon DFD(x,D^i)\nabla_D[DFD(x,D^i)] \mid D=D^i \qquad (4)$$

$$= D^i - \epsilon DFD(x,D^i)\begin{bmatrix}K_2\cdot ED(x+K_2D^i,t+K_2\tau)+\\K_1\cdot ED(x-K_1D^i,t-K_1\tau)\\K_2\cdot LD(x+K_2D^i,t+K_2\tau)+\\K_1\cdot LD(x-K_1D^i,t-K_1\tau)\end{bmatrix} \qquad (5)$$

In Equations (3)–(5), $D^i$ is a present estimate of the displacement vector D and $D^{i+1}$ is the next estimate, with the recursion being performed for each picture element i=1, 2, . . . . The symbol $\nabla_D$ indicates a gradient or spatial rate of change calculated assuming a displacement vector D. In the horizontal picture direction, the rate of change can be determined from "element differences" ED(x,t), i.e., the intensity differences between successive picture elements on a single scan line evaluated at the location x in the field occurring at time t. The rate of change in the vertical direction is similarly determined from "line differences" LD(x,t) which are intensity differences between pels in the same horizontal position on difference scan lines, again evaluated at the location x in the field occuring at time t. Scaling factor $\epsilon$ is used in Equations (3) through (5) to limit large changes; $\epsilon$ is always less than one and is preferably in the range of 0.1 to 0.001. Further details concerning the recursive displacement estimation technique described herein may be obtained from applicant's U.S. Pat. No. 4,218,703 issued Aug. 19, 1980.

The displacement recursion specified in Equations (3)–(5) is carried out only in the moving areas of the picture. These areas can be identified when the frame difference, denoted FD(x), has a magnitude which exceeds a preselected threshold value. The frame differ-

LUC 0001369

Exhibit 45   Page 1525

4,383,272

5                                                                                     6

ence is defined as the intensity difference, at pel location $x$, as measured in the previous and succeeding frames. Thus:

$$FD(x)=I(x,t+K_2\tau)-I(x,t-K_1\tau). \qquad (6)$$

While it is possible to implement the interpolation specified in Eq. (1) and the displacement estimation specified in Eq. (5), several simplifications can significantly reduce circuit complexity. For example, the displacement estimates calculated in Equations (3)–(5) require several multiplications for each iteration. This can be reduced by considering only the sign of the two right-hand terms, i.e.,

$$D^{i+1} = D^i - \qquad (7)$$

$$\epsilon SIGN (DFD (x, D^i)) \cdot SIGN (\nabla_D[DFD (x, D)] \mid D = D^i)$$

where the SIGN function is defined by

$$SIGN (Z) = \begin{cases} 0, & \text{if } |Z| < T \\ \dfrac{Z}{|Z|}, & \text{otherwise}, \end{cases} \qquad (8)$$

where $T$ is a small non-negative number. A second simplification results by use of spatial gradients in only one transmitted field rather than in both the previous and succeeding fields. This modification simplifies Eq. (5) as follows:

$$D^{i+1} = D^i - \epsilon DFD (x, D^i) \begin{bmatrix} K_2 \text{ (el. diff. at } x + K_2 D^i) \\ K_2 \text{ (line diff. at } x + K_2 D^i) \end{bmatrix} \qquad (9)$$

Yet another modification is quite desirable in order to simplify the hardware implementation described below. In this modification, the present displacement estimate $D^i$ is used to compute the intensity value $I(x,t)$ in Equation (1), instead of the next displacement estimate $D^{i+1}$ which more precisely belongs in the intensity value equation. This modification permits the same set of intensity values to be used for both the computation of the displacement estimate and the interpolation of the missing field intensity values.

While it is not essential in practicing the present invention, an adaptive technique is preferred in the interpolative recovery of nontransmitted fields, such that "displacement compensated interpolation" in accordance with the present invention is used instead of conventional "fixed position" interpolation only when it produces better results. Switching between the two types of interpolation is accomplished under the control of adaption logic which compares the magnitude of the frame difference FD(x) and the displaced frame difference DFD(x,D) to determine which is smaller. If DFD(x,D)<FD(x), displacement compensation is better, and Equation (1) is used in the interpolation. If the frame difference is smaller, the interpolated intensity $I(x,t)$ value is computed conventionally using the same location in the previous and succeeding transmitted fields, as follows:

$$I (x, t) = \frac{1}{K_1 + K_2} [K_1 I (x, t + K_2\tau) + K_2 I (x, t - K_1\tau)] \qquad (10)$$

A block diagram of apparatus arranged to estimate the intensity values of elements in a picture (such as a nontransmitted field of a video signal) using either motion compensated interpolation or fixed position interpolation is shown in FIG. 3. Intensity information representing the versions of the picture which precede and follow the picture being estimated, obtained, for example, by decoding transmitted information representing fields such as fields 201 and 205 of FIG. 2, is entered in random access memories 301 and 302, respectively, via lines 370 and 371. The information is stored within these memories such that intensity values for specific addressed groups of pels can be recovered. For this purpose, each of the memories 301 and 302 includes address inputs 303 and 304, respectively, which receive the integer portions of $K_1 D^i$ and $K_2 D^i$, which indicate the position in fields 201 and 205 of the same object which is depicted in the pel for which an intensity is being estimated. The products of the displacement estimate $D_i$ stored in a delay element 310 and the factors $K_1$ and $K_2$, respectively, are formed by multipliers 331 and 332. The intensity values for several (usually four) picture elements nearest the addressed displaced locations are output from memories 301 and 302 and applied to a pair of interpolators 305 and 306 via lines 307 and 308, respectively.

Interpolators 305 and 306 are each arranged to use the intensity values output from memories 301 and 302 and the fractional part of the displacement estimates $K_1 D^i$ and $K_2 D^i$ received on lines 365 and 366, respectively, to compute the intensity values $I(x - K_1 D^i, t - K_1\tau)$ and $I(x + K_2 D^i, t + K_2\tau)$. This procedure, which is essentially intrafield interpolation "in space", is used because the displacement estimates usually do not indicate a single pel location, but rather a position between pels; a second interpolation step described below, which is interfield interpolation "in time", actually calculates the nontransmitted intensity values being reconstructed. To determine the intensity at the in-between locations, the fractional portions of the displacement estimates are resolved into horizontal and vertical components. The intensity values for pels which bracket the specified location both vertically and horizontally are chosen, and the in-between values computed by linear interpolation. An example of this interpolation is given below. The resulting displaced interpolated intensity values are output on lines 309 and 310.

In order to determine the desired intensity value $I(x,t)$ in accordance with Eq. (1), the intensity values at the displaced locations in fields 201 and 205 are timewise interpolated. For this purpose the outputs on lines 309 and 310 are weighted by factors $K_2$ and $K_1$ in multipliers 311 and 312, and a sum of the weighted values is formed in adder 313. The sum is then scaled by $1/(K_1 + K_2)$ in multiplier 314. From the foregoing, it is seen that more emphasis is given to the intensity value of the field closest in time to field 203, and less emphasis is given the more remote field. The output of multiplier 314 on line 316 which represents the motion compensated interpolated intensity value specified in Eq. (1), is applied to one input of switch 315.

Field memories 301 and 302 are also arranged to make available on lines 317 and 318, respectively, the intensity values $I(x,t - K_1\tau)$ and $I(x,t + K_2\tau)$ for pels in the transmitted fields which are in the same spatial position as the pel presently being processed. To obtain an estimate of $I(x,t)$ by fixed position interpolation, the intensity values are again likewise weighted by forming

LUC 0001370

Exhibit 45   Page 1526

4,383,272

7

the sum of $K_1$ times the intensity in field 205 and $K_2$ times the intensity in field 201, and by dividing the sum by $1/(K_1+K_2)$. This is accomplished by applying the signals on lines 317 and 318 to inputs of adder 319 via multipliers 341 and 342 with coefficients $K_1$ and $K_2$, respectively. The output of adder 319 is applied, in turn, to a multiplier circuit 330 via line 320, where the sum is multiplied by the factor $1/(K_1+K_2)$. The resulting value represents the intensity estimate specified in Eq. (10), which is applied to a second input of switch 315.

As mentioned previously, the position of switch 315 is adaptively controlled so as to select either the motion compensated interpolated value on line 316 or the fixed position interpolated value output from multiplier 330, depending upon the relative magnitudes of the frame difference FD(x) and the displaced frame difference DFD(x,D). The magnitude of FD(x) is obtained by forming the differences between $I(x,t-K_1\tau)$ and $I(x,t+K_2\tau)$ in a subtractor 325 and applying the subtractor output on line 326 to a magnitude circuit 327, which disregards sign information. The magnitude of DFD(x,D) is obtained by forming the difference between $I(x-D,t-K_1\tau)$ and $I(x+D,t+K_2\tau)$ in a subtractor circuit 322 and applying the difference to a magnitude circuit 324. |FD(x)| and |DFD(x,D)| are compared in a subtractor circuit 321, and a sign bit output is used to control the position of switch 315. Thus, when the frame difference FD(x) is smaller than the displaced frame difference DFD(x,D) in the local area of the picture being processed, switch 315 is arranged to couple the output of multiplier 330, representing a fixed position interpolation, through the switch to output line 390. On the other hand, if the displaced frame difference is smaller, switch 315 is positioned to couple the output of multiplier 314 representing motion compensated interpolation through to output line 390. The estimated intensity value available on line 390 can be accumulated in a memory, not shown, and the entire process described above repeated for the remaining picture elements in the field. When the entire field has been reconstructed, the contents of the memory may be applied to a display medium in the appropriate time position with respect to the transmitted fields, by multiplexing apparatus, not shown.

As mentioned previously, the displacement estimate $D^i$ is stored in a one pel delay element 350, and recursively updated for each pel. To implement the updating, the output of delay element 350 is applied to one input of an adder 351, which receives an update or correction term as its second input on line 352. The output of adder 351 is the next displacement estimate $D^{i+1}$, which is, in turn, coupled back to the input of delay element 350 to yield the next estimate. Displacement estimates are updated in accordance with Eq. (5) only in the moving area of the picture, and a "zero" update is used otherwise. For this purpose, the position of switch 353 is controlled by the output of comparator 354, the latter serving to determine whether or not |FD(x)| output from magnitude circuit 327 exceeds a predetermined threshold value T. If the threshold is not exceeded, the picture area being processed is not moving. In this circumstance, switch 353 is positioned as shown in FIG. 3 so as to couple a "0" update to adder 351. On the other hand, if the output of comparator 354 indicates that the frame difference does exceed T, a moving area in the picture has been detected, switch 353 is repositioned, and the displacement correction term (from multiplier 360) is coupled through switch 353 to adder 351. The

8

magnitude of the update term is calculated in accordance with Eq. (5) by multiplying second outputs of interpolators 305 and 306 on lines 343 and 344, which represent the displaced element and line differences in the previous and succeeding fields, by $K_1$ and $K_2$, respectively, in multipliers 368 and 369 and forming the sum of these products in adder 367. The sum is multiplied, in turn, by the displaced frame difference output from subtractor 322, and this product is scaled by the factor $\epsilon$ in multiplier 360 before being applied to the second input of switch 353. The manner in which the element and line differences are formed in interpolators 305 and 306 is explained below, in connection with FIG. 4.

After each nontransmitted field has been reconstructed by interpolation in accordance with the present invention, it is necessary to update multiplier coefficients $K_1$ and $K_2$ (when either or both exceeds one) before the next nontransmitted field is processed. For example, in FIG. 2, assuming that fields 201 and 205 are transmitted and fields 202, 203, and 204 are not, then $K_1=K_2=2$ when field 203 is being processed. When field 202 is processed, $K_1=1$ and $K_2=3$. On the other hand, when field 204 is processed, $K_1=3$ and $K_2=1$. Updating of the coefficients $K_1$ and $K_2$ is easily carried out by storing their values in random access memories and by reading out appropriate coefficients under control of clocking circuitry not shown. Information needed to control clocking is derived from sync signals recovered from the transmitted video fields.

An example of the spatial (intrafield) interpolation performed by interpolators 305 and 306 is illustrated graphically in FIG. 4. Locations P, Q, R and S represent four picture elements in a transmitted field of the signal being processed, and $I_P$, $I_Q$, $I_R$ and $I_S$ represent the intensity values at these locations. For convenience, it is assumed that location Q is at the origin of an orthogonal coordinate system, and locations P, R and S are at coordinates (0,1), (1,1) and (1,0), respectively. If the displacement estimate $D^i$ shown by vector 401 has a horizontal component with a fractional portion x, $0 < x < 1$ and a vertical component with a fractional portion y, $0 < y < 1$, then the intensity value at location (x,0) is obtained by linear interpolation such that:

$$I_{(x,0)} = (1-x)I_Q + (x)I_S \qquad (11)$$

and the intensity value at location (x,1) is given by:

$$I_{(x,1)} = (1-x)I_P + (x)I_R \qquad (12)$$

The intensity at location (x,y) is also obtained by interpolation, such that:

$$I_{(x,y)} = (y)I_{(x,1)} + (1-y)I_{(x,0)} \qquad (13)$$

$$= y(1-x)I_P + (y)(x)I_R + (1-y)(1-x)I_Q + \qquad (14)$$

$$(1-y)(x)I_S.$$

From Eq. (14), it is seen that $I_{(x,y)}$ is a weighted sum of the intensities of the pels surrounding the location specified by the displacement estimate, with more weight being given to the closest pels. If desired, other interpolation weights can be used, or additional samples can be used to contribute to the weighting pattern.

The manner in which element and line differences ED and LD are formed in interpolators 305 and 306 can also be illustrated by reference to FIG. 4. For example,

LUC 0001371

Exhibit 45   Page 1527

4,383,272

9

if $I_P$, $I_Q$, $I_R$ and $I_S$ represent the intensity values for pels in field 201 at time $t - K_1\tau$ and at spatial locations which surround the location indicated by vector 401, then the element difference ED can be represented by $\frac{1}{2}[(I_R - I_P) + (I_S - I_Q)]$ and the line difference LD can be represented by $\frac{1}{2}[(I_Q - I_P) + (I_S - I_R)]$. This calculation averages the differences, in both the horizontal (element) and vertical (line) directions, for pels surrounding the location for which an intensity value is being estimated. Alternatively, a simple calculation can use a single difference $(I_R - I_P)$ for ED and $(I_Q - I_P)$ for LD. In either event, interpolators 305 and 306 may include suitable arithmetic circuits for forming the desired differences.

The timewise interpolation performed by multipliers 311, 312 and 314 can be further illustrated by several examples. If a series of fields is designated a, b, c, d . . . and if every third field a, d, h . . . is transmitted, then the intensity value $I_b$ in field b is reconstructed using intensity values $I_a$ and $I_d$ from the transmitted fields a and d as follows:

$$I_b = \frac{1}{3}(2I_a + I_d)$$

The intensity value $I_c$ in field c is given by:

$$I_c = \frac{1}{3}(I_a + 2I_d).$$

As a second example, if every fourth field a, e, i . . . in the series is transmitted, the reconstructed intensity value $I_b$ in field b is given by:

$$I_b = \frac{1}{4}(3I_a + I_e)$$

Similarly, the reconstructed values for fields c and d are:

$$I_c = \frac{1}{4}(2I_a + 2I_e),\text{ and}$$

$$I_d = \frac{1}{4}(I_a + 3I_e).$$

Various modifications and adaptations may be made to the present invention by those skilled in the art. Accordingly, it is intended that the invention be limited only by the appended claims. For example, while the preceding description primarily described reconstruction of nontransmitted interlaced fields, it should be clearly understood that the present invention enables efficient reconstruction of information defining a picture or a portion of a picture using similar information derived from preceding and succeeding versions of the picture which include the same spatial area.

What is claimed is:

1. Apparatus for estimating the intensities of elements (pels) in a picture in accordance with information defining intensities of pels in preceding and succeeding versions of the picture including means for determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions,
characterized in that
said determining means includes means for selecting said related locations as a function of the displacement of objects in said picture.

2. The invention defined in claim 1 wherein said apparatus includes:
means for storing a present estimate $D'$ of said displacement, and
means for recursively updating said estimate for each element in said picture.

10

3. The invention defined in claim 2 wherein said apparatus includes means for operating said updating means only in moving areas in said picture.

4. The invention defined in claim 3 wherein said apparatus further includes:
means for computing a frame difference FD(x) indicating the intensity difference at spatially corresponding locations in preceding and succeeding versions, and
means for computing a displaced frame difference [DFD(x,D)] indicating the intensity difference at the related locations determined by said displacement estimate,
wherein said selecting means is arranged to select said displaced locations if said displaced frame difference is smaller than said frame difference and to select said corresponding locations otherwise.

5. The invention defined in claim 1 wherein said apparatus further includes:
means for storing the intensity values for pels in said preceding and succeeding versions, and
means responsive to said present displacement estimate for addressing selected ones of said stored values.

6. Apparatus for estimating the intensity values of each element (pel) of a picture being processed by interpolating between the intensity values of related pels in first and second other versions of said picture, including:
means for estimating the displacement of objects in said picture occurring between said other versions, and
means for selecting said related pels in accordance with said displacement estimate.

7. The invention defined in claim 6 wherein said first and second other versions occur at intervals $K_1\tau$ before and $K_2\tau$ after said picture being processed, where $K_1$ and $K_2$ are positive integers and $\tau$ is a predetermined constant, and wherein said related pels are at displaced locations $x - K_1D$ and $x + K_2D$ in said first and second versions, respectively, where x is the vector location of the pel in said presently processed picture and D is the vector representing said displacement estimate per time $\tau$.

8. The invention defined in claim 7 wherein said displacement estimate is recursively updated such that an update term is added to each estimate to form the next estimate, where said update term is a function of the intensity difference at said displaced locations.

9. The invention defined in claim 8 wherein said apparatus further includes means for comparing said intensity difference at said displaced location with the intensity difference at the same location x in said other versions, and
means for operating said selecting means only if said displaced location intensity difference is smaller than said same location intensity difference.

10. Apparatus for reducing the bandwidth needed to transmit a video signal representing a sequence of pictures by encoding the intensity values of pels in ones of said pictures in said sequence and reconstructing missing pictures using information from encoded pictures, including:
means for computing the intensity of pels in a missing picture by interpolating the intensity of pels in corresponding locations in the encoded ones of said pictures which precede and follow said missing picture, and
means for selecting said corresponding locations as a function of the displacement of objects in said picture between said preceding and following pictures.

LUC 0001372

Exhibit 45    Page 1528

4,383,272

11

11. The invention defined in claim 10 further including:

means for storing an estimate $D^j$ of said displacement, and

means for recursively updating said estimate to form a new estimate $D^{j+1}$ by adding a correction term which is a joint function of (a) the intensity difference at said corresponding location, and (b) the spatial gradient of said intensity difference.

12. The invention defined in claim 11 wherein said apparatus further includes:

means for storing the intensity values of pels in said preceding and following pictures, and

means for addressing said stored values in accordance with $D^j$ to obtain the intensities at said corresponding locations.

13. A method of estimating the intensities of elements (pels) in a picture in accordance with information defining intensities of pels in preceding and succeeding versions of the picture including the step of determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions,

characterized in that

said determining step includes selecting said related locations as a function of the displacement of objects in said picture.

14. The method defined in claim 13 further including the steps of:

storing a present estimate $D^j$ of said displacement, and recursively updating said estimate for each element in said picture.

15. The method defined in claim 14 further including the step of operating said updating means only in moving areas in said picture.

16. The method defined in claim 15 further including the steps of:

computing a frame difference FD(x) indicating the intensity difference at spatially corresponding locations in preceding and succeeding versions, and

computing a displaced frame difference [DFD(x,D)] indicating the intensity difference at the related locations determined by said displacement estimate,

wherein said selecting step includes selecting said displaced locations if said displaced frame difference is smaller than said frame difference and selecting said corresponding locations otherwise.

17. The method defined in claim 13 wherein said determining step further includes:

storing the intensity values for pels in said preceding and succeeding versions, and addressing selected ones of said stored values in response to said present displacement estimate.

18. A method of estimating the intensity values of each element (pel) of a picture being processed by interpolating between the intensity values of related pels in

12

first and second other versions of said picture, including the steps of

estimating the displacement of objects in said picture occurring between said other versions, and

selecting said related pels in accordance with said displacement estimate.

19. The method defined in claim 18 wherein said first and second other versions occur at intervals $K_1\tau$ before and $K_2\tau$ after said picture being processed, where $K_1$ and $K_2$ are positive integers and $\tau$ is a predetermined constant, and wherein said related pels are at displaced locations $x - K_1D$ and $x + K_2D$ in said first and second versions, respectively, where x is the vector location of the pel in said presently processed picture and D is the vector representing said displacement estimate per time $\tau$.

20. The method defined in claim 19 wherein said displacement estimating step includes recursive updating such that an update term is added to each estimate to form the next estimate, where said update term is a function of the intensity difference at said displaced locations.

21. The method defined in claim 20 further including the steps of comparing said intensity difference at said displaced location with the intensity difference at the same location x in said other versions, and

precluding said selecting step if said displaced location intensity difference is larger than said same location intensity difference.

22. A method of reducing the bandwidth needed to transmit a video signal representing a sequence of pictures by encoding the intensity values of pels in ones of said pictures in said sequence and reconstructing missing pictures using information from encoded pictures, including:

computing the intensity of pels in a missing picture by interpolating the intensity of pels in corresponding locations in the encoded ones of said pictures which precede and follow said missing picture, and

selecting said corresponding locations as a function of the displacement of objects in said picture between said preceding and following pictures.

23. The method defined in claim 22 further including the steps of:

storing an estimate $D^j$ of said displacement, and

recursively updating said estimate to form a new estimate $D^{j+1}$ by adding a correction term which is a joint function of (a) the intensity difference at said corresponding location, and (b) the spatial gradient of said intensity difference.

24. The method defined in claim 23 further including the steps of:

storing the intensity values of pels in said preceding and following pictures, and

addressing said stored values in accordance with $D^j$ to obtain the intensities at said corresponding locations.

* * * * *

LUC 0001373

Exhibit 45   Page 1529

Exhibit 46



IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE

RECEIVED
OCT 27 1982
GROUP 230

Arun N. Netravali
John D. Robbins
Case 18-5
Serial No. 253,698          Filed April 13, 1981
Group Art Unit 233
Examiner  Robert L. Griffin
Title  Video Signal Interpolation Using Motion Compensation

THE COMMISSIONER OF PATENTS AND TRADEMARKS
        WASHINGTON, D. C. 20231
    SIR:

            In response to the Office action of July 26, 1982,
please consider the following remarks.

                        R e m a r k s

        Claims 1-24 were presented, and the Examiner has
rejected claims 1-6, 10, 13-18, and 22-24 under 35 U.S.C. 103 as
being unpatentable over "Netravali et al". The Examiner has
indicated that the remaining claims contain allowable subject
matter, if presented in independent form. While the particular
Netravali et al patent which forms the basis of the rejection
was not identified as between the three Netravali et al
references that are cited, the relationship of each patent to
the invention described in the present application and defined
by the rejected claims has carefully been considered. It is
submitted that these references, taken singly and in
combination, do not render the instant invention obvious.
Accordingly, the rejection is respectfully traversed.

                                62

LUC 0001428

Exhibit 46   Page 1530

Serial No. 253,698          - 2 -

Applicants have invented apparatus and a method for estimating the intensities of picture elements (pels) by motion compensated interpolation. Interpolation is an averaging process, which permits the intensity value of a non-transmitted picture element to be reconstructed or estimated using intensity values associated with transmitted picture elements at appropriate locations in two versions of the picture which temporally "bracket" the picture being processed. Unlike prior art interpolative coders in which information from these other versions was obtained at the same spatial location as the present pel, applicants' invention takes account of the displacement or movement of objects in the picture which occur during the time interval between the previous and succeeding versions. This permits much more accurate reconstruction of non-transmitted intensity information and, in turn, permits encoding of transmitted frames using an advantageously reduced bit rate.

Netravali et al patent 4,218,703 relates to a recursive technique for estimating the displacement and/or velocity of objects in video scenes. The technique uses information derived from a previous frame as well as the present frame, in accordance with (for example) equation (10) in column 4, but "future" information from a succeeding frame is not involved. While an interpolator 307 of FIG. 3 is used to form intermediate values needed in the displacement estimate computation, inspection of that figure and the associated portions of the specification clearly reveals that an intensity value is not being interpolated from preceding and succeeding versions of the picture.

Concurrently filed Netravali et al patent 4,218,704 teaches the use of the aforedescribed displacement estimation technique in a motion compensated predictive encoder. In particular, intensity values associated with pels in a previous frame stored in frame memory 102 of FIG. 1 are accessed in accordance with a displacement value applied via quantizer 105. Stored intensity values within the prior frame are interpolated in interpolator 151 to yield the predicted value P, and in

*6 3*

LUC 0001429

Exhibit 46   Page 1531

Serial No. 253,698            - 3 -

interpolator 107 to yield terms needed to compute the
displacement update term.  In no case is interpolation used or
suggested in order to reconstruct a picture element intensity
value using previous and succeeding versions of the picture.

      Patent 4,232,338 issued to Netravali et al on
November 4, 1980 extends the predictive encoding technique just
described to an adaptive or switched predictor system wherein
motion compensated prediction is used only when it is
advantageous, and ordinary frame difference prediction is used
otherwise.  Interpolation is again used, but only in the same
context as previously described with respect to
patent 4,218,704.

      In summary, it is submitted that the cited
Netravali et al references pertain to recursive estimation of
displacement in a series of pictures and its use in predictive
encoding of the present picture version.  Such predictive
encoding uses information only from preceding picture versions.
No suggestion is made of recovering a non-transmitted picture
from both previous and succeeding versions, as is necessarily
performed during interpolation in accordance with the present
invention.  Accordingly, reconsideration and allowance of
claims 1-24 is earnestly solicited.

                   Respectfully submitted,

                   Arun N. Netravali
                   John D. Robbins

      By_____
                   Barry H. Freedman, Attorney
                   Reg. No. 26166
                   Area Code 201, 949-6043

Bell Telephone Laboratories, Incorporated

            OCT 2 2 1982
   Date:_____

LUC 0001430

Exhibit 46   Page 1532



### IN THE UNITED STATES
### PATENT AND TRADEMARK OFFICE

Arun N. Netravali
John D. Robbins

CASE 18-5

SERIAL NO. 253,698    FILED April 13, 1981

GROUP ART UNIT 233

EXAMINER Robert L. Griffin

TITLE Video Signal Interpolation Using Motion Compensation

THE COMMISSIONER OF PATENTS AND TRADEMARKS,
WASHINGTON, D. C. 20231

SIR:

### Certificate of Mailing

I hereby certify that the attached ___Amendment___
_____ is being deposited as first
class mail with the U.S. Postal Service on __Oct. 22, 1982__
in an envelope addressed to: Commissioner of Patents and
Trademarks, Washington, D. C. 20231.

Beryl M. Steelman

Bell Telephone Laboratories, Incorporated

Date: OCT 2 2 1982

Pt. 31  2-78

65

LUC 0001431

Exhibit 46   Page 1533