# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., </br></br> Plaintiff, </br></br> v. </br></br> GATEWAY, INC.; GATEWAY COUNTRY STORES LLC; MICROSOFT CORPORATION; AND DELL, INC., </br></br> Defendants. | Case No. 02-CV-2060-B (CAB), consolidated with Case No. 03-CV-0699-B (CAB) and Case No. 03-CV-1108-B (CAB) |

**EXPERT REPORT OF BRUCE TOGNAZZINI RELATING TO THE SECOND SUPPLEMENTAL EXPERT REPORT OF DALE BUSCAINO RE LUCENT'S DAY PATENT**

1. I have been retained as a technical expert in this case by Lucent Technologies Inc. ("Lucent") to provide my opinions regarding the contentions put forth by Microsoft Corporation, Gateway, Inc., and Dell, Inc. regarding the validity and other technical matters concerning certain claims of U.S. Patent No. 4,763,356 ("the '356 patent").

**I.   QUALIFICATIONS AS AN EXPERT**

2. My background and qualifications are set forth in my infringement report.

3. I have not provided testimony in other matters over the past 4 years.

**II.   SCOPE OF STUDY AND OPINION**

   **A.   Documents and Information Considered in Forming Opinions**

4. In addition to the materials listed in my prior reports, I reviewed and considered all the materials cited in Mr. Buscaino's Second Supplemental Expert Report, including the written materials, devices, systems and software.

5. I understand that the Defendants have recently identified in their 5th Supplemental Initial Disclosures a number of individuals, namely Michael Tyler, John Verity,

asserted claims would not be obvious, including, where applicable, the secondary considerations of non-obviousness.

37. I understand that claim construction is ultimately a legal issue for the Court, and that the Court has provided interpretations of certain terms whose meaning was apparently disputed by the parties.

38. I understand that where a reference does not disclose something, that something may be "inherent" in the reference, but only where the thing is "necessarily present"; "possibilities and probabilities" are not sufficient.

## VII. VALIDITY OF THE '356 PATENT

### A. J.K. Lasser's Your Money Manager

39. Your Money Manager ("YMM") was a personal finance program based on large-scale professional finance programs, and was designed using the MS DOS vernacular. That assumed a system with no pointing device or touch entry. It also assumed that any menus or other accessories would be invoked by function keys dedicated to each menu or other accessory. The MS DOS approach is one of the system-in-control with the user wandering through a labyrinth of menus and carrying out series of operations in the order dictated by the designers. The MS DOS interface paradigm is inherently different from that of the graphical user interface machines.

#### (1) Claim 19

40. This claim requires "a tool adapted to allow said user to compose said information" which the Court has construed to mean "a graphical keyboard tool or a graphical number keypad tool, which allows the user to compose information by pointing to the display keys of that tool." Mr. Buscaino specifically points to an on-screen calculator that the user may call up by pressing the "F2" key when the Amount field is selected as meeting this limitation. I

9

disagree. The on-screen calculator of YMM is not a tool within the meaning of the Court's construction; it does not permit a user to compose information by pointing to display keys. Rather, the on-screen calculator that Mr. Buscaino points to is merely a visual guide to the user of a reconfiguration of the physical keyboard. For example, the on-screen calculator visually indicates numbers that are available only via the physical keyboard, and certain functions, "CLR", "+/-", etc. that are also available only via the physical keyboard using certain function keys. This visual representation is presented only as an aid for the user in using the physical keyboard. The on-screen calculator does not have "display keys," nor anything by which a user could "point" to "display keys."

41. Mr. Buscaino appears to recognize the lack of this limitation in YMM by admitting that YMM does not disclose use of a mouse, pointing device, or touch-screen. Mr. Buscaino contends that it would have been obvious to add the use of a mouse, pointing device, or touch screen, in light of various other prior art references. I disagree. First of all, YMM teaches away from using a mouse because it uses the MS DOS operating system, and as discussed above, it was presumed that YMM would not be used with a mouse or other pointing device. YMM was optimized for the keyboard and it would be extremely difficult without starting over to make YMM work with a pointing device with anywhere close to the same efficiency. Programs designed for MS DOS were optimized for the keyboard interface. Such programs, like YMM, are difficult to modify for use with a mouse, pointing device, or touch-screen in such a way as to maintain the same level of user efficiency. Instead, when a developer elects to write a pointing-device-driven program, they will typically completely re-write it in a different, user-in-control vernacular. This is typically done as a completely new design without reference to that which came before. This explains why neither Quicken nor Home Accountant (or any other personal

10

finance programs) built on the work of YMM. This likewise explains why the types of predefined and associated tools claimed in the '356 patent continued to elude software developers at the time.

42. Further, even if it were obvious to one of ordinary skill in the art to add a mouse to a system running YMM, doing so would still not meet the limitations of claim 19. When I attempted to run YMM on a computer with a mouse, the visual representation that Mr. Buscaino calls an on-screen calculator does not respond to the mouse. As discussed above, the on-screen calculator of YMM does not possess "display keys" with which a user can interact. Thus, even if a mouse were added to a system running YMM, the on-screen calculator would need to be wholly redesigned to permit a user to interact with the on-screen calculator using the mouse. Also, additional elements would have to be added to the on-screen calculator. For example, there is no "Enter" button or transfer mechanism to allow a user to transfer the information from the on-screen calculator to an information field. One would have to take yet another step of reconfiguring the on-screen calculator of YMM to meet this limitation. Thus, it would not be obvious to one of ordinary skill in the art to add all these missing features to YMM to meet the limitation of a tool that "allows the user to compose information by pointing to the display keys of that tool." Contrary to Mr. Buscaino's opinion, it is not just a simple matter of adding a mouse to YMM to reach the claimed invention, rather to arrive at the claimed invention would require a complete shift in user-interface paradigm from a physical keyboard driven device to an on-screen driven device.

43. Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to make this paradigm shift or to combine YMM with any of the prior art mouse

11

devices, pointing devices, or touch-screens cited by Mr. Buscaino. As discussed above, YMM was designed for MS DOS, and was not presumed to work with—or need—such pointing devices. At the relevant time, the developers of mouse or pointer-driven systems were mining mouse-driven systems such as the Apple Macintosh for ideas, not MS DOS applications optimized for keyboard use. Thus, at the time, there was simply no reason to combine the mouse-based interface used in such newer systems with the keyboard-based interface used in the older and soon-to-be obsolete MS DOS system. Further, one of ordinary skill in the art would not have considered adding a mouse-based interface to YMM because YMM was optimized for the keyboard-driven MS DOS system. Such a combination would likely have slowed down the YMM user. In addition, as discussed above, adding a mouse to YMM would not even work, and require not only reconfiguring the system but also reconfiguring the on-screen calculator discussed by Mr. Buscaino. In other words, the prior art as a whole taught away from combining YMM with any mouse, pointer, or touch-screen interface disclosed in the references cited by Mr. Buscaino. And even if a mouse were added to the YMM system, further modifications would be necessary as discussed above to arrive at the claimed invention.

44.  For the reasons stated above, claim 19 is not rendered obvious or otherwise invalid in light of YMM in combination with any of the following references cited by Mr. Buscaino, including: Home Accountant Program, Xerox Star, Apple Lisa, Tyler article, or any of the references described in Sections B, C, D, or G of Mr. Buscaino's September 14, 2007 supplemental expert report.

   (2)   **Claim 21**

45.  Claim 21 depends from claim 19, therefore my analysis above applies here. Claim 21 adds the requirement where the step of displaying the information fields is done in a "bit-mapped-graphics field," which this Court has construed to mean "a field into which a user is to

enter information by writing on a touch sensitive screen using a stylus." Mr. Buscaino admits that YMM fails to disclose this limitation. I agree with Mr. Buscaino on this point. Mr. Buscaino contends that the Tyler article and U.S. Patent No. 4,757,549 ("Machart") when combined with YMM render this claim obvious. I disagree.

46.     I disagree that Tyler discloses "writing on a touch sensitive screen" in such a "bit-mapped-graphics field." Although the Tyler article discloses a touch sensitive screen, it fails to disclose the ability to write in a bit-mapped-graphics field as contemplated by this claim limitation. Indeed, Mr. Buscaino fails to identify where Tyler discloses any writing in a bit-mapped-graphics field, or the use of a stylus or pen and writing with the system disclosed in the article. In fact, Mr. Buscaino seems to contradict himself when later in his report he admits that the FXFE system allegedly set forth in the Tyler article does not disclose this limitation.

47.     Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to combine either the Tyler article or the Machart reference with YMM on this point. YMM is a high-efficiency keyboard entry system designed for maintaining personal finance information, sold for use in standard MS DOS computers that did not have touch screens and that did not utilize graphics tablets. Accordingly, the YMM program never contemplated the use of handwriting or signatures. Further, handwriting is a slow and inefficient method of accepting input. Indeed, Mr. Buscaino suggests no problem to be solved in YMM that would require the use of writing in bit-mapped-graphics fields. Similar to my discussion above, adding a bit-mapped-graphics field would require a paradigm shift from a physical keyboard driven device to an on-screen driven device.

13

48. For the reasons stated above, claim 21 is not rendered obvious or otherwise invalid in light of YMM in combination with any of the references cited by Mr. Buscaino.

**B.    Foreign Exchange Front End and Tyler**

49. Mr. Buscaino alleges that the Tyler article describes the Foreign Exchange Front End ("FXFE"), based on conversations with Mr. Robert Long. I note that the Tyler article does not mention FXFE. Although I understand that counsel for Lucent have attempted to arrange for me to talk to Mr. Long, I have not had an opportunity to do so. The only information that Mr. Buscaino has presented regarding the assertion that the "FXFE" renders obvious this claim is the Tyler article itself, an article which does not mention "FXFE." If Defendants are allowed to present additional information regarding FXFE, I reserve the right to provide analysis and rebuttal at that time.

50. Based on my review of the Tyler article, that article does not disclose each and every limitation of claims 19 and 21 of the '356 patent. Nor does it render the claims obvious.

51. I note that the Tyler article is a magazine article. It is not an instruction manual or any other type of technical document regarding or even referencing FXFE. The Easel system as described by this four-page article does not disclose many of the claim limitations required by claims 19 and 21 of the '356 patent.

(3)    **Claim 19**

52. Mr. Buscaino states that FXFE discloses "indicating a particular one of said information fields into which information is to be inserted" by having the field identifier "intensif[y]" after being "touched with a finger." This is not disclosed in the Tyler article. The Tyler article certainly does not disclose a system that indicates any field into which information is to be inserted and Mr. Buscaino points to no such disclosure. Mr. Buscaino also states that

14

Dated: October 12, 2007

_____
Bruce Tognazzini

37

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2007, a copy of the foregoing EXPERT REPORT OF BRUCE TOGNAZZINI RELATING TO THE SECOND SUPPLEMENTAL EXPERT REPORT OF DALE BUSCAINO REGARDING LUCENT'S DAY PATENT was served on counsel for Gateway, Microsoft and Dell as follows:

**EMAIL**
Christopher S. Marchese
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099
marchese@fr.com
srodriguez@fr.com

Attorneys for *Microsoft Corp.*

**EMAIL**
Ali Sharifahmadia
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, DC 20004
Telephone: 202-942-5000
Facsimile: 202-942-5999
ali_sharifahmadian@aporter.com

Joel Freed
McDERMOTT, WILL & EMORY
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202-756-8000
Fax: 202-756-8087
jfreed@mwe.com

Attorneys for *Dell Inc.*

**EMAIL**
W. Bryan Farney
DECHERT LLP
106 East 6th Street, Suite 800
Austin, Texas 78701
Tel: 512-394-3000
Fax: 512-394-3001
bryan.farney@dechert.com

Attorneys for *Gateway, Inc., et al.*