John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Roger A. Denning (SBN 228998)
Owais A. Siddiqui (SBN 230004)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California  92130
Telephone:    (858) 678-5070
Facsimile:    (858) 678-5099

Stephen P. McGrath (SBN 202696)
Microsoft Corporation
One Microsoft Way
Redmond, WA  98052
Telephone:    (425) 882-8080
Facsimile:    (425) 936-7329

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.,<br><br>Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWBUNGA ENTERPRISES, INC.,<br><br>Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>Intervenor and Counter-claimant, | Case No. 07-CV-2000 H (CAB) consisting of matters severed from consolidated cases:<br>02-CV-2060 B (CAB)<br>03-CV-0699 B (CAB) and<br>03-CV-1108 B (CAB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF OBVIOUSNESS OF U.S. PATENT NO. 5,347,295**<br><br>Date:         January 7, 2008<br>Time:         10:30 a.m.<br>Courtroom:  13<br>Judge:        Honorable Marilyn L. Huff |
| MICROSOFT CORPORATION,<br><br>Plaintiff and Counter-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant and Counter-claimant, | |

1  | LUCENT TECHNOLOGIES INC.,
2  |         Plaintiff,
3  | v.
4  | DELL, INC.,
5  |         Defendant.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LUCENT TECHNOLOGIES INC.,

**Table of Contents**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF UNDISPUTED FACTS ........................................................... 1

    A. The '295 Agulnick Patent .......................................................................... 1

    B. Summary of the Prior Art .......................................................................... 1

        1. FIDS Paper .................................................................................... 2

        2. Taguchi Patent .............................................................................. 2

        3. Levine Patent ................................................................................ 2

        4. The Coleman and Buxton Papers .................................................. 3

III. LEGAL STANDARDS FOR SUMMARY JUDGMENT ...................................... 3

IV. THE '295 PATENT IS INVALID IN VIEW OF THE PRIOR ART .................... 4

    A. Claim 1 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents. .................................................................... 4

        1. Claim 1 – Preamble: "An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including" ................................ 4

        2. Claim 1 – Elements (a) and (b): "first detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen; [and] second detecting means coupled to said computer for detecting a departure of the stylus tip from the screen" ....................................................................... 5

        3. Claim 1 – Element (c): "means coupled to said computer for defining termination of a gesture comprising at least one stroke in response to said departure of the stylus tip" ........................ 5

        4. Claim 1 – Element (d): "means coupled to said computer for recognizing a plurality of said gestures, said recognizing means including means for comparing each said gesture to at least one predefined shape" ............................................ 6

        5. Claim 1 – Element (e): "means coupled to said computer for implementing each said recognized gesture, said implementing means including means for performing a predetermined action associated with each said predefined shape, said predetermined action being determined by the context in which said gesture was used, including a first context in which said action is executed upon an operating system level object and a second context in which said action is executed upon an application level object." ................ 6

B.   Claim 3: "The apparatus of claim 1, wherein: said second detecting means includes means for detecting proximity of the stylus tip to the screen; and said apparatus further includes means coupled to said computer for displaying an indicator of the proximity of the stylus tip to the screen. ................................................................................................. 7

C.   Claim 4: "The apparatus of claim 1, further including third detecting means for detecting a direction of motion of said gesture." ............................................................................................................... 8

D.   Claim 6: "The apparatus of claim 1, further including means coupled to said computer for displaying on said screen a shape representing the actual gesture made by a user of the computer." ........................ 8

E.   Claim 12: "The apparatus of claim 3, further including means for terminating display of said indicator when the stylus tip departs from proximity to the screen." ................................................................... 8

F.   Claim 39 is made obvious by the FIDS Paper in view of the Taguchi Patent and the Buxton Paper. ................................................... 9

   1.   Claim 39 – Preamble: "An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including" ............................... 9

   2.   Claim 39 – Element (a): "detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen" ..................................................................................... 9

   3.   Claim 39 – Elements (b) and (c): "means coupled to said computer for recognizing a gesture comprising at least one stroke and an event indicating termination of the gesture, said recognizing means including means for comparing said gesture to at least one predefined shape and being for recognizing at least a first gesture, a second gesture, and a third gesture comprising said first and second gestures; and implementing means coupled to said computer for implementing each recognized gesture, said implementing means including means for performing a first predetermined action associated with said first gesture, a second predetermined action associated with said second gesture, and a third predetermined action associated with said third gesture." ................................................................................ 9

G.   Claim 40: "The apparatus of claim 39, wherein the shapes of said first and second gestures are substantially identical." ......................................... 10

H.   Claim 41 is obvious in view of the FIDS Paper and the Taguchi Patent. ....................................................................................................... 11

   1.   Claim 41 – Preamble: " An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including" .............................. 11

      2. Claim 41 – Remainder of the claim .................................................. 11

  I. Claim 43: "The apparatus of claim 41, further including means coupled to said computer for displaying on said screen a shape representing the actual gesture made by a user of the computer." ...................... 11

  J. Claim 46: "The apparatus of claim 41, wherein said direction of motion of said gesture is associated with said predetermined action." ............................................................................................................. 11

V. CONCLUSION .................................................................................................................. 12

**Table of Authorities**

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
        477 U.S. 242 (1986) ................................................................................................. 3

*Barmag Barmer Maschinefabrik AG v. Murata Machine, Ltd.*,
        731 F.2d 831 (Fed. Cir. 1984) .................................................................................. 3

*Celotex Corp. v. Catrett*,
        477 U.S. 317 (1986) ................................................................................................. 3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
        363 F.3d 1263 (Fed. Cir. 2004) ................................................................................ 3

*Graham v. John Deere Co. of Kansas City*,
        383 U.S. 1 (1966) ..................................................................................................... 4

*KSR International Co. v. Teleflex Inc.*,
        127 S. Ct. 1727 (2007) ..................................................................................... passim

*In re Kahn*,
        441 F.3d 977 (Fed. Cir. 2006) .................................................................................. 7

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
        475 U.S. 574 (1986) ................................................................................................. 3

*In re Paulsen*,
        30 F.3d 1475 (Fed. Cir. 1994) .................................................................................. 4

**STATUTES**

35 U.S.C. § 103 ...................................................................................................................... 4

Fed. R. Civ. P. 56 ................................................................................................................... 3

I.   INTRODUCTION

By the late 1980's, stylus-based computers were nothing new. The world had already been introduced to notepad computers, handwriting recognition, and computers that detected the presence of a stylus not in contact with the screen. And as discussed below, stylus-based gestures and gesture recognition were familiar aspects of pen computing. In view of the well-developed technology in the prior art, there can be no genuine dispute of material fact that Lucent's '295 patent is invalid due to obviousness.

II.   STATEMENT OF UNDISPUTED FACTS

A.   The '295 Agulnick Patent

U.S. Patent No. 5,347,295 (herein, "the '295 patent") to Agulnick et al., entitled "Control of a Computer Through a Position-Sensed Stylus," issued on September 13, 1994, from an application dated October 31, 1990. [Ex. A.[1]] The purported invention of the '295 patent was a scheme for using particular types of stylus-based gestures to perform operations on a computer. But, as shown below and apparent from the patent specification itself, all of the features of the '295 patent claims existed in the prior art well before the '295 filing date.

B.   Summary of the Prior Art

The '295 patent specification on its face admits that nearly all of the features of the '295 patent already existed in the prior art. For example, the specification admits the prior art includes pen-driven computers, notepad computers, electronic ink, proximity-sensing digitizers, handwriting recognition, stylus-based gestures, and several techniques for gesture termination. [*See*, *e.g.*, Ex. A at 1:5-2:5, 6:53-68.] The '295 patent simply combined these old elements to perform their existing functions. It is against this backdrop—the unmistakable trend toward using stylus-based gestures to operate a computer, the general knowledge in the field, and the known problems of those systems acknowledged on the face of the '295 patent—that the prior art is viewed.

/ / /

/ / /

---

[1]   References to lettered Exhibits herein refer to the corresponding exhibit attached to the Declaration Of Owais A. Siddiqui In Support Of Microsoft Corporation's Motion For Summary Judgment Of Obviousness Of U.S. Patent No. 5,347,295, filed concurrently herewith.

### 1. FIDS Paper

A paper titled *FIDS – A Flat-Panel Interactive Display System* (herein, "FIDS Paper"), by Arto Kankaanpaa, was published in the proceedings of the IEEE conference on Computer Graphics and Applications in March 1988, more than two years before the October 31, 1990, filing date of the '295 patent. [Ex. B.] The FIDS Paper describes a computer system developed by Nokia Information Systems that includes "a flat-panel display with a touch-sensitive screen and a simple pen-like pointing device." [Ex. B at 71.] It discloses, among other applications, a text-editing application that allows the user to edit text using the stylus by drawing gestures directly on the display. [Ex. B at 77; *see id.* at Figs. 6 and 7.]

### 2. Taguchi Patent

U.S. Patent No 4,845,478 (herein, "Taguchi Patent") to Taguchi, et al., entitled "Coordinate Input Device with Display," issued on July 4, 1989. [Ex. C.] The Taguchi Patent describes an input device comprised of a display and a proximity-sensing digitizer. [*See*, *e.g.*, Ex. C at 1:56-61; *see also* Ex. D at 14-22.] The digitizer, located underneath the display screen, senses the position of a stylus both when it is in contact with the screen and when it is close to—but not in contact with— the screen. [*See*, *e.g.*, Ex. C at 1:56-61, 2:18-19, 9:36-41.]

### 3. Levine Patent

U.S. Patent No. 5,060,135 (herein, "Levine Patent") to Levine, et al., entitled "Apparatus For Manipulating Documents In A Data Processing System Utilizing Reduced Images Of Sheets Of Information Which Are Movable," was filed on November 1, 1988, and issued on October 22, 1991. [Ex. E.] The Levine Patent describes a computer system with a graphical user interface that mimics an office desk. [Ex. D at 23.] A user can use a stylus and digitizing tablet to interact with items on the desk. [Ex. E at 9:1-14; *see also* Ex. D at 25-26.]

Of particular interest, the Levine Patent discusses a "touch-and-lift" gesture of the stylus, whereby the user touches and removes one end of the stylus from the digitizing tablet. [*Id.* at 26.] Whether interacting with the operating system or with an application program, a touch-and-lift gesture performs the identical command of *selecting* the item that was touched. When interacting with the operating system, for example, a touch-and-lift gesture on an application icon *selects* that

application. [*See id.* at 26.] When interacting with an application, a touch and lift gesture on a number, letter, or name *selects* that number, letter or name. [*See id.* at 26-28.]

### 4. The Coleman and Buxton Papers

Other publications in the area of stylus-based computing disclose the remaining aspects of the '295 patent's asserted claims. A 1969 paper titled *Text Editing On A Graphic Display Device Using Hand-Drawn Proofreader's Symbols* (herein, "Coleman Paper"), by Michael Coleman, discloses a computer system that allows users to edit text using the stylus by drawing proofreader's symbols on the digitizing tablet. [Ex. F.] The system recognizes the direction of motion in which the gestures were drawn and assigns different meanings depending on the direction of motion. [*See, e.g.*, Ex. F at Fig. 1; *see also* Ex. D at 48-49.]

A 1979 paper titled *The Evolution of the SSSP Score Editing Tools* (herein, "Buxton Paper"), by William Buxton, describes a computer system with a digitizing tablet for music score editing. [Ex. G.] The Buxton Paper discloses three sets of gestures in which one gesture comprises a combination of two other gestures. [*See* Ex. D at 38; *see also* Ex. G at Fig. 10.]

## III. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is as appropriate in a patent case as in any other…[C]ourt[s] should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). To defeat a summary judgment motion, the opposing party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In this regard, unsupported conclusions on the ultimate issue of obviousness are "insufficient to raise a genuine issue of material fact." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec.*, 475 U.S. at 587.

35 U.S.C § 103 forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Supreme Court set out a framework for applying the statutory language of § 103. The analysis is objective:  "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined." *Id*. at 17-18.  "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Int'l. Co. v. Teleflex Inc*., 127 S.Ct. 1727, 1745-1746 (2007).

## IV.   THE '295 PATENT IS INVALID IN VIEW OF THE PRIOR ART

Each of the ten asserted claims[2] of the '295 patent would have been obvious to a person of ordinary skill in the art[3] from the FIDS Paper in view of one or more of the Taguchi, Levine, Coleman and Buxton references. [Ex. D at 167-79.]  None of the issues Lucent raises in response create any genuine dispute of material fact, and summary judgment of invalidity should be granted.

### A.   Claim 1 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.

#### 1.   Claim 1 – Preamble: "An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including"

The words in a preamble limit a claim only if they "give meaning to the claim and properly define the invention," but ***not*** if they "merely state a purpose or intended use of the invention." *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994).  Lucent's expert, Mr. Ward, does not dispute that

---

[2]   Lucent asserts claims 1,3, 4, 6, 12, 39-41, 43 and 46.  Of these, claims 1, 39, and 41 are independent.
[3]   For purposes of the present motion, Microsoft adopts Lucent's definition of a person of skill in the art.  [Ex. J at 8-9.] Lucent's definition requires at least as much knowledge in pen-computing as does Microsoft's definition. [*Compare id. with* Ex. N at 6-7]  As a result, Dr. Kelly's analysis and conclusions remain the same.

1  the FIDS Paper discloses a system "comprising a screen for displaying information and a stylus
2  having a tip for inputting information into a computer," but he contends the system in FIDS does
3  not *control* a computer system.  [Ex. H at 33.]  The phrase "for controlling a computer system" in
4  the preamble does not define the invention, but merely states its purpose and intended use.  While
5  the FIDS Paper unquestionably discloses an apparatus "for controlling a computer system," [*see* Ex.
6  D at 171-72], this phrase is not a limitation, so any purported dispute is immaterial.

       **2.**      **Claim 1 – Elements (a) and (b): "first detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen; [and] second detecting means coupled to said computer for detecting a departure of the stylus tip from the screen"**

10        The combination of the FIDS Paper and the Taguchi Patent discloses the functions and the
11  corresponding structures of these limitations.  [*See* Ex. I at 3; Ex. D at 172; *see also id.* at 14-22, 84-
12  87.]  Lucent, through its expert, does not dispute this.  [*C.f.* Ex. H at 33-36.]

       **3.**      **Claim 1 – Element (c): "means coupled to said computer for defining termination of a gesture comprising at least one stroke in response to said departure of the stylus tip"**

15        The combination of the FIDS Paper and the Taguchi Patent discloses both the function and
16  the corresponding structure of this limitation.  [*See* Ex. I at 4; Ex. D at 172-73; *see also id.* at 14-22,
17  84-86, 88.]  The FIDS Paper discloses a *central* processor programmed with software that
18  determines that a gesture is complete.  [Ex. D at 85-86 (noting that the FIDS design used an 80186-
19  based microcomputer workstation.]  Mr. Ward does not dispute this.  [*C.f.* Ex. H at 33-36.]
20        Rather, the only point of disagreement is Mr. Ward's conclusion that this *central* processor
21  does not constitute a *co-processor* (part of the corresponding structure identified by the Court for
22  this limitation).  [See Ex. I at 4.]  However, Mr. Ward's insistence that the claim requires "an
23  identifiable specific component" corresponding to the co-processor, [Ex. H at 33-34], is at odds
24  with his expert report on infringement.  There, Lucent argued that a central processor (CPU)
25  programmed with software for gesture termination *does* satisfy the structural requirements of this
26  limitation, since the processor can be viewed as a "virtualization" of a pen position digitizer co-
27  processor.  [Ex. M at 35-36.]
28  / / /

1    Lucent cannot have it both ways, and the dispute is not one of fact. Because the FIDS Paper
2    discloses a central processor with software to determine that a gesture is complete, it satisfies the
3    present limitation under Lucent's own interpretation of the claim. [Ex. D at 172-173.]

4    **4.   Claim 1 – Element (d): "means coupled to said computer for recognizing a plurality of said gestures, said recognizing means including means for comparing each said gesture to at least one predefined shape"**
5

6    Lucent's expert admitted at deposition that Fig. 7 of the FIDS Paper depicts gesture
7    recognition satisfying the claim. [*See* Ex. K at 84:11-85:21.]

8    **5.   Claim 1 – Element (e): "means coupled to said computer for implementing each said recognized gesture, said implementing means including means for performing a predetermined action associated with each said predefined shape, said predetermined action being determined by the context in which said gesture was used, including a first context in which said action is executed upon an operating system level object and a second context in which said action is executed upon an application level object."**
9
10
11
12

13   This limitation requires a system that allows "use of a single set of gestures for identical
14   executable commands at both the operating system level and the application level." [Ex. I at 5.]
15   The combination of the FIDS Paper and the Levine Patent, with its "touch-and-lift" gestures,
16   discloses both the function and the corresponding structure of this limitation. [*See* Ex. I at 5; Ex. D
17   at 173; *see also id.* at 23-32, 94.]
18   The touch-and-lift gesture, when performed in both an ***application*** (i.e., at the application
19   level) and in the "desk view" (i.e., at the operating system level), performs the command of
20   ***selecting an object.*** [*See* Section II.B.3 *supra*; *see also* Ex. D at 26-28.] Because the same gesture
21   performed at both the application level and the operating system level performs the same command,
22   the Levine Patent discloses this limitation.
23   Mr. Ward does not dispute the touch-and-lift gesture selects an object at the application
24   level. [*C.f.* Ex. H at 33-36.] Nor does Mr. Ward, in his report, dispute that the touch-and-lift
25   gesture selects an object at the operating system level. [*Id.*] Rather, Lucent's expert argues that the
26   Levine Patent "does not disclose *control* of the operating system." [Ex. H at 34.] "Control of the
27   operating system" is not a limitation of the claim, however. At his deposition, Mr. Ward attempted
28   to clarify his position: "[W]hat I intended to refer to here is that this has not disclosed the action of

a gesture being executed upon an operating system level object." [Ex. K at 134:22-135:5.] This is precisely the kind of conclusory statement that is insufficient to raise a triable issue of fact. *See In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness") (cited by *KSR*, 127 S.Ct. at 1741). In the absence of any details from Mr. Ward, Dr. Kelly's analysis stands unrebutted: a touch-and-lift gesture on a desk view icon performs a *select* command on an operating system level object. Accordingly, there is no factual dispute that all the limitations of claim 1 are disclosed by the FIDS Paper in view of the Taguchi Patent and the Levine Patent.

  **B.**  **Claim 3: "The apparatus of claim 1, wherein: said second detecting means includes means for detecting proximity of the stylus tip to the screen; and said apparatus further includes means coupled to said computer for displaying an indicator of the proximity of the stylus tip to the screen.**

Lucent does not dispute that the Taguchi Patent discloses a proximity-sensing digitizer, nor that it discloses an indicator of the proximity of the stylus tip to the screen. [*See* Ex. D at 21-22, 174; *c.f.* Ex. H at 36.] Lucent also does not dispute that the combination of the FIDS Paper and the Taguchi Patent discloses both the function and the corresponding structure of this limitation. [*See* Ex. I at 5-6; *see* Ex. D at 174; *see also id.* at 14-32, 84-86; *c.f.* Ex. H at 36.]

One of skill in the art at the time of the alleged invention would have known to combine the FIDS Paper with the Taguchi Patent. [*See* Ex. D at 167-69.] Lucent argues only the absence of an explicit motivation to combine, stating: "There would be no desire to enhance the prior art by adding proximity sensing to FIDS because *there is no problem disclosed in FIDS* which would require it." [Ex. H at 36 (emphasis added).] But obviousness does not require an explicit teaching, suggestion, or motivation to combine references. *KSR*, 127 S.Ct. at 1738-39. Rather, "[w]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740. Moreover, Lucent's statement is wrong. The FIDS Paper discusses the problems of parallax, [Ex. B at 74]; rear-mounted proximity sensing digitizers—like that in the Taguchi Patent—indisputably reduce parallax problems, [Ex. L at 90:2-91:2-4].

    **C.   Claim 4: "The apparatus of claim 1, further including third detecting means for detecting a direction of motion of said gesture."**

The combination of the FIDS Paper and the Taguchi Patent discloses both the function and the corresponding structure of this limitation. [*See* Ex. I at 6; Ex. D at 174; *see also id.* at 14-22, 84-86.] Lucent, through its expert, does not dispute this. [*C.f.* Ex. H at 36.]

    **D.   Claim 6: "The apparatus of claim 1, further including means coupled to said computer for displaying on said screen a shape representing the actual gesture made by a user of the computer."**

Lucent does not dispute that the Taguchi Patent discloses displaying on the screen a shape representing the actual gesture made by the user. [*See* Ex. D at 21-22, 175; *c.f.* Ex. H at 37] Nor does Lucent dispute that the combination of the FIDS Paper and the Taguchi Patent discloses both the function and the corresponding structure of this limitation. [*See* Ex. I at 7; *see* Ex. D at 175; *see also id.* at 14-22, 49-50, 84-86; *c.f.* Ex. H at 37.]

Rather, Lucent attempts only to revive the "motivation to combine" standard rejected by the Supreme Court in *KSR*. One of skill in the art at the time of the alleged invention would have known to combine the FIDS Paper with the Taguchi Patent. [*See* Ex. D at 167-68.] As with claim 3, Lucent argues: "There would be no desire to enhance the prior art by adding this feature to FIDS because there is **no problem disclosed in FIDS** which would require it." [Ex. H at 36.] Lucent's argument fails as a matter of law because a finding of obviousness does not require an explicit teaching, suggestion, or motivation to combine references. *KSR*, 127 S.Ct. at 1738-39. And as before, Lucent's statement is also false. In discussing "possible extensions" of the FIDS design, the FIDS Paper discusses sketching figures and patterns on the screen, [Ex. B at 78], which would necessarily require displaying on the screen the actual marks drawn.

    **E.   Claim 12: "The apparatus of claim 3, further including means for terminating display of said indicator when the stylus tip departs from proximity to the screen."**

Claim 12 is made obvious by the FIDS Paper in view of the Taguchi Patent. [*See* Ex. D at 175.] Lucent, through its expert, makes the same arguments with respect to claim 12 as it did with respect to claim 3. For the same reasons as those described above in Section IV.B, there is no dispute of material fact that claim 12 is invalid due to obviousness.

    **F.**    **Claim 39 is made obvious by the FIDS Paper in view of the Taguchi Patent and the Buxton Paper.**

        **1.**    **Claim 39 – Preamble: "An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including"**

The FIDS Paper satisfies the language of the preamble. To the extent Lucent challenges this, the discussion in Section IV.A.1 is incorporated by reference here.

        **2.**    **Claim 39 – Element (a): "detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen"**

The combination of the FIDS Paper and the Taguchi Patent disclose both the function and the corresponding structure of this limitation. [*See* Ex. I at 7; Ex. D at 176; *see also id.* at 14-22, 84-87.] Lucent, through its expert, does not dispute this. [*C.f.* Ex. H at 33-36.]

        **3.**    **Claim 39 – Elements (b) and (c): "means coupled to said computer for recognizing a gesture comprising at least one stroke and an event indicating termination of the gesture, said recognizing means including means for comparing said gesture to at least one predefined shape and being for recognizing at least a first gesture, a second gesture, and a third gesture comprising said first and second gestures; and implementing means coupled to said computer for implementing each recognized gesture, said implementing means including means for performing a first predetermined action associated with said first gesture, a second predetermined action associated with said second gesture, and a third predetermined action associated with said third gesture."**

As discussed above in Section II.B.4, the Buxton Paper discloses a first gesture, a second gesture, and a third gesture comprising the first and second gestures. [*See also* Ex. D at 36-38, 176.] Further, the combination of the FIDS Paper and the Buxton Paper discloses both the function and the corresponding structure of these limitation. [*See* Ex. I at 8-9; Ex. D at 176-77; *see also id.* at 33-39, 84-94.]

The parties do not dispute that the Buxton Paper discloses multiple sets of gestures in which the shape of a third gesture is, in fact, comprised of the shapes of a first gesture and a second gesture. [*See* Section II.B.4; *see also* Ex. D at 36-38.] Rather, Mr. Ward argues merely that the Buxton Paper does not *specifically identify* the third gesture as comprising the first and second gestures. [Ex. H at 39 ("Buxton does not disclose that these two symbols should be combined to form the corresponding half note symbol.").] Such an identification, however, is not necessary.

1  "Common sense teaches … that familiar items may have obvious uses **_beyond their primary_**
2  **_purposes_**, and in many cases a person of ordinary skill will be able to fit the teachings of multiple
3  patents together like pieces of a puzzle." *KSR*, 127 S.Ct. at 1742 (emphasis added).  It is irrelevant
4  whether the Buxton Paper was intended to disclose compound gestures—what matters is that it
5  **_does_**.

6        In addition, Mr. Ward repeats his argument that the claim requires "an identifiable specific
7  component" corresponding to a pen position digitizer co-processor.  [Ex. H at 38.]  For the reasons
8  discussed in Section IV.A.3, Mr. Ward's argument does not create a dispute of material fact.

9        One of ordinary skill in the art would have been led to combine the Buxton Paper with the
10 FIDS Paper.  [Ex. D at 170.]  The FIDS Paper lists several applications that could benefit from the
11 FIDS design, including text processing, business graphics, drafting, spreadsheet applications,
12 database applications, communications systems, user interface management systems, and graphics-
13 based editors and visual programming.  [*See* Ex. B at 75-76; *see also* Ex. D at 170.]  The Buxton
14 Paper's gesture capabilities fall squarely into the category of graphics-based editors.  [Ex. D at 170]
15 Indeed, the paper explains that the FIDS design is applicable to "exotic and special applications" as
16 well as to "everyday computer software."  [Ex. B at 75.]  In response, Mr. Ward states in summary
17 fashion that the Buxton Paper is "even further afield" of the text-editing discussed in the FIDS
18 Paper.  [Ex. H at 40.]  In view of the explicit discussion in the FIDS Paper that the FIDS design is
19 applicable to a wide range of applications, both commonplace and exotic, Mr. Ward's conclusory
20 statements—premised on the erroneous idea that the FIDS Paper deals just with text editing—
21 cannot create a dispute of material fact, and claim 39 should be held invalid.

22       **G.**    **Claim 40: "The apparatus of claim 39, wherein the shapes of said first and second gestures are substantially identical."**
23

24       The Buxton Paper discloses a third gesture comprised of first and second gestures that are
25 substantially identical.  For example, the gesture for a thirty-second note is comprised of an eighth-
26 note gesture and another eight-note gesture. [*See* Ex. D at 177.]  Mr. Ward does not dispute this,
27 relying only on arguments already provided in connection with claim 39.  [Ex. H at 41.]
28 / / /

**H.   Claim 41 is obvious in view of the FIDS Paper and the Taguchi Patent.**

  **1.   Claim 41 – Preamble: " An apparatus for controlling a computer system, the computer system comprising a screen for displaying information and a stylus having a tip for inputting information into the computer, including"**

The FIDS Paper satisfies the language of the preamble. To the extent Lucent challenges this, the discussion in Section IV.A.1 is incorporated by reference here.

  **2.   Claim 41 – Remainder of the claim**

The combination of the FIDS Paper and the Taguchi Patent discloses both the function and the corresponding structure of all the limitations of claim 41. [*See* Ex. I at 9-11; Ex. D at 177-79; *see also id.* at 14-22, 84-95.] Lucent merely repeats its argument that the claim requires "an identifiable specific component" corresponding to a pen position digitizer co-processor. [Ex. H at 42.] Microsoft addressed this argument above in Section IV.A.3, and for the same reasons as discussed there, Lucent's argument fails to create a dispute of material fact.

**I.   Claim 43: "The apparatus of claim 41, further including means coupled to said computer for displaying on said screen a shape representing the actual gesture made by a user of the computer."**

Like claim 6, the limitation of claim 43 is made obvious by the FIDS Paper in view of the Taguchi Patent. [*See* Ex. D at 179; *see also id.* at 21-22, 84-86] As discussed above in Section IV.D, the parties do not dispute that the Taguchi Patent discloses displaying on the screen a shape representing the actual gesture made by a user of the computer. Rather, Lucent raises the same argument it raised with respect to claim 6, and for the same reasons discussed in Section IV.D, Lucent fails to raise any genuine dispute of material fact.

**J.   Claim 46: "The apparatus of claim 41, wherein said direction of motion of said gesture is associated with said predetermined action."**

Claim 46 is made obvious by the FIDS Paper in view of the Taguchi Patent and the Coleman Paper. [*See* Ex. D at 179; *see also id.* at 40-50.] The parties do not dispute that the Coleman Paper discloses gestures in which the direction of motion of the recognized gesture is associated with the predetermined action. [Ex. D at 179; *c.f.* Ex. H at 43.]

Lucent's expert, Mr. Ward, raises as his single point of disagreement that "there is no such teaching, suggestion, or motivation to combine FIDS with this aspect of the Coleman reference" and

that therefore one of skill in the art would not be led to combine the FIDS Paper with the Coleman Paper. [Ex. H at 43.] This argument fails as a matter of law because a finding of obviousness does not require an explicit teaching, suggestion, or motivation to combine references. *KSR*, 127 S.Ct. at 1738-39.

## V. CONCLUSION

The '295 patent does nothing but arrange old elements with each performing the same function it had been known to perform and yielding no more than what one would expect from such an arrangement. The Supreme Court's ruling in *KSR* compels the conclusion that such claims are obvious. *KSR*, 127 S.Ct. at 1740. There is no genuine dispute of any material fact that each of the asserted claims is obvious in view of the FIDS Paper combined with one or more of the Taguchi, Levine, Coleman and Buxton references, and Microsoft's motion for summary judgment of invalidity should be granted.

Dated: November 30, 2007        FISH & RICHARDSON P.C.

By: s/Owais A. Siddiqui
John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Roger A. Denning (SBN 228998)
Owais A. Siddiqui (SBN 230004)
siddiqui@fr.com

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 30, 2007 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

 s/Owais A. Siddiqui
Owais A. Siddiqui (SBN 230004)
siddiqui@fr.com

Attorney for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION