# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GATEWAY, INC.; GATEWAY COUNTRY )<br>STORES LLC; MICROSOFT )<br>CORPORATION; AND DELL, INC., )<br>)<br>Defendants. )<br>) | Case No. 02-CV-2060-B (CAB), consolidated with Case No. 03-CV-0699-B (CAB) and Case No. 03-CV-1108-CAB (CAB) |

**EXPERT REPORT OF JEAN RENARD WARD RELATING TO THE SUPPLEMENTAL EXPERT REPORT OF JOHN P.J. KELLY, PH.D. RE LUCENT'S AGULNICK PATENT**

1. I have been retained as a technical expert in this case by Lucent Technologies Inc. ("Lucent") to provide my opinions regarding the contentions put forth by Microsoft Corporation, Gateway, Inc., and Dell, Inc. regarding the validity and other technical matters concerning certain claims of U.S. Patent No. 5,347,295 ("the '295 patent"). I have previously submitted expert reports in this matter on issues of infringement dated March 31, 2006, and issues of validity on May 12, 2006, and various declarations. I am submitting this report as a supplement to my previous reports and declarations.

I. **QUALIFICATIONS AS AN EXPERT**

2. My background and qualifications are set forth in my Infringement Report.

3. I have provided testimony in other matters as set forth in my Infringement Report.

II. **SCOPE OF STUDY AND OPINION**

A. **Documents and Information Considered in Forming Opinions**

4. The following opinions and analysis are based upon a review of the '295 patent, the file history for the '295 patent, the prior art cited in the file history, the Kelly Report

108. I note that Dr. Kelly must rely on the combination of several references with the FIDS reference in coming to his opinion.

### (1) Claim 1

109. FIDS does not disclose an apparatus for controlling a computer system. For example, FIDS does not disclose means coupled to said computer for implementing each said recognized gesture, said implementing means including means for performing a predetermined action associated with each predefined shape, said predetermined action being determined by the context in which said gesture was used, including a first context in which said action is executed upon an operating system level object and a second context in which said action is executed upon an application level object. FIDS discloses an apparatus for controlling a single application in a computer system, not for controlling a computer system overall. Specifically, FIDS discloses "a text editor using ... proof correction marks" for use with the application "Graphix." FIDS at 81. Further, FIDS does not disclose or describe full control of the application. For example, it specifically excludes use of a pen-like device (a stylus) for text input, by use of character recognition software. Further, FIDS does not describe how data can be saved and input into the operating system by means of gestures. Also, FIDS does not disclose means coupled to said computer for defining termination of a gesture, or means coupled to said computer for recognizing a plurality of gestures.

110. Dr. Kelly also suggests that FIDS discloses a pen position digitizer co-processor programmed with software for defining termination of a gesture. I disagree. Nowhere does FIDS suggest or otherwise disclose any structure that corresponds with such a co-processor. There is no explicit description in FIDS of an identifiable specific component that defines termination of a gesture. FIDS does not describe any separable or specific component for determination of the termination of a gesture that could be construed as a co-processor-type component. One of

ordinary skill viewing FIDS and the prior art as a whole would not believe that a specific co-processor component is necessarily present or required for determination of gesture termination. Further, FIDS does not disclose how the termination of a gesture is determined, nor does Dr. Kelly cite any such disclosure.

111.    Dr. Kelly admits that FIDS does not disclose "a single set of gestures for identical executable commands at both the operating system level and the application level." I agree with Dr. Kelly on this point. FIDS discloses only gestures that are relevant at the application level, such as deletion of individual words and characters in a text-editing application. Indeed, the FIDS summary refers to having implemented a "text editor" program. FIDS discloses "a text editor using ... proof correction marks" for use with the application "Graphix." FIDS at 81. Thus, FIDS does not disclose the use of gestures at the operating system level. FIDS only contemplates the use of gestures in a specific application.

112.    Further to this point, Dr. Kelly also states that it would have been obvious to combine FIDS with the Levine reference to meet this limitation which requires "use of a single set of gestures for identical executable commands at both the operating system level and the application level." This is wrong. First, the Levine reference does not disclose control of the operating system. Second, the Levine reference does not involve the use of recognized gestures. The gestures in this limitation are "*said* recognized gesture[s]" from the previous limitation. Accordingly, the Levine reference does not disclose a single set of recognized gestures for identical executable commands at both the operating system level and the application level.

113.    The Levine reference does not disclose the use of recognized gestures because the Levine reference does not disclose the recognition of shapes. The Levine reference is clear in its description of the "touch and lift" and "touch and move" operations. These operations do not

involve the use of recognition of shapes; these operations do not involve a writing or drawing of a symbol or mark; these operations do not involve the determination of the termination of a recognized gesture. The Levine reference makes clear that the "touch and lift" operation only involves a determination of time, not of shape, or mark, or handwriting recognition. Levine Reference 10:20-44. In other words, the operations described in the Levine reference do not involve the use of the handwriting recognition algorithms and gesture recognition techniques set forth in the Court's claim construction.

114.  To the extent Dr. Kelly contends that the Levine reference discloses recognized gestures, I know of no reason one skilled in the art would combine FIDS with the "touch and lift" and/or "touch and move" operations disclosed in the Levine reference. Indeed, both FIDS and the Levine reference teach away from combining these references. For example, FIDS involves operations based on completed strokes, while the Levine reference involves operations based on uncompleted strokes (to the extent that they can be considered strokes at all). Further, the Levine reference discloses very different direct manipulation techniques in its touch and lift and touch and move operations. These techniques are not recognized gestures, as understood by the '295 patent. These fundamentally different and incompatible techniques would lead to very dissimilar and confusing results, and technical difficulties, if one were to attempt to combine them with the teachings of FIDS. One of ordinary skill in the art, looking at the prior art as a whole, would not think to combine the operations described in the Levine reference with FIDS. There would be no desire to enhance the prior art by combining the type of operations described in Levine with FIDS due to the difficulties discussed above.

115.  Additionally, the Freestyle system and the Levine reference describe a single application for annotating static images with synchronized markings and voice recording

combined with a filing functionality intended to look visually like a large desk top. The Freestyle system and the Levine reference disclose that application control requires separate actions, by separate devices, namely the keyboard. The examples the Dr. Kelly cites from the FreeStyle video are not shown as operating system level objects but rather screen captures or static snapshot pictures of the display put up by other applications. These snapshot pictures are then manipulated only inside the context of the single Freestyle application program.

### (2) Claim 3

116. Claim 3 depends from claim 1 and my analysis of claim 1 applies equally here. Dr. Kelly admits that FIDS does not disclose proximity sensing (and likewise displaying an indicator of proximity). I agree with Dr. Kelly on this point.

117. Dr. Kelly states that it would have been obvious to combine FIDS with the Levine reference and/or the Taguchi reference to meet this limitation. This is wrong. FIDS makes no reference to proximity sensing or to any need for proximity sensing, nor to any problem which would drive someone to seek out proximity sensing. Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to combine FIDS with either Levine or Taguchi for the purpose of adding proximity sensing. One of ordinary skill in the art, looking at the prior art as a whole, would not think to combine the proximity sensing described in Levine or Taguchi with FIDS. There would be no desire to enhance the prior art by adding proximity sensing to FIDS because there is no problem disclosed in FIDS which would require it.

### (3) Claim 4

118. Claim 4 depends from claim 1 and my analysis of claim 1 applies here.

#### (4) Claim 6

119.  Claim 6 depends from claim 1 and my analysis of claim 1 applies here. Dr. Kelly admits that FIDS does not disclose displaying the actual shape of a gesture. I agree with Dr. Kelly on this point.

120.  Dr. Kelly states that it would have been obvious to combine FIDS with the Coleman or Taguchi reference to meet this limitation. This is wrong. FIDS makes no reference or suggestion regarding any need or problem that would require the display of the shape representing the actual gestures. FIDS discloses a prototype text-editing application using a limited set of correction marks, and there is no need to show the actual written marks. Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to combine FIDS with Coleman or Taguchi for the purpose of adding this feature. One of ordinary skill in the art, looking at the prior art as a whole, would not think to combine displaying the actual shape of a gesture described in Coleman or Taguchi with FIDS. There would be no desire to enhance the prior art by adding this feature to FIDS because there is no problem disclosed in FIDS which would require it.

#### (5) Claim 12

121.  Claim 12 depends from claims 1 and 3 and my analysis of those claims applies here. Dr. Kelly admits that FIDS does not disclose proximity sensing (and likewise displaying an indicator of proximity). I agree with Dr. Kelly on this point.

122.  Dr. Kelly states that it would have been obvious to combine FIDS with the Levine reference and/or the Taguchi reference to meet this limitation. This is wrong. FIDS makes no reference to proximity sensing or to any need for proximity sensing, nor to any problem which would drive someone to seek out proximity sensing. Although a teaching, suggestion, or

37

motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to combine FIDS with either Levine or Taguchi for the purpose of adding proximity sensing. One of ordinary skill in the art, looking at the prior art as a whole, would not think to combine the proximity sensing described in Levine or Taguchi with FIDS. There would be no desire to enhance the prior art by adding proximity sensing to FIDS because there is no problem disclosed in FIDS which would require it.

### (6) Claim 39

123. FIDS does not disclose an apparatus for controlling a computer system within the meaning of claim 39. Specifically, FIDS does not disclose compound gestures. Further, FIDS does not disclose means coupled to said computer for recognizing a gesture within the meaning of this claim.

124. Dr. Kelly suggests that FIDS discloses a pen position digitizer co-processor programmed with software for indicating termination of a gesture. I disagree. Nowhere does FIDS suggest or otherwise disclose any structure that corresponds with such a co-processor. There is no explicit description in FIDS of an identifiable specific component that defines termination of a gesture. FIDS does not describe any separable or specific component for determination of the termination of a gesture that could be construed as a co-processor-type component. One of ordinary skill viewing FIDS and the prior art as a whole would not believe that a co-processor is necessarily present or required for determination of gesture termination.

125. FIDS does not disclose "a third gesture comprising said first and second gestures," or "compound gestures." FIDS discloses only single gestures. Indeed, FIDS teaches away from compound gestures because it fails to disclose recognizing multi-stroke gestures but instead teaches the composition of editing commands into formatting commands.

126.   Dr. Kelly states that FIDS discloses compound gestures. I disagree. For example, Dr. Kelly suggests that the MARK DELETE correction mark constitutes a compound gesture consisting of the combination of the MARK and DELETE correction marks. This is incorrect. The DELETE correction mark is a long horizontal line; the MARK correction mark is shown as a left bracket. However, the MARK DELETE correction mark appears to be a combination of a left bracket and a backward slash—plainly not a combination of the DELETE and MARK correction marks. Furthermore, any multi-stroke gesture-like symbols disclosed in FIDS are not compound gestures within the meaning of this claim limitation because at best they are grammatical compositions. By grammatical composition I mean a composition taken as a result of combining separate gestures in strict grammatical form without regard to how the constituent gestures were recognized. In comparison, the compound gestures contemplated by this claim limitation are produced as a single recognition result of combining two separate and distinctly recognized gestures.

127.   Dr. Kelly also states that it would have been obvious to combine the Buxton reference with FIDS to meet this limitation.  Again I disagree.  First of all, Buxton does not disclose compound gestures.  The Buxton reference discloses a computer musical composition system that recognizes certain symbols that correspond to certain musical notes. However, the Buxton reference does not disclose compound gestures within the meaning of this claim limitation, nor does it teach combining gestures to create compound gestures. Rather, the Buxton reference discloses several multi-stroke symbols that correspond with different musical notes. For example, the Buxton reference discloses a horizontal line as corresponding with a whole note and a vertical line as corresponding with a quarter note, but Buxton does not disclose that these two symbols should be combined to form the corresponding half note symbol.  Thus, Dr. Kelly

mischaracterizes the half note symbol as a compound gesture because Buxton does not disclose that the shape is a composition of two other gestures or of two other shapes. Instead, Buxton clearly discloses that each shape is a shape unto itself. ("based on the shape of the symbol"), and a single symbol is composed of "line segments constituting a symbol," rather than composed of other symbols or gestures. This is emphasized by Buxton's further disclosure that "the directional changes *in a symbol* must be drawn distinctly to ensure correct recognition" (emphasis added). In fact, Buxton's own characterization that each symbol is a symbol unto itself teaches away from the idea of a compound gesture.

128. To the extent that Dr. Kelly contends, however, that Buxton does disclose compound gestures within the meaning of this claim limitation, I know of no reason one of ordinary skill in the art would be led to combine FIDS with the musical symbols disclosed in Buxton. One of ordinary skill in the art would just not consider using musical notations for text editing as this area is even further afield of its plausible use in FIDS. Looking at the prior art as a whole, there was no motivation, teaching, or suggestion to combine the musical notes disclosed in Buxton with FIDS. Further, there would be no desire to enhance the prior art by use of the types of symbols disclosed in Buxton for the reasons discussed above.

129. Moreover, the FIDS discloses the construction of commands via composition of editing commands into formatting commands, that is, a composition of commands by a form of grammar described, as distinct from a compound gesture. Grammatical composition of gestures into commands is not the same as compound gestures.

130. Dr. Kelly appears to be citing the Advanced Display System paper as disclosing compound gestures, but fails to point to or analyze any specific compound gestures disclosed by the Advanced Display System paper. To the extent Dr. Kelly is allowed to further explain his

analysis, I reserve the right to further respond. To the extent that Dr. Kelly contends that the Advanced Display System paper discloses compound gestures within the meaning of this claim limitation, I know of no reason one of ordinary skill in the art would be led to combine FIDS with the symbols disclosed in the Advanced Display System paper. The Advanced Display System paper mentions a set of proof reading marks but I know of no reason one of ordinary skill in the art would be led to prefer one set of proof reading marks, and in fact the Advanced Display System states that "where even a more natural way of editing could be found it is used instead." Indeed, in terms of implementation it may be preferable not to use the standardized proof reading marks but instead to pick symbols for which better recognition performance may be achieved by the technique of neography. Looking at the prior art as a whole, there was no reason to combine the drawing marks disclosed in the Advanced Display System paper with FIDS. Further, there would be no desire to enhance the prior art by use of the types of symbols reasons discussed above.

131.   Dr. Kelly also appears to be citing SFS 2324 as disclosing compound gestures, but fails to point to or analyze any specific gestures or compound gestures disclosed by SFS 2324. In fact, SFS 2324 says nothing about gestures, gesture recognition or the use of a computer. Rather, SFS 2324 appears to be the Finish Standards Association proofreading corrections handout to be used as a quick reference guide for clerical staff. Accordingly, even if those skilled in the art would be led to combine SFS 2324 with FIDS, which they would not, doing so would not lead to the claimed invention.

(7)   **Claim 40**

132.   Claim 40 depends from claim 39 and the analysis of claim 39 applies here.

### (8)  Claim 41

133.  FIDS does not disclose an apparatus for controlling a computer system within the meaning of claim 41. Specifically, FIDS does not disclose means coupled to said computer for recognizing a gesture comprising at least one stroke and an event indicating termination of the gesture, or for detecting a direction of motion of the creation of said gesture within the meaning of this claim.

134.  Dr. Kelly also suggests that FIDS discloses a pen position digitizer co-processor programmed with software for indicating termination of a gesture. I disagree. Nowhere does FIDS suggest or otherwise disclose any structure that corresponds with such a co-processor. There is no explicit description in FIDS of an identifiable specific component that defines termination of a gesture. FIDS does not describe any separable or specific component for determination of the termination of a gesture that could be construed as a co-processor-type component. One of ordinary skill viewing FIDS and the prior art as a whole would not believe that a co-processor is necessarily present or required for determination of gesture termination.

### (9)  Claim 43

135.  Claim 43 depends from claim 41 and the analysis of claim 41 applies here. Dr. Kelly admits that FIDS does not disclose displaying the actual shape of the gesture. I agree with Dr. Kelly on this point.

136.  Dr. Kelly states that it would have been obvious to combine FIDS with Coleman and/or Taguchi to meet this limitation. This is wrong. FIDS makes no reference or suggestion regarding any need or problem that would require the display of the shape representing the actual gestures. FIDS discloses a prototype text-editing application using a limited set of correction marks, and there is no need to show the actual written marks. Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note

that there is no such teaching, suggestion, or motivation to combine FIDS with Coleman or Taguchi for the purpose of adding this feature. (FIDS cites Coleman as a historical reference only). One of ordinary skill in the art, looking at the prior art as a whole, would not think to combine displaying the actual shape of a gesture described in Coleman or Taguchi with FIDS. There would be no desire to enhance the prior art by adding this feature to FIDS because there is no problem disclosed in FIDS which would require it.

        **(10)    Claim 46**

137.    Claim 46 depends from claim 41 and the analysis of claim 41 applies here. Dr. Kelly admits that FIDS does not disclose "that the direction of motion of said gesture is associated with said predetermined action." I agree with Dr. Kelly on this point. Dr. Kelly contends that the Coleman reference when combined with FIDS satisfies this limitation. I disagree. First, Dr. Kelly fails to identify any basis for combining the Coleman reference with FIDS on this point. Although a teaching, suggestion, or motivation to combine does not necessarily need to exist for a finding of obviousness, I note that there is no such teaching, suggestion, or motivation to combine FIDS with this aspect of the Coleman reference. Looking at the prior art as a whole, one of ordinary skill in the art would not be led to incorporate the exemplar directional Coleman gestures into FIDS.

        **E.**        **Oed and Doster**

138.    First, I note that Dr. Kelly relies on two separate sources, the Oed paper and the Doster paper when he refers to Oed and Doster. I note that these two references are separate sources, one discussing a user friendly man-machine interface and the other discussing word processing. I further note that Dr. Kelly presents no basis for combining these references. To the extent Dr. Kelly treats these 2 separate references as "Oed and Doster," I will analyze "Oed and

43