# EXHIBIT K

```
                                                                    Page 1
 1              UNITED STATES DISTRICT COURT            08:54:00

 2             SOUTHERN DISTRICT OF CALIFORNIA

 3   LUCENT TECHNOLOGIES INC.,      )

 4      Plaintiff and               )

 5      Counterclaim-defendant,     )

 6         v.                       ) No. 02-CV-2060 B

 7   GATEWAY, INC. and GATEWAY      ) (CAB)

 8   COUNTRY STORES LLC, et al.,    ) consolidated with

 9      Defendants and              ) No. 03-CV-0699 B

10      Counter-claimants.          ) (CAB) and No. 03-

11         and                      ) CV-1108 B (CAB)

12   MICROSOFT CORPORATION,         )

13      Intervenor and              )

14      Counter-claimant.           )

15   AND RELATED ACTION.            )

16            - - - - - - - - - - -

17      VIDEOTAPED DEPOSITION OF JEAN RENARD WARD

18                    VOLUME II

19           Friday, November 16, 2007

20                 Washington, D.C.

21   Reported by:  Cheryl A. Lord, RPR, CRR

22   Job No. 184031
```

Page 82

1  My analysis here was based on what                11:41:36
2  he said in the deposition and the section -- it   11:41:38
3  was prompted by what he said in the deposition    11:41:41
4  here. Given the statements here in the paper      11:41:44
5  about the simplicity of the algorithm and the     11:41:50
6  desire -- the stated desire to find something     11:41:56
7  that was more reliable, perhaps even just a bit   11:41:59
8  more reliable in this algorithm, and my           11:42:01
9  experience with pen computing and recognition     11:42:05
10 systems and their imperfection. I took the        11:42:07
11 listing in figure 5 as clearly the more reliable  11:42:15
12 statement about what the author of this reference 11:42:22
13 desired or was attempting to achieve, and that    11:42:26
14 they only came up with a simplified algorithm,    11:42:31
15 which probably was adequate to whatever purposes  11:42:35
16 they were attempting as part of their             11:42:37
17 investigation at that time.                       11:42:40
18     Q.   Okay.                                    11:42:43
19          MR. SIDDIQUI: We have to change the      11:42:43
20 tape, so let's go off the record just for a       11:42:43
21 second.                                           11:42:46
22          THE VIDEOGRAPHER: This is the end        11:42:46

Page 83

1  of videotape number 1, volume 2, of the testimony 11:42:47
2  of Jean Renard Ward, November 16th, 2007. Off     11:42:51
3  the record at 11:44:40.                           11:42:56
4          (Recess.)                                 11:47:37
5          THE VIDEOGRAPHER: This is videotape       11:48:19
6  number 2, volume 2, of the testimony of Jean      11:48:26
7  Renard Ward, November 16th, 2007. On the record   11:48:32
8  at 11:50:18.                                      11:48:36
9          BY MR. SIDDIQUI:                          11:48:42
10     Q.   Mr. Ward, let's go back to figure 7      11:48:43
11 of exhibit 8, please.                             11:48:47
12          Is it fair to say that figure 7          11:48:59
13 describes an algorithm for recognizing gestures?  11:49:01
14     A.   It is probably fair to say that this    11:49:07
15 is what the reference cites is their algorithm    11:49:14
16 for recognizing the gestures that are used in     11:49:17
17 this reference, yes.                              11:49:20
18     Q.   Is it fair to say that this figure       11:49:22
19 describes recognition of the gestures by          11:49:27
20 comparing it with a predefined shape?             11:49:30
21          MR. HAYES: Object to the extent it       11:49:34
22 calls for a legal conclusion.                     11:49:36

Page 84

1      A.   If I can refer to the court's claim      11:49:41
2  construction.                                     11:49:44
3          BY MR. SIDDIQUI:                          11:49:46
4      Q.   Sure.                                    11:49:46
5          Actually, we can -- if you just turn      11:49:48
6  to exhibit 6, I think Dr. Kelly included it in    11:49:51
7  his report, page 131 of exhibit 6.                11:49:56
8      A.   Yes.                                     11:50:50
9          Could you please repeat the               11:50:50
10 question?                                         11:50:52
11     Q.   Is it fair to say that figure 7          11:50:53
12 describes an algorithm that recognizes gestures   11:50:55
13 by comparing them with a predefined shape?        11:50:58
14          MR. HAYES: Same objections.              11:51:01
15     A.   In my reading of the court's claim       11:51:04
16 construction in the section 1 D, which talks      11:51:06
17 about including means for each said gesture to at 11:51:13
18 least one predefined shape, the court gave        11:51:17
19 instructions -- or definition here, which         11:51:21
20 included this item, which in this copy is labeled 11:51:25
21 item 2, which has the techniques for recognizing  11:51:28
22 gestures disclosed in automatic recognition of    11:51:31

Page 85

1  hand-printed characters be state of the art.      11:51:37
2          And I'll leave the rest of the            11:51:42
3  reference to be looked up here.                   11:51:45
4          And it's my conclusion that the type      11:51:46
5  of recognition algorithm that's described here    11:51:48
6  fits within the clarification given by the court  11:51:52
7  on their construction of this item. It talks      11:51:56
8  about comparing each said gesture to at least one 11:52:02
9  predefined shape.                                 11:52:07
10          BY MR. SIDDIQUI:                         11:52:08
11     Q.   Okay. It does fit within the             11:52:08
12 court's claim construction.                       11:52:11
13          Did I hear you right?                    11:52:13
14     A.   Yes, I believe it does fit within        11:52:14
15 the court's claim construction based on my        11:52:15
16 understanding of what's in this 1980 reference,   11:52:19
17 or within the court's claim construction.         11:52:23
18     Q.   So do you see how that number 2          11:52:30
19 paragraph that you read is under a heading        11:52:33
20 called, corresponding structure?                  11:52:36
21          And then above that, in the              11:52:41
22 paragraph just above, corresponding structure, it 11:52:42

Page 134

```
 1        halfway through the paragraph,        13:48:14
 2        there's a sentence that reads: This   13:48:16
 3        is wrong.  First, the Levine          13:48:20
 4        reference does not disclose control   13:48:23
 5        of the operating system.              13:48:25
 6        "And I want to know whether it's      13:48:29
 7        your position that the '295 patent    13:48:31
 8        claims require control of the         13:48:36
 9        operating system.")                   13:48:38
10            MR. HAYES:  I think I objected as 13:51:10
11   vague and ambiguous, calls for a legal    13:51:11
12   conclusion.                                13:51:13
13       A.   I believe this section is covering 13:51:13
14   claim 1, and in claim 1, there is a description 13:51:17
15   here where it says, including a first context in 13:51:31
16   which said action is executed upon an operating 13:51:41
17   system level object.                        13:51:46
18            And the second context in which said 13:51:48
19   action is executed upon an application level 13:51:51
20   object.                                     13:52:05
21            And my description here is a      13:52:05
22   reference to this part of the claim, and what I 13:52:07
```

Page 135

```
 1   intended to refer to here is that this has not 13:52:10
 2   disclosed the action of a gesture being executed 13:52:14
 3   upon an operating system level object.      13:52:19
 4       Q.   What do you mean by the word control 13:52:38
 5   here in paragraph 44 of your report?        13:52:42
 6       A.   I mean, to execute an action upon an 13:52:45
 7   object.                                     13:52:50
 8       Q.   Okay.  Let's turn back a couple of 13:53:39
 9   paragraphs to paragraph 41.  And here you're 13:53:43
10   talking about the Kim paper, which we can give to 13:53:48
11   you, but this isn't really specific to the Kim 13:53:51
12   paper.  The sentence reads:  Further, the Kim 13:53:55
13   paper does not disclose or describe full control 13:53:58
14   of the application.                         13:54:01
15            And my question is, is it your    13:54:05
16   position that the '295 patent claims require full 13:54:06
17   control of the application?                 13:54:11
18            MR. HAYES:  Object to the extent it 13:54:13
19   calls for a legal conclusion.  It's vague and 13:54:14
20   ambiguous.
21            THE WITNESS:  Could you repeat the 13:54:28
22   question, please, court reporter.           13:54:28
```

Page 136

```
 1            MR. SIDDIQUI:  Go ahead and read it. 13:54:32
 2            (The reporter read the last
 3            question.)                         13:55:15
 4       A.   I'm not sure I'm clear on the      13:55:15
 5   meaning of the question.  And what I'm not sure 13:55:18
 6   about is whether you're referring to all claims 13:55:22
 7   of the patent or to particular claims of the 13:55:25
 8   patent.                                     13:55:29
 9            BY MR. SIDDIQUI:                   13:55:30
10       Q.   Okay.  Sure.                       13:55:31
11            Let's narrow it to claim 1.        13:55:32
12       A.   Okay.  In the context of claim 1, in 13:55:34
13   this first sentence, I'm making a general   13:55:41
14   statement about the Kim paper.              13:55:44
15            (Pause.)
16            BY MR. SIDDIQUI:                   13:56:02
17       Q.   Is that it?                        13:56:02
18            That's the end of your answer?     13:56:04
19            I wasn't sure if you were going to 13:56:06
20   say something else.                         13:56:08
21       A.   I'm -- just to be sure, I believe  13:56:08
22   your question was about the first sentence? 13:56:10
```

Page 137

```
 1       Q.   Not the first sentence of the      13:56:13
 2   paragraph.                                  13:56:14
 3            Toward the end of the paragraph,   13:56:16
 4   there's a sentence that reads:  Further, the Kim 13:56:17
 5   paper does not disclose or describe full control 13:56:21
 6   of the application.                         13:56:23
 7       A.   Okay.                              13:56:31
 8       Q.   So that's just by way of           13:56:33
 9   introduction.                               13:56:37
10            And then my question is actually, is 13:56:37
11   it your position that claim 1 of the '295 patent 13:56:40
12   requires full control of an application?    13:56:43
13            MR. HAYES:  Objection.             13:56:45
14            It calls for a legal conclusion.   13:56:46
15   It's vague and ambiguous.                   13:56:47
16       A.   My understanding is that the claim 1 13:56:52
17   of the patent as construed by the judge requires 13:56:56
18   in part a first context in which said action is 13:57:01
19   executed upon an operating system level object 13:57:07
20   and the second context in which action is   13:57:13
21   executed upon an application level object.  13:57:20
22            I make the observation here in the 13:57:27
```

35 (Pages 134 to 137)