David A. Hahn (SBN 125784)
HAHN & ADEMA
501 West Broadway, Suite 1600
San Diego, California  92101-3595
Telephone:  (619) 235-2100
Facsimile:  (619) 235-2101

Attorney for Plaintiffs *Lucent Technologies Inc.*
and *Multimedia Patent Trust*
(*Additional counsel listed on the last page*)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br> Plaintiff, <br> v. <br><br> GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants, <br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervener. | Case No. 07-CV-2000-H (CAB) <br><br> consisting of matters severed from consolidated cases: <br> Case No. 02-CV-2060 B (CAB) <br> Case No. 03-CV-0699 B (CAB) <br> Case No. 03-CV-1108 B (CAB) <br><br> **MULTIMEDIA PATENT TRUST'S OPPOSITION TO DELL'S MOTION FOR SUMMARY JUDGMENT CONCERNING ALLEGED INVALIDITY OF U.S. PATENT NO. 4,958,226** |
| MICROSOFT CORPORATION, <br><br> Plaintiff, <br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant. | Date:         January 7, 2008 <br> Time:         10:30 A.M. <br> Courtroom:  13 <br> Judge:        Hon. Marilyn L. Huff |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br> Plaintiff, <br> v. <br><br> DELL INC., <br><br> Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION ................................................................................................1

II.    TECHNICAL BACKGROUND ......................................................................2

    A.    Digital Video Compression .......................................................................2
          1.    Intraframe Compression Techniques .............................................3
          2.    Interframe Compression Techniques .............................................3
    B.    The Haskell '226 Patent ..........................................................................5
    C.    The PictureTel Patents ............................................................................7
    D.    The Micke Thesis ....................................................................................8

III.   LEGAL STANDARDS .....................................................................................9

    A.    Summary Judgment .................................................................................9
    B.    Obviousness .............................................................................................9

IV.   ARGUMENT ...................................................................................................11

    A.    Dell Fails To Present A Prima Facie Case Of Obviousness. .................11
          1.    Dell Presents No Proof That The PictureTel Patents Collectively
               Disclose All Of The Elements Of Claim 12. ..............................11
          2.    Dell Presents No Proof That The It Would Have Been Obvious To
               Combine Or Modify The Teachings Of The PictureTel Patents To
               Arrive At The Invention Of Claim 12 ..........................................13
    B.    Ample Evidence Establishes A Genuine Dispute Concerning The Alleged
        Obviousness Of Claim 12 Of The Haskell '226 Patent. .......................14
          1.    As MPT's Expert Explains, The PictureTel Patents Do Not Disclose
               The Elements Of Claim 12 Or Render Obvious Their Combination As
               Set Forth In The Claim. ...............................................................15
          2.    The PictureTel Patents Teach Away From The Claimed Invention. .........18
          3.    Objective Evidence Of Nonobviousness Precludes Summary
               Judgment. ....................................................................................19

V.    CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
  475 U.S. 242 (1986).................................................................................10

*Arkie Lure, Inc. v. Gene Larew Tackle, Inc.*,
  119 F.3d 953 (Fed. Cir. 1997)..............................................................12

*Caterpillar Inc. v. John Deere & Co.*,
  224 F.3d 1374 (Fed. Cir. 2000)............................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................9

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
  851 F.2d 1387 (Fed. Cir. 1988).............................................................20

*In re Donaldson Co.*,
  16 F.3d 1189 (Fed. Cir. 1994)...............................................................13

*Eli Lilly and Co. v. Barr Lab., Inc.*,
  251 F.3d 955 (Fed. Cir. 2001)...............................................................10

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*,
  501 F.3d 1263 (Fed. Cir. 2007).......................................................10, 11

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)..................................................................................11

*In re Kahn*,
  441 F.3d 977 (Fed. Cir. 2006)...............................................................11

*KSR Int'l. Co. v. Teleflex Inc.*,
  --U.S.--, 127 S. Ct. 1727 (2007) ....................................................11, 15

*In re Peterson*,
  315 F.3d 1325 (Fed.Cir.2003)...............................................................19

*Pfizer, Inc. v. Apotex, Inc*,
  480 F.3d 1348 (Fed. Cir. 2007)............................................................10

*Ruiz v. A.B. Chance Co.*,
  234 F.3d 654 (Fed. Cir. 2000)...............................................................20

*Scanner Tech. Corp. v. ICOS Vision Sys. Corp.*,
  153 F. Supp. 2d 624 (S.D.N.Y. 2003)...................................................16

*Schumer v. Laboratory Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002).............................................................10

*SRAM Corp. v. AD-II Eng'g, Inc.,*
    465 F.3d 1351 (Fed. Cir. 2006) ........................................................................12

*In re Sullivan,*
    498 F.3d 1345 (Fed. Cir. 2007) ........................................................................19

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.,*
    492 F.3d 1350 (Fed. Cir. 2007) ........................................................................11

*United States v. Boyce,*
    148 F. Supp. 2d 1069 (S.D. Cal. 2001) .............................................................9

*Winner Intern. Royalty Corp. v. Wang,*
    202 F.3d 1340 (Fed. Cir. 2000) ..................................................................19, 20

**STATUTES**

35 U.S.C. § 103(a) ................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..............................................................................................9

# I.     INTRODUCTION

Dell's motion for summary judgment that Claim 12 of the Haskell '226 patent is invalid for obviousness fails from the outset because Dell has not come forward with proof sufficient to establish a *prima facie* case of obviousness.  Although obviousness is an affirmative defense that Dell must prove by clear and convincing evidence, Dell offers no proof to support its core contention that the "PictureTel patents" collectively disclose all of the elements of Claim 12 as construed by this Court, including the required "codes that describe deviations from interpolated blocks."  Nor has Dell presented proof that the PictureTel patents disclose or render obvious circuitry equivalent to that identified by this Court as corresponding structure for the two means-plus-function elements of Claim 12.

Dell's attempt to spackle over the gaps in the teachings of the PictureTel patents with unrelated art likewise fails.  Relying entirely on attorney argument and the conclusory assertions of its own expert, Dell fails to prove its premise:  *i.e.*, that the PictureTel references disclose the limitations of Claim 12 but for the use of interpolation error codes.  Once again, Dell ignores the fact that Claim 12 is drafted in means-plus-function form, and instead treats the claim as though it were a method combining various "techniques."  For that reason, Dell provides no proof that the prior art discloses the corresponding structure identified by this Court in its construction of Claim 12 or its equivalent.

Assuming for the purpose of argument that the PictureTel references collectively disclose everything required by Claim 12 except the use of interpolation error codes, Dell's motion for summary judgment nevertheless fails because Dell presents no proof that interpolation error codes, such as those described in the Haskell '226 patent and processed by the decoder of Claim 12, were known in the art.  Nor has Dell presented proof that it would have been obvious to integrate such technology with the PictureTel patents ***to arrive at the invention of Claim 12***.  Rather, Dell argues that it would generally have been obvious to use interpolation error codes in interpolative coding systems somehow, without demonstrating that the specific implementation claimed in the Haskell '226 patent would have been an obvious choice.  Accordingly, Dell has not met its initial burden on

1  summary judgment of coming forward with proof that, left unrebutted, would support a finding of

2  obviousness by clear and convincing evidence.

3       Even if Dell had met its summary judgment burden, ample evidence exists to rebut Dell's

4  anemic obviousness case and demonstrate a genuine dispute for trial.  For example, MPT's technical

5  expert, Professor Bernd Girod, explains how the PictureTel patents not only fail to disclose the

6  individual elements of Claim 12, or suggest their arrangement as set forth in that claim, but actually

7  ***teach away*** from the inventive decoding apparatus.  That fact alone suffices to support a finding of

8  nonobviousness under controlling law.  Professor Girod also analyzes the scope and content of the

9  prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in

10  the art, and opines that — given the large number of video compression techniques available at the

11  time of the invention and the unpredictability of the video compression art — the invention of Claim

12  12 was nonobvious.  Professor Girod's opinion is further supported by objective indicia of

13  nonobviousness, including the failure of others to arrive at the invention, the commercial success of

14  the invention, and the licensing of the invention by others.  In sum, because Dell has not presented a

15  *prima facie* case of obviousness, and because more than sufficient proof exists to support a finding

16  of nonobviousness, Dell's summary judgment motion should be denied.

17  **II.    TECHNICAL BACKGROUND**

18      **A.    <u>Digital Video Compression</u>**

19       Digital video signals, such as those stored on a DVD, contain information defining many

20  separate pictures, or frames.  (Declaration of Bernd Girod in Support of Multimedia Patent Trust's

21  Oppositions to Dell's Video Coding Summary Judgment Motions (hereinafter "Girod Opp. Decl.")

22  at ¶ 6.)  When viewed in rapid succession, those individual frames can produce the illusion of

23  motion.  (*Id*.)  But the amount of information needed to digitally represent each frame of a video

24  signal in its entirety is too great for efficient storage and transmission.  (*Id*. at ¶ 8.)  For most

25  transmission or storage applications, it is therefore important to reduce the amount of information

26  required to represent video signals in digital form.  Techniques developed to achieve such reduction

27  are commonly called "video compression" or "video coding" techniques.  (*Id*.)

28

1    Video compression techniques generally exploit what is known in the art as "statistical

2    redundancy." (*Id*. at ¶ 11.)  Statistical redundancy refers to the empirical fact that much of the

3    information both within and between frames of a video sequence is repetitive, or "redundant." (*Id*.)

4    Video compression techniques take advantage of that redundancy to store or transmit the video

5    signal efficiently; that is, with as few bits as possible. (*Id*.)

### 1.    Intraframe Compression Techniques

7    Video compression techniques that exploit redundancy within a single frame are called

8    "intraframe compression" techniques. (*Id*. at ¶ 12.)  One common intraframe compression technique

9    performs a "transform" on blocks[1] of pixels in the original frame to obtain a representation of each

10   block of the original frame by an array of numbers, called "transform coefficients." (*Id*.)  The

11   transform produces as many transform coefficients for the block as there were pixels in the original

12   block. (*Id*.)  The purpose of the transform is to represent the pixel values in a different domain, such

13   that statistical dependencies among the individual numbers are greatly reduced. (*Id*.)  This simplifies

14   further compression.  By applying a corresponding inverse transform, the original pixel data can be

15   reconstructed without distortion, resulting in "lossless" compression. (*Id*.)

16   Another common intraframe compression technique is "quantization" of transform

17   coefficients. (*Id*. at ¶ 13.)  Quantization reduces the amount of data needed to store or transmit

18   digital video by rounding each transform coefficient to the nearest one of a set of representative

19   values. (*Id*.)  The quantization process is not reversible, and therefore results in "lossy"

20   compression. (*Id*.)

### 2.    Interframe Compression Techniques

22   Nearby frames in a video sequence are often very similar.  In fact, when viewed side-by-side,

23   they may appear almost indistinguishable.  This is because nearby frames typically show the same

24   objects at slightly shifted positions in the image. (*Id*. at ¶ 16.)  Video compression techniques that

25   exploit this redundancy between frames are called "interframe compression" techniques. (*Id*.)

---

26   [1] This Court has interpreted the term "blocks" to mean "sets of pixels (picture elements also called

27   pels) that constitute a portion of a frame."

28

1   Substantial data compression can be achieved by exploiting the frame-to-frame similarities in a

2   video sequence using interframe coding techniques.  (*Id.*)

3       Modern video compression systems typically use an interframe compression technique called

4   "motion-compensated prediction" to capitalize on the similarities between nearby video frames.  (*Id.*

5   at ¶ 17.)  The idea of motion-compensated prediction is to account for the displacement that objects

6   have undergone from one frame to the next and transmit that displacement to the decoder.  (*Id.*)  If

7   the displacement is estimated accurately, then pixel information in a current frame can be predicted

8   with precision simply by applying a displacement estimate to a previous frame, and no further

9   information needs to be sent.  (*Id.*)  In practice, this is not always the case, because uncovered

10  background in the image, lighting changes, changes in surface appearance, noise, and many effects

11  other than object displacement may cause frame-to-frame change in video sequences.  (*Id.*)  As a

12  result, in addition to the displacement estimate, a "prediction error" signal is often also calculated for

13  storage or transmission.  (*Id.*)

14      The prediction error signal can be interpreted as an image, and although it is not suitable for

15  viewing, it can be compressed using intraframe compression techniques such as the block-wise

16  "transform" described above (which converts a block of error signals into a equal number of

17  transform coefficients).  (*Id.* at ¶ 18.)  Video compression using motion compensated prediction and

18  transform coding is commonly called "motion-compensated hybrid coding."  (*Id.*)

19      A motion-compensated hybrid coder does not use the original version of the previous frame

20  as the basis for motion-compensated prediction, because that original frame is not available at the

21  decoder.  (*Id.*)  The decoder only has a decoded and reconstructed version of the previous frame

22  available, which differs from the original signal by quantization errors due to lossy compression.

23  (*Id.*)  For the proper operation of the motion-compensated hybrid coder, it is important that identical

24  motion-compensated prediction signals are subtracted at the encoder and then added back in again at

25  the decoder.  (*Id.*)  To achieve this, the encoder contains a replica of the decoder.  Just like the

26  decoder, it adds the decoded reconstructed prediction error signal to the motion-compensated

27  prediction signal, to generate the reconstructed frame that appears at the output of the decoder.  (*Id.*)

28

1  The reconstructed frame, rather than the original frame, serves as input to the motion-compensated

2  predictor, just like in the decoder.  (*Id*.)

3      Many modern video compression systems also use an interframe compression technique

4  called "motion-compensated interpolation" to exploit the similarities between nearby video frames.

5  (*Id*. at ¶ 20.)  As the name suggests, motion compensated interpolation predicts pixel information in

6  a current frame by averaging pixel information obtained from preceding and subsequent frames.

7  (*Id*.)  The pixel information used in the averaging process is obtained using motion compensated

8  prediction as described above.  (*Id*.)  In the case of motion compensated interpolation, however, two

9  displacement estimates are used — one based on a previous frame, and another based on a

10  subsequent frame — to generate forward and backward predictions.  (*Id*.)  The two predictions are

11  then averaged.  If the averaged prediction is inaccurate, an "interpolation error" signal can be

12  calculated for storage or transmission.

13      **B.    The Haskell '226 Patent**

14      The Haskell '226 patent describes compression methods and circuits that employ motion

15  compensated temporal prediction using prediction error information with motion compensated

16  temporal interpolation using interpolation error information.  (*Id*. at ¶¶ 24-25.)  The methods and

17  circuits disclosed in the Haskell '226 patent operate in a block-wise manner, both in performing

18  motion compensated prediction and in transforming prediction and interpolation error.  (*Id*.)

19      The asserted claim of the Haskell '226 patent, claim 12, describes a decoder circuit — an

20  apparatus — capable of responding to prediction error codes and interpolation error codes to

21  generate what the patent calls "block approximations" and "interpolated blocks":

22      A circuit responsive to coded video signals where the video signals
        comprise successive frames and each frame includes a plurality of
23      blocks and where the coded video signals comprise codes that describe
        deviations from approximated blocks and codes that describe
24      deviations from interpolated blocks, comprising:

25      means for developing block approximations from said codes that
        describe deviations from approximated blocks; and

26
27      means responsive to said block approximations and to said codes that
        describe deviations from interpolated blocks to develop said
        interpolated blocks.

28

1  (Ex. 1, '226 Patent.)[2]  The Court has already construed the language of claim 12.  (Ex. 2, '226

2  Markman Order.)  Of particular interest here, the Court has determined the function and identified

3  specific corresponding structure associated with each of the two means-plus-function limitations

4  recited in the claim.  (*Id.*)

5      As construed by the Court, the first means-plus-function limitation requires a means for

6  performing the function of "developing block approximations [the combinations of predicted blocks

7  with differences between the actual blocks and the predicted blocks] from said codes that describe

8  deviations from approximated blocks."  (*Id.*)  The Court identified the corresponding structure in the

9  Haskell '226 patent specification as the combination of Decoder 22, DCT$^{-1}$ 24, Adder 27, and Shift

10 Circuit 26, including all inputs and outputs of those elements related to the claimed function.  (*Id.*)

11 Among other things, in the Haskell '226 patent those elements collectively contain circuitry for

12 performing block-based motion compensation, decoding and inverse transformation of prediction

13 error, and combination of prediction error with motion-compensated predictions to form "block

14 approximations."  (Girod Opp. Decl. at ¶ 25.)

15     The second means-plus-function limitation, as construed by the Court, requires a means for

16 performing the function of "develop[ing] said interpolated blocks responsive to said block

17 approximations [the combinations of predicted blocks with differences between the actual blocks

18 and the predicted blocks] and to said codes that describe deviations from interpolated blocks."  (Ex.

19 2, '226 Patent Markman Order.)  The Court identified the corresponding structure in the Haskell

20 '226 patent specification as the combination of Decoder 25, DCT$^{-1}$ 34, Adder 35, Shift Circuits 31

21 and 39, and Averager 32, including all inputs and outputs of those elements related to the claimed

22 function.  (*Id.*)  Among other things, in the Haskell '226 patent those elements collectively contain

23 circuitry for performing block-based motion compensation, block-based inverse transformation of

24 prediction error, averaging of forward and backward motion compensated predictions, and

25  _____

26 [2] All citations to exhibits refer to the Declaration of Jennifer J. Schmidt in Support of Multimedia
   Patent Trust's Oppositions to Dell's Video Coding Summary Judgment Motions, filed concurrently

27 herewith.

28

1    combination of interpolation error with the result of the averaging process to form "interpolated

2    blocks." (Girod Opp. Decl. at ¶ 25.)

3        C.    **The PictureTel Patents**

4        The so-called "PictureTel patents" identified by Dell are seven patents reflecting work

5    performed at PictureTel Corporation in the late 1980s. (Girod Opp. Decl. at ¶ 65.) Some of the

6    PictureTel patents share common inventors and cross-reference one another. Collectively, the

7    PictureTel patents can be viewed as describing the evolution of a video compression system. (*Id*. at

8    ¶ 66.) The original system is described in the earliest-filed PictureTel patent — U.S. Patent

9    4,703,350 ("the Hinman '350 patent") — and employs a motion-compensated hybrid coding scheme

10   along with a form of interframe interpolation for post-processing, but ***without*** any form of

11   interpolation error codes. (*Id*. at ¶ 66; Ex. 3, Hinman '350 patent.)

12       The next five PictureTel patents address certain features and/or relatively minor

13   modifications of the Hinman '350 patent system:

14       •    U.S. Patent No. 4,727,422 (Ex. 4, "the Hinman '422 patent"), which focuses on the
             lossy compressor of the Hinman '350 patent system;
15

16       •    U.S. Patent No. 4,661,849 (Ex. 5, "the Hinman '849 patent"), which focuses on the
             motion estimator of the Hinman '350 patent system;
17

18       •    U.S. Patent No. 4,794,455 (Ex. 6, "the Ericsson '455 patent"), which adds an adaptive
             loop filter to the Hinman '350 patent system;

19       •    U.S. Patent No. 4,754,492 (Ex. 7, "the Malvar '492 patent"), which adds an
             overlapping block transform to the Hinman '350 patent system; and
20

21       •    U.S. Patent No. 4,816,914 (Ex. 8, "the Ericsson '914 patent"), which adds quadtree
             encoding of transform coefficients to the Hinman '350 patent system.
22

23   (Girod Opp. Decl. at ¶ 67.) As with the Hinman '350 patent itself, none of these PictureTel patents

24   describes any form of interpolation error codes. (*Id*.)

25       The seventh (and last-filed) PictureTel patent describes a substantial modification of the

26   motion-compensated hybrid coding scheme described in the first six PictureTel patents. (*Id*. at ¶ 68.)

27   Rather than using transform coding of prediction error, U.S. Patent No. 4,849,810 ("the Ericsson

28   '810 patent") substitutes a "hierarchical vector quantization" coding technique that uses a pyramid

1    decomposition instead of a blockwise transform to exploit spatial correlations within a frame and

2    thereby achieve intraframe compression.  (*Id.*; Ex. 9, Ericsson '810 patent.)  At the same time, the

3    system of the Ericsson '810 patent *eliminates the interframe interpolation processing* employed by

4    the system of the Hinman '350 patent.  (Girod Opp. Decl. at 68.)  Accordingly, the Ericsson '810

5    patent system performs no interframe interpolation, let alone interframe interpolation in conjunction

6    with coded interpolation error signals.[3]  (*Id.*)

7        **D.    The Micke Thesis**

8        The Diploma thesis "Vergleich eines prädiktiven und eines interpolativen

9    bewegungskompensierenden Codierverfahrens für Fernsehbildsignale" ("Comparison of a Predictive

10    and an Interpolative Motion Compensating Coding Method for Television Video Signals") by

11    Thomas Micke ("the Micke Thesis") describes a study to establish performance bounds for motion-

12    compensated predictive coding and motion-compensated interpolative coding.  (Girod Opp. Decl. at

13    ¶ 84.)  The bounds are information-theoretic bounds based on a mathematical analysis and supported

14    by statistical measurements performed in computer simulations with digitized video sequences.  (*Id.*)

15    Such information theoretic bounds are non-constructive, *i.e.*, they do not provide a blueprint of how

16    to build a system that actually achieves or even approaches the performance bounds.  (*Id.*)

17        Accordingly, as Professor Girod — who personally supervised the work described in the

18    Micke thesis — explains, the statistical measurements of the Micke Thesis do not require a complete

19    video coder implementation.  (*Id.* at ¶ 88.)  The computer code provided in the Micke Thesis

20    therefore does not describe a complete video encoder.  (*Id.*)  Nor does the Micke thesis describe any

21    particular implementation of a video decoder.[4]  (*Id.*)

22

23    [3] In its summary judgment brief, Dell maintains that the Ericsson '810 patent "employs Interpolation
       Error as a means of improving the picture."  (Dell Br. at 6.)  But this Court has already rejected

24    Dell's contention that the Ericsson '810 patent discloses "codes that describe deviations from
       interpolated blocks" as set forth in Claim 12 of the Haskell '226 patent, because any interpolation

25    error disclosed in the Ericsson '810 patent concerns *intra*frame interpolation, not the *inter*frame
       interpolation required by Claim 12.  (Ex. 10, July 5, 2007 Order (D.I. 1939) at 10-12.)

26

27    [4] No evidence exists that any copies of the Micke Thesis were actually disseminated to the public
       before the filing date of the Haskell '226 patent — September 27, 1989.  Furthermore, the only

28                                                                                            (Continued…)

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Where, as here, "the moving party bears the burden of proof at trial, it cannot obtain summary judgment unless it presents evidence so compelling that no rational jury would fail to award judgment for the moving party." *United States v. Boyce*, 148 F. Supp. 2d 1069, 1080 (S.D. Cal. 2001).  Furthermore, "[w]hen ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor." *Caterpillar Inc. v. John Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000).

A summary judgment determination must also be guided by the appropriate burden of proof. If the Court determines that a reasonable jury applying the proper burden of proof — in this case clear-and-convincing evidence — could find for the non-movant, then there exists a genuine issue of material fact that precludes granting of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986).

### B.    Obviousness

Because every patent is presumed valid, accused infringers face a "high burden of showing invalidity on summary judgment." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).  "[A] party seeking to invalidate a patent at summary judgment must submit ***clear and convincing evidence*** of invalidity so that no reasonable jury could find otherwise." *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (emphasis added).  If evidence is presented

---

library in the world known to shelve a copy of the Micke thesis was not accessible to the public before that date.  (Girod Opp. Decl. at ¶ 82.)  Even in that one library, no meaningful subject-matter index existed that would have directed persons interested in the art to the Micke thesis.  (*Id*. at 83.) Accordingly, factual disputes exist as to whether the Micke thesis qualifies as prior art.

1   establishing a *prima facie* case of invalidity, the non-movant must come forward with evidence

2   sufficient to support a finding of validity, but "the ultimate burden of proving invalidity remains with

3   the challenger throughout the litigation." *Pfizer, Inc. v. Apotex, Inc*, 480 F.3d 1348, 1360 (Fed. Cir.

4   2007).

5       A claimed invention can be found obvious only "if the differences between the subject matter

6   sought to be patented and the prior art are such that the subject matter as a whole would have been

7   obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. §

8   103(a). Obviousness is ultimately a question of law based on underlying determinations of fact.

9   *Forest Labs., Inc. v. Ivax Pharms., Inc*., 501 F.3d 1263, 1269 (Fed. Cir. 2007). The underlying

10  factual issues to be considered in an obviousness analysis include "four general types, all of which

11  must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of

12  ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4)

13  any objective indicia of nonobviousness." *Crown Operations Int'l, Ltd. v. Solutia Inc.*. 289 F.3d

14  1367, 1376 (Fed. Cir. 2002). Earlier this year, the United States Supreme Court reaffirmed the

15  primacy of those factors in determining whether a patent is invalid for obviousness. *See KSR Int'l.*

16  *Co. v. Teleflex Inc*., --- U.S. ---, 127 S. Ct. 1727, 1734 (2007) (citing *Graham v. John Deere Co.*, 383

17  U.S. 1, 17-18 (1966)).

18      "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements;

19  instead, there must be some articulated reasoning with some rational underpinning to support the

20  legal conclusion of obviousness." *KSR*, 127 S. Ct. at 1741 (quoting *In re Kahn*, 441 F.3d 977, 988

21  (Fed. Cir. 2006)). Thus, "the burden falls on the patent challenger to show by clear and convincing

22  evidence that a person of ordinary skill in the art would have had reason to attempt to make the

23  composition or device, or carry out the claimed process, and would have had a reasonable

24  expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342,

25  1360 (Fed. Cir. 2007) (citing, *inter alia*, *KSR*, 127 S. Ct. at 1740).

26      In that regard, the Supreme Court has "acknowledged the importance of identifying 'a reason

27  that would have prompted a person of ordinary skill in the relevant field to combine the elements in

28  the way the claimed new invention does' in an obviousness determination." *Takeda Chem. Indus.,*

1  *Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007) (quoting *KSR*, 127 S. Ct. at

2  1731).  Accordingly, "[a] patent composed of several elements is not proved obvious merely by

3  demonstrating that each element was, independently, known in the prior art."  *KSR*, 127 S. Ct. at

4  1731.  For example, "combining elements that work together 'in an unexpected and fruitful manner'

5  would not have been obvious."  *PharmaStem*, 491 F.3d at 1360 (quoting *KSR*, 127 S. Ct. at 1740).

6  Moreover, "when the prior art teaches away from combining certain known elements, discovery of a

7  successful means of combining them is more likely to be nonobvious."  *KSR*, 127 S.Ct at 1740.

8  **IV.    ARGUMENT**

9         Dell's summary judgment arguments fail for at least two reasons.  *First*, Dell fails to make

10 the *prima facie* showing required to sustain a summary judgment motion on an issue, such as

11 obviousness, where Dell bears the burden of proof.  *Second*, any such showing is amply rebutted by

12 affirmative proof of nonobviousness that — at a minimum — establishes a genuine dispute for trial.

13 Accordingly, Dell's motion for summary judgment should be denied.

14       **A.    Dell Fails To Present A Prima Facie Case Of Obviousness.**

15       "The party moving for summary judgment bears the initial burden of coming forward with

16 evidence that demonstrates the absence of a genuine material question of disputed fact and

17 establishes that the moving party is entitled to judgment as a mater of law."  *Arkie Lure, Inc. v. Gene*

18 *Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997).  Here, for the reasons set forth below, the

19 "proof" presented by Dell in support of its summary judgment motion — even if unrebutted —

20 would not support a finding of obviousness.  Dell's motion for summary judgment therefore fails

21 from the outset.  *See SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) ("[A]

22 moving party seeking to invalidate a patent at summary judgment must submit such clear and

23 convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise.").

24           **1.    Dell Presents No Proof That The PictureTel Patents**
              **Collectively Disclose All Of The Elements Of Claim 12.**

25

26       Dell seeks summary judgment on a single invalidity theory — that the PictureTel references

27 render obvious Claim 12 of the Haskell '226 patent.  In so doing, Dell ignores the high burden it

28 must meet to establish that Claim 12 of the Haskell '226 patent is invalid on summary judgment.

1  For example, rather than presenting an element-by-element analysis to demonstrate that the elements

2  of Claim 12 were known in the art, Dell simply references the report of its expert, Edward Delp, as

3  purportedly demonstrating that "the PictureTel patents disclose all of the limitations of claim 12."

4  (Dell Br. at 6.)  But Dr. Delp's report fails to support that proposition for at least two reasons.

5  *First*, Dr. Delp provides no analysis of structural identity or equivalence for either means-

6  plus-function element of Claim 12.  (*See* Ex. 11, Sept. 14, 2007 Delp Report at ¶¶ 111-122.)  He fails

7  to discuss the corresponding structures identified by the Court, specifies no particular structures

8  taught, suggested, or otherwise rendered obvious by the PictureTel patents, and offers no explanation

9  how any such structures could be considered identical or equivalent.  (*See id.*)  Instead, Dr. Delp

10  treats Claim 12 as though it were simply a combination of certain "techniques" — motion

11  compensated prediction with prediction error, motion compensated interpolation, and the coding of

12  interpolation error codes.  (*See, e.g., id.* at ¶ 114.)  Such analysis — addressing certain functions

13  performed by the decoder of Claim 12 without considering the claimed structures — is insufficient

14  as a matter of law to demonstrate obviousness.  *See In re Donaldson Co.*, 16 F.3d 1189, 1196-97

15  (Fed. Cir. 1994) (reversing obviousness determination where PTO considered claimed function but

16  not structure).

17  To the extent that Dr. Delp addresses corresponding structure at all, he erroneously focuses

18  on individual sub-components of the corresponding structures identified by the Court — such as

19  adders, decoders, DCT$^{-1}$, shift circuits, and averagers (*see* Ex. 11, Sept. 14, 2007 Delp Report at ¶

20  89; Ex. 14, Delp Dep. Tr. at 127) — rather than the corresponding structures ***as a whole***.  *See*

21  *Odetics Inc. v. Storage Tech. Corp.*, .185 F.3d 1259, 1268 (Fed. Cir. 1999) ("The individual

22  components, if any, of an overall structure that corresponds to the claimed function are not claim

23  limitations. Rather, the claim limitation is the ***overall*** structure corresponding to the claimed

24  function.") (emphasis added).  Because he focuses on sub-components, Dr. Delp fails to opine that

25  the structures ***as a whole*** were known in the art, or that it would have been obvious to combine the

26  specific circuitry that this Court identified for the first means-plus-function element with the specific

27

28

1   circuitry that this Court identified for the second means-plus-function element, as set forth in Claim

2   12.[5]

3        *Second*, Dr. Delp's report plainly fails to identify any disclosure within the PictureTel patents

4   of the claimed "codes that describe deviations from interpolated blocks." As this Court has held,

5   such codes "describe deviations from interpolat[ed] blocks with reference to ***interframe***

6   interpolation." (Ex. 10, July 5, 2007 Order (D.I. 1939) at 10-12.) But Dr. Delp's analysis of the

7   PictureTel patents —a single claim chart quoting excerpts of the Ericsson '914 patent without

8   explanation or analysis — identifies nothing in those patents that can remotely be considered

9   interframe interpolation error codes.[6] (Ex. 12, Sept. 14, 2007 Delp Report Ex. H.) Because Dell has

10  presented no proof that the PictureTel patents disclose all of the required claim elements, Dell's

11  motion for summary judgment that those patents in combination render obvious Claim 12 of the

12  Haskell '226 patent should be denied.[7]

13          **2.      Dell Presents No Proof That It Would Have
                       Been Obvious To Combine Or Modify The Teachings Of
14                     <u>The PictureTel Patents To Arrive At The Invention Of Claim 12.</u>**

15          Dell likewise fails to present proof that it would have been obvious to modify the teachings

16  of the PictureTel patents to arrive at the invention of Claim 12. Dell seeks to sidestep its burden by

17

18  _____

19  [5] Dell relies heavily on the Supreme Court's guidance in *KSR* concerning claims that cover "a
    combination of familiar elements." (Dell Br. at 9.) To the extent that Claim 12 can be considered a
20  "combination" of elements, it combines two specific structures with two specific functions.

21  [6] Absent any disclosure of "codes that describe deviations from interpolated blocks," the PictureTel
    patents also necessarily fail to disclose the required "means responsive . . . to said codes that
22  describe deviations from interpolated blocks" or the claimed "interpolated blocks" (which are
    generated using "codes that describe deviations from interpolated blocks").

23  [7] Dell attempts to side-step the absence of "codes that describe deviations from interpolated blocks"
24  in the PictureTel patents by contending that MPT's expert somehow "admitted" that Claim 12 does
    not require interpolation error codes. (Dell Br. at 10-11.) Dell mischaracterizes that testimony.
25  Because Claim 12 is an ***apparatus*** claim directed to a ***decoder***, Professor Girod simply noted that the
    claim contains no ***process*** step of ***encoding*** interpolation error. (Ex. 13, Nov. 20, 2007 Girod Dep.
26  Tr. at 159-161.) In any event, Professor Girod's testimony cannot obviate limitations dictated by the
    plain claim language and this Court's claim construction.

27

28

1    asserting that it need only demonstrate some reason for a person skilled in the art to apply the use of

2    interpolation error codes to the teachings of PictureTel patents.  (Dell Br. at 11.)  As an initial matter,

3    Dell fails to prove its premise — *i.e.*, that the PictureTel references disclose the limitations of Claim

4    12 but for the use of interpolation error codes.  For example, Dell presents no evidence — or even

5    argument — establishing that the PictureTel patents disclose or render obvious circuitry equivalent

6    to that identified by this Court as corresponding structure for the two means-plus-function elements

7    of Claim 12.

8         Furthermore, even assuming for the purpose of argument that the PictureTel references

9    collectively disclose everything required by Claim 12 except the use of interpolation error codes,

10   Dell's motion for summary judgment nevertheless fails because Dell presents no proof that it would

11   have been obvious to integrate that technology with the PictureTel patents ***to arrive at the invention***

12   ***of Claim 12***.  At bottom, Dell argues that it would generally have been obvious to use interpolation

13   error codes in interpolative coding systems somehow.  (Dell Br. at 11-13.)  But it fails to

14   demonstrate that — out of the myriad ways interpolation error codes could be implemented in a

15   video compression system — the specific implementation claimed in the Haskell '226 patent would

16   have been an obvious choice.  Specifically, Dell provides no explanation why a person skilled in the

17   art would implement the use of interpolation error codes using circuitry identical or equivalent to the

18   corresponding structure identified by this Court, as opposed to some other configuration.

19   Accordingly, because Dell has not presented *prima facie* proof that it would have been obvious to

20   combine or modify the teachings of the PictureTel patents to arrive at the invention of Claim 12,

21   Dell's motion for summary judgment should be denied.

22       **B.    Ample Evidence Establishes A Genuine Dispute Concerning**
                 **The Alleged Obviousness Of Claim 12 Of The Haskell '226 Patent.**
23

24         As set forth below, even assuming for the purpose of argument that Dell has presented *prima*

25   *facie* proof of obvious, ample affirmative evidence exists on which a reasonable jury could find that

26   the invention of Claim 12 would not have been obvious to a person of ordinary skill in the art.

27   Accordingly, summary judgment should be denied.

28

1    **1.    As MPT's Expert Explains, The PictureTel Patents**
2    **Do Not Disclose The Elements Of Claim 12 Or Render**
     **<u>Obvious Their Combination As Set Forth In The Claim.</u>**

3    Dell rests its obviousness case almost exclusively on the conclusory opinions of Edward

4    Delp.  Even if those opinions sufficed to establish a *prima facie* case of obviousness, which — as

5    explained above — they do not, MPT's own expert has formed contrary opinions that respond to Dr.

6    Delp's analyses and demonstrate the falsity of his conclusions.  (Girod Opp. Decl. at ¶¶ 64-75.)  In

7    and of itself, such contradictory expert testimony suffices to foreclose summary judgment in Dell's

8    favor on the factual question of anticipation.  *See, e.g., Scanner Tech. Corp. v. ICOS Vision Sys.*

9    *Corp.*, 253 F. Supp. 2d 624, 639 (S.D.N.Y. 2003) ("The parties' conflicting expert witness opinions

10   regarding, *inter alia*, what the prior art discloses and how a person of ordinary skill in the art would

11   interpret it preclude a finding of summary judgment.").

12   *First*, Professor Girod identifies several elements of Claim 12 that are missing from the

13   teachings of the PictureTel references.  (Girod Opp. Decl. at ¶¶ 69-72.)  He explains that because the

14   compression systems described in the PictureTel patents do not use interpolation error codes, they do

15   not disclose "codes that describe deviations from interpolated blocks."  (*Id.* at ¶¶ 70-72.)  As a result,

16   they also fail to disclose any "means responsive to . . . codes that describe deviations from

17   interpolated blocks to develop said interpolated blocks."  (*Id.*)  In addition, Professor Girod opines

18   that the PictureTel reference disclose no circuitry or structure equivalent to the corresponding

19   structure for that means-plus-function element:  the combination of Decoder 25, $DCT^{-1}$ 34, Adder

20   35, Shift Circuits 31 and 39, and Averager 32.[8]  (*Id.*)

21

22

23   [8] Because the PictureTel patents share much of the same written description and cross-reference one
     another, Dell's expert presented his obviousness analysis concerning the PictureTel patents by
24   reference to the Ericsson '914 patent as "a primary example."  (Ex. 11, Sept. 14, 2007 Delp Report
     at ¶ 114.)  He provided no claim charts for any of the other PictureTel patents, and neither he nor
25   Dell has identified any pertinent teachings in those other patents that are not also set forth in the
     Ericsson '914 patent.  (*Id.* at ¶¶ 114-122.)  Accordingly, Professor Girod likewise addressed the
26   teachings of the PictureTel patents by reference to the Ericsson '914 patent.  (Girod Opp. Decl. at ¶¶
     69-70.)
27

28

1    *Second*, Professor Girod testified that the prior art **as a whole** fails to disclose "codes that

2    describe deviations form interpolated blocks" such as those described in the Haskell '226 patent and

3    processed by the decoder of Claim 12.  (Ex. 13, Nov. 20, 2007 Girod Dep. Tr. at 54-58.)  Those

4    codes, as illustrated by the corresponding structure identified by this Court, are transform-coded,

5    motion-compensated interframe interpolation error signals.  But the prior art contains no teaching of

6    motion-compensated interframe interpolation error signals, let alone transform-coded ones.  (*Id*.)

7    Dell does not even attempt to demonstrate otherwise.[9]

8    *Third*, Professor Girod explains that, even if some flavor of interframe interpolation error

9    was known in the prior art, a host of effective video compression technologies were available in the

10    field during the relevant time-frame, and the performance of a given combination of technologies

11    could not be readily predicted.  (Girod Opp. Decl. at ¶ 53.)  As such, the potential combinations of

12    known, beneficial compression technologies far exceeded what could reasonably be considered a

13    finite set of potential solutions.  (*Id*.)  Nor were the benefits achieved by the particular coding system

14    described in the Haskell '226 patent predictable, since extended experimentation was required to

15    assess the performance of a system combining any specific set of coding technologies.  (*Id*. at ¶ 62.)

16    Therefore, Dr. Delp's opinion that a person of skill in the art would have been motivated to combine

17    interpolation error codes with the PictureTel patents — and to do so in the same way taught by the

18    Haskell '226 patent — is an exercise in pure hindsight, piecing together the elements of Claim 12

19    from diverse sources using the patent itself as a guide.  (*Id*. at ¶ 75.)

20    *Fourth*, Professor Girod responds to Dr. Delp's assertion that the use of interpolation error

21    codes as a known solution to the problem of "perceptual artifacts" created by interpolation was

22    _____

23    [9] Dell cites several documents as purportedly establishing that some use of interframe interpolation
      error codes was known in the art.  (Dell Br. at 12-13.)  Two of those documents, the Micke Thesis

24    and CCITT Document #81, are not even prior art, and fail in any case to disclose transform coding
      of interpolation error.  (Girod Opp. Decl. at ¶¶ 76-88.)  The Lodge and Tanimoto papers fail to

25    disclose interframe interpolation error signals, let alone motion-compensated or transform-coded
      interframe interpolation signals.  (Ex. 23, Lodge Paper; Ex. 24, Tanimoto Paper)  And the Digital

26    Pictures textbook does not disclose any form of interpolation error codes.  (Girod Opp. Decl. at ¶

27    89.)

28

1    known in the art.  (Dell Br. at 12.)  As Professor Girod explains, conventional wisdom in the field

2    dictated otherwise.  For example, since motion compensation artifacts were usually caused by a

3    failure of the motion estimator to extract the true motion of an object, a person of ordinary skill

4    would have typically looked for ways to improve the reliability and accuracy of the motion estimator

5    to eliminate visual artifacts, rather than coding interpolation error.  (Girod Opp. Decl. at ¶ 54.)  In

6    addition, or alternatively, a person of ordinary skill would typically have used a flag in the bitstream

7    to instruct the receiver to omit motion-compensated interpolation and use frame repetition instead.

8    (*Id*.)

9         The references that Dell cites to demonstrate that use of interpolation error codes was a

10    known solution to visible interpolation artifacts are unavailing.  (Girod Opp. Decl. at ¶ 54.)  The

11    Micke thesis, for example, presents an analysis of theoretical boundaries of compression systems,

12    but discloses no actual coding system.[10]  (*Id*. at ¶¶ 84, 88.)  Therefore, the Micke thesis discloses

13    nothing about video quality, let alone interpolation artifacts.  (*Id*.)  Indeed, Professor Girod — an

14    expert in the field who supervised the work described in the Micke thesis — testified that he

15    personally never made the connection between transmitting interpolation error and visual artifacts.

16    (Ex. 13, Nov. 20, 2007 Girod Dep. Tr. at 62-63.)

17         The other reference cited by Dell, a textbook authored by a named inventor of the Haskell

18    '226 patent, fares no better.  Dell points to two sentences from the diverse teachings of the 500-page

19    textbook noting that generic "side information" — ***not*** interpolation error codes — may be

20    transmitted to reduce artifacts caused by faulty interpolation.  (Dell Br. at 5.)  Such side information

21    could include many types of signals other than interpolation error codes, including the sort of bit

22    stream flag described above, which triggers suspension of interpolation in favor of frame repetition.

23    (Girod Opp. Decl. at ¶¶ 54, 89.)

24

25    _____

26    [10] Dell does not ague that the Micke Thesis is prior art, but rather only that it evidences a reason to combine.  (Dell Br. at FN 7.)  As set forth herein, however, the Micke Thesis does not provide a
27    motivation to modify the teachings of the prior art.  (*See also* Girod Opp. Decl. at ¶ 81.)

28

1    In sum, ample evidence exists from which a reasonable jury could conclude that the

2  invention of Claim 12 is not invalid for obviousness.  Because genuine factual disputes remain for

3  trial, Dell's motion for summary judgment should be denied.

4    **2.    The PictureTel Patents Teach Away From The Claimed Invention.**

5    "Evidence rebutting a prima face case of obviousness can include . . . evidence that the prior

6  art teaches away from the claimed invention in any material respect."  *In re Sullivan*, 498 F.3d 1345,

7  1351 (Fed. Cir. 2007) (*citing In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003)).  Here, as

8  explained by Professor Girod, the PictureTel patents themselves teach away from the invention of

9  Claim 12.  (Girod Opp. Decl. at ¶ 73.)  Such evidence alone suffices to present a dispute of fact

10  precluding summary judgment.  *See Winner Intern. Royalty Corp. v. Wang*, 202 F.3d 1340, 1349-50

11  (Fed. Cir. 2000) ("What a references teaches and whether it teaches toward or away from the

12  claimed invention are questions of fact. . . .  If [the prior art] did in fact teach away from [the

13  claimed invention], then that finding alone can defeat [an] obviousness claim.").

14    Specifically, a person of ordinary skill in the art considering the PictureTel patents as a whole

15  — as Dell contends they must be considered — would recognize that they describe the evolution of

16  a video compression system.  (Girod Opp. Decl. at ¶ 66.)  The Hinman '350 patent lays out a

17  motion-compensated hybrid coding scheme that uses a form of interframe interpolation for post-

18  processing, but ***without*** any form of interpolation error codes.  (*Id.*)  The next five PictureTel patents

19  in chronological order describe a series of relatively minor refinements of the original system.  (*Id.* at

20  ¶ 67.)

21    But the final PictureTel patent, the Ericsson '810 patent, discloses a significant — and

22  purportedly beneficial — modification of the original system.  (*Id.* at ¶ 68.)  First, a novel

23  compression scheme using a resolution pyramid is introduced.  (*Id.*)  At the same time, interframe

24  interpolation is eliminated altogether.  (*Id.*)  Thus, the PictureTel patents as a whole would have

25  taught a person of ordinary skill in the art to abandon interframe interpolation entirely in favor of a

26  resolution pyramid compression scheme.  (*Id.*)  The PictureTel references therefore teach away from

27

28

1    the inventive solution of Claim 12.  (*Id*. at ¶ 73.)  That fact alone suffices to defeat summary

2    judgment.  *See Winner*, 202 F.3d at 1349.

3        **3.    Objective Evidence Of Nonobviousness Precludes Summary Judgment.**

4        Finally, Dell completely ignores other objective evidence that the invention of Claim 12 is

5    nonobvious, including evidence of the failure of others to arrive at the invention, the commercial

6    success of the invention, and the licensing of the invention by others.  (Girod Opp. Decl. at ¶¶ 90-

7    92.)  Evidence of such "secondary considerations" *must* be considered when evaluating obviousness.

8    *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) ("Our precedents clearly hold that

9    secondary considerations, when present, must be considered in determining obviousness."); *Demaco*

10    *Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988) ("Indeed, evidence

11    of secondary considerations may often be the most probative and cogent evidence in the record.").

12        Here, several secondary considerations demonstrate that the invention of Claim 12 is

13    nonobvious, thereby raising genuine issues of material fact that preclude summary judgment.  For

14    example, products that use the claimed invention have been highly successful in the marketplace.

15    (Girod Opp. Decl. at ¶ 90.)  The claimed invention is used in numerous video coding standards,

16    including MPEG-1, MPEG-2, WMV-9, VC-1, and others.  (*Id*.)  The invention of Claim 12 has

17    contributed to the success of these products by reducing the bandwidth needed to transmit, or by

18    reducing the quantity of storage needed to store, high-quality video bitstreams.  (*Id*.)  In fact,

19    Professor Girod has explained that other video coding technologies that do not use the claimed

20    inventions have not been as commercially successful.  (*Id*.)

21        Furthermore, licenses showing industry respect for the claimed invention also support the

22    conclusion that Claim 12 is nonobvious and therefore raise a genuine factual question.  (*Id.* at ¶ 91.)

23    Lucent's licensing agreements that specifically identify the Haskell '226 patent, and Lucent's

24    licensing negotiation documents which refer to the Haskell '226 patent, indicate that the Haskell

25    '226 patent has been a focal point of negotiations for broader licenses with third parties.  (*Id*.)

26    Because a host of disputed issues of fact therefore remain for trial, Dell's motion for summary

27    judgment that Claim 12 of the Haskell '226 patent is invalid for obviousness should be denied.

28

1  **V.    CONCLUSION**

2

3          For all the foregoing reasons, Multimedia Patent Trust respectfully requests that the Court

4  deny Dell's motion for summary judgment that Claim 12 of the Haskell '226 patent is invalid for

5  obviousness.

6  Dated:  December 14, 2007

7                                                                    By:  _____s/David A. Hahn_____

8                                                                    David A. Hahn (SBN 125784)
                                                                      HAHN & ADEMA
9                                                                    501 West Broadway, Suite 1600
                                                                      San Diego, California  92101-3595
10                                                                   Telephone:  (619) 235-2100
                                                                      Facsimile:  (619) 235-2101
11
                                                                      John M. Desmarais (admitted *pro hac vice*)
12                                                                   Robert A. Appleby (admitted *pro hac vice*)
                                                                      Michael P. Stadnick (admitted *pro hac vice*)
13                                                                   KIRKLAND & ELLIS LLP
                                                                      153 East 53rd Street
14                                                                   New York, New York  10022
                                                                      Telephone:  (212) 446-4800
15                                                                   Facsimile:  (212) 446-4900

16                                                                   Attorneys for *Lucent Technologies Inc.*
                                                                      and *Multimedia Patent Trust*

17

18

19

20

21

22

23

24

25

26

27

28