1  David A. Hahn (SBN 125784)
   HAHN & ADEMA
2  501 West Broadway, Suite 1600
   San Diego, California  92101-3595
3  Telephone:  (619) 235-2100
   Facsimile:  (619) 235-2101
4
   Attorney for Plaintiffs *Lucent Technologies Inc.*
5  and *Multimedia Patent Trust*
   (*Additional counsel listed on the last page*)
6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10 LUCENT TECHNOLOGIES INC. and        Case No. 07-CV-2000-H (CAB)
   MULTIMEDIA PATENT TRUST,
11                                     consisting of matters severed from
                                       consolidated cases:
12             Plaintiff,
            v.                         Case No. 02-CV-2060 B (CAB)
13                                     Case No. 03-CV-0699 B (CAB)
   GATEWAY, INC., GATEWAY COUNTRY      Case No. 03-CV-1108 B (CAB)
14 STORES LLC, GATEWAY COMPANIES,
   INC., GATEWAY MANUFACTURING LLC     **MULTIMEDIA PATENT TRUST'S**
15 and COWABUNGA ENTERPRISES, INC.,    **OPPOSITION TO DELL'S MOTION**
                                       **FOR SUMMARY JUDGMENT**
16             Defendants,             **CONCERNING ALLEGED**
            and                        **INVALIDITY OF U.S. PATENT NO.**
17                                     **4,383,272**
   MICROSOFT CORPORATION,
18
               Intervener.
19 MICROSOFT CORPORATION,              Date:        January 7, 2008
                                       Time:        10:30 A.M.
20             Plaintiff,              Courtroom:   13
            v.                         Judge:       Hon. Marilyn L. Huff
21
   LUCENT TECHNOLOGIES INC.,
22
               Defendant.
23 LUCENT TECHNOLOGIES INC. and
   MULTIMEDIA PATENT TRUST,
24
               Plaintiff,
25          v.
26
   DELL INC.,
27
               Defendant.
28

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................ii

I.     INTRODUCTION.........................................................................................................1

II.    TECHNICAL BACKGROUND ..................................................................................3

      A.    Video Coding ....................................................................................................3

      B.    The Netravali '272 Patent ................................................................................4

      C.    The Gabor & Hill Reference ............................................................................6

III.   LEGAL STANDARDS ................................................................................................7

      A.    Summary Judgment ..........................................................................................7

      B.    Obviousness .....................................................................................................8

IV.   ARGUMENT ................................................................................................................9

      A.    Dell Cannot Meet Its Burden Of Establishing Obviousness By Clear And
           Convincing Evidence Based On Undisputed Facts .........................................9

           1.    "determining by interpolation the intensities of pels" ..............................10

           2.    "related locations"...................................................................................17

V.    CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................8

*Bruckelmyer v. Ground Heaters, Inc.*,
    453 F.3d 1352 (Fed. Cir. 2006)......................................................................19

*Caterpillar Inc. v. Deere & Co.*,
    224 F.3d 1374 (Fed. Cir. 2000)........................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................7, 9

*Crown Operations Int'l, Ltd. v. Solutia Inc.*.
    289 F.3d 1367 (Fed. Cir. 2002)........................................................................8

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
    851 F.2d 1387 (Fed. Cir. 1988)......................................................................20

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000)......................................................................18

*Eli Lilly and Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001)..........................................................................8

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
    501 F.3d 1263 (Fed. Cir. 2007)........................................................................8

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966)..............................................................................................8

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006)..........................................................................9

*KSR Int'l. Co. v. Teleflex Inc.*,
    --- U.S. ---, 127 S.Ct. 1727 (2007)..................................................8, 9, 10, 14

*National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004)......................................................................18

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)........................................................................8

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007)..................................................9, 10, 15, 20

*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000)..................................................................20

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002)................................................................8

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007)............................................................9, 10

*United States v. Boyce*,
   148 F. Supp. 2d 1069 (S.D. Cal. 2001)...................................................7

STATUTES

35 U.S.C. § 102.....................................................................................18

35 U.S.C. § 103(a) ..................................................................................8

Fed. R. Civ. P. 56(c) ...............................................................................7

## I.     INTRODUCTION

Dell's motion for summary judgment that Claim 13 of the Netravali '272 patent is invalid as obvious in light of the Gabor & Hill reference fails because Dell has not fulfilled its summary judgment obligation to present proof that, left unrebutted, would support a finding of obviousness by clear and convincing evidence.  Rather than demonstrating the required *prima facie* case of obviousness, Dell incorporates by reference the conclusory (and therefore deficient) opinions of its technical expert, Edward Delp, and then launches into a misguided discussion of MPT's alleged failure to raise a genuine issue of material fact.  But Dell's unsupported attorney arguments — riddled with mischaracterizations of the prior art and the testimony of MPT's technical expert, Bernd Girod — cannot suffice to overcome the presumption of patent validity.  Because Dell has not made a *prima facie* challenge to validity, its motion for summary judgment fails even in the absence of rebuttal proof.

Dell's contention that the Gabor & Hill reference renders obvious all of the elements of Claim 13 relies upon a false interpretation of the term "pel" that is built on misquotations of MPT's expert and that is not supported by the patents, the prior art, or any testimony save for the conclusory remarks of Dell's own expert.  Contrary to Dell's argument, Professor Girod has ***not*** opined that Claim 13 is limited to a digital implementation.  Rather, Professor Girod has explained that the concept of a "pel" in the context of the Netravali '272 patent requires sampling of the video signal in the temporal, vertical, and horizontal dimensions.  Indeed, ***this Court has already ruled that a genuine factual dispute exists for trial as to whether the Gabor & Hill reference discloses a system that uses pels*** in the context of the Netravali '272 patent.  As a result, that issue must be resolved in MPT's favor here.

Moreover, even if Dell could meet its initial burden on summary judgment, Dell's allegations of obviousness are readily rebutted by evidence demonstrating the existence of genuine factual disputes for trial.  Professor Girod has assessed the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art, and has opined that Claim 13 is nonobvious.  He explains, for example, that the Gabor & Hill reference lacks crucial requirements of Claim 13 — namely, pel-based processing and interpolation based on related

1  locations — and that a person of ordinary skill in the art at the time of the Netravali '272 invention

2  would see no reason to adapt the obsolete Gabor & Hill prior art system to arrive at the invention of

3  Claim 13.

4       For example, Professor Girod rebuts Dell's argument that it would have been obvious to a

5  person of skill in the art to modify the Gabor & Hill system to include the missing pel-based

6  processing because a person of ordinary skill in the art *in the 1980s* would have been implementing

7  a system in the digital domain.  As Professor Girod explains, the obsolete mechanical-optical

8  apparatus of the Gabor & Hill system, which would have been state of the art *in the 1960s*, does not

9  lend itself to any meaningful digital implementation.  Thus, and contrary to Dell's argument, a

10  person of skill in the art, surrounded by the many effective video coding techniques available in the

11  relevant time-frame, would *not* have been prompted to implement the outmoded Gabor & Hill

12  system in a digital format.

13       Dell also argues that it would have been obvious to modify Gabor & Hill to include the

14  missing interpolation based on related locations because a single individual — Dr. Jaswant Jain —

15  allegedly arrived at the invention of Claim 13 independently.  But Dell's argument turns on a

16  misunderstanding (or misstatement) of the law.  The law does not render an invention *per se* invalid

17  simply because another individual arrived at the invention around the same time.  Furthermore, the

18  fact that *one* other individual — a person of *greater* than ordinary skill in the art — purportedly

19  conceived of the Netravali '272 patent invention around the same time as the named inventors

20  cannot substitute for the requisite proof that the invention would have been obvious to a hypothetical

21  person of ordinary skill.

22       Finally, Professor Girod's opinion that Claim 13 of the Netravali '272 patent is nonobvious is

23  supported by other objective evidence, including the failure of others to arrive at the invention, the

24  commercial success of the invention, and the licensing of the invention by others.  In sum, because

25  Dell has not presented a *prima facie* case of obviousness, and because more than sufficient proof

26  exists to support a finding of nonobviousness, Dell's summary judgment motion should be denied.

27

28

## II.    TECHNICAL BACKGROUND

### A.    <u>Video Coding</u>

Digital video signals, such as those stored on a DVD, contain information defining many separate pictures, or frames, that produce the illusion of motion when viewed in rapid succession. (Declaration of Bernd Girod in Support of Multimedia Patent Trust's Oppositions to Dell's Video Coding Summary Judgment Motions (hereinafter "Girod Opp. Decl.") at ¶ 6.)  The digital representation of a video signal is fundamentally different from an analog representation of a video signal.  In an analog signal representation, the brightness and color of an image is represented by some aspect of an electrical waveform, typically the amplitude of a voltage, which varies continuously.  (*Id*. at ¶ 7.)  The brightness and color distribution on the target of a video camera is sampled along the time axis and in the vertical direction, but along a scan line it is continuous — not sampled — in both the horizontal direction and amplitude.  (*Id*.)  A digital signal, on the other hand, must be discrete in both the horizontal and vertical space dimensions and the time dimension, as well as in amplitude, so that it can be represented by a stream of binary numbers.  The resulting individual samples along a scan line are referred to as picture elements, often abbreviated pels or pixels.  Digital video signals define pixels, while analog video signals do not.  (*Id*.)

The amount of information needed to represent digitally each frame of a video signal in its entirety is too great for economical storage and transmission.  (*Id*. at ¶ 8.)  For most transmission or storage applications, it is therefore important to reduce the amount of information required to represent video signals in digital form.  (*Id*.)  Techniques developed to achieve such reduction are commonly called "video compression" or "video coding" techniques.  (*Id*.)

Video compression techniques generally exploit what is known in the art as "statistical redundancy."  (*Id*. at ¶ 11.)  Statistical redundancy refers to the empirical fact that much of the information both within and between frames of a video sequence is repetitive, or "redundant."  (*Id*.)  Video compression techniques take advantage of that redundancy to store or transmit the video signal efficiently; that is, with as few bits as possible.  (*Id*.)

For example, nearby frames in a video sequence are often very similar.  In fact, when viewed side-by-side, they may appear almost indistinguishable.  This is because nearby frames typically

1   show the same objects at slightly shifted positions in the image.  (*Id*. at ¶ 16.)  Video compression

2   techniques that exploit this redundancy between frames are called "interframe compression"

3   techniques.  (*Id*.)  Substantial data compression can be achieved by exploiting the frame-to-frame

4   similarities in a video sequence using interframe coding techniques.  (*Id*.)

5        Modern video compression systems use an interframe compression technique called "motion-

6   compensated prediction" to exploit the similarities between nearby video frames.  (*Id*. at ¶ 17.)  The

7   idea of motion-compensated prediction is to apply an estimate of the displacement that objects have

8   undergone from one frame to the next.  (*Id*.)  The displacement estimate itself is derived through a

9   separate process called "motion estimation."  (*Id*.)  If the displacement estimate is accurate, then

10   pixel information in a current frame can be predicted accurately by applying the displacement

11   estimate to a previous frame.  (*Id*.)

12        Following in the footsteps of the Netravali '272 patent inventors, many modern video

13   compression systems also use an interframe compression technique called "motion-compensated

14   interpolation" to exploit the similarities between nearby video frames.  (*Id*. at ¶ 20.)  As the name

15   suggests, motion compensated interpolation predicts pixel information in a current frame by

16   averaging pixel information obtained from preceding and subsequent frames.  (*Id*.)  The pixel

17   information used in the averaging process is obtained using motion compensated prediction as

18   described above.  (*Id*.)  In the case of motion compensated interpolation, however, two displacement

19   estimates are used — one based on a previous frame, and another based on a subsequent frame — to

20   generate forward and backward predictions.  (*Id*.)  The two predictions are then averaged.  (*Id*.)

21   **B.**    **The Netravali '272 Patent**

22        Generally speaking, the Netravali '272 patent describes digital video compression methods

23   and circuits that combine motion compensation with interframe interpolation.[1]  (Girod Opp. Decl. at

24

---

25   [1]Dell claims that interframe interpolation or "recovering a non-transmitted picture from both
    previous and succeeding versions" was the point of novelty of the Netravali '272 patent invention.

26   (Dell. Br. at 5.)  The "Background of the Invention" section of the Netravali '272 patent, however,
    expressly notes that interframe interpolation was known in the art.  (Ex. 15, '272 Patent at 1:18-27.)

27   Indeed, Dell's own technical expert witness, Dr. Delp, concedes that the specification of the

28                                                                 (Continued…)

1    ¶¶ 22-23.)  The methods and circuits disclosed in the Netravali '272 patent reconstruct the intensities

2    of pels in a picture using interframe interpolation.  (*Id*. at. ¶ 23.)  The locations of the pels used for

3    interpolation ("reference pels") correspond to locations at which the same object is expected to be in

4    preceding and succeeding versions of the picture.  (*Id*.)

5         The asserted claim of the Netravali '272 patent, Claim 13, describes a method of estimating

6    pel intensities through motion compensated interframe interpolation:

7
              A method of estimating the intensities of elements (pels) in a picture in
8             accordance with information defining intensities of pels in preceding
              and succeeding versions of the picture including the step of
9             determining by interpolation intensities of pels in said picture in
              accordance with intensities of pels in related locations in said
10            preceding and succeeding versions,

11            characterized in that

12            said determining step includes selecting of said related locations as a
              function of the displacement of objects in said picture.

13    (Ex. 15, '272 Patent.)[2]  The Court has already construed the language of Claim 13.  (Ex. 16, '272

14    Superceding Markman Order.)  For example, the Court construed the term "pels" to mean "picture

15    elements, also referred to as pixels."  (*Id*.)  Furthermore, the Court construed "related locations" to

16    mean "locations at which the same object is expected to be."  (*Id*.)

17

18

19    _____

20    Netravali '272 patent discloses that interframe interpolation was known in the art.  (November 29,
      2007, Delp Deposition at p. 147.)  Because simple interframe interpolation — as opposed to the
21    motion-compensated interframe interpolation of the Netravali '272 patent — was presented to the
      Patent Office as prior art, it cannot be the "patentable distinction" envisioned by the Patent Office.
22    Rather, the portion of the prosecution history cited by Dell merely shows that the inventors
      distinguished two *specific* prior art references on the grounds that they disclosed motion
23    compensated prediction, but not interframe interpolation.  (Dell Br. at 5.)  The inventors did not
      contend that the art as a whole failed to disclose interframe interpolation, nor did they suggest that
24    their invention was interframe interpolation in the absence of motion compensation.

25    [2] All citations to exhibits refer to the Declaration of Jennifer J. Schmidt in Support of Multimedia
26    Patent Trust's Oppositions to Dell's Video Coding Summary Judgment Motions, filed concurrently
      herewith.
27

28

### C.    The Gabor & Hill Reference

The article "Television Band Compression By Contour Interpolation," by Denis Gabor and Peter C. J. Hill ("the Gabor & Hill reference") was published in 1961.  (Ex. 17, Gabor & Hill Reference.)  The Gabor & Hill reference does not describe digital video compression at all.  Rather, the Gabor & Hill reference describes an experimental system for reducing the width of the frequency band required for transmission of *analog* television signals.  (Girod Opp. Decl. at ¶ 37.)  The authors suggest omitting television fields or frames in regular intervals and then reinserting them at the receiver by interpolation from transmitted fields or frames.  They further describe a method of "contour interpolation," which controls the combination of two analog signals derived by horizontal scanning of two separate lines of stored fields or frames:

> In the method of contour interpolation the two [scanning] spots run with equal speed v until one of them reaches an edge, i.e. a position where the intensity changes at more than a certain predetermined rate. Here it stops, while the other spot, which has not yet reached the contour, moves on with a speed 2v, so that the interpolated spot, midway between the two, moves on with constant velocity v.  This continues until the second spot has also reached the contour, after which the retarded spot gradually catches up with the other until both move again with the same speed v.  . . .  [T]he interpolated intensity I is formed as the arithmetical mean of the two intensities, but weighted with the velocities . . .

(Ex. 17, Gabor & Hill Reference at MSLT_0001230.)  The "contour interpolation" technique produces an analog signal corresponding to the intensity of the *line* being interpolated.  (Girod Opp. Decl. at ¶ 37.)

As such, the Gabor & Hill system interpolates lines — rather than pixels, pels, or picture elements — because it is an analog system that does not sample video signals in the horizontal dimension.  (*Id.* at ¶ 38, 40.)  Instead, the Gabor & Hill system samples the video signal in the temporal dimension (dividing it into frames or fields) and the vertical dimension (dividing it into horizontal lines).  (*Id.*)  Unlike the Netravali '272 patent, the Gabor & Hill system does not sample the video signal in the horizontal dimension to form discrete pels.  (*Id.*)

Line interpolation in the Gabor & Hill system proceeds as follows.  Reference frames or fields used as the inputs for interpolation are stored as visible images on separate cathode ray tubes.  (*Id.* at ¶¶ 37, 40; *see also* Ex. 17, Gabor & Hill Reference.)  Photo-mechanical devices called

1  "scanners" then use electron beams to separately but simultaneously scan a horizontal line in each

2  reference frame.  (*Id.*)  The scanners output a continuous waveform signal for each horizontal "scan

3  line," which fluctuates depending on the intensity of the line being scanned.  (*Id.*)  The waveform

4  signals for corresponding horizontal lines in each reference frame are then combined using analog

5  circuitry to generate a single waveform output signal.  (*Id.*)  This output signal represents the

6  "interpolated" horizontal line.  (*Id.*)

7  　　　　The Gabor & Hill system of line interpolation differs markedly from the systems described in

8  the Netravali '272 patent.  *First*, as described above, the Gabor & Hill system performs no

9  operations — such as interpolation or selection — using pels, because it does not sample intensity

10  information in the horizontal dimension to yield discrete intensity values for discrete pels.  *Second*,

11  to the extent that the Gabor & Hill system performs any kind of interpolation, that interpolation is

12  not motion compensated.  Rather, the Gabor & Hill system merely varies the weighting of waveform

13  inputs into its analog "interpolation" as a function of abrupt changes in the intensity signals along the

14  horizontal scan lines.  (Girod Opp. Decl. at ¶ 43.)  This technique, called "contour interpolation,"

15  fails to account for the displacement of objects between frames or fields.  (*Id.*)

16  **III.    LEGAL STANDARDS**

17  　　　　**A.    <u>Summary Judgment</u>**

18  　　　　Summary judgment is appropriate only where "the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

20  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

21  law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Where,

22  as here, "the moving party bears the burden of proof at trial, it cannot obtain summary judgment

23  unless it presents evidence so compelling that no rational jury would fail to award judgment for the

24  moving party."  *United States v. Boyce*, 148 F. Supp. 2d 1069, 1080 (S.D. Cal. 2001).  Furthermore,

25  "[w]hen ruling on a motion for summary judgment, all of the nonmovant's evidence is to be

26  credited, and all justifiable inferences are to be drawn in the nonmovant's favor."  *Caterpillar Inc. v.*

27  *Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000).

28

1    A summary judgment determination must also be guided by the appropriate burden of proof.

2    If the Court determines that a reasonable jury applying the proper burden of proof — in this case

3    clear-and-convincing evidence — could find for the non-movant, then there exists a genuine issue of

4    material fact that precludes granting of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*,

5    477 U.S. 242, 254-555 (1986).

6    ### B.    Obviousness

7    Because every patent is presumed valid, accused infringers face a "high burden of showing

8    invalidity on summary judgment."  *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed.

9    Cir. 2002).  "[A] party seeking to invalidate a patent at summary judgment must submit ***clear and***

10   ***convincing evidence*** of invalidity so that no reasonable jury could find otherwise."  *Eli Lilly and Co.*

11   *v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (emphasis added).  If evidence is presented

12   establishing a *prima facie* case of invalidity, the opponent of invalidity must come forward with

13   evidence to counter the *prima facie* challenge to the presumption of validity, but "the ultimate

14   burden of proving invalidity remains with the challenger throughout the litigation."  *Pfizer, Inc. v.*

15   *Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007).

16   A claimed invention can be found obvious only "if the differences between the subject matter

17   sought to be patented and the prior art are such that the subject matter as a whole would have been

18   obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. §

19   103(a).  Obviousness is ultimately a question of law based on underlying determinations of fact.

20   
21   *Forest Labs., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1269 (Fed. Cir. 2007).  The underlying

22   factual issues to be considered in an obviousness analysis include "four general types, all of which

23   must be considered by the trier of fact:  (1) the scope and content of the prior art;  (2) the level of

24   ordinary skill in the art;  (3) the differences between the claimed invention and the prior art; and (4)

25   any objective indicia of nonobviousness."  *Crown Operations Int'l, Ltd. v. Solutia Inc.*. 289 F.3d

26   1367, 1376 (Fed. Cir. 2002).  Earlier this year, the United States Supreme Court reaffirmed the

27   primacy of those factors in determining whether a patent is invalid for obviousness.  *See KSR Int'l.*

28

1   *Co. v. Teleflex Inc.*, --- U.S. ---, 127 S.Ct. 1727, 1734 (2007) (citing *Graham v. John Deere Co.*, 383

2   U.S. 1, 17-18 (1966)).

3        "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements;

4   instead, there must be some articulated reasoning with some rational underpinning to support the

5   legal conclusion of obviousness." *KSR*, 127 S. Ct. at 1741 (quoting *In re Kahn*, 441 F.3d 977, 988

6   (Fed. Cir. 2006)). Thus, "the burden falls on the patent challenger to show by clear and convincing

7   evidence that a person of ordinary skill in the art would have had reason to attempt to make the

8   composition or device, or carry out the claimed process, and would have had a reasonable

9   
10  expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342,

11  1360 (Fed. Cir. 2007) (citing, *inter alia*, *KSR*, 127 S. Ct. at 1740).

12       In that regard, the Supreme Court has "acknowledged the importance of identifying 'a reason

13  that would have prompted a person of ordinary skill in the relevant field to combine the elements in

14  the way the claimed new invention does' in an obviousness determination." *Takeda Chem. Indus.,*

15  *Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007) (quoting *KSR*, 127 S. Ct. at

16  1731). Accordingly, "[a] patent composed of several elements is not proved obvious merely by

17  
18  demonstrating that each element was, independently, known in the prior art." *KSR*, 127 S. Ct. at

19  1731. For example, "combining elements that work together 'in an unexpected and fruitful manner'

20  would not have been obvious." *PharmaStem*, 491 F.3d at 1360 (quoting *KSR*, 127 S. Ct. at 1740).

21  Moreover, "when the prior art teaches away from combining certain known elements, discovery of a

22  successful means of combining them is more likely to be nonobvious." *KSR*, 127 S.Ct at 1740.

23  

24  **IV.    ARGUMENT**

25       **A.    Dell Cannot Meet Its Burden Of Establishing Obviousness**
26           **By Clear And Convincing Evidence Based On Undisputed Facts**

27       Because Dell cannot prevail on its obviousness defense without resolving numerous genuine

28  factual disputes, Dell's motion for summary judgment fails. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986).  In its motion papers, Dell completely ignores the burden it must overcome to establish that Claim 13 of the Netravali '272 patent is invalid as obvious on summary judgment. Rather than presenting "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness," *KSR*, 127 S. Ct. at 1741, Dell proceeds as though its mere identification of an allegedly invalidating prior art reference places the onus on MPT to disprove obviousness.  On the contrary, Dell must present clear and convincing proof that a person of ordinary skill in the relevant field would have been prompted to combine the elements of the invention, arranged as in the claim, and would have had a reasonable expectation of success in doing so.  *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007).

This Dell cannot do.  In support of its obviousness motion, Dell merely repackages the misguided arguments that Dell made in moving for summary judgment of invalidity by anticipation — a motion that this Court denied because of existing issues of triable fact.  Dell seeks to bolster those arguments by cross-referencing the report of its expert, Edward Delp.  (*See* Dell Br. at 10.) But Dr. Delp's report at best presents conclusory assertions concerning the teachings of the Gabor & Hill reference that are flatly contradicted by MPT's video compression expert, not to mention the Gabor & Hill reference itself.  (*Compare* Ex. 11, Sept. 14, 2007, Delp Report at 11-14 (¶¶ 29-41) *with* Girod Opp. Decl. at ¶¶ 36-48.)  Indeed, Dell largely bases its obviousness argument on mischaracterizations of Professor Girod's expert opinions regarding two limitations of Claim 13, specifically "determining by interpolation intensities of pels" and "related locations."

### 1. <u>"determining by interpolation the intensities of pels"</u>

#### a. The Gabor & Hill Reference Does Not Disclose "Determining By Interpolation Intensities Of *Pels* In Said Picture In <u>Accordance With Intensities Of *Pels* In Related Locations.</u>"

Dell cannot demonstrate that the Gabor & Hill reference renders obvious Claim 13 of the Netravali '272 patent because the Gabor & Hill reference fails to disclose "determining by

1  interpolation intensities of *pels* in said picture in accordance with intensities of *pels* in related

2  locations," and a person of ordinary skill in the art would not have seen reason to adapt the Gabor &

3  Hill reference to include that missing step.  Both the express language of Claim 13 and the

4  specification of the Netravali '272 patent dictate that the process step of "determining by

5  interpolation" be performed on a video signal that has been sampled not only temporally to yield

6  frames or fields, but also vertically and *horizontally* to yield a finite array of discrete "pels" with

7  defined "intensities."  (Girod Opp. Decl. at ¶¶ 39-41.)

8        In the Gabor & Hill system, however, video signals are not sampled in the horizontal

9  dimension before processing.  (*Id*. at ¶ 38.)  Furthermore, a person of skill in the art would have no

10  reason to adapt the analog Gabor & Hill system to implement motion compensated interpolation on

11  temporally, vertically, and horizontally sampled analog signals.  (Ex. 13, Nov. 20, 2007, Girod Dep.

12  Tr. at 96-97.)  Because a person of skill in the art would not be prompted to combine the step of

13  "determining . . . the intensities of pels" based on "intensities of pels in related locations" with the

14  Gabor & Hill system, Dell's motion for summary judgment of obviousness should be denied.

15        Indeed, this Court has already determined that a triable issue of fact exists as to whether the

16  Gabor & Hill reference discloses "pels":

17
          ***MPT's expert opines that a person of ordinary skill in the art would
          find that Gabor & Hill did not disclose a system that uses pels*** in [the
18        context of the Netravali '272 patent], but instead discloses a system
          that uses only scan line signals (sampled in only one dimension).
19        While Dell disagrees with this position, ***MPT has raised issues of fact
          that preclude summary judgment***.
20
21  (Ex. 18, July 27, 2007 Order Denying-In-Part Dell's Motion for Summary Judgment on U.S. Patent

22  No. 4,383,272 at 6 (emphasis added).)  Accordingly, that issue of fact must be resolved in MPT's

23  favor on this motion:  that is, the Gabor & Hill reference must be presumed to lack any disclosure of

24  "determining . . . the intensities of pels."  Dell cannot avoid that presumption simply by rehashing

    the identical argument already considered — and ***rejected*** — by this Court.
25
26        Nor would revisiting the evidence yield a different result.  Dell's argument that Claim 13 is

27  not limited to digital implementations continues to rest on Dell's faulty understanding — or

28  deliberate mischaracterization — of Professor Girod's expert opinion.  Contrary to Dell's motion

1  papers, Professor Girod has **not** opined that Claim 13 is limited to a digital implementation.  Rather,

2  Professor Girod has explained that in order for the concept of a "pel" to be understood in the context

3  of the Netravali '272 Patent, the video signal must be sampled temporally, vertically, and

4  horizontally.  (Girod Opp Decl. at ¶¶ 39, 41.)

5      The plain language of Claim 13 itself establishes that "pels" have defined intensities and

6  locations.  (Ex. 15, '272 Patent at 11:17-27 (referring to "intensities of pels" and "pels in related

7  locations").)  The specification, in turn, consistently uses the term "pel" or "picture element" to

8  describe discrete components of the video signal that are sampled in the temporal, vertical, **and**

9  **horizontal** dimensions.  For example, the specification discusses the calculation of "element

10 differences" by subtracting the intensity values of pels in adjacent horizontal locations:

> In the horizontal picture direction, the rate of change can be
> determined from 'element differences' $ED(x,t)$, i.e., the intensity
> differences between successive picture elements on a single scan line
> evaluated at the location x in the field occurring at time t.

13 (*Id.* at 4:48-52.)  The specification likewise confirms that each pel also has a defined intensity value.

14 (*See, e.g.*, *id.* at 3:55-59 ("To illustrate, if the position of a presently processed pel 250 in field 203 is

15 denoted by vector x, then the location of the 'corresponding' displaced pel 260 in field 201 is given

16 by $x-K_1D$ and the **intensity** at that location is written $I(x-K_1D,t-K_1\tau)$.") (emphasis added).)  Indeed,

17 the specification leaves no doubt that "pels" have defined locations and intensities, because it

18 describes the use of random access memories to store pel intensity values, as well as their

19 subsequent recovery using the addresses for specific pels.  (*See id.* at 6:5-13.)

20      Without both properties — a defined location and intensity value — it would not be possible

21 to determine the intensity of a pel by interpolating the intensities of pels in related locations, as

22 recited in Claim 13.  (Girod Opp. Decl. at ¶¶ 38-40.)  Accordingly, a person of ordinary skill in the

23 art reading Claim 13 in light of the specification would understand that the phrase "determining by

24 interpolation intensities of pels in said picture in accordance with intensities of pels in related

25 locations" requires processing of intensity information for pels sampled in the temporal, vertical, and

26 horizontal dimensions.  (*Id.* at ¶ 39.)

27

28

1    Extrinsic evidence likewise confirms that the Netravali '272 patent's use of the term "pels"

2    comports with the customary understanding of that term in the video compression field.  For

3    example, contemporaneous statements by a named inventor of the Netravali '272 patent confirm his

4    understanding that processing of "pels" requires sampling a video signal in the horizontal dimension.

5    (Ex. 19, Patent No. 4,281,344 at 3:29-34 ("The input signal can be a video signal obtained by

6    scanning each frame of a picture to be processed along a plurality of scan lines, *and sampling the*

7    *scanner output at a desired rate so that each sample represents the intensity of a corresponding*

8    *element (pel)* in the picture.") (emphasis added); Ex. 20, Patent No. 4,237,484 at 2:51-55 ("*The*

9    *video signal on line 101 is sampled* at [an] appropriate (Nyquist) rate by closing switch 102 under

10    control of a sampling clock 103.  *Each sample thus represents the intensity value at a particular*

11    *picture element (pel) location in the picture being encoded*.") (emphases added).)

12    As a result, Professor Girod's statement that the term "pel" has been used in the context of

13    analog signals does *not* mean that a "picture element" is just an area of a picture.  (*See* Dell Br. at

14    11.)  Dell ignores Professor Girod's deposition testimony explaining that the use of the term "pel" in

15    the context of analog television technology is distinct from the use of "pel" in digital video:

16    In digital video, there is — there's been a different meaning of PEL,
       and that meaning is usually referred to when somebody uses pixel, and

17    that's in fact the meaning that we have to look for in the context of the
       Netravali patent.

18    (Ex. 13, Nov. 20, 2007, Girod Dep. Tr. at 94.)  Therefore, "pels" in the context of the Netravali

19    Patent are discrete components of the video signal that are sampled in the temporal, vertical, *and*

20    *horizontal* dimensions.  (Girod Opp. Decl. at ¶ 39. )

21

22    Dell's failure to understand Professor Girod's opinion renders irrelevant Dell's insistence

23    that Claim 13 is not limited to digital implementations.  Even if Claim 13 could be understood to

24    encompass analog systems, the Gabor & Hill reference still would not disclose all of the elements of

25    the claim because it does not disclose the horizontal sampling of a video signal to form pels.  (*See*

26    Girod Opp. Decl. at ¶ 40.)  Rather, the Gabor & Hill reference merely samples the video signal in the

27    temporal dimension to define fields, and then in the vertical dimension to define lines.  To the extent

28    that the Gabor & Hill reference describes interframe interpolation at all, that interpolation proceeds

by combining analog waveform representations of entire lines.  (*See id*.)  The Gabor & Hill reference therefore interpolates lines, not pels.  In short, because the Gabor & Hill system does not partition the video signal horizontally into discrete pels, the Gabor & Hill reference does not "determin[e] by interpolation the intensities of pels" based on "intensities of pels in related locations."  (*See id*.)

> **b.    Dell Presents No Proof That It Would Have Been Obvious To Modify The Teachings of Gabor & Hill To Arrive at the Invention of Claim 13 By "Determining By Interpolation The Intensities Of Pels."**

Dell argues that it would have been an obvious advance over the prior art to implement the Gabor & Hill system in the digital domain.  But Dell fails to explain or prove how a person of ordinary skill in the art would have been led to modify the Gabor & Hill system in that way.  Indeed, Dell's only support for its argument that "powerful reasons" existed for using a digital implementation of Gabor & Hill is that Dr. Netravali mentions the Gabor & Hill reference in his Picture Coding publication.[3]  Dell then attempts — unsuccessfully — to align the facts considered by the Supreme Court in *KSR* with the invention and prior art in question here.  But Dell's reasoning is fatally flawed in that, contrary to Dell's assertions, the inclusion of the Gabor & Hill system in the Picture Coding reference does not suggest that the Gabor & Hill teachings are pertinent to a digital implementation.  (Dell Br. at 12.)

Rather — as Dell admits — the Picture Coding reference merely discloses that complex manipulations of video signals are more easily processed in the digital domain.  Such generic praise for digital video coding techniques is not equivalent to a reason to digitize obsolete coding methods.  (Girod. Opp. Decl. at ¶ 42.)  Quite unlike the factual situation presented in *KSR* — where the

---

[3] Dell does not ague that Picture Coding is invalidating prior art, but rather only that it evidences a motivation to implement Gabor & Hill in the digital domain.  (Dell Br. at 12).  As set forth herein, however, a person of ordinary skill in the art would not have had any motivation to implement the Gabor & Hill system in the digital domain.  (*See also* Girod Opp. Decl. at ¶42.)

1  Supreme Court held that a person of skill in the art would recognize the benefits of applying a new

2  technique to improve similar devices, *see KSR*, 127 S.Ct. at 1743 — no evidence exists to support

3  Dell's view that a person of skill in the art would recognize that digitizing the Gabor & Hill contour

4  interpolation system would improve the video coding method in the same way that newer coding

5  methods were improved by digital implementations. (Girod. Opp. Decl. at ¶ 42.) Thus, even if

6  unrebutted, Dell's unsubstantiated attorney argument hardly constitutes clear and convincing

7  evidence sufficient to support a finding of obviousness.

8             **c.**       **Ample Evidence Establishes a Genuine Dispute Concerning**

9                          **Whether A Person of Ordinary Skill in the Art Would**

10                          **Have Been Led to Adapt The System Disclosed**
                           **In The Gabor & Hill Reference To Arrive At The**

11                          <u>**Process of Claim 13 Of The Netravali '272 Patent.**</u>

12        Apart from Dell's failure of proof, ample evidence exists on which a reasonable jury could

13  find that a person of ordinary skill in the art at the time of the Netravali '272 invention would not

14  have had a reason to attempt to adapt the Gabor & Hill reference to carry out the process of Claim 13

15  — either with temporally, horizontally, and vertically sampled analog or digital signals. Nor would

16  such a person have had a reasonable expectation of success in doing so. *PharmaStem Therapeutics,*

17  *Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007). Accordingly, summary judgment should

18  be denied.

19        Professor Girod has opined that a person of ordinary skill in the art would have had no

20  motivation to adapt the analog Gabor & Hill system to implement motion compensated interpolation

21  on temporally, vertically, and horizontally sampled analog signals. (Ex. 13, Nov. 20, 2007, Girod

22  Dep. Tr. at 96-97.) Nor would a person of skill in the art, as Dell argues, be motivated to apply the

23  Gabor & Hill system in the digital domain. Professor Girod testified that at the time of the Netravali

24  '272 invention, the Gabor & Hill system was obsolete, reflecting the state of the art in the 1960s. (*Id.*

25  at 98.) As shown in Fig. 1 below, the system described in the Gabor & Hill reference is a

26  complicated mechanical-optical device using a picture transformer that scans picture lines using film

27  drums that are rotated through the use of a spindle and pegs. (Ex. 17, Gabor & Hill Reference at

28  MSLT_0001230 - MSLT_0001233.) A person of skill in the art would not have been prompted to

1   redesign this dated system in the digital domain.  (Girod Opp. Decl. at ¶ 42.)  In fact, Professor

2   Girod has opined that it would not even be possible to simulate the Gabor & Hill system in the

3   digital domain in any meaningful way.  (Ex. 13, Nov. 20, 2007, Girod Dep. Tr. at 98.)



Fig. 3.—Picture transformer for 2 : 1 compression by contour interpolation.

**Figure 1**

In short, ample evidence exists to support a finding that no person of ordinary skill in the art

would have seen reason to adapt the Gabor & Hill system — either with horizontally sampled analog

signals or digital signals — to "determin[e] by interpolation the intensities of pels" based on

"intensities of pels in related locations."  (*See* Girod Opp. Decl. at ¶ 42.)  Dell's motion for summary

judgment should therefore be denied.

2.     **"related locations"**

   a.     **The Gabor & Hill Reference Does Not Disclose "Determining By Interpolation Intensities Of Pels In Said Picture In Accordance With Intensities Of Pels *In Related Locations.*"**

Even if a person of ordinary skill in the art were motivated to combine interpolation of pel intensities with the Gabor & Hill system, which such a person would not be, the Gabor & Hill reference still would not render obvious Claim 13 of the Netravali '272 patent because it does not disclose interpolating intensities of pels "*in related locations*."[4]  (Girod Opp. Decl. at ¶¶ 40, 43.) Rather, the Gabor & Hill reference discloses signal interpolation only along the same scan line in two versions of the picture, and only reacts to predefined intensity changes — or "contours"— in the horizontal direction.  (Girod Opp. Decl. at ¶ 43.)  As Professor Girod explains, the locations where the same object is expected to be in two versions of a picture ***cannot*** be represented by considering only the threshold intensity gradient in the horizontal direction.  (*Id.*)  The Gabor & Hill reference therefore fails to disclose interpolating the intensities of pels "in related locations."  (*Id.*)

In fact, this Court already considered — and ***rejected*** — Dell's argument that Gabor & Hill discloses the intensities of pels "in related locations" because of triable issues of fact.  Specifically, this Court noted that:

> ***MPT also argues that the Gabor & Hill Paper does not disclose "selecting related locations" as required by claim 13, because selecting where an object is expected to be cannot be accomplished solely by sampling as set forth in the Gabor & Hill Paper, which cannot detect purely vertical movement of objects at all.***  . . . Moreover, MPT's expert opines that a person of ordinary skill in the art would find that Gabor & Hill did not disclose a system that uses pels in this same context, but instead discloses a system that uses only scan line signals (sampled in only one dimension). While Dell disagrees with this position, ***MPT has raised issues of fact that preclude summary judgment***.

---

[4] This Court has interpreted the phrase "related locations" to mean "locations at which the same object is expected to be."  (Ex. 16, '272 Patent Superceding Markman Order at 3.)

1    (Ex. 18, July 27, 2007 Order Denying-In-Part Dell's Motion for Summary Judgment on U.S. Patent

2    No. 4,383,272 at 6 (emphasis added).)  Accordingly, that issue of fact must be resolved in MPT's

3    favor on this motion:  that is, the Gabor & Hill reference must be presumed to lack any disclosure of

4    interpolation based on pels "in related locations."

5     **b.  Dell Presents No Proof That It Would Have Been**

6         **Obvious To Modify The Teachings of Gabor & Hill To**

         **Arrive at the Invention of Claim 13 By Interpolating**

7         **The Intensities Of Pels In "Related Locations."**

8    Dell argues that it would have been an obvious advance over the prior art to implement the

9    Gabor & Hill system to include a determination of where an object is expected to be in past and

10   future frames.  (Dell Br. at 13.)  But Dell fails to explain or prove how a person of ordinary skill in

11   the art would have been motivated to modify the Gabor & Hill system in that way.  Indeed, Dell's

12   argument reduces to a single contention — that the invention of Claim 13 must be obvious because

13   Dr. Jaswant Jain allegedly arrived at it independently.  (Dell Br. at 15.)  At bottom, Dell asks this

14   Court to adopt an unprecedented *per se* rule rendering obvious any patent claim for which there is

15   evidence of a non-prior art near simultaneous invention.  But no authority exists for such a sweeping

16   proposition.[5]  In fact, the Federal Circuit has confirmed that the fact of a near simultaneous invention

17   is merely one factor to be considered in weighing secondary considerations of nonobviousness; and

18   as such, near simultaneous invention "may or may not be an indication of obviousness when

19   considered in light of all the circumstances." *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361,

20   1379 (Fed. Cir. 2000).

21    Furthermore, Dell's argument not only lacks foundation in the law, it also renders irrelevant

22   the categories of prior art set forth in 35 U.S.C. § 102 because if Dell's argument were correct, any

24   [5] Dell relies on *National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319 (Fed. Cir. 2004)
25   to support its view that the Jain Thesis establishes a motivation to combine regardless of whether it
     qualifies as prior art.  But Dell's interpretation of *National Steel Car* is unsupported; the Federal
26   Circuit merely held that a reference that does not qualify as prior art may still be considered in
     determining the knowledge of a person having skill in the art.  *Id.* at 1338.

reference that discloses all of the limitations of a claim would not need to meet the § 102 prior art requirements in order to render the claim invalid as a matter of law.  For example, if Dell's view were adopted, then the large body of precedent in the § 102(b) anticipation context addressing the printed publication status of allegedly anticipatory references — *see, e.g., Bruckelmyer v. Ground Heaters, Inc.*, 453 F.3d 1352 (Fed. Cir. 2006) — would be moot because any such references would invalidate under § 103 regardless of the actual date the references were made accessible to the public.  In addition, Dell's reading of the law renders pointless interference practice under § 102(g), as the disputed inventions in any interference proceeding would be *per se* obvious in light of each other.  This Court should not adopt such an implausible interpretation of the obviousness standard.

Nor, as Dell suggests, can the fact that *one* other individual purportedly conceived of the Netravali '272 patent invention around the same time be considered a substitute for the requisite proof that the invention would have been obvious for a hypothetical person of ordinary skill.  First, the supposed simultaneous inventor here — Dr. Jaswant Jain —  was not a person of *ordinary* skill in the art (*i.e.*, a person with a Bachelor of Science degree in electrical engineering and 2 years of practical experience).  (Girod Opp. Decl. ¶ 21.)  Rather, he held a master's degree, had worked in the field for over 7 years, and had essentially completed his Ph.D. studies (with a perfect 4.0 grade point average).  (Ex. 22, Jan. 6, 2006 Jain Dep. Tr. at 13-19; 23-24.)  Therefore, Dr. Jain's publications cannot be viewed as evidence of what a person of *ordinary* skill hypothetically would have been motivated to do.  Moreover, Dell fails to identify what — if anything — actually prompted Dr. Jain's alleged combination of motion compensation with interframe interpolation, let alone establish that others in the art would have been led to the same result.

Accordingly, even if unrebutted, Dell's obviousness positions lack clear and convincing evidence sufficient to support a finding of invalidity.  Dell's motions for summary judgment should therefore be denied.

1
2
3

        **c.**     **Ample Evidence Establishes a Genuine Dispute Concerning
Whether A Person of Ordinary Skill in the Art Would
Have Been Motivated to Adapt The System Disclosed
In The Gabor & Hill Reference To Arrive At The
<u>Process of Claim 13 Of The Netravali '272 Patent.</u>**

4

      Ample evidence exists on which a reasonable jury could find that no person of ordinary skill

5

in the art at the time of the Netravali '272 invention would have had a reason to attempt to adapt the

6

Gabor & Hill reference to determine by interpolation where an object is expected to be.  Nor would

7

such a person have had a reasonable expectation of success in so doing.  Accordingly, summary

8

judgment should be denied even if this Court concludes — erroneously — that Dell's summary

9

judgment papers present *prima facie* proof of obviousness.  *See PharmaStem Therapeutics, Inc.*,

10

F.3d at 1360.

11

      Assuming that some use of motion estimation was known in the prior art to determine where

12

an object is "expected to be" — which Dell has not established — Professor Girod explains why no

13

reason existed for a person of ordinary skill in the art to combine that particular technique with

14

interframe interpolation.  (Girod Opp. Decl. at ¶¶ 44-47.)  Many effective video compression

15

technologies were available in the field during the relevant time-frame, and the performance of a

16

given combination of technologies could not be readily predicted.  (*Id.* at ¶ 45.)  As a result, the

17

potential combinations of known, beneficial compression technologies far exceeded what could

18

reasonably be considered a finite set of potential solutions.  (*Id.*)  Nor were the benefits achieved by

19

the particular video compression method described in the Netravali '272 patent predictable, since

20

extended experimentation was required to assess the performance of a system combining any

21

specific set of coding technologies.  (*Id.* at ¶ 46.)  As such, Dell's obviousness argument is an

22

exercise in pure hindsight, piecing together the elements of Claim 13 from diverse sources using the

23

patent itself as a guide.  (*Id.*)

24

      Furthermore, Dell completely ignores ample objective evidence that the invention of Claim

25

13 is nonobvious, including evidence of the commercial success of the invention and licensing of the

26

invention by others.  (Girod Opp. Decl. at ¶¶ 49-51.)  Evidence of such "secondary considerations"

27

***must*** be considered when evaluating obviousness.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed.

28

1    Cir. 2000) ("Our precedents clearly hold that secondary considerations, when present, must be

2    considered in determining obviousness."); *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851

3    F.2d 1387, 1391 (Fed. Cir. 1988) ("Indeed, evidence of secondary considerations may often be the

4    most probative and cogent evidence in the record.").

5        Here, several secondary considerations demonstrate that the invention of Claim 13 is

6    nonobvious, thereby raising genuine issues of material fact that preclude summary judgment. *First*,

7    products that use the claimed invention have been highly successful in the marketplace. (Girod Opp.

8    Decl. at ¶ 49.)  The claimed invention is used in numerous video coding standards, including MPEG-

9    1, MPEG-2, VC-1, and others.  (*Id*.)  The invention of Claim 13 has contributed to the success of

10   these products by reducing the bandwidth needed to transmit, or by reducing the quantity of storage

11   needed to store, high-quality video bitstreams.  (*Id*.)  In fact, Professor Girod has explained that other

12   video coding technologies that do not use the claimed inventions have not been as commercially

13   successful.  (*Id*.)

14       *Second*, licenses showing industry respect for the claimed invention also support the

15   conclusion that Claims 13 is nonobvious and therefore raise a genuine factual dispute.  (*Id.* at 50.)

16   Lucent's licensing agreements that specifically identify the Netravali '272 patent, and Lucent's

17   licensing negotiation documents which refer to the Netravali '272 patent, indicate that the Netravali

18   '272 patent has been a focal point of negotiations for broader licenses with third parties.  (*Id*.)

19       *Third*, statements of acclaim by others for the claimed inventions support the finding that the

20   invention of Claims 13 was nonobvious.  (*Id.* at 51.)  For example, Arun Netravali and John Robbins

21   received the 1996 Thomas Alva Edison Patent Award for outstanding research and development for

22   the invention disclosed in the Netravali '272 patent.  (Ex. 21, 1996 Thomas Alva Edison Patent

23   Award [ROBB 000001].)  Because a host of disputed issues of fact therefore remain for trial, Dell's

24   motion for summary judgment that Claim 13 of the Netravali '272 patent is invalid for obviousness

25   should be denied.

26   **V.    CONCLUSION**

27       For all the foregoing reasons, Multimedia Patent Trust respectfully requests that the Court

28   deny Dell's motions for summary judgment concerning the Netravali '272 patent.

1

2

Dated:  December 14, 2007

3

By:  _____ s/David A. Hahn _____

4

David A. Hahn (SBN 125784)
HAHN & ADEMA

5

501 West Broadway, Suite 1730
San Diego, California  92101-3595

6

Telephone:  (619) 235-2100
Facsimile:  (619) 235-2101

7

John M. Desmarais (admitted *pro hac vice*)

8

Robert A. Appleby (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)

9

Jordan N. Malz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP

10

153 East 53rd Street
New York, New York  10022

11

Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

12

Attorneys for *Lucent Technologies Inc.*

13

and *Multimedia Patent Trust*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28