# Schmidt Declaration

# Exhibit 10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., MULTIMEDIA PATENT TRUST TECHNOLOGIES INC., and MULTIMEDIA PATENT TRUST INC.<br><br>  Plaintiffs and Counterclaim-defendants,<br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>  Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>  Intervenor and Counter-claimant,<br><br>AND CONSOLIDATED CASES | **Civil No:** 02CV2060-B(CAB)<br>consolidated with<br>**Civil No:** 03CV0699-B (CAB) and<br>**Civil No:** 03CV1108-B (CAB)<br><br>**ORDER GRANTING-IN-PART, DENYING-IN-PART AND DEFERRING-IN-PART DELL'S MOTIONS FOR SUMMARY JUDGMENT ON U.S. PATENT NOS. 4,958,226 AND 4,383,272 [Docket 03CV1108, Nos. 46 and 47]** |

Dell moves the Court for summary judgment regarding U.S. Patent No. 4,958,226 ("the '226 patent") on the following issues: (1) invalidity - anticipation; (2) invalidity-

1

Exhibit 10
Page 000220

obviousness; (3) no infringement by Sonic products; (4) no pre-suit damages. Dell also moves for summary judgment on the following issues pertaining to U.S. Patent No. 4,383,272 ("the 272 patent"): (1) invalidity of claim 13 for lack of written description; (2) anticipation of claim 13; (3) no infringement of Dell's Sonic products; (4) no pre-suit damages.[1] Multimedia Patent Trust Technologies, Inc. and Multimedia Patent Trust (collectively "MPT") oppose the motion.[2]

## I. BACKGROUND

The '226 and '272 patents both concern video compression technology. The '226 patent was filed on September 27, 1989 and issued on September 18, 1990 with two named inventors, Barin G. Haskell and Atul Puri. The patent describes the encoding of successive video frames by dividing the frames into blocks. Each of the blocks is encoded based on predictions rather than coding the actual block; these predictions reduce the number of bits needed to encode the information and thus achieve the video compression. Starting with information from frame i-1 ($F_{i-1}$), the encoder constructs a prediction of frame i+1 using motion displacement vectors (mathematical predictions of where an object will be located) to estimate the motion of objects between $F_{i-1}$ and $F_{i+1}$ and a prediction error signal (generated from comparing the prediction of $F_{i+1}$ with the actual $F_{i+1}$). The intervening frame $F_i$ is constructed by interpolation using motion displacement vectors from frames $F_{i-1}$ and $F_{i+1}$ and interpolation error (generated from comparing the interpolated frame and the actual $F_i$). The decoder receives the predicted blocks and prediction errors, and the interpolated blocks and interpolation errors and then uses this information to reconstruct the succeeding and intervening frames.

The '272 patent was applied for on April 13, 1981, and issued on May 10, 1983.

---

[1] Microsoft joins these motions as to the invalidity issues; Gateway joins these motions on the issue of no infringement of the '226 and '272 patents by the Sonic Products.

[2] MPT is the current asserted owner of the '226 and '272 patents. The Court recognizes that Defendants have reserved their right to challenge this ownership and to pursue any defenses that relate to MPT in this regard; the instant motions and oppositions in no way waive those rights.

Only claim 13 is at issue here. This claim is directed to a method of estimating the intensities of picture elements (pixels) in a picture. Claim 13 was construed by the Court as follows:

> A method of **estimating** [*determining roughly the size, extent, or nature of*] the intensities of elements **(pels)** [*picture elements, also referred to as pixels*] in a **picture** [*an image that occupies a frame*] in accordance with information defining **intensities** [*values describing the different color components of a composite signal or combinations thereof*] of pels in preceding and succeeding versions of the picture including the step of
>
> **determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions**, [*determining by intensity of pels in the picture by averaging the intensities of pels in locations at which the same object is expected to be in the preceding and succeeding versions*],
>
> characterized in that said determining step includes selecting said related locations as a function of the **displacement of objects in said picture** [*the change of position of objects between said versions of the picture*].

## II.    STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

## III. ISSUES FOR SUMMARY ADJUDICATION

### A. Issues Common to the '226 and '272 Patents

#### 1. No Infringement by Sonic Products

Dell's computers include a variety of software that can be used for video decoding. Two software products, Sonic MyDVD and Sonic DVDit! ("collectively Sonic products"), are bundled into some of Dell's computers along with the other video software. During discovery, Lucent issued an interrogatory requesting Dell to list "each product made, used licensed, distributed, sold or offered for sale . . . that is capable of taking any part of coding, decoding compressing and/or decompressing" compliant with any portion of MPEG-1 and/or MPEG-2 standards and to list any portion or component of each product performing these functions. (Dec. Micallef Supp. Dell's Mot. '226 Patent Ex. Q.) In response, Dell identified the Sonic Products as among the products that "may include MPEG-1 or MPEG-2 encoding or decoding functionality," adding the caveat that Dell did not write the code for these products and so it lacked specific knowledge about the products' compliance with the standards. (Id.)

Subsequent to this discovery, Dell issued an interrogatory to Lucent/MPT to identify all bases for its claims of infringement. Although Sonic Products were not specifically listed, Lucent/MPT included the broad statements of "[e]very Dell product (or portion thereof) for decoding data representing video in accordance with International Standard ISO/IEC 11172 ("MPEG-1 video") . . .International Standard ISO/IEC 13818 ("MPEG-2 video"). (Dec. Micallef Supp. Reply Ex. B.)

Dell now moves for summary judgment of no infringement of the Sonic products, contending that Lucent has failed to identify any evidence of infringement. MPT responds that it is only accusing computers containing particular software of infringing, not software alone. It argues that Dell does not sell any computers that contain Sonic products alone and thus the Court would be giving an impermissible advisory opinion if it granted summary judgment as to no infringement of the Sonic products.

4

Exhibit 10
Page 000223

1    In light of Lucent's discovery responses which included the contention that
2 "portions" of Dell products for decoding data infringed the '226 and/or '272 patents, the
3 Court finds that this infringement contention is sufficient to encompass the Sonic products
4 separately from Dell computers containing Sonic products with or without additional
5 decoding software. Since Lucent concedes that it has not produced any evidence as to
6 infringement of the Sonic products, summary judgment of no infringement as to the Sonic
7 products is **GRANTED**.

8    **2.    Recovery of Pre-suit Damages**

9    Under 35 U.S.C. § 287(a), where a patentee produces a patented product and sues
10 another for infringement, the patentee's damages are limited to acts occurring after the
11 patentee has given the alleged infringer notice of infringement. The notice may be
12 accomplished by the patentee's marking of its products with the patent number
13 (constructive notice) or by providing the alleged infringer with actual notice. 35 U.S.C.§
14 287(a) (West 2006).

15    "[N]otice must be an affirmative act on the part of the patentee which informs the
16 defendant of his infringement," simply that a defendant knew of or should have known of a
17 patent is not enough. Amsted Industries Inc. v. Buckeye Steel Castings Co., 24 F.3d 178,
18 187 (Fed. Cir. 1994). Mere notice that the patent exists or that the patentee owns particular
19 intellectual property is not sufficient. Id. "[T]he actual notice requirement of § 287(a) is
20 satisfied when the recipient is informed of the identity of the patent and the activity that is
21 believed to be an infringement, accompanied by a proposal to abate the infringement,
22 whether by license or otherwise." SRI Intern., Inc. v. Advanced Technology Laboratories,
23 Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997).

24    The instant issue focuses on whether Lucent's pre-suit actions and communications
25 provided Dell with actual notice or whether it was not until Lucent filed its amended
26 complaint alleging infringement of the '272 and '226 patents that actual notice was
27 satisfied. According to MPT, Lucent gave notice in two meetings held between Lucent and

28

5

Exhibit 10
Page 000224

Dell representatives on October 20, 1998 and December 16, 1998. At the first meeting, according to MPT, Lucent representatives identified the patents by number and informed Dell that Dell's PCs using MPEG-1 and 2 standards infringed the patent. Similarly, according to Lucent's witness, in the December 1998 meeting Lucent again named the patents by number and also presented Dell with an analysis comparing the claims of the patents to the accused standards.[3] Following these meetings, Dell notified Microsoft and Intel by letter of the allegations of infringement and requested indemnification.

Dell argues that Lucent's notice was insufficient because no specific products were identified by Lucent, only references to computers implementing the MPEG-1 and 2 standards. This argument only raises an issue of fact to preclude Dell's motion. Naming an entire class of products may be sufficient notice where the products are identified as those of a particular company. See e.g., Novo Nordisk A/S v. Becton Dickinson and Co., 96 F. Supp. 2d 309, 320 (S.D.N.Y. 2000). (identifying Novo's insulin pens and pen-type needle in the complaint for infringement without listing actual product names was sufficient notice); Wokas v. Dresser Industries, Inc., 978 F. Supp. 839, 844 (N.D. Ind. 1997) (identifying types of products such as vapor recovery hoses, nozzle spouts, and seals without further detail found to be sufficient notice); compare Amsted, 24 F.3d at 187 and GTE Wireless v. Qualcomm, 192 F.R.D. 284, 288 (S.D. Cal. 2000) (where letters to whole industries or industry associations were found insufficient for identifying a class of products because they did not single out any company's products).

Here, the identification of Dell computers incorporating the MPEG-1 and/or -2 standards may be sufficient identification of the class of accused products. Additionally, the memorialization of Lucent's charge of infringement in Dell's letters for indemnification to Microsoft and Intel also supports this contention. While these statements come from

---

[3] Additionally, according to Lucent's witness, Dell claimed it was conforming with the standards, although the details of which standards had been implemented may not have been discussed.

6

Exhibit 10
Page 000225

Dell and are not direct statements by Lucent, they are circumstantial evidence of Lucent's notice which may corroborate the evidence pertaining to the meetings between Lucent and Dell. See Wokas, 978 F. Supp. at 846. In light of the issues of fact raised by this evidence, summary adjudication as to no pre-suit damages is **DENIED**.

### B. Issues Specifically Pertaining to the '226 Patent

#### 1. Invalidity by Anticipation

"Anticipation is a question of fact." Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). On summary judgment, the party moving for a determination of anticipation must demonstrate that each and every limitation of the claim at issue is disclosed by the anticipating reference either explicitly or inherently by clear and convincing evidence. Id.; Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." Id.

To anticipate a claim reciting a means-plus-function limitation, the anticipatory reference must disclose the function identically. Transclean Corp. v. Bridgewood Services, Inc., 290 F.3d 1364, 1372 (Fed. Cir. 2002). The anticipatory reference also must disclose structure capable of performing this function that is either the same as disclosed in the patent or an equivalent thereof. McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1361 (Fed. Cir. 2001).

Dell contends that the '226 patent is invalid because it is anticipated by U.S. Patent No. 4,849,810 ("Ericsson"). Ericsson is a patent titled "Hierarchial encoding method and apparatus for efficiently communicating image sequences." It was filed on June 2, 1987 and issued on July 18, 1989, a few months before the filing of the '226 patent.

The primary goal of Ericsson appears to be *intra*frame comparison, *i.e.* the comparison of different resolution levels of a predicted image (also referred to therein as an estimated image and/or a warped image) and the original image, for use in coding and

7

Exhibit 10
Page 000226

decoding an image. It describes "decimating" (filtering and sub-sampling) a predicted image into a pyramid data structure; doing the same for an uncoded current image and then comparing the two using a method to generate data encoding the differences. The pyramid data structure consists of sampling the image at multiple levels of resolution: 256 x 240, 128 x 120, 64 x 60, 32 x 30 and 16 x 15 picture elements (referring to horizontal x vertical picture elements).

Claim 12, the only claim at issue in the instant '226 patent, is directed to a circuit responsive to coded video signals; it consists of a preamble and two means-plus function limitations. According to Dell, Ericsson discloses each of theses elements. MPT responds by raising several issues of fact including whether particular claim terms are used synonymously by Ericsson and whether the corresponding structure and function for the means-plus-function limitations are present in Ericsson. These issues of fact, as described below, preclude summary judgment of anticipation.

### a. The Preamble

MPT first disputes that Ericsson discloses the limitations of claim 12 present in the preamble:

> A circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks, comprising:

While a preamble is not always a claim limitation, here it sets out the structure of the video coding signals to which the claim circuitry is responsive and thus, it is "necessary to give life, meaning, and vitality to the claim." See In re Cruciferous Sprout Litigation, 301 F.3d 1343, 1347 (Fed. Cir. 2002).

The disputed feature is whether Ericsson discloses the use of blocks in the coded video signal in the same manner as set forth in claim 12 which divides each of the successive frames of the video signal into blocks. Although Dell points to several references within the Ericsson specification that refer to "blocks," MPT argues that the

8

Exhibit 10
Page 000227

term is not synonymous because Ericsson's blocks are not sets of pixels that constitute a portion of a frame as construed by the Court for the '226 patent, but are instead a portion of a decimated resolution level. While it would seem that each of Ericsson's decimated levels is itself a portion of a frame (because it consists of a sampling of pixels within a frame) and thus a block within a resolution level is at least a portion of a portion of a frame, if nothing else, whether Ericsson and the '226 patent use the term synonymously as understood by a person of ordinary skill in the art is a question of fact for a jury.

### b. means for developing block approximations from said codes that describe deviations from approximated blocks

The Court construed this first means-plus-function limitation to perform the function of "developing **block approximations** [*the combinations of predicted blocks with differences between the actual blocks and the predicted blocks*] from said codes that describe deviations from approximated blocks." The function is performed by the corresponding structure "Decoder 22, $DCT^{-1}$ 24, Adder 27, and Shift Circuit 26, including all inputs and outputs of these elements related to the claimed function." The '226 patent describes these structures as corresponding to elements 41, 42, 12 and 15 of the encoder which participate in constructing a prediction of frame i+1 (starting with information from frame i-1 ($F_{i-1}$) and an estimate of the motion of objects between $F_{i-1}$ and $F_{i+1}$) and a prediction error signal (generated from comparing the prediction of $F_{i+1}$ with the actual $F_{i+1}$).

MPT contends that Ericsson does not disclose any means for performing block-based motion compensation as required by this claim limitation. Although Dell first argues that block-based motion compensation is not part of the claim, the Court's construction indicates otherwise. The corresponding structure includes the sections of the specification that describe the decoder structures in relation to the encoder structures and which identify such structures as participating in the motion compensation coding. Dell's second argument, that even if motion compensation structures are required, they are disclosed in

9

Exhibit 10
Page 000228

Ericsson, is unconvincing. The structures identified by Dell's expert speak to predictions and error but they are not clearly referred to by Ericsson in the context of motion compensation. Additionally, it is unexplained how the section of Ericsson identified as addressing motion compensation relates to a means for developing block approximations as set forth in the '226 patent. Thus, there is at least a question of fact as to whether this limitation is met.

MPT also contends that Ericsson fails to disclose inverse transforming prediction. While MPT argues that Ericsson's preferred embodiment does not use a lossy compressor employing the discrete cosine transform but instead uses a hierarchical vector quantization, this does not negate the fact that Ericsson does disclose this feature of claim 12. As Dell points out, Ericsson contemplates the use of a "lossy compressor" to reduce the amount of data and bandwidth to represent the motion vector field. One embodiment of lossy compression in Ericsson employs a discrete cosine transform. Ericsson further discloses that this lossy compressor can be employed to code the difference between the original and estimated receiver image (the error) and reduce its bandwidth.

### c. means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks

The Court construed this second means-plus function limitation to perform the function "to develop said interpolated blocks responsive to said **block approximations** [*the combinations of predicted blocks with differences between the actual blocks and the predicted blocks*] and to said codes that describe deviations from interpolated blocks." The limitation includes the following corresponding structure: "Decoder 25, $DCT^{-1}$ 34, Adder 35, and Shift Circuits 31 and 39, and Averager 32, including all inputs and outputs of these elements related to the claimed function." As described in the '226 patent, structures 31, 32, 39 and 35 of the decoder correspond to elements 13, 14, 17 and 43 of the encoder, respectively. These structures create frame $F_i$ from frames $F_{i-1}$ and $F_{i+1}$ through

1 interpolation using an averaging of the motion vectors from $F_{i-1}$ and $F_{i+1}$. These structures
2 also use an error signal that corresponds to the difference between the predicted $F_i$ and the
3 actual $F_i$.

4 MPT disputes that disclosure of *intra*frame interpolation as described in Ericsson
5 anticipates the claim limitation of the '226 patent. MPT argues that the term "interpolated
6 blocks" should be interpreted in light of the '226 patent specification which uses the term
7 only in relation to *inter*frame interpolation. In response, Dell argues, that the term means
8 nothing more than "averaging," and that the '226 patent claims therefore encompass
9 intraframe interpolation as well.

10 A claim term such as "interpolated blocks" is interpreted through the eyes of the
11 person of ordinary skill in the art in light of its use in the entire specification. Phillips v.
12 AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). The '226 patent is focused on
13 *inter*frame interpolation and does not mention *intra*frame interpolation. All of the
14 description and figures of the '226 patent refer to interpolation between successive frames
15 (*e.g.*, $F_{i-1}$ and $F_{i+1}$). Moreover, the preamble of claim 12 itself sets an interframe
16 interpolation context by stating that "the video signals comprise successive frames." Dell
17 has pointed to nothing in the specification of the '226 patent that would suggest
18 interpolated blocks as set forth in claim 12 refers to anything other than *inter*frame
19 interpolation.

20 Dell then argues that even if the term is limited to *inter*fame interpolation, it is still
21 disclosed by Ericsson. First, Dell argues that Ericsson mentions a frame interpolator which
22 predicts "what the image would have been at any selected time between received frames."
23 (Ericsson col. 8:26-31.) This assertion, however, is insufficient to meet the full scope of
24 the means-plus-function limitation which also includes a "means responsive to . . . codes
25 that describe *deviations* from interpolated blocks." Dell has not pointed to anything in
26 Ericsson that would describe deviations from interpolation blocks with reference to
27 interframe interpolation or a means responsive thereto.

28

11

Exhibit 10
Page 000230

1  Dell next contends that Ericsson's incorporation by reference of U.S. Patent
2  Application Serial No. 740,898 (issued as U.S. Patent No. 4,703,350; hereinafter
3  "Hinman") in reference to the transmitter and receiver circuitries shown in Figures 2 and 3
4  of Ericsson satisfies the disclosure of interframe interpolation. There is some debate
5  between the parties as to whether the reference to Hinman is specific enough to incorporate
6  by reference interframe interpolation blocks.[4] Regardless, even if *arguendo* the
7  incorporation is sufficient (and the Court makes no such determination here), Dell has not
8  convincingly demonstrated this incorporation meets the full scope of the limitation at issue.
9  Although Dell asserts that Hinman discloses interframe interpolation, Dell fails to explain
10 how the incorporation of Hinman would disclose a means responsive to the deviations from
11 interframe interpolated blocks that are also part of the means-plus-function limitation of
12 claim 12. Thus, in light of this failure, as well as the questions of fact raised with regard to
13 the first means-plus-function limitation and the preamble of the claim, Dell's motion for
14 summary judgment of invalidity of the '226 patent as anticipated by Ericsson is **DENIED**.

### 2. **Invalidity by Obviousness**

16 Dell moves for summary judgment that the '226 patent is invalid because the
17 combination of Ericsson with Hinman renders claim 12 obvious. In light of the Supreme
18 Court's recent decision in KSR Intern. Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007),
19 the Court has reopened discovery on obviousness and deferred all motions thereon.
20 Accordingly, this issue is **DEFERRED** and this motion is reset for January 7, 2008 in
21 accordance with the Scheduling Order [Docket No. 1876].

### C. **Issues Specifically Pertaining to the '272 Patent**

23 Dell moves for summary judgment of invalidity of the '272 patent on the grounds of

---

[4] "Whether and to what extent material has been incorporated by reference into a host document is a question of law." Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272, 1283 (Fed. Cir. 2000). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." Id. at 1282.

12

Exhibit 10
Page 000231

anticipation and lack of written description.  These issues were fully briefed by the parties but the Court did not hear oral argument on these motions in the hearings that took place on June 19-20, 2007.  In agreement with the parties, the Court **DEFERS** ruling on these motions until after the oral argument currently scheduled for July 24, 2007.

### IV.    CONCLUSION

For the reasons herein, Dell's motion as to no infringement of the '226 and '272 patents by Sonic products is **GRANTED**.  Dell's motion as to no recovery of pre-suit damages is **DENIED**.  Dell's motion as to anticipation of the '226 patent is **DENIED**.  The remaining motions on obviousness as to the '226 patent and invalidity of the '272 patent based on anticipation and lack of written description are **DEFERRED**.

**IT IS SO ORDERED.**

DATED: July 5, 2007

*/s/ Rudi M. Brewster*

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
United States Magistrate Judge

All Counsel of Record

13

Exhibit 10
Page 000232