

1 David A. Hahn, (SBN 125784)
HAHN & ADEMA
2 501 West Broadway, Suite 1600
San Diego, California 92101-3595
3 Telephone: (619) 235-2100
Facsimile: (619) 235-2101

4

5 Attorney for *Lucent Technologies Inc.*
and *Multimedia Patent Trust*
6 *(Additional counsel listed on the last page)*

7
## UNITED STATES DISTRICT COURT
8 ## SOUTHERN DISTRICT OF CALIFORNIA

9
10 LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,

11                    Plaintiffs,
                v.
12

13 GATEWAY, INC., GATEWAY COUNTRY
STORES LLC, GATEWAY COMPANIES,
INC., GATEWAY MANUFACTURING LLC
14 and COWABUNGA ENTERPRISES, INC.,

15                    Defendants,
                and
16
MICROSOFT CORPORATION,
17
18                    Intervener.

19 MICROSOFT CORPORATION,

20                    Plaintiff,
                v.
21
LUCENT TECHNOLOGIES INC.,
22
                    Defendant.
23 LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,
24
                    Plaintiffs,
25                v.

26 DELL INC.,

27                    Defendant.

28

Case No. 07-CV-2000-H (CAB)

consisting of matters severed from
consolidated cases:

Case No. 02-CV-2060-B (CAB)
Case No. 03-CV-0699-B (CAB)
Case No. 03-CV-1108-B (CAB)

**LUCENT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY
JUDGMENT OF OBVIOUSNESS OF
U.S. PATENT NO. 5,347,295**

Date:         January 7, 2008
Time:         10:30 A.M.
Courtroom:    13
Judge:        Hon. Marilyn L. Huff

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   COUNTER-STATEMENT OF FACTS ............................................................2

    A.    The Invention of the '295 Patent .............................................................2

    B.    The Asserted Claims Cover Several Different Aspects of the Pen Computer System..................................................................................................4

III.  LEGAL STANDARD........................................................................................5

    A.    Summary Judgment .................................................................................5

    B.    Obviousness .............................................................................................5

IV.   ARGUMENT ....................................................................................................7

    A.    The Prior Art Does Not Render Obvious any Claim of the '295 Patent .................7

        1.    The Prior Art Does Not Disclose a Single Set of Recognized Gestures for Identical Executable Commands at Both the Operating System Level and the Application Level, as Required by the Court's Construction of Claims 1, 3, 4, 6, and 12 ....................................8

        2.    Adding Proximity Sensing to the FIDS System, as Required by Claims 3 and 12, Would Detract from Its Overall Performance and Therefore Would Not Have Been Obvious .........................................9

        3.    Adding Compound Gestures to FIDS Cuts Against the Touted Simplicity and Familiarity of the FIDS System's In-Place Gesture Set.....11

        4.    The FIDS System's Simple and Familiar Gestures Would Not Require—and the Paper Teaches Away from—Displaying a Shape Representing the Actual Gesture ...........................................12

        5.    The FIDS Paper Considered but Rejected the Coleman Paper..................13

        6.    This Court's Previous Order and Defendants' Previous Statements Preclude Finding that It Would Have Been Obvious to Add a Rear-Mounted Digitizer to the FIDS System, as Required by the Court's Claim Construction for each of the Asserted Claims................................14

        7.    Defendants Fail to Identify any Prior Art Having a Pen-Position Digitizer Co-Processor, as Required by the Court's Construction for each of the Asserted Claims.......................................................16

V.    CONCLUSION................................................................................................17

1

## TABLE OF AUTHORITIES

2

*Cases*

3

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
4
   239 F.3d 1343 (Fed. Cir. 2001) ................................................................. 15

5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 4, 5
6

7

*Beckson Marine, Inc. v. NFM, Inc.*,
   292 F.3d 718 (Fed. Cir. 2002) ................................................................... 6

8

*Caterpillar Inc. v. Sturman Indus., Inc.*,
   387 F.3d 1358 (Fed. Cir. 2004) ................................................................. 4
9

10

*Eli Lilly and Co. v. Barr Labs., Inc.*,
   251 F.3d 955 (Fed. Cir. 2001) ................................................................... 5

11

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
12
   501 F.3d 1263 (Fed. Cir. 2007) .............................................................. 5, 6

13

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ............................................................................. 5, 6
14

15

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ................................................................. 15

16

*In re Kahn*,
17
   441 F.3d 977 (Fed. Cir. 2006) ................................................................... 6

18

*KSR Int'l. Co. v. Teleflex Inc.*,
   127 S. Ct. 1727 (2007) ........................................................................ 6, 7
19

20

*Lucent Techs. Inc. v. Gateway, Inc.*,
   509 F. Supp. 2d 912 (S.D. Cal. 2007) ......................................................... 6

21

*Mercedes-Benz of N. Am., Inc. v. Hartford Acc. & Indem. Co.*,
22
   974 F.2d 1342 (9th Cir. 1992) ................................................................... 5

23

*Pfizer, Inc. v. Apotex, Inc.*,
   480 F.3d 1348 (Fed. Cir.),
24
   *cert. denied*, 128 S. Ct. 110 (2007) ........................................................... 5

25

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) .............................................................. 6, 7
26

27

*Schumer v. Laboratory Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002) ................................................................. 5

28

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
  492 F.3d 1350 (Fed. Cir. 2007) ........................................................................... 6, 7

*United States v. Boyce*,
  148 F. Supp. 2d 1069 (S.D. Cal. 2001),
  *aff'd*, 36 Fed. Appx. 612 (9th Cir. 2002) ............................................................ 4

***Statutes***

35 U.S.C. § 103(a) ........................................................................................................ 5

***Rules***

Fed. R. Civ. P. 56 (c) .................................................................................................. 4

## I.    INTRODUCTION

This Court should deny defendants' summary judgment motion that the asserted claims of U.S. Patent No. 5,347,295 ("the '295 patent") are invalid for obviousness.  To be entitled to summary judgment, defendants must show there is no genuine issue of material fact as to the obviousness of the asserted claims.   Here, there are numerous disputed factual issues that go to the heart of defendants' obviousness contentions for each of the ten different asserted claims.    Indeed, defendants' own expert acknowledges that his opinions on obviousness are "in many instances, factually challenged by Lucent and its expert, Mr. Ward." (Ex. 1, 11/9/07 Kelly Dep. at 58).  Simply put, defendants' obviousness contentions boil down to a classic factual dispute regarding the factual inquiries that underlie the obviousness inquiry.

It bears emphasis that defendants acknowledge that no prior art reference discloses all the limitations in *any* of the asserted claims—each of which cover different aspects of the innovative '295 patent pen computing system.  Instead, defendants hope to fill the holes in their invalidity analysis with a patchwork of different prior art references and conclusory references to the obviousness of the differences.  But the evidence does not support defendants' position—let alone demonstrate invalidity by clear and convincing evidence.  For example:

1.    The prior art does not disclose a single set of gestures for identical executable commands at both the operating system level and the application level as required by the Court's constructions for claims 1, 3, 4, 6, and 12 of the '295 patent;

2.    Adding proximity sensing to the FIDS system, as required by claims 3 and 12 of the '295 patent, would have been expected to reduce that system's overall performance and therefore would not have been obvious;

3.    Adding compound gestures to the FIDS system, as required by claims 39 and 40 of the '295 patent, would have moved away from the touted simplicity and familiarity of the FIDS system's in-place gesture set and therefore would not have been obvious;

4.    The FIDS system's simple and familiar gesture set would not require, nor does the paper even suggest, displaying on the FIDS screen a shape representing the actual gesture made by a user of the computer as required by claims 6 and 43 of the '295 patent; and

5.    The FIDS Paper considered, but rejected, the teachings of the Coleman paper including the teaching that the direction of motion of said gesture is associated with the predetermined action as required by claim 46 of the '295 patent.

For at least these reasons, defendants' motion for summary judgment should be denied.

## II.    COUNTER-STATEMENT OF FACTS

### A.    The Invention of the '295 Patent

At the time of the '295 patent invention, most computers were operated, with rare exception, by a keyboard and a mouse.  (Ex. 2, 3/31/06 Ward Expert Report ¶ 25).  Pen-based computers, where the user inputs information by marking on the screen with a stylus, had been introduced, but the technology was unrefined and the operation and design presented many challenges.  People in the industry were addressing the problem of handwriting to replace the keyboard for text input inside specific applications, but no one had considered controlling the computer overall with a stylus and gestures, let alone the many problems presented by such a concept.  (*Id.*)

Hence, the '295 patent disclosed a new class of computer that is controlled by a stylus executing gestures on the computer screen.  (Ex. 3, '295 Patent Abstract; col. 1:6-9; FIG. 1).  For example, the computer is controllable both inside applications and at the operating system level through gestures and printed characters drawn on the display screen using the electronic stylus.  (*Id.* at col. 7:4-6).  This new type of computer used an electronically sensed pen or stylus and digitizer to track the location of the pen or stylus as the primary input device.  (*Id.*)  The primary means of controlling the computer: a set of numerous gestures drawn with the stylus over almost any object visible on the display and recognized by a handwriting recognition algorithm.  (*Id.* at col. 3:22-24).

1
2
3
4
5
6
7
8
9



Fig. 1

10   The hardware for the pen-computer described in the '295 patent includes a stylus **4** with a tip

11   **6** which is utilized with the computer **2**. (Ex. 3, '295 Patent at col. 6:16-18). Liquid crystal display

12   **10** is mounted as the front surface of the unit. (*Id*. at col. 6:20-21). Mounted behind the display is

13   the pen position digitizer **20**. (*Id*. at col. 6:21-22). The digitizer **20** tracks the x and y coordinates of

14   the electronic ink which is then analyzed by a handwriting recognition algorithm. (*Id*.) Also

15   included is a pen-position digitizer co-processor **90** (not shown) programmed with the handwriting

16   recognition algorithm. (*Id*. at 6:36-37). The stylus **4** contains a radio frequency inductor/capacitor

17   circuit and the present invention senses when the stylus is in proximity to or in contact with the front

18   surface of the computer. (*Id*. at col. 6:26-27 and col. 6:61-63).

19
20
21
22
23
24
25



Fig. 2

26
27
28

### B.    The Asserted Claims Cover Several Different Aspects of the Pen Computer System

The claims of the '295 patent cover many different aspects and features of a pen computer system. Each asserted independent claim of the '295 patent includes a means-plus-function claim element that—per the Court's claim construction—requires circuitry for performing the function of "detecting a stroke of the stylus tip in contact with the screen." (Ex. 3, '295 Patent at col. 18:5-7, 20:28-30, 20:52-54). The Court identified the corresponding structure as "[p]en position digitizer 20, as shown in figs. 2 and 3 and described in the specification at col. 6:21-22; and col. 6:53-68." (Ex. 4, Order Construing Claims for United States Patent No. 5,347,295 at 3, 7, and 9; Ex. 3, '295 Patent). Each of these claims go on, however, to claim different features and characteristics of the system. For instance, one of the elements of claim 39 requires "recognizing at least a first gesture, a second gesture, and a third gesture comprising said first and second gestures," which, generally speaking, relates to a type of compound gesture recognition. Claim 41 requires a "detecting means for detecting a direction of motion of the creation of said gesture," which, again generally speaking, relates to a type of directional gesture recognition. The dependent claims similarly claim various aspects of a pen computer system, including, by way of example, a "means for detecting proximity of the stylus tip to the screen" (claim 3) and a "means . . . for displaying on said screen a shape representing the actual gesture made by a user" (claim 6).

In their attempt to show that the claims of the '295 patent were merely obvious combinations of prior art, defendants obscure many of these claim elements and cobble together snippets from prior art without any explanation for how the resulting combinations would have been obvious to a person of ordinary skill in the art at the time of the invention. As this Court's claim construction makes clear, the '295 patent does not claim pen computer systems or gesture recognition generally. Rather, each asserted claim is directed to specific, novel, and non-obvious features that can be incorporated in a pen computer system. Several of these elements are completely absent from defendants' prior art, and others are present only in ways that would not have been obvious to combine.

## III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1373 (Fed. Cir. 2004) (quoting Fed. R. Civ. P. 56 (c)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where, as here, "the moving party bears the burden of proof at trial, it cannot obtain summary judgment unless it presents evidence so compelling that no rational jury would fail to award judgment for the moving party." *United States v. Boyce*, 148 F. Supp. 2d 1069, 1080 (S.D. Cal. 2001), *aff'd*, 36 Fed. Appx. 612 (9th Cir. 2002). Where the evidence presents a close question that could be resolved either way by a jury, summary judgment should be denied. *See Mercedes-Benz of N. Am., Inc. v. Hartford Acc. & Indem. Co.*, 974 F.2d 1342 (9th Cir. 1992).

A summary judgment determination must also be guided by the appropriate burden of proof. If the Court determines that a reasonable jury applying the proper burden of proof—in this case clear-and-convincing evidence—could find for the non-movant, then there exists a genuine issue of material fact that precludes granting of summary judgment. *See Anderson*, 475 U.S. at 255.

### B.    Obviousness

Because every patent is presumed valid, accused infringers face a "high burden of showing invalidity on summary judgment." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). "[A] moving party seeking to invalidate a patent at summary judgment must submit **clear and convincing evidence** of invalidity so that no reasonable jury could find otherwise." *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (emphasis added). If evidence is presented establishing a *prima facie* case of invalidity, the non-movant must come forward with evidence to support a finding of validity, but "the ultimate burden of proving invalidity remains with the challenger throughout the litigation." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir.), *cert. denied*, 128 S. Ct. 110 (2007). A claimed invention can be found obvious only "if the differences between the subject matter sought to be patented and the prior art are such that the

subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is ultimately a question of law based on underlying determinations of fact. *Forest Labs., Inc. v. Ivax Pharms., Inc*., 501 F.3d 1263, 1269 (Fed. Cir. 2007).

Courts have long recognized the need to "guard against slipping into use of hindsight" when considering whether an invention would have been obvious at the time of the invention. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966) (internal quotations omitted). To combat the tendency toward hindsight, *Graham* requires courts to focus on several underlying factual inquiries, including "four general types, all of which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness." *Id.* Earlier this year, the United States Supreme Court reaffirmed the primacy of those factors in determining whether a patent is invalid for obviousness. *See KSR Int'l. Co. v. Teleflex Inc*., 127 S. Ct. 1727, 1734 (2007) (citing *Graham*, 383 U.S. at 17-18). Indeed, the trier of fact must consider all four of the *Graham* factors when assessing obviousness, *Forest Labs.*, 501 F.3d at 1269. Under *Graham*'s fourth factor, courts are to "look at any secondary considerations that would prove instructive," including "identify[ing] a reason that would have prompted a person of ordinary skill in the relevant field to combine elements in the way the claimed new invention does." *KSR*, 127 S. Ct. at 1739, 1741.[1]

---

[1] Defendants misstate the proper legal standard for obviousness, mischaracterize the impact of the Supreme Court's *KSR* decision, and gloss over the heavy burden of proof they face on summary judgment. *KSR* did ***not*** render a sweeping change in the law of obviousness. Rather, *KSR* reaffirmed the *Graham* framework as the touchstone for an obviousness analysis. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007) (noting that *KSR* held that the *Graham* factors "still control an obviousness inquiry"); *Lucent Techs. Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 934 (S.D. Cal. 2007) ("*KSR* also reaffirmed familiar principles set out in *Graham*."). Also contrary to defendants' view, the Supreme Court acknowledged the continued relevance of the teaching, suggestion, motivation ("TSM") principle. *KSR*, 127 S. Ct. at 1741.

"[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR*, 127 S. Ct. at 1741 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).  Thus, "the burden falls on the patent challenger to show by clear and convincing evidence that a person of ordinary skill in the art would have had reason to attempt to make the composition or device, or carry out the claimed process, and would have had a reasonable expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007) (citing *KSR*, 127 S. Ct. at 1740).  In light of these mandated factual inquiries, "a district court properly may grant summary judgment on obviousness . . . only when the[se] underlying factual inquiries present no lingering genuine issues." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 723 (Fed. Cir. 2002).

In that regard, the Supreme Court has "acknowledged the importance of identifying 'a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does' in an obviousness determination." *Takeda*, 492 F.3d at 1356-57 (quoting *KSR*, 127 S. Ct. at 1731).  Accordingly, "a patent composed of several elements is not proved obvious merely by demonstrating that element was, independently, known in the prior art." *KSR*, 127 S. Ct. at 1731.  For example, "combining elements that work together 'in an unexpected and fruitful manner' would not have been obvious." *PharmaStem*, 491 F.3d at 1360 (quoting *KSR*, 127 S. Ct. at 1740).  Moreover, "when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *KSR*, 127 S. Ct at 1740.

## IV.    ARGUMENT

### A.    The Prior Art Does Not Render Obvious any Claim of the '295 Patent

Defendants' invalidity analysis completely ignores critical claim elements that are missing from the prior art and defendants fail to address the fact that the prior art teaches away from their cobbled-together combinations.  Accordingly, the prior art cannot render obvious the '295 patent.

1.    **The Prior Art Does Not Disclose a Single Set of Recognized Gestures for Identical Executable Commands at Both the Operating System Level and the Application Level, as Required by the Court's Construction of Claims 1, 3, 4, 6, and 12**

Asserted claim 1, and dependent claims 3, 4, 6, and 12 include the limitation:

> means coupled to said computer for implementing each said recognized gesture, said implementing means including means for performing a predetermined action associated with each said predefined shape, said predetermined action being determined by the context in which said gesture was used, including a first context in which said action is executed upon an operating system level object and a second context in which said action is executed upon an application level object.

(Ex. 3, '295 patent, col. 18:19-28).   The Court's claim construction Order states "[t]his paragraph specifically claims the system's design allowing use of a single set of gestures for identical executable commands at both the operating system level and the application level."  (Ex. 4, Order Construing Claims For U.S. Pat. 5,347,295 at 5).   Significantly, the gestures in this limitation are "said recognized gesture[s]," as set forth in the previous claim limitation:

> means coupled to said computer for recognizing a plurality of said gestures, said recognizing means including means for comparing each said gesture to at least one predefined shape.

(*Id.* at col. 18:15-18).  Accordingly, to qualify as a "recognized gesture" within the meaning of this claim, the gesture must be recognized by "comparing each said gesture to at least one predefined shape."  (*Id.*; Ex. 4, Order Construing Claims For U.S. Pat. No. 5,347,295 at 4 citing handwriting recognition algorithms that utilize shape recognition of, for example, symbols or marks).

The Levine Patent describes a computer system with a graphical user interface that allows use of a stylus and digitizing tablet, including a "touch-and-lift" operation, but the reference lacks many of the elements of the asserted claims.  Contrary to defendants' view, the Levine Patent fails to disclose recognized gestures within the meaning of the claims.  (Ex. 3, '295 patent, col. 18:15-18; Ex. 4, Order Construing Claims For U.S. Pat. No. 5,347,295 at 4; Ex. 5, Levine Patent at 10:20-44; Ex. 6, 10/12/07 Ward Expert Report ¶¶ 43-46).  Defendants mistakenly refer to the Levine Patent's touch-and-lift operation as a "gesture" within the meaning of the claims.  That operation is not a recognized gesture within the meaning of the claims because in the touch-and-lift operation there is

no recognition of shapes, as required by the claim.  (Ex. 5, Levine Patent at 10:20-44).   In the

context of the touch-and-lift operation, the Levine Patent states:

> A "touch and lift" operation is used for selecting an item exhibited on
> display unit **18**.  Preferably, once the writing tip end **30** or the erasure
> end **28** makes contact with the tablet surface, the "touch" part of the
> operation is defined, but the user must lift the stylus end **28, 30** from
> the tablet surface within the succeeding second or so to define the
> "lift" portion of the operation.  If the user delays lifting stylus end **28,
> 30**, then the "touch and lift" operation is not invoked, and no effect
> results.

(*Id.* at col. 10:26-35).  The touch and lift operation is defined by the stylus tip's contact and departure

from the screen, and time.  (*Id.*)  There is ***no recognition of shapes involved*** in defining the Levine

Patent's touch and lift operation.  (*Id.*)  Hence, the touch and lift operation is not a "recognized

gesture."  (*Id.*; Ex. 6, 10/12/07 Ward Expert Report ¶¶ 43-46).

Thus, even if it were obvious to combine the Levine Patent with FIDS, which it is not, doing

so would not lead to the claimed invention.  Claims 1, 3, 4, 6, and 12 are not rendered obvious by the

combination of the FIDS Paper and the Levine Patent.  Accordingly, defendants are not entitled to

summary judgment of obviousness as to these claims.

### 2.    Adding Proximity Sensing to the FIDS System, as Required by Claims 3 and 12, Would Detract from Its Overall Performance and Therefore Would Not Have Been Obvious

Asserted claim 3 includes the limitation:

> said second detecting means includes means for detecting proximity of
> the stylus tip to the screen; and said apparatus further includes means
> coupled to said computer for displaying on said display an indicator of
> the proximity of the stylus tip to the screen.

(Ex. 3, '295 Patent at col. 18:32-36).  The FIDS Paper describes a prototype tablet (flat panel display

with front-mounted digitizer) and a prototype text editing application.  The Taguchi Patent describes

a rear-mounted proximity sensing digitizer.  Neither the FIDS Paper nor the Taguchi Patent disclose

all of the elements of the '295 claims.  Nevertheless, defendants argue that it would have been

obvious to combine the proximity-sensing-digitizer disclosed by Taguchi with the system disclosed

by the FIDS Paper.  (Microsoft Br. at 7).

1    In that regard, defendants argue that "[t]he FIDS Paper discusses the problems of parallax,

2    [Ex. B at 74]; rear-mounted proximity sensing digitizers—like that in the Taguchi Patent—

3    indisputably reduce parallax problems, [Ex. L at 90:2-91:2-4]."  (*Id.*)  However, defendants' ***only***

4    support for that proposition is a conclusory statement by their own expert.  (Microsoft Br. at 7 (citing

5    Ex. 1, 11/9/07 Kelly Dep. at 90:2-91:4)).  The proposition is simply incorrect.

6    In fact, proximity sensing digitizers potentially ***increase*** the problem of parallax.  The FIDS

7    Paper states that "parallax problems are caused by the distance between the sensing mechanism and

8    the underlying image."  (Ex. 7, FIDS Paper at 74).  Dr. Kelly, defendants' own expert, states that "if

9    you are touching something that is above what you're trying to identify, there is a potential

10   misconvergence, and that's referred to as 'parallax.'"  (Ex. 1, 11/9/07 Kelly Dep. at 90:21-24).  When

11   using a proximity sensing rear-mounted digitizer, the digitizer recognizes or senses the stylus tip

12   before it contacts the screen, resulting in a potential greater distance between the stylus tip and the

13   underlying image.  In fact, with proximity sensing, the user may attempt to identify an image on the

14   screen with the tip of the stylus suspended in air above the display screen.  Such a situation "might

15   make parallax errors more apparent, as the tracking cursor would be visibly offset from the actual

16   position of the stylus tip," potentially making it even more difficult for the user to align the stylus

17   tip, the tracking cursor, and the underlying image.  (Ex. 8, 5/12/06 Ward Expert Report ¶ 87).

18   Accordingly, it would not have been obvious to add means for detecting proximity of the

19   stylus tip to the screen.  The combination of the FIDS Paper and Taguchi Patent do not, therefore,

20   render obvious claim 3 or 12.  Further, as it would not have been obvious to add proximity sensing

21   to the FIDS system, it likewise would not have been obvious to include means coupled to said

22   computer for displaying an indicator of the proximity of the stylus tip to the screen.[2]  Accordingly,

23   defendants are not entitled to summary judgment of obviousness of claim 3 or 12.

24

25

_____

26   [2] Dependent claim 12 calls for "means for terminating display of said indicator when the stylus tip departs from proximity to the screen."  It likewise would not have been obvious to include this

27   feature for the same reasons discussed above.

28

### 3. Adding Compound Gestures to FIDS Cuts Against the Touted Simplicity and Familiarity of the FIDS System's In-Place Gesture Set

Asserted claim 39 and its dependent claim 40 include the limitation:

> means for . . . recognizing at least a first gesture, a second gesture, and a third gesture comprising said first and second gestures

(Ex. 3, '295 patent at col. 20:31-38). Defendants admit that the FIDS reference does not disclose this limitation. (Microsoft Br. at 9). Defendants argue, based on their expert's analysis, that this limitation would have been obvious in light of the FIDS Paper and the Buxton Paper. (Microsoft Br. at 9 citing Kelly Expert Report (Ex. D) at 176-77, 33-39, and 84-94). The Buxton Paper provides a general description of a system with a digitizing tablet for musical notation, but the reference lacks many elements of the claims.

Defendants argue that because the FIDS Paper is "suitable . . . for exotic and special application" it would have been obvious to add additional gestures to the system and to combine the FIDS Paper and the Buxton Paper. (Ex. 7, FIDS Paper at 75-76). That proposition reads far too much into what is no more than a vague rumination in the FIDS Paper. (*Id.*) What the FIDS Paper actually discloses is that "many existing applications could be ported to the FIDS system" and "benefit from the new style of interaction" (*Id.* at 75)—and thereby use the FIDS system's in-place gesture set.

Defendants ignore that the FIDS Paper emphasizes the importance of simplicity and familiarity in its already-existing gesture set. (*Id.* at 81). Specifically, the FIDS Paper states "similarity with existing techniques is important in a new computer tool. As proof correction marks—already familiar to many—are used for basic editing tasks, the learning time for this system should be less than for the usual text-editor." (*Id.*) Also, "recall of the methods and the commands should be easier." (*Id.*) Additionally, "[t]he naturalness of the marks, we believe, prevents some errors due to faulty recall." (*Id.*)

Indeed, FIDS does not contemplate—in fact it discourages—adding a different, more complicated, and less familiar set of gestures such as the musical notations disclosed in Buxton, to the already-existing text editing and proof reading gesture set of FIDS. (Ex. 6, 10/12/07 Ward

Expert Report ¶ 128).  These facts teach against combining the Buxton Paper with the FIDS Paper and raise genuine issues of material fact as to the obviousness of these claims.

In light of these facts, it would not have been obvious to one of ordinary skill in the art to add the musical notation gestures of Buxton to the simple and familiar text editing gesture set disclosed in the FIDS Paper.  Accordingly, defendants are not entitled to summary judgment of obviousness of claim 39 or 40.

> **4.      The FIDS System's Simple and Familiar Gestures Would Not Require—and the Paper Teaches Away from—Displaying a Shape Representing the Actual Gesture**

Asserted dependent claims 6 and 43 include the limitation:

> means coupled to said computer for displaying on said screen a shape representing the actual gesture made by a user of the computer

(Ex. 3, '295 Patent at col. 18:43-46 and col. 21:10-12).  Defendants state that it would have been obvious to combine this feature from Taguchi with the FIDS system because FIDS "discusses sketching figures and patterns on the screen, [Ex. B at 78], which would necessarily require displaying on the screen the actual marks drawn."  (Microsoft Br. at 8 (citing Ex. 7, FIDS Paper at 78)).  Defendants' conclusion that a discussion of sketching figures and patterns on the screen would "necessarily require" displaying the actual shape drawn relies on an unsupported leap of reasoning.

First, the FIDS Paper in no way suggests "displaying on [the FIDS] screen a shape representing the actual gesture made by a user," as specifically required by claims 6 and 43.  (Ex. 7, FIDS Paper at 78; *see also* Ex. 3, '295 Patent at col. 18:43-46 and col. 21:10-12).  Second, even if the discussion of sketching figures and patterns on the screen could somehow be interpreted to necessarily require displaying the shape, which it does not, the FIDS Paper itself teaches away from such a technique.  (Ex. 7, FIDS Paper at 78).  The authors explain that "[t]he patterns drawn would be interpreted by software using pattern recognition methods and converted to the primitives intended.  However, as a pattern recognition problem ***this is quite complicated***."  (*Id.*) (emphasis added).  Third, the FIDS Paper discloses a limited set of proof correction marks "already familiar to many" and states that "recall of the methods and commands should be eas[y]."  (Ex. 7, FIDS Paper at

81).  A simple gesture set "already familiar to many" and easily recalled by the users simply would not require displaying on the screen the shape representing the actual gesture.  (Ex. 6, 10/12/07 Ward Expert Report ¶ 120).

These facts ground defendants before they can make their leap as to the obviousness of these claims.  Indeed, these facts teach away from the claimed limitation and at a minimum raise genuine issues of material fact as to the obviousness of these claims.  Therefore it would not have been obvious to combine the FIDS Paper and Taguchi Patent, and defendants are not entitled to summary judgment of obviousness of claims 6 and 43.

**5.     The FIDS Paper Considered but Rejected the Coleman Paper**

Asserted dependent claim 46 includes the limitation:

> wherein [the] direction of motion of [the] gesture is associated with [the] predetermined action.

(Ex. 3, '295 Patent at col. 22:9-11).  Defendants argue it would have been obvious to combine the teachings of the Coleman Paper with the FIDS Paper and that the resulting combination renders claim 46 obvious.  (Microsoft Br. at 11).  The Coleman Paper describes a system for text editing using a stylus to draw proofreader's symbols.  Defendants are wrong that the proffered combination would have been obvious.

First, replacing a "simpl[e]" algorithm that "work[ed] quite well" with a more complicated algorithm that included detecting direction of motion and association of the direction with a predetermined action simply defies common sense.  The FIDS Paper discloses that "[f]or recognition of the editing marks drawn on the display, methods used in character recognition were adapted.  A *simple algorithm* differentiates between the marks."  (Ex. 7, FIDS Paper at 77) ( emphasis added).  This simple algorithm used filtering and extraction of character features including "starting point and ending point of each stroke, minimum and maximum x and y values, and direction angles at the beginning of a stroke.  Finally, a decision tree is applied to classify the marks.  *Id.*)  "Simplicity is the main advantage of the algorithm.  It works quite well."  (*Id.*)

1    Second, the authors of the FIDS Paper considered different algorithms, identified the most

2    promising alternative, and disclosed that the chosen alternative did not involve direction of motion.

3    (Ex. 7, FIDS Paper at 77).  Indeed, the authors of the FIDS Paper considered more advanced

4    algorithms to make recognition more reliable.  But the authors concluded that "[o]ur research

5    suggests that most promising of the applicable algorithms are methods using the direction angles of

6    the point sequences forming the strokes." (*Id.*  at 77-78).

7    Third, and significantly, the authors of the FIDS Paper rejected the teachings of the Coleman

8    Paper.  (*Id.* at 77).  The authors stated that "[s]omewhat similar ideas have also been considered by

9    other researchers." (*Id.* at 77 (citing the Coleman Paper); *see also id.* at Reference 26 on p. 82).  But

10   the authors concluded that these other researchers' "***approaches have been more limited and without***

11   ***possibilities offered by the FIDS hardware***." (*Id.* at 77) (emphasis added).

12   Striving for simplicity, which the authors of the FIDS Paper had with their current design,

13   having considered more complicated algorithms and found most promising one that did not include

14   direction of motion recognition, and having considered but rejected the Coleman Paper's ideas, the

15   FIDS Paper simply did not lend itself to any combination—let alone an obvious combination—with

16   the Coleman Paper.  Accordingly, defendants are not entitled to summary judgment of obviousness

17   of claim 46.

18           **6.    This Court's Previous Order and Defendants' Previous
                      Statements Preclude Finding that It Would Have Been Obvious
19                    to Add a Rear-Mounted Digitizer to the FIDS System, as
                      Required by the Court's Claim Construction for each of the
20                    Asserted Claims**

21   All the asserted claims include the limitation:

22           detecting means coupled to said computer for detecting a stroke of the
23           stylus tip in contact with the screen.

24   (Ex. 3, '295 patent, col. 18:5-7, 20:28-30, 20:52-54; *see also* Section II.B above).  The Court

25   construed this means-plus-function limitation to include corresponding structure pen position

26   digitizer 20.  (Ex. 4, Order Construing Claims For U.S. Pat. No. 5,347,295 at 3, 7, and 9).

27

28

1    Defendants previously argued to this Court that front-mounted digitizers are the "very

2    antithesis" and "substantial[ly] different[t]" than rear-mounted digitizers. (Ex. 9, Mem. of Points and

3    Auths. in Supp. of Mot. of Dell, Inc. for Summ. J. on Non-Infringement of the Asserted Claims of

4    U.S. Pat. No. 5,347,295 at 8-9). Defendants pointed out that certain sections of the specification

5    "state unequivocally that the disclosed digitizer is of a type that is mounted behind the display:

6    '*Mounted behind the display is the pen position digitizer 20*.'" (Ex. 9, Mem. of Points and Auths. In

7    Supp. Of Mot. Of Dell, Inc. For Summ. J. Of Non-Infringement On the Asserted Claims Of U.S.

8    Patent No. 5,347,295 To Agulnick et al. at 3) (emphasis in original). In its March 8, 2007 Order the

9    Court accepted that view and "interpret[ed] the word 'screen' to include the display . . . but not to

10    include the digitizer." In doing so, the Court effectively amended its claim construction and held

11    that devices with front-mounted digitizers, such as certain of defendants' accused products, were

12    beyond the scope of the claims. (Ex. 10, Court's 3/08/07 Order Granting Summary Adjudication of

13    No Infringement of U.S. Patent No. 5,347,295).

14    Since the Court's March 8th Order, of course, Lucent has proceeded under the assumption

15    that the parties were bound by that Order. Defendants, however, despite having previously argued—

16    and won—on this issue, now change their view of the claim language and argue that prior art having

17    a front-mounted digitizer renders the patent invalid. That is inconsistent with the Court's March 8th

18    Order. The Court's ruling that a front-mounted digitizer is beyond the scope of the claims—in which

19    the Court accepted defendants' argument that front-mounted digitizers are the "very antithesis" of

20    rear-mounted digitizers—cuts against finding that it would have been obvious to combine a front-

21    mounted digitizer with a device that had a rear-mounted digitizer. Accordingly, to the extent this

22    Court maintains its prior ruling accepting defendants' position regarding front-mounted digitizers,

23    summary judgment of obviousness should be denied.

24    And in any event, defendants should not be allowed to take one position on claim

25    construction when discussing infringement and the opposite position when discussing validity.

26    *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the

27    claims of a patent measure the invention at issue, the claims must be interpreted and given the same

28    meaning for purposes of both validity and infringement analyses. A patent may not, like a 'nose of

1  wax,' be twisted one way to avoid anticipation and another to find infringement."  (quotation marks

2  and citations omitted)); *cf. Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.

3  2001) ("[J]udicial estoppel [invoked by courts] not only to prevent a party from gaining an

4  advantage by taking inconsistent positions, but also because of general considerations of the orderly

5  administration of justice and regard for the dignity of judicial proceedings, and to protect against a

6  litigant playing fast and loose with the courts." (quotation marks and alterations omitted)).

7         **7.**      **Defendants Fail to Identify any Prior Art Having a Pen-Position**

8                          **Digitizer Co-Processor, as Required by the Court's Construction**
                        **for each of the Asserted Claims**

9        All of the asserted claims include means-plus-function claim elements that the Court has

10  construed to include the corresponding structure "pen position digitizer co-processor 90, as shown in

11  fig. 3 and described in the specification at Col. 6:36-37." (Ex. 4, Order Construing Claims For U.S.

12  Pat. No. 5,347,295 at 4, 8, and 10). Defendants have failed to identify any disclosure in the prior art

13  that constitutes a pen position digitizer co-processor.

14        Defendants argue that "[t]he FIDS paper discloses a ***central*** processor programmed with

15  software that determines that a gesture is complete." (Microsoft's Br. at 6) (emphasis in original). In

16  support of that argument, defendants cite Dr. Kelly's expert report, which, in turn, points to page 74

17  of the FIDS Paper. But defendants' liberal paraphrasing completely misstates what the FIDS Paper

18  discloses. All that page 74 of the FIDS Paper discloses is that the "environment for the prototype"

19  included an "80186-based microcomputer workstation" and a "flat-panel display . . . connected to the

20  IDC186 graphics controller." The paper says nothing at all about which, if any, of these structures

21  constitutes a "co-processor . . . with software that determines that a gesture is complete," as required

22  by the Court's construction. Nor have defendants pointed to any other prior art reference disclosing

23  specific structure that constitutes a co-processor with software that determines that a gesture is

24  complete. The question whether modern day central processors could satisfy this limitation—which

25  is the subject of Mr. Ward's infringement opinion—has no bearing on the question whether

26  defendants have identified any ***prior art*** that actually discloses structure satisfying the co-processor

27

28

1  limitation of the claims.[3]  *See* 35 U.S.C. § 103 (obviousness assessed from the perspective of person

2  of ordinary skill in the art "***at the time the invention was made***").  It is defendants' burden to show

3  that the prior art, whether alone or in combination, discloses each and every claim limitation, and

4  defendants' bald statements fail to do so.

5  **V.    CONCLUSION**

6

7      For the foregoing reasons, Lucent respectfully requests that the Court deny defendants'

8  motion for summary judgment.

9

10

11

12

13

14

15

16

17

18

19

20

---

21  [3] Defendants argue that it is inconsistent for Mr. Ward to opine—in his validity report—that the claims require a "specific component" corresponding to the co-processor, while also opining—in his infringement report—that a central processor (CPU) programmed with software could meet this limitation.  (Microsoft Br. at 5-6).  There is nothing inconsistent about Mr. Ward's positions.  In his infringement report, Mr. Ward states that "[t]he pen position co-processor is implemented in Tablet PC devices as a software virtualization of hardware.  Modern CPUs in Tablet PC devices are sufficiently capable that they can handle running the software on both the main processor (CPU 50 in the '295 patent) and the pen position digitizer co-processor 90 described in the '295 patent."  (Ex. 2, 3/31/06 Ward Expert Report ¶ 119).  Thus, in Mr. Ward's view, a modern CPU programmed with software as a virtualization of hardware is the "specific component" corresponding to the co-processor.  Defendants have not pointed to any such CPUs in the prior art, nor does it appear that CPUs were capable of filling this role at the time of the invention.

22

23

24

25

26

27

28



Dated:  December 14, 2007

By:     _____David A. Hahn_____
        David A. Hahn, SBN 125784
        HAHN & ADEMA
        501 West Broadway, Suite 1600
        San Diego, California  92101-3595
        Telephone:  (619) 235-2100
        Facsimile:  (619) 235-2101

        John M. Desmarais (admitted pro hac vice)
        Robert A. Appleby (admitted pro hac vice)
        Gregory F. Corbett (admitted pro hac vice)
        KIRKLAND & ELLIS LLP
        153 East 53rd Street
        New York, New York  10022
        Telephone:  (212) 446-4800
        Facsimile:  (212) 446-4900

        Attorneys for Lucent Technologies Inc.