# Hayes Declaration

# Exhibit 10

Case 3:07-cv-02000-H-CAB     Document 155-6     Filed 12/14/2007     Page 1 of 8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervenor and Counter-claimant, <br><br>——————————————— <br><br> MICROSOFT CORPORATION, <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant and Counter-claimant <br><br>——————————————— <br><br> LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., <br><br> Defendant. <br><br>——————————————— | **Civil No:** 02CV2060-B(CAB) <br> consolidated with <br> **Civil No:** 03CV0699-B (CAB) and <br> **Civil No:** 03CV1108-B (CAB) <br><br> **ORDER GRANTING SUMMARY ADJUDICATION OF NO INFRINGEMENT OF U.S. PATENT NO. 5,347,295** |

## I. INTRODUCTION

Dell moves the Court for summary judgment[1] that Dells' Axim® line of Personal Digital Assistants (PDAs) do not infringe U.S. Patent No. 5,347,295 ("the '295 patent"). Microsoft joins this motion and asserts that if there is no direct infringement, Microsoft cannot be liable for indirect infringement. For the reasons herein, the Court **GRANTS** Dell's and Microsoft's motions.

## II. BACKGROUND

Lucent has asserted the '295 patent against Defendant Dell, accusing Dell's Axim® line of Personal Digital Assistants (PDAs) of literal infringement and infringement under the doctrine of equivalents. Lucent has also accused Microsoft of indirectly infringing the patent by selling Windows Mobile and Pocket PC operating software that is included in Dell's PDAs.

The '295 patent is directed to a notebook computer that is controlled by a stylus. Using the stylus, the user can enter commands. The computer and stylus contain complementary circuitry to detect proximity with, contact and movement of the stylus on the computer screen

The claims at issue in the '295 patent are apparatus claims drafted in means-plus-function language. At issue in this motion is "the first detecting means." The Court construed this term to have the function of "detecting a stroke of the stylus tip in contact with the screen." The corresponding structure was designated as Pen position digitizer 20, as shown in figures 2 and 3 of the patent, and as described in the specification at col. 6 on lines 21-22 and lines 53-58.

Dell now moves for summary judgment that its products do not infringe because they lack an identical or corresponding structure to this first detecting means. Microsoft

---

[1] The parties titled the instant motions as "summary judgment." However, the Court treats them as motions for summary adjudication (or partial summary judgment) under Fed. R. Civ. P. 56(d) because the motions do not encompass the entire case on the '295 patent.

2

Exhibit 10
Page 000369

1 joins the motion, contending that if there is no direct infringement by Dell, there can be no
2 indirect infringement by Microsoft. Additionally, Dell and Microsoft contend that there
3 can be no contributory infringement because Dell's use of Microsoft's software is a
4 substantial non-infringing use. The motion was heard on March 2, 2007.

5 **III. DISCUSSION**

6     **A. STANDARD OF LAW**

7 Summary judgment is appropriate if the "pleadings, depositions, answers to
8 interrogatories, and admissions on file, together with the affidavits, if any, show that there
9 is no genuine issue as to any material fact and that the moving party is entitled to judgment
10 as a matter of law." Fed. R. Civ. P. 56(e) (West 2006). A dispute about a material fact is
11 genuine "if the evidence is such that a reasonable jury could return a verdict for the
12 nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In
13 considering the motion, the court must examine all the evidence in the light most favorable
14 to the non-moving party and "all justifiable inferences are to be drawn in his favor."
15 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 257 (1986).

16 When the moving party does not bear the burden of proof, summary judgment is
17 warranted by demonstration of an absence of facts to support the non-moving party's case."
18 Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if
19 the party responding to the motion fails "to make a sufficient showing on an essential
20 element of her case with respect to which she has the burden of proof." Id. at 323.

21     **B. Analysis**

22         **1. Means Plus Function Limitations**

23 The main point of contention between the parties is whether or not Dell's PDAs
24 have a corresponding structure to the "first detecting means." This is a means plus function
25 limitation to which a specific body of law applies. Means-plus-function language permits
26 the patentee to "short-hand" all of the structures in the specification that correspond to a
27 particular function. However, the quid pro quo for this convenience is the duty to link the

28

1 corresponding structure and function. <u>Utah Medical Products, Inc. v. Graphic Controls
2 Corp.</u>, 350 F.3d 1376, 1384 (Fed. Cir. 2003). The claimed "means" can then only refer to
3 structures identical or equivalent to those disclosed and only where the specification and
4 prosecution history link such structures with the claimed function. <u>Id.</u>

5    "Literal infringement of a means-plus-function claim limitation requires that the
6 relevant structure in the accused device perform the identical function recited in the claim
7 and be identical or equivalent to the corresponding structure in the specification." <u>Applied
8 Medical Resources Corp. v. U.S. Surgical Corp.</u>, 448 F.3d 1324, 1333 (Fed. Cir. 2006). A
9 structure is an equivalent if to the disclosed structure if "the two perform the identical
10 function in substantially the same way, with substantially the same result." <u>Id.</u>

11    The doctrine of equivalents applies to mean-plus-function claims in a modified
12 manner as a "question of timing." <u>Frank's Casing Crew & Rental Tools, Inc. v.
13 Weatherford Intern., Inc.</u>, 389 F.3d 1370, 1379 (Fed. Cir. 2004). Where a proposed
14 equivalent has arisen before the patent is filed, the equivalent is considered under the literal
15 infringement analysis, as described above, and the doctrine of equivalents essentially
16 collapses into this analysis. <u>Id.</u> A traditional doctrine of equivalents analysis is only
17 applied where the equivalent arises after the patent was filed. <u>Ishida Co., Ltd. v. Taylor</u>,
18 221 F.3d 1310, 1317 (Fed. Cir. 2000).

19     **2. "First Detecting Means"**

20    In the instant case, all of the claims at issue contain the means plus function
21 limitation "a first detecting means." The Court construed "first detecting means" to carry
22 out the function of "detecting a stroke of the stylus tip in contact with the screen." For an
23 accused device to infringe, it must carry out the identical function. <u>Applied Medical
24 Resources</u>, 448 F.3d at 1333.

25    Dell contends that its PDAs do not infringe because the stylus tip does not come into
26 contact with the screen and thus it does not carry out an identical function to the claims of
27 the '295 patent. Dell contends that because the accused PDAs have a front-mounted

28                4

Exhibit 10
Page 000371

1  digitizer, the stylus contacts the digitizer and not the screen.

2   The contention over this point rests with the interpretation of the word "screen."
3  The '295 patent specification uses the terms "front surface," "display,""liquid crystal
4  display," and "screen" in describing the invention (see e.g., '295 patent col. 6:20-22, 58-
5  63). The terms "display" and "screen"are used synonymously in the patent; both are
6  labeled as component **10** in the patent (see e.g., '295 patent col. 6:48, 7:21-22, 8:55, 17:14).
7  In contrast, these terms are not used synonymously with the term "digitizer." The
8  specification distinguishes the digitizer as a separate component from the display:

> FIG. 2 shows the internal mechanical layout of the computer 2. Liquid crystal display 10 is mounted as the front surface of the unit. Mounted behind the display is the pen position digitizer 20.

('295 patent; Col 6:20-22.)   The drawing in Figure 2 of the patent also shows the digitizer as a separate component, mounted behind the display and a protective layer. Hence, the patentee distinguished the terms "screen" and "digitizer" to refer to different parts of the invention.

In the claims of the '295 patent and in the prosecution history, the patentee chose to focus on the term "screen." The claims as issued exclusively use the word "screen" in the context of detecting the stylus in contact or proximity to the apparatus. Similarly, during prosecution, in response to the USPTO examiner's obviousness rejection the patentee also specifically referred to the screen; the patentee stated that the claims had been amended "to clarify that the present invention has means for detecting *both* proximity and contact of the stylus tip with the screen." (emphasis in the original). The limitation of the first detecting means for detecting the stylus "in contact with the screen" was then added to the claims.

In light of the use of the term "screen" in the specification and the prosecution history, the Court interprets the word "screen" to include the display (i.e. the display screen with or without a protective cover) but not to include the digitizer. Since the accused devices contain a display that lies behind the front-mounted digitizer, the stylus in these

1  devices cannot contact the "screen" as the Court has defined it.  Hence, because the stylus
2  of the accused PDAs do not contact the screen, they do not perform the identical function to
3  the "first detecting means" of the '295 patent.  For this reason, there is no literal
4  infringement by the accused devices.

5  Additionally, there is no infringement under the doctrine of equivalents. As
6  explained above, where a proposed equivalent exists before the patent is filed, the doctrine
7  of equivalents collapses into the literal infringement analysis.  Frank's Casing Crew, 389
8  F.3d at 1379. Both parties admit that digitizers mounted in front of the display were known
9  in the art as of the filing of the patent; in fact, the '295 specification refers to front-mounted
10  digitizers at column 6, lines 53-58.  Therefore, only statutory equivalents are considered
11  under the literal infringement analysis.  Again, these equivalents must still perform the
12  identical function set forth in the claims.  Applied Medical Resources, 448 F.3d at 1333.
13  Since the accused devices fail to perform this function, regardless of any purported
14  equivalent structure, as a matter of law they do not meet "first detecting means" limitation.

15  In sum, there is no direct infringement of the '295 patent by Dell's Axim® line of
16  PDAs.  Therefore, on this ground Dell's motion for no direct infringement is **GRANTED**.

17  **3.  Indirect Infringement**

18  Lucent also has accused Microsoft of indirectly infringing the '295 patent.  Liability
19  for indirect infringement requires a showing of direct infringement. Dynacore Holdings
20  Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement,
21  whether inducement to infringe or contributory infringement, can only arise in the presence
22  of direct infringement. . . .").  Because there is no direct infringement of Dell's Axim® line
23  of PDAs, there can be no indirect infringement by Microsoft as it would relate to these
24  devices.  Therefore, on this ground Microsoft's motion is **GRANTED**.

25  **IV.  CONCLUSION**

26  For the reasons herein, the Court **GRANTS** summary adjudication of no direct
27  infringement of the '295 patent by Dell's Axim® line of PDAs and **GRANTS** summary

28

6

Exhibit 10
Page 000373

1  adjudication of no indirect infringement as it relates to Dell's Axim® line of PDAs. This
2  Order does not dispose of the remaining infringement issues in the case with respect to
3  other accused devices. These issues will proceed to trial.
4
5  **IT IS SO ORDERED**
6
7  DATED: March 8, 2007                               */s/ Rudi M. Brewster*
8                                                    Hon. Rudi M. Brewster
                                                     United States Senior District Judge
9
10
11
    cc: Hon. Cathy Ann Bencivengo
12       United States Magistrate Judge
13      All Counsel of Record
14
...
28

7

Exhibit 10
Page 000374