# Hayes Declaration

# Exhibit 14

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF CALIFORNIA
    -------------------------------X
 3  LUCENT TECHNOLOGIES, INC.       :
    and MULTIMEDIA PATENT TRUST,    :
 4           Plaintiffs             : Case No:
                  -vs-              : 07-CV-2000-H (CAB)
 5  GATEWAY, INC., GATEWAY          :
    COUNTRY STORES, LLC, GATEWAY    : Consisting of
 6  COMPANIES, INC., GATEWAY        : matters severed
    MANUFACTURING, LLC, and         : from consolidated
 7  COWABUNGA ENTERPRISES, INC.,    : cases:
             Defendants             :
 8  and                             :
                                    : Case No.
 9  MICROSOFT CORPORATION,          : 02-CV-2060 B (CAB)
             Intervener             : Case No.
10  ---------------------------     : 03-CV-0699 B (CAB)
    MICROSOFT CORPORATION,          : Case No.
11           Plaintiff              : 03-CV-1108 B (CAB)
                  -vs-              :
12  LUCENT TECHNOLOGIES, INC.       :        CERTIFIED
             Defendant              :          COPY
13  ---------------------------     :
    LUCENT TECHNOLOGIES, INC.       :
14  and MULTIMEDIA PATENT TRUST,    : Pages 1 - 279
             Plaintiffs             :
15                -vs-              :
    DELL, INC.,                     :
16           Defendant              :
                                    :
17  -------------------------------X
18       Videotape Deposition of Bruce Tognazzini
                    Washington, D.C.
19             Tuesday, November 20, 2007
20
21
    Reported by: Kathleen M. Vaglica, RMR       Exhibits Under
22  Job No:  184311                             Separate Cover
```

1

```
 1   to want to provide further material on some of my

 2   opinions, not to change them in any way, but to

 3   further explain them, give more information.

 4        Q.   What issues are those?

 5        A.   Well, for example, the, in the issue of

 6   Your Money Manager the definition of a pointing

 7   device.

 8        Q.   You think that your report regarding a

 9   pointing device was unclear?

10             MR. CORBETT:  Objection.

11   Mischaracterizes.

12             THE WITNESS:  No, I don't think it was

13   unclear at all.  I think his explanation of a

14   pointing device was, was completely 100 percent

15   wrong.

16   BY MS. GARNER:

17        Q.   And what additional information do you

18   think you would provide?

19        A.   I would provide an overwhelming amount of

20   material that the definition of a pointing device

21   has been a defined term recognized throughout the

22   industry over the course of most of the last 40 plus
```

17

1  years. And, when I provided my report, I had no
2  idea that Mr. Buscaino would completely redefine
3  pointing device to mean something entirely different
4  from the recognized standard of what a pointing
5  device is, so there was no reason for me to go into
6  great lengths in discussing a completely settled,
7  universal definition.
8      Q.  You said that definition was, that's been
9  a defined term for 40 years. When do you think that
10 became a defined term, pointing device?
11     A.  As I sit here now, because I have not done
12 the research, pointing devices have been recognized
13 as a separate class from keyboards since at least
14 1963. Now, I cannot tell you at this point when
15 the, the term connected to that class arose. It was
16 certainly there by the mid-1970s when I began
17 working with pointing devices, mid to late 1970s,
18 but, whether the term arose in 1963 or shortly
19 thereafter, whether it arose in 1970 or something, I
20 can't tell you.
21         The concept was there from at least 1963
22 as this being a separate class, and it may, in fact,

1  that's correct.

2  BY MS. GARNER:

3      Q.  So, if the first item in a list were

4  selected and I wanted to move down to the last item

5  on the list, I could do that using the keyboard; is

6  that right?

7          MR. CORBETT:  Same objection.

8          THE WITNESS:  If the programmer has given

9  you that facility, that's correct.  However, that

10 does not make the keyboard a pointing device because

11 there's no pointer.

12 BY MS. GARNER:

13     Q.  Other than the pointing devices we've

14 talked about so far, can you think of any others?

15     A.  Again, in YMM Mr. Buscaino spent a fair

16 amount of time on the relative difficulty of adding

17 a mouse to YMM, and again there were areas that I

18 thought everyone knew the technical limitations of

19 carrying out that complex a task that, apparently,

20 Mr. Buscaino is unaware of, so I would expect to add

21 material explaining the extreme difficulties and the

22 lack of value and, in fact, damage that would occur

Exhibit 14
Page 000299

```
 1          THE WITNESS:  I did see a cursor on the
 2   screen.  I saw a text cursor in a text field.  There
 3   was no mouse pointer.
 4   BY MS. GARNER:
 5        Q.   Okay.  So you didn't see a mouse pointer
 6   on the screen when you were using Your Money
 7   Manager?
 8        A.   That's correct.
 9        Q.   And moving the mouse around didn't, in
10   your experience, have any effect on the operation of
11   Your Money Manager; is that right?
12        A.   That's my recollection as I sit here, and
13   I believe that's what I -- well, let me see what I
14   said in my report.  It's my recollection that it had
15   no effect.  It's my recollection that Mr. Buscaino
16   testified it had no effect, so I, I have no
17   information that it had any effect at all.
18        Q.   Looking again at that screen shot, the
19   on-screen calculator looks like sort of a graphical
20   representation of what a physical calculator looks
21   like.  Do you agree with that?
22        A.   I would disagree that it's a graphical
```

1  representation.  This is a text-driven display.  It,

2  it's a text representation.

3      Q.    And those little numbers with squares

4  around them, are those, do you think, intended to

5  represent calculator keys?

6          MR. CORBETT:  Objection.  Vague.

7          THE WITNESS:  I would suggest not.

8  BY MS. GARNER:

9      Q.    And why is that?

10     A.    Because a calculator has a readout, and

11 this does not have a readout.

12     Q.    Do you see up in the top corner where it

13 says 98.99?

14     A.    Oh, I'm sorry.  Yes.  What you've just

15 said does refresh my memory.  It does not have an

16 apparent readout field, so, but, so you're asking me

17 about the entire thing as outlined by the yellow

18 line as opposed to the, just the keypad part of it?

19     Q.    Why don't I ask a different question.

20     A.    Okay.

21     Q.    Do you think that those numbers, zero

22 through nine with little squares around them, were

106

```
 1              CERTIFICATE OF NOTARY PUBLIC

 2        I, Kathleen M. Vaglica, the officer before

 3   whom the foregoing deposition was taken, do hereby

 4   certify that the witness whose testimony appears in

 5   the foregoing deposition was duly sworn by me; that

 6   the testimony of said witness was taken by me in

 7   stenotype and thereafter reduced to typewriting

 8   under my direction; that said deposition is a true

 9   record of the testimony given by said witness; that

10   I am neither counsel for, related to, nor employed

11   by any of the parties to the action in which this

12   deposition was taken; and, further, that I am not a

13   relative or employee of any attorney or counsel

14   employed by the parties hereto, nor financially or

15   otherwise interested in the outcome of the action.

16
                     Kathleen M. Vaglica
17
                         Notary Public in and for
18
                         District of Columbia
19
         NOV 28 2007
20

21   My Commission Expires:

22   February 15, 2011
```

277