# Hayes Declaration

# Exhibit 17

1  John E. Gartman (SBN 152300)
   Juanita R. Brooks (SBN 75934)
2  Roger A. Denning (SBN 228998)
   Shekhar Vyas (SBN 229853)
3  Fish & Richardson P.C.
   12390 El Camino Real
4  San Diego, California  92130
   Telephone:    (858) 678-5070
5  Facsimile:    (858) 678-5099

6  Stephen P. McGrath (SBN 202696)
   Microsoft Corporation
7  One Microsoft Way
   Redmond, WA  98052
8  Telephone:    (425) 882-8080
   Facsimile:    (425) 936-7329
9
   Attorneys for Intervenor/Counter-claimant
10 and Plaintiff/Counter-defendant
   MICROSOFT CORPORATION
11
12 *Additional counsel listed on signature page*

13              UNITED STATES DISTRICT COURT

14             SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15  LUCENT TECHNOLOGIES INC., | Case No. 02-CV-2060 B (CAB) consolidated with |
| 16  Plaintiff and Counterclaim-defendant, | Case No. 03-CV-0699 B (CAB) and Case No. 03-CV-1108 B (CAB) |
| 17  v. | **MICROSOFT CORPORATION'S** |
| 18  GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWBUNGA ENTERPRISES, INC., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 4,763,356** |
| 19 | |
| 20  Defendants and Counter-claimants, | |
| 21  and | |
| 22  MICROSOFT CORPORATION, | |
| 23  Intervenor and Counter-claimant, | |
| 24 | |
| 25  MICROSOFT CORPORATION, | Date:       March 2, 2007 |
| 26  Plaintiff and Counter-defendant, | Time:       9:00 a.m.  Courtroom:  2 |
| 27  v. | Judge:      Honorable Rudi Brewster |
| 28  LUCENT TECHNOLOGIES INC., | |
|     Defendant and Counter-claimant, | |

Exhibit 17
Page 000311

1    LUCENT TECHNOLOGIES INC.,

2        Plaintiff,

3    v.

4    DELL, INC.,

5        Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000312

## Table of Contents

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS .......................................... 1

      A.   The '356 Patent ........................................................................ 1

      B.   The Accused Products................................................................ 2

      C.   The Prior Art: Home Accountant............................................ 3

III.  LEGAL STANDARDS FOR SUMMARY JUDGMENT........................ 3

IV.   THE '356 PATENT IS INVALID IN LIGHT OF HOME
      ACCOUNTANT ...................................................................................... 4

      A.   Claim 1 ......................................................................................... 6

           1.   Claim 1 – Preamble "An arrangement for use in a
                computer having a display associated therewith
                comprising".......................................................................... 6

           2.   Claim 1 – Element 1 "means for displaying on said
                display a pattern including a plurality of information fields
                and for identifying for each field a kind of information to
                be inserted therein," ...................................................... 6

           3.   Claim 1 – Element 2 "means for indicating a particular
                one of said information fields into which information is to
                be inserted and for concurrently displaying a predefined
                tool associated with said one of said fields, said predefined
                tool being operable to supply information of the kind
                identified for said one field, said tool being selected from
                a group of predefined tools including at least a tool
                adapted to supply an individual entry from a menu of
                alternatives and at least a tool adapted to allow said user to
                compose said information, and".................................... 7

           4.   Claim 1 – Element 3 "means for inserting in said one field
                information that is derived as a result of said user
                operating said displayed tool.".................................... 11

      B.   Claim 2 "The arrangement set forth in claim 1 wherein said group
           of predefined tools further includes a tool which displays
           transitory information, said transitory information being changed
           periodically." ............................................................................ 12

      C.   Claim 10 ................................................................................... 13

           1.   Claim 10 – Preamble "An arrangement for use in a
                computer having a display comprising"................................. 13

Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000313

### Table of Contents
### continued

Page

2.    Claim 10 – Element 1 "means for displaying a plurality of information fields and for identifying for each field a kind of information to be inserted therein," .................................................. 13

3.    Claim 10 – Element 2 "means for storing a plurality of predefined tools associated with respective ones of said fields, each of said tools being adapted to supply information of the kind identified for its associated field, and" ................................................................................................ 13

4.    Claim 10 – Element 3 "means responsive to information being inserted in at least one of said fields for indicating another of said fields to be filled in and for concurrently displaying the respective one of said tools to be used by said user to supply the kind of information identified for said other field." ...................................................................... 14

D.    Claim 11 "The arrangement set forth in claim 10 wherein said one tool is selected from a group of tools including (a) a menu tool which displays a plurality of predefined items in which said user selects one of said items to be inserted in the associated field by pointing to that item, and (b) a tool adapted to allow said user to compose the information to be inserted in the associated field." ......................... 15

E.    Claim 12 "The arrangement set forth in claim 11 wherein said group of tools further includes a tool which displays information which is changed periodically so that the information that is to be inserted in the associated field is current." ............................................................ 15

F.    Claim 13 "The arrangement set forth in claim 10 wherein said plurality of predefined tools includes at least a number pad, a keyboard, and a calculator." ................................................................ 16

G.    Claim 19 ............................................................................................... 16

1.    Claim 19 – Preamble "method for use in a computer having a display comprising the steps of" ................................................ 16

2.    Claim 19 – Element 1 "displaying on said display a plurality of information fields," ............................................................ 16

3.    Claim 19 – Element 2 "identifying for each field a kind of information to be inserted therein," .......................................... 16

4.    Claim 19 – Element 3 "indicating a particular one of said information fields into which information is to be inserted and for concurrently displaying a predefined tool associated with said one of said fields, said predefined tool being operable to supply information of the kind identified for said one field, said tool being selected from a group of predefined tools including a tool adapted to supply an individual entry from a menu of alternatives and at least a

Exhibit 17
Page 000314

**Table of Contents**
**continued**

**Page**

               tool adapted to allow said user to compose said information, and" ................................................................ 17

      5.    Claim 19 – Element 4 "inserting in said one field information that is derived as a result of said user operating said displayed tool." .............................. 17

   H.   Claim 21 "The method set forth in claim 19 wherein the step of displaying said pattern includes the step of displaying one or more of said information fields as a bit-mapped-graphics field." ................................ 18

   I.   Summary ................................................................ 18

V.   CONCLUSION ...................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 17
Page 000315

**Table of Authorities**

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................... 3

*Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984)..................................................... 3

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed.Cir.2001)................................................... 3, 4

*Brown v. 3M*,
    265 F.3d 1349 (Fed. Cir. 2001).................................................. 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................... 3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................... 3

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
    344 F.3d 1205 (Fed.Cir. 2003).................................................... 4

*Perricone v. Medicis Pharm. Corp.*,
    432 F.3d 1368 (Fed.Cir.2005)...................................................... 4

**Statutes**

35 U.S.C. § 102 ............................................................................. 2, 3

35 U.S.C. § 102(b) ........................................................................ 2, 3

Fed. R. Civ. P.
    Rule 56 ..................................................................................... 3

Fed. R. Civ. P.
    Rule 56(e) ................................................................................. 3

Exhibit 17
Page 000316

## I.    INTRODUCTION

Nearly two years before the inventors of United States Patent No. 4,763,356 ("the '356 patent") filed their patent application, a software program for the Apple Macintosh computer called The Home Accountant and Financial Planner was introduced and provided its users with the very same functionality that is the basis of Lucent's allegations of infringement in this case. Cornered by proof that the Home Accountant program anticipates Claims 1, 2, 10-13, and 19 and 21 of the '356 patent, Lucent's expert has resorted to manufacturing his own claim construction, ignoring the Court's Order. Any attempt by Lucent to argue that the Home Accountant does not anticipate the '356 patent under this false construction should be disregarded and certainly does not raise an issue of fact. Accordingly, Microsoft is entitled to summary judgment of invalidity.[1]

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The '356 Patent

The '356 patent is entitled "Form Entry System," and it describes and claims a system for filling out forms on a personal computer using various on-screen tools. The use of computerized forms was well known in the art at the time of the filing of the '356 patent. As the "Background of the Invention" section of the '356 patent states: "One such [prior art] technique displays the fields of a form on the cathode ray tube or other display of a computer. A user 'fills in' the displayed fields by entering the information called for by each field using the computer keyboard." [Ex. A, col. 1:14-1:18.][2]

The purported invention of the '356 patent is the addition of "pre-defined tools" that are displayed on the computer screen concurrently with the form to assist the user in inputting information. [Ex. A, col. 1:31-1:36.] Such "pre-defined tools" could include a menu of options or an on-screen keyboard. [Ex. A, Abstract.] A user can select a desired option from a menu, for instance, by "clicking" on that option using a mouse or, if the computer has a touch screen, by touching the desired option. [Ex. A, col. 3:51-3:57.] The system then automatically enters the information corresponding to that option into the appropriate field on the form. [Id.] The system

---

[1] Gateway, Incorporated and Dell, Incorporated join Microsoft in this motion.
[2] References to "Ex. __" refer to the corresponding exhibit attached to the Declaration of Shekhar Vyas, which is filed concurrently.

Exhibit 17
Page 000317

1  may then advance automatically to a next field in the form.  [Ex. A, col. 4:62-4:65.]  Different

2  fields can use different tools, and this process can repeat until the user has filled in all of the fields.

3  [Ex. A, col. 1:15-1:18.]  The '356 patent touts that this system reduces the time required to fill out

4  a form, particularly for users who are not proficient in using a computer keyboard.  [Ex. A, col.

5  1:18-1:21.]

6          The application that led to the '356 patent was filed on December 11, 1986.  That date is

7  important for two reasons.  First, it means that, for purposes of invalidity analysis under 35 U.S.C.

8  § 102(b), the '356 patent is invalid if its purported invention was on sale in the United States more

9  than a year before that date, or December 11, 1985.  Second, it means that the '356 patent expired

10  on December 11, 2006.[3]

11          **B.    The Accused Products**

12          Lucent alleges that a handful of Microsoft products, including Microsoft Money, Microsoft

13  Outlook, Microsoft Pocket PC or Windows Mobile, and Microsoft Word Mobile, infringe the

14  asserted claims of the '356 patent.  Lucent also alleges that Quicken (by Intuit) infringes the same

15  asserted claims.

16          All of the accused products are software applications, and a couple of them – Money and

17  Quicken – are personal finance programs.  Both Money and Quicken are designed to help users

18  with household budgeting, online banking, scheduled bill paying, and other finance-management

19  tasks.  In that respect, Money and Quicken are similar in basic functionality to earlier accounting

20  programs geared toward the management of personal finances.  In particular, as will be described

21  in detail below, all of the functionality of Money and Quicken that is accused of infringing the

22  '356 patent was also present in a computer program called The Home Accountant and Financial

23  Planner which was sold for use on the Macintosh more than a year before the application date of

24  the '356 patent.

25

26

27  [3]  Section 154 of the Patent Act provides that patents in force as of June 8, 1995 – as the '356
    patent was – shall expire either 17 years from the patent's issuance or 20 years from
28  application date, whichever is later.  35 U.S.C. § 154(a) and (c)(1).  The '356 patent issued on
    August 9, 1988.  [Ex. A.]  Accordingly, the dates in question are August 9, 2005 and December
    11, 2006, and the patent expired on the latter.

Exhibit 17
Page 000318

1      **C.     The Prior Art: Home Accountant**

2      The Home Accountant and Financial Planner (the "Home Accountant" program) was

3   initially released in January of 1985 and was designed to run on the original Apple Macintosh

4   computer introduced in January of 1984. [Ex. B (Deposition of Farmer) at 72:11-73:16; 20:8-14.]

5   Like Money and Quicken, it is an accounting program geared towards the management of personal

6   finances. Home Accountant helps users manage such transactions as check writing, deposits, and

7   credit card charges. The Home Accountant program also has tools for providing personal

8   budgeting and loan and retirement planning. [Ex. C (MSLT_1060811-813).]

9   **III.     LEGAL STANDARDS FOR SUMMARY JUDGMENT**

10     Summary judgment is appropriate when no genuine issue of material fact exists and the

11  moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317,

12  322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary

13  judgment is as appropriate in a patent case as in any other…[C]ourt[s] should utilize the salutary

14  procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful

15  utilization of the jury process and judicial resources." *Barmag Barmer Maschinefabrik AG v.*

16  *Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). To defeat a summary judgment motion,

17  the opposing party must do "more than simply show that there is some metaphysical doubt as to

18  the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

19  In this regard, unsupported conclusions on the ultimate issue of infringement are "insufficient to

20  raise a genuine issue of material fact." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d

21  1263, 1278 (Fed. Cir. 2004). Instead, the opposing party must set forth "specific facts showing

22  that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec.*, 475 U.S. at 587.

23     Under 35 U.S.C § 102(b), a person is *not* entitled to a patent if the invention was "in public

24  use or on sale in this country, more than one year prior to the date of the application for patent in

25  the United States." 35 U.S.C. § 102(b). A claim is anticipated under § 102 "if each and every

26  limitation is found either expressly or inherently in a single prior art reference." *Bristol-Myers*

27  *Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001). Anticipation is a

28  question of fact, but summary judgment may be appropriate where there is no genuine issue of

Exhibit 17
Page 000319

1  material fact. *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed.

2  Cir. 2003). A patent claim is invalid by anticipation where a single prior art reference discloses

3  each limitation of that claim. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir.

4  2005). A patent is entitled to a presumption of validity, and invalidity must be proved by clear and

5  convincing evidence. *Bristol-Myers*, 246 F.3d at 1374 (Fed.Cir.2001).

6  **IV.    THE '356 PATENT IS INVALID IN LIGHT OF HOME ACCOUNTANT**

7          Before addressing how Home Accountant anticipates the asserted claims on a limitation-

8  by-limitation basis, it is worth taking a step back to examine how Home Accountant incorporated

9  the purported invention of the '356 patent – the use of on-screen tools to help the user fill out a

10  form – nearly two years before the application for the '356 patent was filed.

11          <u>Customized Form:</u>  The '356 patent discloses a technique for filling out a computerized

12  form. [Ex. A, col. 1:24-1:31.] The example discussed in the patent (shown on the left in Fig. 1

13  below) involves a customized form for ordering a particular model of automobile. [Ex. A, col.

14  3:11-3:13.] The Home Accountant program also contains forms, including for example a Personal

15  Checkbook form (shown on the right in Fig. 1 below), into which the user inputs information, just

16  like a checkbook register. [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]

 

'356 Patent:  Order Form          Home Accountant:  Personal Checkbook Form

**Figure 1**

4

Exhibit 17
Page 000320

1    <u>Menu Tools:</u>  The core of the purported invention of the '356 patent is the use of on-screen

2    "predefined tools," displayed concurrently with the form, for inputting information into the form.

3    [Ex. A, col. 3:42-3:46.]  In the example discussed in the patent, to choose the model of the car to

4    order or to specify the type of tires desired, the user can click on that item in a menu of alternatives

5    (as shown on the left in Fig. 2 below).  [Ex. A, col. 3:63-3:65]  Similarly, in the Home Accountant

6    program, the user could choose an account or specify a name by clicking on the item from a menu

7    of alternatives (as shown on the right in Fig. 2 below).  [Ex. D (video of deposition of Farmer); *see*

8    *also* Exhibit B.]

          

'356 Patent:  Menu Tool                    Home Accountant:  Menu Tools

**Figure 2**

17    <u>Composition Tools:</u>  In addition to the menu of alternatives, the '356 patent also discloses

18    the use of an on-screen composition tool.  Ex. A, col. 5:1-5:5]  For example, to enter the name of

19    the customer for the new automobile, the patent discusses using an on-screen keyboard, which is a

20    keyboard that appears on the computer screen and allows the user to enter data by using the mouse

21    to "click" on letters on the on-screen keyboard (as shown on the left of Fig. 3 below).  [Ex. A, col.

22    5:6-5:11]  Again, the Home Accountant program allowed users to input data into a form using the

23    on-screen keyboard provided by the Macintosh computer's operating system (as shown in the right

24    in Fig. 3 below).  [Ex. E (video of deposition of Farmer); *see also* Exhibit B.]

25

26

27

28

5                          Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000321



'356 Patent: On-Screen Keyboard     Home Accountant: Mac On-Screen Keyboard

**Figure 3**

Not only did the Home Accountant program implement the purported invention of the '356 patent on a general level – nearly two years before the application for the '356 patent was filed – but it also anticipates the asserted claims on a limitation-by-limitation basis, as set forth below.

**A.     Claim 1**

      **1.     Claim 1 – Preamble "An arrangement for use in a computer having a display associated therewith comprising"**

As noted above, the Home Accountant program was created for use on the original Apple Macintosh computer, which included a built in display.  [Ex. D (Deposition of Farmer) at 18:22-19:9.]

Lucent's expert – Mr. Tognazzini – does not dispute that the Home Accountant program meets this limitation.  [Ex. D (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.]

      **2.     Claim 1 – Element 1 "means for displaying on said display a pattern including a plurality of information fields and for identifying for each field a kind of information to be inserted therein,"**

The Checkbook form in the Home Accountant program (as shown on the right of Fig. 1 above) includes a plurality of information fields, including labels identifying the kind of information that goes in each field (e.g., "Date," "Check #," and "Pay To").  [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]

Lucent's expert does not dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.]   Nor does Lucent's expert

Exhibit 17
Page 000322

1 | dispute that the Home Accountant program contains all of the corresponding structure identified by

2 | the Court.[4] [Ex. E (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.]

3 |     In the Home Accountant program, the function "displaying on said display a pattern

4 | including a plurality of information fields and for identifying for each field a kind of information to

5 | be inserted therein" is performed by the structures identified by the Court as corresponding

6 | structure.

7 |     The Home Accountant program running on a Macintosh includes a microprocessor. The

8 | microprocessor is programmed with an algorithm that displays a form. As with all graphical user

9 | interface systems, the system includes a desktop manager application program. In the case of the

10 | Macintosh, the desktop manager is called "Finder." The desktop manager passes the name of the

11 | Home Accountant Program file to the Macintosh operating system which executes the commands

12 | in the file to, among other things, display forms. The Macintosh's video controller operates to

13 | display the form on the Macintosh's display. [Declaration of Dale E. Buscaino ("Buscaino Decl.")

14 | at ¶ 1.]

15 |     **3.**    **Claim 1 – Element 2 "means for indicating a particular one of said**
16 | **information fields into which information is to be inserted and for concurrently displaying a predefined tool associated with said one of said fields, said predefined tool being operable to supply information of**
17 | **the kind identified for said one field, said tool being selected from a group of predefined tools including at least a tool adapted to supply an**
18 | **individual entry from a menu of alternatives and at least a tool adapted to allow said user to compose said information, and"**

19 |

20 |     In its claim construction Order, the Court construed the term "predefined tools associated

21 | with said one of said fields to "refer[] to a tool specified by the system as an appropriate tool for

22 | filling in the information called for by that field." [Ex. F (Claim Construction Order) at 4.]

23 | Similarly, the Court construed "[a] tool adapted to allow said user to compose said information" to

24 |

---

25 | [4] Regarding the means-plus-function limitations of Claims 1 and 10, it is the Defendants' position
26 | that, to prove infringement, Lucent must show that the accused products include algorithmic structures that are the same as or the equivalent of those the Court has identified. Defendants further contend that Lucent has failed to make this showing because, as explained in the
27 | contemporaneously motion for summary judgment of non-infringement filed by Gateway and joined by Microsoft, Lucent never analyzed the source code for the accused products and never
28 | correlated their algorithmic structures to those identified in the Court's claim construction. To the extent that Lucent contends that such a showing is not required, then the means-plus-function claims are necessarily invalid under the following analysis.

Exhibit 17
Page 000323

1   mean "a graphical keyboard tool or a graphical number keypad tool, which allows the user to

2   compose information by pointing to the display keys of that tool." [*Id.*] Finally, the Court defined

3   the term "concurrently displayed" to mean "display[ed] at the same time, as by a window

4   overlaying the form." [*Id.*]

5       <u>Indicating a particular field</u>:  To navigate from field to field within the Home Accountant

6   Checkbook form, the user can press the Tab or Enter key on the computer keyboard, which selects

7   the next field in the form. [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]  Data in the

8   next field will then be highlighted to indicate that it is the currently selected field for inserting

9   information.  [cite]  If the field is empty, a blinking cursor will be displayed in the field indicating

10   that the computer is ready to accept input for the selected field.  [Ex. D (video of deposition of

11   Farmer); *see also* Exhibit B.]  The highlight or the blinking cursor "indicat[es] a particular one of

12   said information fields into which information is to be inserted," as required by the claim.  [Ex. D

13   (video of deposition); *see also* Exhibit B.]

14       <u>Concurrently displaying a predefined tool</u>:  In the Home Accountant program, a predefined

15   tool, such as the menu of alternatives associated with the "Category" field can be displayed

16   concurrently with the Personal Checkbook form (as shown in Fig. 4 below).  [Ex. D (video of

17   deposition of Farmer); *see also* Exhibit B.]  By selecting one of the categories from the menu, the

18   user can supply the type of information identified for the particular field, in this example, the

19   "Category" field.  [*Id.*]

20

21

22

23

24

25

26

27

28

Exhibit 17
Page 000324



**Figure 4: Checkbook Form and Concurrently Displayed Menu of Alternatives**

Alternatively, the user may choose to enter information into the field using the Macintosh's on-screen keyboard, a composition tool, which is also displayed concurrently with the Checkbook form (as shown in Figure 5 below). [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]



**Figure 5: Checkbook Form and Concurrently Displayed Composition Tool.**

As can clearly be seen in Figure 5, the on-screen keyboard is displayed at the same time as the Checkbook form and overlays the Checkbook form. The on-screen keyboard allows the user to

Exhibit 17
Page 000325

1   compose information – in Figure 5 the user has just pointed to the 's' key on the keyboard, hence

2   an 's' is displayed in the on-screen keyboard's display.  The user can continue composing by

3   pointing to additional keys. Finally, the keyboard tool can be used to fill in any field that requires

4   letters or words – allowing users to fill in information called for by, for example, the Name or

5   Categories fields.  [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]  The on-screen

6   keyboard is clearly a composition tool as defined by the Court in its Claim Construction Order.

7        Rather than using the Court's construction, Lucent's expert – in an attempt to create an

8   infringement argument – manufactured his own definition of the requirements of a "tool" generally

9   and a "composition tool." Lucent's expert stated:

10          The tools in the '356 patent are experienced by end users as separate
            and distinct entities, complete and whole in their own right.  The
11          tools in the '356 patent are also inextricably tied to the input field
            that has called them into existence.  Any human interface object
12          which is not explicitly called into existence-"concurrently
            display[ed]"-is not a tool as set forth by the '356 patent.
13

14   [Ex. E (Rebuttal Report of Tognazzini) at 32.]

15        None of these artificial requirements – including the idea that to be concurrently displayed

16   with the form, tools must be "separate and distinct entities" that are "inextricably tied to the input

17   field that has called them into existence" – appear anywhere in the claims of the '356 patent or in

18   the Court's claim construction.  Only by disregarding the claim language and the Court's

19   construction is Lucent's expert able to contend that the Home Accountant program does not have a

20   composition tool.  Based on his assertion that the on-screen keyboard available for Home

21   Accountant users is not "explicitly called into existence by Home Accountant" and is not

22   "inextricably tied to the input field that has called [it] into existence," Lucent's expert contends it

23   "is not is not a tool as set forth by the '356 patent."  [*Id.*]  This contention does not create an issue

24   of fact, because Lucent's expert arrives at his opinion only by ignoring the Court's claim

25   construction, and that is clearly wrong on the law.

26        Lucent's expert concedes that the Home Accountant program has every other element of

27   the accused claims of the '356 patent.  [Ex. E (Expert Rebuttal Report of Tognazzini) at 32-35.]

28   Further, Lucent's expert does not dispute that the Home Accountant program contains all of the

Exhibit 17
Page 000326

1  corresponding structure identified by the Court. [Ex. E (Expert Rebuttal Report of Tognazzini) at

2  33 ¶¶ 124-125.]

3       In the Home Accountant program, the function "indicating a particular one of the

4  information fields into which information is to be inserted and for concurrently displaying a

5  predefined tool associated with that particular field" is performed by the structures identified by

6  the Court as corresponding structure.

7       As was noted, the Home Accountant program running on a Macintosh includes a

8  microprocessor. The Macintosh's microprocessor is further programmed to display, in conjunction

9  with the video controller, an indication of the currently active field as described above. The Home

10  Accountant Program waits for a response from the user. When a valid field is selected, the Home

11  Accountant Program highlights that field. If an alternative field is selected, the Home Accountant

12  Program erases the previous highlight and highlights a new field. [Buscaino Decl., ¶ 2.]

13       **4.    Claim 1 – Element 3 "means for inserting in said one field information**
               **that is derived as a result of said user operating said displayed tool."**

14

15       Using the Home Accountant "Categories" tool, the user can select from among the list of

16  alternatives by clicking on one of them with the mouse. Doing so will cause the selected

17  alternative to be inserted directly into the "Categories" field on the form. If the user chooses to

18  compose information, the user can click the keys of the on-screen keyboard using the computer

19  mouse. The composition, for example a name, will be displayed in the display window of the on-

20  screen keyboard as can be seen in Figure 3 above. The name can then be inserted into a field using

21  the copy and paste function located in the Edit menu of the Home Accountant Program. [Ex. D

22  (video of deposition of Farmer); *see also* Exhibit B.]

23       Lucent's expert does not dispute that the Home Accountant program meets this limitation.

24  [Ex. E (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.] Nor does Lucent's expert

25  dispute that the Home Accountant program contains all of the corresponding structure identified by

26  the Court. [Ex. E (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.]

27

28

        Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000327

1    In the Home Accountant program, the function "inserting in a particular field information

2    that is derived as a result of said user operating the displayed tool" is performed by the structures

3    identified by the Court as corresponding structure.

4    If a tool is selected, as was described above, the Home Accountant program and the

5    Macintosh hardware and software display the tool on the screen. The Home Accountant program

6    then again waits for an action by the user of the system. When the user has operated the tool to

7    obtain the appropriate entry, the microprocessor and the associated controller transfer the entry into

8    the highlighted field. [Decl. of Buscaino, ¶ 3.]

9    **B.    Claim 2 "The arrangement set forth in claim 1 wherein said group of predefined tools further includes a tool which displays transitory information, said transitory information being changed periodically."**

10

11    A tool within the Home Accountant program will display the current date in the Date field.

12    This current date is transitory information that will change based on the actual date on which the

13    Personal Checkbook is displayed by the computer system. Similarly, the Home Accountant

14    program has a tool for providing the next check number in the sequence of unused checks in

15    "Check #" field. The information provided by this tool will change based on the next available

16    check number. The user can either accept this transitory information or change the information if

17    desired. Additionally, the Names and Categories menus may change as users input new names and

18    categories over time. [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]

19    Lucent's expert can only contend that claim 2 is not met by conjuring up his own additional

20    limitation requiring that all of the tools in the system be tools that are concurrently displayed. [Ex.

21    E (Expert Rebuttal Report of Tognazzini) at 33-34 ¶¶ 126-127.] This is not a requirement under

22    the Court's claim construction. [*See* Ex. F (Claim Construction Order) at 5.] Further, Lucent's

23    expert contends that the Home Accountant program does not meet the requirements for

24    composition tools as detailed above regarding Element 2 of Claim 1. Neither of these contentions

25    – both based solely on his disregard of the Court's claim construction – creates an issue of fact.

26

27

28

Exhibit 17
Page 000328

C.    **Claim 10**

1.    **Claim 10 – Preamble "An arrangement for use in a computer having a display comprising"**

This limitation is met by the Home Accountant program as described above regarding the preamble of Claim 1. Lucent's expert does not dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report of Tognazzini) at 34 ¶ 131.]

2.    **Claim 10 – Element 1 "means for displaying a plurality of information fields and for identifying for each field a kind of information to be inserted therein,"**

This limitation is met by the Home Accountant program as described above regarding Element 1 of Claim 1. Lucent's expert does not dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report of Tognazzini) at 34 ¶ 131.]

Lucent's expert does not dispute that the Home Accountant program contains all of the corresponding structure identified by the Court. [Ex. E (Expert Rebuttal Report of Tognazzini) at 33 ¶¶ 124-125.] As further described above regarding Element 1 of Claim 1 in the Home Accountant program the function identified by the Court is performed by the structures identified by the Court as corresponding structure.

3.    **Claim 10 – Element 2 "means for storing a plurality of predefined tools associated with respective ones of said fields, each of said tools being adapted to supply information of the kind identified for its associated field, and"**

The Home Accountant program installed on a Macintosh computer stores the tools described and illustrated above, including the Name and Categories Menus of Alternatives depicted in Figure 4, in the computer's memory. These tools, along with the Macintosh operating system, are stored on magnetic media on either a floppy disk or on the optional hard disk. At any time, the user can initiate and use these tools by selecting the "Apple Icon" in the upper left corner of the screen and then selecting the desired tool. [Ex. G (MSLT_1060729).] Lucent's expert's contention that the Home Accountant program does not meet this limitation is based entirely on his disregard of the Court's claim construction as it relates to composition tools [Ex. E (Expert

Exhibit 17
Page 000329

1   Rebuttal Report of Tognazzini) at 34 ¶ 131] and, as detailed above regarding Element 2 of Claim

2   1, does not create an issue of fact.

3           Lucent's expert does not dispute that the Home Accountant program contains all of the

4   corresponding structure identified by the Court. [Ex. E (Expert Rebuttal Report of Tognazzini) at

5   33 ¶¶ 124-125.]

6           In the Home Accountant program, the function "storing a plurality of predefined tools

7   associated with respective ones of said fields" is performed by the structures identified by the

8   Court as corresponding structure.  Components of the system including the memory management

9   circuitry and interrupt controller allow the above tools to be stored on magnetic media of either the

10  optional hard disk or a floppy disk.  [Decl. of Buscaino, ¶ 3.]

11            **4.**     **Claim 10 – Element 3 "means responsive to information being inserted
12                        in at least one of said fields for indicating another of said fields to be
                          filled in and for concurrently displaying the respective one of said tools
13                        to be used by said user to supply the kind of information identified for
                          said other field."**

14          For certain fields in the Home Accountant Checkbook form, inserting information into the

15  field causes the cursor to advance, indicating the next field to be filled in.  For example, if the

16  "Category" field is the currently highlighted field, selecting an entry from a list of alternative

17  categories from the "Category" tool will insert the chosen category into the "Category" field and

18  will also advance the blinking cursor to the "$" field located in the next field after the "Category"

19  field.  [Decl. of Buscaino, ¶ 8.]  Furthermore, the on-screen keyboard can be concurrently

20  displayed to enter numeric information into the "$" field once the cursor has been advanced to that

21  field.  [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]  Lucent's expert's contention

22  that the Home Accountant program does not meet this limitation is based entirely on his disregard

23  of the Court's claim construction as it relates to composition tools [Ex. E (Expert Rebuttal Report

24  of Tognazzini) at 34 ¶ 131] and, as detailed above regarding Element 2 of Claim 1, does not create

25  an issue of fact.

26          Lucent's expert does not dispute that the Home Accountant program contains all of the

27  corresponding structure identified by the Court.  [Ex. E (Expert Rebuttal Report of Tognazzini) at

28  33 ¶¶ 124-125.]

Exhibit 17
Page 000330

1    In the Home Accountant program, the function "in response to information being inserted

2 in one of the fields, indicating another of the fields to be filled in and concurrently displaying the

3 respective one of said tools to be used by the user to supply the information identified for the other

4 field" is performed by the structures identified by the Court as corresponding structure.

5    In the Home Accountant program, if the field into which an entry is transferred is a field

6 designated to automatically skip to the next field (Autoskip), the Home Accountant program

7 highlights the next field to be filled in. If the field is not Autoskip, the Home Accountant program

8 waits for a response from the user then highlights the next field that the user selects, and repeats

9 the input process. [Decl. of Buscaino, ¶ 8.]

10    **D.    Claim 11 "The arrangement set forth in claim 10 wherein said one tool is selected from a group of tools including (a) a menu tool which displays a plurality of predefined items in which said user selects one of said items to be inserted in the associated field by pointing to that item, and (b) a tool adapted to allow said user to compose the information to be inserted in the associated field."**

11

12

13

14    This limitation is met by the Home Accountant program as described above regarding

15 Element 2 of Claim 1. Lucent's expert's contention that the Home Accountant program does not

16 meet this limitation is based entirely on his disregard of the Court's claim construction as it relates

17 to composition tools [Ex. E (Expert Rebuttal Report of Tognazzini) at 34 ¶ 132] and, as detailed

18 above regarding Element 2 of Claim 1, does not create an issue of fact.

19

20    **E.    Claim 12 "The arrangement set forth in claim 11 wherein said group of tools further includes a tool which displays information which is changed periodically so that the information that is to be inserted in the associated field is current."**

21

22

23    This limitation is met by the Home Accountant program as described above regarding

24 Claim 2. Lucent's expert's contention that the Home Accountant program does not meet this

25 limitation is based entirely on his disregard of the Court's claim construction as it relates to

26 composition tools [Ex. E (Expert Rebuttal Report of Tognazzini) at 34 ¶ 133] and, as detailed

27 above regarding Element 2 of Claim 1, does not create an issue of fact.

28

15                Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000331

**F.    Claim 13 "The arrangement set forth in claim 10 wherein said plurality of predefined tools includes at least a number pad, a keyboard, and a calculator."**

In addition to the on-screen keyboard, the Macintosh operating system provides several tools that assist the computer user in inputting information into the computer system. These tools include, among others, an on-screen calculator which includes a number pad. [Ex. D (video of deposition of Farmer); *see also* Exhibit B.] Lucent's expert's contention that the Home Accountant program does not meet this limitation is based entirely on his disregard of the Court's claim construction as it relates to composition tools [Ex. E (Expert Rebuttal Report of Tognazzini) at 35 ¶ 134.] and, as detailed above regarding Element 2 of Claim 1, does not create an issue of fact.

**G.    Claim 19**

**1.    Claim 19 – Preamble "method for use in a computer having a display comprising the steps of"**

As was noted above regarding the preamble of Claim 1, the Home Accountant program was created for use on the original Apple Macintosh computer, which was a personal computer system that included a built in monochrome display.  [Ex. B (Deposition of Farmer) at 18:22-19:9.] Lucent's expert does not dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report of Tognazzini) at 35 ¶ 137.]

**2.    Claim 19 – Element 1 "displaying on said display a plurality of information fields,"**

Figure 2 above illustrates that the Home Accountant program displays a Checkbook form that includes numerous information fields.  [Ex. D (video of deposition of Farmer); *see also* Exhibit B.]  Lucent's expert does not dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report of Tognazzini) at 35 ¶ 137.]

**3.    Claim 19 – Element 2 "identifying for each field a kind of information to be inserted therein,"**

As can be seen in Figure 2, the fields in the Home Accountant Checkbook form have labels that "identify[]…a kind of information to be inserted therein," for example "Date," "Check #," and

16                    Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000332

1   "Pay To." [Ex. D (video of deposition of Farmer); *see also* Exhibit B.] Lucent's expert does not

2   dispute that the Home Accountant program meets this limitation. [Ex. E (Expert Rebuttal Report

3   of Tognazzini) at 35 ¶ 137.]

4          **4.**      **Claim 19 – Element 3 "indicating a particular one of said information**

5                     **fields into which information is to be inserted and for concurrently displaying a predefined tool associated with said one of said fields, said predefined tool being operable to supply information of the kind**

6                     **identified for said one field, said tool being selected from a group of predefined tools including a tool adapted to supply an individual entry**

7                     **from a menu of alternatives and at least a tool adapted to allow said user to compose said information, and"**

8

9         When a user navigates into a field in the Home Accountant Checkbook form, data in the

10  field is highlighted to indicate that it is the currently selected field for inserting information. If the

11  field is empty, then a blinking cursor is displayed in the field indicating that the computer is ready

12  to accept input for the selected field. The highlight or the blinking cursor "indicat[es] a particular

13  one of said information fields into which information is to be inserted." [Ex. D (video of

14  deposition of Farmer); *see also* Exhibit B.]

15        As described above regarding Element 2 of Claim 1, the available tools include menus of

16  alternatives and a composition tool. Lucent's expert's contention that the Home Accountant

17  program does not meet this limitation is based entirely on his disregard of the Court's claim

18  construction as it relates to composition tools [Ex. E (Expert Rebuttal Report of Tognazzini) at 35

19  ¶ 137] and, as detailed above regarding Element 2 of Claim 1, does not create an issue of fact.

20         **5.**      **Claim 19 – Element 4 "inserting in said one field information that is derived as a result of said user operating said displayed tool."**

21

22        When the user selects a category from the Home Accountant Category tool, the category is

23  inserted directly into "Categories" field. If the user chooses instead to compose information, the

24  user can click the on-screen keyboard keys using the computer mouse. When the copy and paste

25  function located in the Edit menu of the Home Accountant Program is used, the composition is

26  inserted into a chosen field. [Ex. D (video of deposition of Farmer); *see also* Exhibit B.] Lucent's

27  expert's contention that the Home Accountant program does not meet this limitation is based

28  entirely on his disregard of the Court's claim construction as it relates to composition tools [Ex. E

Exhibit 17
Page 000333

1  (Expert Rebuttal Report of Tognazzini) at 35 ¶ 137] and, as detailed above regarding Element 2 of

2  Claim 1, does not create an issue of fact.

3      **H.**    **Claim 21 "The method set forth in claim 19 wherein the step of displaying said pattern includes the step of displaying one or more of said information fields as a bit-mapped-graphics field."**

4

5      The Macintosh computer displays the Home Accountant Checkbook form as bit-mapped

6  graphics. [Decl. of Buscaino, ¶ 3.] Lucent's expert's contention that the Home Accountant

7  program does not meet this limitation is based entirely on his disregard of the Court's claim

8  construction as it relates to composition tools [Ex. E (Expert Rebuttal Report of Tognazzini) at 35

9  ¶ 138] and, as detailed above regarding Element 2 of Claim 1, does not create an issue of fact.

10      **I.**    **Summary**

11      In sum, as set forth above, the Home Accountant program anticipates the asserted claims on

12  a limitation-by-limitation basis. With regard to Claims 1 and 10 and their dependant claims,

13  Lucent has not identified *any* structure in any of the accused products that corresponds to the

14  algorithms identified in the Claim Construction Order. "That which infringes if later anticipates if

15  earlier." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001). Based on Lucent's infringement

16  contentions, the Home Accountant program running on a Macintosh computer meets every

17  limitation of and therefore anticipates the following claims of the '356 patent: 1, 2, 10-13, 19 and

18  21.

19  **V.**    **CONCLUSION**

20      Claims 1, 2, 10-13, 19 and 21 of the '356 patent are anticipated by Home Accountant and

21  Financial Planner software on a Macintosh computer, therefore summary judgment of invalidity

22  should be granted.

23      Microsoft joins in the motion for summary judgment of non-infringement of the '356

24  patent filed contemporaneously by Gateway in this matter. If the Court were to determine that

25  Lucent's infringement proofs with respect to the asserted claims are legally sufficient to withstand

26  summary judgment, then it necessarily follows that those same claims are anticipated by software

27  applications programs that undisputedly are part of the prior art. Either way, Microsoft is entitled

28  to judgment in its favor with respect to the '356 patent.

Exhibit 17
Page 000334

1   Dated:  January 26, 2007                    FISH & RICHARDSON P.C.

2

3

4                                              By:   s/ Shekhar Vyas
                                                     Shekhar Vyas (SBN 229853)
5                                                    vyas@fr.com

6                                              Attorneys for Intervenor/Counter-claimant
                                               and Plaintiff/Counter-defendant
7                                              MICROSOFT CORPORATION

8   10688364.doc

9   *Additional Counsel:*

10  James S. Blackburn (SBN 169134)
    Arnold & Porter LLP
11  777 S. Figueroa Street, 44th Floor
    Los Angeles, CA  90017
12  Telephone:  (213) 243-4000
    Facsimile:  (213) 243-4199
13

14  Ali R. Sharifahmadian
    Matthew Bathon (admitted *Pro Hac Vice*)
15  Joseph Micallef (admitted *Pro Hac Vice*)
    Arnold & Porter LLP
16  555 Twelfth Street, N.W.
    Washington, D.C. 20004-1206
17  Telephone:  (202) 942-5000
    Facsimile:  (202) 942-5999
18

19  Joel Freed, Esq. (admitted *Pro Hac Vice*)
    McDermott Will & Emery LLP
20  600 13th Street, N.W.
    Washington, DC 20005-3096
21  Telephone:  (202) 756-8080
    Facsimile:  (202) 756-8087
22

23  Attorneys for Defendant
    DELL, INC.
24

25  David J. Zubkoff (SBN 149488)
    Seltzer, Caplan, McMahon & Vitek
26  2100 Symphony Towers
    750 B Street, Suite 2100
27  San Diego, CA  92101
    Telephone:  (619) 685-3003
28  Facsimile:  (619) 702-6827

                            19                 Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000335

1    Bryan Farney (admitted *Pro Hac Vice*)
     Steven R. Daniels (SBN 235398)
2    Jeffrey B. Plies (admitted *Pro Hac Vice*)
3    DECHERT LLP
     300 W. Sixth Street, Suite 1850
4    Austin, TX 78701
     Telephone:  (512) 394 3000
5    Facsimile:  (512) 394 3001

6    Attorneys for Defendants/Counter-claimants
     GATEWAY, INC. and
7    GATEWAY COUNTRY STORES LLC

8

9

10

11

12

13

14

15

16

.17

18

19

20

21

22

23

24

25

26

27

28

                            20                    Case No. 02-CV-2060 B (CAB)

Exhibit 17
Page 000336

1

## CERTIFICATE OF SERVICE

2

3          The undersigned hereby certifies that a true and correct copy of the above and foregoing

4    document has been served on January 26, 2007 to all counsel of record who are deemed to have

5    consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any

6    other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

7

8                                        s/Shekhar Vyas
                                         Shekhar Vyas (SBN 229853)
9                                        vyas@fr.com

10                                       Attorney for Intervenor/Counter-claimant
                                         and Plaintiff/Counter-defendant
11                                       MICROSOFT CORPORATION

12
     10688364.doc
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                      Exhibit 17
                                                      Page 000337