# Hayes Declaration

# Exhibit 21

1  Alison P. Adema, SBN 149285
   HAHN & ADEMA
2  501 West Broadway, Suite 1600
   San Diego, California 92101-3595
3  Telephone: (619) 235-2100
   Facsimile: (619) 235-2101

4

5  *Attorney for Lucent Technologies Inc.*
   *(Additional counsel listed on the last page)*

6

7                  **UNITED STATES DISTRICT COURT**
                 **SOUTHERN DISTRICT OF CALIFORNIA**

8

9  LUCENT TECHNOLOGIES INC.,                    Case No. 02-CV-2060-B (CAB)
                                                       consolidated with
10                   Plaintiff,                 Case No. 03-CV-0699-B (CAB)
              v.                                Case No. 03-CV-1108-B (CAB)
11
   GATEWAY, INC., GATEWAY COUNTRY
12 STORES LLC, GATEWAY COMPANIES,
   INC., GATEWAY MANUFACTURING LLC             **LUCENT'S MEMORANDUM OF**
13 and COWABUNGA ENTERPRISES, INC.,            **POINTS AND AUTHORITIES IN**
                                                **OPPOSITION TO MICROSOFT'S**
14                   Defendants,                **MOTION FOR SUMMARY**
              and                               **JUDGMENT OF INVALIDITY OF**
15                                              **U.S. PATENT NO. 4,763,356**
   MICROSOFT CORPORATION,
16
                     Intervener.               Date:        March 2, 2007
17                                             Time:        9:00 A.M.
                                               Courtroom:   2
18                                             Judge:       Hon. Rudi M. Brewster
   MICROSOFT CORPORATION,
19
                     Plaintiff,
20                                             **FILED UNDER SEAL PURSUANT**
              v.                               **TO PROTECTIVE ORDER**
21
   LUCENT TECHNOLOGIES INC.,
22
                     Defendant.
23 LUCENT TECHNOLOGIES INC.,

24                   Plaintiff,
              v.
25
   DELL INC.,
26
                     Defendant.
27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    COUNTER-STATEMENT OF FACTS .........................................................1

    A.    The Invention of the '356 Patent ........................................................1

    B.    This Court's Caim Construction of the '356 Patent Requires "Predefined" Tools that are "Associated With" Each Field and "Specified By" the Form-Entry System ...............................................................................5

    C.    The Home Accountant Program Does Not Contain "Predefined" Tools that Are "Associated With" Each Field and "Specified By" the Form-Entry System....6

III.   LEGAL STANDARD.........................................................................................8

IV.    ARGUMENT ......................................................................................................8

    A.    Defendants Cannot Meet the Clear and Convincing Standard to Establish Their Invalidity Defense ......................................................................8

    B.    The Home Accountant Program Does Not Anticipate Any Claim of the '356 Patent.................................................................................................9

        1.    Home Accountant Does Not Disclose Any *"Predefined Tool Associated With"* Any Information Fields and "Specified by the System as an Appropriate Tool for Filling in the Information Called for by That Field"....................................................9

        2.    The "Key Caps" Macintosh Desk Accessory is Not *"Associated With"* Any Information Fields or "Specified by the System as an Appropriate Tool for Filling in the Information Called for by That Field" ...................10

        3.    Home Accountant Does Not Disclose Any Predefined, Associated, and Specified Tool That is "Adapted to Allow Said User to Compose Said Information"...............................................................................12

        4.    Home Accountant Does Not Disclose Any Means "Responsive to Information Being Inserted in at Least One of Said Fields For Indicating Another of Said Fields to be Filled in and For Concurrently Displaying the Respective One of Said Tools to be Used by the User"....13

        5.    Home Accountant Does Not Disclose "A Plurality of Predefined Tools Associated With Respective Ones of Said Fields, Each of Said Tools Being Adapted to Supply Information of the Kind Identified For Its Associated Field"......................................................................14

V.     CONCLUSION..................................................................................................15

LUCENT'S OPPOSITION TO MICROSOFT'S SUMMARY JUDGMENT
BRIEF RE INVALIDITY OF U.S. PATENT NO. 4,763,356

i

Case Nos. 02-CV-2060-B (CAB),
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 21
Page 000353

# TABLE OF AUTHORITIES

*Cases*

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)..................................................................8

Caterpillar Inc. v. Sturman Indus., Inc.,
  387 F.3d 1358, 1373 (Fed. Cir. 2004),
  cert. denied, 545 U.S. 1114 (2005)..............................................8

Crown Operations Int'l, Ltd. v. Solutia Inc.,
  289 F.3d 1367 (Fed. Cir. 2002) ...................................................9

Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.,
  471 F.3d 1369 (Fed. Cir. 2006).....................................................9

Online Policy Group v. Diebold, Inc.,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) .......................................8

Richardson v. Suzuki Motor Co.,
  868 F.2d 1226 (Fed. Cir. 1989) ...................................................9

Schmidt v. Farm Credit Servs.,
  977 F.2d 511 (10th Cir. 1992) .....................................................8

Scripps Clinic & Research Found. v. Genentech, Inc.,
  927 F.2d 1565 (Fed. Cir. 1991) ...................................................9

*Statutes*

35 U.S.C. § 102.............................................................................8

35 U.S.C. § 112.............................................................................13

35 U.S.C. § 282.............................................................................8

*Rules*

Fed. R. Civ. P. 56..........................................................................8

LUCENT'S OPPOSITION TO MICROSOFT'S SUMMARY JUDGMENT
BRIEF RE INVALIDITY OF U.S. PATENT NO. 4,763,356

ii

Exhibit 21
Page 000354

Case Nos. 02-CV-2060-B (CAB),
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

## I.    INTRODUCTION

Defendants seek summary judgment that U.S. Patent No. 4,763,356 ("the '356 patent") is invalid in light of a software program for the Apple Macintosh computer called The Home Accountant and Financial Planner ("Home Accountant"). Defendants' arguments are based on incorrect claim constructions, ignore claim limitations, and disregard critical *Markman* rulings made by this Court. As properly construed by this Court, there is no question that the '356 patent claims are ***not*** anticipated by the Home Accountant program. Indeed, Lucent moved affirmatively for summary judgment of ***validity*** of the '356 patent based on the Home Accountant program, and incorporates those arguments here. (Ex 22, Lucent's Summary Judgment Br. on the '356 Patent at 3-5)[1]. Specifically, Defendants have failed to demonstrate clearly and convincingly that the Home Accountant program contains several critical limitations required by the '356 patent:

- Home Accountant does not disclose any "***predefined tool associated with***" any information fields in the program, as required by all claims of the '356 patent;

- Home Accountant does not disclose such a "predefined tool" that is "***specified by the system*** as an appropriate tool for filling in the information called for by that field," as required by this Court's claim construction for all claims of the '356 patent;

- Home Accountant does not disclose such a "predefined tool" that is "adapted to allow said user to compose said information," as required by claims 1-9 and 19-22 of the '356 patent; and

- Home Accountant does not disclose a "plurality of predefined tools 'that are' associated with respective ones of said fields," as required by claims 10-18 of the '356 patent.

For these reasons, Defendants' motion for summary judgment should be denied.

## II.    COUNTER-STATEMENT OF FACTS

### A.    The Invention of the '356 Patent

Pop-up menus, touch-screen form-entry systems, and other computer data entry tools are commonly used today in restaurants, stores, hospitals, and at home in many personal computer

---

[1] All exhibits refer to those attached to the Declaration of Eric Hayes in Support of Lucent's Opposition to Defendants' Motions for Summary Judgment regarding the User Interface Patents.

1   programs.   But in 1986, when the '356 patent was filed, such tools were novel and pioneering

2   inventions.   Before that time, computer users would need to manually move between data entry

3   fields, and manually input data into each field, for example, by using a computer keyboard. (Ex. 23,

4   the '356 Patent Col. 1:8-22).   People such as securities traders, sales people, and nurses spent an

5   inordinate amount of time on a daily basis manually inputting information into electronic forms. *Id.*

6   Thus, the inventors of the '356 patent identified a need for more user-friendly and ***time-saving*** data-

7   entry interfaces. (*Id.* at 1:24-48).

8        As a result, the inventors of the '356 patent conceived of many of the time-saving computer

9   pop-up windows and data-entry tools that we take for granted today. (Ex. 23, the '356 Patent Cols.

10   15-18).   When the ideas and inventions of the '356 patent first became known, they were received

11   with comments such as "great" — "wonderful" — "I've never seen this before." (Ex. 24, Dep. Tr.

12   of Benjamin Day at 90:4-7).   The '356 patent provides several examples of such tools.     For

13   example, Figure 2 of the '356 patent (shown below) shows a hypothetical data-entry form that might

14   be used by an automobile salesperson:

### '356 Patent Figure 2



1   Before the invention of the '356 patent, a salesperson would need to enter all of the information

2   manually, perhaps with a computer keyboard, and the salesperson would have been required to

3   somehow switch between each data entry field.  (Ex. 23, the '356 Patent Col. 1:8-22).  The '356

4   patent specification describes some of the user-friendly and time-saving aspects of the invention

5   with respect to entering information into this hypothetical automobile sales form:

6           When a form is first brought up on panel 15, one of the fields in the form is
7           illustratively highlighted and, in accordance with the invention, the ***predefined tool***
            for filling in that field is concurrently displayed illustratively as a window overlaying
8           the form.

9   (Ex. 23, the '356 Patent Col. 3:42-46).  Thus, one of the time-saving aspects of the invention is that,

10  after selecting a field for data entry, the form-entry system displays a predefined tool in a separate

11  and overlaying pop-up window.  Figure 3 of the '356 patent (shown below) shows an example of

12  one of these predefined tools that is associated with the automobile "Model" field.  As shown below

13  in Figure 3, this predefined tool is an overlay pop-up menu of selectable car models that appears

14  when the "Model" field is selected.  (Ex. 23, the '356 Patent Col. 3:42-46).

15                                  **'356 Patent Figure 3**



16

28

1      Another time-saving aspect described in the '356 patent is that the salesperson can simply

2  "point to one of the entries" on the pop-up tool "overlay (window)," after which,  the form entry

3  system on its own and "responsive thereto" then (1) inserts the data into the selected field, (2) closes

4  the pop-up window, (3) "highlights the next field" for entry, and (4) "brings up the corresponding

5  tool" pop-up window predefined for that field.  (Ex. 23, the '356 Patent Col. 3:63-4:2).

6      The '356 patent also discloses a "keyboard tool" that can be used to enter text data.  (Ex. 23,

7  the '356 Patent Col. 5:3-5).  For example, in the hypothetical automobile sales form, when the form

8  entry system arrives at the "Customer Name" field, the form-entry system would bring up the

9  keyboard tool which was the predefined tool associated with that field.  (Ex. 23, the '356 Patent Col.

10  5:3-5).  The salesperson would then point to the appropriate letters, spell the name, and then point to

11  the "E/S" (enter/skip) key, which would cause the name to be input into the "Customer Name" field.

12  (Ex. 23, the '356 Patent Col. 5:12-15). Figure 7 (show below) shows the predefined keyboard tool

13  associated with the "Customer Name" field as an overlay pop-up window:

14  *FIG. 7*      **'356 Patent Figure 7**



**B.    This Court's Caim Construction of the '356 Patent Requires "Predefined" Tools that are "Associated With" Each Field and "Specified By" the Form-Entry System**

Each and every claim of the '356 patent requires the use of a "predefined tool" that is "associated" with a data "information field." (Ex. 23, the '356 Patent Col. 15:52-18:29). These terms are highlighted below in the relevant limitations of the three independent claims of the '356 patent:

**Claim 1:**    An arrangement for use in a computer having a display associated therewith comprising ...

means for indicating a particular one of said information fields into which information is to be inserted and for concurrently displaying a *predefined tool associated with* said one of said fields, said predefined tool being operable to supply information of the kind identified for said one field ....

**Claim 10:**    An arrangement for use in a computer having a display comprising ...

means for storing a plurality of *predefined tools associated with* respective ones of said fields, each of said tools being adapted to supply information of the kind identified for its associated field, and ....

**Claim 19:**    A method for use in a computer having a display comprising the steps of ...

indicating a particular one of said information fields into which information is to be inserted and for concurrently displaying a *predefined tool associated with* said one of said fields, said predefined tool being operable to supply information of the kind identified for said one field ....

(Ex. 23, the '356 Patent Cols. 15-18). This Court further clarified and construed the meaning of these terms in its March 1, 2004 *Markman* Order. (Ex. 25, the '356 Patent Amended Claim Construction Order). For each independent claim, the Court clarified that "predefined tools associated with said one of said fields - refers to a tool specified by the system as an appropriate tool for filling in the information called for by that field." (Ex. 25, the '356 Patent Amended Claim Construction Order).

1    Independent claims 1 and 19 contain the additional limitation whereby at least one of the

2    "predefined tool associated with one of said fields" is a "tool adapted to allow said user to compose

3    said information." (Ex. 23, the '356 Patent Cols. 15-18).  This Court further clarified this phrase to

4    mean "a graphical keyboard tool or a graphical number keypad tool, which allows the user to

5    compose information by pointing to the display keys of that tool."    (Ex. 25, the '356 Patent

6    Amended Claim Construction Order).

7    **C.    The Home Accountant Program Does Not Contain "Predefined" Tools
     that Are "Associated With" Each Field and "Specified By" the Form-
8    Entry System**

9         Simply put, the Home Accountant program does not contain "predefined" tools that are

10   "associated with" the information fields and "specified by" the form-entry system. The "tools" that

11   Defendants rely on in an attempt to cobble together a validity argument were actually early

12   Macintosh computer "desk accessories." (Ex. 14, Expert Report of Bruce Tognazzini ¶¶ 122-123).

13   These desk accessories were Macintosh operating system tools, and included such things as a

14   calculator, a notepad, a puzzle, and the "Key Caps" tool, as seen below:



**Macintosh "Desk Accessories"**

1  In other words, Macintosh desk accessories were small general purpose applications that could be

2  used at any time, and importantly, were not associated with any other software programs. (Ex. 14,

3  Expert Report of Bruce Tognazzini ¶ 125).

4      The Home Accountant program was a separate, simple program for the Macintosh computer

5  that allowed users to store personal finance information and enter personal check information. (Ex.

6  26, Expert Report of Dale Buscaino ¶ 57). Users could input their personal checkbook information

7  by using an on-screen data inputting form, as seen below:

8

9

10

## Home Accountant Personal Checkbook Form

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Users of the Home Accountant program would normally use a computer keyboard to manually enter

2  information into the fields, and manually move between data entry fields (*e.g.* by using the Tab or

3  Enter key). (Ex. 26, Expert Report of Dale Buscaino ¶¶ 60-61). This method of entering data was

4  much like the prior art discussed above and disclosed in the background section of the '356 patent.

5  (Ex. 23, the '356 Patent Col. 1:8-22).

6      This cobbled-together combination, however, cannot anticipate the '356 patent claims, at a

7  minimum because the Home Accountant program does not contain "predefined tools" that are

8  "associated with" each data entry field and "specified by" the form-entry system. (Ex. 25, the '356

9  Patent Amended Claim Construction Order).

10  ### III.    LEGAL STANDARD

11

12      Summary judgment is appropriate only when "there is no genuine issue as to any material

13  fact and ... the moving party is entitled to a judgment as a matter of law." *Caterpillar Inc. v.*

14  *Sturman Indus., Inc.*, 387 F.3d 1358, 1373 (Fed. Cir. 2004), (quoting Fed. R. Civ. P. 56 (c)), *cert.*

15  *denied*, 545 U.S. 1114 (2005). "The evidence of the non-movant is to be believed, and all justifiable

16  inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

17  255 (1986)). "Summary judgment thus is not appropriate if the nonmoving party presents evidence

18  from which a reasonable jury could resolve the material issue in his or her favor." *Online Policy*

19  *Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195. 1199 (N.D. Cal. 2004). Where the evidence presents

20  a close question that could be resolved either way by a jury, summary judgment should be denied.

21  *See Schmidt v. Farm Credit Servs.*, 977 F.2d 511, 516 (10th Cir. 1992) (reversing grant of summary

22  judgment "[b]ecause this question could, given the facts developed, be resolved either way").

23  ### IV.    ARGUMENT

24      #### A.    Defendants Cannot Meet the Clear and Convincing Standard to Establish
        Their Invalidity Defense
25

26      Patents are presumed valid, and the burden is on the party asserting invalidity to prove it with

27  facts supported by "clear and convincing evidence." 35 U.S.C. § 282. To prove anticipation under

28  35 U.S.C. § 102, Defendants must prove, by clear and convincing evidence, that "all of the elements

1   and limitations of the claim are found within a single prior art reference." *See Scripps Clinic &*

2   *Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991).  "Anticipation is a

3   question of fact." *See Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed.

4   Cir. 2006); *Scripps*, 927 F.2d at 1576.

5        Unless all elements of a claim are expressly or inherently found in a single prior art

6   reference, in the same situation, and united in the same way to perform the identical function, there

7   can be no anticipation. *See Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236 (Fed. Cir. 1989)

8   ("The identical invention must be shown in as complete detail as is contained in the patent claim.").

9   Further, for a prior art reference to anticipate a claim, the reference must disclose each and every

10  element of the claim with sufficient clarity to place it in the possession of a person of ordinary skill

11  in the field of the invention. *See Crown Operations Int'l, Ltd. v. Solutia Inc.,* 289 F.3d 1367 (Fed.

12  Cir. 2002) ("An anticipating reference must describe the patented subject matter with sufficient

13  clarity and detail to establish that the subject matter existed in the prior art and that such existence

14  would be recognized by persons of ordinary skill in the field of the invention.").

15  **B.    The Home Accountant Program Does Not Anticipate Any Claim of the**
16  **'356 Patent**

17       Defendants' invalidity "analysis" conveniently glosses over critical claim limitations (and

18  this Court's construction of them) missing from the Home Accountant program.  Accordingly, Home

19  Accountant cannot anticipate the '356 patent.

20       **1.    Home Accountant Does Not Disclose Any "*Predefined Tool***
21  ***Associated With*" Any Information Fields and "Specified by the**
     **System as an Appropriate Tool for Filling in the Information**
22  **Called for by That Field"**

23       Defendants have provided no evidence that Home Accountant discloses any "predefined"

24  tool that is "associated with" an information field and "specified by" the form-entry system as

25  required by the claims and this Court's claim construction.  (Ex. 25, the '356 Patent Amended Claim

26  Construction Order).  Nor can they, because the Home Accountant program simply does not operate

27  that way.  Instead, Defendants have concocted their invalidity argument for the '356 patent by

28  combining the Home Accountant program with the separate Macintosh system desk accessory tools

1  such as the "Key Caps" desk accessory discussed above.  For example, Defendants argue that a user

2  could use the "Key Caps" desk accessory to enter information into the Home Accountant data fields.

3  (Defendants Opening Br. at 5-6).

4            **2.**       **The "Key Caps" Macintosh Desk Accessory is Not "*Associated***

5                           *With*" **Any Information Fields or "Specified by the System as an**

                         **Appropriate Tool for Filling in the Information Called for by**

6                           **That Field"**

7        As an initial matter, the "Key Caps" desk accessory was not, and was never intended to be,

8  an "on-screen keyboard" or a virtual keyboard as suggested by Defendants.  (Defendants Opening

9  Br. at 5-6).  Rather, the "Key Caps" accessory was a simple tool designed to show different  fonts,

10  and to allow a user to cut and paste single non-text-symbols used with certain fonts.  (Ex. 27,

11  Tognazzini Dep. Tr. at 126:13-127:3).  The "Key Caps" accessory was not associated with the Home

12  Accountant program; it was never "specified by" the Home Accountant data entry system; and it

13  certainly did not appear, pop-up, or in any other way respond to the Home Accountant program.

14  (Ex. 14, Expert Report of Bruce Tognazzini ¶¶ 124-125).

15        Only by using a lengthy series of convoluted and *time-consuming* steps may one somehow

16  "use" the Key Caps desk accessory as a way of composing information or placing text into a Home

17  Accountant data field.  As explained by Defendants' own expert, such steps would include:

18        (1)    The user clicks on a data entry field in the Home Accountant program such as the

19                 "pay to" field in the personal checkbook form to activate the field.



LUCENT'S OPPOSITION TO MICROSOFT'S SUMMARY JUDGMENT BRIEF RE INVALIDITY OF U.S. PATENT NO. 4,763,356     10     Case Nos. 02-CV-2060-B (CAB), 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 21
Page 000364

(2)     The user clicks on the apple icon in the upper left corner of the system screen. The apple icon, unassociated with the Home Accountant program, calls up a drop-down menu of various desk accessories.

(3)     The user holds the mouse button down, and drags the pointer down to one of the desk accessories such as the Key Caps accessory.

(4)     The user releases the mouse button, and the Macintosh operating system (not the Home Accountant program) brings up the Key Caps accessory.

(5)     The user then clicks on the various letters in the Key Caps accessory to compose information such as a name.



(6)     There is no "enter" button on Key Caps. Thus, when the user is done clicking on letters, he must "cut and paste" the text.

(7)     Cutting and pasting takes several steps. First, the user clicks at the start of the text, drags over the text, and releases the mouse.

(8)     Then the user must go to the "edit" menu and select "copy" from the drag-down menu.

(9)     Then the user either closes or moves the Key Caps accessory by clicking on the upper-left close box or clicking and dragging the title bar.



(10)    To paste, the user must now click in the desired field of the Home Accountant program such as the "pay to" field in the personal checkbook form to activate the field.

(11)    Then the user must go to the "edit" menu and select "paste" from the drag-down menu.

Only after this time consuming and laborious process can one somehow "use" a desk accessory for the purposes of inputting information into a Home Accountant data field. (Ex. 28, Buscaino Dep. Tr. at 87:11-88:23) (recognizing the process as "a very long set of steps"). Defendants' attempt to stretch the Key Caps desk accessory as a possible means of form data entry is nonsensical, as it would require a laborious and time-consuming effort—the very problem that the invention of the '356 patent sought to solve. Indeed, when asked about using Key Caps as a data entry tool, Mr. Tognazzini (one of the original user interface designers for the Apple Macintosh computer), testified that "in 36 years of looking at Mac[intosh] users," and after "watch[ing] hundreds and hundreds of people using Macintoshes," he had "never seen anybody use Key Caps in the manner" suggested by Defendants. (Ex. 27, Tognazzini Dep. Tr. at 139:20-22; 141:7-11).

The evidence shows:

- The Key Caps desk accessory is not "*predefined*" by Home Accountant. Key Caps is a separate Macintosh operating system desk accessory.

- The Key Caps desk accessory is not "*associated with*" any information fields in Home Accountant. Home Accountant in no way calls upon or associates the Key Caps tool.

- The Key Caps desk accessory is not "*specified by*" Home Accountant "as an appropriate tool for filling in the information called for by that field." Home Accountant does not specify the desk accessory for any purpose.

(Ex. 25, the '356 Patent Amended Claim Construction Order). Defendants cannot show, clearly and convincingly, any evidence to the contrary. Accordingly, Defendants' motion for summary judgment should be denied as to each and every claim of the '356 patent.

**3.    Home Accountant Does Not Disclose Any Predefined, Associated, and Specified Tool That is "Adapted to Allow Said User to Compose Said Information"**

As discussed above, independent claims 1 and 19 (and their dependent claims 2-9 and 20-22) also contain the additional requirement that at least one of the "predefined tools associated with" a

1   data field be a "tool adapted to allow said user to compose said information." (Ex. 23, the '356

2   Patent Col. 15:65-68, 18:11-13). In other words, as this Court clarified in its *Markman* Order, the

3   program must include a predefined tool, associated with an information field and specified by the

4   program, that is "a graphical keyboard tool or a graphical number keypad tool, which allows the user

5   to compose information by pointing to the display keys of that tool." (Ex. 25, the '356 Patent

6   Amended Claim Construction Order at 4, 8, 10).

7       The Key Caps desk accessory is the only possible "composition tool" identified by

8   Defendants that could be used "to compose" information for entry. (Defendants Opening Br. at 5-

9   6). As discussed above, however, the Key Caps desk accessory is not (1) *predefined* by Home

10  Accountant, (2) *associated with* any information field in Home Accountant, or (3) "*specified by*"

11  Home Accountant as an appropriate tool for filling in the information called for by that field. For

12  these additional reasons, Home Accountant cannot anticipate claims 1-9 and 19-22 of the '356

13  patent.

14          **4.      Home Accountant Does Not Disclose Any Means "Responsive to**

15          **Information Being Inserted in at Least One of Said Fields For**
            **Indicating Another of Said Fields to be Filled in and For**

16          **Concurrently Displaying the Respective One of Said Tools to be**
            **Used by the User"**

17

18      Independent claim 10 (and its dependent claims 11-18) contains the additional limitation

19  requiring a "means *responsive* to information being inserted in at least one of said fields for

20  indicating another of said fields to be filled in and for concurrently displaying the respective one of

21  said tools to be used by the user to supply the kind of information identified for said other fields."

22  (Ex. 23, the '356 Patent Col. 16:39-53). Claim 10, unlike the other independent claims of the '356

23  patent, contains the key term "*responsive*" and thus requires that the data entry system take certain

24  actions "*in response to*" information being entered into a field. (Ex. 25, the '356 Patent Amended

25  Claim Construction Order at 7). This Court's *Markman* Order confirms and clarifies this

26  understanding in defining the function of this 35 U.S.C. § 112, ¶ 6 claim limitation:

27

28

<u>Function</u>: *in response to* information being inserted into one of the fields, indicating another of the fields to be filled in and concurrently displaying the respective one of said tools to be used by the user to supply the information identified for the other field.

(Ex. 25, the '356 Patent Amended Claim Construction Order at 7). In other words, claim 10 requires that, after data is entered into a field, the data entry system responds by:

> (1)    highlighting, selecting or otherwise "indicating" another entry field, and,
>
> (2)    activating, popping-up, or otherwise "concurrently displaying" the next appropriate predefined, associated, and specified tool for that field.

Defendants have provided no evidence that Home Accountant operates in this manner—because it does not. Specifically, the Home Accountant program does not "concurrently display" the next appropriate, predefined, associated, and specified tool "in response to information being inserted into one of the [previous] fields." (Ex. 25, the '356 Patent Amended Claim Construction Order at 7). For these additional reasons, Home Accountant cannot anticipate claims 10-18 of the '356 patent.

> **5.    Home Accountant Does Not Disclose "A Plurality of Predefined Tools Associated With Respective Ones of Said Fields, Each of Said Tools Being Adapted to Supply Information of the Kind Identified For Its Associated Field"**

Independent claim 10 (and its dependent claims 11-18) further contains the additional limitation requiring "a plurality of predefined tools associated with respective ones of said fields, each of said tools being adapted to supply information of the kind identified for its associated field." (Ex. 23, the '356 Patent Col. 16:44-47). Claim 10, unlike the other independent claims of the '356 patent, contains the requirement that there be "*a plurality of predefined tools associated* with respective ones of said fields." (Ex. 23, the '356 Patent Col. 16:44).

As set forth above, and supported by Lucent's expert, the Home Accountant desk accessories are clearly not associated with any fields. (Ex. 14, Expert Report of Bruce Tognazzini ¶¶ 121-125). That leaves the Name and Categories Menus of Alternatives as depicted in Figure 4 of Defendants' opening brief. (Defendant's Opening Br. at 9). Defendants claim that the Name and Categories Menus of Alternatives are separate tools, and apparently thereby provide a "plurality." (*Id.* at 13).

1    However, as Figure 4 clearly shows, and Mr. Tognazzini confirmed in his report, what Defendants

2    claim to be more than one tool, is rather a single tool. (Ex. 14, Expert Report of Bruce Tognazzini ¶

3    131; Defendant's Opening Br. at 9). Defendants have provided no evidence that the Home

4    Accountant provides a "plurality of predefined tools."

5         Even if what Defendants point to is construed as more than one tool, Defendants have not

6    shown any association with the respective fields. As the Defendants point out in their opening brief,

7    the Name and Categories Menus of Alternatives is initiated by selecting the "Apple Icon" in the

8    upper left corner of the Macintosh screen, and then selecting the desired tool. (Defendant's Opening

9    Br. at 13). The Apple Icon in the corner of the screen is in no way associated with any field of any

10   form, and selecting the Icon does not even initiate the tool, yet another step is required to actually

11   pull up the tool.  (*see* Macintosh "Desk Accessories" *supra* p. 6).  Accordingly, Defendants have

12   provided no evidence that the Name and Categories Menus of Alternatives is associated with any

13   field as required by claim 10 of the '356 patent.

14        For these yet additional reasons, Home Accountant cannot anticipate claims 10-18 of the

15   '356 patent.

16

17   **V.     CONCLUSION**

18        For the foregoing reasons, Lucent respectfully requests that the Court deny Defendants'

19   motion for summary judgment.

20

21

22

23

24

25

26

27

28

1

2   Dated:  February 9, 2007                        Lucent Technologies Inc.

3

4                                    By: _____

5                                         Alison P. Adema, SBN 149285
                                          HAHN & ADEMA
6                                         501 West Broadway, Suite 1600
                                          San Diego, California  92101-3595
7                                         Telephone:  (619) 235-2100
                                          Facsimile:  (619) 235-2101
8

9                                         John M. Desmarais (admitted pro hac vice)
                                          Robert A. Appleby (admitted pro hac vice)
10                                        KIRKLAND & ELLIS LLP
                                          153 East 53rd Street
11                                        New York, New York  10022
                                          Telephone:  (212) 446-4800
12                                        Facsimile:  (212) 446-4900

13

14

15                                        Attorneys for Lucent Technologies Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

LUCENT'S OPPOSITION TO MICROSOFT'S SUMMARY JUDGMENT     16          Case Nos. 02-CV-2060-B (CAB),
BRIEF RE INVALIDITY OF U.S. PATENT NO. 4,763,356                         03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 21
Page 000370