John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Roger A. Denning (SBN 228998)
Christopher S. Marchese (SBN 170239)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California  92130
Telephone:    (858) 678-5070
Facsimile:    (858) 678-5099

Stephen P. McGrath (SBN 202696)
Microsoft Corporation
One Microsoft Way
Redmond, WA  98052
Telephone:    (425) 882-8080
Facsimile:    (425) 936-7329

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>    Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>    Intervenor and Counter-claimant, | Case No. 07-CV-2000 H (CAB)<br>consisting of matters severed from consolidated cases:<br>02-CV-2060 B (CAB)<br>03-CV-0699 B (CAB)<br>03-CV-1108 B (CAB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LUCENT TECHNOLOGIES, INC.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS**<br><br>**REDACTED VERSION** |
| MICROSOFT CORPORATION,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Defendant and Counter-claimant, | Dated:        January 8, 2008<br>Time:         9:30 A.M.<br>Courtroom:    13<br>Judge:        Hon. Marilyn L. Huff |

| | |
|---|---|
| 1 | LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, |
| 2 | |
| 3 | Plaintiff, |
| 4 | v. |
| 5 | DELL, INC., |
| 6 | Defendant. |

Case No. 07-CV-2000 H (CAB)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

III. SUMMARY JUDGMENT STANDARD .............................................................. 2

IV. ARGUMENT ......................................................................................................... 2

    A. Lucent Violated DUFTA By Assigning The Video Coding Patents To MPT ................................................................................. 2

    B. Lucent Is Not Entitled To Summary Judgment On Defendants' Common Law Fraud Counterclaims ........................................................... 6

    C. Lucent Is Not Entitled To Summary Judgment On Microsoft's Void Act Counterclaim ................................................................................ 11

    D. Lucent Is Not Entitled To Summary Judgment On Defendants' Tortuous Interference With Prospective Economic Advantage Counterclaim ............................................................................................... 13

V. CONCLUSION ..................................................................................................... 15

i

Case No. 07-CV-2000 H (CAB)

**TABLE OF CONTENTS (cont'd.)**

Page

**FEDERAL CASES**

*Cf. In re Travelstead,*
   227 B.R. 638 (D. Md. 1998) .................................................................................................. 4

*Harper v. Delaware Valley Broadcasters,*
   743 F. Supp. 1076 (D. Del. 1990), *aff'd*, 743 F.2d 959 (3d Cir. 1991) ............................ 12

*Pennsylvania Department of Public Welfare v. Davenport,*
   495 U.S. 552 (1990) .............................................................................................................. 4

*School District No. 1J, Multnomah County v. ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 2003) ................................................................................................. 14

**STATE CASES**

*Cartmell v. Verisign, Inc.,*
   2005 WL. 1459672 (W.D. Wash. June 21, 2005) ............................................................. 12

*Compare Dryden v. Gallucio,*
   2007 WL. 185467 (Del. Ch. Jan. 11, 2007) ........................................................................ 3

*Harbinger Capital Partners Master Fund I, Ltd. v. Granite Broad Corp.,*
   906 A.2d 218 (Del. Ch. 2006) .............................................................................................. 4

*Kulp v. Timmons,*
   2002 WL. 1824909 (Del. Ch. July 30, 2002) ............................................................... 6, 11

*Lamorte Burns & Co. v. Walters,*
   770 A.2d 1158 (N.J. 2001) ................................................................................................. 14

*Lucent Tech., Inc. v. Gateway, Inc.,*
   2007 WL. 2900484 (S.D. Cal. Oct. 1, 2007) .............................................. 3, 4, 5, 7, 8, 11, 14, 15

*Multimedia Patent Trust v. Microsoft Corp.,*
   2007 WL. 2696675 (S.D. Cal. Sept. 10, 2007) ................................................................... 1

**FEDERAL STATUTES**

11 U.S.C. § 101(5) .......................................................................................................................... 4

**STATE STATUTES**

Del. Code Ann. tit. 6, § 1304(b)(1) (2007) ................................................................................... 3

Del. Code Ann. tit. 6, § 1301(3) (2007) ........................................................................................ 4

Del. Code Ann. tit. 6, § 1304(a)(1) (2007) .................................................................................... 2

## I. INTRODUCTION[1]

On December 10, 2007, Lucent moved for Summary Judgment on Defendants' Amended Trust-Related Counterclaims (the "Motion"), specifically Defendants' claims for: (1) fraudulent transfer under DUFTA; (2) common law fraud under Delaware law; (3) a declaratory judgment that Lucent's assignment of the Video Coding Patents was a void act; and (4) tortuous interference with prospective economic advantage (collectively, the "Amended Counterclaims").[2] As shown below, the Motion should be denied.

This Court has allowed these claims to survive on two other occasions. First, over Lucent's strong objections, Judge Brewster granted Defendants' Motions to Amend to add the Amended Counterclaims. In its Opposition to Defendants' Motion for Leave to File Amended Answers and Counterclaims, Lucent argued that leave to amend should be denied on grounds of futility since the Amended Claims could "not withstand a motion for summary judgment." [Lucent Opp. at 6-7.] Lucent went on to argue in detail that it would be entitled to summary judgment on each of the claims. [*Id.* at 6-18.] This Court rejected Lucent's arguments and granted Defendants leave to amend. Second, in a related case styled as *Multimedia Patent Trust v. Microsoft Corp., et al.*, Case No. 07-CV-0747-H, Lucent and MPT moved to dismiss Defendants' identically worded DUFTA, common law fraud, void act and tortuous interference counterclaims for failure to state a claim. By Order dated September 10, 2007, after briefing and argument, this Court denied Lucent's motion to dismiss.

As demonstrated below, the uncontested facts adduced in discovery, which are largely drawn from Lucent's own contemporaneous documents and statements, support judgment for Defendants on the Amended Counterclaims. At a minimum, the undisputed record raises genuine

---

[1] Unless otherwise noted, the defined terms herein have already been defined in Microsoft's Memorandum And Points Of Authority In Support Of Microsoft's Motion For Summary Judgment filed on August 17, 2007. Citations to "Lucent Br. at __" or to Lucent's "Motion" are to Lucent's Motion For Summary Judgment On Defendants' Remaining Trust-Related Counterclaims and to Lucent's Memorandum Of Points And Authorities In Support Of Lucent's Motion For Summary Judgment On Defendants' Remaining Trust-Related Counterclaims.

[2] This Opposition is submitted by Microsoft on behalf of all Defendants. Microsoft's tortuous interference with business expectancy counterclaim is essentially the same as Dell's and

issues of fact that dictate submission of the Amended Counterclaims to the jury for decision. Lucent's Motion should therefore be denied.

## II. STATEMENT OF FACTS

Defendants hereby incorporate by reference the factual background set forth in Dell's Memorandum Of Points And Authorities In Support Of Dell's Motion On Behalf Of All Defendants For Summary Judgment Of Noninfringement Based On The Defense Of License, filed with this Court on August 17, 2007 [Dell Br. at 4-15], which facts, in turn, were incorporated by reference in Microsoft's Motion For Summary Judgment [Microsoft Br. at 8], and Microsoft's Memorandum Of Points And Authorities In Opposition To Lucent's Motion For Summary Judgment. [Microsoft Opp. Br. at 3-5.]

## III. SUMMARY JUDGMENT STANDARD

Defendants agree with Lucent's statement of the legal standards for summary judgment. Defendants simply submit that Lucent has not met those standards.

## IV. ARGUMENT

### A. Lucent Violated DUFTA By Assigning The Video Coding Patents To MPT

Section 1304(a) of DUFTA provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer . . . [w]ith the actual intent to hinder, delay or defraud any creditor of the debtor." DEL. CODE ANN. tit. 6, § 1304(a)(1) (2007). Thus, the elements under this subsection of DUFTA are: (1) Lucent "transferred" the Video Coding Patents to MPT; (2) Lucent "transferred" the Video Coding Patents to MPT with the "actual intent to hinder, delay or defraud" Defendants; and (3) Defendants are creditors of Lucent. The undisputed record evidence in this case satisfies all three elements.

First, Lucent does not dispute here, nor could it, that it transferred the Video Coding Patents to MPT. DUFTA broadly defines the term "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an

---

Gateway's tortuous interference with prospective economic advantage counterclaims. *See Multimedia Patent Trust v. Microsoft Corp.*, 2007 WL 2696675, at *10 (S.D. Cal. Sept. 10, 2007).

2

Case No. 07-CV-2000 H (CAB)

asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." *Id.* at § 1301(12). Lucent formed MPT and assigned the Video Coding Patents to MPT on November 28, 2006 – a mere 2 days before the merger was consummated. [*See* Blackburn Dec. to Dell Br., Ex. 14 at Exs. B and C; Marchese Dec. to Microsoft Opp. Br., Ex. 6 (Landmann I Dep. 99:19-22; 109:15-110:6).] By assigning the Video Coding Patents to MPT, Lucent parted with the Video Coding Patents and placed them out of the reach of Defendants and all other MPEG-2 licensees. *Compare Dryden v. Gallucio*, 2007 WL 185467, at *4 (Del. Ch. Jan. 11, 2007) (placing property out of the reach of creditors constitutes a "transfer.") *with Lucent Tech., Inc. v. Gateway, Inc.*, 2007 WL 2900484, at *2 (S.D. Cal. Oct. 1, 2007) ("Lucent has exerted significant effort to place these patents out of the reach of MPEG LA's patent pool through its creation of MPT."). Thus, the assignment of the Video Coding Patents to MPT constitutes a "transfer" under DUFTA.

Second, Lucent does not contest in its motion that the assignment of the Video Coding Patents to MPT was done with "actual intent to hinder, delay or defraud" for purposes of DUFTA. Nor could Lucent contest this fact because Microsoft has previously set forth a confluence of statutory factors enumerated under DUFTA that show that Lucent intended to hinder, delay and defraud Defendants and other MPEG-2 licensees by assigning the Video Coding Patents to MPT, to avoid Defendants' and other MPEG-2 licensees' license to the Video Coding Patents. [*See* Microsoft Br. at 15-16.][3]

---

[3] The undisputed record establishes many of DUFTA's statutory factors showing Lucent's actual intent to hinder, delay or defraud Defendants and other MPEG-2 licensees:
- The transfer of the Video Coding Patents was to an *insider*, MPT, which was beneficially owned by Lucent, now a subsidiary of Alcatel (DEL. CODE ANN. tit. 6, § 1304(b)(1) (2007));
- Lucent retained substantial *control* over MPT and the Video Coding Patents (*id.* at § 1304(b)(2));
- Before the merger was consummated, Lucent *concealed* the creation of MPT and the assignment of the Video Coding Patents (*id.* at § 1304(b)(3) and (7));
- Lucent was aware before the transfer of the Video Coding Patents to MPT that Defendants had argued to the Court that as a result of the merger the Video Coding Patents would be swept into the MPEG LA patent pool and the evidence shows that Lucent ultimately created MPT and assigned the Video Coding Patents to MPT to prevent this unfavorable result and to prevent Lucent's infringement claims from becoming moot (*id.* at § 1304(b)(4));

3

Case No. 07-CV-2000 H (CAB)

Instead, Lucent argues that Defendants are not creditors of Lucent, claiming that Defendants never had a right to monetary payment. [Lucent Br. at 3-6.] Lucent's reading of the term "claim" is contrary to DUFTA, which broadly defines the term "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, *unliquidated,* fixed, *contingent*, matured, *unmatured, disputed*, undisputed, legal, *equitable*, secured or unsecured." DEL. CODE ANN. tit. 6, § 1301(3) (2007) (emphasis added). And contrary to Lucent's claim, *Harbinger Capital Partners Master Fund I, Ltd. v. Granite Broad Corp.*, 906 A.2d 218 (Del. Ch. 2006) did not limit the term "claim" only to a right to monetary payment. Rather, *Harbinger* states that the term "claim" under fraudulent transfer acts and the Bankruptcy Code are interchangeable. 906 A.2d at 224 n.16. The term "claim" under the Bankruptcy Code is to be broadly construed to include a "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent, matured, unmatured, disputed*, legal, *equitable*, secured, or unsecured." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990) (citing 11 U.S.C. § 101(5)(A)) (emphasis added). In fact, Lucent's position that the term "claim" requires a right to monetary payment has been rejected. *Cf. In re Travelstead*, 227 B.R. 638, 647 (D. Md. 1998).

The facts supporting Defendants' DUFTA claims are undisputed. Months before the merger was consummated, Lucent had determined that under the terms of the MPEG LA licensing agreement, the Video Coding Patents would, after the close of the merger, automatically and retroactively become licensed to Defendants and all other MPEG LA licensees. [*See* Blackburn Dec. to Dell. Br., Ex. 1 (LUC 1313137-38) (Memo from Lucent's senior IP lawyers determining

, *see also Lucent Tech., Inc.*, 2007 WL 2900484, at *2

- MPT was created and the transfer of the Video Coding Patents occurred just **2 days** before consummation of the merger (*Id.* at § 1304(b)(10)); and
- Lucent transferred the Video Coding Patents to MPT and received **no** consideration from MPT for those patents or the litigation claims it conferred on MPT associated with those patents, let alone **no reasonably equivalent value**, even though Lucent maintains that those patents and the damages related to the alleged infringement of those patents are worth billions (*id.* at § 1304(b)(8)).

4

Case No. 07-CV-2000 H (CAB)

(According to Lucent's in-house counsel, if the status quo was maintained, upon the merger Lucent's . . . video coding patents . . . would be subject to Alcatel's commitment to MPEG LA.").] Lucent also categorically concluded that this result would eliminate any damages Lucent could seek in the lawsuits concerning Defendants' alleged infringement of the Video Coding Patents, which, in turn, would effectively moot those lawsuits.

Lucent then executed the Trust Agreement for MPT on November 21, 2006, and Lucent received the certificate of trust from the Delaware Secretary of State on November 28, 2006. [*Lucent Tech., Inc.*, 2007 WL 2900484, at *2.] Lucent assigned the Video Coding Patents to MPT that same day. [*Id.*] According to Lucent, it would not have formed MPT and assigned the Video Coding Patents to MPT ***but for*** this unfavorable result. [*See* Marchese Dec. to Microsoft Opp. Br., Ex. 14 (Landmann II Dep. 94-96, 104:11-105:213) Ex. 6 (Landmann I Dep. at 99); Blackburn Dec. to Dell. Br., Ex. 33 (D'Amelio at 108, 123).] Despite its arguments to the contrary, the record plainly evidences that even Lucent believed that it owed to Defendants an unmatured legal obligation contingent upon the merger and Lucent sought to circumvent that legal obligation by forming MPT and assigning the Video Coding Patents to MPT. By doing so, however, Lucent violated DUFTA, and Defendants are therefore entitled to one or more of the broad remedies provided for under DUFTA. [*See* Microsoft Br. at 17-18.]

Even if the Court were to accept Lucent's position that the term "claim" can only include an obligation reducible to monetary payment, Defendants have satisfied this standard. Lucent "reasonably fore[saw] incurring the cost of a claim or judgment at the time of conveyance." [Lucent Br. at 5 (quoting *Leopold v. Tuttle*, 549 A.2d 151, 154 (Pa. Super. Ct. 1988).]

[Blackburn Dec. to Dell Br., Ex. 1 (LUC 1313137-38); Ex. 33 (D'Amelio Dep. 49:5-51:2, 54:10-55:3).] In essence, Defendants seek the right to be free from infringement liability relating to the Video Coding Patents, which is clearly measurable in monetary terms – the flipside of infringement damages. Therefore, Lucent is not entitled to summary judgment on Defendants' DUFTA counterclaims even under its own theory.

### B. Lucent Is Not Entitled To Summary Judgment On Defendants' Common Law Fraud Counterclaims

Lucent's attack on Defendant's common law-based counterclaim under Delaware law is a classic strawman argument. Lucent argues one form of common law fraud involving intentional misrepresentation or concealment, and proceeds to argue that there is no evidence to support a common law fraud claim under Delaware law. [Lucent Br. at 6-7.] Lucent's strawman argument must be rejected.

In the Delaware Court of Chancery case *Kulp v. Timmons*, 2002 WL 1824909 (Del. Ch. July 30, 2002), Vice-Chancellor Jacobs (now Justice Jacobs) explained that, although Delaware case law does not delineate in a comprehensive "bright line" fashion the universe of common law grounds upon which a trust can be invalidated, Delaware case law does clearly reflect a basic principle that Delaware courts "will not give effect to a spendthrift trust that has no economic realty and whose only function is to enable the settler to control and enjoy the trust property without limitations or restraints, as was done before the trust was created." *Id.* at *5. *Kulp* held that where the settler is also the beneficiary, "the spendthrift trust will be invalidated, because [p]ublic policy does not permit one to create a spendthrift trust with his own property for his own benefit." *Id.* at *6 (internal quotations omitted).

As was the case in *Kulp*, Lucent is the beneficiary of MPT. Specifically, the undisputed

6

Case No. 07-CV-2000 H (CAB)

idge Brewster made the same factual finding. [*See Lucent Tech., Inc.*, 2007 WL 2900484, at *2 (finding that "[t]he beneficiaries of the Trust are Lucent Technologies Foundation (1% with a maximum of $100,000 in any year) and Lucent (the remainder).").]

The undisputed record evidence also demonstrates that the creation of MPT and the assignment of the Video Coding Patents was a sham transaction. As Judge Brewster summarized, soon after Alcatel and Lucent entered into the Merger Agreement in April 2006, "Lucent began strategizing as to the fate of [the Video Coding Patents and its other] MPEG-2 related patents." [*See Lucent Tech., Inc.*, 2007 WL 2900484, at *2.] In particular, in June 2006, Lucent described an

L

E

With little time remaining to build the "best strategy," Alcatel and Lucent rushed to assess the financial and legal ramifications of Alcatel's membership in MPEG LA. [Blackburn Dec. to Dell Br., Ex. 31; Ex. 7 (Landmann II Dep. 82:9-83:2).] As part of its analysis, Lucent considered several options for divesting itself of the Video Coding Patents prior to the merger, including selling the Video Coding Patents to a third party, assigning the Video Coding Patents to Lucent's former licensing agent, ThinkFire, or by creating a trust to which it could assign the Video Coding Patents. [Marchese Dec. to Microsoft Opp. Br., Ex. 14 (Landmann II Dep. 51:5-52:10); Ex. 6 Landmann I

1  Dep. 68:20-69:13).] Interestingly, when offering certain Video Coding Patents to ThinkFire,

2

3

4

5

6

7

8                                                                                              s, and

9

10

11  After considering all options, Lucent's COO gave the final approval for creating MPT and assigning

12  the Video Coding Patents to MPT. [*See Lucent Tech., Inc.*, 2007 WL 2900484, at *2.] And on

13  November 21, 2006, just 9 days before completion of the merger, Lucent executed the Trust

14  Agreement, and on November 28, 2006, just 2 days before the merger, Lucent received the

15  certificate of merger from the Delaware Secretary of State and then immediately assigned the Video

16  Coding Patents to MPT. [*Id.*]

17

18          ng

19  ag

20  9ℓ                                                                                        Indeed,

21  Judge Brewster has already found that "Lucent exerted significant effort to place these patents [the

22  Video Coding Patents] out of the reach of MPEG LA's patent pool through its creation of MPT."

23  [*See Lucent Tech., Inc.*, 2007 WL 2900484, at *5.]

24          The undisputed record also establishes that Lucent withheld the creation of MPT and the

25  assignment of the Video Coding Patent to MPT from Defendants, Alcatel's and Lucent's

26  shareholders, regulators and the general public. Defendants did not learn of MPT and the patent

27  assignment until December 11, 2006 — some *12 days* after the merger was consummated.

28  [Marchese Dec. to Microsoft Opp. Br., Ex. 16 (December 11, 2006 Confidential Letter Brief).] As

]

Lucent similarly deceived its shareholders and the general public. Lucent told its shareholders and the public in two separate Proxy Statements, soliciting shareholder approval for the merger, that Alcatel and Lucent would combine their patent portfolios in the merger, [*Id.*, Ex. 19 (LUC 1305794-1305838)], and stated that "[t]he way the proposed merger is structured, all of the patents will continue to be owned by Lucent and its subsidiaries." [*Id.*, Ex. 20 (LUC 1306135); *see also id.*, Ex. 12 (Dinella Dep. 92:8-93:19) (confirming that this document filed with the SEC is accurate and admitting that following the closing of the merger, all of Lucent's patents continued be owned by Lucent and its subsidiaries).] Lucent never corrected this misstatement. Nor did Lucent disclose to its shareholders its plan to create MPT or assign to MPT assets and claims that Lucent contends are worth billions of dollars. [*Id.*, Ex. 6 (Landmann I Dep. 18:3-17; 32:16-33:1); Ex. 7 (D'Amelio Dep. 122:8-16).]

Indeed, Lucent's disclosures were well-timed with respect to the regulatory approval process. The DOJ's Antitrust Division approved the merger on June 7, 2006. [Marchese Dec. to Microsoft Opp. Br., Ex. 21 (June 7, 2006 Current Report on Form 8-K).] The FTC and other regulatory agencies did not challenge the merger on substantive antitrust grounds. Likewise, the European Commission approved the merger under the European Union's competition rules on July 24, 2006. [*Id.*, Ex. 22 (July 27, 2006 Current Report on Form 8-K).] On September 7, 2006, Lucent's shareholders voted to approve the Merger Agreement. [*Id.*, Ex. 23 (September 7, 2006 Current Report on Form 8-K).] And on November 17, 2006, President Bush accepted the recommendation from CFIUS allowing Alcatel and Lucent to proceed with the merger — thereby finalizing all regulatory and shareholder approval for the merger. [*Id.*, Ex. 24 (November 20, 2006 Current Report on Form 8-K).] It was not until after Alcatel and Lucent obtained regulatory and

shareholder approval — essentially closing the deal — that Lucent created MPT and assigned the Video Coding Patents to MPT on November 28, 2006. And Lucent did not make these facts known to Defendants, Alcatel's and Lucent's shareholder, and regulators until December 11, 2006 — when Lucent filed its "Confidential Letter Brief" — notwithstanding the fact that Lucent was considering (and possibly already concluded) that it was going to create MPT (or a similarly situated entity) and assign the Video Coding Patents to MPT.

Other facts supporting the invalidation of MPT as a sham trust include:

- Lucent retains the right to appoint MPT's Trustees, the Trust Advisors and all successor Trust Advisors of MPT. [Blackburn Dec. to Dell Br., Ex. 14 at Ex. B (Multimedia Patent Trust §§ 3.1, 3.2).]
- Lucent handpicked Gerald deBlasi as MPT's Licensing and Litigation Trustee. Mr. deBlasis is a patent lawyer who admittedly was employed by Lucent for 5 years and another 5 years with AT&T. [Marchese Dec. to Microsoft Opp. Br., Ex. 10 (deBlasis Dep. at 6).]
- Mr. deBlasis understood that Lucent was creating MPT due "to the fact that Alcatel is in the MPEG LA pool, and Lucent is in litigation with Microsoft, Dell and Gateway [and] the merger would sweep the patents into the pool, and kill the lawsuits." [*Id.*, Ex. 3 (IPV 00312-313).]
- Mr. deBlasis and others at his organization referred to MPT as the "Lucent Trust" or the "partnership" with Lucent. [*Id.*, Ex. 4 (IPV 001311-312).]
- Lucent pays all of MPT's expenses, including the costs of MPT's Trustees and Trust Advisor. [*Id.*, Ex. 10 (deBlasis Dep. at 30-33, 140:5-141:1, 141:21-142:5, 163:18-165:7, 242:11-242:23); Blackburn Dec. to Dell Br., Ex. 9 (Landmann Dep. I 114:24-115:17).]
- Lucent retained the power to remove any MPT Trustee with or without cause. [Blackburn Dec. to Dell. Br., Ex. 14.]
- Lucent retains the ultimate power to determine whether the Licensing Trustee, Mr. deBlasis, can sell or otherwise monetize the Trust Patents. [*Id.*]
- MPT's counsel is Kirkland & Ellis, who is also Lucent's counsel. [*Id.*, Ex. 9 (Landmann I Dep. 46:8-17); Ex. 27 (Dinella Dep. 152:1-6).]
- Lucent selected another former Lucent (AT&T) employee, Laura Kaster, as MPT's Trust Advisor – a position that came with significant power over the operation of MPT. [*Id.*, Ex. 9 (Landmann I Dep. 43:2-15); Marchese Dec. to Microsoft Br., Ex. C (LUC 1310536-1310537, LUC 1310318).]
- MPT's only assets are the patents its holds. [Blackburn Dec. to Dell Br., Ex. 9 (Landmann I Dep. 114:24-115:17); Marchese Dec. to Microsoft Opp. Br., Ex. 10 (deBlasi Dep. 140:5-141:1).]
- MPT has no funds. [Marchese Dec. to Microsoft Opp. Br., Ex. 10 (deBlasis Dep. 164:10-12).]
- Lucent intends to fund the trust with monies requested by MPT. [Blackburn Dec. to Dell Br., Ex. 24 (Brickman Dep. 110:12-111:15).]

All of this evidence plainly shows that MPT served no economic function other than to act as a vehicle to avoid the Video Coding Patents from being swept into the MPEG LA patent pool

10

Case No. 07-CV-2000 H (CAB)

and thereby preventing the extinguishment of Lucent's infringement claims. This warrants invalidating MPT on common law fraud principles. *See Kulp*, 2002 WL 1824909, at *6-*7.

### C. Lucent Is Not Entitled To Summary Judgment On Microsoft's Void Act Counterclaim

Lucent claims that it is entitled to summary judgment on Microsoft's void act counterclaim because "this Court has already ruled in Lucent's favor on this issue." [Lucent Br. at 7.] In fact, this Court has never ruled on Microsoft's void act counterclaim, which was not before the Court until now. And based on the analysis below and in Microsoft's prior briefing, Microsoft – not Lucent – is entitled to summary judgment on its void act counterclaim. [Microsoft Br. at 13-14.]

Section 5.01(j) of the Merger Agreement provides that "Lucent will not, and will not permit any of its Subsidiaries to, sell, transfer, lease, license, pledge, encumber or otherwise dispose of any material . . . assets" prior to consummation of the merger "without Alcatel's prior written consent." [*See* Blackburn Dec. to Dell Br., Ex. 2 (Merger Agreement § 5.01(j)).] In Section 5.01 of the Merger Agreement, Lucent also divested itself of the pre-merger power, without Alcatel's written consent, to enter into material contracts, form new entities, or to compromise or transfer any material claim in litigation. [*Id.* (Merger Agreement at §§ 5.01(l) and (o)).] Lucent violated these express provisions in the Merger Agreement by forming MPT and assigning the Video Coding Patents (and their related infringement claims) to MPT.

It is undisputed that the Video Coding Patents (and related infringement claims) were material assets of Lucent. [*See Lucent Tech., Inc.*, 2007 WL 2900484, at *5 ("This evidence overwhelmingly indicates that these assets are 'material' with respect to Lucent. Therefore, . . . as a matter of law, no reasonable jury could find that the two video coding patents at issue here do not constitute 'material assets.'").] It is likewise undisputed that Lucent caused the formation of MPT and assigned these material Video Coding Patents (and related infringement claims) to MPT. [Blackburn Dec. to Dell Br., Ex. 14 at Ex. C.] The question therefore turns on whether Alcatel provided written consent as contemplated by the Merger Agreement for the assignment of these material assets to MPT. Microsoft respectfully submits that this question must be answered in the negative.

Section 10.01 of the Merger Agreement provides that all notices, requests and other communications under the Merger Agreement shall be in writing (including facsimile or similar writing) and shall be given, if to Alcatel, to Alcatel's General Counsel (at a defined address and facsimile number), with a copy to Alcatel's counsel (at a defined address and facsimile number). [*See* Blackburn Dec. to Dell Br., Ex. 2 (Merger Agreement § 10.01).] Section 10.03 provides that any provision under the Merger Agreement, including Section 10.01, can only be waived by a signed writing. [*Id.* (Merger Agreement Section 10.03).] "Notice provisions in agreements are enforceable according to their terms." *Cartmell v. Verisign, Inc.*, 2005 WL 1459672, at *4 (W.D. Wash. June 21, 2005) (citing *Harper v. Delaware Valley Broadcasters*, 743 F. Supp. 1076, 1083-84 (D. Del. 1990), *aff'd*, 743 F.2d 959 (3d Cir. 1991)). In *Cartmell*, the court, applying Delaware law, which governed the merger agreement here, strictly construed a notice provision under a merger agreement, and held that because the defendant corporation did not comply with the exact terms of the notice requirements in the merger agreement, the defendant corporation could not assert a material violation of the merger agreement as an affirmative defense. *Id.* at *3-*4. Thus, Microsoft respectfully submits that Lucent must do more than "substantially perform[]" under the Merger Agreement's notice provision – [D.I. 2109 (October 9, 2007 Order); D.I. 113 (December 7, 2007 Order)] – Lucent must strictly comply with the notice provision for obtaining Alcatel's written consent to establish MPT and to assign the Video Coding Patents (and related infringement claims) to MPT.

Here, it is uncontested in the factual record (and Lucent provides no record cites to the contrary) that Lucent created MPT and assigned the Video Coding Patents (and related infringement claims) to MPT without Alcatel's "written consent." [Blackburn Dec. to Dell Br., Ex. 9 (Landmann I Dep. 17:23-18:2); Ex. 33 (D'Amelio Dep. 121:15-122:7).] Nor can Lucent take the position that it has strictly complied with the notice provisions in the Merger Agreement. The emails and correspondence cited by the Court in its October 1, 2007 Order show only that Alcatel was aware of and to some extent was involved in Lucent's attempts to avoid the automatic and retroactive licensing of the Video Coding Patents to Defendants upon the merger. [D.I. 2109 at 7-8 citing Marchese Dec. to Microsoft Opp. Br., Exs. 1, 3, 4, 14, 17, 25-26, 28; Blackburn Dec. to Dell. Br.,

Exs. 1, 5.]

Accordingly, Microsoft – not Lucent – is entitled to summary judgment on its counterclaim that the assignment of the Video Coding Patents to MPT is void *ab initio*.

### D. Lucent Is Not Entitled To Summary Judgment On Defendants' Tortuous Interference With Prospective Economic Advantage Counterclaim

Lucent also has moved for summary judgment on Defendants' claims for tortuous interference with prospective economic advantage, on the ground that Defendants cannot prevail on their tortuous interference claims if the Court grants Lucent's motion as to the remaining trust-related claims addressed by its Motion. Lucent's request for summary judgment is both procedurally improper and legally baseless.

Lucent's motion is procedurally improper because it is not authorized by this Court's November 30th Order, and constitutes an untimely and baseless request for reconsideration. This Court's November 30th Order authorized the parties to file summary judgment motions *only* with respect to claims that "were excluded from consideration by the Court's orders of September 26 and October 1, 2007." [Gartman Dec., Ex. 2 (November 30, 2007 Order).] This Court's Order further states that it "only grants leave to file motions related to issues that were not addressed as a result of the orders referenced above." [*Id.*] Defendants' tortuous interference claims were *not* excluded from consideration; on the contrary, the Court expressly considered them in its October 1st Order and *denied* Lucent's motion for summary judgment on those claims. Lucent's flagrant violation of this Court's November 30th Order is grounds, in and of itself, for denial of its summary judgment motion.

Lucent's motion also constitutes an improper request for reconsideration of the Court's October 1st Order with respect to Defendants' tortuous interference with prospective economic advantage claims. First, Lucent's motion is untimely. Local Civil Rule 7.1(2) provides that no

13

Case No. 07-CV-2000 H (CAB)

motion for reconsideration "shall be filed more than 30 days after the entry of the ruling, order or judgment sought to be reconsidered." Lucent's motion seeks reconsideration of the Court's October 1st Order over *two months* after that order was entered. Second, Lucent has not and cannot meet the standard for reconsideration of the Court's October 1st Order.[4] Lucent identifies no new evidence or change in controlling law, and does not even attempt to argue the Court committed error in its October 1st Order. Thus, there is no basis for Lucent's request that the Court reconsider its October 1st Order.

More importantly, Lucent's factual premise for its motion – that Defendants cannot meet the "malice" element for a tortuous interference claim if their DUFTA and common law fraud claims are dismissed – is simply wrong. As demonstrated above, Lucent is not entitled to summary judgment on Defendants' DUFTA and common law fraud claims and therefore is not entitled – even under its own logic – to summary judgment on Defendants' tortuous interference with prospective economic advantage counterclaims. Furthermore, the Court expressly recognized in its October 1st Order that Defendants had shown a triable issue of fact with respect to the malice element for an interference claim by, *inter alia*, evidence of "alleged violations of the Delaware Uniform Fraudulent Transfers Act ***and allegedly misleading statements made to the SEC, FTC, and DOJ.***" [*Lucent Tech., Inc.*, 2007 WL 2900484, at *14 (emphasis added).][5] Thus, even if this Court grants summary judgment against Defendants on their DUFTA and common law fraud counterclaims, triable issues of fact will still exist as to the malice element based on Lucent's misrepresentations to regulatory authorities. These misrepresentations amply demonstrate Lucent's "transgress[ions] of generally accepted standards of common morality or of law," *see Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1171 (N.J. 2001), and Lucent does not even attempt to

---

[4] Absent "highly unusual circumstances," reconsideration is appropriate only where (1) the court is presented with newly-discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 2003).

[5] In its October 1, 2007 Order, Judge Brewster only specifically upheld Gateway's tortuous interference with prospective economic advantage counterclaim. However, Microsoft's and Dell's counterclaims for tortuous interference are virtually identical to Gateway's counterclaim.

14

Case No. 07-CV-2000 H (CAB)

argue otherwise.[6] Accordingly, for the reasons cited in this Court's October 1st Order [*Lucent Tech., Inc.*, 2007 WL 2900484, at *13-*14], and as shown in Gateway's prior briefing [Gateway Opp. Br. 11-16], Lucent's summary judgment motion should be denied.

## V.   CONCLUSION

For all the reasons stated above, the Court should deny Lucent's motion for summary judgment on the Amended Counterclaims.

Dated: December 21, 2007                    FISH & RICHARDSON P.C.


By: /s/ John E. Gartman
John E. Gartman (SBN 152300)
gartman@fr.com

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

---

[6] The malice element of a claim for tortuous interference with prospective economic advantage is the only element that Lucent's motion asserts has not been met by Defendants.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 21, 2007 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ John E. Gartman
John E. Gartman
gartman@fr.com

Attorney for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION