1  Bryan W. Farney *(pro hac vice)*
   Jeffrey B. Plies *(pro hac vice)*
2  DECHERT LLP
   300 West 6th Street, Suite 1850
3  Austin, Texas 78701
   Telephone: (512) 394-3000
4  Facsimile: (512) 394-3001

5  David J. Zubkoff (SBN 149488)
   SELTZER CAPLAN McMAHON VITEK
6  750 "B" Street, Suite 2100
   San Diego, CA 92101
7  Telephone: (619) 685-3003
   Facsimile: (619) 685-3100
8
   Attorneys for Defendants and Counterclaimants,
9  GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
   GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
10 LLC, AND COWABUNGA ENTERPRISES, INC

12                **UNITED STATES DISTRICT COURT**

13                **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. | Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases: |
| Plaintiff and Counter-Defendant, | Case No. 02-CV-2060-B (CAB) |
| | Case No. 03-CV-0699-B (CAB) |
| v. | Case No. 03-CV-1108-B (CAB) |
| GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC. | **GATEWAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 4,439,759 (FLEMING)** |
| Defendants and Counter-Claimants, | |
| and | Date:  January 8, 2008 |
| MICROSOFT CORPORATION | Time:  9:30 A.M. |
| | Courtroom: 13, 5th Floor |
| Intervenor and Counter-Claimant. | Judge:  Hon. Marilyn L. Huff |
| AND CONSOLIDATED CASES | |

GATEWAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF
U.S. PATENT NO. 4,439,759 (FLEMING)

Case No. 07-CV-2000-H (CAB)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. The Binding Admissions In The '759 Patent Show That The Claimed Modes Of Access Were Known In The Prior Art ................................................. 2

    B. Lucent Ignores The Evidence Providing Reasons To Combine The "Known Modes Of Access" Of The Prior Art Into One Terminal ....................... 3

    C. Lucent's Arguments Boil Down To Two Incorrect Claim Construction Arguments That Can Be Disposed Of As A Matter Of Law ................................ 4

    D. Lucent's Arguments Regarding "Color Memory" Are Designed To Evade The Binding Admissions Of The Patent ............................................................... 7

    E. Lucent's Other Arguments Regarding Claim 1 Also Lack Merit ......................... 7

    F. Lucent Has Not Rebutted The Evidence Of Obviousness Of Claims 2 And 3 ............................................................................................................................. 9

III. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..................................................................................10

*Silas v. Babbitt*,
    96 F.3d 355 (9th Cir. 1996) .....................................................................................6, 8

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001).............................................................................6, 8, 10

## I. INTRODUCTION

Lucent's Opposition to Gateway's motion for invalidity of the '759 patent fails to address the heart of Gateway's motion, misstates Gateway's arguments, and expends considerable effort responding to an argument that Gateway did not make. In its motion, Gateway established that the binding admissions in the '759 patent show that all of the modes of the asserted claims were "known" in the prior art and were practiced in the Telidon, Prestel, and Antiope videotex systems. The patent also admits that these systems were known to be incompatible; however, there was a trend in the industry to make a terminal that would be compatible with all three systems. Recommendation S.100 was one prior art publication that suggested making a single terminal that can switch modes in order to receive information from the three different videotex systems. Thus, a single terminal combining the admittedly known modes of access of Telidon, Prestel, and Antiope, as suggested by Recommendation S.100, would meet the claims.

Instead of addressing this argument as a whole, Lucent parses out pieces of the argument and then addresses those pieces out of context. For example, looking only at the patent, Lucent asserts that there is no reason to combine the prior art discussed therein, but Lucent ignores the teachings of Recommendation S.100 that suggest just such a combination. Then, Lucent purports to analyze Recommendation S.100, but does so in a vacuum, without consideration of the admissions in the patent regarding the videotex systems that are indisputably described in Recommendation S.100. By divorcing the admissions in the patent from the teachings of Recommendation S.100, Lucent is really attempting to sidestep the binding admissions of its own patent. In particular, although admitting that Recommendation S.100 describes Antiope systems, Lucent spends more than four pages of briefing arguing that Recommendation S.100 does not disclose a color memory, even though the patent admits that Antiope specifies colors by indexing a color memory.

When Gateway's argument is examined as a whole, it is seen that Lucent has not created any genuine issue of material fact. If anything, Lucent's arguments boil down to an attempt to modify the Court's claim construction, which must be rejected as a matter of law. This is especially true because obviousness is a question of law amenable to summary judgment.

---

GATEWAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION   1   Case No. 07-CV-2000-H (CAB)
FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF
U.S. PATENT NO. 4,439,759 (FLEMING)

## II.   ARGUMENT

### A.   The Binding Admissions In The '759 Patent Show That The Claimed Modes Of Access Were Known In The Prior Art

The binding admissions in the patent show that the "first mode of access," "the second mode of access," and "the third mode of access" of the claims all existed in the prior art. This can be shown by comparing the claim language to the admissions in the patent.[1]

| Language of Claim 1 | Binding Admission Regarding Prior Art |
|---|---|
| a first mode of access wherein an in-use foreground color is directly specified as a color data value | "Methods and apparatus for providing color digital images on video display screens are **well known**. . . .  For example, the Picture Description Instructions PDI for the *Telidon* Videotex System, CRC Technical Note No. 696-E, developed by the Canadian Department of Communications describes ***a specific color value selection method:  a direct selection of data values for the primary colors*** – red, green and blue." Ex. 1 at 1:10-22 (emphasis added).[2]<br><br>(Lucent does not dispute that the first mode of access existed in the prior art.) |
| a second mode of access wherein the in-use foreground color is specified as an index into the color memory | "Methods and apparatus for providing color digital images on video display screens are **well known**. . . .  The Prestel videotex customer developed by the British Post Office and the *Antiope* terminal developed by the French CCETT ***employ a technique for specifying both a foreground*** and a background ***color by indexing*** a permanent read-only ***color memory***." *Id.* at 1:10-27 (emphasis added).<br><br>"In the art of color computer graphics, the terminal manufacturers generally employ a ***color look-up table called a color map indexed by binary number***." *Id.* at 1:28-30 (emphasis added).<br><br>The patent also describes "videotex, also known as viewdata and teletex services" as admitted prior art, and acknowledges that "***[v]arious modes of access to color memory***, wherever located, in a digital image display system, are employed by the providers of viewdata and teletex services." *Id.* at 1:39-40, 4:36-39 (emphasis added).<br><br>"In accordance with the present invention, ***the known modes of color access*** are incorporated into the present algorithm for selecting a particular ***mode of color memory access***, for setting a particular color in a color map memory table or for setting foreground or background ***in-use*** drawing color." *Id.* at 1:55-58 (emphasis added). |

---

[1] Contrary to Lucent's assertion (Lucent Br. at 13), Gateway's argument is not merely based on a single sentence from the patent. In fact, the entire Background discussion of the patent supports Gateway's arguments. Notably, Lucent's Opposition studiously avoids the patent's Background section and, instead, relies almost exclusively on unsupported statements from Lucent's expert.  *See* Lucent Br. at 2-7.

[2] Unless otherwise noted, "Ex." refers to the corresponding exhibit attached to the Declaration of Andrew Thomases In Support Of Gateway's Motion For Partial Summary Judgment of Invalidity of U.S. Patent No. 4,439,759 (Fleming), filed Nov. 30, 2007.

| **Language of Claim 1** | **Binding Admission Regarding Prior Art** |
| --- | --- |
| a third mode of access wherein the in-use foreground color and an in-use background color are specified as indexes into the color memory | "Methods and apparatus for providing color digital images on video display screens are ***well known***. . . .  The Prestel videotex customer developed by the British Post Office and the ***Antiope*** terminal developed by the French CCETT ***employ a technique for specifying both a foreground and a background color by indexing*** a permanent read-only ***color memory***." *Id*. at 1:10-27.<br><br>"In the art of color computer graphics, the terminal manufacturers generally employ a ***color look-up table called a color map indexed by binary number***." *Id*. at 1:28-30 (emphasis added).<br><br>The patent also describes "videotex, also known as viewdata and teletex services" as admitted prior art, and acknowledges that "***[v]arious modes of access to color memory***, wherever located, in a digital image display system, are employed by the providers of viewdata and teletex services." *Id*. at 1:39-40, 4:36-39 (emphasis added).<br><br>"In accordance with the present invention, ***the known modes of color access*** are incorporated into the present algorithm for selecting a particular ***mode of color memory access***, for setting a particular color in a color map memory table or for setting foreground or background ***in-use*** drawing color." *Id*. at 1:55-58 (emphasis added). |

**B.   Lucent Ignores The Evidence Providing Reasons To Combine The "Known Modes Of Access" Of The Prior Art Into One Terminal**

As set forth in Gateway's opening brief, there are many reasons why someone of skill would want to combine the techniques of the prior art videotex systems described in the admissions of the '759 patent. *See, e.g.*, Gateway Br. at 6-8.  First, as the '759 patent itself acknowledges, it was well known that the terminals of the different videotex systems were not compatible and, thus, a terminal made for one system could not read data from a host computer from another system. *See* Ex. 1 at 1:12-16, 39-46.  Second, prior to Lucent's patent, other people in the videotex field were discussing how to make a terminal that was compatible with the different videotex systems, and these discussions were published in the prior art. *See, e.g.,* Ex. 6 at 192.  Third, the international standard setting body CCITT created a working group whose sole purpose was to recommend a standard that addressed the compatibility issue with respect to videotex systems, and, prior to Lucent's patent, CCITT promulgated Recommendation S.100, which was entitled "Videotex Terminals:  International Information Exchange for Interactive Videotex." Ex. 2 at 24.  Recommendation S.100 indisputably addresses the need for

compatibility and then identifies parameters needed to design a videotex terminal that can work with all of the known videotex services. *Id*. at 24, 25.[3] Moreover, as explained in more detail below, a person of skill in the art would understand that Antiope used "in-use" colors, and Recommendation S.100 taught just that.

In the section of its brief addressing the admissions in its own patent, Lucent completely ignores this evidence showing numerous reasons why a person of ordinary skill in the art would combine the "known modes" into one terminal. Instead, Lucent incorrectly asserts that "Gateway has come forward with no evidence beyond the conclusory opinion of its expert that it would have been obvious to one or ordinary skill in the art to combine the three modes of access." Lucent Br. at 14. Even a brief review of Gateway's opening briefs shows that this statement is untrue. Indeed, Lucent has failed to rebut the evidence that shows numerous reasons to combine.[4]

**C.     Lucent's Arguments Boil Down To Two Incorrect Claim Construction Arguments That Can Be Disposed Of As A Matter Of Law**

Once Lucent's improper dissection and misstatement of Gateway's argument are set aside, Lucent's opposition boils down to just two flawed claim construction arguments. First, Lucent asserts that a terminal that achieves compatibility with Telidon, Antiope, and Prestel would not include the second and third modes of access of claim 1. Lucent Br. at 13. In particular, Lucent alleges that an Antiope or Prestel terminal cannot meet the separate modes of the "second mode of access" and the "third mode of access" of claim 1. Lucent Br. at 14. This

---

[3] In fact, the document cited at page 10 of Lucent's Opposition acknowledges that Recommendation S.100 suggests combining "the essence" of the Prestel, Antiope, and Telidon coding schemes. Lucent Br. at 10. Indeed, on that same page, Lucent admits that its alleged invention is merely a way "to combine various display options into one system" and quotes a document that admits that Lucent's alleged invention "combined all of the functions of [Recommendation] S.100." *Id*.

[4] Lucent points to a snippet of a document that does not pertain to videotex to argue that "it was believed that combining specification of colors using color data values with indexed color specification in a single display system would likely not work." Lucent Br. at 15. However, this document does not support Lucent's position, and even discusses the "Pros" of such a system where "[b]oth direct specification and indirect specification are supported and available to the programmer at all times." Marina Ex. 8 at 396. Moreover, Lucent continues to ignore Recommendation S.100, which had the sole purpose of combining the known techniques of prior art videotex systems into one terminal. *See* Ex. 7 at 258:1-259:1, 279:8-280:25.

1   is because the "second mode" only requires the specification of an in-use foreground color
2   whereas the "third mode" requires specification of both an in-use foreground color and an in-use
3   background color. *Id*. However, Lucent's argument is legally flawed. If a terminal can practice
4   the "third mode" where both "the in-use foreground color and an in-use background color are
5   specified as indexes into the color memory" (Ex. 1 at 14:34-36), then it must necessarily be able
6   to have the in-use foreground color specified as an index into the color memory and thus practice
7   the claimed second mode. *Id*. at 14:31-33. Moreover, it is undisputed that when in Antiope
8   mode, such a terminal can specify a foreground color and specify that the background will be
9   "transparent," thereby meeting the "second mode of access" limitation. Ex. 2 at 40, 43; Ex. 15 at
10  422 ¶ 43. Thus, even under Lucent's flawed claim construction, Lucent's argument fails to
11  create a genuine issue of fact.
12         Second, Lucent argues that such a terminal would not have the ability to specify an "in-
13  use" background color based on Lucent's overly restrictive interpretation of the Court's claim
14  construction order. Lucent Br. at 14, 20-22. The Court's construction of "in-use background
15  color" is "a color that will be used as the background color for subsequently received text and
16  graphics drawing commands until changed." Ex. 4 at 78. A terminal that implements the color
17  specification techniques of Antiope (the alphamosaic parallel mode described in
18  Recommendation S.100) can select a background color that acts as the background color for the
19  text and graphics drawing commands that follow. *See* Ex. 7 at 175:17-178:3, 182:1-185:12.
20  Specifically, as explained in Recommendation S.100, the command for selecting a background
21  color "[c]auses the following characters to be displayed in their foreground colour on a
22  background of the colour indicated." Ex. 2 at 43, ¶5.4.2.2.10.
23         Despite the evident parallel in the description of background colors in Antiope and the
24  Court's claim construction, Lucent argues that the term "used" in the Court's claim construction
25  does not cover the situation where characters called by subsequent commands are "displayed" on
26  the selected background color. Lucent Br. at 21. The Court's construction is not so restrictive.
27  Under the Court's construction, if a background color has been selected, and then the system
28  receives a command to draw a character and "displays" that character "on a background of the

1  color indicated," then the background color is being "used as the background color for
2  subsequently received text and drawing commands."
3        Lucent argues that "used" in the Court's claim construction must be "used at the exact
4  same time." There is no support for this in the Court's claim construction order. Moreover, the
5  patent suggests that Lucent's argument is flawed where it states that "text characters will be
6  drawn in the in-use foreground color over the in-use background color." Ex. 1 at 6:62-64.
7        Lucent points to the examples Gateway provided in its technology tutorial before the
8  Court and argues that "Gateway admitted" that Lucent's restrictive interpretation of the Court's
9  construction is correct. Lucent Br. at 21. However, the Court's claim construction was not
10  limited to the examples given in the tutorial and it would be improper to import such examples
11  into the claim construction. Similarly, Dr. Wedig's technology tutorial in his expert report
12  cannot be deemed to restrict the Court's claim construction in the manner Lucent proposes.
13        Thus, under a proper claim construction, Lucent's rebuttal argument fails as a matter of
14  law. Furthermore, even assuming Lucent's flawed construction is correct, Antiope still teaches
15  an "in-use background color." Mr. O'Brien, who was working in the videotex field prior to
16  Lucent's alleged invention and who had intimate knowledge of Antiope, testified that Antiope
17  could set both a foreground color and a background color that would persist and be used for
18  subsequently received text and graphics drawing commands and that both the foreground and
19  background colors would be written by the same command at the same time. Ex. 7 at 175:17-
20  178:3. Lucent provided no rebuttal to this testimony. In fact, Lucent's expert, Mr. Richter,
21  acknowledged that the background color described in Recommendation S.100 affects multiple
22  characters and could be written at the same time as the foreground color. Ex. 5 at 472:25-
23  473:15, 518:10-15. Lucent's attempt to contradict this testimony by offering a conflicting (and
24  unsupported) opinion in paragraph 33 of Mr. Richter's declaration cannot, as a matter of law,
25  create a genuine issue of material fact that would preclude summary judgment. *See, e.g., Silas v.*
26  *Babbitt*, 96 F.3d 355, 358 (9th Cir. 1996) ("One cannot create an issue of fact by simply
27  contradicting one's own previous statement."); *Telemac Cellular Corp. v. Topp Telecom, Inc.*,
28  247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad conclusory statements offered by [plaintiff's]

experts are not sufficient to establish a genuine issue of material fact.").[5]

### D. Lucent's Arguments Regarding "Color Memory" Are Designed To Evade The Binding Admissions Of The Patent

Lucent expends four pages of its Opposition arguing that Recommendation S.100 does not disclose a "color memory" or specify colors as indexes into a color memory. Lucent Br. at 16-20. However, Gateway's motion does not rely on this issue. Instead, as explained above, Gateway has shown that the admissions in the patent show that the prior art Antiope terminals use a color memory and specify colors by indexing a color memory. Ex. 1 at 1:22-27. There are a number of reasons a person of ordinary skill in the art would combine this color specification technique with the direct specification technique of Telidon, and Recommendation S.100 provides an explicit teaching of how to do so. Therefore, the Court need not resolve the issue of whether Recommendation S.100 expressly discusses indexing into a color memory, since that technique is specifically discussed in the admissions in the patent.

By divorcing the admitted prior art and "known modes of access" from Recommendation S.100 and looking only at the latter, Lucent is attempting to evade the admissions in the patent – specifically, the admissions that the prior art videotex systems used a color memory and specified colors by indexing a color memory. The Court should not fall for this ploy.[6]

### E. Lucent's Other Arguments Regarding Claim 1 Also Lack Merit

In several places in its Opposition, Lucent contends that Gateway is merely looking at individual claim elements in the prior art rather than looking to see if the alleged invention as a

---

[5] In addition to being conclusory and unsupported, Mr. Richter's testimony that the background color must be reset at the end of each row contradicts the very document that he and Lucent reference. Marina Dec. Ex. 3 at 59 ("In the event that the beginning of the row is caused by overflow from the preceding row, the characters will have the same characteristics as the last character of the preceding row unless indicated otherwise."). This shows that the background color characteristic persists. Moreover, Mr. Richter's assertion contradicts his deposition testimony where he admits that colors in Antiope persist. Ex. 5 at 407:17-21, 473:1-15.

[6] Moreover, Lucent's argument that Recommendation S.100 does not disclose a color memory is wrong. Because the patent admits that Antiope and Prestel use a color memory and specify colors by indexing a color memory, and because Lucent concedes that Recommendation S.100 describes a terminal that uses the Telidon, Antiope and Prestel coding schemes (Lucent Br. at 10), Recommendation S.100 must necessarily disclose a terminal that includes a color memory and indexes into that color memory. Thus, Lucent's expert's *post hoc* and unsupported opinions to the contrary are not only irrelevant to the legal inquiry but are incorrect and contrary to Lucent's own admissions.

1  whole would have been obvious to one of ordinary skill in the art. *See, e.g.,* Lucent Br. at 1, 14.
2  This assertion, however, is premised on Lucent's improper dissection of Gateway's argument.
3  As discussed above, Gateway has provided ample evidence that one of skill in the art had
4  numerous reasons to combine the admitted prior art techniques for specifying color in a videotex
5  system. Thus, Gateway's argument is fully supported by the law.

6  Next, Lucent argues that trends at the time "weighed in favor of direct color and against
7  indexed color." Lucent Br. at 16 (citing Richter Dec. ¶ 36). The first flaw with this argument is
8  that the cited testimony is a completely unsupported expert conclusion and thus cannot create a
9  genuine issue of fact. *Telemac Cellular*, 247 F.3d at 1329. Second, the cited portion of the
10 Richter Declaration does not even address claim 1 or the combination Lucent is attempting to
11 rebut; instead, it addresses a different combination. Richter Dec. ¶ 36. Last, Mr. Richter's
12 statement completely contradicts his testimony earlier in his declaration where he discusses a
13 "drawback of direct color," the advantages of indexed color, and states that "[a] color look-up
14 table typically provides a good compromise between memory cost and output." Richter Dec. ¶
15 12. Lucent cannot attempt to create a genuine issue of fact by supplying testimony that
16 contradicts the earlier testimony of the same witness. *Silas*, 96 F.3d at 358.

17 Another argument Lucent makes is that Recommendation S.100 only pertains to
18 representing pictorial information and does not relate to how color is specified. Lucent Br. at 9-
19 10, 20. Lucent cites only to portions of Recommendation S.100 (and to another conclusory
20 statement of its expert), while ignoring the key portions of that document. For example, under the
21 "Purpose and Scope" section of Recommendation S.100, it explains that "Videotex systems are
22 text communications systems having in addition the capability of a given level of pictorial
23 representation and a repertoire of display attributes." Ex. 2 at 25. One of the display attributes is
24 the specification of color. For example, for the alphamosaic serial mode (Prestel), there are codes
25 for the specification of colors for alphabetic characters and for graphics. *Id*. at 34-36. There are
26 also commands for a new background color and for flashing in the "prevailing" background color.
27 *Id*. Similarly, Recommendation S.100 has commands for the alphamosaic parallel mode
28 (Antiope) for specifying the foreground color and background color to be used for subsequent

characters and a command for specifying a transparent background. *Id*. at 40, 42-43. For the alphageometric mode (Telidon), there is a command that "defines the colour or grey scale accessed by subsequent drawing opcodes [commands]," and the document states that "[o]nce an attribute is defined, it remains valid until the attribute is redefined." *Id*. at 50-51. Thus, Recommendation S.100 discusses how color is specified, and Lucent's argument lacks merit.

Finally, the vast majority of the assertions in the expert declaration supplied by Lucent are conclusory and unsupported by any evidence. As noted above, such assertions cannot create a genuine issue of material fact and cannot be used to avoid summary judgment.

### F. Lucent Has Not Rebutted The Evidence Of Obviousness Of Claims 2 And 3

As with claim 1, Lucent has misstated Gateway's proofs with respect to the obviousness of claims 2 and 3 and has ignored (and, thus, not rebutted) portions of Gateway's evidence.

For example, Lucent asserts that "Gateway's obviousness argument depends entirely on the premise that Recommendation S.100 contains a color memory." Lucent Br. at 23. This is not true. Lucent ignores the fact that Gateway's argument relies on the admissions in the '759 patent itself, and those admissions show that the prior art systems included a "color memory" called a "color look-up table" or "color map" into which color values may be loaded. *See* Gateway Br. at 22-25. Such a loading of color values into the color memory is what claims 2 and 3 add to claim 1. Lucent never even attempted to rebut these admissions.

Similarly, although not necessary to Gateway's motion in light of the admissions in the patent, Recommendation S.100 does disclose a color memory, as explained above, because the '759 patent admits that Antiope and Prestel include a color memory and Recommendation S.100 discloses a combination of Antiope, Prestel and Telidon. Moreover, Recommendation S.100 discusses "redefining the color table," which means that new color values are loaded into the color map. *See* Ex. 2 at 57, ¶ 9.3.2; Ex. 15 at 423, ¶¶ 47-48.

Next, Lucent relies on the alleged "absence of a color memory" to argue there is no reason to combine Crowther with Recommendation S.100. Lucent Br. at 23. This argument fails again because Lucent ignores the admissions in the '759 patent regarding the existence of a color memory in the prior art. Lucent also points again to the flawed "market trends" assertion

1  by its expert that contradicts his earlier testimony. *Id*. This cannot create a genuine issue of fact.
2  In addition, Lucent cannot rely on the unsupported, conclusory opinion of its expert that there
3  would be no reason to combine because the DRCS in Recommendation S.100 and the DRCS of
4  the Crowther article "address different aspects of DRCS." Lucent Br. at 24 (citing Richter Dec.
5  ¶ 36). *Telemac Cellular*, 247 F.3d at 1329. Indeed, Gateway provided a number of reasons why
6  a person of ordinary skill in the art would want to combine the admitted prior art videotex
7  systems with Recommendation S.100 and with Crowther, especially since Crowther was
8  discussing an improvement to videotex systems. *See* Gateway Br. at 22-25. Because it chose to
9  misstate Gateway's argument, Lucent does not even address these reasons.
10  Lucent then argues that, even if there were reasons to combine, the combination does not
11  meet the limitations of claims 2 and 3 because Gateway has not shown that the combination
12  includes identical or equivalent structure to the corresponding structure identified in the Court's
13  claim construction. Lucent Br. at 24-25. What Lucent fails to address, however, is that
14  Gateway's proofs are the same as Lucent's proof of alleged infringement. *See* Ex. 22 at 727, ¶
15  27. Lucent's expert simply points to a command that loads color values and asserts that such a
16  command is equivalent to the corresponding structure of the claim. *Id*. As Gateway's motion
17  shows, the Crowther article includes a similar command (a DRCS Instruction Code) for loading
18  color data values into the color memory. Gateway Br. at 23. Moreover, Lucent is simply
19  incorrect when it asserts that Dr. Wedig did not provide any opinion on this topic, as his report
20  stated a number of times that the claims are invalid based on Lucent's expert's own infringement
21  positions. *See* Ex. 15 at 410 (¶ 3), 420-21 (¶ 39), and 425 (¶ 53). Dr. Wedig also provided
22  testimony on this topic. *See* Ex. 16 at 130:19-137:19. Lucent cannot argue that its infringement
23  contentions are adequate but Gateway's invalidity proofs are inadequate. *Amazon.com, Inc. v.*
24  *Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

25  **III.   CONCLUSION**
26  In view of the foregoing, Gateway respectfully requests that the Court grant Gateway's
27  motion for partial summary judgment of invalidity of claims 1 to 3 of the '759 patent.
28  (Defendant Dell joins this reply.)

1
2  Dated: December 21, 2007        DECHERT LLP
3
4                                   By:   /s/Jeffrey B. Plies
                                          Jeffrey B. Plies
5
                                   Attorneys For Defendants And Counterclaimants
                                   GATEWAY, INC. *et. al.*
6  13050108.1
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28