John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Roger A. Denning (SBN 228998)
Owais A. Siddiqui, (SBN 230004)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California  92130
Telephone:    (858) 678-5070
Facsimile:    (858) 678-5099

Stephen P. McGrath (SBN 202696)
Microsoft Corporation
One Microsoft Way
Redmond, WA  98052
Telephone:    (425) 882-8080
Facsimile:    (425) 936-7329

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>    Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>    Intervenor and Counter-claimant, | Case No. 07-CV-2000 H (CAB) consisting of matters severed from consolidated cases:<br>02-CV-2060 B (CAB)<br>03-CV-0699 B (CAB)<br>03-CV-1108 B (CAB)<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF OBVIOUSNESS OF U.S. PATENT NO. 5,347,295** |
| MICROSOFT CORPORATION,<br><br>    Plaintiff and Counter-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Defendant and Counter-claimant, | Date:  January 8, 2008<br>Time:  9:30 a.m.<br>Dept:   Courtroom 13<br><br>Hon. Marilyn L. Huff |

1  LUCENT TECHNOLOGIES INC. and
   MULTIMEDIA PATENT TRUST,
2
          Plaintiff,
3
   v.
4
   DELL, INC.,
5
          Defendant.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07-CV-2000 H (CAB)

## I.     INTRODUCTION [1]

Microsoft explained in its opening brief, on a limitation-by-limitation basis, how each of the asserted claims of the '295 patent is obvious in light of the prior art. In its opposition, Lucent fails to dispute, and thereby concedes, that the prior art combinations contain the vast majority of the claim limitations. As for those limitations Lucent does contest, Lucent does not raise any genuine dispute of material fact, but instead relies on attorney argument. The undisputed facts show that the well-developed prior art in stylus-based computers renders the asserted claims of the '295 patent invalid for obviousness.

## II.    ARGUMENT

### A.    Claim 1 is obvious in view of the FIDS Paper in light of the Taguchi and Levine Patents.

In its opposition, Lucent sets forth only three arguments related to claim 1. None of these arguments raises a genuine issue of material fact sufficient to defeat summary judgment.

#### 1.    The FIDS Paper, the Taguchi Patent, and the Levine Patent *in combination* teach the use of context-independent gestures recognized using shape recognition.

Like the other independent claims – claims 39 and 41 – claim 1 requires that the system recognize gestures by comparing gestures drawn by the user to a library of predefined shapes. Lucent does not dispute that the relevant prior art references – the FIDS Paper, the Taguchi Patent, and the Levine Patent – meet that limitation. Accordingly, there is no doubt that it was obvious to one of skill to use a library of predefined shapes to recognize gestures, as required by the claims.

Unlike the other independent claims, claim 1 then adds a separate, distinct limitation requiring the use of *context-independent* gestures.[2] The Court has construed that limitation to require the "use of a single set of gestures for identical executable commands at both the operating system level and the application level." [Ex. I at 5.] As explained in detail in Microsoft's opening

---

[1]  Dell and Gateway join in this reply brief.
[2]  Claim 1 requires, in relevant part: "said predetermined action being determined by the context in which said gesture was used, including a first context in which said action is executed upon an operating system level object and a second context in which said action is executed upon an application level object." [*See* Ex. I at 5.] All references to "Ex. __" herein refer to the corresponding exhibit to the Declaration of Owais A. Siddiqui In Support Of Microsoft Corporation's Motion for Summary Judgment of Obviousness of U.S. Patent No. 5,347,295 (Doc. No. 85).

brief (at 6-7), the Levine Patent teaches the use of a "touch-and-lift" gesture (*e.g.*, a tap) that has the same command at both the operating system level and the application level. Lucent does not contest that fact, either. Accordingly, in light of the Levine disclosure, one of ordinary skill in the art not only would have known to use a library of predefined shapes to recognize gestures, but that person also would have known to use context-independent gestures, as required by claim 1.

Having conceded that the prior art – the FIDS Paper, the Taguchi Patent, and the Levine Patent – disclose both gesture recognition and context-independent gestures, Lucent attempts to obscure the issue by arguing (at 8-9) that Levine's touch-and-lift gesture "is not a recognized gesture within the meaning of the claims because . . . there is no recognition of shapes."

Lucent's argument misses the mark because it ignores that one of skill already knew to recognize gestures using shape comparisons, as disclosed in at least the FIDS Paper. Considering – as Lucent concedes – that one of skill also knew about context-independent gestures from the Levine Patent, it would have been obvious for one of skill to use context-independent gestures that are recognized based on shape comparisons. (Ex. D at 168-69.) Lucent did not address this argument in its opposition, because it has no answer. Instead, Lucent attempts to argue (at 8-9) that the Levine Patent does not disclose gestures that are **both** context-independent and recognized using shape comparison. But Microsoft is not arguing that Levine Patent contains every single limitation on its own and therefore anticipates claim 1 under 35 U.S.C. § 102. Rather, Microsoft's opening brief (at 4-7) explains that the ***combination*** of the Levine Patent, the FIDS Paper and the Taguchi Patent renders claim 1 ***obvious*** under 35 U.S.C.§ 103. Lucent has not argued the opposite, because it has no argument.

Recent Federal Circuit case law supports Microsoft's request for summary judgment of obviousness. In *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007), the Federal Circuit affirmed the district court's ruling that a combination of prior art references rendered the asserted claim obvious. The court noted that "[a]n obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case." *Id.* at 1161. Rather, as required by statute, the proper analysis considers whether the claimed "subject matter as a whole would have been obvious," 35 U.S.C. § 103. Thus, the court stepped back and

1 noted that the goal of the claimed device "was to allow a child to press a switch associated with a single letter in a word and hear the sound of the letter as it is used in that word." 485 F.3d at 1161. In concluding that the asserted claim was made obvious by a combination of prior art references, the court noted that the first reference achieved the goal of the claim using mechanical technology and the second reference taught using electronics to update the device of the first reference. *Id.* at 1161-62. The court did not concern itself with whether all the words of a particular limitation of the claim were taught by a single prior art reference; instead, the court analyzed whether the ***combination of the references*** would have made the claim obvious. *See id.* at 1161-63.

Similarly, the Court here should decline Lucent's invitation to become distracted by whether the Levine Patent alone discloses "said recognized gestures." Instead, the focus should remain on whether the combination of references would have made the claimed subject matter as a whole obvious to one of ordinary skill in the art. Even if, as Lucent claims, the Levine Patent does not disclose gesture recognition by comparison with a shape, Lucent has already admitted that the FIDS Paper ***does*** disclose such gesture recognition. (*See* Microsoft Opening Br. at 6.) There can be therefore no dispute of material fact that the combination of the FIDS Paper, the Taguchi Patent, and the Levine Patent render obvious the context-independent gestures of Claim 1.

### 2. The Court's claim construction requires a rear-mounted digitizer, which is exactly what the Taguchi Patent discloses.

As Lucent acknowledges (at 14-16), the Court's previous summary judgment rulings found there can be no infringement of the '295 patent unless the digitizer is located behind the display. Lucent does not dispute that the Taguchi Patent teaches using a rear-mounted digitizer. Indeed, Lucent does not even address the Taguchi reference in the section of its brief (at 14-16) relating to rear-mounted digitizers. Moreover, Lucent does not dispute that one of skill in the art would have known to combine the rear-mounted digitizer of the Taguchi Patent with the system disclosed in the FIDS Paper. (*See* Ex. D at 167-68; *cf.* Ex. H at 33-36.)

Microsoft's expert, Dr. Kelly, explained in his expert report that there are only three locations to place a digitizer in a stylus-based system: in front of the display, behind the display, or separate from the display. (Ex. D at 167-68.) As Dr. Kelly explained: "It would have been obvious for one of ordinary skill in the art to try each one of these finite alternatives, and, seeing

1. advantages of the placement of the digitizer behind the display (e.g., reduced parallax, improved
2. durability and optical clarity), it would be obvious to one of skill in the art to combine FIDS with
3. the behind-the-display digitizer of Taguchi." (*Id.* at 168.)  Significantly, Lucent's expert ***never***
4. ***disagreed*** with Dr. Kelly's analysis.  (*Cf.* Ex. H at 33-36.)  "When there is a design need or market
5. pressure to solve a problem and there are a finite number of identified, predictable solutions, a
6. person of ordinary skill has good reason to pursue the known options within his or her technical
7. grasp. If this leads to the anticipated success, it is likely the product not of innovation but of
8. ordinary skill and common sense." *KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007).
9.       Attacking a straw man, Lucent claims (at 15-16) that Microsoft's positions on invalidity and
10. noninfringement regarding the digitizer are inconsistent.  In fact, Microsoft's positions are
11. completely symmetrical.  The Court has already agreed with Microsoft that front-mounted
12. digitizers do not infringe the claims.  Microsoft here advances that one of skill in the art would
13. have known to combine the rear-mounted digitizer of Taguchi Patent with the FIDS Paper and
14. other prior art to make the claims obvious.  (*See* Ex. D at 167-68.)

      **3.    The prior art uses the same type of central processors as the accused products, and Lucent's expert has opined that those processors satisfy the claim limitations.**

17. In arguing that the prior art does not disclose a "pen position digitizer co-processor" as
18. required by the Court's construction of the claims, Lucent directly contradicts its infringement
19. position in this case.  As the plaintiff, Lucent cannot have it both ways:  either the accused
20. products do not infringe, because they do not use a co-processor, or the prior art, which uses a
21. central processor just like the accused products, invalidates the claims.
22.       The allegedly-infringing products – Tablet PCs – unambiguously do ***not*** use a pen position
23. digitizer co-processor, and Lucent admits it.  Instead, Lucent's infringement case rests on its
24. expert's opinion that the Tablet PC's central processor (CPU) is "identical" to the pen position
25. digitizer co-processor of the '295 patent claims because they "each are computational hardware
26. programmed to interpret stylus movements as gestures." (Ex. M at 35.)  Lucent further argues that
27. there is no substantial difference between performing gesture termination on the system's central
28. processor or on a physically separate co-processor:  "If for some reason the fact that program

execution and gesture recognition algorithms were performed on different processing cores in the '295 patent is different that performing those algorithms on a single processing core in Tablet PC devices is a difference [*sic*], this difference makes no difference to operation, is insubstantial, and thus the structures are at a minimum equivalent." (*Id.* at 35-36.) Citing no support, Lucent concludes that a Tablet PC's CPU executes software to define termination of a gesture, and thus the CPU is at least equivalent to the pen position digitizer co-processor of the '295 patent. (*Id.* at 36.)

Now, in trying to save the '295 patent in light of the prior art, Lucent argues exactly the opposite. There is no dispute that the FIDS Paper discloses an 80186-based CPU. (Ex. B at Fig. 3 (depicting a CPU in the block diagram of the FIDS system); *id.* at 74 (noting that the FIDS system was implemented on "an 80186-based microcomputer workstation"); Ex. D at 85 (same); *see also* Microsoft Opening Br. at 5.) There is also no dispute that the FIDS Paper describes using software to interpret gesture termination. (Ex. D at 88, 172-173.) Under Lucent's expert's own analysis, the CPU disclosed in the FIDS Paper is "identical" to the pen position digitizer co-processor of the '295 patent because they "each are computational hardware programmed to interpret stylus movements as gestures". (*Cf.* Ex. M at 35.) Moreover, applying Lucent's position, there is no substantial difference between executing gesture termination software on a central processor and on a separate co-processor; the structures would be equivalent.[3] (*Cf. id.* at 35-36.)

As the Federal Circuit noted in *Amazon.com, Inc. v. Barnsandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001), a case Lucent itself cites, a patent's claims must be interpreted in the same way for both infringement and validity. *Id.* at 1351. "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Id.* (quotation marks and citations omitted). Applying in the validity context the very same approach Lucent advances for infringement, no genuine dispute of fact exists that the system of the FIDS Paper contains a pen position digitizer co-processor to the same extent as Tablet PCs.

### B.  Claim 3 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.

---

[3]  Lucent argues in a footnote that CPUs at the time of the alleged invention were not capable of performing the role of a co-processor. Tellingly, Lucent cites no support for its claim. Like much of the rest of Lucent's opposition, these comments comprise attorney argument that cannot raise a dispute of fact sufficient to defeat summary judgment.

Claim 3 depends from claim 1, and it adds the limitation of detecting the proximity of the stylus tip to the screen and displaying an indicator when the stylus is in proximity to the screen. The Taguchi Patent, the same reference that discloses the rear-mounted digitizer required by claim 1, also teaches that the rear-mounted digitizer shall detect the proximity of the stylus to the screen.

Lucent's expert never disputed that one of skill in the art would have known to combine, in the context of claim 1, the system of the FIDS Paper with the rear-mounted, proximity-detecting digitizer of the Taguchi Patent. (*See* Microsoft Opening Br. at 5; *see also supra* at section II.A.2.) Having already made such a combination for one purpose – *i.e.*, the rear-mounted digitizers of the parent claim, claim 1 – common sense dictates that the person of skill in the art would have known to use the *very same combination* for another purpose – the proximity detection of the daughter claims, claims 3 and 12. "Common sense teaches … that familiar items may have obvious uses beyond their primary purposes…." *KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727, 1742. No additional reason to combine is required, and Lucent points to no contrary authority.

Lucent's expert, Mr. Ward, argued that there was no explicit motivation to combine the FIDS Paper with the Taguchi Patent for purposes of claim 3 and 12. (*See* Microsoft Opening Br. at 7-8.) The Supreme Court has made clear, however, that an explicit motivation to combine references is not required, and no dispute of fact is raised by Mr. Ward's argument. (*Id.* at 7.) Nevertheless, such a motivation did exist: rear-mounted proximity-detecting digitizers reduce parallax, one of the problems noted in the FIDS Paper. (*Id.*; *see also* Ex. L at 91:2-4 (Q: And having the screen in front of the digitizer reduces parallax?  A: Having the screen in front, yes.).)

Lucent provides mere attorney argument in its opposition brief, misrepresenting the nature of parallax and proximity-detection. Nevertheless, and even assuming all of Lucent's misstatements to be true, there remains no factual dispute that one of skill in the art would have known to combine the FIDS Paper with the rear-mounted, proximity-detecting digitizer of the Taguchi Patent for purposes of claim 1. (*See* Microsoft Opening Br. at 5; *see also supra* at section II.A.2.) Lucent points to no authority requiring that, when the parties do not dispute the reasons for combining references for purposes of a parent claim, a different reason for combining the *very same references* must nevertheless be identified for purposes of daughter claims depending from

1  the parent claim. Lucent's arguments thus fail to raise a genuine dispute of material fact or
2  otherwise to rebut the case for summary judgment of obviousness of claims 3 and 12.

**C.    Claim 4 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.**

Lucent advances no independent arguments that claim 4 is not obvious, relying instead on arguments made in connection with claim 1. For the same reasons as those outlined above, Lucent fails to raise a genuine dispute of material fact sufficient to defeat summary judgment for claim 4.

**D.    Claim 6 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.**

Lucent does not dispute that the Taguchi Patent discloses displaying on the screen the shape representing the actual gesture drawn by the user, as required by claims 6 and 43. (Microsoft Opening Br. at 8, 11.) Lucent does not dispute that the FIDS Paper may be combined with the Taguchi Patent for purposes of independent claims 1 and 41, from which claims 6 and 43 depend. Despite this, Lucent claims that one of skill in the art would not have known to combine these same two references for purposes of claims 6 and 43. As discussed in section II.B above, Lucent has not articulated any authority for its proposition that when the parties do not dispute the reasons for combining references for purposes of a parent claim, a different reason for combining the very same references must nevertheless be identified for purposes of daughter claims depending from the parent claim. Lucent's argument does not create a dispute of material fact sufficient to defeat summary judgment of obviousness.

Lucent's expert's argument against combining the FIDS Paper and the Taguchi Patent for purposes of claims 6 and 43 fails as a matter of law because it relies on an assumption that there must be a motivation to combine references. (Microsoft Opening Br. at 8.) Microsoft noted in its opening brief that, even though no requirement for a motivation to combine references exists, such a motivation does in fact exist here. (*Id.*) Once again, Lucent responds with attorney argument – ungrounded in the perspective of one of skill in the art – that the FIDS Paper teaches away from a combination with the Taguchi Patent for purposes of claims 6 and 43. For the same reasons as in section II.F below, this attorney argument is insufficient to raise a dispute of material fact.

**E.    Claim 12 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.**

For the same reasons as those described above in section II.B, Lucent has failed to raise any genuine dispute of material fact sufficient to defeat summary judgment with respect to claim 12.

### F. All the limitations of claim 39 are obvious in view of the FIDS Paper combined with the Taguchi Patent and the Buxton Paper.

Claim 39 is similar to claim 1, except instead of requiring context-independent gestures (like claim 1), claim 39 requires a compound gesture, *i.e.,* a gesture that is comprised of two other gestures. As set forth in Microsoft's opening brief – and undisputed by Lucent – the Buxton Paper discloses multiple sets of compound gestures. Accordingly, in light of the Buxton Paper, the FIDS Paper and the Taguchi Patent, one of ordinary skill in the art would have found claim 39 obvious.

In addition to its arguments relating to the rear-mounted digitizer of the Taguchi Patent and the pen position digitizer co-processor of the FIDS Paper – both of which are addressed above – Lucent presents only a single argument regarding claim 39: that one of ordinary skill would not have thought to combine the Buxton reference with the FIDS reference. That argument should be rejected. "One of ordinary skill in the art would have seen the obvious benefits in adding the gestures and other capabilities of Buxton's stylus-based user interface to the stylus-based user interface of FIDS." (Ex. D at 170.) Indeed, the FIDS Paper lists several applications that could benefit from the FIDS design, including graphics-based editors such as that described in the Buxton Paper. (*Id.*; Ex. B at 75-76; *see also* Microsoft Opening Br. at 10.)

The Court should reject Lucent's attempts to manufacture a factual dispute regarding whether the FIDS Paper teaches away from being combined with the Buxton Paper. "A reference may be said to teach away ***when a person of ordinary skill***, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1308 (Fed. Cir. 2006) (citation omitted, emphasis added). Lucent's opposition brief presents no analysis from the perspective of a person of ordinary skill. Rather, Lucent presents only attorney argument peppered with citations to the FIDS Paper. (*See* Lucent Opp. at 11-12.) Such an approach is insufficient: "Attorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment. The party opposing the motion must point to an evidentiary conflict created on the record ***at least by a counter statement***

*of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant.* Mere denials or conclusory statements are insufficient." *Delmarva Power & Light Co. v. U.S.*, 79 Fed. Cl. 205, 217 (Fed. Cl. 2007) (quotations and citation omitted, emphasis added) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984)).

The lone citation to Lucent's own expert's report does not even support Lucent's contention that the FIDS Paper "discourages" a combination with the Buxton Paper, (Lucent Opp. at 11). Rather, the cited paragraph of Mr. Ward's report alleges merely no teaching, suggestion, or motivation to combine and claims that the Buxton Paper is "even further afield" of the text-editing discussed in the FIDS Paper. (Ex. H at 40.) As explained in Microsoft's opening brief, there is no requirement for a formal motivation to combine, and Lucent's argument fails as a matter of law. (*See* Microsoft Opening Br. at 10.) Moreover, Mr. Ward's position cuts directly against the FIDS Paper's explicit teaching that a wide range of applications – including graphics-based editors, such as in the Buxton Paper – can be adapted to the FIDS design. (*Id.*)

In sum, Lucent presents mere attorney argument coupled with just a single tenuous cite to its own expert's report. Lucent has failed to raise any genuine issues of material fact sufficient to defeat summary judgment..

**G.    Claim 40 is obvious in view of the FIDS Paper combined with the Taguchi Patent and the Buxton Paper.**

Lucent advances no independent arguments that claim 40 is not obvious, relying instead on arguments made in connection with claim 39. For the same reasons as those outlined above in section II.F, there is no genuine dispute of material fact sufficient to defeat summary judgment.

**H.    All the limitations of claim 41 are obvious in view of the FIDS Paper combined with the Taguchi Patent.**

In opposition to Microsoft's motion for summary judgment of obviousness of claim 41, Lucent presents only its arguments relating to the rear-mounted digitizer of the Taguchi Patent and the pen position digitizer co-processor of the FIDS Paper. For the same reasons discussed in sections II.A.2 and II.A.3 above, Lucent has not raised any genuine disputes of material fact.

**I.    Claim 43 is obvious in view of the FIDS Paper combined with the Taguchi and Levine Patents.**

For the same reasons as those described above in section II.D, Lucent fails to raise any

genuine dispute of material fact sufficient to defeat summary judgment with respect to claim 43.

### J. Claim 46 is obvious in view of the FIDS Paper combined with the Taguchi Patent and Coleman Paper.

Claim 46 depends from claim 41 – which requires detecting a gesture's direction of motion – and additionally requires the gesture's action to be associated with the direction of motion. As discussed in Microsoft's opening brief (at 11-12), claim 46 was obvious to one of skill in light of the Coleman Paper – which discloses gestures in which the direction of motion of the recognized gesture is associated with the action – along with the FIDS Paper and the Taguchi Paper.

Contrary to Lucent's assertion, the FIDS Paper did not "consider and reject" the Coleman Paper, and Lucent provides only attorney argument, ungrounded in the perspective of someone of skill in the art. One of ordinary skill would have seen the obvious benefits in adding the directional gestures of the Coleman Patent to the system of the FIDS Paper. (Ex. D at 170-71.) For example, the up/down gestures used for scrolling in the Coleman Patent would be useful in the system of the FIDS Paper. (*Id.* at 171.) By arguing that "the FIDS Paper considered but rejected the Coleman Paper," (Lucent Opp. Br. at 13), Lucent contradicts its own expert. Attempting to downplay the significance of the FIDS Paper's citation of the Coleman Paper, Mr. Ward states parenthetically that "FIDS cites Coleman as a historical reference only." (Ex. H at 43.) Even Lucent's own expert, then, doesn't make the argument that Lucent advances in its opposition.

Moreover, Lucent contradicts its own argument. Lucent first alleges that the FIDS Paper cannot be combined with the Coleman Paper because the Coleman Paper describes an allegedly "more complicated algorithm." (Lucent Opp. at 13.) Lucent then argues that the FIDS algorithm rejected the Coleman Paper allegedly because its approach was "more limited." (*Id.* at 14.) The Court should reject Lucent's internally inconsistent argument.

Lucent's opposition presents the Court with attorney argument that contradicts both itself and Lucent's own expert. Such a position clearly cannot raise a genuine issue of material fact sufficient to defeat summary judgment.

### III. CONCLUSION

For the reasons above, Microsoft respectfully requests the Court to grant summary judgment that the asserted claims of the '295 patent are obvious under 35 U.S.C. § 103.

| | | |
|---|---|---|
| 1 | Dated: December 21, 2007 | FISH & RICHARDSON P.C. |

By: s/ Owais A. Siddiqui
    Owais A. Siddiqui, (SBN 230004)

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 21, 2007 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

s/ Owais A. Siddiqui
Owais A. Siddiqui
siddiqui@fr.com

Attorney for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION