1  Bryan W. Farney *(pro hac vice)*
   Jeffrey B. Plies *(pro hac vice)*
2  DECHERT LLP
   300 West 6th Street, Suite 1850
3  Austin, Texas 78701
   Telephone:  (512) 394-3000
4  Facsimile:   (512) 394-3001

5  David J. Zubkoff (SBN 149488)
   SELTZER CAPLAN McMAHON VITEK
6  750 "B" Street, Suite 2100
   San Diego, CA  92101
7  Telephone:  (619) 685-3003
   Facsimile:   (619) 685-3100
8
   Attorneys for Defendants and Counterclaimants,
9  GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
   GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
10 LLC, AND COWABUNGA ENTERPRISES, INC

11

12                 UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15  LUCENT TECHNOLOGIES INC. and          )  Case No. 07-CV-2000-H (CAB)
    MULTIMEDIA PATENT TRUST,              )  consisting of matters severed from
16                                        )  consolidated cases:
            Plaintiff and Counter-Defendant,  )  Case No. 02-CV-2060-B (CAB)
17                                        )  Case No. 03-CV-0699-B (CAB)
        v.                                )  Case No. 03-CV-1108-B (CAB)
18                                        )
    GATEWAY, INC., GATEWAY COUNTRY        )  **GATEWAY'S REPLY BRIEF IN**
19  STORES LLC, GATEWAY COMPANIES,        )  **SUPPORT OF ITS MOTION FOR**
    INC., GATEWAY MANUFACTURING LLC       )  **PARTIAL SUMMARY JUDGMENT OF**
20  and COWABUNGA ENTERPRISES, INC.       )  **INVALIDITY OF U.S. PATENT**
                                          )  **NO. 4,763,356 (DAY)**
21          Defendants and Counter-Claimants,  )
                                          )  Date:        January 8, 2008
22          and                           )  Time:        9:30 a.m.
                                          )  Courtroom:  13, 5th Floor
23  MICROSOFT CORPORATION                 )  Judge:       Hon. Marilyn L. Huff
                                          )
24          Intervenor and Counter-Claimant.  )
                                          )
25  AND CONSOLIDATED CASES                )
                                          )
26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3

I.    INTRODUCTION ........................................................................................... 1

4
5

II.   LUCENT FAILS TO SHOW A GENUINE ISSUE OF MATERIAL FACT
REGARDING ANTICIPATION UNDER § 102(B) AND § 102(G) ............................... 1

6

    A.    Lucent Misstates The Law Regarding Public Use ................................... 1

7

    B.    Lucent Has Failed to Come Forward with Evidence of Non-Enablement ........... 4

8

    C.    Lucent Has Failed To Show A Genuine Issue Of Material Fact Regarding
The FXFE System Meeting Every Limitation of Claim 19 ................................... 4

9
10

        1.    The Undisputed Evidence Confirms That The FXFE System
Indicated The Selected Field ............................................................ 4

11

        2.    Claim 19 Does Not Require That The Composition Tool Must Be
Generated By The Application Program ..................................................... 6

12
13

        3.    Claim 19 Does Not Require That The Composition Tool Be
Displayed In A Bitmap Mode .............................................................. 6

14

        4.    Claim 19 Does Not Require That The On-Screen Tools Must Be
Displayed In An Overlay Window ............................................................. 7

15
16

        5.    The Undisputed Evidence Confirms That The FXFE On-Screen
Tools Inserted Information Into The Information Fields ............................... 7

17

III.  LUCENT FAILS TO SHOW A GENUINE ISSUE OF MATERIAL FACT
REGARDING OBVIOUSNESS UNDER § 103 ................................................... 7

18

    A.    Summary Judgment May Properly Be Granted Based on Obviousness ............... 7

19

    B.    Gateway Properly Analyzed Obviousness Under the Graham Factors ................ 8

20

    C.    The Undisputed Evidence Shows A Reason To Combine The FXFE
System Or The Tyler Article With The Indicating Of Selected Fields ................ 9

21

22

IV.   THE COURT SHOULD CONSIDER THE PRIOR ART ON THE MERITS ............... 10

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adenta GmbH v. OrthoArm, Inc.,*
    501 F.3d 1364 (Fed. Cir. 2007)...............................................................5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
    314 F.3d 1313 (Fed. Cir. 2003)...............................................................4

*American Seating Co. v. USSC Group, Inc.,*
    2005 WL 1224603 (W.D. Mich. May 23, 2005) .......................................3

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................5

*Baxter Int'l, Inc. v. Cobe Labs., Inc.,*
    88 F.3d 1054 (Fed. Cir. 1996).................................................................3

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.,*
    386 F.3d 1371 (Fed. Cir. 2004)...............................................................2

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,*
    229 F.3d 1120 (Fed. Cir. 2000)...............................................................9

*Centennial Mgmt. Serv., Inc. v. Axa Re Vie,*
    193 F.R.D. 671 (D. Kan. 2000)...............................................................6

*Cooper v. Goldfarb,*
    154 F.3d 1321 (Fed. Cir. 1998)...............................................................5

*Eolas Tech. Inc. v. Microsoft,*
    399 F.3d 1325 (Fed. Cir. 2005)...............................................................3

*In re Epstein,*
    32 F.3d 1559 (Fed. Cir.1994)..................................................................4

*Finnigan Corp. v. ITC,*
    180 F.3d 1354 (Fed. Cir. 1999)...............................................................5

*Harrington Mfg. Co. v. Powell Mfg. Co.,*
    815 F.2d 1478 (Fed. Cir. 1986).......................................................1, 2, 3

*Honeywell Int'l v. Universal Avionics Sys. Corp.,*
    488 F.3d 982 (Fed. Cir. 2007).................................................................3

*Johns Hopkins University v. CellPro, Inc.,*
    152 F.3d 1342 (Fed Cir. 1998)..............................................................10

*KSR Int'l Co. v. Teleflex, Inc.,*
    127 S.Ct. 1727 (2007).......................................................................8, 10

# TABLE OF AUTHORITIES

Page

*Knorr v. Pearson,*
  671 F.2d 1368 (C.C.P.A. 1982) ...................................................................5

*Mann v. Werner,*
  347 F.2d 636 (CCPA 1965) ........................................................................5

*Mazzari v. Rogan,*
  323 F.3d 1000 (Fed. Cir. 2003).................................................................4

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.,*
  303 F.3d 1294 (Fed. Cir. 2002)................................................................2

*Moleculon Research Corp. v. CBS, Inc.,*
  793 F.2d 1261 (Fed. Cir. 1986)................................................................2

*Motionless Keyboard Co. v. Microsoft Corp.,*
  486 F.3d 1376 (Fed. Cir. 2007).............................................................2, 3

*National Union Fire Ins. Co. v. Argonaut Ins. Co.,*
  701 F.2d 95 (9th Cir. 1983) .....................................................................5

*Netscape Comm. Corp. v. Konrad,*
  295 F.3d 1315 (Fed. Cir. 2002)................................................................3

*Prasad v. MML Investors Serv., Inc.,*
  2004 WL 1151735 (S.D.N.Y. 2004)..........................................................6

*Ryko Mfg. Co. v. Nu-Star, Inc.,*
  950 F.2d 714 (Fed. Cir. 1991)..................................................................7

*Sjolund v. Musland,*
  847 F.2d 1573 (Fed. Cir. 1988)................................................................8

## FEDERAL STATUTES

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................5

18 U.S.C. § 201(d) ........................................................................................5

## I.     INTRODUCTION

In its attempt to avoid summary judgment of invalidity, Lucent resorts to mischaracterizations of both the governing law and the relevant facts.  As explained below, Lucent mischaracterizes the law of public use, corroboration, and enablement.  Lucent also mischaracterizes this Court's claim construction order, Mr. Long's testimony, and the Tyler article.  Mr. Long, a neutral witness with no interest in the outcome of the case, provided clear testimony that the FXFE system included features that met all the limitations of claim 19 such as a broker list that was used to fill in the broker field and a numeric keypad that was used to fill in the exchange rate field.  Mr. Long successfully demonstrated the FXFE system for Mr. Tyler, the Datamation reporter, with no obligation of confidentiality.  This demonstration constituted both a public use under § 102(b) and a reduction to practice under § 102(g).  Mr. Long's testimony regarding FXFE is corroborated by the Tyler article which was published contemporaneously with the relevant events and was written by Michael Tyler, another neutral witness.  Thus, the clear and convincing evidence shows that the asserted claims of the '356 patent are invalid based on FXFE.  Lucent puts forth a multitude of arguments in its attempt to defeat summary judgment.  However, when the Court focuses on Lucent's arguments one at a time, it becomes clear that none of Lucent's arguments have merit.  As discussed below, Lucent has failed to raise any genuine issue of material fact, and summary judgment should be granted accordingly.[1]

## II.     LUCENT FAILS TO SHOW A GENUINE ISSUE OF MATERIAL FACT REGARDING ANTICIPATION UNDER § 102(B) AND § 102(G)

### A.     Lucent Misstates The Law Regarding Public Use

Lucent argues that FXFE is not prior art under § 102(b) because it was not publicly used.  Lucent Br. at 11.  In making this argument, Lucent mischaracterizes the law regarding public use.  Under Federal Circuit precedent, a product demonstration for a reporter with no confidentiality obligations constitutes a public use under § 102(b).  *See Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1479-80 (Fed. Cir. 1986).  In *Harrington*, Pickett had demonstrated a mechanized tobacco harvester to a reporter without any confidentiality

---

[1] Microsoft and Dell join in this reply brief.

1  obligations more than one year before the filing date of the patent. *See id*. The Federal Circuit

2  affirmed summary judgment of invalidity based on this public use. *See id*. Similarly, the

3  undisputed evidence shows that the FXFE system was demonstrated for Michael Tyler, a

4  Datamation reporter, without any confidentiality obligations. Ex. 7 ¶ 6; Ex. 17 at 113:19-25.[2]

5  Mr. Long's testimony regarding this demonstration is independently corroborated by the

6  Datamation article. Thus, under Federal Circuit precedent, the FXFE demonstration constitutes a

7  public use.

8      Lucent raises several meritless arguments in attempting to negate public use. First,

9  Lucent argues that evidence regarding a public use must be corroborated. Lucent Br. at 12.

10 Here, however, Mr. Long's testimony is independently corroborated by the Tyler article.[3]

11 Second, Lucent argues that the FXFE demonstration does not constitute a public use because it

12 was not open to the public. Lucent Br. at 13. However, there is no requirement that a

13 demonstration must be open to the public in order to constitute a public use. *See, e.g.,*

14 *Harrington,* 815 F.2d at 1479-80.[4] Third, Lucent argues that the FXFE demonstration does not

15 constitute a public use because Mr. Tyler never used the system. Lucent Br. at 13. However,

16 Mr. Long demonstrated the system for Mr. Tyler, and there is no requirement that Mr. Tyler

17 must have used the system himself. *See Harrington*, 815 F.2d at 1479-80 (finding a public use

18 even though the reporter never used the tobacco harvester himself).[5]

19 _____

20 [2] All citations to Exs. 1-16 refer to exhibits attached to the Declaration of Jonathan D. Baker submitted on November 30, 2007 with Gateway's motion for summary judgment, and all citations to Exs. 17-28 refer to exhibits attached to the Reply Declaration of Jonathan D. Baker submitted concurrently with this reply brief.

21

22 [3] Lucent also argues that Mr. Long's testimony is suspect because the defendants have failed to produce the FXFE system or any technical documentation regarding the system. Lucent Br. at 12. However, the FXFE system was developed more than 23 years ago by a company, Chemical Bank, whose ownership has changed several times over the past 23 years. JP Morgan Chase & Co. (the current owners of what was once Chemical Bank) was not able to locate any relevant documents. Exs. 25 & 26. Given that this work was done 23 years ago, it is not surprising that no documents could be located. Furthermore, the need for technical documentation in this case is minimal because the remaining claims relate solely to the user interface method, not to the particular software techniques used to implement it.

23

24

25

26 [4] The *Bernhardt* case provides no support for Lucent's position. In *Bernhardt*, the Federal Circuit found that the patentee had a legitimate expectation of confidentiality. *See Bernhardt, L.L.C. v. Collezione Europa USA, Inc.,* 386 F.3d 1371, 1381 (Fed. Cir. 2004). In contrast, Chemical Bank had no expectation of confidentiality, and offered the demonstration for the specific purpose of publicizing the FXFE system. Ex. 7 ¶ 6; Ex. 17 at 113:19-25.

27

28 [5] The cases that Lucent cites as support for its argument are readily distinguishable. In *Moleculon,* the court found no public use because the inventor "never made the puzzle or permitted it used in a place or at a time

1    Fourth, Lucent argues that the demonstration only involved an experimental version that

2  was never commercialized.  Lucent Br. at 13.  However, the Federal Circuit has never required

3  that a device must be in a fully finished form and commercialized before its use can constitute a

4  public use.  *See, e.g., Harrington*, 815 F.2d at 1481 ("There is no requirement that an invention

5  function perfectly in order to be reduced to practice or considered as on sale or in public use.")

6  (citations omitted).[6]  Fifth, Lucent similarly argues that the defendants cannot rely on the Tyler

7  article to corroborate the public use of FXFE because the system was allegedly still under

8  development.  Lucent Br. at 14.  However, as discussed above, there is no requirement that all

9  development must be completed before a public use can occur.[7,8]

10

---

11  when he did not have a legitimate expectation of privacy and of confidentiality."  *See Moleculon Research Corp. v.*

12  *CBS, Inc.*, 793 F.2d 1261, 1265 (Fed. Cir. 1986) (quoting district court).  In *Motionless Keyboard*, the court found
no public use because the device was shown but never actually used.  *See Motionless Keyboard Co. v. Microsoft*

13  *Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007).  Finally, in *Minnesota Mining*, the court found no public use because
there was no evidence that the device had ever been used.  *See Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303

14  F.3d 1294, 1307 (Fed. Cir. 2002).  In contrast, here, the undisputed evidence shows that the FXFE system was used
and that there was no expectation of confidentiality.  Ex. 7 ¶ 6; Ex. 17 at 113:19:114:3.

15  [6] The Federal Circuit has often held that a public use can occur even when the device is a prototype or still
under development.  *See Harrington*, 815 F.2d at 1481 ("Also, the fact that minor modifications were made and a

16  third prototype built subsequent to the Osborne demonstration does not raise a material issue of fact in this
instance."); *Eolas Tech. Inc. v. Microsoft*, 399 F.3d 1325, 1333 (Fed. Cir. 2005); *Netscape Comm. Corp. v. Konrad*,

17  295 F.3d 1315, 1321 (Fed. Cir. 2002).  Moreover, the two cases cited by Lucent do not support its position.  Lucent
cites *Motionless Keyboard* for the proposition that there was no public use where a computer device was never

18  connected to be used in the normal course of business.  *See Motionless Keyboard*, 486 F.3d at 1385.  However, here
the claimed invention relates solely to the user interface, and the user interface was fully operational during the

19  demonstration.  Ex. 7 ¶ 6; Ex. 17 at 114:1-19.  The lack of a back-end network is completely irrelevant to claims 19
and 21.  Similarly, in *American Seating*, the court found no public use because all of those to whom the invention

20  was disclosed "would have understood that there was an implied duty of confidentiality."  *American Seating Co. v.*
*USSC Group, Inc.*, 2005 WL 1224603, *5 (W.D. Mich. May 23, 2005).  The court's decision was not based in any

21  way on the fact that the device was a prototype rather than a finished product.

22  [7] Lucent asserts that Mr. Long testified that the system was "incomplete".  Lucent Br. at 13.  Lucent again
mischaracterizes the evidence.  Mr. Long never testified that the user interface was incomplete.  Rather, he testified

23  that the FXFE touch screen was connected to a local database rather than to a remote database over a network during
the demonstration.  Ex. 17 at 56:19-57:7.  But since the claim only relates to the user interface, the lack of a remote

24  networked database has nothing to do with whether the demonstrated system satisfied the claim limitations.

25  [8] The *Honeywell* case provides no support for Lucent's argument because there the court found that the
alleged public demonstration was an *experimental use* by the inventor for testing purposes.  *See Honeywell Int'l v.*

26  *Universal Avionics Sys. Corp.*, 488 F.3d 982, 998 (Fed. Cir. 2007).  In contrast, the demonstration for Tyler was
indisputably for marketing purposes, not for any experimental purpose.  Ex. 7 ¶ 6, Ex. 17 at 112:23-113:8.

27  Moreover, the experimental use exception only applies to experiments by the inventor of the patent-in-suit, and not
to experimental uses by an independent third party, such Chemical Bank.  *See Baxter Int'l, Inc. v. Cobe Labs., Inc.*,

28  88 F.3d 1054, 1058 (Fed. Cir. 1996) (finding "no reason" to extend experimental use exception to independent third
party prior art).

1    **B.    Lucent Has Failed to Come Forward with Evidence of Non-Enablement.**

2         Lucent next argues that the FXFE system and the Tyler article are not enabling.  Lucent

3    Br. at 14.  However, Lucent's argument fails for numerous reasons.  First, Lucent

4    mischaracterizes the law of enablement.  As the Federal Circuit has explained, there is <u>no</u>

5    enablement requirement for an invalidating public use under § 102(b) or for prior invention

6    under § 102(g).  *See In re Epstein*, 32 F.3d 1559, 1567-68, (Fed. Cir.1994) ("Beyond this 'in

7    public use or on sale' finding, there is no requirement for an enablement-type inquiry."); *Mazzari*

8    *v. Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003) ("To establish an actual reduction to practice, an

9    inventor must prove that he constructed his claimed invention and that it would work for its

10   intended purpose.").  Similarly, there is <u>no</u> enablement requirement for obviousness under § 103.

11   *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1357 (Fed. Cir. 2003)

12   ("enablement of the prior art is not a requirement to prove invalidity under § 103.").  Moreover,

13   Lucent presents no evidence showing a lack of enablement, as Lucent's *own expert*, does not

14   assert that FXFE and the Tyler article are not enabling.  Indeed, Lucent's expert made clear

15   during his deposition that what was allegedly new about the patent was its functionality, while its

16   implementation was just basic "computer science 101."  Ex. 28 at 64:25-65:22.

17   **C.    Lucent Has Failed To Show A Genuine Issue Of Material Fact Regarding**
           **The FXFE System Meeting Every Limitation of Claim 19.**

18

19   **1.    The Undisputed Evidence Confirms That The FXFE System**
             **Indicated The Selected Field.**

20        Lucent argues that the FXFE system does not indicate a particular field into which

21   information is to be inserted.  Lucent Br. at 15.  However, Lucent does not point to any evidence

22   that contradicts Mr. Long's testimony that the FXFE system highlighted the selected field.

23   Specifically, Mr. Long explained that when the user selected a field the "label itself would be

24   highlighted" and "[t]he field would be highlighted next to it."  Ex. 17 at 106:2-6.  Mr. Long also

25   explained that the system provided such feedback because "it was important for the trader to

26   know that the field that he thought he'd selected had actually been selected by the application."

27   *Id.* at 206:13-18.  Mr. Long's testimony regarding the FXFE system is corroborated by the Tyler

28   article which clearly shows that the system provided visual feedback by highlighting selected

1  items. Ex. 18; Ex. 4 at 50; Ex. 17 at 106:21-107:1. Under Federal Circuit precedent, complete

2  corroboration is not required for every single aspect of a claim. *See Knorr v. Pearson*, 671 F.2d

3  1368, 1374 (C.C.P.A. 1982) ("The law does not impose an impossible standard of

4  'independence' on corroborative evidence by requiring that every point . . . be corroborated by

5  evidence having a source totally independent of the inventor.").[9]

6          To avoid summary judgment, Lucent also resorts to attacking the character of third-party

7  witnesses such as Mr. Long.  Importantly, however, Lucent cannot point to any contrary

8  evidence that rebuts, contradicts, or impeaches any of his testimony.  The law is clear that Lucent

9  cannot create a genuine issue of material fact by arguing about a witness' credibility or bias.[10]

10 Lucent must first establish through contrary evidence that there is some factual dispute.[11]

11 Because Lucent has no such evidence, it cannot avoid summary judgment by simply impugning

12 Mr. Long's character.  Moreover, Lucent attacks Mr. Long's credibility because Gateway is

13 reimbursing him for his reasonable time and expenses.  As a skilled professional, it is entirely

14 appropriate for Mr. Long to be compensated for his time and expenses whether as a consultant or

15 a fact witness.  Both the Federal Rules and U.S. Code expressly contemplate the reasonable

16 compensation of witnesses for their time. *See, e.g.*, Fed. R. Civ. P. 26(a)(2)(B); 18 U.S.C.

---

[9] Lucent incorrectly asserts that corroborating evidence must unambiguously support all elements of the patents-in-suit. Lucent Br. at 15. Lucent is simply mistaken regarding the law of corroboration. There is no need to corroborate "every factual issue contested by the parties." *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998); *Mann v. Werner*, 347 F.2d 636, 640 (CCPA 1965) ("This court has rejected the notion that each individual act in the reduction to practice of a count must be proved in detail by an unbroken chain of corroboration."). Instead, corroboration must be determined based on the totality of the circumstances. *See Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007) ("Assessing the sufficiency of evidence which corroborates a witness's testimony concerning invalidating activities... involves an assessment of the totality of the circumstances including an evaluation of all pertinent evidence."). The *Finnigan* case cited by Lucent is not to the contrary. In *Finnigan*, the Federal Circuit simply found that "there was no evidence corroborative of [the witness's] testimony at all." *See Finnigan Corp. v. ITC*, 180 F.3d 1354, 1369-70 (Fed. Cir. 1999).

[10] *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (non-movant cannot avoid summary judgment by merely undermining credibility of witnesses who are allegedly biased and who have interests aligned with movant).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) ("'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.") (citation omitted).

1  § 201(d). This is further confirmed by the case law.[12] Indeed, Lucent is also compensating its

2  own consultants and fact witnesses for their time.[13]

### 2. Claim 19 Does Not Require That The Composition Tool Must Be Generated By The Application Program.

Lucent argues that FXFE and the Tyler article do not have "predefined tools" because there is no indication whether the on-screen keyboard is provided by an application program or by the operating system. Lucent Br. at 16-17. However, nothing in the claim or the specification requires these method steps to be performed by an application program rather than by an operating system. In any event, the undisputed evidence shows that the keyboard and number pad tool were both specified by the FXFE application and not by the underlying operating system. Ex. 17 at 110:12-111:19; Ex. 7 ¶ 13. Lucent also inexplicably argues that FXFE did not associate any tools with information fields. Lucent Br. at 17. However, Mr. Long clearly explained that when the "Broker" field was selected, the broker list tool was automatically displayed. Ex. 17 at 105:21-109:9; Ex. 7 ¶ 11-12. Similarly, when the "Exchange Rate" field was selected, the numeric keypad was automatically displayed. *Id.* The Tyler article fully corroborates Mr. Long's testimony. Ex. 4 at 49.

### 3. Claim 19 Does Not Require That The Composition Tool Be Displayed In A Bitmap Mode.

Lucent argues that the FXFE system did not have a graphical composition tool because the on-screen number pad was drawn in an alphanumeric mode rather than in a bitmap mode. Lucent Br. at 18. Lucent's argument fails for several reasons. First, the phrase "graphical" in the Court's construction simply means that the keypad was drawn on the screen, as opposed to being a physical keypad. Nothing in the Court's construction requires that the on-screen keypad be created using bitmap graphics rather than alphanumeric graphics. As Mr. Long testified, the on-screen keypad was generated by drawing the label for each key and drawing a box around

---

[12] *See, e.g., Prasad v. MML Investors Serv., Inc.,* 2004 WL 1151735, *6 (S.D.N.Y. 2004) ("A witness may be compensated for the time spent preparing to testify or otherwise consulting on a litigation matter in addition to the time spent providing testimony in deposition or at trial."); *Centennial Mgmt. Serv., Inc. v. Axa Re Vie,* 193 F.R.D. 671, 679 (D. Kan. 2000) (witness may be compensated for the reasonable value of his time).

[13] *See* Doc. 1771, Plies Ex. 6 (Stricker Tr.) at 46:13-23, Plies Ex. 7 (Jayant Tr.) at 179:10-15, Plies Ex. 8 (Ketchum Tr.) at 13:6-21.

1   each key.  Ex. 17 at 110:7-111:19; Ex. 18.  At the time of the FXFE system, on-screen graphics

2   could be drawn in either an alphanumeric mode or in a bitmap mode.  Ex. 27 at 467 (noting that

3   the alphanumeric mode included characters "for business block-graphics support (allowing

4   drawing of charts, boxes, and tables using single and double lines).").

### 4.   Claim 19 Does Not Require That The On-Screen Tools Must Be Displayed In An Overlay Window.

7   Lucent argues that FXFE did not perform the step of "concurrently displaying" a

8   predefined tool because the tools are displayed adjacent to the form rather than in a window

9   overlaying the form.  Lucent Br. at 18.  However, this Court has already rejected Lucent's

10  argument that the claim construction requires the use of an overlay window.  Ex. 3 at 43 n.3.

### 5.   The Undisputed Evidence Confirms That The FXFE On-Screen Tools Inserted Information Into The Information Fields.

12  Lucent also argues that FXFE did not insert information into the information fields.

13  However, Mr. Long clearly explained that when the user selected a broker name from the broker

14  list tool, that name was inserted and displayed in the "Broker" field.  Ex. 17 at 108:20-25; Ex. 7 ¶

15  11.  Similarly, Mr. Long explained that when the user entered a number using the numeric

16  keypad, that number was inserted and displayed in the "Exchange Rate" field.  Ex. 17 at 109:10-

17  22; Ex. 7 ¶ 12.  Mr. Long's testimony is fully corroborated by the Tyler article.  Ex. 4 at 49.  The

18  photograph also confirms that the information has been inserted into the fields.  Ex. 18.

### III.   LUCENT FAILS TO SHOW A GENUINE ISSUE OF MATERIAL FACT REGARDING OBVIOUSNESS UNDER § 103

### A.   Summary Judgment May Properly Be Granted Based on Obviousness.

21  Lucent argues that obviousness is not an appropriate grounds for summary judgment.

22  Lucent Br. at 22.  On the contrary, the Federal Circuit has held that summary judgment may be

23  granted on obviousness grounds, and the courts routinely grant summary judgment based on

24  obviousness.  *See, e.g., Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991)

25  ("district court can properly grant … summary judgment on … obviousness").  Indeed, in the

26  recent *KSR* case, the Supreme Court upheld the district court's grant of summary judgment on

27  obviousness grounds.  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007).

1

### B.    Gateway Properly Analyzed Obviousness Under the Graham Factors.

2    Lucent inexplicably asserts that Gateway has failed to analyze the *Graham* factors

3    necessary for an obviousness determination. Lucent Br. at 22. To the contrary, Gateway's brief

4    explicitly discussed the scope and content of the prior art, including the Tyler article, and the fact

5    that the only difference between the Tyler article and claim 19 is the highlighting of the selected

6    field, a feature which is disclosed in other prior art references.   Gateway Br. at 14-19.

7    Gateway's brief also discussed the level of ordinary skill in the art and the secondary

8    considerations of non-obviousness. Gateway Br. at 17 n.5 & 20. All of these factors support a

9    finding of obviousness.

10    Lucent's arguments regarding secondary considerations of non-obviousness lack

11    evidentiary support. First, Lucent's own expert *never* states in his declaration that the secondary

12    considerations of non-obviousness have any effect whatsoever on his analysis regarding

13    obviousness based on the Tyler article, let alone that they lead him to conclude that highlighting

14    of the fields in the Tyler article would have been non-obvious. Hayes Decl. Ex. 22. Second, the

15    evidence that Lucent does cite is either irrelevant to the *claimed* invention or is demonstrably

16    false. For example, Lucent mentions "skepticism of others" as a relevant factor, but the

17    testimony that Lucent cites on this point relates solely to a *calendar tool* which is not one of the

18    tools required by claim 19. Lucent Br. at 23. This alleged evidence is therefore wholly

19    irrelevant to the claim at issue. *See Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988)

20    (secondary considerations "relevant only if it flows from the merits of the *claimed* invention.").

21    Similarly, Lucent alleges that there was a "long-felt need" in the industry but Lucent's expert

22    does not link this long-felt need with the particular alleged invention of claim 19. Lucent Br. at

23    23. Additionally, Lucent alleges that there was a "failure of others" to provide a system with on-

24    screen tools for filling in forms. *Id*. However, rather than demonstrating the presence of these

25    secondary considerations, these statements merely reveal that Lucent's expert was unaware of

26    the FXFE system that had been developed by Chemical Bank nearly three years before the filing

27    date of the Day patent. The Tyler article itself demonstrates that others had already met the need

28    for a system with the claimed tools and had not failed. Finally, even if Lucent's secondary

1  consideration arguments had any merit, which they do not, secondary considerations cannot

2  overcome a clear showing of obviousness based on the prior art, as is the case here.  See *Brown*

3  *& Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)

4  (secondary considerations "cannot overcome the strong evidence of obviousness.").[14]

5

**C.    The Undisputed Evidence Shows A Reason To Combine The FXFE System
6      Or The Tyler Article With The Indicating Of Selected Fields.**

7      Lucent also argues that Gateway has failed to identify a reason to combine FXFE or the

8  Tyler article with references showing the indicating of selected fields.  Lucent Br. at 24.  On the

9  contrary, Gateway provided evidentiary support showing that a person of skill in the art would

10  have made such a combination because of the well-known need to provide feedback to the user

11  regarding the selected field.  Gateway Br. at 16-19; Ex. 10 ¶¶ 72-73, 134-35.[15]  Indeed, even

12  Lucent's own expert admitted that a person of skill in the art would have been motivated to

13  indicate selected fields in a touch screen system such as the FXFE system.  Ex. 5 at 221:18-

14  222:6.  Lucent does not provide any evidence to dispute that such a reason existed.

15  Significantly, Lucent's own expert never denies in his declaration that the highlighting of fields

16  would have been obvious in order to confirm to the user which field he had selected.  Nor does

17  he deny that a person of skill in the art would have been motivated to combine FXFE or the

18  Tyler article with the other prior art showing the highlighting of selected fields.  These

19  deficiencies in Lucent's expert declaration are fatal to its argument.

20

21

22      [14] Lucent also argues that the ultimate cancellation of the FXFE touch screen version somehow
23  demonstrates that the '356 patent was not obvious.  Lucent fails to provide any case law citation for this bizarre
proposition.  Indeed, Lucent fails to mention that the very system that the Lucent inventors were working on which
24  led to the '356 patent, the Slate project, was itself cancelled for financial reasons and never commercialized.  Ex. 19
at 41:14-24; Ex. 20 at 29:17-30:3.  Significantly, Mr. Long testified that the touch-screen version was cancelled
25  because of cost considerations, not because the user interface failed to work properly.  Ex. 17 at 117:12-118:2.
Thus, the cancellation of the FXFE touch-screen version for cost reasons after it had been successfully tested has no
26  relevance to the obviousness analysis.

27      [15] Similarly, Gateway explained why it would have been obvious to add a bit-mapped graphics field to the
FXFE system or the Tyler article as required by claim 21 in order to allow users to sign the forms.  Gateway Br. at
19-20; Ex. 10 ¶¶ 77-78.  Lucent has not provided any contrary evidence to rebut to this argument and thus cannot
28  defeat summary judgment.

1    IV.    **THE COURT SHOULD CONSIDER THE PRIOR ART ON THE MERITS.**

2    Lucent argues that this Court should not consider Gateway's summary judgment motion

3    based on FXFE and the Tyler article because Judge Brewster has allegedly excluded these

4    references. Lucent Br. at 9. However, Lucent mischaracterizes Judge Brewster's prior order.

5    First, Judge Brewster's original ruling regarding the Tyler reference was issued four weeks

6    **before** Judge Brewster postponed the trial and reopened prior art discovery. Ex. 21 (noting

7    intent to grant Lucent's motion-in-limine no. 10). Although the written order issued several

8    weeks later, that order was superseded by Judge Brewster's subsequent reopening of prior art

9    discovery and the postponement of the trial. Second, Judge Brewster granted Lucent's motion to

10   strike when trial was close to one month away and Lucent claimed that it was prejudiced because

11   it had not had sufficient time to conduct discovery into this prior art. After the reopening of

12   discovery, Lucent has taken all of the fact and expert discovery related to the Tyler article that it

13   claimed it needed. Exs. 15 & 17; Hayes Decl. Exs. 15 & 22. Thus, any prejudice that may have

14   justified exclusion of the Tyler article when trial was just one month away plainly no longer

15   exists. Moreover, Lucent can hardly complain about Gateway's reliance on this prior art when

16   Lucent itself propounded an entirely new expert report on damages just two months before trial.

17   Lucent also argues that this Court should not consider Gateway's arguments that relate to

18   anticipation because the Court allegedly limited the supplemental summary judgment motions to

19   obviousness issues. Lucent Br. at 10. Although Judge Brewster postponed trial and reopened

20   prior art discovery based on the Supreme Court's *KSR* decision, nothing in Judge Brewster's

21   ruling precludes the defendants from making anticipation arguments based on additional prior

22   art. Indeed, Judge Brewster expressly recognized that the defendants could properly look far and

23   wide for additional prior art. Ex. 16 at 52:6-18, 48:7-19. Moreover, since "anticipation is the

24   epitome of obviousness," the Federal Circuit has held that a party may properly present new

25   anticipation arguments when the court reopens proceedings on obviousness. *See Johns Hopkins*

26   *University v. CellPro, Inc.*, 152 F.3d 1342, 1358 n.21 (Fed Cir. 1998) ("We note that although

27   the court granted a new trial on the issue of *obviousness*, it was not improper for CellPro to

28   subsequently present an argument that the claims were *anticipated*.").

1

2

3    Dated:  December 21, 2007          DECHERT LLP

4

5                                       By:    ___/s/ Jonathan D. Baker___
                                                  Jonathan D. Baker

6                                       Attorneys For Defendants And Counterclaimants
                                        GATEWAY, INC. *et. al.*
7

8    13046126.2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28