James S. Blackburn (State Bar No. 169134)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Joseph A. Micallef (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Joel M. Freed (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005-3096
Telephone: (202) 756-8000
Facsimile: (202) 756-8087

Attorneys for *Dell Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br> Plaintiffs and Counterclaim-defendants, <br><br> v. <br><br> GATEWAY, INC. AND GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervener and Counter-claimant, | Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases: <br> Case No. 02-CV-2060-B (CAB) <br> Case No. 03-CV-0699-B (CAB) <br> Case No. 03-CV-1108-B (CAB) <br><br> **DELL INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,763,356 TO DAY, ET AL.** <br><br> Judge Marilyn L. Huff <br><br> Hearing Date: January 8, 2008, 9:30 a.m. <br> Location: Courtroom 13, 5th Floor |

| | |
|---|---|
| MICROSOFT CORPORATION, | ) |
| Plaintiff and Counter-defendant, | ) |
| v. | ) |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | ) |
| Defendants and Counter-claimants, | ) |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | ) |
| Plaintiffs and Counterclaim-defendants, | ) |
| v. | ) |
| DELL INC., | ) |
| Defendant and Counter-claimant. | ) |

## I. INTRODUCTION

Unable to rebut arguments actually made on summary judgment, Lucent addresses positions never taken. Lucent seeks to counter Dell's showing that Home Accountant and the Tyler Article—in combination—render claims 19 and 21 obvious by insisting that Home Accountant does not *anticipate* claim 19 of the Day patent or *alone* render obvious that claim.[1] Yet Dell presented neither theory to the Court. What Dell did present—evidence of obviousness based on Home Accountant combined with the Tyler Article—remains unaddressed and unrebutted.

Lucent's argument—that it would not have been obvious to modify Home Accountant to add the "predefined tool associated with" and "inserting" limitations—simply ignores the teachings of the Tyler Article. *See* Lucent Opp. at 33-34. That reference unquestionably discloses a composition tool incorporated *directly* into the application program, not one provided by the operating system to work *in conjunction with* the application program. *See* Dell's Br. at 1-2, 9-11. The Tyler Article further teaches that the information composed in the composition tool is automatically entered into the field, without cutting and pasting. *Id.* No dispute there.

The Tyler Article's disclosure of a composition tool incorporated directly into the application discloses the two features of the asserted claims this Court previously found potentially missing from Home Accountant. Following the Supreme Court's decision in *KSR*, the relevant inquiry thus turns on whether a person of ordinary skill in the art starting with Home Accountant, and knowing about the Tyler Article and the problems and solutions discussed thereinafter, would have found it obvious to program a compositional tool directly into the functionality of the Home Accountant software. The answer is indisputably "yes."

Lucent seeks to avoid that answer by diversion. Instead of rebutting what the **combination** of Home Accountant and the Tyler Article would have made obvious to a skilled artisan, Lucent argues that Home Accountant "was *not designed* to be used with . . . a predefined and associated composition tool" and that the "Macintosh memory and programming limitations *taught away*" from the addition

---

[1] Lucent does not address, much less rebut, Dell's evidence and arguments with respect to the invalidity of dependent claim 21. Accordingly, should the Court find independent claim 19 obvious, claim 21 should also fall.

- 1 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

of a composition tool. *See* Lucent Opp. at 34. But within the obviousness framework set out by the Supreme Court in *KSR*, the primary (or intended) purpose of the prior art has no bearing on the analysis. *See KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742 (2007). What is more, the relevant inquiry for obviousness examines whether a person with ordinary skill in the art could combine the *teachings* of the prior art, not whether s/he could physically combine the prior art *devices* themselves. *See In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983); *see also Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) (noting that whether apparatus disclosed in the prior art would be "combined by businessmen for economic reasons" is not relevant to obviousness). Lucent's arguments are legally inapposite.

In implicit recognition of that, Lucent then employs another diversionary tactic, claiming that Dell failed to make a particularized showing of obviousness. In so arguing, Lucent ignores several pages in Dell's motion that analyze Home Accountant and Tyler vis-à-vis the *Graham* factors used to determine obviousness. *See* Dell Br. at 1-2, 7-11. That showing, again, stands unrebutted.

Lucent next urges that secondary considerations preclude summary judgment here. Attorney argument and conclusory expert statements aside, however, Lucent fails to present any real evidence on secondary considerations of non-obviousness, much less show that such evidence has a nexus to the recited features of the asserted claims. For example, while Lucent's expert, Mr. Tognazzini, professes that "[t]hose in the art were trying but failing to make the user experience more efficient," he did not support his conclusion with even a single example of such a failed attempt. Hayes Ex. 22[2] at 385 (Tognazzini Decl. at ¶ 49). Likewise, Lucent has offered no evidence relating to the volume of contracts or licensing allegedly made or sold under the Day patent, and no potentially substantive evidence of commercial success. Accordingly, there are no secondary considerations pertinent to this obviousness inquiry, much less considerations sufficient to "dislodge" the evidence of obviousness so as to preclude summary judgment. *KSR*, 127 S. Ct. at 1745.

---

[2] Unless otherwise noted, "Ex. __" refers to exhibits attached to the declarations of James S. Blackburn filed in support of Dell's motion for summary judgment (Docket Ent. 76) and in support of Dell's reply brief (filed concurrently), and "Hayes Ex. ___" refers to exhibits attached to the declaration of Eric Hayes in support of Lucent's opposition (Docket Ent. 154).

- 2 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

In a final attempt to sidestep the merits of Dell's motion, Lucent insists that the Court's prior order precludes consideration of the Tyler Article. For support, Lucent looks to the Court's decision to strike the reference from Gateway's previous motion for summary judgment filed shortly before the originally-scheduled May 2007 trial. Neither the circumstances nor the reasoning of this Court's previous ruling, however, applies here. In its prior ruling—made in response to a motion in limine filed by Lucent—the Court concluded that Lucent had not been afforded an "opportunity for expert review." *See* Hayes Ex. 5 at 53 (Order on Motion to Strike). The intervening several months, however, afforded Lucent ample opportunity to review and analyze the article and have alleviated these concerns. Thus, in keeping with the Court's pronouncement that post-*KSR*, Defendants should be given an opportunity to reevaluate their obviousness positions unconstrained by the now rejected "previous teaching or motivation" requirement, *see* Ex. 52 at 58.1 (Transcript of 5/11/07 Hearing), the Tyler Article is properly before the Court on Dell's motion for summary judgment.

The bottom line is this: Lucent's opposition attempts to mask the obvious—namely, that the Tyler Article teaches the only two features the Court has found arguably absent from Home Accountant. And together, the Tyler reference and Home Accountant render obvious the asserted claims of the Day patent.

## II. ARGUMENT

### A. The Asserted Claims of the Day Patent are An Obvious Combination of Elements Found in the Prior Art

This Court has previously found that Home Accountant running on an Apple Macintosh discloses all the limitations of claim 19 save perhaps two—the "predefined tool" limitation and the "inserting" limitation. Ex. 2 at 42-43 (SJ Order). Lucent, in its Opposition, also concedes as much. The Tyler Article, as explained in Dell's Opening Brief, discloses both limitations in its disclosure of a compositional tool associated with a data form-entry system that also has the ability to automatically insert information composed with the tool into an active information field. *See* Dell Br. at 6, 9-11. Thus, Home Accountant, viewed in combination with the Tyler Article, renders the Day patent invalid as obvious. Home Accountant and Tyler, together, yield the unsurprising technology disclosed and claimed in the Day patent. And because "[t]he combination of familiar elements according to known

- 3 -

1  methods is likely obvious when it does no more than yield predictable results," Dell is entitled to
2  summary judgment. *KSR*, 127 S. Ct. at 1731.

3  The Supreme Court has explicitly stated that "any need or problem known in the field of endeavor at the time of invention and addressed by the patent" can serve as a reason to combine references. *Id.* at 1742. The Tyler Article provides just such a reason. Tyler explains that the 1984 timeframe witnessed a transition in computer use from mere clerical work into more managerial and executive functions, requiring new ways to interact with them. *See* Ex. 3 at 50-51 (Tyler Article). The reference also explains how the automatic-tool-providing-interface provided by FXFE gave securities traders at Chemical Bank an efficient way to quickly enter trade information. *Id.* Thus, it was a "problem known in the field of endeavor" that not all persons utilizing form-entry systems were proficient with a manual keyboard and that there needed to be a better and more efficient method of entering information. *See id.* A person of ordinary skill in the art using common sense would have recognized that Home Accountant could have benefited from the same advantages and efficiencies identified in the Tyler Article and, therefore, would have reason to combine the teachings of the two.

15  Lucent, through its expert, argues otherwise, stating that "memory and programming limitations taught away" from the addition of the "claimed tools of the '356 patent" to Home Accountant. However, Mr. Tognazzini provides no evidence to show why such modifications would have been unworkable. Moreover his "taught away" assertion completely ignores the fact—found by this Court—that Home Accountant *already* used everything called for by the Day patent (including the "menu of alternative" predefined tool), with the possible exception of two features.[3]

21  Lucent's expert also argues that the intent of Apple Macintosh developers precludes finding obviousness. Apple Macintosh developers, Mr. Tognazzini claims, did not *intend* that the Key Caps

---

[3] Mr. Tognazzini's argument that "[n]o one had the hardware platform even capable of incorporating the '356 patent advantageously" is also legally irrelevant. When read in context, Mr. Tognazzini's declaration at best establishes that a system necessary to combine the teachings of the Home Accountant and the Tyler Article to arrive at the claimed invention of the Day patent may have been expensive to produce, and for that reason may not have been readily commercially available off the shelf. That is not enough to defeat obviousness. Lucent and Mr. Tognizzini have failed to come forward with any evidence that there was a mismatch between the technologies of Home Accountant and the Tyler Article or that, absent commercial considerations, such a system could not have been built. *See Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983).

- 4 -

tool be used for inputting information into information fields. *See* Hayes Ex. 22 at 382 (Tognazzini Decl. at ¶ 38). Instead, those developers designed the Key Caps tool primarily as a desktop accessory that enabled users to spell out words or sentences in different fonts using only a mouse. *See id.* at 380-81 (Tognazzini Decl. at ¶ 34). From this, Mr. Tognazzini concludes that an inventor starting with Home Accountant, and seeking to increase the efficiency and ease of use for those less proficient in utilizing keyboards, would have no reason to consider linking the Key Caps tool to Home Accountant and adding an "enter" button or similar feature to automatically insert composed information. Mr. Tognazzini's reasoning, however, employs the very test for obviousness rejected by the supreme Court. In its recent *KSR* decision, the Supreme Court pronounced it error to assume that "a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem." *KSR*, 127 S. Ct. at 1742. Instead, the Court explained that ***"[c]ommon sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle***." *Id.* at 1742. Thus, regardless of Key Caps' primary purpose, its design provided an obvious example of an on-screen keyboard; and the prior art, such as the Tyler Article, indicated that a linked compositional tool that automatically inserts information was an ideal design to increase efficiency. That a software designer hoping to make a more efficient data form-entry system (such as in the Day patent) would ignore Key Caps running along side Home Accountant merely because it was "never intended to be a keyboard replacement"—in the words of the Supreme Court—"makes little sense." *Id.*

It bears noting that Lucent and Mr. Tognazzini contradict each other on crucial points. Lucent spends the first several pages of its opposition extolling the benefits of the data entry tools (including the composition tool) disclosed in the Day patent and criticizing use of keyboards:

> the '356 patent identified a need for more user-friendly and time-saving data entry interfaces . . . before the invention of the '356 patent a salesperson would need to enter all of the information manually, perhaps with a computer keyboard . . . the '356 patent conceived of a time saving form-entry system . . . the '356 patent discloses a "keyboard tool" that can used to enter text data, and a "number entry tool" that can be used to enter numeric data . . . .

- 5 -

Lucent Opp. at 2-4.  But when arguing against obviousness, Mr. Tognazzini has nothing but scorn for the composition tool of the Day patent, arguing that it would not have been obvious to add such a tool to Home Accountant because it would actually hinder and slow down data entry.  Mr. Tognazzini instead extols the virtues of a physical keyboard:

> These virtual keyboards and keypads had the potential to slow down the system and were typically less efficient than conventional physical keyboards for most applications. . . . [I]n the presence of a hardware keyboard, entry is more efficient and faster than the use of an on-screen keyboard operated by a mouse, touch screen, or other pointing device when inputting information.

Hayes Ex. 22 at 380-82 (Tognazzini Decl. at ¶¶ 34, 38).  Lucent and Mr. Tognazzini cannot have it both ways—they cannot sing the praises of the patent and its composition tool to argue that the patent introduced a significant improvement, and at the same time criticize such tools (which indisputably were known in the prior art) to argue that no one would have been motivated to add them to the form entry system of Home Accountant.  That is particularly so when Lucent's own brief admits that "[p]eople such as *securities traders* . . . spent an inordinate amount of time on a daily basis manually inputting information into electronic forms," Lucent Opp. at 2, and the prior art Tyler Article teaches that the automatic-tool-providing-interface provided by FXFE gave *securities traders* at Chemical Bank an efficient way to quickly enter trade information." Ex. 3 at 52-53.

### B. Lucent Presented No Specific Evidence Rebutting Dell's *Prima Facie* Case of Obviousness

Lucent's argument that Dell failed to provide any particularized discussion of the *Graham* factors ignores Dell's detailed discussion of obviousness in view of the controlling *KSR* and *Graham* precedents.  Dell Br. at 1-2, 7-11.

Lucent also urges that secondary considerations preclude summary judgment of the obviousness demonstrated by Dell.  As support, Lucent offers nothing more than statements from its expert witness paraphrasing the description of secondary considerations set forth in *Graham*. Lucent appears to dispense altogether with any *specific* evidence of such considerations that bear any nexus to the limitations required by the claim.  Lucent's expert professes that "[t]hose in the art were trying but failing to make the user experience more efficient."  Hayes Ex. 22 at 385 (Tognazzini Decl. at ¶ 49).

- 6 -

Yet, he fails to point to even a single example of a failed attempt. Likewise, Lucent and Mr. Tognazzini fail to cite to any evidence of commercial success, such as volume of sales or licensing allegedly made under the Day patent.

The Supreme Court in *KSR* disapproved of just such expert evidence. Reaffirming the long held understanding that obviousness inquiries constitute legal determinations, the Court further remarked that the Federal Circuit had "misunderstood the role expert testimony plays in the analysis." *KSR*, 127 S. Ct. at 1745. The Court explained that a district court should not be prevented from finding summary judgment when the patentee only provides a "conclusory affidavit addressing the question of obviousness." *Id.* Similarly, the slapdash statements of Lucent's expert cannot preclude summary judgment. Rather, "[w]here, as here, the content of the prior art, the scope of the patent claims, and the level of ordinary skill in the art are not in dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *Id.*

### C. Prior Rulings Do Not Foreclose Use Of The Tyler Article To Inform This Court's Obviousness Inquiry

When Gateway moved for summary judgment based on the Tyler Article, this Court found in response to Lucent's motion in limine that Lucent had been given "insufficient time to prepare a response" and did not have enough "opportunity for expert review." Hayes Ex. 5 at 53. This concern no longer exists. To be sure, Lucent has had ample time to brief Tyler and in fact, its expert has thoroughly reviewed the article in at least three of his most recent reports and declarations. *See, e.g.*, Hayes Ex. 22 at 375-384 (Tognazzini Decl. at ¶¶ 13-44); Hayes Ex. 10 at 208-213 (Export Report of Tognazzini, dated October 12, 2007 at ¶¶ 46-65); Ex. 53 at 65-66 (Declaration of Tognazzini, dated April 13, 2007 at ¶¶ 2-10).

Moreover, this Court has also determined that Defendants should, post-*KSR*, be given the opportunity to reevaluate the prior art and present fresh obviousness positions unconstrained by the "previous teaching or motivation" requirement rejected by the Supreme Court on *KSR*. *See* Ex. 52 at 58.1 (Transcript of 5/11/07 Hearing). As the Court previously stated, the change in the law on obviousness "required [the Court] to give the Defendants the opportunity to take another look at their prior art and see whether there are any other prior art references that could have been invoked before

- 7 -

but weren't, and they want to bring them into the game now.  And I think they're entitled to that . . . ." *Id.* at 62.  Lucent's suggestion that use of the Tyler article in this motion is foreclosed stands that determination on its head. It should be rejected and summary judgment entered.

### III.   CONCLUSION

For the reasons stated above, Dell respectfully requests entry of summary judgment that the asserted claims of the Day patent are invalid.[4]

December 21, 2007         ARNOLD & PORTER LLP
                          James S. Blackburn
                          Joseph A. Micallef

                          McDERMOTT WILL & EMERY LLP
                          Joel M. Freed

                          By: /s/James S. Blackburn
                              James S. Blackburn
                              james.blackburn@aporter.com
                              Attorney for Dell Inc.

---

[4] Microsoft Corporation ("Microsoft") and Gateway, Inc. ("Gateway") also join in this Reply for all the reasons stated herein.

- 8 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)