James S. Blackburn (State Bar No. 169134)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Joel M. Freed (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: (202) 756-8000
Facsimile: (202) 756-8087

Joseph A. Micallef (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Attorneys for Dell Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br> Plaintiffs and Counterclaim-defendants, <br><br> v. <br><br> GATEWAY, INC. AND GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervener and Counter-claimant, | Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases: <br> Case No. 02-CV-2060-B (CAB) <br> Case No. 03-CV-0699-B (CAB) <br> Case No. 03-CV-1108-B (CAB) <br><br> **DELL'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ON THE ASSERTED CLAIM OF U.S. PATENT NO. 4,958,226 TO HASKELL, ET AL.** <br><br> Judge Marilyn L. Huff <br><br> Hearing: January 8, 2008, 9:30 a.m. <br> Location: Courtroom 13, 5th Floor |

| | |
|---|---|
| 1  | MICROSOFT CORPORATION, ) |
| 2  | )  Plaintiff and Counter-defendant, ) |
| 3  | ) v. ) |
| 4  | ) LUCENT TECHNOLOGIES INC. and ) MULTIMEDIA PATENT TRUST, ) |
| 5  | ) |
| 6  | Defendants and Counter-claimants, ) |
| 7  | LUCENT TECHNOLOGIES INC. and ) MULTIMEDIA PATENT TRUST, ) |
| 8  | ) |
| 9  | Plaintiffs and Counterclaim-defendants, ) ) |
| 10 | v. ) ) |
| 11 | DELL INC., ) ) |
| 12 | Defendant and Counter-claimant. ) ) |

## I. INTRODUCTION

Dell's technical expert, Dr. Edward Delp, has demonstrated how each limitation of claim 12 of the Haskell patent is disclosed in the PictureTel patents. MPT, through its expert, offered only a single response: the PictureTel patents do not disclose *coding* of motion-compensated interframe interpolation errors. But such a requirement is not to be found in the language of claim 12 or in this Court's construction of the claim, a fact that Dr. Girod conceded at his recent deposition. Those of skill in the art had numerous reasons to combine the teachings of the PictureTel patents to form a video decoder as set forth in claim 12. Accordingly, the PictureTel patents render claim 12 obvious and, therefore, invalid.

In its opposition MPT asserts a scattershot of non-obviousness arguments, none of which saves the claim. For example, when its expert opined that the only distinction between the PictureTel patents in combination and the claim was that "the PictureTel references nowhere disclose blockwise coding of motion-compensated interframe interpolation errors," MPT asserts that what he really meant was that lots of other claimed structures were also missing, and it provided a new declaration from that expert for support. But Dr. Girod testified under oath at his deposition that the claim required no coding of interpolation error whatsoever. His new declaration that several different requirements of the claim call for coding of interpolation error is therefore utterly inconsistent with his sworn testimony, and fails to raise a "genuine" issue of material fact. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (subsequent statements by affidavit that contradict prior statements on deposition do not raise "genuine" issues of fact sufficient to preclude summary judgment).

MPT also argues that *one of the seven* PictureTel patents fails to disclose interframe interpolation; however, that particular patent does in fact expressly disclose interframe interpolation. But in any event, other patents in the combination do as well, a reality which neither MPT nor its expert dispute. This argument is therefore immaterial at best. *See In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) ("Non-obviousness cannot be established by attacking references individually").

Finally, MPT argues that Dell has not shown a teaching in the prior art that specifically suggests addition of interframe interpolation error to the PictureTel patents. But the law, at least since

- 1 -

the Supreme Court decided *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007), requires no such particularized teaching. "As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 127 S. Ct. at 1741.

Accordingly, the prior art provides more than enough information for one of ordinary skill in the art to use his skill and common sense to implement the video decoder apparatus set forth in claim 12 of the Haskell patent, and there was ample reason to do so. Thus, claim 12 is invalid as obvious, and this Court should so rule.

**II.   ARGUMENT**

    **A.   MPT's Expert Has Now Admitted that His Sole Argument for Why the PictureTel Patents in Combination Do Not Render Claim 12 Obvious Is Not Based on any Requirement of the Claim**

As set forth in Dell's opening brief, Defendants' technical expert, Dr. Delp, has demonstrated how each limitation of claim 12 of the Haskell patent is disclosed in the PictureTel patents. See Ex. 18 at 888-91, 977-90 (Delp Report at ¶¶ 111-22 and Exhibit H).[1] Dr. Delp describes how the PictureTel patents disclose the claimed functionality, identifies specific disclosed circuit structures for performing those functions, and explains why the structures disclosed in the PictureTel patents are equivalent to those identified by the Court as corresponding structure. *Id; see also* Ex. 50 at 13-17; 24-29 and 30-38 (Expert Report of Edward J. Delp 03/31/2006 at 81-85; Delp's Ex. C at 74-79 and 111-19). This evidence creates a *prima facie* case of obviousness of the asserted claim.

In his rebuttal report MPT's expert, Dr. Girod, offered only a single argument as to why the PictureTel patents *in combination* did not render claim 12 invalid as obvious. He argued only that "the PictureTel references nowhere disclose *blockwise coding of motion-compensated interframe interpolation errors*." Ex. 19 at 1036 (Girod Report) (emphasis added).

---

[1] Unless otherwise noted, "Ex. __" refers to exhibits attached to the declaration of James S. Blackburn filed in support of Dell's motion for summary judgment (Docket Ent. 76) and in support of Dell's reply brief (filed concurrently).

- 2 -

> Even if combined, the PictureTel references do not disclose all elements of Claim 12. For example, the PictureTel references nowhere disclose ***blockwise coding of motion compensated interframe interpolation errors***. Dr. Delp glosses over this missing limitation by concluding that the use of interpolation error was an obvious variation of the prior art.

*Id.* at 1036 (emphasis added). The report provided no further explanation of what he meant by this statement, or how it was linked to any particular language of the claim. *Id.*

Counsel for Dell therefore sought to question Dr. Girod about this opinion at his deposition. When pressed, Dr. Girod was forced to admit that "[n]o part of this claim requires coding of interpolation errors."

> Q. Well, my question was: Do you think that any part of the claim requires coding of interpolation error, whether construed by the Court or not?
>
> * * *
>
> THE WITNESS: No part of this claim requires coding of interpolation errors.

Ex. 20 at 1084 (Girod Depo. Tr. at 161:20-25).

Now, in a brand-new declaration attached to MPT's opposition, Dr. Girod seeks to characterize "blockwise coding of motion-compensated interframe interpolation errors"—which he testified under oath was not required by the claim—as really referring to the claimed "means responsive to . . . codes that describe deviations from interpolated blocks to develop said interpolated blocks" and its corresponding structure:

> [T]he PictureTel references nowhere disclose blockwise coding of motion compensated interframe interpolation errors, ***and therefore*** disclose no "codes that describe deviations from interpolated blocks" or "means responsive to . . . codes that describe deviations from interpolated blocks to develop said interpolated blocks." Nor do they discloses circuitry or structure equivalent to the combination of Decoder 25, $DCT^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell.

Declaration of Bernd Girod in Support of Multimedia Patent Trust's Oppositions to Dell's Video Coding Summary Judgment Motions (Docket Ent. 144) at 21 (emphasis added).

Thus, the subject matter that Dr. Girod testified was not required by the claim is suddenly equated with the second means element of the claim and all of its corresponding structure. These new

- 3 -

"opinions" are therefore directly contrary to the testimony Dr. Girod gave under oath in response to Dell's counsel's questions. Such gamesmanship should not be permitted, and the Court should simply ignore these new opinions as inconsistent with sworn testimony, out of time, and not raising a genuine issue of fact. *See Radobenko,* 520 F.2d at 544 (subsequent statements by affidavit that contradict prior statements on deposition do not raise "genuine" issues of fact so as to preclude summary judgment); *see also Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (holding that statements made by affidavit filed in opposition to summary judgment that directly contradicted earlier deposition testimony "should be disregarded, or at least discounted.").

But even if considered, these new opinions are insufficient to avoid summary judgment of obviousness, since Dr. Girod provides no explanation of ***why*** he believes PictureTel falls short.[2] This kind of conclusory expert opinion is exactly the kind of "evidence" the Supreme Court has said is insufficient to avoid summary judgment of obviousness:

> To the extent the court understood the *Graham* approach to exclude the possibility of summary judgment when an expert provides a conclusory affidavit addressing the question of obviousness, it misunderstood the role expert testimony plays in the analysis. In considering summary judgment on that question the district court can and should take into account expert testimony, which may resolve or keep open certain questions of fact. That is not the end of the issue, however. The ultimate judgment of obviousness is a legal determination. Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.

*KSR*, 127 S. Ct. at 1745-46 (citation omitted). Thus, Dr. Girod's new declaration does not raise a genuine issue of fact, whether or not the Court credits it.

**B.    Even If the PictureTel Patents Required the Coding of Interpolation Error Claim 12 Would Still Be Invalid as Obvious**

Even if the asserted claim required "blockwise coding of motion-compensated interframe interpolation errors"—and all of the structure Dr. Girod says that requires—the claim would still be

---

[2] This failing also highlights the unfairness of Dr. Girod's untimely declaration, since Dell was not even permitted to ask the question of why he held these views.

- 4 -

1  invalid as obvious since all of that was known, and there were many undisputed reasons to combine
2  them with a system, like that of PictureTel, that already employed interpolation.

3        As demonstrated in Dell's opening brief, Mr. Haskell himself placed in the public domain, by
4  publishing in his text book more than one year before filing for a patent on his system, the express
5  motivation to add the use of interpolation error to systems already employing interpolation.  In doing
6  so, Mr. Haskell told the world that such a modification was "necessary to reduce artifacts that may
7  otherwise be introduced due to faulty interpolation." Ex. 21 at 1093 (Digital Pictures at Fig. 5.6.4).

8        Similarly, Mr. Lodge's prior art paper directs one to "locally decode the transmitted symbols
9  to reconstruct a received picture at the encoder and compute the coding error due to both interpolated
10 and predicted components . . . [and] . . . [i]f an offending interpolation is found, a differential term is
11 generated and coded to improve the subjective reproduction of that pel in the receiver." Ex. 28 at
12 1209 (Lodge paper).  And Mr. Micke, describing a system he developed that is strikingly like that of
13 Mr. Haskell, stated that "[i]f the interpolation error exceeds the threshold of perceptibility, this error is
14 quantized, coded and transmitted." Ex. 23 at 1105 (Micke Thesis).  Even Dr. Girod recognized
15 Micke's work at the time as "a promising direction." Ex. 20 at 1056 (Girod Depo. Tr. at 62:19-23).

16       Moreover, Dr. Girod has also conceded that the structure for implementing the claimed means
17 elements relating to interpolation error was "individually known in the art . . . [and that] . . . a person
18 of ordinary skill in the art would know how to implement them." *Id.* at 1062 (Girod Depo. Tr. at
19 82:12-21).  Thus, even if Dr. Girod's latest opinions are considered, the claim would still be invalid
20 for obviousness since what he says is missing was well-known and there was ample reason to add it to
21 the PictureTel system.

22       In the face of such evidence, MPT advances several tenuous and legally erroneous arguments.
23 They do not, however, save the claim from summary judgment of obviousness.

### 1. PictureTel Already Disclosed DCT Transform-Coded Error Codes

25 MPT argues, for example, that the prior art does not teach "transform coded," motion-
26 compensated interpolation error signals. *See* MPT Opp. at 16.  That is incorrect.  Micke expressly
27 describes a system that includes motion compensation and the coding of interpolation error:

- 5 -

> Motion compensation for data reduction of frame sequences is based on the model concept that the sampled values of the video signal are highly correlated along the trajectories of moving objects. In the past, this model concept was exploited either using the DPCM method with motion compensating prediction or using motion compensating interpolation of the video signal. ***Both methods can be combined into a single method known as motion compensating interpolation error coding.*** In this combined method, every Nth field of the frame sequence is transmitted with the help of motion compensating prediction and the intervening fields are computed using motion compensating interpolation. ***If the interpolation error exceeds the threshold of perceptibility, this error is quantized, coded and transmitted.***

Ex. 23 at 1105 (Micke Thesis) (emphases added); *see also* Ex. 20 at 1053 (Girod Depo. Tr. at 60:11-13) ("[H]e [Micke] was considering architecture where interpolation error would be encoded.").

And it is undisputed that the PictureTel patents disclose the coding of prediction error using the discrete cosine transform ("DCT")[3]—the same "transform coding" disclosed in the Haskell patent itself. Ex. 24 at 1186 (Haskell pat. at 4:14-16). Indeed, numerous prior art sources confirm that the DCT was considered to be a highly efficient and beneficial coding technique which was widely used, *see, e.g.*, Ex. 21 at 1092 (Digital Pictures); Ex. 34 at 1364 (U.S. Patent No. 4,703,350 at 10:41-49); Ex. 31 at 1235 (U.S. Patent No. 4,849,810 at 10:14-22), and the only commentary the Haskell patent itself includes about the DCT is that in the prior art coding of error signals was "typically performed by means of the 'Discrete Cosine Transform' (DCT)," *see* Ex. 24 at 1185 (Haskell Pat. at 1:46-58).

Thus, while the prior art may not expressly disclose transform coded, motion-compensated interpolation error signals *in a single reference*, that disclosure is not required for a finding of obviousness. "As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 127 S. Ct. at 1741. Micke shows the coding of motion compensated interpolation error and PictureTel already employs the DCT coding of other error signals—and there was ample reason to combine them. No more precise teaching is required for a finding of obviousness.

---

[3] *See, e.g.*, Ex. 32 at 1291 (Ericsson '914 pat. at 6:34-43); *id.* at 1294 (11:46-48) ("In the illustrated embodiment of the invention, the lossy compression circuitries 28 and 46 can employ a discrete cosine transform.").

- 6 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

### 2.   **Unpredictability of Other Techniques Is Immaterial**

MPT next argues that there were many video compression technologies available in the prior art and that the performance of any particular combination could not be predicted. *See* MPT Opp. at 16. But that was the case before the Supreme Court in *KSR* as well, and it was no impediment to invalidating the claim for obviousness on summary judgment. *See KSR*, 127 S. Ct. at 1744-45.

Indeed, this argument misperceives, or ignores, the change in the law *KSR* announced. Knowing that a particular combination would produce a specific benefit may very well be a reason to combine, but under *KSR* that is certainly not the only reason to combine that will support a finding of obviousness, so its absence does not preclude such a finding. "Under the correct analysis, ***any need or problem known in the field*** of endeavor at the time of invention and addressed by the patent ***can provide a reason for combining*** the elements in the manner claimed." *KSR*, 127 S. Ct. at 1742 (emphases added).

Here, Haskell's own textbook, Lodge's paper, and Micke's thesis all demonstrate a reason, not just to randomly try lots of different compression technologies, but specifically to employ interpolation error to reduce artifacts in systems where interpolation is already used. Moreover, the structures for employing interpolation error for that purpose were all well-known and implementable, as Dr. Girod has conceded. Thus, even assuming there were many different techniques known for video compression and an inability to predict the benefits that would result in any particular combination of them, Haskell, Lodge, and Micke each provided a prior art reason to combine interpolation error, and the structures required to use it, with the motion-compensated interframe interpolation already included in the PictureTel patents.

### 3.   **There Is No Teaching Away**

MPT also asserts that one of the seven PictureTel patents, U.S. Patent No. 4,849,810 ("the Ericsson '810 patent") "teaches away" from claim 12 because the primary embodiment of that patent discloses ***intra***frame interpolation (and ***intra***frame interpolation error), and according to MPT, the claim requires ***inter***frame interpolation (and, presumably, ***inter***frame interpolation error). *See* MPT Opp. at 18-19. But MPT here ignores the fact that the '810 patent specifically contemplates a "frame interpolator to accurately predict what the image would have been at any selected time between

- 7 -

received frames." Ex. 31 at 1234 (Ericsson '810 Pat. at 8:29-31). Thus, the '810 patent in fact does disclose *inter*frame interpolation, that is, interpolation "between a past frame . . . and a future frame."

Aside from that, however, Dell's motion is not based solely on the '810 patent. Rather, Dell's motion argues that claim 12 is invalid in view of the PictureTel patents *in combination*. And there is no dispute that several of the other PictureTel patents disclose interframe interpolation in great detail, or that the PictureTel patents cross-reference and expressly incorporated each other by reference. *See, e.g.*, Ex. 32 at 1281, 1292 (Ericsson '914 Pat. at 8:60-62 & Fig. 3) ("The frame interpolator 88 interpolates in the temporal domain in accordance with motion reconstruction signals received over lines 94.").[4]

In any event, MPT misapplies the legal doctrine of "teaching away." A reference teaches away where it discourages a particular path or when, even when modified by those skilled in the art, would create an inoperable result. *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1381 (Fed. Cir. 2007). There is no evidence here that using a frame interpolator was discouraged or would create an inoperable result. Several of the PictureTel patents in fact include a frame interpolator and, as issued U.S. patents, are presumed to provide enabling disclosures. The fact that one PictureTel patent may have also disclosed other techniques is simply not evidence of a "teaching away."

### C. Any Purported Secondary Considerations Do Not Change the Fact that Claim 12 Is Invalid as Obvious

In proper circumstances, secondary considerations including commercial success, long felt but unresolved needs, and failure of others may inform an obviousness determination. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966) ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., *might be* utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.") (emphasis added). In *KSR* the Supreme Court reiterated that the obviousness determination is a "broad inquiry" and

---

[4] *See also* Ex. 34 at 1363 (Hinman '350 Pat. at 7:52-54); Ex. 31 at 1231, 1233 (Ericsson '810 Pat. at 2:23-33; 6:54-61); Ex. 32 at 1289 (Ericsson '914 Pat. at 1:65-2:4). Indeed, the Ericsson '914 patent further states that the frame interpolator creates the intermediate frames "by halving the output displacement vectors from the motion field interpolator 96," *id.* at 1294 (11:6-27), which is exactly the process disclosed in the Haskell patent for performing temporal interpolation. Ex. 24 at 1186 (Haskell Pat. at 4:38-46).

- 8 -

1  invited courts to consider secondary considerations as instructive "where appropriate." *KSR*, 127 S. Ct. at 1739. Here, as in *KSR*, MPT has not shown any secondary considerations that are sufficient to "dislodge" a determination that claim 12 is obvious. *See id.* at 1745.

To give weight to secondary considerations "its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). In this regard the patentee bears the burden of establishing a legally and factually sufficient connection between the secondary consideration and the patented invention. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Moreover, evidence relating to secondary considerations of nonobviousness, even when present, does not necessarily avoid a finding on summary judgment. *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (affirming a grant of summary judgment of obviousness despite "substantial evidence of commercial success, praise, and long-felt need"). Obviousness is a legal issue ultimately for the Court to decide. *Graham*, 383 U.S. at 17.

MPT has failed to provide any evidentiary basis for a real nexus and should therefore not be permitted to avoid summary judgment based on allegations of secondary considerations. Although MPT implies that the commercial success of various video coding standards is attributable to the Haskell patent, *see* MPT Opp. at 19, it points to no connection between the success of the video coding standards and what is set forth in claim 12 of the Haskell patent, the only real nexus that is relevant to the obviousness analysis. *See In re GPAC*, 57 F.3d at 1580. The conclusory assertion that a reduction in the bandwidth needed to transmit, or the reduction of the quantity of storage needed to store high-quality video bitstreams, can be attributed to the Haskell patent is nowhere supported by anything but *ipse dixit*. The degree to which the patent, as opposed to other things, reduces bandwidth is not even discussed by MPT or its expert.

MPT also suggests that because a number of Lucent's portfolio licenses included the Haskell patent (along with a number of other patents), this somehow indicates industry respect for the invention. *See* MPT Opp. at 19. The fact that some of Lucent's portfolio licenses include the Haskell patent among many others does not in any way demonstrate industry respect for the Haskell patent, but in any event, that fact also suffers from the same lack of nexus. Perhaps some of those licensees

- 9 -

were persuaded to enter into those licensees because of what is claimed in claim 12 of the Haskell patent, but MPT has no evidence that is so. MPT argues that the patent had an important effect on negotiations, but argument is not evidence.

Because MPT has failed to establish any nexus between the evidence and the merits of the claimed invention, any arguments regarding alleged secondary considerations have no bearing on the obviousness of claim 12.

### III.   CONCLUSION

Accordingly, for the reasons stated above Defendant Dell Inc. respectfully requests entry of summary judgment that the asserted claim of the Haskell patent is invalid.[5]

December 21, 2007

ARNOLD & PORTER LLP
James S. Blackburn
Joseph A. Micallef

McDERMOTT WILL & EMERY LLP
Joel M. Freed

Attorneys for Dell Inc.

By: /s/James S. Blackburn
    James S. Blackburn
    james.blackburn@aporter.com

---

[5] Microsoft Corporation ("Microsoft") and Gateway, Inc. ("Gateway") also join in this Reply for all of the reasons stated herein.

- 10 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)