James S. Blackburn (State Bar No. 169134)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Joel M. Freed (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: (202) 756-8000
Facsimile: (202) 756-8087

Joseph A. Micallef (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Attorneys for Dell Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>    Plaintiffs and Counterclaim-defendants,<br><br>    v.<br><br>GATEWAY, INC. AND GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>    Intervener and Counter-claimant, | Case No. 07-CV-2000-H (CAB)<br>consisting of matters severed from consolidated cases:<br>Case No. 02-CV-2060-B (CAB)<br>Case No. 03-CV-0699-B (CAB)<br>Case No. 03-CV-1108-B (CAB)<br><br>**DELL'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIM OF U.S. PATENT NO. 4,383,272 TO NETRAVALI ET AL. IS INVALID**<br><br>Judge Marilyn L. Huff<br><br>Hearing: January 8, 2008, 9:30 a.m.<br>Location: Courtroom 13, 5th Floor |

| | |
|---|---|
| MICROSOFT CORPORATION, | ) |
|     Plaintiff and Counter-defendant, | ) |
| v. | ) |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | ) |
|     Defendants and Counter-claimants, | ) |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | ) |
|     Plaintiffs and Counterclaim-defendants, | ) |
| v. | ) |
| DELL INC., | ) |
|     Defendant and Counter-claimant. | ) |

## I. INTRODUCTION

Dell has moved for summary judgment that claim 13 of the Netravali patent is invalid as obvious in view of the prior art Gabor & Hill paper in combination with the prior art Picture Coding paper. In response, MPT offers only two arguments why claim 13 is not obvious in view of this combination. Both arguments rely on requirements not in the claim or claim construction. But even if the claim included the requirements on which MPT's arguments rely, both of those requirements are satisfied by Picture Coding, and *the combination* of Gabor & Hill and Picture Coding therefore renders the clam obvious in any event.

MPT argues otherwise, pointing out that the Court already determined that certain issues of fact precluded summary judgment that the Gabor & Hill paper anticipates claim 13. However, that is no impediment to summary judgment that the combination of Gabor & Hill with Picture Coding renders the claim obvious. Indeed, MPT's argument is a *non sequitur*. Just because one prior art reference does not render a claim invalid for anticipation under Section 102 does not mean it might not, in combination with another reference, render the claim invalid for obviousness under Section 103. Otherwise, Section 103 (which forecloses valid patenting of unanticipated, but obvious, subject matter) would be read out of the law.

In any event, at his recent deposition, MPT's technical expert, Dr. Girod, made new admissions regarding the claim term "pel" and motion estimation techniques known in the prior art—admissions that were not before the Court when it analyzed Dell's anticipation motion. Important new evidence has thus been added to the record, which, together with the other evidence relied on here, demonstrates there is no genuine issue of material fact that the combination of the Gabor & Hill and Picture Coding papers renders claim 13 obvious.

## II. ARGUMENT

### A. Claim 13 Is Invalid as Obvious

#### 1. "Pels"

Gabor & Hill discloses a system that reconstructs non-transmitted, or missing, frames by interpolating intensities in preceding and succeeding frames. The paper explains that the receiver scans a line in a preceding frame and the same line in a succeeding frames, searching for differences

- 1 -

in intensity suggesting that an object has moved. Ex. 40[1] at 1447 (Gabor & Hill paper).  Where no great difference in intensity is detected between the two frames, simple linear interpolation (i.e., interpolation of intensities from the same locations in each of the preceding and succeeding frames) is used to recreate the corresponding line in the missing, in-between frame. *Id.*

When the scan of one of the frames detects an edge of an object by a large difference in detected intensity, however, the scan of the other frame speeds up until it also detects the edge of the object. *Id.*  The edge of the object on the corresponding line in the missing, in-between frame is then recreated by interpolation using intensities at the locations in the preceding and succeeding frames, respectively, where the edge was detected.  In this manner, the system of the Gabor & Hill paper determines by interpolation the intensities of pels in the missing frame, where the locations used in the interpolation are selected as a function of the motion (i.e., displacement) of objects in the picture:

> There is again a good statistical reason for adopting this method of interpolation, based on the common observation that most of the changes in our world are due to ***moving objects***, and most movements are horizontal.  The upper and lower intensity profiles, $I_1(x)$ and $I_2(x)$, ***represent the positions of the outline of a moving objects***, and the assumption is that the motion can be well enough approximated by linear displacement, i.e. constant speed of motion.

*Id.* at 1448 (emphases added).

MPT argues that the Gabor & Hill paper does not perform the method of claim 13 because it does not disclose the use of "pels."  According to MPT, the claim term "pel"—which the Court interpreted to mean simply "picture elements, also referred to as pixels"—actually requires that "the video signal must be sampled temporally, vertically, and horizontally." MPT Opp. at 12.  MPT cannot find that in either the claim or the claim construction, so MPT fabricates this requirement from its argument that one would understand the term "pel" in that manner "in the context of the Netravali '272 Patent." *Id.*[2]

---

[1] Unless otherwise noted, "Ex. __" refers to the exhibit attached to the Declaration of James S. Blackburn in Support of Dell's Motions for Summary Judgment of Invalidity on the Asserted Claims of U.S. Patent Nos. 4,958,226, 4,383,272, 4,763,356, and 4,439,759.  (Docket Ent. 76).

[2] MPT had previously argued that Gabor & Hill did not anticipate claim 13 because use of the term "pel" required a digital implementation, *see* Multimedia Patent Trust's Opposition to Dell's Motion
(Footnote Cont'd on Following Page)

- 2 -

1    MPT's fabrication finds no support in claim 13, which says nothing of sampling in any

2    particular direction.  Nor does the Netravali patent itself ever mention sampling temporally,

3    vertically, or horizontally.  Moreover, if MPT or its expert believed that the Netravali patent

4    required that "pel" be understood to require that "the video signal must be sampled temporally,

5    vertically, and horizontally," they should have advanced that definition during the *Markman* stage

6    of this litigation, or at least moved to have the Court modify the interpretation.  They did neither

7    and cannot seize on their inaction as a basis for avoiding summary judgment of invalidity of a claim

8    that does not mention and has not been construed to contain such a fabricated requirement.

9    But even accepting MPT's fabricated construction for the sake of argument, no genuine

10    issue of material fact is raised as to invalidity under 35 U.S.C. § 103 since Picture Coding discloses

11    such sampling as demonstrated in Dell's opening brief.  *See* Dell Br. at 7-8.  Indeed, Picture Coding

12    describes the "conventional scanning and sampling process" applied to a television signal as "first

13    sampling in time" (i.e., sampling temporally) and then performing "periodic sampling" that creates

14    both "horizontally adjacent pels" and "vertically adjacent pels."  Ex. 41 at 1462 (Picture Coding).

15    Thus, Picture Coding discloses sampling temporally, vertically, and horizontally—exactly what

16    MPT argues is required by the claim.

17    Neither MPT nor its expert ever disputes that fact.  Nowhere in their opposition papers do

18    they argue that ***Picture Coding*** fails to disclose such sampling.  Rather, they simply repeat their *non*

19    *sequitur* that the Gabor & Hill paper does not disclose the sampling that they say is required.  *See*

20    MPT Opp. at 10-14.  That only one reference in a combination does not satisfy a particular claim

21    element, without more, does not raise an issue of ***material*** fact, at least where the other reference of

22    the combination does satisfy the claim element.  *See In re Merck & Co., Inc.*, 800 F.2d 1091, 1097

---

(Footnote Cont'd From Previous Page)

for Summary Judgment Concerning U.S. Patent No. 4,383,272 (filed April 20, 2007) at 2, 4-6, and Judge Brewster relied in part on that argument to find a material issue of fact requiring denial of Dell's anticipation motion, Ex. 42 at 1505 (SJ Order).  At his recent deposition, however, MPT's expert Dr. Girod admitted that the claim term "pel" was used before the filing of the Netravali patent in the context of analog video systems.  Ex. 20 at 1065 (Girod Depo. Tr. at 94:7-10).  In light of this admission, MPT has now abandoned its previous position that claim 13 requires a digital implementation and conceded that the claimed method could be implemented either by analog or digital systems.  *See* MPT Opp. at 11-12.

- 3 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

(Fed. Cir. 1986) ("Non-obviousness cannot be established by attacking references individually."). It remains undisputed that the ***combination*** of Gabor & Hill and Picture Coding discloses what is required by even MPT's fabricated construction of the claim term "pel."

### 2.     "Related Locations"

MPT also argues that the Gabor & Hill paper does not satisfy the "related locations" limitation of claim 13, a phrase the Court has interpreted to mean "locations at which the same object is expected to be." Ex. 43 at 1509 (Markman Order). Once again, MPT's opposition focuses *only* on Gabor & Hill. It never addresses Dell's argument that, even assuming Gabor & Hill does not teach that element, Picture Coding does. Indeed, MPT, through its expert, has admitted that "locations at which an object is expected to be" were determined in the prior art by known motion estimation techniques, *see* Ex. 20 at 1079-81 (Girod Depo. Tr. at 150:21-24, 151:23-152:11), and neither MPT nor its expert dispute that Picture Coding discloses several such techniques. MPT's opposition on this point is therefore, once again, off base, since it is the combination of the two prior art references that renders the claim invalid.[3]

### B.    Those of Skill in the Art Clearly Had Reasons to Combine the Teachings of Gabor & Hill and Picture Coding

### 1.    There Are Undisputed Reasons to Combine

Gabor & Hill discloses an interpolation system that took account of the motion, or displacement, of objects, and Picture Coding describes Gabor & Hill as disclosing a system that employs interpolation and that places the edges of objects at locations "dictated by their uniform motion." Ex. 41 at 1490. Picture Coding discloses various other video coding techniques, including numerous motion estimation techniques that were available for use in the claimed motion-compensated interpolation process at the time of the invention, techniques that could be used to determine where "an object is expected to be" in a subsequent frame. It would have been natural

---

[3] This is not surprising, since MPT had previously argued to the Court that numerous motion estimation techniques were available for use in the claimed motion-compensated interpolation process at the time of the invention. *See* Multimedia Patent Trust's Opposition to Dell's Motion for Summary Judgment Concerning U.S. Patent No. 4,383,272 (filed April 20, 2007) at 15.

- 4 -

1 for a person of ordinary skill in the art to "upgrade" Gabor & Hill using newer interpolation and
2 motion estimation techniques described in Picture Coding itself.  Indeed, such "upgrading" was
3 deemed on summary judgment to be sufficient reason to combine by the Supreme Court when it
4 invalidated the claim in *KSR Int'l. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1745 (2007).  It is sufficient
5 here as well.

6 In response MPT argues, in various places, that one of skill in the art would not have
7 attempted to modify Gabor & Hill with the more modern coding techniques disclosed in Picture
8 Coding because Gabor & Hill is "obsolete."  *See, e.g.*, MPT Opp. at 2, 14-15.  These arguments
9 seriously misperceive what is required by the obviousness analysis.  The relevant inquiry for
10 obviousness is whether a person with ordinary skill in the art could combine the *teachings* of the
11 prior art, not whether s/he could physically combine the prior art devices themselves.  *See In re
12 Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983); *see also Orthopedic Equip. Co.. v. U.S.*, 702 F.2d
13 1005, 1013 (Fed. Cir. 1983) (noting that whether apparatus disclosed in the prior art would be
14 "combined by businessmen for economic reasons" is not relevant to obviousness).  That one of skill
15 in the art could select among the various teachings of the prior art to create the claimed
16 combinations is the basis for a finding of obviousness.  "Common sense teaches, however, that
17 familiar items may have obvious uses beyond their primary purposes, and in may cases a person of
18 ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle."
19 *KSR*, 127 S. Ct. at 1742.

20 Gabor & Hill no doubt discloses several components that would not have been used "by
21 businessmen" in 1980, but all of those are beside the point since Gabor & Hill also discloses the
22 teaching that one could recreate missing frames by interpolating and selecting the interpolation
23 locations as a function of the motion of objects in the picture.  That teaching is simply not disputed,
24 nor could it be.  The question is not whether the devices could be physically combined, but whether
25 combining the teachings of the two references would have been obvious.  Picture Coding confirms
26 that it would have been obvious by demonstrating that prior art techniques could be employed to
27 "upgrade" Gabor & Hill to satisfy even the requirements that MPT recently finds in the claim.
28

- 5 -

And one person at least, Dr. Jaswant Jain, actually did develop a system that combined the teachings of the prior art exactly as called for by the claim. This fact is both undisputed and law of the case. *See* Ex. 44 at 1516 (Summary Judgment Order). Dr. Jain's work represents yet further evidence that a reason to combine the prior art to obtain the invention of claim 13 existed at the relevant time and the ability to make that combination was within the skill of the art.

MPT argues that Dr. Jain's dissertation does not demonstrate that one of skill in the art had reasons to combine interframe interpolation techniques with motion estimation because Dr. Jain supposedly is not a person of "ordinary" skill in the art. *See* MPT Opp. at 19. But MPT has not shown that Dr. Jain was a person of *extraordinary* skill in the art at the time he wrote his dissertation. There is no evidence to show that Dr. Jain was any sort of leader in the field, an "expert" in video coding at the time, or possessed of some peculiar experience. Dr. Jain was no doubt a talented student who had already received his master's degree and was working towards his doctorate in digital signal processing. At the relevant time, Dr. Jain possessed a bachelor degree and had spent several years studying for advanced degrees, which is roughly the level of ordinary skill in the art even under Dr. Girod's assessment.[4] Moreover, that he was able to put together these various teachings in a manner that satisfies claim 13 does not make him any less of a person of ordinary skill, or the invention any less obvious. *See KSR*, 127 S. Ct. at 1742 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

Finally, MPT ignores the clear import of the ruling in *National Steel Car*. According to MPT, that case merely stands for the proposition that "a reference that does not qualify as prior art may still be considered in determining the knowledge of a person having skill in the art." MPT Opp. at 18 n.5. MPT is silent, however, as to what purpose the Court may consider that knowledge. And for good reason, since it puts the lie to MPT's reading of the case.

---

[4] Ex. 19 at 1017 (Girod Report) ("A person of ordinary skill in the art of video compression throughout the 1980s would have had at least a Bachelor of Science degree in electrical engineering or a related field *and* 2 years experience working in the area of video compression systems.") (emphasis added).

- 6 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)

In *National Steel Car* the Federal Circuit expressly held that information that does not qualify as prior art—in that case the Prichard disclosure and the Lund drawing—was evidence of a motivation to combine:

> It has long been the law that the motivation to combine need not be found in prior art references, but equally can be found "in the knowledge generally available to one of ordinary skill in the art." . . . The ***motivation to combine*** can be located either in a prior art reference, *or* it can be implicit in the knowledge of one of ordinary skill in the art. We conclude that both the Prichard disclosure and the Lund drawing can be understood ***to suggest that one of ordinary skill in the art would have been motivated to combine Wagner and Udstad***.

*National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1337-38 (Fed. Cir. 2004) (emphases added). Thus, the Jain Dissertation demonstrates not only that people of skill in the relevant art knew how to make the invention claimed in claim 13, but that they had reason to make the claimed combination, since Jain himself indisputably did it. Thus, that the prior art contained reasons to combine the teachings of Gabor & Hill with those of Picture Coding is beyond any serious dispute.

### 2.  Obviousness Does Not Require Particularized Reasons to Adapt the Prior Art

MPT also argues that there is evidence upon which a jury could find that the art would not have been motivated to adapt Gabor & Hill in a manner that satisfies claim 13 because, according to Dr. Girod, there were many different techniques known in the video coding arts and one could not predict the benefits that would result in any particular combination. *See* MPT Opp. at 20.

MPT and its expert, however, are laboring under a pre-*KSR* view of the law. There is no longer any requirement for a particularized motivation to combine. "As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 127 S. Ct. at 1741. In *KSR*, for example, there were also many effective techniques for adjustable pedal assemblies and no evidence that any

- 7 -

particular combination would provide a predictable result, *id.* at 1744-45, yet those facts did not avoid invalidity for obviousness on summary judgment.[5]

Knowing that a particular combination would produce a specific benefit may very well be a reason to combine, but under *KSR* that is certainly not the only reason to combine that will support a finding of obviousness, so its absence does not preclude such a finding. "Under the correct analysis, ***any need or problem known in the field*** of endeavor at the time of invention and addressed by the patent ***can provide a reason for combining*** the elements in the manner claimed." *KSR*, 127 S. Ct. at 1742 (emphases added). Dr. Jain, for example, found a reason to combine the known techniques in a way that satisfied all the requirements of claim 13. Thus, even assuming there were many different techniques known in the video coding arts and an inability to predict the benefits that would result in that particular combination, reasons to combine nonetheless led Jain to the claimed combination.

In short, the conclusory assertions by MPT's expert, when viewed in light of the obviousness analysis required by *KSR*, do not avoid a finding of obviousness in the face of the Jain Dissertation's evidence of reason to combine and the evident motivation to update Gabor & Hill with the newer techniques of Picture Coding.

### C. Any Purported Secondary Considerations Do Not Change the Fact that Claim 13 Is Invalid as Obvious

In proper circumstances secondary considerations including commercial success, long felt but unresolved needs, and failure of others may inform an obviousness determination. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966) ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., ***might be*** utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.")

---

[5] Indeed, since *KSR* the United States Patent and Trademark Office has adopted, as one possible reason to combine that examiners may use to support of rejection based on an obvious combination, the "use of known techniques to improve similar devices (methods, or products) in the same way." Examination Guidelines for Determining Obviousness Under 35 U.S.C. 103 in View of the Supreme Court Decision in *KSR International Co. v. Teleflex Inc.*, 72 Fed. Reg. 57526, 57530 (October 10, 2007). Predictability is wholly absent from this reason to combine.

- 8 -

(emphasis added). In *KSR* the Supreme Court reiterated that the obviousness determination is a "broad inquiry" and invited courts to consider secondary considerations as instructive "where appropriate." *KSR*, 127 S. Ct. at 1739. Here, as in *KSR*, MPT has not shown any secondary considerations that are sufficient to "dislodge" a determination that claim 13 is obvious. *See id.* at 1745.

To give weight to secondary considerations, "its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). In this regard the patentee bears the burden of establishing a legally and factually sufficient connection between the secondary consideration and the patented invention. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Moreover, evidence relating to secondary considerations of nonobviousness, even when present, does not necessarily avoid a finding on summary judgment. *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (affirming a grant of summary judgment of obviousness despite "substantial evidence of commercial success, praise, and long-felt need."). Obviousness is a legal issue ultimately for the Court to decide. *Graham*, 383 U.S. at 17.

MPT has failed to provide any evidentiary basis for a real nexus and should therefore not be permitted to avoid summary judgment based on allegations of secondary considerations. Although MPT implies that the commercial success of various video coding standards is attributable to the Netravali patent, *see* MPT Opp. at 21, it points to no connection between the success of the video coding standards and what is set forth in claim 13 of the Netravali patent, the only real nexus that is relevant to the obviousness analysis. *See In re GPAC*, 57 F.3d at 1580. The conclusory assertion that a reduction in the bandwidth needed to transmit, or reduction of the quantity of storage needed to store, high-quality video bitstreams can be attributed to the Netravali patent is nowhere supported by anything but *ipse dixit*. The degree to which the patent, as opposed to other things, reduces bandwidth is not even discussed by MPT or its expert.

MPT also suggests that because a number of Lucent's portfolio licenses included the Netravali patent (along with a large number of other patents), this somehow indicates industry respect for the invention. *See* MPT Opp. at 21. The fact that some of Lucent's portfolio licenses

- 9 -

include the Netravali patent among many others does not in any way demonstrate industry respect for the Netravali patent, but in any event also suffers from the same lack of nexus. Perhaps some of those licensees were persuaded to enter into those licensees because of what is claimed in claim 13 of the Netravali patent, but MPT has no evidence that is so.[6] MPT argues that the patent had an important effect on negotiations, but argument is not evidence.

### III. CONCLUSION

Accordingly, for the reasons stated above Defendant Dell Inc. respectfully requests entry of summary judgment that the asserted claim 13 of the Netravali patent is invalid.[7]

December 21, 2007

ARNOLD & PORTER LLP
James S. Blackburn
Joseph A. Micallef

McDERMOTT WILL & EMERY LLP
Joel M. Freed

Attorneys for Dell Inc.

By: /s/James S. Blackburn
    James S. Blackburn
    james.blackburn@aporter.com

---

[6] Similarly, the fact that the inventors of the Netravali patent were given an award by a non-profit association dedicated to research and development in New Jersey is not evidence to show that the invention of claim 13 is nonobvious or that the claimed invention was the reason for the award.

[7] Microsoft Corporation ("Microsoft") and Gateway, Inc. ("Gateway") also join in this Reply for all of the reasons stated herein.

- 10 -

Case No. 07-CV-2000-H (CAB) consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB); Case No. 03-CV-0699-B (CAB); Case No. 03-CV-1108-B (CAB)