```
David A. Hahn, SBN 125784
HAHN & ADEMA
501 West Broadway, Suite 1600
San Diego, California 92101-3595
Telephone (619) 235-2100
Facsimile  (619) 235-2101
```

Attorneys for *Lucent Technologies Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>    Plaintiffs and Counterclaim-Defendants,<br><br>    v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>    Intervenor and Counter-claimant. | Case No. 07-CV-2000 H (CAB) consisting of matters severed from consolidated cases:<br> 02-CV-2060 B (CAB)<br> 03-CV-0699 B (CAB)<br> 03-CV-1108 B (CAB)<br><br>**LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS**<br><br>Date:            January 8, 2008<br>Time:           9:30 A.M.<br>Courtroom:   13<br><br>Honorable Marilyn L. Huff |
| MICROSOFT CORPORATION,<br><br>    Plaintiff and Counter-Defendant,<br><br>    v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Defendant and Counter-claimant. | |
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST,<br><br>    Plaintiffs,<br><br>    v.<br><br>DELL INC.,<br><br>    Defendant. | |

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases:  02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

# TABLE OF CONTENTS[1]

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Lucent Is Entitled To Summary Judgment On Defendants' DUFTA Claims. .........1

    B. Lucent Is Entitled To Summary Judgment On Defendants' Fraud Claims. ............4

    C. Lucent Is Entitled To Summary Judgment On Microsoft's Claim For Declaratory Judgment That The Patent Assignment Was A Void Act...................5

    D. Lucent Is Entitled To Summary Judgment On Gateway's Section 17200 Claim. ........................................................................................................................6

    E. Because Lucent Is Entitled To Summary Judgment On The Above Claims, Defendants Cannot Prevail At Trial On Their Claims For Tortious Interference With Prospective Economic Advantage. ..............................................9

III. CONCLUSION....................................................................................................................10

---

[1] Unless otherwise indicated, all emphasis in this brief is added.

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

i

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases: 02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

## I. INTRODUCTION

Defendants' oppositions confirm that Defendants have neither cognizable legal theories nor evidence to support any of their remaining trust-related counterclaims. No reason exists therefore to permit Defendants to distract the jury with claims on which they cannot prevail as a matter of law. Accordingly, this Court should grant Lucent's motion for summary judgment in its entirety.

## II. ARGUMENT

### A. Lucent Is Entitled To Summary Judgment On Defendants' DUFTA Claims.

Under Section 1304(a)(1) of the Delaware Uniform Fraudulent Transfers Act ("DUFTA"), "a transfer made or obligation incurred by a ***debtor*** is fraudulent as to a ***creditor***, whether the ***creditor's*** claim arose before or after the transfer was made or the obligation was incurred, if the ***debtor*** made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any ***creditor*** of the debtor." 6 Del. Code Ann. § 1304(a)(1). As demonstrated in Lucent's opening brief, Defendants' claims under this Act fail at the doorstep: Defendants have never been creditors of Lucent, nor Lucent a debtor of Defendants.

Defendants attempt to demonstrate otherwise by alleging that "Lucent . . . owed to Defendants an unmatured legal obligation contingent upon the merger and Lucent sought to circumvent that legal obligation by forming MPT and assigning the Video Coding Patents to MPT." (Microsoft Br. at 5.) ***But as the Court's previous summary-judgment order confirms, Lucent has never owed any legal obligation — matured or unmatured, fixed or contingent — to Defendants regarding the Video Coding Patents.*** It is indisputable that Lucent is not now, nor has it ever been, a party to any MPEG LA agreement. Rather, Alcatel — indisputably a distinct corporate entity from its subsidiary Lucent — is a party to the MPEG LA agreements, and Alcatel's obligations are its own, not Lucent's. As the Court found in its October 1, 2007 Order, the transfer to MPT prevented any Alcatel obligation from attaching to the Video Coding Patents: "MPT took these patents unfettered by any obligations to Alcatel. . . . Alcatel has no right to license or sublicense the patents. Since Alcatel lacks these rights, it cannot provide them (***and thus is not required to provide them***) to MPEG LA." (Oct. 1, 2007 Order at 9.) Thus, Defendants were never present or future creditors of

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

1

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases: 02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

Lucent — they never possessed "claim[s] [that] arose before or after the transfer was made" regarding the Video Coding Patents. 6 Del. Code Ann. § 1304(a)(1).[2]

Moreover, even if Defendants' pre-merger hope that the Video Coding Patents would be swept into the MPEG LA pool could be somehow viewed as an "unmatured legal obligation contingent upon the merger" (Microsoft Br. at 5) — which it cannot — Defendants still cannot avail themselves of DUFTA. While the definition of a "claim" under DUFTA includes rights that are "contingent" or "unmatured," that definition does not encompass any "legal obligation" but rather is limited to claims constituting a "right to payment." 6 Del. Code Ann. §§ 1301(3), 1301(4). Thus, to qualify as a creditor, a plaintiff must have a claim to the transferor's ***money***:

> The operative phrase in the definition is 'right to payment.' Unless the plaintiff has a legal 'right,' he does not hold a 'claim' and, therefore, is not a 'creditor.' Granted, 'claim' can be, and often is, broadly construed to encompass virtually very type of demand raised by a plaintiff, regardless of the legal theory employed. While such broad construction may be acceptable in common parlance, it is inappropriate under UFTA. . . . ***[T]he only people who are 'creditors' are those who have a 'right' to a transferor's money, and the only persons who are restrained by UFTA are 'debtors' who are 'liable on a claim.'***

JOHN E. SULLIVAN III, FUTURE CREDITORS AND FRAUDULENT TRANSFERS: WHEN A CLAIMANT DOESN'T HAVE A CLAIM, WHEN A TRANSFER ISN'T A TRANSFER, WHEN FRAUD DOESN'T STAY FRAUDULENT, AND OTHER IMPORTANT LIMITS TO FRAUDULENT TRANSFERS LAW FOR THE ASSET PROTECTION PLANNER, 22 DEL. J. CORP. L. 955, 976-77 (1977). Because Defendants cannot make such a showing, their DUFTA claims fail.

Seeking to broaden the definition of "claim" to encompass any alleged "legal obligation," Defendants look to the Bankruptcy Code. But even the case that Defendants cite for the proposition that "the term 'claim' under fraudulent transfer acts and the Bankruptcy Code are interchangeable" (Microsoft Br. at 4) demonstrates that recourse to the Code does not aid Defendants here. In *Harbinger Capital Partners Master Fund I, Ltd. v. Granite Broad. Corp.*, 906 A.2d 218 (Del. Ch.

---

[2] This is in stark contrast to the situation contemplated by DUFTA where a party transfers assets knowing that it has incurred, or will incur, debts beyond its ability to pay.

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

2

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases: 02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

2006), the court found that preferred shareholders were *not* creditors of the corporation because, even though the corporation owed them contractual legal obligations, their preferred shares provided no guaranteed right of *payment*. *Id.* at 224, 230. And this holding is consistent with the holding of the Third Circuit in *In re Ben Franklin Assocs.*, 186 F.3d 301 (3d Cir. 1999), which found that an equitable right to reinstatement in a partnership was not a "claim" under the Bankruptcy Code because it was *not reducible to a monetary payment*. *Id.* at 304-05, 308. The cases that Defendants cite are not to the contrary. While the Supreme Court in *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990), noted that the "plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation," the obligation at issue was a monthly restitution payment, indisputably a *monetary* claim. *Id.* at 556. And although *In re Travelstead*, 227 B.R. 638, 647 (D. Md. 1998), recognized that a "right to payment" may be contingent and unliquidated, it did *not* reject the "position that the term 'claim' requires a right to monetary payment" as Defendants suggest. (Microsoft Br. at 4.) That question was not presented in *Travelstead*, which considered a right to receive *payment* for shares held by a minority shareholder. *Id.* at 642-43, 647. Thus, Defendants have proffered no authority suggesting that an alleged future right to a patent license constitutes a "claim" under DUFTA.

Defendants also argue that their purported right to a patent license is a "right to payment" because "Defendants seek the right to be free from infringement liability relating to the Video Coding Patents, which is clearly measurable in monetary terms — the flipside of infringement damages." (Microsoft Br. at 6.) In making this contention, however, Defendants ask this Court to stand DUFTA on its head and find that a transfer by a *creditor*, Lucent, was fraudulent as to its *debtors*, Defendants. Before Lucent assigned the Video Coding Patents to MPT on November 28, 2006, ***Lucent was a creditor of Defendants***, who were liable to Lucent for damages in excess of $1 billion. Defendants alleged future right to a license (even if such right had materialized) is not a "claim"; a license is merely an affirmative defense to another's claim of infringement. DUFTA is thus inapplicable here. Lucent is therefore entitled to summary judgment.

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

3

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases: 02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

### B. Lucent Is Entitled To Summary Judgment On Defendants' Fraud Claims.

In its opening brief, Lucent demonstrated that Defendants cannot proffer evidence on a single element of a Delaware common-law fraud claim. (Opening Br. at 6-7.) Defendants implicitly concede this point by chastising Lucent for focusing on "one form of common law fraud involving intentional misrepresentation or concealment" and contending that their "fraud" claim instead encompasses some vague "***common law-based counterclaim*** under Delaware law." Citing a single unpublished case — *Kulp v. Timmons*, No. Civ. A. 1946-S, 2002 WL 1824909 (Del. Ch. July 30, 2002) — Defendants urge that MPT be invalidated as a "sham trust" under "common law grounds." But nothing in *Kulp* permits Defendants to withstand summary judgment.

In *Kulp*, the court addressed common-law public-policy grounds "apart from cases involving fraud" for invalidating a spendthrift trust. *Id.* at *5-*6. The defendant, Timmons, was the settlor, trustee, and beneficiary of a family spendthrift trust that purported to hold all significant family assets, including a family farm and marina business. *Id.* at *1, *3. The evidence established that "at all times Timmons had — and exercised — the power to use the Trust assets as his own." *Id.* at *6. The trust instrument authorized Timmons to "expend the entire trust corpus at his discretion, for his own benefit, and without any limitation or restriction." *Id.* Indeed, Timmons acknowledged that "after he conveyed the property to the Trust he expected to continue to use the land as he had in the past." *Id.* Moreover, the record was devoid of evidence that the trust had taken any formal action or had ever produced any substantive financial records. Thus, the court concluded that the trust had "no economic reality and from the outset was a sham" created to avoid debts incurred by the family's marina business. *Id.*

No such facts are present here. Indeed, to the extent that the Court were to permit Defendants to make similar "sham trust" allegations under the guise of their common-law fraud claims, the Court has already resolved such allegations against Defendants. At the previous summary-judgment hearing, Defendants urged that MPT should be invalidated on the grounds that it was an "alter ego" of Lucent. The Court found that under Delaware law that Defendants would need to show facts equivalent to those demonstrated in *Kulp*, namely that MPT was a "sham" with no "independent significance of its own:"

> Under Delaware law to pierce the corporate veil and demonstrate that one entity is the alter ego of another, it must be shown that the other entity exerts "complete domination and control." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). ***"The degree of control required to pierce the veil is exclusive domination and control . . . to the point that . . . [the dominated entity] no longer has legal or independent significance of its own."*** *Id.* It must also be shown that the dominated entity is "a sham and exist[s] for no other purpose than as a vehicle for fraud." *Id.*

(Oct. 1, 2007 Order at 11.) The Court held that Defendants could not make such a showing:

> ***As a matter of law, this theory cannot succeed*** because the element of control is lacking. . . . ***Thus, Defendants have by no means offered any evidence that rises to the level of "exclusive domination" by Lucent such that MPT has no "independent significance on its own."*** Therefore, the Court finds that MPT is not the alter ego of Lucent; thus, this basis cannot support Defendants' defense of license.

(*Id*. at 11-12.) For the same reasons articulated by the Court in its previous summary-judgment Order, Lucent is entitled to summary judgment on Defendants' purported "common law-based counterclaim."

**C.   Lucent Is Entitled To Summary Judgment On Microsoft's Claim For Declaratory Judgment That The Patent Assignment Was A Void Act.**

To the extent that Microsoft argues that this Court has not already ruled on the merits of its claim for declaratory judgment that the assignment to MPT was a void act, that argument is frivolous. In its October 1, 2007 Order, the Court expressly rejected the argument that Microsoft makes here, namely that Lucent violated the Merger Agreement in transferring the Video Coding Patents to MPT. (*See* Oct. 1, 2007 Order at 7-8.) And the Court also expressly rejected Microsoft's attempt to rely on the formalities of the "written consent" provisions of that Agreement to circumvent that conclusion. (*See id*. at 8-9.)

Moreover, Microsoft joined in Dell's motion for reconsideration of the Court's October 1, 2007 Order, a motion that made the same arguments that Microsoft now makes in its opposition. (D.I. 29 at 12-14; D.I. 35.) After Lucent responded (D.I. 56 at 7-8), the Court again rejected these arguments in denying reconsideration. (Dec. 7, 2007 Order at 3.) Thus, Microsoft's opposition here constitutes nothing more than a ***second*** motion for reconsideration made on identical grounds. It should meet the same fate as the last one. Lucent is entitled to summary judgment.

**D.     Lucent Is Entitled To Summary Judgment On Gateway's Section 17200 Claim.**

Lucent is also entitled to summary judgment on Gateway's Section 17200 claim. Gateway cannot show that Lucent made any misrepresentation to consumers, that any member of the public would have likely been deceived by any alleged misrepresentations, or that Gateway has suffered injury sufficient to confer standing to bring a Section 17200 claim.[3]

**1.     No Evidence Exists Of Alleged Misrepresentations To Consumers.**

Gateway cites three alleged Lucent misrepresentations as the basis for its Section 17200 claim. Gateway identifies the first alleged misrepresentation as Lucent's assertion that it "has assigned all rights to the Video Coding Patents at issue here to MPT." (Gateway Br. at 2.) But not only is this statement ***true***, but this Court already held in its October 1, 2007 Order that Lucent's assignment of the Video Coding Patents to the Trust was effective. (Oct. 1, 2007 Order at 9.) Nor can Gateway reasonably argue that alleged Lucent control of MPT changes this result. Although the Court found that Lucent possessed some indirect control, it expressly held that this purported control did not defeat the assignment to MPT. (*Id.* at 12.)

Gateway also identifies two other alleged misrepresentations: statements made by Lucent in separate proxy statements filed with the SEC on April 4, 2006. (D.I. 1980-3 in Case No. 02-2060, Exs. 8 and 25.) As an initial matter, statements made to the SEC, even if false or misleading, ***cannot form the basis of a Section 17200 claim***; section 17200 does not apply to securities transactions as a matter of law. *See, e.g., Bowen v. Ziasun Tech., Inc.*, 11 Cal. Rptr. 3d 522, 533 (Cal. App. Ct. 2004); *Scognamillo v. Credit Suisse First Boston, LLC*, No. C03-2061 THE, 2005 U.S. Dist. LEXIS 20221, at *36-*37 (N.D. Cal. Aug. 25, 2005).

But even if a statement to the SEC could form the basis of a Section 17200 claim, Gateway's claim still fails, because no evidence exists that the proxy statements were false at the time they were

---

[3]   Gateway has also made no showing that it should be permitted to raise California state-law claims under the choice-of-law analysis that this Court adopted in its October 1, 2007 Order. (*See* Oct. 1, 2007 Order at 2 n.6.)

made in April 2006, or at any time thereafter.  Gateway argues that Lucent misrepresented that "all of the patents will continue to be owned by Lucent and its subsidiaries":

> I   INTELLECTUAL PROPERTY (APPROVED BY LEGAL)
>
> 151. HOW WILL LUCENT PROTECT THE INTELLECTUAL PROPERTY RIGHTS OF BELL LABS NOW THAT LUCENT IS MERGING WITH ALCATEL?
>
> Lucent considers its patents to be one of its most valuable assets. In fact, Bell Labs scientists and engineers have earned more than 31,000 patents since 1925. And as of September 30, 2005, Lucent owned 7,000 patents in the United States and 8,100 patents in foreign countries. Lucent takes its responsibility to protect its patents very seriously and the combined company will continue to do so. ***In fact, the way the proposed merger is structured, all of the patents will continue to be owned by Lucent and its subsidiaries.***

(D.I. 1980-3 in Case No. 02-2060, Ex. 8 ¶ 151.)  Read in context, however, the foregoing statement merely recognized that, under the proposed merger agreement, Lucent would continue to own the patents it brought into the merger.  And that is precisely how the Merger Agreement — a ***stock purchase agreement*** — was structured.  (*See* D.I. 1980-3 in Case No. 02-2060, Ex. 2.)  Contrary to Gateway's assertions, the proxy statement in no way "created the erroneous impression that Lucent would fulfill its post-merger obligations to license any of its alleged MPEG-essential patents to the MPEG-LA licensing pool." (Gateway Br. at 3.)  The proxy statement on its face has absolutely nothing to do with MPEG-LA or Lucent's purported post-merger obligations to MPEG-LA.  Moreover, even if the foregoing statement could somehow be deemed inaccurate at the time of the merger on November 30, 2006, ***no evidence exists that it was false at the time it was made on April 4, 2006*** — long before the patents were transferred to MPT.

Gateway alleges a second Lucent misrepresentation to the SEC by virtue of Lucent's statement in April 2006 that "[t]he 2 companies will combine their patent portfolios and by doing so will reinforce their strengths in innovation and the valuation of their technologies through patent licensing.  We intend to continue and strengthen further their efforts in new patents creation." (D.I. 1980-3 in Case No. 02-2060, Ex. 25 at 608.)  But once again, Gateway has come forward with no evidence that the foregoing statement was false at the time it was made, or even false at the time of the merger.  In fact, while Lucent and Alcatel continue to own the patents they respectively

brought with them into the merger, the two portfolios have in fact been combined for licensing purposes, and Gateway has offered no evidence to the contrary.

### 2. No Evidence Exists Of A Likelihood Of Consumer Deception.

Gateway has also failed to come forward with evidence that any of the foregoing statements, even if untrue, would have been likely to mislead a reasonable consumer. To prevail on its Section 17200 claim, Gateway must "demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003). Gateway, however, has offered no such evidence.

Nor could it. No reasonable juror could conclude, based on the alleged Lucent misrepresentations, that a consumer would have likely been misled into believing that Lucent intended to contribute the Video Coding Patents to the MPEG LA pool, let alone that a consumer would find such information relevant. The first alleged misrepresentation — that Lucent assigned the patents to the Trust, made in a pleading *after* the merger closed — could only create the opposite impression, namely, that Lucent did not put the patents in the pool. And the two alleged misrepresentations to the SEC make no mention of MPEG LA, the MPEG LA pool, or the Trust whatsoever, and thus no evidence exists that a reasonable consumer would have read those statements and concluded that "Lucent's patents would be subject to the MPEG LA pool." (Gateway Br. at 8.)

Gateway has also failed to come forward with any evidence that any member of the public was actually deceived by any alleged Lucent misrepresentation. Instead, Gateway argues — again without evidence — that Gateway, the DOJ, and the FTC were deceived. But whether these entities were deceived is *irrelevant*. Section 17200 is a consumer-protection statute focusing solely on *consumers*. *See, e.g., Bardin v. Daimler-Chrysler Corp.*, 39 Cal. Rptr. 3d 634, 636 (Cal. Ct. App. 2006).

### 3. Gateway Lacks Standing To Bring A Section 17200 Claim.

Gateway's Opposition also reveals that Gateway does not have standing to bring a Section 17200 claim. Under recently enacted Proposition 64, to have standing a Section 17200 plaintiff

LUCENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' REMAINING TRUST-RELATED COUNTERCLAIMS

8

Case No. 07-CV-2000 H (CAB), consisting of matters severed from consolidated cases: 02-CV-2060 B (CAB), 03-CV-0699 B (CAB), 03-CV-1108 B (CAB)

must suffer (1) injury in fact and (2) pecuniary loss, both as a result of the alleged unfair competition. *See, e.g., Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731-32 (9th Cir. 2007). Because Gateway does not — and cannot — show injury flowing from the alleged misrepresentations, it does not have standing to bring a Section 17200 claim.

Gateway offers two theories of alleged injury. First, Gateway argues that it was injured as a result of Lucent's alleged misrepresentations because Gateway "elected not to pursue any avenues it might have had to prevent Lucent from transferring the patents in defiance of the Merger Agreement and its requirement that Lucent obtains Alcatel's consent." (Gateway Br. at 8.) But Gateway ***has come forward with no evidence*** that it purportedly relied on statements made by Lucent, such as a declaration or other testimony. Moreover, in August 2006, during a hearing with the Court, Lucent disclosed its intention to take steps to prevent the patents-in-suit from entering the MPEG LA pool. (*See* D.I. 1981 in Case No. 02-2060, Ex. 20 at 38.) Thus, as of August 2006, Gateway had all of the information it needed to pursue whatever "avenues it might have had" to prevent Lucent from taking such steps.

Gateway's second theory of alleged injury is that, because of Lucent's alleged misrepresentations, the FTC and DOJ were prevented from filing suit to stop the merger or "made it contingent upon Lucent not evading the MPEG-LA licensing pool." (Gateway Br. at 10.) But ***this Court already rejected this argument*** in its October 1, 2007 Summary Judgment Order in context of Gateway's unclean hands defense ***due to an utter lack of proof***. (*See* Oct. 1, 2007 Order at 14.) Gateway has come forward with no evidence that the transfer of the Video Coding Patents to the Trust would not have occurred in the absence of Lucent's alleged "misrepresentations." Accordingly, Gateway suffered no injury sufficient for standing to bring a Section 17200 claim.

### E.   Because Lucent Is Entitled To Summary Judgment On The Above Claims, Defendants Cannot Prevail At Trial On Their Claims For Tortious Interference With Prospective Economic Advantage.

Because Lucent is entitled to summary judgment on the above remaining trust-related claims, Defendants also cannot prevail on their claims for tortious interference with prospective economic advantage. Defendants urge the Court to ignore this fact by contending that Lucent's motion on this

ground is a "procedurally improper" motion for reconsideration. (Microsoft Br. at 13-14.) Although the Court denied summary judgment on this claim in its October 1, 2007 Order, it did so by finding a genuine issue of material fact concerning whether Defendants' remaining trust-related claims could form the basis for the requisite showing of "malice" underpinning this claim. (Oct. 1, 2007 Order at 22.) Lucent does not move for reconsideration of that ruling, but rather makes a new motion based on this Court's resolution of these remaining claims.

Defendants do not dispute that this Court referred to the Defendants' remaining trust-related claims as a basis for finding that a triable issue of fact existed regarding the "malice" requirement. Nevertheless, Defendants suggest that the Court held that malice could also be shown through "'allegedly misleading statements made to the SEC, FTC, and DOJ'" outside the context of any of those remaining claims. (Microsoft Br. at 14, quoting Oct. 1, 2007 Order at 22.) On its face, however, the Court's reference to these "allegedly misleading statements" is a reference to Gateway's Section 17200 claim on which, as demonstrated above, Lucent is entitled to summary judgment. But even viewed independently of the Section 17200 claim, Defendants' allegations cannot survive summary judgment. Defendants proffer no evidence that the alleged statements were false when made, that anyone would have perceived these statements as relating to MPEG LA or the prospect of the Video Coding Patents entering the MPEG LA pool, that anyone at Lucent viewed these statements as inconsistent with the transfer of patents to MPT (or even considered that issue), or that these statements enabled, or were made in furtherance of, the alleged interference with Defendants' prospective economic advantage. (*See* Section D, *supra*.) Thus, Defendants cannot make the requisite showing of Lucent conduct both "injurious and transgressive of generally accepted standards of common morality or of law." *Lamorte Burns & Co., Inc. v. Waters*, 770 A.2d 1158, 1170-71 (N.J. 2001). This Court should therefore grant summary judgment.

### III. CONCLUSION.

For the foregoing reasons, Lucent's summary-judgment motion should be granted.

Dated: December 28, 2007

Respectfully submitted,

|  |  |
|---|---|
| By: | s/David A. Hahn |

David A. Hahn, SBN 125784
HAHN & ADEMA
501 West Broadway, Suite 1600
San Diego, California 92101-3595
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

John M. Desmarais (admitted *pro hac vice*)
Robert A. Appleby (admitted *pro hac vice*)
James Marina (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for *Lucent Technologies Inc.*