042690

AGREEMENT dated as of May 1, 1990,
between INTERNATIONAL BUSINESS
MACHINES CORPORATION, a New York
corporation (hereinafter called
IBM), and GATEWAY TWO THOUSAND
INC., an ~~IOWA~~ *SOUTH DAKOTA* *NW* corporation
(hereinafter called LICENSEE).

IBM has the right to license others under certain patents. LICENSEE desires to acquire a nonexclusive license under those patents. In consideration of the premises and mutual covenants herein contained, IBM and LICENSEE agree as follows:

Section 1.     Definitions

1.1 "Information Handling System" shall mean any instrumentality or aggregate of instrumentalities primarily designed to compute, classify, process, transmit, receive, retrieve, originate, switch, store, display, manifest, measure, detect, record, reproduce, handle or utilize any form of information, intelligence or data for business, scientific, control or other purposes.

1.2 "IHS Product" shall mean:

1.2.1     an Information Handling System;

CONFIDENTIAL - Outside Counsel Only

Exhibit 2 Page 1

GW-LT 420183

1.2.2     any instrumentality or aggregate of instrumentalities
          designed for incorporation into an Information Handling
          System;

1.2.3     a Program;

1.2.4     a Supply; or

1.2.5     any combination of any of the foregoing.

Manufacturing Apparatus shall not be considered an IHS Product.


1.3  "Program" shall mean a plurality of instructions capable of
being executed by an Information Handling System, whether or not
such instructions are in a machine-readable form.


1.4  "Supply" shall mean any article or matter designed for use
in or by, and adapted to be effectively consumed in the course of
operation of, another IHS Product licensed herein.


1.5  "Manufacturing Apparatus" shall mean any instrumentality or
aggregate of instrumentalities primarily designed for use in the
fabrication of an IHS Product licensed herein.


1.6  "Type Number" shall mean any combination of numbers, letters
or words utilized by LICENSEE to identify a particular type or
model of IHS Product.


-2-

CONFIDENTIAL - Outside Counsel Only     GW-LT 420184

Exhibit 2 Page 2



1.7  "Licensed Patents" shall mean all patents, including utility models and including design patents and registrations for type fonts (but not including any other design patents or registrations), Issued or Issuing on patent applications entitled to an effective filing date prior to  July 1, 1995, under which patents or the applications therefor IBM has the right, at any time during the term of this Agreement, to grant licenses to LICENSEE of the scope granted herein without such grant or the exercise of rights thereunder resulting in the payment of royalties or other consideration by IBM to third parties (except for payments to Subsidiaries of IBM, and payments to third parties for inventions made by said third parties while employed by IBM or any of its Subsidiaries).  The term "Licensed Patents" shall also include any patent reissuing on any of the aforesaid patents.

1.8  "Patent Applications" shall mean all pending patent applications which have not Issued as patents, including those for utility models and including those for designs and registrations for type fonts (but not including any other patent applications for designs or registrations), entitled to an effective filing date prior to July 1, 1995, under which applications IBM has the right, at any time during the term of this Agreement, to grant rights to LICENSEE of the scope granted

-3-

CONFIDENTIAL - Outside Counsel Only

Exhibit 2 Page 3

GW-LT 420185



herein without such grant or the exercise of rights thereunder resulting in the payment of royalties or other consideration by IBM to third parties (except for payments to Subsidiaries of IBM, and payments to third parties for inventions made by said third parties while employed by IBM or any of its Subsidiaries).

1.9  "Issued", "Issuing", "Issues" and "Issuance" shall refer to the awarding of a patent based upon a patent application, whether such awarding is effected by issuance, registration, deliverance, sealing, granting or any other act.

1.10 "Category I Licensed Patents" shall mean all Licensed Patents except Category II Licensed Patents.  With respect to any unexpired Category II Licensed Patent which IBM ~~hereafter~~ deletes from Exhibit A, LICENSEE may continue to treat such patent as a Category II Licensed Patent with respect to any Licensed Apparatus using or covered by such patent for which LICENSEE has furnished a report pursuant to Sections 6.2 and 6.4 and identified such patent pursuant to Section 6.4.3 prior to such deletion for so long as LICENSEE makes, has made, uses, leases, sells or otherwise transfers such Licensed Apparatus.

1.11 "Category II Licensed Patents" shall mean those Licensed Patents now or hereafter listed in Exhibit A.  With respect to

-4-

CONFIDENTIAL - Outside Counsel Only                    GW-LT 420186

Exhibit 2 Page 4



any Category I Licensed Patent which IBM hereafter designates as a Category II Licensed Patent, except such a Category II Licensed Patent which Issues in the semiannual accounting period next preceding the furnishing of such listing to LICENSEE, LICENSEE may continue to treat such patent as a Category I Licensed Patent with respect to any Licensed Apparatus using or covered by such patent for which LICENSEE has furnished a report pursuant to Sections 6.2 and 6.4 and identified such patent pursuant to Section 6.4.3 prior to such designation for so long as LICENSEE makes, has made, uses, leases, sells or otherwise transfers such Licensed Apparatus.

1.12 "Licensed Apparatus" shall mean IHS Products and Manufacturing Apparatus.

1.13 "Patented Portion" shall mean that portion of a Licensed Apparatus which embodies or uses any invention protected by a Licensed Patent, or which is manufactured by the use of any such invention which is a method or process. However, where Manufacturing Apparatus uses a method or process protected by a Licensed Patent in the manufacture of an IHS Product, for the purposes of Section 5 the Manufacturing Apparatus is not considered to have a Patented Portion merely because of such use.

-5-

CONFIDENTIAL - Outside Counsel Only                    GW-LT 420187

Exhibit 2 Page 5

The invention protected by a Licensed Patent shall be determined by the terms of the claims.

1.14 "Subsidiary" shall mean a corporation, company or other entity:

1.14.1    more than fifty percent (50%) of whose outstanding shares or securities (representing the right to vote for the election of directors or other managing authority) are, now or hereafter, owned or controlled, directly or indirectly, by a party hereto, but such corporation, company or other entity shall be deemed to be a Subsidiary only so long as such ownership or control exists; or

1.14.2    which does not have outstanding shares or securities, as may be the case in a partnership, joint venture or unincorporated association, but more than fifty percent (50%) of whose ownership interest representing the right to make the decisions for such corporation, company or other entity is now or hereafter, owned or controlled, directly or indirectly, by a party hereto, but such corporation, company or other entity shall be deemed to be a Subsidiary only so long as such ownership or control exists.

1.15 "Manufacturing Cost" shall mean LICENSEE's total cost of direct materials, direct and indirect factory labor and factory

-6-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420188

Exhibit 2 Page 6

overhead determined by LICENSEE in accordance with sound
accounting principles.  In the event Licensed Apparatus is
manufactured by the use of a method or process which is protected
by a Licensed Patent, the Manufacturing Cost shall be the
aforesaid total cost incurred by LICENSEE through the completion
of such method or process.  In the case of any physical copy of a
Program made by LICENSEE, such total cost shall include
development costs of coding, describing (including specification
and design), testing, integrating, documenting and printing said
Program properly amortizable against said copy, as well as the
costs of preparing and reproducing said copy and any
documentation associated therewith.

1.16 "LICENSEE's Selling Price" shall mean the bona fide gross
selling price, after prompt payment discounts (not to exceed 2%)
and quantity discounts actually allowed, at which LICENSEE sells
an IHS Product to other than its affiliate or, if the IHS Product
is not separately sold and is incorporated in apparatus which
itself is not an Information Handling System, such price at which
LICENSEE so sells such apparatus.  If said gross selling price
includes the following items, they may be deducted only if
separately stated: packing, transportation and insurance charges;
import, export, excise, sales and value added taxes; and customs
duties.  If LICENSEE so sells identical IHS Products at more than

-7-

CONFIDENTIAL - Outside Counsel Only        GW-LT 420189

Exhibit 2 Page 7

one such price, LICENSEE's Selling Price with respect to each such IHS Product shall mean the total revenue at such bona fide gross selling prices, adjusted as aforesaid for such sales of said IHS Products, in the relevant semiannual accounting period divided by the number of said IHS Products sold in said period.

1.17 "Royalty Portion Selling Price" shall mean the LICENSEE's Selling Price without allowance for quantity discounts multiplied by the ratio of the sum of the Manufacturing Costs of the Patented Portions of the IHS Product to the Manufacturing Cost of the IHS Product or apparatus in which such Patented Portions are included.  In the event an item is included in two or more Patented Portions of the same IHS Product, the Manufacturing Cost of said item shall be counted in the Manufacturing Cost of each such Patented Portion for the purpose of computing the aforesaid sum.

Section 2.        <u>License</u>

2.1  IBM grants to LICENSEE a worldwide, nonexclusive license under the Licensed Patents:

2.1.1      to make, use, lease, sell and otherwise transfer IHS Products and to practice any method or process involved in the manufacture or use thereof;

-8-

CONFIDENTIAL - Outside Counsel Only           GW-LT 420190

Exhibit 2 Page 8

2.1.2    to make, have made and use Manufacturing Apparatus and
to practice and have practiced any method or process
involved in the manufacture or use thereof; _provided_,
_however_, that the rights granted in this Section 2.1.2 shall
not serve to enlarge the scope of the rights granted in
Section 2.1.3; and

2.1.3    to have made IHS Products by another manufacturer for
the use, lease, sale or other transfer by LICENSEE, only
when all of the following conditions are met:

2.1.3.1    the designs, specifications and working drawings for
the manufacture of said IHS Products are furnished by,
and originate with, LICENSEE;

2.1.3.2    said designs, specifications and working drawings are
in sufficient detail that no additional designing by
the manufacturer is required other than adaptation to
the production processes and standards normally used by
the manufacturer which changes the characteristics of
the IHS Products only to a negligible extent; and

2.1.3.3    prior written authorization to manufacture such IHS
Products under this Agreement has been given to said
other manufacturer by LICENSEE.

Upon written request, LICENSEE shall inform IBM whether, and
if so to what extent, any manufacturer identified by IBM is
operating under the license granted in this Section 2.1.3.

-9-

CONFIDENTIAL - Outside Counsel Only                GW-LT 420191

Exhibit 2 Page 9

2.2  Notwithstanding the licenses and rights granted in Section 2.1, at LICENSEE's request, no license is granted for apparatus manufactured for the United States Government by LICENSEE under a contract which meets both of the following conditions:

2.2.1    the Government has given to LICENSEE its express or implied authorization or consent to manufacture said apparatus pursuant to 28 U.S.C. Sec. 1498; and

2.2.2    LICENSEE has not agreed to indemnify the Government for infringement of any United States patent which covers said apparatus or any portion thereof.


2.3  No license is granted by IBM either directly or by implication, estoppel, or otherwise:

2.3.1    other than under the Licensed Patents;

2.3.2    with respect to any Licensed Apparatus which does not include a Patented Portion;

2.3.3    with respect to any item other than Licensed Apparatus notwithstanding that such other item may incorporate Licensed Apparatus; or

2.3.4    to parties acquiring any item from LICENSEE for the combination of such acquired item with any other item, including other items provided by LICENSEE, or for the use of any such combination.


-10-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420192

Exhibit 2 Page 10



Section 3.    <u>Extension of License to Subsidiaries</u>

3.1  The license granted herein includes the right of LICENSEE to sublicense its Subsidiaries and the right of such sublicensed Subsidiaries to sublicense other Subsidiaries of LICENSEE.  Each Subsidiary so sublicensed shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of LICENSEE, provided that LICENSEE shall pay and account to IBM for royalties hereunder in respect of the exercise by any Subsidiary of any sublicense granted to it hereunder.  Any sublicense granted to a Subsidiary shall terminate on the date such Subsidiary ceases to be a Subsidiary.


Section 4.    <u>Immunities</u>

4.1  IBM grants LICENSEE and its customers, mediate and immediate, a royalty-free immunity from suit with respect to Licensed Apparatus covered by any claim of a Licensed Patent in any country upon which royalty has accrued pursuant to Section 6.1.  Said immunity shall be:

4.1.1    under any Licensed Patent of any other country which corresponds to said Licensed Patent if LICENSEE pays such accrued royalty on said Licensed Apparatus pursuant to Section 5.2 or Section 5.4, or if LICENSEE pays such accrued royalty on said Licensed Apparatus pursuant to Section 5.3 in respect of not more than one (1) Category I Licensed

-11-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420193

Exhibit 2 Page 11



Patent and/or not more than two (2) Category II Licensed

Patents; or

4.1.2    , under all Category I Licensed Patents of other

countries to the extent that they cover said Licensed

Apparatus per se if LICENSEE pays such accrued royalty on

said Licensed Apparatus pursuant to Section 5.3 in respect

of two (2) or more Category I Licensed Patents, and under

all Category II Licensed Patents of other countries to the

extent that they cover said Licensed Apparatus per se if

LICENSEE pays such accrued royalty on said Licensed

Apparatus pursuant to Section 5.3 in respect of three (3) or

more Category II Licensed Patents.


4.2  IBM grants to LICENSEE a royalty-free immunity from suit

under the Patent Applications.  With respect to any IHS Product

sold or otherwise transferred by LICENSEE, IBM grants to

LICENSEE's customers that have procured such IHS Product for

their own use and not for resale or further manufacture and sale

thereof, alone or in combination with any other item, a

royalty-free immunity from suit under the Patent Applications and

under Licensed Patents Issuing subsequent to such sale or other

transfer on Patent Applications.


-12-


CONFIDENTIAL - Outside Counsel Only          GW-LT 420194

Exhibit 2 Page 12



Section 5.    <u>Royalty and Other Payment</u>

5.1 LICENSEE shall pay, as hereinafter provided, royalties to IBM in respect of each Licensed Apparatus having one or more Patented Portions by virtue of one or more Licensed Patents of the countries of manufacture, use, lease, sale, or other transfer, except to the extent that IBM has granted LICENSEE and its customers a royalty-free immunity from suit pursuant to Section 4.

5.2 Unless LICENSEE elects to pay royalty on the basis set forth in Section 5.3, LICENSEE shall pay royalty for each IHS Product which includes one or more Patented Portions as follows:

5.2.1    in respect of such Patented Portions of such IHS Product covered by one or more Licensed Patents of the country of manufacture, eight percent (8%) of the Royalty Portion Selling Price; and

5.2.2    subject to Section 4.1, in respect of such Patented Portions of such IHS Product covered by one or more Licensed Patents of the country of use, lease, sale or other transfer other than the country of manufacture, eight percent (8%) of the Royalty Portion Selling Price.

5.3 Instead of paying royalty on the basis set forth in Section 5.2, LICENSEE may elect to pay royalty on the basis set forth below in this Section 5.3, provided that LICENSEE's

-13-

CONFIDENTIAL - Outside Counsel Only

Exhibit 2 Page 13

GW-LT 420195



election shall be the same as between Section 5.2 and this Section 5.3 with respect to all IHS Products of the same Type Number upon which royalty has accrued during a semiannual accounting period pursuant to Section 6.1. For each IHS Product which includes one or more Patented Portions and which is manufactured, used, leased, sold or otherwise transferred in any country by or for LICENSEE, LICENSEE shall pay a royalty computed at the following percentages of LICENSEE's Selling Price of such IHS Product:

| Number of Category I Licensed Patents Covering Patented Portions | Percentage of LICENSEE's Selling Price |
|---|---|
| 1 | 1% |
| 2 or more | 2%; and |

| Number of Category II Licensed Patents Covering Patented Portions | Percentage of LICENSEE's Selling Price |
|---|---|
| 1 | 1% |
| 2 | 2% |
| 3 or more | 3%. |

The total royalty payable pursuant to this Section 5.3 shall be the sum of the royalty computed in accordance with the above table for the use of the Category I Licensed Patents plus the royalty computed in accordance with the above table for the use of the Category II Licensed Patents.

-14-

CONFIDENTIAL - Outside Counsel Only            GW-LT 420196

Exhibit 2 Page 14



5.4   For each Manufacturing Apparatus which includes one or more Patented Portions, LICENSEE shall pay royalty as follows:

5.4.1   , in respect of Manufacturing Apparatus covered by one or more Licensed Patents of the country of manufacture, eight percent (8%) of one of the following:

5.4.1.1   for purchased apparatus, the purchase cost of the Patented Portions multiplied by one and one half (1 1/2);

5.4.1.2   for apparatus manufactured by LICENSEE, the Manufacturing Cost of the Patented Portions multiplied by one and one half (1 1/2); and

5.4.2   subject to Section 4.1, in respect of Manufacturing Apparatus used in a country other than the country of manufacture and which is covered by one or more Licensed Patents of the country of such use, eight percent (8%) of one of the following:

5.4.2.1   for purchased apparatus, the purchase cost of the Patented Portions multiplied by one and one half (1 1/2);

5.4.2.2.   for apparatus manufactured by LICENSEE, the Manufacturing Cost of the Patented Portions multiplied by one and one half (1 1/2).

To the extent that LICENSEE does not have a LICENSEE's Selling Price for an IHS Product upon which royalty has accrued

-15-

CONFIDENTIAL - Outside Counsel Only                    GW-LT 420197

Exhibit 2 Page 15



pursuant to Section 6.1, the royalty payable to IBM shall be determined, in accordance with the foregoing provisions of this Section 5.4, as if such IHS Product was a Manufacturing Apparatus.

5.5  No royalties shall be paid by LICENSEE on those portions of Licensed Apparatus which have been purchased by LICENSEE and which have not been manufactured under the license granted herein if all of the following conditions are met:

5.5.1     such portions are covered by patents licensable by IBM in the country of purchase or the country of manufacture;

5.5.2     such portions have been purchased directly or indirectly from a third party who is licensed to sell such portions under all such patents;

5.5.3     such portions are not combined by LICENSEE with each other and/or with other portions in a manner such that the combination is covered by a Licensed Patent; and

5.5.4     LICENSEE, as a customer of such third party, is immune from suit with respect to such portions under all Licensed Patents as provided in such third party's agreement with IBM.

In the event that LICENSEE, as a customer of such third party, is not immune under all Licensed Patents as set forth in Section 5.5.4, then royalties shall be paid by LICENSEE pursuant to the

-16-

CONFIDENTIAL - Outside Counsel Only

Exhibit 2 Page 16

GW-LT 420198



preceding provisions of this Section 5 on those portions of such Licensed Apparatus which meet the conditions of Sections 5.5.1 through 5.5.3, except that no royalties shall be paid with respect to any Licensed Patent under which LICENSEE is immune from suit as provided in such third party's agreement with IBM.

5.6  If LICENSEE purchases from a third party portions of Licensed Apparatus, which have not been manufactured under the license granted herein, and combines such portions with each other and/or with other portions in a manner such that the combination is covered by a Licensed Patent and is itself Licensed Apparatus, then royalty shall be due for the combination in accordance with the preceding provisions of this Section 5 regardless of whether or not said third party is licensed by IBM to sell said purchased portions under all patents licensable by IBM in the country of purchase.

5.7  No royalties shall be paid by LICENSEE in respect of a Licensed Apparatus manufactured by LICENSEE for any other party that is licensed by IBM to have such Licensed Apparatus manufactured for it under all Licensed Patents covering such Licensed Apparatus, provided said other party has given prior authorization to LICENSEE to manufacture such Licensed Apparatus under said other party's license.

-17-

CONFIDENTIAL - Outside Counsel Only

GW-LT 420199

Exhibit 2 Page 17



5.8  The United States Government has a royalty-free license under certain Licensed Patents.  No royalties shall be paid under such patents in respect of IHS Products first sold or leased to, or for the end use of, the United States Government or any other party to whom the United States Government grants a sublicense within the scope of its royalty-free license.  IBM shall inform LICENSEE, upon written request received by IBM, of those Licensed Patents that are within the scope of this Section 5.8 at the time of receipt of such request.

5.9  LICENSEE shall pay to IBM the sum of twenty-five thousand dollars ($25,000) upon execution of this Agreement.  No portion of said sum shall be returnable, but the whole of said sum shall be creditable against royalties payable by LICENSEE under the provisions of this Section 5.

Section 6.    <u>Accruals, Records and Reports</u>

6.1  Royalties shall accrue when Licensed Apparatus with respect to which royalty payments are required by this Agreement is first sold or otherwise transferred, or first used or leased in each country of use or lease, by or for LICENSEE, or when a newly Issued or acquired Licensed Patent covers any portion of Licensed Apparatus in use or on lease by or for LICENSEE on which portion

-18-

CONFIDENTIAL - Outside Counsel Only     GW-LT 420200

Exhibit 2 Page 18



the royalties provided for in Section 5.1 have not previously accrued.

6.2  A semiannual accounting period shall end on the last day of each June and December during the term of this Agreement.  Within sixty (60) days after the end of each such period LICENSEE shall furnish to IBM a written report containing the information specified in Section 6.4 and shall pay to IBM all unpaid royalties accrued hereunder to the end of each such period.

6.3  LICENSEE shall pay all royalties and other payments due hereunder in United States dollars.  All royalties for an accounting period computed in other currencies shall be converted into United States dollars at the exchange rate for bank transfers from such currency to United States dollars as quoted by the head office of Citibank N.A., New York, at the close of banking on the last day of such accounting period (or the first business day thereafter if such last day shall be a non-business day).

6.4  LICENSEE's semiannual report shall be certified by an officer of LICENSEE or his designee and shall contain the following information:

-19-

6.4.1      identification by Type Number (if an IHS Product),
quantity, and description of each Licensed Apparatus upon
which royalty has accrued pursuant to Section 6.1;

6.4.2      identification of each country in which the Licensed
Apparatus identified pursuant to Section 6.4.1 was covered
by a Licensed Patent pursuant to which royalty is being
paid;

6.4.3      identification of the royalty basis elected by LICENSEE
pursuant to the provisions of Section 5; identification of
each Licensed Patent covering each such Licensed Apparatus
upon which LICENSEE is paying royalties and, where
applicable, the ratio used to compute the Royalty Portion
Selling Price; the amount of royalties due for each Licensed
Apparatus; and the aggregate amount of all royalties due;
provided, however, to the extent that LICENSEE pays
royalties pursuant to Section 5.3, LICENSEE shall have no
obligation to identify more than two (2) Category I Licensed
Patents and three (3) Category II Licensed Patents;

6.4.4      identification by Type Number (if an IHS Product),
quantity, and description of each Licensed Apparatus first
used, leased, sold or otherwise transferred, by or for
LICENSEE during such semiannual period which contains
portions exempt or partially exempt from royalty in

-20-

CONFIDENTIAL - Outside Counsel Only      GW-LT 420202

Exhibit 2 Page 20




accordance with Section 5.5, and the name of the licensee who supplied such portions to LICENSEE;

6.4.5    , identification by Type Number (if an IHS Product), quantity, and description of each Licensed Apparatus which LICENSEE has delivered during such semiannual period to a third party and which is exempt from royalty in accordance with Section 5.7 or Section 5.8 and the name of such third party; and

6.4.6    in the event that any of Sections 6.4.1 through 6.4.5 do not apply, LICENSEE shall so state as to each such Section.

In the event no royalties are due, LICENSEE's report shall so state.

Upon written request by IBM, LICENSEE will promptly provide to IBM a copy of each publicly available manual (including, but not limited to, service, use and other technical manuals) relevant to Licensed Apparatus identified by IBM. Upon written request by IBM, LICENSEE will sell or lease under its standard terms and conditions and promptly deliver to IBM any Licensed Apparatus which is offered for sale or lease by LICENSEE and identified by IBM in its request.

-21-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420203

Exhibit 2 Page 21

6.5  LICENSEE shall keep records in sufficient detail to permit
the determination of royalties payable hereunder, and at the
request and expense of IBM will permit an independent auditor
selected by IBM, or any other person acceptable to both IBM and
LICENSEE, to examine, during ordinary business hours once in each
calendar year, such records and other materials as may be
required by the auditor to verify or determine royalties paid or
payable under this Agreement.  Such auditor or other person shall
be instructed to report to IBM only the amount of royalties due
and payable.  If no request for examination of such records and
materials for a particular semiannual accounting period has been
made by IBM within six (6) years after the end of said period,
the right to examine such records and materials for said period,
and the obligation to keep such records and materials for said
period shall terminate.

6.6  Within ninety (90) days after the last day of each June and
December, IBM shall provide LICENSEE with a then current listing
of all Category II Licensed Patents.  Such listing, when
furnished to LICENSEE, shall constitute an amendment to Exhibit A
and shall form a part of this Agreement.  Except as provided in
Section 1.11, each newly listed Category II Licensed Patent shall
be effective for the purpose of calculating royalties pursuant to
Section 5 at the later of the commencement of the semiannual

-22-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420204

Exhibit 2 Page 22

accounting period in which LICENSEE is furnished such current listing or the date of Issuance or acquisition of such Category II Licensed Patent as shown in such current listing. Except as provided in Section 1.10, any unexpired Category II Licensed Patent which was on a prior listing and which is not on such current listing shall be a Category I Licensed Patent commencing with the beginning of the semiannual accounting period in which LICENSEE is furnished such current listing.

6.7 LICENSEE shall bear and pay all taxes (including, without limitation, sales and value added taxes) imposed by the national government, including any political subdivision thereof, of any country in which LICENSEE is doing business as the result of the existence of this Agreement or the exercise of rights hereunder.

Section 7.    Most Favored Licensee

7.1 If IBM shall hereafter grant a license within the scope of the licenses granted herein under any of the Licensed Patents for a particular country identified by LICENSEE's statement pursuant to Section 6.4.2 at more favorable royalty rates than those provided for that country in this Agreement, IBM shall notify

-23-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420205

Exhibit 2 Page 23



LICENSEE thereof, and LICENSEE shall be entitled to receive the same favorable royalty rates specified with respect to those Licensed Patents, subject to the terms and conditions under which such more favorable rates have been granted, provided that this Agreement shall be modified accordingly by written amendment, which amendment shall be effective only for the period such more favorable royalty rates are in effect under such license.   The foregoing provisions shall not apply:

7.1.1    where IBM receives a grant of patent rights, a license or immunity or other than only a monetary consideration for such license, <u>provided</u>, <u>however</u>, that rights of the kind set out in Section 10 shall not in themselves render inapplicable the provisions of this Section 7.1;

7.1.2    where the more favorable royalty rates apply only to apparatus for which there is a claim of past infringement and are given in consideration of settlement of such claim;

7.1.3    where the more favorable royalty rates apply to apparatus licensed pursuant to the exercise of an option granted pursuant to an agreement existing on the date of this Agreement providing for such more favorable rates; or

7.1.4    where LICENSEE elects to continue paying royalties on the basis set forth in this Agreement.

-24-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420206

Exhibit 2 Page 24

Section 8.    <u>Term of Agreement; Termination</u>

8.1  The term of this Agreement shall be from the date hereof until the expiration of the last to expire of the patents licensed hereunder unless previously terminated as hereinafter provided.

8.2  LICENSEE may terminate the license granted herein, in whole or as to any specified Licensed Patent, claim or product, at any time, and from time to time, by giving notice in writing to IBM, it being understood that LICENSEE may so terminate said license as to any specified product under any, some or all of the Licensed Patents.  Such termination shall be effective on the date such notice is mailed unless the notice applies only to a Licensed Patent which Issues after the date of this Agreement and such notice is mailed within one (1) year from the date of Issuance of such patent, in which event the termination shall be effective as of the date of Issue of such patent, unless a different date prior to the date the notice is mailed is specified in such notice.

8.3  LICENSEE shall have the right to reinstate the license granted hereunder (but only to the extent, and subject to the terms and conditions under which IBM has the right, at the time that LICENSEE requests reinstatement, to grant licenses to LICENSEE under the patents for which reinstatement is requested)

-25-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420207

Exhibit 2 Page 25

as to any Licensed Patent, claim or product in respect of which
said license has been terminated pursuant to Section 8.2, by
giving notice in writing to IBM.  Such reinstatement shall be
deemed effective as of the date of termination and it shall be a
condition of such reinstatement that LICENSEE shall, at the time
of giving said notice, pay the royalties provided for in this
Agreement on all Licensed Apparatus which LICENSEE has
manufactured, used, leased, sold or otherwise transferred prior
to the date of such reinstatement and in respect of which royalty
would have been payable but for such termination.  Any such
royalties which would have been overdue had said license remained
in force shall be considered as overdue royalties and treated in
accordance with Section 14.1.  In the event that, at the time of
such request, IBM does not have the right to grant to LICENSEE
the license for which reinstatement is requested, IBM shall
promptly refund to LICENSEE any royalties paid to IBM at the time
of LICENSEE's giving said notice which royalties are applicable
to Licensed Apparatus for which said license cannot be
reinstated.

8.4  If LICENSEE shall, at any time, fail to make any report, pay
any royalties or permit the inspection of its books and records
as hereinabove required, and such failure shall not be cured, and
any interest due pursuant to Section 14.1 paid, within sixty (60)

-26-

CONFIDENTIAL - Outside Counsel Only                GW-LT 420208

Exhibit 2 Page 26



days after written notice from IBM to LICENSEE specifying the nature of such failure, IBM shall have the right to terminate this Agreement, or the license granted hereunder, by giving written notice to LICENSEE, and such termination shall be effective on the fifteenth day after the giving of such notice.

8.5  In the event this Agreement or the license granted hereunder, in whole or as to any specified patent, claim or product, shall be terminated pursuant to this Section 8, the corresponding sublicenses granted to Subsidiaries of LICENSEE pursuant to Section 3 shall likewise terminate, but no notices need be given by IBM to such sublicensees.

8.6  In the event that more than fifty percent (50%) of LICENSEE's outstanding shares or securities (representing the right to vote for the election of directors or other managing authority) hereafter become owned or controlled, directly or indirectly, by a third party prior to Janaury 1, 1995, LICENSEE shall promptly give written notice to IBM of such acquisition. IBM agrees that it will enter into an agreement with such third party identical to this Agreement (except that the latter's name shall be substituted therein in the place of LICENSEE's, the effective date of such identical Agreement shall be the date of such acquisition, and Section 5.9 and any references thereto

-27-

CONFIDENTIAL - Outside Counsel Only            GW-LT 420209

Exhibit 2 Page 27



shall be omitted), provided that within ninety (90) days after
the date of such acquisition, such third party requests such an
agreement in writing to IBM, resolves, to the satisfaction of
IBM, all outstanding intellectual property claims, if any, which
IBM has, as of the date of such acquisition, against such third
party or any of its subsidiaries and enters into such agreement.
This Agreement shall terminate upon the effective date of such
identical agreement.  In the event that such third party does not
enter into an agreement as hereinabove provided, all licenses
granted to LICENSEE under Section 2 or pursuant to Section 9
shall terminate one hundred and eighty (180) days after the date
of such acquisition ("license termination date"); _provided,
however_, that where LICENSEE:

8.6.1    manufactures Licensed Apparatus under a patent licensed
         under Section 2 or pursuant to Section 9 prior to said
         license termination date and a royalty has been paid or an
         obligation therefor has arisen in respect of such Licensed
         Apparatus, and

8.6.2    gives IBM written notice identifying such patent prior
         to said license termination date,

LICENSEE shall continue to be licensed under such patent pursuant
to the terms and conditions of this Agreement.

-28-

CONFIDENTIAL - Outside Counsel Only                    GW-LT 420210
Exhibit 2 Page 28

 

In the event that IBM receives a notice of acquisition as hereinabove provided, all licenses and options granted pursuant to Section 10 of this Agreement shall terminate one hundred and eighty (180) days after receipt of such notice ("Section 10 termination date"), except with respect to any patent Issued or Issuing on a patent application filed prior to such Section 10 termination date and covering any Licensed Apparatus announced or being used or marketed by IBM or any Subsidiary of IBM as of such Section 10 termination date.  With respect to each such patent, said options shall continue until one year after the date when IBM receives notice from LICENSEE that the last of such patents has Issued, and with respect to each such patent any license shall continue until the expiration of said patent.

8.7  No termination pursuant to this Section 8, or Sections 3.1 or 17.9 shall relieve LICENSEE of any obligation or liability accrued hereunder prior to such termination, or rescind or give rise to any right to rescind anything done by LICENSEE or any payments made or other consideration given to IBM hereunder prior to the time such termination becomes effective, and such termination shall not affect in any manner any rights of IBM arising under this Agreement prior to such termination, except as specifically provided in Section 8.6.

CONFIDENTIAL - Outside Counsel Only    GW-LT 420211

Exhibit 2 Page 29

 

Section 9.       License Right of LICENSEE
                 as to Certain Other Patents

9.1  IBM grants to LICENSEE the right to obtain upon request and
to the extent and subject to the terms and conditions under which
IBM has the right to do so at the time of such request, a license
within the scope granted herein with respect to any patent,
including utility models and including design patents and
registrations for type fonts (but not including any other design
patents or registrations), which does not qualify as a Licensed
Patent but which patent is Issued on a patent application having
an effective filing date prior to Janaury 1, 1995.  Such license
shall be granted under a separate agreement at a royalty rate no
higher than the highest rate stated in this Agreement or any
amendment hereto; _provided_, _however_, that if the granting of such
license or the exercise of rights thereunder results in the
payment of royalties or other consideration by IBM to a third
party at a rate greater than said highest rate, such royalty rate
shall be equivalent to such greater rate.  IBM shall inform
LICENSEE, upon written request received by IBM, of those patents
that are within the scope of this Section 9.1 at the time of
receipt of such request.

-30-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420212

Exhibit 2 Page 30




Section 10.    <u>License and Immunity Rights of IBM</u>

10.1 LICENSEE grants to IBM the right to obtain, at any time, and
from time to time, during the term of this Agreement, a license
of the broadest scope which LICENSEE has the right to grant at
any time during such term, but of no greater scope than the scope
of the license herein granted, upon terms and conditions,
including royalty rates, no less favorable than those granted to
LICENSEE herein or in any amendment hereto.  Said right shall be
with respect to any patent, including utility models and
including design patents and registrations for type fonts (but
not including any other design patents or registrations), Issued
on any application which is entitled to an effective filing date
prior to July 1, 1995, and any reissues thereof, under which
patent, or the application therefor, LICENSEE or any of its
Subsidiaries has the right, at any time during the term of this
Agreement, to grant licenses to third parties (other than
Subsidiaries).  Said right of IBM shall be exercisable with
respect to any such patents whether or not Issued and whether or
not the applications therefor exist at the time such right is
exercised.


10.2 LICENSEE grants to IBM the right to obtain, at any time, and
from time to time, during the term of this Agreement, a royalty-
free immunity from suit of the broadest scope which LICENSEE has
the right to grant at any time during such term, but of no

-31-

CONFIDENTIAL - Outside Counsel Only                    GW-LT 420213

Exhibit 2 Page 31



greater scope than the immunity granted to LICENSEE in Section 4.2, upon terms and conditions no less favorable than those granted to LICENSEE herein or in any amendment hereto. Said right shall be with respect to any patent application referred to in Section 10.1 and shall be exercisable with respect to any such patent applications whether or not such applications exist at the time such right is exercised.

Section 11.    <u>Warranty</u>

11.1 IBM represents and warrants that it has the full right and power to grant the license and immunities, respectively set forth in Sections 2 and 4, and that there are no outstanding agreements, assignments, or encumbrances inconsistent with the provisions of said license and immunities or with any other provisions of this Agreement. IBM makes no other representations or warranties, express or implied, nor does IBM assume any liability in respect of any infringement of patents or other rights of third parties due to LICENSEE's operation under the license and immunities herein granted.

Section 12.    <u>Communications</u>

12.1 Any payment, notice or other communication required or permitted to be made or given to either party hereto pursuant to this Agreement and the listing required under Section 6.6 shall

-32-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420214

Exhibit 2 Page 32



be sent to such party by registered airmail (except that registered or certified mail may be used where delivery is in the same country as mailing), postage prepaid, addressed to it at its address set forth below, or to such other address as it shall designate by written notice given to the other party, and shall be deemed to have been made, given or provided on the date of mailing.   The addresses are as follows:

12.1.1     For IBM:

>           IBM Director of Commercial Relations
>           International Business Machines Corporation
>           2000 Purchase Street
>           Purchase, New York 10577
>           United States of America

12.1.2     For LICENSEE:

>           Ted Waitt, President
>           Gateway Two Thousand Inc.
>           P.O. Box 2000
>           610 Gateway Drive
>           North Sioux City, South Dakota 57049

Section 13.     <u>Assignments</u>

13.1 IBM shall not assign or grant any right under any of its Patent Applications or Licensed Patents, and LICENSEE shall not assign or grant any right under any of its patent applications or patents which are subject to IBM's rights pursuant to Section 10, unless such assignment or grant is made subject to the terms and conditions of this Agreement.   Subject to the provisions of Section 3, LICENSEE shall not assign any of its rights or

-33-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420215

Exhibit 2 Page 33



privileges hereunder, without the prior written consent of IBM. Any attempted assignment or grant in derogation of the foregoing shall be void.


Section 14.     <u>Interest on Overdue Royalties</u>

14.1 LICENSEE shall be liable for interest on any overdue royalty commencing on the date such royalty becomes due, at an annual rate which is the greater of nine percent (9%) or one percentage point higher than the prime interest rate as quoted by the head office of Citibank N.A., New York, at the close of banking on such date, or on the first business day thereafter if such date falls on a non-business day.  If such interest rate exceeds the maximum legal rate in the jurisdiction where a claim therefor is being asserted, the interest rate shall be reduced to such maximum legal rate.


Section 15.     <u>Know-How and Trade Secrets</u>

15.1 No license or other right is granted herein to either party, directly or by implication, estoppel or otherwise, with respect to any trade secrets or know-how, and no such license or other right shall arise from the consummation of this Agreement or from any acts, statements or dealings leading to such consummation. Except as specifically provided herein, neither party is required

-34-

CONFIDENTIAL - Outside Counsel Only

Exhibit 2 Page 34

GW-LT 420216



hereunder to furnish or disclose to the other any technical or other information.

Section 16.    Applicable Law

16.1 This Agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the law of the State of New York, United States of America.

Section 17.    Miscellaneous

17.1 Nothing contained in this Agreement shall be construed as conferring on either party any license or other right to copy the exterior design of the products of the other party.

17.2 Nothing contained in this Agreement shall be construed as conferring any right to use in advertising, publicity, or other promotional activities any name, trade name, trademark or other designation of either party hereto (including any contraction, abbreviation or simulation of any of the foregoing); and each party hereto agrees not to use or refer to this Agreement or any provision thereof in any promotional activity associated with apparatus licensed hereunder, without the express written approval of the other party.

-35-

CONFIDENTIAL - Outside Counsel Only          GW-LT 420217

Exhibit 2 Page 35



17.3 Nothing contained in this Agreement shall be construed as conferring any rights by implication, estoppel or otherwise to or under copyrights or mask work or similar rights, or with respect to Programs under any form of statutory protection now existing or hereafter enacted, in any country or countries, wherein the copying of a Program is a requisite of infringement under such form.

17.4 Nothing contained in this Agreement shall be construed as limiting the rights which the parties have outside the scope of the license granted hereunder, or restricting the right of either party or any of its Subsidiaries to make, have made, use, lease, sell or otherwise dispose of any particular product or products not herein licensed.

17.5 Neither IBM nor any of its Subsidiaries shall be required hereunder to file any patent application, or to secure any patent or patent rights, or to maintain any patent in force, or to provide copies of patent applications to LICENSEE or its Subsidiaries, or to disclose any inventions described or claimed in such patent applications.

17.6 IBM shall not have any obligation hereunder to institute any action or suit against third parties for infringement of any

-36-

CONFIDENTIAL - Outside Counsel Only    GW-LT 420218

Exhibit 2 Page 36



Patent Applications or Licensed Patents or to defend any action or suit brought by a third party which challenges or concerns the validity of any Patent Applications or Licensed Patents.  In addition, LICENSEE shall not have any right to institute any action or suit against third parties for infringement of any Patent Applications or Licensed Patents.

17.7 This Agreement will not be binding upon the parties until it has been signed hereinbelow by or on behalf of each party, in which event it shall be effective as of the date first above written.  No amendment or modification hereof shall be valid or binding upon the parties unless made in writing and signed as aforesaid.  This Agreement embodies the entire understanding of the parties with respect to the subject matter hereof and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings or representations with respect to the subject matter hereof other than as expressly provided herein.

17.8 The headings of the several Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

-37-

17.9 If any Section of this Agreement is found by competent authority to be invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such Section in every other respect and the remainder of this Agreement shall continue in effect so long as the Agreement still expresses the intent of the parties. If the intent of the parties cannot be preserved, this Agreement shall be either renegotiated or terminated.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed as of the date first above written.

INTERNATIONAL BUSINESS
MACHINES CORPORATION

Witness:

By _____
    H. G. Figueroa
    Vice President

GATEWAY TWO THOUSAND INC.

Witness:

By _____

_____

-38-

CONFIDENTIAL - Outside Counsel Only

GW-LT 420220

Exhibit 2 Page 38