1  Jane Hahn, SBN 125203
   Alison P. Adema, SBN 149285
2  HAHN & ADEMA
   501 West Broadway, Suite 1730
3  San Diego, California 92101-3595
   Telephone: (619) 235-2100
4  Facsimile: (619) 235-2101

5  Attorneys for *Lucent Technologies Inc.*

6  *Additional counsel listed on the last page*

7

8                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA

9

10  LUCENT TECHNOLOGIES INC.,

11                    Plaintiff,                        Case No. 02-CV-2060-B (CAB)
                                                                consolidated with
12          v.                                          Case No. 03-CV-0699-B (CAB)
                                                        Case No. 03-CV-1108-B (CAB)
13  GATEWAY, INC., GATEWAY COUNTRY
    STORES LLC, GATEWAY COMPANIES,
14  INC., GATEWAY MANUFACTURING LLC           LUCENT'S SECOND
    and COWABUNGA ENTERPRISES, INC.,          SUPPLEMENTAL RESPONSE TO
15                                            DELL INC.'S INTERROGATORY NO.
                      Defendants,             14
16          and

17  MICROSOFT CORPORATION,

18                    Intervener.

19  MICROSOFT CORPORATION,

20                    Plaintiff,

21          v.

    LUCENT TECHNOLOGIES INC.,

22                    Defendant.

23  LUCENT TECHNOLOGIES INC.,

24                    Plaintiff,

25          v.

26  DELL INC.,

27                    Defendant.

28

---
LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S                Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14                                          03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6     Page 1**

1    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Lucent Technologies Inc.

2    hereby supplements its responses to Interrogatory No. 14 of the Third Set of Interrogatories From

3    Dell Inc. to Lucent Technologies Inc. (Nos. 13-14).  Lucent reserves the right to supplement or

4    amend these responses to the extent allowed by the Federal Rules of Civil Procedure and the Local

5    Rules of this Court.

6                                    **SPECIFIC RESPONSES**

7    **Interrogatory No. 14:**

8        To the extent that Lucent believes that any of the references referred to in Interrogatory No.

9    13 above do not invalidate an asserted claim in whole or in part because of some secondary

10   consideration of non-obviousness, (i) identify the claim and the secondary consideration(s) of non-

11   obviousness, (ii) explain why Lucent believes the secondary considerations(s) of non-obviousness is

12   applicable, including why Lucent believes there is a nexus between the merits of the claimed

13   invention and the secondary considerations(s), and (iv) [sic] identify all information supporting the

14   belief that there is a nexus and why the secondary consideration is applicable.

15   **Second Supplemental Response to Interrogatory No. 14:**

16       Subject to Lucent's previously stated general objections and specific objections, Lucent

17   hereby supplements its response as follows: Lucent's Patents-in-Suit are presumed valid pursuant to

18   35 U.S.C. § 282 and the defendants have failed to rebut that presumption.  Furthermore, the

19   references cited by defendants fail to invalidate the claims of the Patents-in-Suit because they fail to

20   anticipate those claims or render them obvious.

21       Subject to Lucent's previously stated general objections and specific objections, Lucent

22   further supplements by responding that at least the following secondary considerations of non-

23   obviousness would support a finding that the asserted claims of the Patents-in-Suit are not invalid for

24   obviousness:

25                              **U.S. Patent No. 4,582,956 (Doughty)**

26       Secondary considerations of non-obviousness that would support a finding that the asserted

27   claims of the Doughty '956 patent are not invalid for obviousness include licenses showing industry

28   respect for the invention and commercial success of third-party products covered by the patent, and

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S              2          Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14                                                        03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 2**

1    industry acceptance of the patented Doughty technology. For example, the Doughty patent forms

2    the basis of Telcordia Technologies (formerly Bellcore) General Requirements GR-30-CORE, Issue

3    2, December 1998 ("GR-30-CORE"), and General Requirements GR-31-CORE, Issue 1, June 2000

4    ("GR-31-CORE") (and prior versions of those documents), which are the Type 1 Caller ID standards

5    used in the United States (*see, e.g.,* LUC 1046732-LUC 1046746, Olaffson Tr. 41, 51, 231), as

6    demonstrated in Lucent's Responses to Interrogatory No. 2 from Microsoft, Dell, and Gateway,

7    which is herein incorporated by reference. Success of this standard is attributatable to the patented

8    invention. Lucent's technical expert will also offer expert testimony at trial regarding this nexus

9    between these standards and the Doughty '956 patent.

10       Additionally, while Lucent typically enters into "portfolio" licenses that license a third party

11    to all Lucent patents used for a particular field of use, the Doughty '956 patent is specifically named

12    in many agreements, including the agreements at LUC 1062036-LUC 1062049, LUC 1062299-LUC

13    1062313, LUC 1062326-LUC 1062339, LUC 1062270-LUC 1062284, LUC 1062285-LUC

14    1062298, LUC 1062252-LUC 1062269, LUC 1003271-LUC 1003285, LUC 1062218-LUC

15    1062233, LUC 1062234-LUC 1062251, LUC 1061983-LUC 1061997, LUC 1062202-LUC

16    1062217, LUC 1062186-LUC 1062201, LUC 1062170-LUC 1062185, LUC 1062154-LUC

17    1062169, LUC 1122293-LUC 1122307, LUC 1068668-LUC 1068685, LUC 1062121-LUC

18    1062137, LUC 106022-LUC 1062035, LUC 1283030-LUC 1283043, LUC 1068460-LUC 1068491,

19    LUC 1061965-LUC 1061978, LUC 1062094-LUC 1062106, LUC 1061945-LUC 1061962, LUC

20    1062107-LUC 1062160, LUC 1062080-LUC 1062093, LUC 1068371-LUC 1068385, LUC

21    1062138-LUC 1062152, LUC 1061998-LUC 1062021, and LUC 1062065-LUC 1062079. The

22    specific references to the Doughty '956 patent in these agreements demonstrate the nexus between

23    the Doughty '956 patent and these licenses.

24       Secondary considerations of non-obviousness that would support a finding that the asserted

25    claims of the Doughty '956 patent are not invalid for obviousness also include statements of acclaim

26    for the invention. The inventions of the Doughty '956 patent have been recognized for their

27    significance in the field of data communications. For example, Ms. Doughty was one of only

28    nineteen recipients (including inventors of patents that issued between 1975 and 1989) of a Patent

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S      3      Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14      03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 3**

1  Recognition Plaque at the The First Annual AT&T Patent Awards Dinner held in 1991 in

2  recognition of her outstanding research and development as reflected in the Doughty '956 patent. A

3  copy of the program for this award ceremony may be found at LUC 006701-720. The nexus

4  between the Doughty '956 patent and these statements of acclaim is demonstrated by the statements

5  of acclaim themselves.

6  ### U.S. Patent No. 4,439,759 (Fleming)

7  Secondary considerations of non-obviousness that would support a finding that the asserted

8  claims of the Fleming patent are not invalid for obviousness include the industry acceptance of the

9  patented Fleming technology during the years following its invention. The Fleming patent forms the

10  basis of the color display capabilities specified by the North American Presentation Level Protocal

11  Syntax (NAPLPS) which was widely adopted shortly afer and in the years following the inventions

12  of the Fleming patent. *See, e.g.,* Frezza Tr. at 64-68, 89-91; Fleming Tr. at 74-84; FLEMING

13  000001-FLEMING 000175. The nexus between NAPLPS and the Fleming patent is demonstrated

14  by the emphasis in NAPLPS on representing graphics and textual information in a variety of modes,

15  colors, and styles, as disclosed and claimed in the Fleming patent. Pursuant to Rule 33(d), further

16  information relating to the industry acceptance of technology covered by the Fleming patent may be

17  derived from documents such as those bearing production numbers DELL 313180-DELL 313186;

18  FLEMING 002071-FLEMING 002072, FLEMING 002073-FLEMING 002074, FLEMING 002822-

19  FLEMING 002823, FLEMING 002828-FLEMING 002830, FLEMING 000001-FLEMING 000175,

20  FLEMING 000427-FLEMING 000543; FREZZA 00094-FREZZA 00101, FREZZA 00102 -

21  FREZZA 00105, FREZZA 00106 - FREZZA 00167, FREZZA 00168 - FREZZA 00225, FREZZA

22  00226 - FREZZA 00252, FREZZA 00253 - FREZZA 00286, FREZZA 00691 - FREZZA 01098.

23  ### U.S. Patent No. 4,317,956 (Torok)

24  Secondary considerations of non-obviousness that support a finding that the asserted claims

25  of the Torok patent are not invalid for obviousness include statements of acclaim for the invention,

26  for example, magazine articles praising the Torok patent's technology, and also including an article

27  describing President Jimmy Carter's use of the Torok technology. *See, e.g.,* TOR 000003-TOR

28  000009. The nexus is demonstrated by those statements of acclaim themselves. Further secondary

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S    4    Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14                                         03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 6    Page 4

1    considerations of non-obviousness that support a finding that the asserted claims of the Torok patent

2    are not invalid for obviousness include long felt need for the invention. For example, the original

3    AT&T electronic blackboard technology presented the problem that as additional information was

4    changed on the blackboard, either added or subtracted from the electronic blackboard, users could

5    not identify where the changes were happening. Accordingly, a means to identify where the

6    information was changed was needed. The technology of the Torok patent solved this long felt need.

7    *See, e.g.,* Torok Dep. Tr. at 52-53.

8                            U.S. Patent No. 4,617,676 (Jayant)

9           Secondary considerations of non-obviousness that support a finding that the asserted claims

10   of the Jayant patent are not invalid for obviousness include commercial success of third-party

11   products covered by the patent. The Jayant patent has contributed to the success of these products

12   by increasing the quality of reproduced speech using low-bit-rate coding. For example, ITU-T

13   Recommendation G.723.1 includes a postfilter that employs the technology embodied in the Jayant

14   patent, as demonstrated in Lucent's Responses to Interrogatory No. 2 from Microsoft, Dell, and

15   Gateway, which is herein incorporated by reference. Speech codecs using the G.723.1

16   Recommendation have been incorporated into the defendants' products and also into a large number

17   of other third-party products used for Voice over Internet Protocol (VoIP). The G.723.1 coding

18   recommendation is a required component of the ITU-T H.323 Recommendation for use at low bit

19   rates. The G.723.1 Recommendation was also selected by the International Multimedia

20   Teleconferencing Consortium's VoIP Forum as the default audio coder for Internet telephony

21   applications. MSLT_0113195-MSLT_0113198. This is significant in that members of the IMTC

22   VoIP Forum, an industry-wide collective of more than 40 companies, discussed the technical merits

23   of the different available technologies and chose G.723.1 as the best. *Id.* The nexus between the

24   Jayant '676 patent and the success of ITU-T Recommendation G.723.1 (and products which employ

25   its technological advances) is evident from the increased quality of reproduced speech using low-bit-

26   rate coding.

27          Secondary considerations of non-obviousness that support a finding that the asserted claims

28   of the Jayant patent are not invalid for obviousness also include licenses showing industry respect

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S          5          Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14                                                      03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 5**

1    for the invention. Although Lucent often enters into "portfolio" licenses that license a third party to

2    all Lucent patents used for a particular field of use, Lucent has entered into numerous agreements

3    that specifically identify the Jayant patent. *See, e.g.,* LUC 1065335-LUC 1065351; LUC 1279698-

4    LUC 1279713; LUC 1065352-LUC 1065366; LUC 1065694-LUC 1065705; LUC 024761-LUC

5    024772; LUC 1065370-LUC 1065379; LUC 1065425-LUC 1065437; LUC 1065411-LUC 1065424;

6    LUC 1065441-LUC 1065454; LUC 1065513-LUC 1065528; LUC 1065397-LUC 1065410; LUC

7    1113695-LUC 1113713; LUC 1068686-LUC 1068700; LUC 1279677-LUC 1279682; LUC

8    1127464-LUC 1127481; LUC 1282626-LUC 1282639; LUC 1289407-LUC 1289420; LUC

9    1289460-LUC 1289479; LUC 1289497-LUC 1289513; and LUC 1289286-LUC 1289311. The

10    specific references to the Jayant '676 patent in these agreements demonstrate the nexus between the

11    Jayant '676 patent and these licenses.

12          Secondary considerations of non-obviousness that support a finding that the asserted claims

13    of the Jayant patent are not invalid for obviousness also include: long felt need for the invention;

14    failure of others to arrive at the invention; unexpected results achieved by the invention; skepticism

15    by others in the field that the invention would work for its intended purpose; and the invention's

16    departure from conventional wisdom in the field. As noted in Juin-Hwey Chen and Allen Gersho,

17    "Adaptive Postfiltering for Quality Enhancement of Coded Speech," *IEEE Transactions on Speech*

18    *and Audio Processing*, Vo. 3, No. 1, January 1995, "[t]he use of posfiltering for speech coding did

19    not become popular until 1984 when Ramamoorthy and Jayant proposed a new postfiltering

20    technique described in [15] and in a U.S. patent [16]." *Id.* at 59. The references referred to by Chen

21    and Gersho are a paper by the inventors Drs. Jayant and Ramamoorthy that described their invention

22    and the Jayant patent itself. *Id.* at 70. It is widely recognized in the speech coding art, as noted by

23    Chen and Gersho and others, that the invention of the Jayant patent introduced the new concept of

24    adaptive postfiltering and resulted in significant improvements in speech coding quality. *See id.* at

25    59; *see also* Valdimir Cuperman & Allen Gersho, "Low Delay Speech Coding," *Speech*

26    *Communications* 12 (1993) pp. 193-204; *see also* Juin-Hwey Chen & Allen Gersho, "Real-Time

27    Vector APC Speech Coding at 4800 BPS with Adaptive Postfiltering," Proceedings: ICASSP 87

28    Dallas, TX (April 6-9, 1987).

**Exhibit 6    Page 6**

1    Secondary considerations of non-obviousness that support a finding that the asserted claims
2    of the Jayant patent are not invalid for obviousness also include statements of acclaim for the
3    invention.  For example, Lucent acknowledged the importance and creativity of the Jayant patent
4    during its June 30, 1997 Patent Awards.  *See* LUC 006721-LUC 006739; Jayant Dep. Tr. at 173-75;
5    Ramamoorthy Dep. Tr. at 70-71.  The nexus between the Jayant '676 patent and this statements of
6    acclaim is demonstrated by the statement of acclaim itself.  In addition, Dr. Jayant is an inductee of
7    the New Jersey Inventors Hall of Fame, which honored him for his contributions "to signal
8    processing used to reduce noise effects in digital communications systems," a Fellow of the IEEE,
9    and the recipient of the IEEE Third Millenium Medal.  *See* MSLT_0592887-MSLT_0592902.  Each
10   of these honors is at least partially attributable to Dr. Jayant's contributions to the '676 Jayant Patent.

11   **U.S. Patent No. 4,701,954 (Atal)**

12   Secondary considerations of non-obviousness that support a finding that the asserted claims
13   of the Atal patent are not invalid for obviousness include commercial success of third-party products
14   covered by the patent.  The Atal patent has contributed to the success of these products by increasing
15   the quality of reproduced speech using low-bit-rate coding.  For example, ITU-T Recommendation
16   G.723.1 includes a multipulse coder that employs the technology embodied in the Atal patent, as
17   demonstrated in Lucent's Responses to Interrogatory No. 2 from Microsoft, Dell, and Gateway,
18   which is herein incorporated by reference.  Speech codecs using the G.723.1 Recommendation have
19   been incorporated into the defendants' products and also into a large number of other third-party
20   products used for Voice over Internet Protocol (VoIP).  The G.723.1 coding recommendation is a
21   required component of the ITU-T H.323 Recommendation for use at low bit rates.  The G.723.1
22   Recommendation was also selected by the International Multimedia Teleconferencing Consortium's
23   VoIP Forum as the default audio coder for Internet telephony applications.  MSLT_0113195-
24   MSLT_0113198.  This is significant in that members of the IMTC VoIP Forum, an industry-wide
25   collective of more than 40 companies, discussed the technical merits of the different available
26   technologies and chose G.723.1 as the best.  *Id.*  The nexus between the Atal '954 patent and the
27   success of ITU-T Recommendation G.723.1 (and products which employ its technological advances)
28   is evident from the increased quality of reproduced speech using low-bit-rate coding.

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S
INTERROGATORY NO. 14                                    7          Case Nos. 02-CV-2060-B (CAB),
                                                                   03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 7**

1    Secondary considerations of non-obviousness that support a finding that the asserted claims

2    of the Atal patent are not invalid for obviousness also include licenses showing industry respect for

3    the invention. Although Lucent often enters into "portfolio" licenses that license a third party to all

4    Lucent patents used for a particular field of use, Lucent has entered into numerous agreements that

5    specifically identify the Atal patent. *See, e.g.,* LUC 1065335-LUC 1065351; LUC 1279698-LUC

6    1279713; LUC 1065352-LUC 1065366; LUC 1065513-LUC 1065528; LUC 1113695-LUC

7    1113713; LUC 1282640-LUC 1282661; LUC 1289460-LUC 1289479; and LUC 1289286-LUC

8    1289311. The specific references to the Atal '954 patent in these agreements demonstrate the nexus

9    between the Atal '954 patent and these licenses.

10    Secondary considerations of non-obviousness that support a finding that the asserted claims

11    of the Atal patent are not invalid for obviousness also include:  failure of others to arrive at the

12    invention; unexpected results achieved by the invention; skepticism by others in the field that the

13    invention would work for its intended purpose; and the invention's departure from conventional

14    wisdom in the field. As noted in Allen Gersho, "Advances in Speech and Audio Compression,"

15    *Proceedings of the IEEE*, pp. 900-18, Vol. 82, No. 6, June 1994, "[t]his method of achieving the

16    needed periodicity in the synthesized speech was introduced by Singhal and Atal for MP-LPC

17    [217]...." *Id.* at 905. The reference referred to by Gersho is a paper by the inventor Dr. Atal et al.

18    that describes, in part, Dr. Atal's invention. *Id.* at 917. It is widely recognized in the speech coding

19    art, as noted by Gersho, that the invention of the Atal patent introduced an improvement to the

20    concept of multipulse coding and resulted in significant improvements in speech coding quality. *See*

21    *generally, id.*

22    Secondary considerations of non-obviousness that support a finding that the asserted claims

23    of the Atal patent are not invalid for obviousness also include statements of acclaim for the

24    invention. For example, Dr. Atal has been awarded the 2003 Benjamin Franklin Medal Laureate in

25    Engineering and is a Fellow of both Bell Labs and AT&T, a member of the National Academy of

26    Science, an IEEE Fellow, and the recipient of the IEEE Centennial Medal. *See, e.g.,*

27    MSLT_604217-MSLT_604227; MSLT_059635-MSLT_059636. Each of these honors is at least

28    partially attributable to Dr. Atal's contributions to the '954 Atal Patent.

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S
INTERROGATORY NO. 14                                8                    Case Nos. 02-CV-2060-B (CAB),
                                                                        03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 8**

## U.S. Patent No. 4,910,781 (Ketchum)

Secondary considerations of non-obviousness that support a finding that the asserted claims of the Ketchum patent are not invalid for obviousness include commercial success of third-party products covered by the patent. The Ketchum patent has contributed to the success of these products by increasing the quality of reproduced speech using low-bit-rate coding. For example, ITU-T Recommendation G.723.1 includes an adaptive codebook that employs the technology embodied in the Ketchum patent, as demonstrated in Lucent's Responses to Interrogatory No. 2 from Microsoft, Dell, and Gateway, which is herein incorporated by reference. Speech codecs using the G.723.1 Recommendation have been incorporated into the defendants' products and also into a large number of other third-party products used for Voice over Internet Protocol (VoIP). The G.723.1 coding recommendation is a required component of the ITU-T H.323 Recommendation for use at low bit rates. The G.723.1 Recommendation was also selected by the International Multimedia Teleconferencing Consortium's VoIP Forum as the default audio coder for Internet telephony applications. MSLT_0113195-MSLT_0113198. This is significant in that members of the IMTC VoIP Forum, an industry-wide collective of more than 40 companies, discussed the technical merits of the different available technologies and chose G.723.1 as the best. *Id.* The nexus between the Ketchum '781 patent and the success of ITU-T Recommendation G.723.1 (and products which employ its technological advances) is evident from the increased quality of reproduced speech using low-bit-rate coding.

Secondary considerations of non-obviousness that support a finding that the asserted claims of the Ketchum patent are not invalid for obviousness also include licenses showing industry respect for the invention. Although Lucent often enters into "portfolio" licenses that license a third party to all Lucent patents used for a particular field of use, Lucent has entered into numerous agreements that specifically identify the Ketchum patent. *See, e.g.,* LUC 1065335-LUC 1065351; LUC 1279698-LUC 1279713; LUC 1065352-LUC 1065366; LUC 1065513-LUC 1065528; LUC 1113695-LUC 1113713; LUC 1282640-LUC 1282661; LUC 1289460-LUC 1289479; LUC 1289497-LUC 1289513; and LUC 1289286-LUC 1289311. The specific references to the Ketchum

**Exhibit 6    Page 9**

1 '781 patent in these agreements demonstrate the nexus between the Ketchum '781 patent and these

2 licenses.

3      Secondary considerations of non-obviousness that support a finding that the asserted claims

4 of the Ketchum patent are not invalid for obviousness also include: long felt need for the invention;

5 failure of others to arrive at the invention; unexpected results achieved by the invention; skepticism

6 by others in the field that the invention would work for its intended purpose; and the invention's

7 departure from conventional wisdom in the field. As noted in Aamir Husain, "Speech Coding for

8 Packetized Networks," Thesis in Support of Ph.D., Simon Fraser University (May 1996),

9 "[s]ignificant improvements in CELP coder performances were achieved by using the adaptive

10 codebook [56], which replaced the pitch filter in modeling the periodicity of voiced speech."

11 MSLT_0554730. The reference referred to by Husain is a paper by the inventors Dr. Kleijn and

12 Mssrs. Krasinski and Ketchum that describes their invention. *Id.* at MSLT_0554813. It is widely

13 recognized in the speech coding art, as noted by Husain, that the invention of the Ketchum patent

14 introduced the new concept of adaptive codebooks and resulted in significant improvements in

15 speech coding quality. *See id.*

### U.S. Patent No. 5,347,295 (Agulnick)

17      Secondary considerations of non-obviousness that support a finding that the asserted claims

18 of the Agulnick patent are not invalid for obviousness include statements of acclaim for the

19 invention, for example, numerous magazine articles praising the Agulnick patent's technology, and

20 stating how such technology was the new frontier in computer operating systems. *See, e.g.,* LUC

21 1236376-LUC 1236383; LUC 1236384-LUC 1236387; LUC 1236394-LUC 1236397; LUC

22 1236463-LUC 1236466; LUC 1236509-LUC 1236526; LUC 1236600-LUC 1236640. The nexus is

23 demonstrated by the statements of acclaim themselves.

24      Still more secondary considerations of non-obviousness that support a finding that the

25 asserted claims of the Agulnick patent are not invalid for obviousness include third-party support of

26 the Agulnick patent technology, as well as a commitment to develop a hardware product based on

27 the Agulnick patent technology. *See, e.g.,* LUC 1235464-1235467; LUC 1236535-1236538; LUC

28

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S INTERROGATORY NO. 14    10     Case Nos. 02-CV-2060-B (CAB), 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 10**

1  1236539-1236546. The nexus is demonstrated by the choice of Agulnick patented technology over

2  other available technologies.

### U.S. Patent No. 4,763,356 (Day)

4  Secondary considerations of non-obviousness that support a finding that the asserted claims

5  of the Day patent are not invalid for obviousness include long felt need for the invention. For

6  example, securities traders at a major Wall Street firm had the need for a means to easily and quickly

7  fill in electronic forms, which the technology of the Day patent solved. *See, e.g.,* A. Gillon Dep. Tr.

8  at 24, 48, 71-76, 146, 159; B. Day Dep. Tr. at 58-62, 89-90.

### U.S. Patent No. 5,649,131 (Ackerman)

10  Secondary considerations of non-obviousness that support a finding that the asserted claims

11  of the Ackerman patent are not invalid for obviousness include commercial success of third-party

12  products covered by the patent. HTML forms, which incorporate the invention of the Ackerman

13  patent, revolutionized the way that people use the Internet by enabling websites to ask for and

14  receive information directly from a user sitting at a personal computer. For instance, online

15  commerce has grown explosively over the last ten years. Today, countless numbers of third parties

16  utilize the methods claimed in the Ackerman patent to process transactions over the Internet. *See,*

17  *e.g.,* LUC 1265307-LUC 1265309.

18  The inventions claimed in the Ackerman patent have a direct nexus to the commercial

19  success of third-party web sites that utilize HTML forms. In order to take advantage of the

20  transaction-processing capabilities of HTML forms, third parties have used the methods claimed in

21  the Ackerman patent. Therefore, companies that offer goods or services on the Internet benefit

22  commercially from the inventions claimed in the Ackerman patent. As e-commerce continues to

23  grow, the commercial benefit and/or success obtained by these third parties from the methods

24  claimed in Ackerman patent will similarly grow.

### U.S. Patent No. 4,383,272 (Netravali)

26  Secondary considerations of non-obviousness that would support a finding that the asserted

27  claims of the Netravali patent are not invalid for obviousness include commercial success of third-

28  party products covered by the patent. The inventions of the Netravali patent are used by ISO/IEC

**Exhibit 6    Page 11**

1  Standard 11172-2 (MPEG-1), ISO/IEC Standard 13818-2/ITU-T Recommendation H.262 (MPEG-

2  2), as demonstrated in Lucent's Responses to Interrogatory No. 2 from Microsoft, Dell, and

3  Gateway, which is herein incorporated by reference, and Windows Media Video 9 (WMV-9), as

4  well as by numerous other standards and recommendations since the advent of MPEG-1.

5  Defendants' products and third-party Video CD, Super Video CD, DVD, digital cable television,

6  streaming video, and other video products use the MPEG-1, MPEG-2, and WMV-9 video coding

7  standards and the inventions of the Netravali patent. The inventions of the Netravali patent have

8  contributed to the success of these products by reducing the bandwidth needed to transmit, or by

9  reducing the quantity of storage needed to store, high-quality video bitstreams. Pursuant to Rule

10  33(d), further information relating to commercial success of third-party products covered by the

11  Netravali patent may be derived from Lucent documents, such as those bearing production numbers

12  LUC 1001303-LUC 1001345, LUC 1010317-LUC 1010467, LUC 1031908-LUC 1031957, LUC

13  1077190-LUC 1077237, LUC 1086818-LUC 1086832, LUC 1094027-LUC 1094068, LUC

14  1136414-LUC 1136416, LUCDB 0018822-LUCDB 0018824, LUCDB 0018840-LUCDB 0018842,

15  LUCDB 0019344-LUCDB 0019353, LUCDB 0019434-LUCDB 0019470, LUCDB 0027740-

16  LUCDB 0027798, LUCDB 0028294-LUCDB 0028354, and LUCDB 0029556-LUCDB 0029601.

17  Testimony relating to commercial success of defendants' and/or third-party products covered by the

18  Netravali patent includes Kokkosoulis Dep. Tr. at 102-03, 119, 135-37, 180-81, 205, with exhibits

19  and other documents cited therein; and Hollenbeck Dep. Tr. at 48-50, 53, with exhibits and other

20  documents cited therein. The nexus between the inventions of the Netravali patent and the

21  secondary consideration of commercial success of products that implement those inventions is

22  presumed where, as here, defendants' products are commercially successful and infringe the

23  Netravali patent. Nexus between the inventions of the Netravali patent and the secondary

24  consideration of commercial success of non-Lucent products is also evidenced by the continuous use

25  of the patented features in MPEG-1, MPEG-2, and WMV-9 and other commercially successful

26  video coding standards and products, the fact that other forms of video coding that do not use the

27  Netravali patent are not as commercially successful, and the fact that the inventions of the Netravali

28

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S        12        Case Nos. 02-CV-2060-B (CAB),
INTERROGATORY NO. 14                                                  03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 12**

1   patent are essential to commercial implementations of MPEG-1, MPEG-2, and WMV-9 video

2   decoding.

3          Secondary considerations of non-obviousness that would support a finding that the asserted

4   claims of the Netravali patent are not invalid for obviousness also include licenses showing industry

5   respect for the invention. Although Lucent often enters into "portfolio" licenses that license a third

6   party to all Lucent patents used for a particular field of use, Lucent has entered into several

7   agreements that specifically identify the Netravali patent. *See, e.g.*, LUC 1065694-LUC 1065705,

8   LUC 1127464-LUC 1127481, and LUC 1289286-LUC 1289311. In addition, Lucent has produced

9   many thousands of pages of licensing negotiation documents, many of which refer to the Netravali

10  patent. The specific references to the Netravali patent in these agreements demonstrate the nexus

11  between the Netravali patent and these licenses.

12         Secondary considerations of non-obviousness that would support a finding that the asserted

13  claims of the Netravali patent are not invalid for obviousness also include statements of acclaim for

14  the invention. The inventions of the Netravali patent have been widely recognized in the video

15  coding field and by outside organizations. For example, the Research and Development Council of

16  New Jersey awarded Arun Netravali and John Robbins the 1996 Thomas Alva Edison Patent Award

17  for outstanding research and development in the state of New Jersey, as reflected in the Netravali

18  patent. A copy of the plaque John Robbins received for this award may be found at ROBB 000001.

19  The specific inclusion of the Haskell patent by name on the face of ROBB 000001, which states:

20  "1996 Thomas Alva Edison Patent Award To JOHN D. ROBBINS For VIDEO SIGNAL

21  INTERPOLATION USING MOTION ESTIMATION[,] U.S. patent 4,383,272[,] Presented for

22  outstanding research and development in the State of New Jersey December 5, 1996[,] RESEARCH

23  AND DEVELOPMENT COUNCIL OF NEW JERSEY[,]" demonstrates a nexus between the

24  invention and this indicia of non-obviousness.

25                          **U.S. Patent No. 4,958,226 (Haskell)**

26         Secondary considerations of non-obviousness that would support a finding that the asserted

27  claims of the Haskell patent are not invalid for obviousness include commercial success of third-

28  party products covered by the patent. The invention of the Haskell patent is used by ISO/IEC

**Exhibit 6    Page 13**

1  Standard 11172-2 (MPEG-1), ISO/IEC Standard 13818-2/ITU-T Recommendation H.262 (MPEG-

2  2), and Windows Media Video 9 (WMV-9), as demonstrated in Lucent's Responses to Interrogatory

3  No. 2 from Microsoft, Dell, and Gateway, which is herein incorporated by reference, as well as

4  numerous other standards and recommendations since the advent of MPEG-1. Defendants' products

5  and third-party Video CD, Super Video CD, DVD, digital cable television, streaming video, and

6  other video products use the MPEG-1, MPEG-2, and WMV-9 coding standards and the inventions of

7  the Haskell patent. The invention of the Haskell patent has contributed to the success of these

8  products by reducing the bandwidth needed to transmit, or by reducing the quantity of storage

9  needed to store, high-quality video bitstreams. Pursuant to Rule 33(d), further information relating

10 to commercial success of third-party products covered by the Haskell patent may be derived from

11 Lucent documents, such as those bearing production numbers LUC 1001303-LUC 1001345, LUC

12 1010317-LUC 1010467, LUC 1031908-LUC 1031957, LUC 1077190-LUC 1077237, LUC

13 1086818-LUC 1086832, LUC 1094027-LUC 1094068, LUC 1136414-LUC 1136416, LUCDB

14 0018822-LUCDB 0018824, LUCDB 0018840-LUCDB 0018842, LUCDB 0019344-LUCDB

15 0019353, LUCDB 0019434-LUCDB 0019470, LUCDB 0027740-LUCDB 0027798, LUCDB

16 0028294-LUCDB 0028354, and LUCDB 0029556-LUCDB 0029601. Testimony relating to

17 commercial success of defendants' and/or third-party products covered by the Haskell patent

18 includes Kokkosoulis Dep. Tr. at 102-03, 118-19, 135-38, 151-71, 179-81, 205, and 207-11, with

19 exhibits and other documents cited therein; and Hollenbeck Dep. Tr. at 45-50, 53-54, 63-64, 106-11,

20 and 161-62, with exhibits and other documents cited therein. The nexus between the invention of

21 the Haskell patent and the secondary consideration of commercial success of products that

22 implement this invention is presumed where, as here, defendants' products are commercially

23 successful and infringe the Haskell patent. Nexus between the invention of the Haskell patent and

24 the secondary consideration of commercial success of non-Lucent products is also evidenced by the

25 continuous use of the patented feature in MPEG-1, MPEG-2, and WMV-9 and other commercially

26 successful video coding standards and products, the fact that other forms of video coding that do not

27 use the Haskell patent are not as commercially successful, and the fact that the invention of the

28

**Exhibit 6    Page 14**

1  Haskell patent is essential to commercial implementations of MPEG-1, MPEG-2, and WMV-9 video

2  decoding.

3        Secondary considerations of non-obviousness that would support a finding that the asserted

4  claims of the Haskell patent are not invalid for obviousness also include licenses showing industry

5  respect for the invention. Although Lucent often enters into "portfolio" licenses that license a third

6  party to all Lucent patents used for a particular field of use, Lucent has entered into several

7  agreements that specifically identify the Haskell patent. *See, e.g.,* LUC 1065694-LUC 1065705,

8  LUC 1127464-LUC 1127481, and LUC 1289286-LUC 1289311. In addition, Lucent has produced

9  many thousands of pages of licensing negotiation documents, many of which refer to the Haskell

10  patent. The specific references to the Haskell patent in these agreements demonstrate the nexus

11  between the Haskell patent and these licenses.

### All Patents-In-Suit Asserted Against Dell

13        Because of the strength of the Patents-In-Suit and industry respect for those patents, Lucent

14  used these patents during numerous assertions to demonstrate the value of its portfolio. As a result,

15  many companies have entered into field-of-use or portfolio licenses with Lucent.

16        Lucent reserves the rights to supplement or amend this response as discovery and Lucent's

17  investigation in this case proceed, and during the course of expert discovery.

18  //

19  //

20

21  Dated: February 22, 2006                         *Lucent Technologies Inc.*

22

23                               By: _____

24                           John M. Desmarais (admitted *pro hac vice*)
                          Robert A. Appleby (admitted *pro hac vice*)

25                           Jon T. Hohenthaner (admitted *pro hac vice*)
                          Joseph A. Loy (admitted *pro hac vice*)

26                           KIRKLAND & ELLIS LLP
                          153 East 53rd Street

27                           New York, New York 10022
                          Telephone: (212) 446-4800

28                           Facsimile: (212) 446-4900

**Exhibit 6    Page 15**



Jane Hahn, SBN 125203
Alison P. Adema, SBN 149285
HAHN & ADEMA
501 West Broadway, Suite 1730
San Diego, California 92101-3595
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Attorneys for *Lucent Technologies Inc.*

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S INTERROGATORY NO. 14 — 16 — Case Nos. 02-CV-2060-B (CAB), 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6   Page 16**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2006, a copy of the foregoing **LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S INTERROGATORY NO. 14** was served on counsel for Gateway, Microsoft and Dell as follows:

**FIRST CLASS MAIL**
John E. Gartman
Christopher S. Marchese
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099

**EMAIL**
marchese@fr.com
srodriguez@fr.com

Attorneys for *Microsoft Corp.*

**FIRST CLASS MAIL**
James S. Blackburn
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199

**EMAIL**
jfreed@mwe.com
sidney_rosenzweig@aporter.com

Attorneys for *Dell Inc.*

**FIRST CLASS MAIL**
David J. Zubkoff
SELTZER, CAPLAN, MCMAHON & VITEK
750 "B" Street, Suite 2100
San Diego, California 92101
Telephone: 619-685-3003
Facsimile: 619-702-6827

**EMAIL**
bryan.farney@dechert.com
ahewgley@deweyballantine.com

Attorneys for *Gateway, Inc., et al.*

Jasmine Valpal

LUCENT'S SECOND SUPPLEMENTAL RESPONSE TO DELL INC.'S
INTERROGATORY NO. 14

17

Case Nos. 02-CV-2060-B (CAB),
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

**Exhibit 6    Page 17**