58TH STORY of Level 1 printed in FULL format.

Copyright 1983 McGraw-Hill Inc.
Data Communications

March, 1983

SECTION: NEWSFRONT; Pg. 49

LENGTH: 1586 words

HEADLINE: Billion dollar videotex battle lines are formed

BYLINE: EM

DATELINE: NORRISTOWN, Pa.

HIGHLIGHT:
Bell shows its long-range tactics through patient attempts and a lawsuit against an innovative competitor.

BODY:
   A lawsuit filed here against the Jerrold Division of General Instrument Corporation has helped reveal the long-range plans of American Telephone and Telegraph Company to capture the lion's share of the U.S. videotex market. What emerges is a picture of AT&T quietly attempting to patent certain videotex implementations thought to be in the public domain, while pushing to get its presentation level protocols (PLPs) for videotex standardized. Whether the lawsuit is won or lost, Jerrold makes it clear that it will go head-to-head with AT&T in a battle of phone versus cable technologies.

   The lawsuit was filed by Bell Labs and Western Electric last year, charging that Jerrold misappropriated videotex trade secrets and hired two of Bell's employees in order to obtain these trade secrets. Jerrold denies these charges. A restraining order granted Bell and Western in December has halted the two ex-Bell employees from developing software for Jerrold's Communicom videotex terminals, scheduled to be released by mid-1984. Jerrold says that it will build the terminals with or without the assistance of the ex-Bell employees while making it clear that their loss will hurt the company. (At press time, a judge here ruled that the restraining order would dissolve on May 1.)

   To understand what AT&T is up to is to start at the beginning -- about a year ago, when a Bell Labs researcher named William Frezza left his job and signed on with the Jerrold Division of General Instrument, a leading electronics supplier to the cable industry. Frezza was a key developer of Bell's PLP and is a co-inventor of four high-level PLP implementations that Bell has been trying to patent for the last two years. These implementations are: dynamically redefinable character sets; incremental point command; color memory; and concatenated lines and filled polygons.

   * Enter ANSI. Concurrent with Frezza's departure from Bell, AT&T published its North American presentation level protocol syntax (NAPLPS), regarded as a superset of the Canadian Telidon videotex protocol. In mid-1982 the American National Standards Institute (ANSI) began its long procedure to adopt NAPLPS as

LUC 023903

Exhibit 7    Page 1

a U.S. standard -- under AT&T's subtle orchestration, say some. ANSI was apparently not aware when it began its standards deliberation that AT&T had undertaken a year earlier, in May 1981, to patent the four previously mentioned implementations of its standard that many assumed were in the public domain.

In the fall of 1982 Frezza hired away two talented programmers from Bell Labs: John Gaby and Arthur Mansky. The pair had been working on Bell's videotex program in Holmdel, N.J., and they are the two persons named in the scheduled to be dissolved temporary restraining order preventing "General Instrument from accepting [their] services . . . in customer terminal development."

* Sturm und Drang. In the two months that followed, AT&T began a drumfire of litigation and a parade of courtroom witnesses. General Instrument contends that "Bell's actions were designed to impede the development of information services within the cable TV industry."

"Their [Bell's] assertion," says Frezza, "was that a man's knowhow and experience obtained while in Bell's employ is the property of the former employer and constitutes a protectable trade secret." Frezza says that Gaby and Mansky left Bell "with only what they had between their ears."

Many in the industry see AT&T as running scared over the videotex issue. "One could easily draw that conclusion," says Bob McNamara of Sytek, which, in conjunction with General Instrument, soon plans to introduce products for citywide cable-based videotex networks.

AT&T's worries stem from the impending introduction of General Instrument's Communicom terminal, which is not locked into any specific videotex protocol. The device is the first RAM-based videotex terminal; that is, the software resides in volatile random access memory. Other terminals, including Bell's, are ROM-based, employing an unchangeable read only memory. The key difference in the two technologies is that the Communicom terminal is transparent to the actual videotex protocol employed, since it is loaded with new operating and graphics software each time it is used.

* PLP vs. Prestel. Frezza says that a RAM-based terminal is employable only in a cable environment, because greater transmission speeds are available than with dialup lines. This greater speed is critical when sending the terminal its initial software load.

The trade-off, however, is that the General Instrument terminal will be able to run with any videotex protocol -- NAPLPS, Prestel, Telidon, and so on -- because it is given new instructions by the network every time it is turned on [DATA COMMUNICATIONS, March 1982, p. 177]. For now, says Frezza, Communicom will employ Bell's NAPLPS protocol.

According to several firms engaged in videotex development, one of the most efficient implementations of the NAPLPS protocol is in a product made by Norpak Corporation, in Ottowa, Canada, with satellite firms in the United States. Its PLP takes up about 32 kbytes of code, says a company spokesman. For RAM-based terminals, loading 32 kbytes over a phone line (assuming a relatively fast data rate of 1.2 kbit/s) would take some four to five minutes. With a particularly bad connection that time could double. Experts say that it is doubtful that

LUC 023904

Exhibit 7   Page 2

users would be willing to wait that long for service.

* Cable vs. phone. AT&T, of course, is pursuing videotex distribution via the dial-up phone network, and there is no evidence that it is considering cable distribution. Thus it follows that AT&T is more or less committed to ROM-based videotex terminals, which are locked into a particular protocol. Observers agree that this is the motivation behind the NAPLPS standardization on Bell's part.

Two leading cable suppliers -- one in Chicago and another in Philadelphia -- are said to be committed to employing the General Instrument terminal and scheme. Their plan calls for up to 40 data channels to be provided to users over a cable using the "mid-split" frequency scheme. Each channel will deliver data at speeds up to 128 kbit/s, full-duplex, to about 200 to 300 terminals that will share the channel using a CSMA/CD contention scheme. This provides for some 8,000 to 12,000 videotex users per cable hub, perhaps 10 of which would be needed to serve a large metropolitan area. With these data rates it would take only a few seconds to load a terminal with software assuming the same 32 kbytes of code for PLP. Even with many terminals on the same channel seeking access at the same time, loading time would probably not exceed one minute -- still considerably faster than with telephone distribution.

"You can't [ordinarily] download code at 1.2 kbit/s," explains Frezza, who adds that General Instrument's ability to do just that will give it a major market edge over Bell.

* Fun and games. Although General Instrument will initially use NAPLPS, Frezza says that this protocol is unsatisfactory for many applications, including high-resolution video games. Special videotex software for games and amusements, which studies show are the biggest potential draw for videotex users, is now being written. Such new software can be loaded at any time with General Instrument's RAM-based terminals.

"With phone lines and ROM-based terminals," says Frezza, "Bell is going to have to send a truck out to each user's home to make such changes." Frezza says that General Instrument wants rapidly to gain a slice of the video games market, worth perhaps $5 billion annually, by supplying "arcade-quality video games" to homes via videotex.

The NAPLPS videotex standard being touted by Bell moved through ANSI with what observers say is uncommon speed -- until Bell's patent plans were learned. The standard had moved from X3L2, its initial committee, to X3 about three months ago, after it was said to have been endorsed by X3L2. Even IBM, an X3L2 member, is said to have lent the standard its tacit endorsement. The standard is now out for a four-month public comment period. Insiders say that the patent brouhaha will certainly work to the detriment of the NAPLPS standard's progress.

"Bell's claiming ownership," says Sytek's McNamara, "might adversely affect its acceptance as a standard." Others feel that the patent application stands no chance of being accepted by patent authorities here or in Europe.

Says Doug O'Brien, assistant vice president of development with Canada's Norpak, "Many of the techniques underlying [the standard] have been common practice and in the public domain for years." O'Brien says that the validity of Bell's patent claims is not as important to the standards community as ensuring

LUC 023905

Exhibit 7   Page 3

that, if the patent is granted, Bell makes licenses available "for a reasonable fee and on a nondiscriminatory basis." Bell would have to sign a statement to that effect before the NAPLPS standard can go further within ANSI, O'Brien insists. Concurrently, a standards effort in Canada has been proceeding apace with ANSI under the auspices of the Canadian Standards Association.

"AT&T will have its hand forced," predicts O'Brien, explaining that AT&T will have to give up its proprietary claim on the standard if it truly wants ANSI to adopt it. The issue will be taken up later this month when ANSI's X3L2 committee meets in Miami. At press time AT&T had not issued a statement indicating in which direction it will go.

GRAPHIC: Picture, Enfant terrible? William Frezza of Jerrold is a key player in the video-tex battle with AT&T.

LANGUAGE: ENGLISH

LUC 023906
Exhibit 7   Page 4