

1  David A. Hahn (SBN 125784)
   HAHN & ADEMA
2  501 West Broadway, Suite 1600
   San Diego, California  92101-3595
3  Telephone:  (619) 235-2100
   Facsimile:  (619) 235-2101

4

5  Attorneys for *Multimedia Patent Trust*
   and *Lucent Technologies Inc.*
6  *(Additional counsel listed on the last page)*

7

8              **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
9

10  LUCENT TECHNOLOGIES INC. and
    MULTIMEDIA PATENT TRUST,                    Case No. 07-CV-2000-H (CAB)
                                                consisting of matters severed from
11                  Plaintiffs,                 consolidated cases:
                    v.                          Case No. 02-CV-2060-B (CAB)
12                                              Case No. 03-CV-0699-B (CAB)
    GATEWAY, INC., GATEWAY COUNTRY              Case No. 03-CV-1108-B (CAB)
13  STORES LLC, GATEWAY COMPANIES,
    INC., GATEWAY MANUFACTURING LLC
14  and COWABUNGA ENTERPRISES, INC.,            **LUCENT AND MULTIMEDIA PATENT
                                                TRUST'S MOTION *IN LIMINE* TO
15                  Defendants,                 PRECLUDE DEFENDANTS FROM
                    and                         ELICITING EXPERT TESTIMONY
16                                              CONCERNING PURPORTED
    MICROSOFT CORPORATION,                      SURVEYS  (PLAINTIFFS' MIL NO. 21)**
17

18                  Intervener.
                                                Date:        February 11, 2008
19  MICROSOFT CORPORATION,                      Time:        10:30 A.M.
                                                Courtroom:   13, 5th Floor
20                  Plaintiff,                  Judge:       Hon. Marilyn L. Huff
                    v.
21
    LUCENT TECHNOLOGIES INC.,
22
                    Defendant.
23  LUCENT TECHNOLOGIES INC. and
    MULTIMEDIA PATENT TRUST,
24
                    Plaintiffs,
25                  v.

26  DELL INC.,

27                  Defendant.

28

1

## I.    INTRODUCTION

2         On February 16, 2007, after briefing and argument, Judge Brewster granted Lucent's Motion

3    *in Limine* No. 3 to preclude Microsoft's damages expert Brian Napper from presenting any testimony

4    on unpublished purported surveys that neither he nor any other expert in this case designed,

5    conducted or had any involvement with at the Speech Coding Trial (Group 3).  (Ex. 38, Order On

6    Motions *In Limine* For Group 3 Trial (D.I. 1175))[1]  On April 30, 2007,  Judge Brewster again granted

7    this same motion against Microsoft in connection with the User Interface Trial (Group 4). (Ex. 39,

8    Order On Motions *In Limine* For Group 4 Trial (D.I. 1737))

9         Lucent and MPT move *in limine,* under Federal Rules of Evidence 702, 703, 802 and 403, to

10   preclude defendants from eliciting expert testimony from Mr. Brian Napper, and  Mr. David Kaplan,

11   their damages experts, or otherwise introducing any evidence, testimony or argument, concerning

12   unpublished purported surveys.

13        In his May 12, 2006 '356 Day Patent report, Mr. Napper uses an undated survey, the origins

14   of which remain unknown—that he did not design, conduct or have any involvement with—to point

15   out problems with Microsoft Money.  (Ex. 58, May 12, 2006 Napper Report re '356 Day Patent at

16   23)  Additionally, in their Video Coding Patent(s) reports, both Mr. Napper and Mr. Kaplan rely on a

17   Microsoft document, which contains an excerpt of results from a purported survey—which they did

18   not design, conduct, have any involvement with—to claim that only a small percentage of websites

19   use streaming media.  (Ex. 55, May 12, 2006 Kaplan Report re Video Coding Patents at 24; Ex. 60,

20   May 12, 2006 Napper Report re Video Coding Patent at 50)

21        Mr. Napper's and Mr. Kaplan's blind reliance on those supposed unpublished surveys—

22   without independently analyzing or validating them—is not "the product of reliable principles and

23   methods" as required by Rule 702.  Further, Rules 703, 802 and 403 preclude defendants from using

24   Mr. Napper's and Mr. Kaplan's purported expert testimony as a conduit for the introduction of

25

26   _____

27   [1]    All citations to exhibits refer to the Exhibits to the Declaration of Jennifer J. Schmidt In Support
        of Lucent's and Multimedia Patent Trust's Motions *In Limine*, filed concurrently herewith.

28

1    unabashedly hearsay testimony concerning alleged surveys about which they have no personal

2    knowledge, to which they cannot professionally vouch, and for which they cannot meaningfully be

3    cross-examined.    Accordingly, the Court should grant Lucent and MPT's motion *in limine* to

4    preclude defendants from referencing surveys at trial.

5    ## II.    BACKGROUND

6         Mr. Napper states in his May 12, 2006 '356 Day Patent expert report that "in a survey of

7    Microsoft Money users, ease of use is 'a source of dissatisfaction' and only a third of the customer

8    base feel the program is 'secure' and half being indifferent to the program, having neither positive

9    nor negative feelings for it." (Ex. 58 at 23)  This supposed survey however: (i) is undated, (ii) is

10   unpublished, (iii) has unknown origins, and (iv) and was neither designed nor conducted by Mr.

11   Napper nor any other expert in this case. (Ex. 110, MSLT_0746585-6630)  Moreover, Mr. Napper,

12   who has been tendered as an expert in the valuation of intellectual property and has no apparent

13   expertise in gathering or evaluating survey data (*see* Ex. 58 at 1-3), blindly accepted this purported

14   survey at face value and performed no independent analysis to assess its validity. (*Id.* at 23)  Nor is

15   there any evidence or testimony in the record by anyone involved in its design or execution, and no

16   expert report in support of its methodology or conclusions.

17        Mr. Kaplan states in his May 12, 2006 Video Coding Patents expert report that in 1999, "a

18   relatively low percentage of Internet sites used 'streaming media' . . . based on a survey included in a

19   Microsoft business plan." (Ex. 55 at 24)  Mr. Napper relies on the same document stating that "A

20   Microsoft fiscal year 2000 business plan for Windows Media summarizes research conducted in early

21   1999 regarding video streaming use by websites, which includes the finding that only 2% of

22   worldwide and 17% of US websites were using streaming media." (Ex. 60 at 50)  The Microsoft

23   document relied on lists the source of this data as "Netcraft, Ltd. 4/99," but the document does not

24   contain the full survey results or any other information about how, when, or by whom the survey was

25   conducted or the results were obtained. (Ex. 109, MSLT_0115294)  Mr. Napper's and Mr. Kaplan's

26   reliance on this document is particularly problematic because they merely rely on an excerpt of

27   purported survey results as stated in a Microsoft document, despite there being no evidence or

28   testimony in the record by anyone who has even seen the survey results in their entirety.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.    Testimony Based on Blind Reliance on Microsoft's Surveys Should Be Precluded Under Rule 702

Rule 702 provides that an expert's testimony must be "the product of reliable principles and methods."  Fed. R. Evid. 702.  Accordingly, a court may exclude testimony that lacks sufficient foundational evidence of reliability.  *See Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 196 (N.D. Cal. 2004).  Indeed, it is the trial court's duty to "make a preliminary determination that a survey is reliable and trustworthy" before an expert may testify about the results of that survey.  *Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45, 57 (D.D.C. 2006)

A trial court should preclude expert testimony when that expert "rel[ies] blindly upon" or "merely parrot[s]" the opinions or conclusions of others and does not independently "assess the validity of" those opinions or conclusions.  *E.g.*, *In re TMI Litig.*, 193 F.3d 613, 714-16 (3d Cir. 1999) (excluding testimony of expert who "chose to rely blindly upon the conclusions generated by . . . other experts" and "fail[ed] to assess the validity of the opinions . . . he relied upon" and noting that such methodology "was not calculated to produce reliable results"); *Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, Nos. 95-4018 & 95-4029, 1996 WL 466673, at *2 (10th Cir. Aug. 16, 1996) (holding that experts "may not merely parrot the opinions of other experts" and excluding "unreliable" testimony of expert who "simply did not provide an independent opinion"); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (excluding testimony of expert who "clearly adopted the projections of [another expert]," and had no "familiarity with the methods or reasoning used by [the other expert]").

This principle compels preclusion of Mr. Napper's and Mr. Kaplan's survey-related testimony here.  In their expert reports (*see* Ex. 55 at 24; Ex. 60 at 50; Ex. 58 at 23), Mr. Napper and Mr. Kaplan "merely parrot" the alleged results of surveys and do not perform any independent analysis to assess the validity of these surveys.  *See In re TMI Litig.*, 193 F.3d at 716; *Becks*, 1996 WL 466673, at *2.  Accordingly, Mr. Napper's and Mr. Kaplan's testimony parroting the purported results of these surveys should be precluded under Rule 702.  *See Dukes*, 222 F.R.D. at 197.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Mr. Napper's and Mr. Kaplan's Testimony Concerning Surveys That They Themselves Did Not Conduct and Upon Which They Cannot Meaningfully Be Cross-Examined is Impermissible Under Rules 703, 802 and 403**

As a general rule, an out-of-court statement—such as a survey result—that is offered "to prove the truth of the matter asserted" is inadmissible hearsay.  Fed. R. Evid. 801 & 802; *see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 516 n.14 (3d Cir. 1998) ("Survey results offered as proof of the matter asserted are hearsay.").  While experts may rely on "facts and data" that would otherwise be hearsay, they may do so if and only if such "facts and data" are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid. 703.  Even so, Rule 703 expressly forbids disclosing such inadmissible matters to the jury unless their probative value is "substantially outweighs" the potential prejudice caused by such disclosure.  *Id.*  (Rule 403 similarly guards against the admission of testimony whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.").

In this case, defendants seek to use Mr. Napper and Mr. Kaplan as conduits by which they can publish to the jury survey evidence that is effectively immune from cross-examination.  That testimony is not permitted by Rule 703.  Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808-10 (N.D. Ill. 2005); *United States v. Tomasian*, 784 F.2d 782, 786 (7th Cir. 1986) ("Rule 703 does not sanction the simple transmission of hearsay."); *United States v. Stone*, 222 F.R.D. 334, 341 (E.D. Tenn. 2004) (holding that an expert may not "serv[e] as a conduit through which hearsay is brought before the jury").  Here, the prejudicial effect of hearsay testimony from Mr. Napper and Mr. Kaplan concerning the purported results of these wholly unreliable surveys outweighs the negligible probative value of the hearsay documents.  Accordingly, Mr. Napper's and Mr. Kaplan's testimony as to these results is both (1) impermissible expert testimony and accordingly inadmissible hearsay under Rules 703 and 802; and (2) appropriately excludable under Rule 403.  *See Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001) ("[T]he prejudicial effect of [defendant's] survey substantially outweighs its

1  probative value."); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999) ("[T]he

2  probative value of the survey so slight that it was easily outweighed, under a Rule 403 analysis, by

3  the danger of confusion of the issues.").

4       Finally, the introduction of unfounded testimony about the purported survey results would be

5  extremely prejudicial to Lucent and MPT.  Defendants seeks to limit their exposure to damages by

6  using Mr. Napper and Mr. Kaplan to show that only a small number of websites used streaming

7  media. (Ex. 55 at 24; Ex. 60 at 50)  Microsoft further seeks to limit its exposure to damages by using

8  Mr. Napper to show that Microsoft Money was not a successful product.  (Ex. 58 at 23)  However,

9  Mr. Napper and Mr. Kaplan had no involvement in these surveys, and have no personal knowledge of

10  them.  In addition, defendants have not (1) identified an expert with such knowledge, (2) submitted

11  any expert report in this case concerning the surveys, (3) made any such expert available for

12  depositions, or (4) identified any sponsoring witness on its initial disclosures.  Lucent and MPT

13  therefore have no means by which to confront Mr. Napper and Mr. Kaplan about the methodology,

14  protocols and procedures under which these surveys were ***actually*** conducted—or even whether the

15  surveys were conducted ***at all***.  *See Loeffel*, 387 F. Supp. 2d at 808-10.  Allowing defendants to

16  introduce the supposed surveys under the guise of expert testimony—while the surveys themselves

17  remain insulated from cross-examination—would greatly prejudice Lucent and MPT and mislead the

18  jury.  Accordingly, defendants should be precluded from referencing these surveys under Rules 703,

19  802 and 403.

20  **IV.     CONCLUSION**

21       For the reasons stated above, the Court should grant Lucent and MPT's motion *in limine* to

22  preclude defendants from eliciting expert testimony from Mr. Brian Napper and Mr. David Kaplan,

23  or otherwise introducing any evidence, testimony or argument, concerning purported surveys.

24

25

26

27

28

1    DATED:  January 14, 2008                              BY:_____s/David A. Hahn_____

2                                                         John M. Desmarais (admitted *pro hac vice*)
                                                          Robert A. Appleby (admitted *pro hac vice*)
3                                                         Paul A. Bondor (admitted *pro hac vice*)
                                                          Jordan N. Malz (admitted *pro hac vice*)
4                                                         KIRKLAND & ELLIS LLP
                                                          153 East 53rd Street
5                                                         New York, New York 10022
                                                          Telephone:  (212)446-4800
6                                                         Facsimile:  (212)446-4900

7                                                         David A. Hahn (SBN 125784)
                                                          HAHN & ADEMA
8                                                         501 West Broadway, Suite 1600
                                                          San Diego, California  92101-3595
9                                                         Telephone:  (619) 235-2100
                                                          Facsimile:  (619) 235-2101

10                                                        Attorneys for *Multimedia Patent Trust*
                                                          and *Lucent Technologies Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28