# SCHMIDT DECLARATION
# EXHIBIT 4

Alison P. Adema, SBN 149285
HAHN & ADEMA
501 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Attorneys for Lucent Technologies Inc.

*Additional counsel listed on the last page*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br> v. <br><br> GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants, <br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervener. | Case No. 02-CV-2060 B (CAB) <br> consolidated with <br> Case No. 03-CV-0699 B (CAB) <br> Case No. 03-CV-1108 B (CAB) <br><br> **LUCENT'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE EXPERT TESTIMONY REGARDING MICROSOFT'S CONCLUSORY AND UNSUPPORTED ALLEGATIONS OF NON-INFRINGING ALTERNATIVES** <br><br> Date: January 9, 2007 <br> Time: 9:00 A.M. <br> Courtroom: 2 <br> Judge: Hon. Rudi M. Brewster |
| MICROSOFT CORPORATION, <br><br> Plaintiff, <br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant. | |
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br> v. <br><br> DELL INC., <br><br> Defendant. | |

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony
Regarding Microsoft's Allegations of Non-Infringing Alternatives

Exhibit 4
Page 000042

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB

## I. INTRODUCTION

Lucent Technologies Inc. ("Lucent") moves *in limine*, under Federal Rule of Evidence 702, to preclude Microsoft Corporation ("Microsoft") from introducing any evidence or argument, or otherwise making any reference to, unsupported allegations of "non-infringing alternatives" to the technologies claimed in the '080 and '457 patents. Microsoft's damages expert, Brian Napper, alleged the existence of non-infringing alternatives in his expert report in a wholly conclusory fashion without any foundational support. This report specifies no basis for showing that the alleged "alternatives" avoid infringement of the '080 and '457 patents, were available to Microsoft at the time of the hypothetical negotiation, and/or were acceptable in providing the advantages of MP3 coding. Additionally, Mr. Napper negated the very basis for this opinion at his deposition, ***admitting that he does not know*** whether the "alternatives" infringe the '080 and '457 patents, whether they were available for implementation by Microsoft, and whether they are MP3-compliant. Because Microsoft's bare allegation of "non-infringing alternatives" lacks support and has been negated by the very expert expected to provide that testimony, this allegation should be excluded under Federal Rule of Evidence 702.

## II. BACKGROUND

In his October 23, 2006 report, Microsoft's damages expert Brian Napper hypothesized that no fewer than five technologies — WMA, AC-3, AAC, ATRAC and MP2 — are non-infringing alternatives to the technologies claimed in the '080 and '457 patents:

> In providing audio coding functionality without MP3 coding, at the time of the hypothetical negotiations in this matter Microsoft could have used other design alternatives such as WMA, AC-3, Advanced Audio Coding ("AAC"), ATRAC, and MP2, among others.

(Ex. 10, 10/23/06 Brian Napper Expert Report at 62; *accord* at 67 ("I understand that Microsoft believes that other design alternatives may have existed.")) Mr. Napper, however, asserted this hypothesis in a completely conclusory manner without any foundational support. Mr. Napper nowhere in his report explains how these technologies are non-infringing, let alone how they were available and acceptable. For example, Mr. Napper provides no analysis regarding why these technologies allegedly do not infringe. Nor does Mr. Napper explain how these

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony  1  Case Nos. 02-CV-2060-B (CAB)
Regarding Microsoft's Allegations of Non-Infringing Alternatives  03-CV-0699-B (CAB), and 03-CV-1108-B (CAB

Exhibit 4
Page 000043

technologies were allegedly "available" to Microsoft at the time of the hypothetical negotiation by virtue of equipment, know-how, and expertise and in view of the costs of implementation. And Mr. Napper does not explain how these alternative technologies were allegedly "acceptable" to Microsoft's customers or how they could provide the advantages and benefits of MP3 audio coding.

At his deposition, Mr. Napper confirmed that no such foundation exists for this allegation of non-infringing alternatives. For example, Mr. Napper admitted that he did not know whether the use of AAC, ATRAC, AC3, MP2 or WMA would result in an infringement of the patents:

> Q. Do you have any understanding one way or the other whether the use of AAC, ATRAC, AC3 or MP2 would result in an infringement of the '080 or '457 patents?
> …
> THE DEPONENT: I don't know one way or the other.

(*Id*. at 98:7-15; *see also* at 97:17-98:6 (discussing WMA))

Nor did Mr. Napper know whether Microsoft had the equipment, know-how and expertise available to implement the allegedly non-infringing alternative (aside for some general knowledge about coding):

> Q. Do you know, as of 1997, whether Microsoft had all the equipment know-how and expertise to implement any of AAC, WMA, AC3, ATRAC or MP2 into its software products?
> …
> THE DEPONENT: I don't know. I don't know whether they had that type of information one way or the other.

(*Id*. at 97:2-10) Mr. Napper also was not aware of any activity by Microsoft to determine the costs of using these technologies instead of the technology of the '457 and '080 patents:

> Q. With respect to AAC, AC3, ATRAC or MP2, are you aware of any activity undertaken by Microsoft to determine what it would cost to use any of those technologies instead of the technology embodied by the '457 and '080 patents?
>
> A: I'm not aware of any analysis of Microsoft in terms of its looking at those other types of functions and what it might cost Microsoft towards that end – … – if any.

(*Id*. at 103:18-104:2) Nor could Mr. Napper say whether the use of AAC, WMA, AC3, ATRAC or MP2 would be MP3 compliant:

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony Regarding Microsoft's Allegations of Non-Infringing Alternatives

2

Exhibit 4
Page 000044

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

> Q. Do you know if using AAC, WMA, AC3, ATRAC or MP2 would be MP3 compliant?
>
> …
>
> THE DEPONENT: I don't have an ability to comment on that.

(*Id*. at 104:3-8) Thus, Mr. Napper's deposition testimony not only fails to support, but plainly negates, the basis for an opinion that there are non-infringing alternatives.

Despite the lack of foundation in his expert report and these remarkable admissions, Microsoft is nonetheless expected to have Mr. Napper testify at trial that there are non-infringing alternatives to the technologies claimed in the '080 and '457 patents. Therefore, this Court should grant Lucent's motion *in limine* to exclude this unsupported and unreliable testimony.

### III.   ARGUMENT

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if ***(1) the testimony is based upon sufficient facts or data***, (2) the testimony is the product of reliable principles and methods, and ***(3) the witness has applied the principles and methods reliably to the facts of the case***.

Fed. R. Evid. 702 (emphasis added). Rule 702 charges the Court with a "gatekeeping obligation" to ensure the reliability and relevance of the expert testimony admitted in evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). The Court ensures the relevance of the proposed testimony by evaluating whether the opinions offered are sufficiently connected to the facts of the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993). Expert testimony should be excluded if "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

A non-infringing alternative must be both "available" and "acceptable." *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1346-49 (Fed. Cir. 1999). A non-infringing alternative is "available" if the infringer "had all of the necessary equipment, know-how, and experience" to use the alternative during the time of infringement as well as the economic incentive to do so. *Grain Processing Corp.*, 185 F.3d at 1354; *accord Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed Cir. 2003). To be "acceptable," an alleged non-

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony
Regarding Microsoft's Allegations of Non-Infringing Alternatives

3

Exhibit 4
Page 000045

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

1  infringing alternative must have had the advantages of the patented technology.  *See Standard*
2  *Haven Prods. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) ("[T]he mere
3  existence of a competing device does not necessarily make that device an acceptable substitute.
4  A product on the market which lacks the advantages of the patented product can hardly be
5  termed a substitute acceptable to the customer who wants those advantages.") (citation omitted).
6  Courts exclude expert testimony on non-infringing alternatives where the expert can identify no
7  reliable factual basis for such an opinion.  *See, e.g., EZ Dock, Inc. v. Schafer Sys., Inc.*, 2003 WL
8  1610781, No. Civ. 98-2364, at *6 (D. Minn. Mar. 8, 2003) ("In neither his expert report nor his
9  deposition could [expert] identify a reliable factual basis for his opinions regarding…the
10 existence of available non-infringing alternatives.").

11         Here, Mr. Napper — by his own admission — has no basis for testifying that AAC,
12 ATRAC, AC3, MP2 and WMA were available, acceptable non-infringing alternatives to the
13 '080 and '457 patents.  Mr. Napper has already admitted that ***he does not even know whether***
14 ***these technologies infringe the '080 or '457 patents***.  (Ex. 24, 11/10/06 Napper Tr. at 97:17-
15 98:6, 98:7-15)  Nor is Mr. Napper even qualified to make such a technical determination, as he is
16 not a technical expert in this case, does not have technical expertise in audio coding technology,
17 and has no degree other than a B.S. in business administration.  (Ex. 27, 6/29/06 Napper Tr. at
18 9:6-13, 17-19)  And while Mr. Napper's own admissions should be dispositive, nor can Mr.
19 Napper claim to rely on any testimony or claim analysis of another expert in support of his
20 contention that WMA, AC-3, AAC, ATRAC, and MP2 are non-infringing alternatives, as no
21 such testimony or claim analysis exists.

22         In addition, even assuming *arguendo* that these alternative technologies were otherwise
23 "non-infringing," Mr. Napper still has no basis for testifying that these technologies were
24 "available."  Mr. Napper has already admitted that ***he does not know*** whether Microsoft had the
25 necessary equipment, know-how, and experience to use the alternative technologies in lieu of the
26 technologies of the '080 and '457 patents, nor the costs of doing so.  (Ex. 24, 11/10/06 Napper
27 Tr. at 97:2-10, 103:18-104:2)  Nor does Mr. Napper have a basis for testifying that these
28 technologies were "acceptable."  Microsoft's own witnesses have testified that its customers

1  demanded that Microsoft provide MP3 coding capability in its products. (Ex. 26, 9/20/05 Harris
2  Tr. at 107:15-109:15) Yet, Mr. Napper has admitted that he does not know whether these
3  alternative technologies were MP3-compliant. (Ex. 24, 11/10/06 Napper Tr. at 104:3-8)
4       Mr. Napper simply does not have a sufficient factual basis for concluding — and
5  testifying at trial as an expert — that Microsoft had available, acceptable non-infringing
6  alternatives. Mr. Napper's allegation of non-infringing alternatives is not only insufficiently
7  tied to the facts of the case, but plainly negated by his understanding of those facts. As such,
8  there is simply too great an analytical gap between the sweeping opinion Mr. Napper is
9  expected to proffer and the facts in this case. Mr. Napper's opinion is too speculative to
10 satisfy the reliability threshold of Rule 702 and his testimony would invite conjecture and
11 confusion rather than assist the jury in determining a reasonable royalty rate. Under these
12 circumstances, the Court should exercise its "gate keeping" function and exclude Microsoft
13 from presenting such speculative testimony regarding non-infringing alternatives at trial.

## IV. CONCLUSION

15      Because Microsoft's experts have no support for an allegation that there were
16 available and acceptable non-infringing alternatives to the '080 and '457 patents, Lucent
17 respectfully requests that the Court grant its motion *in limine* under Rule 702 to preclude
18 Mircosoft from presenting such expert testimony at trial.

19 DATED: December 12, 2006            BY:       s/Alison P. Adema

John M. Desmarais (admitted *pro hac vice*)
Robert A. Appleby (admitted *pro hac vice*)
Scott R. Samay (admitted *pro hac vice*)
Jordan N. Malz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Alison P. Adema, SBN 149285
HAHN & ADEMA

Attorneys for Lucent Technologies Inc.

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony      5      Case Nos. 02-CV-2060-B (CAB)
Regarding Microsoft's Allegations of Non-Infringing Alternatives    03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

Exhibit 4
Page 000047

Lucent Technologies Inc. v. Gateway, Inc., et al.
Case No. 02-CV-2060 B (CAB)

# PROOF OF SERVICE

I am a resident of the state of California over the age of eighteen years, and not a party to the within action. My business address is Hahn & Adema, 501 West Broadway, Suite 1600, San Diego, California 92101-8474.

On December 12, 2006, I served the within documents:

1. **LUCENT'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE EXPERT TESTIMONY REGARDING MICROSOFT'S CONCLUSORY AND UNSUPPORTED ALLEGATIONS OF NON-INFRINGING ALTERNATIVES**

X    by EFC, by causing a true and correct copy hereof to be transmitted to the parties listed above via the CASD ECF system as registered recipients as follows:

John E. Gartman
Christopher S. Marchese
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099
marchese@fr.com
Attorneys for Microsoft Corp.

David J. Zubkoff
SELTZER, CAPLAN, MCMAHON & VITEK
750 "B" Street, Suite 2100
San Diego, CA 92101
Telephone: 619-685-3003
Facsimile: 619-702-6827
zubkoff@scmv.com
Attorneys for Gateway, Inc., et al.

Trial Counsel for Dell:
James S. Blackburn
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
Email: james_blackburn@aporter.com

    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.
    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m

X    by transmitting the document(s) listed above, received from CM/ECF, via electronic transmission to the addressee(s) as set forth below from electronic notification address sfrost@hahnadema.com. The transmission was reported completed without error.

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony
Regarding Microsoft's Allegations of Non-Infringing Alternatives

1

Exhibit 4
Page 000048

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB

Ali Sharifahmadian
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC  20004-1206
Telephone:     202-942-6370
Facsimile:     202-942-5999
Ali_sharifahmadian@aporter.com
Attorneys for Dell Inc.

Trial Counsel for Dell:
Joel Freed
McDermott Will & Emery
600 13th Street, N.W.
Washington, DC  20005-3096
Tel:     202-756-8000
Fax:    202-756-8087
Email:           jfreed@mwe.com

  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

  Executed on December 12, 2006, at San Diego, California.

  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

X (Federal) I declare that I am employed in the office of a member of the bar of this court at whose directions the service was made.

              s/Susan Frost
              Susan Frost

| | | |
|---|---|---|
| X | All documents e-filed served | All pleadings filed or served were included in the email along with any exhibits. |
| | Main Pleading documents (without exhibits) | All main pleading documents were included in the email except for sealed exhibits.  Exhibits were over 50 pages long.  As per our service agreement, a hard copy will follow via overnight mail. |

Lucent's Motion *In Limine* No. 6 To Preclude Expert Testimony
Regarding Microsoft's Allegations of Non-Infringing Alternatives

2

Exhibit 4
Page 000049

Case Nos. 02-CV-2060-B (CAB)
03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)