# SCHMIDT DECLARATION

# EXHIBIT 16

1   James S. Blackburn (State Bar No. 169134)
    ARNOLD & PORTER LLP
2   777 South Figueroa Street, 44th Floor
3   Los Angeles, California  90017-5844
    Telephone:  (213) 243-4000
4   Facsimile:  (213) 243-4199

5   Joseph A. Micallef (admitted *pro hac vice*)
    ARNOLD & PORTER LLP
6   555 Twelfth Street, N.W.
7   Washington, D.C.  20004-1206
    Telephone:  (202) 942-5000
8   Facsimile:  (202) 942-5999

9   Joel M. Freed (Admitted *pro hac vice*)
    McDERMOTT WILL & EMERY LLP
10  600 13th Street, N.W.
11  Washington, D.C.  20005-3096
    Telephone:  (202) 756-8000
12  Facsimile:  (202) 756-8087

13  Attorneys for *Dell Inc.*

14

15                  **UNITED STATES DISTRICT COURT**

16              **SOUTHERN DISTRICT OF CALIFORNIA**

17  LUCENT TECHNOLOGIES INC.,            )   Case No. 02-CV-2060 B (CAB)
                                         )   consolidated with Case No. 03-CV-0699 B
18          Plaintiff and Counterclaim-defendant,  )   (CAB) and Case No. 03-CV-1108 B (CAB)
                                         )
19      v.                               )   **MEMORANDUM OF POINTS AND**
                                         )   **AUTHORITIES IN SUPPORT OF**
20  GATEWAY, INC. AND GATEWAY            )   **MOTION OF DELL INC. FOR**
    COUNTRY STORES LLC, GATEWAY          )   **SUMMARY JUDGMENT OF NON-**
21  COMPANIES, INC., GATEWAY             )   **INFRINGEMENT ON THE ASSERTED**
    MANUFACTURING LLC and                )   **CLAIMS OF U.S. PATENT NO. 5,347,295**
22  COWABUNGA ENTERPRISES, INC.,         )   **TO AGULNICK ET AL.**
                                         )
23          Defendants and Counter-claimants,  )   Judge Rudi M. Brewster
                                         )
24  and                                  )   Hearing:  March 2, 2007, 9:00 a.m.
                                         )   Location:  Courtroom 2, 4th Floor
25  MICROSOFT CORPORATION,               )
                                         )
26          Intervener and Counter-claimant,   )
                                         )
27  ─────────────────────────────────────

28

1768646

Exhibit 16
Page 000244

1   MICROSOFT CORPORATION, )

2            Plaintiff and Counter-defendant, )

3   v. )

4   LUCENT TECHNOLOGIES, INC., )

5            Defendant and Counter-claimant, )

6   _____ )

7   LUCENT TECHNOLOGIES, INC., )

8            Plaintiff, )

9   v. )

10   DELL INC., )

11            Defendant. )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 16
Page 000245

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,347,295

1

## TABLE OF CONTENTS

2

3                                                                                                    <u>Page</u>

4    I.      INTRODUCTION ...................................................................................................... 1

5    II.     STATEMENT OF UNDISPUTED FACTS ............................................................. 2

6            A.      The Agulnick Patent............................................................................... 2

7            B.      The Accused Products ............................................................................. 6

8    III.    APPLICABLE LEGAL STANDARD...................................................................... 6

9    IV.     ARGUMENT ............................................................................................................ 7

10           A.      The Dell Axims Do Not Satisfy The Claimed Detecting Means, Either
11                   Literally or By Equivalence .................................................................... 7

12           B.      Dell's Axim PDAs Do Not Perform the Function of Detecting The Stylus
                     In Contact With The Screen .................................................................. 12

13                   1.      The Dell Axims Do Not Literally Perform The Claimed Function ..............12

14                   2.      As A Matter of Law The Dell Axims Do Not Perform An
15                           Equivalent Function .......................................................................... 12

16           C.      Dell Is Entitled to Summary Judgment of Non-Infringement With Respect
                     to the Palm-Based PDAs That  It Has Sold ........................................ 13

17   V.      CONCLUSION ...................................................................................................... 14

18

19

20

21

22

23

24

25

26

27

28

- i -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,347,295

Exhibit 16
Page 000246

1

**TABLE OF AUTHORITIES**

2

3

Page(s)

**CASES**

4

*Alloc, Inc. v. ITC*,
   342 F.3d 1361 (Fed. Cir. 2003)...................................................................... 2

5

6

*Alpex Computer Corp. v. Nintendo Co.*,
   102 F.3d 1214 (Fed.Cir.1996)................................................................. 9, 10

7

*B. Braun Medical, Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997)...................................................................... 8

8

9

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
   268 F.3d 1352 (Fed. Cir. 2001)..................................................................... 10

10

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
   423 F3d 1296 (2005)...................................................................................... 11

11

12

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   911 F.2d 670 (Fed. Cir. 1990)........................................................................ 7

13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................ 7, 14

14

15

*Charles Greiner & Co. v. Mari-Med Mfg., Inc.*,
   962 F.2d 1031 (Fed. Cir. 1992)..................................................................... 10

16

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998)................................................................. 7, 8

17

18

*Conopco, Inc. v. May Dep't Stores Co.*,
   46 F.3d 1556, 32 USPQ2d 1225 (Fed. Cir. 1994) ....................................... 10

19

*DSU Medical Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. Dec. 13, 2006) ........................................................ 2

20

21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003)................................................................ 10, 13

22

*Genentech, Inc. v. Wellcome Found. Ltd.*,
   29 F.3d 1555, 31 USPQ2d 1161 (Fed. Cir. 1994) ....................................... 11

23

24

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   365 F.3d 1054 (Fed. Cir. 2004)...................................................................... 2

25

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
   452 F.3d 1312 (Fed. Cir. 2006)...................................................................... 9

26

27

*J&M Corp. v. Harley-Davidson, Inc.*,
   269 F.3d 1360 (Fed. Cir. 2001)................................................................ 9, 10

28

- ii -

Exhibit 16
Page 000247

*Johnson & Johnston Assocs., Inc. v. R.E. Service Co.*,
    285 F.3d 1046 (Fed. Cir. 2002)...................................................................... 11, 13

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
    873 F.2d 1422 (Fed. Cir. 1989).......................................................................... 12

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)................................................................................ 8

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (1996)........................................................................................... 11

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)............................................................................ 8

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999)........................................................................ 8, 12

*Planet Bingo LLC v. Gametech Int'l, Inc.*,
    --- F.3d ---, 2006 WL 3615302, at *6 (Fed. Cir. Dec. 13, 2006) .......................... 8

*S. Bravo Sys. v. Containment Techs. Corp.*,
    96 F.3d 1372 (Fed. Cir. 1996).............................................................................. 7

*Sage Prods. Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420, 44 USPQ2d 1103 (Fed. Cir. 1997) ............................................ 10

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001)............................................................................ 9

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
    347 F.3d 1355 (Fed. Cir. 2003).......................................................................... 11

*Under Sea Indus., Inc. v. Dacor Corp.*,
    833 F.2d 1551 (Fed. Cir. 1987)............................................................................ 7

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997) ............................................................................................ 10

**STATUTES AND RULES**

35 U.S.C. § 103 ...................................................................................................... 4

35 U.S.C. § 271(c) .................................................................................................. 2

Fed. R. Civ. P. 56(c).......................................................................................... 6, 7

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,347,295

Exhibit 16
Page 000248

## I.    INTRODUCTION

The claims of U.S. Patent 5,347,295 to Agulnick, et al. ("the Agulnick patent") are directed to an apparatus for controlling a computer system with a pen-like object, called a "stylus," operating on a computer screen, or display.  Each claim of the patent requires a "means … for detecting a stroke of the stylus tip in contact with the screen," which the Court has construed to correspond to the disclosed "pen position digitizer 20."  Pen position digitizer 20, however, is described in the specification as being of a type that is "[m]ounted behind the display" and the specification expressly disavows the use of front-mounted digitizers with the invention.  Indeed, during prosecution of the Agulnick patent the claims were amended to add "means for detecting a stroke of the **stylus tip in contact with the screen**" explicitly to overcome a rejection based on a prior art patent that disclosed use of a front-mounted digitizer.

The accused Dell Axim® line of Personal Digital Assistants (PDAs) mount a digitizer in front of the screen.  The Axim therefore does not employ a structure identical to the pen position digitizer 20, and as a matter of law the claims cannot cover a front-mounted digitizer by equivalence because of the clear disclaimer of such a structure in the specification and prosecution history.

Separate and apart from that, because the digitizers in the Dell Axims are mounted in front of the screen, it is impossible for a stylus used with them to come into contact with the screen. Because the digitizer is in front, the stylus can only contact the digitizer.  Lucent can therefore not show that any structure in the accused Dell Axims performs the function of "detecting a stroke of the stylus tip in contact with the screen," as required by the claim.

Nor can Lucent rely on the doctrine of equivalence to satisfy this claim requirement.  As a preliminary matter, Lucent has failed to come forward with any evidence or argument with respect to the doctrine of equivalence.  Even if Lucent had presented such evidence and argument, it is precluded from relying on the doctrine of equivalence by the disclosure dedication rule of *Johnson & Johnston* because front-mounted digitizers are disclosed, albeit disparagingly, but not claimed in the Agulnick patent.  *Johnson & Johnston Assocs., Inc. v. R.E. Service Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002).  Further, the claim language requiring a digitizer that detects when a stylus actually makes contact with the screen was added during prosecution to overcome a rejection based

- 1 -

Exhibit 16
Page 000249

1  on a prior art patent which also disclosed a front-mounted digitizer.  Lucent is therefore

2  presumptively estopped from relying on the doctrine of equivalence by prosecution history estoppel,

3  a presumption that Lucent cannot rebut.  Accordingly, Dell is entitled to summary judgment of non-

4  infringement with respect to its Axim PDAs.

5      Dell is also entitled to a summary judgment of non-infringement with respect to PDAs

6  manufactured by third parties and resold by Dell because Lucent has failed to come forward with

7  any evidence to show or suggest that these third party-manfucatured products have a digitizer that is

8  identical or equivalent to the digitizer 20 disclosed in the specification, or which practices the

9  claimed function of digitizer 20.[1]

10 **II.    STATEMENT OF UNDISPUTED FACTS**

11     **A.    The Agulnick Patent**

12     Each asserted independent claim of the Agulnick patent includes a means-plus-function

13 claim element that requires circuitry for performing the function of "detecting a stroke of the stylus

14 tip **in contact with the screen**."[2]   The Court identified the function as "detecting a stroke of the

15 stylus tip in contact with the screen" and the corresponding structure as "[p]en position digitizer 20,

16 as shown in figs. 2 and 3 and described in the specification at Col. 6: 21-22; and Col. 6: 53-68."

---

[1]     Defendant Microsoft Corporation also moves for summary judgment based on the arguments and evidence presented herein.  Lucent accuses Microsoft of *indirectly* infringing the Agulnick patent by selling the Windows Mobile and Pocket PC operating system software that Dell includes in its PDAs.  Because Dell's products do not infringe the Agulnick patent, Microsoft cannot be found to infringe indirectly and moves for summary judgment of no indirect infringement, based on the arguments presented herein.  *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. Dec. 13, 2006) ( "[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement.").  Furthermore, Dell's noninfringing use of Microsoft's software demonstrates a substantial non-infringing use for Microsoft's accused operating system software, and for that reason, as well, Microsoft cannot be found to contributorily infringe.  35 U.S.C. § 271(c); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1347 (Fed. Cir. 2003).  Microsoft therefore also moves for summary judgment of no contributory infringement on that basis.

[2]     Independent claims 1 and 41, for example, require a "first detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen." Declaration of Joseph A. Micalff in Support of Motion of Dell Inc. for Summary Judgment of Non-Infringement on the Asserted Claims of U.S. Patent No. 5,347,295 to Agulnick, et al. [hereinafter "Micallef Decl."], Exhibit A at 88, 89 ('295 Pat., at 18:5-7, 20:52-54) (emphasis added).  Independent claim 39 similarly requires a "detecting means coupled to said computer for detecting a stroke of the stylus tip in contact with the screen." *Id.* at 89 ('295 Pat., at 20:28-30) (emphasis added).  These claim elements were construed identically by the Court.

- 2 -

Exhibit 16
Page 000250

1    Micallef Decl., Ex. B at 93, 97, 99 (Order Construing Claims for United States Patent No.

2    5,347,295 [hereinafter "Markman Order"].

3            The sections of the specification to which the Court's claim construction refers state

4    unequivocally that the disclosed digitizer is of a type that is mounted behind the display: "***Mounted***

5    ***behind the display is the pen position digitizer 20.***"  Micallef Decl., Ex. A at 82 ('295 Pat., at 6:21-

6    22) (emphasis added).  The specification also states that, as opposed to certain prior art designs, it is

7    desirable to mount the digitizer behind the screen in order to avoid contact between the digitizer and

8    the stylus and also to avoid the use of an additional transparent layer above the display:

9                Although in certain designs (such as those that have been available from Grid
              Systems Corporation and Linus Technologies, Inc.), resistive, transparent
10             digitizers have been mounted in front of the display, **it is desirable to use a
              digitizer which does not require contact with the stylus.  A digitizer
11             based on non-contacting technology can be mounted behind the display,
              and thus eliminates one transparent layer above the display.**

12

13   *Id.* at 82 ('295 Pat., at 6:53-60) (emphasis added).

14           Below is Figure 2 from the Agulnick patent which depicts pen position digitizer 20 mounted

15   behind the screen/display 10:[3]



Fig. 2

---

[3] Throughout the specification of the Agulnick patent, the terms "display" and "screen" are used
interchangeably to refer to the same structure (identified as 10 in Figures 2 & 3) located in front of
the pen position digitizer 20.  *See, e.g.*, Micallef Decl., Ex. A at 9, 82 ('295 Pat., at 6:20, 48, and
Fig. 3) (referring to the display 10); *and id.* at 83, 88 ('295 Pat., at 8:55, 17:14) (referring to the
screen 10).

- 3 -

Exhibit 16
Page 000251

1   Micallef Decl., Ex. A at 8.  As shown in the figure above, the stylus 4 can actually contact

2   the screen/display 10, because the digitizer 20 is mounted behind the screen/display 10.

3   The ability of the disclosed system to permit contact between the screen and the stylus was

4   highlighted during the prosecution of the Agulnick patent as distinguishing the invention from prior

5   art that included a front-mounted digitizer.  In particular, the claims were originally rejected under

6   35 U.S.C. § 103 as unpatentable over U.S. Patent No. 4,972,496 (the "Sklarew patent").  Micallef

7   Decl., Ex. C at 106-107 (Office Action dated November 11, 1991).  The Sklarew patent discloses an

8   apparatus for controlling a computer system with a pen-like object, called a "stylus," for entering

9   commands to a computer.  Micallef Decl., Ex. D at 127 (Sklarew Pat., at 1:18-23).  The system of

10  Sklarew includes an input screen 18—i.e., a digitizer—mounted on the front of display screen 20,

11  and expressly states that "[i]nput screen 18 is depicted in Fig. 2A as being positioned over display

12  screen 20."  *Id.* at 129 (Sklarew Pat., at 6:10-11).  Figure 2A of the Sklarew patent unmistakably

13  depicts input screen 18 mounted to the front of the display:



FIG. 2A

24  *Id.* at 112.

25  In response to this rejection, the applicants amended claim 1 to include a "first detecting

26  means coupled to the screen for detecting a stroke of the stylus tip in contact with the screen."

27  Micallef Decl., Ex. E at 152 (Amendment dated May 20, 1992).  They then argued that their

28

- 4 -

Exhibit 16
Page 000252

1   invention was distinguishable from the prior art because it included the ability to detect contact of

2   the stylus tip with the screen:

3           Claims 1 and 5 have been amended to clarify that the present invention has
        means **for detecting *both* proximity and contact of the stylus tip with the**
4       **screen.**  This is a very important distinction, leading to a *trilevel detection*
        *and actuation system.*  Thus, the system distinguishes among the following
5       three levels:

6               1. **stylus in contact with the screen**;
               2. stylus in proximity with the screen, but not in contact; and
7               3. stylus out of proximity with the screen.

8   *Id.* at 160 (emphases added).[4]

9           Similarly, the applicants amended claim 45 to include a "second detecting means for

10  detecting contact of the stylus with the screen," *id.* at 155, and argued that the ability to detect

11  contact between the screen and the stylus distinguished the invention from the prior art:

12          Claim 45 has been amended to present a combination of features which takes
        into account that two types of actions are implemented by the apparatus of
13      the invention: **those which take place due to contact of the stylus with the**
        **screen**, and those that take place when the stylus is in proximity to the
14      screen, but not in contact.  Claim 45 is now properly distinguishable from the
        cited references, no combination of which suggests this combination of
15      features.

16  *Id.* at 163 (emphasis added).

17          Later in the prosecution history, the applicants deleted all the pending claims and added new

18  claims.  However, each of the newly added claims included a means-plus-function element

19  performing the function of "detecting a stroke of the stylus tip <u>in contact with the screen</u>."  What

20  was added to overcome the first prior art rejection was retained in each one of the claims that

21  eventually issued in the Agulnick patent.

22

23  [4] They made a similar argument with respect to another prior art reference (the Cornett reference)
    cited by the Examiner:
24
25          These advantages of the function of preview targeting without actuation is a
        direct result of the claimed features in amended claims 1 and 5, **directed to**
26      **detection both of proximity without contact and of actual contact**, and the
        claimed combination is thus not suggested by Cornett, viewed alone or in
27      combination with the other cited references.

28  Micallef Decl., Ex. E at 161 (Amendment dated May 20, 1992) (emphasis added).

- 5 -

Exhibit 16
Page 000253

**B.    The Accused Products**

Lucent asserts that Dell infringes the Agulnick patent by making, using, selling and offering for sale its Axim® line of PDAs.  Dell has made and sold five different models of Axim® PDAs – X3, X5, X30, X50 and X5v.  Micallef Decl., Ex. F at 201-02 (Dell's Seventh Supplemental Response to Lucent's First Set of Interrogatories).  Each model includes a front-mounted digitizer. Micallef Decl., Ex. G at 224-25 (Dell's Second Supplemental Response to Lucent's Second Set of Interrogatories); Ex. H at 249 (Rebuttal Expert Report of John P.J. Kelly, Ph.D. Re Non-Infringement of United States Patent No. 5,347,295 [hereinafter "Kelly Rebuttal Rep."], at ¶ 55); Micallef Decl., Ex. I at 351-52 (DELL339939-40); Micallef Decl., Ex. T at 540-41 (DELL340101-02); Micallef Decl., Ex. J at 362 (LUC 1302234). Specifically, the Axims include a liquid crystal display ("LCD") on which is mounted a device called a "touch panel."  There is no dispute about this configuration of the accused products, as shown here in a figure from a technical specification from Dell's supplier:



Micallef Decl., Ex. I at 351-52 (DELL339939-40); Micallef Decl., Ex. T at 540-41 (DELL340101-02).

Accordingly, unlike the "pen position digitizer 20" claimed in the Agulnick patent, the accused Axims employ a front-mounted digitizer, similar to the prior art digitizers the inventors distinguished in the specification and also similar to the Sklarew digitizer the inventors distinguished during prosecution of the Agulnick patent.

**III.    APPLICABLE LEGAL STANDARD**

Summary judgment should be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). The federal rules mandate summary judgment "against a party who fails to make a showing

- 6 -

Exhibit 16
Page 000254

1     sufficient to establish the existence of an element essential to that party's case, and on which that

2     party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3     The initial burden is upon the moving party to establish the absence of genuine issues of material

4     fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where, as here, the

5     nonmoving party has the burden of proof at trial, the moving party need only point to a lack of

6     evidence and has no burden to disprove the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.

7          The non-moving party must then come forward with evidence demonstrating a genuine issue

8     as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is

9     challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to

10    *any* element of its case on which it bears the burden of proof at trial, the "plain language of Rule

11    56(c) mandates the entry of summary judgment." *Id.* at 322. "Summary judgment is as appropriate

12    in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,

13    911 F.2d 670, 672 (Fed. Cir. 1990).

14         Lucent has the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*,

15    833 F.2d 1551, 1557 (Fed. Cir. 1987). To establish infringement, Lucent must establish that the

16    accused products contain each and every element of the claim. *See S. Bravo Sys. v. Containment*

17    *Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). A means plus function limitation is literally met

18    when the accused product performs the identical function recited in the limitation and has a

19    structure that is identical or equivalent to the structure disclosed in the specification for performing

20    the claimed function. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d

21    1303, 1307-08 (Fed. Cir. 1998). If an accused structure existed at the time the patent is granted, a

22    finding of non-equivalence for means plus function analysis precludes a finding of equivalence

23    under a doctrine of equivalence analysis. *Id.* at 1311.

24    **IV.     ARGUMENT**

25          **A.     The Dell Axims Do Not Satisfy The Claimed Detecting Means, Either Literally**

26                 **or By Equivalence**

27          In order to literally satisfy a means-plus-function claim element, an accused device must

28    include structure that is identical or equivalent to the disclosed corresponding structure identified by

- 7 -

Exhibit 16
Page 000255

1   the Court.  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).  Here, the

2   digitizers in the accused Dell Axim PDAs are not identical to the disclosed "pen position digitizer

3   20" identified by the Court because the "pen position digitizer 20" is of the rear-mounted variety,

4   and the Dell Axim digitizers are front-mounted.  *Compare* Micallef Decl., Ex. A at 82 ('295 Pat., at

5   6:21-22) ("Mounted behind the display is the pen position digitizer 20.") *with* Micallef Decl., Ex. I

6   at 351-52 (DELL339939-40); Micallef Decl., Ex. T at 540-41 (DELL340101-02); Micallef Decl.,

7   Ex. G at 224-25 (Dell's Second Supplemental Response to Lucent's Second Set of Interrogatories).[5]

8   　　　The accused front-mounted digitizers also cannot be considered equivalent to the disclosed

9   "pen position digitizer 20" identified by the Court.  First, since mounting a digitizer on the front of

10  the screen is the very opposite of mounting it on the rear, as a matter of law the two cannot be

11  equivalent.  *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000)

12  ("[I]t would defy logic to conclude that a minority—the very antithesis of a majority—could be

13  insubstantially different from a claim limitation requiring a majority, and no reasonable juror could

14  find otherwise."); *see also Planet Bingo LLC v. Gametech Int'l, Inc.*, --- F.3d ---, 2006 WL

15  3615302, at *6 (Fed. Cir. Dec. 13, 2006) ("This court has refused to apply the doctrine [of

16

17

18  [5]　　Lucent may argue that every digitizer disclosed in the Agulnick patent is an alternative corresponding structure, but that would be contrary to what Lucent argued during the Markman hearing:

19

20  　　　While the stylus may touch the liquid crystal display, the display itself is not doing the detecting.  What's doing the detecting is the Number 20 underneath, and that's exactly wha the applicant told the patent office.

21  Micallef Decl., Ex K, at 373-74 (Markman Hearing on October 2, 2003, at 373:24-374:2).  In any

22  event, it is the Court's responsibility to construe the claims, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984 (Fed. Cir. 1995), and that responsibility includes the identification of structure that

23  corresponds to means-plus-function claim elements, *Chuiminatta*, 145 F.3d at 1308.  Here, the Court identified "pen position digitizer 20" as corresponding structure, and also identified the

24  specific portions of the specification which state that digitizer 20 is "mounted behind the display" and which disclaim the prior art front-mounted digitizer.  Micallef Decl., Ex. B at 93, 97, 99

25  (Markman Order).  Moreover, only structures that actually perform the claimed function qualify as corresponding structure under Section 112, paragraph 6.  *See B. Braun Medical, Inc. v. Abbott

26  Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).  Here, the claimed function requires "detecting a stroke of the stylus tip in contact with the screen" which front-mounted digitizers are incapable of

27  performing, since their placement in front of the screen precludes the stylus tip of ever coming into contact with the screen.  They therefore could not have qualified as corresponding structure to the

28  means elements underlying this motion.

- 8 -

Exhibit 16
Page 000256

1   equivalents] in other cases where the accused device contained the antithesis of the claimed

2   structure.").

3        But aside from that, the specification and file history clearly and unambiguously disavow

4   any such coverage. *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001);

5   *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1220 (Fed.Cir.1996).  The Agulnick patent

6   expressly states that the pen position digitizer is "mounted behind the display."  Micallef Decl., Ex.

7   A at 82 ('295 Pat., at 6:21).  According to the Agulnick patent the rear-mounted pen position

8   digitizer 20 is preferable to a front-mounted digitizer, because that would require an additional

9   transparent layer above the display.  *Id.* ('295 Pat., at 6:58-60).  Indeed, the use of front-mounted

10  digitizers with a transparent layer above the display creates difficulties for a user, a problem that the

11  Agulnick patent sought to overcome.  *See id* at 80. ('295 Pat., at 2:32-35) ("An additional problem

12  in accurate pointing with the stylus is the parallax caused by the separation of the surface that the

13  stylus tip contacts and the active layer of the display.").  Where structure is disclaimed in the

14  specification, the claims cannot later be extended to cover that structure as an equivalent.  *J&M*, 269

15  F.3d at 1368.[6]

16       Moreover, the claim language that is the subject of this motion was added to the claims to

17  overcome a rejection based on the prior art Sklarew patent.  Sklarew explicitly discloses a front-

18  mounted digitizer.  Micallef Decl., Ex. D at 127 (Sklarew Pat., at 1:18-23).  To overcome that

19  rejection, the applicants added the means-plus-function claim element directed to pen position

20  digitizer 20 and which expressly require the function of detecting contact between the screen and

21  the stylus.  Micallef Decl., Ex. E at 152 (Amendment dated May 20, 1992).  They then argued that

22  their claims were distinguishable from the prior art because they required detection of "actual

---

[6] *See also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that where specification disclosed carbon fibers as electrically conductive yet denigrated their applicability to the claimed invention, the patentee had disavowed that the claimed "electrically conductive fibers" covered carbon fibers); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("Having specifically identified, criticized, and disclaimed the dual lumen configuration, the patentee cannot now invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from the claims.'").

- 9 -

Exhibit 16
Page 000257

1   contact" between the stylus and the screen.  *Id.* at 160-61, 163.  They cannot now cover under a

2   theory of equivalence subject matter that they distinguished before the Patent Office.

3              As in all cases involving assertions of equivalency, wherein the
                patentee seeks to apply its [means-plus-function] claims to structures not
4              disclosed by the patentee, the court is required to exercise judgment.  If an
                applicant specifically distinguishes a structure from what is claimed during
5              prosecution, the applicant will be estopped from asserting a scope for the
                same claim that covers that structure.
6

7   *Alpex*, 102 F.3d at 1221 (brackets in original; citations omitted).[7]

8          Nor can Lucent proceed under a doctrine of equivalence theory.  First, the applicants were

9   plainly aware of front-mounted digitizers, but they drafted their claims to cover only rear-mounted

10  digitizers.  The applicants must be held to their choice and cannot now cover front-mounted

11  digitizers as an equivalent.  *See J&M*, 269 F.3d at 1369 ("Moreover, while Applicants were aware

12  of the possibility of [using] a single clamp, they dismissed such an approach and expressly

13  described and claimed accessories in which the boom and plug were separately mounted [*e.g.*, using

14  dual clamps].  J & M cannot now overlook this deliberate decision and reclaim this disclaimed

15  subject matter through the doctrine of equivalents.").

16         But even were that not so, because the applicants disclosed front-mounted digitizers in the

17  specification and did not claim them, Lucent is precluded from covering them under a doctrine of

18  equivalence theory by the disclosure dedication rule of *Johnson & Johnston Assocs*:

19             [W]hen a patent drafter discloses but declines to claim subject matter,
                as in this case, this action dedicates that unclaimed subject matter to the
20             public.  Application of the doctrine of equivalents to recapture subject matter
                deliberately left unclaimed would "conflict with the primacy of the claims in
21             defining the scope of the patentee's exclusive right."  *Sage Prods. Inc. v.
                Devon Indus., Inc.*, 126 F.3d 1420, 1424,  44 USPQ2d 1103, 1107 (Fed. Cir.
22             1997) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
                520 U.S. 17, 29 (1997)); *see also Conopco, Inc. v. May Dep't Stores Co.*, 46
23             F.3d 1556, 1562, 32 USPQ2d 1225, 1228 (Fed. Cir. 1994) ("The doctrine of
                equivalents cannot be used to erase 'meaningful structural and functional
24             limitations of the claim on which the public is entitled to rely in avoiding
                infringement.'" (internal citations omitted)); *Charles Greiner & Co. v. Mari-*
25
_____
26  [7] *See also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir.
    2001) ("When a patentee advises the examiner (and the public after patent issuance) that a particular
27  structure is not within his invention, the patentee is not permitted to assert in a subsequent
    infringement action that the same structure is equivalent to the structure described in the patentee's
28  specification for purposes of section 112 paragraph 6.").

- 10 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,347,295

Exhibit 16
Page 000258

1    *Med Mfg., Inc.*, 962 F.2d 1031, 1036 (Fed. Cir. 1992) ("Most important,
     however, a court must, in applying the doctrine, avoid significant conflict
2    with the fundamental principle that claims define the limits of patent
     protection.").

3          Moreover, a patentee cannot narrowly claim an invention to avoid
     prosecution scrutiny by the PTO, and then, after patent issuance, use the
4    doctrine of equivalents to establish infringement because the specification
     discloses equivalents. "Such a result would merely encourage a patent
5    applicant to present a broad disclosure in the specification of the application
     and file narrow claims, avoiding examination of broader claims that the
6    applicant could have filed consistent with the specification." *Maxwell v. J.
     Baker, Inc.*, 86 F.3d 1098, 1107 (1996) (citing *Genentech, Inc. v. Wellcome
7    Found. Ltd.*, 29 F.3d 1555, 1564, 31 USPQ2d 1161, 1167 (Fed. Cir. 1994)).

8    *Johnson & Johnston, Assocs., Inc. v. R.E. Service Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002).

9          Since every claim of the Agulnick patent has been construed to require the rear-mounted

10   "pen position digitizer 20" and no claim of the Agulnick patent recites a front-mounted digitizer,

11   Lucent has dedicated the use of front-mounted digitizers to the public and may not cover their use

12   by the doctrine of equivalence.

13         Moreover, because the applicants added these particular means-plus-function claim elements

14   to overcome a prior art rejection by the Examiner, Lucent is presumptively estopped from relying

15   on the doctrine of equivalence to satisfy these limitations. *Festo Corp. v. Shoketsu Kinzoku Kogyo*

16   *Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003). It cannot rebut that presumption. Front-

17   mounted digitizers were clearly foreseeable, since they were disclosed in the prior art and

18   distinguished in the specification itself. Nor is a front-mounted digitizer tangential to the reasons

19   for the amendment, since the Sklarew patent they were attempting to distinguish with the

20   amendment included such a digitizer and the ability to detect "actual contact" between stylus and

21   screen was at issue during prosecution.

22         Although we cannot anticipate the instances of mere tangentialness that may
           arise, **we can say that an amendment to avoid prior art that contains the**
23         **equivalent in question is not tangential**; it is central to the allowance of the
           claim.
24

25   *Festo Corp.*, 344 F.3d at 1369 (emphasis added); *see also Talbert Fuel Sys. Patents Co. v. Unocal*

26   *Corp.*, 347 F.3d 1355, 1360 (Fed. Cir. 2003) ("The boiling range and carbon content were at issue

27   during prosecution, and were the direct, not tangential, reason for the narrowing amendments to

28   these claim limitations."); *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F3d 1296, 1306

                                                    - 11 -

Exhibit 16
Page 000259

1    (2005).  Nor is there any other reason that Lucent can identify to rebut the presumption against it.

2    Lucent is therefore estopped from relying on the doctrine of equivalence to satisfy this requirement

3    of the claims.

4          Accordingly, Dell is entitled to summary judgment that its Axim PDAs do not infringe

5    because as matter of law the Axim's do not include any structure that may be considered equivalent

6    to pen position digitizer 20.

7    **B.    Dell's Axim PDAs Do Not Perform the Function of Detecting The Stylus In Contact With The Screen**

8

9          **1.    The Dell Axims Do Not Literally Perform The Claimed Function**

10          In order for an accused device to literally satisfy a means-plus-function claim element it

11   must perform the <u>identical</u> function specified in the claim.  "Literal infringement of a § 112 ¶ 6

12   claim requires that the relevant structure in the accused device perform <u>the identical function</u> recited

13   in the claim and be identical or equivalent to the corresponding structure in the specification."

     *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) (emphasis added).

14

15          Each asserted claim, however, includes a mean-plus-function claim element requiring

16   structure for performing the function of "detecting a stroke of the stylus tip <u>in contact with the</u>

17   <u>screen</u>."  But it is impossible for the accused Dell Axims to satisfy this functional limitation because

18   their digitizer is placed in front of the screen, precluding the stylus from ever coming into contact

19   with the screen.  The Axims are therefore incapable of literally performing the identical function of

20   "detecting a stroke of the stylus tip in contact with the screen" And Dell is entitled to summary

21   judgment of no direct infringement on that basis.

22          **2.    As A Matter of Law The Dell Axims Do Not Perform An Equivalent Function**

23          Dell is also entitled to summary judgment that it does perform the claimed function under

24   the doctrine of equivalence because Lucent has failed to come forward with any allegation,

25   evidence or argument with respect to equivalence.  *See Lear Siegler, Inc. v. Sealy Mattress Co.*, 873

26   F.2d 1422, 1425 (Fed. Cir. 1989) ("The party asserting infringement must present "*evidence* and

27   *argument* concerning the doctrine [of equivalence] and *each* of its *elements.*  The evidence and

28   argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal

                                        - 12 -

Exhibit 16
Page 000260

infringement.") (emphasis in original).  Neither Lucent's infringement claim charts nor its expert's report contain evidence and argument concerning an equivalence analysis with respect to this limitation.  Micallef Decl., Ex. L at 383 (Lucent's Seventh Supplemental Response to Interrogatory No. 2 from Microsoft, Dell, and Gateway, Attachment C at 174).  Lucent simply has not appropriately asserted infringement under the doctrine of equivalence and should not be permitted to do so now.  Dell is entitled to summary judgment on the equivalence issue on that basis alone.

But even if Lucent were permitted to proceed under the doctrine, Lucent cannot rely on the doctrine of equivalence to satisfy the required function of "detecting a stroke of the stylus tip in contact with the screen" because, as a matter of law, Lucent has dedicated use of front-mounted digitizers to the public and is estopped from asserting the doctrine of equivalence over such digitizers.

As noted above, the Agulnick patent discloses but does not claim front-mounted digitizers that preclude contact between the stylus and the screen.  The doctrine of equivalence can not therefore be used to cover such digitizers.  *Johnson & Johnston Assocs.*, 285 F.3d at 1054-55.

Further, detecting a stylus in contact with a front-mounted digitizer—instead of in contact with the screen—was disclosed in the prior art Sklarew patent and specifically distinguished by amendments made to the claims of the Agulnick patent during prosecution.  Lucent is therefore presumptively estopped from relying of the doctrine of equivalence, *Festo Corp.*, 344 F.3d at 1366, and cannot rebut that presumption for the reasons stated above.

Accordingly, as a matter of law, Lucent may not rely on the doctrine of equivalence to satisfy the functional limitations of the claims requiring "detecting a stroke of the stylus tip in contact with the screen."

Dell is therefore entitled to summary judgment of non-infringement by the accused Axim PDAs for this reason as well.

### C. Dell Is Entitled to Summary Judgment of Non-Infringement With Respect to the Palm-Based PDAs That It Has Sold

In addition to the Axim PDAs, Lucent has also accused Dell of infringing the Agulnick patent by reselling PDAs made by third parties.  As with Dell's Axim PDAs, however, Lucent who

- 13 -

Exhibit 16
Page 000261

1    has the burden of coming forward with evidence to show that these other third party-manufactured

2    PDAs perform the identical function of "detecting a stroke of the stylus tip in contact with the

3    screen" and have a digitizer that is structurally identical or equivalent to digitizer 20.  Lucent,

4    however, has failed to come forward with any evidence, either in its interrogatory contentions or its

5    expert's report, to show the structure of the digitizers used in these other accused devices.  Because

6    of this failure, Dell is also entitled to summary judgment of non-infringement with respect all of the

7    PDAs manufactured by third parties that it has sold.  *See Celotex*, 477 U.S. at 325.

8    **V.    CONCLUSION**

9         Accordingly, for the reasons stated above Defendant Dell Inc. respectfully requests entry of

10   summary judgment that it does not infringe the Agulnick patent.

11

12   Dated: January 26, 2007                      ARNOLD & PORTER LLP
                                                   McDERMOTT WILL & EMERY LLP
13
14                                                        Attorneys for Dell Inc.
                                                   By:    /s/Joseph A. Micallef    _____
15
                                                          Joseph A. Micallef
16                                                        E-mail: joseph.micallef@aporter.com

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

Exhibit 16
Page 000262