# SCHMIDT DECLARATION

# EXHIBIT 17

1  James S. Blackburn (State Bar No. 169134)
   ARNOLD & PORTER LLP
2  777 South Figueroa Street, 44th Floor
3  Los Angeles, California  90017-5844
   Telephone:  (213) 243-4000
4  Facsimile:  (213) 243-4199

5  Joseph A. Micallef (admitted *pro hac vice*)
   ARNOLD & PORTER LLP
6  555 Twelfth Street, N.W.
7  Washington, D.C.  20004-1206
   Telephone:  (202) 942-5000
8  Facsimile:  (202) 942-5999

9  Joel M. Freed (admitted *pro hac vice*)
   McDERMOTT WILL & EMERY LLP
10 600 13th Street, N.W.
11 Washington, D.C.  20005-3096
   Telephone:  (202) 756-8000
12 Facsimile:  (202) 756-8087

13 Attorneys for *Dell Inc.*

14

15              **UNITED STATES DISTRICT COURT**

16            **SOUTHERN DISTRICT OF CALIFORNIA**

17 LUCENT TECHNOLOGIES INC. and          ) Case No. 02-CV-2060 B (CAB)
   MULTIMEDIA PATENT TRUST,               ) consolidated with Case No. 03-CV-0699 B
18                                         ) (CAB) and Case No. 03-CV-1108 B (CAB)
        Plaintiffs and Counterclaim-defendants, )
19                                         ) **MEMORANDUM OF POINTS AND**
     v.                                    ) **AUTHORITIES IN SUPPORT OF**
20                                         ) **MOTION OF DELL INC. FOR**
   GATEWAY, INC. AND GATEWAY              ) **SUMMARY JUDGMENT OF NON-**
21 COUNTRY STORES LLC, GATEWAY           ) **INFRINGEMENT ON THE ASSERTED**
   COMPANIES, INC., GATEWAY              ) **CLAIMS OF U.S. PATENT NO. 4,439,759**
22 MANUFACTURING LLC and                 ) **TO FLEMING, ET AL.**
   COWABUNGA ENTERPRISES, INC.,          )
23                                         ) Judge Rudi M. Brewster
        Defendants and Counter-claimants,  )
24                                         ) Hearing:  May 4, 2007, 9:00 a.m.
   and                                     ) Location:  Courtroom 2, 4th Floor
25                                         )
   MICROSOFT CORPORATION,                 )
26                                         )
        Intervener and Counter-claimant,   )
27 _____)

28

---

Exhibit 17
Page 000263

| | |
|---|---|
| MICROSOFT CORPORATION, | ) |
| Plaintiff and Counter-defendant, | ) |
| v. | ) |
| LUCENT TECHNOLOGIES, INC., | ) |
| Defendant and Counter-claimant, | ) |
| | ) |
| LUCENT TECHNOLOGIES, INC. and MULTIMEDIA PATENT TRUST, | ) |
| Plaintiffs and Counterclaim-defendants, | ) |
| v. | ) |
| DELL INC., | ) |
| Defendant and Counter-claimant. | ) |

Exhibit 17
Page 000264

1

**TABLE OF CONTENTS**

2

3                                                                                                    <u>Page</u>

4    I.      INTRODUCTION ..................................................................................................1

5    II.     UNDISPUTED FACTUAL BACKGROUND..................................................5

6            A.     The Specification of Fleming Patent..............................................5

7            B.     The Claims of the Fleming Patent...................................................7

8            C.     The Prosecution History of the Fleming Patent ............................8

9            D.     The Accused Systems .....................................................................10

10   III.    APPLICABLE LEGAL STANDARD..............................................................11

11   IV.     ARGUMENT .......................................................................................................14

12           A.     The Accused Systems Are Not Responsive To A Sequence, or Pattern,
13                  That Has A Known Encoded Meaning .........................................14

14           B.     The Accused Systems Do Not Satisfy The Structural Requirements of the
                    Claimed Processing Means .............................................................15

15                 1.      Lucent Has Not Identified any Structure that Satisfies the Claims
16                        or Compared such Structure to the Corresponding Structure ......................16

17                 2.      The Claimed Processing Means Cannot Cover After-Developed
                          Technology as a Matter of Law ......................................................18

18           C.     As a Matter of Law Lucent May Not Rely on the Doctrine of Equivalents .............19

19                 1.      Lucent Has Not Provided a Legally Sufficient Equivalents
20                        Analysis............................................................................................19

21                 2.      Lucent's Theory of Equivalence Would Vitiate the "Sequence"
                          Requirement .....................................................................................20

22                 3.      Amendment-Based Estoppel Forecloses Reliance on Equivalents.................21

23   V.      CONCLUSION ...................................................................................................23

24

25

26

27

28

- i -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,439,759 TO FLEMING, ET AL.

Exhibit 17
Page 000265

1

# TABLE OF AUTHORITIES

2

3    Page(s)

**CASES**

4
*Alpex Computer Corp. v. Nintendo Co.*,
5       102 F.3d 1214 (Fed. Cir. 1996).................................................................... 3, 13, 17

*Al-Site Corp. v. VSI Int'l, Inc.*,
6       174 F.3d, 1308 (Fed. Cir. 1999)......................................................................... 3, 18

7
*AquaTex Industries, Inc. v. Techniche Solutions*,
8       No. 2006-1407 (Fed. Cir. Feb. 27, 2007)................................................... 4, 19, 20

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
9       423 F.3d 1296 (Fed. Cir. 2005)................................................................................ 23

10
*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
11       911 F.2d 670 (Fed. Cir. 1990).................................................................................. 8

*Celotex Corp. v. Catrett*,
12       477 U.S. 317 (1986)................................................................................................... 8

13
*Cytologix Corp v. Ventana Med. Sys., Inc.*,
14       424 F.3d 1168 (Fed. Cir. 2005).................................................................... 3, 13, 17

*Dawn Equip. Co. v. Kentucky Farms Inc.*,
15       140 F.3d 1009 (Fed. Cir. 1998).................................................................................. 8

16
*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
17       535 U.S. 722 (2002).................................................................................................. 13

*Festo Corp. v. Shoketsu Kinzoku Kogyu Kabushiki Co., Ltd.*,
18       344 F.3d 1359 (Fed. Cir. 2003).................................................................. 13, 22, 23

19
*Freedman Seating Co. v. American Seating Co.*,
20       420 F.3d 1350 (Fed. Cir. 2005)........................................................................ 14, 20

*Graver Tank Mfg. Co. v. Linde Air Products Co.*,
21       339 U.S. 605 (1950).................................................................................................. 19

22
*Harris Corp. v. Ericsson Inc.*,
23       417 F.3d 1241 (Fed. Cir. 2005).............................................................................. 13

*IPPV Enters., LLC v. Echostar Commc'ns Corp.*,
24       106 F. Supp.2d 595 (D. Del. 2000) ........................................................................ 18

25
*Int'l Rectifier Corp. v. IXYS Corp.*,
26       361 F.3d 1363 (Fed. Cir. 2004)................................................................................. 8

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
27       873 F.2d 1422 (Fed. Cir. 1989)......................................................................... 4, 19

28

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,439,759 TO FLEMING, ET AL.

Exhibit 17
Page 000266

*Medtronic Minimed Inc. v. Smiths Med. Inc.*,
   373 F. Supp.2d 466 (D. Del. 2005) ...................................................................... 18

*S. Bravo Sys. v. Containment Techs. Corp.*,
   96 F.3d 1372 (Fed. Cir. 1996) ............................................................................... 8

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ............................................................................. 8

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
   347 F.3d 1355 (Fed. Cir. 2003) ........................................................................... 22

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ................................................................... 4, 19, 20

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ..................................................................... 14, 21

*Under Sea Indus., Inc. v. Dacor Corp.*,
   833 F.2d 1551 (Fed. Cir. 1987) ............................................................................. 8

*WMS Gaming Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999) ........................................................... 2, 13, 15, 17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ......................................................................................... 4, 14, 20

**STATUTES AND RULES**

35 U.S.C. § 112, ¶ 6 ......................................................................................... *passim*

Fed. R. Civ. P. 56(c) ...................................................................................... 11, 12

- iii -

Exhibit 17
Page 000267

## I.    INTRODUCTION[1]

The asserted claims of U.S. Patent No. 4,439,759 to Fleming, et al. ("the Fleming patent")
require that a "processing means" be responsive to a "predetermined command and data *sequence*"
to select a color mode.  The Court has construed the phrase "predetermined command and data
sequence" to mean "a command and data *pattern* having a known encoded meaning."  Thus, while
all computer systems are, of course, responsive to both commands and data, in the claimed system it
is the *pattern* of commands and data, and not just the individual commands and data, that must have
a known encoded meaning to which the claimed processing means responds.

In the sole embodiment described in the specification of the Fleming patent, the color mode
is determined based on the *number* of operands (*i.e.*, pieces of data) following the opcode (*i.e.*,
command) for selecting the color mode:

> In particular at box 402, the first data operand is recovered if possible.
> If a [sic] box 403 an operand is located, another attempt is made at box 404 to
> locate a second operand.  If at box 407 a second operand is found, the color
> mode of access is set at box 411 to mode 2.  **In other words, the color mode
> is determined by the number of operands following the opcode for
> selecting the mode of access.**  Accordingly, when no operands are found, the
> color mode is set at box 405 to mode 0.  If one operand is found, the color
> mode is set at box 408 to mode 1.

Declaration of Joseph A. Micallef in Support of Motion of Dell Inc. for Summary Judgment of
Non-Infringement on the Asserted Claims of U.S. Patent No. 4,439,759 to Fleming, et al. ("Micallef
Decl."), Ex. A at 21 (Fleming Patent at col. 6, lines 33-43) (emphasis added).  Thus, to select a
color mode in the disclosed system, the processing means responds to whether the operands exist
and how many there are.  In other words, the mode is selected in response to the sequence (pattern),
not as a consequence of the specific operand data.

In contrast, the infringement claim by Lucent Technologies Inc. ("Lucent") is based on
response by a processor to what the specific operand data is, not to any meaning encoded in the
sequence or pattern of commands and data employed.  In this connection Lucent focuses on several
examples of commands and data that can be used in Dell's computer systems to affect color, but

---

[1] Defendant Gateway, Inc. joins Dell in this motion.

Exhibit 17
Page 000268

1    there is no evidence that the *pattern* of the accused commands and data has a known encoded

2    meaning – based on pattern variance or otherwise – to which the systems respond.  Rather, the

3    mode that Lucent says is selected is based on what a specific operand is (*i.e.*, based on the meaning

4    of the specific data values for the operand).  Dell's expert has pointed out that in the accused

5    systems the "color mode" is thus selected by the meaning of the individual commands and data

6    employed.  Lucent's expert has not and cannot dispute that point, even agreeing that the accused

7    commands are always provided with the same pattern of data parameters.  *See* Micallef Decl., Ex. B

8    at 33 (Richter Depo. Tr. at 96:7-21); *see also id.* at 38 (Richter Depo. Tr. at 151:10-13) ("I think I

9    kind of answered this one for you already when I explained that those three functions each take two

10   data parameters.").

11          Accordingly, because the accused computer systems do not respond to any known encoded

12   meaning of the sequence, or pattern, of commands and data, they do not satisfy the requirements of the

13   claims, and Dell is entitled to summary judgment of no literal infringement on that ground alone.

14          But there are also other grounds for such a judgment.  In particular, Lucent also has no

15   evidence to show that the accused systems satisfy the structural requirements of the claimed

16   "processing means."  The Court has interpreted that claim element to be a means-plus-function

17   element subject to the limiting effects of 35 U.S.C. § 112, ¶ 6.  Pursuant to that statute, the Court

18   identified the corresponding structure for the processing means to be a data processor programmed

19   with the software algorithms disclosed in the specification, including the algorithm that selects a

20   color mode in response to the number of data operands following a predetermined mode selection

21   command.  Micallef Decl., Ex. C at 55-58 (Markman Order).  In order to show that the claimed

22   "processing means" was satisfied, Lucent was accordingly required to present evidence identifying

23   a structure in the accused system that performs the claimed functions and that is identical or

24   equivalent to the software algorithms identified by the Court as corresponding structure.  *See WMS*

25   *Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999).

26          Lucent has never identified any programming of the accused systems that responds to the

27   accused commands and data and has never compared any such structure to the corresponding structure

28   identified by the Court.  Instead, Lucent's expert refers only to "the processor and BIOS or Windows"

Exhibit 17
Page 000269

1  without ever providing any further details about what portion of that BIOS software or Windows

2  operating system software allegedly satisfies the claims.  Like all computers, Dell's computer systems

3  respond to commands and data.  But that response is provided by software algorithms running on the

4  accused computer systems.  Lucent's failure to actually examine the source code of the accused

5  systems – source code that was made available to Lucent during discovery – and to identify and

6  analyze the software algorithms that allegedly provide the claimed functionality requires entry of

7  summary judgment for Lucent's failure to carry its burden under § 112, ¶ 6.

8        Indeed, the only real analysis performed by Lucent's expert is limited to the identification of

9  certain commands and data that may be used with the accused computer systems and a general

10  description of the functionality those commands and data may provide.  A functional analysis of the

11  commands and data themselves, however, is not sufficient to satisfy Lucent's burden under § 112, ¶

12  6.  *See Cytologix Corp v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005) ("To

13  establish infringement under § 112, ¶ 6, it is insufficient for the patent holder to present testimony

14  'based only on a functional, not a structural, analysis.'") (quoting *Alpex Computer Corp. v.

15  Nintendo Co.*, 102 F.3d 1214, 1222 (Fed. Cir. 1996)).

16        Moreover, even if Lucent had actually identified and analyzed the programming that

17  responds to the commands and data it accuses, Lucent would still not be able to avoid summary

18  judgment of no literal infringement because the technology that Lucent accuses was developed after

19  the issuance of the Fleming patent.  Means-plus-function claim elements cannot be satisfied by

20  after-developed technology:

21        As this court has recently clarified, a structural equivalent under § 112 must
22  have been available at the time of the issuance of the claim.  An equivalent
   structure or act under § 112 cannot embrace technology developed after the
23  issuance of the patent because the literal meaning of a claim is fixed upon its
   issuance.  An "after arising equivalent" infringes, if at all, under the doctrine
24  of equivalents.

25  *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d, 1308 1320 (Fed. Cir. 1999) (citations omitted).

26  Accordingly, as a matter of law Lucent cannot show literal infringement, and Dell is entitled to

27  summary judgment on these bases as well.

28

- 3 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,439,759 TO FLEMING, ET AL.

Exhibit 17
Page 000270

1    Finally, Lucent also cannot prevail here on the doctrine of equivalents for several reasons.

2    First, Lucent has failed to even attempt to present the detailed equivalence analysis required by the

3    Federal Circuit.  Lucent's expert provides no analysis of the doctrine whatsoever, and no other

4    opinions that could be supportive of such an argument beyond a statement, without explanation, that

5    any differences are "insubstantial" and that the same function is being performed.  He never

6    identifies any portion of the software running on the accused systems, never discusses whether the

7    "way" it operates is substantially the same as the way in which the disclosed corresponding

8    structure operates, and never discusses the results achieved by either.  Lucent has failed to provide

9    the "particularized testimony and linking argument" required by the Federal Circuit for a patentee to

10   proceed on a case under the doctrine of equivalents.  *See AquaTex Industries, Inc. v. Techniche*

11   *Solutions*, No. 2006-1407, 2007 WL 582392 at *2 (Fed. Cir. Feb. 27, 2007); *Texas Instruments, Inc.*

12   *v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *Lear Siegler, Inc. v. Sealy*

13   *Mattress Co.*, 873 F.2d 1422, 1426 (Fed. Cir. 1989).

14   But even if Lucent had performed the required analysis, it could not avoid summary judgment

15   of no infringement under the doctrine of equivalents.  Lucent's theory that processor response to

16   specific commands and specific operand data is equivalent to processor response to the encoded

17   meaning of the *pattern* of commands and data would read the word "sequence" right out of the claims

18   and the word "pattern" out of the Court's claim interpretation.  "It is important to ensure that the

19   application of the doctrine [of equivalents], even as to an individual element, is not allowed such

20   broad play as to effectively eliminate that element in its entirety."  *Warner-Jenkinson Co. v. Hilton*

21   *Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  Because resort to the doctrine of equivalents here would

22   vitiate the claim word "sequence," Lucent may not, as a matter of law, proceed on that theory.

23   Moreover, the processing means elements of the claims were amended during prosecution of

24   the Fleming patent to include the very requirements that the accused systems lack, and Lucent

25   argued that those requirements distinguished the claims over the prior art cited by the Examiner.

26   Lucent is therefore estopped from relying on the doctrine of equivalents here.

27   For all the foregoing reasons, Dell is entitled to a judgment as a matter of law that it does not

28   infringe the asserted claims of the Fleming patent.

- 4 -

Exhibit 17
Page 000271

1    **II.    UNDISPUTED FACTUAL BACKGROUND**

2        **A.    The Specification of Fleming Patent**

3            The Fleming patent is directed to a terminal-independent color scheme that permits systems

4    having varying color capabilities to receive common input information and provide a color display

5    that, within the system's capabilities, most closely matches the input color information.  Micallef

6    Decl., Ex. A at 19 (Fleming Patent at col. 1, lines 49-65).  The Background of the patent states that

7    different prior art systems employed different "methods" of accessing color information stored in

8    memory, and that therefore each system was able to respond to input information encoded for that

9    type of system.  *Id.* at 19 (col. 1, lines 11-46).  The "terminal independence" of the Fleming patent

10   is provided by a software algorithm that responds to the encoded sequence (pattern) of commands

11   and data to select the method of accessing color information – called the "color mode" – that will

12   create the output that most closely matches the input information.[2]

13           Specifically, the color mode selection algorithm counts the number of data parameters

14   (operands) following the particular command (opcode) and selects the color mode based on the

15   number of data parameters present.  The algorithm disclosed in the Fleming patent for performing

16   this functionality is depicted in Figures 3 and 4 and described in the accompanying text, all of

17   which the Court has identified as corresponding structure to the claimed "processing means."  For

18   example, Figure 3 depicts the portion of the algorithm that responds to the "predetermined

19   command" – see box 302 below – in order to cause the system to enter a color mode selection

20   algorithm, shown as box 303:[3]

21

22

---

23   [2] The claims use the phrases "mode of access to color data values" and "mode of access to the color
     memory," and the Court has interpreted the phrase "mode of access" to mean a "manner of
24   retrieving."  Micallef Decl., Ex. C at 61 (Markman Order).  The "modes" therefore do not refer to
     the actual color employed, but instead to the "manner of retrieving" color information.  We use the
25   phrase "color mode" in this motion as shorthand for those modes.

26   [3] The specification uses the term "opcode" to refer to a command.  Micallef Decl., Ex. A at 21
     (Fleming Patent at col. 6, line 1-2) ("The commands will be hereinafter referred to as opcodes.").
27   During prosecution the applicants informed the Examiner that the two terms "are used
     interchangeably."  Micallef Decl., Ex. D at 65 (08/10/1981 Preliminary Amendment).  We therefore
28   use the phrase interchangeably as well.

Exhibit 17
Page 000272

1



FIG. 3

2
3
4
5
6
7
8
9

10      As the Fleming patent describes box 302, "[a]t decision box 302, the data processor 1

11 determines if the opcode entered is one for selecting a mode of color memory access. At box 303,

12 transfer is effected to the algorithm for the mode selection process shown in FIG. 4 if there is a

13 match." Micallef Decl., Ex. A at 21 (Fleming Patent at col. 6, ll. 7-12). Thus, the disclosed data

14 processor first responds to a particular, or "predetermined," command (opcode) by transferring

15 control of the processor to the algorithm for the mode selection process.

16      As indicated in the quote above, Figure 4 of the patent depicts the algorithm for the mode

17 selection process. In the disclosed embodiment there are three possible color modes that can be

18 selected. The selection is made in response to the *number* of data operands following the

19 "predetermined command" (opcode), namely the color mode selection command. For example, a

20 first mode is selected when **no data operands** follow the color mode selection command; a second

21 mode is selected when **one data operand** follows the color mode selection command; and a third

22 mode is selected when **two data operands** follow the color mode selection command. As the

23 specification of the patent puts it, "[i]n other words, the color mode is determined by the number of

24 operands following the opcode for selecting the mode of access." Micallef Decl Ex. A. at 21

25 (Fleming Patent at col. 6, lines 38-40). Figure 4, shown below, shows this counting of the number

26 of operands (referred to as OPND 1, and OPND 2) in the data sequence:

27

28

Exhibit 17
Page 000273



*FIG. 4*

It should be noted that the data parameters disclosed in the Fleming patent – *i.e.*, the "operands" that are counted – are themselves color data (*i.e.*, digital codes that identify a specific color either by RGB information or an index into a color memory). *See, e.g.,* Micallef Decl., Ex. A at 21 (Fleming Patent at col. 5, lines 33-42; col. 7, lines 1-11). This is evident, for example, from boxes 409, 413, and 414 in Figure 4 above, where the foreground and background colors are actually set to the value of the operands. Thus, in the system disclosed in the Fleming patent the encoded meaning of the individual operands is simply a color. Selection of the color *mode*, which the Court has construed to mean a "manner of retrieving" color information, Micallef Decl., Ex. C at 61 (Markman Order), is not in response to the meaning of these operands, but in response to the meaning of the pattern of operands that are provided (*i.e.*, whether there are none, one, or two).

B.      **The Claims of the Fleming Patent**

Each of the asserted claims of the Fleming patent requires a processing means that is "responsive to a predetermined command and data sequence." *See* Micallef Decl., Ex. C at 55-59 (Markman Order). The processing means of independent claim 1 performs the function of "decoding the predetermined command and data sequence, the predetermined command and data sequence selecting one of a plurality of modes of access to color data values," and the processing

- 7 -

Exhibit 17
Page 000274

means of independent claim 2 performs the function of "selecting a mode of access to the color

memory" and "setting a color data value in the color memory." *Id.* at 55, 57. Both of these

processing means elements have been construed as subject to 35 U.S.C. § 112, ¶ 6. *See id.* And the

Court has identified the disclosed corresponding structure of both to include a data processor

programmed with the specific algorithm disclosed in the specification for selecting a color mode,

including the steps depicted in Figure 3 and 4 above, as follows:

> Data processor 1 programmed to perform the algorithm of boxes 301, 302,
> and 303 of Figure 3 and boxes 401, 402, 403, 404, 405, 407, 408, and 411 of
> Figure 4 (*See*, Col.5, line 60 - Col.6, line 19, Col.6, lines 20-23 (except for
> "and for setting foreground and background in-use colors for two of these
> modes"), lines 24-29, 29-32 (except for "and the background and foreground
> color"), lines 33-43).

*Id.* at 56, 57-58. The algorithm identified by the Court as corresponding structure therefore includes

the selection of a color mode in response to a predetermined color mode selection command (as

shown, for example in boxes 301, 302, and 303 of Figure 3) and the number of data operands that

follow it (as shown, for example, in boxes 401, 402, 403, 404, 405, 407, 408, and 411 of Figure 4).

*See* Micallef Decl., Ex. A at 21 (Fleming Patent at col. 5, line 60 - col. 6, line 43).

C.    **The Prosecution History of the Fleming Patent**

As originally filed with the Patent Office, the claims of the Fleming patent recited a different

"processing means" than they now recite. Specifically, the originally filed claims required only a

processing means that performed the function of "providing inter-system compatibility with

systems equipped with similar processing means for accessing color value data," as shown in

original application claim 1:

> 1. In a digital image system, processing means, responsive to a
> predetermined command and data sequence comprising at least one
> command, the processing means providing inter-system compatibility with
> systems equipped with similar processing means for accessing color value
> data stored in color memory among a plurality of known modes of access to
> color value data.

Micallef Decl., Ex. E at 92 (Original application).

In an originally filed dependent claim – application claim 3 – the processing means further

required, *inter alia*, means for setting the color mode:

- 8 -

Exhibit 17
Page 000275

3. Processing means as recited in claim 1 or 2 comprising:

means, responsive to a first command, for setting the mode of color memory access; and

means, responsive to a second command, for setting a color data value in color memory for use.

*Id.*

These claims were rejected by the Examiner on several bases, including for being obvious in view of U.S. Patent No. 4,342,029 to Hofmanis, et al. (the "Hofmanis patent"). Micallef Decl., Ex. F at 100-01 (10/01/1982 Office Action). The Hofmanis patent is entitled "Color Graphics Display Terminal" and discloses a system that operates in two modes, a "graphics mode" and an "edit mode." Micallef Decl., Ex. G at 108 (Hofmanis Patent at col. 2, lines 37-56). The disclosed system was responsive to "[d]ata and control commands (such as mode change) [that] are entered into the terminal via a keyboard." *Id.* at 102 (Abstract) (parenthetical in original). The Hofmanis patent states that:

Depending on the control commands and data entered via the keyboard 300, and the requirements of the particular test being conducted by the automatic test station, the visual output appearing on the face of the color monitor 200 may be in alphanumeric and/or graphic format.

*Id.* at 109 (Hofmanis Patent at col. 3, ll. 58-63).

In response to the rejection, the applicants amended claim 1 to require that the processing means perform the functions of "decoding the predetermined command and data sequence" and "selecting one of a plurality of modes of access to color data values," among other amendments. Micallef Decl., Ex. H at 115 (01/31/1983 Amendment).

Application claim 3 (which issued as claim 2 of the patent) was also amended in various ways, including the requirement that the processing means be "responsive to predetermined command and data sequences," and responsive to a first command for "selecting" a mode of color memory access. *Id.* at 115-16. Claim 3 was also rewritten into independent form. *Id.*

The Examiner again rejected the claims, among other reasons, as obvious in view of the Hofmanis patent. Micallef Decl., Ex. I at 128 (05/02/1983 Office Action). The applicants responded again with further amendments, but also with a more detailed argument with respect to Hofmanis.

- 9 -

Exhibit 17
Page 000276

1    Micallef Decl., Ex. J at 137-38 (07/27/1983 Amendment).  In particular, the applicants argued that the

2    prior art Hofmanis patent does not teach a processing means that is responsive to "predetermined

3    command and data sequences" and that selects a color mode in response to a first command:

4            Nor does the teaching of Hofmanis lead one to provide, as recited in amended
             claim 3, processing means responsive to predetermined command and data
5            sequences, the processing means, responsive to a first command, selecting a
             mode of color memory access and responsive to a second command, setting a
6            color data value in color memory.

7    *Id.*

8            The claims were again rejected, and yet again the applicants asserted additional arguments.

9    Micallef Decl., Ex. K at 141-43 (09/02/1983 Supplementary Amendment).  Once more, however,

10   the applicants distinguished application claim 3 from Hofmanis on the ground that Hofmanis did

11   not disclose a "processing means" that was responsive to "predetermined commands and data

12   sequences" for selecting a mode of access to color memory:

13           Amended claim 3 also patentably distinguishes over Hofmanis in that it
             recites a color memory for storing color data values and processing means
14           responsive to predetermined commands and data sequences.  The processing
             means, responsive to a first command, selects a mode of access to the color
15           memory and, responsive to a second command, sets a color data value in the
             color memory.  …  Again, there is no teaching in Hofmanis to suggest this
16           arrangement.

17   *Id.* at 142.

18           The Examiner later allowed the claims to issue.  Micallef Decl., Ex. L at 144 (09/23/1983

19   Notice of Allowance)

20       **D.    The Accused Systems**

21           Lucent has accused every Dell computer system made, used, or sold between October 20,

22   1998 and May 19, 2001 of infringing claims 1-3 of the Fleming patent.  Micallef Decl., Ex. M at

23   152 (Lucent's Seventh Supp. Response to Interrogatory No. 2).[4]  Specifically, Lucent asserts that

24   various Graphical Device Interface ("GDI") commands made available by the Microsoft Windows

25   operating system constitute the "predetermined command and data sequence" claimed in the

26   _____

27   [4] Lucent had initially asserted claim 4 of the Fleming patent, as well, but Lucent's expert provides
     no opinion whatsoever concerning claim 4 in his expert report.  *See* Micallef Decl., Ex. N at 179,
     203-10 (Richter Report).  Dell therefore also moves for summary judgment of non-infringement as
28   to claim 4, since Lucent has no evidence of infringement of that claim.

- 10 -

Exhibit 17
Page 000277

1    Fleming patent because use of those GDI commands can allegedly select the claimed color modes.

2    Lucent also asserts that some of the claimed color modes may also be selected by certain BIOS

3    instructions[5] present on Dell's computers, and that therefore those BIOS instructions also

4    correspond to the claimed "predetermined command and data sequence."[6]

5        The source code for Microsoft Windows and for Dell's BIOS programming was made

6    available to Lucent's counsel during discovery.  *See* Micallef Decl., Ex. O at 212 (November 29,

7    2005 letter from Kellman to McDonough); Ex. P at 213 (January 17, 2006 letter from Stacy to

8    Hohenthaner).  Nevertheless, neither Lucent nor its expert identifies any specific portion of the

9    Windows programming relating to the GDI instructions or any portion of the BIOS programming as

10   allegedly satisfying the claims.  *See* Micallef Decl., Ex. M at 152-64 (Lucent's Seventh Supp.

11   Response to Interrogatory No. 2); Ex. N at 203-10 (Richter Report).

12       Nor does Lucent or its expert compare the structure of any portion of that programming to

13   the Court-identified corresponding structure of the claimed "processing means."  Instead, in their

14   infringement analysis Lucent and its expert refer generically to "the processor and BIOS or

15   Windows" and certain GDI commands and BIOS instructions that may be employed on Dell

16   systems.  The entirety of their infringement analysis in that regard is a discussion of the

17   functionality allegedly performed by those commands and instructions.  *See, e.g.*, Micallef Decl.,

18   Ex. M at 152-64 (Lucent's Seventh Supp. Response to Interrogatory No. 2);  Ex. N at 184-94, 96-

19   200, and 203-10 (Richter Report).

20   **III.    APPLICABLE LEGAL STANDARD**

21       Under Fed. R. Civ. P. 56(c), summary judgment should be granted where "there is no genuine

22   issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

23   The federal rules mandate summary judgment "against a party who fails to make a showing sufficient

24

---

25   [5] The acronym "BIOS" stands for "basic input/output system," Micallef Decl., Ex. N at 176 (Richter
26   Report), and refers to a software program run by a computer during start-up to prepare the machine
     so that more sophisticated programs, such as an operating system, may take control.

27   [6] Lucent, in some unclear mix-and-match line of reasoning, alleges that the GDI commands satisfy
     all the color modes required by the claims, but alleges that the BIOS instructions satisfy only two of
28   the three modes required by the claims.  Micallef Decl., Ex. N at 188, 205-09 (Richter Report).

---

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,439,759 TO FLEMING, ET AL.

Exhibit 17
Page 000278

1   to establish the existence of an element essential to that party's case, and on which that party will bear

2   the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is

3   upon the moving party to establish the absence of genuine issues of material fact and entitlement to

4   judgment as a matter of law. Fed. R. Civ. P. 56(c). Where, as here, the non-moving party has the

5   burden of proof at trial, the moving party need only point to a lack of evidence and has no burden to

6   disprove the non-moving party's claim. *See Celotex*, 477 U.S. at 325.

7   The non-moving party must then come forward with evidence demonstrating a genuine issue

8   as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is

9   challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to

10  *any* element of its case on which it bears the burden of proof at trial, the "plain language of Rule

11  56(c) mandates the entry of summary judgment." *Id.* at 322. "Summary judgment is as appropriate

12  in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,

13  911 F.2d 670, 672 (Fed. Cir. 1990).

14  Lucent has the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*,

15  833 F.2d 1551, 1557 (Fed. Cir. 1987). To establish infringement, Lucent must establish that the

16  accused products contain each and every element of the claim. *See S. Bravo Sys. v. Containment*

17  *Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). Infringement is a question of fact, but is properly

18  decided at summary judgment when no reasonable jury could find that every limitation of the claims

19  is found in the accused device. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir.

20  2004).

21  An accused device that does not infringe literally may nevertheless infringe under the doctrine

22  of equivalents. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). To

23  demonstrate that an accused device includes an equivalent, it must be shown that the device performs

24  substantially the same function as the missing element in substantially the same way to achieve the

25  same result, or that the differences between the accused device and what is claimed are insubstantial.

26  *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1016-17 (Fed. Cir. 1998).

27  A patentee will not be permitted, however, to recover through the doctrine of equivalents

28  subject matter surrendered from the scope of the claims to obtain allowance of the patent. "[A]

- 12 -

Exhibit 17
Page 000279

1    narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an

2    estoppel" that bars the patentee from asserting that a claim limitation is equivalently present in the

3    accused product. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 736

4    (2002). A narrowing amendment that was made for patentability reasons creates a presumption that

5    the patentee has surrendered the entire territory between the original claim limitation and the

6    amended claim limitation. *Festo Corp. v. Shoketsu Kinzoku Kogyu Kabushiki Co., Ltd.*, 344 F.3d

7    1359, 1365 (Fed. Cir. 2003). The patentee bears the burden of rebutting these presumptions. *Id.*

8         There are three ways for a patentee to overcome the presumption of surrender: (i) showing

9    that the equivalent would have been unforeseeable at the time of the amendment; (ii) showing that

10   the rationale underlying the amendment bore only a tangential relationship to the equivalent in

11   question; or (iii) showing that "there [was] some other reason suggesting that the patentee could not

12   reasonably be expected to have described the insubstantial substitute in question." *Id.* at 1365.

13   Both the ultimate question of whether prosecution history estoppel applies and the intermediate

14   question of whether the patentee has rebutted the presumption are questions of law. *Id.* at 1367-68.

15        In order to show infringement of a means-plus-function claim element the patentee must

16   identify a structure in the accused device that performs the claimed function and that is identical or

17   equivalent to the corresponding structure identified by the Court. *See WMS Gaming*, 184 F.3d at

18   1350. "To establish infringement under § 112, ¶ 6, it is insufficient for the patent holder to present

19   testimony 'based only on a functional, not a structural, analysis.'" *Cytologix*, 424 F.3d at 1178

20   (citing *Alpex*, 102 F.3d at 1222).

21        For computer-based inventions, the corresponding structure includes the disclosed

22   algorithms used by the computer. *See WMS Gaming*, 184 F.3d at 1349 ("In a means-plus-function

23   claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an

24   algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose

25   computer programmed to perform the disclosed algorithm."); *Harris Corp. v. Ericsson Inc.*, 417

26   F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to

27   the corresponding structure disclosed in the specification and equivalents thereof, and the

28   corresponding structure is the algorithm.").

- 13 -

Exhibit 17
Page 000280

1    An accused device may infringe as an equivalent only if it possesses all of the limitations of

2    a claim either literally or equivalently.  *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir.

3    1998).  A theory under the doctrine of equivalents that vitiates a claim limitation is not permitted as

4    a matter of law.  *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir.

5    2005).  "It is important to ensure that the application of the doctrine [of equivalents], even as to an

6    individual element, is not allowed such broad play as to effectively eliminate that element in its

7    entirety."  *Warner-Jenkinson*, 520 U.S. at 29.

## IV.    ARGUMENT

### A.    The Accused Systems Are Not Responsive To A Sequence, or Pattern, That Has A Known Encoded Meaning

11    The claims of the Fleming patent require a processing means responsive to a "predetermined

12    command and data *sequence*" to select a color mode, and the Court has interpreted that phrase to

13    mean "a command and data *pattern* having a known encoded meaning."  Micallef Decl., Ex. C at 61

14    (emphasis added) (Markman Order).  It is the encoded meaning of the pattern – not just the

15    existence or meaning of the commands and data – that Lucent's claims address.

16    The required responsiveness functionality is not found in the accused systems.  In contrast to

17    what the claims require, the purported infringement pointed to by Lucent is based on response by

18    the processor to what the specific meaning of the commands and data used, not to any meaning

19    attributable to a command and data sequence (pattern).  Dell's expert has pointed out that in the

20    accused systems the color mode is selected by the meaning of the individual commands and data

21    employed, Micallef Decl., Ex. Q at 228-30 (Wedig Rebuttal Report), and Lucent's expert has never

22    disputed that evidence.[7]

23    In fact, in coming to his conclusions of infringement, Lucent's expert did not even believe

24    that the claims required the *sequence* to select the color mode:

---

[7] Indeed, Lucent's expert  has agreed that the accused systems always employ the same pattern of commands and data regardless of what "mode" is selected.  *See* Micallef Decl., Ex. B at 33 (Richter Depo. Tr. at 96:7-21); *see also id.* at 38 (Richter Depo. Tr. at 151:10-13) ("I think I kind of answered this one for you already when I explained that those three functions each take two data parameters.").

Exhibit 17
Page 000281

1    Q.    Do you read this claim as requiring a predetermined command in [sic: and] data sequence, that if it's decoded one way, it will pick the first mode, if
2    decoded another way it will pick the second mode, and if it is decoded a third way it will pick the third mode?

3    A.    It certainly can operate in that fashion.

4    **Q.    Is it required to operate in that fashion?**

5    A.    **I don't know.  I hadn't looked at it from that perspective recently.**
     The claim language here says "The predetermined command in [sic: and]
6    data sequence selecting one of a plurality of modes of access to color data values."

7    *Id.* at 49-50 (Richter Depo. Tr. at 292:14 - 293:4) (emphasis added).  But each of the asserted claims

8    of the Fleming patent requires a processing means that is "responsive to a predetermined command

9    and data sequence," *i.e.*, a pattern, and that requirement cannot be ignored (as it has been by

10   Lucent's expert).

11        Accordingly, even assuming *arguendo* that the accused commands and data select color

12   modes as claimed, it is fatal to Lucent's infringement case that Lucent has no evidence that the

13   accused computer systems respond to any known encoded meaning of the *pattern* of commands and

14   data to select a color mode (or otherwise).  Indeed, it is undisputed that processors in the accused

15   systems do not carry out the claimed functions[8] in response to the *sequence* (pattern) of commands

16   and data.  Dell is therefore entitled to summary judgment of no literal infringement because the

17   accused systems do not satisfy the requirement that the claimed processing means be responsive to a

18   "predetermined command and data sequence" in carrying out its required functions.

19
20   **B.    The Accused Systems Do Not Satisfy The Structural Requirements of the Claimed Processing Means**

21        A claim element expressed in means-plus-function format literally covers only the

22   corresponding structure disclosed in the specification and equivalents thereof which perform the

23   claimed function.  *See WMS Gaming*, 184 F.3d at 1350.  Here, the Court has identified

24   _____

25   [8] Each of the asserted claims of the Fleming patent requires a processing means that is "responsive to a predetermined command and data sequence" in carrying out the recited functions.  Micallef
26   Decl., Ex. C at 55, 57 (Markman Order).  The processing means of independent claim 1 responsively carries out the function of "selecting one of a plurality of modes of access to color data
27   values," and the processing means of independent claim 2 responsively carries out the function of "selecting a mode of access to the color memory" as well as the function of "setting a color data
28   value in the color memory."  *Id.*

- 15 -

Exhibit 17
Page 000282

1    corresponding structure for the claimed processing means to include a data processor programmed

2    with the algorithm depicted in Figure 3 and 4 of the specification:

3            Data processor 1 programmed to perform the algorithm of boxes 301, 302,
             and 303 of Figure 3 and boxes 401, 402, 403, 404, 405, 407, 408, and 411 of
4            Figure 4 (*See*, Col.5, line 60 - Col.6, line 19, Col.6, lines 20-23 (except for
             "and for setting foreground and background in-use colors for two of these
5            modes"), lines 24-29, 29-32 (except for "and the background and foreground
             color"), lines 33-43).
6

7    Micallef Decl., Ex. C at 56, 57-58 (Markman Order).

8            Lucent does not assert that the accused products contain structure *identical* to the

9    corresponding structure identified by the Court.  *See* Micallef Decl., Ex. N at 186-87, 197-98, 203-05,

10   and 207-09 (Richter Report).  Indeed, Lucent's expert has conceded that at least several differences

11   exist between the accused systems and the corresponding structure identified by the Court.  For

12   example, the expert has admitted that the accused systems do not employ the same command to select

13   among different modes and has never identified any structure that counts the number of data operands

14   following the mode selection commands, Micallef Decl., Ex. B at 43-44 (Richter Depo. Tr. at 279:23 -

15   280:10), both of which are features of the algorithm identified by the Court as corresponding structure

16   to the claimed processing means, *see, e.g.*, the algorithm of boxes 301, 302, and 303 of Figure 3 and

17   boxes 401, 402, 403, 404, 405, 407, 408, and 411 of Figure 4, and accompanying textual description

18   at Micallef Decl., Ex. A at 21 (Fleming Patent at col. 5, line 60 - col. 6, line 19; col. 6, lines 20-43).

19           Lucent's entire infringement case therefore rests on its ability to prove equivalence between

20   the structure identified by the Court as corresponding to the claimed "processing means" and some

21   structure in the accused computer systems that performs the function of the processing means.

22   Lucent cannot do so.

23           1.      *Lucent Has Not Identified any Structure that Satisfies the Claims or*
                     *Compared such Structure to the Corresponding Structure*
24

25           Neither Lucent nor its expert has ever identified a structure for performing the function of

26   the processing means or compared such a structure with the Court-identified corresponding

27   structure.  Instead, they phrase their infringement allegations in general terms of "the processor and

28   BIOS or Windows" and merely identify certain commands and data that might be used with the

- 16 -

Exhibit 17
Page 000283

1    accused systems. They then summarily conclude, based on the functionality provided by those

2    commands and data, that an equivalent structure must exist. *See* Micallef Decl., Ex. N at 186-87,

3    197-98, and 203-04 (Richter Report). Indeed, the only support the expert or Lucent provide for this

4    assertion are cites to publicly available programming guides and standards. *See* Micallef Decl., Ex.

5    M at 152-64 (Lucent's Seventh Supp. Response to Interrogatory No. 2); Ex. N at 203-10 (Richter

6    Report). Even though the corresponding structure identified by the Court is a "[d]ata processor 1

7    programmed to perform the algorithm" disclosed in the specification, not a single line of source

8    code is identified, cited to or analyzed in Lucent's infringement evidence. *See id.*

9    The commands and data identified by Lucent and its expert, however, do not themselves

10    perform the claimed "processing means" functions of decoding commands and data and selecting a

11    color mode. Nor could they, since the commands and data cannot decode themselves. <u>To the</u>

12    <u>extent those commands and data identified by Lucent are decoded and take part in functionality</u>

13    <u>relevant to the claims, that decoding and functionality is provided by software algorithms running</u>

14    <u>on the accused computer systems.</u> Lucent was given the source code that contains those algorithms

15    during discovery. But neither Lucent nor its expert ever identify such software algorithms, or

16    provide any evidence comparing those algorithms to the Court identified corresponding structure.

17    The Federal Circuit has made clear that such conclusory analysis of *functionality* is

18    insufficient to show that the accused systems include the required *structure*, under § 112, ¶ 6. *See,*

19    *e.g., WMS Gaming*, 184 F.3d at 1347; *Cytologix*, 424 F.3d at 1178. In *Cytologix*, for example, the

20    Federal Circuit held that "[t]o establish infringement under § 112, ¶ 6, it is insufficient for the patent

21    holder to present testimony 'based only on a functional, not a structural, analysis.'" 424 F.3d at

22    1178 (quoting *Alpex*, 102 F.3d at 1222). Indeed, this Court has already ruled in this very case that

23    such a conclusory functional analysis is insufficient to survive summary judgment:

24    But the fact is, this structure includes all of those things in the
         algorithm, and you don't have it. You haven't proved that they use it. There's
25    no discovery on it. I couldn't see any evidence that there had even been any
         demand to produce an algorithm for how they do their deal. They've got
26    software. They must have a source code. There was no request for the
         source code. And it looks to me like -- frankly, it looks to me like the
27    Plaintiff got lazy and said, well, we don't need all that stuff, and don't go to
         all that bother.

28

- 17 -

Exhibit 17
Page 000284

* * *

**In a case where -- in a case where the expert's opinion is not based upon analysis of any algorithm software or source code, I'm not -- I don't think that's enough to raise an issue of material fact.**

Micallef Decl., Ex. R at 252 and 259 (March 21, 2007 Hearing Tr. at 27:5-14 and 34:7-10) (emphasis added).

Accordingly, Lucent was required to identify the actual structure in the accused systems that performs the claimed function and provide evidence comparing such a structure to the corresponding structure identified by the Court. Since Lucent has not done so, Dell is entitled to summary judgment of no infringement on that basis as well.

2.      *The Claimed Processing Means Cannot Cover*
        *After-Developed Technology as a Matter of Law*

It is well settled that a means-plus-function claim element may not cover technology developed after the issuance of the patent. Since the literal meaning of the claim must be fixed at patent issuance, an "equivalent" for purposes of § 112 must have been available on the date the patent issued:

> As this court has recently clarified, a structural equivalent under § 112 must have been available at the time of the issuance of the claim. An equivalent structure or act under § 112 cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon its issuance. An "after arising equivalent" infringes, if at all, under the doctrine of equivalents.

*Al-Site*, 174 F.3d at 1320 (citations omitted); *see also Medtronic Minimed Inc. v. Smiths Med. Inc.*, 373 F. Supp.2d 466, 470 (D. Del. 2005); *IPPV Enters., LLC v. Echostar Commc'ns Corp.*, 106 F. Supp.2d 595, 605-06 (D. Del. 2000). Here, even if Lucent had actually identified some structure in the accused systems that decodes the commands and data that Lucent accuses, it would not be able to avoid summary judgment since it is undisputed that the technology to decode those commands was not available before the issuance of the Fleming patent.

The patent issued on March 27, 1984. The GDI technology Lucent accuses was not available until 1985 at the earliest, and the VGA BIOS commands that Lucent accuses were not available until 1987 at the earliest. *See* Micallef Decl., Ex. S at 266-72 (Sykes Depo. Tr. at 19:5-9;

- 18 -

Exhibit 17
Page 000285

1    25:4-9); Ex. T at 276 (Wong Depo. Tr. at 104:20 - 105:24); Ex. N at 176 (Richter Report); Ex. Q at

2    222 (Wedig Rebuttal).  These dates are undisputed, as Lucent has no evidence to suggest they are

3    incorrect or that the accused technology was available prior to March 27, 1984.

4         Accordingly, as a matter of law, Lucent cannot show literal infringement of its claims

5    because means-plus-function limitations cannot be satisfied by after-developed technology, and all

6    of Lucent's infringement allegations rest on technology available after the issuance of the patent.

7         **C.**    **As a Matter of Law Lucent May Not Rely on the Doctrine of Equivalents**

8           1.    *Lucent Has Not Provided a Legally Sufficient Equivalents Analysis*

9         To prevail on a claim of infringement under the doctrine of equivalents, Lucent must

10   identify the asserted equivalent and advance evidence upon which a jury could find that the asserted

11   equivalent performs substantially the same function in substantially the same way to achieve

12   substantially the same result.  *See Graver Tank Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605,

13   608 (1950).  Lucent must also provide "particularized testimony and linking argument" as to the

14   insubstantiality of any differences or as to each of the function, way, and result elements of the

15   equivalence test.  *See Texas Instruments*, 90 F.3d at 1563.  "The party asserting infringement must

16   present '*evidence* and *argument* concerning the doctrine [of equivalents] and *each* of its *elements.*'

17   The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's

18   case of literal infringement."  *Lear Siegler*, 873 F.2d at 1425 (emphasis in original).

19        Lucent's expert provides no opinions relating to the doctrine of equivalents whatsoever in

20   his expert report.  Indeed, his report explicitly states that he may supplement his opinions with

21   "doctrine of equivalence analysis" once he is provided the defendants' non-infringement

22   contentions.  Micallef Decl., Ex. N at 183 (Richter Report).  Defendants have, of course, provided

23   their non-infringement contentions and expert testimony supporting those contentions long ago, but

24   Lucent's expert has failed to provide any supplemental opinions relating to the doctrine of

25   equivalents.  Accordingly, Lucent lacks the "particularized testimony and linking argument"

26   Federal Circuit precedent requires of it to proceed under the doctrine of equivalents, and summary

27   judgment is compelled on that basis alone.  *See Aquatex Indus.*, 2007 WL 582392 at *7 ("In short,

28   in opposing summary judgment, [the patentee] only provided lawyer argument and generalized

- 19 -

Exhibit 17
Page 000286

1   testimony about the accused product.  It has failed to demonstrate a genuine issue of material fact

2   that would prevent the grant of summary judgment.").

3   But even considering the opinions Lucent's expert has advanced relating to Section 112

4   equivalence, Lucent's case fails to include the evidence required by the Federal Circuit to avoid

5   summary judgment.  For the "processing means" limitations of the asserted claims, for example,

6   Lucent's expert has never opined that a processing means that responds to the known encoded

7   meaning of a *pattern* of commands and data is equivalent to a processing means that responds to the

8   individual encoded meanings of various commands and data.  *See* Micallef Decl., Ex. N at 184-87

9   and 196-200 (Richter Report).  Nor has that expert ever compared the corresponding structure

10  identified by the Court with any specific software algorithm in the accused systems.

11  And while he has analyzed the purported *function* performed by the accused products, he

12  never addresses whether that function is performed in a similar way to that of the claimed

13  corresponding structure or whether it produces a similar result.  At most, Lucent's expert has opined

14  that the corresponding structure the Court has identified is equivalent to "the processor and BIOS or

15  Windows."  But as the Federal Circuit has recently noted, "[g]eneralized testimony as to the overall

16  similarity between the claims and the accused infringer's product or process will not suffice."

17  *Aquatex Indus.,* 2007 WL 582392 at *6, quoting *Texas Instruments*, 90 F.3d at 1567.

18  Lucent has therefore failed to advance the evidence necessary to avoid summary judgment,

19  and Dell respectfully requests entry of such judgment on that basis.

20          2.      *Lucent's Theory of Equivalence Would Vitiate the "Sequence" Requirement*

21  But Dell is entitled to summary judgment of no infringement under the doctrine of

22  equivalents for other reasons as well.  A theory under the doctrine of equivalents that vitiates any

23  requirement of the claims is not permitted as a matter of law.  *Freedman Seating*, 420 F.3d at 1358.

24  "It is important to ensure that the application of the doctrine [of equivalents], even as to an

25  individual element, is not allowed such broad play as to effectively eliminate that element in its

26  entirety."  *Warner-Jenkinson*, 520 U.S. at 29.  Moreover, "the various legal limitations on the

27  application of the doctrine of equivalents are to be determined by the court," including in the

28  context of a summary judgment motion.  *Id*. at 39 n.8.

- 20 -

Exhibit 17
Page 000287

1    Here, all of the asserted claims require a processing means that is responsive to a

2   "predetermined command and data *sequence*," and there is no evidence that the accused systems

3   include such a means.  It is, of course, true that the accused systems are responsive to commands and

4   data, and it is that responsiveness (rather than the required responsiveness to "sequence") that Lucent

5   has accused of infringing.  However, to permit Lucent to rely on the doctrine of equivalents to cover a

6   system that is responsive solely to commands and data would read the word "sequence" out of the

7   claims, vitiating that requirement.  As both the Supreme Court and the Federal Circuit have noted, any

8   use of the doctrine that vitiates claim requirements violates the "all elements rule" and is not permitted

9   as a matter of law.  *Id.*; *Tronzo*, 156 F.3d at 1160.  Lucent therefore cannot recover on a theory under

10  the doctrine of equivalents, and Dell is entitled to summary judgment to that effect.

11              3.    *Amendment-Based Estoppel Forecloses Reliance on Equivalents*

12    As demonstrated above, during the prosecution of the Fleming patent, in response to a

13  rejection of the claims over the prior art Hofmanis patent, Lucent amended its claims in several

14  respects.  In particular, claim 1 was amended to require that the processing means perform the

15  function of "decoding the predetermined command and data sequence."  Micallef Decl., Ex. H at

16  115 (01/31/1983 Amendment).  Claim 1 was also amended to require that the processing means

17  perform the function of "the predetermined command and data sequence selecting one of a plurality

18  of modes of access to color data values."  *Id.*  Similarly, application claim 3 (which issued as patent

19  claim 2) was amended to require that the processing means be "responsive to predetermined

20  command and data sequences" and also that the processing means perform the function of

21  "selecting" a mode of color memory access.  *Id.* at 115-16.

22    Moreover, the applicants explicitly argued that their invention distinguished the prior art

23  because of the processing means responsiveness to the predetermined command and data

24  sequences:

25        Nor does the teaching of Hofmanis lead one to provide, as recited in amended
          claim 3, *processing means responsive to predetermined command and data*
26        *sequences, the processing means, responsive to a first command, selecting a*
          *mode of color memory access* and responsive to a second command, setting a
27        color data value in color memory.

28  Micallef Decl., Ex. J at 137-38 (emphasis added) (7/27/1983 Amendment).

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DELL INC. FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 4,439,759 TO FLEMING, ET AL.

Exhibit 17
Page 000288

These claim amendments were clearly narrowing and made for purposes of patentability, *i.e.*, to overcome the Examiner's rejection of the claims based on the prior art Hofmanis patent. Lucent has therefore presumptively "surrender[ed] the entire territory between the original claim limitation and the amended claim limitation." *Festo Corp.*, 344 F.3d at 1365.  And Lucent cannot rebut that presumption here.

First, a processing means that simply responds to commands and data – as opposed to one that responds to a sequence or pattern of commands and data having a known encoded meaning – was clearly foreseeable at the time the Fleming patent was drafted.  Any computer system, including the "Color Graphics Display Terminal" disclosed in the Hofmanis patent, included such a processing means.[9]  For the same reason Lucent cannot show the alleged equivalent that it now attempts to cover was only tangentially related to the reasons for the claim amendments.  Since the Hofmanis patent included the asserted equivalent, tangentialness cannot be shown.

> Although we cannot anticipate the instances of mere tangentialness that may arise, we can say that an amendment to avoid prior art that contains the equivalent in question is not tangential; it is central to the allowance of the claim.

*Festo*, 344 F.3d at 1369.

Moreover, since the processing means and its relationship to the "predetermined command and data sequences" was "at issue" during prosecution – as demonstrated by Lucent's explicit argument distinguishing Hofmanis and quoted above – Lucent cannot show tangentialness.  *See Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1360 (Fed. Cir. 2003) ("The boiling range and carbon content were at issue during prosecution, and were the direct, not tangential, reason for the narrowing amendments to these claim limitations."); *Biagro Western Sales, Inc. v.*

---

[9] *E.g.*, Micallef Decl., Ex. G at 109 (Hofmanis Patent at col. 3, lines 58-63) (emphasis added), which explicitly states that the system disclosed therein is responsive to commands and data:

> *Depending on the control commands and data* entered via the keyboard 300, and the requirements of the particular test being conducted by the automatic test station, the visual output appearing on the face of the color monitor 200 may be in alphanumeric and/or graphic format.

*See also id.* at 110, 111 (Hofmanis Patent at col. 6, lines 36-42 and col. 8, lines 43-53).

Exhibit 17
Page 000289

1    *Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed. Cir. 2005).  Nor is there any other reason that Lucent

2    can show to rebut the *Festo* surrender presumption.

3            Accordingly, Lucent is estopped from relying on the doctrine of equivalents here, and Dell

4    respectfully requests summary judgment on this basis as well.

5    **V.    CONCLUSION**

6            Accordingly, for the reasons stated herein, Dell respectfully requests entry of summary

7    judgment that it does not infringe the asserted claims of the Fleming patent.

8

9    Dated:  March 29, 2007                              ARNOLD & PORTER LLP
                                                         James S. Blackburn
10                                                       Joseph A. Micallef

11                                                       McDERMOTT WILL & EMERY LLP
                                                         Joel M. Freed
12

13                                               By:    ___s/ Joseph A. Micallef_____

14
                                                         Joseph A. Micallef
15                                                       E-mail: joseph.micallef@aporter.com

16                                                       Attorneys for Dell Inc.

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 17
Page 000290