# SCHMIDT DECLARATION
# EXHIBIT 19

1  Bryan W. Farney (SBN: 06826600 (TX)(*pro hac vice*)
   Jeffrey B. Plies (SBN: 24027621)(*pro hac vice*)
2  DEWEY BALLANTINE LLP
   816 Congress Avenue, Suite 1900
3  Austin, Texas 78701-2478
   Telephone: (512) 226-0300
4  Facsimile: (512) 226-0333

5  *Additional counsel listed on signature page*

6  Attorneys for Defendants and Counter-Claimants,
   GATEWAY, INC., GATEWAY COUNTRY STORES LLC,
7  GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING
   LLC, AND COWABUNGA ENTERPRISES, INC.

8

9                    **UNITED STATES DISTRICT COURT**

10                  **SOUTHERN DISTRICT OF CALIFORNIA**

11  LUCENT TECHNOLOGIES, INC.              )  Case No. 02-CV-2060 B (LSP)
                                           )        consolidated with
12       Plaintiff and Counter-Defendant, )  Case No. 03-CV-699 B (LSP)
                                           )  Case No. 03-CV-1108 B (LSP)
13       vs.                               )
                                           )
14  GATEWAY, INC., GATEWAY COUNTRY         )  **GATEWAY'S OBJECTIONS AND**
15  STORES LLC, GATEWAY COMPANIES,         )  **RESPONSES TO LUCENT'S FIRST**
    INC., GATEWAY MANUFACTURING LLC        )  **SET OF INTERROGATORIES TO**
16  and COWBUNGA ENTERPRISES, INC.         )  **GATEWAY (NOS. 1-20)**
                                           )
17       Defendants and Counter-Claimants,)
                                           )
18       and                               )
                                           )
19  MICROSOFT CORPORATION                  )
                                           )
20       Intervenor and Counter-Claimant. )
                                           )
21                                         )
    AND CONSOLIDATED CASES                 )
22                                         )

23  PROPOUNDING PARTY:    Plaintiff Lucent Technologies, Inc.

24  RESPONDING PARTIES:   Defendants Gateway, Inc., Gateway Country Stores LLC, Gateway
                          Companies, Inc., Gateway Manufacturing LLC, and Cowabunga
25                        Enterprises, Inc.

26  SET NUMBER:           One (Nos. 1-20)

27              Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants Gateway,

28  Inc., Gateway Country Stores LLC, Gateway Companies, Inc., Gateway Manufacturing LLC,

_DEWEY BALLANTINE LLP_
_1950 University Avenue, Suite 500_
_East Palo Alto, CA 94303-2225_

---

GATEWAY'S OBJECTIONS/RESPONSES TO LUCENT'S FIRST SET OF INTERROGATORIES TO GATEWAY (1-20)
Case No.: 02-CV-2060 B (LSP)

Exhibit 19
Page 000300

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  and Cowabunga Enterprises, Inc. (collectively "Gateway") hereby object and respond to the First

2  Set of Interrogatories propounded by Plaintiff Lucent Technologies, Inc. ("Lucent"), dated

3  February 24, 2004.

## GENERAL STATEMENTS

5      1.      Gateway incorporates by reference each and every general objection set forth

6  below into each specific response.  The specific response may repeat a general objection for

7  emphasis or some other reason.  The failure to include any general objection in any specific

8  response shall not be interpreted as a waiver of any general objection to that response.

9      2.      By responding to Lucent's First Set of Interrogatories, Gateway does not waive

10  any objection that may be applicable to:  (a) the use, for any purpose, by Lucent of any

11  information or documents given in response to Lucent's First Set of Interrogatories; or (b) the

12  admissibility, relevancy, or materiality of any of the information or documents to any issue in

13  this case.

14      3.      No incidental or implied admissions are intended by the responses herein. The

15  fact that Gateway has answered or objected to any interrogatory should not be taken as an

16  admission that Gateway accepts or admits the existence of any "fact" set forth or assumed by

17  such interrogatory.

18      4.      Gateway's responses to Lucent's First Set of Interrogatories are made to the best

19  of Gateway's present knowledge, information, and belief.  Gateway reserves the right to

20  supplement and amend these responses should future investigation indicate that such

21  supplementation or amendment is necessary.  Gateway reserves the right to make any use of, or

22  to introduce at any hearing and at trial, information or documents that are responsive to Lucent's

23  interrogatories, but discovered subsequent to Gateway's service of these responses, including,

24  but not limited to, any information or documents obtained in discovery herein.

25      5.      By stating that it will produce documents or provide information in response to

26  any particular interrogatory, Gateway makes no representation that any such documents or

27  information exist.

28  ///

Exhibit 19
Page 000301

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

## GENERAL OBJECTIONS

1.     Gateway objects to each and every interrogatory to the extent that it purports, through Lucent's instructions, definitions or otherwise, to impose burdens or duties that exceed the scope of reasonable and permissible discovery under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of California.

2.     Gateway objects to each and every interrogatory to the extent that it is overly broad, unduly burdensome, oppressive, or constitutes an abuse of process, particularly when the interrogatory is unduly burdensome in view of the cost necessary to investigate weighed against Lucent's need for the information.

3.     Gateway objects to each and every interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection or doctrine. The production of any privileged information or document by Gateway is unintentional, and Gateway does not intend to waive any applicable objection or privilege as a result of such production. Except for items Gateway may from time to time decide to include, Gateway will not log protected items in connection with or in relation to the subject of this litigation dated subsequent to its commencement.

4.     Gateway objects to each and every interrogatory to the extent that it calls for a legal conclusion. Any responses by Gateway shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrases used in Lucent's interrogatories.

5.     Gateway objects to each and every interrogatory to the extent that it seeks information already in the possession of Lucent or in the public domain and that is as readily available to Lucent as it is to Gateway.

6.     Gateway objects to each and every request to the extent that it seeks information or documents that Lucent can obtain from Microsoft just as readily as from Gateway.

7.     Gateway objects to each and every interrogatory to the extent that it seeks information beyond Gateway's possession, custody or control.

8.     Gateway objects to each and every interrogatory to the extent that it seeks

-3-

Exhibit 19
Page 000302

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1    information that is cumulative or duplicative of information or disclosures already provided by

2    Gateway.

3         9.     Gateway objects to each and every interrogatory as overbroad and unduly

4    burdensome to the extent that it is unlimited in temporal scope or otherwise not limited to a time

5    frame relevant to this litigation.

6         10.    Gateway objects to each and every interrogatory to the extent that it seeks

7    information that is neither relevant nor reasonably calculated to lead to the discovery of

8    admissible evidence.

9         11.    Gateway objects to each and every interrogatory to the extent that it seeks

10   disclosure of confidential information prior to entry of a suitable protective order and Lucent's

11   compliance with the terms thereof.

12        12.    Gateway objects to each and every interrogatory to the extent that it seeks

13   information that Gateway is not permitted to disclose pursuant to confidentiality obligations or

14   agreements with third parties.

15        13.    Gateway objects to each and every interrogatory to the extent that it is vague and

16   ambiguous.

17        14.    Gateway objects to each and every interrogatory to the extent that it is duplicative

18   of any other discovery interrogatory.

19        15.    Gateway objects to each and every interrogatory to the extent that it lacks

20   foundation or assumes facts that are incorrect or unknown to Gateway.

21        16.    Gateway objects to each and every interrogatory to the extent that it seeks

22   discovery of material within the scope of Federal Rules of Civil Procedure 26(b)(4), and

23   therefore constitutes an improper and premature attempt to conduct discovery of expert opinion.

24        17.    Gateway objects to each and every interrogatory to the extent that it is compound

25   or contains multiple subparts, or exceeds the limit on the total number of interrogatories that

26   Lucent is permitted to propound.

27        18.    Gateway objects to all instructions, definitions and interrogatories to the extent

28   that they ask for information, documents, or things that "relate to," "relating to," "refer to," or

-4-

Exhibit 19
Page 000303

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  "referring to," the subject matter of the request on the grounds that such instructions, definitions

2  and interrogatories are overly broad and impermissibly seek the mental impressions and thoughts

3  of counsel in violation of the work product doctrine.

4      19.    Gateway objects to the definition of "Lucent" as overly broad and unduly

5  burdensome. Gateway further objects to this definition to the extent it presumes that Gateway

6  has knowledge of each of the persons or entities within the scope of this definition.

7      20.    Gateway objects to the definition of "Gateway" as overly broad and unduly

8  burdensome. Gateway further objects to this definition to the extent that it purports to require

9  disclosure of information beyond Gateway's possession, custody, or control.

10      21.    Gateway objects to the definition of "Computer Peripheral Product" on the

11  grounds that the phrase "interact with or control" renders the definition vague, ambiguous,

12  overly broad, and unduly burdensome.

13      22.    Gateway objects to the definition of "Compliant" on the grounds that the phrase

14  "practicing, conforming to, and/or compliant with any part, revision, and/or annex" renders the

15  definition vague, ambiguous, overly broad, and unduly burdensome.

16      23.    Gateway objects to the definition of "Stylus-Based Product" on the grounds that

17  the phrase "capable of taking any part in" renders the definition vague, ambiguous, overly broad,

18  and unduly burdensome.

19      24.    Gateway objects to the definition of "Video Display Product" on the grounds that

20  the phrase "capable of taking any part in" renders the definition vague, ambiguous, overly broad,

21  and unduly burdensome.

22      25.    Gateway objects to the definition of "VGA Display Mode" on the grounds that

23  the phrase "video mode" renders the definition vague, ambiguous, overly broad, and unduly

24  burdensome.

25      26.    Gateway objects to the definition of "VBE Display Mode" on the grounds that the

26  phrase "video mode" renders the definition vague, ambiguous, overly broad, and unduly

27  burdensome.

28      27.    Gateway objects to the definition of "Caller ID Information" on the grounds that

-5-

Exhibit 19
Page 000304

1    the phrase "or otherwise" renders the definition vague, ambiguous, overly broad, and unduly

2    burdensome.

3        28.        Gateway objects to the definition of "Caller ID Product" on the grounds that the

4    phrases "capable of," "affecting the display," and "in any way affect the display" renders the

5    definition vague, ambiguous, overly broad, and unduly burdensome.

6        29.        Gateway objects to the definition of "Asserted Claims" on the grounds that the

7    phrase "asserted at any time" renders the definition vague, ambiguous, overly broad, and unduly

8    burdensome.

9        30.        Gateway objects to the definition of "Prior Art" to the extent that it calls for a

10   legal conclusion or presents a question of pure law.

11       31.        Gateway objects to the definitions of "Identify" set forth in paragraphs 25-29 of

12   Lucent's interrogatories on the grounds that these definitions are overly broad and unduly

13   burdensome. Gateway further objects to these definitions as compound and containing multiple

14   subparts that should be counted towards the total number of interrogatories allowed. Gateway

15   further objects to these definitions to the extent that they seek information that is protected by the

16   attorney-client privilege, work product doctrine, or any other applicable privilege or protective

17   doctrine.

18       32.        Gateway objects to each and every interrogatory to the extent that it purports to

19   attribute any special or unusual meaning to any technical terms or phrases.

20       33.        Gateway objects to each and every interrogatory, and to the accompanying

21   definitions and instructions to the extent that they purport to alter the plain meaning and/or scope

22   of any specific interrogatory and thereby render such interrogatory vague, ambiguous, overly

23   broad, and uncertain.

24   ///

25   ///

26   ///

27   ///

28   ///

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-6-

Exhibit 19
Page 000305

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

For each Asserted Claim of each Asserted Patent, Identify all factual and legal bases for Gateway's contention that such claim is invalid, including without limitation, a specific identification of all Prior Art and/or combinations of Prior Art upon which Gateway relies, and a description in claim chart form on an element-by-element basis of how such Prior Art and/or combinations of Prior Art support such contention.

### RESPONSE TO INTERROGATORY NO. 1:

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this contention interrogatory as premature given the early stage of discovery. Gateway objects to this interrogatory as premature because the court has not yet construed the claims in dispute. Gateway objects to this interrogatory as premature because Lucent has not yet identified the asserted claims. Gateway objects to this interrogatory to the extent that it seeks the rendering of an expert opinion. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

-7-

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

Exhibit 19
Page 000306

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1    Subject to and without waiver of the foregoing general and specific objections, and to the

2    extent Gateway understands this interrogatory, Gateway responds that a list of patents and

3    publications pertinent to Gateway's invalidity contentions concerning the Patents-in-Suit are set

4    forth in Exhibit A hereto.  To the extent that Microsoft, in its response to Lucent's first set of

5    interrogatories, identifies additional factual and legal bases for invalidity regarding any of the

6    patents asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth

7    fully herein. Gateway reserves the right to supplement its response to this interrogatory as

8    discovery progresses.

9    **INTERROGATORY NO. 2:**

10    For each Asserted Patent that Gateway contends is unenforceable, Identify all factual and

11    legal bases for Gateway's contention that such patent is unenforceable.

12    **RESPONSE TO INTERROGATORY NO. 2:**

13    Gateway hereby incorporates by reference each and every one of its general objections

14    and further objects on the specific grounds set forth below.  Gateway objects to this interrogatory

15    to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

16    assumed the defense.  Such interrogatories should be directed to Microsoft.  Gateway objects to

17    this interrogatory as overly broad and unduly burdensome.  Gateway objects to this interrogatory

18    to the extent that it seeks information that is protected by the attorney-client privilege, work

19    product doctrine, or any other applicable privilege or protective doctrine.  Gateway objects to

20    this interrogatory to the extent that it seeks disclosure of confidential information prior to the

21    entry of an appropriate protective order.  Gateway will disclose confidential information only

22    after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

23    information.  Gateway objects to this interrogatory to the extent that it seeks disclosure of

24    confidential information of third parties that Gateway is under an obligation not to disclose.

25    Gateway objects to this interrogatory as compound and containing multiple subparts that should

26    be counted towards the total number of interrogatories allowed.  Gateway objects to this

27    contention interrogatory as premature given the early stage of discovery.  Gateway objects to this

28    interrogatory as premature because the court has not yet construed the claims in dispute.

-8-

Exhibit 19
Page 000307

1   Gateway objects to this interrogatory as premature because Lucent has not yet identified the

2   asserted claims. Gateway objects to this interrogatory to the extent that it seeks the rendering of

3   an expert opinion. Gateway objects to this interrogatory to the extent that it calls for a legal

4   conclusion or presents a question of pure law.

5       Subject to and without waiver of the foregoing general and specific objections, and to the

6   extent Gateway understands this interrogatory, Gateway responds as follows:

7   **Doughty '956 patent**

8       The claims of the Doughty '956 patent are unenforceable as a result of the inequitable

9   conduct of the applicant, her attorneys and/or agents in the prosecution of the Doughty '956

10   patent. The inequitable conduct comprised intentional misrepresentations and omissions

11   including, without limitation, the following: (a) The sworn statement executed by the applicant

12   on or about July 12, 1983, that stated in pertinent part that: "I believe I am an original, first and

13   joint inventor of the subject matter which is claimed and for which a patent is sought on the

14   invention entitled Method and Apparatus for Displaying at a Selected Station Special Service

15   During a Silent Interval Between Ringing the specification of which is attached hereto. . . I

16   acknowledge the duty to disclose information which is material to the examination of this

17   application in accordance with Title 37, Code of Federal Regulations, 1.56(a)." (b) During the

18   reexamination of the Doughty '956 patent, the examiner cited a publication entitled "AT&T

19   Practice Standard Publication," dated January 1979. In spite of the fact that the inventor had

20   been employed by AT&T throughout the prosecution of the patent, she did not cite this AT&T

21   publication during the initial prosecution of the Doughty '956 patent.

22   **Fleming '759 patent**

23       The claims of the Fleming '759 patent are unenforceable as a result of the inequitable

24   conduct of the applicants, their attorneys and/or agents in the prosecution of the Fleming '759

25   patent. The inequitable conduct comprised intentional misrepresentations and omissions

26   including, without limitation, the following: (a) The sworn statements signed by the applicants

27   on or about May 18 and May 19, 1981, that stated in pertinent part that: "I am the original, first

28   and sole inventor . . . or a joint inventor . . . of the invention entitled Terminal Independent Color

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-9-

Exhibit 19
Page 000308

1    Memory For A Digital Image Display System described and claimed in the attached

2    specification; I do not know and do not believe the same was ever known or used in the United

3    States of America before my or our invention thereof, or patented or described in any printed

4    publication in any country before my or our invention thereof or more than one year prior to this

5    application; to the best of my knowledge and belief the same was not in public use or on sale in

6    the United States of America more than one year prior to this application; . . . I acknowledge my

7    duty to disclose information of which I am aware which is material to the examination of this

8    application. . . ." (b) In August 1979, the Graphics Standards Planning Committee of the

9    Association for Computer Machinery published a report entitled "Status Report of the Graphics

10   Standards Planning Committee" in Computer Graphics, vol. 13, no. 3 (August 1979). The

11   applicants were aware of this report and cited this report as a reference in, at least, a Bell

12   Laboratories technical memorandum titled "Videotex Standard Presentation Level Protocol"

13   dated June 11, 1981. This report was highly material to the examination of the Fleming '759

14   patent, and thus was required to be disclosed during the prosecution under 37 C.F.R. 1.56.

15   Nonetheless, the applicants did not disclose the report during the prosecution of the Fleming

16   '759 patent.

17          **Netravali '272 patent**

18          The claims of the Netravali '272 patent are unenforceable as a result of the inequitable

19   conduct of the applicants, their attorneys and/or agents in the prosecution of the Netravali '272

20   patent. The inequitable conduct comprised intentional misrepresentations and omissions

21   including, without limitation, the following: (a) The sworn statements signed by the applicants

22   on or about April 2 and April 3, 1981, that stated in pertinent part that: "I am the original, first

23   and sole inventor . . . or a joint inventor . . . of the invention entitled Video Signal Interpolation

24   Using Motion Estimation described and claimed in the attached specification; I do not know and

25   do not believe the same was ever known or used in the United States of America before my or

26   our invention thereof or more than one year prior to this application; to the best of my knowledge

27   and belief the same was not in public use or on sale in the United States of America more than

28   one year prior to this application; . . . I acknowledge my duty to disclose information of which I

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-10-

Exhibit 19
Page 000309

1   am aware which is material to the examination of this application. . . ." (b) On May 11, 1979,

2   Arun N. Netravali, one of the named inventors on the Netravali '272 patent, submitted an article

3   entitled "Picture Coding: A Review" for publication in the PROCEEDINGS OF THE IEEE,

4   Vol. 68, No.3, p. 366. The article was published in March 1980. The article was highly material

5   to the examination of the Netravali '272 patent and thus was required to be disclosed during the

6   prosecution under 37 C.F.R. 1.56. Nonetheless, the article was not disclosed during the

7   prosecution of the Netravali '272 patent, in spite of the fact that Netravali, himself, authored the

8   article.

9   **Haskell '226 patent**

10       The claims of the Haskell '226 patent are unenforceable as a result of the inequitable

11   conduct of the applicants, their attorneys and/or agents in the prosecution of the Haskell '226

12   patent. The inequitable conduct comprised intentional misrepresentations and omissions

13   including, without limitation, the following: (a) The sworn statement signed by the applicants

14   on or about September 25, 1989, which stated in pertinent part: "I believe I am an original, first

15   and joint inventor of the subject matter which is claimed and for which a patent is sought on the

16   invention entitled Conditional Motion Compensated Interpolation of Digital Motion Video the

17   specification of which is attached hereto . . . I acknowledge the duty to disclose information

18   which is material to the examination of this application in accordance with Title 37, Code of

19   Federal Regulations, 1.56(a)." (b) Barry G. Haskell, one of the named inventors on the Haskell

20   '226 patent, and Arun N. Netravali were the co-authors of a book entitled DIGITAL PICTURES:

21   REPRESENTATION AND COMPRESSION, which was published more than one year prior to

22   the date of the application for the Haskell '226 patent. DIGITAL PICTURES:

23   REPRESENTATION AND COMPRESSION was highly material to the examination of the

24   Haskell '226 patent, and thus was required to be disclosed during prosecution under 37 C.F.R.

25   1.56. Nevertheless, the inventors failed to cite this material reference during the examination of

26   the Haskell '226 patent.

27       To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

28   identifies additional factual and legal bases regarding unenforceability of any of the patents

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-11-

Exhibit 19
Page 000310

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully

2  herein. Gateway reserves the right to supplement its response to this interrogatory as discovery

3  progresses.

4  **INTERROGATORY NO. 3:**

5      For each Asserted Patent, Identify all factual and legal bases for Gateway's "Seventh

6  Defense (Waiver/Equitable Estoppel/Implied License)," asserted in Gateway's Third Amended

7  Answer and Counterclaims in Case No. 02-CV-2060 B (LSP), ¶¶ 106–110 (including any

8  subsequent amendments thereto).

9  **RESPONSE TO INTERROGATORY NO. 3:**

10      Gateway hereby incorporates by reference each and every one of its general objections

11 and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

12 to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

13 assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

14 this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

15 to the extent that it seeks information that is protected by the attorney-client privilege, work

16 product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

17 this interrogatory to the extent that it seeks disclosure of confidential information prior to the

18 entry of an appropriate protective order. Gateway will disclose confidential information only

19 after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

20 information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

21 confidential information of third parties that Gateway is under an obligation not to disclose.

22 Gateway objects to this interrogatory as compound and containing multiple subparts that should

23 be counted towards the total number of interrogatories allowed. Gateway objects to this

24 contention interrogatory as premature given the early stage of discovery. Gateway objects to this

25 interrogatory to the extent that it seeks the rendering of an expert opinion. Gateway objects to

26 this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure

27 law.

28

Exhibit 19
Page 000311

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 580
East Palo Alto, CA 94303-2225

1  Gateway purchases numerous software and hardware components from various suppliers

2  for incorporation into Gateway's computer products.  Lucent's infringement contentions for the

3  patents-in-suit concern the allegedly infringing functionality of these software and/or hardware

4  components purchased from third-party suppliers.  Upon information and belief, Lucent has

5  communicated directly or indirectly to these component suppliers that they would not be the

6  target of any infringement suits by Lucent concerning the patents-in-suit.  Upon information and

7  belief, these component suppliers have relied upon Lucent's communications and

8  representations.  Lucent's communications to the component suppliers, and these suppliers'

9  subsequent reliance on these communications, provide these suppliers with the right to practice

10  the patents-in-suit through the doctrine of equitable estoppel, waiver, and/or implied license.  As

11  a customer in privity with these component suppliers, Gateway is entitled to the benefit of any

12  rights by estoppel, waiver, and/or implied license or otherwise, to which the suppliers themselves

13  would be entitled as a defense to a claim for infringement by Lucent.

14  To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

15  identifies additional factual and legal bases regarding this defense for any of the patents asserted

16  by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully herein.

17  Gateway reserves the right to supplement its response to this interrogatory as discovery

18  progresses.

19  **INTERROGATORY NO. 4:**

20  For each Asserted Patent, Identify all factual and legal bases for Gateway's "Eighth

21  Defense (Laches)," asserted in Gateway's Third Amended Answer and Counterclaims in Case

22  No. 02-CV-2060 B (LSP), ¶ 111 (including any subsequent amendments thereto).

23  **RESPONSE TO INTERROGATORY NO. 4:**

24  Gateway hereby incorporates by reference each and every one of its general objections

25  and further objects on the specific grounds set forth below.  Gateway objects to this interrogatory

26  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

27  assumed the defense.  Such interrogatories should be directed to Microsoft.  Gateway objects to

28  this interrogatory as overly broad and unduly burdensome.  Gateway objects to this interrogatory

Exhibit 19
Page 000312

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  to the extent that it seeks information that is protected by the attorney-client privilege, work

2  product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

3  this interrogatory to the extent that it seeks disclosure of confidential information prior to the

4  entry of an appropriate protective order. Gateway will disclose confidential information only

5  after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

6  information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

7  confidential information of third parties that Gateway is under an obligation not to disclose.

8  Gateway objects to this interrogatory as compound and containing multiple subparts that should

9  be counted towards the total number of interrogatories allowed. Gateway objects to this

10  contention interrogatory as premature given the early stage of discovery. Gateway objects to this

11  interrogatory to the extent that it seeks the rendering of an expert opinion. Gateway objects to

12  this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure

13  law.

14      Subject to and without waiver of the foregoing general and specific objections, and to the

15  extent Gateway understands this interrogatory, Gateway responds as follows:

16  **Fleming '759 patent**

17      Lucent's damages claims related to the Fleming '759 patent are limited by the doctrine of

18  laches. Although the VGA standard was introduced by IBM in 1987, and the VBE standard was

19  promulgated throughout the computer industry by at least October 1991, Lucent delayed until

20  June 2002, eleven years later, when the technology had already become widely adopted, before

21  filing its complaint for patent infringement accusing Gateway of infringing the Fleming '759

22  patent by following the VGA and VBE standards.

23      To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

24  identifies additional factual and legal bases regarding laches for any of the patents asserted by

25  Lucent against Gateway, Gateway incorporates those bases here as if set forth fully herein.

26  Gateway reserves the right to supplement its response to this interrogatory as discovery

27  progresses.

28

-14-

Exhibit 19
Page 000313

**INTERROGATORY NO. 5:**

For each Asserted Patent, Identify all factual and legal bases for Gateway's "Tenth Defense (Joinder)," asserted in Gateway's Third Amended Answer and Counterclaims in Case No. 02-CV-2060 B (LSP), ¶ 113 (including any subsequent amendments thereto).

**RESPONSE TO INTERROGATORY NO. 5:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this contention interrogatory as premature given the early stage of discovery. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

Subject to and without waiver of the foregoing general and specific objections, and to the extent Gateway understands this interrogatory, Gateway responds that while Lucent's production and interrogatory responses are not yet complete with respect to the ownership of the Patents-in-Suit, the information currently available to Gateway indicates that other parties may need to be joined in this action including parties holding interests in the Patents-in-Suit pursuant to various financing agreements entered into by Lucent.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-15-

Exhibit 19
Page 000314

1    To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

2    identifies additional factual and legal bases regarding joinder for any of the patents asserted by

3    Lucent against Gateway, Gateway incorporates those bases here as if set forth fully herein.

4    Gateway reserves the right to supplement its response to this interrogatory as discovery

5    progresses.

6    **INTERROGATORY NO. 6:**

7    For each Asserted Patent, Identify all factual and legal bases for Gateway's "Eleventh

8    Defense (Unclean Hands)," asserted in Gateway's Third Amended Answer and Counterclaims in

9    Case No. 02-CV-2060 B (LSP), ¶ 114 (including any subsequent amendments thereto).

10   **RESPONSE TO INTERROGATORY NO. 6:**

11   Gateway hereby incorporates by reference each and every one of its general objections

12   and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

13   to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

14   assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

15   this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

16   to the extent that it seeks information that is protected by the attorney-client privilege, work

17   product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

18   this interrogatory to the extent that it seeks disclosure of confidential information prior to the

19   entry of an appropriate protective order. Gateway will disclose confidential information only

20   after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

21   information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

22   confidential information of third parties that Gateway is under an obligation not to disclose.

23   Gateway objects to this interrogatory as compound and containing multiple subparts that should

24   be counted towards the total number of interrogatories allowed. Gateway objects to this

25   contention interrogatory as premature given the early stage of discovery. Gateway objects to this

26   interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

27   Subject to and without waiver of the foregoing general and specific objections, and to the

28   extent Gateway understands this interrogatory, Gateway responds as follows: Lucent's

-16-

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

Exhibit 19
Page 000315

1    inequitable conduct with respect to the Doughty '356 patent, the Fleming '759 patent, the

2    Netravali '272 patent, and the Haskell '226 patent as described in Gateway's Response to

3    Interrogatory No. 2, and Lucent's improper conduct while participating in the VESA standards-

4    setting organization as described in Gateway's Response to Interrogatory No. 11 constitute

5    unclean hands that preclude Lucent from obtaining equitable relief.

6         To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

7    identifies additional factual and legal bases regarding unclean hands for any of the patents

8    asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully

9    herein. Gateway reserves the right to supplement its response to this interrogatory as discovery

10   progresses.

11   **INTERROGATORY NO. 7:**

12        For each Asserted Patent, Identify all factual and legal bases for Gateway's "Twelfth

13   Defense (Patent Misuse)," asserted in Gateway's Third Amended Answer and Counterclaims in

14   Case No. 02-CV-2060 B (LSP), ¶ 115 (including any subsequent amendments thereto).

15   **RESPONSE TO INTERROGATORY NO. 7:**

16        Gateway hereby incorporates by reference each and every one of its general objections

17   and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

18   to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

19   assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

20   this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

21   to the extent that it seeks information that is protected by the attorney-client privilege, work

22   product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

23   this interrogatory to the extent that it seeks disclosure of confidential information prior to the

24   entry of an appropriate protective order. Gateway will disclose confidential information only

25   after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

26   information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

27   confidential information of third parties that Gateway is under an obligation not to disclose.

28   Gateway objects to this interrogatory as compound and containing multiple subparts that should

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-17-

Exhibit 19
Page 000316

1  be counted towards the total number of interrogatories allowed. Gateway objects to this

2  contention interrogatory as premature given the early stage of discovery. Gateway objects to this

3  interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

4       Subject to and without waiver of the foregoing general and specific objections, and to the

5  extent Gateway understands this interrogatory, Gateway responds as follows: Lucent has

6  asserted against Gateway and others certain of the Patents-in-Suit that Lucent knows are invalid

7  and/or unenforceable. In addition, Lucent failed to disclose the existence of the Fleming '759

8  patent while participating in the VESA standards-setting organization as described in Gateway's

9  Response to Interrogatory No. 11. Such conduct constitutes patent misuse.

10       To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

11  identifies additional factual and legal bases regarding patent misuse for any of the patents

12  asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully

13  herein. Gateway reserves the right to supplement its response to this interrogatory as discovery

14  progresses.

15  **INTERROGATORY NO. 8:**

16       For each Asserted Patent, Identify all factual and legal bases for Gateway's "Thirteenth

17  Defense (Prior Settlements)," asserted in Gateway's Third Amended Answer and Counterclaims

18  in Case No. 02-CV-2060 B (LSP), ¶ 116 (including any subsequent amendments thereto).

19  **RESPONSE TO INTERROGATORY NO. 8:**

20       Gateway hereby incorporates by reference each and every one of its general objections

21  and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

22  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

23  assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

24  this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

25  to the extent that it seeks information that is protected by the attorney-client privilege, work

26  product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

27  this interrogatory to the extent that it seeks disclosure of confidential information prior to the

28  entry of an appropriate protective order. Gateway will disclose confidential information only

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-18-

Exhibit 19
Page 000317

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

2  information.  Gateway objects to this interrogatory to the extent that it seeks disclosure of

3  confidential information of third parties that Gateway is under an obligation not to disclose.

4  Gateway objects to this interrogatory as compound and containing multiple subparts that should

5  be counted towards the total number of interrogatories allowed.  Gateway objects to this

6  contention interrogatory as premature given the early stage of discovery.  Gateway objects to this

7  interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

8      Subject to and without waiver of the foregoing general and specific objections, and to the

9  extent Gateway understands this interrogatory, Gateway responds as follows:  Lucent has settled

10  infringement claims against and/or entered into licenses with entities related to the Patents-in-

11  Suit.  To the extent that under any such agreements Lucent has received or will receive payment

12  or other consideration for any of the alleged infringing acts of which Lucent now accuses

13  Gateway, Lucent cannot now recover damages for those same acts.

14      To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

15  identifies additional factual and legal bases regarding prior settlements for any of the patents

16  asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully

17  herein.  Gateway reserves the right to supplement its response to this interrogatory as discovery

18  progresses.

19  **INTERROGATORY NO. 9:**

20      For each Asserted Patent, Identify all factual and legal bases for Gateway's "Fourteenth

21  Defense (Waiver of Injunction)," asserted in Gateway's Third Amended Answer and

22  Counterclaims in Case No. 02-CV-2060 B (LSP), ¶ 117 (including any subsequent amendments

23  thereto).

24  **RESPONSE TO INTERROGATORY NO. 9:**

25      Gateway hereby incorporates by reference each and every one of its general objections

26  and further objects on the specific grounds set forth below.  Gateway objects to this interrogatory

27  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

28  assumed the defense.  Such interrogatories should be directed to Microsoft.  Gateway objects to

-19-

Exhibit 19
Page 000318

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1   this interrogatory as overly broad and unduly burdensome.  Gateway objects to this interrogatory

2   to the extent that it seeks information that is protected by the attorney-client privilege, work

3   product doctrine, or any other applicable privilege or protective doctrine.  Gateway objects to

4   this interrogatory to the extent that it seeks disclosure of confidential information prior to the

5   entry of an appropriate protective order.  Gateway will disclose confidential information only

6   after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

7   information.  Gateway objects to this interrogatory to the extent that it seeks disclosure of

8   confidential information of third parties that Gateway is under an obligation not to disclose.

9   Gateway objects to this interrogatory as compound and containing multiple subparts that should

10  be counted towards the total number of interrogatories allowed.  Gateway objects to this

11  contention interrogatory as premature given the early stage of discovery.  Gateway objects to this

12  interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

13          Subject to and without waiver of the foregoing general and specific objections, and to the

14  extent Gateway understands this interrogatory, Gateway responds as follows:  Lucent was a

15  member of MPEG and participated in the development of various MPEG coding standards

16  including MPEG-1, MPEG-2, and MPEG-4.  As required by the rules of this standard-setting

17  organization, Lucent promised to license its patents covering this standard on reasonable and

18  non-discriminatory terms.  In the present litigation, Lucent alleges that Gateway's compliance

19  with the MPEG video coding standards infringe the Netravali '272 patent, the Haskell '226

20  patent, and the Puri '878 patent.  By virtue of its promise to license these patents on reasonable

21  and non-discriminatory terms, Lucent has waived its right to an injunction for Gateway's alleged

22  infringement of these patents, and Lucent's remedy is therefore limited to a reasonable royalty.

23          To the extent that Microsoft, in its response to Lucent's first set of interrogatories,

24  identifies additional factual and legal bases regarding waiver of injunction for any of the patents

25  asserted by Lucent against Gateway, Gateway incorporates those bases here as if set forth fully

26  herein.  Gateway reserves the right to supplement its response to this interrogatory as discovery

27  progresses.

28

-20-

GATEWAY'S OBJECTIONS/RESPONSES TO LUCENT'S FIRST SET OF INTERROGATORIES TO GATEWAY (1-20)
Case No.: 02-CV-2060 B (LSP)

Exhibit 19
Page 000319

1   **INTERROGATORY NO. 10:**

2         Identify all factual and legal bases for Gateway's "Fifteenth Defense (Exhaustion/Have

3   Made Rights/Implied License/Estoppel for the Doughty Patent)," asserted in Gateway's Third

4   Amended Answer and Counterclaims in Case No. 02-CV-2060 B (LSP), ¶¶ 118–121 (including

5   any subsequent amendments thereto).

6   **RESPONSE TO INTERROGATORY NO. 10:**

7         Gateway hereby incorporates by reference each and every one of its general objections

8   and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

9   to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

10   assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

11   this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

12   to the extent that it seeks information that is protected by the attorney-client privilege, work

13   product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

14   this interrogatory to the extent that it seeks disclosure of confidential information prior to the

15   entry of an appropriate protective order. Gateway will disclose confidential information only

16   after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

17   information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

18   confidential information of third parties that Gateway is under an obligation not to disclose.

19   Gateway objects to this interrogatory as compound and containing multiple subparts that should

20   be counted towards the total number of interrogatories allowed. Gateway objects to this

21   contention interrogatory as premature given the early stage of discovery. Gateway objects to this

22   interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

23         Subject to and without waiver of the foregoing general and specific objections, and to the

24   extent Gateway understands this interrogatory, Gateway responds as follows: Lucent's claims

25   with respect to the Doughty '356 patent are barred by the doctrines of exhaustion, have-made

26   rights, implied license, and/or estoppel. In particular, pursuant to the break-up of AT&T, the

27   Doughty '356 patent was licensed to the Regional Bell Operating Companies, who in turn were

28   given the right to sub-license the patent. Gateway's customers who use the Caller ID feature pay

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-21-

Exhibit 19
Page 000320

1   their respective Regional Bell Operating Company a premium for Caller ID service. Under the

2   doctrines of exhaustion, implied license, and/or estoppel, Gateway's customers cannot infringe a

3   patent when they have paid a licensor/licensee for the privilege of practicing the patented

4   technology. Furthermore, because Gateway's customers are implicitly licensed, Gateway is

5   protected from infringement under the customers' rights to have products made for them that

6   enable them to practice and use the paid-for technology (i.e., Gateway's products come under the

7   customer's "have-made rights").

8        In addition, many of the accused products possess modem cards that have Caller ID

9   chipsets manufactured by either Lucent or 3Com. Under the doctrines of exhaustion and/or

10  implied license, Lucent cannot assert infringement against products that use Lucent's own chips

11  to perform the Caller ID functionality. Similarly, Lucent cannot assert infringement against

12  products that use 3Com's chips to perform the Caller ID functionality because 3Com is a Lucent

13  licensee. Gateway reserves the right to supplement its response to this interrogatory as discovery

14  progresses.

15  **INTERROGATORY NO. 11:**

16       Identify all factual and legal bases for Gateway's "Seventeenth Defense (Estoppel for the

17  Fleming '759 Patent)," asserted in Gateway's Third Amended Answer and Counterclaims in

18  Case No. 02-CV-2060 B (LSP), ¶¶ 123–126 (including any subsequent amendments thereto).

19  **RESPONSE TO INTERROGATORY NO. 11:**

20       Gateway hereby incorporates by reference each and every one of its general objections

21  and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

22  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

23  assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

24  this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

25  to the extent that it seeks information that is protected by the attorney-client privilege, work

26  product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

27  this interrogatory to the extent that it seeks disclosure of confidential information prior to the

28  entry of an appropriate protective order. Gateway will disclose confidential information only

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-22-

Exhibit 19
Page 000321

1   after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

2   information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

3   confidential information of third parties that Gateway is under an obligation not to disclose.

4   Gateway objects to this interrogatory as compound and containing multiple subparts that should

5   be counted towards the total number of interrogatories allowed. Gateway objects to this

6   contention interrogatory as premature given the early stage of discovery. Gateway objects to this

7   interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

8          Subject to and without waiver of the foregoing general and specific objections, and to the

9   extent Gateway understands this interrogatory, Gateway responds as follows: Lucent alleges that

10  computer systems that comply with the VESA Bios Extension ("VBE") standard infringe the

11  Fleming patent. During the period from at least January 1991 to March 1996, AT&T was a

12  member of the Video Electronics Standards Association ("VESA") and participated in the

13  development and approval of the VBE standard. During this period, AT&T manufactured and

14  sold computer systems, and participated in VESA through a number of representatives including,

15  but not limited to, Surinder Rai, Donald Mohn, and David Penley. Gateway has been a member

16  of VESA since at least July 1992.

17         AT&T, as a member of VESA, entered into a contract with VESA and its other members,

18  including Gateway, whereby the parties agreed to work together to create standards to be used by

19  computer manufacturers such as Gateway. The terms of this contract included at least the VESA

20  by-laws and policies adopted by the VESA board of directors.

21         During the period from at least August 1991 to December 1994, the VESA Patent and

22  Trademark Policy provided that:

23             No VESA standard shall include patented technology, trademarked
               terms and/or copyrighted material unless the entire voting
24             membership is made aware of such inclusion.

25             Any VESA representative with knowledge of patented technology,
               trademarked terms and/or copyrighted material being considered
26             for inclusion in a VESA standard must immediately disclose this
               information.
27

28         On information and belief, the allegedly infringing aspects of the VBE standard were first

    adopted in October 1991, and maintained in subsequent revisions of the VBE standard, including

                                              -23-

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

Exhibit 19
Page 000322

1  revisions after Gateway became a member. By virtue of its membership in VESA, AT&T had a

2  duty to disclose the Fleming patent, but AT&T failed to make the required disclosure and is

3  therefore estopped to assert infringement against the VBE standard. As the successor in interest

4  to AT&T, Lucent is similarly estopped. Gateway reserves the right to supplement its response to

5  this interrogatory as discovery progresses.

6  **INTERROGATORY NO. 12:**

7        For each Asserted Patent, Identify all factual and legal bases for Gateway's "Eighteenth

8  Defense (Release/Accord and Satisfaction)," asserted in Gateway's Third Amended Answer and

9  Counterclaims in Case No. 02-CV-2060 B (LSP), ¶¶ 127–129 (including any subsequent

10  amendments thereto).

11  **RESPONSE TO INTERROGATORY NO. 12:**

12        Gateway hereby incorporates by reference each and every one of its general objections

13  and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

14  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

15  assumed the defense. Such interrogatories should be directed to Microsoft. Gateway objects to

16  this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory

17  to the extent that it seeks information that is protected by the attorney-client privilege, work

18  product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to

19  this interrogatory to the extent that it seeks disclosure of confidential information prior to the

20  entry of an appropriate protective order. Gateway will disclose confidential information only

21  after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

22  information. Gateway objects to this interrogatory to the extent that it seeks disclosure of

23  confidential information of third parties that Gateway is under an obligation not to disclose.

24  Gateway objects to this interrogatory as compound and containing multiple subparts that should

25  be counted towards the total number of interrogatories allowed. Gateway objects to this

26  contention interrogatory as premature given the early stage of discovery. Gateway objects to this

27  interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

28

<div style="text-align:left; writing-mode:vertical-rl;">DEWEY BALLANTINE LLP<br/>1950 University Avenue, Suite 500<br/>East Palo Alto, CA 94303-2225</div>

-24-

Exhibit 19<br/>Page 000323

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  Subject to and without waiver of the foregoing general and specific objections, and to the

2  extent Gateway understands this interrogatory, Gateway responds as follows:  Gateway and

3  Lucent entered into a settlement agreement on December 13, 2000.  The settlement agreement

4  contained an explicit and unambiguous general release, through which Gateway and Lucent

5  agreed to release each other from:

6        any and all claims, suits, judgments, agreements, promises,
      demands, debts, losses, obligations, liabilities, costs, expenses,

7        rights of action and causes of action, of any kind or character
      whatsoever, whether known or unknown, suspected or unexpected,

8        based upon facts occurring prior to the date hereof or which may
      be hereafter claimed to arise out of any action, inaction, event, or

9        matter based upon facts occurring prior to the date hereof.

10  By virtue of this settlement agreement, Lucent's claims against Gateway in this lawsuit are

11  barred under the doctrines of release and accord and satisfaction.  Gateway reserves the right to

12  supplement its response to this interrogatory as discovery progresses.

13  **INTERROGATORY NO. 13:**

14  For each Asserted Patent, Identify all factual and legal bases for Gateway's "Twentieth

15  Defense (28 U.S.C. § 1498(a))," asserted in Gateway's Third Amended Answer and

16  Counterclaims in Case No. 02-CV-2060 B (LSP), ¶ 131 (including any subsequent amendments

17  thereto).

18  **RESPONSE TO INTERROGATORY NO. 13:**

19  Gateway hereby incorporates by reference each and every one of its general objections

20  and further objects on the specific grounds set forth below.  Gateway objects to this interrogatory

21  to the extent that it seeks discovery regarding claims as to which Microsoft has intervened and

22  assumed the defense.  Such interrogatories should be directed to Microsoft.  Gateway objects to

23  this interrogatory as overly broad and unduly burdensome.  Gateway objects to this interrogatory

24  to the extent that it seeks information that is protected by the attorney-client privilege, work

25  product doctrine, or any other applicable privilege or protective doctrine.  Gateway objects to

26  this interrogatory to the extent that it seeks disclosure of confidential information prior to the

27  entry of an appropriate protective order.  Gateway will disclose confidential information only

28  after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such

-25-

Exhibit 19
Page 000324

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1  information.  Gateway objects to this interrogatory to the extent that it seeks disclosure of

2  confidential information of third parties that Gateway is under an obligation not to disclose.

3  Gateway objects to this interrogatory as compound and containing multiple subparts that should

4  be counted towards the total number of interrogatories allowed.  Gateway objects to this

5  contention interrogatory as premature given the early stage of discovery.  Gateway objects to this

6  interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

7       Subject to and without waiver of the foregoing general and specific objections, and to the

8  extent Gateway understands this interrogatory, Gateway responds as follows:  To the extent that

9  Gateway has manufactured or used an invention by or for the United States, Lucent's sole

10  remedy for such alleged infringement is by action against the United States in the U.S. Court of

11  Federal Claims pursuant to 28 U.S.C. § 1498(a).  Gateway reserves the right to supplement its

12  response to this interrogatory as discovery progresses.

13  **INTERROGATORY NO. 14:**

14       Identify each product made, used, licensed, distributed, sold, or offered for sale in the

15  United States, or imported into the United States, by or for Gateway since June 6, 1996, that is

16  capable of taking any part in coding, decoding, compressing, and/or decompressing data

17  representing video, including without limitation coding, decoding, compressing, and/or

18  decompressing data representing video in accordance with or Compliant with any portion of the

19  MPEG-1 Standard, the MPEG-2 Standard, and/or the MPEG-4 Standard, and for each such

20  product, separately Identify every portion or component thereof (whether hardware or software)

21  capable of taking any part in coding, decoding, compressing, and/or decompressing data

22  representing video, and Identify every portion of the MPEG-1 Standard, the MPEG-2 Standard,

23  and/or the MPEG-4 Standard with which the product is Compliant.

24  **RESPONSE TO INTERROGATORY NO. 14:**

25       Gateway hereby incorporates by reference each and every one of its general objections

26  and further objects on the specific grounds set forth below.  Gateway objects to this interrogatory

27  as overly broad and unduly burdensome.  Gateway objects to this interrogatory as vague and

28  ambiguous, including, without limitation, its use of the phrase "taking any part in."  Gateway

Exhibit 19
Page 000325

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

1    objects to this interrogatory to the extent that it seeks information that is protected by the

2    attorney-client privilege, work product doctrine, or any other applicable privilege or protective

3    doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of

4    confidential information prior to the entry of an appropriate protective order. Gateway will

5    disclose confidential information only after entry of an appropriate protective order sufficient to

6    guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the

7    extent that it seeks disclosure of confidential information of third parties that Gateway is under

8    an obligation not to disclose. Gateway objects to this interrogatory as compound and containing

9    multiple subparts that should be counted towards the total number of interrogatories allowed.

10   Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a

11   question of pure law.

12          Subject to and without waiver of the foregoing general and specific objections, and to the

13   extent Gateway understands this interrogatory, Gateway responds as follows:  To the extent that

14   Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory,

15   pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents

16   located after a reasonable search.

17   **INTERROGATORY NO. 15:**

18          Identify each product made, used, licensed, distributed, sold, or offered for sale in the

19   United States, or imported into the United States, by or for Gateway since June 6, 1996, that is

20   capable of taking any part in coding, decoding, compressing, and/or decompressing data

21   representing speech, including without limitation coding, decoding, compressing, and/or

22   decompressing data representing speech in accordance with or Compliant with any portion of

23   ITU-T Recommendations G.723, G.723.1, G.728, G.729, and/or H.323, and for each such

24   product, separately Identify every portion or component thereof (whether hardware or software)

25   capable of taking any part in coding, decoding, compressing, and/or decompressing data

26   representing speech, and Identify every portion of ITU-T Recommendations G.723, G.723.1,

27   G.728, G.729, and/or H.323 with which the product is Compliant.

28   ///

-27-

Exhibit 19
Page 000326

**RESPONSE TO INTERROGATORY NO. 15:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory as vague and ambiguous, including, without limitation, its use of the phrase "taking any part in." Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

Subject to and without waiver of the foregoing general and specific objections, and to the extent Gateway understands this interrogatory, Gateway responds as follows: To the extent that Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory, pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents located after a reasonable search.

**INTERROGATORY NO. 16:**

Identify each Video Display Product made, used, licensed, distributed, sold, or offered for sale in the United States, or imported into the United States, by or for Gateway between June 6, 1996 and May 19, 2001, whether made, used, licensed, distributed, sold, offered for sale, or imported separately or as part of a Computer Product or Computer Peripheral Product, and separately Identify every VGA Display Mode and VBE Display Mode that each such Video Display Product supports.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-28-

Exhibit 19
Page 000327

**RESPONSE TO INTERROGATORY NO. 16:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

Subject to and without waiver of the foregoing general and specific objections, and to the extent Gateway understands this interrogatory, Gateway responds as follows: To the extent that Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory, pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents located after a reasonable search.

**INTERROGATORY NO. 17:**

Identify each product made, used, licensed, distributed, sold, or offered for sale in the United States, or imported into the United States, by or for Gateway between June 6, 1996 and November 10, 2000 (whether separately or as part of a Computer Product), that includes any version of Microsoft NetMeeting and any version of Microsoft Paint (including without limitation, any Computer Product that includes any version of Microsoft Windows 95 OEM Service Pack 2, Microsoft Windows 98, Microsoft Windows 98 SE, Microsoft Windows ME, or Microsoft Windows NT 4.0), and separately for each type of product identified (i.e. model number), state the version of Microsoft NetMeeting and the version of Microsoft Paint included.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-29-

Exhibit 19
Page 000328

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

**RESPONSE TO INTERROGATORY NO. 17:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

Subject to and without waiver of the foregoing general and specific objections, and to the extent Gateway understands this interrogatory, Gateway responds as follows: To the extent that Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory, pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents located after a reasonable search.

**INTERROGATORY NO. 18:**

Identify each product made, used, licensed, distributed, sold, or offered for sale in the United States, or imported into the United States, by or for Gateway since June 6, 1996 (whether separately or as part of a Computer Product), that includes any version of Microsoft Money, Microsoft Works, Microsoft Works Suite, Microsoft Outlook, Microsoft Outlook with Business Contact Manager, Microsoft Office, Microsoft Pocket PC Expense, and/or Intuit Quicken, and separately for each type of product identified (i.e. model number), state the version of Microsoft Money, Microsoft Works, Microsoft Works Suite, Microsoft Outlook, Microsoft Outlook with

-30-

Exhibit 19
Page 000329

1   Business Contact Manager, Microsoft Office, Microsoft Pocket PC Expense, and Intuit Quicken

2   included.

3   **RESPONSE TO INTERROGATORY NO. 18:**

4       Gateway hereby incorporates by reference each and every one of its general objections

5   and further objects on the specific grounds set forth below. Gateway objects to this interrogatory

6   as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that

7   it seeks information that is protected by the attorney-client privilege, work product doctrine, or

8   any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the

9   extent that it seeks disclosure of confidential information prior to the entry of an appropriate

10   protective order. Gateway will disclose confidential information only after entry of an

11   appropriate protective order sufficient to guarantee the confidentiality of all such information.

12   Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential

13   information of third parties that Gateway is under an obligation not to disclose. Gateway objects

14   to this interrogatory as compound and containing multiple subparts that should be counted

15   towards the total number of interrogatories allowed. Gateway objects to this interrogatory to the

16   extent that it calls for a legal conclusion or presents a question of pure law.

17       Subject to and without waiver of the foregoing general and specific objections, and to the

18   extent Gateway understands this interrogatory, Gateway responds as follows: To the extent that

19   Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory,

20   pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents

21   located after a reasonable search.

22   **INTERROGATORY NO. 19:**

23       Identify each Stylus-Based Product made, used, licensed, distributed, sold, or offered for

24   sale in the United States, or imported into the United States, by or for Gateway since June 6,

25   1996, and separately for each type of product identified (i.e. model number), state the type and

26   version of operating system included with such type of product (*e.g.*, Windows Pocket PC 2002

27   Premium or Windows XP Tablet PC Edition).

28   ///

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-31-

Exhibit 19
Page 000330

**RESPONSE TO INTERROGATORY NO. 19:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protective doctrine. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information prior to the entry of an appropriate protective order. Gateway will disclose confidential information only after entry of an appropriate protective order sufficient to guarantee the confidentiality of all such information. Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential information of third parties that Gateway is under an obligation not to disclose. Gateway objects to this interrogatory as compound and containing multiple subparts that should be counted towards the total number of interrogatories allowed. Gateway objects to this interrogatory to the extent that it calls for a legal conclusion or presents a question of pure law.

Subject to and without waiver of the foregoing general and specific objections, and to the extent Gateway understands this interrogatory, Gateway responds as follows: To the extent that Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory, pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents located after a reasonable search.

**INTERROGATORY NO. 20:**

Identify each Caller ID Product made, used, licensed, distributed, sold, or offered for sale in the United States, or imported into the United States, by or for Gateway between June 6, 1996 and July 12, 2003, whether made, used, licensed, distributed, sold, offered for sale, or imported separately or as part of a Computer Product or Computer Peripheral Product.

**RESPONSE TO INTERROGATORY NO. 20:**

Gateway hereby incorporates by reference each and every one of its general objections and further objects on the specific grounds set forth below. Gateway objects to this interrogatory as overly broad and unduly burdensome. Gateway objects to this interrogatory to the extent that

-32-

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

Exhibit 19
Page 000331

1    it seeks information that is protected by the attorney-client privilege, work product doctrine, or

2    any other applicable privilege or protective doctrine.  Gateway objects to this interrogatory to the

3    extent that it seeks disclosure of confidential information prior to the entry of an appropriate

4    protective order.  Gateway will disclose confidential information only after entry of an

5    appropriate protective order sufficient to guarantee the confidentiality of all such information.

6    Gateway objects to this interrogatory to the extent that it seeks disclosure of confidential

7    information of third parties that Gateway is under an obligation not to disclose.  Gateway objects

8    to this interrogatory as compound and containing multiple subparts that should be counted

9    towards the total number of interrogatories allowed.  Gateway objects to this interrogatory to the

10   extent that it calls for a legal conclusion or presents a question of pure law.

11         Subject to and without waiver of the foregoing general and specific objections, and to the

12   extent Gateway understands this interrogatory, Gateway responds as follows:  To the extent that

13   Gateway and Lucent reach an agreement regarding the appropriate scope for this interrogatory,

14   pursuant to Fed. R. Civ. P. 33(d), Gateway will produce responsive non-privileged documents

15   located after a reasonable search.

16   Dated:  March 29, 2004                    DEWEY BALLANTINE LLP

17

18                                            By: _____
19                                                   Jonathan D. Baker

20                                            ATTORNEYS FOR DEFENDANTS AND
                                             COUNTER-CLAIMANTS GATEWAY, INC.,
21                                           GATEWAY COUNTRY STORES LLC,
                                             GATEWAY COMPANIES, INC., GATEWAY
22                                           MANUFACTURING LLC AND
                                             COWABUNGA ENTERPRISES, INC.

23   Additional Counsel for Defendants and Counter-Claimants
     GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC.,
24   GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.

25   Jonathan D. Baker (SBN 196062)
     DEWEY BALLANTINE LLP
26   1950 University Avenue, Suite 500
     East Palo Alto, CA  94303
27   Telephone:  (650) 845-7000
     Facsimile:  (650) 845-7333
28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-33-

Exhibit 19
Page 000332

1  David G. Hetzel
   Ronald W. Zdrojeski
2  Mark A. Walsh
   LeBOEUF, LAMB, GREENE & MACRAE, LLP
3  Goodwin Square, 225 Asylum Street
   Hartford, CT  06103
4  Telephone:  (860) 293-3500
   Facsimile:  (860) 293-3555
5
   David J. Zubkoff (SBN 149488)
6  SELTZER CAPLAN McMAHON VITEK
   750 "B" Street, Suite 2100
7  San Diego, CA  92101
   Telephone:  (619) 685-3003
8  Facsimile:  (619) 685-3100

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225

-34-

Exhibit 19
Page 000333

# EXHIBIT A

Exhibit 19
Page 000334

Exhibit A to Gateway's Responses to Lucent's First Set of Interrogatories

Patent and Publications Pertinent to Gateway's Invalidity Contentions

**A.**   United States Patent No. 4,439,759 (Fleming)

    1.    U.S. Patent No. 3,309,692, Character Display Apparatus, Carl R. Wilhelmsen

    2.    U.S. Patent No. 3,335,416, Character Display Systems, G. Hughes

    3.    U.S. Patent No. 3,408,943, Pattern Generator, Solomon Manber

    4.    U.S. Patent No. 3,422,419, Generation Of Graphic Arts Images, Max V. Mathews

    5.    U.S. Patent No. 3,603,962, Color Display for Computer Terminal, Bernard Joseph Lechner

    6.    U.S. Patent No. 3,624,634, Color Display, Robert John Clark

    7.    U.S. Patent No. 3,771,155, Color Display System, Yukitaka Hayashi

    8.    U.S. Patent No. 3,925,776, Display Terminal System, Ronald J. Swallow

    9.    U.S. Patent No. 4,091,374, Method for Pictorially Displaying Output Information Generated By An Object Imaging, Karl-Heinz Muller

    10.    U.S. Patent No. 4,121,283, Interface Device for Encoding a Digital Image for a CRT Display, James Terrell Walker

    11.    U.S. Patent No. 4,149,184, Multi-Color Video Display Systems Using More Than One Signal Source

    12.    U.S. Patent No. 4,206,457, Color Display Using Auxiliary Memory for Color Information, Joseph A. Weisbecker

    13.    U.S. Patent No. 4,225,861, Method and Means for Texture Display in Raster Scanned Color Graphic, Glen G. Langdon, Jr.

    14.    U.S. Patent No. 4,232,311, Color Display Apparatus, Roi D. Agneta

    15.    U.S. Patent No. 4,233,601, Display System, Harold C.A. Hankins

    16.    U.S. Patent No. 4,237,543, Microprocessor Controlled Display System, Yoji Nishio

    17.    U.S. Patent No. 4,243,984, Video Display Processor, David A. Ackley

Exhibit 19
Page 000335

18.  U.S. Patent No. 4,303,912, Digitally Controlled Composite Color Video Display System, Irvin G. Stafford

19.  U.S. Patent No. 4,303,986, Data Processing System and Apparatus for Color Graphics Display, Hakan Lans

20.  U.S. Patent No. 4,342,029, Color Graphics Display Terminal, Ilmars A. Hofmanis

21.  U.S. Patent No. 4,454,593, Pictorial Information Processing Technique, James R. Fleming

22.  U.S. Patent No. 4,471,465, Video Display System with Multicolor Graphics Selection, Steven T. Meyer

23.  JP 54122031A, Television Screen Display Unit, Matsushita Akira

24.  JP 55109935A, Colorimetric Display Unit, Kiyohara Yuji

25.  JP 55121574A, Memory Controller, Arakawa Takeshi

26.  AT&T, "Summary of Videotex Standards Issues", AT&T Contribution to Study Group I, International Telegraph & Telephone Consultative Committee (CCITT), Contribution No. 178 (Jun. 20, 1979)

27.  AT&T, "Videotex Standards Issues", AT&T Contribution to Study Group VIII, International Telegraph & Telephone Consultative Committee (CCITT), Contribution No. 130 (Jun. 11, 1979)

28.  S. Berkman, "A Videotex Trial", Viewdata and Videotext, 1980-81:  A Worldwide Report, p. 447 (1980)

29.  Gregor v. Bochmann & Jan Gecsei, "Towards Videotex Standards", Viewdata and Videotext, 1980-81:  A Worldwide Report, p. 253 (1980)

30.  H.G. Brown, et al., "Picture Description Instructions PDI for the Telidon Videotex System", CRC Technical Note No. 699-E, Communications Research Centre Canada (Nov. 1979)

31.  H. G. Brown et al., "Telidon Technology Development in Canada", Viewdata and Videotext, 1980-81:  A Worldwide Report, p. 547 (1980)

32.  K. E. Clarke, "What Kind of Pictures for Videotex?", Viewdata and Videotext, 1980-81:  A Worldwide Report, p. 83 (1980)

33.  Peter B. Denes, "Computer Graphics in Color", Bell Laboratories Record, vol. 52, no. 5, p. 138 (May 1974)

34.  James D. Foley, et al., "Raster Graphics Extensions to the Graphics Compatibility System (GCS)", Misc. Paper O-79-3, Final Report (Mar. 1979)

-2-

Exhibit 19
Page 000336

35.    James D. Foley, et al., "Some Raster Graphics Extensions to the Core System", Computer Graphics, vol. 13, no. 2, p. 15 (Aug. 1979)

36.    Herbert Guttman & Johann Weiss, "Device Independent and Decentralized Graphic Systems", Computer Graphics, vol. 13, no. 2, p. 288 (Aug. 1979)

37.    Morton H. Lewin, "An Introduction to Computer Graphics Terminals", Proceedings of the IEEE, vol. 55, no. 9, p. 1544 (Sept. 1967).

38.    Douglas F. Parkhill, "An Overview of the Canadian Scene", Viewdata and Videotext, 1980-81:  A Worldwide Report, p. 559 (1980)

39.    "Status Report of the Graphics Standards Planning Committee", Computer Graphics, vol. 13, no. 3 (Aug. 1979)

40.    Jack Stifle, "The Plato IV Student Terminal", Proceedings of the Society for Information Display, vol. 13, no. 1 (1st quarter 1972)

41.    Joshi, C.S., et al., "A Video Rate Two Dimensional FFT Processor", ICASSP 80 Procee dings, IEEE International Conference on Acoustics, Speech and Signal Processing, Part III, p. 774-7 (1980).

42.    Herman, M., et al., "A Next Generation CRT Controller," Midcon/80 Conference Record, p. 22/5/1-11 (1981).

43.    Herman, M., et al., "A Next Generation CRT Controller," Electro/81 Conference Record, p. 15/4/1-11 (1981).

44.    Diamond, T., "Display Memory Addressing (Microprocessors)," New Electronics, vol. 14, no. 16, p. 47, 49 (August 18, 1981).

45.    Van Daele, J., et al., "A Real-Time and Interactive Image Processing Display Terminal," Proceedings of the S.I.D. vol. 22, no. 3, p. 145-51 (May 1981).

46.    Herman, M., "Video Display Terminal with 26 Chips," Elektronik Applikation, vol. 13, no. 5, p. 43-9 (June 1981).

47.    Moyer, P.C., "Poking the Apple's Screen," Kilobaud Microcomputing, vol. 5, no. 6, p. 102-3 (June 1981).

48.    Recters, K., "Dithering Eights (Overlaying Gray Scale Image Processor), Creative Computing, vol. 7, no. 1, p. 108 (January 1981).

49.    Hartung, J., "Architecture for a Video Frame Processor" Proceedings of the Society of Photo-Optical Instrumentation Engineers, vol. 249, p. 146-52 (1980).

50.    Khristov, H.R., "Analysis of Alpha-Numeric TV – Images," Problemy na Tekhnicheskata Kibernetika, no. 11, p. 49-55 (1981).

EXHIBIT "A" TO GATEWAY'S OBJECTIONS/RESP. TO LUCENT'S 1ST SET OF ROGS (1-20)
Case No.: 02-CV-2060 B (LSP)

Exhibit 19
Page 000337

51.   Fogarty, G.T., "Memory Considerations for a Microprocessor Video Interface System", Microprocessors and Microsystems, vol. 5, no. 2, p. 74-5 (March 1981).

52.   Noble, S.C., et al., "Digital Video Simulation," Proceedings of the Society of Photo-Optical Instrumentation Engineers, vol. 222, p. 141-7 (1980).

53.   Frost, J.B., et al., "Color Enhances Computer Graphics System", Hewlett-Packard Journal, vol. 31, no. 12, p. 3-5 (1980).

54.   Schulz, R.A., "Interactive Graphics Terminal," IBM Technical Disclosure Bulletin, vol. 23, no. 5, p. 1770-9 (October 1980).

55.   Destombes, F., et al., "Raster Scan TV Interface," IBM Technical Disclosure Bulletin", Vol. 22, no 11, p. 4954 (April 1980).

56.   Eskenazi, R., et al., "Real-time Video-image Analysis," NASA Tech Briefs, vol. 4, no. 1, p. 20 (Spring 1979).

57.   Katevenis, M.G., et al., "Implementation of the FFT Algorithm Using the M6800 Microprocessor," Proceedings of the 1979 International Symposium on Circuits and Systems, p. 973-4 (1979).

58.   N/A, "Video Screen Games," Funkschau, vol. 51, no. 8, p. 448 (April 12, 1979).

59.   Hon, R.W., et al., "The Effect of Computer Architecture on Algorithm Decomposition and Performance," High Speed Computer and Algorithm Organization, p. 411-23 (1977).

60.   N/A, "The 2636 PVI (Programmable Video Interface), Elettronica Oggi, no. 4, p. 83-4 (April 1978).

61.   Adams, J., "New Concepts in Display Technology," Computer, vol. 10, no. 8, p. 61-9 (August 1977).

62.   Baskett, F., et al., "The Design of a Low Cost Video Graphics Terminal," Computer Graphics, vol. 10, no. 2, p. 235-40 (Summer 1976).

63.   Kajiya, J.T., et al., "A Random-Access Video Frame Buffer," Proceedings of the Conference on Computer Graphics, Pattern Recognition, and Data Structure, p. 1-6 (1975).

64.   Kuruma, T., et al., "Digitgal Fields Store Television Standards Converter," International Broadcasting Convention, p. 104-13 (1974).

65.   Onoe, M., "A Fast Algorithm for a Two-Dimensional Transform and its Application to Digital Image Processing", 2nd USA-Japan Computer Conference

EXHIBIT "A" TO GATEWAY'S OBJECTIONS/RESP. TO LUCENT'S 1ST SET OF ROGS (1-20)
Case No.: 02-CV-2060 B (LSP)

Exhibit 19
Page 000338

Proceedings, p. 97-101 (1975).

Gateway incorporates by reference any additional prior art identified by Dell in its response to Interrogatory No. 1 regarding this patent.

**B.    United States Patent No. 4,582,956 (Doughty)**

1.    U.S. Patent No. 2,889,402, Identifier-Recorder, Pearsall, Jr.

2.    U.S. Patent No. 3,591,722, Circuit Arrangement For Data Processing Telephone Exchange Installations With Systems For Message Transmission, Helmut Palsa.

3.    U.S. Patent No. 3,686,440, Telephone Calling-Station Identification, Kroeger

4.    U.S. Patent No. 3,727,003, Decoding and Display Apparatus for Groups of Pulse Trains, Paraskevakos

5.    U.S. Patent No. 3,787,626, System for Automatic Identification of Calling Party's Telephone Number To Receiving Party, Carlos Subieta

6.    U.S. Patent No. 3,868,640, Interrogation Of Remote Stations Via Automatic Dialler, Alexander Joseph Binnie, et al.

7.    U.S. Patent No. 3,881,060, Emergency Reporting System, Connell & Zarouni

8.    U.S. Patent No. 3,904,830, Call Tracing and Identification System, Every, Sr., & McCabe

9.    U.S. Patent No. 3,946,158, Video-Telephone System Initially Signifies Caller to Called Subscriber, Leclercq, Poirier, Guichard

10.    U.S. Patent No. 4,028,733, Pictorial Information Retrieval System, Ulicki

11.    U.S. Patent No. 4,071,699, Apparatus Providing for the Remote Display of Calling Numbers in a Telephone System, Jovic & Rinker

12.    U.S. Patent No. 4,081,614, Supervised Single Link Telephone System, Dahlquist & Singhi

13.    U.S. Patent No. 4,121,052, Telephone Data Recording System, Richard

14.    U.S. Patent No. 4,140,882, Methods And Apparatus For Special Status Indication In Telephone Systems, John F. Regan, et al.

15.    U.S. Patent No. 4,165,446, Data Transmission Systems (Using Internal Systems Equipment, Services and Procedures of Telephone Companies), Flowers &

-5-

Exhibit 19
Page 000339

MacDonnell

16. U.S. Patent No. 4,236,245, Ring Communication System Data Packets Reusable a Variable Number of Times, Freeny et al.

17. U.S. Patent No. 4,241,238, Telephone Number Memory and Indicator System, Strand

18. U.S. Patent No. 4,242,539, Telephone Information Displaying Device, Kazuo Hashimoto

19. U.S. Patent No. 4,249,165, Digital Radio Pager, Toshihiro Tori.

20. U.S. Patent No. 4,256,928, Telephone Call Diverting and Answering System, Lesea et al.

21. U.S. Patent No. 4,277,649, Method and Apparatus for Screening Telephone Calls, Sheinbein

22. U.S. Patent No. 4,286,118, Data Distribution System for Private Automatic Branch Exchange, Mehaffey & Szlam

23. U.S. Patent No. 4,289,931, Security Identification System Using Pulse Code Modulation, Donald G. Baker

24. U.S. Patent No. 4,291,198, General-Purpose Electronic Telephone Station Set, Anderson et al.

25. U.S. Patent No. 4,296,282, Incoming Call Identification Arrangement, O'Neil, Quinn, Wang

26. U.S. Patent No. 4,310,726, Method of Identifying a Calling Station at a Call Terminating Facility, Asmuth

27. U.S. Patent No. 4,375,083, Signal Sequence Editing Method and Apparatus With Automatic Time Fitting of Edited Segments, Maxemchuk

28. U.S. Patent No. 4,375,582, Telephone Answering System and Method, Gist, & Carruth, Jr.

29. U.S. Patent No. 4,383,138, Method And Apparatus For Processing Coded Information Received Through A Telephone Line During The Inter-Ringing Periods, Marcelo Castro, et al.

30. U.S. Patent No. 4,440,988, Modem With Low Part Count and Improved Demodulator, Heatherington

31. U.S. Patent No. 4,443,664, Telephone Station Incorporating Exchange Message System, Gange

-6-

Exhibit 19
Page 000340

32.   U.S. Patent No. 4,450,320, Dialing Device With Calling Number and Identification Memory and Method for Using Same, Ostermann, & Lissner

33.   U.S. Patent No. 4,456,925, Automatic Dialing, Skerlos et al.

34.   U.S. Patent No. 4,503,288, Intelligent Telephone, Kessler

35.   U.S. Patent No. 4,511,764, Telephonic Display Device, Nakayama, Sato, Kunii

36.   U.S. Patent No. 4,513,175, Automatic Calling Systems for Accessing Communications Networks, Smith

37.   U.S. Patent No. 4,521,643, Apparatus for Transmitting Information Via Telephone Lines, Dupuis & Hinz

38.   U.S. Patent No. 4,528,658, Telecommunication System With a Multiplicity of Modular Units Interchanging Digital Messages, Israel

39.   U.S. Patent No. 4,551,581, Method and Apparatus for Sending a Data Message to a Selected Station During a Silent Interval Between Ringing, Doughty

40.   U.S. Patent No. 4,551,764, Video Camera, Ogawa

41.   U.S. Patent No. 4,567,323, Method and Apparatus for Providing a Plurality of Special Services, Lottes & Swinehart

42.   U.S. Patent No. 4,562,436, Data Communication Network, Coleman & Rubin

43.   U.S. Patent No. 4,591,665, Method and Apparatus for Providing Call Tracing Service, Foster, Lottes, Swinehart

44.   U.S. Patent No. 4,601,011, User Authorization Verification Apparatus for Computer Systems Including a Central Device and a Plurality of Pocket Sized Remote Units, Grynberg

45.   U.S. Patent No. 4,645,874, Message Routing Through Data Communication Networks, Fildes

46.   U.S. Patent No. 4,747,124, PBX Telephone Call Control System, Ladd

47.   U.S. Patent No. Re 31,789, Telephone Information Displaying Device, Hashimoto

48.   DE 2538820

49.   DE 2720435

50.   DE 3025462

51.   EP 0076646 A1, Calling Line Tracing System and Identification Detector, Pintos,

-7-

Exhibit 19
Page 000341

Catoira, & Da Costa Ribeiro Neto

52. EP 0082512, Method For The Transmission Of Alphanumeric Characters, Norbert Springer, et al.

53. FR 2183442

54. JP 54131802 A, Composite Exchange Network, Yoshirou

55. JP 56093454 A, Incoming Call Connection Control System, Takayuki & Kunitaka

56. JP 58111552 A, Data Terminal Exchanging Method, Shuichi

57. E.G. DeNigris, J.J. Shanley, P.S. Weisman and R.W. Keltgen, "New Features of the 911 Emergency Service Number", Telephone Engineer & Management (May 1982).

58. Carr, "Telephone Service Observing," Telecommunications, November 1979.

59. "Telident Inc. (Los Angeles, Cal.) Has Developed a New System Which Lets You Know Who is Calling You When Your Telephone Rings Before You Pick Up the Receiver," Electronic Design, September 1973.

Gateway incorporates by reference any additional prior art identified by Dell in its response to Interrogatory No. 1 regarding this patent.

## C.    U.S. Patent No. 4,383,272 (Netravali)

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

## D.    U.S. Patent No. 4,958,226 (Haskell)

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

## E.    U.S. Patent No. 5,227,878 (Puri)

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

-8-

Exhibit 19
Page 000342

**F.**    **U.S. Patent No. 4,317,956 (Torok)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

**G.**    **U.S. Patent No. 4,617,676 (Jayant)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

**H.**    **U.S. Patent No. 4,763,356 (Day)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

**I.**    **U.S. Patent No. 4,910,781 (Ketchum)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

**J.**    **U.S. Patent No. 5,347,295 (Agulnick)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

**K.**    **U.S. Patent No. 4,701,954 (Atal)**

Gateway incorporates by reference the prior art regarding this patent identified by Microsoft in response to Interrogatory No. 1.

EXHIBIT "A" TO GATEWAY'S OBJECTIONS/RESP. TO LUCENT'S 1ST SET OF ROGS (1-20) PA1 14007v1
Case No.: 02-CV-2060 B (LSP)

Exhibit 19
Page 000343

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DEWEY BALLANTINE LLP, 1950 University Avenue, Suite 500, East Palo Alto, CA 94303-2225. On March 29, 2004, I served the within documents:

    1)    **GATEWAY'S OBJECTIONS AND RESPONSES TO LUCENT'S FIRST SET OF INTERROGATORIES TO GATEWAY (NOS. 1-20); AND EXHIBIT A**

☐  I sent such document from facsimile machine on November 5, 2003. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at East Palo Alto, addressed as set forth below.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐  I am readily familiar with Dewey Ballantine's business practices of collecting and processing items for pickup and next business day delivery by Federal Express. I placed such sealed envelope(s) for delivery by Federal Express to the offices of the addressee(s) as indicated on the attached mailing list on the date hereof following ordinary business practices.

| | |
|---|---|
| Jane Hahn, Esq. | John F. Gartman, Esq. |
| Alison P. Adema, Esq. | Christopher S. Marchese, Esq. |
| Hahn & Adema | Gary H. Savitt, Esq. |
| 501 West Broadway, Suite 1730 | Fish & Richardson, P.C. |
| San Diego, CA 92101-3595 | 12390 El Camino Real |
| Tel: (619) 235-2100/Fax: (619) 235-2101 | San Diego, CA 92130 |
| *Attorneys for LUCENT TECHNOLOGIES, INC.* | Tel: (858) 678-5070/Fax: (858) 678-5099 |
| | *Attorneys for MICROSOFT CORP.* |
| | |
| Ronald L. Johnston, Esq. | David J. Zubkoff, Esq. |
| James S. Blackburn, Esq. | Seltzer, Caplan, McMahon & Vitek |
| Arnold & Porter | 2100 Symphony Towers |
| 1900 Avenue of the Stars, 17th Floor | 750B Street, Suite 2100 |
| Los Angeles, CA 90067-4408 | San Diego, CA 92101 |
| Tel: (310) 552-2500/Fax: (310) 552-1191 | Tel: (619) 685-3003/Fax: (619) 702-6827 |
| *Attorneys for DELL* | *Attorneys for GATEWAY* |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 29, 2004, at East Palo Alto, California.

                                        Alice M. Cameron

Exhibit 19
Page 000344