# SCHMIDT DECLARATION EXHIBIT 26

Case 3:07-cv-02000-H-CAB   Document 245-4   Filed 01/14/2008   Page 1 of 11

John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Christopher S. Marchese (SBN 170239)
Matthew C. Bernstein (SBN 199240)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California 92130
Telephone:   (858) 678-5070
Facsimile:   (858) 678-5099

Stephen P. McGrath (SBN 202696)
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Telephone:   (425) 882-8080
Facsimile:   (425) 936-7329

Attorneys for Intervener/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.,<br><br>Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWBUNGA ENTERPRISES, INC.,<br><br>Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>Intervener and Counter-claimant, | Case No. 02-CV-2060 B (CAB)<br>consolidated with<br>Case No. 03-CV-0699 B (CAB) and<br>Case No. 03-CV-1108 B (CAB)<br><br>**MICROSOFT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION IN LIMINE NO. 4: LUCENT SHOULD BE PRECLUDED FROM PRESENTING A DAMAGES MODEL BASED ON THE PRICE OF THIRD PARTY COMPUTERS RATHER THAN MICROSOFT'S SOFTWARE**<br><br>**FILED UNDER SEAL – CONFIDENTIAL AND SUBJECT TO PROTECTIVE ORDER**<br><br>Date:           January 9, 2007<br>Time:          9:00 a.m.<br>Courtroom:  2<br>Judge:         Hon. Rudi M. Brewster |
| MICROSOFT CORPORATION,<br><br>Plaintiff and Counter-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant and Counter-claimant, | |

Exhibit 26
Page 000482

| | |
|---|---|
| 1 | LUCENT TECHNOLOGIES INC., |
| 2 |    Plaintiff, |
| 3 | v. |
| 4 | DELL, INC., |
| 5 |    Defendant. |

Case No. 02-CV-2060 B (CAB)

Exhibit 26
Page 000483

## I. INTRODUCTION

Hoping to improperly inflate damages, Lucent had its experts base their reasonable royalty analysis on the price of selected third party computers rather than Microsoft's software. This model fails in numerous respects and should not be presented at trial. First, the model lacks legal support; Lucent cannot satisfy the "entire market value rule." Second, Lucent's experts – who concede they have never used this approach and cannot cite any legal basis for it – were not complying with Rule 702 in providing these opinions. Finally, presenting the exorbitant results of Lucent's novel theory to the jury risks severely and unfairly prejudicing Microsoft. Accordingly, Microsoft requests that the Court preclude Lucent from presenting its computer price damages model at trial.

## II. ARGUMENT

### A. Lucent Has No Basis For Using Computer Prices in Its Royalty Base Under the Entire Market Value Rule.

In special cases, a patentee may seek to recover damages based on the value of an entire product when only a component of that product is patented under the "entire market value rule." *See, e.g., Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005). To do so, the patentee must demonstrate *inter alia* that "'the patent related feature is the basis for customer demand'" for the entire product. *Id.* Lucent has not adduced even a shred of evidence regarding the entire market value rule's requirement that the alleged patented feature, *i.e.*, the MP3 codecs at issue, be the basis for customer demand for the entire product, *i.e.*, computer systems incorporating Windows.

Lucent's first damages expert, Roger Smith, defined the royalty base as including "computer systems." When Mr. Smith was systematically asked about each of the accused audio codecs during his deposition, however, he could not identify any evidence of customer demand for them. [Notice of Lodgment ("NOL") Ex. C (11/03/06 Smith Dep. at 53:3-56:18).] The best Mr. Smith could do was talk about the demand for Windows Media Player ("WMP"), a feature of Windows that includes the accused codecs. [*Id.* at 53:3-56:18.] But as Microsoft's fact and expert witnesses have consistently testified and opined, WMP has significant functionality other than

MP3 coding/decoding; MP3 is not even WMP's default format. [NOL Ex. R (10/23/06 Strawn Rebuttal Rep. at 43-45).] There is no evidence that WMP's MP3 coding/decoding capabilities form the basis of demand for WMP, which can be downloaded by itself, or for any of Microsoft's Windows operating systems, which are also sold independently from computers, let alone that the accused MP3 codecs are the basis of customer demand for entire computer systems.

Lucent's second damages expert, Wayne Hoeberlein, calculated damages utilizing Mr. Smith's conclusions. Mr. Hoeberlein was similarly ignorant of any evidence regarding the basis for computer customer purchase decisions.[1] [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 136:7-137:4).]

This is not a case of dueling evidence. *See, e.g., Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1390416, *8-9 (N.D. Cal. May 18, 2006). Rather, the record here is devoid of any evidence about the basis of customer demand, and the Federal Circuit has previously affirmed a district court's preclusion of an entire market value theory in just such a case. *Imonex*, 408 F.3d at 1380 ("Without any evident record that the patented features were the basis for customer demand for the laundry machines as a whole, the trial court properly foreclosed further evidence on this unsupported theory."). That result is not surprising since, as this Court has recognized, "[a]lthough an exercise in approximation, th[e damages] analysis must be based on 'sound economic and factual predicates.'" *Integra Lifesciences I, Ltd. v. Merck KGaA*, 2004 WL 2284001, *4 (S.D. Cal. Sept. 7, 2004). Here, because Lucent has neither legal support for its theory nor facts on which to base it, preclusion is appropriate.

**B.    Lucent's Use of Computer Prices as Its Royalty Base Violates Rule 702.**

Rule 702 mandates that qualified experts may provide opinion testimony regarding "scientific, technical, or other specialized knowledge," only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 (emphasis added). Under *Daubert* and its progeny, the trial court must act as a

---

[1] While Mr. Hoeberlein claimed he bought his last home computer because it plays MP3 files, he had no understanding of the encoding/decoding functionality at issue here or of music file types other than MP3. [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 132:15-134:3).]

gatekeeper to ensure that the principles that underlie the conclusions are both relevant and reliable. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993); *see also, e.g.*, Fed. R. Evid. 702, Advisory Committee Notes (2000 Amendments).

Here, Lucent's approach to damages cannot satisfy any of Rule 702's requirements. First, as discussed above, Lucent does not have "sufficient facts or data" about the basis of customer demand for computer systems to justify applying the entire market value rule. Making matters worse, both of Lucent's experts selectively ignored facts that undermined their opinions. Mr. Smith allegedly based his rate conclusion on industry policies and his experience at IBM. In other motions in limine, Microsoft has detailed the lack of evidence, and contradictory evidence, undermining his result. Similarly, Mr. Smith ignored IBM licensing policies based on the cost of manufacturing an item, rather than its selling price. [NOL Ex. C (11/03/06 Smith Dep. at 89:8-90:4).]

Despite acknowledging Microsoft sells software rather than computers, Mr. Hoeberlein chose to ignore Microsoft's software revenues – to which he admitted having full access – in favor of using computer prices from just two manufacturers, Dell and Gateway. [NOL Ex. A (7/7/06 Hoeberlein Dep. at 97:8-98:20, 107:3-25); NOL Ex. AA (11/2/06 Hoeberlein Dep. at 113:15-17, 116:21-122:6, 118:5-22).] Even worse, Mr. Hoeberlein utilized Dell and Gateway sales numbers that he knew included extras – ranging from computer bags to faster processors to better monitors – completely unrelated to the technology at issue here. [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 62:25-64:2, 70:22-71:6).] Mr. Hoeberlein also conceded that the average selling price of Windows – which he understood was between $80 and $100 – was an entire order of magnitude lower than the Dell and Gateway computer prices he utilized (ranging between $1000 and $1200). [*Id.* at 115:2-18, 118:5-22.] Despite this knowledge, and without any legal basis for using computer prices, Mr. Hoeberlein never bothered to perform any calculations using Microsoft revenues as a sanity check against his own conclusion of $1.58 billion. [NOL Ex. A (7/7/06 Hoeberlein Dep. at 116:10-23); NOL Ex. AA (11/2/06 Hoeberlein Dep. at 113:18-115:1).] All of these factors cause Messrs. Smith and Hoeberlein's testimony to fail the first prong of Rule 702.

Exhibit 26
Page 000486

Lucent's damages experts cannot satisfy Rule 702's second prong, either. Both Mr. Smith and Mr. Hoeberlein are lawyers, yet neither knows a legal basis for using third party computer prices as a damages base in lieu of Microsoft's own software revenue. [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 120:4-23); NOL Ex. C (11/03/06 Smith Dep. at 61:22-62:22)] Indeed, when asked, Mr. Smith was unsure whether he was utilizing the entire market value rule.[2] [NOL Ex. C (11/03/06 Smith Dep. at 62:11-22).] Mr. Hoeberlein – who never spoke to Mr. Smith until after issuing two reports and being deposed – learned he was to use "computer systems" as the base from Lucent's counsel, and never questioned the basis for that instruction despite never having calculated damages based on something other than the revenues of the defendant. [NOL Ex. A (7/7/06 Hoeberlein Dep. at 46:23-47:7, 101:10-22, 132:24-133:25, 137:8-18); NOL Ex. AA (11/2/06 Hoeberlein Dep. at 120:4-23).] Thus, their approach was hardly the "reliable method" required of expert witnesses.

Finally, the way Mr. Hoeberlein applied Mr. Smith's royalty base definition to the facts of this case was completely unreliable. Upon receiving the base definition of "computer systems" from counsel, Mr. Hoeberlein did nothing to investigate the bounds of that definition, including the most obvious move, talking to Mr. Smith. Once he finally did speak with Mr. Smith, Mr. Hoeberlein testified that he did not ask for any detail about the base definition and Mr. Smith did not provide any beyond what had been stated in his report. [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 14:16-16:9).] While Mr. Hoeberlein reviewed depositions to understand the format of Dell and Gateway's financial documents, he had no understanding of what those executives meant by "computer systems" or what the financial data included. [*Id.* at 62:8-72:13.] Most egregiously, at his second deposition – having already issued three reports – Mr. Hoeberlein had difficulty defining the boundary of the "computer system"[3] and, even after he provided his own

---

[2] Given Mr. Smith's vague response, Lucent may have some other, novel justification for its damages theory. However, even if that is the case, neither of Lucent's damages experts – lawyers in their own right – know the legal basis for that theory, and such a theory was not delineated in their reports or depositions. As such, their reliance on such a theory cannot meet Rule 702's requirements any more than proceeding under the entire market value rule.

[3] First Mr. Hoeberlein testified a computer bag should be considered part of a "computer system." [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 16:10-18:5).] After a break, Mr. Hoeberlein waffled, saying he was "not certain" whether a computer bag should be included. [*Id.* at 32:21-35:3.]

4   Case No. 02-CV-2060 B (CAB)

Exhibit 26
Page 000487

supplemental definition of the base, his calculations were not based on that definition.[4] If, at this late point in the case, Mr. Hoeberlein still cannot say with certainty what components are, or are not, part of a "computer system," and if his calculations ignore his own definition of "computer system," how can his "opinion" – or this damages model – possibly help the jury?

### C. Lucent's Damages Numbers – Improperly Inflated by an Order of Magnitude – Would Severely Prejudice Microsoft if Presented to the Jury.

Beyond the legal impropriety of Lucent's damages model, the Court will appreciate that presenting an inflated damages number could psychologically affect the jury, causing them to award a higher amount than they might otherwise. This inflation effect is exactly what Lucent is seeking by presenting damages totals an order of magnitude higher than they should be. Given all of the problems associated with Lucent's approach, the probative value of Lucent's opinions related to this model pale in comparison to the risk of prejudice to Microsoft. That risk is exacerbated by the fact that such "evidence" will come from experts whom the jury is at an inherent disadvantage in evaluating. *See, e.g., Daubert*, 509 U.S. at 595 (Because "[e]xpert evidence can be ... quite misleading ... the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses.").

### III. CONCLUSION

Lucent's inflated and improper approach to damages violates Rule 702 in virtually every respect, and presenting its exorbitant totals to the jury would improperly prejudice Microsoft under Rule 403. Accordingly, Microsoft requests that the Court preclude Lucent from presenting its damages model based on the price of computer systems at trial.

---

[4] Pressed to define "computer system," Mr. Hoeberlein stated it was "[t]he hardware and the software and any of the peripheral equipment that would be part of the system that the user would use as a computer." [NOL Ex. AA (11/2/06 Hoeberlein Dep. at 62:13-15).] Yet this definition was meaningless, as Mr. Hoeberlein merely took whatever sales value Dell and Gateway presented without eliminating amounts outside that definition. [*Id.* at 62:25-63:10.] Indeed, when asked if he had made any "effort to determine whether any particular hardware or software or peripheral equipment were necessary to the operation of the system when [he was] considering what should be counted as sales or not," Mr. Hoeberlein confirmed he "didn't make that analysis nor d[id he] think that's a necessary analysis under the definition that [he was] utilizing here." [*Id.* at 70:22-71:6.]

Exhibit 26
Page 000488

1  Dated: December 11, 2006

FISH & RICHARDSON P.C.

By: /s/ [signature]

John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Christopher S. Marchese (SBN 170239)
Matthew C. Bernstein (SBN 199240)

Attorneys for Intervener/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

10690281.doc

# PROOF OF SERVICE

I am employed in the County of San Diego. My business address is Fish & Richardson P.C., 12390 El Camino Real, San Diego, California 92130. I am over the age of 18 and not a party to the foregoing action.

The certify that a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 5.4. Any other counsel of record will be served by facsimile, overnight delivery, or other overnight service.

On December 11, 2006, I caused a copy of the following document(s):

**MICROSOFT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION IN LIMINE NO. 4: LUCENT SHOULD BE PRECLUDED FROM PRESENTING A DAMAGES MODEL BASED ON THE PRICE OF THIRD PARTY COMPUTERS RATHER THAN MICROSOFT'S SOFTWARE**

to be served on the interested parties in this action as follows:

| | |
|---|---|
| Alison P. Adema<br>Hahn & Adema<br>501 West Broadway, Suite 1600<br>San Diego, CA 92101<br>Telephone: (619) 235-2100<br>Facsimile: (619) 235-2101<br>***VIA FACSIMILE & ELECTRONIC MAIL*** | Attorneys for Plaintiffs<br>LUCENT TECHNOLOGIES INC.<br><br>Email: aadema@hahnadema.com |
| David J. Zubkoff<br>Seltzer, Caplan, McMahon & Vitek<br>2100 Symphony Towers<br>750 B Street, Suite 2100<br>San Diego, CA 92101<br>Telephone: (619) 685-3003<br>Facsimile: (619) 702-6827<br>***VIA FACSIMILE & ELECTRONIC MAIL*** | Attorneys for Defendants<br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC<br><br>Email: zubkoff@scmv.com |
| James S. Blackburn<br>Arnold & Porter LLP - (L.A.)<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 243-4000<br>Facsimile: (213) 243-4199<br>***VIA FACSIMILE & ELECTRONIC MAIL*** | Attorneys for Defendant<br>DELL INC.<br><br>Email: james_blackburn@aporter.com |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct. Executed on December 11, 2006, at San Diego, California.

_____
Susan Rodriguez

7                                               Case No. 02-CV-2060 B (CAB)

Exhibit 26
Page 000490

**COURTESY COPIES BY ELECTRONIC MAIL TO:**

Trial Counsel For Lucent:
Jon T. Hohenthaner/Alan Kellman/James Bailey
Kirkland & Ellis LLP
Citicorp Center
153 East 53rd Street
New York, NY 10022-4675
E-mail: jhohenthaner@kirkland.com; akellman@kirkland.com; jbailey@kirkland.com

Trial Counsel for Gateway:
Bryan Farney / Steven R. Daniels / Jeffrey B. Plies / Lawrence Fluker
DECHERT LLP
106 East 6th Street, Ste. 800
Austin, TX 78701
Email: bryan.farney@dechert.com; steven.daniels@dechert.com; jeff.plies@dechert.com; lawrence.fluker@dechert.com

Trial Counsel for Dell:
Ali R. Sharifahmadian, Esq.
Matthew Bathon, Esq.
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
E-mail: ali_sharifahmadian@aporter.com; Matthew_Bathon@aporter.com

Trial Counsel for Dell:
Joel Freed, Esq.
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Email: jfreed@mwe.com

Courtesy Emails include:

| | | |
|---|---|---|
| ☐ | **All documents filed/served** | All Pleadings filed or served were included in the email along with any exhibits |
| XX | **Main Pleading documents (without exhibits)** | All Main Pleading documents were included in the email, except for exhibits. Exhibits were over 50 pages long. As per our service agreement, a hard copy will follow via overnight mail. |

8  Case No. 02-CV-2060 B (CAB)

Exhibit 26
Page 000491