# SCHMIDT DECLARATION

# EXHIBIT 35

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,770 | 07/16/2007 | 4958226 | 75543-016 | 8068 |

| | |
|---|---|
| 530       7590       10/05/2007 | EXAMINER |

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 10/05/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

Exhibit 35
Page 000544

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

10/5/07

KENNETH L. CAGE

MCDERMOTT, WILL, & EMERY LLP

600 13TH STREET, NW

WASHINGTON, DC 20005

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008770

PATENT NO.   4,958,226

ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Exhibit 35
Page 000545

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,770 | 4958226 |
| | Examiner | Art Unit | |
| | Roland G. Foster | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>16 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☒ Other: <u>See the Decision.</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Roland  G. Foster
Primary Examiner
Art Unit: 3992

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20071003

Exhibit 35
Page 000546

Application/Control Number: 90/008,770                                    Page 2
Art Unit: 3992

## DECISION

### *Substantial New Question*

A substantial new question of patentability affecting claim 12 of United States Patent No.

4,958,226 to Haskell et al. (hereinafter the "Haskell" patent) is raised by the request for *ex parte*

reexamination, filed on July 16, 2007 (hereinafter the "Request").

Pages 6-11 identify the following printed publications as providing teachings relevant to

the claims of the Haskell patent:

1.  U.S. Patent No. 4,849,9810 to Ericsson ("Ericsson").
2.  U.S. Patent No. 4,703,350 to Hinman ("Hinman").
3.  U.S. Patent No. 4,858,005 to Lodge ("Lodge I").
4.  N K Lodge, "A Hybrid Interpolative and Predictive Code For the Embedded
    Transmission of Broadcast Quality Television Pictures," Independent
    Broadcasting Authority, United Kingdom, Second International Conference on
    Image Processing and its Applications, Conference Publication Number 265, pp.
    242-247, June 24-26, 1986 ("Lodge II").
5.  Arun N. Netravali, et al., "Digital Pictures Representation and Compression,"
    ISBN 0-306-42791-5, Plenum Publishing Corporation, 1988 ("Digital Pictures").

A reasonable examiner would consider the above prior references important in making a

decision as to the patentability of claim 12 in the Haskell patent.

Exhibit 35
Page 000547

Application/Control Number: 90/008,770                                    Page 3
Art Unit: 3992

### *The Haskell Patent: Claim 12*

Claim 12, the only claim for which reexamination was requested, recites:

**A circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks, comprising:**

**means for developing block approximations from said codes that describe deviations from approximated blocks;  and**

**means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks.**

The first two paragraphs of claim 12 however are recited in substantially the same language as the language in the preamble of claim 2, where claim 2 is drafted in Jepson format.[1] Drafting a claim in Jepson format (i.e., the "improvement comprising..." format as described in 37 CFR 1.75(e)) may be taken as an implied admission that the subject matter of the preamble is the prior-art work of another.  See MPEP § 2129.III.  Thus, a substantial question is raised as to whether the first two paragraphs of claim 12 are also the admitted prior art of another.  Thus, the analysis of whether a substantial new question is raised for claim 12 turns to the last paragraph of claim 12, which broadly recites:

**means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks.**

---

[1] The "codes that describe deviations from interpolated bocks" language in the preamble of claim 12 is <u>not</u> included in the preamble of claim 2, however it is recognized that this language is directed to an allegedly inventive feature (as discussed *infra*), and thus does not affect the analysis regarding the admitted prior art in claim 2.

Exhibit 35
Page 000548

Application/Control Number: 90/008,770                                    Page 4
Art Unit: 3992

The limitation "means responsive to said block approximations" apparently refers to the

prior "means for developing block approximations from said codes that describe deviations from

approximated blocks" limitation and thus refers to admitted prior art, as discussed above.  For

example, the Haskell patent teaches conventional "motion compensated interpolation," where a

"prediction error signal" (code that describes deviation from approximated blocks) is developed

from previously approximated frames $F_{i+1}$ and $F_{i-1}$ (col. 2, ll. 18-37 and col. 3, ll. 61 – col. 4, l.

34).   Thus, even the first limitation in the last paragraph of claim 12 may be substantially

directed to prior art.

The limitation "codes that describe deviations from interpolated blocks to develop

interpolated blocks" apparently refers to an allegedly inventive feature in the Haskell patent.

Specifically, an interpolated, prediction frame $F_i$ is produced from an interpolation algorithm (in

the case of the Haskell patent, by structure that averages the values of $F_i$ produced by time

shifting the approximated frames $F_{i+1}$ and $F_{i-1}$ using the motion compensated interpolation) (col.

4, ll. 35 – 62).   Then, a deviation code from the interpolated frame $F_i$ is developed (in the case of

the Haskell patent, by structure that determines the difference between the interpolated

prediction frame $F_i$ and an actual frame $F_i$) (col. 4, ll. 35 – 62).   Other claims in the Haskell

patent however, such as independent claims 1 and 2, recite <u>different</u> means plus function

language that clearly corresponds to some of the specific, Haskell structures discussed above.

Thus, a claim interpretation issue also exists as to the scope of the structure in the Haskell patent

Exhibit 35
Page 000549

Application/Control Number: 90/008,770                                    Page 5
Art Unit: 3992

that the "means responsive to...said codes that describe deviations from interpolated blocks to

develop said interpolated blocks" limitation of claim 12 is intended to correspond to.

### *Ericsson*

In view of the Haskell claim 12 limitations discussed above, which may mostly recite the

admitted prior art of another, a reasonable examiner would consider Ericsson, either alone or

used in combination with said admitted prior art of another or in combination with other

secondary references, important in making a decision as to the patentability of claim 12 in the

Haskell patent.   Ericsson recites that system transmits and decodes "a sequence of image frames

both with and without motion compensation" (abstract).  Thus, encoding and decoding blocks

transmitted using conventional, motion compensation would read on the limitation "means

responsive to said block approximations" as discussed above.    Ericsson also teaches that a

deviation code is developed from an interpolated frame by determining the difference between

the interpolated frame and an actual frame (col. 2, l. 58 – col. 3, l. 4), thus reading on the

limitation "means responsive to...said codes that describe deviations from interpolated blocks to

develop said interpolated blocks" (bearing in mind that there is a question as to what type of

structure this alleged, means plus function language refers to, as discussed above).

For additional reasons why Ericsson raises a substantial new question of patentability, see

also pages 6, 7, and 11-21 of the Request, which includes a detailed claim chart, all of which are

hereby incorporated by reference from the Request for their explanation of the teachings

Exhibit 35
Page 000550

Application/Control Number: 90/008,770                                    Page 6
Art Unit: 3992

provided in Ericsson that were not present in the prosecution of the application which became

the Haskell patent.

The Ericsson patent was not previously cited or discussed by the examiner in the original

prosecution of the Haskell patent.

There was also no final holding of invalidity by the Federal Courts regarding the Haskell

patent.

Thus, a reasonable examiner would view the teachings of the Ericsson patent, alone or in

combination with the admitted prior art of another, or in combination with any of the various

secondary references cited in the Request, important in deciding to allow the claims being

considered, thus raising a substantial new question of patentability regarding claim 12 of the

Haskell patent.

### *Hinman*

In view of the Haskell claim 12 limitations discussed above, which may mostly recite the

admitted prior art of another, a reasonable examiner would consider Hinman, either alone or used

in combination with said admitted prior art of another or in combination with other secondary

references, important in making a decision as to the patentability of claim 12 in the Haskell

patent. Hinman is generally directed to conventional motion compensation and thus, as

discussed above, would teach the "block approximation" limitations. Ericsson would provide

Exhibit 35
Page 000551

Application/Control Number: 90/008,770                                          Page 7
Art Unit: 3992

explicit teachings/suggestion/motivation (e.g., lower bandwidth "while providing for graceful

degradation of the image during a scene change or during periods of heavy motion," see col. 2, ll.

35-43) to add its teachings regarding the "interpolated block" limitation, as extensively discussed

above, to the teachings of Hinman.  See also pages 8-9 of the Request regarding additional

motivations to combine these two references.

For additional reasons why Hinman raises a substantial new question of patentability, see

also pages 8, 9 and 21-37 of the Request, which includes a detailed claim chart, all of which are

hereby incorporated by reference from the Request for their explanation of the teachings

provided in Hinman that were not present in the prosecution of the application which became the

Haskell patent.

The Hinman patent was not previously cited or discussed by the examiner in the original

prosecution of the Haskell patent.

There was also no final holding of invalidity by the Federal Courts regarding the Haskell

patent.

Thus, a reasonable examiner would view the teachings of the Hinman patent, alone or in

combination with the admitted prior art of another, or in combination with any of the various

secondary references cited in the Request, important in deciding to allow the claims being

Exhibit 35
Page 000552

Application/Control Number: 90/008,770                                    Page 8
Art Unit: 3992

considered, thus raising a substantial new question of patentability regarding claim 12 of the

Haskell patent.


### *Lodge I and II*


In view of the Haskell claim 12 limitations discussed above, which may mostly recite the

admitted prior art of another, a reasonable examiner would consider Lodge I and II, either alone

or used in combination with said admitted prior art of another or in combination with other

secondary references, important in making a decision as to the patentability of claim 12 in the

Haskell patent.    As discussed above regarding Haskell claim 12, the analysis of whether a

substantial new question is raised for claim 12 focuses on the last, broadly recited paragraph of

claim 12.  Furthermore as discussed above, a substantial question exists as to the scope (e.g.,

broad or narrow) of the corresponding structure in said means limitation recited in the last

paragraph of claim 12.  In view of this, the teachings of Lodge I and II read on the last paragraph

of claim 12.  For example, Lodge I teaches transmitting a predictive error code (means

responsive to said block approximations) and transmitting an interpolative error code (codes that

describe deviations from interpolated blocks to develop said interpolated blocks) (Lodge I, col.

11, l. 43 – col. 12, l. 2).


For additional reasons why Lodge I and II raise a substantial new question of

patentability, see also pages 9, 10 and 38-53 of the Request, which includes a detailed claim

chart, all of which are hereby incorporated by reference from the Request for their explanation of

Exhibit 35
Page 000553

Application/Control Number: 90/008,770                                    Page 9
Art Unit: 3992

the teachings provided in Lodge I and II that were not present in the prosecution of the

application which became the Haskell patent.


The Lodge I and II printed publications were not previously cited or discussed by the

examiner in the original prosecution of the Haskell patent.


There was also no final holding of invalidity by the Federal Courts regarding the Haskell

patent.


Thus, a reasonable examiner would view the teachings of the Lodge I and II publications,

alone or in combination with the admitted prior art of another, or in combination with any of the

various secondary references cited in the Request, important in deciding to allow the claims

being considered, thus raising a substantial new question of patentability regarding claim 12 of

the Haskell patent.


### *Digital Pictures*

In view of the Haskell claim 12 limitations discussed above, which may mostly recite the

admitted prior art of another, a reasonable examiner would consider the Digital Pictures

publication, either alone or used in combination with said admitted prior art of another or in

combination with other secondary references, important in making a decision as to the

patentability of claim 12 in the Haskell patent.   Digital Pictures teaches of conventional motion

compensation (e.g., pp. 472-3) and thus, as discussed above, would teach the "block

Exhibit 35
Page 000554

Application/Control Number: 90/008,770                                        Page 10
Art Unit: 3992

approximation" limitations.   Ericsson would provide explicit teachings/suggestion/motivation

(e.g., lower bandwidth "while providing for graceful degradation of the image during a scene

change or during periods of heavy motion," see col. 2, ll. 35-43) to add its teachings regarding

the "interpolated block" limitation, as extensively discussed above, to the teachings of Hinman.

See also pages 8-9 of the Request regarding additional motivations to combine these two

references.


     For additional reasons why Digital Pictures raises a substantial new question of

patentability, see also pages 10, 11 and 53-61 of the Request, which includes a detailed claim

chart, all of which are hereby incorporated by reference from the Request for their explanation of

the teachings provided in Digital Pictures that were not present in the prosecution of the

application which became the Haskell patent.


     The Digital Pictures publication was not previously cited or discussed by the examiner in

the original prosecution of the Haskell patent.


     There was also no final holding of invalidity by the Federal Courts regarding the Haskell

patent.


     Thus, a reasonable examiner would view the teachings of the Digital Pictures publication,

alone or in combination with the admitted prior art of another, or in combination with any of the

various secondary references cited in the Request, important in deciding to allow the claims

Exhibit 35
Page 000555

Application/Control Number: 90/008,770                              Page 11
Art Unit: 3992

being considered, thus raising a substantial new question of patentability regarding claim 12 of

the Haskell patent.

### *Scope of Reexamination*

Since requester did not request reexamination of all the claims and did not assert the

existence of a substantial new question of patentability (SNQ) for all the claims (see 35 U.S.C. §

302); see also 37 CFR 1.510b and 1.515), such claims for which no SNQ was asserted will not

be reexamined. This matter was squarely addressed in <u>Sony Computer Entertainment America</u>

<u>Inc., et al. v. Jon W. Dudas</u>, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy,

2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in a

reexamination proceeding other than those claims for which reexamination had specifically been

requested. The Court stated:

> To be sure, a party may seek, and the PTO may grant,...review of each and every claim of a
> patent. Moreover, while the PTO in its discretion may review claims for which...review was
> not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a
> claim for...review,...requires that the party seeking reexamination demonstrate why the PTO
> should reexamine each and every claim for which it seeks review. Here, it is undisputed that
> **Sony** did not seek review of every claim under the '213 and '333 patents. Accordingly, **Sony**
> cannot now claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is unpersuasive.

Exhibit 35
Page 000556

Application/Control Number: 90/008,770                                    Page 12
Art Unit: 3992

## Conclusion

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

### *WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT*

*Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.*

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

Exhibit 35
Page 000557

Application/Control Number: 90/008,770                                          Page 13
Art Unit: 3992

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).


### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).


### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or

other documents as evidence of patentability, such documents must be submitted in response to

the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final action,

will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33

after appeal, which will be strictly enforced.

Exhibit 35
Page 000558

Application/Control Number: 90/008,770                                           Page 14
Art Unit: 3992

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a)

to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

the Haskell patent throughout the course of this reexamination proceeding.  The requester is also

reminded of the ability to similarly appraise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that the patent

owner's correspondence address for all communications in an *ex parte* reexamination or an *inter*

*partes* reexamination is designated as the correspondence address of the patent.

*Revisions and Technical Corrections Affecting Requirements for Ex Parte and
Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the**

**same correspondence address as that of the patent is, by way of this revision to 37 CFR**

**1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as

of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination

proceeding which is filed after that date.

Exhibit 35
Page 000559

Application/Control Number: 90/008,770                                      Page 15
Art Unit: 3992

Parties are to take this change into account when filing papers, and direct communications

accordingly.


In the event the patent owner's correspondence address listed in the papers (record) for the

present proceeding is different from the correspondence address of the patent, it is strongly

encouraged that the patent owner affirmatively file a Notification of Change of Correspondence

Address in the reexamination proceeding and/or the patent (depending on which address patent

owner desires), to conform the address of the proceeding with that of the patent and to clarify the

record as to which address should be used for correspondence.


    Telephone Numbers for reexamination inquiries:


       Reexamination and Amendment Practice     (571) 272-7703
       Central Reexam Unit (CRU)          (571) 272-7705
       Reexamination Facsimile Transmission No.  (571) 273-9900

Exhibit 35
Page 000560

Application/Control Number: 90/008,770                                    Page 16
Art Unit: 3992

    **All** correspondence relating to this *ex parte* reexamination proceeding should be directed

as follows:


By **U.S. Postal Service Mail** to:

       Mail Stop *Ex Parte* Reexam
       ATTN:  Central Reexamination Unit
       Commissioner for Patents
       P.O. Box 1450
       Alexandria, VA  22313-1450


By FAX to:    (571) 273-9900
            Central Reexamination Unit


By hand to:    Customer Service Window
            Randolph Building
            401 Dulany St.
            Alexandria, VA  22314


    Any inquiry concerning this communication or earlier communications from the

Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be

directed to the Central Reexamination Unit at telephone number (571) 272-7705.



Signed:                                                        Conferees:



Roland G. Foster                                          SCOTT L. WEAVER
Central Reexamination Unit, Primary Examiner              CRU EXAMINER-AU 3992
Electrical Art Unit 3992
(571) 272-7538

                                                          MARK J. REINHART
                                                          SPRE-AU 3992
                                                          CENTRAL REEXAMINATION UNIT

Exhibit 35
Page 000561