# SCHMIDT DECLARATION
# EXHIBIT 36

 *Multimedia*

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,740 | 07/12/2007 | 4,383,272 | 75543-017 | 8621 |

7590    08/16/2007

S.E. HOLLANDER
BELL TELEPHONE LABS. INC.
600 MOUNTAIN AVE.
MURRAY HILL, NJ 07974

| EXAMINER |
|---|
| *Ovidio Escalante* |

| ART UNIT | PAPER NUMBER |
|---|---|
| *3992* | *IFW* |

DATE MAILED: 08/16/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

# RECEIVED

AUG 2 1 2007

**Alcatel-Lucent
Patent Creation**

PTO-90C (Rev. 10/03)

Exhibit 36
Page 000562



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

McDermott Will & Emery
Attn: Kenneth L. Cage
600 13th Street N. W.
Washington DC   20005-3096

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,740*.

PATENT NO. *4,383,272*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(e)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(e)).

PTO-465 (Rev.04-03)

Exhibit 36
Page 000563

| Order Granting / Denying Request For Ex Parte Reexamination | Control No. | Patent Under Reexamination |
| --- | --- | --- |
| | 90/008,740 | 4,383,272 |
| | Examiner | Art Unit | |
| | Ovidio Escalante | 3992 | |

**--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

The request for *ex parte* reexamination filed <u>12 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,     b)☒ PTO/SB/08,     c)☒ Other: <u>Decision</u>

1. ☒     The request for *ex parte* reexamination is GRANTED.

     RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐     The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

     a) ☐ by Treasury check or,

     b) ☐ by credit to Deposit Account No. _____,  or

     c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Ovidio  Escalante
CRU Examiner
Art Unit: 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070803

Exhibit 36
Page 000564

Application/Control Number: 90/008,740                                    Page 2
Art Unit: 3992

## DECISION

1.      A substantial new question of patentability affecting claim 13 of United States Patent

Number 4,383,272 (Netravali et al.) is raised by the request for *ex parte* reexamination.

2.      The instant patent issued May 10, 1983 based on US Patent Application Ser. No.

06/253,698, filed April 13, 1981.

### *Patent Status*

Under 37 CFR 1.510(a), any person may, at any time during the period of enforceability

of a patent, file a request for > ex parte< reexamination. This period was set by rule, since

the Office considered that Congress could not have intended expending Office resources

on deciding patent validity questions in patents which cannot be enforced. In this regard

see Patlex Corp.  v.  Mossinghoff, 758 F.2d 594, 225 USPQ 243, 249 (Fed. Cir.

*>1985<). The period of enforceability is determined by adding 6 years to the date on

which the patent expires.

In addition, if litigation is instituted within the period of the statute of limitations,

requests for reexamination may be filed after the statute of limitations has expired, as long as the

patent is still enforceable against someone.

The requester notes that The '272 patent is currently the subject of litigation before the

United States District Court for the Southern District of California, where MPT has accused

Requester of patent infringement, in a proceeding styled Lucent Technologies Inc. and

Multimedia Patent Trust v. Gateway, Inc. et al., Case No. 02-CV-2060 B (CAB) consolidated

with Case Nos. 03-CV-699 B (CAB) and 03-CV-1108 B (CAB).

Exhibit 36
Page 000565

Application/Control Number: 90/008,740                                   Page 3
Art Unit: 3992

Accordingly, even though more than six years has passed, the timing of the filing of the

request is appropriate.

### *References Cited in the Request*

3.      In the request, the third party requester asserts that claims of the '272 Netravali patent are

rendered unpatentable by the following cited references:

1.      D. Gabor, et al. Television Band Compression by Contour Interpolation, The
        Proceeding of the Institution of Electrical Engineers, Vol. 108, Part B, No. 39.

2.      J.O. Limb and R.F. W Pease, A Simple Interframe Coder for Video Telephony,
        The Bell System Technical Journal, Vol. 50, No. 6, July-Aug. 1971, (hereinafter
        Lim & Pease).

3.      Arun N. Netravali and John O. Limb, Picture Coding: A Review, Proceeding of
        the IEEE, Vol. 68, No. 3, Mar. 1980, (hereinafter Picture Coding).

4.      E. R. Kretzmer, Statistics of Television Signals, The Bell Systems Technical
        Journal, July 1952.

5.      D. Gabor, Television Compression by Contour Interpolation, Supplemento Al
        Volume III, Serie X, Del Nuovo Cimento, 1959

6.      P. C. J. Hill, Television Bandwidth Compression by Interpolation, The Electrical
        Engineering Department, Imperial College London, March 1960.

7.      Limb et al. - Exchange of Spatial and Temporal Resolution in Television Coding,
        The Bell System Technical Journal, January 1971.

8.      R. F. W. Pease, Conditional Vertical  Subsampling - A Technique to Assist in the
        Coding of Television Signals, The Bell System Technical Journal, Vol. 51, No. 4,
        April 1972.

9.      J.O. Limb, et al., Combining Intraframe and Frame-to-Frame Coding for
        Television, The Bell System Technical Journal, Vol. 53, No. 6, July-Aug. 1974.

Exhibit 36
Page 000566

Application/Control Number: 90/008,740                                    Page 4
Art Unit: 3992

### *Identification of Every Claim for Which Reexamination is Requested*

4.      The above-cited references are separately discussed regarding claim 13 of the '272

patent. See page 4 of the request.

Specifically, the third party requester considers that claim 13 is unpatentable over Gabor,

et al. Television Band Compression by Contour Interpolation, (hereinafter Gabor & Hill)

The third party requester also considers that claim 13, is unpatentable over J.O. Limb and

R.F. W Pease, A Simple Interframe Coder for Video Telephony, (hereinafter Limb & Pease).

The third party requester also considers that claim 13 is unpatentable over Arun N.

Netravali and John O. Limb, Picture Coding: A Review, (hereinafter Picture Coding).

The third party requester also considers that claim 13, is unpatentable over Gabor & Hill

in view of E. R. Kretzmer, Statistics of Television Signals (hereinafter Kretzmer), D. Gabor,

Television Compression by Contour Interpolation or P. C. J. Hill, Television Bandwidth

Compression by Interpolation.

The third party requester also considers that claim 13, is unpatentable over Limb & Pease

in combination with Limb et al. - Exchange of Spatial and Temporal Resolution in Television

Coding,, R. F. W. Pease, Conditional Vertical  Subsampling - A Technique to Assist in the

Coding of Television Signals or J.O. Limb, et al., Combining Intraframe and Frame-to-Frame

Coding for Television.

### *Prosecution History*

During the prosecution of the 06/253,698 application, the applicant, filed a response on

October 25, 1982 in response to the office action mailed on July 26, 19982. The response argued

that the prior art references clearly reveal that an <u>intensity value</u> is not being interpolated from

Exhibit 36
Page 000567

Application/Control Number: 90/008,740                                                  Page 5
Art Unit: 3992

preceding <u>and succeeding</u> version of the picture. The applicant stated that the prior art of record

pertain to recursive estimation of displacement in a series of pictures and its use in predictive

encoding of the present picture version. Such predictive encoding uses information only from

<u>preceding picture version.</u>

### *Substantial New Question of Patentability*

5.      The teachings in each cited prior art document that provides a basis for each substantial

new question of patentability is separately discussed. See the pages 7-33 of the Request, which

point out the teachings in each of the above-cited references.

### *Limb & Pease*

Limb & Pease discloses a method of applying resolution exchange to a differentially

quantized (DPCM) signal. The resulting channel capacity required for the subjectively

satisfactory transmission of the differential signal is halved. The coder is simpler than most

interframe coders and should not increase the sensitivity of the system to channels errors.

On page 1879, Limb & Pease states that when movement is detected, pels from alternate

sampled fields are received, decode, and displayed. In place of pels from the unsampeld fields,

an average is formed <u>from the four nearest neighbors in the y-t diagram</u>. For example, pels in

lines (y,1) are replace with the average value of pels in liens (y-1,0) (y+1, 0) (y-1,2) and (y+1,2).

Thus both spatial and temporal interpolation is used to form the new value in the unsampled

field. Therefore, Limb & Pease discloses a method for estimating the intensities of pels in a

picture in accordance with information defining intensities of pels in preceding and succeeding

versions of the picture.

Exhibit 36
Page 000568

Application/Control Number: 90/008,740                                    Page 6
Art Unit: 3992

The teaching of the intensity value being interpolated from preceding and succeeding versions of the picture was not present in the prosecution of the application which became the '272 patent and thus it is agreed that Limb & Pease raises an SNQ over claim 13 of the instant '272 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the instant claims under reexamination are patentable. Furthermore, the Limb & Pease reference was not before the examiner during the prosecution of the '272 Patent. Accordingly, the Limb & Pease reference raises a SNQ as to claim 13 of the instant '272 Patent.

### *Picture Coding*

Picture Coding describes an interpolative Frame-to-Frame Coder. Picture Coding describes in Figure 53 that the basic coding scheme was limited to groups of four lines, consisting of pairs of consecutive lines in consecutive frames. The group of four lines is subdivided into blocks of eight pels. Further, Picture Coding discloses that the key elements in a block, on which all of the other elements depend are the A1 's. These elements are DPCM coded along a line using the previous A1 as a predictor. The coding of the remaining elements (B's, C's, D's) uses the four surrounding Al's, two of which are in the next pair of lines which would not normally be coded with the current block. Furthermore, Figure 53(a) depicts a series of frames along a temporal axis, where frame 1 is the first frame, followed by Frame 2 and then Frame 1' in time. Picture Coding describes the coding of the middle frame, Frame 2, stating "[a] first test is made to see if it is permissible to interpolate all four elements [A2, B2, C2, D2] from frame 1 and frame 1'. This test indicates that "[i]f the error of an individual pel, or if the average error of

Exhibit 36
Page 000569

Application/Control Number: 90/008,740                                    Page 7
Art Unit: 3992

all four pels, is greater than a third threshold, then the block must be coded. As such, this test

inherently requires estimating the intensities of elements (pels) in a picture in accordance with

information defining intensities of pels in preceding and succeeding versions of the picture.

The teaching of the intensity value being interpolated from preceding and succeeding

versions of the picture was not present in the prosecution of the application which became the

'272 patent and thus it is agreed that Picture Coding raises an SNQ over claim 13 of the instant

'272 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Furthermore, the Picture Coding reference was not before

the examiner during the prosecution of the '272 Patent.  Accordingly, the Picture Coding

reference raises a SNQ as to claim 13 of the instant '272 Patent.

### *Gabor & Hill*

Gabor & Hill presents a video signal transmission method referred to as contour

interpolation, which involves transmitting only one interlaced field out of two, and constructing

the missing interlaced field.

Gabor & Hill also discloses that the method of contour interpolation is equally applicable

to the interpolation of missing fields and missing frames. Moreover, Gabor & Hill indicates that

a missing picture is reconstructed by estimating the intensities of elements comprising the

missing picture. For example, Gabor & Hill discloses that the elements of a missing line can be

reconstructed with reference to the intensities of elements in the corresponding line of a

preceding and a succeeding picture.

Exhibit 36
Page 000570

Application/Control Number: 90/008,740                                    Page 8
Art Unit: 3992

Gabor & Hill also discloses that each line is comprised of elements, stating "[a]ssume, for
instance, that we allow a searching time corresponding to 10 picture points, which is about 1/50
of a line.. A picture point represents an element and is characterized by an intensity value.
Further, the intensity value of a picture point is encoded using five binary digits (bits). Therefore,
Gabor & Hill teaches that the elements of one or more pictures can be reconstructed - or
estimated - in accordance with information defining the intensities of elements in preceding and
succeeding pictures.

The teaching of the intensity value being interpolated from preceding and succeeding
versions of the picture was not present in the prosecution of the application which became the
'272 patent and thus it is agreed that Gabor & Hill raises an SNQ over claim 13 of the instant
'272 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable
examiner would consider these teachings important in deciding whether or not the instant claims
under reexamination are patentable. Furthermore, the Gabor & Hill reference was not before the
examiner during the prosecution of the '272 Patent. Accordingly, the Gabor & Hill reference
raises a SNQ as to claim 13 of the instant '272 Patent.

### *Scope of Reexamination*

6.      Since requester did not request reexamination of claims 1-12 and 14-24 and did not assert
the existence of a substantial new question of patentability (SNQP) for such claims (see 35
U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such claims will not be reexamined.
This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon
W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL

Exhibit 36
Page 000571

1472462. (Not Reported in F.Supp.2d.) The District Court upheld the Office's discretion to not

reexamine claims in an *inter partes* reexamination proceeding other than those claims for which

reexamination had specifically been requested. The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter partes*
> review of each and every claim of a patent. Moreover, while the PTO
> in its discretion may review claims for which *inter partes* review was
> not requested, nothing in the statute compels it to do so. To ensure
> that the PTO considers a claim for *inter partes* review, § 311(b)(2)
> requires that the party seeking reexamination demonstrate why the
> PTO should reexamine each and every claim for which it seeks review.
> Here, it is undisputed that Sony did not seek review of every claim
> under the '213 and '333 patents. Accordingly, Sony cannot now claim
> that the PTO wrongly failed to reexamine claims for which Sony never
> requested review, and its argument that AIPA compels a contrary
> result is unpersuasive.

The *Sony* decision's reasoning and statutory interpretation apply analogously to *ex parte*

reexamination, as the same relevant statutory language applies to both *inter partes* and *ex parte*

reexamination. 35 U.S.C. § 302 provides that the *ex parte* reexamination "request must set forth

the pertinency and manner of applying cited prior art to every claim for which reexamination is

requested" (emphasis added), and 35 U.S.C. § 303 provides that "the Director will determine

whether a substantial new question of patentability affecting any claim of the patent concerned is

raised by the request..." (Emphasis added). These provisions are analogous to the language of

35 U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be

construed in the same manner. As the Director can decline to reexamine non-requested claims in

an *inter partes* reexamination proceeding, the Director can likewise do so in *ex parte*

reexamination proceeding. See *Notice of Clarification of Office Policy To Exercise Discretion in

Reexamining Fewer Than All the Patent Claims* (signed Oct. 5, 2006) 1311 OG 197 (Oct. 31,

2006). See also MPEP § 2240, Rev. 5, Aug. 2006.

Exhibit 36
Page 000572

Application/Control Number: 90/008,740                                    Page 10
Art Unit: 3992

Therefore, claims 1-12 and 14-24 will not be reexamined in this *ex parte* reexamination

proceeding.

7.      Claim 13 will be reexamined as requested in the request.

*Conclusion*

8.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

9.      The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 4,383,272 throughout the course of this reexamination proceeding.

10.     After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be served on the other party (or

parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

11.     In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f).

12.     Patent Owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

Exhibit 36
Page 000573

Application/Control Number: 90/008,740                    Page 11
Art Unit: 3992

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).

13.     All correspondence related to this *ex parte* reexamination proceeding should be directed

as follows:

**Please MAIL any communications to:**

Attn: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**Please FAX any communication to:**

(571) 273-9900
Central Reexamination Unit

**Please HAND-DELIVER any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

14.     Any inquiry by the patent owner concerning this communication or earlier

communications from the Legal Advisor or Examiner, or as to the status of this proceeding,

should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

*Ovidio Escalante*

Ovidio Escalante
Primary Examiner
Central Reexamination Unit - Art Unit 3992
(571) 272-7537

Conferee:                                          Conferee:

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

Exhibit 36
Page 000574

SHEET 1 of 2

| INFORMATION DISCLOSURE CITATION IN AN APPLICATION |  | ATTY. DOCKET NO.<br>**075543-0017** | PATENT NO.<br>**4,383,272** |
|---|---|---|---|
|  |  | APPLICANT<br>**NETRAVALI, et al.** | |
| **(PTO-1449)** |  | FILING DATE<br>**July 12, 2007** | GROUP |

### U.S. PATENT DOCUMENTS

| EXAMINER'S INITIALS | CITE NO. | Document Number<br>Number-Kind Code*z (if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |
|  | US | | | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER'S INITIALS | CITE NO. | Foreign Patent Document<br>Country Code*z -Number z -Kind Code*z *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines Where Relevant Figures Appear | Translation<br>Yes | No |
|---|---|---|---|---|---|---|---|
|  | | | | | | | |
|  | | | | | | | |
|  | | | | | | | |
|  | | | | | | | |
|  | | | | | | | |
|  | | | | | | | |

### OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| EXAMINER'S INITIALS | CITE NO. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | |
|---|---|---|---|
| /OE/ | | D. Gabor, *Television Compression by Contour Interpolation*, Supplemento Al Volume III, Serie X, Del Nuovo Cimento, 1959 | |
| /OE/ | | J. O. Limb, et al., *Combining Intraframe and Frame-to-Frame Coding for Television*, The Bell System Technical Journal, Vol. 53, No. 6, July-Aug. 1974 | |
| /OE/ | | R. F. W. Pease, *Conditional Vertical Subsampling - A Technique to Assist in the Coding of Television Signals*, The Bell System Technical Journal, Vol. 51, No. 4, April 1972 | |
| /OE/ | | P. C. J. Hill, *Television Bandwidth Compression by Interpolation*, The Electrical Engineering Department, Imperial College London, March 1960 | |
| /OE/ | | Kretzmer, E.R., "Statistics of Television Signals," The Bell Systems Technical Journal, pp. 276-88 (July 1952) | |
| /OE/ | | J. O. Limb and R. F. W. Pease, *A Simple Interframe Coder For Video Telephony*, The Bell System Technical Journal, Vol. 50, No. 6, July-Aug., 1971 | |

Exhibit 36
Page 000575

| | | |
|---|---|---|
| /OE/ | D. Gabor, et al., *Television Band Compression By Contour Interpolation*, The Proceedings of the Institution of Electrical Engineers, Vol. 108, Part B, No. 39, May 1961 | |
| /OE/ | Arun N. Netravali and John O. Limb, *Picture Coding: A Review*, Proceedings of the IEEE, Vol. 68, No. 3, Mar. 1980 | |
| /OE/ | Limb et al., *Exchange of Spatial and Temporal Resolution in Television Coding*, The Bell System Technical Journal, January 1971 | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| ./Ovidio Escalante/ | 08/16/2007 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
1 Applicant's unique citation designation number (optional). 2 Applicant is to place a check mark here if English language Translation is attached.
WDC99 1421180-1.075543.0017

Exhibit 36
Page 000576