# SCHMIDT DECLARATION EXHIBIT 42

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervenor and Counter-claimant, <br><br>———————————————————<br><br> MICROSOFT CORPORATION, <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant and Counter-claimant <br><br>———————————————————<br><br> LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., <br><br> Defendant. <br><br>——————————————————— | **Civil No:** 02CV2060-B(CAB) <br> consolidated with <br> **Civil No:** 03CV0699-B (CAB) and <br> **Civil No:** 03CV1108-B (CAB) <br><br> **ORDER GRANTING SUMMARY JUDGMENT OF NO INFRINGEMENT OF U.S. PATENT NO. 4,582,956 AND MOOTING PARTIES' CROSS-MOTIONS ON THE AFFIRMATIVE DEFENSE OF IMPLIED LICENSE.** |

02CV2060-B (CAB)

Exhibit 42
Page 000605

Defendants Dell and Gateway move the Court for summary judgment of no infringement regarding U.S. Patent No. 4,582,956 ("the '956 patent"). For the reasons herein, the Court **GRANTS** the motions.

## I. BACKGROUND

The '956 patent is directed to methods and apparatus for receiving and displaying caller ID information sent from a telephone switching system. The patent was filed on July 12, 1983, and issued on April 15, 1986. It entered reexamination in 1992 and emerged on September 20, 1994. The '956 patent expired on July 12, 2003.

Lucent is asserting this patent against Dell and Gateway (collectively "Defendants")[1] for sales between 1998 and July 12, 2003, of computers with built-in telephony modems which allow users to connect to a telephone line. The accused devices include computers with a Conexant-based, Broadcom-based or U.S. Robotics/3COM type 1 caller ID-compatible modem and a windows operating system. Generally, such modems allow the user to connect to telephone-based internet services. However, users may also use the modems along with software to display caller ID information for incoming calls.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

---

[1] Lucent has not asserted this patent against Microsoft.

Exhibit 42
Page 000606

1    When the moving party does not bear the burden of proof, summary judgment is
2 warranted by demonstration of an absence of facts to support the non-moving party's case."
3 Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if
4 the party responding to the motion fails "to make a sufficient showing on an essential
5 element of her case with respect to which she has the burden of proof." Id. at 323.

**III.   ANALYSIS**

### A.   Objections to the Expert Declaration of James R. Bress

Lucent submitted a declaration from its expert James R. Bress in support of its opposition to Defendants' motions for summary judgment. Defendants object to a number of the statements in the declaration as untimely because they purportedly offer new opinions, theories and evidence not presented in Bress' expert report and/or depositions. Because Bress' declaration bears somewhat upon the Court's determination of the summary judgment motions, these objections are addressed here first.

The Court finds that Defendants have pointed to opinions in the declaration that are not reflected in the content of Bress' expert report. Bress' declaration opines for the first time that the unmodified FSK signal used in the patent is either 2025 or 2225 hertz. Additionally, Bress' declaration opines for the first time on the equivalence of analog and digital signal processing using a function, way, result analysis; his report only opined as to the equivalence of output of the two processing types (i.e. only the equivalence of the result). Finally, Bress' declaration opines for the first time that it is possible to design caller ID without infringing '956. These new opinions are excluded and not considered in the Court's analysis of the instant summary judgment motions.

### B.   Direct Infringement

Defendants argue that the accused devices do not infringe literally or under the doctrine of equivalents. Lucent does not oppose Defendants' motion regarding infringement under the doctrine of equivalents, thus Defendants' motion on this ground is **GRANTED**.

3

Exhibit 42
Page 000607

1    The remainder of the analysis focuses on literal infringement. "Literal infringement
2 of a claim exists when every limitation recited in the claim is found in the accused device,
3 i.e., when the properly construed claim reads on the accused device exactly." Cole v.
4 Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996).
5    Defendants first assert that each claim of the '956 patent requires the presence and
6 detection of an unmodulated signal or an unmodulated FSK signal and that this element is
7 lacking from the accused devices.
8    The Court defined these terms as follows:

**Unmodulated Signal:** a signal containing no information (intelligence expressed digitally as countable zeros and ones)

**Unmodulated FSK signal:** an FSK signal containing no information (intelligence expressed digitally as countable zeros and ones)

An FSK (frequency shift keyed) signal was defined as "a signal that may comprise two carrier frequencies, one of which represents a 'zero' and the other of which represents a 'one'."

The '956 patent describes the use of modulated and unmodulated signals in the receipt and display of caller ID information (referred to as special service information by the patent):

> The modulated signal represents the special service information. The apparatus includes a detector which detects the unmodulated signal during the silent interval between ringing signals. After the unmodulated signal is detected, the special service information is received and stored during the silent interval. The stored special service information is then displayed at the selected station during the silent interval.

('956 patent col. 1:58-66.)  Thus, the function of the unmodulated signal is to alert the receiver that the caller ID information will be transmitted.

The accused devices use a GR-30-CORE standard which transmits a Channel Seizure Signal followed by a Mark Signal to the receiver during the silent interval between rings. The caller ID information then follows. The GR-30-CORE standard describes the Channel Seizure Signal to "consist of a block of 300 continuous bits of alternating '0's and

4

Exhibit 42
Page 000608

1  '1's." The standard describes the Mark Signal to consist of "180 mark bits" (180 '1's).

2  According to Defendants, the Channel Seizure and Mark Signals are not
3  unmodulated signals because they fall outside of the Court's construction and outside of the
4  definition of an unmodulated signal that the patentee provided during prosecution of the
5  '956 patent. Lucent responds that simply because the Channel Seizure and Mark Signals
6  contain zeros and ones, they do not contain "intelligence." Lucent contends that like the
7  unmodulated signal in the '956 patent, these signals only alert the receiver to the approach
8  of incoming caller ID information.

9  The '956 patent describes a modulated signal comprising a data message transmitted
10 by two analog frequencies which represent the digital signal of '0's and '1's. ('956 patent
11 col. 3:17-21.) The alerting/initializing signal that precedes the data message is described as
12 an unmodulated signal. (Id. at col. 3:37-40.) During reexamination of the '956 patent, the
13 patentee further defined this unmodulated signal. The patentee distinguished over the prior
14 art known as the "Baker patent" (U.S. Patent No. 4,289,931). The Baker patent used a
15 "segment 83" which contained a defined number of zeros which was transmitted to enhance
16 the reliability of the data which followed. Patentee distinguished from the Baker patent
17 stating that "when a signal contains information identifying a countable number of zeros, or
18 zeros and ones, that is a modulated signal carrying coded information." (Dec. Micallef
19 Supp. Dell's Mot. Ex. C at 260.) The patentee further stated :

20 > N zeros represents <u>information</u>, i.e. the digital trigger for <u>reliably identifying subsequent conventional data signals</u>, and is not, as in patentee's case, simply an analog signal to prepare the detector to receive modulated signals"
21

22 (Id. at 264.) Hence, patentee distinguished from the prior art because patentee's
23 unmodulated signal was "simply an analog signal" and it did not contain a countable
24 number of zeros and ones.

25 In the instant accused devices there is some debate between the parties' experts as to
26 whether the devices count the zeros and ones contained in the Mark and Channel Signals,
27 and as to whether it is necessary for the devices to receive and count the full signal to meet

28

5

Exhibit 42
Page 000609

1 the claim limitations of the '956 patent.  Regardless of the counting, however, the accused

2 devices use a digital signal.  The Mark and Channel Signals use two analog frequencies to

3 represent a digital signal comprised solely of zeros and/or ones. Thus, the accused devices

4 do not use "simply an analog signal" as the unmodulated signal defined by the patentee.

5 Under a literal infringement analysis, therefore, the accused devices do not infringe.

6 Moreover, since Lucent has chosen not to pursue infringement under doctrine of

7 equivalents, there need not be any consideration of whether a digital signal as used by the

8 accused devices is equivalent to the analog signal of the '956 patent.

9      In sum, Lucent has failed to raise a genuine issue of material fact as to an essential

10 element of every claim at issue in the '956 patent, therefore Defendants' motions for

11 summary judgment of no infringement are **GRANTED**.[2]

12      **C.**    **Indirect Infringement**

13      Defendants contend that they do not indirectly infringe the '956 patent either under a

14 theory of contributory infringement or inducing infringement.  Liability for indirect

15 infringement requires a showing of direct infringement. Dynacore Holdings Corp. v. U.S.

16 Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether

17 inducement to infringe or contributory infringement, can only arise in the presence of direct

18 infringement. . . .").  Because there is no direct infringement of the '956 patent, there can

19 be no indirect infringement.  Therefore, on this ground, Defendants' motion for summary

20 judgment of no inducing infringement and no contributory infringement is **GRANTED**.[3]

21      Defendants have raised implied license as an affirmative defense to Lucent's

---

[2] Defendants' motions raised additional issues as to elements in subsets claims that are purportedly lacking in the accused devices.  Dell also argued that Lucent lacked evidence that Dell ever performed the steps of the methods claims before the patent expired.  In light of the above analysis, the Court need not rule on these additional grounds.

[3] Additionally, Lucent states that it is not pursuing contributory infringement claim. Therefore, as to contributory infringement, Defendants' motions are also granted on this ground.

28                        6

Exhibit 42
Page 000610

allegations of indirect infringement. Defendants' instant motions move for summary judgment on this affirmative defense. Lucent filed a cross-motion for summary judgment on this issue. Because the Court has found no indirect infringement of the '956 patent, it need not consider the affirmative defense of implied license. Therefore, Defendants' motions and Lucent's cross-motion on implied license are **MOOT**.

## IV.  CONCLUSION

For the reasons herein, the Court **GRANTS** Defendants' motions for no direct infringement (literal and under the doctrine of equivalents) and **GRANTS** Defendants' motions for no indirect infringement (contributory and inducing infringement). In light of these rulings, Defendants' and Lucent's cross-motions for summary judgment pertaining to the affirmative defense of implied license are **MOOT**.

**IT IS SO ORDERED**

DATED:  May 15, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
United States Magistrate Judge

All Counsel of Record

7

Exhibit 42
Page 000611