# SCHMIDT DECLARATION
# EXHIBIT 43

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,
      Plaintiffs,
    v.

Case No. 02-CV-2060 B (CAB)

GATEWAY, INC., GATEWAY COUNTRY
STORES LLC, GATEWAY COMPANIES, INC.
GATEWAY MANUFACTURING LLC
and COWABUNGA ENTERPRISES, INC.,
      Defendants.

consolidated with

Case No. 03-CV-0699 B (CAB)
Case No. 03-CV-1108 B (CAB)

And
MICROSOFT CORPORATION,
      Intervener.

---

MICROSOFT CORPORATION,
      Plaintiff,
    v.
LUCENT TECHNOLOGIES INC., and
MULTIMEDIA PATENT TRUST,
      Defendants.

---

LUCENT TECHNOLOGIES INC., and
MULTIMEDIA PATENT TRUST,
      Plaintiffs,
    v.
DELL INC.,
      Defendant.

---

## SUPPLEMENTAL REBUTTAL EXPERT REPORT OF PROFESSOR BERND GIROD REGARDING VALIDITY OF LUCENT'S 4,383,272 AND 4,958,226 PATENTS

Exhibit 43
Page 000612

# TABLE OF CONTENTS

Page

1. Scope of the Report .............................................................................. 3
2. Qualifications ........................................................................................ 3
3. Other Cases .......................................................................................... 3
4. Compensation ....................................................................................... 3
5. Review and Use of Documents and Other Materials ............................ 4
6. Review of Video Compression Technology ......................................... 4
7. Legal Principles ................................................................................... 4
8. Level of Ordinary Skill in the Art ....................................................... 7
9. Validity of US Patent 4,383,272 ("Netravali") ................................... 8
   9.1 Gabor & Hill/Gabor (Nonobviousness) ......................................... 8
   9.2 Gabor & Hill/Hill Thesis (Nonobviousness) ................................ 11
   9.3 Picture Coding/Gabor & Hill (Nonobviousness) .......................... 13
   9.4 Picture Coding/Limb & Pease (Nonobviousness) ........................ 14
   9.5 Secondary Considerations Demonstrating Nonobviousness .......... 15
10. Validity of US Patent 4,958,226 ("Haskell") .................................... 16
   10.1 General Knowledge In The Art .................................................. 16
   10.2 Bidirectional Prediction ........................................................... 19
   10.3 Claim 12 is Not a Predictable Combination of Techniques Known in the
   Prior Art ........................................................................................ 20
   10.4 Secondary Considerations Demonstrating Nonobviousness ........ 32
11. Signature ........................................................................................... 33

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000613

## 1. SCOPE OF THE REPORT

I have been asked by Kirkland & Ellis LLP, counsel for Lucent Technologies Inc. ("Lucent") and the Multimedia Patent Trust ("MPT"), to provide my opinions as a technical expert in the field of video compression concerning the validity of Claim 13 of U.S. Patent No. 4,383,272 entitled "Video Signal Interpolation Using Motion Estimation" ("Netravali") and Claim 12 of U.S. Patent No. 4,958,226 entitled "Conditional Motion Compensated Interpolation of Digital Motion Video" ("Haskell").

I previously submitted reports on May 12, 2006 and August 11, 2006 regarding the validity of Netravali and Haskell. I have been asked to consider and respond to certain opinions expressed in the September 14, 2007 report of Edward J. Delp III ("Delp Report"). The bases for my opinions are detailed in this report. I anticipate providing testimony at trial regarding my opinions discussed herein.

## 2. QUALIFICATIONS

In my March 31, 2006 Expert Report, I summarized my qualifications to render expert opinions in the area of video compression.

## 3. OTHER CASES

In my March 31, 2006 Expert Report, I provided a list of other cases in which I have provided testimony.

## 4. COMPENSATION

I am being paid my standard consulting fee of $700 per hour for my services, in addition to a monthly retainer and reimbursement of out-of-pocket expenses. I have no financial or business interests in Lucent, MPT, Gateway, Dell, or Microsoft. My compensation is not in any way dependent on the outcome of the litigation.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000614

## 5. REVIEW AND USE OF DOCUMENTS AND OTHER MATERIALS

In preparation of this report, I have considered the documents referenced in my prior reports, the September 14, 2007 report of Edward J. Delp. III (including all exhibits and materials cited), Microsoft's Eighth Supplemental Response to Lucent's First Set of Interrogatories (No. 1), and all of the materials referenced in this report. I reserve the right to supplement this report to address any additional information or discovery that may become available.

## 6. REVIEW OF VIDEO COMPRESSION TECHNOLOGY

In my March 31, 2006 Expert Report, I provided a general review of video compression technology.

## 7. LEGAL PRINCIPLES

Counsel for MPT has informed me that, since my last report, the Supreme Court has clarified the legal standards for invalidity due to obviousness. Counsel for MPT has informed me that the Supreme Court confirmed that, while identification of a teaching, suggestion, or motivation to combine prior art references is no longer strictly required to demonstrate obviousness, the principles set forth in my May 12, 2006 Expert Report otherwise remain valid. I understand that the fundamental question remains whether the claimed invention would have been obvious to a person of ordinary skill in the art, taking into account (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any secondary considerations of nonobviousness. Having considered my previous opinions in light of the Supreme Court's clarification of the legal standards for invalidity due to obviousness, as explained to me by counsel for MPT, my ultimate conclusions concerning the nonobviousness of Netravali and Haskell have not changed.

Counsel for MPT has informed me that the Supreme Court provided further guidance concerning the obviousness analysis. Specifically, counsel for MPT has informed me

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000615

that obviousness is not established by simply combining previously known elements from the prior art. A patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. I understand that it can be important to identify a reason, such as a teaching suggestion or motivation, that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. I understand that the Supreme Court has cautioned that in identifying such a reason, the analysis need not seek out precise teachings in the prior art directed to the specific subject matter of the challenged claim.

Counsel for MPT has informed me that it will often be necessary for a court to look to interrelated teachings of multiple patents, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. I understand that any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. I understand that when a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. I understand that the combination of familiar elements according to known methods may be obvious when it does no more than yield predictable results. I also understand that a claim is not invalid as obvious if it is more than the predictable use of prior art elements according to their established functions.

Counsel for MPT has informed me that if a technique has been used to improve one device, and a person of ordinary skill in the art could recognize that it would improve similar devices in the same way, application of the technique to similar devices is likely to be obvious unless its actual application in that context is beyond his or her skill. I understand that if design needs or market pressures urge solution to a problem, and there are a finite number of identified, predictable solutions, then a person of ordinary skill has

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000616

good reason to pursue the known options. I understand that under these circumstances, the combination of elements of prior art may be considered a matter of common sense and may demonstrate obviousness.

Counsel for MPT has also informed me that if the prior art teaches away from combining known elements in the manner claimed by the invention at issue, discovering a successful way to combine them is less likely to be obvious. I understand that similar subject matter may not be sufficient motivation for a person of skill in the art to combine references if the references have conflicting elements.

Counsel for MPT has also informed me that a motivation to conduct further testing or research that may lead to the claimed invention does not necessarily render a claim obvious. I understand that an invention is not necessarily rendered obvious simply because it was obvious to try a certain combination.

Counsel for MPT has also informed me that obviousness of a patent cannot properly be established through hindsight, and that elements from different prior art references, or different embodiments of a single prior art reference, cannot be selected to create the claimed invention using the invention itself as a roadmap. I understand that the claimed invention as a whole must be compared to the prior art as a whole, and courts must avoid aggregating pieces of prior art through hindsight which would not have been combined absent the inventors' insight.

Counsel for MPT has informed me that secondary considerations of nonobviousness must be considered in addition to the primary considerations of the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art. Counsel for MPT has also informed me that secondary considerations of nonobviousness may include commercial success of products or processes using the invention, long felt need for the invention, failure of others to make the invention, industry acceptance of the invention, licensing of the invention, copying of

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 6 -

Exhibit 43
Page 000617

the invention by others, initial skepticism aimed at the invention, statements of acclaim for the invention, and unexpected results achieved by the invention.

Counsel for MPT has informed me that the granting of a request for reexamination by the Patent Office does not establish a likelihood of patent invalidity. I understand that the grant of a request for reexamination is not probative of patentability. I understand that the Patent Office will grant a request for reexamination if it raises "a substantial new question of patentability." I further understand that this is a low standard to meet in practice because the Patent Office historically grants over 90% of requests for reexamination.

## 8. LEVEL OF ORDINARY SKILL IN THE ART

In my opinion, a person of ordinary skill in the art of video compression throughout the 1980s would have had at least a Bachelor of Science degree in electrical engineering or a related field and 2 years experience working in the area of video compression systems.

Dr. Delp has opined that, as of 1981, it was known that interpolation could be done adaptively, for example, by selecting the locations from which to interpolate as a function of motion. While the section "Background of the Invention" of Netravali acknowledges that both fixed and adaptive interpolation techniques were known, to the extent that Dr. Delp contends that it was known in the art to select corresponding locations, i.e., locations where the same object is expected to be, I disagree. The prior art did not disclose selection of corresponding locations for interpolation as a function of the displacement of objects in the picture.

Dr. Delp has also opined that the prior art to Haskell expressly suggested combining video coding techniques, identified the problem of visual artifacts in motion compensated interpolated frames, and therefore "provided a motivation to combine any known solution

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000618

of interpolation deviation codes." Delp Report, § 19. I disagree for the reasons set forth below in my discussion of Haskell.

## 9. VALIDITY OF US PATENT 4,383,272 ("NETRAVALI")

In my March 31, 2006 Expert Report, I provided a background discussion of Netravali. In my May 12, 2006 Expert Report, I provided my anticipation analysis and opinions concerning the validity of Netravali. I continue to believe that Netravali is valid and not anticipated. I have been asked to specifically consider issues regarding the obviousness of Claim 13.

### 9.1 Gabor & Hill/Gabor (Nonobviousness)

Dr. Delp has opined that it would have been obvious to combine the teachings of Gabor & Hill with Gabor. To the extent that Dr. Delp contends that the combination of Gabor & Hill with Gabor renders obvious Claim 13 of Netravali, I disagree. In my opinion, it would not have been obvious for a person of skill in the art to modify the teachings of Gabor & Hill and Gabor in the manner that Dr. Delp suggests. Furthermore, even if combined, Gabor & Hill and Gabor do not disclose all of the limitations of the claim language as construed by the Court.

#### 9.1.1 No Reasons to Combine

In my opinion, the interrelated teachings in the prior art would not have provided a person of skill in the art with a reason to combine Gabor & Hill with Gabor. Contrary to Dr. Delp's view, the general goal of developing more efficient coding systems does not demonstrate specific design or market needs in the pertinent field that would have rendered the invention of Claim 13 obvious. The invention of Claim 13 was not simply a combination of known techniques. I disagree with Dr. Delp that Dr. Gabor's receipt of the Nobel Prize has any bearing on the issue of obviousness or even the alleged motivation to combine Dr. Gabor's references. In my opinion, Dr. Delp's analysis uses

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 8 -

Exhibit 43
Page 000619

hindsight to selectively modify the teachings of Gabor & Hill and Gabor in an attempt to point out all the elements required by the Court's construction of Netravali Claim 13.

### 9.1.2 Combination Does Not Disclose All Limitations of Claim 13

Dr. Delp appears to agree with me that all of the relevant teachings of Gabor & Hill are also found within the Gabor Article. Since all the relevant teachings of Gabor are included in Gabor & Hill as well, the combination of Gabor & Hill with Gabor does not broaden the teachings of Gabor & Hill. Therefore, the combination of Gabor & Hill with Gabor fails to render obvious Netravali Claim 13 for at least the reason that Gabor & Hill with Gabor fails to disclose all of the elements of that claim. Below, I highlight some of the reasons why Gabor & Hill and Gabor, whether taken independently or combined, do not disclose all of the elements of Claim 13.

Gabor & Hill does not disclose "[a] method of estimating the intensities of elements (pels) in a picture in accordance with information defining intensities of pels in preceding and succeeding versions of the picture" as required by the language of Claim 13. Digital video has pixels (or pels), while analog video does not. Pixels or pels are samples along the scan lines of a video signal. Gabor & Hill describes a system that operates entirely in the analog domain and does not sample the television signal along scan lines in the horizontal dimension.

Gabor & Hill does not disclose "determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions" as required by the claim language. A person of ordinary skill in the art reading Claim 13 in light of the specification would understand that the phrase "determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations" requires processing of intensity information for pels sampled in the temporal, vertical, and horizontal dimensions.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000620

As explained above, Gabor & Hill describes a system that operates entirely in the analog domain, and does not sample in the horizontal dimension to generate pels with intensities at discrete locations. Without pel intensities it is not possible to "determine[] by interpolation intensities of pels . . . in accordance with intensities of pels in related locations," as recited in Claim 13. Gabor & Hill therefore does not determine intensities of pels. It also does not perform any operation in accordance with intensities of pels in related locations in preceding and succeeding versions of the picture to be interpolated. To the extent that it performs interpolation at all, Gabor & Hill interpolates scan line signals, not pels.

Dr. Delp has opined that a person of ordinary skill in the art during the relevant time frame would have understood the term "picture element" to mean any area on a television or computer screen. I disagree. In my opinion, Dr. Delp fails to consider the context of the Netravali invention when proposing his definition. In the context of the video processing inventions described in Netravali, there are no operations performed on the intensities of "picture elements" as defined by Dr. Delp (i.e., any "area of a picture on a television or computer screen" Delp Report § 33). Rather, interpolation is performed for intensities of picture elements that are samples in the temporal, horizontal, and vertical dimensions, also referred to in the art as "pixels."

Further, the Court has construed "related locations" to mean "locations at which the same object is expected to be." For temporal interpolation, Gabor & Hill interpolates signals only between the same scan line in two versions of the picture. Thus it does not disclose interpolation from locations at which the same object is expected to be. Moreover, Gabor & Hill only considers contours, i.e., "position[s] where the intensity changes by more than a certain predetermined rate" along a scan line of an analog television signal. (MSLT_0001230.) It is well known that the location where objects are expected to be cannot be represented by considering only the thresholded intensity gradient in the horizontal direction. Furthermore, I disagree with Dr. Delp's conclusion

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 10 -

Exhibit 43
Page 000621

that a person of ordinary skill in the art would be able to expand on the principles in Gabor & Hill to search for motion in the vertical direction.

Dr. Delp relies heavily on the Patent Office's decision to reexamine claim 13 of Netravali. Counsel for MPT has informed me that the grant of a request for reexamination is not evidence of invalidity. Counsel for MPT has also informed me that the document on which Dr. Delp relies, '272 Reexam (MSLT_1234186 - MSLT_1234201), is the result of a unilateral proceeding in which MPT was not involved. I understand that MPT was therefore not provided an opportunity to refute the significance of the prior art references presented to the examiner in the Patent Office. Counsel for MPT has also informed me that the PTO's reexamination decision turned on the assumption that "the teaching of the intensity value being interpolated from preceding and succeeding versions of the picture was not present in the prosecution of the application which became the '272 patent." That assumption is false because the Background section of Netravali itself notes that fixed and adaptive techniques for interframe interpolation (although without motion compensation) were known in the art. Under these circumstances, the decision to reexamine Claim 13 of Netravali should not have any bearing on the question of obviousness and does not undermine my prior validity analysis in any way.

### 9.2 Gabor & Hill/Hill Thesis (Nonobviousness)

Dr. Delp has opined that it would have been obvious to combine the teachings of Gabor & Hill with the Hill Thesis. To the extent that Dr. Delp contends that the combination of Gabor & Hill with the Hill Thesis renders obvious Claim 13 of Netravali, I disagree. In my opinion, it would not have been obvious for a person of skill in the art to modify the teachings of Gabor & Hill and the Hill Thesis in the manner that Dr. Delp suggests. Furthermore, even if combined, Gabor & Hill and the Hill Thesis do not disclose all of the limitations of the claim language as construed by the Court.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000622

### 9.2.1 No Reasons to Combine

The interrelated teachings in the prior art would not have provided a person of skill in the art with a reason to combine Gabor & Hill with the Hill Thesis. Contrary to Dr. Delp's view, in my opinion the general goal of developing more efficient coding systems does not demonstrate specific design or market needs in the pertinent field that would have rendered the invention of Claim 13 obvious. The invention of Claim 13 was not simply a combination of known techniques. In my opinion, Dr. Delp's analysis uses hindsight to selectively modify the teachings of Gabor & Hill and the Hill Thesis in an attempt to point out all the elements required by the Court's construction of Netravali Claim 13.

### 9.2.2 Combination Does Not Disclose All Limitations of Claim 13

As I discussed in my May 12, 2006 Expert Report, I have seen no clear evidence that the Hill thesis was publicly available before the filing of the Netravali patent application. I have seen no evidence to establish the date or time frame when the Hill thesis was catalogued in any publicly accessible library or otherwise publicly available. I have seen no clear evidence that the Hill thesis was catalogued or indexed by subject matter in a manner that would have permitted a person of ordinary skill in the art of video compression in the 1980s to locate the thesis.

So far, Dr. Delp has failed to point out any relevant teachings that are found in the Hill Thesis, but not in Gabor & Hill. If all the relevant teachings of the Hill Thesis are included in Gabor & Hill as well, the combination of Gabor & Hill with the Hill Thesis does not broaden the teachings of Gabor & Hill. As explained above, Gabor & Hill fails to disclose all of the elements of Claim 13. For the same reasons discussed above for Gabor & Hill, the Hill Thesis does not disclose all elements of Claim 13 because it describes a system that does not sample the television signal along scan lines, does not determine by interpolation the intensities of pels, and does not perform any operations

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 12 -

Exhibit 43
Page 000623

based on locations where the same object is expected to be. Therefore, the combination of Gabor & Hill with the Hill Thesis fails to render obvious Netravali Claim 13 for at least the reason that Gabor & Hill with Hill fails to disclose all of the elements of that claim.

Additionally, Dr. Delp's invalidity analysis relies heavily on the Patent Office's decision to reexamine Claim 13 of Netravali. For the reasons discussed above, the decision to reexamine Claim 13 of Netravali should not have any bearing on the question of obviousness and does not undermine my prior validity analysis in any way.

### 9.3 Picture Coding/Gabor & Hill (Nonobviousness)

Dr. Delp has opined that it would have been obvious to combine the teachings of Picture Coding with Gabor & Hill. To the extent that Dr. Delp contends that the combination of Picture Coding with Gabor & Hill renders obvious Claim 13 of Netravali, I disagree. In my opinion, it would not have been obvious for a person of skill in the art to combine the teachings of Picture Coding and Gabor & Hill in the manner that Dr. Delp suggests. Furthermore, even if combined, Picture Coding and Gabor & Hill do not disclose all of the limitations of the claim language as construed by the Court.

#### 9.3.1 No Reasons to Combine

The interrelated teachings in the prior art would not have provided a person of skill in the art with a reason to combine Picture Coding with Gabor & Hill. Contrary to Dr. Delp's view, in my opinion the general goal of developing more efficient coding systems does not demonstrate specific design or market needs in the pertinent field that would have rendered the invention of Claim 13 obvious. The invention of Claim 13 was not simply a combination of known techniques. In my opinion, Dr. Delp's analysis uses hindsight to selectively modify the teachings of Gabor & Hill and Picture Coding in an attempt to point out all the elements required by the Court's construction of Netravali Claim 13.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000624

### 9.3.2 Combination Does Not Disclose All Limitations of Claim 13

As described above and in my May 12, 2006 Expert Report, neither Picture Coding nor Gabor & Hill teaches "determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions." The combination of Picture Coding with Gabor & Hill therefore fails to disclose all of the elements of Netravali Claim 13.

Additionally, Dr. Delp's invalidity analysis relies heavily on the Patent Office's decision to reexamine Claim 13 of Netravali. For the reasons discussed above, the decision to reexamine Claim 13 of Netravali should not have any bearing on the question of obviousness and does not undermine my prior validity analysis in any way.

### 9.4 Picture Coding/Limb & Pease (Nonobviousness)

Dr. Delp has opined that it would have been obvious to combine the teachings of Picture Coding with Limb & Pease. To the extent that Dr. Delp contends that the combination of Picture Coding with Limb & Pease renders obvious Claim 13 of Netravali, I disagree. In my opinion, it would not have been obvious for a person of skill in the art to combine the teachings of Picture Coding and Limb & Pease in the manner that Dr. Delp suggests. Furthermore, even if combined, Picture Coding and Limb & Pease do not disclose all of the limitations of the claim language as construed by the Court.

### 9.4.1 No Reasons to Combine

The interrelated teachings in the prior art would not have provided a person of skill in the art with a reason to combine Picture Coding with Limb & Pease. Contrary to Dr. Delp's view, in my opinion the general goal of developing more efficient coding systems does not demonstrate specific design or market needs in the pertinent field that would have rendered the invention of Claim 13 obvious. In my opinion, the invention of Claim 13 was not simply a combination of known techniques. I disagree with Dr. Delp that

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000625

common authorship and subject matter would motivate a person of skill in the art to combine the Picture Coding and Limb & Pease references. In my opinion, Dr. Delp's analysis uses hindsight to selectively modify the teachings of Picture Coding and Limb & Pease in an attempt to point out all the elements required by the Court's construction of Netravali Claim 13.

### 9.4.2 Combination Does Not Disclose All Limitations of Claim 13

As described in my May 12, 2006 Expert Report, neither Picture Coding nor Limb & Pease teaches "determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions." The combination of Picture Coding with Limb & Pease therefore fails to disclose all of the elements of Netravali Claim 13.

In addition, I disagree with Dr. Delp that Limb & Pease teaches the interpolation technique described in Claim 13. Limb & Pease does not disclose "interpolating the intensities of pels in locations where the same object is expected be."

### 9.5 Secondary Considerations Demonstrating Nonobviousness

In my opinion, several secondary considerations confirm my opinion that the invention described in Netravali Claim 13 is nonobvious. First, products that use the claimed inventions have been highly successful in the marketplace. The claimed inventions are used in numerous video coding standards, including MPEG-1, MPEG-2, VC-1, and others. The Netravali invention has contributed to the success of products based on these standards by reducing the bit-rate needed to transmit or store video bitstreams for a broad range of applications. In my experience, other video coding technologies that do not use the claimed inventions have not been as commercially successful.

Licenses showing industry respect for the claimed inventions also support my conclusion that Claim 13 is nonobvious. I have reviewed several of Lucent's licensing

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 15 -

Exhibit 43
Page 000626

agreements that specifically identify Netravali. I have also reviewed several Lucent licensing negotiation documents which refer to Netravali, indicating that Netravali has been a focal point of negotiations for broader licenses with third parties.

Finally, statements of acclaim by others support my conclusion that the invention of Claim 13 was nonobvious. For example, the Research and Development Council of New Jersey awarded Arun Netravali and John Robbins the 1996 Thomas Alva Edison Patent Award for outstanding research and development in the state of New Jersey, as reflected in Netravali. ROBB 000001.

## 10. VALIDITY OF US PATENT 4,958,226 ("HASKELL")

In my March 31, 2006 Expert Report, I provided a background discussion of Haskell. In my May 12, 2006 Expert Report, I provided my anticipation analysis and opinions concerning the validity of Haskell. I continue to believe that Haskell is valid and not anticipated. Haskell contains 12 claims. I have been asked to specifically consider issues regarding the obviousness of Claim 12.

### 10.1 General Knowledge In The Art

Dr. Delp opines that a set of video coding methods combining the use of prediction, motion estimation, motion vectors, and DCT coding of the difference signal were generally known in the art at the time of the Haskell invention, as well as a separate set of video coding methods using transmission of interpolation error. He further opines that motion-compensated interpolation was generally known at that time along with the problem of visual artifacts in frames obtained by motion-compensated interpolation. Because, in his opinion, the transmission of "interpolation deviation codes" was a known solution to the known problem of visual artifacts in interpolated frames, Dr. Delp contends that a person skilled in the art would have been motivated to combine the prior art methods, and that Claim 12 of Haskell is therefore invalid for obviousness. I disagree. In my opinion, Dr. Delp's analysis uses hindsight to selectively combine portions of the

Exhibit 43
Page 000627

known art in an attempt to point out all the elements required by the Court's construction of Haskell Claim 12.

Dr. Delp opines that there are certain "baseline" references in the prior art that "teach the coding concepts of motion compensated forward prediction, prediction error, and motion-compensated temporal interpolation." He offers a set of references in the text and footnote of page 19 of his report to show that "the concept of using motion compensated prediction and DCT error coding was well known by one skilled in the art" prior to Haskell. Apparently these references are examples of his "baseline" references. He then offers a second set of references in the text and footnote of page 20 to show that bidirectional prediction and "the advantage to be gained from employing bidirectional prediction error such as interpolation error" were also known in the art. Dr. Delp then suggests that "Claim 12 is therefore simply a combination of these well-known, prior art techniques, used in the same manner in which they were used by the prior art to achieve predictable results." I disagree.

Even if one assumes that Dr. Delp's first and second sets of references were generally known in the art, and known to be potentially beneficial towards better compression and/or better video quality, there were a large number of beneficial video coding techniques available at the time. Theoretically, a person skilled in the art could have attempted to form all possible combinations of video coding techniques that had been reported as improving compression and/or video quality. However, such an exercise goes far beyond a routine pursuit of a finite number of predictable solutions that would place the invention of Claim 12 within the grasp of a person of ordinary skill in the art. Furthermore, in my opinion, it would require more than common sense and knowledge of the prior art for a person of ordinary skill to arrive at the invention of Claim 12.

Dr. Delp contends that a person skilled in the art would have been motivated to combine prior art methods to arrive at the invention of Claim 12 in order to eliminate visual artifacts in interpolated video sequences. I disagree. None of the references on

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000628

which Dr. Delp relies to identify the problem of visual artifacts in motion-compensated frames suggest that transmission of interpolation error, as opposed to one of many other potential solutions, could eliminate visual artifacts. In fact, since motion compensation artifacts were usually caused by a failure of the motion estimator to extract the true motion of an object, a person of ordinary skill would have typically looked for ways to improve the reliability and accuracy of the motion estimator to eliminate visual artifacts. In addition, or alternatively, a person of ordinary skill might have considered sending a flag to instruct the receiver to omit motion-compensated interpolation and use frame repetition instead, as, e.g., suggested in Japanese patent application 1-163059 (MSLT_1234116 – MSLT_1234130). Oddly, Dr. Delp cites this document to support his theory of near simultaneous invention, even though it teaches away from the Haskell invention. The Delp Report offers no convincing evidence to suggest that a person of skill in the art would recognize that transmission of transform-coded interpolation errors, as opposed to one of many other potential solutions, could eliminate the problem.

Dr. Delp also opines that a motivation to combine prior art to arrive at the invention of Haskell Claim 12 can be established because certain of his references, such as the Ericsson '914 Patent, utilize motion compensated interpolation. I disagree. This is not a situation in which common sense would dictate that a person of skill in the art employ a predictable solution to respond to design needs or market pressures. The options were too numerous. There were a large number of beneficial video coding techniques available at the time. The fact that a particular video coding technique, in this case motion compensated interpolation, could be combined with a variety of other techniques provides no reason to combine any particular subset of those techniques, let alone a subset that embodies the limitations of Haskell Claim 12.

Dr. Delp also opines that a motivation to combine prior art to arrive at the invention of Haskell Claim 12 can be established because the coding and transmission of prediction errors and interpolation errors are conceptually similar, and the coding and transmission of a prediction error to maintain picture quality was known in the art. I disagree. Dr.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000629

Delp identifies nothing that would have suggested to a person of ordinary skill in the art that transmission of interpolation error blocks would be beneficial in a system that already used the transmission of prediction errors. In addition, I note that Dr. Delp's opinion is inconsistent with the prosecution history of Haskell Claim 12. During that prosecution, the examiner considered Hinman, which in Dr. Delp's opinion discloses all of the limitations of Haskell Claim 12 except "codes that describe deviations from interpolated blocks." The examiner also considered references that in his opinion disclosed the transmission of prediction errors. Nevertheless, the examiner ultimately concluded that it would not have been obvious to combine such references to arrive at the invention of Claim 12.

Finally, Dr. Delp opines that a motivation to combine prior art to arrive at the invention of Haskell Claim 12 is provided by the emergence of CD-ROM technology. I disagree. While CD-ROM technology may have offered a person skilled in the art more latitude in trading off bit-rate, video quality, and system delay, CD-ROM technology provided no guidance or reason whatsoever to combine prior art teachings to arrive at the invention of Haskell Claim 12.

**10.2 Bidirectional Prediction**

Dr. Delp has opined that bidirectional prediction followed by averaging and addition of interpolation error were known in the art, and that the invention of Claim 12 is simply a combination of prior art techniques used in the same manner in which they were used by the prior art to achieve predictable results. As explained in the following section, I disagree. In my opinion, Dr. Delp relies on hindsight to contend that it would have been obvious to combine certain abstract "techniques," without demonstrating any reason for a person of ordinary skill in the art to make the specific combination of such techniques described in Claim 12, let alone using the specific corresponding structures identified by the Court.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000630

In his attempt to show that bidirectional prediction is an obvious variation of unidirectional prediction, Dr. Delp speculates that "a person of ordinary skill in the art could do "backward" prediction" by using "the exact same techniques and structures used for forward prediction." I disagree. The recursive structure of a predictive decoder requires that the coder at least obeys constraints posed by causality, otherwise the bitstream cannot be decoded. For example, one cannot simply encode every frame in a sequence by predicting it from the following "future" frame, as Dr. Delp appears to assert. At least some frames have to be predicted in forward direction, while skipping in-between frames with backward prediction. Today, with the benefit of hindsight, such considerations are well understood. However, at the time of the Haskell invention, the structures needed to implement such a system, their interconnection, or their control would not have been obvious to a person of ordinary skill. Nor would the step from backward prediction to bidirectional prediction be obvious, as Dr. Delp asserts.

### 10.3 Claim 12 is Not a Predictable Combination of Techniques Known in the Prior Art

Dr. Delp has opined that the various coding techniques covered by Haskell Claim 12 were well known in the prior art prior to the filing of the application for the Haskell patent. Dr. Delp has also opined that it was well known in the art to combine these various coding techniques, and he discusses several references that he believes disclose the use of such techniques in combination. I disagree with Dr. Delp's characterization of these references, as discussed below.

In addition, I disagree with Dr. Delp's opinion that the obviousness of the invention described in Claim 12 can be demonstrated by reducing the invention to a "combination" of elemental video coding technologies performing their known functions. Dr. Delp asserts that structures used to implement various video coding techniques at the time of the Haskell invention, such as "adders, decoders, DCT-1, shift circuits, averagers" were "combinable to perform the coding techniques of claim 12 in a manner that required no change in their respective functions." I disagree. The performance of a video coder

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000631

critically depends on the way the constituent elements are combined and artfully optimized as a whole. An efficient video coder cannot simply be built by combining known building blocks. Among other problems, the performance of a certain combination of elements can usually not be readily predicted but requires extended experimentation.

To the extent that Claim 12 can be considered a combination claim, it describes a combination of two particular means that have defined structure and perform specific functions. By focusing on individual components of those means, rather than the means as a whole, Dr. Delp fails to demonstrate that either of those means was known in the art. Nor does he demonstrate any reason why it would have been obvious to combine the two means as set forth in Claim 12. A person of ordinary skill would also not have been able to predict the performance of the Haskell invention as Dr. Delp asserts. For example, Haskell reports that "**Experimentally**, it has been found that interpolating every other frame is quite beneficial." (Haskell, col. 3: 43-44, emphasis added) or "the **observation** that the volume of the frame interpolation code increase with increased use of the frame interpolation code so one could quickly reach a point of 'diminishing returns' in the use of interpolation code." (Haskell, col. 3: 38-42, emphasis added). This illustrates that the Haskell invention required extended experimentation and observation of the performance, since its results were not even predictable to the inventors themselves, let alone to a person of ordinary skill in the art.

I also disagree with Dr. Delp's opinion that design incentives and market forces would have motivated a person of ordinary skill in the art to arrive at the invention of Claim 12. In my opinion, Dr. Delp does little more than note that a demand for better video compression existed, that the invention of Claim 12 discloses an improved decoder for video compression, and then conclude that the invention would therefore have been obvious. I disagree. In the absence of any specific design incentive or market force driving the particular combination of decoding means set forth in Claim 12, in my opinion Dr. Delp's analysis relies on impermissible hindsight.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 21 -

Exhibit 43
Page 000632

**10.3.1 Document Nos. 22, 43, 60, 78, 81, and/or 103R**

In the section of his report entitled "The H.261 Submissions," Dr. Delp suggests that *"claim 12 of the '226 patent simply rearranges the elements and techniques disclosed by the H.261 submissions with each technique performing the same function it had been known to perform and with the system of techniques yielding unsurprising results."* (Delp Report, § 92). As discussed in Section 10.1 of my May 12, 2006 report, I have seen no proof that the H.261 submissions qualify as prior art.

To the extent that Dr. Delp contends that the combination of H.261 submissions renders obvious Claim 12 of Haskell, I disagree. In my opinion, a person of skill in the art would not have seen reason to combine the teachings of the H.261 submissions in the manner that Dr. Delp suggests. Furthermore, even if combined, the submissions do not disclose all of the limitations of the claim language as construed by the Court. Nor would a person of skill in the art, using common sense, have combined the teachings of the submissions.

In my opinion, Dr. Delp ignores the competitive reality of the submission process of the H.261 standardization. All the documents cited by Dr. Delp were submitted during the first "divergence" phase of the H.261 standardization. (*See* § 10.1 May 12, 2006 Girod Expert Report). No attempt was made during that time to achieve convergence among competing proposals. In my opinion, Dr. Delp's analysis uses hindsight to select elements of competing proposals to CCITT SGXV in an attempt to point out all the structures required by the Court's construction of Haskell Claim 12. Nothing in the references, the nature of the problem, or the knowledge of a person having ordinary skill in the art suggests that a person of skill in the art would have recognized that the prior art elements could be combined as suggested by Dr. Delp. In fact, because of the competing nature of the various proposals, a person of ordinary skill in the art would consider them as alternatives instead of synergistic contributions. If a person of ordinary skill would have been able to readily combine the competing proposals, the two extended

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000633

convergence phases of the H.261 standardization process would not have been needed. The combined duration of the convergence phases of about 3 years clearly shows that competing proposals cannot be combined with predictable results. Extended experimentation is required, which in the H.261 standardization process manifested itself in a progression of 8 "reference models" gradually improved over the course of more than 3 years.

Furthermore, during the development of the ITU-T Recommendation H.261, nearly 600 separate documents, covering a wide range of different video coding technologies, were submitted to CCITT SGXV Specialists Group. Theoretically, a person skilled in the art could have attempted every possible combination of the numerous technologies and circuits discussed in the CCITT SGXV Specialists Group documents. However, such an exercise goes far beyond a routine pursuit of a finite number of predictable solutions that would place the invention of Claim 12 within the grasp of a person of ordinary skill in the art. In my opinion, it would require more than common sense and knowledge of the prior art for a person of ordinary skill to arrive at the invention of Claim 12.

Even if Dr. Delp is correct in his assumption that a person of skill in the art would have been motivated to combine these references, the combination does not satisfy every limitation of Haskell Claim 12. My May 12, 2006 Expert Report discusses each of the references and their combinations in detail and I incorporate those discussions by reference here.

### 10.3.2 Micke Thesis

Dr. Delp has opined that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in the Diploma thesis "Vergleich eines prädiktiven und eines interpolativen bewegungskompensierenden Codierverfahrens für Fernsehbildsignale" ("Comparison of a Predictive and an Interpolative Motion Compensating Coding Method for Television Video Signals") by Thomas Micke (the "Micke Thesis"), and that therefore the Micke Thesis anticipates Haskell Claim 12. I

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000634

disagree. It is still my opinion that the Micke Thesis does not qualify as prior art and does not anticipate Haskell Claim 12. I incorporate by reference the discussion of the Micke Thesis from § 10.5 of my May 12, 2006 Expert Report.

As explained in my May 12, 2006 Expert Report, the Micke thesis fails to disclose several elements of Claim 12 of Haskell. To the extent that Dr. Delp contends that *Advances in Picture Coding* by H.G. Musmann et al. supplies the missing elements by disclosing the use of a DCT, I disagree. Furthermore, in my opinion, it would not have been obvious for a person of skill in the art to modify the teachings of the Micke Thesis, in light of the Musmann article or otherwise, to arrive at the invention of Claim 12. Given the large number of video coding techniques available at the time, there was no specific design need, market pressure, or other reason to combine the teachings of the Micke Thesis with any specific technique known in the art to arrive at the invention of Claim 12.

**10.3.3 The PictureTel References**

In the section of his report entitled "The PictureTel References," Dr. Delp has opined that the combination of references he refers to as the "PictureTel References" renders the Haskell Claim 12 obvious. I disagree. In my opinion, a person of skill in the art would not have been motivated to combine the teachings of those references in the manner that Dr. Delp suggests. Furthermore, even if combined, the PictureTel references do not disclose all of the limitations of the claim language as construed by the Court.

Dr. Delp has opined that a person of skill in the art would have recognized reasons to combine the inventions of individual patents because they had a common assignee, overlapping inventors, and related subject matter. I disagree. Even if such factors would motivate a person in the art to collect and combine several references, a reason to consult various references in the abstract is not the same thing as a reason to combine the teachings of the references in a specific manner. In my opinion, Dr. Delp's analysis uses hindsight to selectively modify the teachings of several patents in an attempt to point out all the elements required by the Court's construction of Haskell Claim 12. Theoretically,

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000635

a person skilled in the art could have attempted to form all possible combinations of video coding techniques disclosed in the divergent teachings of the seven PictureTel References. However, such an exercise goes far beyond a routine pursuit of a finite number of identified, predictable solutions that would place the invention of claim 12 within the grasp of a person of ordinary skill in the art. Furthermore, in my opinion, it would require more than common sense and knowledge of the prior art for a person of ordinary skill to arrive at the invention of Claim 12 based on the teachings of the PictureTel references.

Dr. Delp's claim charts also purport to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in U.S. Patent No. 4,816,914 to S. Ericsson ("the Ericsson '914 patent"). I disagree. In my opinion, the Ericsson '914 patent does not disclose all of the elements of Haskell Claim 12.

In particular, the Ericsson '914 patent does not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." For example, the Ericsson '914 patent fails to disclose the claimed "codes that describe deviations from interpolated blocks," "interpolated blocks," or "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks." The Ericsson '914 patent discloses no structure that performs the required function of developing interpolated blocks using block approximations and codes that describe deviations from interpolated blocks. Furthermore, the Ericsson '914 patent discloses no circuitry or structure equivalent to the combination of Decoder 25, $DCT^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell. As such, the Ericsson '914 patent does not disclose the claimed combination of "means for developing block approximations from said codes that describe deviations from approximated blocks" and

Exhibit 43
Page 000636

"means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks."

Even if combined, the PictureTel references do not disclose all elements of Claim 12. For example, the PictureTel references nowhere disclose blockwise coding of motion-compensated interframe interpolation errors. Dr. Delp glosses over this missing limitation by concluding that the use of interpolation error was an obvious variation of the prior art. I disagree. In my opinion, Dr. Delp's analysis uses hindsight to selectively combine portions of the known art in an attempt to point out all the elements required by the Court's construction of Haskell Claim 12. Furthermore, as discussed above, Dr. Delp identifies nothing that would have suggested to a person of ordinary skill in the art that transmission of interpolation error blocks would be beneficial in a system that already used the transmission of prediction errors. In addition, I note that Dr. Delp's opinion is inconsistent with the prosecution history of Haskell Claim 12. During that prosecution, the examiner considered Hinman, which in Dr. Delp's opinion discloses all of the limitations of Haskell Claim 12 except "codes that describe deviations from interpolated blocks." The examiner also considered references that in his opinion disclosed the transmission of prediction errors. Nevertheless, the examiner ultimately concluded that it would not have been obvious to combine such references to arrive at the invention of Claim 12.

Lastly, Dr. Delp refers to the combination of the PictureTel references with Digital Pictures, but offers no reason why these references should be combined.

### 10.3.4 Near Simultaneous Invention

Dr. Delp's claim charts attempt to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in U.S. Patent No. 5,113,255 to A. Nagata et al. ("Nagata"), Matsushita's submission for the MPEG-1 standard ("Matsushita"), Bellcore's submission for the MPEG-1 standard ("Bellcore"), Sony's October 2, 1989 MPEG submission titled "Description of The Proposed Coding

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000637

Algorithm" ("Sony"), Philips' 1989 MPEG submission titled "The Full Motion System" ("Philips"), U.S. Patent No. 4,985,768 to K. Sugiyama ("Sugiyama/US"), Japanese patent application 1-11587 ("Sugiyama/JP") and an article by Paul Roos and Max. A. Viergever titled "Interframe vs. intraframe compression of image sequences" ("Roos") and that therefore Nagata, Matsushita, Bellcore, Sony, Philips, Sugiyama/US, Sugiyma/JP, and Roos provide evidence of simultaneous, independent invention of Haskell Claim 12. I disagree.

Documents produced in this case indicate that the inventors conceived of the invention of Haskell Claim 12 by March 1989, when Dr. Haskell proposed conditional motion compensated interpolation for incorporation into the CCITT SGXV reference model. Dr. Atul Puri, Haskell's co-inventor, gave a talk about conditional motion compensated interpolation at the Second International Workshop on 64 kbit/s Coding of Moving Video, held in Hannover, Germany, September 4-6, 1989. A 2-page summary of his talk is included in the conference proceedings. MSLT_0234009-11. Nagata, Bellcore, Matsushita, Sony, Philips, Sugiyama/US, and Roos are all from a later date. Dr. Delp does not cite any evidence that Nagata, Bellcore, Matsushita, Sony, Philips, Sugiyama/US, and Roos were indeed independently developed and did not benefit from Haskell's prior invention.

### The Nagata Applications

Dr. Delp's claim charts attempt to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in three Japanese patent applications (1-118004, 1-163059, and 1-169320) cited in U.S. Patent No. 5,113,255 to A. Nagata et al. ("Nagata"). I disagree. In my opinion, the three patent applications, whether taken alone or together, do not disclose all of the elements of Haskell Claim 12.

I note that U.S. Patent No. 5,113,255 discloses substantial new material not contained in the any of the cited Japanese patent applications. For example, the three Japanese applications nowhere mention and, in fact, teach away from, the use of a DCT or an

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000638

IDCT circuit, or any other form of block-wise transform coding. For that reason alone, each of the Japanese applications would fail to disclose the Haskell invention. However, other elements of Claim 12 required by the Court are not disclosed either.

In particular, those patent applications do not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." For example, those patent applications fail to disclose the claimed "block approximations," "codes that describe deviations from approximated blocks," and "means for developing block approximations from said codes that describe deviations from approximated blocks." The applications disclose no structure that performs the required function of developing block approximations from said codes that describe deviations from approximated blocks. The applications disclose no circuitry or structure equivalent to the combination of Decoder 22, DCT$^{-1}$ 24, Adder 27, and Shift Circuit 26 as disclosed in Haskell. In addition, the applications fail to disclose the claimed "interpolated blocks," "codes that describe deviations from interpolated blocks," and "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks." The applications disclose no structure that performs the required function of developing interpolated blocks using block approximations and codes that describe deviations from interpolated blocks. Furthermore, the applications disclose no circuitry or structure equivalent to the combination of Decoder 25, DCT$^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell. As such, the applications also do not disclose the claimed combination of "means for developing block approximations from said codes that describe deviations from approximated blocks" and "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks."

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 28 -

Exhibit 43
Page 000639

## Sugiyama/US and Sugiyama/JP

Dr. Delp's claim charts also attempt to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in U.S. Patent No. 4,985,768 to K. Sugiyama ("Sugiyama/US") and Japanese patent application 1-11587 ("Sugiyama/JP"; MSLT_1235588-MSLT_1235601), cited by Sugiyama/US as a priority reference. I disagree. In my opinion, neither Sugiyama/US nor Sugiyama/JP discloses all of the elements of Haskell Claim 12.

I note that Sugiyama/US discloses material not contained in Sugiyama/JP. As the US application was filed in 1990, after the invention of Haskell had become publicly known, Dr. Delp's discussion of Sugiyama/US does not appear to be relevant with respect to near simultaneous invention to the extent that the material was not already disclosed in Sugiyama/JP. I therefore focus on Sugiyama/JP in the following. The analysis and conclusions similarly apply to Sugiyama/US, and, in my opinion, neither Sugiyama/US, nor Sugiyama/JP disclose all of the elements of Haskell Claim 12.

One reason why Sugiyama/JP does not disclose all the elements of Haskell Claim 12 is that the reference does not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." Furthermore, Sugiyama/JP does not disclose the claimed "means for developing block approximations from said codes that describe deviations from approximated blocks." Sugiyama/JP discloses no circuitry or structure equivalent to the combination of Decoder 22, $DCT^{-1}$ 24, Adder 27, and Shift Circuit 26 as disclosed in Haskell. In addition, Sugiyama/JP fails to disclose the claimed "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks." Sugiyama/JP discloses no circuitry or structure equivalent to the combination of Decoder 25, $DCT^{-1}$ 34, Adder 35, Shift Circuits 31 and

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 29 -

Exhibit 43
Page 000640

39, and Averager 32 as disclosed in Haskell.  Sugiyama/JP also does not disclose the claimed combination of "means for developing block approximations from said codes that describe deviations from approximated blocks" and "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks."

### Sony

Dr. Delp's claim charts also attempt to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in Sony's October 2, 1989 MPEG proposal titled "Description of The Proposed Coding Algorithm" ("Sony").  I disagree.  In my opinion, Sony does not disclose all of the elements of Haskell Claim 12.

In particular, Sony does not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." For example, Sony discloses no "approximated blocks" and "codes that describe deviations from approximated blocks."

Sony also does not disclose the claimed "means for developing block approximations from said codes that describe deviations from approximated blocks."  Sony discloses no structure that performs the required function of developing block approximations from codes that describe deviations from approximated blocks.  Furthermore, Sony discloses no circuitry or structure equivalent to the combination of Decoder 22, $DCT^{-1}$ 24, Adder 27, and Shift Circuit 26 as disclosed in Haskell.

Furthermore, Sony does not disclose the claimed "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks."  Sony discloses no structure that performs the required function of developing interpolated blocks using block approximations and codes that describe deviations from interpolated blocks.  Finally, Sony discloses no circuitry or

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000641

structure equivalent to the combination of Decoder 25, DCT$^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell.

## Philips

Dr. Delp's claim charts also attempt to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in Philips' 1989 MPEG submission titled "The Full Motion System" ("Philips"). I disagree. In my opinion, Philips does not disclose all of the elements of Haskell Claim 12.

In particular, Philips does not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." For example, Philips discloses no "interpolated blocks" or "codes that describe deviations from interpolated blocks."

Philips does not disclose the claimed "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks." Philips discloses no structure that performs the required function of developing interpolated blocks using block approximations and codes that describe deviations from interpolated blocks. Furthermore, Philips discloses no circuitry or structure equivalent to the combination of Decoder 25, DCT$^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell.

## Roos

Dr. Delp's claim charts also purport to demonstrate that every element required by Claim 12 of Haskell is included, either explicitly or inherently, in an article by Paul Roos and Max A. Viergever titled "Interframe vs. intraframe compression of image sequences" ("Roos"). I disagree. In my opinion, Roos does not disclose all of the elements of Haskell Claim 12.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

- 31 -

Exhibit 43
Page 000642

In particular, Roos does not disclose "[a] circuit responsive to coded video signals where the video signals comprise successive frames and each frame includes a plurality of blocks and where the coded video signals comprise codes that describe deviations from approximated blocks and codes that describe deviations from interpolated blocks." For example, Roos does not disclose the claimed "means for developing block approximations from said codes that describe deviations from approximated blocks." Roos discloses no circuitry or structure equivalent to the combination of Decoder 22, $DCT^{-1}$ 24, Adder 27, and Shift Circuit 26 as disclosed in Haskell. In addition, Roos fails to disclose the claimed "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks." Roos discloses no circuitry or structure equivalent to the combination of Decoder 25, $DCT^{-1}$ 34, Adder 35, Shift Circuits 31 and 39, and Averager 32 as disclosed in Haskell. Roos also does not disclose the claimed combination of "means for developing block approximations from said codes that describe deviations from approximated blocks" and "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks."

**10.4 Secondary Considerations Demonstrating Nonobviousness**

In my opinion, several secondary considerations confirm my opinion that the invention described in Haskell Claim 12 is nonobvious. First, products that use the claimed invention have been highly successful in the marketplace. The claimed invention is used in numerous video coding standards, including MPEG-1, MPEG-2, WMV-9, VC-1, and others. The Haskell invention has contributed to the success of these products by reducing the bandwidth needed to transmit, or by reducing the quantity of storage needed to store, high-quality video bitstreams. In my experience, other video coding technologies that do not use the claimed invention have not been as commercially successful.

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000643

Licenses showing industry respect for the claimed invention also support my conclusion that Claim 12 is nonobvious. I have reviewed several of Lucent's licensing agreements that specifically identify Haskell. I have also reviewed several Lucent licensing negotiation documents which refer to Haskell, indicating that Haskell has been a focal point of negotiations for broader licenses with third parties.

Finally, Dr. Delp himself identifies several references that purportedly identify the visual artifact problem solved by the invention of Claim 12, but fail to propose the inventive solution. The failure of others to arrive at the invention of Claim 12 provides further objective evidence of nonobviousness. Moreover, the failure of Dr. Delp's "near simultaneous invention" references to disclose the invention of Haskell Claim 12, or any combination of decoding block approximations using prediction error and interpolated blocks using interpolation error, confirms my opinion that the Haskell Claim 12 invention was not obvious.

## 11. SIGNATURE

Stanford, California, October 12, 2007

*Bernd Girod*

SUPPLEMENTAL VALIDITY REPORT - PROF. BERND GIROD – OCTOBER 12, 2007

Exhibit 43
Page 000644