# SCHMIDT DECLARATION EXHIBIT 47

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC. and MULTIMEDIA PATENT TRUST,<br><br>　　Plaintiffs and Counterclaim-Defendants,<br><br>vs.<br><br>GATEWAY, INC., GATEWAY COUNTRY STORES LLC, GATEWAY, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.<br><br>　　Defendants and Counter-Claimants,<br><br>And<br><br>DELL INC.,<br><br>　　Defendant and Counter-Claimant,<br><br>And<br><br>MICROSOFT CORPORATION,<br>　　Intervener and Counter-Claimant. | CASE No. 02-CV-2060 B (CAB)<br>consolidated with<br>CASE No. 03-CV-699 B (CAB)<br>CASE No. 03-CV-1108 B (CAB)<br><br>**SUPPLEMENTAL EXPERT REPORT OF THE HONORABLE GERALD J. MOSSINGHOFF ON U.S. PATENT NO. 4,383,272 GRANTED TO NETRAVALI ET AL.** |

- 1 -

Exhibit 47
Page 000809

1. On March 31, 2006 I signed an Expert Report regarding U.S. Patent Nos. 4,958,226 granted to Haskell et al. and 4,383,272 granted to Netravali et al. (the "March 31, 2006 report"). In that report I addressed breaches of the duty of candor and good faith to the United States Patent and Trademark Office ("USPTO") during the prosecution of the Haskell '226 patent and the Netravali '272 patent, and in this report I expressly adopt the statements and opinions set forth in that report.

2. I have reviewed the Order Granting Request for *Ex Parte* Reexamination of the Netravali '272 patent issued by the USPTO on August 16, 2007 (the "'272 Reexamination Order"), attached hereto as Exhibit F. This report sets forth additional opinions regarding breaches of the duty of candor and good faith to the USPTO during the prosecution of the Netravali '272 patent, based upon the '272 Reexamination Order.

3. Attached to this report as exhibits are current versions of my curriculum vitae (Exhibit A); a list of publications that I have authored or co-authored (Exhibit B); a list of the Congressional hearings that I participated in as a principal witness (Exhibit C); a list of the intellectual property cases in which I have testified in court or in deposition as an expert (Exhibit D); and a list of documents and materials in addition to those materials cited in this report, which I have reviewed to a greater or lesser extent, as appropriate (Exhibit E).

4. My qualifications detailed in paragraph 2 of my March 31, 2006 report are incorporated herein by this reference thereto.

5. I have been retained by counsel for Defendants in the above-captioned action, to prepare this expert report and to be available to testify in the action. The law firm that employs me bills my time in this matter at my standard fee rate of $810.00 per hour for time spent on this matter, with reimbursement for actual expenses. No part of my compensation depends on the outcome of this litigation.

6. At the present time, I expect to testify at trial on the rules and procedural requirements governing the filing and prosecution of patent applications in the USPTO and the

Exhibit 47
Page 000810

grant of U.S. patents by the USPTO, the duty of candor and good faith to the USPTO, and the reexamination of granted patents in the USPTO.

7.   In *Patlex v. Mossinghoff*,[1] the Federal Circuit stated in part:

> The reexamination statute enabled the PTO to recover administrative jurisdiction over an issued patent in order to remedy any defects in the examination which that agency had initially conducted and which led to the grant of the patent. Before its enactment, the methods of achieving administrative review of an issued patent were very limited.
>
> ***
>
> The bill's proponents foresaw three principal benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. *See Senate Hearings* at 1, wherein Senator Bayh said that reexamination would be "an aid" to the trial court "in making an informed decision on the patent's validity". Third, reexamination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents". 126 Cong.Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

8.   The opinions stated in this report are based on information currently available to me. I reserve the right to continue my investigation and study, which may include a review of documents and information that may yet be produced, as well as deposition testimony from depositions for which transcripts are not yet available and that may yet be taken in this case. Therefore, I reserve the right to expand or modify this report as my investigation and study continue, and to supplement my opinions in response to any additional information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s). In my testimony I may use exhibits and demonstratives.

**BREACH OF THE DUTY OF CANDOR AND GOOD FAITH TO THE USPTO WITH REGARD TO THE NETRAVALI '272 PATENT IN FAILING TO DISCLOSE A PAPER BY GABOR & HILL TO THE USPTO DURING THE PENDENCY OF THE NETRAVALI '272 PATENT**

---

[1] 758 F.2d 594, 601 & 602 (Fed. Cir. 1985).

- 3 -

Exhibit 47
Page 000811

9. As set forth in my March 31, 2006 report:

> 35. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Gabor & Hill paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, there was more than a substantial likelihood that a reasonable examiner would have considered the Gabor & Hill paper important in deciding whether to allow the claims that were ultimately included in the '272 patent. As pointed out in the *Digital Control* case: "... if a misstatement or omission is material under the 'reasonable examiner' standard..., it is also material."[2]
>
> 36. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Gabor & Hill paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, the Gabor & Hill paper established a prima facie case of unpatentability of the claims of the '698 application (the '272 patent) within the meaning of subsection (b)(1) of the 1992 version of Rule 56. As pointed out in the *Digital Control* case, the 1992 version of Rule 56 is "an arguably narrower standard of materiality" that did "not supplant or replace our [Federal Circuit's] case law." As noted in the *Digital Control* case, "if a misstatement or omission is material under the new [1992] Rule 56 standard, it is material."[3]

10. In deciding to order a reexamination of the '272 patent, the USPTO considered the Gabor & Hill paper. The '272 Reexamination Order discusses the Gabor & Hill paper in the context of claim 13 of the '272 patent and the prosecution history and states that "Gabor & Hill raises an SNQ [substantial new question of patentability of] . . . claim 13 of the instant '272 patent." '272 Reexamination Order at 8.

11. According to the '272 Reexamination Order:

> Thus, given the above teachings, there is a substantially likelihood that a reasonable examiner would consider these teachings

---

[2] 437 F.3d 1309, 1829 (Fed. Cir. 2006).
[3] 437 F.3d at 1829.

- 4 -

Exhibit 47
Page 000812

important in deciding whether or not the instant claims under reexamination are patentable. Furthermore, the Gabor & Hill reference was not before the examiner during the prosecution of the '272 patent. Accordingly, the Gabor & Hill reference raises a SNQ as to claim 13 of the instant '272 Patent. *Id.*

12. The decision of the USPTO in the '272 Reexamination Order reinforces my opinion, based upon Dr. Delp's analyses, that the Gabor & Hill reference was material to the patentability of a claim of the patent application that resulted in the '272 patent both under the pre-1992 Rule 56 of the USPTO and the 1992 Rule 56 of the USPTO, and should have been disclosed to the examiner during the prosecution of that patent.

**BREACH OF THE DUTY OF CANDOR AND GOOD FAITH TO THE USPTO WITH REGARD TO THE NETRAVALI '272 PATENT IN FAILING TO DISCLOSE THE "PICTURE CODING" PAPER TO THE USPTO DURING THE PENDENCY OF THE NETRAVALI '272 PATENT**

13. As set forth in my March 31, 2006 report:

> 38. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Picture Coding paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, there was more than a substantial likelihood that a reasonable examiner would have considered the Picture Coding important in deciding whether to allow the claims that were ultimately included in the '272 patent. As pointed out in the *Digital Control* case: "… if a misstatement or omission is material under the 'reasonable examiner' standard…, it is also material."[4]
>
> 39. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Picture Coding paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, the Picture Coding paper established a prima facie case of unpatentability of the claims of the '698 application (the '272 patent) within the meaning of subsection (b)(1) of the 1992 version of Rule 56. As pointed out in the *Digital Control* case, the 1992 version of Rule 56 is "an arguably narrower standard of materiality" that did "not supplant

---

[4] 437 F.3d at 1829.

-5-

Exhibit 47
Page 000813

or replace our [Federal Circuit's] case law." As noted in the *Digital Control* case, "if a misstatement or omission is material under the new [1992] Rule 56 standard, it is material."[5]

14. In deciding to order a reexamination of the '272 patent, the USPTO considered Picture Coding. The '272 Reexamination Order discusses Picture Coding in the context of claim 13 of the '272 patent and the prosecution history and states that "Picture Coding raises an SNQ [substantial new question of patentability of] . . . claim 13 of the instant '272 patent." '272 Reexamination Order at 7.

15. According to the '272 Reexam Order:

> Thus, given the above teachings, there is a substantially likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the instant claims under reexamination are patentable. Furthermore, the Picture Coding reference was not before the examiner during the prosecution of the '272 patent. Accordingly, the Picture Coding reference raises a SNQ as to claim 13 of the instant '272 Patent. *Id.*

16. The decision of the USPTO in the '272 Reexamination Order reinforces my opinion, based upon Dr. Delp's analyses, that the Picture Coding reference was material to the patentability of a claim of the patent application that resulted in the '272 patent both under the pre-1992 Rule 56 of the USPTO and the 1992 Rule 56 of the USPTO, and should have been disclosed to the examiner during the prosecution of that patent.

**BREACH OF THE DUTY OF CANDOR AND GOOD FAITH TO THE USPTO WITH REGARD TO THE NETRAVALI '272 PATENT IN FAILING TO DISCLOSE THE LIMB & PEASE PAPER TO THE USPTO DURING THE PENDENCY OF THE NETRAVALI '272 PATENT**

17. As set forth in my March 31, 2006 report:

> 43. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Limb & Pease paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, there was more than a

---

[5] 437 F.3d at 1829.

- 6 -

Exhibit 47
Page 000814

substantial likelihood that a reasonable examiner would have considered the Limb & Pease paper important in deciding whether to allow the claims that were ultimately included in the '272 patent. As pointed out in the *Digital Control* case: "… if a misstatement or omission is material under the 'reasonable examiner' standard… , it is also material."[6]

44. In view of the analysis of Professor Delp, it is my opinion that those substantively involved in the preparation and prosecution of the '272 patent, which would include Dr. Netravali and the prosecuting attorneys, breached their duty of candor and good faith to the USPTO by failing to disclose the Limb & Pease paper to the examiner during the prosecution of the '272 patent. Based on the analysis of Professor Delp, the Limb & Pease paper established a prima facie case of unpatentability of the claims of the '698 application (the '272 patent) within the meaning of subsection (b)(1) of the 1992 version of Rule 56. As pointed out in the *Digital Control* case, the 1992 version of Rule 56 is "an arguably narrower standard of materiality" that did "not supplant or replace our [Federal Circuit's] case law." As noted in the *Digital Control* case, "if a misstatement or omission is material under the new [1992] Rule 56 standard, it is material."[7]

18. In deciding to order a reexamination of the '272 patent, the USPTO considered Limb & Pease. The '272 Reexamination Order discusses Limb & Pease in the context of claim 13 of the '272 patent and the prosecution history and states that "Limb & Pease raises an SNQ [substantial new question of patentability of] . . . claim 13 of the instant '272 patent." '272 Reexamination Order at 6.

19. According to the '272 Reexam Order:

Thus, given the above teachings, there is a substantially likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the instant claims under reexamination are patentable. Furthermore, the Limb & Pease reference was not before the examiner during the prosecution of the '272 patent. Accordingly, the Limb & Pease reference raises a SNQ as to claim 13 of the instant '272 Patent. *Id.*

20. The decision of the USPTO in the '272 Reexamination Order reinforces my opinion, based upon Dr. Delp's analyses, that the Limb & Pease reference was material to the patentability of a claim of the patent application that resulted in the '272 patent both under the

---

[6] 437 F.3d at 1829.
[7] 437 F.3d at 1829.

-7-

Exhibit 47
Page 000815

pre-1992 Rule 56 of the USPTO and the 1992 Rule 56 of the USPTO, and should have been disclosed to the examiner during the prosecution of that patent.

21.  I declare under penalty of perjury under the laws of the United States of America that the foregoing report on behalf of the Defendants is true and correct. Executed this 14th day September, 2007 in Washington, D.C.

Respectfully submitted,

/Gerald J. Mossinghoff

- 8 -

Exhibit 47
Page 000816