# UNITED STATES PATENT AND TRADEMARK OFFICE
# CONSOLIDATED STATEMENTS OF CHANGES IN NET POSITION

**For the years ended September 30, 2006 and 2005**

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| | **Earmarked Funds** | **Consolidated Total** |
| **Cumulative Results of Operations** | | |
| Beginning Balances | $  417,804 | $  469,028 |
| Budgetary Financing Sources: | | |
| Appropriations Used | — | (3) |
| Transfers In (Out) Without Reimbursement | (100) | — |
| Total Financing Sources | (100) | (3) |
| Net Income/(Cost) from Operations | 80,268 | (51,221) |
| Net Change | 80,168 | (51,224) |
| Cumulative Results of Operations | $  497,972 | $  417,804 |
| **Unexpended Appropriations** | | |
| Beginning Balances | $  26 | $  23 |
| Budgetary Financing Sources: | | |
| Appropriations Used | — | 3 |
| Total Unexpended Appropriations | $  26 | $  26 |
| Net Position, End of Year | $  497,998 | $  417,830 |

The accompanying notes are an integral part of these financial statements.

Exhibit 117
Page 002182

LUC 1314331

# UNITED STATES PATENT AND TRADEMARK OFFICE
# COMBINED STATEMENTS OF BUDGETARY RESOURCES

**For the years ended September 30, 2006 and 2005**

| (Dollars in Thousands) | | 2006 | | 2005 |
|---|---|---:|---|---:|
| **BUDGETARY RESOURCES** | | | | |
| Unobligated Balance - Brought Forward, October 1 (Note 14) | $ | 5,728 | $ | 2,363 |
| Recoveries of Prior Year Unpaid Obligations | | 9,150 | | 7,543 |
| Spending Authority from Offsetting Collections: | | | | |
| Earned: | | | | |
| Collected | | 1,595,964 | | 1,373,808 |
| Customer Receivables and Refund Payables | | (116) | | (52) |
| Change in Unfilled Customer Orders - Advance Received | | 69,531 | | 130,458 |
| Total Spending Authority from Offsetting Collections | | 1,665,379 | | 1,504,214 |
| Nonexpenditure Transfers, Net, Anticipated and Actual | | (100) | | — |
| Total Budgetary Resources | $ | 1,680,157 | $ | 1,514,120 |
| | | | | |
| **STATUS OF BUDGETARY RESOURCES** | | | | |
| Obligations Incurred - Reimbursable | $ | 1,674,441 | $ | 1,508,392 |
| Unobligated Balance: | | | | |
| Apportioned (Note 14) | | 5,660 | | 2,763 |
| Unobligated Balance not Available (Note 14) | | 56 | | 2,965 |
| Total Status of Budgetary Resources | $ | 1,680,157 | $ | 1,514,120 |
| | | | | |
| **CHANGE IN OBLIGATED BALANCE** | | | | |
| Obligated Balance, Net | | | | |
| Unpaid Obligations, Brought Forward, October 1 | $ | 402,212 | $ | 303,503 |
| Less: Customer Receivables and Refund Payables, Brought Forward, October 1 | | 927 | | 875 |
| Total Unpaid Obligated Balance Brought Forward, Net | | 403,139 | | 304,378 |
| | | | | |
| Obligations Incurred, Net | | 1,674,441 | | 1,508,392 |
| Less: Gross Outlays | | (1,513,677) | | (1,402,140) |
| Less: Recoveries of Prior Year Unpaid Obligations, Actual | | (9,150) | | (7,543) |
| Change in Customer Receivables and Refund Payables | | 116 | | 52 |
| Total Unpaid Obligated Balance, Net, Current Year | | 151,730 | | 98,761 |
| | | | | |
| Obligated Balance, Net, End of Year | | | | |
| Unpaid Obligations | | 553,826 | | 402,212 |
| Less: Uncollected Customer Receivables and Unpaid Refund Payables | | 1,043 | | 927 |
| Total Unpaid Obligated Balance, Net, End of Year | $ | 554,869 | $ | 403,139 |
| | | | | |
| **NET OUTLAYS** | | | | |
| Gross Outlays | $ | 1,513,677 | $ | 1,402,140 |
| Less: Offsetting Collections | | (1,665,495) | | (1,504,266) |
| Net Collections | $ | (151,818) | $ | (102,126) |

The accompanying notes are an integral part of these financial statements.

Exhibit 117
Page 002183

79

LUC 1314332

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CONSOLIDATED STATEMENTS OF FINANCING

**For the years ended September 30, 2006 and 2005**

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| **RESOURCES USED TO FINANCE ACTIVITIES** | | |
| Budgetary Resources Obligated: | | |
| Obligations Incurred | $ 1,674,441 | $ 1,508,392 |
| Spending Authority from Offsetting Collections and Recoveries | (1,674,529) | (1,511,757) |
| Net Obligations | (88) | (3,365) |
| Total Resources Used to Finance Activities | (88) | (3,365) |
| **RESOURCES USED TO FINANCE ITEMS NOT PART OF THE NET COST OF OPERATIONS** | | |
| Change in Budgetary Resources Obligated for Goods, Services and Benefits Ordered but not yet Provided | (141,315) | (67,450) |
| Resources that Fund Costs Recognized in Prior Periods (Note 14) | — | (360) |
| Budgetary Offsetting Collections that do not Affect Net Cost of Operations (Note 14) | 69,531 | 130,458 |
| Resources that Finance the Acquisition of Assets Capitalized on the Balance Sheet | (70,001) | (66,181) |
| Total Resources Used to Finance Items not Part of the Net Cost of Operations | (141,785) | (3,533) |
| **COMPONENTS OF NET COST OF OPERATIONS THAT WILL NOT REQUIRE OR GENERATE RESOURCES IN THE CURRENT PERIOD** | | |
| Components Requiring or Generating Resources in Future Periods: | | |
| Costs that will be Funded by Resources in Future Periods (Note 14) | 7,580 | 3,647 |
| Net Decrease/ (Increase) in Revenue Receivables not Generating Resources until Collected | 80 | (576) |
| Total Components of Net Cost of Operations that will Require or Generate Resources in Future Periods | 7,660 | 3,071 |
| Components not Requiring or Generating Resources: | | |
| Depreciation, Amortization, or Loss on Asset Dispositions | 53,864 | 55,083 |
| Other Costs that will not Require Resources | 81 | (35) |
| Total Components of Net Cost of Operations that will not Require or Generate Resources | 53,945 | 55,048 |
| Total Components of Net Cost of Operations that will not Require or Generate Resources in the Current Period | 61,605 | 58,119 |
| Net (Income)/Cost of Operations | $ (80,268) | $ 51,221 |

The accompanying notes are an integral part of these financial statements.

Exhibit 117
Page 002184

LUC 1314333

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CONSOLIDATED STATEMENTS OF CASH FLOWS (INDIRECT METHOD)

**For the years ended September 30, 2006 and 2005**

| (Dollars in Thousands) | 2006 | 2005 |
|---|---:|---:|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | |
| Net Income/(Cost) of Operations | $ 80,268 | $ (51,221) |
| Adjustments Affecting Cash Flow: | | |
| Increase in Accounts Receivable | (166) | (1,378) |
| Decrease in Advances and Prepayments | 4,045 | 3,172 |
| Increase in Accounts Payable | 2,620 | 24,483 |
| Increase in Accrued Payroll and Benefits | 5,926 | 7,157 |
| Increase in Accrued Leave and Post-employment Compensation | 4,911 | 7 |
| Increase in Customer Deposit Accounts | 9,733 | 3,305 |
| (Decrease)/Increase in Patent Cooperation Treaty Account | (289) | 840 |
| (Decrease)/Increase in Madrid Protocol Account | (55) | 334 |
| Increase in Deferred Revenue | 67,691 | 127,138 |
| Increase in Contingent Liability | 250 | — |
| Increase/(Decrease) in Actuarial Liability | 192 | (206) |
| Depreciation, Amortization, or Loss on Asset Dispositions | 53,864 | 55,083 |
| Total Adjustments | 148,722 | 219,935 |
| Net Cash Provided by Operating Activities | 228,990 | 168,714 |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | |
| Purchases of Property and Equipment | (70,001) | (66,181) |
| Net Cash Used in Investing Activities | (70,001) | (66,181) |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | |
| Transfers In (Out) Without Reimbursement | (100) | — |
| Net Cash Used in Financing Activities | (100) | — |
| Net Cash Provided by Operating, Investing, and Financing Activities | $ 158,889 | $ 102,533 |
| Fund Balance with Treasury and Cash, Beginning of Year | $ 1,249,672 | $ 1,147,139 |
| Net Cash Provided by Operating, Investing, and Financing Activities | 158,889 | 102,533 |
| Fund Balance with Treasury and Cash, End of Year | $ 1,408,561 | $ 1,249,672 |

The accompanying notes are an integral part of these financial statements.

Exhibit 117
Page 002185

81

LUC 1314334

# UNITED STATES PATENT AND TRADEMARK OFFICE
# NOTES TO FINANCIAL STATEMENTS

**As of and for the years ended September 30, 2006 and 2005**

# NOTE 1. SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### Reporting Entity

The United States Patent and Trademark Office (USPTO) is an agency of the United States within the U.S. Department of Commerce (DOC). The USPTO administers the laws relevant to patents and trademarks and advises the Secretary of Commerce, the President of the United States, and the Administration on patent, trademark, and copyright protection, and trade-related aspects of intellectual property.

These financial statements include the USPTO's two core business activities – granting patents and registering trademarks – that promote the use of intellectual property rights as a means of achieving economic prosperity. These activities give innovators, businesses, and entrepreneurs the protection and encouragement they need to turn their creative ideas into tangible products, and also provide protection for their inventions and trademarks.

These financial statements report the accounts for salaries and expenses (13X1006), special fund receipts (135127), customer deposits from the public (13X6542), customer deposits from other federal agencies (13F3885.10), Patent Cooperation Treaty collections (13X6538), and the Madrid Protocol collections (13X6554) that are under the control of the USPTO. The federal budget classifies the USPTO under the Other Advancement of Commerce (376) budget function. The USPTO does not have custodial responsibility, nor does it have lending or borrowing authority. The USPTO does not transact business among its own operating units, and therefore, no intra-entity eliminations are necessary.

### Basis of Presentation

As required by the Chief Financial Officers' Act of 1990 and 31 U.S.C. 3515 (b), the accompanying financial statements present the financial position, net cost of operations, budgetary resources, and cash flows for the USPTO's core business activities. The books and records of the USPTO serve as the source of this information.

These financial statements were prepared in accordance with accounting principles generally accepted in the United States (GAAP) and the form and content for entity financial statements specified by the Office of Management and Budget (OMB) in Circular A-136, *Financial Reporting Requirements*, as well as the accounting policies of the USPTO. Therefore, they may differ from other financial reports submitted pursuant to OMB directives for the purpose of monitoring and controlling the use of the USPTO's budgetary resources. The GAAP for federal entities are the standards prescribed by the Federal Accounting Standards Advisory Board (FASAB), which is the official body for setting the accounting standards of the federal government. Certain prior year balances were reclassified to conform with current year presentation.

Throughout these financial statements, assets, liabilities, revenues, and costs have been classified according to the type of entity with which the transactions are associated. Intra-governmental assets and liabilities are those from or to other federal entities. Intra-governmental earned revenues are collections or accruals of revenue from other federal entities and intra-governmental costs are payments or accruals to other federal entities.

### Basis of Accounting

Transactions are recorded on the accrual basis of accounting, as well as on a budgetary basis. Accrual accounting allows for revenue to be recognized when earned and expenses to be recognized when goods or services are received, without regard to the receipt or payment of cash. Budgetary accounting allows for compliance with the requirements for and controls over the use of federal funds. The accompanying financial statements are presented on the accrual basis of accounting.

Exhibit 117
Page 002186

LUC 1314335

## Earmarked Funds

The USPTO implemented Statement of Federal Financial Accounting Standard Number 27, *Identifying and Reporting Earmarked Funds,* in FY 2006, which required separate identification of the earmarked funds on the *Consolidated Balance Sheets (Net Position section), Consolidated Statements of Changes in Net Position,* and further disclosures in a footnote (Note 10).

Earmarked funds are financed by specifically identified revenues, which remain available over time. These specifically identified revenues are required by statute to be used for designated activities, benefits, or purposes, and must be accounted for separately from the government's general revenues. At the USPTO, earmarked funds include the salaries and expenses fund (13X1006) and the special fund receipts (135127).

In accordance with the implementation guidance, earmarked funds are not separately identified in FY 2005.

## Budgets and Budgetary Accounting

Total budgetary resources are primarily comprised of Congressional authority to spend current year fee collections. In FY 2006 and FY 2005, the USPTO was appropriated up to $1,683,185 thousand and $1,554,754 thousand for fees collected during each fiscal year, respectively. As of September 30, 2006 and 2005, the USPTO collected $25,669 thousand and $57,603 thousand less than the amount appropriated, respectively.

The total temporarily unavailable fee collections pursuant to Public Law as of September 30, 2006 are $750,027 thousand. Of this amount, certain USPTO collections of $233,529 thousand were withheld in accordance with the Omnibus Budget Reconciliation Act (OBRA) of 1990, and deposited in a special fund receipt account at the U.S. Department of the Treasury.

The USPTO receives an appropriation of Category A funds from OMB, which apportions budgetary resources by fiscal quarter. The USPTO does not receive any Category B funds, or those exempt from apportionment.

## Use of Estimates

The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and the disclosure of contingent assets and liabilities as of the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from these estimates.

## Revenue and Other Financing Sources

The USPTO's fee rates are established by law and, consequently, in some instances may not represent full cost or market price. Since FY 1993, the USPTO funding has been primarily through the collection of user fees. Fees that are remitted with initial applications and requests for other services are recorded as exchange revenue when received, with an adjustment to defer revenue for services that have not been performed. All amounts remitted by customers without a request for service are recorded as liabilities in customer deposit accounts until services are ordered.

The USPTO also receives some financial gifts and gifts-in-kind. All such transactions are included in the consolidated Gifts and Bequests Fund financial statements of the DOC. These gifts are not of significant value and are not reflected in the USPTO's financial statements. Most gifts-in-kind are used for official travel to further attain the USPTO mission and objectives.

## Entity/Non-Entity

Assets that an entity is authorized to use in its operations are termed entity assets, while assets that are held by an entity and are not available for the entity's use are termed non-entity assets. Most of the USPTO's assets are entity assets and are available to carry out the mission of the USPTO, as appropriated by Congress, with the exception of a portion of the Fund Balance with Treasury, cash, and accounts receivable, as highlighted in Note 3.

Exhibit 117
Page 002187

83

LUC 1314336

## Fund Balance with Treasury

The USPTO deposits revenue in commercial bank accounts maintained by the Treasury's Financial Management Service (FMS). All moneys maintained in these accounts are transferred to the Federal Reserve Bank on the next business day following the day of deposit. In addition, many customer deposits are wired directly to the Federal Reserve Bank. All banking activity is conducted in accordance with the directives issued by the FMS. Treasury processes all disbursements.

## Accounts Receivable

Most of the USPTO's public accounts receivable balance consists of electronic funds transfer and credit card payments for fees that are in transit and have not been credited to the USPTO's Fund Balance with Treasury. As of September 30, 2006 and 2005, respectively, $2,506 thousand and $2,244 thousand are in transit due to the lag time between deposits in commercial bank accounts and the confirmation received from Treasury.

The remaining portion of accounts receivable is mainly comprised of amounts due from former employees for the reimbursement of education expenses and other benefits. This balance in accounts receivable remains as a very small portion of the USPTO's assets, as the USPTO requires payment prior to the provision of goods or services during the course of its core business activities.

The USPTO has written-off, but not closed-out, $91 thousand of accounts receivables that are currently not collectible as of September 30, 2006. The USPTO had an allowance of $1 thousand for uncollectible amounts as of September 30, 2005. These offsets are established for receivables older than two years with little or no collection activity that have been transferred to Treasury, subsequently adjusting the gross amount of its employee-related accounts receivable to the net realizable value. The gross amount of USPTO's employee-related accounts receivable as of September 30, 2006 and 2005 were $467 thousand and $423 thousand, respectively.

## Advances and Prepayments

On occasion, the USPTO prepays amounts in anticipation of receiving future benefits. Although a payment has been made, an expense is not recorded until goods have been received or services have been performed. The USPTO has prepayments and advances with non-governmental, as well as governmental vendors.

Total prepayments and advances to non-governmental vendors as of September 30, 2006 and 2005 were $2,708 thousand and $5,631 thousand, respectively. The largest prepayments as of September 30, 2006 were $1,389 thousand for various cooperative efforts with the National Inventors Hall of Fame, the International Intellectual Property Institute, and the World Intellectual Property Organization. Travel advances to personnel as of September 30, 2006 were $25 thousand.

Total prepayments and advances to governmental vendors as of September 30, 2006 and 2005 were $1,607 thousand and $2,729 thousand, respectively. The governmental prepayments include the USPTO deposit accounts held with the U.S. Government Printing Office and the DOC to facilitate recurring transactions. Deposit accounts held with the U.S. Government Printing Office as of September 30, 2006 were $1,002 thousand. Deposit accounts held with the DOC as of September 30, 2006 were $605 thousand.

## Cash

Most of the USPTO's cash balance consists of undeposited checks for fees that were not processed at the Balance Sheet date due to the lag time between receipt and initial review. All such undeposited check amounts are considered to be cash equivalents. As of September 30, 2006 and 2005, the cash balance includes undeposited checks of $6,788 thousand and $8,872 thousand, respectively. Of these balances, $542 thousand and $787 thousand were non-entity Patent Cooperation Treaty Account assets as of September 30, 2006 and 2005, respectively. Cash is also held outside the Treasury to be used as imprest funds. An imprest fund of $2 thousand was held as of September 30, 2006 and 2005.

Exhibit 117
Page 002188

LUC 1314337

**Property, Plant, and Equipment, Net**

The USPTO's capitalization policies are summarized below:

| Classes of Property, Plant, and Equipment | Capitalization Threshold for Individual Purchases | Capitalization Threshold for Bulk Purchases |
|---|---|---|
| IT Equipment | $25 thousand or greater | $500 thousand or greater |
| Software | $25 thousand or greater | $ 25 thousand or greater |
| Software in Progress | $25 thousand or greater | $ 25 thousand or greater |
| Furniture | $25 thousand or greater | $ 50 thousand or greater |
| Equipment | $25 thousand or greater | $500 thousand or greater |
| Leasehold Improvements | $25 thousand or greater | Not applicable |

Contractor costs for developing custom internal use software are capitalized when incurred for the design, coding, and testing of the software. Software in progress is not amortized until placed in service.

Property, plant, and equipment acquisitions that do not meet the capitalization criteria are expensed upon receipt.

The USPTO does not defer to a future period maintenance on property, plant, and equipment.

**Injury Compensation**

Claims brought by USPTO employees for on-the-job injuries fall under the Federal Employees' Compensation Act (FECA) administered by the U.S. Department of Labor (DOL). The DOL bills each agency annually as its claims are paid, but payment on these bills is deferred approximately two years to allow for funding through the budget process. As of September 30, 2006, the USPTO had a $1,492 thousand liability for estimated claims paid on its behalf during the benefit period July 1, 2004 through September 30, 2006. As of September 30, 2005, the USPTO had a $1,328 thousand liability for estimated claims paid on its behalf during the benefit period July 1, 2003 through September 30, 2005.

**Post-employment Compensation**

USPTO employees who lose their jobs through no fault of their own may receive unemployment compensation benefits under the unemployment insurance program administered by the DOL. The DOL bills each agency quarterly as its claims are paid. As of September 30, 2006 and 2005, the USPTO liability was $71 thousand and $39 thousand, respectively, for estimated claims paid by the DOL on behalf of the USPTO.

**Annual, Sick, and Other Leave**

Annual leave and compensatory time are accrued as earned, with the accrual being reduced when leave is taken. An adjustment is made each fiscal quarter to ensure that the balances in the accrued leave accounts reflect current pay rates. No portion of this liability has been obligated. To the extent current or prior year funding is not available to pay for leave earned but not taken, funding will be obtained from future financing sources. Sick leave and other types of non-vested leave are expensed as used.

Accrued leave as of September 30, 2006 and 2005 was $43,812 thousand and $39,097 thousand, respectively.

**Employee Retirement Systems and Benefits**

USPTO employees participate in either the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS). The FERS was established by the enactment of Public Law 99-335. Pursuant to this law, the FERS and Social Security automatically cover most employees hired after December 31, 1983. Employees who had five years of federal civilian service prior to 1984 and who are rehired after a break in service of more than one year may elect to join the FERS and Social Security system or be placed in the CSRS offset retirement system.

Exhibit 117
Page 002189                                                    85

LUC 1314338

The USPTO's financial statements do not report CSRS or FERS assets, accumulated plan benefits, or liabilities applicable to its employees. The reporting of such amounts is the responsibility of the U.S. Office of Personnel Management (OPM), who administers the plans. While the USPTO reported no liability for future payments to employees under these programs, the federal government is liable for future payments to employees through the various agencies administering these programs. The USPTO financial statements, since FY 2005, recognize an expense, which represents the USPTO's share of the costs to the federal government of providing pension, post-retirement health, and post-retirement life insurance benefits to all eligible USPTO employees. Prior to FY 2005, the USPTO did not fully fund the pension, post-retirement health, and life insurance benefits of all eligible USPTO employees. Instead, the USPTO recognized an imputed financing source and corresponding expense to represent its share of the cost to the federal government of providing pension and post-retirement health and life insurance benefits to all eligible USPTO employees. The USPTO appropriation, since FY 2005, required full funding of the present costs of post-retirement benefits such as the Federal Employees Health Benefit Program (FEHB) and the Federal Employees Group Life Insurance Program (FEGLI), and to fully fund the CSRS and FERS pension liabilities. While ultimate administration of any post-retirement benefits or retirement system payments will continue to be administered by various federal government agencies, the USPTO is responsible for the payment of the present value associated with these costs calculated using the OPM factors.

For the years ended September 30, 2006 and 2005, the USPTO made current year contributions through agency payroll contributions and quarterly supplemental payments to OPM equivalent to approximately 18.0 percent and 11.2 percent of the employee's basic pay for those employees covered by CSRS and FERS, respectively, based on OPM cost factors.

All employees are eligible to contribute to a thrift savings plan. For those employees participating in the FERS, a thrift savings plan is automatically established, and the USPTO makes a mandatory contribution to this plan equal to one percent of the employees' compensation. In addition, the USPTO makes matching contributions ranging from one to four percent of the employees' compensation for FERS–eligible employees who contribute to their thrift savings plans. No matching contributions are made to the thrift savings plans for employees participating in the CSRS. Employees participating in the FERS are also covered under the Federal Insurance Contributions Act (FICA), for which the USPTO contributes a matching amount to the Social Security Administration.

**Deferred Revenue**

Deferred revenue represents fees that have been received by the USPTO for requested services that have not been substantially completed. Two types of deferred revenue are recorded. The first type results from checks received, accompanied by requests for services, which were not yet deposited due to the lag time between receipt and initial review. The second type of deferred revenue relates primarily to fees for applications that have been partially processed. The deferred revenue calculation is a complex accounting estimate, dependent upon numerous business and administrative processes, workloads, and inventories.

**Environmental Cleanup**

The USPTO does not have any liabilities for environmental cleanup.

Exhibit 117
Page 002190

LUC 1314339

# NOTE 2. FUND BALANCE WITH TREASURY

As of September 30, 2006 and 2005, Fund Balance with Treasury consisted of the following:

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| Obligated Balance Not Yet Disbursed | $ 554,869 | $ 403,139 |
| Unobligated Balance Available | 5,660 | 2,763 |
| Unobligated Balance Unavailable | 56 | 2,965 |
| Temporarily Not Available Pursuant to Public Law | 516,498 | 516,498 |
| Non-Budgetary Fund Balance with Treasury | 324,688 | 315,433 |
| Total Fund Balance with Treasury | $ 1,401,771 | $ 1,240,798 |

No discrepancies exist between the Fund Balance reflected in the general ledger and the balance in the Treasury accounts.

As of September 30, 2006 and 2005, the Non-Budgetary Fund Balance with Treasury includes surcharge receipts of $233,529 thousand and Non-Entity Fund Balance with Treasury of $91,159 thousand and $81,904 thousand, respectively.

# NOTE 3. NON-ENTITY ASSETS

Non-entity assets consist of amounts held on deposit for the convenience of the USPTO customers and fees collected on behalf of the World Intellectual Property Organization (WIPO) and the European Patent Office (EPO). Customers have the option of maintaining a deposit account at the USPTO to facilitate the order process. Customers can draw from their deposit account when they place an order and can replenish their deposit account as desired. Funds maintained in customer deposit accounts are not available for the USPTO use until an order has been placed. Once an order has been placed, the funds are reclassified to entity funds. Also, in accordance with the Patent Cooperation Treaty and the Madrid Protocol Implementation Act, the USPTO collects international fees on behalf of the WIPO and the EPO.

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| Fund Balance with Treasury: | | |
| Intragovernmental Deposit Accounts | $ 4,498 | $ 4,230 |
| Other Customer Deposit Accounts | 78,224 | 69,092 |
| Patent Cooperation Treaty Account | 8,158 | 8,248 |
| Madrid Protocol Account | 279 | 334 |
| Total Fund Balance with Treasury | 91,159 | 81,904 |
| Cash: | | |
| Patent Cooperation Treaty Account | 542 | 787 |
| Accounts Receivable: | | |
| Other Customer Deposit Accounts | 1,085 | 752 |
| Patent Cooperation Treaty Account | 46 | — |
| Total Non-Entity Assets | $ 92,832 | $ 83,443 |

Exhibit 117
Page 002191

87

LUC 1314340

# NOTE 4.  PROPERTY, PLANT, AND EQUIPMENT, NET

As of September 30, 2006, property, plant, and equipment, net consisted of the following:

**(Dollars in Thousands)**

| Classes of Property, Plant, and Equipment | Depreciation/ Amortization Method | Service Life (Years) | Acquisition Value | Accumulated Depreciation/ Amortization | Net Book Value |
|---|---|---|---|---|---|
| IT Equipment | SL | 3-5 | $ 227,350 | $ 180,831 | $ 46,519 |
| Software | SL | 3-5 | 198,492 | 166,811 | 31,681 |
| Software in Progress | — | — | 8,041 | | 8,041 |
| Furniture | SL | 5 | 21,986 | 7,969 | 14,017 |
| Equipment | SL | 3-5 | 11,659 | 8,648 | 3,011 |
| Leasehold Improvements | SL | 5-20 | 69,765 | 8,496 | 61,269 |
| Total Property, Plant, and Equipment | | | $ 537,293 | $ 372,755 | $ 164,538 |

As of September 30, 2005, property, plant, and equipment, net consisted of the following:

**(Dollars in Thousands)**

| Classes of Property, Plant, and Equipment | Depreciation/ Amortization Method | Service Life (Years) | Acquisition Value | Accumulated Depreciation/ Amortization | Net Book Value |
|---|---|---|---|---|---|
| IT Equipment | SL | 3-5 | $ 197,719 | $ 163,412 | $ 34,307 |
| Software | SL | 3-5 | 179,566 | 147,274 | 32,292 |
| Software in Progress | — | — | 6,099 | | 6,099 |
| Furniture | SL | 5 | 15,318 | 5,691 | 9,627 |
| Equipment | SL | 3-5 | 10,150 | 7,989 | 2,161 |
| Leasehold Improvements | SL | 5-20 | 68,724 | 4,809 | 63,915 |
| Total Property, Plant, and Equipment | | | $ 477,576 | $ 329,175 | $ 148,401 |

Exhibit 117
Page 002192

LUC 1314341

# NOTE 5. LIABILITIES

The USPTO records liabilities for amounts that are likely to be paid as the direct result of events that have already occurred. The USPTO considers liabilities covered by three types of resources: realized budgetary resources; unrealized budgetary resources that become available without further Congressional action; and cash and Fund Balance with Treasury. Realized budgetary resources include obligated balances funding existing liabilities and unobligated balances as of September 30, 2006. Unrealized budgetary resources are amounts that were not available for spending through September 30, 2006, but become available for spending on October 1, 2006 once apportioned by the OMB. In addition, cash and Fund Balance with Treasury cover liabilities that will never require the use of a budgetary resource. These liabilities consist of deposit accounts, refunds payable to customers for fee overpayments, undeposited collections, and amounts collected by the USPTO on behalf of other organizations.

Liabilities not covered by budgetary resources include Accounts Payable, Accrued Post-employment Compensation, Accrued Payroll and Benefits, Accrued Leave, Deferred Revenue, Actuarial Liability, and Contingent Liability. Although future appropriations to fund these liabilities are probable and anticipated, Congressional action is needed before budgetary resources can be provided.

As of September 30, 2006 and 2005, liabilities covered and not covered by budgetary resources were as follows:

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| Liabilities Covered by Resources | | |
| Intragovernmental: | | |
| Accounts Payable | $ 9,799 | $ 2,797 |
| Accrued Payroll and Benefits | 6,174 | 5,409 |
| Customer Deposit Accounts | 4,498 | 4,230 |
| Total Intragovernmental | 20,471 | 12,436 |
| Accounts Payable | 92,101 | 96,487 |
| Accrued Payroll and Benefits | 27,798 | 24,862 |
| Customer Deposit Accounts | 79,309 | 69,844 |
| Patent Cooperation Treaty Account | 8,746 | 9,035 |
| Madrid Protocol Account | 279 | 334 |
| Deferred Revenue | 11,962 | 13,812 |
| Total Liabilities Covered by Resources | $ 240,666 | $ 226,810 |
| Liabilities Not Covered by Resources | | |
| Intragovernmental: | | |
| Accounts Payable | $ 2,366 | $ 2,366 |
| Accrued Post-employment Compensation | 1,563 | 1,367 |
| Total Intragovernmental | 3,929 | 3,733 |
| Accounts Payable | 124 | 120 |
| Accrued Payroll and Benefits | 23,584 | 21,359 |
| Accrued Leave | 43,812 | 39,097 |
| Deferred Revenue | 762,463 | 692,922 |
| Actuarial Liability | 7,470 | 7,278 |
| Contingent Liability | 250 | — |
| Total Liabilities Not Covered by Resources | $ 841,632 | $ 764,509 |
| Total Liabilities | $ 1,082,298 | $ 991,319 |

Exhibit 117
Page 002193

89

LUC 1314342

# NOTE 6.  DEFERRED REVENUE

As of September 30, 2006, deferred revenue consisted of the following:

| (Dollars in Thousands) | Patent | Trademark | Total |
|---|---|---|---|
| Unearned Fees | $ 693,174 | $ 75,005 | $ 768,179 |
| Undeposited Checks | 5,538 | 708 | 6,246 |
| Total Deferred Revenue | $ 698,712 | $ 75,713 | $ 774,425 |

As of September 30, 2005, deferred revenue consisted of the following:

| (Dollars in Thousands) | Patent | Trademark | Total |
|---|---|---|---|
| Unearned Fees | $ 611,778 | $ 86,871 | $ 698,649 |
| Undeposited Checks | 7,125 | 960 | 8,085 |
| Total Deferred Revenue | $ 618,903 | $ 87,831 | $ 706,734 |

# NOTE 7.  ACTUARIAL LIABILITY

The FECA provides income and medical cost protection to covered federal civilian employees injured on the job and for those who have contracted a work-related occupational disease, and beneficiaries of employees whose death is attributable to a job-related injury or occupational disease. Claims incurred for benefits under the FECA for the USPTO's employees are administered by the DOL and are paid ultimately by the USPTO.

The DOL estimated the future workers compensation liability by applying actuarial procedures developed to estimate the liability for FECA benefits. The actuarial liability estimates for FECA benefits include the expected liability for death, disability, medical, and miscellaneous costs for approved compensation cases, plus a component for incurred but not reported claims. The actuarial liability is updated annually.

The DOL method of determining the liability uses historical benefit payment patterns for a specific incurred period to predict the ultimate payments for that period. Consistent with past practice, these projected annual benefit payments have been discounted to present value using the OMB's economic assumptions for ten-year Treasury notes and bonds. Interest rate assumptions utilized for discounting were as follows:

| 2006 | 2005 |
|---|---|
| 5.17% in year 1, | 4.53% in year 1, |
| 5.31% in year 2, | 5.02% in year 2, |
| and thereafter | and thereafter |

Based on information provided by the DOL, the DOC estimated the USPTO's liability as of September 30, 2006 and 2005 to be $7,470 thousand and $7,278 thousand, respectively.

Exhibit 117
Page 002194

LUC 1314343

# NOTE 8. LEASES

**Operating Leases:**

The General Services Administration (GSA) negotiates long-term office space leases and levies rent charges, paid by the USPTO, approximate to commercial rental rates. These operating lease agreements for the USPTO's office buildings expire at various dates between FY 2007 and FY 2024. During the years ended September 30, 2006 and 2005, the USPTO paid $82,651 thousand and $95,613 thousand, respectively, to the GSA for rent.

Under existing commitments, the future minimum lease payments as September 30, 2006 are as follows:

| Fiscal Year | (Dollars in Thousands) |
|---|---|
| 2007 | $    62,070 |
| 2008 | 58,724 |
| 2009 | 58,452 |
| 2010 | 58,237 |
| 2011 | 57,428 |
| Thereafter | 723,117 |
| Total Future Minimum Lease Payments | $ 1,018,028 |

The commitments shown above relate primarily to the operating lease for the USPTO headquarters in Alexandria, Virginia, beginning in FY 2004 and extending to FY 2024. The operating lease commitments for the USPTO offices in Crystal City, Virginia, will expire in FY 2007.

# NOTE 9. POST-EMPLOYMENT BENEFITS

As of September 30, 2006 and 2005, the post-employment benefit expenses were as follows:

| (Dollars in Thousands) | 2006 | 2005 |
|---|---|---|
| CSRS | $    15,578 | $    16,622 |
| FERS | 59,208 | 52,566 |
| FEHB | 32,972 | 32,319 |
| FEGLI | 95 | 105 |
| FICA | 40,903 | 36,463 |
| Total Cost | $    148,756 | $    138,075 |

Exhibit 117
Page 002195

91

LUC 1314344

# NOTE 10. EARMARKED FUNDS

Earmarked funds are financed by specifically identified revenues, which remain available over time. These specifically identified revenues are required by statute to be used for designated activities, benefits, or purposes, and must be accounted for separately from the government's general revenues. At the USPTO, earmarked funds include the salaries and expenses fund and the special fund receipts. Non-entity funds, as disclosed in Note 3, are not earmarked funds and are therefore excluded from the below amounts.

The following tables provide the status of the USPTO's earmarked funds.

| | Salaries and Expenses Fund | | Surcharge Fund | | Total Earmarked Funds | |
|---|---|---|---|---|---|---|
| **Balance Sheet as of September 30, 2006** | | | | | | |
| Fund Balance with Treasury | $ | 1,077,083 | $ | 233,529 | $ | 1,310,612 |
| Cash | | 6,248 | | — | | 6,248 |
| Accounts Receivable, Net | | 1,751 | | — | | 1,751 |
| Other Assets | | 168,853 | | — | | 168,853 |
| Total Assets | $ | 1,253,935 | $ | 233,529 | $ | 1,487,464 |
| Total Liabilities | $ | 989,466 | $ | — | $ | 989,466 |
| Unexpended Appropriations | $ | 26 | $ | — | $ | 26 |
| Cumulative Results of Operations | | 264,443 | | 233,529 | | 497,972 |
| Total Liabilities and Net Position | $ | 1,253,935 | $ | 233,529 | $ | 1,487,464 |
| **Statement of Net Cost For the Year Ended September 30, 2006** | | | | | | |
| Total Program Cost | $ | 1,514,169 | $ | — | $ | 1,514,169 |
| Less Earned Revenue | | (1,594,437) | | — | | (1,594,437) |
| Net Income from Operations | $ | (80,268) | $ | — | $ | (80,268) |
| **Statement of Changes in Net Position For the Year Ended September 30, 2006** | | | | | | |
| Net Position, Beginning of Year | $ | 184,301 | $ | 233,529 | $ | 417,830 |
| Budgetary Financing Sources | $ | (100) | $ | — | $ | (100) |
| Net Income from Operations | | 80,268 | | — | | 80,268 |
| Change in Net Position | $ | 80,168 | $ | — | $ | 80,168 |
| Net Position, End of Year | $ | 264,469 | $ | 233,529 | $ | 497,998 |

The Salaries and Expenses Fund contains moneys used for the administering of the laws relevant to patents and trademarks and advising the Secretary of Commerce, the President of the United States, and the Administration on patent, trademark, and copyright protection, and trade-related aspects of intellectual property. This fund is used for the USPTO's two core business activities – granting patents and registering trademarks – that promote the use of intellectual property rights as a means of achieving economic prosperity. These activities give innovators, businesses, and entrepreneurs the protection and encouragement they need to turn their creative ideas into tangible products, and also provide protection for their inventions and trademarks. The USPTO may use moneys from this account only as authorized by Congress via appropriations.

The Surcharge Fund was created in FY 1992 through the Patent and Trademark Office Surcharge provision in the OBRA of 1990 (Section 10101, Public Law 101-508). This required that the USPTO impose a surcharge on certain patent fees and set in statute the amounts of money that the USPTO should deposit in a special fund receipt account at the U.S. Department of the Treasury. This surcharge was eliminated in FY 1999. The USPTO may use moneys from this account only as authorized by Congress, and only as made available by the issuance of a Treasury warrant.

Exhibit 117
Page 002196

LUC 1314345

# NOTE 11. INTRAGOVERNMENTAL COSTS AND EXCHANGE REVENUE

Total intragovernmental costs and exchange revenue, by Strategic Goal, for the years ended September 30, 2006 and 2005 were as follows:

| (Dollars in Thousands) | | 2006 | | | | |
|---|---|---|---|---|---|---|
| | | Patent | | Trademark | | Total |
| **Strategic Goal 1: Enhance Patent Quality and Minimize Processing Time** | | | | | | |
| Intragovernmental Gross Cost | $ | 244,846 | $ | — | $ | 244,846 |
| Gross Cost with the Public | | 970,613 | | — | | 970,613 |
| Total Program Cost | | 1,215,459 | | — | | 1,215,459 |
| Intragovernmental Earned Revenue | | (6,870) | | — | | (6,870) |
| Earned Revenue from the Public | | (1,377,404) | | — | | (1,377,404) |
| Total Program Earned Revenue | | (1,384,274) | | — | | (1,384,274) |
| Net Program Income | $ | (168,815) | $ | — | $ | (168,815) |
| **Strategic Goal 2: Enhance Trademark Quality and Minimize Processing Time** | | | | | | |
| Intragovernmental Gross Cost | $ | — | $ | 31,183 | $ | 31,183 |
| Gross Cost with the Public | | — | | 123,615 | | 123,615 |
| Total Program Cost | | — | | 154,798 | | 154,798 |
| Intragovernmental Earned Revenue | | — | | (252) | | (252) |
| Earned Revenue from the Public | | — | | (209,911) | | (209,911) |
| Total Program Earned Revenue | | — | | (210,163) | | (210,163) |
| Net Program Income | $ | — | $ | (55,365) | $ | (55,365) |
| **Strategic Goal 3: Create a Flexible Organization through E-Government and Worldwide Intellectual Property** | | | | | | |
| Intragovernmental Gross Cost | $ | 24,208 | $ | 4,782 | $ | 28,990 |
| Gross Cost with the Public | | 95,965 | | 18,957 | | 114,922 |
| Total Program Cost | | 120,173 | | 23,739 | | 143,912 |
| Net Income from Operations | $ | (48,642) | $ | (31,626) | $ | (80,268) |
| **Total Entity** | | | | | | |
| Total Program Cost (Notes 12 and 13) | $ | 1,335,632 | $ | 178,537 | $ | 1,514,169 |
| Total Earned Revenue | | (1,384,274) | | (210,163) | | (1,594,437) |
| Net Income from Operations | $ | (48,642) | $ | (31,626) | $ | (80,268) |

Exhibit 117
Page 002197

93

LUC 1314346

| (Dollars in Thousands) | | 2005 | | | | |
|---|---|---|---|---|---|---|
| | | Patent | | Trademark | | Total |
| **Strategic Goal 1: Enhance Patent** | | | | | | |
| **Quality and Minimize Processing Time** | | | | | | |
| Intragovernmental Gross Cost | $ | 240,733 | $ | — | $ | 240,733 |
| Gross Cost with the Public | | 909,060 | | — | | 909,060 |
| Total Program Cost | | 1,149,793 | | — | | 1,149,793 |
| Intragovernmental Earned Revenue | | (5,869) | | — | | (5,869) |
| Earned Revenue from the Public | | (1,191,912) | | — | | (1,191,912) |
| Total Program Earned Revenue | | (1,197,781) | | — | | (1,197,781) |
| Net Program Income | $ | (47,988) | $ | — | $ | (47,988) |
| **Strategic Goal 2: Enhance Trademark** | | | | | | |
| **Quality and Minimize Processing Time** | | | | | | |
| Intragovernmental Gross Cost | $ | — | $ | 31,227 | $ | 31,227 |
| Gross Cost with the Public | | — | | 117,918 | | 117,918 |
| Total Program Cost | | — | | 149,145 | | 149,145 |
| Intragovernmental Earned Revenue | | — | | (239) | | (239) |
| Earned Revenue from the Public | | — | | (174,787) | | (174,787) |
| Total Program Earned Revenue | | — | | (175,026) | | (175,026) |
| Net Program Income | $ | — | $ | (25,881) | $ | (25,881) |
| **Strategic Goal 3: Create a Flexible Organization** | | | | | | |
| **through E-Government and Worldwide Intellectual Property** | | | | | | |
| Intragovernmental Gross Cost | $ | 21,635 | $ | 4,555 | $ | 26,190 |
| Gross Cost with the Public | | 81,699 | | 17,201 | | 98,900 |
| Total Program Cost | | 103,334 | | 21,756 | | 125,090 |
| Net Cost/(Income) from Operations | $ | 55,346 | $ | (4,125) | $ | 51,221 |
| **Total Entity** | | | | | | |
| Total Program Cost (Notes 12 and 13) | $ | 1,253,127 | $ | 170,901 | $ | 1,424,028 |
| Total Earned Revenue | | (1,197,781) | | (175,026) | | (1,372,807) |
| Net Cost/(Income) from Operations | $ | 55,346 | $ | (4,125) | $ | 51,221 |

Intragovernmental expenses relate to the source of the goods or services, not the classification of the related revenue.

Exhibit 117
Page 002198

LUC 1314347

# NOTE 12. PROGRAM COSTS

Program costs consist of both costs related directly to the individual business lines and overall support costs allocated to the business lines. All costs are assigned to specific programs. Total program or operating costs for the years ended September 30, 2006 and 2005 by cost category were as follows:

| (Dollars in Thousands) | 2006 | | |
|---|---|---|---|
| | Direct | Allocated | Total |
| Personnel Services and Benefits | $ 807,879 | $ 75,473 | $ 883,352 |
| Travel and Transportation | 1,399 | 7,280 | 8,679 |
| Rent, Communications, and Utilities | 81,063 | 30,273 | 111,336 |
| Printing and Reproduction | 72,187 | 413 | 72,600 |
| Contractual Services | 211,401 | 111,589 | 322,990 |
| Training | 3,430 | 1,512 | 4,942 |
| Maintenance and Repairs | 10,982 | 25,499 | 36,481 |
| Supplies and Materials | 7,927 | 1,495 | 9,422 |
| Equipment not Capitalized | 6,435 | 3,982 | 10,417 |
| Insurance Claims and Indemnities | 85 | 1 | 86 |
| Depreciation, Amortization, or Loss on Asset Dispositions | 30,965 | 22,899 | 53,864 |
| Total Program Costs | $1,233,753 | $ 280,416 | $1,514,169 |

| (Dollars in Thousands) | 2005 | | |
|---|---|---|---|
| | Direct | Allocated | Total |
| Personnel Services and Benefits | $ 726,540 | $ 75,673 | $ 802,213 |
| Travel and Transportation | 663 | 5,649 | 6,312 |
| Rent, Communications, and Utilities | 90,993 | 37,363 | 128,356 |
| Printing and Reproduction | 69,695 | 388 | 70,083 |
| Contractual Services | 179,337 | 114,505 | 293,842 |
| Training | 2,727 | 1,154 | 3,881 |
| Maintenance and Repairs | 11,038 | 31,896 | 42,934 |
| Supplies and Materials | 7,234 | 1,578 | 8,812 |
| Equipment not Capitalized | 7,691 | 4,821 | 12,512 |
| Depreciation, Amortization, or Loss on Asset Dispositions | 32,208 | 22,875 | 55,083 |
| Total Program Costs | $1,128,126 | $ 295,902 | $1,424,028 |

The unfunded portion of personnel services and benefits for the years ended September 30, 2006 and 2005 were $7,328 thousand and $801 thousand, respectively.

Exhibit 117
Page 002199

95

LUC 1314348

# NOTE 13. PROGRAM COSTS BY CATEGORY AND RESPONSIBILITY SEGMENT

The program costs for the years ended September 30, 2006 and 2005 by cost category and business line were as follows:

| (Dollars in Thousands) | 2006 | | | 2005 | | |
|---|---|---|---|---|---|---|
| | Patent | Trademark | Total | Patent | Trademark | Total |
| Direct Costs | | | | | | |
| Personnel Services and Benefits | $ 718,350 | $ 89,529 | $ 807,879 | $ 646,517 | $ 80,023 | $ 726,540 |
| Travel and Transportation | 1,269 | 130 | 1,399 | 597 | 66 | 663 |
| Rent, Communications, and Utilities | 72,452 | 8,611 | 81,063 | 82,578 | 8,415 | 90,993 |
| Printing and Reproduction | 71,894 | 293 | 72,187 | 68,888 | 807 | 69,695 |
| Contractual Services | 184,331 | 27,070 | 211,401 | 156,111 | 23,226 | 179,337 |
| Training | 3,315 | 115 | 3,430 | 2,518 | 209 | 2,727 |
| Maintenance and Repairs | 9,217 | 1,765 | 10,982 | 8,923 | 2,115 | 11,038 |
| Supplies and Materials | 7,349 | 578 | 7,927 | 6,826 | 408 | 7,234 |
| Equipment not Capitalized | 5,514 | 921 | 6,435 | 6,799 | 892 | 7,691 |
| Insurance Claims and Indemnities | — | 85 | 85 | — | — | — |
| Depreciation, Amortization, or Loss on Asset Dispositions | 24,928 | 6,037 | 30,965 | 26,131 | 6,077 | 32,208 |
| Subtotal Direct Costs | 1,098,619 | 135,134 | 1,233,753 | 1,005,888 | 122,238 | 1,128,126 |
| Allocated Costs | | | | | | |
| Automation | 99,777 | 14,808 | 114,585 | 106,530 | 19,593 | 126,123 |
| Resource Management | 137,236 | 28,595 | 165,831 | 140,709 | 29,070 | 169,779 |
| Subtotal Allocated Costs | 237,013 | 43,403 | 280,416 | 247,239 | 48,663 | 295,902 |
| Total Program Costs | $1,335,632 | $ 178,537 | $1,514,169 | $1,253,127 | $ 170,901 | $1,424,028 |

The unfunded portion of personnel services and benefits for the years ended September 30, 2006 and 2005 were $7,328 thousand and $801 thousand, respectively.

Exhibit 117
Page 002200

LUC 1314349

# NOTE 14. FUTURE FUNDING REQUIREMENTS

The Consolidated Statement of Financing provides information on the total resources used by an agency, both those received through budgetary resources and those received through other means during the reporting period. The statement reconciles these resources with the net cost of operations by (1) removing resources that do not fund net cost of operations and (2) including components of net cost of operations that did not generate or use resources during the year.

The relationship between the amounts reported as liabilities not covered by budgetary resources as shown in Note 5, *Liabilities*, and the amounts reported as components requiring or generating resources in future periods on the Statement of Financing were analyzed. The differences are primarily due to budgetary offsetting collections that do not affect net cost of operations, which consists of the change in unfilled customer orders with advance.

For the year ended September 30, 2006, future funding requirements were as follows:

**(Dollars in Thousands)**

| | |
|---|---:|
| Liabilities not Covered by Budgetary Resources as of 9/30/2005 | $ 764,509 |
| Unobligated Balance Used to Cover Unfunded Liabilities | 5,728 |
| **Unfunded Liabilities as of 9/30/2005** | **$ 770,237** |
| Liabilities not Covered by Budgetary Resources as of 9/30/2006 | $ 841,632 |
| Unobligated Balance Used to Cover Unfunded Liabilities | 5,716 |
| **Unfunded Liabilities as of 9/30/2006** | **$ 847,348** |
| **Increase in Unfunded Liabilities** | **$ 77,111** |
| Costs that will be Funded by Resources in Future Periods | $ 7,580 |
| Budgetary Offsetting Collections that do not Affect Net Cost of Operations | 69,531 |
| **Increase in Future Funding Requirements** | **$ 77,111** |

For the year ended September 30, 2005, future funding requirements were as follows:

**(Dollars in Thousands)**

| | |
|---|---:|
| Liabilities not Covered by Budgetary Resources as of 9/30/2004 | $ 634,129 |
| Unobligated Balance Used to Cover Unfunded Liabilities | 2,363 |
| **Unfunded Liabilities as of 9/30/2004** | **$ 636,492** |
| Liabilities not Covered by Budgetary Resources as of 9/30/2005 | $ 764,509 |
| Unobligated Balance Used to Cover Unfunded Liabilities | 5,728 |
| **Unfunded Liabilities as of 9/30/2005** | **$ 770,237** |
| **Increase in Unfunded Liabilities** | **$ 133,745** |
| Costs that will be Funded by Resources in Future Periods | $ 3,647 |
| Resources that Fund Costs Recognized in Prior Periods | (360) |
| Budgetary Offsetting Collections that do not Affect Net Cost of Operations | 130,458 |
| **Increase in Future Funding Requirements** | **$ 133,745** |

Exhibit 117
Page 002201

97

LUC 1314350

# NOTE 15. COMMITMENTS AND CONTINGENCIES

## Commitments

In addition to the future lease commitments discussed in Note 8, the USPTO is obligated for the purchase of goods and services that have been ordered, but not yet received. Total undelivered orders for all of the USPTO's activities were $423,310 thousand and $281,995 thousand as of September 30, 2006 and 2005, respectively. Of these amounts, $418,995 thousand and $273,635 thousand, respectively, were unpaid.

## Contingencies

The USPTO is a party to various routine administrative proceedings, legal actions, and claims brought by or against it, including threatened or pending litigation involving labor relations claims, some of which may ultimately result in settlements or decisions against the federal government.

One grievance has been decided by arbitration where the employee has been reinstated and is being awarded backpay. Although the final liability is unknown, a reserve of $250 thousand has been setup. As of September 30, 2006, management expects it is reasonably possible that approximately $67,821 thousand may be owed for awards or damages involving labor relations claims. In addition, a potential class action suit outcome is considered reasonably possible, but a range of outcomes cannot be determined.

Additionally, the USPTO may be required to make reimbursements to the Judgment Fund. For the years ended September 30, 2006 and 2005, there were no payments made on behalf of the USPTO from the Judgment Fund.

Exhibit 117
Page 002202

LUC 1314351

# INDEPENDENT
# AUDITORS' REPORT



Exhibit 117
Page 002203

LUC 1314352



Exhibit 117
Page 002204

LUC 1314353



**UNITED STATES DEPARTMENT OF COMMERCE**
**The Inspector General**
Washington, D.C 20230

November 6, 2006

MEMORANDUM FOR:     Jon W. Dudas
                    Under Secretary of Commerce for Intellectual Property and
                        Director of the U.S. Patent and Trademark Office

FROM:               Johnnie E. Frazier

SUBJECT:            *USPTO's FY 2006 Financial Statements*
                    Audit Report No. FSD-18003-7-0002

I am pleased to provide you with the attached audit report, which presents an unqualified opinion
on the U.S. Patent and Trademark Office's FY2006 financial statements. The audit results
indicate that USPTO's internal controls facilitate preparation of reliable financial and
performance information. We commend USPTO for attaining an unqualified opinion for the 14th
consecutive year and for meeting the fiscal year 2006 accelerated reporting deadline.

My office contracted with the independent public accounting firm of KPMG LLP (KPMG) to
perform the audit of USPTO's financial statements for the fiscal year ended September 30, 2006.
The contract required that the audit be done in accordance with U.S. generally accepted
government auditing standards and OMB Bulletin 06-03, *Audit Requirements for Federal*
*Financial Statements.*

In its audit of USPTO, KPMG found that
*   the financial statements were fairly presented, in all material respects and in conformity with
    U.S. generally accepted accounting principles;
*   there were no material weaknesses in internal controls, as defined on page 2 of the audit
    report;
*   there were no instances in which the USPTO's financial management systems did not
    substantially comply with the requirements of the Federal Financial Management
    Improvement Act of 1996 and no instances of noncompliance with other laws and
    regulations tested.

My office defined the audit's scope and oversaw its performance and delivery. We reviewed
KPMG's report and related documentation, and made inquiries of its representatives. Our
review disclosed no instances where KPMG did not comply, in all material respects, with U.S.
generally accepted government auditing standards.



Exhibit 117
Page: 002205                                                                         101

LUC 1314354

However, our review cannot be construed as an audit in accordance with U.S. generally accepted government auditing standards. It was not intended to enable us to express, and we do not express, any opinion on USPTO's financial statements, conclusions about the effectiveness of internal controls, or conclusions on compliance with laws and regulations. KPMG is solely responsible for the attached audit report dated November 6, 2006, and the conclusions expressed in the report.

If you wish to discuss the contents of this report, please call me on (202) 482-4661, or Elizabeth Barlow, Deputy Inspector General, on (202) 482-3516. We appreciate the cooperation and courtesies the USPTO extended to KPMG and my staff during the audit.


Attachment


cc:    Barry K. Hudson
       Chief Financial Officer
       U.S. Patent and Trademark Office

       Otto J. Wolff
       Chief Financial Officer and Assistant Secretary for Administration
       Department of Commerce

2

Exhibit 117
Page 002206

LUC 1314355



**KPMG LLP**
2001 M Street, NW
Washington, DC 20036

## Independent Auditors' Report

Inspector General, U.S. Department of Commerce and
Under Secretary of Commerce for Intellectual Property and
    Director of the U.S. Patent and Trademark Office:

We have audited the accompanying consolidated balance sheets of the U.S. Patent and Trademark Office (USPTO), an agency within the U.S. Department of Commerce, as of September 30, 2006 and 2005, and the related consolidated statements of net cost, changes in net position, financing, and cash flows, and the combined statements of budgetary resources (hereinafter referred to as "financial statements") for the years then ended. The objective of our audits was to express an opinion on the fair presentation of these financial statements. In connection with our fiscal year 2006 audit, we also considered the USPTO's internal control over financial reporting and tested the USPTO's compliance with certain provisions of applicable laws, regulations, and contracts that could have a direct and material effect on these financial statements.

### SUMMARY

As stated in our opinion on the financial statements, we concluded that the USPTO's financial statements as of and for the years ended September 30, 2006 and 2005, are presented fairly, in all material respects, in conformity with U.S. generally accepted accounting principles.

As discussed in our opinion, in fiscal year 2006, the USPTO adopted new reporting requirements for earmarked funds.

Our consideration of internal control over financial reporting and performance measures would not necessarily disclose all matters in the internal control over financial reporting that might be material weaknesses under standards issued by the American Institute of Certified Public Accountants. However, we noted no matters involving the internal control and its operation that we considered to be material weaknesses.

The results of our tests of compliance with certain provisions of laws, regulations, and contracts disclosed no instances of noncompliance or other matters that are required to be reported herein under *Government Auditing Standards*, issued by the Comptroller General of the United States, and Office of Management and Budget (OMB) Bulletin No. 06-03, *Audit Requirements for Federal Financial Statements*.

The following sections discuss our opinion on the USPTO's financial statements, our consideration of the USPTO's internal control over financial reporting and performance measures, our tests of the USPTO's compliance with certain provisions of applicable laws, regulations, and contracts, and management's and our responsibilities.

### OPINION ON THE FINANCIAL STATEMENTS

We have audited the accompanying consolidated balance sheets of the U.S. Patent and Trademark Office as of September 30, 2006 and 2005, and the related consolidated statements of net cost, changes in net position, financing, and cash flows, and the combined statements of budgetary resources for the years then ended.

Exhibit 137
Page: 002207

103

**LUC 1314356**



In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the U.S. Patent and Trademark Office as of September 30, 2006 and 2005, and its net costs, changes in net position, budgetary resources, reconciliation of net costs to budgetary obligations, and cash flows for the years then ended, in conformity with U.S. generally accepted accounting principles.

As discussed in Note 1 to the financial statements, the USPTO changed its method of reporting earmarked funds in fiscal year 2006 to adopt the provisions of the Federal Accounting Standards Advisory Board's Statement of Federal Financial Accounting Standards No. 27, *Identifying and Reporting Earmarked Funds*.

The information in the Management's Discussion and Analysis section is not a required part of the financial statements, but is supplementary information required by U.S. generally accepted accounting principles and OMB Circular A-136, *Financial Reporting Requirements*. We have applied certain limited procedures, which consisted principally of inquiries of management regarding the methods of measurement and presentation of this information. However, we did not audit this information and, accordingly, we express no opinion on it.

Our audits were conducted for the purpose of forming an opinion on the financial statements taken as a whole. The information in the Other Accompanying Information on pages 107 through 152 is presented for purposes of additional analysis and is not required as part of the financial statements. This information has not been subjected to auditing procedures and, accordingly, we express no opinion on it.

## INTERNAL CONTROL OVER FINANCIAL REPORTING

Our consideration of the internal control over financial reporting would not necessarily disclose all matters in the internal control over financial reporting that might be material weaknesses under standards issued by the American Institute of Certified Public Accountants. Material weaknesses are reportable conditions in which the design or operation of one or more of the internal control components does not reduce to a relatively low level the risk that misstatements caused by error or fraud in amounts that would be material in relation to the financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. Because of inherent limitations in internal control, misstatements due to error or fraud may nevertheless occur and not be detected. However, we noted no matters involving the internal control and its operation that we considered to be material weaknesses as defined above.

## INTERNAL CONTROLS OVER PERFORMANCE MEASURES

Under OMB Bulletin 06-03, the definition of material weaknesses is extended to other controls as follows. Material weaknesses are reportable conditions in which the design or operation of one or more of the internal control components does not reduce to a relatively low level the risk that misstatements caused by error or fraud, in amounts that would be material to a performance measure or aggregation of related performance measures, may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. Because of inherent limitations in internal control, misstatements due to error or fraud may nevertheless occur and not be detected.

Our consideration of the design and operation of internal control over the existence and completeness assertions related to key performance measures would not necessarily disclose all matters involving the design and operation of the internal control over the existence and completeness assertions related to key performance measures that might be reportable conditions.

In our fiscal year 2006 audit, we noted no matters involving the design and operation of the internal control over the existence and completeness assertions related to key performance measures that we considered to be material weaknesses as defined above.

Exhibit 117
Page 002208

LUC 1314357



However, we noted other matters that we reported to the management of the USPTO in two separate letters addressing information technology and other matters, respectively.

## COMPLIANCE AND OTHER MATTERS

The results of our tests of compliance described in the Responsibilities section of this report, exclusive of those referred to in the *Federal Financial Management Improvement Act of 1996* (FFMIA), disclosed no instances of noncompliance or other matters that are required to be reported herein under *Government Auditing Standards* and OMB Bulletin No. 06-03.

The results of our tests of FFMIA disclosed no instances in which the USPTO's financial management systems did not substantially comply with the three requirements discussed in the Responsibilities section of this report.

\* \* \* \* \*

## RESPONSIBILITIES

**Management's Responsibilities**. The United States Code Title 31 Section 3515 and 9106 require agencies to report annually to Congress on their financial status and any other information needed to fairly present their financial position and results of operations. To meet these reporting requirements, the USPTO prepares and submits financial statements in accordance with OMB Circular A-136.

Management is responsible for the financial statements, including:

- Preparing the financial statements in conformity with U.S. generally accepted accounting principles;

- Preparing the Management's Discussion and Analysis (including the performance measures);

- Establishing and maintaining effective internal controls over financial reporting; and

- Complying with laws, regulations, and contracts applicable to the USPTO.

In fulfilling this responsibility, management is required to make estimates and judgments to assess the expected benefits and related costs of internal control policies.

**Auditors' Responsibilities**. Our responsibility is to express an opinion on the fiscal year 2006 and 2005 financial statements of the USPTO based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America; the standards applicable to financial audits contained in *Government Auditing Standards*; and OMB Bulletin No. 06-03. Those standards and OMB Bulletin No. 06-03 require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the USPTO's internal control over financial reporting. Accordingly, we express no such opinion.

An audit also includes:

- Examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements;

- Assessing the accounting principles used and significant estimates made by management; and

- Evaluating the overall financial statement presentation.

Exhibit 117
Page 002209                                                                                    105

LUC 1314358



We believe that our audits provide a reasonable basis for our opinion.

In planning and performing our fiscal year 2006 audit, we considered the USPTO's internal control over financial reporting by obtaining an understanding of the USPTO's internal control, determining whether internal controls had been placed in operation, assessing control risk, and performing tests of controls in order to determine our auditing procedures for the purpose of expressing our opinion on the financial statements. We limited our internal control testing to those controls necessary to achieve the objectives described in *Government Auditing Standards* and OMB Bulletin No. 06-03. We did not test all internal controls relevant to operating objectives as broadly defined by the *Federal Managers' Financial Integrity Act of 1982*. The objective of our audit was not to provide an opinion on the USPTO's internal control over financial reporting. Consequently, we do not provide an opinion thereon.

As required by OMB Bulletin No. 06-03, in our fiscal year 2006 audit, with respect to internal control related to performance measures determined by management to be key and reported in the Management's Discussion and Analysis section, we obtained an understanding of the design of internal controls relating to the existence and completeness assertions and determined whether these internal controls had been placed in operation. We limited our testing to those controls necessary to test and report on the internal control over key performance measures in accordance with OMB Bulletin 06-03. However, our procedures were not designed to provide an opinion on internal control over reported performance measures and, accordingly, we do not provide an opinion thereon.

As part of obtaining reasonable assurance about whether the USPTO's fiscal year 2006 financial statements are free of material misstatement, we performed tests of the USPTO's compliance with certain provisions of laws, regulations, and contracts, noncompliance with which could have a direct and material effect on the determination of the financial statement amounts, and certain provisions of other laws and regulations specified in OMB Bulletin No. 06-03, including certain provisions referred to in FFMIA. We limited our tests of compliance to the provisions described in the preceding sentence, and we did not test compliance with all laws, regulations, and contracts applicable to the USPTO. However, providing an opinion on compliance with laws, regulations, and contracts was not an objective of our audit and, accordingly, we do not express such an opinion.

Under OMB Bulletin No. 06-03 and FFMIA, auditors are required to report whether the USPTO's financial management systems substantially comply with (1) Federal financial management systems requirements, (2) applicable Federal accounting standards, and (3) the United States Government Standard General Ledger at the transaction level. To meet this requirement, we performed tests of compliance with FFMIA Section 803(a) requirements.

**RESTRICTED USE**

This report is intended solely for the information and use of the USPTO's management, the U.S. Department of Commerce's Office of Inspector General, OMB, the U.S. Government Accountability Office, and the U.S. Congress and is not intended to be and should not be used by anyone other than these specified parties.



November 6, 2006

Exhibit 117
Page 002210

LUC 1314359

# OTHER ACCOMPANYING INFORMATION



Exhibit 117
Page 002211

LUC 1314360



Exhibit 117
Page 002212

LUC 1314361

# MANAGEMENT *and* PERFORMANCE CHALLENGES IDENTIFIED *by the* INSPECTOR GENERAL



Exhibit 117
Page 002213

LUC 1314362

# INSPECTOR GENERAL'S STATEMENT SUMMARIZING THE MAJOR
# MANAGEMENT AND PERFORMANCE CHALLENGES FACING THE
# UNITED STATES PATENT AND TRADEMARK OFFICE

Jon W. Dudas

Under Secretary of Commerce for Intellectual Property and

Director of the United States Patent and Trademark Office

We are providing the management challenges for the United States Patent and Trademark Office (USPTO) Department of Commerce in accordance with the provisions of the Reports Consolidation Act of 2000 (PL 106-531). Detailed information about our work is available on our website at: http://www.oig.doc.gov

**Ensure That USPTO Uses Its Authorities and Flexibilities As A Performance-Based Organization To Achieve Better Results**

Since March 2000 when the Patent and Trademark Office Efficiency Act transformed USPTO into a performance-based organization designed to operate more like a private corporation than a government agency, OIG has paid close attention to a number of aspects of the organization's internal management structures and practices.

At the same time, USPTO faces numerous challenges, such as a continuing increase in applications, training about 1,000 newly hired examiners in Patents and Trademarks, and transitioning to an electronic processing environment. In addition, USPTO's expanded authority over personnel decisions and processes, procurement, and information technology operations needs to be effectively and efficiently utilized.

OIG has issued nearly a dozen reports examining problems at USPTO since 2001. The bureau has generally taken decisive action to address some problems we identified in the past, and we have been pleased that USPTO has been receptive to our recommendations. But ultimately, we believe that many of the problems USPTO suffers are serious and require the sustained commitment of senior managers to resolve. OIG will continue to monitor the bureau's progress.

*Inspector General*

*Johnnie E. Frazier*

Exhibit 117
Page 002214

LUC 1314363

# *The* NATURE *of the* TRAINING PROVIDED *to* USPTO EXAMINERS



Exhibit 117
Page 002215

LUC 1314364



Exhibit 117
Page 002216

LUC 1314365

# THE NATURE OF THE TRAINING PROVIDED
# TO USPTO EXAMINERS

Achieving organizational excellence demands a high performance workforce that delivers high quality work products and provides customer service excellence. Training is a critical component in achieving consistently high quality products and services.

Patent examiners and Trademark examining attorneys received extensive legal, technical and automation training in FY 2006. The USPTO has a comprehensive training program for new patent examiners and trademark examining attorneys, embedding a well-established curriculum including initial legal training, automation training and training in examination practice and procedure. Automation training is provided to all examiners on an as-needed basis; more than 260 automation classes were conducted on Patent examination tools.   New technology-specific legal and technical training was conducted throughout the examining operations. This specific training either focuses on practices particular to a technology or was developed to address training needs identified through Patent and Trademark examination reviews or staff requests.

The USPTO training staff works one-on-one with the Patent and Trademark business units to address specific training concerns and serve as consultants to design specific internal programs to fit the education needs of each business unit. Training is reviewed and evaluated on an ongoing basis to ensure it is up-to-date and that coursework reflects developments and changes that have taken place in the industry.  In FY 2006, the USPTO continued to expand training opportunities by developing additional computer based training and instructional videos.

Reviewers continue to gather data regarding dozens of examination issues on each file they review.  The Office developed a database for the management of review findings that will provide managers with ready access to review results to better identify training needs and assist individual examiners in gaining enhanced skills and improving quality.

Exhibit 117
Page 002217

113

LUC 1314366

## PATENT EXAMINER TRAINING

**Procedural Training**
— Mandatory for all first year examiners

**Patent Examiner Initial Training and Introduction to Practice and Procedures**

Standardized training is provided to new patent examiners to teach them the basic skills and knowledge of the patent process, practices, and procedures such that they will be able to successfully examine a patent application. Examiners will also be able to prepare an initial report on what is the claimed, as well as the disclosed invention contained in the application to facilitate a supervisor's prior art search. The number of courses offered each year is based on the projected number of new examiners entering the Patent organization.

**Legal Training**
— Mandatory for all first year examiners

Practice and Procedures Lectures include the following topics:
- "Novelty" Requirements
- "Non-obviousness" Requirements
- "Utility" Requirements
- Restriction Practice
- Unity of Invention
- Double Patenting
- Allowance and Issue
- Appeals

**New U.S. Patent Training Academy**
— Mandatory training for first year examiners

**Training in the Academy**

In 2006, the USPTO piloted an enhanced training and education program for new examiners. Participants attend eight consecutive months of training in a university style environment. Classes of up to 128 new examiners, starting at specific times during the year, begin with large group lectures. The class is then split into groups of 16 examiners for labs, small group discussions, and tailored training in their specific fields of study. Examiners have access to tutors, library and search assistance, and automation guidance. In addition to extensive lecture and lab training, attendees spend considerable time learning their jobs through the examination of real patent applications in a setting that provides immediate assistance when needed.

The training is structured to provide new examiners with advanced entry-level competencies, as well as providing instruction in a variety of skills that will produce well-rounded, motivated employees.

**Patent Training Academy**
*Legal and procedural training*

Training in the Academy includes the legal and procedural training noted above, plus enhanced instruction in areas such as: Classification Systems, Searching (classification, text), Understanding legal documents and how attorneys write applications and claims, Advanced Claim Interpretation, Advanced Text Searching, Legal Research and Analysis, Quality Reviews, Legal Writing, Writing an Effective Examiner's Answer, Appellant Procedure and Practice (Appeal Conference & Pre-Conference; Prevent Administrative Remand).

**Patent Training Academy**
*Automation*

Examiners attending the Academy receive extensive training in automation, including classes in more than a dozen specialized applications used in patent examination, multiple search systems, databases, and commonly used office applications.

**Patent Training Academy**
*Life Skills*

The Academy provides new examiners training in life skills such as: time management, physical security, ethics, stress management, balancing quality, production, and professionalism, balancing work and personal life, diversity training, dealing with conflict and difficult situations, and financial planning basics.

Exhibit 117
Page 002218

LUC 1314367

## PATENT EXAMINER TRAINING *Continued*

**Patent Training Academy**
*Professional Development*

The Academy training program includes instruction in: creating an Individual Development Plan, availability of on-going training opportunities, and career advancement. Training in communications skills, such as concise writing, developing listening skills, effective communications, customer service skills, remote communication, and team building is also provided.

**Patent Training Academy**
*Technology Basics*

Technical training in the Academy encompasses: Introduction to examining applications in specific areas of technology, the current state of specific technologies, technical writing, ongoing technology topics, etc.

**Continuing Education**

Courses are for students from all Technology Centers (TC), some taught by personnel within the TC's, some modified to include TC specific examples. Courses include: Federal Circuit Decisions Affecting USPTO Practice - Key Cases of the Past Year and mastery of updated automation tools.

**Legal Training**

TC Level courses taught by TC personnel, some developed within the TC's. Examples include: 101 Training, 102/103 Training, Obviousness Type Double Patenting, Patent Law & Evidence, Non-Duty Legal Studies program.

**Examiner Technical Training**
(Technology Center Focused)

Includes attendance at technology fairs; seminars and lectures in the fields of biotechnology, computer software and hardware technology, semiconductors, communication technology, and knowledge management.

**Non-Duty Technical Training Program**

Examples: Mathematical Methods for Physics

**Automation Training**

All first year examiners are provided mandatory initial automation training. Instruction includes IFW tools: IFW for examiners "eDAN", IFW for technical support staff "MADRAS", IFW for coordinating committee, IFW messaging for supervisory patent examiners, IFW refresher. Other automation training: Classification Data System Desktop Training, ChemDraw, Examiner Automated Search System (EAST) 1.3: New Features, EAST and Bibliographic Retrieval System: The Fundamentals, Office Action Correspondence System (OACS) 1.3: New Features, OACS Basics, OACS for Non-Typists, OACS: Creating Personal Forms, Chemical Searching for Non-chemists, West: Refresher, Microsoft® PowerPoint, Microsoft® Outlook, Overview of PALMExpo.

TC-Focused Classes: EAST Databases, EAST: Automated Searching for Design Examiners, EAST and Optical Character Recognition, OACS Basics for Design Examiners, Non-Patent Literature Web Resources in Your Art Area, Classification and Security Review, Obviousness Type Double Patenting, Means Plus Function Claims (35 USC § 112).

**Management Training**

Review of Recent Court of Appeals for the Federal Circuit Decisions Management Skills workshop.

**Technical Support and Administrative Staff Training**

In 2006, the USPTO initiated the learning opportunities program, providing over 2,000 free computer based courses to all patents technical support and administrative staff. The program also provides a series of lectures to expand understanding of the role of IT in the patent examination process.

Exhibit 137
Page 002219

LUC 1314368

## TRADEMARK EXAMINING ATTORNEY TRAINING

In FY 2006, the Trademark organization gathered data from the results of quality reviews, analyzed, and used them to prepare the content of online e-learning training materials for trademark examining attorneys. Ten e-learning modules were developed and released covering the following list of topics.

- Concurrent User Applications
- Section 2(d) - Likelihood of Confusion - Weak and Diluted Marks
- Section 2(a) - Scandalous and Disparaging Marks
- Amendments to Goods and Services - Are They Within The Scope?
- Section 2(d) - Likelihood of Confusion - Relatedness of Goods and Services: A General Framework
- Section 2(d) - Likelihood of Confusion - Relatedness of Goods and Services: Evidence
- Section 2(d) - Likelihood of Confusion - Relatedness of Goods and Services: Food and Beverages Goods and Services
- Varietal and Cultivar Names
- Office of Petitions

Seven examination tips have been developed and released.

- Consent to Register a Mark Identifying a Particular Living Individual
- TEAS Allegations of Use
- Marks Containing the Term "Your" in Combination with Descriptive or Generic Matter
- Claiming Prior Registrations
- When is the Term "Official" Considered Descriptive?
- Foreign Agents and Attorneys
- Standard Character Marks

Two issues of a multi-issue examination reminders newsletter have been developed and released.

Exhibit 117
Page 002220

LUC 1314369

# FISCAL YEAR 2006 USPTO
# WORKLOAD TABLES



Exhibit 117
Page 002221

LUC 1314370