# SCHMIDT DECLARATION

# EXHIBIT 129

Attorney Docket No. 75543-011

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In the Reexamination of: ) | |
| ) | |
| DAY, Jr. et al. ) | |
| ) | |
| U.S. Patent No.: 4,763,356 ) | |
|     Filed: December 11, 1986 ) | Examiner: |
|     Issue Date: August 9, 1988 ) | |
| ) | Group Art Unit: |
| For:   TOUCH SCREEN FORM ENTRY ) | |
|     SYSTEM ) | |
| ) | |
| Reexamination Proceeding ) | |
|     Control No.: ) | |
|     Filed: ) | |

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing Request for Ex Parte Reexamination of U.S. Patent

No. 4,763,356, Information Disclosure Statement, and  PTO-1449 were served by first class mail

this 3rd day of May, 2007 to:

Counsel for Lucent
Alison P. Adema
Hahn & Adema
501 West Broadway, Suite 1730
San Diego, CA 92101-3595


Respectfully submitted,

McDERMOTT WILL & EMERY LLP

Kenneth L. Cage
Registration No. 26,151

600 13th Street, N.W.
Washington, DC  20005-3096
Phone:  202.756.8000 KLC:MAM/llg
Facsimile:  202.756.8087
**Date:  May 3, 2007**

**Please recognize our Customer No. 20277 as
our correspondence address.**

Exhibit 129
Page 002518

Attorney Docket No. 75543-011

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| **In the Reexamination of:** | ) | |
| | ) | |
| **DAY, Jr. et al.** | ) | |
| | ) | |
| **U.S. Patent No.: 4,763,356** | ) | |
|     **Filed:  December 11, 1986** | ) | **Examiner:** |
|     **Issue Date: August 9, 1988** | ) | |
| | ) | **Group Art Unit:** |
| **For:  TOUCH SCREEN FORM ENTRY** | ) | |
|        **SYSTEM** | ) | |
| | ) | |
| **Reexamination Proceeding** | ) | |
|     **Control No.:** | ) | |
|     **Filed:** | ) | |

**REQUEST FOR *EX PARTE* REEXAMINATION
OF U.S. PATENT NO. 4,763,356
UNDER 35 U.S.C. §§ 302-307 AND 37 C.F.R. § 1.510**

Mail Stop Ex Parte Reexam
Honorable Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Exhibit 129
Page 002519

# TABLE OF CONTENTS

Page

I.     SUMMARY OF REEXAMINATION REQUEST ........................................................... 1

II.    SUMMARY OF THE `356 PATENT ........................................................................... 1

III.   PRIOR AND CONCURRENT PROCEEDINGS ...................................................... 2

IV.   BASIS FOR REEXAMINATION .............................................................................. 2

      A.    Statement Pointing Out Substantial New Question Of Patentability .................... 3

            1.    Request For Reexamination ....................................................................... 4

            2.    Identification Of Claims For Which Reexamination Is Requested And Explanation Of The Pertinency And Manner Of Applying The Cited Prior Art .......................................................................................... 4

                a.    During Reexamination Involving an Expired Patent, Claims Are To Be Given Their Ordinary and Customary Meaning in Determining Whether a Substantial New Question of Patentability is Present ....................................................... 4

                b.    Ordinary and Customary Meanings of Claim Terms ..................... 5

V.    THE APPLICABLE LEGAL STANDARDS ............................................................. 5

      A.    The Law of Anticipation ................................................................................... 5

      B.    The Law of Obviousness ................................................................................... 6

VI.   DISCUSSION OF THE PRIOR ART ...................................................................... 8

      The Tyler Article (Exhibit 2) ..................................................................................... 8

VII.  APPLICATION OF THE PRIOR ART TO THE CLAIMS ......................................... 10

VIII. CONCLUSION ....................................................................................................... 14

Exhibit 129
Page 002520

# TABLE OF CONTENTS

## EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | U.S. Patent No. 4,763,356 ("Touch Screen Form Entry System", Benjamin W. Day, Jr., Alexander C. Gillon, Raoul A. LeConte, Feb. 14, 2006) |
| 2 | Michael Tyler, *Touch Screens: Big Deal or No Deal?*, Datamation, January 1984, pp. 146-154. |
| 3 | Claim Construction Order Clarifying and Superceding the Order of March 1, 2004, Construing Claims for Patent Number 4,763,356 |

Exhibit 129
Page 002521

### REQUEST FOR *EX PARTE* REEXAMINATION
### OF U.S. PATENT NO. 4,763,356
### UNDER 35 U.S.C. §§ 302-307 AND 37 C.F.R. § 1.510

Mail Stop Ex Parte Reexam
Honorable Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The undersigned respectfully requests reexamination of claims 19 and 21 of U.S. Pat. No. 4,763,356 (hereafter "the `356 patent") (Exhibit 1), entitled "TOUCH SCREEN FORM ENTRY SYSTEM," which issued on August 9, 1988, to Benjamin W. Day, Jr., Alexander C. Gillon, and Raoul A. LeConte under the provisions of 35 U.S.C. § 302 *et seq.*.

## I.   SUMMARY OF REEXAMINATION REQUEST

This request for reexamination provides significant new art which raises a new question of patentability of claims 19 and 21 of the `356 patent. In particular, this new art anticipates or renders obvious claims 19 and 21.

The real party in interest making this request is Dell, Inc. Thus, the "Requester" referred to herein should be considered Dell, Inc.

## II.   SUMMARY OF THE `356 PATENT

The `356 patent relates to a computer display arrangement and method, for displaying and entering information using a predefined form. The methodology includes displaying the form, which comprises a plurality of information fields, on a touch screen. Each field contains an identifier (e.g., a label) of the kind of information to be inserted therein. A particular one of the information fields to be filled in is indicated, and a predefined tool for supplying the information to be inserted into the field is concurrently displayed. The predefined tool is a menu of alternatives, or a tool that allows the user to compose the information, such as a keyboard or a calculator, as appropriate to facilitate inputting the information. When the user enters the information using the tool, the information is then inserted into the indicated field. *See,* **`356 patent** at Abstract and at col. 17:27 to col. 18:22.

1

Exhibit 129
Page 002522

## III.    PRIOR AND CONCURRENT PROCEEDINGS

The `356 patent, attached hereto as Exhibit 1, issued from U.S. Patent Application Serial Number 940,408 filed on December 11, 1986 ("the `408 application") and assigned to AT&T Information Systems, Inc.

A first Office Action was mailed March 22, 1988, allowing claims 1-22 without rejection, amendment, or statement of reasons for allowance.

U.S. Patent 4,763,356 issued on August 9, 1988, with claims 1-22. The `356 patent expired on December 11, 2006, twenty years from the date of filing of the `408 application.

The `356 patent is currently the subject of litigation before the United States District Court for the Southern District of California, where Patent Owner has accused Requester of patent infringement, in a proceeding styled *Lucent Technologies Inc.* v. *Gateway, Inc.*, Cas No. 02-CV-2060 D (CAB).


## IV.    BASIS FOR REEXAMINATION

Reexamination of claims 19 and 21 is requested based on the prior art publication set forth in this request or any other basis that the Commissioner may deem appropriate.

Importantly, Requester recognizes that reexamination of the `356 patent is limited solely to the prior art jurisdictional issues of "patents and printed publications" that present a substantial new question of patentability. Manual of Patent Examining Procedure (MPEP) 8th ed., Rev. 5, § 2258 (August 2006). Nothing stated herein by Requester should be considered as any admission or estoppel that Requester agrees or believes that the `356 patent complies with all provisions of 35 U.S.C. § 112, or 35 U.S.C. § 132, among other provisions of the Patent Code, which are normally outside of the jurisdictional mandate of reexamination proceedings. MPEP 2258.

By way of example, it is apparent that there are significant 35 U.S.C. § 112, para. 2 issues based on the lack of antecedent basis for "said pattern" in claim 21. Attention of the Examiner is directed to MPEP 2258(II), where the examiner is authorized to state the following in ¶ 22.03 "Issue Not Within Scope of Ex Parte Reexamination": "It is noted that an issue not within the scope of reexamination proceedings has been raised. …. The issue will not be considered in a reexamination proceeding. 37 C.F.R. 1,522(c). While this issue is not within the scope of reexamination, the patentee is advised that it may be desirable to consider filing a reissue

2

Exhibit 129
Page 002523

application provided that the patentee believes one or more claims to be partially or wholly inoperative or invalid."

Additionally, while the procedural rules in reexamination proceedings before the USPTO involving claims of an expired patent require that the examiner give the words of the claims "their ordinary and customary meaning", any statements to that effect by Requester in this request are only made as a recognition that such a procedural tool is required in reexamination proceedings. Accordingly, any statements by Requester as to the "ordinary and customary meaning" of claim terms are not and should not be considered as any admission or estoppel that Requester agrees that such a claim construction is mandated for use before a Court of the United States. A claim construction of the `356 patent claims 19 and 21 came out of a *Markman* hearing before the Federal District Court where Patent Owner has accused Requester and others of patent infringement. A copy of the Claim Construction Order Clarifying and Superceding the Order of March 1, 2004, Construing Claims for Patent Number 4,763,356 ("the Clarifying Markman Order") is attached hereto as Exhibit 3, and is discussed in the claim chart below.

The pertinency and manner of applying the cited prior art to each of the above claims for which reexamination is requested under 35 U.S.C. § 302 *et seq* and 37 C.F.R. § 1.510 is set forth below.

### A.    Statement Pointing Out Substantial New Question Of Patentability

35 U.S.C. § 303(a) states, in part: "Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request . . . ." 35 U.S.C. § 304 states as follows: "If, in a determination made under the provisions of subsection 303(a) of this title, the Commissioner finds that a substantial new question of patentability affecting any claim of a patent is raised, the determination will include an order for reexamination of the patent for resolution of the questions."

A substantial question of patentability is established by the following test:

> A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication

3

Exhibit 129
Page 002524

important in deciding whether or not the claim is patentable.

MPEP 2242. Certainly, if an Examiner would have rejected a claim based on the reference identified in this request, "there is a substantial likelihood that a reasonable Examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable." *Id*. However, as stated in MPEP 2242, it is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "prima facie" case of unpatentability, see generally *In re Etter*, 756 F.2d 852, 857, n. 5, 225 USPQ 1,4 n.5 (Fed. Cir. 1985).

### 1.    Request For Reexamination

This reexamination request relies on prior art not previously considered by the USPTO.

Accordingly, Requester urges that a substantial new question of patentability is raised by this reexamination request.

### 2.    Identification Of Claims For Which Reexamination Is Requested And Explanation Of The Pertinency And Manner Of Applying The Cited Prior Art

Claims 19 and 21 are anticipated by Tyler, as detailed in the claim chart below.

Claims 19 and 21 are obvious over Tyler, alone or in combination with other prior art of record and/or the knowledge of one of ordinary skill in the art, as detailed in the claim chart below.

#### a.    During Reexamination Involving an Expired Patent, Claims Are To Be Given Their Ordinary and Customary Meaning in Determining Whether a Substantial New Question of Patentability is Present

The statutory presumption of validity, 35 U.S.C. § 282, has no application in reexamination. *See* MPEP 2258 G, citing *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir.

4

Exhibit 129
Page 002525

1985). According to MPEP 2258(I)(G), "[i]n a reexamination proceeding involving claims of an expired patent, claim construction pursuant to the principle set forth by the court in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention) should be applied since the expired claims are not subject to amendment."

#### b.    Ordinary and Customary Meanings of Claim Terms

In construing a claim term, the ordinary and customary meaning(s) as set forth in a dictionary or encyclopedia is the starting point. It may be necessary to refer to the special evidence of standard dictionaries, both to fully understand the meaning of the patent claim terms and to interpret the asserted prior art consistent with the knowledge of one of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(en banc) affirming *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-981 (Fed. Cir. 1995)(en banc), affirmed 517 U.S. 370 (1996).

In a lawsuit, the judge can enter a ruling as to the interpretation of various limitations of the claims of the patent-in-suit. However, as per MPEP 2286, non-final decisions are not binding on the Patent Office with regard to a reexamination. As such, Requestor believes that the Patent Office is required to interpret the claims of the `356 Patent per MPEP 2258(I)(G), *i.e.* giving the words of the claims their ordinary and customary meaning.

### V.    THE APPLICABLE LEGAL STANDARDS

#### A.    The Law of Anticipation

Under 35 U.S.C. § 102, an invention must be "novel," *i.e.*, it must be new at the time the invention is made. A patent claim is anticipated under 35 U.S.C. § 102, and therefore invalid, if each element of the claim in issue can be found, either expressly described or under principles of inherency, in a single prior art reference. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760 (Fed. Cir. 1983). A "prior art reference" for purposes of the statute is subject matter that has been patented or described in a printed publication prior to the date of invention by the patentee or more than one year prior to the application filing date, or in public use or on sale in the United States

Exhibit 129
Page 002526

more than one year prior to the patent application filing date. Regarding the `356 patent, the critical date for determining whether a reference is prior art is December 11, 1986, since this is the earliest priority date of its parent, the `408 application discussed hereinabove.

Pertinent language of § 102 is quoted as follows:

A person shall be entitled to a patent unless--

\*\*\*\*\*

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

\*\*\*\*\*

Novelty of claimed subject matter is judged by a comparison of the properly construed claim with a single piece of prior art. *Lindemann Mashinenfabrik v. American Hoist & Derrick*, 730 F.2d 1452, 1458 (Fed. Cir. 1984). Anticipation requires a complete disclosure of the claimed invention in the reference. If one complete example anticipates, the disclosure need not draw attention to or agree with the anticipating example. *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 781-782 (Fed. Cir. 1985) (when, as by a recitation of ranges, a claim covers several compositions, the claim is anticipated if one of the compositions is in the prior art).

A reference anticipates a claim invention if it discloses the claimed invention "such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention." *In re Graves*, 69 F.3d 1147 (Fed. Cir. 1995) (*citing In re LeGrice*, 301 F.2d 929, 936 (CCPA 1962)); *In re Donohue,* 766 F.2d 531, 533 (Fed. Cir. 1985).

## B.    The Law of Obviousness

Even if a single prior art reference does not disclose each and every limitation of the claimed invention, the claim may still be invalid as obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) (affirming jury verdict that patent was obvious in light of art that was before the examiner), quoting 35 U.S.C. § 103(a) (1994). "[T]he

6

Exhibit 129
Page 002527

combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results," *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. ___, slip op. at 12-13 (April 30, 2007), thus the question is "whether the improvement is more than the predictable use of prior art elements according to their established functions." *id.* at 13. Obviousness is based on underlying factual inquiries regarding "the scope and content of the prior art, the level of ordinary skill in the field of the invention, the differences between the claimed invention and the prior art, and any objective evidence of non-obviousness such as long-felt need, and commercial success." *Id.* (referring to the "*Graham* factors" as recited in *Graham v. John Deere*, 383 U.S. 1, 17 (1966)).

"[W]e cannot 'deny factfinders recourse to common sense.'" *KSR Int'l* at 17. "Conclusory" statements by experts cannot make nonobvious what those facts make obvious, *id.* at 23, especially where, as here, there are no "secondary factors to dislodge the determination that …[it] is obvious. *Id.* at 22. Further, "[a] nexus between … [secondary factors] and the claimed features is required" before secondary considerations *can* dislodge the determination. *See Brown & Williamson Tobacco Corp v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

When an obviousness determination relies on the combination of two or more references, the Federal Circuit has held there must be some suggestion or motivation to combine the references. *In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998). The suggestion to combine may be found in explicit or implicit teachings within the references themselves, from the ordinary knowledge of those skilled in the art, or from the nature of the problem to be solved. *Id.* at 1357. "When determining the patentability of a claimed invention which combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination.'" *In re Beattie*, 974 F.2d 1309, 1311-12 (Fed. Cir. 1992) (*quoting Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1462 (Fed. Cir. 1984). A rejection of obviousness must be based on objective evidence, not on conclusory statements. *See In re Lee*, 277 F.3d 1338, 1345, 61 USPQ2d 1430 (Fed. Cir. 2002). While rebuttal evidence in the nature of secondary considerations, such as commercial success, can be relevant to a determination of obviousness, a patent applicant must show that there is a nexus between the rebuttal evidence and the claimed

7

Exhibit 129
Page 002528

invention. *See* MPEP §2144.08 B. "Commercial success is relevant only if it flows from the merits of the *claimed* invention." *See Sjolund v. Musland*, 847 F.2d 1573, 6 USPQ2d 2020 (Fed. Cir. 1988). However, secondary considerations cannot override a clear cut case of obviousness. *See, e.g., Newell Co. v. Kenney Mfg. Co.*, 864 F. 2d 757, 768-69 (Fed. Cir. 1988) (affirming grant of JMOL of obviousness, notwithstanding evidence of commercial success).

Nevertheless, a determination of obviousness requires an "expansive and flexible approach." *KSR Int'l* at 11 (April 30, 2007). In *KSR,* the Supreme Court determined that the rigid application of the teaching-suggestion-motivation to combine test commonly applied by the Federal Circuit was inconsistent with the flexible approach to obviousness outlined in earlier Supreme Court cases such as *Graham v. John Deere.* See *KSR,* 550 U.S. ___, slip op. at 11. Where the possible combinations and permutations are limited, obviousness may be established by "showing that the combination of elements was 'obvious to try.'" *KSR, Int'l,* at 17. "When a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 13 (citing *Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)). "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress ...." *Id.* at 15.

Moreover, the presumption of patent validity is diminished, and Defendants' burden of proof more easily carried, when the invalidating prior art was not before the examiner. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

## VI.    DISCUSSION OF THE PRIOR ART

### The Tyler Article (Exhibit 2)

This reference is an article by Michael Tyler at pages 146-154 of the January 1984 edition of Datamation magazine, entitled *Touch Screens: Big Deal or No Deal?* (Tyler). Tyler discloses that a company called Interactive Images, Inc. had developed a touch-screen system that provided on-screen tools for filling out forms. This company's product was called "Easel." **Tyler**, p. 146, 148. A number of Wall Street firms, including Chemical Bank and Merrill Lynch, were utilizing the Easel system to make it easier and more accurate for their currency traders to fill out trading forms using on-screen tools. **Tyler**, p. 146.

8

Exhibit 129
Page 002529

As described in Tyler, Chemical Bank's implementation of Easel allowed the currency traders to complete currency trading orders by entering information directly on the screen. The right half of the screen displayed a currency trading form that included a number of information fields and labels related to the current transaction including buyer bank, seller bank, currency, exchange rate (in dollars and the foreign currency), broker, bank customer, exchange location, and method of payment. When the user touched one of the fields, the left half of the screen displayed the appropriate tool for entering information into the selected field. For example, if the user touched the "broker" field, the system displayed a menu tool containing a list of brokers. Then, when the user touched the name of the desired broker in the list, that broker's name would be entered into the "broker" field on the right side of the screen. As another example, if the user touched the "exchange rate" field, the system displayed a numeric keypad that could then be used to enter numeric information into the "exchange rate" field. The system also provided an on-screen keyboard that could be used to enter non-standard or rare names. The system allowed the user to complete an entire currency trading transaction directly on the computer screen. **Tyler**, p. 148.

A photograph showing a screen shot of Chemical Bank's Easel system was included in the Tyler article at page 152, and is reproduced below. In this photograph, the labels for fields including the "Rate," "Value," "US Rate," "US Value," "Broker," "Customer," and "Location" fields can be seen, as well as the adjacent information fields which contain the information that was entered regarding the current transaction. The keyboard appearing on the left side of the screen is used to enter information into some fields appearing at the right side of the screen. In addition, at the bottom certain selection buttons are shown, with the one currently selected by the user, the "SERVICE" button, being highlighted to indicate it has been selected.

9

Exhibit 129
Page 002530



## VII.    APPLICATION OF THE PRIOR ART TO THE CLAIMS

It is believed that claims 19 and 21 are anticipated by Tyler, and/or are obvious over Tyler, alone or in combination with other prior art of record and/or the knowledge of one of ordinary skill in the art, as set forth below.

| Limitation of Claim 19 of the `356 Patent | The Prior Art |
|---|---|
| 19. A method for use in a computer having a display comprising the steps of | **Tyler** describes several methods for use in a computer having a touch-screen display. For example, Tyler describes a touch-screen computer terminal called Easel, which is a "hardware/software combination" that includes "a color monitor with a touch-sensitive screen." **Tyler**, p. 146. Tyler describes a method used by Chemical Bank employing the Easel workstation with a computer system. **Tyler**, p. 148. |

Exhibit 129
Page 002531

| | |
|---|---|
| displaying on said display a plurality of information fields, | Tyler describes the display on the Easel computer terminal used by Chemical Bank as having a plurality of information fields; i.e., "[the] right half of the screen lists key information about the current transaction, including buyer bank, seller bank, currency, exchange rate (in dollars and the foreign currency), broker, bank customer, exchange location, and method of payment." **Tyler**, p. 148. Tyler includes a photograph of Chemical Bank's Easel computer terminal showing a display on the terminal of a form having a plurality of fields on the right half of the screen. **Tyler**, p. 152. |
| identifying for each field a kind of information to be inserted therein, | Tyler discloses that each field on Chemical Bank's Easel display screen has a heading indicating the information to be inserted relevant to the current transaction. For example, the headings indicate that the kind of information to be inserted includes "buyer bank, seller bank, currency, exchange rate (in dollars and the foreign currency), broker, bank customer, exchange location, and method of payment." **Tyler**, p. 148. Tyler includes a photograph of Chemical Bank's Easel computer terminal displaying the fields described above. **Tyler**, p. 152. |
| indicating a particular one of said information fields into which information is to be inserted and | Tyler discloses that a user of the Chemical Bank system touches a particular one of the information fields on the right half of its screen into which information is to be inserted. For example, Tyler teaches "[w]hen the trader touches the screen in one of these areas, a list of potentially valid entries or a numeric keypad appears on the left half . . ." **Tyler**, p. 148.<br><br>To the extent the claim requires the *system* to perform the indicating step (e.g., by highlighting a selected information field), it would have been obvious from Tyler's disclosure for the Chemical Bank system to indicate an information field, as claimed, when the user selects the field and the tool is concurrently displayed. Tyler clearly discloses highlighting features on the display selected by the user, such as the "SERVICE" button in its photo, thereby strongly suggesting that its information fields could also be illuminated when touched. **Tyler**, p. 152.[1] It therefore would have been obvious to a skilled artisan that it would be desirable and easy to highlight the information field selected by the user for data entry. Indeed, one skilled in the art would have been motivated to highlight the field selected by the user for the same reason that the "SERVICE" button is highlighted; i.e., to quickly |

---

[1] Requester submits that the buttons of the Chemical Bank system could fairly be considered "information fields" as recited in the claims, since the '365 patent does not distinguish between such analogous objects on its form 30, shown in Figs. 2-10 of the '365 patent.

11

Exhibit 129
Page 002532

| | |
|---|---|
| | and clearly inform the user which function or field has been selected and is currently active.[2]<br><br>Additionally, Tyler expressly teaches the desirability of "indicating" or "highlighting" a field on the display chosen by the user because of the physical limitations on the accuracy of touch screens at the time.  Specifically, Tyler notes that "[u]nless the user sits directly in front of the screen at eye level, the area he thinks he has touched may not be the area he did in fact touch."  **Tyler**, p. 152.  Tyler expressly teaches this is a problem found in the resistive membrane technology used by the applications described in his article.  **Tyler**, pp. 152 and 154.  Thus, Tyler teaches that touch screens are such that a user cannot be certain of what the system concludes he has touched, and demonstrates in the photograph at page 152 that a solution to this problem is to highlight the field selected by the user.  In other words, Tyler identifies a problem with touch screens, thereby providing the motivation to solve the problem, and then itself discloses a solution (i.e., highlighting the selected item or field).  Therefore, one skilled in the art reading Tyler would have understood that the solution is disclosed, or at least would have been motivated to provide highlighting of a selected information field on the Chemical Bank system's display screen. |
| for concurrently displaying a predefined tool associated with said one of said fields, said predefined tool being operable to supply information of the kind identified for said one field, | The Court in *Lucent* interpreted "concurrently displaying" as "displaying at the same time, as by a window overlaying the form." The Court interpreted "predefined tool associated with said one of said fields" as "a tool specified by the system as an appropriate tool for filling in the information called for by that field."  **Clarifying Markman Order**, p. 9.<br><br>Tyler discloses "[w]hen the trader touches the screen in one of these areas [on the right half of the screen], a list of potentially valid entries or a numeric keypad appears on the left half, inviting the user to choose the information needed on the right.  For instance, when the user hits the "broker" cell on the right, a list of brokers appears on the left . . . ."  **Tyler**, p. 148.  As shown in Tyler's photograph, the information fields on the right half are displayed at the same time as the tool (the menu list or the keyboard) associated with the chosen field.  **Tyler**, p. 152. |

---

[2] Requester does not mean to suggest that the active fields of the Chemical Bank application *did not* become highlighted or used some other form of indication, but only that Tyler does not make it explicit that this feature existed in the Chemical Bank system.

Exhibit 129<br>Page 002533

| said tool being selected from a group of predefined tools including a tool adapted to supply an individual entry from a menu of alternatives and at least a tool adapted to allow said user to compose said information, and | The Court in *Lucent* interpreted "a tool adapted to allow said user to compose said information" as "a graphical keyboard tool or a graphical number keypad tool, which allows the user to compose information by pointing to the display keys of that tool." **Clarifying Markman Order**, p. 9.<br><br>Tyler discloses tools having menu alternatives and keyboard tools that allow the user to compose information by touching the screen: "when the user hits the "broker" cell on the right, a list of brokers appears on the left . . . For exchange rates and other numerical data, the user hits the proper cell on the right and then types in the numeric data on the keypad that appears on the left. . . (A QWERTY layout can be called up on the left for entry of nonstandard or rare names – an infrequently traded currency, for example.)" **Tyler**, p. 148. |
| inserting in said one field information that is derived as a result of said user operating said displayed tool. | Tyler discloses that when a trader using the Chemical Bank Easel terminal selects a broker from a list in the tool described above "that information is entered into the system" and further states "an entire transaction can be completed directly on the workstation." **Tyler**, p. 148. Tyler includes a photograph showing the display of information in the fields. **Tyler**, p. 152. |
| **Limitation of Claim 21 of the `356 Patent** | |
| 21. The method set forth in claim 19 wherein the step of displaying said pattern includes the step of displaying one or more of said information fields as a bit-mapped-graphics field. | The Court in *Lucent* interpreted "bit-mapped graphics field" as "a field into which a user is to enter information by writing on a touch sensitive screen using a stylus." **Clarifying Markman Order**, p. 9.<br><br>Tyler discloses entering information by writing on a touch sensitive screen using a stylus. In particular, Tyler discloses the Easel computer terminal (employed in the Chemical Bank system) uses a resistive membrane technology, and "[o]ptical, acoustic, and resistive membrane techniques can accept a finger, a pen, or any other device." **Tyler**, p. 148. |

Exhibit 129
Page 002534

## VIII.   CONCLUSION

A substantial new question of patentability of claims 19 and 21 is raised in view of the Tyler article.

The Requestor respectfully submits that the `356 Patent be reexamined in view of the showing in this Request that a substantial new question of patentability is present.

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

Kenneth L. Cage
Registration No. 26,151

*Reg #33,424 for KLC*

600 13th Street, N.W.
Washington, DC  20005-3096
Phone:  202.756.8000 KLC:MAM/llg
Facsimile:  202.756.8087
**Date:  May 3, 2007**

**Please recognize our Customer No. 20277 as our correspondence address.**

14

Exhibit 129
Page 002535