# Exhibit 29
# to Decl. of John Gartman

1    Alison P. Adema, SBN 149285
     HAHN & ADEMA
2    501 West Broadway, Suite 1600
     San Diego, California 92101-3595
3    Telephone:    (619) 235-2100
     Facsimile:    (619) 235-2101
4
5    *Attorneys for Lucent Technologies Inc.*
6    *Additional counsel listed on the last page*
7
8
9              **UNITED STATES DISTRICT COURT**
10            **SOUTHERN DISTRICT OF CALIFORNIA**
11   LUCENT TECHNOLOGIES INC.,
                                                    Case No. 02-CV-2060 B (CAB)
12                    Plaintiff,                         consolidated with
             v.                                     Case No. 03-CV-0699 B (CAB)
13                                                  Case No. 03-CV-1108 B (CAB)
     GATEWAY, INC., GATEWAY COUNTRY
14   STORES LLC, GATEWAY COMPANIES,
     INC., GATEWAY MANUFACTURING LLC         **LUCENT'S OPPOSITION TO**
15   and COWABUNGA ENTERPRISES, INC.,        **MICROSOFT'S MOTION FOR A NEW**
                                             **TRIAL OR REMITTITUR ON THE**
16                    Defendants,            **GROUP 2 AUDIO PATENTS**
             and
17                                           Date:        July 25, 2007
     MICROSOFT CORPORATION,                  Time:        9:00 A.M.
18                                           Courtroom:   2
                      Intervener.            Judge:       Hon. Rudi M. Brewster
19
     MICROSOFT CORPORATION,
20
                      Plaintiff,
21           v.
22   LUCENT TECHNOLOGIES INC.,
23                    Defendant.
24   LUCENT TECHNOLOGIES INC.,
25                    Plaintiff,
             v.
26
     DELL INC.,
27
                      Defendant.
28

1 of its customers.  (2/1/07 Tr. at 43-44; 2/12/07 Tr. at 138-142; 2/13/07 Tr. at 159-161) Even

2 Microsoft concedes that "when Microsoft and Lucent sat down at the hypothetical negotiation, the

3 parties would have been looking to negotiate a reasonable royalty that allowed Microsoft **and its**

4 **customers** to use Lucent's MP3 patents in Windows Media Player.   (Microsoft Br. at 10; *accord*

5 2/12/07 Tr. at 141:25-142:4)  Against that backdrop, as Mr. Smith testified, there is no reason to

6 expect Lucent to accept less from Microsoft than it would seek from the computer manufacturers

7 directly.  Rather, consistent with Lucent's own licensing practices and Microsoft's liability as an

8 indirect infringer, Lucent is entitled to collect the same royalty from Microsoft as from other jointly

9 liable infringers such as Dell and Gateway — particularly given that Microsoft filed in this case in

10 order to stand in the stead of its customers.  (MX 3 at 51)  Accordingly, there is ample basis for using

11 the infringing computer systems as the royalty base.[12]

12     **E.    The Jury's Damages Verdict Is Wholly Consistent With The Evidence Presented.**

13         **1.    The Jury's Verdict Is Not Facially Inconsistent.**

14     Contrary to Microsoft's contention, the jury's verdict is not inconsistent on its face — rather,

15 it is completely consistent with the evidence and argument presented at trial.  As Microsoft itself

16 admits, the jury adopted Lucent's damages theories in full.  (Microsoft Br. at 17 ("In sum, the jury

17 awarded Lucent the total amount that it requested, $1.53 billion. ); *Id.* at 19 ("[T]he jury rewarded

18 Lucent by giving Lucent every dime it asked for. )).  The jury decided upon a running royalty of

19 0.5% as the appropriate measure of damages — precisely the same running royalty rate proposed by

20 Lucent's licensing expert. (2/1/07 Tr. at 135:8-25).  Simple multiplication confirms that the jury used

21 the $5.64 rate as the basis for its award.  Microsoft admitted Hoeberlein's exhibits to his expert

22 report, identifying 272,705,089 infringing units. (DX 6099 at Exhibit CC).  Multiplying those units

24 _____

25 [12]  Microsoft's assertion that "'joint and several liability' does not apply because Lucent did not sue Dell or other OEMs in Group 2 is meritless. (Microsoft Br. at 15) *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. ); *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (direct infringer need not be party to action for contributory infringement); *Isogon Corp. v. Amdahl Corp.*, No. 97 Civ. 6219(SAS), 1997 WL 759435, at *3 (S.D.N.Y. Dec. 10, 1997); *Upjohn Co. v. Syntro Corp.*, CIV A. No. 89-107-JJF, 1990 WL 79232, at *5 (D. Del. 1990).

1    by $5.64 per unit yields the exact total damages amount awarded by the jury. Thus, it is not

2    "impossible, as Microsoft claims, to definitively determine the basis for the jury's damages award.

3    Rather, the basis for that award is clear and a new trial is not warranted. *See Geosearch, Inc. v.*

4    *Howell Petroleum Corp.*, 819 F.2d 521, 528 (5th Cir. 1987).

5               **2.**    **The Jury's Verdict Is Easily Reconciled With The Trial Record.**

6        The Seventh Amendment guarantees "no fact tried by a jury shall otherwise be re-examined

7    in any Court of the United States except according to the rules of the common law. *Zhang v. Am.*

8    *Gem Seafoods, Inc.*, 339 F.3d 1020, 1038 (9th Cir. 2003). Thus, the Court must accept any

9    reasonable interpretation of the jury's actions and reconcile the jury's findings with the record. *Id.*

10    ("[T]he deference owed to jury verdicts under the Seventh Amendment requires that any reconcilable

11    verdict must stand. ) Accordingly, a court "must attempt to reconcile the jury's findings, by exegesis

12    if necessary, before ordering a new trial, since "it is the duty of the courts to attempt to harmonize

13    the answers, if it is possible under a fair reading of them. *Gallick v. Baltimore & Ohio R.R. Co.*, 372

14    U.S. 108, 119 (1963); *see also Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1283 (10th

15    Cir. 2005) ("If there is any reasonable view of the case which makes the answers consistent, the case

16    must be resolved in that way. ); *In re Hawaii Fed. Asbestos Cases*, 871 F.2d 891, 894 (9th Cir. 1989)

17    (recognizing the duty of the court to reconcile the jury's verdict on any reasonable theory consistent

18    with the evidence).

19        Microsoft does not — and cannot — dispute that the verdict demonstrates the intent of the

20    jury to adopt and follow Lucent's damages theories in full. First, Microsoft fully admits that the jury

21    gave Lucent all of the damages it sought and even admits that the jury did not adopt Microsoft's

22    damages model. (Microsoft Br. at 17). Thus, the only conclusion that can be reached from the

23    verdict is that the jury fully intended to award Lucent the damages it sought in accordance with the

24    evidence presented. Because the jury's intent is clear from the verdict form, any alleged

25    inconsistencies in the verdict can be easily reconciled by the Court in accordance with the jury's

26    intent and the evidence presented at trial. *See Geosearch*, 819 F.2d at 527 ("A federal district court

27

28

1    has latitude to handle special verdicts so as to give effect to the jury's intentions  and "must interpret

2    verdicts in the light of the instructions, evidence and other surrounding circumstances. ).[13]

3         As detailed above, the jury's verdict demonstrates that the jury intended to award Lucent

4    $5.64 per infringing product, regardless of whether one or both patents is infringed.   This is

5    confirmed by the jury's award of a 0.5% running royalty for each patent, consistent with Smith's

6    testimony that Lucent and Microsoft would enter a license at a running royalty rate of 0.5% for the

7    use of the technology, and that the rate should not be further divided by the number of patents.

8    (2/1/06 Tr. at 166:6-25).  The jury could not, consistent with Lucent's damages expert's testimony,

9    have entered $1.53 billion for the '080 patent and $707 million for the '457 patent, as Microsoft now

10   contends.  Lucent's damages expert testified that under Lucent's damages model, Lucent would only

11   seek 0.5% per infringing product, regardless of the number of patents infringed.  Thus, the jury's

12   division of the total award in per-patent amounts was merely an accommodation for the form of the

13   Special Verdict and a result of the jury's intent to ***not*** over-award damages.[14],[15]

---

17   [13] *See also Robert Tyler & Assocs. v. Environmental Dynamics, Inc.*, 119 F.3d 17, 1997 WL 419426,
     at *4-6 (Fed. Cir. 1997) (unpublished) (affirming district court's correction of errors on special
18   verdict form to conform to trial evidence; noting that "District courts are given broad discretion to
     deal with matters such as the meaning of an ambiguous verdict form, since district courts are
19   intimately involved with the mechanics of the jury trial process, matters that an appellate court views
     only through the thick filter of a cold record.  The district court in this case was in a position to assess
20   whether the verdict figures, if transposed, were sensible in light of the evidence and therefore could
     make an informed judgment as to the likelihood that the jurors made an error of transposition.  In the
21   circumstances of this case, we are not prepared to hold that the district court abused its discretion in
     dealing with the problem of the verdict form. ).

22   [14] Indeed, the Court recognized that the proper focus should not be on the division of the damages on
     a per-patent basis — this Court indicated that it did not matter how the jury allocated the damages per
23   patent.  (2/12/2007 In Chambers Tr. at 117:9-11 ("They'll separately award one for one and one for
     the other.  I don't care if they divide it 50/50 or 40/60.  I don't care. )).
24

25   [15] Microsoft cannot be heard to complain about the form of the Special Verdict.  Microsoft was the
     party who demanded that the jury be asked a per-patent damages number.  *See Yeti by Molly, Ltd. v.*
26   *Deckers Outdoor Corp.*, 259 F.3d 1101, 1108-09 (9th Cir. 2001) (rejecting defendants contention of
     error in the special verdict form as waived where the defendant failed to raise them until after the jury
27   rendered its verdict and was discharged); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d
     1322, 1331 (9th Cir. 1995).

1    Moreover, reconciliation of the verdict by the Court consistent with the evidence presented at

2    trial will not reexamine any of the facts considered the jury, and is well within the Court's broad

3    discretion.[16]  The Court should uphold the jury's unambiguous finding that Lucent suffered damages

4    in the amount of $5.64 per infringing product for a total of $1.53 billion.  Ample evidence supports

5    that verdict and the verdict reflects no contrary intent.

6    **F.    The *AT&T* Decision Does Not Require A New Trial.**

7    Microsoft argues that the Supreme Court's ruling in *Microsoft Corp. v. AT&T*, 127 S. Ct.

8    1746 (2007), requires that the jury's verdict be set aside.  While *AT&T* did limit liability for foreign

9    activity under certain circumstances, Lucent disputes that *AT&T* negates Lucent's claim to damages

10   for Microsoft's foreign sales in its entirety.  Putting that aside, however, it is undisputed that *AT&T*

11   has absolutely *no* effect on Lucent's claim to damages for Microsoft's infringing U.S. sales.

12   Moreover, contrary to Microsoft's assertion, the unambiguous trial record enables precise

13   determination of the damages awarded for Microsoft's domestic infringement.

14   Both parties acknowledge that the jury adopted Hoeberlein's damages calculations, which

15   separated U.S. from export sales.  (PX 3128; PX 3136).  Microsoft did not dispute these numbers —

16   to the contrary, Microsoft stipulated to their accuracy.  (2/2/07 Tr. at 69:24-70:20) Under those

17   circumstances, the trial record readily permits the Court to identify the number of infringing units

---

[16] *See, e.g., Robert Tyler & Assocs.*, 1997 WL 419426 at *4-6.  As additional examples, courts have consistently refused to grant a new trial where a losing party claims that the jury erroneously divided the damages between joint tortfeasors in joint-and-several liability cases.  Recognizing that such confusion arises simply from the fact that the form of the special verdict invited the jury to answer separately for each defendant, courts have uniformly rejected subsequent requests for a new trial and instead reconcile the verdict based on the trial record. *See Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571-74 (11th Cir. 1989) (upholding district court's adjustment of the verdict where the jury erroneously divided the total amount of joint-and-several damages among all of the defendants); *Faison v. Nationwide Mortgage Corp.*, 839 F.2d 680, 687-88 (D.C. Cir. 1988); *Aldrich v. Thomson McKinnon Sec., Inc.*, 756 F.2d 243, 248 (2d. Cir. 1985) (finding that the jury response to special interrogatories indicated intent to award a total sum of $175,000 for defendants joint and several liability rather than award of $87,500 against both and stating that the jury should have been asked the amount of damages suffered); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 963-64 (5th Cir. 1981) ("The jury clearly misunderstood the court's instructions and divided the total damages by four . . . .  That such an error occurred is so clear that it is not unlike a clerical error which the court can correct under Fed. R. Civ. P. 60(a). ).

1   attributable to U.S. sales, and the jury's allocation of damages. Accordingly, if this Court deems

2   necessary to reduce the jury's award to only U.S. sales, this Court should reduce the award to

3   $785,088,000, reflecting the amount expressly allocated to U.S. sales using the jury's finding of

4   $5.64 per infringing unit and the number of U.S. infringing sales in evidence at trial. (*See* PX 3128

5   (139.2 million net units sold in U.S.)). No new trial is necessary. *See C.R. Bard, Inc. v. M3Systems,*

6   *Inc.*, 120 F. Supp. 2d 1145, 1148 (N.D. Ill. 2000) ("[W]hen there is a way to separate damages from

7   various activities, damages should be awarded, and no new trial is necessary. ); *see also* MX 6,

8   Order, *Lucent Techs., Inc. v Newbridge Networks Corp.*, Civil Action No. 97-347-JJF (D. Del. May

9   17, 2002) (holding that where the jury's verdict represented the exact amount of damages sought for

10  infringing sales, the court can determine the jury's allocation of damages and adjust the verdict to

11  exclude sums improperly included); *Robert Tyler & Assocs.*, 1997 WL 419426 at *4-6 (noting trial

12  court's broad discretion to assess special verdict in light of trial record).

13       For the same reasons, this Court can identify and confirm the damages awarded by the jury

14  for § 271(f) infringement of Lucent's method claims. As discussed more fully in Lucent's opposition

15  to Microsoft's motion for JMOL, the *AT&T* decision expressly declined to address application of

16  § 271(f) to method claims, thereby leaving intact controlling Federal Circuit case law establishing

17  both that § 271(f) applies to method claims, and that software can constitute a component of a

18  patented invention, as the jury found here. Based on the undisputed sales figures, 62.2 million units

19  of Windows Media Player 10 were found to infringe the asserted method claims. (PX 3130; 2/2/07

20  Tr. at 81:18-82:12) Multiplying those units by $5.64 yields $350,808,000 in damages.[17]

21       Nor is a new trial necessary for alleged prejudice flowing from presentation of Microsoft's

22  foreign sales. First, Microsoft conclusorily claims prejudice by Lucent's alleged "emphasis  on

23  Microsoft's revenue numbers, numbers allegedly doubled by inclusion of foreign sales.  At trial,

24

25  _____

26  [17]  Although the jury also found infringement of WMP11, the parties only presented sales data
    through November 2005 — before WMP11 was introduced.  Accordingly, additional damages
27  resulting from WMP11's infringement of Lucent's method claims — both domestic and export —
    must be determined through an accounting, as Lucent has already requested.

28

1  Microsoft never disputed (and could not reasonably dispute) that it received billions and billions of

2  dollars in revenue based on U.S. sales alone.   Thus, Lucent's references regarding Microsoft's

3  billions in revenue were not dependent on foreign sales.   Microsoft's second claim of prejudice —

4  that the inclusion of foreign revenue unfairly affected the jury's analysis of *Georgia-Pacific* factors

5  number 8 and 11 — is disingenuous.   Neither Lucent's nor Microsoft's expert relied on any

6  discussion of those two particular *Georgia-Pacific* factors.   Regardless, the sales numbers to which

7  Microsoft stipulated establishes that Microsoft sold over one hundred million infringing units ***in the***

8  ***U.S.*** during the damages period.   Thus, even setting foreign sales aside, ample evidence established

9  Microsoft's extensive use of the patented technology in its Windows Media Player and that

10  Microsoft's use was enormously commercially successful.[18]

11  **G.    The Jury's Award Of Damages Is Supported By The Evidence And Was Not**
       **Based on Passion Or Prejudice.**
12

13  Finally, Microsoft asserts that the verdict was based on passion and prejudice rather than

14  reason, fact, and law.   As an initial matter, because Microsoft never objected to Lucent's statements

15  at trial that it now complains "inflamed the jury to hate Microsoft,  it cannot now seek a new trial.

16  *See Socony-Vacuum Oil Co.*, 310 U.S. at 239.   In any event, as discussed above, the jury's award of

17  damages is supported by the evidence presented at trial.   As Lucent's expert testified, the amount of

18  damages reflects the hundreds of millions of infringing products Microsoft sold; its magnitude is

19  driven by the enormous number of infringing sales.   (2/2/07 Tr. at 136:4-10).   The jury did not

20  arbitrarily choose a number in the billions — instead, the size of the jury's award is supported by

21  abundant evidence of applicable licensing and accounting principles, as well as the undisputed

22  number of infringing sales.   Microsoft cannot now complain as to the presentation of its revenues and

23  profitability to the jury just because those revenues and profits were large, where, as here, the trial

24  record fully supports the conclusion that those profits and revenues were derived from the use of

25  _____

26  [18]  Although Microsoft also contends that *KSR* requires a new trial on damages because of *Georgia-
       Pacific* factor 9, this argument is meritless.   As discussed in Section III.A.1, *supra, KSR* does not
27  have the impact Microsoft suggests.   In any event, any attenuated effect *KSR* may have on a damages
       analysis is irrelevant here where neither expert relied specifically on *Georgia-Pacific* factor 9.
28

1    Lucent's patented technology. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*

2    791 F.2d 1356, 1360, 1366 (9th Cir. 1986).

3          **H.    The Jury's Verdict That The Claims Of The '080 Patent Are Not**
              **Invalid Is Not Against The Clear Weight Of The Evidence.**

4

5          In seeking a new trial to revisit the jury's determinations that the 1987 OCF paper fails to

6    anticipate claim 4 of the '080 patent, and that the Low Bit Rate paper fails to anticipate any claim of

7    the '080 patent, Microsoft simply refers to the arguments that it raised in seeking JMOL on the same

8    issues.  As explained in Sections III.H and III.I of Lucent's Opposition To Microsoft's Motion For

9    JMOL the weight of the evidence fully comports with the jury's verdict that Microsoft failed to prove

10   its invalidity theories by clear and convincing evidence.

11         **I.    The Jury's Verdict That The Fast Encoder And CyberLink Encoder Infringe**
              **The Patents-In-Suit Is Not Against The Clear Weight Of The Evidence.**

12         In seeking a new trial to revisit the jury's determinations that the Fast Encoder of Windows

13   Media Player and CyberLink Encoder infringe the patents-in-suit, Microsoft simply incorporates

14   Sections III.E and III.F of its JMOL motion.  As explained in Sections III.J and III.K of Lucent's

15   Opposition To Microsoft's Motion For JMOL, the jury was presented with more than substantial

16   evidence from which it reasonably found infringement.  Based on this record, Microsoft cannot

17   demonstrate that the jury's verdict was against the clear weight of the evidence.

18         **J.    The Jury's Verdict That Microsoft Contributes To The Infringement Of The '080**
              **And '457 Patents Are Is Not Against The Clear Weight Of The Evidence.**

19

20         The jury's verdicts that Microsoft contributes to the infringement of the patents-in-suit are not

21   against the clear weight of the evidence.  In rendering its contributory-infringement verdicts, the jury

22   necessarily found that each accused MP3 codec was not a staple article suitable for substantial non-

23   infringing use.  (MX 3 at 27; *see also* 35 U.S.C. § 271(c))  Lucent elicited uncontroverted evidence

24   that supports the jury verdicts: *e.g.*, testimony that computer manufacturers install the accused MP3

25   codecs into the computers that they sell, that there is no other use for those MP3 codecs, and that

26   operation of those MP3 codecs on such computers necessarily infringes.  (*See, e.g.*, 1/30/07 Tr. at

27   126-27)  Thus, Microsoft's motion for a new trial is not supported by evidence showing that any

28   accused MP3 codec has any substantial noninfringing use.

1    Attempting to divert this Court's attention from this fact, Microsoft notes that Windows

2    Media Player and Microsoft Windows incorporate other non-related, software functionalities that do

3    not infringe Lucent's patents. (Microsoft Br. at 21) But it would "violate the 'logic of the patent

4    laws' to allow [Microsoft] to avoid liability for contributory infringement by simply adding . . .

5    noninfringing function[s] to a product that practices the patents-in-suit. *Philips Elecs. N. Am. Corp.*

6    *v. Contec Corp.*, 411 F. Supp. 2d 470, 476 (D. Del. 2006). As such, Microsoft cannot contend that

7    the accused MP3 codecs have substantial noninfringing uses on the basis of their being packaged in a

8    product that contains "separate and separable methods of programming . . . , only [some] of which

9    infringe[] Lucent's patents. *See id.* at 476-77 & nn. 5-6. Accordingly, because the accused MP3

10   codecs incorporated into Windows Media Player have no substantial noninfringing uses, Microsoft is

11   not entitled to a new trial on contributory infringement.

12        Nor is Microsoft entitled to a new trial based on *AT&T*. Even if the Supreme Court's *AT&T*

13   decision held that software could never constitute a "component under § 271(f), which it expressly

14   does not, the Court's interpretation of "component in § 271(f) in that case does not control the

15   interpretation of "component in § 271(c). Contrary to Microsoft's assertions that the *AT&T* decision

16   implicitly modified the extent of contributory infringement under 35 U.S.C. § 271(c), (Microsoft Br.

17   at 21), the Supreme Court repeatedly restricted its holding in *AT&T* to considerations of whether the

18   software in question qualified as a "'component' under § 271(f) and refrained from any discussion

19   of § 271(c). *See, e.g., AT&T* at 7-9, 12. Not only does the opinion fail to engage in any analysis of

20   § 271(c), but the Supreme Court's interpretation of "component in § 271(f) depends on the

21   "combination language in that section — language that is entirely absent from § 271(c). *See, e.g.,*

22   *id.* at 2 ("The provision [§ 271(f)] thus applies only to 'such components' ***as are combined*** to form

23   the "patented invention at issue. ). Furthermore, even if the court were to extend the interpretation

24   of "component in § 271(f) to § 271(c), which it should not do for the reasons stated above, a

25   reasonable jury could still find that Microsoft contributorily infringes both patents-in-suit because

26   under § 271(c), both the accused software itself and Microsoft's "golden master disks with that

27   software also constitute "a material or apparatus for use in practicing a patented process.

28

1    DATED: June 1, 2007            BY_____s/Alison P. Adema_____

2                                      John M. Desmarais (admitted *pro hac vice*)
                                     Robert A. Appleby (admitted *pro hac vice*)

3                                      KIRKLAND & ELLIS LLP
4                                      153 East 53rd Street
                                     New York, New York 10022
5                                      Telephone: (212)446-4800
                                     Facsimile: (212)446-4900

6

7                                      Alison P. Adema, SBN 149285
                                     HAHN & ADEMA
8                                      501 West Broadway, Suite 1600
                                     San Diego, California 92101-3595
9                                      Telephone: (619) 235-2100
                                     Facsimile: (619) 235-2101

10

11                                      Attorneys for *Lucent Technologies Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LUCENT'S OPPOSITION TO MICROSOFT'S MOTION FOR A NEW TRIAL ON THE GROUP 2 AUDIO PATENTS      26      Case Nos. 02-CV-2060-B (CAB) 03-CV-0699-B (CAB), and 03-CV-1108-B (CAB)

EXHIBIT 29 PAGE 433