1   David A. Hahn (SBN 125784)
    HAHN & ADEMA
2   501 West Broadway, Suite 1600
    San Diego, California 92101-3595
3   Telephone: (619) 235-2100
    Facsimile: (619) 235-2101
4

5   *Attorney for Lucent Technologies Inc. and Multimedia Patent Trust*
    *(Additional counsel listed on the last page)*

6

7

8                    **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  LUCENT TECHNOLOGIES INC. and          Case No. 07-CV-2000-H (CAB)
    MULTIMEDIA PATENT TRUST,              consisting of matters severed from consolidated
11                                        cases:
                                          Case No. 02-CV-2060-B (CAB)
12        Plaintiffs and Counterclaim-defendants,   Case No. 03-CV-0699-B (CAB)
                                          Case No. 03-CV-1108-B (CAB)
13        v.

14  GATEWAY, INC. AND GATEWAY
    COUNTRY STORES LLC, GATEWAY
15  COMPANIES, INC., GATEWAY             **PLAINTIFFS' PROPOSED JURY
    MANUFACTURING LLC and COWABUNGA      INSTRUCTIONS**
16  ENTERPRISES, INC.,

17        Defendants and Counter-claimants,    Date:        February 20, 2008
                                               Time:        9:00 am
18  and                                        Courtroom:   13
                                               Judge:       Hon. Marilyn L. Huff
19  MICROSOFT CORPORATION,

20        Intervener and Counter-claimant,

21  MICROSOFT CORPORATION,

22        Plaintiff and Counter-defendant,

23  v.

24  LUCENT TECHNOLOGIES, INC. and
    MULTIMEDIA PATENT TRUST,
25
          Defendants and Counter-claimants,
26

27

28  PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LUCENT TECHNOLOGIES, INC. and
MULTIMEDIA PATENT TRUST,

      Plaintiffs and Counterclaim-defendants,

v.

DELL INC.,

                Defendant.

PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Case No. 07-CV-2000-H (CAB)
consisting of matters severed from consolidated cases:
Case No. 02-CV-2060-B (CAB), Case No. 03-CV-0699-B (CAB),
and Case No. 03-CV-1108-B (CAB)

1    Plaintiffs Lucent Technologies Inc. and Multimedia Patent Trust hereby submit the following

2  proposed jury instructions in the above captioned matter.

3

4  Dated: February 19, 2008

                                          By:       s/David A. Hahn
5                                                David A. Hahn, SBN 125784
                                                 HAHN & ADEMA
6                                                501 West Broadway, Suite 1600
                                                 San Diego, California  92101-3595
7                                                Telephone:  (619) 235-2100
                                                 Facsimile:  (619) 235-2101
8

9                                                John M. Desmarais (admitted pro hac vice)
                                                 Robert A. Appleby (admitted pro hac vice)
10                                               Paul A. Bondor (admitted pro hac vice)
                                                 KIRKLAND & ELLIS LLP
11                                               153 East 53rd Street
                                                 New York, New York  10022
12                                               Telephone:  (212) 446-4800
                                                 Facsimile:  (212) 446-4900
13

14                                               Attorneys for Lucent Technologies Inc. and
                                                 Multimedia Patent Trust
15

16

17

18

19

20

21

22

23

24

25

26

27

28  PLAINTIFFS' PROPOSED JURY INSTRUCTIONS                          Case No. 07-CV-2000-H (CAB)
                                          1              consisting of matters severed from consolidated cases:
                                                        Case No. 02-CV-2060-B (CAB), Case No. 03-CV-0699-B (CAB),
                                                        and Case No. 03-CV-1108-B (CAB)

# JURY INSTRUCTION NO. 1

## DUTY OF JURY

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case.  A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

---

[1] Jury Instruction No. 1 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

1

**JURY INSTRUCTION NO. 2**

2

**WHAT IS EVIDENCE**

3

The evidence from which you are to decide what the facts are consists of:

4

(1) the sworn testimony of any witness;

5

(2) the exhibits which have been received into evidence; and

6

(3) any facts to which the lawyers have agreed or stipulated.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2 Jury Instruction No. 2 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.)

27

(D.I. 365).

28

1

**JURY INSTRUCTION NO. 3**

2

**WHAT IS NOT EVIDENCE**

3      In reaching your verdict, you may consider only the testimony and exhibits received into

4  evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts

5  are.  I will list them for you:

6      (1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.

7  What they have said in their opening statements, closing arguments, and at other times is intended to

8  help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from

9  the way the lawyers have stated them, your memory of them controls.

10      (2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their

11  clients to object when they believe a question is improper under the rules of evidence.  You should

12  not be influenced by the objection or by the court's ruling on it.

13      (3) Testimony that has been excluded or stricken, or that you have been instructed to

14  disregard, is not evidence and must not be considered.  In addition some testimony and exhibits have

15  been received only for a limited purpose; where I have given a limiting instruction, you must follow

16  it.

17      (4) Anything you may have seen or heard when the court was not in session is not evidence.

18  You are to decide the case solely on the evidence received at the trial.

19

20

21

22

23

24

25

26  [3] Jury Instruction No. 3 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.)

27  (D.I. 365).

28

**JURY INSTRUCTION NO. 4**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Here is an example of how circumstantial evidence might be distinguished from direct evidence.  If a witness testified that they were out in rain or saw rain from a window while indoors, that testimony would be considered direct evidence that it was raining in a specified place.  However, if a witness testified that they had gone underground to catch a train when the weather was dry, but while on the train, noticed passengers boarding at one station after another wearing wet clothes and carrying wet umbrellas, their testimony would constitute circumstantial evidence that it was raining in the area.

---

[4] Modified from Jury Instruction No. 5 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

1

2

**JURY INSTRUCTION NO. 5**

**OPINION TESTIMONY AND EXPERT WITNESSES**

3
4
5
6
7

     You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

5 Jury Instruction No. 6 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 6**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not depend on the number of witnesses who testify.

---

[6] Jury Instruction No. 6 from *Gen-Probe Inc. v. Vysis, Inc.*, 99-CV-2668 H (S.D. Cal.) (D.I. 445).

1

2 **JURY INSTRUCTION NO. 7**

3 ***DEPOSITION TESTIMONY***

4        During the trial, certain testimony was presented to you by the reading of a deposition

5 transcript or the playing of videotaped excerpts from a deposition.  This testimony is entitled to the

6 same consideration you would give it had the witness personally appeared in court.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 [7] Jury Instruction No. 23 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.)

27 (D.I. 1168).

28

**JURY INSTRUCTION NO. 8**

**NUMBER OF WITNESSES**

One more point about witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[8] Jury Instruction No. 24 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 9**

**CHARTS AND SUMMARIES NOT IN EVIDENCE**

Certain demonstrative exhibits, charts and summaries have not been received in evidence. These demonstrative exhibits have been shown to you in order to help explain the contents of books, records, documents, or other evidence or the testimony of a witness.   They are not themselves evidence or proof of any facts.   If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[9] Jury Instruction No. 7 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 10**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain demonstrative exhibits, charts and summaries have been received into evidence to illustrate evidence brought out in the trial.  Such demonstrative exhibits, charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[10] Jury Instruction No. 8 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 11**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

---

[11] Jury Instruction No. 9 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 12**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that it is highly probable that the claim or affirmative defense is true.  The clear and convincing evidence standard is a heavier burden than the preponderance of the evidence standard.

You should base your decision on all of the evidence, regardless of which party presented it.

---

[12] Jury Instruction No. 10 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 13**

**SUMMARY OF ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

(1) Whether Multimedia Patent Trust has proved by a preponderance of the evidence that Microsoft has directly or indirectly infringed claim 12 of the Haskell '226 patent.

(2) Whether Microsoft has proved by clear and convincing evidence that claim 12 of the Haskell '226 patent is invalid.

(3) If you find that Microsoft has infringed claim 12 of the Haskell '226 patent and that that claim is valid, what amount of damages has Multimedia Patent Trust proved by a preponderance of the evidence.

(4) Whether Microsoft had a reasonable expectation that they would be granted a sublicense to the Haskell '226 patent by MPEG LA, and whether Lucent tortiously interfered with that reasonable expectation.

(5) Whether Lucent has proved by a preponderance of the evidence that Dell has directly or indirectly infringed claim 1, 2, or 3 of the Fleming '759 patent.

(6) Whether Dell has proved by clear and convincing evidence that claim 1, 2, or 3 of the Fleming '759 patent is invalid.

(7) If you find that Dell has infringed any valid claim of the Fleming '759 patent, what amount of damages has Lucent proved by a preponderance of the evidence.

(8) Whether Lucent has proved by a preponderance of the evidence that Microsoft and/or Dell has indirectly infringed claim 19 or 21 of the Day '356 patent.

(9) Whether Dell and/or Microsoft has proved by clear and convincing evidence that claim 19 or 21 of the Day '356 patent is invalid.

---

[13] Adapted from Jury Instruction No. 26 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168) and Jury Instruction No. 12 from *Gen-Probe Inc. v. Vysis, Inc.*, 99-CV-2668 H (S.D. Cal.) (D.I. 445).

(10)     If you find that Dell and/or Microsoft has infringed any valid claim of the Day '356 patent, what amount of damages has Lucent proved by a preponderance of the evidence.

(11)     Whether Lucent has proved by a preponderance of the evidence that Dell has directly or indirectly infringed claim 1, 3, 4, 6, 12, 39, 40, 41, 43, or 46 of the Agulnick '295 patent, and/or whether Lucent has proved by a preponderance of the evidence that Microsoft has indirectly infringed claim 1, 3, 4, 6, 12, 39, 40, 41, 43, or 46 of the Agulnick '295 patent.

(12)     Whether Microsoft and/or Dell has proved by clear and convincing evidence that claim 1, 3, 4, 6, 12, 39, 40, 41, 43, or 46 of the Agulnick '295 patent is invalid.

(13)     If you find that Microsoft and/or Dell has infringed any valid claim of the Agulnick '295 patent, what amount of damages has Lucent proved by a preponderance of the evidence.

**JURY INSTRUCTION NO. 14**

**THE CLAIMS OF THE PATENTS**

Before you decide whether or not Microsoft and/or Dell have infringed any of the asserted patent claims or whether or not the patents at issue are valid, you will have to understand the patent "claims."  The patent claims are numbered sentences at the end of the patent.  The patent claims involved here for each patent are listed in the previous instruction.  The patents are in evidence as Plaintiffs' Exhibits 1, 2, 3, and 5.  The claims describe the invention made by the inventor(s) and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products, such as machines or chemical compounds, or they may describe methods or processes for making or using a product.

Claims are usually divided into parts or steps, called "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate element of the claim

Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the asserted claims must be considered individually, and to prove infringement for a particular patent, Lucent and/or Multimedia Patent Trust need only establish by a preponderance of the evidence that at least one claim of the patent is infringed.

---

[14] Adapted from Jury Instruction No. 27 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168) and Jury Instruction No. 14 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 15**

**INTERPRETATION OF THE CLAIMS OF THE PATENTS**

It is my job as the judge to provide you the meaning of the claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any of the asserted claims is infringed and whether any of those claims is invalid.  I am providing you the claim construction charts for each of the patents in suit, Plaintiffs' Exhibits 6, 7, 11, and 12.  You will note that each claim construction chart lists in the left of two columns the verbatim language of claims at issue in this case.  In the right column is presented the identical claim and each element which is re-written somewhat so as to translate certain words or phrases which you might find difficult to understand.  The wording of all claim language in the right column is intended to as clearly as possible re-state certain technical words and phrases in language which you may find easier to understand, and thus to apply in this case.  You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

---

[15] Adapted from Jury Instruction No. 27 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168) and Jury Instruction No. 14 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 16**

**CLAIMS USING THE WORD "COMPRISING"**

Several of the claims at issue in this case use the word "comprising" before reciting some of the elements of the claims.  "Comprising" means "includes, but is not limited to."  A claim that uses the word "comprising" is not limited to the products or methods having only the elements or steps that are recited in the claim, but also covers products or methods that add additional elements or steps.

---

[16] Adapted from Jury Instruction No. 31 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

1

2

**JURY INSTRUCTION NO. 17**

**MEANS-PLUS-FUNCTION CLAIMS**

3      Several of the claims at issue in this case have elements that use the phrase "means for" or

4 similar language, followed by the description of some function that must be performed.

5      This type of element has a special meaning in patent law. It is called a "means-plus-

6 function" requirement. It covers a structure or a set of structures that performs that function and that

7 is either identical or equivalent to the structure described in the patent for performing that function.

8 The issue of whether two structures are identical or equivalent is for you to decide. I will explain to

9 you later how to determine whether two structures or two sets of structures are equivalent to another.

10 For purposes of this case, I have construed the function and corresponding structure of each means-

11 plus-function element. In the claim construction charts I am providing to you, I have identified the

12 structures described in the patent. You should apply my constructions for the means-plus-function

13 elements as you would my construction of any other claim term.

14

15

16

17

18

19

20

21

22

23

24

25

26 [17] Adapted and modified from Instruction No. 2.3a of the Federal Circuit Bar Association's Model

27 Patent Jury Instructions (last edited Jan. 12, 2008).

28

1

2

**JURY INSTRUCTION NO. 18**

**INFRINGEMENT – GENERAL**

3   I will now instruct you as to the rules you must follow when deciding whether Lucent and

4   Multimedia Patent Trust have proven that Microsoft and Dell infringed any of the claims that are at

5   issue in this case.

6   Patent law gives the owner of a valid patent the right to exclude others from importing,

7   making, using, offering to sell, or selling a patented invention within the United States during the

8   term of the patent. Any person or business entity that has engaged in any of those acts without the

9   patent owner's permission infringes the patent.

10   A patent may be infringed directly or indirectly. Direct infringement results if the accused

11   product or method is covered by at least one claim of the patent. Indirect infringement results if the

12   defendant induces or contributes to the infringement of a patent by another person or business entity.

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [18] Adapted from Jury Instruction No. 29 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B

27   (S.D. Cal.) (D.I. 1168).

28

**JURY INSTRUCTION NO. 19**

**INFRINGEMENT OF DEPENDENT CLAIMS**

There are two different types of claims in the patents. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of any claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, claims 19 of the Day '356 patent is an independent claim and recites several elements. Claim 21 of the Day '356 patent is a dependent claim that refers to claim 19 and includes an additional element. Claim 21 requires each of the elements of claim 19, as well as the additional element recited in claim 21 itself. Consequently, if you found that claim 19 of the Day '356 patent is not infringed, then you cannot find that claim 21 of the Day '356 patent is infringed.

---

[19] Adapted from Jury Instruction No. 30 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 20**

**LITERAL INFRINGEMENT**

In order to literally infringe a patent claim, a product or method must include every element of the claim. A claim element is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it. If the accused product or method omits even a single structure or step recited in a claim, then you must find that the accused product or method does not literally infringe that claim. You must consider each of the patent claims separately.

---

[20] Adapted from Jury Instruction No. 32 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 21**

**LITERAL INFRINGEMENT OF A MEANS-PLUS-FUNCTION CLAIM**

As I have previously explained, several of the claims at issue in this case include elements that are in means-plus-function form.

A product meets the means-plus-function requirements of the claims if two conditions are met: (1) it has a structure that performs the identical function recited in the claim and (2) that structure is either identical or equivalent to the structure that I have defined as performing the function. If the product does not have any structure that performs the specific function recited in the claim, the means-plus-function requirement is not met, and the product does not literally infringe the claim. Alternatively, if the product has a structure that performs the function recited in the claim but that structure is not either identical or equivalent to the structure that I defined to you as being described in the patent and performing this function, the product does not literally infringe. Determination of structural equivalence does not require a component-by-component analysis of the structure corresponding to the claimed function. The individual components of the corresponding structure are not claim elements. Rather, you should consider whether the structure in the accused product for performing the function is equivalent to the overall structure I have identified in the claim construction.

A structure is equivalent to the structure I have defined as being described in the patent if a person having an ordinary level of skill in the field of technology of the patent would have considered the differences between them to be insubstantial at the time the patent issued. In deciding whether the differences would be "insubstantial," you may consider whether the structures work in substantially the same way to achieve substantially the same result. You may also consider whether, at the time the patent issued, a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures.

---

[21] Adapted and modified from Instruction No. 3.1b of the Federal Circuit Bar Association's Model Patent Jury Instructions (last edited Jan. 12, 2008); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999).

**JURY INSTRUCTION NO. 22**

**INDIRECT INFRINGEMENT**

**GENERAL**

In addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. As I explained to you a few minutes ago, in addition to the direct infringement allegations in this case, Lucent and Multimedia Patent Trust also allege that Microsoft and Dell indirectly infringe some of the patents-in-suit. Lucent and Multimedia Patent Trust bear the burden of proving indirect infringement by a preponderance of the evidence.

There are two types of indirect infringement that are at issue in this case. One type of indirect infringement is inducing infringement. The act of encouraging or inducing others to infringe a patent in the United States is called "inducing infringement." A second type of indirect infringement is contributory infringement. The act of contributing to the infringement in the United States of others by, for example, supplying them with components used in the patented invention is called "contributory infringement." I will explain these two types of indirect infringement in subsequent instructions.

---

[22] Adapted from Jury Instruction No. 36 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

1

2

3
### JURY INSTRUCTION NO. 23
### INDIRECT INFRINGEMENT
### INDUCING PATENT INFRINGEMENT

4       Inducement to infringe requires someone purposefully urging or encouraging another to

5 infringe a patent – inducement to infringe cannot occur unintentionally.  This is different from direct

6 infringement or contributory infringement, which can occur without any intent to infringe.  To be

7 liable for inducement to infringe, the accused inducer must have known of the patent and actively

8 and knowingly aided and abetted another person to make, use, or sell a product or process in a

9 manner that you, the jury, find infringes the asserted patent claims.  For example, an accused inducer

10 may be liable for inducing infringement if, with knowledge of the patent, it provided instructions or

11 directions to perform an act that it knew to be infringing through labels, advertising or other

12 materials.

13       Lucent and Multimedia Patent Trust assert that Microsoft and/or Dell induced patent

14 infringement.  A plaintiff must prove four things by a preponderance of the evidence to show

15 inducement to infringe:

16       1.     Defendant intended to encourage, instruct, or aid a person in the act(s) which infringe

17 the patent.

18       2.     At the time of the encouragement, instruction or aid, defendant knew of the patent.

19       3.     Defendant knew or should have known that its encouragement, instruction, or aid to

20 the person or entity would cause the direct infringement of the patent.

21       4.     The person or entity infringed the patent.

22       All four of these things must be proven by either direct or circumstantial evidence before you

23 may find that Microsoft or Dell induced patent infringement.

24

25

26 [23] Adapted from Jury Instruction No. 37 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B

27 (S.D. Cal.) (D.I. 1168).

28

**JURY INSTRUCTION NO. 24**

**INDIRECT INFRINGEMENT**

**CONTRIBUTORY PATENT INFRINGEMENT**

Contributory infringement can occur when a supplier provides a part, or a component, to another for use in a patented product or machine, or in a patented method. In order for there to be contributory infringement, the person or entity who received the component must infringe the patent. The component must also have certain characteristics:

1. The component must be a material part of the invention.

2. The component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use.

3. The component must not have a substantial use that does not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

In this case, Lucent and Multimedia Patent Trust assert that Microsoft and/or Dell contribute to infringement. To establish that a defendant has contributorily infringed, a plaintiff must show five things by a preponderance of the evidence.

1. Defendant knew of the patent.

2. Defendant sold or supplied a material part of the claimed invention.

3. Defendant knew that the part was especially made for use in a manner that infringes the patent claims.

4. The part is not a staple or commodity article.

5. The component part was actually used in a manner that you find infringes the patent.

Each of these things may be proven by direct or circumstantial evidence.

---

[24] Adapted from Jury Instruction No. 39 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 25**

**INFRINGEMENT BY SUPPLYING COMPONENTS OF A PATENTED INVENTION**

A person may infringe a patent if he or she supplies a component from the United States knowing that the component will be used with other components overseas and assembled into an infringing product.  Under these circumstances, there are two ways in which a plaintiff can prove that a defendant has infringed plaintiff's patents.

In the first way, plaintiff must prove by a preponderance of the evidence that there was inducement to infringe as follows:

1.      Defendant intended to supply or to cause to be supplied in or from the United States all or a substantial portion of the components of a patented invention of the patent;

2.      The components were uncombined in whole or in part when they were supplied;

3.      At the time defendant supplied or caused to be supplied the components, the defendant knew of the patent; and

4.      Defendant knew or should have known that the combination or use of such components outside of the United States would cause the direct infringement of the patent.

Or in the second way, the patent owner must prove by a preponderance of the evidence that there was contributory infringement as follows:

1.      The party accused of infringement supplied or caused to be supplied in or from the United States any component of a patented invention;

2.      At least one supplied component was especially made or adapted for use in the invention and is not a staple article suitable for substantial non-infringing use;

3.      The components were uncombined in whole or in part when they were supplied;

4.      The accused infringer knew of the patents at the time of its conduct; and

---

[25] Adapted from Jury Instruction No. 38 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

5.      The accused infringer knew or intended that the components would be combined outside the United States in a manner that would infringe the patent.  The patent owner, however, does not have to prove that the components were actually combined, only that the infringer intended for them to be combined.

**JURY INSTRUCTION NO. 26**

**INVALIDITY**

Microsoft and Dell contend that the asserted claims are invalid. The patents in this case are presumed to be valid because the United States Patent and Trademark Office has determined that the inventors have satisfied the legal requirements for obtaining a patent. Despite this presumption of validity, claims of an issued patent may be found to be invalid.

Microsoft and Dell have the burden of proving by clear and convincing evidence that a claim is invalid.

Microsoft and/or Dell contend that the asserted patent claims are invalid for one or more of the following reasons:

1.      The inventions claimed in the patents were known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention by the applicant for the patent;

2.      The inventions claimed in the patents were patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the effective filing date of the application for the patent in the United States;

3.      The inventions claimed in the patent were described in a patent granted on an application for a patent filed by another in the United States before the invention by the applicant for the patent;

4.      The inventions claimed in the patents were made in this country by another inventor who had not abandoned, suppressed or concealed that invention.

5.      The claimed inventions of the patents are invalid as obvious;

I will now provide you with further instructions concerning these reasons.

---

[26] Adapted from Jury Instruction No. 40 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 27**

**PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before it. That which came before is referred to as the "prior art."

Prior art includes any of the following items received into evidence during trial:

1.     Any product or method that was publicly known or used by others in the United States before the patented inventions were made;

2.     Patents that issued more than one year before the filing date of the patents or before the inventions were made by named inventors;

3.     Printed publications that were publicly accessible to interested persons more than one year before the effective filing date of the patents or before the inventions were made;

4.     Any product or method that was in public use or on sale in the United States more than one year before the effective filing date of the patents;

5.     Any United States patent that was granted on an application filed in the United States prior to the date the inventions were made; and

6.     Any invention that was made or used by anyone in the United States before the named inventors invented the patented product or method where the product or method was not abandoned, suppressed, or concealed.

---

[27] Adapted from Jury Instruction No. 41 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 28**

**PRIOR ART – DATE OF INVENTION**

Some of the different categories of prior art depend on the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date. There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as "constructive reduction to practice."

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims, unless the art is a printed publication that was publicly accessible more than one year before the filing date of the patent.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims, unless the art is a printed publication that was publicly accessible more than one year before the filing date of the patent.

---

[28] Adapted from Jury Instruction No. 42 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

1      Remember, reduction to practice occurs either as of the filing of the patent application or

2   when the invention was actually made and was shown to work for its intended purpose.  Reasonable

3   diligence means that the inventor worked continuously on reducing the invention to practice.

4   Interruptions necessitated by the everyday problems and obligations of the inventor or others

5   working with him or her do not prevent a finding of diligence.

**JURY INSTRUCTION NO. 29**

**ANTICIPATION**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, a defendant must present clear and convincing evidence showing that the claimed invention is not new.

In this case, Microsoft and Dell contend that certain claims of the patents-in-suit patent are anticipated.  To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.

In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular reference.  In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art.  Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

---

[29] Adapted from Jury Instruction No. 45 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that Microsoft and Dell contend apply in this case.  I will now instruct you about those.

**JURY INSTRUCTION NO. 30**

**PRIOR PUBLIC KNOWLEDGE**

Microsoft and Dell contend that certain asserted claims are anticipated because the inventions defined in those claims were publicly known in the United States before they were invented by the inventors.

A patent claim is invalid if the invention recited in that claim was publicly known by others in the United States before the patent applicant invented it. Private or secret knowledge does not invalidate a patent claim. Similarly, if something is only publicly known outside of the United States, this is not invalidating public knowledge.

---

[30] Adapted from Jury Instruction No. 46 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 31**

**PRIOR PUBLIC USE**

Microsoft and Dell contend that certain asserted claims are anticipated because the inventions defined in those claims were publicly used in the United States before they were invented by the patentee, and also that those inventions were publicly used in the United States more than one year before the effective filing date of each U.S. patent application.

A patent claim is invalid if the invention defined by that claim was publicly used by someone other than the patentee in the United States before it was invented by the patentee. A patent claim is also invalid if it was publicly used by anyone in the United States more than one year before the patentee filed his patent application.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Secret use by a third party is not an invalidating public use. If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose, or if the displayed use is not commercially operable, then such a use does not invalidate the claim.

---

[31] Adapted and Modified from Jury Instruction No. 47 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168); *Harrington Mfg. v. Powell Mfg.*, 815 F.2d 1478, 1481 (Fed. Cir. 1986).

1
2

**JURY INSTRUCTION NO. 32**

**PRINTED PUBLICATION**

3      Microsoft and Dell contend that certain asserted claims are anticipated because the inventions

4  defined in those claims were described in a printed publication more than one year before the

5  patentee filed the U.S. patent application, and also because the inventions defined in those claims

6  were described in a printed publication before the patentee invented the invention.

7      A patent claim is invalid if the invention defined by that claim was described in a printed

8  publication before it was invented by the patentee.  A patent claim is also invalid if the invention

9  defined by that claim was described in a printed publication more than one year prior to the filing

10  date of the U.S. application.

11      A printed publication must be reasonably accessible to those members of the public who

12  would be interested in its contents.  It is not necessary that the printed publication be available to

13  every member of the public.  The information must, however, have been maintained in some form,

14  such as printed pages, typewritten pages, magnetic tape, microfilm, photographs or photocopies.  In

15  the case of a document purportedly available in a library, a party must show that (1) the library was

16  accessible to the public; (2) the document was catalogued or indexed in a meaningful way so that an

17  interested member of the public not knowing of its existence could easily locate it; and (3) the

18  document was shelved in the library.

19      For a printed publication to anticipate a patent claim, it must, when read by a person of

20  ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the

21  reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice

22  the invention without undue experimentation.  In determining whether the disclosure is enabling,

23  you should take into account what would have been within the knowledge of a person of ordinary

24

25  [32] Adapted and modified from Jury Instruction No. 48 from *Lucent Tech. Inc. v. Gateway, Inc.*, No.
    02-CV-2060 B (S.D. Cal.) (D.I. 1168); *In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A 1978); *Northern*
26  *Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn*, 890 F.2d
27  1158, 1160 (Fed. Cir. 1989).

28

skill in the art at the time the inventions of the patents were made, and you may consider evidence that sheds light on the knowledge such a person would have had.

1

2

**JURY INSTRUCTION NO. 33**

**PRIOR U.S. PATENT APPLICATION**

3      Microsoft and Dell contend that certain asserted claims were anticipated because the

4 inventions defined in those claims were described in United States patents, and because the

5 application for the anticipating patent was filed before the patentee made his invention claimed in

6 the patents-in-suit.

7      A claim of a patent would be invalid if the invention defined by the claim was described in a

8 United States patent issued on a patent application filed in the United States by another person

9 before the invention was made by the patentee.

10      To show anticipation of a patent-in-suit, defendants must show by clear and convincing

11 evidence that the application for the anticipating patent described each and every element of an

12 asserted claim and that the specification, claims, and/or drawings of the application for the

13 anticipating patent was filed in the United States before the date of invention of the patent-in-suit.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[33] Adapted from Jury Instruction No. 49 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 34**

**PRIOR INVENTION**

Microsoft and Dell contend that certain asserted claims are anticipated because the invention defined in those claims was invented by another person before a patentee invented his invention claimed in a patent-in-suit.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee.

A defendant must show by clear and convincing evidence either that before the patentee invented his invention, a third party reduced to practice a product or method that included all of the elements of the an asserted claim, or that a third party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, a defendant must show that the third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

[34] Adapted from Jury Instruction No. 50 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 35**

**OBVIOUSNESS**

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Microsoft and Dell have the burden of proving by clear and convincing evidence that one or more claims of either patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

1.      What is the scope and content of the prior art?

2.      What differences, if any, are there between the invention of the claims of the patent and the prior art?

3.      What was the level of ordinary skill in the art at the time the invention was made?

4.      Are there any objective secondary indications of non-obviousness?

---

[35] Adapted and modified from Jury Instruction No. 51 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1731 (2007).

1    Against this background, you must decide whether or not the invention covered by the patent

2   claims would have been obvious.

3    I will now describe in more detail the specific determinations you must make in deciding

4   whether or not the claimed invention would have been obvious.

5   **The Scope And Content Of The Prior Art**

6    A prior art reference must be considered with the knowledge of one of ordinary skill in the

7   pertinent art.  A prior art reference need not explain every detail since it is speaking to those skilled

8   in the art.  Thus, in order to render an invention obvious, the asserted prior art must be sufficient to

9   enable a person of ordinary skill, with his/her background, to practice the invention.

10    Determining the scope and content of the prior art means that you should determine what is

11   disclosed in the prior art relied on by Microsoft and Dell.  You must decide whether this prior art

12   was reasonably relevant to the particular problem the inventor faced in making the invention covered

13   by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also

14   prior art from other fields that a person of ordinary skill would look to when attempting to solve the

15   problem.

16   **Differences Between The Invention Of The Claims And The Prior Art**

17    In determining the differences between the invention covered by the patent claims and the

18   prior art, you should not look at the individual differences in isolation.  You must consider the

19   claimed invention as a whole and determine whether or not it would have been obvious in light of all

20   of the prior art.

21    In deciding whether to combine what is described in various items of prior art, it can be

22   important to identify a reason that would have prompted a person of ordinary skill in the relevant

23   field to combine the elements in the way the claimed new invention does.  The motivation or

24   suggestion to combine the teachings of different prior art references may be found either explicitly

25   or implicitly in the references themselves or in the knowledge generally available to one of ordinary

26   skill in the art.  You should also consider whether or not the prior art "teaches away" from the

27   invention covered by the patent claims. The question to be answered is: Would someone reading the

28   prior art be discouraged from following the path taken by the inventor?

1

**Level Of Ordinary Skill**

2     Obviousness is determined from the perspective of a person of ordinary skill in the art. This

3 person is presumed to know all of the prior art, not just what the inventor may have known. When

4 faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to

5 the problem and also to look to any available prior art to help solve the problem.

6     Factors to consider in determining the level of ordinary skill in the art include the educational

7 level and experience of people working in the field, the types of problems faced by workers in the art

8 and the solutions found to those problems, and the sophistication of the technology in the field.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 36**

**OBJECTIVE INDICATIONS OF NON-OBVIOUSNESS**

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must also consider the following factors, if present, that may tend to show the non-obviousness of the claims at issue:

1.    Commercial success of products covered by the patents in suit;

2.    A long-felt need in the art that was satisfied by the invention of the patent-in-suit;

3.    The failure of others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8.    The inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art;

9.    The taking of licenses under the patent by others; and

10.    Industry acceptance of the invention.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.   For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

---

[36] Adapted from Jury Instruction No. 52 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

1    It is inappropriate to disregard any evidence relating to the issue of obviousness.  Although
2 some parts of the evidence may weigh more heavily than others, your decision of obviousness or
3 non-obviousness should be held in abeyance until all of the evidence has been discussed.

**JURY INSTRUCTION NO. 37**

**DAMAGES – BURDEN OF PROOF**

If you find that any valid claim of the patents-in-suit is infringed, you must determine the amount of damages to be awarded Lucent or Multimedia Patent Trust for the infringement. In this case, Lucent and Multimedia Patent Trust seek damages based on a reasonable royalty.

Lucent and Multimedia Patent Trust have the burden of proving damages by a preponderance of the evidence and are entitled to all damages that can be proven with reasonable certainty. Reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Lucent's or Multimedia Patent Trust's right to recover. You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against Microsoft and Dell and in favor of Lucent and Multimedia Patent Trust.

The fact that I am instructing you as to the proper measure of damages should not be construed as suggesting any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Lucent or Multimedia Patent Trust.

---

[37] Adapted and modified from Jury Instruction No. 55 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168); *Interactive Pictures v. Infinite Pictures Corp.*, 374 F.3d 1371, 1385 (Fed. Cir. 2001); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990).

**JURY INSTRUCTION NO. 38**

**DATE DAMAGES BEGIN**

The date that Lucent or Multimedia Patent Trust first gave notice to Microsoft or Dell of their claim of a patent infringement is the date at which patent damages for that patent begin to be calculated.  Those dates are in dispute here, and it is up to you to determine what that date is for each patent.  Lucent and Multimedia Patent Trust have the burden to prove by a preponderance of the evidence the date it gave notice.

Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer.  Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identify of the patent and activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise.  So long as Lucent's communication to a Defendant communicates Lucent's belief that the Defendant may be an infringer with respect to a certain class of products, actual notice is met.

---

[38] 35 U.S.C. § 287; *SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997); *Gart v. Logitech, Inc.*, 254 F.3d 1332 (Fed. Cir. 2001).

**JURY INSTRUCTION NO. 39**

**DAMAGES – INDIRECT INFRINGEMENT**

Anyone who induces or contributes to infringement is liable the same as a direct infringer. Therefore, Lucent and Multimedia Patent Trust may seek the same relief from Microsoft and Dell for indirect infringement as it would seek from the direct infringers, and the damages assessed for the indirect infringement will be he same as damages that would be assessed for that direct infringement.

---

[39] Adapted from Jury Instruction No. 58 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

**JURY INSTRUCTION NO. 40**

**REASONABLE ROYALTY AS MEASURE OF DAMAGES**

In this case, Lucent and Multimedia Patent Trust seek damages in the amount of a reasonable royalty for the accused products. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but it is merely the floor below which damages may not fall.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between the plaintiffs and the defendants, with the parties operating under the assumptions that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin. In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of a defendant was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by the defendants. You must also assume that plaintiffs would have been willing to grant a license. Finally, you must assume that the parties knew all pertinent information at the time of the hypothetical negotiations.

---

[40] Adapted and modified from Jury Instruction No. 59 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168); 35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546-47 (Fed. Cir. 1995).

**JURY INSTRUCTION NO. 41**

**REASONABLE ROYALTY AS MEASURE OF DAMAGES**

In deciding what is a reasonable royalty, you may consider the factors that plaintiffs and defendants would have considered in setting the amount defendants should pay, assuming the patents are both valid and infringed. You should consider all the facts known and available to the parties at the time the infringement began.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.      Whether plaintiffs had established a royalty for any of the inventions of the patents-in-suit, for example, by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.

2.      Royalties paid by the defendants or by others for patents comparable to the patents-in-suit, if any.

3.      The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      Whether Lucent and/or Multimedia Patent Trust had a policy of licensing or not licensing the patent or granting licenses under special conditions.

5.      Whether plaintiffs and defendants are competitors or in an inventor/promoter commercial relationship.

6.      Whether being able to use the patented invention helps in making sales of other products or services.

7.      The duration of the patents and the term of the license.

---

[41] Adapted from Jury Instruction No. 60 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1168).

8.      The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

9.      The advantages of using the patented invention over old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by plaintiffs; and the benefits to those who have used the invention.

11.     The extent to which the defendant has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the products or invention or analogous inventions.

13.     The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented processes, or features or improvements developed by defendants.

14.     Expert opinions as to what would be a reasonable royalty.

1

**JURY INSTRUCTION NO. 42**

2

**ROYALTY RATE**

3        The amount of damages Defendants owe Lucent and Multimedia Patent Trust may exceed

4   the royalty that would have resulted from a real-world licensing negotiation between the parties.

5   Here, a real-world licensing negotiation did not occur and Lucent and Multimedia Patent Trust have

6   pursued their rights in litigation.  Therefore, if you find that Defendants infringe the patents-in-suit,

7   Defendants need not necessarily receive the benefit of a royalty rate that Lucent or Multimedia

8   Patent Trust may have been willing to negotiate in the absence of infringement.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26   [42] *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978).

27

28

1

**JURY INSTRUCTION NO. 43**

2

**TIME OF THE HYPOTHETICAL NEGOTIATION**

3        The relevant date for the hypothetical reasonable royalty negotiation is just before the

4   infringement began.  In this case, there may be a different hypothetical date for each of the patents.

5   You may consider in your determination of reasonable royalty damages any actual profits by

6   Microsoft and Dell after that time and any commercial success of the patented invention in the form

7   of sales of the patented or infringing products after that time.   You may only consider this

8   information, however, if it was foreseeable at the time that the infringement began.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [43] Adapted from Jury Instruction No. 61 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B

27   (S.D. Cal.) (D.I. 1168).

28

1

**JURY INSTRUCTION NO. 44**

2

**ROYALTY BASE – ENTIRE MARKET VALUE RULE**

3      A royalty base is the base against which the royalty is measured.  The entire market value

4  rule allows for the recovery of damages based on the value of an entire apparatus containing several

5  features, even though only one feature is patented, when (1) the patented feature constitutes the basis

6  for consumer demand, or (2) both the patented and unpatented components together function as a

7  single assembly.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [44] Adapted from Jury Instruction No. 62 from *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B

27  (S.D. Cal.) (D.I. 1168).

28

**JURY INSTRUCTION NO. 45**

**TRUST-RELATED ISSUES**

Microsoft contends that it was wrongful for Lucent to assign the Haskell '226 patent to Multimedia Patent Trust. The Court has already made several factual findings related to this issue that you should take as established:

1.     Lucent's assignment of the Haskell '226 patent to Multimedia Patent Trust was not a violation of the Lucent/Alcatel Merger Agreement;

2.     The assignment of the Haskell '226 patent from Lucent to Multimedia Patent Trust was effective;

3.     Multimedia Patent Trust took the Haskell '226 patent unfettered by any obligations to Alcatel;

4.     Multimedia Patent Trust has full control of the licensing rights to the Haskell '226 patent;

5.     Alcatel has no rights to license or sublicense the Haskell '226 patent;

6.     Since Alcatel lacks these rights, it cannot provide them (and thus is not required to provide them) to MPEG LA;

7.     Multimedia Patent Trust is not an "affiliate" of Lucent (or Alcatel-Lucent) as defined in the MPEG LA Agreement Among Licensors;

8.     Multimedia Patent Trust is not the alter-ego of Lucent;

9.     Neither Lucent nor Multimedia Patent Trust has or had any obligations to MPEG LA.

---

[45] *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-2060-B (S.D. Cal.) (D.I. 2109) (10/1/07 Order Granting in Part and Denying in Part Parties' Motions for Summary Judgment Regarding Defendants' Affirmative Defenses and Counterclaims Pertaining to the Transfer of the Group 1 Patents to the Multimedia Patent Trust).

**JURY INSTRUCTION NO. 46**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Microsoft contends that by assigning the Haskell '226 patent to Multimedia Patent Trust, Lucent tortiously interfered with Microsoft's expectation that they would be granted a sublicense to that patent by MPEG LA.

The right of a person to pursue a lawful business and to enjoy the fruits and advantages of one's industry or efforts are rights which the law protects against unjustified and wrongful interference by another person. Thus, the law protects a person's interest in reasonable expectations of economic advantage.

In order for Microsoft to prevail on its claim for tortious interference with prospective economic advantage, Microsoft must prove that (1) it had a reasonable expectation of economic advantage that was lost as a direct result of Lucent's malicious interference, and (2) that Microsoft suffered losses thereby. To prove malicious interference, Microsoft must prove that Lucent's conduct was both injurious and transgressive of generally accepted standards of common morality and of law. Conduct that Lucent had a right to do cannot be considered tortious when done.

---

[46] *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170-71 (N.J. 2001); *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997); *Kopp, Inc. v. United Tech., Inc.*, 539 A.2d 309, 315 (N.J. Super. 1988).

1
2
3
4
5
6
7
8
9
10

**JURY INSTRUCTION NO. 47**

**LACHES**

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: 1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, 2) there was no excuse for the patent holder's delay in filing the lawsuit, and 3) the allegedly infringing party has been or will be prejudiced in an economic or evidentiary way due to the patent holder's delay in filing the lawsuit.  This is referred to as laches, and it is a defense that defendants in this case contend prevents Multimedia Patent Trust from recovering any damages for the Haskell '226 patent prior to the filing of this lawsuit, and Dell also contends this defense prevents Lucent from recovering any damages for the Fleming '759 patent.

11
12
13
14
15

The delay that must be considered is the period of time beginning when a patent holder first knew of, or reasonably should have known of, an alleged infringer's allegedly infringing activities and ending when the patent holder filed the present lawsuit.  If the patent holder knew of, or reasonably should have known of, the alleged infringer's activities prior to the issuance of the relevant patent, only the period of time after the patent issued may be considered.

16
17
18
19
20
21
22
23

Whether a patent holder' s delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them.  Whether a patent holder's otherwise unreasonably long delay was justified or should be excused also is a question that must answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them.  While there is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit, and any particular justification or excuse offered by a patent holder in a case must be evaluated in light of all

24
25
26
27
28

[47] Adapted and modified from Instruction No. 5.5 of the Federal Circuit Bar Association's Model Patent Jury Instructions (last edited Jan. 12, 2008); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 774 (Fed. Cir. 1995); *Hamstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292-93 (Fed. Cir. 1992); *Lucent Tech. Inc. v. Gateway, Inc.*, No. 02-CV-2060 B (S.D. Cal.) (D.I. 1922 and 1923).

1  the facts and circumstances that existed during the period of delay in this case, evidence of the

2  following may serve as a justification or excuse for any unreasonable delay in the filing of this

3  lawsuit:

4          (1) being involved in other litigation during the period of delay;

5          (2) being involved in negotiations with the allegedly infringing party during the period of

6  delay;

7          (3) being involved in negotiations with other allegedly infringing parties;

8          (4) minimal amounts of allegedly infringing activity by an alleged infringer during the period

9  of delay.

10         Prejudice to an alleged infringer as a result of any delay by the patent holder in filing a

11  lawsuit can be economic or evidentiary in nature.  However, mere possibility of prejudice is not

12  enough; any alleged prejudice must have an explicit proven nexus to the patentee's alleged delay in

13  filing suit.  Whether an alleged infringer suffered evidentiary prejudice is a question that must be

14  answered by evaluating whether any unreasonable delay in filing a case resulted in the alleged

15  infringer not being able to present a full and fair defense on the merit's to the patent holder's

16  infringement claim.  Whether the alleged infringer suffered economic prejudice is a question that

17  must be answered by evaluating whether any unreasonable delay in filing the case resulted in the

18  alleged infringer changing its economic position in a significant way during the period of delay, and

19  also whether the alleged infringer's losses as a result of that change in economic position could have

20  been avoided if the patent holder had filed the lawsuit sooner.  Having to pay damages to the patent

21  holder if found to infringe on its patent does not amount to economic prejudice by itself; rather, the

22  alleged infringer's liability for infringement damages or the other economic losses that may be

23  incurred by the alleged infringer if found to be an infringer must have been avoidable if the patent

24  holder had filed the lawsuit sooner.

25         With respect to the Haskell '226 patent, the court has already determined that Multimedia

26  Patent Trust and Lucent have provided sufficient evidence of licensing negotiations to rebut any

27  presumption of laches.  With respect to the Fleming '759 patent, if you find that Lucent delayed

28  filing this lawsuit for more than six years, then you must presume that all the elements of laches

have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that Dell suffered no prejudice as a result of the delay on the Fleming '759 patent.

In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness given all the facts and circumstances. Thus, while you may not find that laches applies if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice), you may find that even though all of the elements of laches have been proved, it should not, in fairness, apply given all the facts and circumstances in this case.

Although the question of whether Lucent's or Multimedia Patent Trust's right to damages is barred by laches is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**JURY INSTRUCTION NO. 48**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[48] Jury Instruction No. 49 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

1
2

**JURY INSTRUCTION NO. 49**

**USE OF NOTES**

3      Some of you have taken notes during the trial. Whether or not you took notes, you should
4  rely on your own memory of what was said. Notes are only to assist your memory. You should not
5  be overly influenced by the notes.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[49] Jury Instruction No. 50 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 50**

**COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

---

[50] Jury Instruction No. 51 from *Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-273 H (S.D. Cal.) (D.I. 365).

**JURY INSTRUCTION NO. 51**

**RETURN OF VERDICT**

I have prepared a special verdict form for you to use in this case.  The special verdict form is made up of questions.  These questions are to be answered "yes" or "no" unless other instructions are given.  Your answers on each question must be unanimous.

---

[51] Jury Instruction No. 33 from *Gen-Probe Inc. v. Vysis, Inc.*, 99-CV-2668 H (S.D. Cal.) (D.I. 445).