1　John E. Gartman (SBN 152300)
　　Juanita R. Brooks (SBN 75934)
2　Roger A. Denning (SBN 228998)
　　Christopher S. Marchese (SBN 170239)
3　Fish & Richardson P.C.
　　12390 El Camino Real
4　San Diego, California 92130
　　Telephone:　(858) 678-5070
5　Facsimile:　(858) 678-5099

6　Stephen P. McGrath (SBN 202696)
　　Microsoft Corporation
7　One Microsoft Way
　　Redmond, WA 98052
8　Telephone:　(425) 882-8080
　　Facsimile:　(425) 936-7329

9

10　Attorneys for Intervenor/Counter-claimant
　　　and Plaintiff/Counter-defendant
　　　MICROSOFT CORPORATION

11
　　　　　　　　　UNITED STATES DISTRICT COURT
12
　　　　　　　　SOUTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14　LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, | Case No. 07-CV-2000 H (CAB) consisting of matters severed from consolidated cases: |
| 15　　　　　Plaintiffs and Counterclaim-defendants, | 02-CV-2060 B (CAB) |
| 16　v. | 03-CV-0699 B (CAB) 03-CV-1108 B (CAB) |
| 17　GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY | **DEFENDANTS' JOINT PROPOSED JURY INSTRUCTIONS** |
| 18　COMPANIES, INC., GATEWAY MANUFACTURING LLC and | |
| 19　COWABUNGA ENTERPRISES, INC., | |
| 20　　　　　Defendants and Counter-claimants, | |
| 21　and | |
| 22　MICROSOFT CORPORATION, | |
| 23　　　　　Intervenor and Counter-claimant, | |
| 24　MICROSOFT CORPORATION, | **Trial: February 20, 2008** |
| 25　　　　　Plaintiff and Counter-defendant, | **Courtroom 13** |
| 26　v. | **Honorable Marilyn L. Huff** |
| 27　LUCENT TECHNOLOGIES INC., | |
| 28　　　　　Defendant and Counter-claimant, | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LUCENT TECHNOLOGIES INC. and
MULTIMEDIA PATENT TRUST,

      Plaintiffs,

v.

DELL, INC.,

      Defendant.

# FINAL JURY INSTRUCTIONS

## 1.1 DUTY OF THE JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.1C, available at http://www.ce9.uscourts.gov.

## 1.2 TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.5, available at http://www.ce9.uscourts.gov.

**1.3 WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.6, available at http://www.ce9.uscourts.gov.

**1.4 WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.7, available at http://www.ce9.uscourts.gov.

**1.5 DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.9, available at http://www.ce9.uscourts.gov.

**1.6 CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.11, available at http://www.ce9.uscourts.gov.

**1.7 EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 2.11, available at http://www.ce9.uscourts.gov.

## 1.8 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 2.12, available at http://www.ce9.uscourts.gov.

**1.9 DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 23, D.I. 1168 (Feb. 14, 2007).

**1.10 NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 24, D.I. 1168 (Feb. 14, 2007).

**1.11 BURDENS OF PROOF**

I will now explain the different burdens of proof that apply to this case.

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 1.3 and 1.4, available at http://www.ce9.uscourts.gov; Post-Trial Jury Instructions for Audio Trial # 25, D.I. 1168 (Feb. 14, 2007).

## 2.0 SUMMARY OF ISSUES

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

**1. U.S. Patent No. 4,958,226 to Haskell et al.:**

    A.  Whether Multimedia Patent Trust has proven that Microsoft infringes claim 12 of U.S. Patent No. 4,958,226.

    B.  Whether Microsoft has proven that claim 12 of U.S. Patent No. 4,958,226 is invalid.

    C.  Whether Microsoft has proven that U.S. Patent No. 4,958,226 is unenforceable.

    D.  Whether Microsoft has proven that Multimedia Patent Trust and Lucent have committed laches in the assertion of U.S. Patent No. 4,958,226.

    E.  Whether Microsoft has proven that Multimedia Patent Trust and Lucent have unclean hands in the assertion of U.S. Patent No. 4,958,226.

    F.  Whether Microsoft and Dell have proven that Lucent has intentionally interfered with Microsoft's or Dell's economic advantage.

**2. U.S. Patent No. 4,763,356 to Day et al.:**

    A.  Whether Lucent has proven that Microsoft or Dell infringes claims 19 or 21 of U.S. Pat. No. 4,763,356.

    B.  Whether Microsoft and Dell have proven that claim 19 or 21 of U.S. Patent No. 4,763,356 are invalid.

**3. U.S. Patent No. 5,347,295 to Agulnick et al.:**

    A.  Whether Lucent has proven that Microsoft or Dell infringes claims 1, 3, 4, 6, 12, 39-41, 43 or 46 of U.S. Pat. No. 5,347,295.

    B.  Whether Microsoft and Dell have proven that 1, 3, 4, 6, 12, 39-41, 43 or 46 of U.S. Pat. No. 5,347,295 are invalid.

**4. U.S. Patent No. 4,439,759 to Fleming et al.:**

    A.  Whether Lucent has proven that Dell infringes claims 1, 2 or 3 of U.S. Patent No. 4,439,759.

    B.  Whether Dell has proven that 1, 2 or 3 of U.S. Pat. No. 4,439,759 is invalid.

C.  Whether Dell has proven that U.S. Patent No. 4,439,759 is unenforceable.

D.  Whether Dell has proven that Lucent is has committed laches in the assertion of U.S. Patent No. 4,439,759.

**5. Damages**

A.  Whether and for what period, if any, Multimedia Patent Trust has proven damages against Microsoft.

B.  Whether and for what period, if any, Lucent has proven damages against Microsoft or Dell.

C.  Whether and for what period, if any, Microsoft has proven damages against Lucent.

D.  Whether and for what period, if any, Dell has proven damages against Lucent.

**SOURCE**: AIPLA Model Instruction 1 (2007); Post-Trial Jury Instructions for Audio Trial # 26, D.I. 1168 (Feb. 14, 2007).

**2.1  CLAIM CONSTRUCTION – GENERALLY**

Before you decide whether Microsoft or Dell have infringed any claim of the asserted patents or whether the asserted patents are invalid, you will have to understand the patent claims.

The patent claims are numbered sentences at the end of the patent.  The claims are intended to define, in words, the boundaries of the invention.

Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.

Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

**SOURCE**: AIPLA Model Instruction 2.0 (2007).

## 2.2 CLAIM CONSTRUCTION FOR THE CASE

It is my job as the judge to provide you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any of the asserted claims of the asserted patents are infringed and whether any of those claims are invalid.

I now again furnish to you the claim construction charts and glossaries (Exhibits A and B) for each of the patents in suit.  You will note that Exhibit A lists in the left of two columns, the verbatim language of claims at issue in this case.  In the right column is presented the identical claim and each limitation which is re-written somewhat so as to translate certain words or phrases which you might find difficult to understand.  The wording of all claim language in the right column is intended to as clearly as possible re-state certain technical words and phrases in language which you may find easier to understand, and thus to apply in this case.  You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

You also are given herewith Exhibit B of that same Court Order (for each patent) which is an alphabetical glossary of each of the terms and phrases that are defined somewhere in Exhibit A. It is hoped that Exhibit B will facilitate your finding a particular word or phrase if you need to consider it in your deliberations without screening through Exhibit A to find it.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 28, D.I. 1168 (Feb. 14, 2007).[1]

---

[1] Microsoft and Dell preserve their objections to the claim constructions adopted by the Court.

## 2.3 CONSTRUCTION OF MEANS-PLUS-FUNCTION CLAIMS FOR THE CASE

Claim 12 of the '226 patent, claims 1, 2 and 3 of the '759 patent, and claims 1, 3, 4, 6, 12, 39-41, 43 and 46 of the '295 patent are in a special form called "means-plus-function." These clauses require a special interpretation.

Those words do not cover all means that perform the recited functions; they cover only the structures described in the patent specification and drawings that perform the function or an equivalent of that structure. For a structure to be equivalent, it must have existed at the time the patent application was filed.

As shown in the claim construction chart Exhibit A for the '295, '226, and '759 patents, the right column identifies the function for each means claimed, and then identifies the corresponding structure claimed in the patent specification.

You must use my interpretation of the means-plus-function elements in your deliberations regarding infringement and validity.

**SOURCE:** AIPLA Model Instruction 2.2 (2007) (modified with the facts of this case); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford International, Inc*., 389 F.3d 1370, 1378 (Fed. Cir. 2004).

**3.0 INFRINGEMENT – GENERAL**

I will now instruct you as to the rules you must follow when deciding whether Lucent and Multimedia Patent Trust have proven that Microsoft or Dell infringed any of the asserted claims of the patents in suit.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling a patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

A patent may be infringed directly or indirectly.  Direct infringement results if what is accused is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent.

**SOURCE:** AIPLA Model Instruction 3.0 (2007); Post-Trial Jury Instructions for Audio Trial # 29, D.I. 1168 (Feb. 14, 2007).

**3.1 LITERAL INFRINGEMENT**

In order to literally infringe a patent claim, a product or method must include every limitation of the claim. A claim limitation is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it. If the accused product or process method omits even a single structure or step recited in a claim, then you must find that the accused product or method does not literally infringe that claim. You must consider each of the patent claims separately.

All of the asserted claims of the '356 patent are method claims. In order to infringe a method claim, an accused method must perform every step recited in the claim.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 32, D.I. 1168 (Feb. 14, 2007).

## 3.2 INFRINGEMENT OF DEPENDENT CLAIMS

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, Claim 1 of the '295 patent is an independent claim and recites several elements. Claim 3 of the '295 patent is a dependent claim that refers to Claim 1 and includes an additional element or limitation. Claim 3 requires each of the elements of Claim 1, as well as the additional elements identified in Claim 3 itself.

Consequently, if you find that Claim 1 of the '295 patent is not infringed, then you cannot find that Claim 3 of the '295 patent is infringed.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 30, D.I. 1168 (Feb. 14, 2007); AIPLA Model Instruction 3.6 (2007).

## 3.3 MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims.  Claim 12 of the '226 patent, claims 1, 2 and 3 of the '759 patent, and claims 1, 3, 4, 6, 12, 39-41, 43 and 46 of the '295 patent contain "means-plus-function" requirements.  A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and equivalents of that specific structure that perform the claimed function.  A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements.  As shown in the claim construction chart Exhibit A for the '295, '226 and '759 patents, the right column identifies the function for each means claimed, and then identifies the corresponding structure in the patent specification.

In deciding if Lucent or Multimedia Patent Trust has proven that an accused product includes structure covered by a means-plus-function requirement, you must first decide whether the product has structure that performs the function that I identified.  If not, the claim containing that means-plus-function requirement is not infringed.

If you find that an accused product does have structure that performs the function that I identified, you must next identify the structure in the accused product that performs this function.  After you identify that structure, you must then determine whether the structure you identified in the accused product is the same as or equivalent to the structure I have identified in the patent.  If they are the same or equivalent, the means-plus-function requirement is satisfied by the accused product.  If all the other requirements of the claim are also satisfied by the accused product, the accused product infringes the claim.

In order to prove that a structure in the accused product is equivalent to the structure that I have identified in the patent, Lucent or Multimedia Patent Trust must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the patent and the structure in the accused product are not substantial.  Lucent and Multimedia Patent Trust must also show that the accused structure was available on the date the patent was granted.

**SOURCE:** Model Patent Jury Instructions for the Northern District of California Instruction 3.5 (October 9, 2007).

## 3.4 INDUCING PATENT INFRINGEMENT

Lucent and Multimedia Patent Trust allege that Microsoft and Dell are liable for infringement by actively inducing someone else to directly infringe the asserted patents. A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur unintentionally.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A person is liable for active inducement of a claim only if:

(1) the person takes action during the time the patent is in force which encourages acts by someone else; and

(2) the encouraged acts constitute direct infringement of that claim; and

(3) the person is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of that patent; and

(4) the person has an intent to cause the infringement; and

(5) the infringement is actually carried out by the someone else.

In order to prove active inducement, Lucent and Multimedia Patent Trust must prove that each of the above requirements are met.  Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

It is not sufficient that Microsoft or Dell were aware of the acts that allegedly constitute the direct infringement. Rather, you must find specifically that Microsoft or Dell specifically intended to encourage infringement in order to find that Microsoft or Dell induced infringement. If you do not find that Microsoft or Dell specifically intended to encourage infringement, then you must find that Microsoft and Dell have not actively induced the alleged infringement.

In addition, Lucent and Multimedia Patent Trust must prove the number of direct acts of infringement because the amount of damages for induced infringements is limited by the number of specific instances of direct infringement.

**SOURCE:** Federal Circuit Bar Assoc. Model Instruction 3.2 (2008); *DSU Med. Corp. v. JMS Co.,* 2006 U.S. App. LEXIS 30511 (Fed. Cir. December 13, 2006) (en banc); 35 U.S.C. § 271(b); *Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 2007 U.S. App. LEXIS 21822 (Fed. Cir. Sept. 12, 2007); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277-78 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 418 F.Supp2d 1021, 1042 (S.D. Ind. 2006); *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F.Supp. 1525, 1543 (N.D. Ill. 1989).

**Microsoft and Dell object to the inclusion of any instruction on Contributory Infringement, as all of the accused products have substantial non-infringing uses. Should the Court include an instruction on Contributory Infringement, Microsoft and Dell proposes the following:**

## 3.5 CONTRIBUTORY INFRINGEMENT

Lucent and Multimedia Patent Trust argue that Microsoft and Dell are liable for contributory infringement by contributing to the direct infringement of someone else. As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

A person is liable for contributory infringement of a claim if:

(1) the person sells, offers to sell, or imports within the United States a component of a product or process during the time the patent is in force; and

(2) the thing sold is not a staple article or commodity of commerce suitable for substantial non-infringing use; and

(3) the person is aware of the patent and is on notice that the products or processes for which the component has no other substantial use may be covered by a claim of the patent; and

(4) the component has been used by someone else in a manner that directly infringes the claim.

In order to prove contributory infringement, Lucent and Multimedia Patent Trust must prove that each of the above requirements are met. This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

In determining whether the products supplied by Microsoft and Dell are suitable for a substantial non-infringing use, you must evaluate those products in their entirety and not merely a part or a feature of those products.

In addition, Lucent and Multimedia Patent Trust must prove the number of direct acts of infringement, because the amount of damages for indirect infringements is limited by the number of specific instances of direct infringement.

**SOURCE:** Federal Circuit Bar Assoc. Model Instruction 3.3 (2008); *Hodosh v. Block Drug Co.,* 833 F.2d 1575, 1578 (Fed. Cir. 1987), *cert. denied,* 485 U.S. 1007 (1988); *Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd*., 2007 U.S. App. LEXIS 21822 (Fed. Cir. Sept. 12, 2007); *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1277-78 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc*., 418 F.Supp2d 1021, 1042 (S.D. Ind. 2006); *Oak Indus., Inc. v. Zenith Elecs. Corp*., 726 F.Supp. 1525, 1543 (N.D. Ill. 1989).

**3.6 INFRINGEMENT – ACTIVITIES OCCURRING OUTSIDE THE UNITED STATES**

Under United States patent law, no infringement occurs when a patented product is made and sold in another country.  This is because in general United States laws do not apply to activities occurring in other countries, even if those activities would infringe if they took place in the United States.

There is no infringement when computers made in a foreign country are loaded with Microsoft software that is copied in a foreign country from a master disk or from an electronic transmission dispatched by Microsoft from the United States.

Providing software for copying and distribution abroad is not infringement under United States patent law.  The burden is on Lucent and Multimedia Patent Trust to prove that each specific act of alleged infringement took place inside the United States.  Further, Lucent and Multimedia Patent Trust can only collect damages for sales that are infringing.  You should not find that Microsoft infringes by exporting software for copying and distribution overseas.

**SOURCE:** *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007).

**Microsoft believes it is inappropriate for the Court to allow the issue of downloads to go to the jury.  In the event the Court does not exclude this theory, however, Microsoft asks for the following instruction:**

**3.7.1 INFRINGEMENT – DOWNLOADS**

In order to prove that a particular download infringes the '272 or '226 patent, Lucent and Multimedia Patent Trust must show by a preponderance of the evidence that each downloaded version actually includes technology that infringes the '272 or '226 patent.

**Microsoft believes it is inappropriate for the Court to allow the issue of downloads to go to the jury.  In the event the Court does not exclude this theory, however, Microsoft asks for the following instruction:**

### 3.7.2  INFRINGEMENT – DOWNLOADS OCCURRING OUTSIDE THE UNITED STATES

There is no infringement for downloads to computers in a foreign country unless Lucent and Multimedia Patent Trust show by a preponderance of the evidence that:

1. Microsoft supplies a copy of the software on a tangible medium from the United States; and

2. That copy of the software supplied from the United States is actually combined with a foreign computer.

Foreign-made copies of software installed on a foreign computer do not give rise to liability under United States patent law, regardless of how easy or fast that copy is made.

**SOURCE:** *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007); 35 U.S.C. 271(f).

**Microsoft believes it is inappropriate for the Court to allow the issue of downloads to go to the jury. In the event the Court does not exclude this theory, however, Microsoft asks for the following instruction:**

### 3.7.3 REPAIR / RECONSTRUCTION

You have heard Lucent argue that certain free downloads infringe its patents. Once a user obtains a patented product, they are generally free to use that product free of control by the patent owner. This right to use a patented product includes the right to make repairs on the product necessary for continued use. Repairs can include the replacement of parts. If you find that downloads are merely a permissible repair, then they do not infringe and you cannot include them in your calculation of damages.

**SOURCE:** Chisum on Patents § 16.03[3]; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345-46 (1961); *Everpure, Inc. v. Cuno, Inc.*, 875 F.2d 300, 302-04 (Fed. Cir. 1989); *FMC Corp. v. Up-Right, Inc.*, 21 F.3d 1073 (Fed. Cir. 1994).

## 4.0  INVALIDITY

Microsoft and Dell contend that each of the asserted claims of the patents in suit are invalid. Issued patents are presumed to be valid because the United States Patent and Trademark Office has determined that the inventor has satisfied the legal requirements for obtaining a patent.  The presumption, however, is one of law, not fact, and does not constitute "evidence" to be weighed against Microsoft's or Dell's evidence.  Despite this presumption of validity, claims of an issued patent may be found to be invalid.

Microsoft and Dell have the burden of proving by a preponderance of the evidence that each of the asserted claims is invalid.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 40, D.I. 1168 (Feb. 14, 2007); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984); *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

## 4.1 PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before it. That which came before is referred to as the "prior art."

Prior art includes any of the following items received into evidence during trial:

(1)     any product or method that was publicly known or used by others in the United States before the patented inventions were made;

(2)     patents that issued more than one year before the filing date of the patents or before the inventions were made by named inventors;

(3)     printed publications that were publicly accessible to interested persons more than one year before the effective filing date of the patents or before the inventions were made;

(4)     any product or method that was in public use or on sale in the United States more than one year before the effective filing date of the patents;

(5)     any United States patent that was granted on an application filed in the United States prior to the date the inventions were made; and

(6)     any invention that was made or used by anyone in the United States before the named inventors invented the patented product or method where the product or method was not abandoned, suppressed, or concealed.

**SOURCE:** AIPLA Model Instruction 5 (2007); Post-Trial Jury Instructions for Audio Trial # 41, D.I. 1168 (Feb. 14, 2007).

## 4.2 ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.

In this case, Microsoft and Dell contend that the asserted claims of the patents in suit are anticipated. To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular reference.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice. This is called "inherency." To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.

**SOURCE:** AIPLA Model Instruction 6.0 (2007); Post-Trial Jury Instructions for Audio Trial # 45, D.I. 1168 (Feb. 14, 2007); *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

29

**4.3.0 ANTICIPATION OF THE '272 PATENT**

You have heard evidence in this case about the Jain thesis and the '272 Patent. I have determined that the Jain thesis includes each and every limitation of the '272 patent and that the inventors of the '272 patent are not entitled to an invention date before they filed their patent on April 13, 1981. Therefore, you need not consider whether the technical claim limitations of the '272 patent are present in the Jain thesis because I have determined that they are present. The only two questions that you will need to consider in your deliberations are:

1. Whether the substance of the Jain thesis was publicly accessible to interested persons on or before April 13, 1981; and

2. Whether there is sufficient evidence to show the Jain thesis was reduced to practice on or before April 13, 1981.

**SOURCE:** Order Denying Gateway's Motions For Summary Judgment That U.S. Patent No. 4,383,272 Is Invalid Under 35 U.S.C § 102(g) And Granting Summary Adjudication On Certain Predicate Issues Pertaining To This Defense (July 12, 2007).

### 4.3.1 PRIOR PUBLIC KNOWLEDGE

Microsoft and Dell contend that the asserted claims of the patents in suit are anticipated because the inventions defined in those claims were publicly known in the United States before they were invented by the inventors.

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before the patent applicant conceived of and reduced to practice his or her invention.  Private or secret knowledge does not invalidate a patent claim.  Similarly, if something is only publicly known outside of the United States, this is not invalidating public knowledge.

**SOURCE:** AIPLA Model Instruction 6.2 (2007); Post-Trial Jury Instructions for Audio Trial # 46, D.I. 1168 (Feb. 14, 2007).

## 4.3.2 PRIOR PUBLIC USE

Microsoft and Dell contend that the asserted claims of the patents in suit are anticipated because the inventions defined in those claims were publicly used in the United States before they were invented by the patentee, and also that those inventions were publicly used in the United States more than one year before the effective filing date of each U.S. patent application.

A patent claim is invalid if the invention defined by that claim was publicly used by someone other than the patentee in the United States before the patentee conceived of and reduced to practice his or her invention.  A patent claim is also invalid if it was publicly used by anyone in the United States more than one year before the patentee filed his patent application.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  Secret use by a third party is not an invalidating public use.  If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

**SOURCE:** AIPLA Model Instruction 6.3 (2007); Post-Trial Jury Instructions for Audio Trial # 47, D.I. 1168 (Feb. 14, 2007).

### 4.3.3 ON SALE BAR

Microsoft and Dell contend that the asserted claims of the patents in suit were anticipated because the inventions defined in the claims of those patents were on sale in the United States more than one year before the patentee filed his U.S. patent application.

A patent claim is invalid if an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States; and (2) ready for patenting more than one year before the patent application date.

An invention was "on sale" if the claimed invention was embodied in the thing sold or commercially offered for sale. It is not required that a sale was actually made. The essential question is whether or not there was an attempt to obtain commercial benefit.

In order to be on sale, the invention must have been ready for patenting at the time of the offer for sale. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

**SOURCE:** AIPLA Model Instruction 6.4 (2007).

**4.3.4 PRINTED PUBLICATION**

Microsoft and Dell contend that the asserted claims of the patents in suit are anticipated because the inventions defined in those claims were described in a printed publication more than one year before the patentee filed the U.S. patent application, and also because the inventions defined in those claims were described in a printed publication before the patentee invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before the patentee conceived of and reduced to practice his or her invention.  A patent claim is also invalid if the invention defined by that claim was described in a printed publication more than one year prior to the filing date of the U.S. application.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs or photocopies.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the inventions of the asserted patents were made, and you may consider evidence that sheds light on the knowledge such a person would have had.

Unlike some of the other categories of prior art I have described to you, it does not matter whether the printed publication was made in this country or in a foreign country.  Also, it does not matter that the printed publication was not in English.  Finally, it does not matter whether anyone ever actually read the publication.  All that matters is that the publication was reasonably accessible to those members of the public who would be interested in its contents.

**SOURCE:** AIPLA Model Instruction 6.6 (2007); Post-Trial Jury Instructions for Audio Trial # 48, D.I. 1168 (Feb. 14, 2007).

## 4.3.5 PRIOR INVENTION

Microsoft and Dell contend that the asserted claims of the patents in suit are anticipated because the inventions defined in those claims were invented by another person before each patentee conceived of and reduced to practice his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was conceived of and reduced to practice by the patentee.

Microsoft and Dell must show that before the patentee conceived of and reduced to practice his invention, a third party reduced to practice a product or method that included all of the elements of the claims of the asserted patents, or that a third party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice.  In addition, Microsoft and Dell must show that the third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

**SOURCE:** AIPLA Model instruction 6.7 (2007); Post-Trial Jury Instructions for Audio Trial # 50, D.I. 1168 (Feb. 14, 2007).

**4.3.6 PRIOR PATENT**

Microsoft and Dell contend that the asserted claims of the patents in suit were anticipated because the inventions defined in those claims were patented by a third party either before they were conceived and reduced to practice by the patentee, or more than one year before the patentee filed his United States patent application.

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country either before it was invented by the patentee, or if it was filed more than one year before the patentee filed his United States patent application.

**SOURCE:** AIPLA Model instruction 6.8 (2007).

### 4.3.7 PRIOR U.S. APPLICATION

Microsoft and Dell contend that the asserted claims of the patents in suit were anticipated because the inventions defined in those claims were described in United States patents, and because the application for those patents were filed before the patentee made his invention.

A claim of a patent in suit would be invalid if the invention defined by that claim was described in a United States patent issued on a patent application filed by another person before the invention was made by the patentee.

**SOURCE:** AIPLA Model instruction 6.9 (2007).

**4.3.8 DERIVATION**

A person is not entitled to a patent if he did not himself invent the subject matter sought to be patented.  If you find that an inventor did not himself invent the subject matter in his patent, you must find that patent to be invalid.

**SOURCE:** 35 U.S.C. 102(f).

## 4.4 OBVIOUSNESS

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not claims would have been obvious, you should make the following determinations:

- First, what is the scope and content of the prior art?

- Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

- Third, what was the level of ordinary skill in the art at the time the invention was made?

- Fourth, are there any objective secondary indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

### The Scope And Content Of The Prior Art

A prior art reference must be considered with the knowledge of one of ordinary skill in the pertinent art. A prior art reference need not explain every detail since it is speaking to those skilled in the art. Thus, in order to render an invention obvious, the asserted prior art must be sufficient to enable a person of ordinary skill, with his/her background, to practice the invention.

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Microsoft and Dell. You must decide whether this prior art

was reasonably relevant to the particular problem the inventors faced in making the invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

**Differences Between The Invention Of The Claims And The Prior Art**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

 **Level Of Ordinary Skill**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 51, D.I. 1168 (Feb. 14, 2007); AIPLA Model Instruction 7.0; *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

## 4.4.1 OBJECTIVE INDICATIONS CONCERNING NON-OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following factors, if present, that may tend to show the obviousness or non-obviousness of the claims at issue:

1. Commercial success of products covered by the patents in suit;

2. A long-felt need in the art that was satisfied by the invention of the patent-in-suit;

3. The failure of others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8. The inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art; and

9. The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

Evidence that may tend to show the obviousness of an invention is a showing of independent development or making of the invention by others before the inventor of the patent-in-suit or at about the same time.

It is inappropriate to disregard any evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance until all of the evidence has been discussed.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 52, D.I. 1168 (Feb. 14, 2007).

**4.4.2 OBVIOUS TO TRY**

The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.  When there is a design need or marketplace pressure to solve a particular problem, and there are a limited number of identified, predictable solutions, a person of ordinary skill in the art has a good reason to pursue the known options within his or her technical field.  If this leads to a predictable success, it is likely the result of ordinary skill and common sense, not innovation.  In such cases, the fact that a combination was obvious to try might show that the invention was obvious.

**SOURCE:** *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742 (2007).

**4.5 INVENTORSHIP**

In this case, Microsoft and Dell contend that the '759 patent is invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventor, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of one or more of the claims of the patent. Whether the contribution is significant is measured against the scope of the full invention.

Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

**SOURCE:** Federal Circuit Bar Association Model Instruction 4.3c (2008).

## 5.0 INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office and with the Examiner handling the application.  This duty of candor is important because the examiner has limited resources.  The examiner may have less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent.  The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent.  To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness.  This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high.  An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence.  That is, based on the evidence presented to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the '759, '272 and '226 patents in order for it to be considered unenforceable.

In this case, the Microsoft and Dell contend that Lucent failed to disclose material information to the Patent and Trademark Office during the examination of the '759, '272 and '226 patents, and did so with an intent to deceive the examiner into issuing the '759, '272 and '226 patents.  I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as Microsoft and Dell contend.

### Materiality

In considering materiality, you first must determine whether or not information was withheld from the Patent and Trademark Office during the examination of the '759, '272 and '226 patents. If you find that the applicant, the applicant's representatives, or others involved in a substantial way with the examination of the application withheld information from the Patent Trademark Office during the examination of the '759, '272 and '226 patents, you must then determine whether or not the withheld information was were material.

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

**Intent to Mislead**

In order for inequitable conduct to have occurred Microsoft or Dell must establish that any failure to disclose material information done with an intent to deceive the examiner. If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on the patent holder' part.

**Balancing of Materiality and Intent**

If you find that Microsoft or Dell have proven that material information was withheld and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that the patent holder committed inequitable conduct and the patents should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information, the lower the level of intent that is required to establish inequitable conduct, and vice versa. Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There

must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct.

Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**SOURCE:** Federal Circuit Bar Model Rule 5.1 (2008).

**5.1 UNCLEAN HANDS**

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that Microsoft contends precludes any recovery by Lucent or Multimedia Patent Trust in this lawsuit with respect to the '226 and '272 patents.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Lucent and Multimedia Patent Trust acted in such an unconscionable way towards Microsoft in the matters relating to the controversy between them that, in fairness, Lucent and Multimedia Patent Trust should be denied the relief it seeks in this lawsuit.

Although the question of whether Lucent's and Multimedia Patent Trust's claims are barred by unclean hands is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**SOURCE:** Federal Circuit Bar Association Model Instruction 5.5 (2008).

**5.2 LACHES**

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: 1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, 2) there was no excuse for the patent holder's delay in filing the lawsuit, and 3) the allegedly infringing party has been or will be prejudiced in a significant way due to the patent holder's delay in filing the lawsuit. This is referred to as laches, and it is a defense that Microsoft contends prevents Lucent and Multimedia Patent Trust from recovering any damages before they filed this case with respect to the '759, '272, and '226 patents.

The delay that must be considered in this case is the period of time beginning when Lucent first knew of, or reasonably should have known of, Microsoft's allegedly infringing activities and ending when Lucent filed this lawsuit.

Whether Lucent's delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them.  Whether Lucent's otherwise unreasonably long delay was justified or should be excused also is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them.

Prejudice to Microsoft and Dell as a result of any delay by Lucent in filing this lawsuit can be economic or evidentiary in nature.  If you find that either of these types of prejudice apply in this case, then that can support a finding of laches.  I will now explain these two types of prejudice to you in more detail.

Whether Microsoft suffered evidentiary prejudice is a question that must be answered by evaluating whether any unreasonable delay in filing this case resulted in their not being able to present a full and fair defense on the merit's to Lucent's infringement claims.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.

Whether Microsoft suffered economic prejudice is a question that must be answered by evaluating whether any unreasonable delay in filing this case resulted in Microsoft changing its economic position in a significant way during the period of delay, and also whether Microsoft or Dell's losses as a result of that change in economic position could have been avoided if Lucent had filed this lawsuit sooner.

If you find that Lucent delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that Microsoft and Dell suffered no prejudice as a result of Lucent's delay.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of

fairness given all the facts and circumstances. Thus, while you may not find that laches applies if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice), you may find that even though all of the elements of laches have been proved, it should not, in fairness, apply given all the facts and circumstances in this case.

Although the question of whether the Lucent's right to damages is barred by laches is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**SOURCE:** Federal Circuit Bar Association Model Instruction 5.2 (2008) (modified to fit this case).

**6.0 DAMAGES – GENERALLY**

If you find that the accused products infringe any of the asserted claims of the patents in suit, and that the claims of the patents in suit are not invalid, you must determine the amount of damages to be awarded Lucent and Multimedia Patent Trust for the infringement.

On the other hand, if you find that each of the asserted patent claims for one or more of the patents in suit is either invalid or is not infringed, then you need not address damages in your deliberations for those patents.

If you need to determine damages, the amount of damages must be adequate to compensate Lucent and Multimedia Patent Trust for the infringement.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Lucent and Multimedia Patent Trust have the burden of proving each element of their damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as suggesting any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Lucent and Multimedia Patent Trust.

**SOURCE:** AIPLA Model Instruction 12.0 (2007).

**6.1 DATE DAMAGES BEGIN**

The dates that Lucent and Multimedia Patent Trust first gave notice to Microsoft and to Dell of their claims of patent infringement are the dates at which patent damages begin to be calculated. Those dates are in dispute here, and it is up to you to determine what those dates are.  Lucent and Multimedia Patent Trust have the burden to prove by a preponderance of the evidence the dates they gave notice.

Lucent and Multimedia Patent Trust can give notice of their patents by communicating specific charges that the accused products infringe the asserted patents.  This type of notice is effective from the time it is given.   If you find that Lucent and Multimedia Patent Trust, before filing this lawsuit, did not notify Microsoft by communicating a specific charge that the accused products infringed the asserted patents, then Lucent and Multimedia Patent Trust can only recover damages for infringement that occurred after they sued Microsoft.  Similarly, if you find that Lucent and Multimedia Patent Trust, before filing this lawsuit, did not notify Dell by communicating a specific charge that the accused products infringed the asserted patents, then Lucent and Multimedia Patent Trust can only recover damages for infringement that occurred after they sued Dell.

Notice must come from the patent holder.  In considering whether Lucent and Multimedia Patent Trust gave notice of infringement in this case, you should consider the evidence of notice separately for each defendant.

**SOURCE:** AIPLA Model instruction 12.1 (2007) (modified to fit this case).

## 6.2 REASONABLE ROYALTY AS A MEASURE OF DAMAGES

In this case, Lucent and Multimedia Patent Trust seek damages in the amount of a reasonable royalty.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between the patent holder and Microsoft and Dell, operating under the assumptions that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin.  In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Microsoft and Dell was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed.  You must also assume that the patent holder would have been willing to grant a license.  Finally, you must assume that the patent holder and Microsoft and Dell knew all pertinent information at the time of the hypothetical negotiations.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 59, D.I. 1168 (Feb. 14, 2007)

**6.3 REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION**

In deciding what is a reasonable royalty, you may consider the factors that the patent holder and Microsoft and Dell would consider in setting the amount Microsoft and Dell should pay, assuming the patents are both valid and infringed.  You should consider all the facts known and available to the parties at the time the infringement began.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.      Whether plaintiffs have established a royalty for the patented inventions, for example, by granting other licenses at that royalty.

2.      Royalties paid by the licensee or by others for patents comparable to the patents-in-suit, if any.

3.      The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      Whether plaintiffs had a policy of licensing or not licensing the patent or granting licenses under special conditions.

5.      Whether plaintiffs and defendants are competitors or in an inventor/promoter commercial relationship.

6.      Whether being able to use the patented invention helps in making sales of other products or services.

7.      The duration of the patents and the term of the license.

8.      The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

9.      The advantages of using the patented invention over old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by plaintiffs; and the benefits to those who have used the invention.

11.     The extent to which the accused infringer has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the products or invention or analogous inventions.

13.     The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented processes, or features or improvements developed by the Defendants.

14.     Expert opinions as to what would be a reasonable royalty.

15.     The amount that plaintiffs and defendants would have agreed upon at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to sell a product embodying the patented invention -- would have been willing to pay as a royalty and yet able to make a reasonable profit

and which amount would have been acceptable by a patentee who was willing to grant a license.

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**SOURCE:** Post-Trial Jury Instructions for Audio Trial # 60, D.I. 1168 (Feb. 14, 2007); AIPLA Model Instruction 12.15.

**6.4 ENTIRE MARKET VALUE RULE**

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the entire product.  So, if you find that Lucent and Multimedia Patent Trust have proven by a preponderance of the evidence that customers demanded an entire accused product because of the patented feature, you may award damages based on the value of the entire product.  However, if you find that customer demand for the product is based on something other than the patented feature, you should award damages based on the value of the patented feature and not the value of the entire product.

**SOURCE:** Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware 5.6 (2003).

**6.5 FOREIGN SALES GENERALLY**

In considering the amount of infringing sales, you may not consider sales or downloads of the accused products that are made outside the United States.  You should not include these foreign sales or downloads in your calculations of a reasonable royalty.

**SOURCE:** 35 U.S.C. § 271(a) and (f); *Brown v. Duchesne*, 60 U.S. 183, 195 (1856) (United States patent laws "do not , and were not intended to, operate beyond the limits of the United States"); *Pelligrini v. Analog Devices, Inc*., 375 F.3d 1113, 1117 (Fed. Cir. 2004); *Microsoft v. AT&T Corp*., 127 S.Ct. 1746 (April 30, 2007).

**6.6 METHOD CLAIMS**

All of the asserted claims of the '356 and '272 patents are method claims.  You can only award damages for those instances where Lucent can prove by a preponderance of the evidence that a third party actually practiced the allegedly infringing method.

**SOURCE:** *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277-78 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 418 F.Supp2d 1021, 1042 (S.D. Ind. 2006 ("As a matter of law, [plaintiff's] damages for infringement [of the asserted claim] are limited to only those devices that can be shown to have executed the claimed method during the relevant infringement period"); *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F.Supp. 1525, 1543 (N.D. Ill. 1989).

## 7.0 UNLAWFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

The right of a person to pursue a lawful business and to enjoy the fruits and advantages of one's industry or efforts are rights which the law protects against unjustified and wrongful interference by another person. Thus, the law protects a person's interest in reasonable expectations of economic advantage.

In order for Microsoft and Dell to recover damages for a wrongful act, that wrongful act must be found to have interfered with a reasonable expectancy of economic advantage or benefit on the part of Microsoft and Dell.

Thus, Microsoft and Dell must prove the following elements:

1. The existence of a reasonable expectation of economic advantage or benefit belonging or accruing to Microsoft and Dell;

2 .That Lucent had knowledge of such expectancy of economic advantage;

3. That Lucent wrongfully and without justification interfered with Microsoft's and Dell's expectancy of economic advantage or benefit;

4. That in the absence of the wrongful act of Lucent it is reasonably probable that Microsoft and Dell would have realized their economic advantage or benefit; and

5. That Microsoft and Dell sustained damages as a result thereof.

If the act complained of does not rest upon some legitimate interest, or if there is sharp dealing or over-reaching, or other conduct below the behavior of fair men similarly situated, the ensuing loss to Microsoft and Dell should be redressed.

It is for you to determine whether Microsoft and Dell have established by a preponderance of the evidence all of the elements outlined above. If you so find, then you should return a verdict in favor of Microsoft and Dell. Otherwise, you should find for Lucent.

**SOURCE:** New Jersey Model Civil Jury Charges 3.30A & C (available at http://www.judiciary.state.nj.us/civil/civindx.htm).

**8.0 DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 3.1, available at http://www.ce9.uscourts.gov.

**8.1 USE OF NOTES**

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

**SOURCE:** -Trial Jury Instructions for Audio Trial # 65, D.I. 1168 (Feb. 14, 2007);

## 8.2 COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury.

No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.

If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 3.2, available at http://www.ce9.uscourts.gov.

61

**8.3 RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**SOURCE:** *Model Civil Jury Instructions for the Ninth Circuit* (hereinafter, "Ninth Circuit Model Instruction") 3.3, available at http://www.ce9.uscourts.gov.

1

## CERTIFICATE OF SERVICE

2

3          The undersigned hereby certifies that a true and correct copy of the above and foregoing

4   document has been served on February 19, 2008 to all counsel of record who are deemed to have

5   consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any

6   other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

7

8                                         /s/ Juanita R. Brooks_____
                                         Juanita R. Brooks
9                                         brooks@fr.com

10                                       Attorney for Intervenor/Counter-claimant
                                         and Plaintiff/Counter-defendant
11                                       MICROSOFT CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28