John E. Gartman (SBN 152300)
Juanita R. Brooks (SBN 75934)
Roger A. Denning (SBN 228998)
Christopher S. Marchese (SBN 170239)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California 92130
Telephone:     (858) 678-5070
Facsimile:      (858) 678-5099

Stephen P. McGrath (SBN 202696)
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Telephone:     (425) 882-8080
Facsimile:      (425) 936-7329

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC. and MULTIMEDIA PATENT TRUST, <br><br>Plaintiffs and Counterclaim-defendants,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>Intervenor and Counter-claimant, | Case No. 07-CV-2000 H (CAB) consisting of matters severed from consolidated cases:<br>02-CV-2060 B (CAB)<br>03-CV-0699 B (CAB)<br>03-CV-1108 B (CAB)<br><br>**MICROSOFT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO PRECLUDE TESTIMONY FROM WAYNE HOBERLEIN AND ROGER SMITH REGARDING SOFTWARE DOWNLOADS** |
| MICROSOFT CORPORATION,<br><br>Plaintiff and Counter-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant and Counter-claimant, | **Date:         February 27, 2008<br>Courtroom:    13<br>Honorable Marilyn L. Huff** |

1   LUCENT TECHNOLOGIES INC. and
    MULTIMEDIA PATENT TRUST,
2
            Plaintiffs,
3
    v.
4
    DELL, INC.,
5
            Defendant.
6

I.  INTRODUCTION

Microsoft Corp. submits this motion to preclude Multimedia Patent Trust ("MPT") from introducing any evidence or argument from its accounting expert, Wayne Hoeberlein, or its royalty expert, Roger Smith, that damages are owed for each or any "download" version of Windows Media Player.  Because any accrual of damages must be predicated on a discrete act of infringement, Mr. Hoeberlein and Mr. Smith, in forming their opinions, had to have had some basis for assuming that the downloads were infringing; in this case, such information could only have come from the expert reports of MPT's technical expert, Dr. Bernd Girod.  Dr. Girod, however, has now admitted on cross-examination that <u>none of his infringement reports discusses software downloads</u>.  Accordingly, there is no foundation for any opinion that the 800 million "downloads" add allegedly infringing software to the computers, so Mr. Hoeberlein and Mr. Smith have no reliable factual basis for including downloads in their calculations of damages.  Any testimony by either of these experts concerning Windows Media Player downloads would be nothing but unsubstantiated speculation.  Allowing MPT to elicit such testimony in front of the jury, trumpeting the number of downloads with a tabulation of $1.5 billion in damages, would be extremely confusing to the jury and irrevocably prejudicial to Microsoft.  Because testimony on downloads from Mr. Hoeberlein or Mr. Smith fails to satisfy the reliability requirements of Fed. R. Evid. 702, it must be precluded.

II.  BACKGROUND

On December 27, 2007, more than a year after the close of expert discovery, MPT's accounting expert, Wayne Hoeberlein, issued a report that included, for the first time, cryptic footnotes in two exhibits that purport to tabulate damages based on previously un-accused, free software download versions of Windows Media Player.  At his deposition on January 23, 2008, Mr. Hoeberlein explained that he included the tabulations at the request of MPT's lawyers based on the assumption that each of the 800 million downloads constitutes a separate act of infringement for which MPT may collect damages – a theory MPT had never before presented in this case, and one never discussed in the infringement report of MPT's technical expert, Dr. Bernd Girod.  Based on the unsupported assumption that each download infringes, MPT now claims

1 entitlement to $1.5 billion in damages beyond and in addition to the several billion it seeks as
2 damages for installations of Windows Media Player included in Microsoft's Windows operating
3 system.

4       When cross-examined at trial on Friday, February 22, 2008, Dr. Girod admitted that he
5 "[did not] recall discussing downloads of the software" in any of his expert reports. [Ex. A, Tr.
6 vol. III at 177:7-8.][1] Consequently, Dr. Girod had not determined whether any Windows Media
7 Player download actually added any new codecs to the user's computer that weren't already on the
8 computer to start with. [Id., Tr. vol. III at 177:3-8.] Dr. Girod, therefore, also admitted that he did
9 not analyze whether the downloads, in fact, only added non-accused code, such as bug fixes, or
10 some other update unrelated to the fundamental core of the Windows Media Player software. [Id.,
11 Tr. vol. III at 177:9-14.] Additionally, Dr. Girod conceded that, "[s]ince I'm not discussing
12 downloads in the reports," he also did not discuss whether the downloads were made to computers
13 inside or outside the United States, or whether those downloads originated from servers inside or
14 outside the United States. [Id., Tr. vol. III at 177:15-178:2.]

15 **III.    DISCUSSION**

16       Rule 702 of the Federal Rules of Evidence provides that an expert witness with "scientific,
17 technical, or other specialized knowledge" may testify in the form of an opinion "if (1) the
18 testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable
19 principles and methods, and (3) the witness has applied the principles and methods reliably to the
20 facts of the case." Fed. R. Evid. 702. As the Supreme Court has explained, this "relaxation of the
21 usual requirement of first-hand knowledge" for expert testimony is premised on an assumption
22 that the expert's opinion will have a reliable basis, and that the reasoning underlying the testimony
23 is valid. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592 (1993); *Jinro Am. Inc. v.*
24 *Secure Investments, Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001). However, "nothing in either
25 *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is
26 connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522
27 U.S. 136, 147 (1997).
28

The Ninth Circuit, affirming a decision of this Court, recently observed, "[t]he Court's analysis of the relevance and reliability of expert testimony is 'vital to ensure accurate and unbiased decision-making by the trier of fact.' . . . If evidence lacks either reliability or relevance it must be excluded." *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007) (quoting *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002).[2] Expert testimony is not admissible when it comprises only "unsubstantiated speculation and subjective beliefs." *Id.* at 942 (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)).

In tabulating damages for downloads of Windows Media Player, MPT's accounting expert had to have had some basis to assume that such downloads are infringing. In this case, this information could only have come from one source – the expert reports of MPT's technical expert, Dr. Bernd Girod, the only expert who has opined on infringement of the Haskell patent. However, Dr. Girod's testimony on cross-examination left no question that his reports contain no information that could have justified counting any download as a separate act of infringement, much less all of them:

> Q. Okay. But there's nothing in any of your reports on infringement that analyze whether any download of Windows Media Player adds any new codecs that weren't already in the computer to start with, is that correct?
> A. I don't recall discussing downloads of software specifically in the expert reports.
> Q. Okay. And nothing in your report analyzes whether the downloads were merely bug fixes that would – some other update that's unrelated to the fundamental core of the Windows Media Player software, right?
> A. I don't recall including such a discussion in any of my expert reports.

[Ex. A, Tr. vol. III at 177:3-14.]

Moreover, Dr. Girod confirmed that nothing in his expert reports addressed which downloads of Windows Media Player were made either to or from computers located inside the

---

[1] All references to exhibits refer to the declaration of John E. Gartman submitted concurrently with this motion.
[2] In patent cases, rulings on evidentiary matters are decided in accordance with regional circuit law. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999).

United States. [Id., Tr. vol. III at 177:15-178:2.] Under *Microsoft Corp. v. AT&T Corp.*, -- U.S. -, 127 S. Ct. 1746 (2007), the Supreme Court reiterated the general rule that no infringement occurs under U.S. patent law for products made in another country; and held that the exception found in Section 271(f) does not extend to copies of software made overseas. 35 U.S.C. § 271(f). Since Dr. Girod's reports provide no analysis of the geographic origin or destination of the downloads, MPT's damages experts have no basis for opining that all of the downloads qualify as infringing acts under *Microsoft v. AT&T*.

Besides no technical basis, there is also no reliable economic basis for any testimony from Mr. Hoeberlein or from Mr. Smith on downloads. Mr. Hoeberlein made clear in deposition that MPT's royalty expert, Mr. Smith, was responsible for providing opinions on both *the royalty rates* for each respective technology area, as well as *the base* that would result from the hypothetical negotiation; and that Mr. Hoeberlein merely "performed the royalty calculations based on those opinions." [Ex. B at 21:9-22:10.] Yet, contrary to this division of labor, Mr. Hoeberlein conceded that he never discussed downloads with Mr. Smith, nor did Mr. Smith mention downloads in his November 13, 2007 expert report. [Ex. B at 82:24-84:7.]

Indeed, Mr. Hoeberlein conceded he only included the download numbers because MPT's lawyers told him to. [Ex. B at 65:25-67:1.]

> Q. What spawned your idea in the latter part of December 2007 to suddenly start counting downloads?
> MR. BONDER: Objection. Actually mischaracterizes his testimony.
>     He testified just a moment ago that he was asked by counsel to include it, so the premise of your question makes no sense.
> A. Spawned my idea. It was discussion with counsel.
> Q. So it was counsel's idea, not yours.
> A. They requested that I include this tabulation in my report.

[Ex. B at 66:13-67:1.] When asked if he thought downloads were properly included, Mr. Hoeberlein could only say that he included the calculations in the event that "whomever determines that downloads should be included within the royalty calculation…." [Id. 69:7-18.]

Thus, any testimony by either Mr. Hoeberlein or Mr. Smith suggesting that damages are owed for each or any Windows Media Player download would be founded on nothing more than

baseless speculation that such downloads infringe.[3]  It would be highly prejudicial to Microsoft and extremely confusing to the jury to even hear the bare numbers with astronomical calculations that MPT wants to elicit through its damages experts.  This testimony must therefore be excluded under Rule 702.  *See Cooper*, 510 F.3d at 943 ("unsubstantiated speculation" and expert's "subjective beliefs" do not meet reliability requirements of Rule 702).

## IV.  CONCLUSION

For the foregoing reasons, MPT's accounting expert, Mr. Hoeberlein, and its royalty expert, Mr. Smith, should be precluded under Fed. R. Evid. 702 from testifying about any opinions, conclusions, assumptions, or calculations that would attribute damages to any "download" of Windows Media Player software.

Dated:  February 26, 2008                                       FISH & RICHARDSON P.C.

By:      /s/ John E. Gartman
John E. Gartman (SBN 152300)
gartman@fr.com

Attorneys for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION

---

[3]  This situation is not governed by *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed Cir. 2003), where the Federal Circuit held that it is not the trial court's duty, in evaluating a *Daubert* challenge, to decide between conflicting sets of facts upon which the parties' experts rely.  Rather, this is a case in which the expected damages testimony would rely on <u>no factual support whatsoever</u>.  *See EZ Dock, Inc. v. Schafer Sys., Inc.*, 2003 WL 1610781 at *6 (D. Minn. Mar. 8, 2003) (distinguishing *Micro Chemical* on this basis).

5                                           Case No. 07-CV-2000 H (CAB)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 26, 2008 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

 /s/ John E. Gartman_____
John E. Gartman
gartman@fr.com

Attorney for Intervenor/Counter-claimant
and Plaintiff/Counter-defendant
MICROSOFT CORPORATION