John E. Gartman, gartman@fr.com, (SBN 152300)
Juanita R. Brooks, brooks@fr.com, (SBN 75934)
Roger A. Denning, denning@fr.com, (SBN 228998)
Joseph P. Reid, reid@fr.com, (SBN 211082)
Frank J. Albert, albert@fr.com, (SBN 247741)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California 92130
Telephone:    (858) 678-5070
Facsimile:    (858) 678-5099

Attorneys for Defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCATEL-LUCENT USA, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 07-CV-2000 H (CAB)<br>consolidated cases:<br>03-CV-0699 B (CAB)<br>03-CV-1108 B (CAB)<br>02-CV-2060 B (CAB)<br><br>**MICROSOFT CORPORATION'S OPPOSITION TO LUCENT TECHNOLOGIES, INC.'S EX PARTE APPLICATION TO REQUEST A TELEPHONIC HEARING TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Honorable Marilyn L. Huff** |

Case No. 07-CV-2000 H (CAB)

I.     INTRODUCTION

Lucent's motion to compel completely misses the mark, not only mischaracterizing the documents being requested and the bases for Microsoft's refusals to produce them, but also the relevant legal standard to be applied.

The parties are back in this Court because the Federal Circuit concluded that "the jury's award of a lump-sum payment of about $358 million does not rest on substantial evidence and is likewise against the clear weight of the evidence." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009). Indeed, the Federal Circuit found that "[t]he only reasonable conclusion . . . [to] be drawn . . . is that the infringing use of Outlook's date-picker feature is a minor aspect of a much larger software program and that the portion of the profit that can be credited to the infringing use of the date-picker tool is exceedingly small." *Id.* at 1333. Thus, the relevant inquiry on remand is to measure that "exceedingly small" value of the '356 "date-picker" patent. To do that, Microsoft has agreed to search for and produce every license and settlement[1] it has entered into for patent rights[2], as well as any non-privileged negotiation documents that exist related to those settlements and licenses. Put another way, Microsoft has already agreed to give Lucent *every* actual financial transaction for patent rights into which it has entered. The effort involved is enormous but doable because Microsoft can start with the licenses and settlements—many of which were negotiated and signed many years ago—and work backward from those to trace down any existing negotiations or correspondence.

But even that won't satisfy Lucent. Instead, Lucent demands that Microsoft start at the *beginning* of every single patent assertion that has ever come into the company—whether by

---

[1] Although it will produce settlement agreements under the Federal Circuit's recent decision in *ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), Microsoft reserves the right to dispute the admissibility, relevance, and weight given to settlements compared to licenses.
[2] Microsoft initially objected to providing licenses, settlements, negotiation documents, and assertions for the non-Outlook portions of the Office Suite, *e.g.*, Word, Excel, PowerPoint, OneNote, Access, because of their lack of connection to the products at issue here. Indeed, because Lucent has never alleged that any programs in the Office Suite other than Outlook infringed the '356 patent and Lucent has never engaged in any discovery regarding Office's other constituent components, there is absolutely no indication in the record that Microsoft ever engages in "real-world negotiations . . . [for] comparable features within the Microsoft Office package" or that those programs "share the same economic context" as Outlook, as Lucent suggests. Nevertheless, to narrow the issues, Microsoft will, as indicated above, produce patent licenses and

letter, complaint, or otherwise—and then trace each one *forward* to its conclusion. Thus, Lucent's requests would have Microsoft scouring PACER for publicly-available complaints and trial transcripts, contacting every single outside counsel it has ever used in every jurisdiction to obtain the confidential expert reports and/or testimony from every single patent litigation ever filed against it, and contacting every single patent litigation opponent and/or opposing counsel to obtain permission to disclose such reports or testimony.[3] And the Court knows Microsoft would not be able to stop there. To protect itself and to explain the context of each of those documents, Microsoft would be forced to produce all of the *other* documents from those litigations: the *Markman* rulings, the summary judgment orders, the jury verdicts, the appellate opinions. In essence, to comply with Lucent's requests, Microsoft would have to reproduce every single one of its patent cases in this case, not to mention every other assertion letter or dialogue that ended without some kind of transaction.

But for what evidentiary benefit would Microsoft undertake all this work? For that is the part of the Rule Lucent conveniently omits. While Lucent's motion creates strawmen like confidentiality to knock down, it blatantly ignores the very language it is seeking to apply. Under Rule 26(b)(1), Lucent is entitled to "relevant" evidence that is admissible or "***reasonably*** calculated to lead to" admissible evidence. Here, none of the disputed materials are likely to be relevant or admissible, nor are they likely even lead to admissible evidence. But even if they were, ***all*** discovery "is subject to the limitations imposed by Rule 26(b)(2)(C)," which protects parties like Microsoft from having to produce documents where, *inter alia*, "the burden or expense of the proposed discovery outweighs its likely benefit."

As the Court can see, Lucent's untenable requests threaten to divert this case from its narrow focus on remand and turn it into a sideshow regarding how many times Microsoft has been sued and all of the exorbitant demands that have ever been made against it. The simple fact is that, by having access to all of Microsoft's licenses and settlements—gathering which will still require a tremendous amount of work—Lucent will have more than it needs to perform a damages

---

settlements for the accused products, the Office Suite of programs, and every other Microsoft product. But its effort should stop there and go no further.

analysis in this case. Accordingly, the Court should deny Lucent's motion and strike the offending requests.[4]

## II. ARGUMENT

### A. Discovery Under Rule 26(b)(1) Is *Not* Limitless.

Lucent repeatedly cites the portion of Rule 26(b)(1) indicating that the scope of discovery includes relevant but otherwise inadmissible materials that are "reasonably calculated to lead to the discovery of admissible evidence." (Lucent Techs., Inc.'s Ex Parte App. to Request a Tel. Hearing to Compel Prod. of Docx. (hereinafter "Mot.") at 5.) In doing so, however, Lucent pays mere lip service to the underlying requirement that such materials be "relevant to any party's claim or defense." And Lucent wholly ignores that "*reasonably* calculated" means in light of the limitations of Rule 26(b)(2)(C), which is expressly incorporated into Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."). Indeed, Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

---

[3] Indeed, in the earlier iterations of this case *both* sides' expert reports on damages referenced materials marked by *both* parties as confidential under the protective order.

[4] Lucent indicates in its motion that the materials it is requesting relate to the accused products, *i.e.*, Outlook, Money, and Pocket PC, as well as the Office Suite (which includes Outlook). That is technically true, as the requests addressed in Lucent's motion, requests served on May 4, 2010 and responded to on June 3, 2010, were limited to those products. But what Lucent fails to mention is that, on July 6, 2010, Lucent served two more interrogatories that implicate (and broaden) this very dispute. Specifically, interrogatories 37 and 38 mirror the document requests at issue here, asking Microsoft, *e.g.*, to "[i]dentify and describe all complaints filed in any United States District Court alleging" patent infringement. (Exh. A to the Decl. of Frank J. Albert in support of Microsoft's opposition to Lucent's *ex parte* application at Inerrog No. 37.) But those interrogatories are not limited to just the accused products, but rather expressly address "Microsoft Office, Microsoft Outlook, Microsoft Money, Microsoft Pocket PC, *or any Microsoft Windows Operating System, or any of their features*." (*Id.* (emphasis added).)
Microsoft's responses to these new interrogatories are not yet due. Moreover, it is unclear whether Lucent will voluntarily withdraw them, since they exceed the limits prescribed in the Court's August 14, 2006 order and Lucent itself refused to answer Microsoft interrogatories in excess of those limits after the audio coding trial. Nevertheless, if the Court decides Lucent's instant document requests are improper, Microsoft would also ask for a protective order against the new interrogatories.

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed. R. Civ. P. 26(b)(2)(C).

### B. Complaints, Expert Reports, Expert Testimony, and Incomplete Assertion Dialogues Do Not Shed *Any* Light on the Issues in this Remanded Case.

Lucent contends its requests for every assertion letter, complaint, expert report and expert testimony are relevant to this remand "because they shed light on Microsoft's patent negotiation policies and positions in negotiations for patent rights" by "providing the necessary negotiation context to allow a proper economic and technical comparison between real-world negotiations and the hypothetical negotiation." (Mot. at 6:10-13.) Microsoft fails to see how.

A complaint for patent infringement, by itself, sheds absolutely no light on the economic valuation of the underlying patent, let alone the value of the '356 date-picker patent at issue here. Nor does an assertion letter. And while protracted, detailed negotiations regarding a particular patent might yield some amorphous valuation information about that particular patent, in the absence of a completed license or settlement such information is inherently incomplete even as to that patent and still has absolutely nothing to do with the value of the completely unrelated '356 date-picker patent.

As the Court well knows, expert reports and testimony offered in litigation may represent the parties' relative aspirations with respect to damages, but typically they reach extremely disparate conclusions based on whether the proferring party is a plaintiff or defendant.[5] Making matters worse, parties on opposite sides often apply wholly different methodologies from each other, rendering their analyses incomparable to each other. In such cases, fact finders have

---

[5] Lucent claims its motion seeks only expert reports and testimony submitted, or given, by or on behalf of Microsoft, but when listing the requests on which it is seeking relief, Lucent also includes all of its corresponding requests seeking expert reports and testimony submitted or given by any

difficulty assessing the value of the patent-in-suit in that particular case. And yet here, Lucent believes such expert materials from wholly unrelated cases will help determine an issue, not about the patent(s) they actually analyze, but about the '356 date-picker patent that had nothing to do with that particular case or analysis. The bounds of "relevance" simply do not stretch that far.

Throughout its motion, Lucent attempts to justify its relevance claims by referring generically to "the *Georgia-Pacific* factors," but an examination of the actual language of those factors shows that none of them turn on what some other party demanded in some other case for some other patent, nor what Microsoft contended it should pay in some other case for some other patent. The closest factor is factor 2, which concerns "[r]oyalties **paid** by the licensee for the use of other patents **comparable** to the patents-in-suit." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). (emphasis added). By giving Lucent all of its licenses and settlements, *i.e.*, showing what Microsoft has paid for anything and everything, whether comparable or not, Microsoft will be more than complying with factor 2. The other materials sought by Lucent have no bearing on damages, particularly when compared to these actual financial transactions.

### C.  The Burden and Expense of Lucent's Demands Far Outweigh Any Likely Benefit.

Even if there were some miniscule kernel of relevance within unrelated complaints, assertion letters, expert reports, and expert testimony, they still fall outside the scope of proper discovery because they violate the benefit/burden calculus of Rule 26(b)(2)(C)(iii).

As noted above, Rule 26(b)(2)(C)(iii) forbids discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Here, that is certainly the case with Lucent's disputed requests.

Just to comply with Lucent's requests regarding complaints, expert reports, and expert testimony, Microsoft will need to, at least:

---

party other than Microsoft. *Compare* Mot. at 1:11-16, *with id.* at 4 (including Mot., at Ex. 1, Requests 412, 414, 429, 431, 446, 448, 463, and 465).

- Search PACER in every jurisdiction nationwide for every complaint filed by it or against it;
- Contact its outside counsel for each of those litigations (since often damages materials are marked "Outside Counsel Only");
- Determine if each such outside counsel has maintained expert materials from its litigation(s) on behalf of Microsoft (since often such materials must be destroyed pursuant to the relevant protective order);
- Contact each opposing counsel and opposing party for each of the litigations in order to seek permission to disclose such protected materials.

Compared to the minimal benefit such materials would provide—particularly when compared to the set of settlements and licenses Microsoft will be producing—the burden of such an undertaking is simply unwarranted. And, while the lack of success of Lucent's various damages theories in this case may motivate Lucent to want to see what methodologies other parties have employed, such a fishing expedition is not countenanced by the Rules and courts have denied similar requests for far more limited sets of information.[6] *See, e.g., SSL Servs., LLC v. Citrix Sys., Inc.*, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010) (denying motion to compel production of five damages reports in unrelated litigations, noting that "[t]he benefit of saving litigation expenses by short-cutting the damages analysis does not affect the burden-benefit analysis"); *Dering v. Serv. Experts Alliance LLC*, 2007 WL 4299968, at *2-3 (N.D. Ga. Dec. 6, 2007) (denying motion to compel the production of 43 reports, and finding the burden "outweighs the limited probative value" where the majority were subject to protective orders).

### D. Microsoft Should Not Be Required to Produce Publicly-Available Complaints and Trial Testimony, Particularly When Lucent Has Refused to Comply with Similar Requests.

While the burden of clearing confidentiality concerns does not apply to complaints or publicly-available expert testimony, the fact that such materials are freely and equally available to

---

[6] Lucent's cited case, *Expeditors Int'l of Wash., Inc., v. Vastera, Inc.*, 2004 WL 406999 (N.D. Ill. Feb. 20, 2004), is inapposite because it pertained to the request for reports and testimony for *one* damages expert, not potentially hundreds of experts in every litigation ever involving all of Microsoft's products. The burden involved here is thus far greater than that on the defendant in *Expeditors*.

Lucent provides yet another ground to keep these materials outside the proper scope of discovery. Indeed, Rule 26(b)(2)(C)(i) expressly forbids discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Here, Lucent can search PACER just as easily as Microsoft and, given the temporal and subject matter breadth Lucent is asking for, that is exactly what Microsoft would have to do.

### III. CONCLUSION

For the foregoing reasons, Microsoft respectively requests that the Court deny Lucent's motion to compel the production of complaints, expert reports, expert testimony, and non-privileged negotiation materials that do not relate to executed settlements and licenses. In addition, Microsoft requests a protective order against Lucent's corresponding, pending interrogatories.

Dated: July 19, 2010                         FISH & RICHARDSON P.C.


By: _____
    Frank J. Albert
    albert@fr.com

Attorneys for Defendant
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 19, 2010 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Frank J. Albert
albert@fr.com

Attorney for Defendant
MICROSOFT CORPORATION