1   David A. Hahn, SBN 125784
    DAVID A. HAHN, ATTORNEY AT LAW
2   400 10th Street
    Coronado, California 92118
3   Telephone: (619) 235-2100
    Facsimile: (619) 235-2101
4

5   Attorney for *Lucent Technologies Inc.*

6   *(Additional Counsel listed on the last page)*

7

8               UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11  LUCENT TECHNOLOGIES INC.,              Case No. 07-CV-2000-H (CAB)

12                  Plaintiff,
                                           **LUCENT'S REPLY MEMORANDUM
13          v.                             IN SUPPORT OF ITS MOTION FOR
                                           SANCTIONS**
14  MICROSOFT CORPORATION,
                                           **[PUBLIC VERSION]**
15                  Defendant.

16

17                                         Date:        May 16, 2011
                                           Time:        10:30 a.m.
18                                         Courtroom:   13, 5th Floor
                                           Judge:       Hon. Marilyn L. Huff
19

20

21

22

23

24

25

26

27

28

# Table of Contents

I.     INTRODUCTION................................................................................................1

II.    ARGUMENT...................................................................................................2

    A.    MICROSOFT SHOULD HAVE PRODUCED THE WITHHELD STUDIES. .....2

    B.    MICROSOFT TESTIMONY WAS MISLEADING............................................6

    C.    "I DON'T KNOW" IS NOT A DEFENSE.......................................................8

    D.    MICROSOFT MISREPRESENTED ITS LICENSING PROGRAM....................9

    E.    THE COURT SANCTIONED MICROSOFT FOR THE JOHNSON SURVEY.................................................................................................9

    F.    LUCENT FOLLOWED THE RULES IN ITS MOTION FOR SANCTIONS.......9

III.    CONCLUSION ................................................................................................10

## I.  **INTRODUCTION**

Taking the approach that the best defense is a strong offense, Microsoft blames Lucent for Microsoft's failure to produce the Withheld Consumer Studies.  According to Microsoft, Lucent should have deduced from Microsoft's production of a single, 7-page consumer study amidst a 1,250,000-page production that many more such studies existed, and should have pressed Microsoft to produce them earlier, despite deposition testimony from Microsoft professing no knowledge about such documents.  The argument betrays a troubling perspective:  in Microsoft's view, a party obtaining discovery should assume that the disclosing party has not provided all that has been requested.  Of course, that is not the law.  Upon receipt of Lucent's discovery requests, it was Microsoft's duty to undertake a reasonable search for documents.  *See, e.g., A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery" and "is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control." (citation omitted)).  And, contrary to Microsoft's arguments, a boilerplate "overbreadth" objection does not, particularly in the face of an actual production, eviscerate that duty.  *See, e.g., Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections in response to discovery requests are insufficient to preserve a party's objection); *see also A. Farber*, 234 F.R.D. at 188.

All the while blaming Lucent, Microsoft offers no valid explanation for its own failure to produce the documents.  Lucent's discovery requests covered the Withheld Consumer Studies.  Microsoft even produced one in response to them.  But Microsoft offers no explanation as to why more of the studies, if not all of them, were not timely disclosed.  The silence is particularly troubling given that a simple conversation with someone like Mr. Kennedy would have led Microsoft to the documents.  Instead, Microsoft chose to have that conversation for purposes of its own ends at trial, where Mr. Kennedy testified about the Withheld Consumer Studies, albeit in a misleading manner.

As alternative grounds to justify its discovery conduct, Microsoft labels the Withheld Consumer Studies as "irrelevant."  There are two problems with that tactic.  First, discovery is not

1  bounded by Microsoft's judgment about what is relevant to Lucent's case. *See Bryant v. Mattel,*

2  *Inc.,* CV 04-09049, 2007 WL 5430893, *5 (C.D. Cal. May 18, 2007) (rejecting party's unilateral

3  determination of relevancy as reason for withholding documents) (Ex. U); *Hampton v. City of San*

4  *Diego,* 147 F.R.D. 227, 229 (S.D. Cal. 1993) (discoverability "is construed broadly and includes any

5  matter that bears on any issue that is or may be in the case."). Second, the documents *are* relevant,

6  at least with respect to the *Georgia Pacific* Factors 9, 10, 11, and 13. *See Lucent Techs., Inc. v.*

7  *Gateway, Inc.,* 580 F.3d 1301, 1332–35 (Fed. Cir. 2009). Microsoft certainly found the Withheld

8  Consumer Studies to be relevant at trial, when it elicited testimony from Mr. Kennedy that

9  consumers do not use the Outlook calendar, suggesting that the Day Patent technology was not

10  valuable. Of course the Withheld Consumer Studies actually show the opposite—the vast majority

11  of Outlook customers do in fact use the Outlook calendar. As Microsoft recognized, the popularity

12  of the Calendar, and its forms that use the Day Patent human-computer interaction technology, is

13  evidence of the patent's value.

14        Microsoft's defense of the misleading testimony proffered on its behalf fares no better. It

15  rests on argument and interpretation that simply do not square with the record. Microsoft's

16  witnesses were, at best, reckless in providing incorrect testimony about the Withheld Consumer

17  Studies and Microsoft's licensing practices. Whether Microsoft's FED. R. CIV. P. 30(b)(6) witnesses

18  were, as Microsoft sensationalizes it "liars," is beside the point. Lucent had the right to rely on

19  Microsoft presenting knowledgeable persons, and Microsoft admittedly failed to deliver.

20        Finally, Microsoft's procedural arguments are also unavailing. Neither the Court's meet-

21  and-confer rules nor its scheduling order regarding discovery issues pertains to a motion for

22  sanctions. The issue is not compelling more discovery from Microsoft. The issue here is

23  Microsoft's accountability to Lucent and the Court for a pattern of discovery abuse that Microsoft

24  cannot and has not explained away.

25  **II.    ARGUMENT**

26        **A.    MICROSOFT SHOULD HAVE PRODUCED THE WITHHELD STUDIES.**

27        Lucent requested documents regarding consumer use of Outlook, Money, and Windows

28  Mobile/Pocket PC, Microsoft's assessment of the value of these products, its assessment of its

1   competition in these product areas, and other consumer and market research regarding these

2   products. (*See, e.g.*, D.I. 1199-4, Ex. B at Nos. 24, 191, 260, 286, 288.) In addition, Lucent

3   requested Rule 30(b)(6) testimony on topics related to, among other things, Microsoft's marketing,

4   consumer research, and valuation of the accused products. (D.I. 1199-4, Ex. C at Nos. 11, 12, 13,

5   26, 30.) The Withheld Consumer Studies fall squarely within these requests. In defending its

6   decision not to produce the documents, Microsoft raises two arguments: (i) Microsoft objected to

7   the requests as overbroad and vague; and (ii) the documents are irrelevant. Both arguments fail.

8         Blanket form objections—that Microsoft copied and pasted into almost every one of its

9   discovery responses—do not excuse Microsoft from its discovery obligations. *See, e.g., Burlington*,

10  408 F.3d at 1147, 1149 (general boilerplate objections in response to discovery requests did not

11  satisfy the demands of Rule 26(b)(5) and Rule 34); *see also A. Farber*, 234 F.R.D. at 188; *Moore v.*

12  *Napolitano*, 2009 WL 2450280, *4–5 (D.D.C. Aug. 7, 2009) (Ex. T) (Conclusory objections coupled

13  with a production of documents leaves the opposing party "wondering what documents are being

14  produced and what are being withheld" as the objections only "obscure potentially discoverable

15  information and provides no mechanism for either plaintiffs or the court to review a defendant's

16  decisions."). Such boilerplate objections, particularly given what Microsoft chose to produce, did

17  not provide notice that Microsoft decided to withhold thousands of consumer survey documents.

18  (D.I. 1207-2; D.I. 1207-3.) Indeed, Microsoft deemed the Withheld Consumer Studies important

19  enough to invoke them at trial and knew whom to ask about them when it suited its own ends. And

20  Microsoft offers no explanation whatsoever for its failure to put the same sorts of questions to its

21  employees when it came to Lucent's rights to discovery.

22        Microsoft's arguments that terms like "market study" are vague and ambiguous likewise fail.

23  They ring particularly hollow in view of what Microsoft eventually produced on remand: ████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████

26

27

28

1 ███████████████████████████████████████ (Ex. A[1], MSLT_1270704).

2 Indeed, many of these studies come from the aptly-named internal website ████████

3 ████ (*See, e.g.,* Ex. B at MSLT_1270802; Ex. A at MSLT_1270704.)  A reasonable search of documents

4 using the terms "market research" or "study" in connection with the names of the infringing products

5 would have returned these and many other similar documents.

6       Microsoft next tries to excuse its conduct by calling the Withheld Consumer Studies

7 irrelevant.  This argument fails for two simple reasons.  First, the bounds of discovery are liberal,

8 and most certainly not limited by Microsoft's myopic definition of what is relevant to Lucent's case.

9 *See Bryant*, 2007 WL 5430893 at *5 (rejecting party's unilateral determination of relevancy as

10 reason for withholding documents); *Hampton*, 147 F.R.D. at 229 (discoverability "is construed

11 broadly and includes any matter that bears on any issue that is or may be in the case.").

12       Second, the documents *are* relevant.  In arguing to the contrary, Microsoft maintains that

13 because the documents do not mention the so-called "date picker" (Microsoft's internal name for the

14 drop-down calendar tool),[2] Federal Circuit law prohibits their use to support damages.  (*See, e.g.,*

15 Opp. at 22.)  Microsoft is wrong.  The law encourages a jury to consider the value of the patented

16 feature within Outlook and evidence *probative* of that value; it does not limit the jury's consideration

17 to documents that specifically reference the patented technology itself.  *Lucent*, 580 F.3d at 1333

18 (*Georgia Pacific* Factor 11 relates to use of the invention "***and evidence probative of the value of***

19 ***that use***").  That is particularly true in view of fact and expert evidence that links the functionality of

20 the Outlook forms with the Day Patent technology.  As explained by Mr. Tognazzini, documents

21 such as those withheld by Microsoft—that show consumer use of various modules and forms in the

22 Outlook, Money, and Mobile programs—are relevant because those products are almost entirely

23

24 ───────────────

[1] Unless otherwise indicated, references to Ex. [ ] refer to exhibits attached to the Declaration of

25 Jeanne M. Heffernan filed concurrently herewith.  All emphasis has been added.

[2] Microsoft states that of the over 200,000 pages produced on remand "[o]nly four of the new

26 documents deal with the date picker." (Opp. at 1.)  This is false.  Lucent presented *examples* of

27 what Microsoft withheld from Lucent.  Further examples include email and design documents discussing the Day technology. (*See, e.g.,* Exs. E–I.)

28

form-based and the Day Patent technology provides key functionality for them.  (Ex. C at 15–19,

36–38, 60–66, 75–77.)  In addition, the Deborah Jay Survey as well as some of Microsoft's own

internal documents confirm the important role of the Day Patent technology in Outlook, Money, and

Mobile.  (Ex. D at 2–5.)

   Microsoft forgets that it, too, recognized the link between use of various modules in the

infringing products and use of the Day Patent technology.  Referring to the Withheld Consumer

Studies at trial, Mr. Kennedy linked the purported lack of calendar module usage with lack of

infringement when testifying—incorrectly—that many Outlook users do not use the Outlook

calendaring module.[3]  (*Compare* D.I. 1199-4, Ex. G, Mar. 14, 2008 Trial Tr. at 53:10–23 *with* D.I.

1199-4, Ex. H (████████████████████████████), D.I. 1099-4, Ex. I

(████████████████████████████████), *and* D.I. 1199-4, Ex. J (███████████

████████████████████).)  Microsoft understood then, just as it

understands now, that use of the patented human-computer interaction technology in the infringing

programs is tied to how consumers use those programs.  Microsoft's trial and appeal strategy, in

which it pointed to the lack of such evidence at every turn, belies its current claim that the

documents were not relevant and did not need to be produced.

   As for documents that Microsoft withheld and that expressly refer to the calendar

composition tool claimed in the Day Patent, Microsoft argues that since it produced one, the fact that

it did not produce more matters not.  Specifically, Microsoft claims that these documents are

identical to the December 1995 "Ren" (Microsoft's internal code name for Outlook) usability study.

(D.I. 1199-4, Ex. D.)  But that is not true.  These particular four withheld documents deal with

different products and different customer comments regarding the use of drop-down calendars:

---

[3] Mr. Kennedy's trial testimony undercuts Microsoft's claim that it was not required to disclose the withheld documents as part of its initial disclosures under Rule 26(a) because "it did not intend to use any of it to support its claims or defenses." (Opp. at 21.)  Mr. Kennedy also relied on these materials at trial when he testified that he had never seen any customer feedback related to the "date picker." (D.I. 1199-4, Ex. G at 54:19–23.)  Microsoft relied on these materials when presenting its defense and was required to disclose the documents under Rule 26.

- The first withheld document is a usability study on Microsoft *Money*, a different product that contains not only a drop-down calendar tool but also the drop-down number pad tool. (D.I. 1199-4, Ex. Z.) The Money study compares two different versions of the product, Money 95 and Money 97, only the latter of which contained a "date-picker." When users tried Money 95 they specifically asked for inclusion of the Day technology.

- The two withheld studies on early *Pocket PC* versions are design documents where a Microsoft employee asked for a "date picker" to be included in the final product. (D.I. 1199-4, Exs. AG, AH.) The studies indicate that users already expected inclusion of the Day technology as far back as 1997.

- █████████████████████████████████████████████

## B.    MICROSOFT TESTIMONY WAS MISLEADING.[4]

Mr. Numoto offered misleading testimony about Outlook surveys. In response, Microsoft argues that he was only designated to give "general marketing testimony about Office" (Opp. at 3, 10), and points to an e-mail sent *after* Mr. Numoto's deposition. But *during* Mr. Numoto's deposition, Microsoft's counsel confirmed that Mr. Numoto was designated with respect to Outlook in particular:

> Lucent was notified that Mr. Numoto would be Microsoft's 30(b)(6) designee with respect to Topics 11 to 13, 15, 16, and 26 of Lucent's November 25, 2005 deposition notice regarding damages issues as those topics related to the accused application programs and as defined in Definition No. 11 of Page 9 of the same notice, as *those accused application programs would include Microsoft Outlook* . . . .

(Ex. J at 200:11–23 (emphasis added); 35:14–16; 201:22–202:10.) The enumerated topics specifically cover, for example, "market share reports," "market studies," and "consumer surveys." (*See, e.g.*, D.I. 1199-4, Ex. C at No. 13.)

Microsoft argues, years later, that Lucent should not have asked Mr. Numoto about the studies that it designated Mr. Numoto to testify about. Rather, explains Microsoft, Lucent should have asked Mr. Kennedy about Outlook studies because Mr. Numoto told Lucent that Mr. Kennedy had knowledge about consumer usage of Outlook. (Opp. at 12–13.) The Court should reject that anachronistic argument as well: Mr. Numoto testified *two months after* Mr. Kennedy, and three

---

[4] Microsoft does not dispute, because it cannot, that Mr. Paul-Jones affirmatively testified that Microsoft did not maintain a repository of past surveys. That testimony was not correct.

1   weeks after the close of fact discovery.  At the end of the day, it was Mr. Numoto—*not* Mr.

2   Kennedy—whom Microsoft designated as its Rule 30(b)(6) witness on Outlook consumer surveys.

3          Microsoft also faults Lucent for being surprised by Mr. Kennedy's trial testimony.

4   According to Microsoft, if Lucent had only asked Mr. Kennedy about consumer usage of Outlook at

5   his deposition, he would have revealed the trove of consumer studies Microsoft had withheld for the

6   past two years.  Lucent would have asked the question if Microsoft had designated Mr. Kennedy on

7   those topics.  But Microsoft did not.  Microsoft designated Mr. Kennedy to testify on technical

8   topics related to Outlook and designated Mr. Numoto to testify about Outlook consumer surveys.

9          On November 8, 2005, Lucent served a Rule 30(b)(6) deposition notice directed to technical

10  topics.[5]  On January 5, 2006, Microsoft confirmed that the noticed deposition on Outlook would go

11  forward on January 13, 2006.  (Ex. K)  The witness who showed up that day was William Kennedy,

12  Microsoft's Rule 30(b)(6) designee on Outlook technical topics.  (Ex. L at 12:15–18.)  Up until that

13  point in the litigation, Lucent had not even heard of Mr. Kennedy.  In fact, in the 1.25 million pages

14  of documents Microsoft produced prior to the 2008 trial, *not a single document mentions William*

15  *Kennedy* aside from a handful of documents related to a patent application on which he was a named

16  inventor.  (Dobszewicz Decl. ¶ 5.)  Nor had Microsoft disclosed Mr. Kennedy in any of the Rule

17  26(a) initial disclosures or interrogatory responses it had served up to that point. (Ex. M; Heffernan

18  Decl. ¶ 3.)  Lucent therefore had no reason to question Mr. Kennedy about Mr. Numoto's topics.

19         It was a surprise, and an unfair one at that, when Microsoft affirmatively elicited testimony

20  from Mr. Kennedy at trial that Microsoft had conducted "literally thousands of these usability

21  studies" for Outlook.  "Generally, the purpose of discovery is to remove surprise from trial

22  preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *A.*

23  *Farber*, 234 F.R.D. at 188 (internal citations omitted).  More surprising still—and untrue—was Mr.

24  Kennedy's testimony that most Outlook users do not use the Calendar module.  (*See supra* at 5.)

25

26  [5] Lucent served two Rule 30(b)(6) notices related to this motion in November 2005: one expressly
27  directed to damages topics (it is that notice that included topics directed to consumer surveys and
    marketing studies) and one expressly directed to technical topics.  (Ex. N; D.I. 1199-4, Ex. C.)

28

1   Microsoft claims that such testimony is consistent with the documents produced on remand,

2   and argues that the studies disproportionately represent office workers, who are more likely to use

3   electronic calendars.[6] But Outlook is "housed" in the "Information Worker" product group at

4   Microsoft. (Ex. O at 10.) ███████████████████████████████████

5   ███████████████████████████████████████████████

6   ███████████████████████████████████████████

7   ███████████████████████████████████████████████

8   ████████████████████████████████ (Ex. J at 127:6–10.) Indeed, Mr.

9   Kennedy found the studies to be representative of the Outlook population when he referred to them

10  at trial, falsely claiming they show that most Outlook users do not use the Outlook calendar.[7]

11  **C.    "I DON'T KNOW" IS NOT A DEFENSE.**

12  Microsoft hopes to excuse the incorrect testimony of its corporate designees by cataloguing

13  their repeated "I don't know" answers. (*See, e.g.*, Opp. at 11 ("[Mr. Numoto] just said he didn't

14  know."); Opp. at 14–15 ("Mr. Paul-Jones testified that he was not aware of such a study, not that no

15  such a study existed somewhere within Microsoft.").) But "don't know" is no excuse. The self-

16  professed lack of knowledge of each of Microsoft's designees is tantamount to failing to appear for a

17  deposition and warrants sanctions pursuant to Rule 37(d)(3). *See Southern Cal. Stroke Rehab.*

18  *Assoc., Inc. v. Nautilus*, 2010 WL 2998839, *1–3 (S.D. Cal. July 29, 2010) (D.I. 1199-4, Ex. BE).

19  Microsoft faults Lucent for not asking for better-prepared witnesses to testify about the Withheld

20  Consumer Studies. Having received no such studies during discovery, Lucent had no reason to

---

[6] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████

[7] Microsoft claims that it was the Federal Circuit's decision, and not Mr. Kennedy's trial testimony,
that prompted Lucent to request Microsoft's consumer studies and marketing research on remand.
(Opp. at 4.) The Federal Circuit did not testify that Microsoft had run "literally thousands of these
usability tests;" Mr. Kennedy did. In fact, the Federal Circuit decision did not even mention
Microsoft's internal usability studies.

1  know that the studies existed or that the witnesses were providing incorrect testimony about them.

2  **D.     MICROSOFT MISREPRESENTED ITS LICENSING PROGRAM.**

3  Microsoft tries to recast Dr. Sullivan's testimony as if there were some express understanding

4  that his testimony about patent license agreements did not include patent license agreements

5  achieved through settlement.  Microsoft similarly tries to recast its statements in court filings related

6  to industry royalty rates. (Opp. at 17–19.)  But Dr. Sullivan's *actual* testimony is directly

7  contradicted by the evidence and Microsoft documents show that Microsoft and the industry

8  employed a 1-5% royalty rate. (Mot. at 19–20.)  Regardless of whether Microsoft believes the

9  evidence would have been persuasive, Lucent should have had the opportunity to present it.

10  **E.     THE COURT SANCTIONED MICROSOFT FOR THE JOHNSON SURVEY.**

11  On the subject of the Johnson Survey, Microsoft yet again revises history.  According to

12  Microsoft, Lucent "lost" the motion for sanctions on that issue, and the Court exonerated Microsoft

13  of any wrongdoing.  That is just not true.  It was Lucent who requested—as a sanction—that

14  Microsoft be precluded from introducing the results at trial.  The Court granted that request, leaving

15  for future consideration Lucent's additional requests for relief. (D.I. 1207-25 at 3, 8.[8])  In so

16  ordering, the Court did not find that "Microsoft acted in good faith." (Opp. at 20.)

17  **F.     LUCENT FOLLOWED THE RULES IN ITS MOTION FOR SANCTIONS.**

18  Microsoft's procedural objections to Lucent's motion confuse efforts to obtain additional

19  discovery with seeking sanctions.  Local Rule 26.1 ("Deposition and Discovery") disputes involve

20  *pending* requests for *supplemental* discovery.  *See, e.g., Gen-Probe Inc. v. Becton, Dickinson & Co.*,

21  2011 WL 997189, *2 n.3 (S.D. Cal. Mar. 18, 2011) (Ex. Q); *Brooks v. Motsenbocker Adv. Devs.*,

22  2009 WL 414600, *1 (S.D. Cal. Feb. 18, 2009) (Ex. R).  Lucent does not seek additional discovery,

23  and there were no pending discovery issues to narrow during a meet-and-confer.[9]  The Scheduling

24

---

25  [8] Moreover, the Court ordered that Lucent may question Mr. Johnson about the survey, and refused
    to strike Mr. Johnson's deposition testimony pertaining to his survey. (D.I. 1180 at 5; D.I. 1207-25
26  at 6.)

27  [9] Rule 37(d)(1)(B) does not require parties to meet and confer before filing a motion for sanctions
    when a witness fails to appear at a deposition. *E.g., MCI Worldcom Net. Servs. v. Atlas Excavating*,
28  (Continued...)

1    Order also does not bar the Court's consideration of Lucent's motion. The Order indicates that the

2    meet-and-confer requirement and 30-day filing window relate to motions to compel discovery, not

3    motions for sanctions. (D.I. 969, ¶ 2.) The provision of the Local Rules under which Lucent

4    brought its motion, Local Rule 83.1, specifically governs motions for sanctions in this Court and

5    does not require a pre-filing meet-and-confer. CivLR 83.1 (titled "Sanctions for Noncompliance

6    with Rules"); (D.I. 1199 at 8, 21.[10])

7          Finally, the Court's inherent authority to impose sanctions is more flexible than Microsoft

8    represents.[11] (Opp. at 24.) A court need not find "subjective bad faith" in order to sanction a party

9    under its inherent power. Rather, the Court may sanction Microsoft under its inherent authority if it

10   finds "conduct tantamount to bad faith" or for "misstatements of law and fact, when coupled with an

11   improper purpose." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107–08 (9th Cir. 2002). Those

12   factors are present here and sanctions are warranted.

13   **III.    CONCLUSION**

14         For all of the foregoing reasons and those set forth in its opening memorandum, Lucent

15   requests that the Court grant Lucent's Motion for Sanctions.

16

17   Dated: April 25, 2011              Lucent Technologies Inc.

18                                      By:___/s/ David A. Hahn_____

19

20   _____

21   *Inc.*, 2004 WL 755786, *2, n.1 (N.D. Ill. Feb. 23, 2004) (Ex. S) (stating that a certification "is not necessary when imposing sanctions for failure to provide a Rule 30(b)(6) witness.").

22   [10]Microsoft argues that it is not subject to sanctions under Rule 37(b) because Lucent did not identify a court order that Microsoft allegedly violated. (Opp. at 21.) However, Lucent stated that Microsoft

23   violated the Court's scheduling order when it failed to produce the Withheld Consumer Studies prior to the close of discovery before the first trial. (D.I. 1199 at 10.)

24   [11] Microsoft relies on *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291 (Fed. Cir.

25   2009), for the premise that the Court may not use its inherent powers to award sanctions if sanctions would be impermissible under Rule 37. (Opp. at 24.) But *ClearValue* is a Federal Circuit opinion

26   applying Fifth Circuit law. *Id.* at 1309. Furthermore, the Court *affirmed* the imposition of monetary

27   sanctions under Rules 26 and 37 for withholding relevant test results, despite the sanctioned party's contention that the documents were "irrelevant." *Id.* at 1298, 1310.

28

David A. Hahn (SBN 125784)
DAVID A. HAHN, ATTORNEY AT LAW
400 10th Street
Coronado, California 92118
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Luke L. Dauchot (SBN 229829)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Jeanne M. Heffernan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for *Lucent Technologies Inc.*