1  David A. Hahn, SBN 125784
   DAVID A. HAHN, ATTORNEY AT LAW
2  400 10th Street
   Coronado, California 92118
3  Telephone: (619) 235-2100
   Facsimile:   (619) 235-2101
4

5  Attorney for *Lucent Technologies Inc.*

6  *(Additional Counsel listed on the last page)*

7

8  UNITED STATES DISTRICT COURT

9  SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  LUCENT TECHNOLOGIES INC., | Case No. 07-CV-2000-H (CAB) |
| 12           Plaintiff, | |
| 13      v. | **LUCENT'S MOTION IN LIMINE NO. 4 TO PRECLUDE FROM EVIDENCE MICROSOFT'S DAMAGES FIGURE** |
| 14  MICROSOFT CORPORATION, | |
| 15           Defendant. | Date:        June 10, 2011 |
| 16 | Time:        10:30 a.m. |
|    | Courtroom: 13, 5th Floor |
|    | Judge:       Hon. Marilyn L. Huff |

## I. BACKGROUND

Microsoft's entire damages case rests on the testimony of a single Microsoft employee—Mr. Kennedy—and his unsigned, unsworn declaration to the effect that Microsoft would pay no more than $2 million or $5 million for the Day Patent technology, depending on whether the license is restricted or unrestricted. (Ex. G, Undated, Unsigned Decl. of William Kennedy ("Kennedy Decl.") ¶¶ 7–8.) Professor Mnookin, Microsoft's damages-related expert, relies solely on Mr. Kennedy's say-so in reaching the same "conclusion." Professor Mnookin does so by assuming that Mr. Kennedy's unsupported assertions are accurate. (Ex. E, Expert Report of Professor Robert H. Mnookin dated Mar. 10, 2011 at 6–7, ¶¶ 3, 5, 6.) No independent verification of Mr. Kennedy's damages numbers was ever conducted.[1]

Mr. Kennedy has not explained how he determined what Microsoft would be willing to pay for the Day Patent technology in 1996. In his declaration, he purports to *believe* that removing the drop down calendar feature would not have measurably impacted Microsoft's sales of Outlook. (Ex. G, Kennedy Decl. ¶ 6.) Based on that assumption, Mr. Kennedy then estimates that if Microsoft had sought a license from Lucent in 1996, it would not have paid more than $2 million for the right to use the Day Patent technology in Outlook and no more than $5 million for an unrestricted license to that technology. (*Id.* ¶¶ 7–8.) The whole of Mr. Kennedy's "analysis" amounts to these two paragraphs:

> 7. Microsoft may have been willing to pay some amount simply to include the date-picker as one additional way for the user to enter a date in Outlook, but because there were adequate alternatives already in the product, Microsoft would not have placed a great deal of value on being able to include the date-picker tool. Based on the relative unimportance of the date-picker feature and the ready availability of alternatives, and based on my experience and position at Microsoft, Microsoft would not have agreed to pay more than $2 million to include the date-picker tool in Outlook in 1996. Above that amount, Microsoft simply would have removed the date-picker tool from Outlook.
>
> 8. In 1996, Microsoft would not have taken a license to the '356 patent that included a field of use restriction that limited the license to the Outlook product. Accordingly, Microsoft would have been willing to pay somewhat more for an unrestricted license to the '356 patent, which would allow Microsoft to use the patented technology in other products, including Microsoft Money and Windows Mobile. Based on the ready alternatives available to Microsoft, and based on my

---

[1] Professor Mnookin's reliance on Mr. Kennedy's so-called "business judgment" is addressed in Lucent's Motion *In Limine* No. 2 To Preclude Robert Mnookin From Testifying At Trial, which is hereby incorporated by reference.

experience and position at the company, Microsoft would not have paid more than $5 million for a fully paid-up, unrestricted license to the '356 patent in August of 1996.

(Ex. G, Undated, Unsigned Decl. of William Kennedy at ¶ 7–8.)

Mr. Kennedy's deposition testimony is no more enlightening. Indeed, he refused to explain how he determined this range. When asked about the basis for his damages number, Mr. Kennedy repeatedly invoked the attorney-client privilege. (Ex. H, Kennedy Dec. 2, 2010 Dep. Tr. at 94:7–96:4; 159:20–164:11.)

At a hearing before this Court on January 10, 2011, counsel for Microsoft conceded that the figure was an arbitrary assessment on the part of Microsoft and its counsel as to what figure would be palatable to a jury:

> MS. BROOKS: The way he came up with it, your Honor, is that if it were just for the purpose of Outlook, he essentially took the $31,200 and times it I think by about 65. That came up with two million, and --
>
> MR. BONDOR: Your Honor, that -- I'm sorry, but counsel is just grossly misrepresenting what Mr. Kennedy said under oath. What Mr. Kennedy said under oath is I considered how much it would be worth it to Microsoft to have the ability to put in Outlook and then how much it would -- how much we would value putting it in all of our products. And I said, "Okay. But how did you get to $5,000,000? How did you get to $2,000,000?" And he said, "I'm sorry. I can't answer that because it implicates the conversations I had with my attorneys." And then they instructed not to answer, and that's the discovery, your Honor.
>
> If Mr. Kennedy comes in this courtroom and sits in that stand and asserts all of a sudden that what he really did was multiply $32,000 times $6600 or whatever it is that gets you to two or five percent, that will be an absolute travesty of justice if he's permitted to say such things, because that's not what his testimony has been.
>
> \*\*\*
>
> MS. BROOKS: So what Mr. Kennedy did -- we won't use specific numbers -- he said $31,200, yes, that's incredibly low. Frankly, if Mr. Kennedy had his way, that's all he would ever pay, ***but this is a damages trial. Can't come in and say $31,200.*** Need to have a resolution of the case, and so an incredibly generous number of $2,000,000 for a license to the Day patent for exclusive use only in Outlook.
>
> All right. Well, consider, Mr. Kennedy, there may be follow on products that you might want to use after 1996. You might want to use the Day invention in. And, in fact, the jury found it was in Money and it was in Pocket PC, which I don't think we saw either one anymore, but factor that in. Okay. So for an unrestricted license $5,000,000.

LUCENT'S MOTION IN LIMINE NO. 4 TO PRECLUDE FROM EVIDENCE MICROSOFT'S DAMAGES FIGURE                     2                     Case No. 07-CV-2000-H (CAB)

> There. It's huge compared to what our design around costs are. It is incredibly generous. That is our number.

(Ex. I, Jan. 10, 2011 Hr'g Tr. at 156:12–157:8, 157:11–158:2.)

It is apparent, based on the discovery in the case and Microsoft's admissions at the January 10, 2011 hearing that Microsoft lacks a factual foundation for its damages number, an issue that the Court raised *sua sponte* during the February 25, 2011 hearing. (Ex. J, Hr'g Tr. dated Feb. 25, 2011 at 6:12–7:2.[2]) As such, the testimony must be stricken.

## II.  ARGUMENT

Damages figures must be based on sound factual predicates. *See, e.g., Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (reasonable royalty determination requires sound economic and factual predicates). Indeed, without any factual predicate, damages figures amount to sheer conjecture and are irrelevant. *Integra Lifesciences I, Ltd. v. Merck KGaA*, No. CV.96 CV 1307-B (AJB), 2004 WL 2284001, *4, *8 (S.D. Cal. Sept. 7, 2004) (holding that substantial evidence did not support damages award where expert's opinion "was based on the statements of one of Telios' principals, and not on independent research or other factual basis.") (Ex. O); FED. R. EVID. 402.[3] Moreover, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, [or] waste of time." FED. R. EVID. 403. Mr. Kennedy's damage figures have no probative value and can create only mischief at trial. They should be excluded.

Lucent attempted to obtain evidence about the factual predicate underlying Mr. Kennedy's figures. He refused to provide it:

> Q: … Who came up with the $5 million number?
>
> A: In discussions with my attorneys, we discussed different options, or, you know, different valuations.
>
> Q: What were those different valuations?

---

[2] In particular, the Court noted: "[W]hile I have said as to Kennedy that it's fact testimony, not opinion testimony, I'm still thinking about his $5 million figure as far as whether there's a sufficient foundation in anything that he knows about to have him testify about that. . . . I'm still not 100-percent confident about his testimony about the $5 million figure." (*Id.*)

[3] Under the Federal Rules of Evidence, "relevant" evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

>MR. THORNBURGH: Again, I caution you not to reveal attorney-client discussions.
>
>A: Yeah. I choose not to answer.
>
>Q: Because you can't without revealing communications you've had with your attorneys?
>
>A: That's correct."

(*See, e.g.*, Ex. H, Kennedy Dec. 2, 2010 Dep. Tr. at 162:6-18; *see also, id.* at 162:19–164:11.) Whether he had no basis for the figure or had one but refused to provide it, the result is the same: as the record stands, the damage figures are a naked conclusion that lacks any factual or economic basis.

Mr. Kennedy's testimony also lacks an appropriate foundation because Mr. Kennedy is not a competent fact witness on patent licensing. Under Federal Rule of Evidence 602, a witness cannot testify to a matter unless he "has personal knowledge of the matter." FED. R. EVID. 602. Mr. Kennedy admits that he has no experience in patent licensing or negotiation. (Ex. H, Kennedy Dec. 2, 2010 Dep. Tr. at 33:14–35:4.) At the time of the hypothetical negotiation, Mr. Kennedy was working as a programmer and software development lead for Microsoft Word, which is not an accused product. (Ex. K, Trial Tr. Volume XII, Mar. 18, 2008 at 19:23–20:25.) Mr. Kennedy's responsibilities did not include the valuation of technology, and Microsoft has produced no evidence that he has personal knowledge of how Microsoft valued technology in 1996.

To try to substantiate his conclusions, Mr. Kennedy asserts that removing the Day technology "would not have measurably impacted in any way Microsoft's sales of the Outlook product." (Ex. G, Decl. of William Kennedy at ¶ 6.) How this personal belief from a fact witness with no personal experience in technology valuation translates into the proffered dollar figures, Mr. Kennedy does not say and likely does not know. In addition, Mr. Kennedy's personal belief about how consumers would react to the removal of the patented technology comes without any personal knowledge. As a programmer, Mr. Kennedy had no exposure to how customers would or would not have reacted to the removal of the Day technology. (Ex. K, Trial Tr. Volume XII, Mar. 18, 2008 at 19:23–20:25.) Even today, Mr. Kennedy has no basis for providing testimony on the subject: Mr. Kennedy admitted that he has never been in marketing or business development, and he has no

training in sales or economic forecasting.  In fact, he has no marketing experience at all. (Ex. H, Kennedy Dec. 02, 2010 Dep. Tr. at 34:2–35:4.)  Any testimony by Mr. Kennedy on consumer survey evidence or how consumers would have reacted to removal of the patented technology should therefore be excluded.

## III.   CONCLUSION

For the foregoing reasons,[4] Lucent respectfully requests that the Court grant Lucent's motion *in limine* to preclude testimony based on Mr. Kennedy's declaration and to preclude the introduction of new evidence to support Microsoft's damages number.

Dated:  May 13, 2011                              Lucent Technologies Inc.


By:     /s/ David A. Hahn
David A. Hahn (SBN 125784)
DAVID A. HAHN, ATTORNEY AT LAW
400 10th Street
Coronado, California  92118
Telephone:  (619) 235-2100
Facsimile:  (619) 235-2101

Luke L. Dauchot (SBN 229829)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Jeanne Heffernan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Attorneys for Lucent Technologies Inc.

---

[4] Although Lucent believes Mr. Kennedy is providing improper opinion testimony, Lucent will not repeat the arguments it previously made and reserves its objection on that point for trial.  (D.I. 1009, Lucent's Motion *In Limine* No. 2 to Strike the Declaration of William Kennedy and to Exclude Related Testimony; D.I. 1179, Order Granting In Part And Denying In Part Plaintiff Lucent's Motions *In Limine* dated Feb. 4, 2011 at 2–3, 7.)