1  David A. Hahn, SBN 125784
   DAVID A. HAHN, ATTORNEY AT LAW
2  400 10th Street
   Coronado, California 92118
3  Telephone: (619) 235-2100
   Facsimile: (619) 235-2101
4

5  Attorney for *Lucent Technologies Inc.*

6  *(Additional Counsel listed on the last page)*

7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | LUCENT TECHNOLOGIES INC., | Case No. 07-CV-2000-H (CAB) |
12 | Plaintiff, | |
13 | v. | **LUCENT'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 2 TO PRECLUDE ROBERT MNOOKIN FROM TESTIFYING AT TRIAL** |
14 | MICROSOFT CORPORATION, | |
15 | Defendant. | |
16 | | Date: June 10, 2011 |
17 | | Time: 10:30 a.m. |
   | | Courtroom: 13, 5th Floor |
   | | Judge: Hon. Marilyn L. Huff |

I.     INTRODUCTION

Lucent's Motion *in limine* No. 2 challenges Law Professor Robert Mnookin's improper application of real-world negotiation theory to the hypothetical negotiation, and his use of that theory to bootstrap opinions on subjects about which he has no expertise (*e.g.*, surveys). In response, Microsoft by and large sidesteps these problems, and focuses instead on Lucent's damages positions. Lucent responds elsewhere to Microsoft's misplaced criticisms of Mr. Sims's analysis.[1] Here, the issue is the unreliability of Professor Mnookin's opinions. Because they are not predicated on sound methodology, sufficient facts, and requisite expertise, the opinions should be excluded under Rule 702 and *Daubert*.

II.    ARGUMENT

    A.     **Professor Mnookin's Negotiation Theory Violates Patent Damages Law**

Contrary to Microsoft's assertions, Lucent does not claim that the *Georgia-Pacific* factors are the only method for calculating damages. (D.I. 1257 at 1, 2, 6.) Indeed, Lucent's own damages expert uses several different methods for determining damages in this very case. (Ex. C, Sims Am. Rep. at 17–85.) What dooms Professor Mnookin's approach in this case is his failure to take into account the unique circumstances of the hypothetical negotiation when determining a reasonable royalty.

Courts have long recognized that the hypothetical negotiation construct is by no means identical to a real world negotiation. First and foremost, the infringer ***must*** pay a royalty. In the hypothetical negotiation, the threat of a walk-away carries no leverage. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158–59 (6th Cir. 1978) (noting that a reasonable royalty cannot be treated as the equivalent of ordinary royalty negotiations among truly "willing" patent owners and licensees); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (noting that the willing-buyer willing-seller concept is employed by courts as a means of arriving at reasonable compensation and its validity does not depend on the actual willingness of the

---

[1] Lucent rebuts Microsoft's criticisms of Raymond Sims in oppositions to two earlier Microsoft motions seeking to exclude his testimony. *See* Microsoft's Motions *in limine* Nos. 14 and 15 and Lucent's oppositions to those motions. (D.I. 1224, 1225, 1252, 1253.) Any new arguments against Mr. Sims raised in Microsoft's opposition to Lucent's Motion *in limine* No. 2 are procedurally improper and should be disregarded by the Court.

1  parties); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, n. 13 (Fed. Cir. 1995) (*en banc*) (same).

2  Indeed, treating the hypothetical negotiation as a real-world negotiation in this regard would be

3  tantamount to imposing a compulsory license on every patent owner.  *Panduit*, 575 F.2d at 1158

4  (finding that if a reasonable royalty after infringement were equivalent to ordinary royalty

5  negotiations then it would amount to a compulsory license on the patent holder); *see also Rite-Hite*,

6  56 F.3d at 1555 (noting that if a reasonable royalty were set at what the infringer would prefer to pay

7  then it would make an election to infringe a "handy means" for imposing a compulsory license);

8  *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) (same).  The Federal Circuit

9  sitting *en banc* noted that although the hypothetical negotiation is often referred to as a "willing

10  licensor/willing licensee" negotiation, that characterization is "an inaccurate, and even absurd,

11  characterization" when the parties do not in fact want to reach an agreement in the real world.  *Rite-*

12  *Hite*, 56 F.3d at n.13.

13        The hypothetical negotiation has other unique constructs that do not appear in the real world.

14  For example, in a hypothetical negotiation the patent is assumed valid and infringed.  *See Lucent*

15  *Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).  The parties cannot walk away

16  as they might do (or in fact did do) in the real world.  *See Panduit*, 575 F.2d at 1158–59; *see also*

17  *Hanson*, 718 F.2d at 1081.  And the parties at a hypothetical negotiation have information about the

18  future via the "Book of Wisdom," erasing the uncertainty that is present on both sides of the table in

19  the real world.  *Lucent*, 580 F.3d at 1333–34 (citing *Sinclair Refining Co. v. Jenkins Petroleum*

20  *Process Co.*, 289 U.S. 689, 698 (1933)) (noting that factual developments occurring after the date of

21  the hypothetical negotiation can inform the damages calculation, also known as the "Book of

22  Wisdom" concept); *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1122

23  (S.D.N.Y. 1970) (noting that the hypothetical negotiation "contemplate[s] a marshaling of all of the

24  pertinent facts which, like cards dealt face up, are for all to see.").

25        In response to this background of consistent case law, Microsoft cites to cases noting that the

26  hypothetical negotiation is set at the time infringement began and that it takes into account facts that

27

28

1  would have affected a real-word negotiation.[2]  (D.I. 1257 at 6–7.)  While those statements about the
2  hypothetical negotiation are true, Microsoft's expert ignores the other key components of the
3  hypothetical negotiation.  In so doing, he turns the hypothetical negotiation into a compulsory
4  license scenario in which he wrongly applies negotiation theory applicable only to a real-world
5  negotiation.

6  For example, Microsoft and its expert believe the parties can walk away from the negotiation,
7  putting leverage on the negotiation.  (D.I. 1257 at 8; D.I. 1219-3, Ex. E at 34 (Mnookin Am. Rep. at
8  18).)  While that may be true in a real-world negotiation, the parties to the hypothetical negotiation
9  must reach an agreement.  Without an agreement, there is no reasonable royalty and the exercise
10  would be useless for determining patent damages.  Moreover, Microsoft's position at the
11  hypothetical negotiation table is not, as Professor Mnookin contends, what Microsoft would *prefer*
12  to pay.  *See, e.g., Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) ("[the
13  infringer's] evidence in this case establishes nothing more than what it might have preferred to pay,
14  which is not the test for damages."); *Rite-Hite*, 56 F.3d at 1555 ("Moreover, what an infringer would
15  prefer to pay is not the test for damages"); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573,
16  1580 (Fed. Cir. 1989) (rejecting the premise that a reasonable royalty cannot exceed anticipated
17  profits); *TWM*, 789 F.2d at 899 (noting that "an infringer cannot successfully argue that the district
18  court abused its discretion in awarding a 'high' royalty by simply substituting its own recomputation
19  to arrive at a lower figure" because that "merely indicates the damages an infringer-appellant would
20  prefer to pay."); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986)
21  (rejecting the premise that a reasonable royalty is limited to the infringer's profits).  Nor is the
22  reasonable royalty limited to Microsoft's cost to implement an alternative (especially considering
23  that it chose not to do so in the real world).  *See, e.g., Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d
24  1359, 1373 (Fed. Cir. 2008) ("Coinco is wrong as a matter of law to claim that reasonable royalty

---

[2] Scattered throughout its opposition, Microsoft claims Professor Mnookin relies on certain "undisputed facts" and argues that other facts have "no applicability" to this case. (*See, e.g.*, D.I. 1257 at nn.3–4, 12–13.)  First, many of the so-called undisputed facts are plucked right out of Mr. Kennedy's unsigned, undated, unsworn "declaration," hardly establishing them as "undisputed."  Second, some are actually false, such as Microsoft's claim that Lucent has never licensed the Day Patent.  And third, many of the other facts *are* applicable to this case, as explained in Lucent's oppositions to Microsoft's Motions *in limine*.  (*See, e.g.*, D.I. 1224, 1225, 1252, 1253.)

LUCENT'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE      3           Case No. 07-CV-2000-H (CAB)
NO. 2 TO PRECLUDE ROBERT MNOOKIN FROM
TESTIFYING AT TRIAL

1  damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing
2  alternative."), *mandate recalled and amended on other grounds by* 557 F.3d 1377 (Fed. Cir. 2009)
3  (*citing Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004) (rejecting infringer's argument
4  that a reasonable royalty can never be set so high that no rational self-interested wealth-maximizing
5  infringer would have agreed to it *ex ante*)); *Hanson*, 718 F.2d at 1081–82 (rejecting the argument
6  that the reasonable royalty must be priced below a non-infringing alternative).

7      Microsoft asserts without any explanation that long-settled case law on the key differences
8  between a real-world and hypothetical negotiation "cannot be squared with the more recent decision
9  in *Uniloc*." (D.I. 1257 at 9.) But nothing in *Uniloc* changes or challenges the well-established
10  construct of the hypothetical negotiation. And, in any event, a panel decision cannot overturn a prior
11  panel decision; panel decisions stand unless and until overturned *en banc*. *Texas Instruments Inc. v.*
12  *Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1228
13  (1997). Microsoft cannot ignore decades of precedent that undermine Professor Mnookin's
14  unilateral walk-away approach.

15      In addition, Professor Mnookin disregards the Book of Wisdom and pays no heed to any
16  evidence that post-dates the hypothetical negotiation. Microsoft tries to excuse this oversight by
17  asserting that there are no relevant facts to consider, claiming in a non sequitur that Lucent has not
18  carried its burden to show that the patented technology drives consumer demand for the infringing
19  products. (D.I. 1257 at 8.) But no case law stands for the illogical proposition that the Book of
20  Wisdom is shelved absent a showing that the patented technology drives consumer demand for the
21  infringing products. The argument is an exercise in rationalization. At his deposition, Professor
22  Mnookin admitted that he did not even know about the Book of Wisdom. (D.I. 1219-3, Ex. L at 114
23  (Mnookin 2010 Dep. Tr. at 140:22–141:15); Ex. D, Mnookin 2010 Dep. Tr. at 189:19–192:6.) He
24  also conceded that he is not an expert on patent law or patent damages and therefore did not know
25  how to consider subsequent events because the Federal Circuit did not provide him with enough
26  instruction on how to do so. (Ex. D, Mnookin 2010 Dep. Tr. at 191:9–17 ("***I'm not an expert on***
27  ***patent law or patent damages***, but I think there's probably a great deal of uncertainty—***this is my***
28

*hunch*—about what knowledge of subsequent events parties would have. And I think that—for example, the opinion of the federal circuit suggests that you shouldn't blind yourself to that information; but on the other hand, it does not describe in any way how it would affect the hypothetical negotiation.") (emphases added).)

Finally, Professor Mnookin abrogates his duty to assume the patent is valid and infringed. Mr. Kennedy, the person on whom Professor Mnookin relies for Microsoft's reservation price, admitted that he ignored the crucial assumption that the patent is valid and infringed. (D.I. 1219-3, Ex. H at 82 (Kennedy Dec. 2, 2010 Dep. Tr. at 154:10–19) ("I didn't make any assumptions about the validity of the Day patent.").) Having failed to take that critical assumption into account, Professor Mnookin's damages analysis is fundamentally flawed from the very start.

### B.  Professor Mnookin's Opinion Is Not Based On Sufficient Facts Or Data

An expert's opinion on what would have happened at the hypothetical negotiation must account for both parties' positions. Yet Professor Mnookin inexplicably fails to account for Lucent's position at the bargaining table, violating Federal Circuit law and his own negotiation theory. In addition, with respect to the number Microsoft would have in mind at the table, Professor Mnookin blindly relies on the figure advanced by Microsoft employee William Kennedy, a number that comes without any support.[3]

Professor Mnookin never arrives at a royalty figure Lucent would seek at the hypothetical negotiation, nor does he evaluate the facts of the case from Lucent's perspective. Indeed, he admitted under oath that he has no "opinion as to the dollar amount of Lucent or AT&T's reservation value." (D.I. 1219-3, Ex. L at 110 (Mnookin 2010 Dep. Tr. at 70:16–23); D.I. 1219-3, Ex. F at 63 (Mnookin 2011 Dep. Tr. at 397:17–20).) He also conceded that he "express[es] no opinion about how Lucent would negotiate." (D.I. 1219-3, Ex. L at 110 (Mnookin 2010 Dep. Tr. at 70:24–71:4); D.I. 1219-3, Ex. F at 63 (Mnookin 2011 Dep. Tr. at 397:17–20).) By ignoring Lucent's position at the hypothetical negotiation, Professor Mnookin violates Federal Circuit law. *See Rite-Hite*, 56 F.3d at 1555 (noting that what an infringer would prefer to pay is not test for

---

[3] Mr. Kennedy's testimony is addressed in Lucent's Motion *in limine* No. 4, D.I. 1222.

1  damages); *see also Golight*, 355 F.3d at 1338 (same); *TWM*, 789 F.2d at 899 (same); *Radio Steel &
2  Mfg. Co.*, 788 F.2d at 1557 (noting that a reasonable royalty is not limited to the infringer's profits);
3  *Mor-Flo Indus.*, 883 F.2d at 1580 (same).

4  Microsoft asserts that Professor Mnookin did take into account Lucent's bargaining position.
5  (D.I. 1257 at 10.) In so doing, it states that Professor Mnookin "***very rationally***" concluded that
6  Lucent would have accepted $5 million or less for the Day Patent technology—*i.e.*, the walk-away
7  number he assigned to Microsoft based on Mr. Kennedy's say-so. (D.I. 1257 at 11.) But the only
8  so-called "evaluation" of Lucent's reservation price that Microsoft can point to is Professor
9  Mnookin's assertion, in response to **Mr. Sims's** analysis of Lucent's position, that "a rational
10 negotiator in Lucent's position would have been prepared to accept far less than $33.8 million."
11 (D.I. 1257 at 10; D.I. 1219-3, Ex. E at 44 (Mnookin Am. Rep. at 28).) He does not opine on what
12 amount that would be, much less offer any analysis on the subject.[4] Indeed, Professor Mnookin has
13 no expertise in this area (*see infra*). In short, an opinion to the effect that "it's rational because I
14 think it's rational" does not suffice. The law requires more. *See, e.g.*, *Riles v. Shell Exploration &
15 Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (reasonable royalty determination requires sound
16 economic and factual predicates).

17 Assuming Microsoft's "bottom line" in a real-world negotiation had any place in the
18 hypothetical negotiation (which it does not), Professor Mnookin's opinion on that subject is a blind
19 recitation of Mr. Kennedy's declaration. (*Compare* D.I. 1219-3, Ex. G (Kennedy Decl.) *and* D.I.
20 1257 at 12–13.) Of course, one expert is entitled to rely on adequately-supported fact or proper
21 expert opinion to advance distinct opinions. But the problem here is that Professor Mnookin offers
22 no substance beyond what Mr. Kennedy states; he simply parrots the latter's conclusion (unfounded
23 as they are) and improperly advances them as his own under the label of "negotiation theory." The
24 end result is an "expert" opining that Lucent would have received no more than $5 million because

---

[4] Microsoft tries to cover up this candid admission with quotations from Professor Mnookin's deposition. Interestingly (but not surprisingly), the exchanges Microsoft quotes to occurred at the end of the deposition in response to questions by Microsoft's counsel. (Ex. E, Mnookin 2011 Dep. Tr. at 445–450.) But even these transparent reconstructions of Professor Mnookin's earlier testimony do not provide the factual support necessary to render "reliable" Professor Mnookin's bald assertion that Lucent would be willing to take "far less" than $33.8 million.

Mr. Kennedy said that Microsoft would not have paid more than $5 million. The "expert opinion" adds nothing.

Microsoft objects to the notion that Professor Mnookin does not add substance atop Mr. Kennedy's conclusions. In so doing, Microsoft lists seven so-called "undisputed facts" that Professor Mnookin considered in reaching his opinion in this case. (D.I. 1257 at 12–15.) But in each instance, the "factual support" cited in Professor Mnookin's report is Mr. Kennedy's declaration. (*See, e.g.*, D.I. 1219-3, Ex. E (Mnookin Am. Rep.) at 23 *citing* Kennedy Decl. at ¶ 2; at 31–32 *citing* Kennedy Decl. at ¶ 2; at 23–24 *citing* Kennedy Decl. at ¶¶ 2, 3, 7, 8; at 24 *citing* Kennedy Decl. at ¶ 4; at 33 *citing* Kennedy Decl. at ¶¶ 5, 7.) The same was true at Professor Mnookin's deposition. (*See, e.g.*, Ex. E, Mnookin 2011 Dep. Tr. at 328:7–329:25; 356:13–15, 356:22–357:1; 362:8–16; 319:2–4.) Acting as nothing more than a conduit for Mr. Kennedy's unsupported personal beliefs, Professor Mnookin provides no help to the trier of fact.

### C. Professor Mnookin Is Not Qualified in Any of the Other Areas in Which He Offers Testimony

As Professor Mnookin himself recognized, being an expert in negotiation theory does not make one an expert on the subject matter of any particular negotiation. (D.I. 1219-3, Ex. F at 62 (Mnookin 2011 Dep. Tr. at 386:21–25).) Microsoft differs. It claims that Professor Mnookin is a master of all subjects, an expert in all areas.

Microsoft argues that Professor Mnookin is a qualified survey expert. In so doing, it selectively quotes from his deposition to point out that Professor Mnookin has "used surveys" and "dealt with surveys" in the past. (D.I. 1257 at 14.) But vague familiarity with surveys is not enough to qualify Professor Mnookin as an expert on surveys, and he conceded the courses he took did not "focus in particular on consumer surveys." (D.I. 1219-3, Ex. L at 113 (Mnookin 2010 Dep. Tr. at 136:2–4).) Indeed, he was not hired as a survey expert in this case and not disclosed as a survey expert. (D.I. 1219-3, Ex. F at 56 (Mnookin 2011 Dep. Tr. at 351:24–352:2); Ex. F, Mnookin Am. Rep. at 1–4; Ex. G, Letter from J. Reid to P. Bondor dated Nov. 3, 2010.) Nor is that surprising given that Professor Mnookin has neither taught any courses on survey design, nor published a single book or article about how to best conduct a survey. (D.I. 1219-3, Ex. F at 55–56 (Mnookin

2011 Dep. Tr. at 349:7–10, 15–17; 350:9–14).) With no formal education on surveys or survey design, Professor Mnookin's mere exposure to surveys in the past is not enough to qualify him as an expert in surveys or survey design. *See, e.g.*, *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1264–65 (D. Minn. 2009) (finding that serving on a committee and spending "many days" reviewing data did not render the witness an expert in survey methodology); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1305-09 (N.D. Ga. 2008) (excluding an expert's testimony on consumer surveys because it was outside of his area of expertise). Indeed, Microsoft concedes in its own opposition papers that Professor Mnookin relied on Microsoft's survey expert Philip Johnson in reaching his opinions about the Jay Survey. (D.I. 1257 at 13.)

Next, Microsoft claims that Professor Mnookin is an expert in licensing. In this regard, Microsoft points out that Professor Mnookin has been involved in arbitrations and mediations that involved licenses. (D.I. 1257 at 14–15.) Microsoft also mentions that Professor Mnookin has taught courses on mediation for the World Intellectual Property Organization. Even Professor Mnookin allows that this is not enough. (D.I. 1219-3, Ex. F at 62 (Mnookin 2011 Dep. Tr. at 386:21–25) ("Q…Professor Mnookin, being an expert in negotiation theory does not necessarily make you an expert in the subject matter being negotiated; am I right? A. Correct.").) The truth is that Professor Mnookin is not a licensing expert, and he has never negotiated a patent license or a license for software. (D.I. 1219-3, Ex. L at 117 (Mnookin 2010 Dep. Tr. at 271:19–21); D.I. 1219-3, Ex. F at 61 (Mnookin 2011 Dep. Tr. at 383:6–21).)

Finally, Microsoft claims that Professor Mnookin need not be an expert to evaluate the conclusions of Lucent's human-to-computer interface expert, Bruce Tognazzini. (D.I. 1257 at 16.) That statement raises the question: Why not? The lynchpin of proper expert testimony is probative value to the fact finder. A Harvard contract law professor's substantive critique (and it is that)[5] of a

---

[5] Professor Mnookin criticizes the comparability of the particular add-in used in Mr. Sims's Add-Ins Analysis. In contrast to Mr. Sims (who relies on Mr. Tognazzini for comparability), Professor Mnookin states without any technical support that other add-ins provide more functionality and similar comparability. (D.I. 1219-3, Ex. E at 40 (Mnookin Am. Rep at 24, n.13).) He never cites Microsoft's technical expert Mr. Marcus for this "opinion." (*Id.*) Similarly, Professor Mnookin—without any technical expertise—rejects Mr. Tognazzini's opinion that the Day Patent technology saves users time. With no support from Mr. Marcus, Professor Mnookin instead relies on his personal experience with Outlook. (D.I. 1219-3, Ex. E at 41 (Mnookin Am. Rep. at 25).)

LUCENT'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 2 TO PRECLUDE ROBERT MNOOKIN FROM TESTIFYING AT TRIAL     8     Case No. 07-CV-2000-H (CAB)

1  renowned human-to-computer interaction expert carries no probative value.  It epitomizes the sort of
2  testimony that is unhelpful, serves to confuse the jury, and unfairly prejudices the opposing party.

### D.     Professor Mnookin Opines On Ultimate Issues Of Law

Microsoft's argues that Professor Mnookin's use of legal argument and his invocation of the *Lucent* decision for factual findings in this case are appropriate.  As the Court has already ruled, citations to the Federal Circuit opinion for factual support are not permitted.

In ruling on Lucent's motion *in limine* to exclude reference to the Federal Circuit opinion, the Court was clear that the parties could reference the *Lucent* decision for "legal standards on patent damages" but ***not*** for factual findings.  (D.I. 1179 at 2, 6; Ex. H, Jan. 4, 2011 Hr'g Tr. at 211.)  This ruling correctly recognizes that courts of appeals are not fact finders.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867, 875 (Fed. Cir. 2008); *First Interstate Bank of Billings v. United States*, 61 F.3d 876, 882 (Fed. Cir. 1995); *Stanek v. Dep't of Transp.*, 805 F.2d 1572, 1577 (Fed. Cir. 1986).  In contrast to merely citing the *Lucent* decision for points of law, Professor Mnookin inappropriately invokes the decision for assumptions and findings of fact.  (*See, e.g.*, D.I. 1219-3, Ex. E at 23–24, 35–38, 45, 47 (Mnookin Am. Rep. at 6–7, 19–22, 29, 31).)  Consistent with the Court's prior ruling, it should prohibit Professor Mnookin from doing so at trial.

In addition, Professor Mnookin invokes various legal decisions, including this Court's prior rulings, to argue that Mr. Sims's report should be excluded or discounted as a matter of law.  But it is up to this Court to rule, based on the parties' motions and objections, on what may be placed before the jury.

Finally, Microsoft argues that Professor Mnookin may invoke the *Lucent* decision to determine the comparability of the licenses in this case.  Assuming that Professor Mnookin were qualified to opine on the comparability of license agreements (which he is not), a proper expert analysis would involve actually comparing the licenses rather than invoking an appellate decision involving a different factual record.  (D.I. 1219-3, Ex. E at 45 (Mnookin Am. Rep. at 29) ("the Federal Circuit has already explained why [the AT&T/Acer] agreement is not comparable"), at 31

("the Federal Circuit and this Court have already explained why [the Microsoft-Apple agreement] is not relevant").) The Court has already ruled on the impropriety of such references. (D.I. 1179 at 2.)

### III. CONCLUSION

For the foregoing reasons, and those stated in Lucent's opening memorandum, Professor Mnookin should be precluded from testifying at trial.

Dated: June 8, 2011

Lucent Technologies Inc.

By: /s/ David A. Hahn
David A. Hahn (SBN 125784)
DAVID A. HAHN, ATTORNEY AT LAW
400 10th Street
Coronado, California 92118
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Luke L. Dauchot (SBN 229829)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Jeanne M. Heffernan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for Lucent Technologies Inc.