Juanita R. Brooks, brooks@fr.com, (SBN 75934)
Roger A. Denning, denning@fr.com, (SBN 228998)
Michael M. Rosen, rosen@fr.com, (SBN 230964)
Frank J. Albert, albert@fr.com, (SBN 247741)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California 92130
Telephone:   (858) 678-5070
Facsimile:   (858) 678-5099

Attorneys for Defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No. 07-CV-2000 H (CAB) <br> consolidated cases: <br> 03-CV-0699 B (CAB) <br> 03-CV-1108 B (CAB) <br> 02-CV-2060 B (CAB) <br><br> MICROSOFT CORPORATION'S OBJECTIONS AND MOTION *IN LIMINE* NO. 17 TO EXCLUDE LUCENT'S IMPROPER SUPPLEMENTAL DAMAGES THEORIES <br><br> Date:           July 13, 2011 <br> Time:          10:30 a.m. <br> Courtroom:  13, Fifth Floor <br> Honorable Marilyn L. Huff <br><br> **REDACTED VERSION** |

# Table of Contents

Page

I. Introduction .................................................................................................................. 1

II. Argument ..................................................................................................................... 2

    A. Lucent's "Supplemental Analysis" Improperly Bases Damages on Applying a Royalty Rate to the Entire Market Value of Each Copy of Outlook ........................................................................................................... 3

        1. Lucent's Supplemental "*Georgia-Pacific* Approach" Improperly Applies a Royalty Rate to the Entire Market Value of Each Copy of the Accused Products ......................................... 3

        2. Lucent's Supplemental "Business Realities Approach" Is Nothing But an Entire Market Value Approach in Disguise .................... 7

    B. Lucent's "Alternative Analysis" is Fundamentally Flawed ................................. 7

        1. Lucent's Alternative "Business Realities Approach" is Speculation, Not an Analysis Based on Sound Economic Principles ............................................................................................. 8

        2. Mr. Sims' Alternative "*Georgia-Pacific* Approach" is Speculation, Not an Analysis Based on Sound Economic Principles ............................................................................................ 10

        3. Lucent's Alternative "Business Realities Approach" Improperly Bases Damages on Applying a Royalty Rate to the Entire Market Value of Each Copy of Outlook ............................... 11

III. Conclusion ................................................................................................................ 12

## Table of Authorities

Page(s)

**CASES**

*Hanson v. Alpine Valley Ski Area, Inc.*,
 718 F.2d 1075 (Fed. Cir. 1983) .................................................................................. 3

*Hoffmann-La Roche Inc. v. Cobalt Pharmaceuticals Inc.*,
 2010 WL 4687839 (D.N.J. November 10, 2010) .................................................. 9, 10

*Lucent Tech., Inc. v. Gateway Inc.*,
 509 F. Supp. 2d 912 (S.D. Cal. 2007) ................................................................... 3, 6

*Lucent Technologies, Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009) ............................................................................ 9, 11

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc., USA*,
 2010 WL 715402, Civ. No. 07-CV-5855 (D.N.J. February 19, 2010) ...................... 9

*Sanofi-Aventis Deutschland GMBH, v. Glenmark Pharmaceuticals Inc., USA*,
 2011 WL 383861, Civ. No. 07-CV-5855 (D.N.J. Feb. 3, 2011) ................................ 9

*Trell v. Marlee Electronics Corp.*,
 912 F.2d 1443 (Fed. Cir. 1990) .................................................................................. 3

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 ........................................................................................ 1, 2

Local Rule 5.4 ................................................................................................................... 13

I.    **INTRODUCTION**

In Lucent's supplement to the amended expert report of Raymond Sims, dated June 23, 2011, Lucent provides two supplemental damages opinions, each of which violates the entire market value rule and each of which must be excluded under Federal Rule of Evidence 702.

In his amended expert report of February 10, 2011, Lucent's expert, Mr. Sims opined that ▇▇▇▇ was a reasonable royalty for the date picker. According to Mr. Sims, his opinion took into consideration his add-ins analysis, time-savings analysis, survey results analysis, business realities approach, and *Georgia-Pacific* analysis. As part of his analysis, Mr. Sims allegedly used as a royalty base "only the revenue from Outlook where a user uses the Day patented technology." D.I. 1284 at pp. 12-13. Applying a 1% to 3% royalty rate to this base, Mr. Sims obtained a range of ▇▇▇▇▇▇▇▇▇▇▇▇ His ultimate opinion of ▇▇▇▇ fell slightly higher than the mid-point of this range.

On June 16, 2011, this Court issued an order (1) striking Lucent's reliance on Mr. Sims' add-ins analysis, (2) finding that Mr. Sims' time-savings analysis represented "only the time savings value of the Day patent technology to consumers and not necessarily what Microsoft would pay for the feature," and (3) concluding that, in both Lucent's *Georgia-Pacific* and business realities approach, in order "to comport with the entire market value rule, Lucent must further apportion the base in a way that better accounts for the value of the Day patent technology compared to the other features in Outlook that are not covered by the Day patent." D.I. 1284 at 14. The Court ordered Lucent to "perform an additional apportionment in order to introduce a proper royalty base for its damages calculation …" and that "[o]nce the royalty base has properly been apportioned, the reasonable royalty is calculated by applying the royalty rate to this apportioned base." *Id.* at 14-15. The Court further allowed Lucent to "supplement their damages expert reports to comport with the Court's rulings"—effectively giving Lucent its fifth chance at constructing a legally adequate damages case for the Day patent. *Id.* at 14-15, 24.

On June 23, 2011, Lucent filed the second amended report of Mr. Sims. In that report, Lucent Sims, in open defiance of this Court's ruling, declares that it will not calculate damages based on a royalty rate applied to a properly apportioned royalty base. Despite the Court's rulings

-- which inevitably should have resulted in a lower royalty -- Lucent's damages demand has not changed one penny. It is still ▮▮▮▮ it still violates the entire market value rule, and it is still inadmissible.

Lucent has attempted to disguise its end run around the entire market value rule and the rulings of this Court and the Federal Circuit by claiming that its analysis is no longer based on all revenues obtained from infringing sales of Outlook, but rather is based on a "per unit analysis." Whether the analysis starts with the number of units sold, which in turn is then multiplied by the unit price, or goes directly to the amount of revenues obtained from the sale of those units, the analysis ends up with the same result, a violation of the entire market value rule and therefore cannot be allowed.

## II.   ARGUMENT

In Lucent's supplement to Mr. Sims' amended expert report, Lucent provides two supplemental opinions, each of which violates the entire market value rule and each of which must be excluded under Federal Rule of Evidence 702.

First (at pages 6-11), Lucent presents what it calls its "Supplemental Analysis That Accounts For Lucent's Actual Licensing Policy and Executed Agreements." That section more accurately could be titled, "Supplemental Analysis that Uses the Entire Market Value Without Apportionment," because the entire section, including its *"Georgia-Pacific"* and "Business Realities" sub-parts, is based on applying a royalty rate to the entire market value of each copy of Outlook. By applying Lucent's licensing policy and the Acer and Locus licenses to the entire market value of all Outlook units sold, without any apportionment, Mr. Sims concludes that a reasonable royalty would be ▮▮▮▮ This supplemental opinion is directly contrary to the entire market value rule and must be excluded.

Second (at pages 11-13), Lucent presents what it calls its "Alternative Analysis Without Lucent's Actual Licensing Policy And Executed Agreements." This section, barely a page and a half long, boils down to nothing more than Lucent speculating that the parties would have agreed upon a 50% royalty, without any factual support whatsoever, which yields the same $70 million

damages number. This alternative opinion is not based on sound economic principles and it continues to violate the entire market value rule. It too must be excluded.

### A. Lucent's "Supplemental Analysis" Improperly Bases Damages on Applying a Royalty Rate to the Entire Market Value of Each Copy of Outlook

The Lucent's "Supplemental Analysis" includes a supplemental "Georgia-Pacific Approach" and a supplemental "Business Realities Approach." Each approach violates the entire market value rule.

#### 1. Lucent's Supplemental "*Georgia-Pacific* Approach" Improperly Applies a Royalty Rate to the Entire Market Value of Each Copy of the Accused Products

On pages 60-61 of his amended expert report of February 10, 2011, Lucent's expert, Mr. Sims, performed what he called an "apportionment" by multiplying the ▮▮▮▮▮▮ ▮▮▮▮▮▮ by the alleged percentage of Outlook users who use the date picker (83% x 84% x 77%) to arrive at an ▮▮▮▮▮▮ (Ex. B at 60-61). He then applied a rate of 1% to that "apportioned base" to arrive at a royalty of ▮▮▮▮.

In granting in part Microsoft's motions *in limine* Nos. 14-15, the Court unequivocally held that such an "apportionment" was inadequate:

> In summary, ***the Court concludes that Lucent fails to properly apportion its damages calculation to separate between the patented features and unpatented features of Microsoft Outlook.*** Lucent must perform an additional apportionment in order to introduce a proper royalty base for its damages calculation. . . . ***Once the royalty base has properly been apportioned, the reasonable royalty is calculated by applying the royalty rate to this apportioned base.***

DI. 1284 at 13-14 (emphasis added).

---

[1] Microsoft repeats its objection to Lucent's reliance on its licensing policy, and the Locus and Acer agreements as evidence of an established royalty rate for the Day patent. In granting Microsoft's Judgment as a Matter of Law in the Audio portion of this case, the Court considered testimony on "Lucent's 'best licensing practices'" for "a 1-5% royalty rate assessed on the product sold." *Lucent Tech., Inc. v. Gateway Inc.*, 509 F. Supp. 2d 912, 938-39 (S.D. Cal. 2007) (Brewster). Citing *Trell* and *Hanson* the court held these "best licensing practices" did not establish an established royalty. *Id.* ("Whether these rates were ever implemented and could be considered an established rate was not apparent from the record. *See Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) ('for a royalty to be established, it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention'); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) ('mere offers to license' without actual consummated licenses are insufficient to show an "established" royalty rate for the technology).") Nothing has changed since this ruling. Lucent has still offered no evidence that its policy was anything more than that, a policy and not a reality.

1  Despite being given the chance to correct its approach, in its supplement to Sims' amended
2  report Lucent not only refuses to perform the required additional apportionment, it now *refuses to*
3  *perform any apportionment whatsoever*, and instead baldly applies the 1% royalty rate to the
4  entire market value of Outlook to reach a royalty of just over ▉▉▉▉.  As shown in
5  Supplemental Exhibit 5.1 to the June 23 report, Lucent arrives at that number by multiplying the
6  purported unit price of Outlook of $67.39 by the ▉▉▉▉▉▉▉▉ (which results in ▉▉
7  ▉▉ the total revenue for all Outlook sales), and then applying a 1% rate to reach an ultimate
8  royalty ▉▉▉▉▉.  This analysis contains *absolutely no apportionment whatsoever*, but
9  instead simply applies the 1% rate to the total revenue for all Outlook sales.  By un-apportioning
10 the base, Lucent nearly doubled the ▉▉▉▉ royalty that it calculated in Sims' previous report,
11 which the Court found to be inadequately apportioned.[2]  It is difficult to imagine a clearer violation
12 of the entire market value rule.[3]
13  Indeed, if one compares Exhibit 5.1 from Sims' February 10, 2011 report (on top, below) to
14 Sims' Supplemental Exhibit 5.1 from his June 23, 2011 report (on bottom, below), it is clear that
15 the only meaningful change Lucent made was to delete the bottom five rows, the apportionment
16 section titled "Adjusted for *Apportioned* Royalty Base."

---

[2] In Supplemental Exhibit 5.1, Lucent/Sims also performs a calculation based on the entire market value of *Office*, multiplying the unit price of Office of ▉▉▉▉▉▉▉▉▉ (which results in ▉▉▉▉) the total revenue for all Office sales), and then applying a 1% rate to reach an ultimate number of ▉▉▉▉. This calculation violates the entire market value rule for all the same reasons discussed above for the calculations based on the entire market value of Outlook.

[3] Lucent claims that Supplemental Exhibit 5.1 does not include the entire revenue of Outlook, but instead "includes calculations based on a per-unit analysis." However, the bottom line is exactly the same, ▉▉▉▉▉

February 10, 2011 Sims Report, Exhibit 5.1

June 23, 2011 Sims Report, Exhibit 5.1

This Court concluded that Lucent's initial apportionment was inadequate to satisfy the entire market value rule and therefore improper. Lucent's new approach of doing no apportionment whatsoever is an even clearer violation of the rule and is similarly improper. According to this Court's prior ruling and the rulings of the Federal Circuit in *Lucent* and *Uniloc*, Lucent cannot be allowed to present this analysis to the jury.

To attempt to justify this new approach, Lucent claims that ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████ (emphasis in original). Then, despite this Court's repeated admonitions, and those of the Federal Circuit, Lucent opines:

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

(Ex. A at 7) (emphasis added.) This figure (1% x $67 unit price of Outlook x all sales of Outlook) then becomes, according to Lucent, "the material source of resistance" which would prevent Lucent from agreeing to a royalty of less than ███████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

*Id.* But this is precisely counter to the Court's order. D.I. 1284 at 13 ("Put into concrete terms, if a sample user uses the infringing Day patent technology but also uses many other features in Outlook, *Lucent has not shown that it is entitled to include in the royalty base all $67 of revenue generated from this sample user.*").

Simply put, Lucent's latest theory for arriving at the same ███████ number previously rejected in this case is still in direct violation of this Court's rulings, as well as the rulings of *Uniloc* and *Lucent*, and it must be stricken.

### 2. Lucent's Supplemental "Business Realities Approach" Is Nothing But an Entire Market Value Approach in Disguise

Lucent's supplemental "Business Realities Approach" professes to consider how Microsoft and Lucent would have negotiated splitting the profits that Microsoft would have lost if it did not include the date picker. As with Lucent's supplemental *Georgia-Pacific* analysis, however, this approach relies entirely on applying a 1% royalty to the entire market value of Outlook, without further apportioning "to separate between the patented and unpatented features as tied to the facts of this case and economic realities." (Ex. A at 10). This violation of the entire market value rule cannot go before the jury.

Lucent's Business Realities Approach begins with the presumption, based on the Jay survey, that the base value of the date picker feature, discounted to January 2003, is $138.7 million. *Id.* at 9. One might expect Lucent to then apply a royalty rate to that base – for example, a 1% royalty would be $1.4 million, and a 3% royalty would be $4.2 million – but Lucent does not apply any royalty rate to this base. Instead, Lucent relies entirely on its licensing policy to conclude that it would not have been willing to accept less than █████████ *Id.* Once again, Lucent arrives at the ███████████ figure by multiplying Lucent's purported policy of 1% by *the entire market value of Outlook* (1% of █████████ ███). (Ex. A at Exhibit 5.1). That is the epitome of an entire market value calculation, and it violates this Court's ruling that "Lucent must perform an additional apportionment in order to introduce a proper royalty base for its damages calculation." D.I. 1284 at 13.

In the end, Lucent's "business realities approach" boils down to this simple entire market value calculation to justify its ultimate conclusion of ██████ everything else is just eyewash. This poorly disguised attempt to use the entire market value cannot be allowed.

### B. Lucent's "Alternative Analysis" is Fundamentally Flawed

Lucent's Alternative Analysis purports to calculate damages without relying on applying a royalty rate to the entire market value. Lucent notes that if the Court will not allow Mr. Sims to apply a rate to the entire market value of the accused products then Mr. Sims will █████ █████████████████████ (Ex. A at 11-12). Despite supposedly excluding this from its analysis, Lucent's "alternative" analysis arrives at the exact same damages number: $70 million.

To do so, Lucent detaches its analysis from anything remotely based on sound economic principles or the facts of this case and transforms Mr. Sims' opinion into pure speculation. Moreover, despite statements to the contrary, the Lucent's analysis continues to base damages on the entire market value of the accused software.

### 1. Lucent's Alternative "Business Realities Approach" is Speculation, Not an Analysis Based on Sound Economic Principles

Lucent's Alternative "Business Realities approach" again professes to consider how Microsoft and Lucent would have negotiated splitting the profits that Microsoft purportedly would have lost if it did not include the date picker, but without Lucent's entire market value calculations as a justification, Mr. Sims is forced to resort to pure speculation. After noting that "Microsoft would seek to negotiate a royalty as close to $0 as possible" and "Lucent would seek to negotiate a lump-sum royalty as close as possible to $138.7 million," Mr. Sims simply says the parties would "meet in the middle." Here is Mr. the entire discussion:



(Ex. A at 12).

Such a "split the baby" approach is not the sort of testimony that requires the specialized skill or knowledge of an expert to assist the trier of fact. The jury does not need the assistance of an expert in order to divide by two. In addition, It is completely devoid of any basis or rationale. Lucent does not base Mr. Sims' final number on any prior Lucent license of a 50% royalty nor does it even attempt to show that Microsoft has ever agreed to pay a 50% royalty. Instead, Lucent simply asserts that Microsoft and Lucent would have bargained until they reached the middle of the purported profits at issue. Lucent already has attempted to obtain an 8% royalty, which did not

pass muster. *Lucent*, 580 F.3d at 1338. Now it seeks what is effectively a 50% royalty based on even less evidence.

To attempt to support its 50/50 profit split, Lucent cites in a footnote a recent decision refusing to exclude a 50% profit allocation because according to the District Court that allocation was "based on the facts of the case." (Ex. A at 11); *Sanofi-Aventis Deutschland GMBH, v. Glenmark Pharmaceuticals Inc., USA*, 2011 WL 383861, Civ. No. 07-CV-5855 (D.N.J. Feb. 3, 2011). However, unlike the *Sanofi-Aventis* case, Lucent's 50/50 split is not based on any facts relevant to the Day patent or the accused date picker feature. Moreover, *Sanofi-Aventis* involved facts that are distinguishable from those in this case. *Sanofi-Aventis* concerned whether a generic drug infringed on a name-brand drug manufacturers' patents. The generic drug was a direct copy of the name-brand drug, the generic and the name-brand drug were directly competing products, and it was undisputed that there was no alternative non-infringing design for the generic drug since the Food and Drug Administration required the generic be bioequivalent to the patented name-brand drug. *Id.* at *2-3, 9-10; *see also Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc., USA*, 2010 WL 715402 at *1, Civ. No. 07-CV-5855 (D.N.J. February 19, 2010). Also, in such a case the name-brand manufacturer often suffers significant harm due to the introduction of the generic drug and a 50% royalty may be appropriate. *See Hoffmann-La Roche Inc. v. Cobalt Pharmaceuticals Inc.*, 2010 WL 4687839 (D.N.J. November 10, 2010) (granting an injunction where the introduction of a generic drug would result in lost "market share and sales" of the name brand drug "in the range of 50% to 90% of sales" and the name brand manufacturer would suffer significant price erosion).

In contrast, Microsoft and Lucent are not competitors, a license for the Day patent would benefit rather than harm Lucent, and Microsoft had at least eight pre-existing non-infringing alternatives to enter a date in Outlook at the time of the hypothetical negotiation. Despite these obvious and important differences, Lucent asserts the same 50% royalty applies. Furthermore, unlike Mr. Sims' analysis, the profit allocation in *Sanofi-Aventis* was based on a specific theory rather than an unsupported statement that two parties would negotiate until they met in the middle.

*Id.* Lucent cannot be allowed to present such an unsupported meet in the middle approach to the jury.

### 2. Mr. Sims' Alternative "*Georgia-Pacific* Approach" is Speculation, Not an Analysis Based on Sound Economic Principles

At the very end of the discussion of the Lucent's Alternative Approach, Lucent offers one paragraph discussing the *Georgia-Pacific* approach and implies, without offering any analysis, that the *Georgia-Pacific* analysis would yield the same royalty demand – $70 million – whether or not Mr. Sims considers a 1-3% royalty on the entire market value of the accused software. That paragraph states, in its entirety:



(Ex. A at 13).

Lucent claims that Mr. Sims' *Georgia-Pacific* conclusions would stay the same even if he were to ignore Lucent's licensing policy, but Lucent fails to explain how that can possibly be the case, since the *Georgia-Pacific* analysis contained in Mr. Sims' previous report **began** with Lucent's licensing policy rate applied to a base of all infringing sales and then simply walked through the various factors to determine if those factors would have an up or down effect on that number. (Ex. B at 54-84).

Lucent's previous *Georgia-Pacific* analysis, articulated in Mr. Sims' February 10, 2011 amended report, starts by applying a 1-3% royalty in *Georgia-Pacific* Factor 1 to the entire market value of the accused products to establish a range. *Id.* at 54-63. This established a royalty range of ▌▌▌▌▌▌▌▌▌▌▌▌ *Id.* Then, Mr. Sims walked through the rest of the *Georgia-Pacific* factors and concluded with the opinion that the reasonable royalty would be ▌▌▌ almost exactly the mid-point of the range established using the 1-3% royalty applied to the entire market value of all infringing sales. *Id.* at 63-84.

Lucent's latest "alternative" *Georgia-Pacific* approach marches through the various *Georgia-Pacific* factors and makes adjustments – downward impact, upward impact, neutral

impact – to no number at all and arrives at the same damages figure it arrived at when it applied its licensing policy to all infringing Outlook revenues. Such a transparent end-run around the entire market value rule cannot be allowed.

### 3. Lucent's Alternative "Business Realities Approach" Improperly Bases Damages on Applying a Royalty Rate to the Entire Market Value of Each Copy of Outlook

Finally, despite stating that the "Alternative" approach does not consider Lucent's licensing policy, Lucent again applies a royalty rate to the entire market value of Outlook in arguing how Lucent would approach the negotiation with Microsoft.

Lucent argues that it would "jeopardize the integrity and value of [Lucent's] IP portfolio" if a "low" royalty rate is applied to the purported profits Microsoft would stand to lose if it did not incorporate the date picker. (Ex. A at 12). But the only basis Lucent offers for qualifying any rate as "low" or "high" is to compare it with the 1% rate applied to the *entire market value of Outlook*. Lucent's complaint is not with the royalty rate. Indeed, Lucent itself asserts a 1-3% royalty rate as part of its damages analysis. Rather, Lucent's complaint is with the royalty base.

According to Lucent, it would "jeopardize the integrity and value of [Lucent's] IP portfolio" unless it were allowed to apply a high royalty rate to a portion of the revenues smaller than the entire market value such that the ultimate number would be equivalent to 1-3% of the entire market value of the accused software. But the Federal Circuit has already rejected this approach. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009) ("What Lucent's licensing expert proposed here does not comport with the purpose of damages law or the entire market value rule. Lucent's expert tried to reach the damages number he would have obtained had he used the price of the entire computer as a royalty base. Being precluded from using the computer as the royalty base, he used the price of the software, but inflated the royalty rate accordingly. This cannot be an acceptable way to conduct an analysis of what the parties would have agreed to in the hypothetical licensing context. The approach of Lucent's expert ignores what the district court's evidentiary ruling tried to accomplish.")

### III. CONCLUSION

For the reasons stated herein, the Court should preclude Lucent from presenting any damages theory that applies a royalty rate to all revenue (or all units sold) for the accused software purportedly used to practice the patented method and should preclude Lucent from presenting any damages theory that applies a royalty rate not tied to the facts of this case. Thus, Microsoft respectfully requests that the Court exclude Lucent's royalty calculation and the offered expert testimony of Mr. Sims.

Dated: June 29, 2011                          FISH & RICHARDSON P.C.

                                              By: /s/ Juanita R. Brooks
                                                  Juanita R. Brooks (SBN 75934)
                                                  brooks@fr.com

                                              Attorney for Defendant
                                              MICROSOFT CORPORATION

11160500.doc

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 29, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Juanita R. Brooks
Juanita R. Brooks (SBN 75934)
brooks@fr.com

Attorney for Defendant
MICROSOFT CORPORATION

11160500.doc