1  David A. Hahn, SBN 125784
   DAVID A. HAHN, ATTORNEY AT LAW
2  400 10th Street
   Coronado, California 92118
3  Telephone: (619) 235-2100
   Facsimile:  (619) 235-2101
4

5  Attorney for *Lucent Technologies Inc.*

6  *(Additional counsel listed on the last page)*

7

8                        **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  LUCENT TECHNOLOGIES INC., | Case No. 07-CV-2000-H (CAB) |
| 12                Plaintiff, | |
| 13        v. | **LUCENT'S OPPOSITION TO MICROSOFT'S BENCH MEMORANDUM REGARDING LUCENT/SIMS' ENTIRE MARKET VALUE CALCULATION** |
| 14  MICROSOFT CORPORATION, | |
| 15                Defendant. | |
| 16 | Date:       July 26, 2011<br>Time:       9:00 a.m.<br>Courtroom: 13, 5th Floor<br>Judge:      Hon. Marilyn L. Huff |

17
18
19
20
21
22
23
24
25
26
27
28

1     The Day Patent technology is not sold independently. One cannot buy it off a shelf. Rather, the invention is, by design, a component part of a bigger whole. In this case that whole is Outlook, Money and Pocket PC (the "Infringing Products"). Indeed, the Day Patent technology lies within each and every one of the Infringing Products, and pervasively so, whether sold under individual licenses or licenses to a larger group of products, namely, Office -- every commercially licensed Office product contains Outlook. In its latest brief on the subject, Microsoft again takes the position that unless Lucent can prove that the Day Patent technology drives demand for the entire Infringing Products, Lucent, in trying to prove up damages, cannot breathe (much less show) a word into evidence about the number of Infringing Products that contain the Day Patent technology, the revenue associated with those products, or the profit margin earned on those products. Indeed, even when it comes to Lucent's efforts to prove that the royalty it seeks reflects the value of the invention as distinct from the value of the whole, Microsoft posits that Lucent cannot breathe a word about the whole. Under Microsoft's logic, Lucent can <u>never</u> apportion, because Lucent can <u>never</u> explain what exactly was apportioned. But to apportion necessarily requires explaining what was apportioned.

In taking these positions, Microsoft relies on a tortured reading of *Uniloc* that in effect makes it virtually impossible for the patentee of an invention that is not sold as a stand-alone commercial unit and is designed to operate within a larger product to prove damages. That is not the law and cannot be the law. The damage calculations offered by Lucent and here challenged by Microsoft comport with the law: They are based on reasonable methodology rooted in fact. Moreover, this Court, as explained below, has expressly and properly allowed the calculation ***without*** a need for further apportionment. (D.I. 1284 at 20-22.)

In the prior ruling, the Court clearly, and unequivocally, allowed jury consideration of the entire Jay Survey analysis, including the 109.5 million licenses and $67 average revenue per unit:

> Microsoft objects to the survey results theory because Sims's damages calculations include the total number of licenses of Outlook. Sims starts his calculations by calculating a proxy for the worth of the patented component, the Day patent technology. From Jay's survey, Sims assumes that 7% of purchase decision maker users of the Day Patent technology would not have purchased Outlook without the Day patent technology. Thus, to get his proxy value for the Day patent technology, Sims multiplies this 7% to the **per unit revenue price of Outlook ($67)** and then to Microsoft's profit margin on Outlook (76%). Sims's calculation arrives at a valuation

> of the Day patent technology at $3.56 per copy of Outlook. Sims then calculates the total number of infringing licenses by multiplying the total number of Outlook Licenses to the percentage of Outlook users that use the patented technology—**in this case 109.5 million Outlook licenses** times 43.3% usage based on the Jay survey to reach 47.4 million licenses. This calculation correlates the damages figure to the actual usage of the patented method by limiting the copies of Outlook considered to be only those where the infringing method is used. See Lucent, 580 F.3d at 1334. Finally, Sims calculates the final damages figure by multiplying the proxy value for the Day patent technology by the number of infringing licenses of Outlook to reach a final damages number.
>
> …..
>
> After careful consideration of the parties' arguments as to this analysis, **the Court declines to exclude the survey results analysis under Daubert or the entire market value rule.** By apportioning the value of Outlook by the number of users who would not have purchased Outlook but for the Day patent technology (7%), Sims accounts for a portion of the market of Outlook users that may be attributable to the Day patent technology, subject to Microsoft's challenges on cross-examination. Accordingly, **the Court denies Microsoft's motion to exclude Lucent's survey results analysis.**

(D.I. 1284 at 20-22 (emphases added).) Microsoft ignores the plain fact that the Survey Results analysis is an apportionment, and the Court specifically held that the Survey Results analysis did not violate the entire market value rule *because* the survey results analysis "apportion[ed] the value of Outlook by the number of users who would not have purchased Outlook but for the Day patent technology." (*Id.* at 22.) The Court could not have been clearer and more correct.

Unlike *Uniloc*, we have a survey that indicates that a material number of people would not have purchased the Infringing Products without the Day Patent technology. Accepting the survey as correct (and that is for the jury to decide), Microsoft stood to lose $138 Million in profits *solely* as a function of not having the Day Patent technology in the Infringing Products. As the Court recognized that calculation requires facts about the number of Infringing Products sold, the revenue associated with the products, and the profits realized on their sale. To read *Uniloc* as prohibiting this calculation unless Lucent meets the entire market value rule is untenable. If the heart of the damage inquiry is -- as it is -- the hypothetical negotiation influenced by facts informed by the Book of Wisdom, then ignoring the financial implication of Dr. Jay's Survey turns the hypothetical negotiation analysis (along with the *George Pacific* paradigm) on its head. Unlike the case in *Uniloc,* the figures to which Microsoft objects are driven by facts discerned from a survey that the

1  Federal Circuit invited.

2  That said, the Court did have a criticism of an apportionment analysis undertaken by Lucent.
3  But that had nothing to do with the financial impact on Microsoft of the results of Dr. Jay's survey.
4  That criticism was associated with Lucent's apportionment of its licensing policy.  And, over
5  Lucent's objection, the Court has since excluded Schedule 5.1, a calculation based on Lucent's
6  licensing policy.

7  Microsoft's concerns about back-room jury calculations and secret applications of the
8  licensing policy by the jury is just speculation.  And once again, Microsoft takes *Uniloc* to an
9  unwarranted extreme.  The prohibition in *Uniloc* was not whether a juror can pull out a calculator
10  and derive a large number.  At best, the issue in *Uniloc* was an expert openly parading out
11  extraordinarily high numbers to influence the jury without any evidentiary support.  *Uniloc USA,*
12  *Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320-21 (Fed. Cir. 2011).  Lucent has such an evidentiary
13  basis in the form of the Jay Survey among other evidence.  But more importantly, Lucent is not
14  trying to put large numbers up on the screen. In fact, it has bent over backwards to avoid doing so.

15  In this regard, Lucent has offered to forego introducing schedules regarding basic figures that
16  Microsoft has never disputed (*e.g.,* the number of Office licenses sold, the per-unit price for stand-
17  alone Outlook product.)  Microsoft believes that the numbers are being inappropriately used, and
18  Lucent has never asked Microsoft to stipulate to the propriety of the usage of the figures. As this
19  Court noted in its prior ruling, if Microsoft wishes to challenge **the use** of the $67, "Microsoft may
20  cross examine Sims on the accuracy of his use of the $67 per unit of Outlook price for his
21  calculation." (D.I. 1284 at 20.)  But the numbers are what they are -- they come from Microsoft's
22  own records (Lucent's counsel spoke with Microsoft's counsel about that issue, and counsel said she
23  had no basis to dispute Microsoft's own raw numbers).  Microsoft can challenge that Mr. Sims
24  appropriately uses the per-unit revenue on Outlook; but the number is accurate -- it comes from
25  Microsoft, and Microsoft has never challenged it.   For Microsoft to refuse to stipulate to how much
26  it earned on a unit of Outlook sold as a stand-alone product is disingenuous and is a transparent
27  effort to fabricate prejudice into a record to which it then points to try to exclude Lucent's

28

calculation altogether.  Microsoft's refusal to stipulate to profitability (which the Federal Circuit cited as a matter of public record in the *Lucent* decision) and the raw number of licenses sold is just as inappropriate.

To try to alleviate any prejudice, Lucent has also resorted to per unit figures in demonstratives.  To this, Microsoft says "not enough."  It complains that a juror might be able to calculate big numbers by piecing through the record with a calculator in hand.   This has no resemblance to the issue in *Uniloc*.  None.

Finally, Microsoft's effort to cast Lucent as defiant of a Court order because it did not label the license units in the challenged forms as "Office" licenses is unfortunate.  The matter was addressed this past Tuesday, and after Lucent explained that such a reference would be factually incorrect, the Court overruled Microsoft's objection on that point.  Lucent therefore does not address it here.

For the foregoing reasons, Lucent respectfully requests that the Court deny the relief requested by Microsoft in its Bench Memorandum.

Dated: July 22, 2011

Lucent Technologies Inc.

By: /s/ David A. Hahn
David A. Hahn (SBN 125784)
DAVID A. HAHN, ATTORNEY AT LAW
400 10th Street
Coronado, California 92118
Telephone: (619) 235-2100
Facsimile: (619) 235-2101

Luke L. Dauchot (SBN 229829)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Jeanne Heffernan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Blair A. Silver (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th Street NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Attorneys for Lucent Technologies Inc.

LUCENT'S OPPOSITION TO MICROSOFT'S BENCH
MEMORANDUM REGARDING LUCENT/SIMS'S ENTIRE
MARKET VALUE CALCULATION

5

Case No. 07-CV-2000-H (CAB)