# ORIGINAL



**FILED**

JUL 2 9 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY              DEPUTY

Lucent Technologies, Inc

v.

Microsoft Corporation

07-CV-2000 H (CAB)

Jury Instructions

INSTRUCTION NO. ___1___

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

INSTRUCTION NO. __2__

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

INSTRUCTION NO. _3_____

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. ____4____

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

INSTRUCTION NO. _5_

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

INSTRUCTION NO. ___6___

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

INSTRUCTION NO. _7_

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

INSTRUCTION NO. __8__

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. ___9___

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

INSTRUCTION NO. __10__

This case involves U.S. Patent No. 4,763,356, the "Day" patent or the "356" patent.

It has been determined that the following Microsoft products infringe the Day patent: Microsoft Money (versions 2000 through 2006), Microsoft Outlook (versions 2000, 2002 and 2003), and Windows Mobile (versions Pocket PC 2000, 2002, and 2003, Windows Mobile 2003, and Windows Mobile 5).

INSTRUCTION NO. _____11_____

Lucent has the burden to prove by a preponderance of the evidence the amount of damages adequate to compensate it for Microsoft's infringement.

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it. Because Lucent has the burden of proof, Microsoft is not obligated to put on any evidence regarding what the amount of damages should be.

INSTRUCTION NO. __12__

The date Lucent first gave notice to Microsoft of its claim of patent infringement is the date at which patent damages begin to be calculated.  That date is January 13, 2003, and the Court has concluded that Microsoft had notice as of that date.  The Day patent has been determined to be valid and infringed.

INSTRUCTION NO. __13__

In this case, Lucent seeks damages for the use of the Day patent. It is for you to determine what damages, if any, have been proved. Patent damages must be limited to the amount adequate to compensate the patent owner for the infringement. They cannot be used to punish the infringer.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture. Your award must be tied to the facts of this case and supported by evidence of what Microsoft would have agreed to pay and Lucent would have agreed to accept for use of the patented technology. You cannot base your damages award on any evidence that is unrelated to the claimed invention of the Day patent.

INSTRUCTION NO. __14__

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.  In this case, a reasonable royalty is the amount of money Microsoft would have agreed to pay and Lucent would have agreed to accept in a hypothetical negotiation between the parties.

The hypothetical negotiation should be viewed as a business negotiation between the parties that relies on any economic factor that normally prudent business people would, under similar circumstances, take into consideration.  The resulting royalty should be reasonable — something that would be accepted by a prudent licensee who wished to obtain a license and a prudent patent owner who wished to grant a license.

The royalty must be calculated as of the point in time just prior to when the party making use of the patent first began to use it.  In this case, the parties agree that the hypothetical negotiation would take place in August 1996.

INSTRUCTION NO. _15_

A reasonable royalty is the minimum permissible measure of damages set by patent law. It is not necessarily the actual measure of damages, but it is the floor below which damages may not fall. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between the plaintiff and the defendant, with the parties operating under the assumptions that the negotiated patent is valid and infringed by the accused products.

The hypothetical negotiation occurs at the point in time just prior to when infringement would begin. Here, that date is 1996. In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of a defendant was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by the defendant. You must also assume that the plaintiff would have been willing to grant a license. Finally, you must assume that the parties knew all pertinent information at the time of the hypothetical negotiation.

INSTRUCTION NO. ____16____

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(Page 1 of 3)

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(Page 2 of 3)

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee — who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention — would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

(Page 3 of 3)

INSTRUCTION NO. __17__

    In considering the royalties received by the patentee for licensing of the patent-in-suit, proving or tending to prove an established royalty, you should consider only past and present licenses to the actual patent in this case.  Therefore, you may consider only agreements that license the Day patent.  Moreover, you may consider royalties provided in such agreements only to the extent that Lucent has proven those royalties were received by Lucent.

INSTRUCTION NO. __18__

Proof of an established royalty requires a showing that the patentee actually granted licenses to a number of third parties covering the patent-in-suit to authorize conduct of the same kind engaged in by the infringer at the same royalty rate.

INSTRUCTION NO. _19_

Litigants routinely adopt several approaches for calculating a reasonable royalty.

INSTRUCTION NO. _____20_____

Factual developments occurring after the date of the hypothetical negotiation can, under appropriate circumstances, inform the damages calculation. This is called the "Book of Wisdom" and it can be consulted to correct what may have been uncertain at the time of the hypothetical negotiation.

INSTRUCTION NO. ___21___

Both of the asserted claims of the Day patent are method claims. To infringe a method claim, a person must have practiced all steps of the claimed method. The damages cannot be supported by evidence that the infringers also used additional, non-infringing features.  Only when the Day patent technology is used to fill out a form does infringement occur.

The damages award should be correlated to the extent the infringing method is used by consumers.  This is so because this is what the parties to the hypothetical negotiation would have considered.

INSTRUCTION NO. __22__

Lucent contends that users save time by using the Day patent. To the extent that you find that Lucent has proven that users actually do save time by using the Day patent, you may consider that fact, but only to the extent that Lucent has also proven that the time saving by users had value to Microsoft and has proven the amount of that value.

INSTRUCTION NO. __23__

 

     When calculating the reasonable royalty that Microsoft would agree to pay Lucent in a hypothetical negotiation in August 1996, you may consider whether Microsoft would forgo use of the Day patent and use available non-infringing alternatives instead. You may consider that the economic relationship between the patented method and non-infringing alternative methods may limit the hypothetical negotiation.

INSTRUCTION NO. __24__

Lucent contends that it had a licensing policy that would have influenced the amount it was willing to accept for a hypothetical license to the Day patent. Microsoft contends that Lucent's licensing policy would not have influenced the amount the parties would have agreed upon for a hypothetical license to the Day patent. You may consider whether Lucent's licensing policy was actually implemented in license agreements. Mere offers to license on particular royalty and other terms without actual licenses being accepted on those terms are insufficient to show an established licensing policy.

INSTRUCTION NO. __25__

In considering any license agreement to the Day patent, it must be comparable to the license Lucent and Microsoft would have agreed to in the hypothetical negotiation. Lucent bears the burden of proving comparability. Factors you may consider to demonstrate that a license is comparable include: (1) Whether the technology covered by the patent(s) in the license agreement is comparable to the technology claimed in the Day patent, (2) Whether the structure of the license is comparable to the structure of the hypothetical license agreement, (3) Whether the scope of the license is comparable to the scope of the license that would result from the hypothetical negotiation, and (4) Whether the license was between two parties with a relationship similar to the relationship between Lucent and Microsoft.

INSTRUCTION NO. __26__

You have been presented with evidence from a consumer survey.  In assessing what weight, if any, to give those survey results in your analysis, you may consider the margins of error associated with those results, together with all of the evidence you heard concerning the consumer survey.

INSTRUCTION NO. _27_

During negotiation for a lump sum royalty figure, the parties may consider the expected or estimated usage of the patented invention. By "patented invention," I am referring only to the patented feature as implemented in Microsoft's products, for example the Day patent technology, and not the Microsoft products as a whole. Evidence of such consideration may include the actual usage of the patented invention after the hypothetical negotiation. The parties may also consider available alternatives to using the patented invention.

INSTRUCTION NO. _28_

In making your decision on what the reasonable royalty should be in this case, you may not base your award on the overall revenues for, or profitability of, Outlook, Money and Pocket PC.  That is because each of the Microsoft products at issue is made up of thousands of features, and the infringing Day patent feature is one component of a much larger software program.  Rather, the patentee (Lucent) must give evidence to separate or apportion the defendant's profits and the patentee's (Lucent's) damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible and not conjectural or speculative.

You also may not consider the overall revenues of Microsoft. The overall revenues are not relevant to your damages analysis, and you should not speculate on them in your deliberations.

INSTRUCTION NO. 29

Patent damages must be based on sound economic and factual predicates.  The
hypothetical negotiation, even though hypothetical, requires sound economic proof of
the nature of the market.

INSTRUCTION NO. __30__

The party seeking damages has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty.  Reasonable certainty does not require proof of damages with mathematical precision.

INSTRUCTION NO. __31__

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

INSTRUCTION NO. _32_

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

INSTRUCTION NO. ___33___


      Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

INSTRUCTION NO. __34__

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.